# Exhibit 10:

## Barbara Levine Expert Report

## DECLARATION OF BARBARA R. LEVINE

I, Barbara R. Levine, declare as follows:

**Background and Experience**

1. I am an attorney who was admitted to the Michigan Bar in 1974. During my professional career, I have served as assigned counsel for indigent defendants appealing their felony convictions; taught as an adjunct at the University of Michigan and Wayne State University Law Schools, and as an assistant professor at the University of Toledo Law School; served as a commissioner for the Michigan Supreme Court; administered the Michigan Appellate Assigned Counsel System; and served as co-counsel in several prisoners' rights lawsuits.

2. From 2003 to 2013, I was the Executive Director of the Citizens Alliance on Prisons and Public Spending (CAPPS). I was the associate director of CAPPS from 2013 to 2017. CAPPS was a research and advocacy organization focused on increasing the use of alternatives to incarceration. In that capacity, I frequently testified before the Michigan Legislature. Since 2013, I have served as a consultant to Safe and Just Michigan (SJM), the successor organization to CAPPS.

3. Throughout my work with CAPPS and SJM, I engaged in empirical research using publicly available data from various sources, particularly the Michigan Department of Corrections (MDOC). I then authored or co-authored database-based reports on various aspects of Michigan's criminal justice system that were published by CAPPS/SJM, a list of which is attached as Appendix A. I also published a law review article, while teaching, based on an empirical analysis of ineffective assistance of counsel claims raised by Michigan defendants on appeal.[1]

4. In January 2016, I co-authored an amicus curiae brief filed in *Does #1-5 v Snyder,* No. 15-2346/2486 (6th Cir.) (*Does I*).

5. Because of my familiarity with Michigan data sources and experience with utilizing those sources in empirical research, I was asked to analyze, to the

---

[1] Barbara Levine, *Preventing Defense Counsel Error – An Analysis of Some Ineffective Assistance of Counsel Claims and Their Implications for Professional Regulation*, 15 U. Tol. L. Rev. 1275 (1984).

1

extent possible, the costs of maintaining and enforcing Michigan's Sex Offender Registry (SOR).

6. The information in the report is based primarily on MDOC annual statistical reports, publicly available legislative documents, other published reports, and court filings in *Does I*, No. 2:12-cv-11194 (E.D. Mich.) and *Does #1-6 v. Snyder*, No. 16-cv-13137 (E.D. Mich.) (*Does II*). I also obtained additional data by submitting a public records request (under the Freedom of Information Act) to the Michigan State Police (MSP). The sources for all figures are indicated either in the body of this declaration or accompanying footnotes.

## EXECUTIVE SUMMARY

7. Michigan's registry is very large, with about 55,000 total registrants, of whom about 45,000 are Michigan residents. Of that number, about 35,000 are active registrants and about 10,000 are incarcerated registrants.

8. Over 70 percent of Michigan registrants are classified as Tier III, and therefore subject to lifetime registration.

9. Almost three-quarters of Michigan registrants have offenses that pre-date the 2011 amendments to Michigan's Sex Offenders Registration Act (SORA). That same group has been on the registry for at least ten years.

10. The MSP SOR Unit has a gross annual budget of $1 million. The total costs related to SORA administration, registration, reporting, and enforcement for the MSP and local law enforcement agencies are unknown, but are likely significant, given that some 35,000 active registrants must report regularly, and given that law enforcement has, at least in the past, regularly engaged in sweeps to monitor registrants.

11. Data from 1998 to 2012 show that there were **14,884** prosecutions for SORA violations over that 15-year period, averaging just under **1,000** per year. Data from 2010 to 2019 show an average of about **880** prosecutions per year (though this data set appears to under-report misdemeanor cases). These prosecutions impose significant but unknown costs on prosecutors' offices, appointed defense counsel, and courts.

12. Michigan spends about **$11,254,000** a year incarcerating people for SORA-related convictions, which includes an average of about **$5,377,000** annually to incarcerate people in MDOC prisons, and an average of about **$5,877,000**

annually to incarcerate people in county jails. These figures do not include the costs for parole and probation supervision, or the cost of incarcerating people on automatic parole and probation revocations that are mandatory under SORA.

13. Although additional information would be needed in order to determine the full cost of Michigan's registry, it is reasonable to believe that in addition to the more than **$11 million** in incarceration costs and **$1 million** for the SOR unit, there are **several million** more in costs associated with administration, registration, investigation, enforcement (like registry sweeps), and prosecution of registry violations, including litigation, court, and probation costs.

## Michigan's Sex Offender Registry: Basic Data

14. Michigan's registry includes:

    a. Non-incarcerated active registrants who are state residents;
    b. Incarcerated registrants; and
    c. Inactive nonresidents—people who previously resided or worked in Michigan and were subject to registration, but who are not presently living or working in the state.

