UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOES A, B, C, D, E, F, G, H,
MARY DOE and MARY ROE, on behalf of
themselves and all others similarly situated,

                 Plaintiffs,

v.

GRETCHEN WHITMER, Governor of the
State of Michigan, and COL. JOSEPH
GASPER, Director of the Michigan State
Police, in their official capacities,

                 Defendants.

No. 2:22-cv-10209

Hon.

## PLAINTIFFS' MOTION FOR CLASS
## CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

Plaintiffs move for class certification and appointment of class counsel pursuant to Rule 23 of the Federal Rules of Civil Procedure, and request that the Court:

1. Certify a "primary class," defined as people who are or will be subject to registration under Michigan's Sex Offenders Registration Act (SORA); and name Plaintiffs John Does A, B, C, D, E, F, G, H, Mary Doe, and Mary Roe as representatives of the primary class;

2. Certify a "pre-2011 ex post facto subclass," defined as members of the primary class who committed the offense(s) requiring registration before July 1, 2011; and name Plaintiffs John Does A, B, C, D, E, F, G, Mary Doe, and Mary Roe as representatives of the pre-2011 ex post facto subclass;

1

3. Certify a "retroactive extension of registration subclass," defined as members of the primary class who were retroactively required to register for life as a result of amendments to SORA; and name Plaintiffs John Does A, B, C, D, E, G, Mary Doe, and Mary Roe as representatives of the retroactive extension of registration subclass;

4. Certify a "barred from petitioning subclass," defined as members of the primary class who are ineligible to petition for removal from the registry and for whom ten or more years will have elapsed since the date of their conviction for the registrable offense(s) or from their release from any period of confinement for that offense(s), whichever occurred last, and who (a) have not been convicted of any felony or any registrable offense since; (b) have successfully completed their assigned periods of supervised release, probation, or parole without revocation at any time of that supervised release, probation, or parole; and (c) have successfully completed an appropriate sex offender treatment program, if successful completion of a sex offender treatment program was a condition of the registrant's confinement, release, probation, or parole; and name Plaintiffs John Does A, C, E, F, G, Mary Doe, and Mary Roe as representatives of the barred from petitioning subclass;

5. Certify a "non-sex-offense subclass," defined as members of the primary class who are or will be subject to registration for an offense without a sexual component including convictions for violating M.C.L. §§ 750.349, 750.349b, 750.350 or a substantially similar offense in another jurisdiction; and name Plaintiff John Doe A as the representative of the non-sex-offense subclass;

6. Certify a "plea bargain subclass," defined as members of the primary class who gave up their right to trial and pled guilty to a registrable offense in Michigan and who, as a result of retroactive amendments to SORA, (i) were retroactively subjected to SORA even though there was no registration requirement at the time of their plea; or (ii) had their registration terms retroactively extended beyond that in effect at the time of their plea; and name Plaintiffs John Does A, B, C, D, E, and Mary Roe as representatives of the plea bargain subclass;

7. Certify a "post-2011 subclass," defined as members of the primary class who committed the offense(s) requiring registration on or after July 1,

2011; and name Plaintiff John Does H as the representative of the post-2011 subclass; and

8. Appoint Plaintiffs' counsel (Miriam Aukerman, Paul Reingold, and Roshna Bala Keen) as class counsel for this action.

In support of this motion, Plaintiffs refer the Court to their accompanying brief.

Pursuant to the local rules, Plaintiffs have conferred with counsel for Defendants, who indicated that they are reviewing Plaintiffs' request for concurrence.

Respectfully submitted,

s/ Miriam J. Aukerman (P63165)
Miriam J. Aukerman
Rohit Rajan (AZ 035023)
American Civil Liberties Union
  Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org
rrajan@aclumich.org


s/ Daniel S. Korobkin (P72842)
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6824
dkorobkin@aclumich.org

s/ Paul D. Reingold (P27594)
Cooperating Counsel, American Civil
  Liberties Union Fund of Michigan
Univ. of Michigan Law School
802 Legal Research Building
801 Monroe Street
Ann Arbor, MI 48109-1215
(734) 355-0319 - pdr@umich.edu

s/ Roshna Bala Keen (Ill. 6284469)
Loevy & Loevy
Cooperating Counsel, American Civil
  Liberties Union Fund of Michigan
311 North Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 - roshna@loevy.com


Dated:       February 2, 2022

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOES A, B, C, D, E, F, G, H,
MARY DOE and MARY ROE, on behalf of
themselves and all others similarly situated,

                Plaintiffs,

v.

GRETCHEN WHITMER, Governor of the
State of Michigan, and COL. JOSEPH
GASPER, Director of the Michigan State
Police, in their official capacities,

                Defendants.

No. 2:22-cv-10209

Hon.

