UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOES A, B, C, D, E, F, G, H,
MARY DOE and MARY ROE, on behalf of
themselves and all others similarly situated,

                Plaintiffs,

v.

GRETCHEN WHITMER, Governor of the
State of Michigan, and COL. JOSEPH
GASPER, Director of the Michigan State
Police, in their official capacities,

                Defendants.

No. 2:22-cv-10209

Hon. Mark A. Goldsmith

Mag. Curtis Ivy, Jr.

**PLAINTIFFS' REPLY TO OLIVER LAW GROUP'S
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

**INTRODUCTION**

The parties notified the Court on March 1, 2022, via a joint statement submitted under the ECF utilities function, that Defendants concurred in Plaintiffs' Motion for Class Certification, R. 5, and that a stipulated order would soon follow. The parties have since agreed on the text of that order, which is being submitted with this brief. On March 9, 2022, however, non-party Oliver Law Group filed a response to Plaintiffs' motion for class certification, arguing that it should be appointed as lead class counsel in both this action (referred to below as *Does III*) and in *Does v. Michigan State Police*, No. 2:21-cv-12843 (E.D. Mich.). Plaintiffs submit this reply both to provide more context for the Court to choose class counsel, and to set out suggestions regarding case management of the two pending actions.

**I.     Background**

Michigan passed a total rewrite of its Sex Offenders Registration Act (SORA) in 2011. The ACLU of Michigan and the University of Michigan Law School Clinic, believing the law to be unconstitutional, spent much of 2011 identifying plaintiffs, developing constitutional theories, and securing experts. Attorneys Miriam Aukerman and Paul Reingold (two of the three proposed class counsel here) filed *Does #1-5 v. Snyder*, No. 12-11194 (E.D. Mich.) (*Does I*), in March 2012. The case was exhaustively litigated, with extensive motion practice and intensive discovery, including dozens of depositions. By 2015 the court had issued three published

1

opinions, dismissing some claims and granting relief on others. Both sides appealed.

On August 25, 2016, the Sixth Circuit held that SORA violated the Ex Post Facto Clause, but did not reach the other claims. *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016). Five days later, private lawyer Alyson Oliver filed a putative class action on behalf of all Michigan registrants. *Does v. Snyder* (*Does II*), No. 16-cv-13137 (E.D. Mich.). The district court stayed that case pending resolution of *Does I*.

Meanwhile, in *Does I* the ACLU and the Clinic fended off a petition for certiorari. On remand, the parties negotiated a stipulated judgment. The *Does I* team also took on a new case in September 2016, after a registrant was threatened with prosecution under a SORA provision which the Sixth Circuit had held to be unconstitutional. See *Roe v. Snyder*, No. 2-17-cv-13353 (E.D. Mich.). This Court granted a preliminary injunction, and ultimately all the defendants agreed to stop enforcing SORA against Ms. Roe.

Meanwhile, Michigan continued to enforce the unconstitutional statute. The ACLU and the Clinic therefore began preparing a class action to apply the holdings of *Does I* to all eligible registrants. Given that Ms. Oliver had already filed *Does II* as a putative class action, the ACLU and Clinic either needed to file a competing class action or seek to work with Ms. Oliver. They chose to do the latter, as both the ACLU and the Clinic have had extensive and positive experiences co-counseling

complex litigation with outside lawyers and private firms.[1] The resulting co-counsel agreement specified that counsel from the ACLU would be lead counsel. A second amended complaint was filed in *Does II* in June 2018, and final judgment entered in favor of the plaintiffs in August 2021. Fee issues remain pending.

Unfortunately, when the Michigan legislature passed a new SORA, effective in March 2021, it was nearly identical to the old law. The ACLU and cooperating counsel[2] had no meaningful alternative but to file another class action. They recruited Loevy & Loevy, a firm with deep expertise in complex civil rights class action litigation, and with whom both Ms. Aukerman and Mr. Reingold had co-counseled successfully in the past. Together they filed the *Does III* case on February 2, 2022.

