# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

## SOUTHERN DIVISION

JOHN DOES, *et al.*

                                Plaintiffs,

v.

GRETCHEN WHITMER, *et al*.,

                                Defendants.

No. 2:22-cv-10209

Hon. Mark A. Goldsmith

Mag. Curtis Ivy, Jr.

---

JOHN DOES, *et al.*,

                                Plaintiffs,

v.

MICHIGAN STATE POLICE, *et al.*

                                Defendants.

No. 2:21-cv-12843

Hon. Mark A. Goldsmith

Mag. Curtis Ivy, Jr.

---

DOE,

                                Plaintiff,

v.

GRETCHEN WHITMER, *et al.*,

                                Defendants.

No. 2:22-cv-10516

Hon. Mark A. Goldsmith

Mag. Curtis Ivy, Jr.

<u>**CASE 2:21-cv-12843 PLAINTIFF'S MEMORANDUM REGARDING
PROPOSED CASE MANAGEMENT ORDER 1**</u>

## I.  INTRODUCTION

Plaintiffs in case 2:21-cv-12843 respectfully submit this Memorandum in support

of a proposed case management order that  (i) consolidates of the above-captioned

actions; (ii) appoints Oliver Law Group PC as Interim Lead Class Counsel and (iii)

appoints all other interested counsel as Interim Co-lead Counsel providing that this

group – one lead counsel supported by co-lead counsel – will collaboratively lead

and coordinate the activities necessary in this litigation and make all decisions –

strategic, procedural and/or substantive on behalf of all plaintiffs; and that in the

event of a disagreement, the decision of Lead Counsel will control.

## II. BACKGROUND

Pro se litigants filed Case No. 2:21-cv-12843 on November 17, 2021.  On January

13, 2022, this Court appointed Alyson Oliver to represent the Plaintiff's and the

putative class. After diligent review and consideration of the time needed to litigate

this case, Ms. Oliver accepted the appointment and has been working on this case

since that time. An Amended Complaint, Motion for Class Certification and

Appointment of Class Counsel.  In that matter, Alyson Oliver and Paul Matouka

have moved to be appointed class counsel.  The other two cases were filed

subsequent to Case No. 2:21-cv-12843, and counsel in Case No. 2:22-cv-10209 have

also moved to be appointed in their case as class counsel.

All these cases address the various unconstitutional provisions of Michigan's newly enacted sex offender registry ("New SORA"). This legislation came on the heels of the successful resolution of *Doe v. Snyder*, 449 F.Supp.3d 719, 735–36 (E.D. Mich. 2020), in which several provisions of its predecessor were found to be unconstitutional. By way of background, that was the only <u>class</u> case ever filed on these issues and was filed by Oliver Law Group P.C. on August 30, 2016. In that case, on September 28, 2016, Alyson Oliver moved for class certification in that case and appointment of as class counsel. When Miriam Aukerman and Paul Rheingold, counsel in Case No. 2:22-cv-10209, inquired about joining in that case, Alyson Oliver invited them into the litigation as co-counsel and amended the Motion to Certify Class and Appoint Class Counsel in that matter to accommodate them as co-counsel on June 28, 2018. That case has since been successfully resolved due to the efforts of <u>all</u> counsel involved. Contrary to assertions otherwise, <u>all</u> counsel have cooperatively and professionally worked together – as late as the week of April 15, 2022 – to resolve all issues in that case, including the amount, timing and division of attorney fees, in full.

## III. THE COURT SHOULD CONSOLIDATE THE RELATED ACTIONS

### A. Standard for Consolidation

Pursuant to Federal Rule of Civil Procedure 42, "[i]f actions before the court

involve a common question of law or fact, the court may (1) join for hearing or trial

any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any

other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a).  Courts are

afforded broad discretion under this rule to consolidate pending cases.  9 *Charles*

*Alan Wright & Arthur R. Miller, Federal Practice and Procedure* § 2385 (2d ed.

1987) The Sixth Circuit has advised courts to consider the following when

determining whether to consolidate pending cases:

> [Whether the specific risks of prejudice and possible confusion [are]
> overborne by the risk of inconsistent adjudications of common factual
> and legal issues, the burden on the parties, witnesses and available
> judicial resources posed by multiple lawsuits, the length of time
> required to conclude multiple suits as against a single one, and the
> relative expense to all concerned of the single one, and the relative
> expense to all concerned of the single-trial, multiple-trial alternatives.

