UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOES A, B, C, D, E, F, G, H, MARY DOE and MARY ROE, on behalf of themselves and all others similarly situated,

    Plaintiffs,

v

GRETCHEN WHITMER, Governor of the State of Michigan, and COL. JOSEPH GASPER, Director of the Michigan State Police, in their individual capacities,

    Defendants.

No. 2:22-cv-10209

HON. MARK GOLDSMITH

MAG. CURTIS IVY, JR.

## EXHIBIT A

Doe v Snyder Op. June 21, 2021

2022-0341402-A

2021 WL 2525436
Only the Westlaw citation is currently available.
United States District Court, E.D. Michigan,
Southern Division.

John DOE, et al., Plaintiffs,
v.
Richard SNYDER, et al., Defendants.

Case No. 16-13137
|
Signed 06/21/2021

**Attorneys and Law Firms**

Daniel S. Korobkin, American Civil Liberties Union Fund of Michigan, Detroit, MI, Miriam J. Aukerman, American Civil Liberties Union of Michigan West Michigan Regional Office, Grand Rapids, MI, Paul D. Reingold, University of Michigan, Ann Arbor, MI, Alyson L. Oliver, Oliver Law Group PC, Troy, MI, for Plaintiffs.

Joseph T. Froehlich, Mark E. Donnelly, Michigan Department of Attorney General, Complex Litigation Division, B. Eric Restuccia, Michigan Department of Attorney General, Elizabeth M. Watza, Michigan Dept. of Attorney General, State Operations Division, H. Steven Langschwager, Michigan Department of Attorney General, MDOC Division, Jared D. Schultz, Michigan Departmetn of Attorney General, John S. Pallas, Michigan Department of Attorney General, Appellate Division, Lansing, MI, Jessica L. Mullen, Michigan Department of Attorney General, Labor Division, Detroit, MI, for Defendants Richard Snyder, Col. Kriste Etue.

**OPINION AND ORDER GRANTING IN PART PLAINTIFFS' "MOTION FOR JUDGMENT" AND PLAINTIFFS' "AMENDED MOTION FOR JUDGMENT" AND DENYING DEFENDANTS "MOTION TO CLARIFY INJUNCTION"**

ROBERT H. CLELAND, UNITED STATES DISTRICT JUDGE

*1 Plaintiffs bring constitutional challenges to Michigan's Sex Offender Registration Act ("SORA") on behalf of a certified class comprised of multiple subclasses. On February 14, 2020, this court entered an opinion invalidating portions of Michigan's SORA statute as a result of various constitutional violations. (ECF No. 84.) Due to the emerging Coronavirus pandemic ("COVID-19"), in April 2020 the court entered an "Interim Order Delaying Entry of Final Judgment" that preliminarily enjoined the reporting requirements of Michigan's sex offender registry. (ECF No. 91.) Pending before the court are Plaintiffs' two motions requesting the entry of a final judgment in the case.[1] (ECF Nos. 99, 107.) Defendants have also filed a competing motion requesting the entry of an order "clarifying" and extending the interim injunction already in place. (ECF No. 113.) The motions have been fully briefed, and the court concludes that a hearing is not necessary. *See* E.D. Mich. LR 7.1(f)(2). For the reasons explained below, the court will grant Plaintiffs' motions, in part, and deny Defendants' motion.

**I. BACKGROUND**

**A. Procedural History**

This case has a long and complex procedural history which the court summarizes below. After a previous constitutional challenge to SORA resulted in parts of the statute being declared unconstitutional, *Does #1-5 v. Snyder*, 834 F.3d 696, 706 (6th Cir. 2016) ("*Does I*"), Plaintiffs brought the present class action again challenging the constitutionality of parts of the SORA statute. *John Doe et al. v. Snyder*, No. 16-13137 (E.D. Mich.) ("*Does II*").

The *Does II* second amended complaint contains four counts:

(1) a due process challenge based on vagueness to the following provisions SORA:

(a) the prohibition on working within a student safety zone, Mich. Comp. Laws. §§ 28.733–734;

(b) the prohibition on loitering within a student safety zone, Mich. Comp. Laws. §§ 28.733–734;

(c) the prohibition on residing within a student safety

zone, Mich. Comp. Laws. §§ 28.733, 28.735;

(d) the requirement to report "[a]ll telephone numbers ... routinely used by the individual, Mich. Comp. Laws. § 28.727(1)(h);

(e) the requirement to report "[a]ll electronic mail addresses and instant message addresses ... routinely used by the individual," Mich. Comp. Laws. § 28.727(1)(l); and

(f) the requirement to report "[t]he license plate number, registration number, and description of any motor vehicle, aircraft, or vessel ... regularly operated by the individual," Mich. Comp. Laws. § 28.727(1)(j).

