UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOES A, B, C, D, E, F, G, H,
MARY DOE and MARY ROE, on
behalf of themselves and all others
similarly situated,

    Plaintiffs,

v

GRETCHEN WHITMER, Governor
of the State of Michigan, and COL.
JOSEPH GASPER, Director of the
Michigan State Police, in their
individual capacities,

    Defendants.

No. 2:22-cv-10209

HON. MARK GOLDSMITH

MAG. CURTIS IVY, JR.

# EXHIBIT C

Prater v. Linderman, No. 18-cv-992,
2019 WL 6711561, at *9 (E.D. Mich. December 10, 2019)

2022-0341402-A

Case 2:22-cv-10209-MAG-CI ECF No. 41-4, PageID.1398 Filed 05/31/22 Page 2 of 15

Prater v. Linderman, Not Reported in Fed. Supp. (2019)
2019 WL 6711561

2019 WL 6711561
Only the Westlaw citation is currently available.
United States District Court, W.D.
Michigan, Southern Division.

Jeffrey Bernard PRATER, Plaintiff,
v.
James R. LINDERMAN, Irene Davis, Jennifer Krussell, Cody Wheat, and Michael McNamara, Defendants.

Case No. 1:18-cv-992
|
Signed 12/10/2019

**Attorneys and Law Firms**

Jeffrey Bernard Prater, Alanson, MI, pro se.

Haider A. Kazim, Matthew W. Cross, Cummings, McClorey, Davis & Acho, PLC, Traverse City, MI, for Defendants.

Ray Kent, United States Magistrate Judge

**OPINION**

**\*1** This a civil rights action brought by *pro se* plaintiff Jeffrey Bernard Prater against prosecutors and deputies in Emmet County Michigan. This matter is now before the Court on defendants' motion for summary judgment (ECF No. 25). For the reasons stated below, defendants' motion will be granted.

**I. Plaintiff's complaint**

Plaintiff has a dispute with officials in Emmet County, Michigan, over the implementation of the registration requirements under Michigan's Sex Offender Registration Act (SORA). Plaintiff was convicted on two counts of criminal sexual conduct ("CSC") (2nd degree) in 1997. *See* Prosecutor's Letter (ECF No. 1-1, PageID.14); Compl. (ECF No. 1, PageID.4). Although plaintiff has been reporting to register as a sex offender on a quarterly basis for many years, the present federal lawsuit arises from plaintiff's claim that "[he] is not required to report quarterly under his 1997 sentence." Compl. (ECF No. 1, PageID.4).

In his complaint, plaintiff alleged a chain of events which led to him pleading guilty for use of marijuana: he attempted to register as a sex offender in November 2017; when that did not occur, plaintiff received a call from a deputy advising him that he did not register as required under SORA; when plaintiff went to the Sheriff's Office to register later that day, he brought some marijuana with him; plaintiff was charged with violating the SORA registration requirements and possession of marijuana; given plaintiff's rather extensive criminal history, he was charged as an habitual offender;[1] the government later dismissed the SORA and habitual offender charges; plaintiff sought to have the marijuana charge dismissed as well because it was found as the result of an illegal search related to an unconstitutional SORA charge; finally, plaintiff pled guilty to the marijuana charge and was sentenced to probation. Plaintiff filed this lawsuit seeking relief related to almost all of these events.

Plaintiff's *pro se* complaint sues the following defendants in both their individual and official capacities: Emmet County prosecuting attorney James R. Linderman; Emmet County Sheriff's Deputy ("Deputy") Irene Davis; Deputy Jennifer Krussell; Deputy Cody Wheat; and, Emmet County assistant prosecutor Michael McNamara. *Id.* at PageID.4-6. Plaintiff alleged that defendants violated his First Amendment right to free speech, his Fourth Amendment right to a "Warranted search incident", his Fifth Amendment "Right to Remain Silent", his Fourteenth Amendment right to due process, and the Sixth Circuit's decision in *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016). *Id.* at PageID.3.

Plaintiff filed his current federal lawsuit[2] on September 4, 2018, less than one month after being sentenced for use of marijuana on August 7, 2018. Defendants fairly summarized plaintiff's allegations[3] in their supporting brief as follows:

**\*2** On January 2, 2018, Deputy Jennifer Krussell reported that Plaintiff had not registered in November of 2017 as required by Michigan's Sex Offender Registration Act ("SORA"). ECF No. 1, PageID.4. On the same day, Deputy Cody Wheat spoke to Plaintiff over the telephone to inquire as to why. PageID.5. During that conversation, Plaintiff acknowledged his oversight — claiming he "must have spaced it." Exhibit A, Recording of 1/2/18 Phone Call Between Deputy Wheat and Plaintiff; Exhibit B, Deputy Wheat Report. Despite that admission, Plaintiff now claims he attempted to register with Deputy Irene Davis consistent with his quarterly reporting obligations on or about November 15, 2017, but Deputy Davis implied she could not help him. PageID.4.

Case 2:22-cv-10209-MAG-CI ECF No. 41-4, PageID.1399 Filed 05/31/22 Page 3 of 15

*Prater v. Linderman*, Not Reported in Fed. Supp. (2019)
2019 WL 6711561

On January 11, 2018, Emmet County Prosecutor Michael McNamara began criminal proceedings against Plaintiff as a result of his failure to register in November 2017 in violation of M.C.L. 28.725a, a high court misdemeanor. ECF No. 1-1, PageID.17. Given his criminal background, Plaintiff was also charged as a habitual offender-fourth offense. *Id.* Prosecutor James Linderman also participated in the prosecution. On or about February 2, 2018, Plaintiff was arrested for the SORA violation. PageID.5. During the course of his arrest, Plaintiff was searched. Although the search did not uncover the marijuana he had on him, he eventually surrendered it. Exhibit C, Deposition of Plaintiff, pg. 64.

Prosecutors ultimately dismissed the SORA violation prosecution (PageID.16), but charged Plaintiff with one count of marijuana possession in violation of M.C.L. 333.7403(2)(d). PageID.18. Plaintiffs defense counsel attempted to have the marijuana possession charge dismissed, arguing Plaintiff's SORA arrest was unlawful thus the search that led to the discovery of the marijuana was not incident to a lawful arrest. The court denied the motion. PageID.51. Plaintiff ultimately pleaded guilty to the marijuana possession charge, acknowledging under oath that he possessed marijuana on February 2, 2018. PageID.135-136. Plaintiff's marijuana conviction has not been overturned or even appealed. Exhibit C, pgs. 69, 71.

