UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOHN DOES A, B, C, D, E, F, G, H,
MARY DOE and MARY ROE,
on behalf of themselves and
all others similarly situated,

                                      File No. 2:22-cv-10209

                Plaintiffs,

v.                                    Hon. Mark A. Goldsmith

GRETCHEN WHITMER, Governor of the    Mag. Curtis Ivy, Jr.
State of Michigan, and COL. JOSEPH
GASPER, Director of the Michigan State
Police, in their official capacities,

                Defendants.

_____

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

## TABLE OF CONTENTS

Introduction ...................................................................................................1

I.      Defendants Fail to Rebut Plaintiffs' Well-Supported Factual
        Record........................................................................................2

        A.      Virtually All of the Evidence Submitted by Plaintiffs Is
                Undisputed. ......................................................................2

        B.      Defendants Fail to Rebut Plaintiffs' Evidence on the Few
                Disputed Facts, and Their Attempt to Muddy the Record
                Should Be Rejected. ...........................................................4

II.     The Absence of Individual Review Makes the Statute
        Unconstitutional, But Providing Meaningful Individual Review
        Could Save the Statute...................................................................6

III.    Plaintiffs Are Likely to Succeed on the Merits. ...........................9

IV.     The Remaining Preliminary Injunction Factors All Weigh Strongly
        in Plaintiffs' Favor.......................................................................10

        A.      Plaintiffs Are Suffering Irreparable Harm. .....................10

        B.      The Balance of Equities and Public Interest Factors Favor
                Plaintiffs on the Ex Post Facto Claim. ............................11

        C.      Defendants Fail to Respond to Plaintiffs' Showing on the
                Balance of Equities and Public Interest Factors as to the
                Remaining Claims. ...........................................................14

Conclusion ....................................................................................................16

# TABLE OF AUTHORITIES

## Cases

*Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320 (2006)................................................................................................8

*Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1 (2003)..............................6

*Doe v. Snyder*, 449 F. Supp. 3d 719, 738 (E.D. Mich. 2020)..................12

*Doe v. State*, 111 A.3d 1077 (N.H. 2015)................................................7

*Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016)................................1

*Hamama v. Adducci*, 912 F.3d 869 (6th Cir. 2018)................................13

*Kansas v. Hendricks*, 521 U.S. 346 (1997)..........................................7, 9

*Kuebler v. Cleveland Lithographers & Photoengravers Union Loc. 24-P*, 473 F.2d 359 (6th Cir. 1973) ................................................4

*People v. Betts*, 968 N.W.2d 497 (Mich. 2021)......................................1

*Smith v. Doe*, 538 U.S. 84 (2003) ................................................. 6, 7, 8

*Starkey v. Okla. Dep't of Corrs.*, 305 P.3d 1004 (Okla. 2013) ...............6

## Statutes

12-8 Vt. Code R. § 4 ................................................................................9

Ga. Code Ann. § 42-1-14 ........................................................................9

M.C.L. § 28.721 ......................................................................................9

M.C.L. § 28.729 ....................................................................................10

Mass. Gen. Laws ch. 6, § 178L..............................................................9

Minn. Stat. § 244.052 .............................................................................9

N.J. Stat. Ann. § 2C:7-8 .........................................................................9

N.Y. Correct. Law § 168-l ..............................................................................9

Or. Rev. Stat. § 163A.100 ............................................................................9

Wash. Rev. Code Ann. § 4.24.550 ..............................................................9

**Treatises**

Charles Allen Wright & Arthur Miller, *Federal Practice and*
    *Procedure* (3d ed.) ...........................................................................4, 5

**Introduction**

Despite having four months to do so, Defendants do not counter Plaintiffs' comprehensive factual record, preferring to repeat stereotypes that the science conclusively rebuts. Defendants do not meaningfully engage with, much less distinguish, Plaintiffs' caselaw. Defendants misstate the holdings in *Does #1-5 v. Snyder* (*Does I*), 834 F.3d 696 (6th Cir. 2016), and *People v. Betts*, 968 N.W.2d 497 (Mich. 2021), and misdescribe the minor amendments to SORA as resolving the ex post facto issue.[1] On all the other claims, Defendants scarcely respond at all.

