UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOES A, B, C, D, E, F, G, H, MARY DOE and MARY ROE, on behalf of themselves and all others similarly situated,

Plaintiffs,

v

GRETCHEN WHITMER, Governor of the State of Michigan, and COL. JOSEPH GASPER, Director of the Michigan State Police, in their individual capacities,

Defendants.

No. 2:22-cv-10209

HON. MARK GOLDSMITH

MAG. CURTIS IVY, JR.

**REPLY BRIEF**

---

**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO THE MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

Table of Contents ........ i

Index of Authorities ........ ii

Introduction ........ 1

Argument ........ 1

I. Binding precedent defeats Plaintiffs claims. ........ 1

A. The new SORA does not have more reporting requirements than SORNA. ........ 4

B. Michigan's public registry does not "go beyond" SORNA. ........ 9

II. Plaintiffs' reliance on *Does I* is misplaced ........ 10

III. Plaintiffs ignore reality. ........ 14

IV. The impact of *Lymon* on the class action ........ 17

Certificate of Service ........ 19

Local Rule Certification ........ 20

# INDEX OF AUTHORITIES

## Cases

*ACLU v. Masto*,
670 F.3d 1046 (9th Cir. 2012) ....................12

*Bacon v. Neer*,
631 F.3d 875 (8th Cir. 2011) .................... 3

*Doe v.* Bresden, 507 F.3d 998 (6th Cir. 2007)....................11

*Doe v. Smith,*
538 U.S. 84 (2003) ....................15

*Doe v. State*,
167 N.H. 382 (2015).................... 3

*Does #1-5 v Snyder*,
834 F.3d 696 (6th Cir. 2016) ....................10, 11, 12, 13

*Hope v. Commissioner of IDOC*,
9 F.4th 513 (7th Cir. 2021) ....................12

*Natl Park Hosp. Ass'n v Dept of Interior*,
538 U.S. 803 (2003) .................... 9

*People v. Betts*,
507 Mich. 527 (2021).................... 3

*People v. Tucker*, N.W.2d 906 (Mich. Ct. App. 2015) ....................11

*Prater v. Linderman*, Case No. 18-cv-992, 2019 WL 6711561 (W.D. Mich. December 10, 2019) ....................11

*Shaw v. Patton,*
823 F.3d 556 (10th Cir. 2016) ....................12, 13

*Smith v. Doe,*
538 U.S. 84 (2003) ....................11

*U.S. v. Parks,*
698 F.3d 1 (1st Cir. 2012)....................12

*U.S. v. Seal*,
709 F.3d 257 (4th Cir. 2013) ....................................................................12

*U.S. v. W.B.H*,
664 F.3d 848 (11th Cir. 2011) ..........................................................12, 13

*U.S. v. Elkins*,
683 F.3d 1039 (9th Cir. 2012) ................................................................ 3

*U.S. v. Leach*,
639 F.3d 769 (7th Cir. 2011) .................................................................. 3

*U.S. v. Wass*,
954 F.3d 184 (4th Cir. 2020) .................................................................. 3

*Willman v. Attorney Gen. of United States*,
972 F.3d 819 (6th Cir. 2020) .................................................................. 2

*Willman v. Garland*,
141 S. Ct. 1731 (2021) ............................................................................ 2

*Willman v. Wilkinson*,
141 S. Ct. 1269 (2021) ............................................................................ 2

**Statutes**

34 U.S.C. § 20913(c) .................................................................................. 6

34 U.S.C. § 20914(b)(7)................................................................................ 8

Mich. Comp. Laws § 28.725(1)(a) ............................................................... 6

Mich. Comp. Laws § 28.725(2)(b)................................................................ 5

Mich. Comp. Laws § 28.727(h) ....................................................................7

## INTRODUCTION

Filing a 192-page complaint with ten expert reports, and numerous other exhibits spanning over 500 pages does not overcome binding precedent.

