UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOES A, B, C, D, E, F, G, H,
MARY DOE and MARY ROE, on
behalf of themselves and all others
similarly situated,

No. 2:22-cv-10209

     Plaintiffs,

HON. MARK GOLDSMITH

v

MAG. CURTIS IVY, JR.

GRETCHEN WHITMER, Governor
of the State of Michigan, and COL.
JOSEPH GASPER, Director of the
Michigan State Police, in their
individual capacities,

     Defendants.

---

**DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY**

**EXHIBIT A**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOE 1–5, On behalf of
themselves and all others similarly
situated,

     Plaintiff,

                                   Case No. 21-11903

v.                               District Judge Victoria A. Roberts

GRETCHEN WHITMER, Governor
of the State of Michigan, RICHARD SNYDER,
former Governor of the State
of Michigan, JOSEPH
GASPER, Director of the Michigan
State Police, and KRISTIE ETUE, former
Director of the Michigan State Police,
in their individual capacities,

     Defendant.

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS IN LIEU OF AN ANSWER [ECF No. 12]

### I.    Introduction

John Doe Plaintiffs represent a class seeking monetary damages for alleged violations of the 14th amendment ("count I"), 1st amendment ("count II"), and the *ex post facto* clause of the United States Constitution ("count III"). Plaintiffs say their 42 USC § 1983 claims arose out of the Michigan State Police's ("MSP") enforcement of allegedly unconstitutional provisions of the Michigan Sex Offender Registration Act ("SORA").

1

The complaint names as Defendants Gretchen Whitmer, current Governor of the State of Michigan; Richard Snyder, former Governor of the State of Michigan; Colonel Joseph Gasper, current Director of the MSP; and Colonel Kriste Etue, former Director of the MSP. Plaintiffs sue all Defendants in their individual capacities on theories of supervisory liability.

Before the Court is Defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss Plaintiffs' complaint. Plaintiffs challenge all affirmative defenses except the statute of limitations; Plaintiffs fail to respond to Defendants' argument that some of their claims are time barred. [ECF No. 16, PageID.208].

The Court **GRANTS** Defendants' motion. All Defendants are entitled to dismissal based on sovereign immunity. Additionally, Whitmer and Snyder are entitled to dismissal because they had no direct supervisory authority over the MSP. Finally, all Defendants are entitled to qualified immunity on counts I and II for claims that arose before the law became clearly established.

## II.    Background

### A. Statutory History and Case Law

Michigan enacted SORA in 1994. It established a confidential database containing information about sex offenders that was available only to law enforcement. The Michigan state legislature amended SORA numerous times.

Among other things, SORA's 2006 amendments increased reporting requirements for registrants; introduced a registration fee; prohibited registrants from working, residing, or loitering within 1,000 feet of a school; and created a program where members of the public could be notified electronically when a sex offender moved into a particular zip code. *See generally* 2002 Mich. Pub. Acts 542; 2004 Mich. Pub. Acts 238, 239, 240; 2005 Mich. Pub. Acts 121, 127, 132; 2006 Mich. Pub. Acts 46.

SORA's 2011 amendments significantly altered the structure of the law. The statute assigned certain offenses to certain tiers based on the legislature's perception of the offense's dangerousness. MCL §§ 28.722 (r)–(w); 28.725 (10)– (13). It did not factor in an individualized determination of offender risk.

3

Tier levels dictated registration and compliance obligations in terms of years: tier I (15 years); tier II: (25 years); tier III: (life). MCL § 28.725(10)–(13).

The 2011 amendments also subjected registrants to the frequent inconvenience of reporting to law enforcement in person whenever they changed residences or employment, enrolled (or un-enrolled) as a student, changed names, registered a new email address or other "internet identifier," wished to travel for more than seven days, or bought or began to use a vehicle (or cease ownership or use of a vehicle). *See* MCL §§ 28.722(g) & 725(1).

Violations carried heavy penalties. The 2006 and 2011 amendments applied retroactively to people convicted before the amendments went into effect.

SORA was declared unconstitutional under the 1st amendment, the 14th amendment, and the *ex post facto* clause by several federal court rulings: (1) *Does v. Snyder*, 101 F.Supp.3d 672, 713 (E.D. Mich. 2015) (Cleland, J.) ("*Does I*") (1st and 14th amendment only); (2) *Does v. Snyder*, 834 F.3d 696, 705–06 (6th Cir. 2016) ("*Does I on* appeal") (*ex post facto* clause only); and (3) *Does v. Snyder*, 449 F.Supp.3d 719 (E.D. Mich. 2020)

(Cleland, J.) ("*Does II*") (1st amendment, 14th amendment, and *ex post facto* clause). The Court discusses these rulings below.

