UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOHN DOES A, B, C, D, E, F, G, H,
MARY DOE and MARY ROE,
on behalf of themselves and
all others similarly situated,

        Plaintiffs,

v.

GRETCHEN WHITMER, Governor of the
State of Michigan, and COL. JOSEPH
GASPER, Director of the Michigan State
Police, in their official capacities,

        Defendants.

File No. 2:22-cv-10209

Hon. Mark A. Goldsmith

Mag. Curtis Ivy, Jr.

_____

## PLAINTIFFS' STATEMENT IN ADVANCE OF
## OCTOBER 13, 2022, STATUS CONFERENCE

### Introduction

In advance of the upcoming status conference, scheduled for October 13, 2022, the parties have filed a Proposed Joint Discovery Plan. That plan briefly mentions areas of disagreement, but does not explain the parties' respective positions, which Defendants thought to be inappropriate in such a document. But Plaintiffs believe that in order for the Court to understand the disputed issues, it needs to know the parties' respective positions. Plaintiffs also believe that these disputes need to be resolved efficiently (which cannot happen if the Court is coming into the status conference cold) and quickly (given that the issues will affect how much discovery needs to be done, and how soon that can be accomplished, in light of the ongoing harm to the class). Accordingly, Plaintiffs append this separate statement to ensure that the Court has the background information it needs about the primary issues in dispute. Plaintiffs invite Defendants to respond in kind.

1

## A. *Does I* Joint Statement of Facts and Record

There was extensive discovery in *Does I*, including about 24 depositions, and many interrogatories and document requests, which the parties subsequently summarized in an almost 300-page stipulated Joint Statement of Facts (JSOF). *Does I* was vigorously litigated on both sides, and the JSOF and record reflect hundreds of hours of work invested by both Plaintiffs and the state Defendants.

While the passage of time and the amendments to Michigan's Sex Offenders Registration Act (SORA) will require additional discovery on both sides, Plaintiffs believe that, where appropriate, reliance on the *Does I* discovery and the facts put forth or stipulated to by both sides there can reduce the amount of discovery needed here. For example, the JSOF contains stipulated facts about the *Does I* named plaintiffs, many of whom are also named plaintiffs here. The *Does I* record provides information about how registration works in practice (e.g., mechanics of when and how a person is initially registered, allocation of responsibilities between the MSP and local law enforcement, impact of registration on plea negotiations, etc.). The JSOF also summarizes data that remains highly relevant (e.g., how many people had their registration terms extended to life in 2011). In short, the *Does I* record contains a great deal of information and—particularly given the need to move rapidly—there is no reason to reinvent the wheel.

In order to avoid duplicating work already done in *Does I*, Plaintiffs intend to use as much of the *Does I* record as possible. Defendants, however, object to use of the *Does I* record and JSOF. Yet this evidence is clearly admissible. "Pleadings are binding legal documents that can be admitted as evidence against that party in subsequent proceedings." *K.V.G. Properties, Inc. v. Westfield Ins. Co.*, 900 F.3d 818, 822 (6th Cir. 2018) (relying on pleadings filed in separate state court action). *See also Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 829 (6th Cir. 2000) ("Pleadings in a prior case may be used as evidentiary admissions."). Moreover, statements made by a party opponent, including deposition testimony, are admissible under Fed. R. Evid. 801(d)(2) ("A statement that meets the following conditions is not hearsay: . . . . (A) was made by the party in an individual or representative capacity . . . ."). *See also Nekkanti v. V-Soft Consulting Grp., Inc.*, No. 3:18-CV-784-BJB, 2021 WL 1667964, at *2 n.2 (W.D. Ky. Apr. 28, 2021) (collecting cases re admissibility of statements by employees); Fed. R. Civ. P. 32(a)(7) ("Substituting a party under Rule 25 does not affect the right to use a deposition previously taken."). Judge Cleland permitted the incorporation of the *Does I* record into *Does II*. The JSOF, several expert reports, deposition excerpts,

and other documents from *Does I* were attached as exhibits to Plaintiffs' *Does II* Motion for Partial Summary Judgment. *See* ECF 75 (12/23/19).

Defendants here can, of course, still argue that the facts have changed or that SORA has been amended, and that facts Plaintiffs seek to introduce from *Does I* are not probative. For example, if Plaintiffs sought to introduce evidence from *Does I* about the school exclusion zones, Defendants could object on the grounds that SORA 2021 no longer has such zones. But both sides should be able to use the depositions, documents, and other evidence admitted in *Does I*, as well as the summary of the evidence in the JSOF, to the extent it remains relevant and material to SORA 2021.

