UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOHN DOES A, B, C, D, E, F, G, H,
MARY DOE and MARY ROE,
on behalf of themselves and
all others similarly situated,

                                            File No. 2:22-cv-10209

      Plaintiffs,

v.                                            Hon. Mark A. Goldsmith

GRETCHEN WHITMER, Governor of the      Mag. Curtis Ivy, Jr.
State of Michigan, and COL. JOSEPH
GASPER, Director of the Michigan State
Police, in their official capacities,

      Defendants.

_____

**PARTIES' STATEMENTS REGARDING
ISSUES REQUIRING DISCOVERY**

**Plaintiffs:**

Plaintiffs believe discovery can be streamlined given both the record developed in prior litigation and the evidence that Plaintiffs compiled in advance of filing this case. Plaintiffs anticipate that their discovery will focus on rebutting any evidence Defendants might introduce to counter the record Plaintiffs have already presented. Plaintiffs will also seek information that is needed to support and to buttress Plaintiffs' claims and enable counsel to effectively represent the class.

Plaintiffs anticipate focusing on the following four areas:

**A. Administration, Operation, and Enforcement of SORA.**

1. <u>Issue</u>: The Joint Statement of Facts (JSOF) from *Does I* covers many issues related to the administration, operation and enforcement of SORA. But due to the passage of time, tweaks to the statute, changes to the Michigan State Police (MSP) Sex Offender Registration Unit and the SORA database, and Defendants' assertion that aspects of SORA enforcement have changed, Plaintiffs need updated information.

2. <u>What Discovery Is Needed</u>: Plaintiffs anticipate written discovery, document requests to obtain relevant materials (e.g., manuals, policies, documents provided to registrants and law enforcement, etc.), and a few depositions (likely of MSP staff). Plaintiffs need to understand how the registry is currently administered, operated, enforced, and used. For example, evidence regarding SORA enforcement could support Plaintiffs' argument that SORA resembles probation/parole; evidence about how many people view the registry or sign up for email alerts could support Plaintiffs' argument that SORA resembles historical shaming punishments; and evidence that much of the information collected is never used could support Plaintiffs' argument that SORA is excessive. Plaintiffs also need to understand what has changed over time (e.g., the number of registrants added each year; how the registry has been used by law enforcement and the public over time, by how many people, etc.); and to see what information the state already has about registrants without requiring onerous reporting. To understand how the registry operates, Plaintiffs also need class member data (e.g., number of registrants in each tier, number of juveniles, number incarcerated/non-incarcerated people, number of people in the subclasses, etc.).

3. <u>Implications for Timing</u>: The discovery sought on this issue builds on the existing record in *Does I*, and should be relatively easy for Defendants to produce.

    With respect to the class list/ESI, Plaintiffs are willing to work with Defendants to narrow the information requested. Defendants have exclusive access to this data, and Plaintiffs are seeking only a small fraction of the information available to Defendants. Plaintiffs believe the most efficient way to do that is for the parties to meet together with relevant data management staff to determine how the data is maintained (e.g., what fields

are searchable, what fields contain historical data, etc.), which would allow Plaintiffs to understand what information can easily be produced and what is more difficult or time-consuming to produce. In the absence of such a meeting, Plaintiffs will need to first seek written discovery about how data is maintained, then do a 30(b)(6) deposition, and then send discovery requests for the data. Having to conduct written and oral discovery without the benefit of meaningful meet-and-confers with Defendants will significantly prolong discovery, particularly if Defendants object to any requests, and given that Plaintiffs will need to time to analyze the data once produced.

4. <u>Anticipated Discovery Disputes</u>: This is standard, fairly simple discovery, and Plaintiffs do not anticipate many objections, except with respect to the class list/ESI. As shown by the production of the class list in *Does II*—a case which sought class-wide enforcement of the *Does I* decisions and did not involve discovery—there is a great deal of data that Defendants can easily produce. Because the *Does II* class list was provided for post-judgment monitoring purposes, it did not contain some of the fields Plaintiffs seek (e.g., employment, juvenile adjudications, registration end-dates, gender). Moreover, it is unclear whether or how *Does III* class counsel can use the *Does II* data. Orders in that case generally bar further disclosure, such as disclosure for expert analysis, which is what Plaintiffs contemplate here. *See Does II*, 2:16-cv-13137, ECF 126, PageID.2573.

