# Exhibit B:

Merged Document with
Plaintiffs' Excerpted Requests to Admit
and Defendants' Responses

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOHN DOES A, B, C, D, E, F, G, H,
MARY DOE and MARY ROE,
on behalf of themselves and
all others similarly situated,

        File No. 2:22-cv-10209

    Plaintiffs,

v.        Hon. Mark A. Goldsmith

GRETCHEN WHITMER, Governor of the    Mag. Curtis Ivy, Jr.
State of Michigan, and COL. JOSEPH
GASPER, Director of the Michigan State
Police, in their official capacities,

    Defendants.

_____

**[NOTE: For the convenience of the Court, this document merges Plaintiffs' First Requests for Admission and Defendants' Responses to those requests. For brevity, the document is limited to requests that are at issue for the January 12, 2023 hearing.]**

## PLAINTIFFS' FIRST REQUESTS FOR ADMISSION

These requests for admission are made pursuant to Fed. R. Civ. P. 36. Your responses must be served on Plaintiffs' attorneys pursuant to the Court's scheduling order (ECF 66). The answers should include information known to Defendants and/or their agents which includes, for the governor, information known to her agents within both the Michigan State Police (MSP) and the Michigan Department

1

of Corrections (MDOC). A set of group answers on behalf of all respondents is acceptable, so long as the answers identify who provided the information, and the answers are signed or adopted by each Defendant.

Fed. R. Civ. P. 36(a)(1) allows requests for admission relating to facts, the application of law to fact, or opinions about either. Pursuant to Fed. R. Civ. P. 36(a)(4), if a request is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only part of the request, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made a reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

## Definitions

The word "document" means information recorded in any form.

The word "identify", as used with respect to a person, means to state the person's full name, last-known employer, position/job title, business address, and last-known contact information (phone and email or other internet identifiers).

"Sex Offenders Registration Act" or "SORA" means M.C.L. § 28.721 *et. seq.*, both in its historical and current form.

2

"Sex Offenders Registration Act 2021" or "SORA 2021" means M.C.L. § 28.721 *et. seq.*, as amended effective March 24, 2021.

"Sex Offenders Registration Act 2011" or "SORA 2011" means all versions of the SORA statute, M.C.L. § 28.721 *et. seq.*, in effect between July 1, 2011, and March 24, 2021.

"Michigan sex offender registry" or "sex offender registry" means the registry created under Michigan's Sex Offenders Registration Act, M.C.L. § 28.721 *et. seq.* The terms "Michigan sex offender registry" or "sex offender registry" refer to both the public sex offender registry and the private sex offender registry, as defined below.

"Public sex offender registry" means the publicly available version of Michigan's sex offender registry that is maintained and made public pursuant to M.C.L. § 28.728(2).

"Private sex offender registry" means the version of Michigan's sex offender registry that is available to law enforcement pursuant to M.C.L. § 28.728(1).

"Sex offender registration database" of "MSOR database" means the database and computer programs in which information about the sex offender registry is maintained.

"Registrant" means an individual required to register as a sex offender under SORA.

3

"Sex Offender Registration Unit" or "SOR Unit" means the unit within the Michigan State Police responsible for maintaining the sex offender registry database.

"Law enforcement" means prosecutorial entities, police entities, and correctional entities, including federal, state, local, and tribal entities.

"*Does I*" mans the *Does v. Snyder*, 12-cv-11194 (E.D. Mich.) litigation.

"*Does II*" means the *Does v. Snyder*, 16-cv-13137 (E.D. Mich.) litigation.

"Legislative workgroup" means the group that met periodically in Lansing during the litigation of *Does v. Snyder*, 16-cv-13137 (E.D. Mich.) (*Does II*), in an effort to craft a new SOR statute that would resolve that litigation and address the constitutional issues identified in *Does v. Snyder*, 12-cv-11194 (E.D. Mich.) (*Does I*) by the district court and Sixth Circuit.

"Member of the legislative workgroup" means anyone who participated in one or more of the meetings of the legislative workgroup.

"Currently" or "Current" means at the present time or, if information is not available for the present time, the most recent date available.

"Adjudication" means a disposition in a juvenile proceeding or in a deferral program that does not result in a criminal conviction.

"Public email alert account" means an account created when an individual or entity signs up with the Michigan Sex Offender Registry to receive notices about

4

registrants.

