UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOES A, B, C, D, E, F, G, H,
MARY DOE and MARY ROE, on behalf of
themselves and all others similarly situated,

                Plaintiffs,

v.

GRETCHEN WHITMER, Governor of the
State of Michigan, and COL. JOSEPH
GASPER, Director of the Michigan State
Police, in their official capacities,

                Defendants.

No. 2:22-cv-10209

Hon. Mark A. Goldsmith

Mag. Curtis Ivy, Jr.

**PLAINTIFFS' MEMORANDUM RE IMPROPER QUESTIONING
AT DEPOSITIONS OF NAMED PLAINTIFFS**

**Factual Background**

At Plaintiff Mary Roe's March 13, 2023, deposition, Defendants introduced the attached exhibit. *See* Exhibit A. It contains 117 selected examples of sexually graphic fact patterns that resulted in convictions for sexual offenses. Defense counsel then instructed Ms. Roe to read each example, asking questions like:

- If a person with that conviction lived next door, would you want to know?
- Would you want to know this person's history before going on a date?
- If this criminal defendant was the soccer coach of a child you cared about, would you want to know they were on the registry?
- If they were the babysitter for a child that you care about? A school teacher?

Defense counsel also asked Ms. Roe her opinions about how likely it was that the defendants described in the fact patterns would commit new sexual offenses.

Defendants repeated this for each example in the exhibit. Plaintiffs repeatedly objected, noting that the questions were abusive and were not designed to elicit any discoverable information. Plaintiffs also asked how long Defendants intended to continue such questioning, but Defendants declined to answer. Over approximately half an hour, Defendants' counsel continued through the first 20 examples in the exhibit. Each example involved graphic depictions of criminal sexual conduct in the first degree, the most serious sexual offense in Michigan. It was only after Plaintiffs' counsel indicated that Plaintiffs would go to the Court if Defendants insisted on asking similar questions of the other named plaintiffs that Defendants ceased. It appeared that Defendants had intended to continue through the other 97 examples.

1

Defendants refused to agree not to repeat the same line of questioning with the other named plaintiffs. The Court temporarily barred Defendants from asking such questions. ECF 90. The next deposition is scheduled for March 23, 2023.

## Legal Standard

Rule 30(d)(3)(A) provides for limits on depositions that are "being conducted in bad faith or in a manner that unreasonably annoys, embarrasses or oppresses the deponent or party." *See also* Rule 26(c)(1). Rule 30(c) provides that examinations of deponents should "proceed as they would at trial under the Federal Rules of Evidence." Under Fed. R. Evid. 611(a)(3), "[t]he court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to … protect witnesses from harassment or undue embarrassment." Rule 26(b)(1) limits discovery to relevant evidence.

## Argument

The Court should bar Defendants' line of questioning for three reasons. First, such questioning is abusive. Forcing a witness to read and discuss example after example of graphic sexual activity is harassment. These questions are not about the plaintiffs' own conduct, but involve descriptions of entirely unrelated cases. Class counsel cannot think of any other situation where a witness could be required to respond to example after example of sex acts committed by other people.

Such questioning can also traumatize witnesses because it suggests that their

2

conduct is equal to that of people who committed these most serious crimes. For example, Ms. Roe—who was convicted of CSC-III for having sex at the age of 19 with a 14-year-old boy—testified that she is in counseling due to stress associated with being labeled as a sex offender. While Defendants have argued that they are not trying to equate Ms. Roe's conduct with that in the fact patterns (which begs the question why the fact patterns are then relevant in her deposition), Ms. Roe is categorized as a Tier III "sex offender," just like people convicted of CSC-I. Defendants are trying to establish that the public wants to know about "sex offenders." Plaintiffs' theory of the case is that registrants need to be treated as individuals, not treated as if everyone on the registry committed the most heinous offenses.

Second, the testimony sought is irrelevant. Defendants cannot explain how public opinion is relevant to Plaintiffs' claims. Why would the public's views on criminal history accessibility affect whether SORA imposes retroactive punishment in violation of the Ex Post Facto Clause? Or whether retroactively extending registration terms to life violates due process? Or whether compelling registrants to contribute to the state's message that they are dangerous violates the First Amendment?

