UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

JOHN DOES A, B, C, D, E, F, G, H,
MARY DOE and MARY ROE, on behalf of
themselves and all others similarly situated,

Plaintiffs,

v.

GRETCHEN WHITMER, Governor of the
State of Michigan, and COL. JOSEPH
GASPER, Director of the Michigan State
Police, in their official capacities,

Defendants.

No. 2:22-cv-10209

Hon. Mark A. Goldsmith

Mag. Curtis Ivy, Jr.

---

**PLAINTIFFS' MOTION FOR
LEAVE TO SUPPLEMENT COMPLAINT**

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, Plaintiffs request

that the Court grant leave to amend the complaint by filing the proposed supple-

mental complaint, attached as Exhibit A. The supplemental complaint adds factual

allegations and subclass allegations regarding registration requirements for class

members with non-Michigan convictions, and adds an additional count on behalf of

1

such subclass members. This new claim is based on previously unavailable information obtained through discovery.

When a plaintiff seeks to amend a complaint, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Here, plaintiffs learned through discovery that there are more than 5,700 class members—or about 11 percent of the class—who have non-Michigan convictions or adjudications. Plaintiffs further learned that such class members are subject to harsher registration requirements than those with Michigan offenses, and are denied the most rudimentary due process protections, including meaningful pre-deprivation notice and an opportunity to be heard. For the reasons more fully set forth in the accompanying brief, the Court should grant leave to supplement the complaint.

Pursuant to the local rules, on March 28, 2023, Plaintiffs sought concurrence from Defendants regarding the relief requested. Defendants did not concur.

Respectfully submitted,

s/ Miriam J. Aukerman (P63165)
Miriam J. Aukerman
Dayja S. Tillman (P86526)
American Civil Liberties Union
  Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org
dtillman@aclumich.org


s/ Daniel S. Korobkin (P72842)
Danial S. Korobkin
Syeda Davidson (P72801)
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6824
dkorobkin@aclumich.org
sdavidson@aclumich.org


Dated: March 29, 2023

s/ Paul D. Reingold (P27594)
Cooperating Counsel, American Civil
  Liberties Union Fund of Michigan
Univ. of Michigan Law School
802 Legal Research Building
801 Monroe Street
Ann Arbor, MI 48109-1215
(734) 355-0319 - pdr@umich.edu


s/ Roshna Bala Keen (Ill. 6284469)
Loevy & Loevy
Cooperating Counsel, American Civil
Liberties Union Fund of Michigan
311 North Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 - roshna@loevy.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

JOHN DOES A, B, C, D, E, F, G, H,
MARY DOE and MARY ROE, on behalf of
themselves and all others similarly situated,

Plaintiffs,

v.

GRETCHEN WHITMER, Governor of the
State of Michigan, and COL. JOSEPH
GASPER, Director of the Michigan State
Police, in their official capacities,

Defendants.

---

No. 2:22-cv-10209

Hon. Mark A. Goldsmith

Mag. Curtis Ivy, Jr.

---

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR
MOTION FOR LEAVE TO SUPPLEMENT COMPLAINT**

**INTRODUCTION**

This case is the latest in a line of cases challenging Michigan's Sex Offenders

Registration Act (SORA). Immediately after this litigation was filed, Plaintiffs filed

a motion for preliminary injunction and Defendants filed a motion to dismiss. Pl.

Mot. Prelim Inj., ECF 7; Def. Mot. to Dismiss, ECF 41. The Court denied both

motions, but adopted an accelerated discovery schedule. Order, ECF 54, PageID

1

1852. Discovery began in the fall of 2022, with the Court entering an initial case management and scheduling order, ECF 66, on November 9, 2022.

Tens of thousands of people will be affected by the outcome of this matter, Compl., ECF 1, ¶ 641-647, and the parties have engaged in significant discovery. Through the discovery process, Plaintiffs have uncovered information showing that a significant portion of the class have out-of-state convictions or adjudications, that such class members are subject to harsher registration requirements than those with Michigan offenses, and that such class members are denied the most rudimentary due process protections. After further investigation and due diligence, class counsel determined that they have a duty to seek relief for these class members. Fed. R. Civ. Proc. 23(g)(4) (requiring class counsel to fairly and adequately represent the interests of the class).

To that end, concurrently with this motion, class counsel are filing a motion for class certification of a non-Michigan offense subclass defined as:

> Members of the primary class who, according to Defendants, are or will be subject to sex offender registration under SORA 2021 for a conviction or adjudication from a jurisdiction other than Michigan.

Plaintiffs now ask the Court to allow them to amend the complaint to add the relevant factual and legal allegations, and set out a claim seeking relief for that subclass.

