# EXHIBIT A:

# PLAINTIFFS' SUPPLEMENTAL COMPLAINT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOES A, B, C, D, E, F, G, H,
MARY DOE and MARY ROE, on behalf of
themselves and all others similarly situated,

Plaintiffs,

v.

GRETCHEN WHITMER, Governor of the
State of Michigan, and COL. JOSEPH
GASPER, Director of the Michigan State
Police, in their official capacities,

Defendants.

No. 2:22-cv-10209

Hon. Mark A. Goldsmith

Mag. Curtis Ivy, Jr.

## PLAINTIFFS' VERIFIED SUPPLEMENTAL COMPLAINT

### INTRODUCTION

765.   This complaint supplements the complaint filed as ECF 1, PageID# 1-

198. All paragraphs of the original complaint are incorporated by reference as if fully

set out here.[1] This supplemental complaint adds factual allegations and subclass alle-

gations regarding registration requirements for class members with non-Michigan

---

[1] The paragraph numbering of this supplemental complaint picks up where the original complaint left off. Michigan's Sex Offenders Registration Act is referred to as SORA or SORA 2021.

convictions, and adds an additional count on behalf of such class members.

## FACTUAL ALLEGATIONS

766.    Under Michigan's SORA, people with offenses from other jurisdictions are required to register as sex offenders in Michigan if (a) the offense is "substantially similar" to a registrable Michigan offense, M.C.L. § 28.722(r)(x); (t)(xiii); (v)(viii)[2]; or (b) the "individual from another state [] is required to register or otherwise be identified as a sex or child offender or predator under a comparable statute of that state." M.C.L. § 28.723(1)(d).

### The Complexity of Sex Offender Registration
### Decisions for People with Non-Michigan Convictions

767.    Determining whether a person with a non-Michigan conviction[3] must register in Michigan, and if so, at what tier level and subject to what requirements, requires a multi-step legal analysis.

768.    SORA does not delegate authority to the Michigan State Police (MSP) to make determinations about which individuals with non-Michigan convictions

---

[2]  This language appears in the definitions for Tier I, Tier II, and Tier III offenses. In each case, after a list of Michigan offenses that constitute a registrable offense in that tier, there is an additional subsection that includes "[a]n offense substantially similar to an offense described in subparagraphs [reference to Michigan offenses cited above] under a law of the United States that is specifically enumerated in 42 USC 16911, under a law of any state or any country, or under tribal or military law."

[3] For brevity, the term "conviction" is used hereafter to refer to both convictions and juvenile adjudications.

must register, or what tier level or requirements should apply.

769.   However, in practice the MSP makes unilateral decisions about whether someone with a non-Michigan conviction is subject to registration, and if so, what tier level and requirements apply.

770.   The MSP has promulgated no published rules or procedures for determining whether people with non-Michigan convictions must register, and if so, what tier level and requirements apply.

771.   In discovery, Plaintiffs obtained flowcharts that are used internally by the MSP SOR Unit staff to determine whether and at what tier level registrants with non-Michigan convictions must register. *See* Ex. 23, MSP Flowcharts.[4]

772.   The chart below shows how the MSP makes registration determinations for those with non-Michigan adult convictions.

---

[4] The numbering of the exhibits picks up where the number of exhibits for the original complaint left off.



**OUT OF STATE ADULT CONVICTIONS**
Version 1: 07/29/2022

*If the Crime Code is not listed or tiered in the PACC Code Table, consult with an analyst before moving to the next step.

773. The next chart shows how the MSP makes registration determinations for those with out-of-state juvenile adjudications.

**OUT OF STATE JUVENILE ADJUDICATIONS**



MSP-0000724

ʽʽIf the Crime Code is not listed or tiered in the PACC Code Table, consult with an analyst before moving to the next step.

774.   As shown in the flow charts above, determining a person's registration requirements in Michigan first requires a determination of whether the foreign offense is comparable ("substantially similar") to a Michigan conviction, and if so, to which Michigan conviction.