15. According to filings in *Does II*, on September 2, 2021, there were a total of **55,308** registrants, comprised as follows:

    - **35,049** active non-incarcerated registrants (63.4%);
    - **10,627** incarcerated registrants (19.2%);
    - **9,632** inactive nonresident registrants (17.4%).

    The combined total number of active non-incarcerated registrants and incarcerated registrants is **45,676**. *See Does II*, Parties' Joint and Separate Statements Regarding Outstanding Issues, R. 127, PageID.2589 (Sept. 2, 2021).

16. According to information provided by the MSP SOR Unit on January 14, 2022, in response to a public records (FOIA) request:

    a. There are currently 53,451 people on Michigan's registry. (It is unclear why this number would be almost 2,000 less than the total reported a few months earlier to the court in *Does II*.)

    b. The number of registrants in each tier is:

        1) Tier 1 –  3,464 (6.5%)
        2) Tier 2 – 10,798 (20.2%)
        3) Tier 3 – 39,030 (73%)
        4) Other Special Conditions – 27
        5) No Risk Classification Yet – 132

    c. Although offense dates were not available for all registrants, 39,131 were convicted before July 1, 2011, meaning that their offenses were necessarily before that date. There were an additional 2,839 registrants with an offense date before July 1, 2011, and a conviction date after July 1, 2011. Thus, a total of **41,970** (78.5% of the total), have an offense date before July 1, 2011.

    d. Although July 1, 2011, has legal significance as the offense date before which registrants do not have to comply with certain registry requirements due to *ex post facto* concerns, it also roughly divides the registry between those for whom more than 10 years has passed since the offense, and those for whom it has not.

**Costs of Basic Registry Operations**

17. The basic operation of the registry—collecting, entering, and publishing information from all registration and reporting; training staff; procuring and maintaining hardware, software, or outside contractors; and monitoring registrants for compliance—imposes costs at both the state and local levels.

18. The MSP SOR Unit is responsible for maintaining the registry and the registry website. The SOR Unit has a gross annual budget of $1.0 million.[2]

19. Non-incarcerated registrants report to a local registering authority (local police department, sheriff's department, or MSP post). M.C.L. § 28.722(m). Depending on their tier level, such registrants must report in person one, two, or four times a year. M.C.L. § 28.725a(3). All registrants must also report

---

[2] This information is drawn from the Senate Fiscal Agency Summary of H.B. 5679 (S-1) on Third Reading, completed 12-16-20 by Fiscal Analyst Bruce Baker. *See* https://www.legislature.mi.gov/documents/2019-2020/billanalysis/Senate/pdf /2019-SFA-5679-B.pdf.

changes in required information within specified deadlines, usually within three business days, and often in person. *See, e.g.*, M.C.L. § 28.725.

20. In Michigan, the state has—to my knowledge—conducted no studies to determine the cost to local authorities of handling SORA registration and reporting. But given that there are roughly 35,000 active non-incarcerated registrants who must report, and that most will be reporting at least four times a year, the costs to local registering authorities across the state are likely significant.[3]

21. For incarcerated registrants, the MDOC and county jails are responsible for SOR-related reporting and administration. *See, e.g.,* M.C.L. §§ 28.724(4), 28.725(4)-(6), 28.725a(2). The staffing and other costs to the MDOC, as well as to sheriffs' departments operating county jails, for such reporting have likewise, to my knowledge, never been calculated by the state, and are unknown.

## Statewide Law Enforcement Sweeps

22. As part of SORA monitoring, in the past the MSP coordinated with local law enforcement on periodic statewide sweeps of addresses at which active registrants were supposed to be residing. *See* Table 1.[4] The information available to me shows that seven such sweeps were conducted between 2008 and 2012. Information about two of them is lacking, but the remaining five sweeps show an average <u>for each sweep</u> as follows:

    a. 2,180 residences checked;
    b. 144 people arrested;
    c. 329 warrants issued;
    d. 99 federal, state and local law enforcement agencies were involved.

23. From the available data, we do not know how many personnel from each law enforcement agency participated; for what violations the arrests were made;

---

[3] Registrants who are not indigent are charged a $50 annual fee. M.C.L. § 28.725a(6), of which $30 goes to the MSP and $20 goes to local law enforcement M.C.L. § 28.725b(1). The Senate fiscal analysis says that about $900,000 is collected annually for deposit into the SOR fund for the MSP. *See* note 2.

[4] This information appears in *Does I*, No. 2:12-cv-11194 (E.D. Mich.), Defs.' Resps. to Pls.' First Set of Interrogs. and Reqs. for Production of Documents (on file with author).

how many of the arrests resulted in a conviction; what proportion of all annual SORA convictions resulted from such sweeps; or what the total costs were. But given the number of residences targeted in each sweep, the resources involved were likely to be significant.