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR
<u>CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL</u>**

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................1

BACKGROUND .............................................................................................1

THE PROPOSED CLASS/SUBCLASS DEFINITIONS AND PROPOSED
CLASS/SUBCLASS REPRESENTATIVES ..............................................5

ARGUMENT ..................................................................................................9

Legal Standard for Class Certification.........................................................9

I.    The Class and Subclasses Meet the Rule 23(a) Requirements. ........................11

    A.    The Class and Subclasses Are So Numerous that Joinder Is
        Impractical................................................................................11

    B.    The Class and Subclass Members Share Common Questions of
        Law and Fact. ..........................................................................12

    C.    Named Representatives' Claims Are Typical of the Class and
        Subclasses................................................................................15

    D.    The Class Representatives Will Fairly and Adequately
        Represent the Interests of the Class. ......................................20

II.   The Class and Subclasses Satisfy the Requirements of Rule 23(b)(2). ............21

III.  The Court Should Appoint Class Counsel Pursuant to Rule 23(g). .................24

CONCLUSION ..............................................................................................24

i

# TABLE OF AUTHORITIES

**Cases**

*A.A. v. New Jersey*, 176 F. Supp. 2d 274 (D.N.J. 2001) ...........................................23

*Am. Timber & Trading Co. v. First Nat. Bank of Oregon*, 690 F.2d 781 (9th Cir. 1982) ........................................................................11

*Baby Neal for & by Kanter v. Casey*, 43 F.3d 48 (3d Cir. 1994) .................... 16, 22

*Barry v. Lyon*, 834 F.3d 706 (6th Cir. 2016) ...........................................................10

*Beattie v. CenturyTel, Inc.*, 511 F.3d 554 (6th Cir. 2007) ................................ 16, 21

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) .....................................................10

*Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006).........................................11

*Doe v. Lee*, No. 3:99-cv-314, 2001 WL 536727 (D. Conn. May 18, 2001) ..............................................................................................23

*Does #1-5 v. Snyder*, 101 F. Supp. 3d 672 (E.D. Mich. 2015) ..................................1

*Does #1-5 v. Snyder*, 101 F. Supp. 3d 722 (E.D. Mich. 2015) ..................................1

*Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016), *cert. denied* 138 S. Ct. 55 (2017).........................................................................1, 2

*Does #1-6 v. Snyder*, 449 F. Supp. 3d 719 (E.D. Mich. 2020) ........................ passim

*Gilkey v. Cent. Clearing Co.*, 202 F.R.D. 515 (E.D. Mich. 2001) .........................13

*Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402 (6th Cir. 2012).........................22

*Grabarczyk v. Stein*, No. 5:19-cv-48, 2019 WL 4570240 (E.D.N.C. Sept. 19, 2019)..............................................................................23

*In re Consumers Power Co. Sec. Litig.*, 105 F.R.D. 583 (E.D. Mich. 1985) ..........................................................................................11

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013) ..................................................... 10, 12, 15, 19

*J.D. v. Azar*, 925 F.3d 1291 (D.C. Cir. 2019)..........................................................22

*John & Jane Does 1 to 44,000 v. Mich. State Police*, No. 2:21-cv-
12843 (E.D. Mich. 2021)...................................................................................12

*Like v. Carter*, 448 F.2d 798 (8th Cir. 1971) ...........................................................13

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ...............................................22

*Moore v. Ulta Salon, Cosms. & Fragrance, Inc.*, 311 F.R.D. 590
(C.D. Cal. 2015)...............................................................................................10

*NorCal Tea Party Patriots v. Internal Revenue Serv.*, 2016 WL
223680 (S.D. Ohio Jan. 19, 2016) ...................................................................11

*People v. Betts*, __ N.W.2d __; 2021 WL 3161828 (Mich. July 27,
2021 ...............................................................................................................1, 4

*Roe v. Snyder*, 240 F. Supp. 3d 697 (E.D. Mich. 2017) ........................................1, 2

*Roe v. Snyder*, No. 16-cv-13353, 2018 WL 4352687 (E.D. Mich.
Sept. 12, 2018)...................................................................................................2

*Schepers v. Comm'r*, No. 1:09-cv-1324, 2010 WL 761225, at *2
(S.D. Ind. Mar. 3, 2010) ..................................................................................23

*Senter v. Gen. Motors Corp.*, 532 F.2d 511 (6th Cir. 1976)...................................20

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998)..........................15, 21

*Stanich v. Travelers Indem. Co.*, 259 F.R.D. 294 (N.D. Ohio 2009) .....................20

*Vassalle v. Midland Funding LLC*, 708 F.3d 747 (6th Cir. 2013)...........................20

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ............................................13

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012)............. 12, 15, 19

**Statutes**

2020 H.B. 5679 ...........................................................................................................4

M.C.L. § 28.721 ..........................................................................................................1

M.C.L. § 28.725 ..........................................................................................................9

M.C.L. § 28.727 ...................................................................................................9

M.C.L. § 28.728c ...........................................................................................7, 18

M.C.L. § 750.349 ...............................................................................................7

M.C.L. § 750.349b .............................................................................................7

M.C.L. § 750.350 ...............................................................................................7

**Rules**

Fed. R. Civ. P. 23 ...................................................................................... passim

**Other Authorities**

1 William B. Rubenstein, *Newberg on Class Actions* § 3:16 (5th ed.
        2015) .......................................................................................................11

2 William B. Rubenstein, *Newberg on Class Actions* § 4:40 (5th ed.
        2021) .......................................................................................................22

3 William B. Rubenstein, *Newberg on Class Actions* § 7:29 (5th ed.
        2021) .......................................................................................................10

7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
        *Federal Practice & Procedure* § 1764 (4th ed. 2021) .......................... 16, 22

Richard A. Nagareda, *Class Certification in the Age of Aggregate
        Proof*, 84 N.Y.U. L. Rev. 97 (2009) ...............................................13