In December 2021, as Plaintiffs were getting close to filing *Does III*, this Court apprised the ACLU that dozens of prisoners had filed a pro se case, styled as a putative class action, challenging SORA. *Does v. MSP*, No. 21-cv-12843. Counsel

---

[1] Almost all of Ms. Aukerman's cases involve complex team litigation, including *Malam v. Adducci*, No. 20-10829 (class action challenging immigration detention, with Paul Weiss); *Hamama v. Adducci*, No. 17-cv-11910 (class action challenging deportation of Iraqis, with Miller Canfield); *Arab American Civil Rights League v. Trump*, No. 17-cv-10310 (class action challenge to travel ban, with Covington & Burling). Mr. Reingold has similarly co-counseled complex cases. *See*, *e.g.*, *Hardin v. Straub*, 490 U.S. 536 (1989) (with Legal Services and private counsel Doug Mullkoff); *Makowski v. Governor*, 495 Mich. 465 (2014) (with private counsel Charles Levin); *Broder v. Correctional Medical Services*, No. 2:03-cv-75106 (with Tom Blaske); and *Lurie Terrace Tenants Ass'n v. Senior Citizens' Housing*, No. 2:18-cv-12448 (with Legal Services and AARP Legal Foundation).

[2] Mr. Reingold retired from the Michigan Law School at the end of 2019, but kept working on all things SORA as a cooperating attorney with the ACLU.

3

declined the Court's invitation to serve as putative class counsel in that action because the *Does III* case was nearly ready to file and would capture the common claims among the two cases, if the Court certified a class in *Does III*. On the non-common claims, counsel were concerned about the logistical and ethical challenges, and procedural complexity, of representing some 50+ prisoner plaintiffs. Counsel notified the Court about the imminent filing of the *Does III* class action and suggested that litigation in *Does III* could potentially narrow the issues in the pro se case.

The Court then appointed Ms. Oliver as counsel for the pro se prisoners. Ms. Oliver had been aware since early 2021 that counsel here were planning to file *Does III*. She could have advised her clients that there would be no need for them to litigate most of their claims if the Court certified a class in *Does III*. Instead, she filed an amended class action complaint on March 2, 2022, which added many of the same claims already filed a month earlier in *Does III*, and dropped claims unique to the prisoners. She also moved for class certification and appointment as class counsel.

## II.    The Court Should Appoint the Most Qualified Counsel as Class Counsel

The Court should appoint only one set of lawyers as class counsel because that is in the best interests of the class, will serve judicial economy and reduce litigation expenses, and will avoid unnecessary competition or conflict among counsel. Rule 23(g)(2) provides that where there are multiple applicants for class counsel, "the court must appoint the applicant best able to represent the interests of the class."

Ms. Aukerman, Mr. Reingold, and Ms. Keen are best positioned to meet the Rule 23(g)(1)(A) requirements. They have already invested significant time in developing the legal claims, can devote major resources to the case, and have proven expertise in this area of the law. Fed. R. Civ. Proc. 23(g)(1)(A)(i), (iii), (iv). Plaintiffs' initial filing included a complaint, ten expert reports, and motions for class certification and a preliminary injunction. Counsel have handled numerous class actions, other complex litigation, and, uniquely, a decade's worth of successful SORA cases. Fed. R. Civ. Proc. 23(g)(1)(A)(ii). *See* Aukerman, Reingold, and Keen CVs, R. 5-2, 5-3, 5-4. The fact that the undersigned counsel have already resolved the class certification issues with opposing counsel and have successfully co-counseled many other cases speaks to their ability and willingness to work cooperatively.

### III. Counsel Have Attempted to Coordinate with the Oliver Law Group

Counsel here have initiated conversations with Oliver Law Group regarding the relationship between *Does III* and *Does v. MSP*, including before the filing of *Does III*, before the filing of the amended complaint in *Does v. MSP*, and since those filings. Moreover, counsel here tried throughout *Does II* to find an appropriate level of partnership with the Oliver Law Group. Unfortunately, irreconcilable differences arose during that case. Counsel have disagreed on strategy, on allocation of the workload, on ethical issues, on interpretation of the co-counsel agreement, on the need for consultation among counsel before communicating with the Court, and on

5

whether to try to resolve issues with opposing counsel before seeking Court intervention. Plaintiffs' counsel do not believe it is appropriate to detail these disagreements in a public filing but can provide more detail to the Court if necessary.