*Cantrell v. GAF Corp.*, 99 F.2d 1007, 1011 (6th Cir. 1993 (quoting *Hendrix v*

*Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 14995 (11th Cir. 1985)).  In addition,

"[c]are must be taken that consolidation does not result in unavoidable prejudice or

unfair advantage." *Id.*

### B.    Consolidation of the Actions is Warranted

Fair and efficient resolution of complex litigation requires at least that (1) the

court exercise early and effective supervision (and, where necessary, control); (2)

counsel act cooperatively and professionally; and (3) the judge and counsel

collaborate to develop and carry out a comprehensive plan for the conduct of pretrial and trial proceedings. *Manual for Complex Litigation, Fourth* p. 7. ("Manual").[1]

Two major advantages of consolidating actions with common questions of law or fact are that consolidation promotes efficiency and reduces costs. *See Mobley v. CIA*, 806 F.3d 568, 578 (D.C. Cir. 2015); *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 839 (7th Cir. 1999) (consolidation is "[b]y far the best means of avoiding wasteful overlap")); and 2) consolidation avoids inconsistent results (see *EEOC v. HBE* Corp., 135 F.3d 543, 551 (8th Cir. 1998)).    The court may consolidate for discovery and other pretrial matters, for trial, or any appropriate process. Fed. R. Civ. P. 42(a)(1)–(3); see *Marmo v. Tyson Fresh Meats*, 457 F.3d 748, 753 (8th Cir. 2006) (12 cases were consolidated for discovery and pretrial proceedings, but not for trial); *In re Air Crash Disaster at Detroit Metro. Airport*, 737 F. Supp. 391, 393– 95 (E.D. Mich. 1989) (consolidation for liability phase). The court may require parties to consolidate their pleadings. *Katz v. Realty Equities Corp.*, 521 F.2d 1354, 1358 (2d Cir. 1975) (ordering consolidated complaint).    Furthermore, Fed. R. Civ. P. 23(d) provides this Court with significant discretion in managing putative class actions. The purpose of this authority is to ensure that class actions are effectively and efficiently managed and to protect the interests of absent members of the class.

---

[1] So important are these principles that they constitute the very first sentence of substantive guidance in the Manual.

*See id.* As the Supreme Court noted in *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99–100

(1981):

> Class actions serve an important function in our system of civil justice.
> They present, however, opportunities for abuse as well as problems for
> courts and counsel in the management of cases. Because of the potential
> for abuse, a district court has both the duty and the broad authority to
> exercise control over a class action and to enter appropriate orders
> governing the conduct of counsel and parties.

Consolidation of the above-captioned actions is warranted because they

involve common questions of law and fact, and consolidation would not result in

any prejudice to the Defendants.  Moreover, the burden on the parties, witnesses and

judicial resources would be considerably lessened if the actions were consolidated.

The lawsuits involve common Defendants, allege many of the same constitutional

violations, and are brought on behalf of substantially similar classes.  These three

cases involve seventy-two named Plaintiffs, twelve named Defendants,

approximately 44,000 putative class members and multiple similar – but not

identical – claims for relief based on allegations of unconstitutionality of various

provisions of New SORA.  The sheer number of litigants that are involved now, as

well as the putative class members who will be affected by resolution of this case is

indicative of the importance of these cases.  The complexity of the issues at hand

have been recognized by <u>all</u> counsel such that a proposed stipulated order allowing

for permission of pages in excess of standard briefing limits to the tune of 75 pages

has been submitted.  These cases are going to require an enormity of work.  In

recognition thereof, it makes good sense to coordinate these cases in a way that corrals the resources of counsel for the benefit of the putative class, promotes efficiency, discourages duplication of effort and does not result in overlapping, duplicity or competition between the cases.  See generally, *Manual* §21.15, p. 263–266.