(2) a due process challenge based on SORA's imposition of a strict liability scheme for violations of the act;

(3) a First Amendment challenge based on:

(a) the requirement "to report in person and notify the registering authority ... immediately after ... [t]he individual ... establishes any electronic mail or instant message address, or any other designations used in internet communications or postings," Mich. Comp. Laws. § 28.725(1)(f); and

**\*2** (b) the retroactive incorporation of the lifetime registration's requirement to report "[a]ll electronic mail addresses and instant message addresses assigned to the individual ... and all login names or other identifiers used by the individual when using any electronic mail address or instant messaging system," Mich. Comp. Laws. § 28.727(1)(i); and

(4) an ex post facto challenge based on Defendants' continued enforcement of the 2006 and 2011 amendments.

(ECF No. 34, PageID.384-87.)
The certified class in *Does II* includes three distinct classes. Plaintiffs define the primary class as all people who are or will be subject to registration under SORA. The primary class seeks relief on Count I (vagueness); Count II (strict liability) and Count III (First Amendment). (EFC No. 46, PageID.693.) The subclasses seek relief on Count IV (ex post facto) and are defined as follows:

(1) The "pre-2006 ex post facto subclass" is defined as members of the primary class who committed their offense or offenses requiring registration before January 1, 2006, and who have committed no registerable offense since.

(2) The "2006-2011 ex post facto subclass" is defined as members of the primary class who committed their offense or offenses requiring registration on or after January 1, 2006, but before April 12, 2011, and who have committed no registerable offense since.

(*Id.*)

On February 14, 2021, the court granted Plaintiffs' motion for partial summary judgment in *Does II*. (ECF No. 84.) The court first held that the 2011 amendments to SORA constituted an ex-post-facto punishment that "cannot be severed from the statute" so "SORA *in toto* cannot be applied to any members of the ex post facto subclasses" who were convicted before enactment of the 2011 amendment. (*Id.*, PageID.1797.) The court also found several other SORA provisions were unconstitutional as to the primary class—sex-offenders who were convicted after enactment of the 2011 amendment. (*Id.*, PageID.1802.) Specifically, the court held:

Consistent with the court's reasoning and findings in *Does I*, the following provisions for SORA will be declared unconstitutional as to all registrants:

(a) Provisions Void for Vagueness:

(1) the prohibition on working within a student safety zone, Mich. Comp. Laws. §§ 28.733–734;

(2) the prohibition on loitering within a student safety zone, Mich. Comp. Laws. §§ 28.733–734;

(3) the prohibition on residing within a student safety zone, Mich. Comp. Laws. §§ 28.733, 28.735;

(4) the requirement to report "[a]ll telephone numbers ... routinely used by the individual," Mich. Comp. Laws. § 28.727(1)(h);

(5) the requirement to report "[t]he license plate number, registration number, and description of any motor vehicle, aircraft, or vessel ... regularly operated by the individual," Mich. Comp. Laws. § 28.727(1)(j).

(b) Provisions Void for Strict Liability:

(1) under the Due Process Clause of the U.S. Constitution, SORA must be interpreted as incorporating a knowledge requirement.

(c) Provisions Void under the First Amendment:

(1) the requirement "to report in person and notify the registering authority ... immediately after ... [t]he individual ... establishes any electronic mail or instant message address, or any other designations used in internet communications or postings," Mich. Comp. Laws. § 28.725(1)(f);

(2) the requirement to report "[a]ll telephone numbers ... routinely used by the individual," Mich. Comp. Laws. § 28.727(1)(h);

*3 (3) the requirement to report "[a]ll electronic mail addresses and instant message addresses ... routinely used by the individual, Mich. Comp. Laws. § 28.727(1)(l);

(4) the retroactive incorporation of the lifetime registration's requirement to report "[a]ll electronic mail addresses and instant message addresses assigned to the individual ... and all login names or other identifiers used by the individual when using any electronic mail address or instant messaging system," Mich. Comp. Laws. § 28.727(1)(i).

(*Id.*, PageID.1802-03.) And the court found that the Michigan State Police SOR Unit should be required to provide "notice of the relief granted in [the court's] order to all SORA registrants, law enforcement officials, and prosecuting attorneys." (*Id.*, PageID.1803-04.)