On September 4, 2018, Plaintiff filed this lawsuit based on the foregoing encounters alleging multiple constitutional violations against these Defendants in their individual and official capacities. With respect to Deputy Davis, Plaintiff claims that she violated his Fourth and Fourteenth Amendment rights to due process when she failed to register him under SORA on November 14, 2017. ECF No. 1. With respect to Deputy Krussell, Plaintiff claims that she was required to report his failure to register immediately (within three (3) business days) [FN 1], and her late reporting of Plaintiff's failure to register violated his Fourth and Fourteenth Amendment rights to due process. *Id.* Plaintiff also claims Deputy Krussell violated his First Amendment rights by requiring him to register in person. *Id.* With respect to Deputy Wheat, Plaintiff claims his failure to Mirandize Plaintiff during their January 2, 2018 conversation violated the Fifth Amendment. *Id.* Plaintiff further claims he is a member of a protected class as a sex offender and Prosecutor Linderman violated Plaintiff's Fourteenth Amendment right to be free from discrimination when he participated in Plaintiff's prosecution for SORA violations. *Id.* Finally, with respect to Prosecutor McNamara, Plaintiff claims that by punishing him for violating SORA, Prosecutor McNamara violated his Fourteenth Amendment rights and that the search that uncovered marijuana was illegal under the Fourth Amendment. *Id.*

In addition to the foregoing claims, Plaintiff argues that prosecuting him for violating SORA violates the United States Constitution's *Ex Post Facto* Clause because his 1997 sentence did not require him to report in person quarterly on a public registry. Further, he claims that under his 1997 sentence no punishment existed for failing to report because reporting was not mandated. *Id.*

**\*3** Plaintiff seeks the following relief: (1) placement into the confidential, non-public sex offender database with no regular reporting requirements; (2) release of video footage from the front lobby of the Emmet County Sheriff's Office on or about November 15, 2017; (3) overturning his use of marijuana plea as unconstitutionally gained; (4) money damages for lost wages, bail, vehicle impound/towing, state court costs, jail booking fee, and federal court filing fee; (5) exemplary damages for damage to his reputation while on bond for violating SORA, (6) punitive damages for malicious enforcement of *ex post facto* laws post *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016), and (7) attorney fees for a "large class of citizens Plaintiff Pro Se represents."

[FN 1] *See* M.C.L. 28.728a(l) (requiring local law enforcement to "immediately" take certain actions after a registrant's failure to register—including seeking a warrant for the registrant's arrest) and M.C.L. 28.722(g) (defining "immediately" as "within 3 business days").

Defendants' Brief (ECF No. 25, PageID.179-180) (emphasis omitted).

Two of plaintiff's claims for relief are without merit. With respect to requested relief no. 2, there is no video footage from "on or about November 15, 2017" which defendants can release for plaintiff's review. At plaintiff's deposition on April 29, 2019, defendants' counsel advised plaintiff that the video records over itself every 30 days, so any footage from November 2017 did not exist anymore. Prater Dep. (ECF

Case 2:22-cv-10209-MAG-CI  ECF No. 41-4, PageID.1400  Filed 05/31/22  Page 4 of 15

Prater v. Linderman, Not Reported in Fed. Supp. (2019)
2019 WL 6711561

No. 25-3, PageID.219). With respect to requested relief no. 7, plaintiff testified that the time he spent working on this lawsuit is worth $1,000,000.00. *Id.* at PageID.235. Plaintiff, however, is not represented by an attorney in this lawsuit, paid no attorney fees (*id.*), and cannot collect attorney fees for a non-existent class action. Accordingly, the Court will consider only plaintiff's requested relief nos. 1, 3, 4, 5 and 6.

## II. Legal Standard

### A. Summary judgment

All defendants have moved for summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> *4 The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the Court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Section 1983

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem*, Ohio, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

## III. Discussion

### A. Defendants Linderman and McNamara

Plaintiff has alleged claims against defendants Linderman and McNamara for acts committed on: January 11, 2018; February 2, 2018; February 22, 2018; May 7, 2018; June 19, 2018; and, August 7, 2018. Compl. at PageID.4.

On January 11, 2018, "Prosecutor Linderman Concurred the Prosecution of Plaintiff pursuant to SORA violations MCL 28.725, 729 tier III, 4th habitual, 2-15 year Felony" in violation of plaintiff's 14th Amendment right to be free from discrimination in his suspect class of a "Sex Offender" and

Case 2:22-cv-10209-MAG-CI ECF No. 41-4, PageID.1401 Filed 05/31/22 Page 5 of 15

Prater v. Linderman, Not Reported in Fed. Supp. (2019)
2019 WL 6711561

"Government intrusion of citizens" contrary to the decision in *Does #1-5*. Compl. at PageID.5.

On February 2, 2018,

> Plaintiff was arrested under a Warrant issued in part by Prosecutor McNamara. Under Plaintiffs [sic] 1997 Sentence no Punishment existed for not reporting because it was not mandated. Only address changes need be reported. The 1999 Amendment of SORA made it a Misdemeanor not to report which was replaced by the 2011 Amendment Which made it a felony[.] This was found Unconstitutional in the 6th Circuit, 2016/ U.S. Supreme Court, August, 2017[.] Defendant disavows these Court Orders evidence [sic] by his charging decision Concerning Plaintiff's Ex Post Facto issue, violating Plaintiff [sic] 4th / 14th Amendment Rights.

*Id.*

On February 22, 2018, "Prosecutor Mcnamara [sic] Arrested Plaintiff for Possession of Marijuana during the February 2, 2018 SORA Arrest." *Id.* at PageID.6.

While plaintiff alleged that defendants violated his civil rights on May 7, 2018, he does not allege any act that occurred on that date. Contrary to plaintiff's claim, no civil rights violation occurred on that date. The record reflects that on May 7, 2018, the state court judge granted prosecutor McNamara's motion to dismiss the criminal case involving the SORA violation without prejudice. The "Motion/Order of Nolle Prosequi" signed by the judge dismissed Count 1, described as "Sex Offenders – Failure to Comply with Reporting Duties" under M.C.L. § 28.7292 and "Habitual Offender – Fourth Offense Notice" under M.C.L. § 769.12. *See* Motion/Order (ECF No. 1-1, PageID.16).