To the extent Defendants oppose preliminary injunctive relief on grounds that largely overlap with the arguments in support of their motion to dismiss, Plaintiffs adopt by reference here the arguments made in their response to that motion. In this brief, Plaintiffs focus on three issues. First, most of the evidence Plaintiffs have submitted is essentially undisputed, and Defendants' attempt to muddy the record on a few points with a few studies fails. Second, the lack of individualized review of

---

[1] Defendants falsely state that Plaintiffs admitted in *Does II* that SORA 2021 is constitutional. ECF No. 39, PageID.1154. Plaintiffs decried the "legislature's abject failure to pass a statute that responds to the judicial rulings," and said that SORA 2021 "fails to address many of the constitutional deficiencies identified by this Court and the Sixth Circuit and [] in some respects makes the law even more punitive and unclear." *Does II*, 2:16-cv-13137 ECF No. 107, PageID.2144. Judge Cleland cited *that passage* when making the statement quoted by Defendants before noting that Plaintiffs argue that the new law is unconstitutional. *Id.*, ECF No. 121, PageID.2448. Defendants' effort to turn this into an admission of constitutionality is baseless.

registrants is important both because it means that SORA 2021 remains unconstitutional, and because crafting a remedy that includes meaningful review could otherwise save the statute. Finally, Plaintiffs satisfy the preliminary injunction factors. They are likely to succeed on the merits and will suffer irreparable harm. The public interest and balance of the equities favor Plaintiffs, and the Court can craft injunctive and notice relief to address Defendants' concerns.

## I.     Defendants Fail to Rebut Plaintiffs' Well-Supported Factual Record.

### A.     Virtually All of the Evidence Submitted by Plaintiffs Is Undisputed.

Facts matter, which is why Plaintiffs prepared a 192-page verified complaint detailing the tremendous harm SORA 2021 inflicts, supported by ten expert reports setting out the science showing that assumptions about people with past sex offenses are wrong and that registries are counterproductive. Defendants offer nothing to the contrary, and do not dispute most facts, especially with respect to these harms:

- SORA 2021 severely limits registrants' ability to find housing and employment; to get an education; to travel; to engage in free speech, including use of the internet; and to be free from harassment and stigma.[2] ECF No. 1, PageID.93–135.
- Registrants must frequently report in person, and SORA 2021 increases what they must report, making the law ever more onerous. *Id.*, PageID.135–150.
- SORA has been aggressively enforced, with an average of 1,000 prosecutions a year; penalties can reach ten years' imprisonment. *Id.*, PageID.135.
- Technology has changed the form, function, and reach of registry information. The architecture and functions available on the website encourage browsing, mapping, and tracking registrants, rather than accessing archival information.

---

[2] For brevity, citations are mostly to the complaint, which then cites the record.

Registry information is now pushed to innumerable internet users who passively receive it without even intending to access it. *Id.*, PageID.81–93.

- SORA 2021 imposes immense costs on the state. *Id.*, PageID.151–155.

With respect to the science, Defendants do not dispute and/or counter that:

- SORA 2021 misidentifies the source of risk for sexual offending. People without prior sex offenses commit 90 to 95% of offenses. *Id.*, PageID.56–57.

- SORA 2021 undermines stable housing, employment, and pro-social relationships—the most important factors in successful reentry and desistance. *Id.*, PageID.57–58.

- The likelihood of reoffending varies among people with past sex offenses based on well-known risk factors. *Id.*, PageID.62–64.

- SORA 2021 does not accurately delineate the few people at high risk of reoffending from the large majority who are at low risk. *Id.*

- Re-offense risk drops off for all dramatically over time; after ten years, most people with a sex offense history present no more risk than the general male population; after 20 years re-offense free, all registrants reach that category. *Id.*, PageID.64–70.

- Empirically validated risk assessment tools are much more effective than the offense of conviction in assessing the likelihood of reoffending. *Id.*, PageID.70–72.

- Conviction-based registration requirements and tier assignments do not correspond to risk, and the tier levels are backwards, as higher tier offenders are less likely to reoffend than those in lower tiers. *Id.*, PageID.72–75.