The Michigan SORA is a new law that must be looked at as a whole. In light of earlier legal challenges, the old SORA was amended to mirror federal SORNA in all material respects. Courts evaluating the new SORA, must do so in the aggregate and not based on analysis used when examining the old SORA. The Sixth Circuit Court of Appeals has already found in a published opinion that the federal SORNA is not an Ex Post Facto violation – it is not publishment. This Court is bound to follow that precedent, and as a result, must conclude that the new SORA is not punishment.

## ARGUMENT

### I. Binding precedent defeats Plaintiffs claims.

Plaintiffs' attempts to distinguish SORNA from the new SORA strain credulity. SORNA and the new SORA both impose substantive obligations on sex offenders. Federal cases holding that SORNA's substantive obligations do not punish, when examined in the aggregate under the *Mendoza-Martinez* framework, apply to the new SORA.

In *Willman*, the question before the Sixth Circuit was whether Willman had registration and notification obligations under SORNA when he was convicted

under state law but was no longer subject to the state's sex offender registration requirements. *Willman v. Attorney Gen of United States*, 972 F.3d 819, 821 (6th Cir. 2020), cert den sub nom. *Willman v. Wilkinson*, 141 S. Ct. 1269 (2021), reh den sub nom. *Willman v. Garland*, 141 S. Ct. 1731 (2021). Willman was convicted in 1993, long before the alleged onerous obligations that Plaintiffs complain of were in place. *Id*. at 822. The Court found that Willman was still subject to SORNA, which rests on the predicate that it is not punishment. *Id*. at 823. Willman argued that SORNA was unconstitutional under the Ex Post Facto clause. *Id*. at 824. The Court found that the claim was not "facially plausible" and cited to its earlier decision in *Felts* and numerous other circuits that came to the same conclusion. *Id*.

That is the end of Plaintiff's claims. Plaintiffs try to pick around the edges about differences between the SORNA and SORA, but because SORNA is on all fours with the new SORA, Plaintiff's claims too must fail. Plaintiffs try to take issue with specific provisions of the new SORA, but that approach was rejected by the Sixth Circuit in *Willman* and by the Michigan Supreme Court in *Betts*. The law must be looked at in the aggregate.

"In determining whether defendant has satisfied this burden, we do not examine individual provisions of SORA in isolation **but instead assess SORA's punitive effect in light of all the act's provisions when viewed as a whole**." See

*Smith*, 538 U.S. at 92, 94, 96-97, 99, 104-105; see also *Doe v. State*, 167 N.H. 382,

402 (2015) (holding that the punitive-effect "inquiry cannot be answered by

looking at the effect of any single provision in the abstract"; rather, a court "must

consider the effect of all the provisions and their cumulative impact upon the

defendant's rights") (quotation marks and citations omitted). *People v. Betts*, 507

Mich. 527, 549 (2021) (emphasis added).

What is more, Plaintiffs are making some of the same arguments here that

were made by the ACLU in an amicus brief in *Willman*. (Ex. A, Amicus Curiae

Brief.) The Sixth Circuit considered those arguments and rejected them.

The Plaintiffs do not address or distinguish the cases Defendants cite where

the First, Fourth, Seventh, Eighth, Ninth, and Eleventh Circuits agreed that

SORNA's registration obligations do not punish registrants' underlying sex

offenses Ex Post Facto. *See United States v. Parks*, 698 F.3d 1, 5–6 (1st Cir.

2012); *United States v. Wass*, 954 F.3d 184, 189–93 (4th Cir. 2020); *United States

v. Leach*, 639 F.3d 769, 773 (7th Cir. 2011); *Bacon v. Neer*, 631 F.3d 875, 878 (8th

Cir. 2011); *United States v. Elkins*, 683 F.3d 1039, 1045 (9th Cir. 2012); *United

States v. W.B.H.*, 664 F.3d 848, 855–60 (11th Cir. 2011).