The Michigan Legislature eventually passed, and the Michigan governor signed, Michigan Public Act 295 of 2020 (HB 5679) ("new SORA"), which repealed certain provisions and amended other provisions of the SORA. These changes took effect on March 24, 2021. However, the new SORA provisions are not at issue in this lawsuit.

### 1. *Does I*

In 2015 in *Does I*, this district court declared several provisions of SORA's 2006 amendments unconstitutional under the 1st and 14th amendments.

In an opinion entered after a summary bench trial, Judge Cleland concluded that certain sections of SORA were unconstitutionally vague in violation of the due process clause of the 14th amendment, *Does I*, No. 12-11194 [ECF No. 103, PageID.5890–5900]:

   (a) the prohibition on working within a student safety zone, Mich. Comp. Laws §§ 28.733–734;

   (b) the prohibition on loitering within a student safety zone, Mich. Comp. Laws §§ 28.733– 734;

   (c) the prohibition on residing within a student safety zone, Mich. Comp. Laws §§ 28.733, 28.735;

5

(d) the requirement to report "[a]ll telephone numbers . . . routinely used by the individual," Mich. Comp. Laws § 28.727(1)(h);

(e) the requirement to report "[a]ll electronic mail addresses and instant message addresses ... routinely used by the individual," Mich. Comp. Laws § 28.727(1)(i);

(f) the requirement to report "[t]he license plate number, registration number, and description of any motor vehicle, aircraft, or vessel . . . regularly operated by the individual," Mich. Comp. Laws § 28.727(1)(j).

*Does I* also ruled that the following section of the 2011 amendments violated the 1st amendment, *Does I*, No. 12- 11194 (E.D. Mich. Mar. 31, 2015); [ECF No. 103, PageID.5927–29]; [ECF No. 118, PageID.6029]:

(g) the requirement "to report in person and notify the registering authority . . . immediately after . . . [t]he individual . . . establishes any electronic mail or instant message address, or any other designations used in internet communications or postings," Mich. Comp. Laws § 28.725(1)(f);

*Does I,* 101 F. Supp. 3d 672, 713 (E.D. Mich. 2015). The district court then enjoined enforcement of these unconstitutional 2006 and 2011 SORA amendments. *Id*.

The district court in *Does I* also held that SORA did not violate the *ex post facto* clause. *John Does 1-4 v. Snyder*, 932 F. Supp. 2d 803, 814 (E.D. Mich. 2013), *rev'd and remanded sub nom*. *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016).

6

## 2. *Does I on appeal*

In 2016, *Does I on appeal* addressed only the retroactivity of the amendments. It held that retroactive application of the 2006 and 2011 SORA amendments violated the *ex post facto* clause. *Does I on appeal*, 834 F.3d 696, 705–06 (6th Cir. 2016) *cert den*. 138 S. Ct. 55 (2017).

This ruling made it unlawful for the state to apply any 2006 or 2011 amendments to the *Does I* plaintiffs who were convicted before the effective dates of the amendments. *Id*. at 706. ("[t]he retroactive application of SORA's 2006 and 2011 amendments to [p]laintiffs is unconstitutional, and it must therefore cease").

Importantly, the Sixth Circuit declined to address the district court's ruling on plaintiffs' 1st and 14th amendment claims. It found that "none of the contested provisions may now be applied to the plaintiffs in this lawsuit, and anything [the court] would say on those other matters would be dicta." *Does I on appeal*, 834 F.3d, at 706.

The Sixth Circuit remanded the case. On remand, the district court entered a stipulated final judgment of declaratory and injunctive relief declaring the retroactive application of the 2006 and 2011 amendments unconstitutional and enjoining their enforcement against the *Does I* plaintiffs. *Does I*, No. 2:12-cv-11194 [ECF No. 153].

7

3. *Does II*

Days after the Sixth Circuit's decision in *Does I on appeal*, six different

John Doe plaintiffs filed a class action complaint challenging the

constitutionality of SORA on the same grounds as *Does I*. *Does II*, 449

F.Supp.3d 719, 723 (E.D. Mich. 2020) (Cleland, J.) ("*Does II*").