While Plaintiffs believe the *Does I* record is clearly admissible, they need to be certain *now* that they can use the record and JSOF from *Does I* (subject to tailored objections as to relevance or materiality). If they cannot, Plaintiffs (and likely Defendants) will need to duplicate work that they did in *Does I*.

Plaintiffs seek the Court's guidance on how to proceed, given that Defendants object to the use of the *Does I* record, and given that whether that record is used will impact the amount and scope of discovery (e.g., how many depositions will be taken and how much written discovery will be needed), and will therefore affect the timeline of discovery as well.

## B. Class List and Electronically Stored Information (ESI)

The parties disagree about when and how a class list should be produced, and what information it should contain.

### i. The Importance of Class List Information/ESI

Plaintiffs have asked that Defendants provide as soon as practicable a class list/ESI containing certain information about each class member in a sortable, manipulable and searchable electronic format, such as an Excel spreadsheet. Class list information is routinely provided in class action litigation. Indeed, it is often provided even before class certification. *See, e.g.*, *Babbitt v. Albertson's. Inc.*, No. C-92-1883 SBA (PJH), 1992 WL 605652, at *5-6 (N.D. Cal. Nov. 30, 1992) (ordering production of a class list and noting that "[d]efendant has access to this information, and plaintiff should have the same access"); *Emery v Home Caregivers of Cookeville, LLC*, No. 2:20-CV-00038, 2020 WL 7240159, at *3 (M.D. Tenn., Dec. 9, 2020) (granting plaintiff's request to require defendants to provide information on

class members within 7 days); *Holman v. Experian Info. Solutions, Inc.*, No. C-11-0180 CW, 2012 WL 1496203, at *17 (N.D. Cal. Apr. 27, 2012); *Webb v. Healthcare Revenue Recovery Group LLC*, No. C. 13-00737 RS, 2014 WL 325132 (N.D. Cal. Jan. 29, 2014); *Currie-White v. Blockbuster, Inc.*, No. C-09-2593 MMC (MEJ), 2010 WL 1526314, at *3 (N.D. Cal. Apr. 15, 2010); *see also* Fed. R. Civ. Proc. 23(d)(1)(a).

Plaintiffs seek a class list that contains demographic information, contact and reporting information (e.g., home/work addresses, employer, internet identifiers), registration information (e.g., tier level, projected registration end date), criminal history information (e.g., offense history, incarceration status, incarceration release dates), information on any past risk assessments or other individual review, and information needed to determine membership in the subclasses. The information Plaintiffs seek represents a tiny fraction of the data about class members that is available to Defendants.

Comprehensive class member information/ESI is critical to Plaintiffs. First, analysis of class member data may support Plaintiffs' claims. For example, if the data show that many registrants are unemployed or have unstable work histories, that could support Plaintiffs' arguments that SORA impacts registrants' ability to find or keep jobs. If the data show that very few registrants have email addresses or internet identifiers, that could support Plaintiffs' arguments that SORA chills their online speech. If the data show that tens of thousands of registrants have been living offense-free in the community long past the desistance threshold (when they present no more risk than the average male), then that could support Plaintiffs' argument that SORA is irrational and excessive. Plaintiffs anticipate introducing evidence based on such data analysis, perhaps via an expert report. Because both producing the class list and doing the analysis will take time, Plaintiffs ask that the class list/ESI issues be addressed as soon as possible. (Plaintiffs know from *Does I* and *Does II* that getting computerized data from state agencies can be glacially slow.)

Second, class member data/ESI is important for Plaintiffs' understanding of the registry, as well as to check the accuracy of Defendants' assertions. For example, Plaintiffs need to know how many registrants are Tier I, Tier II, and Tier III. (Defendants responded to Plaintiffs' allegations in the complaint about the breakdown by stating that they lacked the knowledge or information to respond to Plaintiffs' allegations about how many registrants are in each tier. *See* Answer, ECF 58, ¶328.) Similarly, Defendants have asserted that juveniles have been removed from the registry, but criminal defense attorneys report to class counsel

that they have not been removed. A class list/ESI containing the appropriate information would allow Plaintiffs to check the accuracy of Defendants' assertions.

Third, Plaintiffs need to know—and the Court will surely want to know—how many and which individuals are in each subclass.

Fourth, class counsel need comprehensive class member information/ESI to respond to and address class member concerns. Class counsel are contacted constantly by class members or their attorneys, and occasionally by federal and state court judges, about SORA issues in individual cases. To respond to those queries and adequately represent the class, class counsel need the relevant information. For example, class counsel need to be able to confirm whether a class member's tier classification is correct or whether the class member's registration term has expired.

Fifth, comprehensive class-member data/ESI will be important in fashioning relief if the Court finds for Plaintiffs. For example, it may be helpful for the Court to know not only how many class members have pre-2011 convictions, but also how many years those individuals have been living offense-free in the community. Similarly, if the data show that many class members have already had risk assessments conducted as part of the parole/probation process, that may affect relief related to individualized review.