## B. How SORA 2021 Impacts Registrants

1. <u>Issue</u>: Plaintiffs have alleged that SORA has devastating consequences for registrants, affecting virtually every aspect of their lives.

2. <u>What Discovery Is Needed</u>: Plaintiffs seek discovery that will allow analysis of class member data (e.g., percent of registrants who are homeless, unemployed, do not use the internet, etc.), and discovery around enforcement of SORA (e.g., number of prosecutions/convictions for noncompliance, coordinated statewide law enforcement sweeps, etc.). Plaintiffs will need the opportunity to rebut evidence related to employer and landlord practices that Defendants are expected to produce, which may involve deposing Defendants' witnesses, a rebuttal expert, efforts to get third-party information that contradicts Defendants' data, or analyzing data about registrants who spent periods of time both on and off the private and public registries.

3. <u>Implications for Timing</u>: The timeframe depends on how much and what evidence Defendants intend to submit, and whether a rebuttal expert or other evidence is needed.

4. <u>Anticipated Discovery Disputes</u>: As noted above, the parties disagree on (a) what class member information should be provided; and (b) whether Plaintiffs should have an opportunity to rebut whatever new evidence Defendants will rely on.

5. <u>Additional Considerations</u>: The parties' pleadings suggest that there is some disagreement about what registrants are legally required to do under SORA. To clarify whether there are any disputes about those requirements, Plaintiffs suggest that Defendants be required to identify any disagreements with ECF 1-3, in which Plaintiffs summarized their understanding of what SORA 2021 requires of registrants.

## C. Is SORA Motivated by Animus

1. <u>Issue</u>: Whether SORA is motivated by animus against people with sex offenses is particularly relevant to Count III, where the existence of animus may determine what level of judicial scrutiny applies.

2. <u>What Discovery Is Needed</u>: Plaintiffs intend to seek some discovery from Defendants directly, and also seek discovery from the legislature and third parties. Plaintiffs will likely begin with document requests, and will then consider further discovery based on the responses.

3. <u>Implications for Timing</u>: Plaintiffs anticipate that the legal issues here will be complicated, and that the discovery itself, including document retrieval and review, as well as possible depositions, will likely be time-consuming.

4. <u>Anticipated Discovery Disputes</u>: Plaintiffs anticipate that the most significant discovery disputes may occur around this issue. Plaintiffs' research shows that (a) there are likely many documents responsive to discovery requests around the passage of SORA that are entirely outside the scope of any legislative privilege (e.g., communications with lobbyists and with constituents, communications between the legislative and executive branches, etc.); and (b) legislative privilege is not simply a thumbs up or thumbs down proposition, but involves a balancing test, and Plaintiffs believe that under the applicable test they are entitled to documents over

which legislative privilege might be asserted. If the legislature or third parties object to document requests, additional sets of lawyers could become involved. The parties will likely need the Court to rule on the legal questions involved.

### D. Discovery Needed for Effective Class Representation

1. <u>Issue</u>: Class counsel represent over 50,000 people and are obligated to zealously and effectively represent their interests. This requires the ability to understand who is in the class and each subclass and what their needs are, to make strategic decisions in the best interests of the class, and to communicate with class members.

2. <u>What Discovery Is Needed</u>: Plaintiffs need class list/ESI information, as well as discovery on issues relevant to identification of the subclasses. In order to make strategic decisions, Plaintiffs also need discovery on topics like the existing use of risk assessments, the number of incarcerated versus non-incarcerated registrants, and the length of time that registrants have been in the community without sexually reoffending.