"Officer alert" means a notification directed to law enforcement on a registrant's record in the private sex offender registry.

"Non-compliant with SORA" means that a registrant has been identified by law enforcement as not in compliance with SORA requirements. It does not mean that the individual necessarily has been or will be charged with a SORA violation.

"Individualized assessment" means an individualized review of the likelihood that a person will commit a sex offense (not simply based on the registrable conviction).

"Risk assessment" means use of a statistically-validated instrument to assess the likelihood that a person will commit a sex offense (not simply based on the registrable conviction).

Explanation of Duties" means the notice provided to registrants regarding their obligations under SORA, currently form Michigan State Police form RI-004.

The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun, and vice versa; and the past tense shall include the present tense where the clear meaning is not distorted.

## DEFENDANT GRETCHEN WHITMER AND DEFENDANT COLONEL JOSEPH GASPAR'S RESPONSE TO PLAINTIFFS' FIRST REQUESTS TO ADMIT

Defendants Gretchen Whitmer and Colonel Joseph Gasper, by and through their attorney, Assistant Attorney General Eric M. Jamison, respond to Plaintiffs' First Request to Admit as follows:

### GENERAL OBJECTIONS

Defendants object because the requests seek information from the Michigan Department of Corrections, but the Michigan Department of Corrections is not a party to the lawsuit. However, in the spirit of cooperation, Defendants will meet and confer with Plaintiffs' counsel to discuss how information from MDOC may be obtained expeditiously.

Defendants object to the instructions that request the identity of who provided the information and that the answers are signed or adopted by each Defendants. Such requirements go beyond what is required under the Rules.

Defendants also object to the requests that do not specify a timeframe as overly broad. Information about past version of the SORA is largely not relevant to resolving the question of whether the new SORA is constitutional.

Defendants object to the requests as unduly burdensome and bordering on frivolous. Most of the requests to admit seek admissions related to what the old

6

SORA and the new SORA requires, which is publicly available information dictated by statute and not by Whitmer or Gasper. Many of the requests to admit are duplicative of other discovery requests and providing the same information unnecessary increases the costs of litigation.

## RESPONSES

2. Michigan's registry has about 55,000 total registrants, of whom about 45,000 are Michigan residents.

   *Answer*: Defendants object to the request as vague. Plaintiffs do not define "registry." It is unclear whether the registry is one of the terms in the definition section or is something else. It is unclear whether Plaintiffs refer to all persons who have ever been on the SOR registry, including those that have been canceled or removed, or if Plaintiffs are referring to those that are currently in the SOR database including the public and non-public registrants. Defendants further object because this request to admit needlessly increases the costs of litigation since it includes the same information sought in another discovery requests. To the extent that the request is seeking the number of people who are currently required to register under the SORA, Defendants <u>deny</u> the request because there are currently approximately 44,000 Registrants of which there are approximately 34,000 Michigan Registrants.

3. There are about 35,000 active registrants and about 10,000 incarcerated registrants.

   *Answer*: Defendants object to the request as vague because it is unclear what "active registrants" means. Plaintiffs do not define "active registrants." Defendants <u>deny</u> that there are about 10,000 incarcerated Registrants for the reason that there are approximately 8,800 Registrants that are currently incarcerated.

40. Thousands of Michigan registrants have been convicted of failure to register or other SORA compliance violations.

*Answer*: Defendants object to the request because after a diligent search, they were unable to locate the information needed to respond within the time afforded under the Court's scheduling order. Defendants further object because there is no time limitation in the request. Defendants object based on undue burden because a special query would need to be created, tested and run from Criminal History and its unclear at this point whether the search would yield information sufficient to allow Defendants to respond to the request. Defendants object because the information has no importance to resolving the issues in this lawsuit.

41. Thousands of Michigan registrants who were convicted of failure to register or other SORA compliance violations have been sentenced to jail or to prison for such crimes.

*Answer*: Defendants incorporate by reference the response to request 40.

42. Thousands of Michigan registrants have had their probation revoked following a conviction for failure to register or other SORA compliance violations, or for a violation of SORA even without a conviction.

*Answer*: Defendants object because this information may be in the custody or control of MDOC, who is a non-party. Defendants further object because there is no time limitation in the request. Defendants object because the information has no importance to resolving the issues in this lawsuit.

43. Thousands of Michigan registrants have had their parole revoked following a conviction for failure to register or other SORA compliance violations, or for a violation of SORA even without a conviction.