Moreover, even assuming that public opinion is somehow relevant, discovering what percentage of the public would want to know about the convictions of individuals who committed the types of crimes described in Defendants' exhibit does not tell you what percentage of the public thinks people like Ms. Roe belong

3

on the registry. Or what percentage believes that people who don't present a current danger should come off the registry. Or what percentage thinks that a background check versus a public registry is the best way to screen teachers and soccer coaches.

Most importantly, asking the *individual plaintiffs* about whether they'd want to know the criminal history of a dating partner or babysitter provides no information about what the *public* at large believes. It is simply each plaintiff's individual opinion. The "public" might or might not agree. Similarly, the class might or might not agree with the named plaintiffs' opinions. Those personal opinions are simply not relevant to the claims of the class. *See*, *e.g. Marr v. WMX Techs., Inc.*, 1996 WL 694634, *6 (Conn. Super. Ct. Nov. 25, 1996); *Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 184 (N.D. Cal. 2015). Even if public opinion about the registry were somehow relevant to the legal claims, Defendants can't establish such "public opinion" through the anecdotal testimony of nine plaintiffs.

Finally, Defendants' questioning improperly elicits opinion testimony by lay witnesses. Fed. R. Evid. 701 limits lay opinion testimony to that which is:

(a) rationally based on the witness's perception;
(b) helpful to clearly understand the witness's testimony or to determining a fact in issue; and
(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

The Handbook of Federal Evidence, § 701.1 (9th ed.), explains that a lay witness must first lay a foundation establishing personal knowledge of the facts which form

4

the basis of the opinion. *Id.* Lay witnesses can only provide opinions about what they "observed rather than what [they] concluded and what [they] felt." *Id.* For example, a lay witness could opine, based on experience, that the shots he heard were likely from a pistol, but could not testify that he felt sick looking at the crime scene. *Id.*

Here, the opinion testimony being sought would not be admissible. Predictions about recidivism require scientific, technical, or other specialized knowledge. Plaintiffs' guesses about whether a person who was convicted of a particular offense might recidivate are irrelevant. (Indeed, even an expert could not determine risk based on the factual snippets provided.) The plaintiffs' opinions about whether they would want to know a person's criminal history reflect feelings, not observations. Such opinions are not helpful to determining any fact at issue, as plaintiffs' personal views on the availability of conviction information are not a fact at issue in this case. While it is true that discovery is not limited to admissible evidence, *see* Fed. R. Civ. Proc. 26(b)(1), the harassing nature coupled with the irrelevance and inadmissibility of the testimony Defendants are seeking weighs in favor of barring such questioning.

Wherefore, Plaintiffs ask the Court to bar Defendants from asking questions about Plaintiffs' opinions regarding whether they would want to know the criminal histories of individuals described as committing particular sexual crimes, or whether they believe those individuals are likely to reoffend. The Court should also bar Defendants from using any such testimony from Ms. Roe's deposition.

5

Respectfully submitted,

| | |
|---|---|
| s/ Miriam Aukerman (P63165) | s/ Paul D. Reingold (P27594) |
| /s Dayja Tillman (P86526) | Cooperating Counsel, American Civil |
| Attorneys for Plaintiffs |   Liberties Union Fund of Michigan |
| American Civil Liberties Union | Attorney for Plaintiffs |
|   Fund of Michigan | Univ. of Michigan Law School |
| 1514 Wealthy SE, Suite 260 | 802 Legal Research Building |
| Grand Rapids, MI 49506 | 801 Monroe Street |
| (616) 301-0930 | Ann Arbor, MI 48109-1215 |
| maukerman@aclumich.org | (734) 355-0319 - pdr@umich.edu |
| | |
| s/ Daniel S. Korobkin (P72842) | s/ Roshna Bala Keen (Ill. 6284469) |
| s/ Syeda Davidson (P72801) | Loevy & Loevy |
| American Civil Liberties Union | Attorney for Plaintiffs |
|   Fund of Michigan | Cooperating Counsel, American Civil |
| Attorney for Plaintiffs |   Liberties Union Fund of Michigan |
| 2966 Woodward Avenue | 311 North Aberdeen, 3rd Floor |
| Detroit, MI 48201 | Chicago, Illinois 60607 |
| (313) 578-6824 | (312) 243-5900 – roshna@loevy.com |
| dkorobkin@aclumich.org | |