The additional allegations and claims have been set out in the attached supplemental complaint. Plaintiffs' intention in drafting this as a supplemental complaint

2

(which picks up where the original complaint left off) rather than filing an amended complaint (where the new allegations would be interspersed with those in the original complaint) is to make it simpler for Defendants to respond. Irrespective of form, the Rule 15 standard for amendment applies.

## BACKGROUND

Plaintiffs filed a complaint initiating this case on February 2, 2022. ECF 1. After denying motions filed by both parties, the Court entered a case management and scheduling order, on November 9, 2022. Through discovery, Plaintiffs have learned that a substantial portion of the class—more than 5,700 class members, or 11% of the class—have out-of-state convictions, and have been required to register as sex offenders in Michigan. Additionally, Plaintiffs learned the following information regarding people with out-of-state convictions through discovery:

- The Michigan State Police (MSP), despite having no authority under SORA to do so, makes unilateral decisions about whether someone with a non-Michigan conviction is subject to registration, and what tier level and registration requirements apply.

- There are no published rules or procedures to guide the MSP in making these decisions.

3

- The MSP uses the flowchart below to make the determination for adults with out-of-state convictions:



*If the Crime Code is not listed or tiered in the PACC Code Table, consult with an analyst before moving to the next step.

4

- The MSP uses the flowchart below to make the determination for juveniles with out-of-state adjudications:



OUT OF STATE JUVENILE ADJUDICATIONS

*If the Crime Code is not listed or tiered in the PACC Code Table, consult with an analyst before moving to the next step.    MSP-0000724

Does v. Whitmer

- The flow charts show that determining a person's registration requirements in Michigan is a complicated, multi-step process. It first requires a determination of whether the foreign offense is "substantially similar" to a Michigan conviction, and if so, to which Michigan conviction. But a determination can also require an assessment of what the person's registration requirements would be in the convicting jurisdiction.

- The MSP has a Sex Offenders Registration (SOR) Unit that makes these determinations using the flow charts above, along with a spreadsheet of non-

5

Michigan offenses. The spreadsheet has a column for the "comparable MI code," which is almost entirely blank.

- Even internally, the MSP does not always agree about whether a person with an out-of-state conviction must register in Michigan, or what their requirements should be.

- The flowcharts above illustrate that if the foreign conviction results in a less severe registration status in the foreign jurisdiction than in Michigan, then Defendants say that Michigan's harsher rules govern. But if Michigan's registration and requirements are less severe, then Defendants say the foreign jurisdiction's harsher rules govern. In short, out-of-staters are registered under whichever set of rules is harsher.

- In making "substantial similarity" determinations, the MSP does not use the "categorical approach"—which involves comparing the elements of the in-state and out-of-state offense—but instead looks at unproven allegations about offense conduct to determine whether a person must register, and what the registration requirements are.

- After the MSP makes its unilateral decision, the affected person is sent a notice that tells them that they are required to register, their tier level, how long they are required to register, and how often. The notice does not advise whether their registry status will be made public, nor does it advise how the

decision was made or the factual bases for the decision. It does not provide information about how to dispute the MSP's determination.

- There is no appeal process or procedure by which people with non-Michigan offenses can contest the MSP's determinations, and no procedure for judicial or appellate review of these determinations.

Upon learning these facts, class counsel, who have a duty under Fed. R. Civ. P. 23(g)(4) to fairly and adequately represent the interests of the class, investigated the viability of a claim for this subgroup of class members. Class counsel concluded that the group has a strong common claim for relief. Plaintiffs thus seek leave to supplement their complaint to add the additional subclass identified above, and to assert violations of the Due Process Clause, Equal Protection Clause, and Privileges and Immunities Clause of the Fourteenth Amendment, and Article IV, §2 of the U.S. Constitution on its behalf. Mary Doe and John Doe G, who have already been named as class representatives, would be the named representatives of this subclass.

## ARGUMENT

The Federal Rules have a "liberal policy of permitting amendments to ensure the determination of claims on their merits." *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990). Fed. R. Civ. P. 15(a)(2) provides that a party is permitted to amend its pleadings at any time after a responsive pleading has been served either upon written consent from the adverse party or by leave of the court.

Absent consent, "the court should freely give leave when justice so requires." *Id. See also Morse v. McWhorter*, 290 F.3d 795, 799-800 (6th Cir. 2002).