775.   Adjudications under Michigan's youthful diversion statute and convictions that have been set aside do not result in registration. M.C.L. § 28.722(a)(i)-(ii). Accordingly, a "substantial similarity" determination can also require determining whether a youthful diversion statute or expungement statute in another jurisdiction

6

is comparable Michigan's youthful diversion and set aside statutes. *See* Ex. 24, MSP Emails Discussing Registration for Non-Michigan Convictions; Ex. 25, Morris Dep. at 148.

776.   Registration decisions for people with non-Michigan convictions can also require a determination of whether the person must register in the convicting jurisdiction, and if so, what that jurisdiction requires with respect to the frequency of reporting, tier level, duration of registration requirements, and publication of registry information.

777.   Front-line staff in the MSP Sex Offenders Registration (SOR) Unit decide if people with non-Michigan offenses must register in Michigan, and what their tier level and registration requirements will be, using the flow charts above.

778.   The MSP SOR Unit also relies on a spreadsheet of non-Michigan offenses (PACC Code Table) which lists the tier level assigned to various non-Michigan offenses. The spreadsheet has a column for the "comparable MI code," but that column is almost entirely blank. *See* Ex. 26, PACC Code Table.

779.   If the non-Michigan offense has not been listed or tiered in the spread-sheet, the frontline staff are instructed to consult an analyst.

780.   Upon information and belief, no staff member in the MSP SOR Unit, including the analysts, has a law degree.

7

781. MSP SOR Unit staff sometimes consult with the MSP Legal Department to try to determine whether people with non-Michigan offenses must register, and if so, at which tier and subject to what requirements. *See* Ex. 24, MSP Emails Discussing Registration for Non-Michigan Convictions.

782. Upon information and belief, the MSP, including its Legal Department, does not have attorneys with bar admissions in all 50 states, or with expertise in the sex offender registration laws of all 50 states.

783. Within the MSP, staff do not always agree about whether a person with an out-of-state offense must register in Michigan, or what a person's registration requirements should be.

### The Michigan State Police's Unreviewable Decisions on Registration Requirements for People with Non-Michigan Offenses

784. SORA does not define what it means for an offense to be "substantially similar" to a registrable Michigan conviction.

785. Under SORA, whether a person's non-Michigan offense is "substantially similar" to a Michigan offense can determine whether a person must register, and—if they must register—their tier level, their frequency of reporting, the duration of their registration requirements, and whether their registry status is public or non-public.

786.   The question of whether a non-Michigan offense is "substantially similar" to a Michigan offense requires a comparison of the elements of the non-Michigan offense and the elements of the purportedly similar Michigan offense.

787.   Determining the elements of an offense and comparing the elements of offenses across jurisdictions is complicated. *See*, *e.g. Doe v. Pryor*, 61 F. Supp.2d 1224, 1233 (M.D. Ala. 1999) (noting that simply identifying the elements of a crime "can vex even the most competent and experienced jurists," and that determining whether the elements of two crimes compare may "call for complicated judgments"); *Meredith v. Stein*, 355 F. Supp. 3d 355, 365 (E.D.N.C. 2018) ("The substantial similarity determination [between in-state and out-of-state sex offenses] is a complicated one.").[5]

788.   A non-Michigan offense may be similar to several different Michigan offenses, some of which require registration and some of which do not.

---

[5] *See also State Department of Public Safety v. Doe*, 425 P. 3d 115, 121-22 (Alaska 2018) (where Alaska statute prohibited attempted sexual abuse through contact, and Washington statute prohibited attempted sexual abuse through either communication or contact, latter is "significantly broader than" and therefore "not similar" to former); *Texas Department of Public Safety v. Anonymous Adult Texas Resident*, 382 S.W. 3d 531, 534- 35 (Ct. App. Tex. 2012) (although elements of two statutes are "substantially similar," some conduct criminalized under Oregon statute was not illegal in Texas; therefore not similar enough to require registration); *Texas Department of Public Safety v. Seamens*, 2021 WL 3743824 *2-3 (Ct. App. Tex., Aug. 25, 2021) (where Kansas statute criminalized touching of any part of victim's body, and Texas statute criminalized touching only certain parts of victim's body, former prohibits more conduct and is therefore not sufficiently similar to latter).