24. I do not have information about whether, where, and to what extent local-only sweeps were also done, or whether and to what extent state or local sweeps have continued to occur since 2012.

## Prosecutions for Registry Violations

25. Michigan's SORA creates penalties for noncompliance with registry requirements. These range from a maximum of 90 days in jail for failing to pay the registration fee to a maximum of 10 years in prison for failing to register, third offense. M.C.L. § 28.729.

26. Table 2 shows the number of dispositions for SORA violations statewide for each year from 2010-2019.[5] The 10-year total was **8,812** dispositions, for an annual average of **881** dispositions. The data in Table 2 comes from MDOC annual reports.

27. I also reviewed data from *Does I* provided in 2013 in response to Plaintiffs' First Request for Production of Documents, Request 2c. That document (on file with me) contained a table for every county showing the number of people convicted of a SORA violation from 1998 to 2013 (partial year).[6] A somewhat condensed form of the data from *Does I* is attached as Table 3. The convictions were sorted among multiple statutory provisions. Dropping the partial year data, the total number of convictions over the 15 years (1998 to 2012)

---

[5] This information is drawn from the annual MDOC Statistical Report, Table A2, Criminal Court Dispositions by Offense and Type of Disposition – Non-Assaultive Offenses, for each of the enumerated years. Figures in my Table 2 are rounded, and "attempts" are combined with completed offenses. Some defendants may have had multiple dispositions. I used 2019 as the last year to avoid artificial skews in the data caused by the COVID-19 pandemic.

[6] The table goes back to 1994, but for the first four years, as SORA was being implemented and the registry gradually populated, very few registrants were prosecuted.

was **14,884**, for an average annual number of "dispositions" of just under **1,000** per year.[7]

28. Although no cost studies have been done, each of the 880 to 1,000 such "dispositions" (depending on the data set used) is the product of a court case that has to be investigated by police, reviewed and charged by a prosecutor, defended by defense counsel (often at public expense), litigated until pled out or tried—followed by a presentence report, sentencing, and possible appeal. The cost of processing such SORA enforcement cases per year is unknown, but presumably is significant.

**Incarceration Costs**

29. The costs of SORA described above do not include the cost of punishment. Although fewer than 3% of active non-incarcerated registrants are convicted of SORA violations each year, the price of incarcerating them can be calculated for *prisons* based on state-supplied data, and can be estimated for *jails* based on known cost evaluations from other sources.

30. **Prisons:** Table 4 shows that a total of **409** people were committed to the MDOC for SORA-related convictions for the period from 2015-2019, for an average annual rate of **82** commitments per year. Table 4 also shows the average minimum sentence imposed for each type of violation.[8] I have also included the actual average cost of incarceration per prisoner (reported by the MDOC annually) for each of those five years (which ranges from an equivalent daily cost of about $96 per day in 2015 to $108 per day in 2019).

31. When the number of commitments is multiplied by the average minimum sentence and the annual cost per prisoner, the total cost to keep SORA violators in prison for the five-year period was about **$26,885,000.** Dividing by five,

---

[7] The somewhat lower numbers in the MDOC data set are attributable to the fact that many misdemeanors may not get reported to the MDOC, as shown in Table 3a, attached. Accordingly, cost estimates and other observations based on the MDOC data should be viewed as conservative (that is, understated).

[8] This information is drawn from Table B2a, Commitments by Minimum Term Distribution—Non-Assaultive Offenses, in the annual MDOC Statistical Report for each of the enumerated years. Links to the MDOC annual reports can be found at https://www.michigan.gov/corrections/0,4551,7-119-1441---,00.html.

the *average annual cost* was about **$5,377,000** a year.[9] The added cost for parole supervision of people with SORA-related convictions is unknown.

32. **Jails:** Table 5 shows dispositions to county jails, with and without probation, for SORA-related convictions for each year from 2015-2019. Table 5 shows that, according to MDOC figures, a total of **3,084** people were committed to county jails for SORA-related convictions for the period from 2015-2019, for an average annual rate of **617** commitments per year. Because there is no data publicly available regarding the actual sentences imposed (or the actual time served) for each offense, I used the following averages:

- Jail for felony – six months
- Jail + probation for felony – four months
- Jail for misdemeanor – one month
- Jail + probation for misdemeanor – two months.[10]

33. The cost of jail sentences is borne by and varies by county. Calculating an exact overall annual expenditure for SORA-related jail sentences is not possible. To achieve a credible estimate, I used a conservative figure of $62 per day.[11] When the number of dispositions is multiplied by the average sentence

---

[9] This, too, is a conservative base cost because an unknown number of people may have served an unknown amount of time beyond their minimum sentences.

[10] These averages were drawn from Michigan Joint Task Force on Jail and Pretrial Incarceration, Report and Recommendation (Jan. 10, 2020), p. 14.