## INTRODUCTION

Michigan subjects approximately 55,000 people to Michigan's Sex Offenders Registration Act (SORA),[1] M.C.L. § 28.721 *et seq.* Compl. R. 1, ¶322. The prior version of this statute has repeatedly been found unconstitutional, including in a prior class action brought on behalf of all Michigan registrants. *See Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016), *cert. denied* 138 S. Ct. 55 (2017) (*Does I*); *Roe v. Snyder*, 240 F. Supp. 3d 697, 701 (E.D. Mich. 2017); *Does #1-6 v. Snyder*, 449 F. Supp. 3d 719, 737-39 (E.D. Mich. 2020) (*Does II*); *People v. Betts*, __ N.W.2d __, 2021 WL 3161828 (Mich. July 27, 2021). Plaintiffs contend that the legislature's recent minor amendments to the law do not resolve the constitutional deficiencies. Because Defendants are once again acting uniformly in applying an unconstitutional statute to tens of thousands of people, this Court should once again grant class certification to decide the constitutionality of Michigan's registration law.

## BACKGROUND

In *Does I*, Judge Cleland found that certain provisions of SORA were unconstitutionally vague or violated the First Amendment. *See* 101 F. Supp. 3d 672 (E.D. Mich. 2015); 101 F. Supp. 3d 722 (E.D. Mich. 2015). On appeal, the Sixth Circuit

---

[1] When referring specifically to the version of SORA that went into effect on March 24, 2021, Plaintiffs use the term "SORA 2021." When referring to prior versions of the statute, Plaintiffs use "old SORA." When referring to Michigan's registration statute more generally, Plaintiffs simply use "SORA."

1

held that SORA's 2006 and 2011 amendments constituted punishment, and therefore could not be applied retroactively. *Does I*, 834 F.3d at 706.

Undeterred by these rulings, Defendants continued to enforce the old SORA as written. Shortly after the Sixth Circuit's decision in *Does I*, Plaintiff Mary Roe was told that she faced prosecution under provisions of SORA that the Sixth Circuit and the Eastern District had already found unconstitutional. *See Roe*, 240 F. Supp. 3d at 701. *Roe* was resolved when the various defendants agreed that they would no longer enforce the unconstitutional parts of the old SORA against Ms. Roe. *See Roe v. Snyder*, No. 16-cv-13353, 2018 WL 4352687, at *1–5 (E.D. Mich. Sept. 12, 2018).

Still undeterred, Defendants continued to enforce the old SORA against all other registrants. Several Plaintiffs here therefore filed a class action lawsuit to ensure that the *Does I* decisions would be applied to all registrants. *See Does II*, No. 2:16-cv-13137 (E.D. Mich. 2020). At the time, some 45 individual cases seeking enforcement of the *Does I* decisions had already been filed in both federal and state court. *See id.* at R. 35–2, PageID.480–82. Recognizing that a class action was the only feasible method to manage the ever-increasing number of SORA challenges and adjudicate the constitutional rights of the state's tens of thousands of registrants, Defendants stipulated to class certification. *See id.* at R. 46, PageID.692–97. The court then certified a primary class, defined as all people who are or will be subject to registration under Michigan's SORA, and two ex post facto subclasses which

2

were defined by the date of the registrants' underlying offenses. *See id.*,

PageID.693–94. The court's discussion on class certification is set forth below. *Id.*

> 6. The Court finds that, as to the primary class and the two subclasses, the requirements of Fed. R. Civ. P. 23(a) are met because (1) the class and subclasses are so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class and subclasses, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class and subclasses, and (4) the representative plaintiffs will fairly and adequately protect the interests of the class and subclasses.

> 7. The Court finds that, as to the primary class and the two subclasses, the requirements of Fed. R. Civ. P. 23(b)(1)(A) are met because prosecuting separate actions by or against individual class members would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A).

> 8. The Court finds that, as to the primary class and the two subclasses, the requirements of Fed. R. Civ. P. 23(b)(2) are met because the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief would be appropriate respecting the class as a whole if plaintiffs prevail in demonstrating that those actions or inactions violate plaintiffs' rights.

The class certification order named representative plaintiffs on behalf of the

primary class and subclasses. *Id.* Those representatives included Mr. Does D, E, F,

G, and H in this case. The court also found that "plaintiffs' counsel are qualified to

handle this class action litigation and will zealously prosecute the case for the class."

*Id.*, PageID.695. The appointed class counsel included Miriam Aukerman and Paul

Reingold, two of the attorneys who seek appointment as class counsel here. *Id.*

The *Does II* court eventually held that the provisions that violated the Due

3

Process Clause and the First Amendment could not be imposed against *any* regis-trant, and that the *entirety* of SORA could not be enforced against the ex post facto subclasses. *Id.* at R. 84. The Michigan Supreme Court, in a criminal appeal, likewise held that the old SORA was punishment and that its retroactive application violated the Ex Post Facto Clause. *See Betts*, 2021 WL 3161828.