### IV. The Interests of the Class and Judicial Economy Would Be Best Served by Certification in *Does III* and a Stay in *Does v. Michigan State Police*

*Does v. MSP* now has almost identical claims to *Does III*. Only one claim in *Does v. MSP*—a Fourth Amendment seizure claim—does not overlap. *See* Ex. A, Chart Comparing Claims. While there was only partial overlap with the pro se complaint, the now near-total overlap simplifies things. The most straightforward course would be to certify the class in *Does III* by entering the proposed stipulated class certification order, and to stay *Does v. MSP* pending a decision in *Does III*.

Courts have found stays to be an appropriate case management device to handle competing class actions. In *Ebin v. Kangadis Food, Inc.*, 2013 WL 6504555, at *2 (S.D.N.Y., Dec. 11, 2013), the court stayed a putative class action, rather than ordering consolidation with another putative class action, finding that the plaintiffs would be class members in the second case, that consolidation would cause delay, that "the interests of the class heavily weigh towards a stay over consolidation," and that "having multiple lawyers from two firms duplicating efforts" would be inefficient and drive up attorneys' fees. *See also Ohio Env't Council v. U.S. Dist. Ct., S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977) (power to stay rests in trial court's discretion); *Int'l Brotherhood of Elec. Workers, Loc. Union No. 2020, AFL-*

6

*CIO v. AT&T Network Sys.*, 879 F.2d 864, at *8 (6th Cir. 1989) (table) (court has discretion to stay cases to avoid duplicative litigation). Here, given the overlap in claims, having two litigation teams would not bring any benefit but would significantly increase costs to the taxpayer if the class prevails. A stay is more economical.[3]

*Does III* is also the most appropriate case to move forward. The record is better developed, and the parties have agreed on class certification (which to counsel's knowledge has not happened in *Does v. MSP*). *Does III* also raises several claims not included in *Does v. MSP*. *See* Ex. A. Finally, there are questions about whether the incarcerated individuals could be appropriate class representatives.

With respect to the non-overlapping Fourth Amendment claim, if the class is certified, it is for class counsel to decide what claims to bring. Counsel here investigated the Fourth Amendment claim, and concluded that it would not be in the class's best interests to pursue it. If the Court is concerned about preserving the ability of individual *Does v. MSP* plaintiffs to litigate that claim, the Court could allow those individuals to proceed on just that claim, while staying the remainder of the case.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for class certification and appointment as class counsel.

---

[3] It may be appropriate, if the *Does III* plaintiffs prevail, for Ms. Oliver to seek fees for the work done to date, given the time she invested in the putative class case.

Respectfully submitted,

s/ Miriam J. Aukerman (P63165)
Miriam J. Aukerman
Rohit Rajan (AZ 035023)
American Civil Liberties Union
  Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org
rrajan@aclumich.org

s/ Daniel S. Korobkin (P72842)
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6824
dkorobkin@aclumich.org

s/ Paul D. Reingold (P27594)
Cooperating Counsel, American Civil
  Liberties Union Fund of Michigan
Univ. of Michigan Law School
802 Legal Research Building
801 Monroe Street
Ann Arbor, MI 48109-1215
(734) 355-0319 - pdr@umich.edu

s/ Roshna Bala Keen (Ill. 6284469)
Loevy & Loevy
Cooperating Counsel, American Civil
  Liberties Union Fund of Michigan
311 North Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 - roshna@loevy.com

Dated: March 11, 2022

**LOCAL RULE CERTIFICATION**

I, Miriam J. Aukerman, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted material and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 points (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

s/ Miriam J. Aukerman (P63165)
Miriam J. Aukerman
American Civil Liberties Union
  Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org