The cases contain significant overlap in the claims asserted, the evidence that will be necessary to litigate the issues, and the legal remedies sought. However, there are some important differences between the claims asserted in the two cases that warrants an order directing the filing of a consolidated class action complaint.  Case 2:21-cv-12843 contains allegations brought on behalf of persons who will be subjected to SORA as part of their parole. While it may seem as though any determinations that certain provisions of SORA are unconstitutional, Plaintiffs' counsel in this case has learned that the Michigan Parole Board continued to enforce[2] provisions of the previous version of SORA that were explicitly declared unconstitutional on persons being released on parole. Thus, it is a necessity to include Michigan Parole Board Defendants in their official capacity to ensure that they do not enforce unconstitutional SORA provisions on those being released on

---

[2] The Michigan Parole Board has a non-discretionary requirement to require persons subject to SORA to comply with that act as part of their parole conditions. MCL § 791.236(9) ("If the parolee is required to be registered under the sex offender's registration act . . . the parole order must contain a condition requiring the parolee to comply with that act.").

parole.  Case Nos. 2:22-cv-10209 and 2:22-cv-10516, contain no defendants from the Michigan Parole Board and does not include persons who are incarcerated but will be released and subjected to SORA. Thus, permitting either cases case 2:22-cv-10209 or 2:22-cv-10516 to proceed alone will fail to protect the interests of this putative subclass of persons subjected to SORA. In addition, case 2:21-cv-12843 contains fourth amendment violations, where the other cases do not.  Again, the interests of putative class members would not be served by allowing either case 2:22-cv-10209 or 2:22-cv-10516 to proceed without case 2:21-cv-12843.

This Court has the authority and duty to ensure that class actions are managed in a way that protects *all* members of the putative class and efficiently furthers the litigation. *See, e.g.*, Fed. R. Civ. P. 23(d); *Oil Co. v. Bernard*, 452 U.S. 89, 99–100 (1981). Consolidation will ensure that the interests of all putative class members, in both cases, are protected.   A single pleading…can then serve as the vehicle for defining the proposed class and deciding class certification.  *Manual for Complex Litigation, Fourth* § 21.26, p. 276. Additionally, consolidating these cases will promote judicial efficiency in the long run. If this Court were to stay any of the cases, the claims unique to that case might not be litigated for years, potentially denying Plaintiffs relief. Permitting one of the cases to go forward on just its unique claims resolves this issue but decreases judicial and party economy. Defendants would have to defend multiple actions, often involving similar legal and factual issues, this Court

would need to keep multiple class actions on its docket, and Plaintiffs counsel in all cases would likely duplicate efforts in responding to common legal and factual arguments raised by Defendants. Thus, judicial and party economy also support consolidation of these related cases.

Since all of the cases are assigned to not just one Court, but one Judge, achieving a high level of coordination between these cases that honors these goals should not be difficult at all. Ultimately, there is no necessity to stay any of the cases. Rather, the cases should be consolidated, interim class counsel appointed; and a scheduling order issue that provides for the filing of a consolidated complaint that encompasses all of the claims.

## IV. THE COURT SHOULD APPOINT ATTORNEYS OF OLIVER LAW GROUP AS INTERIM CLASS COUNSEL AND OTHER COUNSEL AS CO-LEAD COUNSEL

### A. Standard for Appointment of Interim Class Counsel

Federal Rule of Civil Procedure 23(g)(3) provides that "[t]he court may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). Similarly, the Manual recommends that early in complex litigation the court select and authorize one or more attorneys to act on behalf of other counsel and their clients. Counsel so designated "assume a responsibility to the court and an obligation to act fairly,

efficiently, and economically in the interests of all parties and partis' counsel."
*Manual* §10.22.

In coordinated multi-party litigation, a court will need to institute procedures under which one or more attorneys are selected and authorized to act on behalf of other counsel and their clients with respect to specified aspects of the litigation. *Manual for Complex Litigation, Fourth* §10.22, p. 24.  Different categories of such counsel may include liaison counsel, lead counsel, trial counsel, committees of counsel, and the types of these appointments and assignments depend on many factors, the most important of which is achieving efficiency and economy with jeopardizing fairness to the parties. *Manual for Complex Litigation, Fourth* §10.22, p. 25.

Appointment of interim class counsel is appropriate at this time.   Appointment of interim class counsel will define the roles and responsibilities of the different plaintiff law firms presently in these cases, will encourage those so appointed to zealously invest their time and financial resources in the litigation, will eliminate doubt about their role in the litigation should additional related cases be filed, and will avoid districting a protracted leadership contests if other related cases are later filed. This will increase judicial and party economy and ensure that resources are focused on the most important aspect of these cases, the substantive disputes between Plaintiffs and Defendants concerning the constitutionality of New SORA.