In order to effectuate its decision, the court ordered "that Plaintiffs submit a joint, proposed form of judgment encapsulating these rulings by March 13, 2020." (*Id.*, PageID.1808.) The parties were unable to carry out this directive, however, before COVID-19 shut down much of the state only a few weeks after the opinion was issued; making it "effectively impossible [to enter] a final order providing complete relief." (ECF No. 91, PageID.1847.) As a temporary solution to address the uncertainty created by the court's ruling, in April 2020, the court entered an "Interim Order Delaying Entry of Final Judgment, Preliminarily Enjoining Reporting Requirements, and Directing Publication." (ECF No. 91.)

The interim order suspended in-person reporting requirements for all sex offenders in the primary class during the state of emergency because the "COVID-19 pandemic makes in-person compliance with SORA effectively impossible." (*Id.*, PageID.1849.) And it suspended "enforce[ment of] registration, verification, school zone, and fee violations of SORA that occurred or may occur from February 14, 2020, until the current crisis has ended, and thereafter until registrants are notified of what duties they have under SORA going forward." (*Id.*, PageID.1850.)

While the interim order remained in place, on December 31, 2020, the Michigan Legislature passed Public Act 295 ("new SORA") which adopted numerous amendments to Michigan's SORA statute designed to address the constitutional infirmities that this court found in the registry. (ECF No. 113, PageID.2294.) The new SORA became effective March 24, 2021, and all parties acknowledge that the new SORA removes or modifies all provisions that this court found to be unconstitutional in its February 14, 2021 opinion in *Does II.* (*See Id.*, PageID.2295-99; ECF No. 107, PageID.2144.) While Plaintiffs comment that the new SORA also contains unconstitutional provisions and that "in some respects [the change] makes the law even more punitive and unclear," they concede that challenges to the new version will need to be addressed in a subsequent and separate lawsuit, and contend that the court should still enter a final judgment in this case. (ECF No. 107, PageID.2144-45.) Defendants, however, continue to argue that the court should not enter a final judgment in the case until a related lawsuit that is currently pending before the Michigan Supreme Court is decided. (*See* ECF 110.)

### B. Related Michigan Supreme Court Case

*4 Defendants' briefs point to and rely upon an appeal in a criminal case now before the Michigan Supreme Court, *People v. Betts*, No. 14-8981 (Mich.). *Betts* involves a criminal defendant who challenges his conviction of failing to register under SORA. Defendant/Appellant Betts was convicted in 1994 for the crime subjecting him to SORA registration. (ECF No. 84, PageID.1784 n.2.) The Michigan Supreme Court granted leave to appeal and issued a briefing order directing the parties to address the following issues:

(1) whether the requirements of the Sex Offenders Registration Act (SORA), MCL 28.721 et seq., taken as a whole, amount to "punishment" for purposes of the Ex Post Facto Clauses of the Michigan and United States Constitutions;

(2) if SORA, as a whole, constitutes punishment, whether it became punitive only upon the enactment of a certain provision or group of provisions added after the initial version of SORA was enacted;

(3) if SORA only became punitive after a particular enactment, whether a resulting ex post facto violation would be remedied by applying the version of SORA in effect before it transformed into a punishment or whether a different remedy applies;

(4) if one or more discrete provisions of SORA, or groups of provisions, are found to be ex post facto punishments, whether the remaining provisions can be given effect retroactively without applying the ex post facto provisions;

(5) what consequences would arise if the remaining provisions could not be given retroactive effect; and

(6) whether the answers to these questions require the reversal of the defendant's conviction pursuant to MCL 28.729 for failure to register under SORA.

(ECF No. 66-2, PageID.979–80.) The *Betts* court has still not reached a decision in the case, and in February 2021, the state filed a supplemental brief. (See ECF No. 110-1.) The brief requests that the court also decide if the new version of SORA, that became effective in March 2021, should be applied retroactively to the conduct of registrants that occurred before the statute's enactment.

## II. ENTRY OF A FINAL JUDGMENT

### A. Mootness

Now that the Legislature has amended Michigan's sex offender registry to remove the provisions found unconstitutional in *Does I* and *Does II*, the parties first contest whether the entry of a final judgment is necessary or if the case is now moot.