 **\*5** On June 19, 2018, "Plaintiff sought Suppression of the Marijuana...arguing Unconstitutional SORA Warrant and Arrest violated Plaintiff's 4th Amendment right as it was not a search incident to lawful arrest." *Id.* at PageID.6. Shortly after the judge denied plaintiff's motion to suppress, he pled guilty to use of marijuana. *See* Plea Trans. (ECF No. 18-2, PageID.134-137; Order (ECF No. 1-1, PageID.15).

Finally, plaintiff does not allege what occurred on August 7, 2018. However, the record reflects that he was sentenced on that date for the misdemeanor offense of use of marijuana. *See* Sent. Trans. (ECF No. 18-3, PageID.146-147). Given plaintiff's past felony record of delivery of marijuana, the state court placed plaintiff on probation for nine months, suspended his driving privileges for one year "as required", and imposed a fine of $100.00 and costs of $350.00. *Id.*

Plaintiff's claims against defendants Linderman and McNamara fail. As prosecutors, both Mr. McNamara and Mr. Linderman have absolute prosecutorial immunity for acts which fall within the scope of their roles as advocates for the state.

> "An absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Imbler v. Pachtman*, 424 U.S. 409, 419 n.13, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Absolutely protected acts include those "undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State...." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). We have employed a "functional approach" to determine whether a prosecutor is entitled to absolute immunity, looking to "the nature of the function performed, not the identity of the actor who performed it" when assessing whether conduct is prosecutorial, and thus absolutely protected. *Id.* at 269, 113 S.Ct. 2606 (citation omitted).

> Absolute immunity protects "only...actions that are connected with the prosecutor's role in judicial proceedings, not...every litigation-inducing conduct." *Adams v. Hanson*, 656 F.3d 397, 402 (6th Cir. 2011) (alteration in original) (quoting *Burns v. Reed*, 500 U.S. 478, 494, 111 S. Ct. 1934, 114 L.Ed.2d 547 (1991)). Absolute immunity is not available to prosecutors when they perform " 'investigative' or 'administrative' functions unrelated to judicial proceedings." *Id.* In addition, a prosecutor is not entitled to absolute immunity when he acts as a complaining witness by making sworn statements to the court in support of a criminal complaint. *Kalina*

Case 2:22-cv-10209-MAG-CI ECF No. 41-4, PageID.1402 Filed 05/31/22 Page 6 of 15

Prater v. Linderman, Not Reported in Fed. Supp. (2019)
2019 WL 6711561

*v. Fletcher*, 522 U.S. 118, 129-131, 118 S. Ct. 502, 139 L.Ed.2d 471 (1997).

*Hall v. City of Williamsburg*, 768 Fed. Appx. 366, 374 (6th Cir. 2019). Here, defendants Linderman and McNamara are entitled to absolute immunity because plaintiff's claims against them arise from actions performed within the scope of their prosecutorial duties. *See Hall*, 768 Fed. Appx. 366 at 374. Nevertheless, the Court will address two claims raised plaintiff. [4]

**\*6** First, plaintiff claims that defendant Linderman violated his equal protection rights by prosecuting him as a sex offender. This claim is meritless because convicted sex offenders are not a suspect class under the Equal Protection Clause. *Cutshall v. Sundquist*, 193 F.3d 466, 482 (6th Cir. 1999).

Second, there is no evidence that Prosecutor McNamara performed a search of plaintiff in violation of the Fourth Amendment which resulted in discovery of the marijuana. At his deposition, plaintiff acknowledged that McNamara did not search him. Prater Dep. at PageID.226-227. The state court denied plaintiff's motion to dismiss brought on the theory that the marijuana was discovered during an illegal arrest for an unconstitutional SORA violation. In rejecting this theory, the state court held that the arrest warrant was valid and that "[b]ased upon the arrest, the marijuana was discovered." Motion Trans. at PageID.51. Accordingly, defendants McNamara and Linderman will be granted summary judgment on all claims.

### B. Deputy Davis

In his complaint, plaintiff alleged that defendants violated his civil rights on or about November 14, 2017. Compl. at PageID.4. In the next paragraph, plaintiff alleged that "on or about November 15, 2017," he tried to register under SORA at the Emmet County Sheriff's Department but Deputy Davis "eluded [sic] there was nothing she could do for Plaintiff." Compl. *Id.* Plaintiff alleged that this was "odd" because once back in April 2013, Deputy Davis had registered plaintiff. *Id.* Plaintiff alleged that "[b]efore Plaintiff exited he requested that he sign something to prove he was there" and that "Deputy Davis said it wasn't necessary." *Id.* Plaintiff alleged that Deputy Davis violated his Fourth and Fourteenth Amendment rights to due process when she failed to register him under SORA.

As an initial matter, plaintiff alleged that his interaction with Deputy Davis occurred "on or about" two different dates, November 14th and 15th, 2017. Plaintiff testified that he has been registering four times a year since 2012. Prater Dep. (ECF No. 25-3, PageID.218). Plaintiff believed that November 14th and 15th were the dates because he has to register as a sex offender by November 15th. *Id.* In reaching this conclusion, plaintiff stated that he "heard a rumor" that he had until the 30th, but that he "didn't fall for that", and that "I like having it done by the 15th and rubbing it in their face." *Id.* Plaintiff did not give a direct answer as to whether he spoke to Deputy Davis on November 14th or 15th. *Id.* at PageID.218-219. Rather, he told defendants' counsel to "just dial back in time and get the video footage for the two days and you'll see me come in there." *Id.* at PageID.219. As discussed, defendants' counsel advised plaintiff that the video footage from November 2017 did not exist anymore. *Id.* at PageID.219.

With respect to Deputy Davis, plaintiff testified,

> I remember going in and there's no one at the window. So I sat down next to this lady, and I guess she was there to visit someone, maybe, or pick someone up, and that's when Irene [Davis] popped her head around the corner. I could see her. She's like, "What do you want?" I'm like, "I need to register." She's like, "Jennie's not here." I'm like, "Well, it ain't be hard [sic], I ain't got no changes." "Jennie's not here," or whatever.