- There are thousands of people on the registry who are less likely to commit a sex offense than people not subject to registration. *Id.*, PageID.79–81.

Accordingly, these facts must be taken as true. As Wright & Miller explain:

> When one or both parties support or oppose the preliminary-injunction application on written evidence, if there is no conflict about the facts, the preliminary injunction will be granted or denied on the basis of the undisputed evidence without difficulty. Frequently this result is justified on the ground that the written evidence is presumed true if it is not contradicted.

11 Charles Allen Wright & Arthur Miller, *Federal Practice and Procedure* § 2949 & n.32 (3d ed.) (collecting cases). *See also Kuebler v. Cleveland Lithographers & Photoengravers Union Loc. 24-P*, 473 F.2d 359, 363 (6th Cir. 1973) (plaintiffs' detailed affidavit in support of TRO was uncontradicted by counter-affidavits and must be taken as true).

> ### B. Defendants Fail to Rebut Plaintiffs' Evidence on the Few Disputed Facts, and Their Attempt to Muddy the Record Should Be Rejected.

Defendants only really dispute four facts, arguing that:

- The harms registrants experience flow from the fact of conviction, not registration. ECF No. 39, PageID.1188.
- The low re-offense rates of people with sex offenses might be attributable to the fact of registration. *Id.*, PageID.1172–1173.
- Recidivism rates could be somewhat higher than Plaintiffs' experts say. *Id.*, PageID.1169–1172.
- A few studies suggest that registries could have a marginal impact on recidivism rates. *Id.*, PageID.1173–1176.

On the first point, Defendants offer a bald assertion with no evidence. The record shows that the harms of registration dwarf any consequences of simply having a criminal record. ECF No. 1, PageID.81–93; ECF No. 1-5, PageID.413–415; ECF No. 1-6, PageID.468–475; ECF No. 1-7, PageID.520–524; ECF No. 1-8, PageID.564–566; ECF No. 1-10, PageID.627–656.

On the second point—that registries might explain low re-offense rates— Defendants simply speculate. Plaintiffs' experts explain why that theory is false.

ECF No. 1-5, PageID.401–412, 418–420; ECF No. 1-6, PageID.458–467; ECF No. 1-7, PageID.509–513, 524–526; ECF No. 1-8, PageID.560–563. *See also* Exhibit 1 – Socia Supplemental Declaration, at 16–38.

On the last two points—that re-offense rates might be slightly higher and registries might have a marginal impact—Defendants provide no evidence, just citations to a smattering of studies. "Evidence that goes beyond the unverified allegations of the pleadings and motion papers must be presented to . . . oppose a motion for a preliminary injunction. Affidavits are appropriate on a preliminary injunction motion and typically will be offered by both parties." 11 Wright & Miller, *supra*, § 2949. By contrast, Plaintiffs offer extensive testimony. ECF No. 1-4, PageID.234–248, 257–277; ECF No. 1-5, PageID.401–410, 413–415; ECF No. 1-6, PageID.458–471; ECF No. 1-7, PageID.509–513; ECF No. 1-8, PageID.560–563.

Moreover, as Dr. Kelly Socia explains in his detailed declaration, Defendants repeatedly misuse the cited studies, making claims that are refuted by the authors themselves. For example, Defendants cherry-pick data points which the studies show were not "statistically significant" and therefore have no scientific value because they could be attributed to chance or other random variables. *See* Exhibit 1 – Socia Supplemental Declaration. The research is quite clear, however, that registries do not work. As Dr. Socia explains, Defendants take the research out of context in an "attempt to justify a policy that simply cannot be justified given the existing body of

modern social science research." *Id.* at 39. Moreover, even if Defendants could show that theoretically registries might have a small impact on the margins—a finding their cited studies do not actually support— the Court would need to weigh any such minimal impact against the enormous, often lifetime burdens registrants face.

## II.  The Absence of Individual Review Makes the Statute Unconstitutional, But Providing Meaningful Individual Review Could Save the Statute.