Plaintiffs also read *Felts* and *Willman* too narrowly. Plaintiffs argue that

*Felts* held that the federal government does not punish a sex offense Ex Post Facto

when it punishes a SORNA violation because sex offenses and SORNA violations

are distinct crimes. Plaintiffs assert that if this is true, and *Willman* cited *Felts* in holding that SORNA's registration requirements were not punitive, this Court cannot ascertain "whether [*Willman*] was based on SORNA not being retroactive or not being punishment." (ECF No. 44, PageID.1547.) A close reading of *Willman* disposes of this argument.

Finally, Plaintiffs argue that cases upholding the constitutionality of SORNA are inapplicable to the new SORA because the federal circuit courts "lacked the factual record here." (ECF No. 44, PageID.1548-1549.) Plaintiffs cite only *Young* as support for this conclusion. *Id*. Plaintiffs do not address the adequacy of the record in any of the other numerous federal circuit court decisions holding that SORNA's obligations are not punitive. More importantly, Plaintiffs cite no authority for their premise that this Court may even properly consider the strength of the record in deciding whether to ignore otherwise binding precedent.

### A. The new SORA does not have more reporting requirements than SORNA.

Plaintiffs assert that the new SORA requires registrants to report when they *intend* to temporarily stay at a location other than their primary residence for more than seven days, while SORNA merely requires registrants to report, within three business days, when they are *actually staying* at a location other than their primary residence for more than seven days within three days of the change occurring.

Suppose SORNA requires registrants to report that they are on vacation only once their vacation has already begun. In that case, registrants in States with in-person reporting requirements may only vacation for a maximum of six days (assuming the registrant cleverly departs on a Saturday preceding a federal holiday to exploit SORNA's "business days" exception). Registrants in other States must plan to report remotely by whatever method their State allows once their vacation has begun. Under Plaintiffs' construction, the new SORA is more permissive than SORNA because it permits registrants to report that they will be taking a vacation soon – *i.e.*, their *intent* to go on vacation – *ex ante*, while SORNA requires registrants to interrupt their holidays to report their ongoing vacations.

But Plaintiffs' interpretation of SORNA is almost certainly not what Congress intended. It is obvious from a plain reading of SORNA that Congress anticipated that registrants would report their plans to reside at a location other than their primary residence for seven days before their departure from their primary residence. *See* Registration Requirements Under the Sex Offender Registration and Notification Act, 86 Fed. Reg. 69,856, 69,873–74, 69,880 (Dec. 8, 2021) (to be codified at 28 C.F.R. pts. 72.6(f), 72.7(e)). Far from imposing a higher burden than SORNA in this respect, the new SORA merely makes explicit what SORNA leaves implicit. *See* Mich. Comp. Laws § 28.725(2)(b).

Plaintiffs raise a similar challenge to the new SORA's reporting requirements concerning changes to registrants' addresses. Plaintiffs argue that requiring registrants to report *planned* address changes, as the new SORA does, is stricter than the federal scheme, which allows registrants to report address changes *post facto*. But the Plaintiffs incorrectly analogize Michigan's in*ter*-state address change reporting requirement with the federal in*tra*-state address change reporting requirement. Plaintiffs also discuss 34 U.S.C. § 20913(c) but fail to cite the codified federal regulations interpreting it. *See* 86 Fed. Reg. at 69,877–78 (to be codified at 28 C.F.R. pt 72.7(c)–(d)).

Michigan's int*er*-state reporting requirement is reflected in Mich. Comp. Laws § 28.725(1)(a), which requires registrants to report changes to their addresses within three business days *after* the change has occurred. SORNA's inter-state reporting requirement is identical, which the plaintiffs ignore. *See* 86 Fed. Reg. at 69,877 (to be codified at 28 C.F.R. pt 72.7(c)).