On February 14, 2020, *Does II* held that the 2011 SORA amendments

declared unconstitutional under the *ex post facto* clause in *Does I on appeal*

could not be severed from the statute. *Id*. at 732. It concluded that no SORA

provisions could apply retroactively to members of the *ex post facto* subclass

(individuals whose offenses occurred prior to the July 1, 2011 enactment of

the SORA amendments). *Id*. at 738.

*Does II* also invalidated the following provisions of the pre-2021 SORA

2006 and 2011 amendments on 1st and 14th amendment grounds for

conduct that occurred before March 24, 2021:

(a) Provisions Void for Vagueness Under the 14th amendment:

(1) the prohibition on working within a student safety zone, Mich. Comp. Laws. §§ 28.733–734;

(2) the prohibition on loitering within a student safety zone, Mich. Comp. Laws. §§ 28.733–734;

(3) the prohibition on residing within a student safety zone, Mich. Comp. Laws. §§ 28.733, 28.735;

(4) the requirement to report "[a]ll telephone numbers ... routinely used by the individual," Mich. Comp. Laws.§ 28.727(1)(h);

(5) the requirement to report "[t]he license plate number, registration number, and description of any motor vehicle, aircraft, or vessel ... regularly operated by the individual," Mich. Comp. Laws § 28.727(1)(j).

(b) Provisions Void Under the 1st amendment:

(1) the requirement "to report in person and notify the registering authority ... immediately after ... [t]he individual ... establishes any electronic mail or instant message address, or any other designations used in internet communications or postings," Mich. Comp. Laws. § 28.725(1)(f);

(2) the requirement to report "[a]ll telephone numbers ... routinely used by the individual," Mich. Comp. Laws.§ 28.727(1)(h);

(3) the requirement to report "[a]ll electronic mail addresses and instant message addresses ... routinely used by the individual," Mich. Comp. Laws. § 28.727(1)(i);

(4) the retroactive incorporation of the lifetime registration's requirement to report "[a]ll electronic mail addresses and instant message addresses assigned to the individual ... and all login names or other identifiers used by the individual when using any electronic mail address or instant messaging system," Mich. Comp. Laws. § 28.727(1)(i).

[ECF No. 124, PageID.2539]. *Does II* was a far more expansive ruling than

*Does I*. The *Does II* court enjoined enforcement of the above provisions from

9

application to any registrant, not just the plaintiffs in *Does II*. *Snyder*, 449 F. Supp. 3d at 738.

The Court clarified that the holdings in *Does II* would not become effective until the time described in the judgment, which it would enter later. [ECF No. 84, PageID.1806].

On August 4, 2021, the court entered a final judgment enjoining the State of Michigan from enforcing the 2006 and 2011 SORA amendments listed above against any registrant for conduct that occurred before March 24, 2021 (the effective date of the new SORA). *John Doe, et al. v. Rick Snyder*, et al., No. 2:16- cv-13137 [ECF No. 124, PageID.2538] [(E.D. Mich. Feb. 14, 2020)]. The court also enjoined enforcement of any provision of the pre-2021 SORA against members of the *ex post facto* subclass. [Id].

### 4. The Impact of the Rulings: *Does I, Does I On Appeal*, and *Does II.*

The district court's holding in *Does I* invalidated certain portions of the 2006 amendments under the 1st and 14th amendments. That ruling applies only to the class in that case.

*Does I on appeal* invalidated all sections of the 2006 and 2011 SORA amendments as applied to the *ex post facto* subclass (individuals convicted and required to register before the effective date of the amendments). *See*

*Does II*, 449 F. Supp. 3d 719, 729 (E.D. Mich. 2020) (clarifying the scope of *Does I on appeal*).

Finally, since *Does II*, none of SORA's 2006 and 2011 amendments can be enforced against any registrants; and no pre-2021 SORA provision can be enforced against members of the *ex post facto* subclass.

### B. Plaintiff John Does #1-5

Although it is unclear when any of John Does 1–5 were convicted, Plaintiffs allege they were all subjected to the unconstitutional provisions of SORA "beginning from the 2006 amendments until the present day." [ECF No. 1, PageID.4]. Since they were allegedly required to comply with SORA in 2006, these allegations lend themselves to the inference that John Does 1-5 were all convicted in or before 2006.

Plaintiffs bring this action on behalf of themselves and similarly situated class individuals who were required to register and comply with the later declared unconstitutional provisions of SORA. Plaintiffs claim they were subjected to due process violations, retroactive punishments and first amendment infringement, and that they suffered significant economic loss and emotional harm. [ECF No. 1, PageID.5].