### ii. When and How a Class List/ESI Should Be Produced

Plaintiffs believe that Defendants should be able to provide much of the requested information with little more effort than the push of a button. Plaintiffs recognize, however, that some information may be more difficult to obtain.

Plaintiffs have asked to meet with Defendants and the Michigan State Police (MSP) and Michigan Department of Corrections (MDOC) data-management staff who have the relevant expertise to discuss what information is readily available and how best to get the information that is more difficult to obtain. (The parties did this in *Does II* which resulted in increased efficiency and reduced costs for both sides.) This will avoid a situation where Plaintiffs are requesting information that is not in the system or requesting information in a format that is not feasible. Defendants object to having such a meeting now, and object to including data-management staff in a meeting.

Defendants argue that Plaintiffs should request class member information later in

discovery and without first discussing the issues with data-management staff. But that approach creates numerous problems. First, Plaintiffs do not know enough about how the state's databases work and how they interact to know what information can be easily produced, or to problem-solve with respect to information that may require more effort. Plaintiffs would either send off-target requests, or first have to do discovery on what information is maintained and what reports can be run.

Second, Defendant's approach would seriously delay proceedings. Defendants propose that the parties not even meet and confer until after the Rule 26(a)(1) disclosures, which Defendants would push out four weeks. By the time a meeting is scheduled (which could require Court intervention if there continues to be a dispute about whether data-management staff will be present), several more weeks will likely go by. And one can anticipate that there may be disagreements about what information will be contained on the class list and when it will be produced. So, then the parties will be back before the Court again. And once the Court resolves any disputes, Defendants will demand time to pull the data. It will be months and months before Plaintiffs get the class list/ESI information to which Defendants' have exclusive access.

Third, Defendants' approach will make it impossible to do an analysis of class member data on a reasonable schedule. Defendants propose that any expert reports prepared for Plaintiffs based on the class list/ESI be due December 15, 2022. But under Defendants' approach, it isn't clear Plaintiffs will even have a class list by then, much less have been able to work with an expert to prepare and analyze the data.

Finally, doing interrogatories for the requested information (e.g., what is each class member's name, what is each class member's date of birth, etc.) would quickly exhaust any interrogatory limits.

### iii. Plaintiffs Proposal for the Class List/ESI

Plaintiffs ask the Court to order that the parties to meet and confer within two weeks, that appropriate data management staff from the MSP and MDOC be present, and that Plaintiffs can bring a person with data management expertise to such meetings. The topics the parties will discuss include the existence and format/contents of the relevant SORA, MSP, and MDOC databases, as well as document storage, retention, and retrieval for those agencies, and the information necessary to make decisions about what data to include in the class list.

Plaintiffs further request that the class list be produced within five weeks, that is by November 10, 2022. This schedule could be modified by agreement of the parties (e.g., to allow some information to be provided sooner and some later, if, based on the conversation at the meet-and-confer, this seems the most efficient way to proceed). If, after the meet-and-confer, the parties cannot agree on what data will be produced in the class list, the parties will request a status conference. If disputes about what data is to be produced are not resolved by November 10, 2022, Defendants will produce any data not in dispute without waiting for the Court's decision as to the disputed data.

Any expert reports based on the class list/ESI would be due nine weeks after production of the full class list/ESI. Thus, if complete data is produced November 10, 2022, any ESI-based expert report would be due January 12, 2023.

Finally, the Court should order that both the class list, and any other discovery responses that involve lists of class members or class member data, be provided in format that is searchable, manipulable and sortable, such as an Excel spreadsheet. Without this functionality, the data is almost worthless.

                                  Respectfully submitted,

s/ Miriam J. Aukerman (P63165)
American Civil Liberties Union
  Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org

s/ Daniel S. Korobkin (P72842)
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6824
dkorobkin@aclumich.org

Dated: October 6, 2022

s/ Paul D. Reingold (P27594)
Cooperating Counsel, American Civil
  Liberties Union Fund of Michigan
Univ. of Michigan Law School
802 Legal Research Building
801 Monroe Street
Ann Arbor, MI 48109-1215
(734) 355-0319 - pdr@umich.edu

s/ Roshna Bala Keen (Ill. 6284469)
Loevy & Loevy
Cooperating Counsel, American Civil
  Liberties Union Fund of Michigan
311 North Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
roshna@loevy.com

## LOCAL RULE CERTIFICATION

I, Miriam J. Aukerman, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted material and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts).

s/ Miriam J. Aukerman (P63165)
Miriam J. Aukerman
American Civil Liberties Union
  Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org