3. <u>Implications for Timing</u>: Most of the requested discovery is simple class list/ESI data, or overlaps with the discovery under Sections A and B. Plaintiffs believe that, if the parties work together with the relevant data management staff, it should be possible for Defendants to produce most of the information quickly and easily.

4. <u>Anticipated Discovery Disputes</u>: Again, the parties disagree about the class list/ESI. If conversations between the parties and data management staff reveal that some of the requested discovery is difficult to obtain, Plaintiffs are open to a conversation about staggering discovery, so that some categories of discovery would be done only after any ruling granting relief. At present Plaintiffs do not have enough information about Defendants' data management systems to know if this is an efficient way to proceed.

### E. Rebuttal Evidence to Defendants' Social Science Research on SORA.

1. <u>Issue</u>: Plaintiffs have provided extensive expert testimony showing that SORA is ineffective or counterproductive, that recidivism rates are low and drop dramatically over time, and that thousands of people are subject to

    SORA even though they present no more risk than the average male (or other people who are not required to register).

2. <u>What Discovery Is Needed</u>: Defendants wish to present opposing experts. Accordingly, Plaintiffs will need the opportunity both to depose those experts after they have submitted their reports, and to present rebuttal expert reports on issues raised in those reports but not included in Plaintiffs' original reports.

3. <u>Implications for Timing</u>: The length of discovery will depend on how many of Plaintiffs' experts Defendants wish to depose, as well as on how many of their own expert reports Defendants wish to introduce, and how long it will take to produce them.

4. <u>Anticipated Discovery Disputes</u>: The Court will need to resolve the parties' disagreement about rebuttal expert reports. *See* Parties Proposed Joint Discovery Plan, ECF 60, PageID.2020. Because it is at yet unknown what expert evidence Defendants want to introduce, Plaintiffs need an opportunity to rebut that evidence.

**Summary:** Most of the discovery Plaintiffs seek is straightforward and can be completed on an expedited timeframe. To move forward efficiently, the Plaintiffs seek a decision from the Court on:

1. Production of the class list/ESI, which is relevant to most of the categories of discovery set out above. A meeting with Defendants' data management staff would allow the Plaintiffs to determine what information is simply unavailable, or is difficult or time-consuming to produce. Plaintiffs can then work with Defendants to tailor their requests, hopefully eliminating any disputes or at least narrowing them to a few discrete issues.

2. Plaintiffs' opportunity to present rebuttal evidence. This case—which involves ten constitutional claims, many of which involve multi-factor tests—is unusual in that Plaintiffs have already set out their case. Plaintiffs cannot counter any factual and expert evidence Defendants might introduce to oppose Plaintiffs' showing until Plaintiffs see what evidence Defendants introduce on which factors of which tests and on which claims. Plaintiffs have the burden of proof, so the ability to rebut Defendants' assertions and present sufficient evidence of their claims is essential--foreclosing basic

> rebuttal evidence would prejudice the class. There is no legal principle or Federal Rule of Civil Procedure that entitles Defendants to present one-sided evidence without rebuttal.
>
> 3. An expedited schedule for discovery and resolution of discovery disputes. Plaintiffs hope that once the two issues above are resolved, there will not be many other discovery disputes since the discovery Plaintiffs seek is straight-forward (with the exception of the legislative privilege issues, which the Court may need to resolve down the line).

Finally, the Court has asked the parties to consider a discovery master. The parties agreed that they would first try to determine the scope of discovery, which would allow them to then assess whether a discovery master would be useful. Plaintiffs do not anticipate that they will object to much of Defendants' discovery described below. While Plaintiffs are hopeful that the Court will not need to resolve many discovery disputes, if it turns out that Defendants repeatedly object to discovery that Plaintiffs believe is straightforward, it may become necessary to reconsider whether a discovery master would be appropriate.

**<u>Defendants:</u>**

Defendants believe that very little discovery is needed in this case. There are few material facts, most, if not all, of the issues in dispute are legal in nature.