*Answer*: Defendants incorporate by reference the response to request 42.

48. Males convicted of sex offenses in Michigan and sentenced to prison are currently given a risk assessment using a standardized instrument like the Static-99R.

*Answer*: Defendants object because this information may be in the custody or control of MDOC, who is a non-party. Defendants object because the information has no importance to resolving the issues in this lawsuit.

49. The majority of males convicted of a sex offense in Michigan and sentenced to prison in the past have since been given a risk assessment using a standardized instrument like the Static-99R.

*Answer*: Defendants object because this information may be in the custody or control of MDOC, who is a non-party. Defendants object because there is no timeframe included. Based upon information and belief, Static 99 was created in 1999 and Static 99-R was updated in 2012. Information is not readily obtainable to determine if the majority of males convicted of a sex offense in Michigan and sentenced to prison from 1837 to present have been given a risk assessment using a standardized instrument like Static 99-R. Defendants object because the information has no importance to resolving the issues in this lawsuit.

50. The Michigan Department of Corrections has staff or contractors qualified to perform risk assessments like the Static-99R.

*Answer*: Defendants object because this information may be in the custody or control of MDOC, who is a non-party. Defendants object because the information has no importance to resolving the issues in this lawsuit.

52. In 2019, after the *Does I* Sixth Circuit decision and after the *Does II* class action was filed, stakeholders who had an interest in what a new SORA might look like began meeting in Lansing.

*Answer*: Defendants object to the request as not relevant and is information in the possession of Plaintiffs since their counsel participated in the meetings. Defendants further object because the information has no importance to resolving the issues in this lawsuit.

53. Participants in the legislative workgroup included legislative liaisons from both parties in both houses of the legislature, representatives from the Governor's office, the Michigan State Police, the Department of Corrections, the Prosecuting Attorneys Association of Michigan, the ACLU of Michigan's political department,

victims' rights advocates, the Michigan Attorney General's Office, and counsel for both sides in *Does II*.

    *Answer*: Defendants object to the request as not relevant and is information in the possession of Plaintiffs since their counsel participated in the meetings. Defendants further object because the information has no importance to resolving the issues in this lawsuit.

54. The legislative workgroup met roughly every 2-4 weeks in person over several months.

    *Answer*: Defendants object to the request as not relevant and is information in the possession of Plaintiffs since their counsel participated in the meetings. Defendants further object because the information has no importance to resolving the issues in this lawsuit.

55. Over the course of its meetings, the legislative workgroup narrowed the areas of disagreement about what a new (and constitutional) SORA might look like.

    *Answer*: Defendants object to the request as not relevant and is information in the possession of Plaintiffs since their counsel participated in the meetings. Defendants further object because the information has no importance to resolving the issues in this lawsuit.

56. The legislative workgroup stopped meeting after the Governor instructed the executive branch units to cease participating.

    *Answer*: Defendants object to the request as not relevant and because the information has no importance to resolving the issues in this lawsuit.

57. During 2020 the Michigan legislature held hearings on House Bill 5679, the bill that became SORA 2021.

    *Answer*: Defendants object to the request as not relevant and object because the information is publicly available making it equally accessible to Plaintiffs.

Defendants further object because the information has no importance to resolving the issues in this lawsuit.

58. The legislative committee holding hearings on House Bill 5679 received about 170 submissions, in the form of written comments, letters, in-person testimony, or online (Zoom) testimony.

*Answer*: Defendants object to the request as not relevant and object because the information is publicly available making it equally accessible to Plaintiffs. Defendants further object because the information has no importance to resolving the issues in this lawsuit.

59. All but two of the submissions on House Bill 5679 opposed – or expressed reservations about – the bill.

*Answer*: Defendants object to the request as not relevant and object because the information is publicly available making it equally accessible to Plaintiffs. Defendants further object because the information has no importance to resolving the issues in this lawsuit. Defendants further state that the majority of the submissions came from registrants subject to SORA.

60. Social scientists submitted testimony on House Bill 5679 stating that the bill contradicted modern social science research.

*Answer*: Defendants object to the request as not relevant and object because the information is publicly available making it equally accessible to Plaintiffs. Defendants further object because the information has no importance to resolving the issues in this lawsuit.

61. Social scientists submitted testimony on House Bill 5679 reporting findings that laws like that proposed in House Bill 5679 can increase sexual recidivism.