## I.  The Court Should Grant Leave to Add a Claim Based on Information Learned in Discovery.

The Sixth Circuit has made clear that "[i]f a plaintiff decides to advance a new claim as a result of such discovery, liberal amendment of the complaint is provided for by Rule 15(a)." *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005). *See also Sargent v. Am. Greetings Corp.,* 588 F. Supp. 912, 926 (N.D. Ohio, 1984) (plaintiffs may amend complaints "to conform to matters [they have] learned during the discovery process"). Justice requires that plaintiffs who learn additional facts during discovery be permitted to amend their complaint to reflect those additional facts. *Peppers v. LTF Greenhouses, LLC*, No. 3:11-cv-547, WL 68087, at *5 (W.D. Ky. Jan. 8, 2014).

Here, Plaintiffs' supplemental complaint adds one claim—a claim that is premised on new information learned in discovery. Plaintiffs obtained written documents—including policies, flow charts, coding spreadsheets, MSP internal communications, and letters to registrants—that revealed the facts on which the claim is based. This information was confirmed through the deposition of MSP SOR Unit coordinator Narcissa Morris, as well as through consultation with criminal defense attorneys, both in Michigan and other states. In addition, information about

8

the size of the subclass was obtained by securing class data, and then working with experts to clean and analyze that data.

There are a large number of people whose constitutional rights are affected by this claim, which is an important reason for why this Court "should freely give leave [because] justice so requires." Fed. R. Civ. P. 15(a)(2). This new claim has the potential to impact more than 5,700 class members—or about 11 percent of the class. As set out in the supplemental complaint, these class members have a strong claim for relief. If the Court grants that relief, a substantial portion of registrants with out-of-state convictions could be removed from the registry. Many others would likely be reclassified, resulting in much shorter registration terms and/or non-public registration. Justice requires allowing them to present this claim.

Finally, allowing Plaintiffs to add another count to reflect newly-acquired information regarding Defendants' treatment of people with out-of-state convictions serves judicial economy. Now that discovery has revealed the inequitable treatment of this group, further litigation on this issue seems likely, given the large number of people affected, the strength of the claim, and the impact of the relief requested. Granting leave for the claim to be brought within this case will help to avoid yet another lawsuit about SORA.

## II. None of the Exceptions to the Liberal Amendment Rule Appy Here.

Under the Federal Rules' liberal standard for amendment, leave to amend should be freely given unless there is "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, [or] futility of amendment." *Gen. Elec. Co.*, 916 F.2d at 1130 (quoting *Hageman v. Signal L.P. Gas, Inc.* 486 F.2d 479, 484 (6th Cir. 1973)); *see also Foman v. Davis*, 371 U.S. 178 (1962) (providing the same list of reasons to deny a motion for leave to amend a complaint). None of those exceptions apply here.

There was no undue delay in filing this motion. The parties have been engaged since the fall in extensive discovery, which is ongoing. Planned or completed discovery on both sides includes written discovery (requests for production, interrogatories and requests to admit), review of thousands of pages of documents, preparation of expert reports (16 at last count), preparation of dozens of declarations, depositions of lay and expert witnesses, and obtaining and analyzing class data. This work, which is considerable, is being done on an expedited schedule.

Plaintiffs, as part of responses to routine written discovery requests, obtained some documents relevant to the new claim. Because Defendants' responses were incomplete, Plaintiffs had to engage in a back and forth with Defendants to try to

obtain additional documents.[1] Plaintiffs also deposed the SOR Unit manager, conducted legal research, and consulted with local and out-of-state criminal defense counsel. In order to assess how many people are impacted, Plaintiffs had to obtain class data; Defendants disputed both the scope and timing of what data would be provided, requiring Court intervention. In short, Plaintiffs, upon uncovering information in discovery about the potential new claim, have moved expeditiously to investigate the new claim, confirm its factual and legal viability, draft the necessary pleadings, and bring this motion before the Court.

Granting leave to amend will not prejudice Defendants. No new parties are being added. All of the information relevant to this claim is in Defendants' possession. Indeed, the claim is based on entirely upon Defendants' own policies and practices, which they have produced in discovery. They have had full access to these items throughout this litigation. The claim largely turns on the legal question of

---

[1] For example, Defendants did not initially produce the notification letters (attached as Exhibit 29 to the supplemental complaint), even though Plaintiffs' discovery asked for all form letters. After negotiation, Defendants produced several letters. Based on other discovery documents, however, Plaintiffs determined that not all the letters had been produced. Plaintiffs had to follow up again before they were able to get all four of the letters that are attached as Exhibit 29. Similarly, in a letter dated February 6, 2023, Plaintiffs followed up regarding other outstanding documents related to registration of people with out-of-state offenses. Defendants' counsel responded on February 22, 2023, that the request would be sent to the client and any additional responsive documents would be provided. On March 22, 2023, Plaintiffs notified Defendants that they had been waiting on these documents, but—having received no further responses—Plaintiffs would move forward with a claim on behalf of registrants with non-Michigan offenses.