789.   A non-Michigan offense may be similar to several different Michigan offenses, where the various Michigan offenses could result in different registration requirements and different tier assignments.

790.   Courts considering how out-of-jurisdiction offenses should be categorized for purposes of sex offender registration statutes have repeatedly held that such comparisons should be based on a "categorical approach." Under the "categorical approach," courts consider only the elements of the crime, rather than the particular facts of the case. *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). The Sixth Circuit applies the categorical approach when making determinations about whether an out-of-jurisdiction offense matches an in-jurisdiction offense for the purpose of sex offender registration. *United States v. Barcus*, 892 F.3d 228, 231-32 (6th Cir. 2018) (applying the categorical approach to determine whether a state sex conviction was substantially similar to a federal offense for the purpose of tier classification). *See also United States v. Morales*, 801 F.3d 1, 6 (1st Cir. 2015) (applying categorical approach); *Grijalva Martinez v. Att'y Gen. of United States*, 978 F.3d 860, 865 (3rd Cir. 2020) (same); *United States v. Berry*, 814  F.3d 192, 196 (4th Cir. 2016) (same); *United States v. Montgomery*, 966 F.3d 335, 338-39 (5th Cir. 2020) (same); *United States v. Walker*, 931 F.3d 576, 579 (7th Cir. 2019) (same); *United States v. White*,

782 F.3d 1118, 1130–35 (10th Cir. 2015) (same); *United States v. Vineyard*, 945 F.3d 1164, 1170 (11th Cir. 2019) (same).[6]

791.   The MSP, however, does not look only at the elements of out-of-jurisdiction offenses in making determinations of "substantial similarity." Rather, the MSP also considers unproven allegations about offense conduct, such as allegations in police reports or in charges not resulting in conviction. Ex. 24, MSP Emails Discussing Registration for Non-Michigan Convictions.

### People with Non-Michigan Offenses Are Registered Under the Harsher of the Michigan or Non-Michigan Registration Scheme

792.   As the flowcharts above show, if the foreign conviction results in a less severe registration status in the foreign jurisdiction than in Michigan, then Defendants say that Michigan's harsher rules govern. But if Michigan would apply a less severe registration status to the same offense, then Defendants say the foreign jurisdiction's harsher rules govern. In short, out-of-staters lose either way: they get whichever set of rules is harsher.

---

[6] Likewise, the Model Penal Code's recent revision, which provides guidelines for determining the similarity of out-of-state sex offense convictions, defines a "comparable" offense as one in which "the elements of the out-of-state offense are no broader than the elements of the registrable offense. When, regardless of the conduct underlying the out-of-state conviction, the out-of-state offense can be committed by conduct that is not sufficient to establish a registrable offense under this Article, the two offenses are not comparable." Model Penal Code Section 213.11A(2)(c) (Tent. Draft No. 6, approved May 2022), pp. 549-52.

765.   If a person's offense would not require registration in Michigan, but the offense requires registration in the convicting jurisdiction, the person is required to register in Michigan.

766.   For example, the MSP SOR Unit coordinator Narcissa Morris testified that a person with an indecent exposure conviction (which does not require registration in Michigan absent a minor victim) would be required to register in Michigan if required to register in the convicting jurisdiction. Ex. 25, Morris Dep., at 142.

767.   Similarly, children with non-Michigan offenses who would not be subject to registration due to their age or nature of their offense if they had a Michigan disposition, are nevertheless subject to registration in Michigan if required to register in the state of conviction.

768.   Ms. Morris testified that although Michigan does not require children under the age of 14 to register if adjudicated in Michigan, an eight-year-old with an out-of-state disposition would have to register in Michigan if registration is required in the adjudicating state.[7] Ex. 25, Morris Dep. at 145.