[11] The $62 figure was drawn from Hornby Zeller Associates, Inc., *The Cost of Raising the Age of Juvenile Justice in Michigan*, Final Report (March 14, 2018), at 25, https://council.legislature.mi.gov/Content/Files/cjpc/MIRaisetheAgeFinalRepo rt03.14.2018.pdf. This figure is corroborated by a 2017 presentation to the Michigan Criminal Justice Policy Commission, which said: "The average cost of a jail bed nationally is about $60.00, it varies across the state of Michigan." *See* Barbara Hankey and Tim Bouwhuis, *Reforming Pretrial Justice in Michigan*, CJPC minutes (Mar. 1, 2017) p.12 slide 11, https://council.legislature.mi.gov/Content/Files/cjpc/ Minutes.Final_CJPC_Mar%201%202017.pdf. In addition, M.C.L. § 801.83, which was enacted in 1984 and last amended in 1999, sets a maximum of $60 on the amount per day that counties can charge jail inmates. It is likely that per day costs have risen and that the current average is above $62, which is why I say the figure is conservative.

and the estimated daily cost, it results in a five-year (2015 to 2019) estimated total cost of **$29,360,000** which works out to an average *annual cost* of about **$5,877,000**.

34. The additional supervision costs for the average annual 346 dispositions to probation shown in Table 2 are unknown.

35. In addition to the cost of incarcerating people who are sentenced either to prison or to jail for SORA violations in the first instance, the statute also mandates incarceration for willful violations committed while a registrant is on parole or probation.[12]

36. Thus, parole is revoked and the individual is returned to prison regardless of whether any other parole violations have occurred, or whether the parole board, given discretion, would have revoked parole solely for the SORA infraction. The statute does not set any minimum prison time the parolee must serve before being re-paroled, and it is unclear how much the MDOC is spending on incarceration resulting from such automatic violations.

37. Likewise, if probation is revoked, the defendant is sentenced to jail or prison for the offense for which probation was the original sentence. I found no data available to calculate the sentences imposed in probation revocation cases where SORA violations were the sole basis of the revocation and resulting incarceration.

38. Adding both the prison and jail costs yields an annual sum of **$11,254,000** for incarcerating people convicted of SORA violations, not including people who were paroled beyond their minimum sentences, whose probation or paroles were revoked solely for SORA violations, or whose jail sentences may not have been reported to the MDOC.

39. The incarceration costs are also on top of the MSP SOR Unit and local law enforcement expenditures for maintaining the registry, administering registration and reporting, and monitoring/enforcement (such as sweeps, policing, prosecution and defense, court costs, probation, and appeals). It is reasonable

---

[12] M.C.L. § 28.729(7) ("The parole board shall rescind the parole of an individual released on parole who willfully violates this act."); M.C.L. § 28.729(5) ("The court shall revoke the probation of an individual placed on probation who willfully violates this act.").

to believe these other costs associated with Michigan's SORA add several million dollars a year beyond the costs of incarceration.

**Statement of Compensation**:

40. I have provided this report pro bono.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

s/ Barbara R. Levine P24207

Dated: January 30, 2022          Barbara R. Levine, Esq.

An index of appendix and tables appear below.

## Index of Exhibits

**Appendix A**:   Articles Authored by Barbara R. Levine

**Table 1**:   Statewide Sweeps for SORA Violators 2008-2012

**Table 2**:   Criminal Court Dispositions of SORA Violations by Offense
Type and Disposition – 2010-2019 (from the MDOC)

**Table 3**:   Number of Individuals Convicted of a SORA Violation by County.
1998-2012 (from discovery in *Does I*)

**Table 3a**:   Comparison of Data (from the MDOC versus *Does* I) on Convictions
for SORA Violations

**Table 4**:   Prisoners Committed to Prison for SORA-Related Convictions:
Number, Average Minimum Sentence, Cost – 2015-2019

**Table 5**:   Dispositions to County Jails for SORA-Related Convictions: Number,
Average Sentence Length, Cost (at $62/day) – 2015-2019

**Appendix A:**
**Publications by Barbara L. Levine from Citizens Alliance on Prisons and Public Spending, and Safe and Just Michigan**

- *Do Michigan's Sentencing Guidelines Meet the Legislature's Goals? A Historical and Empirical Analysis of Prison Terms for Life-Maximum Offenses* (Nov. 2021) [Co-author]

- *10,000 fewer Michigan prisoners: Strategies to reach the goal* (June 2015)

- *Paroling people who committed serious crimes: What is the actual risk? (*Dec. [Co-author]

- *Corrections spending proposals reflect major policy choices:  Examining the consequences* (May 2014)

- *Parolable Lifers in Michigan: Paying the price of unchecked discretion* (Feb. 2014)

- *Michigan's Parolable Lifers: The Cost of a Broken Process (*June 2013)