At the end of 2020, the legislature—confronted with the impending entry of an injunction that would bar all enforcement of the law against pre-2011 registrants, and bar enforcement of the old exclusion zones and certain reporting requirements for all registrants—passed, and the governor signed, a bill amending SORA. *See* 2020 H.B. 5679. But rather than address the core defects identified by the courts, the legislature made only minor changes. Indeed, the new law is, if anything, more com-plex, vaguer, and harder to understand. Moreover, most of the provisions that led the Sixth Circuit and the Michigan Supreme Court to hold that the old SORA violated the Ex Post Facto Clause (as applied retroactively) were carried over unchanged into the new law (SORA 2021). As more fully explained in Plaintiffs' other pleadings, the amendments thus did little to address the constitutional problems identified by the Sixth Circuit and the district court in *Does I* and *II*, and by the Michigan Supreme Court in *Betts*. *See* Compl., R. 1, ¶¶8–18; Prelim. Inj. Br.

Defendants are enforcing SORA 2021 against all members of the proposed class. On the day the new law went into effect, the Michigan State Police (MSP)

mailed all registrants a standardized notice which uniformly describes their reporting obligations and incorporates standardized forms, including an explanation of duties to register as a sex offender, which *all* registrants must sign or face criminal prosecution. *See* MSP Letter, R. 1-16; Explanation of Duties, R. 1-17.

If class certification is not granted, new constitutional challenges based on the reasoning of *Does I*, *Does II*, *Roe*, and *Betts* will surely be filed and decided piecemeal, with the risk of inconsistent judgments. Judicial economy is best served, and the issues most appropriately litigated, via a Fed. Rule of Civ. Proc. 23(b)(2) class action to decide the common questions of law and fact, in a single forum.

## THE PROPOSED CLASS/SUBCLASS DEFINITIONS AND PROPOSED CLASS/SUBCLASS REPRESENTATIVES

Plaintiffs seek certification of a primary class consisting of people who are or will be subject to registration under Michigan's SORA 2021. The primary class is defined exactly as it was in *Does II. Does II*, No. 2:16-cv-13137, R. 46. The primary class seeks relief on claims shared by all registrants including:

- o Count III: that SORA 2021 violates due process and equal protection guarantees because it does not serve public safety goals and imposes extensive burdens on a disfavored group without individualized review;
- o Count V: that SORA 2021's compelled speech requirements violate the First Amendment;
- o Count VIII: that SORA 2021 is unconstitutionally vague; and
- o Count IX: that SORA 2021 compels registrants to state that they understand their obligations even if they do not, in violation of the First Amendment.

Plaintiffs ask that John Does A, B, C, D, E, F, G, H, Mary Doe, and Mary Roe be named as representatives of the primary class.

Plaintiffs also seek certification of the following subclasses, as defined below:

1. The pre-2011 ex post facto subclass is defined as members of the primary class who committed the offense(s) requiring registration before July 1, 2011. This subclass seeks relief on Count I, which alleges that retroactive application of the 2011 amendments (which became effective July 1, 2011), as carried into SORA 2021 largely unchanged, violates the Ex Post Facto Clause. Plaintiffs ask that John Does A, B, C, D, E, F, G, Mary Doe, and Mary Roe, all of whose offenses predate July 1, 2011, be named as representatives of this subclass. Compl., R. 1, ¶¶24, 42, 55, 68, 85, 99, 117, 129, 140.

2. The retroactive extension of registration subclass is defined as members of the primary class who were retroactively required to register for life as a result of amendments to SORA. This subclass seeks relief on Count II, which alleges that retroactively extending registration terms to life violates the Ex Post Facto and Due Process Clauses. Plaintiffs ask that John Does A, B, C, D, E, G, Mary Doe, and Mary Roe, all of whom had their registration terms retroactively extended to life, be named as representatives of this subclass. Compl., R. 1, ¶¶36, 48, 60, 78, 92, 109, 121, 143.

3. The barred from petitioning subclass is defined as all members of the primary class who are ineligible to petition for removal from the registry and for

6

whom ten or more years will have elapsed since the date of their conviction for the registrable offense(s) or from their release from any period of confinement for that offense(s), whichever occurred last, and who (a) have not been convicted of any felony or any registrable offense since; (b) have successfully completed their assigned periods of supervised release, probation, or parole without revocation at any time of that supervised release, probation, or parole; and (c) have successfully completed an appropriate sex offender treatment program, if successful completion of a sex offender treatment program was a condition of the registrant's confinement, release, probation, or parole. This subclass seeks relief on Count IV, which alleges that SORA 2021 violates the Equal Protection Clause in that some registrants who meet specific eligibility criteria can petition for removal from the registry but other similarly situated registrants who meet the exact same eligibility criteria cannot. The proposed subclass definition is based on those eligibility criteria. *See* M.C.L. § 28.728c(12). Plaintiffs ask that John Does A, C, E, F, G, Mary Doe, and Mary Roe, all of whom meet the eligibility criteria but are nevertheless barred from petitioning, be named as representatives of this subclass. Compl., R. 1, ¶692.

4. The non-sex-offense subclass is defined as members of the primary class who are or will be subject to registration for an offense without a sexual component including convictions for violating M.C.L. §§ 750.349, 750.349b, 750.350, or a substantially similar offense in another jurisdiction. This subclass seeks relief on Counts

V and VII, which allege that requiring people who were not convicted of sex offenses to register as sex offenders and to support speech about themselves with which they disagree violates due process, equal protection, and the First Amendment. Plaintiffs ask that John Doe A, who is required to register as a sex offender although he was never convicted of a sex offense, be named as the representative of the non-sex-offense subclass. Compl., R. 1, ¶¶24–27.