Although neither Rule 23(g) nor the Advisory Committee Notes explicitly defined the standards for appointing *interim* class counsel, courts have held that the same standards apply as when selecting class counsel at the class certification stage. See, e.g., *Hill v. Tribune Co.*, No. 05 C2606, 2005 WL 3299144, at *3 (N.D> Ill. Oct. 13, 2005) ("Rule 23(g) provides criteria to consider when appointing class counsel. No distinction is made regarding appointing interim counsel"). Therefore, the Court must consider the following factors in appointing interim class counsel:

> 1) the work that counsel has performed in identifying or investigating potential claims in the action; 2) counsel's experience in handling class actions, other complex litigation, and the claims of the type asserted in the action; 3) counsel's knowledge of the applicable law; and 4) the resources that counsel will commit to representing the class.
>
> *In re Delphi ERISA Litig.*, 230 F.R.D. 496, 498 (E.D. Mich. 2005) (*citing* Fed. R. Civ. P. 23(g)(1)(C)(I).

The "Court may also consider other matter [sic] pertinent to counsel's ability to fairly and adequately represent the interests of the class." Id. (*citing* Fed. R. Civ. P. 23(g)(1)(ii)); se also Fed. R. Civ. P. 23(g)(2) (Standard for Appointing Class Counsel) and (4) (Duty of Class Counsel).

## B.    Oliver Law Group P.C. Has the Experience and Expertise to Fairly and Adequately Represent the Putative Class

The Oliver Law Group PC attorneys have spent significant amounts of time and energy identifying and investigating potential claims in the action. The initial complaint that Oliver Law Group PC was appointed to had listed 44,000 unnamed

Plaintiff's as the class representatives and 56 named class representatives. The complaint required extensive modification to not only drop unviable claims but to successfully plead viable claims previously brought but not artfully pled, and to add claims that had not been brought that should have been. This required long hours of research and drafting. Communication was established, class representatives were consulted, strategy was explained, and permissions were obtained. While this short sentence describes the activity, it does little to illustrate the magnitude of this lift. Achieving this consensus took an inordinate amount of time, patience, explanation, dedication and skill. The comprehensive Amended Complaint in Case No. 2:21-cv-12843 is a testament to the time and resources counsel has expended thus far in communicating, examining, articulating and streamlining the named plaintiffs and claims in the litigation. Moreover, as detailed below, Oliver Law Group P.C. has ample experience handling class actions, constitutional actions and complex litigation. Additionally, Oliver Law Group P.C. is knowledgeable about the applicable federal laws and authority and will consistently dedicate their time and resources to representing the putative class.

To satisfy the adequacy requirement, class counsel must be able to vigorously prosecute the interests of a class. *Jackson's Five Star Catering, Inc. v. Beason*, No. 10-CV-10010, 2012 WL 3205526, *2 n.2 (E.D. Mich. July 26, 2012) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996)). Lengthy adjournments

awaiting 'legislative response' should not again occur as it did in prior SORA litigation.  While some accommodation for a legislative response may be appropriate if there is tangible indication that same would be forthcoming; but where there is no such indication adjournments for months or years at a time to secure same should not be anticipated or permitted. Furthermore, these cases concern the enforcement of New SORA, waiting significant periods of time for a non-party – the Michigan Legislature – to *potentially* resolve the dispute deprives Plaintiffs and Defendants of certainty regarding their respective obligations and authority. Oliver Law Group is dedicated to timely bringing this case to a successful conclusion.

The Oliver Law Group has extensive experience litigating complex actions through the United States and in the Eastern District of Michigan.  Oliver Law Group has been appointed in leadership positions and has had substantial responsibility in numerous complex litigations.  See **Exhibit A1&A2**.  As Alyson Oliver's curriculum vitae reflects, she has been appointed time and time again both in Michigan and nationally to leadership positions in complex litigation, including class actions, and multi-district litigation.  These appointments reflect a broad recognition of Alyson's leadership and litigation skills by scores of Federal and State court judges alike. Most recently, Oliver Law Group was appointed by Judge Joy Flowers-Conti in the Western District of Pennsylvania in Philips Recalled Cpap, Bi-Level Pap, and Mechanical Ventilator Products Litigation, MDL 3014 to serve as leadership counsel

for the Time and Expense Committee.  This litigation includes both class cases and personal injury cases.  The entrustment of an entire and extensive MDL's common benefit fund and the task of authorizing or rejecting time and expenses of hundreds of firms across the country is reflective of Alyson's ability to garner consensus and respect, build relationships, and her steadfast commitment to efficiency in the most complex of litigations.