"[A] case is moot, [when the court] lack[s] jurisdiction to proceed. *Ramsek v. Beshear*, 989 F.3d 494, 499 (6th Cir. 2021) (citing *Ohio v. EPA*, 969 F.3d 306, 308 (6th Cir. 2020) ("[U]nder Article III, the 'federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.' ")) (quotations omitted). "To assess whether a case is moot, [the court must] ask 'whether the relief sought would, if granted, make a difference to the legal interests of the parties.' " *Id.* (citing *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc)).

The parties essentially agree that the question of mootness turns on whether the new SORA statute applies retroactively to conduct that occurred before the statute's enactment. To make their arguments, the parties rely on two separate principles of Michigan law that deal with the retroactive application of statutes after they are modified by the Legislature.

The first principle is that changes to a statute, by default, operate prospectively. *People v. Russo*, 439 Mich. 584, 594, 487 N.W.2d 698, 702 (1992) ("The general rule of statutory construction in Michigan is that a new or amended statute applies prospectively unless the Legislature has expressly or impliedly indicated its intention to give it retrospective effect.") Due to this prospective orientation, the legislature has enacted what is referred to as the "general savings clause" which provides that "the repeal of any statute or part thereof shall not have the effect to release or relinquish any penalty, forfeiture, *or liability* incurred under such statute ... unless the repealing act shall so expressly provide." Mich. Comp. Laws Ann. § 8.4a (emphasis added). For all practical purposes, this means that an individual can be held criminally liable for past violations of a repealed/amended statute.[2]

*\*5 The second Michigan retroactivity doctrine at issue is the concept of amelioration. The seminal Michigan case on the concept of amelioration is a plurality opinion in *People v. Schultz*, 435 Mich. 517, 520, 460 N.W.2d 505, 506 (1990). In *Schultz*, a defendant was convicted of possession of a large quantity of cocaine. *Id.* at 507. And he was "sentenced to twenty to thirty years imprisonment" as the statute required "a mandatory twenty-year minimum term of imprisonment." *Id.* However, while defendant's conviction was on appeal, a new statute "reduced the mandatory minimum term of imprisonment from twenty years to ten." *Id.* While the prosecution argued "that both the action to enforce criminal liability and the terms of punishment authorized in the statutes prior to amendment remain in effect by operation of the general saving statute, M.C.L. § 8.4a," the Michigan Supreme Court held that section 8.4a "does indicate that conduct remains subject to punishment" but it "does not" apply "where an amendatory act mitigates the authorized terms of punishment but *continues to proscribe the same conduct*." *Id.* at 509-10 (emphasis added).

The ameliorative effect clearly applies when "a new,

identical statute" is passed that simply reduces the minimum sentence; however, the Michigan Court of Appeals has found a legislative act that makes further modifications to a criminal statute cannot be interpreted as to have retroactive effect without creating potential ex post facto constitutional violations. See *People v. Doxey*, 263 Mich. App. 115, 120, 687 N.W.2d 360, 363-64 (2004) (finding that the amelioration principle did not apply to a statute that "not only amelioratively amended the sentencing provision of the statute, but also changed the breakdown of the prohibited conduct contained in the statute, including the addition of a new crime of delivery of over 100 grams").

Applying these principles, Defendants argue that the changes to SORA regulations contained in the new statute should "apply retroactively." (ECF No. 110, PageID.2174.) Defendants reason that "[i]f the full measure of the reporting obligations and student safety zone restrictions under Michigan's Sex Offenders Registration Act constitute punishment, then the Legislature's act in reducing some of these duties—e.g., allowing for a method of reporting other than in-person for certain minor changes and eliminating the student safety zones in total—is ameliorative and operates retroactively for pending cases." (*Id.*) To support their theory, Defendants argue that while the "unrevised SORA constitute[d] [a] punishment," the "revised SORA is now ... fully regulatory and non-punitive so it can be applied retroactively without raising new ex-post facto constitutional concerns." (*Id.*, PageID.2180-82 ("[T]he Legislature has pruned [the] punitive elements" of the old SORA "leaving again a true regulatory scheme").) Defendants contend that registrants who violated provisions of the old SORA, which this court previously found unconstitutional, could not be prosecuted going forward for such violations due to the new SORA's retroactive nature. And thereby has the case become moot. (*Id.*, PageID.2185 (" '[T]he [new SORA] irrevocably eradicated the effects of the alleged [constitutional] violation,' there is no controversy left for the court to decide").)