**\*7** *Id*. In short, defendant Deputy Davis told plaintiff that "[t]here's nothing she could do for me" because defendant Deputy Krussell was not at the office. *Id*. Then, plaintiff said, "Is there something I should be signing before I leave, then, or what?", to which Davis responded, "No", so plaintiff left. *Id.* at PageID.218-219.

Plaintiff testified that he did not remind Deputy Davis that she had registered him once in the past. *Id.* at PageID.219. According to plaintiff, Davis' answer "threw me off, because I'm like, 'Well, she's done it before, must be something new going on.' " *Id.* While plaintiff stated that this registration process was "something new," he presented no evidence to support his statement. As discussed, plaintiff presented only one instance (April 2013) in which Deputy Davis registered him. *See* Michigan Sex Offender Registration Address Verification Offender Receipt (signed by Irene Davis, dated April 2, 2013, stating in part that "The person whose information is listed below appeared in this office to satisfy the requirements of the Michigan Sex Offenders

Case 2:22-cv-10209-MAG-CI ECF No. 41-4, PageID.1403 Filed 05/31/22 Page 7 of 15

Prater v. Linderman, Not Reported in Fed. Supp. (2019)
2019 WL 6711561

Registration Act") (ECF No. 1-1, PageID.19). There is no evidence that Deputy Davis had registered plaintiff in over four years (*i.e.*, more than 16 registrations). When defendants' counsel asked plaintiff if anything prevented him from coming in to register from November 1st through 13th, plaintiff stated that he was "super busy." Prater Dep. at PageID.221.

While plaintiff now claims that Deputy Davis violated his constitutional rights in November 2017, he did not recall this encounter a few weeks later when defendant Deputy Wheat telephoned plaintiff about his failure to register. Plaintiff testified that on January 2, 2018, he received the phone call from Deputy Wheat telling plaintiff that he missed his registration. *Id.* Plaintiff went to the Sheriff's Office "within the hour" of receiving the phone call to register. *Id.* Plaintiff did not advise Deputy Wheat of his previous meeting with Deputy Davis. *Id.*

During the deposition, defendants' counsel played plaintiff a recording of his telephone conversation with Deputy Wheat. *Id.* at PageID.219-220. While speaking to Deputy Wheat, plaintiff made no mention of his conversation with Deputy Davis or his alleged attempt to register in November 2017. *Id.* Rather, plaintiff mentioned that about a week prior to the conversation, he asked his girlfriend if he had registered and she told him, "Yeah, you must have". *Id.* Eventually, plaintiff stated that "No, I just spaced it," and "I [sic] been doing it so often, you know, I [sic] been doing it for how many years, and so I, I as [sic] convinced I couldn't have missed it, but apparently I did. *Id.* Deputy Wheat stated, "Well, okay, yeah, you did, you missed it." *Id.* Plaintiff told Deputy Wheat that he could "come in today and do it." *Id.* Deputy Wheat suggested that plaintiff take care of it, but warned plaintiff that "I still have to type up a report and send it over." *Id.*

Finally, during his deposition plaintiff testified that he did not remember his conversation with Deputy Davis until just before he met with the judge on his criminal matter (*i.e.*, "Totally forgot about Davis until I started thinking back on it... And it was all the way until I was in chambers with my attorney and it was dawning on me, sonbitch, I had tried to report."). *Id.* at PageID.219.

**\*8** Based on these facts, plaintiff summarized his claim against Deputy Davis as follows:

> In my mind, the Fourteenth Amendment is duties that police have to their citizens, and fourth degree — or the Fourth Amendment is what people hold as rights.
>
> So there's what people hold as rights and what municipalities hold as rights. That's why I said Fourth and Fourteenth. I'm not a lawyer, but it was a dereliction of her duty to tell me to — that she didn't want to deal with me, and that there was nothing I needed to sign to prove I was there.

*Id.* at PageID.221.

The Court construes plaintiff's claim as an alleged violation of his substantive due process rights, *i.e.*, Deputy Davis committed a "dereliction of duty" when she failed to register plaintiff when he showed up on November 14th or 15th.

> The substantive component of the Due Process Clause protects "fundamental rights" that are so "implicit in the concept of ordered liberty" that "neither liberty nor justice would exist if they were sacrificed." *Palko v. Conn.*, 302 U.S. 319, 325, 58 S. Ct. 149, 82 L. Ed. 288 (1937). Such rights include "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S.Ct. 2302, 138 L.Ed.2d 772 (1997) (citations omitted). The Supreme Court has cautioned, however, that it has "always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Id.*
>
> When reviewing a substantive due process claim, we must first craft a "careful description of the asserted right," *Reno v. Flores*, 507 U.S. 292, 302, 113 S. Ct. 1439, 123 L.Ed.2d 1 (1993), and then determine whether that right is "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty," such that it can be considered a "fundamental right." *Glucksberg*, 521 U.S. at 721, 117 S.Ct. 2258.

*Doe v. Michigan Department of State Police*, 490 F.3d 491, 499-500 (6th Cir. 2007).

Plaintiff's claim fails. First, in the Court's opinion, plaintiff's testimony is so internally inconsistent that no reasonable jury would find in his favor: plaintiff cannot recall the date when

Case 2:22-cv-10209-MAG-CI ECF No. 41-4, PageID.1404 Filed 05/31/22 Page 8 of 15

Prater v. Linderman, Not Reported in Fed. Supp. (2019)
2019 WL 6711561

he tried to register; he thought that Deputy Davis (whom he knew on a first name basis) could register him even though she had not done so in over four years; despite the fact that plaintiff had been registering as a sex offender for years, he was apparently baffled by this new procedure and he took no further action to register or to obtain a receipt; and, he forgot about his attempt to register with Deputy Davis until just before the entered the judge's chambers on a criminal matter several months later. While plaintiff now claims that he attempted to register in November 2017, less than two months later he *admitted* to Deputy Wheat that he forgot register and made no mention of a conversation with Deputy Davis. Based on this record, no reasonable juror would consider plaintiff's version of events as constituting an attempt to register with Deputy Davis.