Defendants attempt to recast Plaintiffs' arguments about individual review as a procedural due process claim foreclosed by *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1 (2003). That misstates the arguments Plaintiffs actually make and overlooks the role individual review can play in crafting relief.

SORA 2021's lack of individual review is important in two ways. First, it affects the legal analysis on a number of Plaintiffs' claims. Take the ex post facto claims, for example. Under the *Mendoza-Martinez* factors, imposing severe consequences based solely on past convictions without any consideration of risk, even though risk is the purported regulatory justification, requires a finding of punishment. The absence of individual review is relevant to whether SORA 2021 serves the historical goals of punishment and whether it is excessive. *See Smith v. Doe*, 538 U.S. 84, 109 (2003) (Souter, J., concurring) ("when a legislature uses prior convictions to impose burdens that outpace the law's stated civil aims, there is room for serious argument that the ulterior purpose is to revisit past crimes, not prevent future ones"); *Starkey v. Okla. Dep't of Corrs.*, 305 P.3d 1004, 1027 (Okla. 2013) (because

6

registration is based on convictions and not on risk, it "look[s] far more like retribution for past offenses than a regulation intended to prevent future ones").

Whether the absence of individual review makes a law excessive in relation to its purported non-punitive purpose depends in part on "[t]he magnitude of the restraint." *Smith*, 538 U.S. at 104. In *Smith*, the Court held that Alaska's conviction-based scheme was not excessive because it imposed only "minor and indirect" consequences. 538 U.S. at 100. Distinguishing *Kansas v. Hendricks*, 521 U.S. 346 (1997), the Court explained that Alaska's law did not require in-person reporting; registrants were not subject to supervision; there was "no evidence that the Act has led to substantial occupational or housing disadvantages for former sex offenders that would not have otherwise occurred"; and the difficulties registrants faced "flow[ed] not from the Act's registration and dissemination provision, but from the fact of conviction." *Id.* at 100–01. The record here shows the opposite. *Does I* held that the absence of individual review implies excessiveness when a law imposes serious consequences. 834 F.3d at 705. The record of serious harms with no individual review led to a finding of punishment, as should the even stronger record here.

The lack of individual review also points towards excessiveness where a law "sweep[s] in a significant number of people who pose no threat to the community." *Smith*, 538 U.S. at 109 (Souter, J., concurring); *see also Doe v. State*, 111 A.3d 1077, 1100 (N.H. 2015) (excessive to require lifetime registration without individual

review because "[i]f in fact there is no meaningful risk to the public, then the imposition of such requirements becomes wholly punitive"). *Smith* concluded that, despite the absence of individual review, the Alaska statute was not excessive in relation to a non-punitive purpose because the Court assumed registrants are "dangerous[] as a class." *Smith*, 538 U.S. at 103. The record here shows that is untrue. The unrebutted facts establish that there are thousands of people subjected to SORA 2021 who are no more likely to commit a sexual offense than the general male population. ECF No. 1-4, PageID.274. That is excessive.

The lack of individual review is also relevant to the analysis of other claims. For Defendants to defeat the First Amendment claims, they must show the burdens on speech are narrowly tailored. The fact that those restrictions are imposed class-wide on thousands of people who present no appreciable risk shows they are not. Likewise, the non-sex-offense claim turns on people being stigmatized as sex offenders without any finding that their offense had a sexual component.

The second reason individual review is important is because it provides a way to craft a remedy that would save the statute. *See Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328 (2006) ("Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem."). The remedy Plaintiffs obtained in *Does II* was to enjoin retroactive application of the statute completely. Although the Court could grant the same relief here, Plaintiffs'

request is more modest: the state could continue to enforce SORA 2021 against pre-2011 registrants, but only based on individualized periodic determinations that the person presents such a high risk to public safety that SORA 2021's extensive burdens are justified. As *Hendricks*, 521 U.S. at 357, makes clear, where a statute "unambiguously requires a finding of dangerousness," not just a past conviction, the state can, as a regulatory matter, impose significant restraints on liberty—in that case civil confinement and here SORA 2021's restrictions. The requested relief allows the state to continue to enforce the law against people who "pose[] a potential serious menace and danger," M.C.L. § 28.721—the ostensible regulatory purpose—while eliminating the unconstitutional retroactive punishment of people who present no such risk. Indeed, some states provide for individual review or utilize individual risk assessments to determine who is subject to registration or what restrictions apply. *See, e.g.*, Ga. Code Ann. § 42-1-14; Mass. Gen. Laws ch. 6, § 178L; Minn. Stat. § 244.052; N.J. Stat. Ann. § 2C:7-8; N.Y. Correct. Law § 168-l; Or. Rev. Stat. § 163A.100; 12-8 Vt. Code R. § 4; Wash. Rev. Code Ann. § 4.24.550.