Plaintiffs assert that "SORA requires registrants to report 'all telephone numbers registered to or used by the individual,' without apparent time limitation," while "SORNA requires only current numbers." (*Id.*) Plaintiffs' assertion that SORNA only requires *current* numbers applies equally to the new SORA. SORNA requires registrants to provide "[a]ll designations the sex offender uses for purposes of . . . self-identification in . . . telephonic communications . . . ,

including . . . telephone numbers" upon initial registration.  86 Fed. Reg. at 69,872

(to be codified at 28 C.F.R. pt. 72.6(b)).  The new SORA requires registrants to

report "[a]ll telephone numbers registered to the individual or used by the

individual, including, but not limited to, residential, work, and mobile telephone

numbers" upon initial registration.  Mich. Comp. Laws § 28.727(h).  Neither

SORNA nor the new SORA explicitly requires registrants to report only the phone

numbers they *currently* use.

Plaintiffs contrast the telephone information Michigan registrants must

provide upon initial registration *and* the changes to a registrant's telephone

information that triggers an immediate reporting obligation with *only* the SORNA

immediate reporting requirement.  The new SORA requires registrants to

immediately report "any change in . . . telephone numbers registered to or used by

the individual." *Id.* § 28.725(2)(a).  SORNA requires registrants to immediately

report "any change in remote communication identifier information, as described

in § 72.6(b)." 86 Fed. Reg. at 69,880 (to be codified at 28 C.F.R. pt. 72.7(e))

It follows that if the new SORA requires registrants to report *all* phone

numbers they have *ever* used upon initial registration as Plaintiffs contend, so does

SORNA because both initial reporting provisions regarding phone numbers are

essentially identical.[1] Plaintiffs claim that the new SORA requires registrants to maintain a driver's license or identification card, while SORNA does not. But SORNA requires *the States* to include "[a] photocopy of a valid driver's license or identification card issued to the sex offender" in their sex offender registries. 34 U.S.C. § 20914(b)(7).

Plaintiffs, citing *id.* § 28.724a(5), broadly proclaim that "SORA 2021 also has additional verification requirements." (ECF No. 44, PageID.1550.) The new SORA requires non-resident sex offenders enrolled in or employed by a Michigan college to register with the police department with jurisdiction over the college campus where they work or attend classes and they must "present written documentation of employment status, contractual relationship, volunteer status, or student status". *See* Mich. Comp. Laws §§ 28.723(1), 28.724a(1) and (5).

SORNA also requires all sex offenders to register "in each jurisdiction in which the offender . . . is an employee[] or is a student." 86 Fed. Reg. at 69,869 (to be codified at 28 C.F.R. pt. 72.4). Further, under SORNA, "[a] sex offender who commences employment or school attendance in a jurisdiction[] . . . must appear in person in that jurisdiction and register . . . within three days." *Id.* at 69,877 (to be codified at 28 C.F.R. pt. 72.7(c)). The new SORA does not impose

[1] Defendants do not concede that Plaintiffs' interpretation of the new SORA is accurate; Defendants assert only that if Plaintiffs' interpretation is accurate, SORNA must apply to registrants similarly.

additional *registration* requirements; if anything, it prescribes more specific *verification* requirements.

### B. Michigan's public registry does not "go beyond" SORNA.

Plaintiffs aver that "SORA 2021 requires the posting of nicknames," while SORNA requires "just names and aliases." (ECF No. 44, PageID.1550.) An *alias* as "[a]n assumed or additional name that a person has used or is known by," *Alias*, *Black's Law Dictionary* (11th ed. 2019), and a *nickname* as "[a] descriptive or alternative name, in addition to or instead of the actual name," *Nickname*, *Black's Law Dictionary*, *supra*. Plaintiffs do not distinguish a nickname from an alias; under a commonsense reading of SORNA, sex offenders' aliases include their nicknames.

Plaintiffs state that "[u]nder SORA 2021, the public registry *can* include a person's email and other internet IDs, *increasing the likelihood* of online harassment." (ECF No. 44, PageID.1551.) Plaintiffs use *can* and not *shall* because they know that Michigan's registry does not include registrants' internet identifiers. This claim is not ripe. *Natl. Park Hosp. Ass'n v. Dept. of Interior*, 538 U.S. 803, 807 (2003).