They organize their class into four subclasses: (1) the *ex post facto* subclass (Plaintiffs who were required to register for SORA from 2006-

present), (2) the housing subclass (forced to move or denied housing due to SORA's unconstitutional exclusion zones, (3) the employment subclass (denied a job or terminated due to SORA's unconstitutional provisions), (4) the incarcerated or detained subclass (arrested, charged, and/or convicted for violations of the unconstitutional SORA provisions).

Plaintiffs allege that SORA's continued enforcement after *Does I and Does II* significantly impacted each of them. They say this impact reaches far beyond the stigma of simply being identified as sex offenders on a public registry. Plaintiffs' brief details numerous instances when they were required to comply with invalidated provisions of SORA. [See ECF No. 1, PageID.5]. These provisions include: (1) all retroactive registration requirements (invalidated as inseverable in *Does II*); (2) geographical exclusion zones (Mich. Comp. Laws §§ 28.733–734), (invalidated in *Does I* and *Does II* on 14th amendment due process grounds); and (3) electronic identifier reporting requirements (Mich. Comp. Laws § 28.725(1)(f), (h), and (i)), (invalidated in *Does I and Does II* on 1st amendment grounds).

Plaintiffs argue that all Defendants are individually liable for constitutional violations resulting from the MSP's enforcement of SORA. [ECF No. 1, PageID.5, 6, 11, 12]. They say that, despite having knowledge of the violations, Defendants failed to issue any directive, policy,

12

memoranda, or other form of communication instructing subordinates that the enforcement of the 2006 and 2011 amendments was unconstitutional. [Id. at PageID.12]. They believe Defendants "encouraged and implicitly authorized the continued violations of Plaintiffs' rights by the MSP and other law enforcement agencies." [Id].

### III. Analysis

Plaintiffs allege the MSP continued to impose many obligations on them as they enforced SORA's 2006 and 2011 amendments from 2006 until the time Plaintiffs filed this lawsuit, despite the rulings in *Does I*, *Does I* on appeal, and *Does II*

Defendants ask the Court to dismiss Plaintiffs' complaint. They say: (1) Plaintiffs' claim for damages related to injuries that occurred prior to August 17, 2018 is time barred under the applicable statute of limitations; (2) Defendants cannot be liable on Plaintiffs' theory of supervisory liability under 42 USC §1983; (3) the 11th amendment doctrine of sovereign immunity bars this lawsuit because the State of Michigan is the real party in interest; and (4) Defendants are entitled to qualified immunity. [ECF No. 12, PageID.87].

### A. Fed. R. Civ. P. 12(b)(6)

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*,

13

78 F.3d 1125, 1134 (6th Cir.1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (*citing Twombly*, 550 U.S. at 556). This standard does not "impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

 Dismissal under Rule 12(b)(6) is warranted only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief." *Zaluski v. United Am. Healthcare Corp*., 527 F.3d 564, 570 (6th Cir. 2008).

Because a motion to dismiss challenges the sufficiency of the pleadings, "[i]t is not the function of the court [in ruling on such a motion] to weigh evidence." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). The court "must construe the complaint liberally in the plaintiff's favor and accept as

true all factual allegations and permissible inferences therein," while discarding mere conclusory statements. *Adkisson v. Jacobs Eng'g Grp., Inc.,* 790 F.3d 641, 647 (6th Cir. 2015); *see Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 555).

### B. The Statute of Limitations

Plaintiffs claim damages beginning in 2006. They did not file suit until August 17, 2021.

Section 1983 claims that arise in Michigan are subject to Michigan's three-year limitations period for personal injury claims. *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005) (citing Mich. Comp. Laws § 600.5805); *accord Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 867 n.8 (6th Cir. 2020). Federal law governs when the statute of limitations accrues. *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007); *See also Forrester v. Clarenceville Sch. Dist.*, 537 F. Supp. 3d 944, 949–50 (E.D. Mich. 2021).

The statute of limitations begins to run when a plaintiff has a "complete and present cause of action," *Bay Area Laundry and Dry Cleaning Pension Fund v. Ferbar Corp. of Cal*., 522 U.S. 192, 201 (1997), and when the plaintiff knows or has reason to know of the injury which is the basis of his action. *Sevier v. Turner*, 742 F.2d 262, 273 (6th. Cir. 1984.) "A plaintiff has reason

to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Id*.