Despite general differences between the parties with respect to the scope of discovery, Defendants believe that the parties will likely be able to sort out specific discovery disputes amongst themselves once discovery commences in the normal course of litigation. Currently, the parties are spending time and resources talking about hypotheticals. Once initial disclosures are made and the first set of discovery is responded to, the parties will be able to clearly identify if there are any real areas of disagreement.

Defendants intend to focus their limited discovery on:

> Questions regarding recidivism rates;
>
> Source of the alleged harms; a result of the conviction rather than being on the registry;
>
> The similarities between SORNA and SORA; and

7

      The benefits that the new SORA provides to registrants and the public.

Defendants do not believe that discovery on the administration of the SORA database will lead to uncovering any material facts the Court will need to make a decision. Whether the SORA has a budget of $1M or $5M has nothing to do with answering the question of the constitutionality of the new SORA. Similarly, producing manuals about the database will not lead to the discovery of material facts. What's more, MSP has a statutory obligation to maintain the database, it does not have authority to advise registrants, prosecutors, other police departments, etc, how SORA should be interpreted or applied. Neither Colonel Gasper or Governor Whitmer has a duty to advise registrants, prosecutors, or other police departments how SORA should be applied or interpreted.

Defendants do not believe that the production of a wide array of class information is necessary at this stage of the litigation. In *Does II*, the class list was not produced until October or November 2021. Plaintiffs were able to effectively and successfully litigate that matter without the class list. In late 2021, the information that was provided was: name; data of birth; tier level; address; MDOC number (if incarcerated); phone number last provided; email address last provided; and offense information including conviction statute, offense date, conviction date, and court of conviction for all registrable offenses. (Case 2:16-cv-13137-RHC-DRG ECF No. 129, PageID.2644-2645.) The information Plaintiffs are seeking is related to their representation and is seemingly authorized under the amended final judgment in *Does II*. "Such information [the class list] about individual registrants shall not be used for any purpose other than to represent the individual class members or the class." (ECF No. 126, PageID.2573.) Plaintiffs already have much of the information they are seeking.

What's more, much of the information is publicly available on the website. If Plaintiff's want to determine that registrants have trouble getting housing, they have their contact information, or they can get it from the website and can contact their clients directly to gather specific information about their alleged difficulties with obtaining employment or housing. There is no need to turn over non-public or historical personal information of over 50,000 registrants at this stage of the litigation.

Plaintiffs indicate that they intend to seek some sort of discovery regarding animus. The legislature passed the law. It's unclear what discoverable information Governor Whitmer or Colonel Gasper will have related alleged animus underlying

8

the legislature's decision to pass the new SORA. Without more specific information about what will be requested, Defendants cannot take a position with respect to this undefined discovery.

Despite these general concerns with the scope of discovery, Defendants believe that once they receive an actual discovery request, they can evaluate the request in light of Rule 26, and respond accordingly.

Respectfully submitted,

s/ Miriam Aukerman (P63165)
Attorneys for Plaintiffs
American Civil Liberties Union
 Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org

s/ Daniel S. Korobkin (P72842)
American Civil Liberties Union
 Fund of Michigan
Attorney for Plaintiffs
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6824
dkorobkin@aclumich.org

s/ Paul D. Reingold (P27594)
Cooperating Counsel, American Civil
 Liberties Union Fund of Michigan
Attorney for Plaintiffs
Univ. of Michigan Law School
802 Legal Research Building
801 Monroe Street
Ann Arbor, MI 48109-1215
(734) 355-0319 - pdr@umich.edu

s/ Roshna Bala Keen (Ill. 6284469)
Loevy & Loevy
Attorney for Plaintiffs
Cooperating Counsel, American Civil
 Liberties Union Fund of Michigan
311 North Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 - roshna@loevy.com

/s/ Eric M. Jamison (P75721)
Assistant Attorney General
/s/ Keith Clark (P56050)
Assistant Attorney General
Attorney for Defendants
Michigan Dep't of Attorney General
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
jamisone@michigan.gov

October 27, 2022

9