*Answer*: Defendants object to the request as not relevant and object because the information is publicly available making it equally accessible to Plaintiffs. Defendants further object because the information has no importance to resolving the issues in this lawsuit. Defendants further object to the request because sexual

recidivism is undefined. It is not clear whether sexual recidivism means committing another sexual assault or crime, being arrested for another sexual assault or crime, or being convicted of another sexual assault or crime.

    62. Organizations whose representatives testified or submitted written testimony in opposition to House Bill 5679 included the Association for the Treatment of Sexual Abusers, the State Appellate Defender Office, the Criminal Defense Attorneys of Michigan, Michigan Citizens for Justice, Safe and Just Michigan, the University of Michigan Law School, the American Friends Service Committee's Michigan Criminal Justice Program, Legal Reform for Intellectually and Developmentally Disabled, Freedman & Herskovic, PLC, Coalition for a Useful Registry, Michigan Collaborative to End Mass Incarceration, Washtenaw Citizens for Restorative Justice, MI-CURE, and the American Civil Liberties Union of Michigan.

    *Answer*: Defendants object to the request as not relevant and object because the information is publicly available making it equally accessible to Plaintiffs. Defendants further object because the information has no importance to resolving the issues in this lawsuit.

    63. The only favorable oral testimony on House Bill 5679 came from a victim's rights advocate, who told the legislative committee that registrants should be punished for life because victims are punished for life.

    *Answer*: Defendants object to the request as not relevant and object because the information is publicly available making it equally accessible to Plaintiffs. Defendants further object because the information has no importance to resolving the issues in this lawsuit.

    67. The MSP SOR Unit has a gross annual budget of $1.9 million.

    *Answer*: Defendants object to the request because it is duplicative of other discovery requests seeking the same information. Duplicating discovery requests only needlessly increases the costs of litigation. See response to Request to Produce 12. Defendants further object because the information has no importance to resolving the issues in this lawsuit.

80. The State of Michigan has not analyzed whether Michigan's sex offender registry is effective in preventing sexual recidivism.

*Answer*: Defendants object to the request as vague. It is unclear whether the request is asking whether "State of Michigan" means every political branch and/or agency, or whether it means something else.  Defendants further object to the request because "sexual recidivism" is undefined.  It is not clear whether sexual recidivism means committing another sexual assault or crime, being arrested for another sexual assault or crime, or being convicted of another sexual assault or crime.  The term "effective" is also undefined.  Defendants further object because there is no timeframe specified, to the extent that somewhere in the State of Michigan, someone may have analyzed any of the previous versions of the SORA, Defendants object to the request because the information has no importance to resolving the issues in this lawsuit.

84. In light of the Michigan Court of Appeals' decision in *People v. Lymon*, No. 327355, 2022 WL 2182165 (Mich. Ct. App. June 16, 2022), the Michigan State Police intends to leave decisions about whether individuals convicted of M.C.L. § 750.349 (other than convictions for violating M.C.L. § 750.349(1)(c) or M.C.L. § 750. 349(1)(f)), § 750.349b, or § 750.350 must register up to local prosecutors.

*Answer*: Defendants object to the request to the extent that it is implies that the Michigan State Police play a role in determining who must register under the SORA.  Registration obligations under SORA arise from statute and case law.  The Michigan State Police maintains the SOR database as required by statute and registrants may report or update their information at Michigan State Police posts. The Michigan State Police does not provide legal advice about the impacts of judicial opinions on registration obligations. Defendants object because this request is duplicative of other discovery requests which sought information regarding how MSP is responding to the *Lymon* decision.

87. In the event that the Michigan Supreme Court the reverses the Court of Appeals decision in *People v. Lymon*, No. 327355, 2022 WL 2182165 (Mich. Ct. App. June 16, 2022), the Michigan State Police plans to again require individuals convicted of M.C.L. § 750.349 (other than convictions for violating M.C.L. § 750.349(1)(c) or M.C.L. § 750.349(1)(f)), § 750.349b, or § 750.350, to be placed on the registry.

*Answer*: Defendants object to the request that it implies that the Michigan State Police requires anyone to register under the SORA. SORA registration obligations come from statute and case law. The Michigan State Police maintains the SOR database as required by statute. In further response, Defendants admit that the Michigan State Police follows judicially binding opinions.

[Signature block omitted]

Dated: December 14, 2022