whether those policies and practices are constitutional. Thus, Defendants do not need any additional discovery to respond to this claim. The only relevant facts about the two prospective class representatives are already set out in the initial and supplemental complaints.[2] The original and supplemental complaints state that Mary Doe and John Doe G are registered based on out-of-state convictions, are registered as Tier III offenders, and never received any notice explaining that tier classification. ECF 1, ¶¶ 67-83; ¶¶ 139-147; Supplemental Compl., ¶¶ 774-795. Any additional information regarding why or how they were categorized as Tier III registrants based on their out-of-state offenses (which appear, at most, to be similar to Tier II offenses) is in Defendants' possession.

Finally, Defendants may argue that granting leave to file a supplemental complaint could delay resolution of this case. First, as a legal matter, even if that were true, it would not be a reason to deny leave to amend. Under Rule 15(b), amendment is proper as long as there has not been *undue* delay. *Janikowski v. Bendix Corporation*, 823 F.2d 945, 951 (6th Cir. 1987). Delay is not undue when it does not cause "ascertainable prejudice" and when it is not meant to harass defendants. *Id*. *See also*

---

[2] Although Mary Doe and John Doe G do not have additional information relevant to this claim, Plaintiffs' counsel nevertheless advised Defendants before Mary Doe's and John Doe G's depositions that Plaintiff intended to file this motion to amend and that these two named plaintiffs would be proposed new subclass representatives. Plaintiffs gave Defendants the opportunity to reschedule Mary Doe's deposition or move forward (which they chose to do). John Doe G has not yet been deposed.

*Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982). Delay alone is "not in itself a permissible reason to refuse leave to amend." *Id*. at 639 n.2. There must be at least some significant showing of prejudice to the opponent if the motion is to be denied. *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986).

Second, as a practical matter, it is simply not true that granting leave would delay resolution of this case. This motion (assuming a normal briefing schedule under Local Rule 7.1(e)(1)) should be fully briefed by April 19, 2023, several weeks before discovery is currently scheduled to close. Moreover, the parties are already talking about modifications to the current scheduling order (due to unrelated delays in the discovery process), and a modest extension of the discovery period will be proposed soon.[3] Adding this claim will not delay resolution of the case as a whole.

---

[3] The existing case management order, ECF 84, ties the deadlines for production of Plaintiffs' expert report on class data to final production of data from the Michigan Department of Corrections. That data production is not yet complete; only one small set of data has been provided. In addition, Defendants were unable to produce all their expert reports on the original schedule, and Plaintiffs' experts have already indicated that they will likewise be unable to complete rebuttal reports in the narrow window allotted under the current order. Expert depositions cannot be taken until rebuttal reports are completed. And many of the named plaintiffs' and other lay witness depositions have yet to be taken, reflecting (1) scheduling issues; (2) the dispute about what questioning of Plaintiffs is permissible, *see* ECF 99; (3) outstanding document requests where responses are needed before depositions can be taken; and (4) both sides' recent disclosure of their lay witness lists, which include a substantial number of previously undisclosed individuals. *See* ECF 95, 98.

13

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion for leave to supplement the complaint on behalf of registrants with non-Michigan offenses.

Respectfully submitted,

s/ Miriam Aukerman (P63165)
/s Dayja Tillman (P86526)
Attorneys for Plaintiffs
American Civil Liberties Union
  Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org

s/ Daniel S. Korobkin (P72842)
s/ Syeda Davidson (P72801)
American Civil Liberties Union
  Fund of Michigan
Attorney for Plaintiffs
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6824
dkorobkin@aclumich.org

s/ Paul D. Reingold (P27594)
Cooperating Counsel, American Civil
  Liberties Union Fund of Michigan
Attorney for Plaintiffs
Univ. of Michigan Law School
802 Legal Research Building
801 Monroe Street
Ann Arbor, MI 48109-1215
(734) 355-0319 - pdr@umich.edu

s/ Roshna Bala Keen (Ill. 6284469)
Loevy & Loevy
Attorney for Plaintiffs
Cooperating Counsel, American Civil
  Liberties Union Fund of Michigan
311 North Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 – roshna@loevy.com

Dated: March 29, 2023

## LOCAL RULE CERTIFICATION

I, Miriam J. Aukerman, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted material and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 points (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

s/ Miriam J. Aukerman (P63165)
American Civil Liberties Union
  Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org

15