---

[7] Once a person is classified as having to register in Michigan because of another jurisdiction's registration requirements, the MSP does not update the Michigan registration requirements based on changes in the other jurisdiction's registration requirements. For example, if a foreign jurisdiction that previously required registration for eight-year-olds decided no longer to do so, an eight-year-old placed on Michigan's registry based on the prior registration requirements would not automatically be removed from the registry after the other state's law is amended.

769.   On the flip side, if the non-Michigan jurisdiction does **not** require registration, the MSP will still require the person to register if MSP the deems the foreign conviction to be "substantially similar" to a registrable offense in Michigan.

770.   Similarly, while a convicting state might only impose a short registration term for a particular offense, if the MSP decides that the offense is "substantially similar" to a Michigan offense that has a longer registration period, the MSP will impose the harsher Michigan requirements.

771.   In addition, the fact that MSP does not use the categorical approach when comparing Michigan and non-Michigan convictions results in unequal and harsher treatment of people with non-Michigan convictions. SORA spells out which Michigan convictions—each of which is defined by specific elements—result in registration, as well as the length, frequency, and public/private nature of registration. A person with a non-Michigan conviction could be convicted of an offense with the exact same elements as a Michigan offense, but be subject to harsher treatment (e.g., registration rather than non-registration, a higher tier level, public rather than non-public registry) because the MSP looks at unproven allegations, not simply at the elements of the offense.

772.   Discovery documents highlight this unequal treatment. For example, a Florida man convicted of violating Florida Code § 934.215 (unlawful use of a two-way communication device, an offense which **has no sexual element**), was required

13

to register in Michigan based on the MSP's determination that the underlying alleged offense conduct was similar to M.C.L. § 750.145d(1)(a) (an offense that **has a sexual element**). *See* Ex. 24, MSP Emails Discussing Registration for Non-Michigan Convictions; *see also* Ex. 27, Chartier Expert Decl. (describing client who, based on a plea agreement designed to avoid sex offender registration, pled to a non-registrable federal offense, but whom the MSP then required to register for life based on the MSP's unilateral conclusion that the offense was substantially similar to a registrable Michigan offense).

773.    In sum, as these examples show, a person with a non-Michigan conviction will always be subject to the harsher regime, whether it is the convicting jurisdiction's or Michigan's.

### Failure to Provide Pre-Deprivation Notice, Meaningful Notice, or Any Opportunity to Be Heard

765.    People with non-Michigan convictions do not get notice or any opportunity to be heard before the MSP decides whether the person must register as a sex offender in Michigan, and if so, what tier level and registration requirements apply.

766.    After the MSP decides that a person with a non-Michigan conviction must register, the MSP procedures provide that the person should be sent notice. *See* Ex. 28, SOR Op. Proc. 315, at 738-39.

14

767. The notice says that the person is required to register, what the assigned tier level is, how long the person must register (e.g., lifetime), and how frequently the person must register. The notice does not state if the person's registry status will be made public. See Ex. 29, Tier Notification Letters.

768. The notice says nothing about how the decision was made, or the legal or factual bases for the decision.

769. The notice does not say whether the decision was based on the person's obligation to register elsewhere or because the offense is "substantially similar" to a Michigan offense.

770. The notice does not include any information about which (if any) Michigan offense the MSP has decided is "substantially similar" to the non-Michigan offense.

771. The notice provides no information about steps people can take if they dispute the MSP's determination that they are subject to registration in Michigan, or dispute the assigned tier level or registration requirements.

772. There is no appeal process or procedure by which people with non-Michigan offenses can contest the MSP's determinations about whether they are subject to registration in Michigan or what tier level and registration requirements apply.

773.   There is no procedure for judicial or appellate review of the MSP's registration determinations for people with out-of-state convictions.

### Mary Doe and John Doe G

774.   The cases of Mary Doe and John Doe G illustrate the problem.

775.   **Mary Doe:**  As set out in the initial complaint, ECF 1, ¶¶ 67-83, when Mary Doe was convicted in 2003 in Ohio, she was determined based on individual review to be in the lowest risk category, and was required to register for 10 years.