- *Denying parole at first eligibility: How much public safety does it actually buy? A study of prisoner release and recidivism in Michigan* (Aug. 2009)

- *When "life" did not mean life: a historical analysis of life sentences imposed in Michigan since 1990* (Sept. 2006)

- *Foreign Nationals in Michigan Prisons: An examination of the costs* (Apr. 2006) [Editor]

- *Penny-wise & pound-foolish: Assaultive offender programming and Michigan's prison costs* (Apr. 2005) [Co-author]

- *No way out: Michigan's parole board redefines the meaning of "life"* (Sept. 2004)

- *The high cost of denying parole: an analysis of prisoners eligible for release* (Nov. 2003)

# Table 1:

## Statewide Sweeps for SORA Violators

## 2008-2012

| Table 1.  Statewide Sweeps for SORA Violators 2008-2012 | | | | |
|---|---|---|---|---|
| Dates | Residence Checks | Arrests | Warrants Issued | Law Enforcement Agencies Involved (federal, state, local) |
| 10/20 - 10/31/08 | 3,194 | 196 | 682 | 90 |
| 2/2 - 2/13/09 | 2,220 | 150 | 405 | 70 |
| 2/1 - 2/12/10 | 1,512 | 179 | 248 | 120 |
| 6/14 - 6/25/10 | unknown | unknown | unknown | unknown |
| 10/18 - 10/29/10 | 2,232 | 144 | 193 | 125 |
| 10/17 - 10/28/11 | unknown | unknown | unknown | unknown |
| 10/16 - 10/30/12* | 1,742 | 51 | 116 | 90 |
| TOTAL (of available data) | 10,900 | 720 | 1,644 | |
| Average/sweep (of five sweeps with data) | 2,180 | 144 | 329 | 99 |

*This was characterized in an MSP press release dated Nov. 16, 2012, as the "ninth annual coordinated sweep" but the response to the Plaintiff's request and supporting documents showed only the seven listed here.

1

# Table 2:

## Criminal Court Dispositions of SORA Violations by Offense Type and Disposition – 2010-2019
## (from the MDOC)

| Table 2.  Criminal Court Dispositions of SORA Violations by Offense and Type of Disposition  −  2010 - 2019 | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2010 | 2011 | 2012 | 2013 | 2014 | 5 Year Average | 2015 | 2016 | 2017 | 2018 | 2019 | 5 Year Average | 10 Year Average |
| Failure to Register/1st MCL 28.729 & 729(1)(a) (4 yr maximum) | | | | | | | | | | | | | |
| Total | 595 | 554 | 530 | 580 | 591 | 570 | 618 | 556 | 510 | 345 | 328 | 471 | 521 |
| Prison | 96 | 79 | 95 | 114 | 117 | 100 | 111 | 63 | 63 | 56 | 38 | 66 | 83 |
| Jail | 207 | 253 | 244 | 233 | 239 | 235 | 229 | 236 | 243 | 149 | 159 | 203 | 219 |
| Jail/Probation | 168 | 142 | 127 | 155 | 159 | 150 | 200 | 162 | 142 | 88 | 81 | 135 | 143 |
| Probation | 105 | 63 | 53 | 62 | 55 | 68 | 68 | 78 | 49 | 45 | 44 | 57 | 63 |
| Other | 19 | 17 | 11 | 16 | 21 | 17 | 10 | 17 | 13 | 7 | 6 | 11 | 14 |
| Failure to Register/2nd MCL 28.729(1)(b) (7 yr maximum) | | | | | | | | | | | | | |
| Total | 49 | 49 | 57 | 63 | 61 | 56 | 71 | 69 | 64 | 42 | 43 | 58 | 57 |
| Prison | 15 | 19 | 23 | 15 | 17 | 18 | 19 | 10 | 17 | 10 | 6 | 12 | 15 |
| Jail | 18 | 18 | 21 | 27 | 27 | 22 | 33 | 31 | 21 | 18 | 26 | 26 | 24 |
| Jail/Probation | 11 | 8 | 9 | 14 | 13 | 11 | 15 | 23 | 24 | 8 | 11 | 16 | 15 |
| Probation | 5 | 3 | 3 | 6 | 3 | 4 | 4 | 4 | 2 | 6 | --- | 3 | 4 |
| Other | -- | 1 | 1 | 1 | 1 | 1 | --- | 1 | --- | --- | --- | --- | 1 |
| Failure to Register/3rd MCL 28.729(1)(c) (10 yr maximum) | | | | | | | | | | | | | |
| Total | 16 | 15 | 25 | 21 | 20 | 19 | 36 | 30 | 45 | 24 | 34 | 34 | 27 |
| Prison | 4 | 6 | 5 | 4 | 7 | 5 | 15 | 8 | 15 | 10 | 12 | 12 | 9 |
| Jail | 7 | 6 | 13 | 10 | 7 | 7 | 16 | 13 | 19 | 11 | 16 | 15 | 11 |
| Jail/Probation | 5 | 3 | 5 | 5 | 3 | 4 | 2 | 6 | 9 | 3 | 5 | 5 | 5 |
| Probation | -- | -- | 1 | 2 | 2 | 1 | 2 | 2 | 2 | --- | 1 | 1 | 1 |
| Other | -- | -- | 1 | -- | 1 | -- | 1 | 1 | --- | --- | --- | --- | -- |