5. The <u>plea bargain subclass</u> is defined as members of the primary class who gave up their right to trial and pled guilty to a registrable offense in Michigan and who, as a result of retroactive amendments to SORA, (i) were retroactively subjected to SORA 2021 even though there was no registration requirement at the time of their plea; or (ii) had their registration terms retroactively extended beyond that in effect at the time of their plea. This subclass seeks relief on Count VI, which alleges that by retroactively imposing lifetime registration on people who pled guilty without notice that they would be subject to lifetime registration or whose pleas were predicated on an understanding that they would not be subject to registration, or would be subject to registration only for a limited number of years, the state has violated the terms of the plea agreements it made in violation of the Due Process Clause. The legal theory is the same for people who pled guilty prior to the existence of SORA and for those for whom the registration term in effect at the time of the plea was retroactively extended thereafter: neither group had notice that their registration term

would be extended at the time of their plea. Plaintiffs ask that John Does A, B, C, D, E, and Mary Roe, all of whom pled guilty to a registrable offense in Michigan and had their registration terms retroactively extended, be named as representatives of this subclass. Compl., R. 1, ¶¶26, 35–36, 45, 48, 57, 60, 86, 92, 102, 109, 119–121.

6. The post-2011 subclass is defined as members of the primary class who committed the offense(s) requiring registration on or after July 1, 2011. This subclass seeks relief on Count X, which alleges that requiring reporting of electronic and internet identifiers—a requirement that applies to post-2011 registrants, *see* M.C.L. §§ 28.725(2)(a), 28.727(1)(i)—chills Plaintiffs' rights to speech and association. Plaintiffs ask that John Doe H, whose offense occurred after July 1, 2011, be named as the representative of the post-2011 subclass. Compl., R. 1, ¶¶149–52.

## ARGUMENT

### Legal Standard for Class Certification

"At an early practicable time after a person sues . . . as a class representative, the court must determine whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). Under Rule 23(a), Plaintiffs must show that (1) "the class is so numerous that joinder of all members is impracticable"; (2) "there are questions of law or fact common to the class"; (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(1)–

(4); *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Plaintiffs must also show that the proposed class falls within one of the types identified in Rule 23(b), which in this case is Rule 23(b)(2). *Id.*

A district court should conduct a rigorous analysis showing that a class action is maintainable to satisfy itself that the Rule 23 requirements are met. *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 851 (6th Cir. 2013). The certification decision is committed to the court's "substantial discretion." *Barry v. Lyon*, 834 F.3d 706, 721 (6th Cir. 2016) (citation omitted). As discussed below, the primary class easily satisfies the Rule 23(a) and (b)(2) requirements.

Plaintiffs also seek to certify six subclasses. Rule 23(d)—"which grants a court significant leeway in managing a class suit"—allows for the creation of sub-classes as a case management device. 3 William B. Rubenstein, *Newberg on Class Actions* § 7:29 (5th ed. 2021). Because there are no conflicts between the primary class and any subclasses, "there is no necessity that each subclass . . . independently comply with all of the requirements of Rule 23(a) [and] (b)," *id.*, and the court may authorize the creation of these subclasses under Rule 23(d) to "'expedite resolution of the case by segregating [certain factual and legal questions] which [are] common to some members' of the larger class." *Moore v. Ulta Salon, Cosms. & Fragrance, Inc.*, 311 F.R.D. 590, 609–10 (C.D. Cal. 2015) (alterations in original) (quoting *Am. Timber & Trading Co. v. First Nat. Bank of Oregon*, 690 F.2d 781, 787 (9th Cir.

10

1982)). In the event that the Court finds the Rule 23 requirements applicable to the subclasses, Plaintiffs explain why the subclasses satisfy those requirements as well.

## I.   The Class and Subclasses Meet the Rule 23(a) Requirements.

### A.   The Class and Subclasses Are So Numerous that Joinder Is Impractical.

The first prerequisite to class certification is that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no strict numerical test, and "substantial" numbers alone usually satisfy the numerosity requirement. *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (citation omitted). If Plaintiffs can show that the number of potential class members is large, the numerosity requirement is met "even if plaintiffs do not know the exact figure." *In re Consumers Power Co. Sec. Litig.*, 105 F.R.D. 583, 601 (E.D. Mich. 1985). In cases in which the class satisfies the numerosity requirement, "there is a 'relaxed numerosity approach' for subclasses." *NorCal Tea Party Patriots v. Internal Revenue Serv.*, 2016 WL 223680, at *6 (S.D. Ohio Jan. 19, 2016) (quoting 1 William B. Rubenstein, *Newberg on Class Actions* § 3:16 (5th ed. 2015)).

Here, the primary class consists of approximately 55,000 people subject to registration under SORA. Compl., R. 1, ¶641. *But see* Levine Decl., R. 1-11, Ex. 10, ¶¶15–16 (citing other data putting the total at around 53,000). Although the exact number of registrants in each subclass is unknown, they each total in either the hundreds or the thousands. *See id.*, ¶¶642–47. With classes and subclasses this large,

11

the numbers alone demonstrate the impracticability of joinder and satisfy numerosity. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012).