In addition, Alyson Oliver has a strong background in criminal defense, focusing almost a decade of her 23-year career in this field of law.[3] Alyson Oliver's near decade of experience in criminal defense provides a depth of understanding into the issues in play in this case, particularly the difficulties encountered by SORA registrants in understanding and attempting to comply with very complicated provisions and the punitive effect of SORA on registrants, and how this and prior litigation affects them.  This litigation requires leadership that not only understands and appreciates the realistic needs of the putative class but is also willing to assist them navigate their obligations as the SORA landscape shifts and changes.

In *Doe v. Snyder*, 449 F.Supp.3d 719, 735–36 (E.D. Mich. 2020), Oliver Law Group consistently and timely handled most class members inquiries and continues

---

[3] Indeed, Ms. Oliver successfully tried *People v. Mark Holsworth*, Oakland County Case No. 2004-195788-FH before your Honor in 2004 when your Honor was first appointed to the bench.  That case was a 3rd Degree Criminal Sexual Conduct (force) case resulting in a hung jury and subsequent beneficial plea offer.

to do so to this day.  Consistent with the agreement between counsel in that matter[4] Oliver Law Group took the laboring oar in communications with class members. Similar to being willing to take on the *pro se* complaint with the plethora of named Plaintiff's with whom communication is key to move forward in a successful and efficient way; Oliver Law Group P.C. will again in this case maintain timely and consistent communications with the same set of class members for whom this obligation is already being met primarily by Oliver Law Group P.C.  The entire point of these pending cases and their predecessor is to secure relief from unconstitutional provisions related to SORA; and that goal is not met when class members lack understanding of what the relief sought or achieved actually means.   Alyson's criminal defense background provides the practical understanding of this reality, and the resources necessary to make it happen.

In addition to the other complex civil cases listed in Alyson Oliver's curriculum vitae, the magnitude of Ms. Oliver's appointment to leadership positions in complex litigations nationally is indicative of her willingness to coordinate and cooperate with other Plaintiff's counsel.  In short, in weighing the experience and ability to coordinate the litigation, Oliver Law Group has a proven record not only overall in successfully leading cohesive and cooperating counsel in a broad range of

---

[4] Other counsel in that matter is generally the same counsel in this matter seeking a stay and arguing against a shared leadership structure.

litigations, but in fact with the very counsels involved in this matter. Oliver Law Group recognizes the experience and skills of proposed class counsel in the other cases before this Court and believes that working together within this proposed framework will provide Plaintiffs and this Court with the best representation, arguments, efficiency, and outcome.

Whereas other counsel herein has stated to this Court that they perceived problematic issues regarding their experience coordinating with Oliver Law Group P.C. in the prior litigation involving SORA, these perceptions were expressed only after 1) Oliver Law Group P.C. requested a settlement conference to finally conclude the prior litigation as provided for by order in that matter; 2) Oliver Law Group P.C. would not agree to stay the instant Case No. 2:21-cv-12843 for other counsel's benefit; and 3) Oliver Law Group P.C. criticized the conduct of other counsel in knowingly soliciting a long-time client of Oliver Law Group P.C. to further their complaint herein, which impaired the trust provided to them when that client was brought into the previous litigation by Oliver Law Group P.C.  If counsel were genuinely unable to professionally and cooperatively work together, issues would have arisen throughout the multiple years that the pervious litigation was pending; and would continue through the attorney fee phase which is historically the most challenging.  Rather, counsel has consistently been able to work professionally and

cooperatively together.[5] Contrary to assertions otherwise, <u>all</u> counsel have cooperatively and professionally worked together – as late as the week of April 15, 2022 – to resolve all issues in the previous SORA case, including the amount, timing and division of attorney fees, in full.