Plaintiffs reject this analysis. They contend that "[u]nder clear state statutory and case law, criminal liability is governed by the law in effect when the offense occurs. Moreover, the 'amelioration' doctrine does not apply because the punishment for SORA violations is unchanged, and because any 'amelioration' in SORA 2021 goes to punishment for the underlying sex offense, not for alleged violations of SORA itself." (ECF No. 112, PageID.2253-54.) Plaintiffs contend that the present case "is not moot because anyone who committed a SORA compliance offense before March 24, 2021 can still be prosecuted under the old SORA, and will remain liable until [Michigan's] six-year statute of limitations runs." (*Id.*, PageID.2254.) Therefore, it argues that the entry of a final judgment is required to prevent such prosecutions going forward.

**\*6** After review of the relevant case law, the court is inclined to adopt Plaintiffs' much simpler approach. First, it is undisputed that Public Act 295 of 2020, which enacted the new version of SORA, does not expressly state that it should be applied retroactively, so the court is left to glean any such intent from the nature of the statutory provisions. See *Schultz*, 460 N.W.2d at 512. While Defendants present an interesting argument for why the court should consider the new SORA to be only an ameliorative regulatory statute, at the same time they argue that the statute eliminates provisions of the sex-offender registry the court has already found to be unconstitutional under the ex-post facto clause. (*See* ECF No. 110, PageID.2182 ("[T]he unrevised SORA is a regulatory scheme with some elements that have made it [a criminal] punitive [law] ... the Legislature has pruned those punitive elements ... leaving again a true regulatory scheme").) By Defendants' own admission, this would be a novel application of the concept of amelioration under Michigan law. (*See id.*) Michigan law does not allow Defendants to have it both ways.

Put simply, the present situation is much closer to *Doxey* then *Schultz*. The new SORA is not "a new, identical statute" that merely changes the punishment for a specific offense, *see Doxey*, 687 N.W.2d at 363, instead it eliminated entire provisions, like the school safety zone requirement that the court found to be criminal in nature. Furthermore, just as in *Doxey*, Defendants' interpretation would raise new ex post facto concerns because the new SORA also modified at least some reporting requirements. See *id.* at 364. (*See* ECF No. 112, PageID.2256 (citing M.C.L. § 28.727(1)(h); § 28.722(g)) (highlighting that the new SORA broadens what telephone numbers and internet identifiers must be reported by registrants).) Michigan precedent finds that—absent an express declaration of retroactive intent by the Legislature—when one interpretation raises significant ex post facto concerns, the court should hew to an interpretation that does not raise such concerns. *Id.* Consequently, the court concludes that the new version of SORA applies only to registrants' conduct *on or after* March 24, 2021.

**B. Preclusive Effects of the Final Judgment**

In the alternative, Defendants argue that the court should not rule on the new SORA's retroactivity—or should at least hold off on such a ruling—because the Michigan Supreme Court could decide the same issue. *People v. Betts*, No. 14-8981 (Mich.) (ECF No. 110, PageID.2188-92.) The court is not convinced, as a matter of law or as a practical matter, that further delay is justified.

The retroactive application of the new SORA statute was not among the six questions the Supreme Court stated it would consider when, in June 2019, it granted leave to appeal in the *Betts* case. (ECF No. 66-2, PageID.979-80.) Defendants, however, did raise the issue in a supplemental brief it filed in *Betts* in February 2021, so the Court could potentially weigh in. (*See* ECF No. 110-1.)

This court's previous ruling on the question of certification, involving a slightly different retroactivity question, in its February 2020 opinion rejects many of the same arguments that Defendants now raise. (*See* No. 84.) As the court pointed out, "the issues in *Betts* are not identical to the remaining questions of law in this case." (*Id.*, PageID.1791.) And the *Betts* court may not even decide all the questions before it in *Betts*. (*See id.*) This court does not view the application of either Section 8.4a or the state's amelioration doctrine to be an unsettled area of Michigan law, even if Defendants' own arguments on the topic appear novel. So, there is no unsettled question of law that alone justifies continued delay in the resolution of a case that has already resulted in over nine years of combined litigation. Furthermore, it is important to remember that Michigan Supreme Court is under no obligation to hear the case at all. In light of this court's February 2020 ruling and enactment of the new *SORA*, it is possible that the Court could now simply vacate its order, reject the appeal, and reach no decision on the matter.