**\*9** Second, even if a jury adopted the events as stated by plaintiff, he has not developed a legal theory to support his claim that Deputy Davis violated his substantive due process rights. Specifically, plaintiff has not set forth any "fundamental right" which the deputy violated. *See Doe*, 490 F.3d at 499-500. Furthermore, " 'Dereliction of duty' is not a constitutional violation." *Walters v. Curtin*, No. 1:08-cv-688, 2008 WL 4756022 at \*4 (W.D. Mich. Oct. 23, 2008). *See Godfrey v. Russell*, No. 7:14CV00476, 2015 WL 5657037 at \*17 (W.D. Va. Sept. 24, 2015), *affirmed*, 667 Fed. Appx. 68 (4th Cir. 2016) ("dereliction of duty" is merely negligence, rather than a violation of a constitutional right). Accordingly, Deputy Davis will be granted summary judgment on all claims.

### C. Deputy Krussell

Plaintiff makes two claims against Deputy Krussell. First, plaintiff alleged that Krussell violated his Fourth and Fourteenth Amendment rights to due process because Krussell did not report plaintiff's failure to register within three business days. The government arrested plaintiff on February 2, 2018, one month after Deputy Wheat contacted plaintiff about his failure to register. Plaintiff cites no authority to support his claim that Deputy Krussell violated his federal constitutional rights by failing to arrest him "immediately" after he failed to register as a sex offender. PageID.221-222. Accordingly, Deputy Krussell will be granted summary judgment on this claim.

Second, plaintiff makes the conclusory claim that defendant Krussell violated his First Amendment rights by requiring him to register in person. A public sex offender registry does not violate a sex offender's First Amendment rights. *See United States v. Arnold*, 740 F.3d 1032, 1035 (5th Cir. 2014) (in rejecting a claim that the federal Sex Offender Registration and Notification Act's (SORNA's) registration requirements do not violate the First Amendment, the court reasoned that "[w]hen the government, to protect the public, requires sex offenders to register their residence, it conducts an 'essential operation[ ] of [the] government,' just as it does when it requires individuals to disclose information for tax collection" and cited *Cutshall* for the proposition that the Constitution does not provide a sex offender "with a right to keep his registry information private"); *United States v. Fox,* 286 F. Supp. 3d 1219, 1223-24 (D. Kansas 2018) (concluding that registration under SORNA does not offend the First Amendment, stating in part "Yes, SORNA compelled [the sex offender] to speak. But the law serves a compelling government interest and does so in a narrowly tailored fashion."). Accordingly, Deputy Krussell will be granted summary judgment on this claim. [5]

### D. Deputy Wheat

Plaintiff claims that Deputy Wheat violated his Fifth Amendment rights when the deputy failed to Mirandize plaintiff during the January 2, 2018 telephone call.

> Under *Miranda*, statements made by a defendant during custodial interrogation are inadmissible at trial unless the prosecution can demonstrate the use of established procedural safeguards effective to secure the defendant's Fifth Amendment privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444–45, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). A defendant is "in custody" for purposes of *Miranda* when, given the circumstances surrounding the defendant's encounter with police, a reasonable person in his shoes would have felt that he was not at liberty to terminate the encounter. *Yarborough v. Alvarado*, 541 U.S.

Case 2:22-cv-10209-MAG-CI ECF No. 41-4, PageID.1405 Filed 05/31/22 Page 9 of 15

**Prater v. Linderman, Not Reported in Fed. Supp. (2019)**
2019 WL 6711561

652, 662, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).

**\*10** *United States v. Ellis*, 910 F. Supp. 2d 1008, 1023-24 (W.D. Mich. 2012).

Deputy Wheat's failure to give plaintiff *Miranda* warnings during a telephone call does not state a cause of action under § 1983. As an initial matter, plaintiff has presented no evidence that he was "in custody" for purposes of *Miranda* when he spoke with Deputy Wheat. Furthermore, "[e]ven if plaintiff had been in custody at the time, the failure to give *Miranda* warnings does not violate the constitution or give rise to a claim under § 1983." *Brown v. City of Grand Rapids*, No. 1:13-cv-964, 2016 WL 4920144 at \*6 (June 13, 2016), R&R adopted, 2016 WL 4801332 (W.D. Mich. Sept. 14, 2016), *affirmed* No. 16-2433, 2017 WL 4712064 (6th Cir. June 16, 2017). In that decision, the Court elaborated:

As one court recently explained:

> The Constitution and laws of the United States do not guarantee Plaintiff the right to Miranda *warnings*. They only guarantee him the right to be free from self-incrimination. *Miranda* warnings are a procedural safeguard rather than a right explicitly stated in the Fifth Amendment. The remedy for a *Miranda* violation is the exclusion from evidence of any ensuing self-incriminating statements. See *Chavez v. Martinez*, 538 U.S. 760, 772, 123 S. Ct. 1994, 155 L.Ed.2d 984 (2003) (observing that the failure to comply with Miranda does not, in and of itself, give rise to a constitutional claim, and the Fifth Amendment's protections may only be invoked to exclude at trial evidence taken during the interview). The remedy does not subject a police officer to civil liability. *McKinley v. City of Mansfield*, 404 F.3d 418, 432 n. 13 (6th Cir. 2005) (recognizing that a civil claim for damages based upon an officers failure to read a suspect his or her *Miranda* warnings is "squarely foreclosed" by the decision in Chavez).

*Meyers v. City of Chardon*, No. 1:14 CV 2340, 2015 WL 1648992 at \*11 (N.D. Ohio April 13, 2015).

*Id.* at \*6-7. Plaintiff has no cause of action against Deputy Wheat arising from the telephone call. Accordingly, Deputy Wheat will be granted summary judgment on this claim.

**E. Claim that SORA is unconstitutional**

**1. Plaintiff's claims**

Plaintiff contends that SORA is unconstitutional as applied to him because the reporting requirements were enacted after his 1997 convictions and violated the *Ex Post Facto* clause.

> The presumption against the retroactive application of new laws is an essential thread in the mantle of protection that the law affords the individual citizen. That presumption "is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Landgraf v. USI Film Products*, 511 U.S. 244, 265, 114 S.Ct. 1483, 1497, 128 L.Ed.2d 229 (1994). This doctrine finds expression in several provisions of our Constitution. \*440 12 The specific prohibition on *ex post facto* laws is only one aspect of the broader constitutional protection against arbitrary changes in the law. In both the civil and the criminal context, the Constitution places limits on the sovereign's ability to use its lawmaking power to modify bargains it has made with its subjects. The basic principle is one that protects not only the rich and the powerful, *United States v. Winstar Corp.*, 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996), but also the indigent defendant engaged in negotiations that may lead to an acknowledgment of guilt and a suitable punishment.