## III.   Plaintiffs Are Likely to Succeed on the Merits.

Plaintiffs are likely to succeed on each of the claims for which they seek preliminary relief. Defendants' response, ECF No. 39, fails to rebut the record or engage with Plaintiffs' legal arguments. Plaintiffs address the few arguments that Defendants do make in their response to the motion to dismiss, due to the space

constraints of this reply and because the arguments overlap. It is important to note that Plaintiffs have not only plausibly alleged facts sufficient to overcome the motion to dismiss, but have also presented an extensive, unrebutted record that supports preliminary relief. For example, on the ex post facto claim, not only have Plaintiffs plausibly alleged that SORA 2021 is punitive under the *Mendoza-Martinez* factors, which is all that is needed at the pleadings stage, but they have also established that they are likely to succeed on the merits. So too with the other claims.

## IV. The Remaining Preliminary Injunction Factors All Weigh Strongly in Plaintiffs' Favor.

### A. Plaintiffs Are Suffering Irreparable Harm.

Defendants concede both (a) that it will take years to litigate this case, and (b) that if constitutional rights are being violated, that alone constitutes irreparable harm. ECF No. 39, PageID.1155, 1217. They argue, however, that there is no irreparable harm because the law is constitutional. *Id.*, PageID.1217. That analysis conflates the first (likelihood of success) and second (irreparable harm) factors of the test.

Absent relief, Plaintiffs will suffer not just the per se irreparable harm of having their constitutional rights violated, but also concrete, ongoing harms. Many hundreds, even thousands, will likely be incarcerated for violations of an unconstitutional law, facing up to ten years in prison. M.C.L. § 28.729(1); ECF No. 1-11, PageID.674. Thousands more will lose housing, employment, or access to education; limit travel to see family/friends; have their internet speech chilled; be subjected to

stigmatization and harassment; and be required to interrupt their lives with great frequency to report endless trivial changes to personal information. ECF No. 1, PageID.93–150; ECF No. 1-6, PageID.471–475, 478–486; ECF No. 1-7, PageID.520–524; ECF No. 1-8, PageID.564–566. There is no way to undo that harm at the end of this litigation. It is therefore irreparable.

### B. The Balance of Equities and Public Interest Factors Favor Plaintiffs on the Ex Post Facto Claim.

Defendants' discussion focuses on the ex post facto claim, making two points.

First, Defendants argue that although the sky would not fall, "the sky would certainly be darker" because barring retroactive enforcement against pre-2011 registrants would undermine the state's ability to prevent sexual offending. ECF No. 39, PageID.1218. But Defendants provide no evidence that Judge Cleland's year-long injunction harmed the state in any way. Defendants' reliance on fearmongering instead of facts is unsurprising because registries do not work to prevent sexual offending. ECF No. 1-6, PageID.458–471. The record also establishes that risk decreases dramatically over time, a point Defendants do not even dispute. Almost all recidivism occurs within the first five years, and by ten years the vast majority of registrants present no more risk than unregistered males with no history of sexual offending. ECF No. 1-4, PageID.230, 257–273. The pre-2011 ex post facto subclass's offenses are at least a decade old. Defendants present no evidence to

counter Plaintiffs' extensive proofs that limiting enforcement to post-2011 registrants would not harm, and could enhance, public safety. Plus, the state could still require *some* pre-2011 registrants to comply with SORA 2021 based on an individual review and finding of dangerousness.