## II. Plaintiffs' reliance on *Does I* is misplaced

Plaintiffs rely heavily on the *Does I* opinion to conclude that there is an Ex Post Facto violation. (ECF No. 44, PageID.1529-1533.) However, the Sixth Circuit made clear that the *Does I* ruling only applied to the named Plaintiffs, and not to other parties. *Does #1-5 v Snyder*, 834 F3d 696 at 706 (6th Cir. 2016).

Many of the provisions challenged by Plaintiffs were in place long before the 2006 amendments. (ECF No. 1.) (e.g., kidnapping as a registerable offense; lifetime quarterly in-person reporting; driver's license or ID requirement – all became requirements in 1999.) 1999 PA 0085.

The Court largely focused on four of the *Mendoza* factors to determine that the 2006 and 2011 SORA amendments were punishment *as applied* to the Plaintiffs.[2] *Does I*, 834 F.3d at 701.

*First,* the Court looked at three traditional forms of punishment: banishment, shaming, and probation/parole. *Id*. at 702-703. The Court limited its discussion regarding banishment to the school safety zone requirements contained within the 2006 SORA amendments. (*Id*; ECF No. 44, PageID.1530.) In discussing shaming, the Court focused on the publishing of tier classifications and the disclosure of otherwise non-public information, both provisions that were

---

[2] The factor of whether the law promoted the traditional aims of punishment, was given little weight. *Id*. at 704.

contained in the 2011 Amendments to SORA but are not contained in the new SORA. *Id.*; ECF No. 1-15, PageID.748. In discussing probation/parole, the Court considered the 2006 school safety zone restrictions, the requirement of in-person reporting, and the fact that failure to comply could be punished. *Id*. at 703. The Court emphasized the Supreme Court's holding in *Smith* that the offenders in that case could move where they wish and to live and work as other citizens. *Id*., citing *Smith v. Doe,* 538 U.S. 84, 101 (2003). The *Does I* Court did not address the in-person reporting requirements without the school safety zone limitations on where an offender may live, loiter, or work. *Does I*, 834 F.3d at 703. These provisions, however, were added as part of the 1999 amendments to SORA, and not part of the 2006 and 2011 amendments considered in *Does I*.

Both Michigan and federal courts have repeatedly found that SORA's quarterly in-person reporting requirements are not punishment, and therefore do not violate Ex Post Facto. See e.g., *People v. Tucker*, 879 N.W.2d 906, 920-921 (Mich. Ct. App. 2015); *Prater v. Linderman*, Case No. 18-cv-992, 2019 WL 6711561 (W.D. Mich. December 10, 2019); *Doe v.* Bresden, 507 F.3d 998 (6th Cir. 2007). Accordingly, the new SORA does not resemble banishment, shaming or probation or parole under *Does I*.

*Second*, the Court looked to whether the SORA imposed an affirmative disability or restraint. The Court found that the most significant restraints came

from the school safety zone requirements contained within the 2006 SORA amendments. *Does I*, 834 F.3d at 703. The Court also considered in-person lifetime reporting requirements, but as mentioned above, these provisions have been repeatedly upheld as not being punishment when not combined with prohibitions on where registrants can work and live. See e.g., *U.S. v. Parks,* 698 F.3d 1, 6 (1st Cir. 2012)*; ACLU v. Masto*, 670 F.3d 1046,1056 (9th Cir. 2012); *U.S. v. W.B.H*, 664 F.3d 848, 857 (11th Cir. 2011); *Shaw v. Patton,* 823 F.3d 556, 569 (10th Cir. 2016); *Hope v. Commissioner of IDOC*, 9 F.4th 513, 532 (7th Cir. 2021) (in-person reporting requirements do not create restraints or disabilities sufficient to be deemed punitive); *U.S. v. Seal*, 709 F.3d 257, 265 (4th Cir. 2013) (periodic in-person reporting is not an affirmative disability or restraint). Therefore, the new SORA's lifetime in-person reporting requirements, without the 2006 amendment's school safety zones, do not clearly impose an affirmative disability or restraint under the *Does I* decision.