Plaintiffs do not respond to Defendants and therefore concede that, given the date they filed suit and the statute of limitations defense, any claims for damages that occurred prior to August 17, 2018 are time barred.

The Court dismisses as time barred all claims for injuries that occurred before August 17, 2018.

## C. Supervisory Liability Under 1983

Defendants seek dismissal of Plaintiffs' claims based on failure to sufficiently allege supervisory liability. Defendants argue they are not liable as supervisors under § 1983 because Plaintiffs merely allege that Defendants failed to act—far short of what is necessary to sufficiently plead supervisory liability. [ECF No. 12, PageID.95].

To survive a motion to dismiss, a supervisory liability claim requires plausible allegations that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable. *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 868 (6th Cir. 2020). In addition, a plaintiff must allege that defendant had some duty or authority to act. *See e.g., Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir.1984) (mere presence at the

16

scene is insufficient grounds to impose § 1983 liability in the absence of a duty to act).

As part of this inquiry, the Court must also consider whether there is a causal connection between the defendants' wrongful conduct and the violations alleged. *See* 42 U.S.C. § 1983 (any person who "subjects or causes [a person] to be subjected" to deprivation of constitutional rights "shall be liable to the party injured)."

A supervisory official's failure to supervise, control or train a subordinate officer is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it. *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016).

It is not enough for the plaintiff to allege that the defendant supervisors were sloppy, reckless, or negligent in the performance of their duties. *See Weaver v. Toombs*, 756 F.Supp. 335, 337 (W.D.Mich.1989), aff'd 915 F.2d 1574 (6th Cir.1990). A plaintiff must allege that, considering the information the defendants possessed, the offending officers' failure to take adequate precautions amounted to deliberate indifference to plaintiffs' constitutional rights. *See Doe v. Claiborne Cnty., Tenn. By & Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 500 (6th Cir. 1996).

17

In other words, the plaintiff must allege that the defendant either directly participated in or "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *See Gardner v. Evans*, 920 F.3d 1038, 1051 (6th Cir. 2019) (*quoting Flagg v City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013)) (internal quotations omitted).

"Implicit authorization" and "knowing acquiescence" require allegations of affirmative conduct beyond mere failure to act. *Greene v. Barber*, 310 F.3d 889, 899, (6th Cir. 2002); *Thames v. City of Westland*, 310 F.Supp. 3d 783 (E.D. Mich. 2018) (*quoting Summers v, Leis*, 368 F.3d 881, 888 (6th Cir. 2004)).

Sixth Circuit case law illustrates this point. For example, allegations that defendants actively assisted subordinates to cover up constitutional violations after their occurrence without the supervisor's knowledge or participation, are sufficient for a supervisory liability claim to survive a motion to dismiss. *See Coley v. Lucas Cty., Ohio*, 799 F.3d 530, 542 (6th Cir. 2015).

In short, to survive dismissal, Plaintiffs must plausibly allege facts indicating that Defendants: (1) had a duty or authority to act; (2) were each personally involved, implicitly authorized, knowingly acquiesced, or approved the continued enforcement of SORA after it was declared unconstitutional; and (3) they must plausibly allege that Defendants' conduct

caused injury. *See Barber*, 310 F.3d at 899; *Brown*, 867 F.2d at 959; and *Ghandi*, 747 F.2d at 351 (mere presence at the scene is insufficient grounds to impose § 1983 liability in the absence of a duty to act).

The analysis the Court must engage in leads to different outcomes for different Defendants.

### 1. Defendants Etue and Gasper

Plaintiffs' allegations are sufficient to meet the 12(b)(6) standard against Etue and Gasper. Plaintiffs allege that they: (1) knew SORA was unconstitutional, (2) knew that MSP continued to enforce it, (3) were responsible for supervising the MSP; and (4) knew the MSP was responsible for enforcing SORA.

Courts in the Sixth Circuit often allow supervisory liability claims to survive a motion to dismiss when a supervisor is on notice of a strong likelihood of continuous constitutional violations, has the authority and duty to stop them, but fails to take any precautions. *See Peatross* 818 F.3d 233 (holding that a plaintiff sufficiently alleged a supervisory officer violated arrestee's right to be free from unreasonable seizures where officer failed to investigate allegations of excessive force and attempted to cover up constitutional violations).

Conversely, when courts in this circuit hold that implicit authorization, knowing acquiescence or encouragement are absent, it is usually because of the absence of allegations supporting duty, authority, causation, or knowledge about the likelihood of future constitutional violations. *See Crawford v. Tilley,* 15 F.4th 752, 767 (6th Cir. 2021) (granting motion to dismiss based on the absence of allegations regarding supervisor's knowledge of past misconduct).