774.   In Michigan, Ms. Doe is classified as a Tier III registrant who must comply with SORA for life.

775.   Ms. Doe would not be subject to sex offender registration in Ohio because she has completed her initial ten-year registration term. *See* Compl., ECF 1, ¶¶ 72-74 (explaining Ohio registry law).

776.   Because Ms. Doe is not subject to registration in Ohio, she is not subject to registration under M.C.L. § 28.723(1)(d) (requiring people to register in Michigan if they are required to register in another jurisdiction).

777.   Thus, unless Ms. Doe's offense is "substantially similar" to a registrable Michigan offense, she is not required to register in Michigan.

778.   There is no Michigan offense that has the exact same elements as Ohio R.C. 2907.04(A) and (B)(3).

16

779.   Plaintiffs submit that there is no Michigan offense that is "**substantially** **similar**" to Ohio R.C. 2907.04(A) and (B)(3).[8]

780.   The Michigan offense that looks most like Ohio R.C. 2907.04(A) and (B)(3)—though Plaintiffs contend it is still not substantially similar—is criminal sexual conduct in the fourth degree (CSC-IV), M.C.L. § 750.520e(a).[9]

781.   CSC-IV is a Tier II offense resulting in 25-year registration. M.C.L. § 28.722(t)(x).

782.   The MSP does not consider Ms. Doe's offense to be "substantially similar" to the Tier II offense of CSC-IV. Instead, the MSP classified Ms. Doe as a Tier III lifetime registrant because it deems her Ohio offense "substantially similar" to some undisclosed Michigan offense that requires lifetime registration.

---

[8] Ohio R.C. 2907.04(A) provides: "No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offense, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offense is reckless in that regard." Ohio R.C. 2907.04(B) provides that a violation of subsection (A) is "unlawful sexual conduct with a minor," and provides for gradations of offenses depending on the age difference and prior convictions. Ms. Roe was convicted under subsection (B)(3), which applies where there is an age difference of ten years or more.

[9] CSC-IV is committed when the actor engages in sexual contact with another person who is between the ages of 13-16, and the actor is 5 or more years older than that person. M.C.L. § 750.520e(a).

783. The MSP never told Ms. Doe what Michigan offense it deems "substantially similar" to her out-of-state offense such that she is required to register for life as a Tier III offender.

784. Plaintiffs do not know what Michigan offense or offenses Defendants consider "substantially similar" to Ms. Doe's Ohio conviction.

785. **John Doe G**: As set out in the initial complaint, ECF 1, ¶¶ 139-47, when John Doe G was convicted in Nebraska in 2008, he was informed that he would be subject to sex offender registration for ten years. More than ten years have elapsed since his conviction.

786. In Michigan, Mr. Doe G is classified as a Tier III registrant who must comply with SORA for life.

787. Class counsel, even after consulting with a Nebraska criminal defense attorney, have been unable to determine with any certainty what Mr. Doe G's registration obligations would be under current Nebraska law.

788. The MSP never informed Mr. Doe G whether it classified him as a Tier III registrant because of registration obligations in Nebraska, or whether because it deemed his Nebraska conviction "substantially similar" to a registrable Michigan offense.

789. There is no Michigan offense that has the exact same elements as Nebraska Rev. Statute 28-320.01(3), the offense for which Doe G was convicted.

18

790.    Plaintiffs contend that there is no Michigan offense that is "**substantially** similar" to Nebraska Rev. Statute 28-320.01(3).

791.    A person violates Nebraska Rev. Statute 28-320.01(3) by subjecting a person 14 years of age or younger to sexual contact where the actor is at least 19 years of age, and that actor does not cause serious personal injury to the victim.

792.    The Michigan offense that appears to be most similar to Nebraska Rev. Statute 28-320.01(3)—though Plaintiffs contend it is still not substantially similar— is criminal sexual conduct in the fourth degree, M.C.L. § 750.520e(a).