| | 2010 | 2011 | 2012 | 2013 | 2014 | 5 Year Average | 2015 | 2016 | 2017 | 2018 | 2019 | 5 Year Average | 10 Year Average |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Failure to Comply w/ Duties MCL 28.729(2) (2 yr maximum)** | | | | | | | | | | | | | |
| Total | 43 | 50 | 315 | 363 | 339 | 222 | 312 | 314 | 309 | 211 | 208 | 271 | 247 |
| Prison | -- | 2 | 36 | 38 | 47 | 25 | 38 | 25 | 18 | 13 | 20 | 23 | 24 |
| Jail | 21 | 31 | 124 | 162 | 146 | 97 | 130 | 114 | 145 | 97 | 100 | 117 | 107 |
| Jail/Probation | 7 | 6 | 92 | 98 | 98 | 60 | 76 | 98 | 80 | 61 | 62 | 75 | 68 |
| Probation | 11 | 8 | 53 | 54 | 33 | 32 | 58 | 66 | 55 | 32 | 17 | 46 | 39 |
| Other | 4 | 3 | 10 | 11 | 15 | 9 | 10 | 11 | 11 | 8 | 9 | 10 | 10 |
| **Failure to Report/2nd MCL 28.729(2)(b)** | | | | | | | | | | | | | |
| Total | 18 | 13 | 1 | 2 | -- | 7 | 1 | 2 | -- | 1 | -- | 1 | 4 |
| Prison | -- | 1 | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- |
| Jail | 13 | 9 | -- | 1 | -- | 5 | 1 | -- | -- | -- | -- | -- | 2.5 |
| Jail/Probation | 2 | 2 | -- | -- | -- | 1 | -- | -- | -- | 1 | -- | -- | -- |
| Probation | 3 | 1 | 1 | 1 | -- | 1 | -- | 2 | -- | -- | -- | -- | 1 |
| Other | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- | -- |
| **Failure to Report/3rd MCL 28.729(2)(c) (4 yr maximum)** | | | | | | | | | | | | | |
| Total | 40 | 24 | 6 | 1 | -- | 14 | -- | 1 | 2 | -- | -- | 1 | 8 |
| Prison | 5 | 5 | 4 | -- | -- | 3 | -- | -- | -- | -- | -- | -- | 2 |
| Jail | 20 | 10 | 2 | 1 | -- | 7 | -- | -- | 2 | -- | -- | -- | 4 |
| Jail/Probation | 11 | 8 | -- | -- | -- | 4 | -- | -- | -- | -- | -- | -- | 2 |
| Probation | 3 | 1 | -- | -- | -- | 1 | -- | -- | -- | -- | -- | -- | -- |
| Other | 1 | -- | -- | -- | -- | -- | -- | 1 | -- | -- | -- | -- | -- |

| | 2010 | 2011 | 2012 | 2013 | 2014 | 5 Year Average | 2015 | 2016 | 2017 | 2018 | 2019 | 5 Year Average | 10 Year Average |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Other SORA Violations[1] MCL 28.7293 & 7294 (90-93 days) | | | | | | | | | | | | | |
| Total | 3 | 7 | 5 | 4 | 6 | 5 | 23 | 47 | 29 | 38 | 33 | 34 | 20 |
| Prison | -- | -- | -- | -- | -- | -- | -- | -- | -- | 1 | 1 | -- | -- |
| Jail | 3 | 3 | 4 | 1 | 5 | 3 | 14 | 16 | 17 | 18 | 19 | 17 | 10 |
| Jail/Probation | -- | 2 | -- | 1 | -- | 1 | -- | 12 | 4 | 8 | 10 | 7 | 4 |
| Probation | -- | 2 | 1 | 2 | -- | 1 | 6 | 17 | 3 | 5 | 2 | 7 | 4 |
| Other | -- | -- | -- | -- | 1 | -- | 3 | 2 | 5 | 6 | 1 | 3 | 2 |
| **Total SORA Violations** | | | | | | | | | | | | | |
| Total | 764 | 712 | 939 | 1,034 | 1,017 | 893 | 1,061 | 1,019 | 959 | 661 | 646 | 869 | **881** |
| Prison | 120 | 112 | 163 | 171 | 188 | 151 | 183 | 106 | 113 | 90 | 77 | 114 | 133 |
| Jail | 289 | 330 | 408 | 435 | 424 | 377 | 423 | 410 | 447 | 293 | 320 | 379 | 378 |
| Jail/Probation | 204 | 171 | 233 | 273 | 273 | 231 | 293 | 301 | 259 | 169 | 169 | 238 | **235** |
| Probation | 127 | 78 | 112 | 127 | 93 | 107 | 138 | 169 | 111 | 88 | 64 | 114 | **111** |
| Other | 24 | 21 | 23 | 28 | 39 | 27 | 24 | 33 | 29 | 21 | 16 | 25 | 26 |

[1] These include failure to sign the registration form and failure to pay the registration fee.  Student safety zone violations were excluded because the requirements have been repealed and such violations cannot occur in the future.