Absent class certification, it is likely that individuals affected by SORA 2021 will file their own litigation. Indeed, more than 60 prisoners have already brought such an action. *See John & Jane Does 1 to 44,000 v. Mich. State Police*, No. 2:21-cv-12843 (E.D. Mich. 2021). There were also dozens of such challenges to the old SORA, but class certification in *Does II* allowed the court to stay or dismiss those individual cases, pending a final decision in *Does II*, thus conserving judicial resources and allowing for efficient adjudication of the constitutionality of the former statute. Compl., R. 1, ¶650. While it is likely that many registrants will again file challenges, there also many registrants who are indigent and will be unable to retain counsel to secure their rights absent a class action. *Id*. ¶648; *Deposit Guaranty Nat. Bank v. Roper*, 445 U.S. 326, 339 (1980); 1 William B. Rubenstein, *Newberg on Class Actions* § 3:11 (5th ed. 2021) (both favoring class actions where indigency would exclude individual plaintiffs). The numerosity requirement is thus easily met.

**B.    The Class and Subclass Members Share Common Questions of Law and Fact.**

The second prerequisite is that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement is often easily satisfied, as "there need be only one common question to certify a class." *Whirlpool*, 722 F.3d at 853. Common questions are those that have the capacity "to generate common

12

answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). Challenges to standardized conduct, such as the enforcement of state statutes, typically meet this test. *See Like v. Carter*, 448 F.2d 798, 802 (8th Cir. 1971); *see also Gilkey v. Cent. Clearing Co.*, 202 F.R.D. 515, 521 (E.D. Mich. 2001) ("When the legality of the defendant's standardized conduct is at issue, the commonality factor is normally met.").

With the applicable class or subclass indicated in parentheses, common questions of law include, but are not limited to:

1. Whether SORA 2021 violates the Due Process and Equal Protection Clauses by failing to provide for individualized review (**primary class**);

2. Whether compelling registrants' speech by requiring them to frequently report extensive information about themselves in support of the state's message that they are dangerous sex offenders violates the First Amendment (**primary class, non-sex offense subclass**);

3. Whether certain provisions of SORA 2021 are unconstitutionally vague and therefore cannot be applied (**primary class, post-2011 subclass**);

4. Whether it violates the First Amendment to compel registrants, by threat of criminal penalty, to attest that they understand their duties under SORA 2021 even if they in fact do not understand those duties (**primary class**);

5. Whether retroactively applying the 2011 SORA amendments to registrants whose offenses predate those amendments violates the Ex Post Facto Clause of the U.S. Constitution (**pre-2011 ex post facto subclass**);

6. Whether it violates the Ex Post Facto and Due Process Clauses to retroactively require individuals to register for life who, at the time of their offenses, were either not required to register or required to register for a term less than life

13

(**retroactive extension of registration subclass**);

7. Whether SORA 2021 violates the Equal Protection Clause by allowing only some individuals who meet specified eligibility criteria to petition for removal from the registry while barring most registrants who meet the exact same criteria from petitioning (**barred from petitioning subclass**);

8. Whether requiring sex offender registration for individuals convicted of non-sexual offenses violates the Due Process and Equal Protection Clauses (**non-sex-offense subclass**);

9. Whether the state has violated the terms of plea agreements and the Due Process Clause by retroactively imposing lengthier registration terms on people who pled guilty without notice that they would be subject to such registration terms (**plea bargain subclass**);

10. Whether it violates the First Amendment to require registrants whose offense occurred after July 1, 2011, to report all electronic mail and internet identifiers and allow those identifiers to be made public (**post-2011 subclass**).

There are likewise common questions of fact, including but not limited to:

1. Whether and to what extent sex offender registries increase or decrease public safety, and increase or decrease sexual offending or reoffending;

2. To what extent the risk of reoffending varies among people with past sex offenses and how that risk changes over time;

3. What is the risk distribution for sexual recidivism for individuals required to register, and what percentage of people subject to SORA 2021 present no greater risk to the public than people who are not required to register;

4. What is the relative predictive value for sexual recidivism of a conviction-based registry versus one that uses actuarial risk assessment;

5. Do the tier assignments under SORA 2021 correspond to the recidivism risk of registrants;

6. What impact does sex offender registration have on housing, employment, and other aspects of registrants' lives, and how does registration affect

registrants' reentry into the community;

7. How has the internet changed the consequences of sex offender registration.

These common legal and factual questions bear directly on the constitutionality of SORA 2021 for the primary class and each subclass, and on the relief required. Thus, the commonality requirement is also satisfied.

## C. Named Representatives' Claims Are Typical of the Class and Subclasses.

The third prerequisite is that the "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This typicality requirement "is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *Whirlpool*, 722 F.3d at 852 (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (en banc)). This requirement ensures "that the representatives' interests are aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members." *Id.* at 852–53. "Commonality and typicality tend to merge because both of them serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Young*, 693 F.3d at 542 (citation and quotations omitted).

"A claim is typical if it arises from the same event or practice or course of

15

conduct that gives rise to the claims of other class members, and if [the] claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (citation omitted). "[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994); *see also Daffin*, 458 F.3d at 553 (explaining that typicality is satisfied by similar legal theories even if "different factual circumstances" underlie the individual claims); 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1764 (4th ed. 2021) ("[T]ypical claims need not be identical to one another; something less restrictive is appropriate to satisfy Rule 23(a)(3)."). "Actions requesting declaratory and injunctive relief to remedy conduct directed at the class clearly fit this mold." *Baby Neal*, 43 F.3d at 58.