The tactic of filing competing class actions and attempting to force early orders is not condoned. "Competing class actions may produce a race to certification in different courts for the perceived advantages…. such efforts should not influence the timing of the certification decision, and, through coordination with other courts, the judge should avoid facilitating such adversarial contests." *Manual* p. 265. Understanding this concept, Oliver Law Group P.C. stipulated to orders staying the Defendant's first responsive pleadings in these matters such that this Court can effectively organize this litigation whereas others continued to push for hasty decisions. Oliver Law Group's experience with complex litigation that includes the coordination of various law firms is evident.

As to the adequacy of counsel, that requirement is met where "class counsel are qualified, experienced and generally able to conduct the litigation". *Walters, Id.* Here the proposed class counsel are Alyson Oliver and Paul Matouka of the Oliver Law Group, who have vast experience in criminal defense of the same class of

---

[5] Oliver Law Group P.C. has also served as local counsel for Loevy & Loevy on various occasions, having been able to cooperatively and professionally work with this firm as well.

people as will be represented in this case and national as well as state specific complex and high stakes litigation, including class litigation regarding the constitutionality of SORA, living conditions in the infamous Parchman prison in Mississippi and various other constitutional claims. **Exhibit A1&A2**. Additionally, in serving on multiple coordinated proceedings in leadership roles in federal courts nationally, Alyson Oliver has had the exposure to the value the judiciary places on cooperation between counsel in coordinated proceedings; it is often one of the determining factors as to whether proposed counsel will be considered for such positions. Especially here, where there will likely be additional related cases filed, it will be imperative that class counsel that this Court may appoint is willing to work with any counsel whose cases may be involved in or effected by the litigation. As the old adage holds, "actions speak louder than words"; the undersigned has actively and repeatedly demonstrated appreciation of the need for cooperation and the ability to do so in all consolidated cases in which it is involved and will do so in this case. Inevitably there are going to be differences of opinion between counsel – of which all may be valid in one way or another. The leadership structure should allow for collaboration of all counsel and the talents and resources they bring to the table, but also provide that lead counsel has the ability to direct the course of litigation where differences remain.

Alyson Oliver and Paul Matouka have the time, resources, and expertise to appropriately prosecute the case and successfully coordinate these proceedings. In proceedings such as this it is imperative that the case is staffed with enough attorneys to be able to timely move the litigation and be available to do so when their colleagues are predisposed. In the last conference in these cases, the unavailability of other counsel for an extended period of time was discussed. It is normal and expected that all counsel may not be available at all times; therefore, planning for that reality and staffing the case accordingly makes good sense. The suggested leadership structure discussed herein does just that. This putative class deserves the best leadership team available, which is what is suggested herein. Furthermore, Oliver Law Group's proposed structure ensures that Plaintiffs in all cases have a single forum to look to and a core group of attorneys[6] that can, and will, combine all their skills and experience to focus and advance the litigation.

## Conclusion

Consolidation of these cases is appropriate and will facilitate efficiency, reduce costs and prevent inconsistent results. This Court should enter a proposed case management order that (i) consolidates of the above-captioned actions; (ii) appoints Oliver Law Group PC as Interim Lead Class Counsel, (iii) appoints all other

---

[6] Including proposed class counsel in the other New SORA cases presently before this Court.

interested counsel as Interim Co-lead Counsel providing that this group – one lead counsel supported by co-lead counsel – will collaboratively lead and coordinate the activities necessary in this litigation and make all decisions – strategic, procedural and/or substantive on behalf of all plaintiffs; and that in the event of a disagreement, the decision of Lead Counsel will control, and (iv) provides for the filing of an Amended Complaint.

 

                                    Respectfully Submitted,

April 15, 2022                        */s/Alyson Oliver*
                                    Attorney for Plaintiffs
                                    OLIVER LAW GROUP PC
                                    1647 W. Big Beaver Road
                                    Troy, MI 48084
                                    (248) 327-6556
                                    notifications@oliverlawgroup.com

April 15, 2022                        */s/Paul Matouka*
                                      Attorney for Plaintiffs
                                    OLIVER LAW GROUP PC
                                    1647 W. Big Beaver Road
                                    Troy, MI 48084
                                    (248) 327-6556
                                    notifications@oliverlawgroup.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 15, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties that are CM/ECF participants in this action.

OLIVER LAW GROUP, P.C.

*/s/Alyson Oliver*
Attorney for Plaintiffs
OLIVER LAW GROUP PC
1647 W. Big Beaver Road
Troy, MI 48084
(248) 327-6556
notifications@oliverlawgroup.com