**\*7** From a practical perspective, a Michigan Supreme Court ruling on whether the new SORA can be applied retroactively is unlikely to have any impact if issued after this court enters a final judgment. If the *Betts* court reaches the question of retroactivity and concurs in this court's holding—that the new version of SORA should not be applied retroactively to conduct that occurred before March 24, 2021—then nothing changes because this court has already found the disputed provisions of the old SORA statute to be unconstitutional on Federal grounds. If the *Betts* court reaches the question and concludes the opposite—holding that the new SORA applied retroactively and ameliorated SORA's old, unconstitutional provisions—then Defendants still cannot be charged for violations of the disputed provisions of the old SORA. (*See* ECF No. 110, PageID.2181 (Defendants charting the "timing of offense" and the "applicable version of SORA").) So, as a practical matter, nothing would change for the class members.[3] If, on the other hand, this court waited for the Michigan Supreme Court to issue a ruling, the class members could be left with the current confusion while awaiting a Michigan Supreme Court decision that may never come. For all these reasons, the court concludes that a further delay in the entry of a final judgment is inappropriate.

### III. CONTENTS OF FINAL JUDGMENT

The parties also continue to disagree on the contents of the final judgment. The issues have been fully briefed, and the court will now address the most pressing disputes.[4]

#### A. Incorporation of the Interim Order

The parties' positions regarding the incorporation of the interim order—whereby the court suspended the entry of only the final judgment—have evolved over multiple rounds of briefing. Plaintiffs initially proposed that the text of the final judgment should contain a paragraph "incorporat[ing] this Court's interim order barring enforcement of registration, verification, school zone, and fee violations of [old] SORA that occurred [after] February 14, 2020." (ECF No. 99, PageID.1891.) The Plaintiffs contended that incorporation would serve two purposes, (1) it would clarify "that the final order supersedes the interim order," and (2) the proposed language would require that registrants could not be prosecuted for any violations of SORA until "they received notice" of the court's ruling. (*Id.*)

Following the enactment of the new SORA, which became effective on March 24, 2021, Plaintiffs concede that the interim order does not prevent the enforcement of the new SORA statute effective March 24, 2021. (*See* ECF No. 115, PageID.2328.) And they concede that COVID-19 no longer impedes registrants' ability to "fulfill their SORA duties." (*Id.*, PageID.2334.) Plaintiffs now propose that the final judgment should include language expressly incorporating the court's interim order to ensure that registrants will not be prosecuted for violations that occurred while the interim order was in effect. (*Id.*, PageID.2338-39.)

**Doe v. Snyder, Slip Copy (2021)**
2021 WL 2525436

Defendants agree that the registrants should be informed that the interim order "has no bearing on the amended SORA" and therefore "does not impinge on the ability of the State Defendants to enforce the 2021 SORA for conduct that occurs on or after March 24, 2021." (ECF No. 117, PageID.2352.) Defendants opposed the entry of final judgment—as discussed at length in Section II— so they propose that the court should instead amend the existing interim order to "clarify that the April 6, 2020 interim injunction does not bar the State Defendants from enforcing the [new] SORA." (ECF No. 113, PageID.2288.)

Because the court has already decided to enter a final judgment, it finds no need for a separate order "clarifying" the interim order. Further, the court finds that the express incorporation of the interim order into the final judgment will simplify the situation going forward for both registrants and law enforcement. The final order will provide a single document defining what violations of the old SORA can be prosecuted in the future. Such finality is clearly needed as it appears some registrants and law enforcement agencies apparently do not understand the full effect of the interim order. (*See, e.g.*, ECF Nos. 112-2, 112-3, 112-4, PageID.2274-82 (Attorneys Mannikko, Ryan, and White attesting that some law enforcement agencies have continued to charge registrants for SORA violations that occurred in 2020 while the interim order was in effect).)

### B. Disclosure of Class Information

**\*8** Due to the extraordinary procedural posture of this class action, no complete class list has ever been provided to Plaintiffs' counsel. (ECF No. 99, PageID.1892.) Both sides agree that a class list should be provided, but a dispute remains over what should be included. (ECF No. 107, PageID.2151.) Plaintiffs argue that in order to fulfill their duties as class counsel, they should be given complete personal information for all class members—regardless of whether the individual is listed in Michigan's publicly accessible sex offender database—and class counsel additionally requests they be provided contact information (phone number and primary email address) for all class members even though such information is not contained in the publicly accessible database. (*See* ECF No. 99, PageID.1865-96; ECF No. 103, PageID.2083.) Class counsel argues that access to this information is needed so they can efficiently respond to the inevitable flood of inquiries from individual class members regarding their registration status after the final judgment is entered. (*Id.*)