**\*11** Article I, § 10, of the Federal Constitution provides that "[n]o State shall...pass any...ex post facto Law." In his opinion for the Court in *Beazell v. Ohio*, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925), Justice Stone explained:

> "The constitutional prohibition and the judicial interpretation of it rest upon the notion that laws, whatever their form, which purport to make innocent acts criminal after the event, or to aggravate an offense, are harsh and oppressive, and that the criminal quality attributable to an act, either by the legal definition of the offense or by the nature or amount of the punishment imposed for its commission, should not be altered by legislative enactment, after the fact, to the disadvantage of the accused." *Id.*, at 170, 46 S.Ct., at 68-69.

Case 2:22-cv-10209-MAG-CI   ECF No. 41-4, PageID.1406   Filed 05/31/22   Page 10 of 15

Prater v. Linderman, Not Reported in Fed. Supp. (2019)
2019 WL 6711561

The bulk of our *ex post facto* jurisprudence has involved claims that a law has inflicted "a greater punishment, than the law annexed to the crime, when committed." *Calder v. Bull*, 3 Dall. 386, 390, 1 L.Ed. 648 (1798) (emphasis deleted). We have explained that such laws implicate the central concerns of the *Ex Post Facto* Clause: "the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Weaver v. Graham*, 450 U.S. 24, 30, 101 S.Ct. 960, 965, 67 L.Ed.2d 17 (1981).

To fall within the *ex post facto* prohibition, a law must be retrospective - that is, "it must apply to events occurring before its enactment"- and it "must disadvantage the offender affected by it," *id.*, at 29, 101 S.Ct., at 964, by altering the definition of criminal conduct or increasing the punishment for the crime, see *Collins v. Youngblood*, 497 U.S. 37, 50, 110 S.Ct. 2715, 2723, 111 L.Ed.2d 30 (1990).

*Lynce v. Mathis*, 519 U.S. 433, 439-41 (1997) (footnotes omitted).

Here, plaintiff was convicted of sex crimes in 1997. Defendants acknowledge that the reporting requirements under SORA have changed since plaintiff's conviction:

> [A]t the time [plaintiff was convicted], the registry was solely maintained for law enforcement use and was not available to the public. *See* Mich. Pub. Act. 295, § 10 (1994). That changed in 1999 when the legislature added the requirement that sex offenders register in person (quarterly or annually, depending on the offense) and made the registry public—listing the names, addresses, and biometric data of registrants. Mich. Pub. Act. 85, §§ 5a(4), 8(2), 10(2)(3) (1999). In 2011, the legislature added the requirement that registrants "immediately" and in person update information such as new vehicles or "internet identifiers" (for example, new email accounts) and increased the penalty for failing to register. Mich. Pub. Acts 17, 18 (2011). The 2011 amendments applied retroactively to all required to register under SORA. *Id.* Registrants who violated these requirements were subject to criminal penalties. M.C.L. 28.729.

Defendants' Brief (ECF No. 25, PageID.194-195).

**2. *Does#1-5 v. Snyder***

Plaintiff relies on the Sixth Circuit's decision in *Does #1-5*, 834 F.3d 696 as providing the framework for his claims. *In Does #1-5*, the Court held that SORA's amendments in 2006 and 2011 were punitive and that their retroactive application to the *Doe* plaintiffs violated the *Ex Post Facto* Clause of the Constitution:

> **\*12** Like many states, Michigan has amended its Sex Offender Registration Act (SORA) on a number of occasions in recent years for the professed purpose of making Michigan communities safer and aiding law enforcement in the task of bringing recidivists to justice. Thus, what began in 1994 as a non-public registry maintained solely for law enforcement use, *see* Mich. Pub. Act 295, § 10 (1994), has grown into a byzantine code governing in minute detail the lives of the state's sex offenders, *see* Mich. Comp. Laws § 28.723, *et seq*. Over the first decade or so of SORA's existence, most of the changes centered on the role played by the registry itself. In 1999, for example, the legislature added the requirement that sex offenders register in person (either quarterly or annually, depending on the offense) and made the registry available online, providing the public with a list of all registered sex offenders' names, addresses, biometric data, and, since 2004, photographs. *See* Mich. Pub. Act. 85 §§ 5a(4), 8(2), 10(2)(3) (1999); Mich. Pub. Acts 237, 238 (2004). Michigan began taking a more aggressive tack in 2006, however, when it amended SORA to prohibit registrants (with a few exceptions, *see* Mich. Comp. Laws § 28.734–36) from living, working, or "loitering" within 1,000 feet of a school. *See* Mich. Pub. Acts 121, 127 (2005). In 2011, the legislature added the requirement that registrants be divided into three tiers, which ostensibly correlate to current dangerousness, but which are based, not on individual assessments, but solely on the crime of

conviction. *See* Mich. Pub. Acts 17, 18 (2011). The 2011 amendments also require all registrants to appear in person "immediately" to update information such as new vehicles or "internet identifiers" (*e.g.*, a new email account). *See id.* The 2006 and 2011 amendments apply retroactively to all who were required to register under SORA. *See* Mich. Pub. Act 46 (2006); Mich. Pub. Acts 17, 18 (2011). Violations carry heavy criminal penalties. *See* Mich. Comp. Laws § 28.729.

The Plaintiffs in this case—identified here only as five "John Does" and one "Mary Doe"—are registered "Tier III" sex offenders currently residing in Michigan. It is undisputed on appeal that SORA's 2006 and 2011 amendments apply to them retroactively. That law has had a significant impact on each of them that reaches far beyond the stigma of simply being identified as a sex offender on a public registry. As a result of the school zone restrictions, for example, many of the Plaintiffs have had trouble finding a home in which they can legally live or a job where they can legally work. These restrictions have also kept those Plaintiffs who have children (or grandchildren) from watching them participate in school plays or on school sports teams, and they have kept Plaintiffs from visiting public playgrounds with their children for fear of "loitering." Plaintiffs are also subject to the frequent inconvenience of reporting to law enforcement in person whenever they change residences, change employment, enroll (or un-enroll) as a student, change their name, register a new email address or other "internet identifier," wish to travel for more than seven days, or buy or begin to use a vehicle (or cease to own or use a vehicle). *See* Mich. Comp. Laws §§ 28.722(g), 725(1).