Second, Defendants argue that because the state lacks a process for individual review, barring enforcement absent review would cause the registry to go "radio-silent." ECF No. 39, PageID.1219. But the relief requested on the ex post facto claim does not affect the state's ability to publicize information about post-2011 registrants. (The relief sought on Counts II, IV, VII, and IX, either does not turn on individual review or uses existing procedures. The relief on Count V (compelled speech) does not prevent the state from disseminating information, but only from compelling disclosure absent individual review. *See* ECF No. 7, PageID.864.)

For pre-2011 registrants, the Court has numerous options in crafting relief.[3] The Court *could* simply bar enforcement absent review. *See Does II*, 449 F. Supp. 3d 719, 738 (E.D. Mich. 2020) (prohibiting any enforcement against pre-2011 registrants). Or the Court could order the parties to submit a negotiated joint proposal for such reviews (or separate proposals if unable to agree), including timeframes. *See*,

---

[3] Defendants, relying on articles about different instruments than those used to determine likelihood of sexual recidivism, argue that some tools are imperfect. ECF No. 39, PageID.1203. But they do not dispute that risk assessments are far better at predicting recidivism than the offense of conviction. *See, e.g.*, ECF No. 1-4, PageID.246–277; ECF No. 1-6, PageID.455–466; ECF No. 1-7, PageID.512–513.

*e.g.*, *Hamama v. Adducci*, 17-cv-11910, ECF No. 201 (E.D. Mich.) (setting out parties' agreement on procedures for hearings, and court's decisions where parties could not agree after court held that prolonged immigration detention requires individual review and ordered class members released unless bond hearing held by specified date), *rev'd on other grounds*, 912 F.3d 869 (6th Cir. 2018).

Because there are legal and logistical issues to work through on how review will be provided, it may make sense for the parties to negotiate and submit proposals if the Court wants to grant injunctive relief on the ex post facto claim. For example, the Michigan Department of Corrections has long done risk assessments, ECF No. 1, PageID.71, and the parties might agree that registrants already found to be low-risk need not be reassessed. Similarly, because people with old convictions do not present a risk, review could be limited to those with more recent convictions.

Defendants object that these are legislative choices. *But see* Resp. to Mot. to Dismiss, Section I.B. Nothing prevented the legislature—which was well aware of the individual review issue given the repeated judicial decisions holding SORA unconstitutional—from developing a review process. Nor would the Court be ordering the state to conduct reviews. All the Court would be saying is that while the state cannot impose retroactive *punishment*, if the state wants to *regulate* pre-2011 registrants, it can still do so, provided it first shows that each person poses a sufficiently high risk to justify SORA 2021's extensive burdens.

In short, injunctive relief is not always an on/off switch. The Court's initial task is to determine if SORA 2021 imposes retroactive punishment. After that finding is made, the Court can craft appropriate injunctive relief. If the state wants to continue imposing SORA 2021 on pre-2011 registrants, the parties can then negotiate or brief the scope and nature of individual review required to convert the current punitive regime (which cannot be retroactively applied) into a regulatory one (which, if it incorporates sufficient procedures, could). The balance of the equities and public interest factors favor Plaintiffs because the harms to them are grave, and no harm will come from ending the retroactive enforcement of SORA 2021 against pre-2011 registrants who do not present a correspondingly high risk to public safety.

### C. Defendants Fail to Respond to Plaintiffs' Showing on the Balance of Equities and Public Interest Factors as to the Remaining Claims.

Defendants do not discuss the equities/public interest for the other claims, and fail to explain what harm would come from a preliminary injunction that:

- bars Defendants from retroactively enforcing SORA 2021 against the retroactive extension of registration subclass for a term longer than that in effect at the time of the registrant's offense (which is almost always 25 years—a time period that is longer than the period that even the highest risk individuals need to reach desistance, *see* ECF No. 1-4, PageID.230, 272–273 (Count II));

- bars Defendants from denying the barred-from-petitioning subclass the opportunity to petition for removal under existing procedures that are already available to other registrants who meet the same eligibility criteria (Count IV);

- bars Defendants from enforcing SORA 2021's compelled disclosure requirements, where the state has conceded that the information registrants have been forced to provide is otherwise easily obtainable (Count V);

14

- bars Defendants from enforcing SORA 2021 against the non-sex offense sub-class absent a judicial determination under existing procedures that the of-fense was in fact a sexual offense against a minor (Count VII); and

- bars Defendants from requiring Plaintiffs to attest that they understand SORA 2021 (Count IX).