*Third,* the Court considered whether SORA lacks a rational relation to a non-punitive purpose. The *Does I* Court reviewed empirical studies that questioned the effectiveness of offense-based registration; however, the focus of the discussion was on the effects of residential and school safety zone restrictions. *Does I*, 834 F.3d at 704-705. There is no discussion specifically addressing prior federal decisions finding a rational, non-punitive bases for in-person reporting

requirements. See e.g., *Parks*, 698 F.3d at 6 (in-person reporting serves purpose of establishing that registrant is in the vicinity, confirms identity by fingerprints, and records the current appearance); *W.B.H.*, 664 F.3d 857 (in-person requirements help track registrants and ensures information is accurate); *Shaw,* 823 F.3d at 573 (reporting requirements are helpful in investigating crimes and rationally related to a non-punitive purpose). The new SORA does not include any residential restrictions or school safety zones. Therefore, the *Does I* finding that the 2006 amendments were not rationally related to a non-punitive purpose does not apply to the in-person reporting requirements of the new SORA.

*Fourth*, the Court looked to whether SORA was excessive. It relied heavily on the 2006 school safety zone restrictions. *Does I*, 834 F.3d at 705. The *Does I* Court also found that the requirement that registrants make frequent in-person appearance before law enforcement appeared to have no relationship to public safety. *Id.* However, the Court did not discuss either the prior Sixth Circuit cases or the vast majority of cases in other federal circuits finding that in-person reporting requirement were not excessive and clearly related to public safety. Therefore, the excessiveness analysis under *Does I* should not apply to the new SORA. What is more, many updates can now be done by mail rather than in person.

The *Does I* Court made clear that its ruling was limited to the contested provisions discussed in their opinion finding the 2006 and 2011 amendments punitive. In making that decision, the Court analyzed the *Mendoza* factors in light of specific provisions of the 2006 and 2011 SORA amendments which are no longer part of the new SORA. Therefore, despite Plaintiff's insistence to the contrary, the *Does I* analysis does not apply to the new SORA.

## III. Plaintiffs ignore reality.

As Plaintiff's point out, the digital age has changed the consequences of registration. (ECF No. 44, PageID.1525.) But it does not end there, it has changed every aspect of our lives regardless of registration status. Removal from the registry does not erase the past.

Even if the registry is changed to discourage browsing, mapping and tracking, the information that Plaintiffs complain about being available on the registry is readily available from numerous other sources. Currently incarcerated individuals and those under the supervision of the Michigan Department of Corrections can be found using a simple name search.[3] Using a person's name or address, you can find out whether they own a home, how much they paid for their property, who is on the deed with them, and whether they are up to date on their

---

[3] Offender Tracking Information System (OTIS) (state.mi.us) (last accessed July 20, 2022).

taxes.[4]  Using a person's name you can also easily find their age, date of birth, current and past addresses, current and past phone numbers (including cell phone numbers), possible relatives, and possible associates.[5]  For a small fee someone can obtain arrest records, court records, marriage and divorce records, birth and death records, police records, search warrants, criminal records data, property records, bankruptcies judgment and liens and a complete background check.[6]  These sources do not include the plethora of information that people voluntarily post on various social media platforms.

Employers and landlords routinely run basic background checks, which will turn up information regarding criminal histories.  "Landlords and employers could conduct background checks on the criminal records of prospective employees or tenants even with the Act not in force.  The record in this case contains no evidence that the Act has led to substantial occupational or housing disadvantages for former sex offenders that would not have otherwise occurred through the use of routine background checks by employers and landlords."  *Doe v. Smith,* 538 U.S. 84, 100 (2003).  Even if there is no longer a public website listing basic

---

[4] Home | City of Grand Rapids | BS&A Online (bsaonline.com) (last accessed July 20, 2022).