Defendants say they do not and did not directly supervise the MSP, which they believe attenuates the connection between their supervision and Plaintiffs' injury. However, Plaintiffs submitted allegations that could support a finding to the contrary. They sufficiently allege that Etue and Gasper had the duty and authority to act, and that they implicitly authorized, knowingly acquiesced, and were deliberately indifferent to the constitutional violations emanating from the MSP's continued enforcement of SORA after *Does I, Does I on appeal*, and *Does II.* [ECF No. 1, PageID.11].

It is not the function of the court [, in ruling on a motion to dismiss,] to weigh evidence." *Miller*, 50 F.3d at 377. Viewing the complaint liberally and in the light most favorable to Plaintiffs, and accepting their factual allegations as true, the Court finds that Plaintiffs pled sufficient facts to assert a plausible supervisory liability claim against Gasper and Etue.

20

Nonetheless, because of other holdings, Etue and Gasper are dismissed.

### 2. Defendants Whitmer and Snyder

On the other hand, Plaintiffs' supervisory liability claim against Governor Whitmer and former Governor Snyder is not plausible.

Plaintiffs allege that Whitmer and Snyder were responsible for the enforcement of the laws of Michigan, for the supervision of the MSP, and that they failed to stop the enforcement of SORA or implement a policy informing officers that SORA was unconstitutional. [ECF No. 1, PageID.6]. But these allegations do not support a plausible inference that Snyder and Whitmer directly supervised the MSP or the officers who maintained the registry and imposed obligations on Plaintiffs.

Whitmer and Snyder correctly argue that none of the specific duties imposed by SORA is carried out or enforced by the Governor's office. Rather, they are carried out by various other state and local officials with more specific responsibilities.

Governors are high level officials often removed from the actual conduct of their subordinates. Supervisory liability under § 1983 requires more than an attenuated connection between the injury and the supervisor's alleged wrongful conduct. *Peatross*, 818 F.3d at 241. It is well-settled that

21

"[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of *respondeat superior.*" *Iqbal,* 556 U.S. at 676. In other words, a supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another. *See Gregory v. City of Louisville,* 444 F.3d 725, 751 (6th Cir. 2006).

If Plaintiffs' allegations against the governors survived Defendants' motion to dismiss, governors potentially could be held liable whenever plaintiffs merely allege that a state employee broke the law. Such an outcome flies in the face of well-established law that high ranking officials cannot be held liable under such attenuated circumstances.

"General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." *Children's Healthcare is a Legal Duty v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996) (*citing 1st Westco Corp. v. School Dist. of Philadelphia*, 6 F.3d 108, 113 (3d Cir. 1993)).

Plaintiffs fail to assert a plausible supervisory liability claim against Governors Whitmer and Snyder. The Court dismisses all claims against them for this reason, because Plaintiffs' set of facts do not entitle them to relief against Whitmer and Snyder under § 1983.

22

### D. 11th Amendment Sovereign Immunity

Defendants raise a strong 11th amendment sovereign immunity defense.

Plaintiffs filed § 1983 claims against Defendants in their individual capacities. Plaintiffs seek money damages. Defendants say that, notwithstanding the wording in the Complaint, this lawsuit is barred under the 11th amendment because the state of Michigan is the "real party in interest" and Plaintiffs seek the payment of damages at the state's expense. [ECF No. 12, PageID.93-94].

Defendants are correct.

If an action is really against the state—even if it is not named as a defendant—the state is the real party in interest, and it is entitled to invoke sovereign immunity. *Lewis v. Clarke,* 137 S. Ct. 1285, 1290 (2017). Not only that, but § 1983 actions cannot be prosecuted against a state or state official in their official capacities. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

While a plaintiff may indicate in the case caption of a complaint whether a state official is sued in his/her individual or official capacity, the United States Supreme Court directs courts to not simply rely on the characterizations in the complaint. Judges must determine in the first instance whether the remedy sought is "truly against the sovereign." *Clarke*,

23

137 S.Ct. at 1290. The Court looks to the complaint to see whether the individual or state is the "real party in interest." If the remedy sought is really against the state, sovereign immunity bars the claim. *Id*.