793.    CSC-IV is a Tier II offense. However, the MSP has classified Mr. Doe G as a Tier III lifetime registrant.

794.    The MSP has not disclosed to Mr. Doe G what, if any, Michigan Tier III offense it deems "substantially similar" to his Nebraska offense, or whether instead his Tier III classification is based on the MSP's understanding of what Mr. Doe G's registration requirements would be under Nebraska law.

795.    Plaintiffs do not know what Michigan offenses, if any, the MSP considers "substantially similar" to Mr. Doe G's Nebraska conviction.

## CLASS ALLEGATIONS

796.    Plaintiffs seek certification of a "non-Michigan offense subclass," defined as members of the primary class who, according to Defendants, are or will

be subject to sex offender registration under SORA 2021 for a conviction or adjudication from a jurisdiction other than Michigan.

797.   Class data provided by Defendants shows that there are more than 5,700 class members—or about 11 percent of the class—who have a non-Michigan registrable offense. Due to the size of the subclass, joinder is impracticable.

798.   There are questions of law and fact common to the proposed subclass. Those common questions include, but are not limited to:

a.   What processes and procedures do Defendants use to determine whether people with non-Michigan convictions must register, and to determine what tier levels and registration requirements apply?

b.   Whether procedural due process bars Defendants from subjecting people with non-Michigan convictions to SORA 2021 without meaningful pre-deprivation notice or any opportunity to be heard?

c.   Whether imposing harsher registration requirements on people with out-of-state convictions than on people with Michigan convictions violates the Due Process, Equal Protection, and Privileges and Immunities Clauses of the Fourteenth Amendment, and Article IV, §2 of the Constitution?

799.   The claims asserted by named Plaintiffs Mary Doe and John Doe G are typical of the claims of the non-Michigan-offense subclass members whom they seek to represent. The same common course of conduct by Defendants gave rise to those Plaintiffs' and the subclass members' claims.

800.   Plaintiffs Mary Doe and John Doe G will fairly and adequately protect the interests of the subclass members. Plaintiffs' interests are coincident with, and not antagonistic to, those of the subclass members.

## CLAIMS FOR RELIEF

### COUNT XI: Sex Offender Registration of People with Non-Michigan Convictions and Adjudications (Due Process, Equal Protection, Privilege & Immunities) (Non-Michigan Offense Subclass)

801.   Ms. Doe, Mr. Doe G, and members of the non-Michigan offense subclass were given no notice before Defendants determined that they are subject to sex offender registration in Michigan, and unilaterally decided what tier level and registration requirements should apply.

802.   The notices Defendants used after determining the registration requirements for people with non-Michigan offenses were not meaningful or constitutionally adequate.

803.   Ms. Doe, Mr. Doe G, and members of the non-Michigan offense subclass were given no pre-deprivation notice, no meaningful post-deprivation notice, and no opportunity to be heard on Defendants' decisions that they are subject to sex offender registration in Michigan, nor on Defendants' decisions regarding what tier level and registration requirements apply.

804.   Defendants' failure to provide pre-deprivation notice, meaningful post-deprivation notice, or any opportunity to be heard violates Ms. Doe's, Mr. Doe G's, and the non-Michigan offense subclass' right to procedural due process in violation of the Fourteenth Amendment to the United States Constitution. *See*, *e.g.*, *Meredith*, 355 F. Supp. 3d at 365; *Pryor*, 61 F. Supp. 2d at 1233.

805.   Defendants, by imposing the harsher of either Michigan's or a foreign jurisdiction's registration requirements, and by failing to use the categorical approach in making "substantial similarity" determinations, treat Ms. Doe, Mr. Doe G, and members of the non-Michigan offense subclass worse than people with Michigan convictions.