# Table 3:

Number of Individuals Convicted of a SORA
Violation by County. 1998-2012
(from discovery in Does I)

### Table 3.  Number of Individuals Convicted of a SORA Violation
### By County, 1998-2012*

| County | 15-Year Total | Average Per Year |
|---|---|---|
| Kent | 1,769 | 117.9 |
| Ottawa | 753 | 50.2 |
| Muskegon | 729 | 48.6 |
| Macomb | 625 | 41.7 |
| Berrien | 608 | 40.5 |
| Washtenaw | 601 | 40.1 |
| Wayne | 571 | 38.1 |
| Oakland | 567 | 37.8 |
| Calhoun | 495 | 33.0 |
| **Totals** | | |
| 9 Highest Volume Counties | 6,718 | 447.9** |
| **Grand Total, All Counties** | **14,884** | **992.3** |

*The years 1994-1997 were omitted because of minimal data; 2013 was omitted because data was available for only part of the year.

**All other counties averaged fewer than 30 individuals per year

1

# Table 3a:

## Comparison of Data (from the MDOC versus Does I) on Convictions for SORA Violations

| Table 3a.  Comparison of Data on Convictions for SORA Violations | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Year | Total | 28.729 | 28.7291B | 28.7291C | 28.7292 | 28.7292B | 28.7292C | 28.7293 & 7297 |
| Figures from Response to *Does I* Plaintiff's Request for Documents | | | | | | | | |
| 2010 | 1,607 | 555 | 27 | 11 | 895 | 74 | 20 | 25 |
| 2011 | 1,419 | 538 | 37 | 15 | 737 | 46 | 17 | 29 |
| 2012 | 1,572 | 662 | 40 | 20 | 744 | 16 | 2 | 88 |
| Figures from MDOC Statistical Reports | | | | | | | | |
| 2010 | 764 | 595 | 49 | 16 | 43 | 18 | 40 | 3 |
| 2011 | 712 | 554 | 49 | 15 | 50 | 13 | 24 | 7 |
| 2012 | 939 | 530 | 57 | 25 | 315 | 1 | 6 | 5 |

The chart shows that the major discrepancy between the two data sets is in the column of reported versus unreported misdemeanors.

1

# Table 4:

Prisoners Committed to Prison for SORA-Related
Convictions: Number, Average Minimum Sentence,
Cost – 2015-2019

| Table 4.  Prisoners Committed to Prison for SORA-Related Convictions Number, Average Minimum Sentence, Cost 2015-2019 | | | | | | |
|---|---|---|---|---|---|---|
| | 2015 | 2016 | 2017 | 2018 | 2019 | 5-Yr. Av. |
| **Failure to Register, 1st** | | | | | | |
| 4 yr. maximum | | | | | | |
| Number | 81 | 49 | 44 | 41 | 29 | 49 |
| Average minimum | 1.4 | 1.6 | 1.7 | 2.9 | 3.1 | |
| Annual cost/person | $34,982 | $35,157 | $36,106 | $38,051 | $39,391 | |
| Total cost | $3,966,959 | $2,756,309 | $2,700,729 | $4,524,264 | $3,541,251 | |
| **Failure to Register, 2nd** | | | | | | |
| 7 yr. maximum | | | | | | |
| Number | 15 | 7 | 11 | 8 | 4 | 9 |
| Average minimum | 1.7 | 1.8 | 1.4 | 1.7 | 2.1 | |
| Annual cost/person | $34,982 | $35,157 | $36,106 | $38,051 | $39,391 | |
| Total cost | $892,041 | $442,978 | $556,032 | $517,494 | $330,884 | |
| **Failure to Register, 3rd** | | | | | | |
| 10 yr. maximum | | | | | | |
| Number | 12 | 7 | 13 | 11 | 10 | 11 |
| Average minimum | 1.6 | 2.2 | 1.6 | 2.1 | 1.7 | |
| Annual cost/person | $34,982 | $35,157 | $36,106 | $38,051 | $39,391 | |
| Total cost | $671,654 | $541,418 | $751,005 | $878,978 | $669,647 | |
| **Failure to Comply w/Duties** | | | | | | |
| 2 yr. maximum | | | | | | |
| Number | 20 | 21 | 12 | 8 | 6 | 13 |
| Average minimum | 1.6 | 1.2 | 1.2 | 1.1 | 1.2 | |
| Annual cost/person | $34,982 | $35,157 | $36,106 | $38,051 | $39,391 | |
| Total cost | $1,119,424 | $885,956 | $519,926 | $334,849 | $283,615 | |
| **TOTAL NUMBER** | 128 | 84 | 80 | 68 | 49 | **82** |
| **TOTAL COST** | $6,650,078 | $4,626,661 | $4,527,692 | $6,255,585 | $4,825,397 | **$5,377,083** |