Each named Plaintiff has been harmed by the state's decision to enforce SORA 2021, and asserts that such continued enforcement is unconstitutional. Thousands of other registrants have the same claims. *See* 7A Wright, Miller & Kane, *supra*, § 1764 ("[M]any courts have found typicality if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory.").

Named Plaintiffs are typical of the primary class because, like the class, they

16

are not afforded individualized review under SORA 2021; are forced to disclose extensive information about themselves in furtherance of the state's message that they are sex offenders; have difficulty discerning their obligations under the Act's vague reporting requirements; and must attest that they understand their registration obligation even if they do not. Compl. ¶¶363, 374, 386, 531. They contend that the Act violates due process, equal protection, and the First Amendment, and seek injunctive and declaratory relief, for themselves and the class, barring enforcement of the statute without individualized review, enforcement of the mandatory disclosure provisions, enforcement of the provisions challenged as unconstitutionally vague; and a prohibition on compelling registrants to attest that they understand the law.

The proposed representatives of the subclasses similarly are individuals with identical legal theories about the unconstitutionality of SORA 2021, seeking the same relief as those they seek to represent. The proposed representatives of the pre-2011 ex post facto subclass are typical of that subclass because they were retroactively subjected to the 2011 amendments, even though their registrable offenses predate July 1, 2011. They contend that the retroactive application of those amendments violates the Ex Post Facto Clause, and seek injunctive and declaratory relief barring such retroactive application. *Id.* ¶¶664–66.

The proposed representatives of the retroactive extension of registration subclass are likewise typical of the subclass because they were retroactively required

to register for life without any individualized showing that such a lifetime registration term was warranted. They contend that this violates the Ex Post Facto and Due Process Clauses, and seek injunctive and declaratory relief barring enforcement of SORA 2021 against them and subclass members for terms longer than those in effect at the time of their offenses. *Id.* ¶¶669–75.

The proposed representatives of the barred from petitioning subclass are typical of that subclass because they have been on the registry for more than ten years, have not been convicted of any felony or any registrable offense since, and have successfully completed probation/parole and any required sex offender treatment program. Yet even though other similarly situated registrants can petition for removal from the registry, the proposed representatives, like the subclass, are unable to do so. They contend that this violates equal protection, and seek injunctive and declaratory relief affording themselves and the subclass the opportunity to petition for removal from the registry on the same terms as registrants eligible to petition under M.C.L. § 28.728c(1), (12). Compl., R. 1, ¶¶689–702.

The proposed representative of the non-sex-offense subclass, like members of the subclass, is required to register as a sex offender even though he was never convicted of a sex offense. He contends that this violates due process and equal protection, and seeks declaratory and injunctive relief barring enforcement of SORA 2021 against him and the subclass. *Id.* ¶¶733–38.

The proposed representatives of the plea bargain subclass, like members of the subclass, gave up their trial right and pled guilty in Michigan. They contend that the state violated their plea agreements and due process by retroactively imposing lengthier registration terms (than what existed when they pled guilty) without notice that they would be subject to such terms. They seek injunctive and declaratory relief barring enforcement of SORA 2021 for themselves and the subclass for terms longer than those in effect at the time of their pleas. *Id.* ¶¶719–27.

The proposed representative of the post-2011 subclass, like members of the subclass, has a registrable offense that occurred on or after July 1, 2011, making him subject to SORA 2021's provisions requiring reporting of email addresses and internet identifiers, and allowing those to be made public. He argues that this violates the First Amendment, and seeks declaratory and injunctive relief barring Defendants from requiring him or subclass members to report email addresses or internet identifiers and from making those email addresses or identifiers public. *Id.* ¶¶753–62.

In sum, the class and each subclass rely on uniform legal theories and claims for relief and their claims arise from the same "practice[s] or course[s] of conduct" by Defendants—namely subjecting them to SORA 2021. *Young*, 693 F.3d at 543 (citation omitted). And the "class members' claims are fairly encompassed by the named Plaintiffs' claims." *Whirlpool*, 722 F.3d at 852 (citation omitted). The typicality requirement is thus easily satisfied for the primary class and each subclass.

### D. The Class Representatives Will Fairly and Adequately Represent the Interests of the Class.

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Sixth Circuit applies a two-prong test: "1) [T]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013) (citation omitted). It also considers qualifications, experience, and abilities of counsel. *See id.*

The first criterion is met for the reasons set forth in the commonality and typicality discussions. The proposed class/subclass members, along with their representatives, all share uniform legal theories about the unconstitutionality of SORA and seek similar relief. The relief would benefit all class or subclass members and would not benefit the class representative at the expense of anyone else. Thus, there are no conflicts of interest. Because the interests of the representatives are aligned with all class/subclass members, the first prong is satisfied. *See Stanich v. Travelers Indem. Co.*, 259 F.R.D. 294, 305 (N.D. Ohio 2009).

The second adequacy criterion—that the representatives vigorously prosecute this action as named plaintiffs and through qualified counsel—is also clearly satisfied. *See Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976). Named Plaintiffs have a strong incentive to pursue their claims because SORA 2021 has had

a devastating impact on their lives. They are committed to representing the class as a whole, and most of them have been challenging SORA in court for years.