Defendants argue, however, that the confidentiality requirements in Michigan statute prevent them from providing such a complete list. (ECF No. 101, PageID.1947-55.) While Defendants have agreed to provide addressees, basic demographic and offense information contained in Michigan's public sex offender registry (PSOR), Defendants argue they "are not authorized to disclose information regarding non-public offenders, i.e., any offender or offender information not authorized for disclosure in the PSOR under [Mich. Comp. Laws § 28.728(2)]." (*Id.*, PageID.1950.) These include "individuals registered solely because they were subject to an order in a juvenile matter in another state or country." (*Id.* (citing Mich. Comp. Laws § 28.728(4)).) Further, Defendants contend that they are barred from disclosing phone numbers and primary email address for all class members, even those listed in the PSOR because "[n]on-public information in the law enforcement database is confidential and is not open to inspection except for law enforcement purposes." (*Id.*, PageID.1951 (citing Mich. Comp. Laws § 28.730).) Defendants also cite "the Criminal Justice Information Systems Policy Council Act" and argue this statute bars such a disclosure by government officials. (*Id.* (citing Mich. Comp. Laws § 28.214).)

In response, Plaintiffs argue that the "[t]he statutes [Defendants] rely upon ... provide no succor for [Defendants] claim" that "they are legally barred from providing any non-public information." (ECF No. 103, PageID.2084.) In support of their view, Plaintiffs rely on *Dupuie-Jarbo v. Twenty-Eighth Dist. Ct.*, a previous decision by this court interpreting MCL § 28.214, and *People v. Malkowski*, a Michigan Supreme Court ruling, which found that another Michigan statute's confidentiality provision allowed the disclosure of presentence reports to defense counsel. (*Id.*, PageID.2084-85) (citing No. 10-10548, 2010 WL 2813343, at \*2 (E.D. Mich. July 14, 2010) (Cleland, J.); 188 N.W.2d 559, 560 n.1 (Mich. 1971).)

The court finds that Plaintiffs' view more accurately reflects Michigan's law governing such disclosures. Because the court finds that the statutes cited by Defendants do not bar the court from requiring such a disclosure to class counsel, Defendants must provide information on class members not in the PSOR database and additional contact information for all class members.[5]

First, the Sixth Circuit has held that "[t]he Federal Rules expressly authorize discovery '[i]n aid of [a] judgment' "

including "broad ... postjudgment discovery" to monitor "compliance with the court's judgment and award of injunctive relief." See *United States v. Conces*, 507 F.3d 1028, 1039-40 (6th Cir. 2007). So, as a general matter, this court has authority to require that Defendants produce information narrowly tailored to the enforcement of its judgment. *See id.* The court finds that a limited disclosure of personal information identifying class members is necessary to ensure that the court's award of injunctive relief is properly enforced for all members of the certified class.

**\*9** In *Dupue-Jarbo* this court considered a Michigan District Court's argument that it should not have to disclose information "from criminal justice information systems" as part of a wrongful termination lawsuit filed against it in federal court "because it would be a state crime to produce" the information under Mich. Comp. Laws § 28.214. 2010 WL 2813343, at \*2. This court flatly rejected such an interpretation of the statute. *Id.* Because the disclosure of such information was relevant to ongoing discovery under the Federal Rules of Civil Procedure, the court found that "Defendants' production of the criminal history reports would be 'authorized by ... rule' and it would not be a crime under Mich. Comp. Laws § 28.214 [(5)] for Defendants to produce them." *Id.* This interpretation informs the present dispute. Since the court has authority to—and will require—the disclosure of such requested class information through its post-judgment authority under the Federal Rules of Civil Procedure, the disclosure cannot be considered a criminal violation of Mich. Comp. Laws § 28.214.

The closer question is whether the SORA statute itself allows the disclosure of the requested information. SORA provides that "a registration or report is confidential and information from that registration or report shall not be open to inspection except for law enforcement purposes ... all included materials and information are exempt from disclosure under ... the freedom of information act." Mich. Comp. Laws § 28.730. The statute also states that "[e]xcept as provided in this act, an individual other than the registrant who knows of a registration or report under this act and who divulges, uses, or publishes nonpublic information concerning the registration or report in violation of this act is guilty of a misdemeanor." *Id.* The statute does not explicitly contemplate the disclosure of a registrant's information to his own attorney.