* * *

The Supreme Court's decision in *Smith* [*v. Doe*, 538 U.S. 84 (2003)] is particularly germane to this case. In *Smith*, the Court considered an Ex Post Facto challenge to Alaska's sex-offender registry law. Alaska's regime was more modest than SORA, but the two share some core provisions: sex offenders residing in Alaska had to submit to annual or quarterly registration (though not in person) and had to give the State updates for such things as moving, growing a beard, changing hair color, or getting a new car. *Id.* at 90-91, 123 S.Ct. 1140; 101, 123 S.Ct. 1140. Like Michigan under SORA, Alaska maintained a website that published the offenders' names, addresses, photos, physical descriptions, license numbers, places of employment, dates of birth, crimes of conviction, dates and places of conviction, and length of sentences, as well the offenders' compliance with the registration requirements. *Id.* at 91, 123 S.Ct. 1140.

The Court in *Smith* concluded that Alaska's law was civil, not criminal, employing a two-part test: (1) Did the legislature intend to impose punishment? And (2), if not, is the statutory scheme " 'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.' " *Id.* at 92, 123 S.Ct. 1140 (quoting *Kansas v. Hendricks*, 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997)) (brackets in original).

* * *

So, is SORA's actual effect punitive? Many states confronting similar laws have said "yes." [citations omitted.] And we agree. In reaching this conclusion, we are mindful that, as *Smith* makes clear, states are free to pass retroactive sex-offender registry laws and that those challenging an ostensibly non-punitive civil law must show by the "clearest proof" that the statute in fact inflicts punishment. But difficult is not the same as impossible. Nor should *Smith* be understood as writing a blank check to states to do whatever they please in this arena.

**\*13** A regulatory regime that severely restricts where people can live, work, and "loiter," that categorizes them into tiers ostensibly corresponding to present dangerousness without any individualized assessment thereof, and that requires time-consuming and cumbersome in-person reporting, all supported by—at best— scant evidence that such restrictions serve the professed purpose of keeping Michigan communities safe, is something altogether different from and more troubling than Alaska's first-generation registry law. SORA brands registrants as moral lepers solely on the basis of a prior conviction. It consigns them to years, if not a lifetime, of existence on the margins, not only of society, but often, as the record in this case makes painfully evident, from their own families, with whom, due to school zone restrictions, they may not even live. It directly regulates where registrants may go in their daily lives and compels them to interrupt those lives with great frequency in order to appear in person before law enforcement to report even minor changes to their information.

Case 2:22-cv-10209-MAG-CI ECF No. 41-4, PageID.1408 Filed 05/31/22 Page 12 of 15

**Prater v. Linderman, Not Reported in Fed. Supp. (2019)**
2019 WL 6711561

We conclude that Michigan's SORA imposes punishment. And while many (certainly not all) sex offenses involve abominable, almost unspeakable, conduct that deserves severe legal penalties, punishment may never be retroactively imposed or increased. Indeed, the fact that sex offenders are so widely feared and disdained by the general public implicates the core counter-majoritarian principle embodied in the *Ex Post Facto* clause. As the founders rightly perceived, as dangerous as it may be not to punish someone, it is far more dangerous to permit the government under guise of civil regulation to punish people without prior notice. Such lawmaking has "been, in all ages, [a] favorite and most formidable instrument[ ] of tyranny." *The Federalist No. 84*, *supra* at 444 (Alexander Hamilton). It is, as Justice Chase argued, incompatible with both the words of the Constitution and the underlying first principles of "our free republican governments." *Calder* [*v. Bull*, 3 U.S. 386, 388–89 (1798)]; *accord The Federalist No. 44*, *supra* at 232 (James Madison) ("[E]x post facto laws...are contrary to the first principles of the social compact, and to every principle of sound legislation."). The retroactive application of SORA's 2006 and 2011 amendments to Plaintiffs is unconstitutional, and it must therefore cease.

*Does #1-5*, 834 F.3d 696, 697-98, 700, 705-06.

Here, plaintiff does not claim that defendants improperly applied the restrictions set forth in SORA's 2006 and 2011 amendments with respect to "where people can live, work, and 'loiter,' " in violation of the Sixth Circuit's decision in *Does #1-5*. Rather, plaintiff claims that defendants improperly applied the SORA's 1999 amendment which requires him to appear in person for a quarterly registration, includes him in a public database (as opposed to a private database accessible only to law enforcement), and involves a higher penalty for violating SORA's registration requirements. The decision in *Does #1-5*, however, did not address the 1999 amendments. Accordingly, plaintiff cannot rely on the decision in *Does #1-5* to establish that the 1999 amendments are *per se* unconstitutional under that decision.

### 3. Retroactive application of the 1999 amendments

#### a. Creation of a public database

The retroactive application of a new registration scheme which creates a public database of sex offenders does not violate the *Ex Post Facto* clause. *See Smith*, 538 U.S. at 105-06 (the creation of a public database of past sex offenders is a nonpunitive civil regulatory scheme which does not violate the *Ex Post Facto* clause, noting in part that "[t]he regulatory scheme applies only to past conduct, which was, and is, a crime" and that "[t]he obligations the statute imposes are the responsibility of registration"). Accordingly, defendants will be granted summary judgment on this claim.

#### b. Creation of a duty to report each quarter in person

In *Does #1-5*, the Sixth Circuit addressed reporting requirements which were much more onerous than the quarterly in person reporting requirement set forth in the 1999 amendment. The question before the Court is whether the actual effect of the quarterly in person reporting requirement enacted in 1999 is punitive in violation of the *Ex Post Facto* clause. The Court concludes that it is not. "[S]tates are free to pass retroactive sex-offender registry laws and that those challenging an ostensibly non-punitive civil law must show by the 'clearest proof' that the statute in fact inflicts punishment." *Does #1-5*, 834 F.3d at 705. As one court observed,

> **\*14** To appear in person to update a registration is doubtless more inconvenient than doing so by telephone, mail or web entry; but it serves the remedial purpose of establishing that the individual is in the vicinity and not in some other jurisdiction where he may not have registered, confirms identity by fingerprints and records the individual's current appearance.