Defendants' only argument is that such relief might later be overturned on appeal. When district courts grant injunctions, there is always the possibility an appellate court will modify or vacate. But that does not prevent district courts from acting to protect constitutional rights. And just as in other cases, if relief is modified on appeal, the state can adjust. Michigan has already demonstrated that it would be fully capable of re-imposing any SORA restrictions that an appellate court finds permissible. After all, Judge Cleland held the old SORA entirely void for pre-2011 registrants and also enjoined its enforcement against all registrants for a year. The state did not hesitate to re-impose restrictions as soon as the injunction was lifted.

Defendants profess concern that registrants might be confused if an appeal changes relief. Defendants' solicitude for registrants' wellbeing does not extend, however, to ending their unconstitutional treatment. Plaintiffs would much rather get relief now, even at the risk that it could be taken away, than be subjected to unconstitutional harm. *See* ECF No. 1, PageID.25, 92, 131–132 (describing transformative impact of the injunction in *Roe v. Snyder*, No. 16-cv-13353 (E.D. Mich.), even though that relief is no longer in effect). Moreover, the Court can manage when and

how notice is provided to avoid any confusion for registrants or law enforcement, just as the Court did in *Does II*. *See* No. 2:16-cv-13137, ECF No. 130.

### Conclusion

The constitutionality of SORA has been litigated for a decade. Although the Sixth Circuit in *Does I* said that the old SORA violated the Ex Post Facto Clause and that the other challenges "are far from frivolous and involve matters of great public importance," 834 F.3d at 706, Defendants made only minor revisions in SORA 2021.

Plaintiffs' requested relief is modest, particularly given the scale and duration of the constitutional violations. The state would still be able to impose the burdens of SORA 2021—which was designed to monitor *dangerous* persons—based on an individual determination that someone is so dangerous that the law's burdens are justified. Michigan could still have a public registry for post-2011 registrants (without individual review) to make available conviction and other public record information; the state would only be prevented from compelling registrants to "interrupt [their] lives with great frequency," *id.* at 705, and to contribute to a website that demonizes them. The state would still be able to register people who were not convicted of sex offenses if it determines under existing procedures that the offense was sexual in nature. Existing petitioning procedures would also be opened up to allow people who meet strict eligibility criteria to seek discretionary relief from registration. And registrants would no longer be compelled to say they understand the law.

Defendants have been on notice for at least five years that SORA had grave constitutional deficiencies, yet have failed to remedy them. Now Defendants insist that they should be allowed to continue enforcing a law that suffers from most of the same defects as the prior one, while this litigation proceeds. Plaintiffs are prepared to work with Defendants and the Court to craft appropriate relief. But Plaintiffs should not be subjected to an unconstitutional law while this case is pending simply because the state has refused to make its registry consistent with the Constitution.

Respectfully submitted,

s/ Miriam J. Aukerman (P63165)
Rohit Rajan (AZ 035023)
American Civil Liberties Union
  Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org
rrajan@aclumich.org

s/ Paul D. Reingold (P27594)
Cooperating Counsel, American Civil
  Liberties Union Fund of Michigan
Univ. of Michigan Law School
802 Legal Research Building
801 Monroe Street
Ann Arbor, MI 48109-1215
(734) 355-0319
pdr@umich.edu

s/ Daniel S. Korobkin (P72842)
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6824
dkorobkin@aclumich.org

s/ Roshna Bala Keen (Ill. 6284469)
Loevy & Loevy
Cooperating Counsel, American Civil
  Liberties Union Fund of Michigan
311 North Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
roshna@loevy.com

Counsel for Plaintiffs

Dated: July 18, 2022

## LOCAL RULE CERTIFICATION

I, Rohit Rajan, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted material and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 points (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

<u>s/ Rohit Rajan (AZ 035023)</u>
Rohit Rajan
American Civil Liberties Union
  Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
rrajan@aclumich.org