[5] 100% Free Family Tree and Genealogy Research - FamilyTreeNow.com (last accessed July 20, 2022); Nuwber (last accessed July 20, 2022).

[6] People Search, Reverse Phone, Address and Email Lookup (peoplefinders.com) (last accessed July 20, 2022).

information about registrants, the convictions will still be discoverable and will potentially create barriers for registrants.[7]

Strangely, Plaintiffs' take the position that the new SORA is very expensive but fail to acknowledge the costs associated with individualized review for the tens of thousands of individuals on the registry. It does not take an expert economist to know that providing individual review for tens of thousands of people would be extraordinarily expensive and time consuming. (ECF No. 44, PageID. 1527.)

What's more, Plaintiffs are asking the Court to bar enforcement for pre-2011 registrants until individualized review is conducted and they assert that "people with old convictions do not present a risk, [individualized] review could be limited to those with more recent convictions." (ECF No. 42, PageID. 1459-1460.) Granting Plaintiffs' the relief they seek means that registrants such as Curwood Price would be unregistered until he can be given individualized review.[8] Mr. Price was sentenced in 1991 for three offenses of criminal sexual conduct, 1st

---

[7] There is no registry for persons who committed embezzlement. However, if a bank is considering hiring someone, they would run a background check. If the background check turned up a conviction for embezzlement the bank would consider that in determining whether to offer them a job. Employers or landlords can either ask an applicant for a criminal history on the application itself, or they can run a simple background check themselves. If there is a conviction, the employer or landlord may decide to not offer employment or housing to that person based solely on the past conviction.

[8] See Case No. 2:22-cv-11561-LVP-DRG, which is a declaratory action Mr. Price filed seeking removal from the registry.

Degree (person under 13) MCL 750.520(b)(1)(a).[9] He spent nearly 30 years in prison and he was discharged from prison in December 2019. (*Id.*) Plaintiffs posit that registrants such as Mr. Price are not dangerous because risk decreases over time. (ECF No. 43, PageID.1458-1459.) Granting Plaintiffs relief means that this Court is making the determination that Mr. Price is not dangerous (which well may be true, but it is unknown) and that members of the community do not need to be notified about where he lives.

Plaintiffs claim that during legislative hearings on the new SORA, despite virtually all the commenters opposing the bill, the Legislature barely changed the law. The changes were made to bring SORA inline with SORNA, and the overwhelming majority of commenters opposing the bill were registrants or family members of registrants – its no surprise that they were not in favor of the law.[10]

## IV. The impact of *Lymon* on the class action

In light of the *Lymon* decision, it is anticipated that a stipulation will be submitted to dismiss *Count VII – Registration of people who did not commit sex offenses* when the parties can work through the logistics.

---

[9] Offender Tracking Information System (OTIS) - Offender Profile (state.mi.us) (last accessed July 27, 2022)

[10] Michigan House - Judiciary (last accessed July 28, 2022).

## CONCLUSION AND RELIEF REQUESTED

For the reasons stated above, the complaint should be dismissed in its entirety and grant other relief as appropriate.

/s/ *Eric M. Jamison*
Assistant Attorney General
Attorney for Whitmer and Gasper
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
jamisone@michigan.gov
P75721

Dated: July 29, 2022

**CERTIFICATE OF SERVICE**

I hereby certify that on July 29, 2022, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

*/s/ Eric M. Jamison*
Assistant Attorney General
Attorney for Defendants Whitmer and Gasper
Michigan Department of Attorney General
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
jamisone@michigan.gov
P75721

2022-0341402-A

**LOCAL RULE CERTIFICATION**

I, Eric M. Jamison, certify that this document complies with Local Rule5.1(a), including: double-spaced (except for quoted material and footnotes): at least one-inch margin on top, sides, and bottoms; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 points (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

/s/ *Eric M. Jamison*
Assistant Attorney General
Attorney for Whitmer and Gasper
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
jamisone@michigan.gov
P75721