Plaintiffs say Defendants are liable because they "failed to terminate the unconstitutional application of SORA by their subordinates or issue an executive order, policy directive, or other communication instructing the Michigan State Police and other law enforcement agencies that the continued enforcement of the 2006 and 2011 SORA amendments was unconstitutional." [ECF No. 12, PageID.12]. They also allege that, "for years after [*Does I on appeal*], the State of Michigan continued to subject tens of thousands of registrants to retroactive punishments, due process violations and 1st amendment infringements under SORA." [ECF No. 1, PageID.4].

Clearly, Plaintiffs complain that the State of Michigan harmed them.

The 11th amendment bars federal suits by private parties when the ultimate judgment will be paid from the state treasury. *Turker v. Ohio Dep't of Rehab., & Corr*., 157 F.3d 453, 456 (6th Cir. 1998). A damages award for the state's unconstitutional enforcement of a law would likely be paid from the state treasury and impact state policy to be implemented by current and future governors and MSP directors. This remedy is not one that could be implemented by these Defendants in their individual capacities.

In *Does I* and *Does II*, plaintiffs requested injunctive relief to remedy the same alleged constitutional violations at issue here. Those cases are directly related to Plaintiffs' claim for damages. In *Does I* and *Does II*, the court entered final judgments for equitable relief against the State only.

Plaintiffs make no persuasive argument for why—given the remedy in *Does I and II* agreed to by the State of Michigan—these Defendants should be liable in their individual capacities for any potential damages award. Any relief granted could not be awarded against any of the Defendants as individuals.

Plaintiffs cannot obtain damages against state officials in their individual capacity given the facts and history of this case. All Defendants are entitled to 11th amendment immunity.

### E. Qualified Immunity

The final defense Defendants raise is qualified immunity.

Defendants say they are entitled to qualified immunity because Plaintiffs cannot demonstrate a violation of clearly established constitutional rights. [ECF No. 12, PageID.99].

Qualified immunity shields government officials from liability for civil damages if their conduct does not violate clearly established statutory or

constitutional rights. *Iqbal*, 556 U.S. at 662. It is both a defense to liability and a shield from the costs of litigation and trial. *Id*.

In determining whether defendants are shielded from civil liability by qualified immunity, the Court employs a two-step analysis. The considerations are: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310–11 (6th Cir. 2005) (*citing Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Courts may exercise discretion in deciding which of the two prongs to address first considering circumstances in the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

For a plaintiff to defeat qualified immunity, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton* 483 U.S. 635, 640 (1987). The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he/she confronted. *Brosseau v. Haugen*, 543 U.S. 194, 198–99 (2004).  Qualified immunity applies unless the officer's conduct violated such a clearly established right. *Id*.

26

A plaintiff must identify a case with a similar fact pattern that would have given "fair and clear warning to officers" about what the law requires. *Arrington-Bey v. City of Bedford Heights, Ohio*, 858 F.3d 988, 993 (6th Cir. 2017) (*Citing White v. Pauly*, 580 U.S. 73 (2017)).

"In inquiring whether a constitutional right is clearly established, we must look first to decisions of the Supreme Court, then to decisions of [the court of appeals,] then to other courts within our circuit, and finally to decisions of other circuits." *Champion v. Outlook Nashville, Inc.,* 380 F.3d 893, 902 (6th Cir. 2004). A single district court opinion is not enough to pronounce a right is clearly established for purposes of qualified immunity. *Hall v. Sweet*, 666 F. App'x 469, 481 (6th Cir. 2016). A district court opinion may be persuasive in showing there is a clearly established right—perhaps by exposing a trend in non-precedential case law—but it is not controlling on its own. *Id*.

Such "decisions must both [1] point unmistakably to the unconstitutionality of the conduct complained of and [2] be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable official that his conduct, if challenged on constitutional grounds, would be found wanting." *Barber v. Miller*, 809 F.3d 840, 846-47

(6th Cir. 2015) (internal quotations omitted); *see also Russo v. City of Cincinnati*, 953 F.2d 1036, 1043 (6th Cir. 1992)).

The Court now turns attention to whether Plaintiffs sufficiently allege violations of constitutional rights.

## 1. Whether Plaintiffs' Rights Were Violated

Defendants argue that "Plaintiffs have not identified any constitutional violations committed by Defendants." [ECF No. 12, PageID.101]. Defendants also say they "were not aware that any of Plaintiffs' clearly established rights were being violated." [ECF No. 16, PageID.213].