806.   By imposing harsher registration requirements on people with non-Michigan convictions, Defendants are violating the Ms. Doe's, Mr. Doe G's and the non-Michigan offense subclass' right to equal treatment under the law in violation of the Equal Protection Clause of the Fourteenth Amendment. *See*, *e.g.*, *Doe v. Pennsylvania Bd of Probation and Parole*, 513 F.3d 95 (3d Cir. 2008); *Hendricks v. Jones ex rel. State ex rel. Oklahoma Dep't of Corr.*, 349 P.3d 531 (Ok. 2013); *ACLU of NM v. City of Albuquerque*, 137 P.3d 1215 (N.M. Ct. App. 2006).

807.   By imposing harsher registration requirements on people with non-Michigan convictions, Defendants are also violating Ms. Doe's, Mr. Doe G's, and the  non-Michigan offense subclass' right to travel in violation of the Due Process

Clause of the Fourteenth Amendment to the United States Constitution, and their right to be treated like other citizens of Michigan, and to be accorded the same privileges and immunities under Article IV, §2 of the Constitution and the Privileges and Immunities Clause of the Fourteenth Amendment to the Constitution. *See Saenz v. Roe*, 526 U.S. 489, 500-504 (1999); *State v. Dickerson*, 142 Idaho 514, 129 P.3d 1263 (Ct. App. 2006).

808.   Mary Doe and John Doe G bring this claim for themselves and on behalf of the non-Michigan offense subclass.

## REQUEST FOR RELIEF

809.   Wherefore, Plaintiffs Mary Doe and John Doe G, for themselves and for the putative subclass members whom they wish to represent, ask the Court to grant the following relief, in addition to the relief previously requested:

O. Certify a "non-Michigan offense subclass," defined as members of the primary class who, according to Defendants, are or will be subject to sex offender registration under SORA 2021 for a conviction or adjudication from a jurisdiction other than Michigan; and name Mary Doe and John Doe G as representatives of the subclass.[10]

P. Declare, pursuant to 28 U.S.C. §§ 2201 and 2202, (1) that determining the sex offender registration requirements for Mary Doe, Doe G, and the non-Michigan offense subclass absent pre-deprivation notice and a pre-deprivation opportunity to be heard violates the Due Process Clause of the Fourteenth Amendment, and declare what process is due in order to impose sex offender registration requirements on them, and (2) that imposing

---

[10] The lettering for the requested reliefs resumes from where it left off in the original complaint.

harsher sex offender registration requirements on Mary Doe, Doe G, and the non-Michigan offense subclass than are imposed on people with Michigan convictions violates the Due Process Clause, Equal Protection Clause, and Privileges and Immunities Clause of the Fourteenth Amendment, and Article IV, §2 of the U.S. Constitution; and permanently enjoin Defendants (1) from requiring Mary Doe, Doe G, and the non-Michigan offense subclass to register as sex offenders unless they are afforded pre-deprivation notice, a pre-deprivation opportunity to be heard, and further procedural safeguards that the Court determines are due; and (2) from imposing registration requirements on Mary Doe, Doe G, and the non-Michigan offense subclass that are greater than those imposed on people with equivalent Michigan convictions.

Q. Grant the relief set out in Plaintiffs' original complaint, ECF 1, and such other relief as justice requires.

Respectfully submitted,

s/ Miriam Aukerman (P63165)
/s Dayja Tillman (P86526)
Attorneys for Plaintiffs
American Civil Liberties Union
 Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org

s/ Paul D. Reingold (P27594)
Cooperating Counsel, American Civil
 Liberties Union Fund of Michigan
Attorney for Plaintiffs
Univ. of Michigan Law School
802 Legal Research Building
801 Monroe Street
Ann Arbor, MI 48109-1215
(734) 355-0319 - pdr@umich.edu

s/ Daniel S. Korobkin (P72842)
s/ Syeda Davidson (P72801)
American Civil Liberties Union
 Fund of Michigan
Attorney for Plaintiffs
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6824
dkorobkin@aclumich.org

s/ Roshna Bala Keen (Ill. 6284469)
Loevy & Loevy
Attorney for Plaintiffs
Cooperating Counsel, American Civil
 Liberties Union Fund of Michigan
311 North Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 – roshna@loevy.com

Date: March 29, 2023