1

# Table 5:

## Dispositions to County Jails for SORA-Related Convictions: Number, Average Sentence Length, Cost (at $62/day) – 2015-2019s

| Table 5. Dispositions to County Jails for SORA-Related Convictions<br>Number, Average Sentence Length, Cost (at $62/day)<br>2015-2019 | | | | | | |
|---|---|---|---|---|---|---|
| | 2015 | 2016 | 2017 | 2018 | 2019 | 5-Yr. Av. |
| **Failure to Register/1st**<br>**MCL 28.729(1) & 7291(a) (4 yr max)** | | | | | | |
| Jail: 6 mos. = $11,315 | 229=$2,591,135 | 236=$2,670,340 | 243=$2,749,545 | 149=$1,685,935 | 159=$1,799,085 | 203=$2,296,945 |
| Jail + proba: 4 mos = $7,440 | 200=$1,488,000 | 162=$1,205,280 | 142=$1,056,480 | 88=$ 654,720 | 81=$ 602,640 | 135=$1,004,400 |
| **Failure to Register/2nd**<br>**MCL 28.729(1)(b) (7 yr max)** | | | | | | |
| Jail: 6 mos. = $11,315 | 33=$373,395 | 31=$350,765 | 21=$237,615 | 18=$203,670 | 26=$294,190 | 26=$294,190 |
| Jail + proba: 4 mos.=$7,440 | 15=$111,600 | 23=$171,120 | 24=$178,560 | 8=$ 59,520 | 11=$ 81,840 | 16=$119,040 |
| **Failure to Register/3rd**<br>**MCL 28.729(1)(C) (10 yr max)** | | | | | | |
| Jail: 6 mos =$11,315 | 16=$181,040 | 13=$147,095 | 19=$214,985 | 11=$124,465 | 16=$181,040 | 15=$169,725 |
| Jail + proba: 4 mos.=$7,440 | 2=$ 14,880 | 6=$ 44,640 | 9=$ 66,960 | 3=$ 22,320 | 5=$ 37,200 | 5=$ 37,200 |
| **Failure to Comply w/ Duties**<br>**MCL 28.729(2) (2 yr max)** | | | | | | |
| Jail: 6 mos =$11,315 | 131=$1,482,265 | 114=$1,289,910 | 147=$1,663,305 | 97=$1,097,555 | 100=$1,131,500 | 118=$1,332,907 |
| Jail + proba: 4 mos.=$7,440 | 76=$ 565,440 | 98=$ 729,120 | 80=$ 595,200 | 62=$ 461,280 | 62=$ 461,280 | 76=$ 565,440 |
| **Other SORA Violations**<br>**MCL 28.7293 (93 days) & 7294 (90 days)** | | | | | | |
| Jail: 1 mo =$1,860 | 14=$26,040 | 16=$29,760 | 17=$31,620 | 18=$33,480 | 19=$35,340 | 17=$31,620 |
| Jail + proba: 2 mos.=$3,720 | -- | 12=$44,640 | 4=$14,880 | 8=$29,760 | 10=$37,200 | 7=$26,040 |
| **Total SORA Violations** | | | | | | |
| Jail: 6 mos =$11,315 | 409=$4,627,835 | 394=$4,458,110 | 430=$4,865,450 | 275=$3,111,625 | 301=$3,405,815 | 362=$4,100,556 |
| Jail + proba: 4 mos.=$7,440 | 293=$2,179,920 | 289=$2,150,160 | 255=$1,897,200 | 161=$1,197,840 | 159=$1,182,960 | 231=$1,718,640 |
| Jail: 1 mo = $1,860 | 14=$ 26,040 | 16=$ 29,760 | 17=$ 31,620 | 18=$ 33,480 | 19=$ 35,340 | 17=$ 31,620 |
| Jail + proba 2 mos.= $3,720 | | 12=$ 44,640 | 4=$ 14,880 | 8=$ 29,760 | 10=$ 37,200 | 7=$ 26,040 |
| **Grand Total** | 716=$6,833,795 | 711=$6,682,670 | 706=$6,809,150 | 462=$4,372,705 | 489=$4,661,315 | 617=$5,876,856 |