As to the adequacy of counsel, that requirement is met if "class counsel are qualified, experienced and generally able to conduct the litigation." *Beattie*, 511 F.3d at 562 (citation omitted). Proposed class counsel are Miriam Aukerman of the American Civil Liberties Union Fund of Michigan; Paul Reingold, Professor Emeritus at the University of Michigan Law School; and Roshna Bala Keen of Loevy & Loevy (with the ACLU and Loevy lawyers supported by other attorneys at their respective organizations). All three are highly qualified and experienced attorneys who are able and willing to conduct this litigation on behalf of the class.

Ms. Aukerman and Mr. Reingold litigated *Does I*, *Roe*, and *Does II*, which was a very similar class action, *see Does II*, No. 2:16-cv-13137, R. 46, and both have been appointed as class counsel in other significant civil rights litigation. *See* Aukerman Resume, Ex. 1; Reingold Resume, Ex. 2. Ms. Bala Keen, a partner at Loevy & Loevy, a highly regarded Chicago civil rights firm, likewise has significant class action and civil rights experience. *See* Bala Keen Resume, Ex. 3.

**II. The Class and Subclasses Satisfy the Requirements of Rule 23(b)(2).**

In addition to meeting the four prerequisites outlined in Rule 23(a), Plaintiffs must show that this action fits into one of the categories defined in Rule 23(b). *Sprague*, 133 F.3d at 397. Under subsection (b)(2), a class action is maintainable if

"the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

"Rule 23(b)(2) class actions are particularly effective in civil rights cases because these cases often involve classes which are difficult to enumerate but which involve allegations that a defendant's conduct affected all class members in the same way." 2 William B. Rubenstein, *Newberg on Class Actions* § 4:40 (5th ed. 2021). "A principal purpose of Rule 23(b)(2) class actions is to enable class resolution of civil-rights claims alleging classwide deprivations of protected rights." *J.D. v. Azar*, 925 F.3d 1291, 1314 (D.C. Cir. 2019) (per curiam). Indeed, this subsection was added to Rule 23(b) "to make it clear that civil-rights suits for injunctive or declaratory relief can be brought as class actions." 7A Wright, Miller & Kane, *supra*, § 1776. Courts have therefore observed that "this requirement is almost automatically satisfied in actions primarily seeking injunctive relief." *Baby Neal*, 43 F.3d at 58; *see also Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997) (same).

"What is important is that the relief sought by the named plaintiffs should benefit the entire class." *Baby Neal*, F.3d at 59. That there are differences between class members does not render Rule 23(b)(2) any less applicable. *See Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 428 (6th Cir. 2012) ("All of the class members need not be aggrieved by . . . [the] defendant's conduct in order for some of them to

seek relief under Rule 23(b)(2). What is necessary is that the challenged conduct or lack of conduct be premised on a ground that is applicable to the entire class." (quoting 7A Wright, Miller, & Kane, *supra*, § 1775 (2d ed. 1996))).

Plaintiffs bring common claims susceptible to common proof and common remedies. Class and subclass members assert that various provisions of SORA 2021 are unconstitutional, and seek injunctive and declaratory relief tailored to remedy these specific constitutional defects. Certification is common under Rule 23(b)(2) in cases challenging sex offender registries. *See, e.g.*, *Grabarczyk v. Stein*, No. 5:19-cv-48, 2019 WL 4570240, at *2–3 (E.D.N.C. Sept. 19, 2019) (certifying class of registrants alleging that North Carolina's registry violated their due process rights); *Schepers v. Comm'r*, No. 1:09-cv-1324, 2010 WL 761225, at *2 (S.D. Ind. Mar. 3, 2010) (certifying class bringing procedural due process challenge against Indiana's registry); *A.A. v. New Jersey*, 176 F. Supp. 2d 274, 278 & n.1 (D.N.J. 2001) (certifying subclasses claiming that Megan's Law violated their constitutional right to privacy, and the Ex Post Facto and Double Jeopardy Clauses); *Doe v. Lee*, No. 3:99-cv-314, 2001 WL 536727, at *1 (D. Conn. May 18, 2001) (certifying class that alleged that Connecticut's registry violated registrants' liberty interests). Just as in those cases, and in *Does II* where Defendants stipulated to class certification, the class and subclasses here present common claims for declaratory and injunctive relief that can be resolved on a class-wide basis and therefore satisfy Rule 23(b)(2).

### III.  The Court Should Appoint Class Counsel Pursuant to Rule 23(g).

As described above, the undersigned counsel are qualified to handle this litigation and will zealously prosecute the case for the class. The litigation team has already devoted substantial resources to representing the putative class. Accordingly, the Court should appoint Plaintiffs' counsel as class counsel for the proposed class and subclasses under Federal Rule of Civil Procedure 23(g).

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for class certification and appointment of class counsel.

Respectfully submitted,

s/ Miriam J. Aukerman (P63165)
Miriam J. Aukerman
Rohit Rajan (AZ 035023)
American Civil Liberties Union
  Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org
rrajan@aclumich.org

s/ Daniel S. Korobkin (P72842)
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6824
dkorobkin@aclumich.org

s/ Paul D. Reingold (P27594)
Cooperating Counsel, American Civil
  Liberties Union Fund of Michigan
Univ. of Michigan Law School
802 Legal Research Building
801 Monroe Street
Ann Arbor, MI 48109-1215
(734) 355-0319 - pdr@umich.edu

s/ Roshna Bala Keen (Ill. 6284469)
Loevy & Loevy
Cooperating Counsel, American Civil
  Liberties Union Fund of Michigan
311 North Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 - roshna@loevy.com

Dated: February 2, 2022