Plaintiffs correctly observe that the Michigan Supreme court has dealt with an analogous question before in *Malkowski*. 385 Mich. 244, 246, 188 N.W.2d 559, 560 (1971). The *Malkowski* court noted that the language of the then-applicable statute governing the disclosure of presentence reports "provide[ed] that reports of investigations by probation officers are declared to be privileged or confidential communications not open to public inspection." *Id.* at 560 n.1 (quotation omitted). Because the statute stated that its intent was to protect "the relation of confidence between the probation officer and probationer or defendant under investigation," the court held that "[i]n view of the legislative intent, this provision should not be construed to deny access by either a defendant or his attorney to presentence reports." *Id.* Therefore, the court found that the state was also required to provide attorneys access to the presentence reports. *Id.*

The general rule that can be drawn from *Malkowski* is that, absent explicit language to the contrary, the court should presume that reports available to an individual directly can also be provided to his counsel even when the public at large is barred from accessing such information. *See id.* When viewed in *toto*, one of the purposes of Mich. Comp. Laws § 28.730 is the protection of a registrant's privacy. The court simply does not believe that Defendants' reading of the statute in the present case—which would bar the disclosure of any non-public registration information to a registrant's counsel—conforms with a statute which plainly contemplates registrants having access to the information for their own purposes.[6]

**\*10** To summarize, the court finds that neither of the statutes cited by Defendants actually prevent them from disclosing to class counsel non-public registrant information for registrants who are already members of the certified class. While Defendants are free to put reasonable conditions on any disclosures to ensure that the information is not inadvertently released to others or used for any purpose other than the assistance of class members, the final order will require Defendants to provide the identifying information that Plaintiffs request.

### IV. CONCLUSION

For over nine years, the parties have been engaged in litigation over the unconstitutional provisions of Michigan's sex offender registry. It is past time for this litigation to come to an end. The court has determined that the possibility of future prosecutions for violations of the old SORA statute require the entry of a final judgment even though the judgment will not affect the enforcement of the new SORA statute enacted in March of 2021. And,

**Doe v. Snyder, Slip Copy (2021)**
2021 WL 2525436

the court has determined that the best, and most efficient, course is for a final judgment to be entered in the present litigation. The court also finds that it is appropriate to include the interim order in the final judgment for the sake of clarity and that Defendants must provide Plaintiffs with a complete class list for the purpose of post-judgment monitoring. Accordingly,

IT IS ORDERED that Plaintiffs' "Motion for Judgment" (ECF No. 99) is GRANTED IN PART.

IT IS ORDERED that Plaintiffs' "Amended Motion for Judgment" (ECF No. 107) is GRANTED IN PART.

IT IS ORDERED that Defendants' "Motion to Clarify Injunction" (ECF No. 107) is DENIED.

IT IS FURTHER ORDERED that the parties in the next 21 days must meet and confer on the contents of the final judgment. Plaintiffs must submit a joint, proposed form of judgment encapsulating these rulings by **July 12, 2021**.

**All Citations**

Slip Copy, 2021 WL 2525436

**Footnotes**

1   Plaintiffs filed an amended motion requesting the entry of a final judgment in January 2021 because parts of its original motion for judgment (ECF No. 99), were mooted by the passage of Michigan's Public Act 295 ("new SORA").

2   Plaintiffs' briefing succinctly summarizes how this "savings clause" was enacted to prevent a situation where the modification of a statute would mean that a past criminal violation would go unpunished because the enactment of the new statute repealed an old statute but the new statute, for ex-post facto reasons, could not be applied retroactively. (*See* ECF No. 112, PageID.2248) (citing *People v. Lowell*, 230 N.W. 202, 203-04 (Mich. 1930)).

3   As this court has previously noted, if the Michigan Supreme Courts' ruling "runs somehow contrary to this court's determination, this court can modify its judgment to conform to *Betts*" though Federal Rule of Civil Procedure 60(b). (ECF No. 84, PageID.1792 n.6.)

4   Given the parties' joint representations in a recent telephonic status conference, the court is confident that the parties can work together to resolve any remaining issues regarding the contents of the final judgment not directly addressed by this opinion.

5   The parties should include a deadline by which Defendants must turn over a complete class list within the proposed final judgment.

6   To be sure, the disclosure of class list information to class counsel can sometimes raise unique privacy concerns, especially at the pre-certification stage. *See, e.g., Martin v. Sysco Corp.*, No. 116CV00990DADSAB, 2017 WL 4517819, at *3-4 (E.D. Cal. Oct. 10, 2017) (limiting the scope of disclosures to class counsel at the pre-certification stage to protect to preserve class member's privacy). Such concerns are reduced after a class has already been certified. And, in any event, Defendants' argument against disclosure does not raise this issue.