*United States v. Parks*, 698 F.3d 1, 6 (1st Cir. 2012) (rejecting a claim that the quarterly in person registration requirement under SORNA imposed punitive restraints under the *Ex Post Facto* clause). *See United States v. Under Seal*, 709 F.3d 257, 265 (4th Cir. 2013) ("Although Appellant is required under SORNA to appear periodically in person to verify his information and submit to a photograph...this is not an affirmative disability or restraint."). Accordingly, defendants are entitled to summary judgment on this claim.

Case 2:22-cv-10209-MAG-CI ECF No. 41-4, PageID.1409 Filed 05/31/22 Page 13 of 15
**Prater v. Linderman, Not Reported in Fed. Supp. (2019)**
2019 WL 6711561

**c. Creation of a higher penalty for failure to register under SORA**

Plaintiff claims that the enhanced penalty included in the 2011 amendment violated the *Ex Post Facto* clause. The Court disagrees. "To fall within the *ex post facto* prohibition, a law must be retrospective - that is, it must apply to events occurring **before** its enactment - and it must disadvantage the offender affected by it, by altering the definition of criminal conduct or increasing the punishment for the crime." *Lynce*, 519 U.S. at 441 (internal quotation marks omitted, citations omitted, and emphasis added). Here, plaintiff did not face a retrospective application of SORA for his original crime committed in 1997. Rather, plaintiff's illegal conduct was his failure to register in 2017, about six years after the 2011 amendment. It was this illegal conduct which led to plaintiff's arrest. Accordingly, defendants will be granted summary judgment on this claim.

**F. Official Capacity claims**

Plaintiff seeks monetary damages and injunctive relief (*i.e.*, placement into a confidential, non-public sex offender database with no regular reporting requirements). Plaintiff's official capacity claims against defendants are an attempt to sue Emmet County. *See Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989) ("A suit against an individual 'in his official capacity' has been held to be essentially a suit directly against the local government unit and can result in that unit's liability to respond to the injured party for his injuries."). As this Court explained in *Varner v. Schrock*, No. 1:14-cv-999, 2014 WL 5441807 (W.D. Mich. Oct. 24, 2014):

> A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, Berrien County. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). A municipality may only be liable under § 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 131 S.Ct. 447, 453-54, 178 L.Ed.2d 460 (2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1974)). In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508-509.

**\*15** *Varner*, 2014 WL 5441807 at \*4. Here, plaintiff's official capacity claims fail because he has not alleged any policy or custom adopted by Emmet County which caused his alleged injuries. Accordingly, defendants will be granted summary judgment on the official capacity claims.

**G. Habeas relief**

Finally, plaintiff asks this Court to overturn his "Use of Marijuana Plea" because it was "unconstitutionally gained." Compl. at PageID.7. In short, plaintiff is asking this Court to grant him federal habeas relief by declaring that his 2017 conviction was unconstitutional and invalid. *See* 28 U.S.C. § 2254(1) ("a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."); *Preiser v. Rodriguez*, 411 U.S. 475, 484, 490 (1973) (when a prisoner challenges the fact or duration of his confinement and seeks immediate release, his sole remedy is a writ of habeas corpus pursuant to 28 U.S.C. § 2254). Plaintiff's request that this Court declare his

Case 2:22-cv-10209-MAG-CI ECF No. 41-4, PageID.1410 Filed 05/31/22 Page 14 of 15

**Prater v. Linderman, Not Reported in Fed. Supp. (2019)**
2019 WL 6711561

state court conviction unconstitutional is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that a state prisoner cannot make a cognizable claim under § 1983 for an alleged unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87 (footnote omitted). Here, plaintiff has not shown that his conviction was reversed on direct appeal, expunged by an executive order, declared invalid by a state tribunal, or called into question by the issuance of a writ of habeas corpus. Accordingly, defendants will be granted summary judgment on this claim.

### IV. Conclusion

For the reasons set forth above, defendants' motion for summary judgment (ECF No. 25) is **GRANTED** and plaintiff's case is **TERMINATED**. An order consistent with this opinion will be entered forthwith.

### All Citations

Not Reported in Fed. Supp., 2019 WL 6711561

### Footnotes

1 Plaintiff is no stranger to Emmet County authorities, having amassed 10 felony convictions in addition to the 1997 CSC conviction. *See* Prosecutor's Letter at PageID.14.

2 Plaintiff states that he filed three previous court cases. Compl. at PageID.2. The Court located four lawsuits that plaintiff filed when he was in prison (MDOC No. 259314): *Jeffrey Prater v. John Malkowski et al.*, 2:00-cv-156 (habeas petition) (dismissed Sept. 19, 2002); *Jeffrey Prater v. Patricia L. Caruso*, 2:05-cv-105 (prisoner civil rights claim) (dismissed Oct. 5, 2006); *Jeffrey Prater v. John Rubitschun*, 2:08-cv-39 (habeas petition) (dismissed Sept. 30, 2008); *Jeffrey Prater v. Vern A. Malkowski*, 2:08-cv-209 (prisoner civil rights claim) (dismissed Dec. 4, 2008).

3 The Court notes that *pro se* plaintiff's complaint, which consists of 10 pages of unnumbered paragraphs and 41 pages of attachments, is difficult to follow. *See* Compl. and Attachments (ECF Nos. 1 and 1-1).

4 Defendants seek summary judgment on the ground of qualified immunity with respect to the following two claims asserted against defendants Linderman and McNamara, as well the claims filed against defendants Davis, Wheat and Krussell. Under the affirmative defense of qualified immunity, government officials performing discretionary functions are shielded from civil liability unless their conduct violates clearly established constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, a defendant is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 231-33 (2009); *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011). The court may exercise its sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *Pearson*, 555 U.S. at 236. In essence, defendants claim that plaintiff cannot meet the first prong of the qualified immunity doctrine, because there were no violations of his constitutional rights. Because the Court agrees that defendants did not violate plaintiff's constitutional rights, plaintiff's claim fails on the merits, and it is unnecessary to address defendants' affirmative defense of qualified immunity.

Case 2:22-cv-10209-MAG-CI ECF No. 41-4, PageID.1411 Filed 05/31/22 Page 15 of 15

**Prater v. Linderman, Not Reported in Fed. Supp. (2019)**
2019 WL 6711561

5   The Court addresses the constitutionality of the "in person" registration in § III.E.3.b., *infra*.

---

End of Document © 2022 Thomson Reuters. No claim to original U.S. Government Works.