Plaintiffs allege that they were required to comply with SORA from 2006 until the filing of this lawsuit. The holdings concerning unconstitutionality in *Does I*, *Does I on appeal*, and *Does II* were unambiguous. The Court finds that Plaintiffs allege sufficient facts to support their claims that the MSP violated their constitutional rights under the 1st amendment, 14th amendment, and *ex post facto* clause by continued enforcement of SORA.

Importantly though, although Plaintiffs sufficiently allege violations of constitutional rights, those rights were not clearly established until recently.

28

## 2. Counts I and II: The Court Need Not Determine When Plaintiffs' Rights Became Clearly Established

If Plaintiffs have a cause of action at all, it is limited to claims that arose after August 17, 2018, based on the statute of limitations.

With respect to counts I and II, Plaintiffs' 1st and 14th amendment rights were not clearly established by August 17, 2018. On that date, there was only a single district court decision addressing those claims (*Does I*, 2015). *Does I on appeal* (2016) did not address the 1st or 14th amendment claims. Instead, the Sixth Circuit found that the SORA amendments violated the *ex post facto* clause only, and it specifically declined to address the 1st and 14th amendment claims on appeal. *Does I on appeal,* 834 F.3d at 706.

Officers presented with open questions of law—such as when a court specifically declines to address an issue—are protected by qualified immunity. *See Mitchell v. Forsyth*, 472 U.S. 511, 531 (1985) (holding that an officer presented with a question this Court carefully held open in *Katz v. United States*, 389 U.S. 347 (1967) was "not subject to suit").

It was not until the August 26, 2021 *Does II* judgment that the unconstitutionality of SORA's amendments on 1st and 14th amendment grounds became clear.

*Does II* stated in its February 14, 2020 ruling that its holdings would not become effective until the court entered a final judgment. The court

29

issued a final judgment on August 25, 2021. In the interim—on March 24, 2021—the legislature repealed SORA. It is unclear on which of these dates the law became clearly established. However, because Defendants are entitled to dismissal on other grounds, the Court need not determine the precise date on which the law became clearly established.

### 3. Count III: *Ex Post Facto* Claim Was Clearly Established by August 25, 2016.

Defendants argue that Plaintiffs' rights under the *ex post facto* clause were not clearly established because there was state court precedent in conflict with *Does I on appeal* until 2021. [ECF No. 16, PageID.214]. Defendants are wrong; Plaintiffs' *ex post facto* constitutional rights were established by the Sixth Circuit on August 25, 2016, in *Does I on appeal*.

In 2016, the Michigan Court of Appeals in *People v. Snyder* held that SORA, as amended in 2011, did not constitute *ex post facto* punishment. *People v. Snyder*, No. 325449, 2016 WL 683206, at *3 (Mich. Ct. App. Feb. 18, 2016), rev'd in part, appeal denied in part, 508 Mich. 948, 964 N.W.2d 594 (2021). *People v. Snyder* clearly conflicted with *Does II* until it was overturned on July 27, 2021, by *People v. Betts*, 507 Mich. 527, 968 N.W.2d 497 (2021) (holding that retroactive application of 2011 SORA amendments

30

violated the *ex post facto* clause). But that does not mean MSP could disregard the clear command of the Sixth Circuit in 2016.

It is true that officers who face conflicting instructions from different courts of equal authority are entitled to rely on either instruction and cannot be required to predict the courts' decisions. *See Stanton v. Sims*, 571 U.S. 3, 6 (2013) (holding an officer faced with a sharp divide between federal and state courts of last resort nationwide on the question of whether an officer with probable cause to arrest for a misdemeanor may enter a home in hot pursuit without a warrant was entitled to qualified immunity).

However, *People v. Snyder* was not a decision from a court with authority equal to the Sixth Circuit's. It is an unpublished Michigan Court of Appeals case. Pursuant to the Michigan Court Rules, "[a]n unpublished opinion is not precedentially binding under the rule of stare decisis." MCR 7.215(1).

Plaintiffs' *ex post facto* rights were clearly established by the time of *Does I on appeal*, in 2016. Then, a reasonable officer would have known that the retroactive application of SORA by the State of Michigan violated the *ex post facto* clause of the U.S. constitution.

In summary, Defendants would not be entitled to qualified immunity on count III for claims that arose after August 25, 2016. But because of the

impact of the statute of limitations, Plaintiffs cannot claim damages for any injuries they suffered before August 17, 2018. But even those claims cannot move forward because of other defenses on which Defendants prevail.

## IV. Conclusion

The Court **GRANTS** Defendants' motion and dismisses all Defendants.

**IT IS ORDERED**.

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: September 8, 2022