# Exhibit 25:

Morris Deposition Transcript, pages 140-159



# TRI-COUNTY COURT REPORTERS INC.

(248)608-9250 Fax (844)270-7115
www.tri-countycourtreporters.com
depos@tricountyreporters.com

Transcript of the Testimony of
**Morris, Narcisa**

**Date:** January 25, 2023
**Volume:**

**Case:** JOHN DOES A, et al. v. GRETCHEN WHITMER, et al.

Printed On: February 10, 2023

Morris, Narcisa
1/25/2023

**Page 137**

1    they move interstate, correct?
2    **A.** Yes.
3    **Q.** How do they fulfill that registration obligation?
4    **A.** In our state, we have state statute to support that
5    registration requirement.
6    **Q.** So they have to register under the state registration
7    system, correct?
8    **A.** Correct.
9    **Q.** There's not like a federal registry that they can
10    register in?
11    **A.** Not to my knowledge, no.
12    **Q.** Okay. I saw some references to the NSOR database,
13    what is that?
14    **A.** I'm sorry, I need more content.
15    **Q.** I've seen some references in the documents to a
16    National Sex Offender Registry database. Are you
17    familiar with what that is?
18    **A.** Can you expand more? Was there more with that? It's
19    not bringing anything to my recall.
20    **Q.** Okay. I'll maybe on a break see if I can find a
21    document.
22    **A.** Okay.
23    **Q.** So if somebody is removed from the registry in
24    Michigan, maybe there's a court order that they get
25    removed, do you communicate that in any way to the

**Page 138**

1    federal government?
2    **A.** No, not to my knowledge.
3    **Q.** Would they be removed from the national registry?
4    **A.** Yes.
5    **Q.** How does that happen?
6    **A.** It's automatic, behind the scenes.
7    **Q.** So let's take after the 2020 law changes, there were
8    individuals who were under the Holmes Youthful Trainee
9    Act. Are you familiar with the Holmes Youthful
10    Trainee Act?
11    **A.** Yes.
12    **Q.** And some of those individuals came off the registry
13    after the 2021 law changes, correct?
14    **A.** I wasn't a participant, so.
15    **Q.** You weren't personally involved in removing
16    individuals?
17    **A.** Correct. I know something happened, I just don't know
18    the reason or the details around it.
19    **Q.** Okay. Sure. Are you -- did you -- but you're aware
20    that there were people that were removed as a result
21    of the 2021 law changes around HYTA?
22    **A.** I know that there were people removed regarding HYTA.
23    **Q.** Okay. Would those individuals then also come off the
24    federal registry?
25    **A.** They would come -- they -- if they come off our

**Page 139**

1    registry, they come off the public's -- National
2    Public Sex Offender Registry.
3    **Q.** Okay. Let's say that that person still has -- a
4    person who's under the Holmes Youthful Trainee Act
5    still has an obligation to register under federal law,
6    how would the person do that?
7    **A.** I don't know.
8            MR. JAMISON: Objection, lack of
9    foundation.
10    BY MS. AUKERMAN:
11    **Q.** So you don't know how a person could register if
12    they're not on the federal registry -- excuse me.
13            If someone is removed from Michigan's
14    registry, you're not aware of a way for them to
15    register, correct?
16    **A.** Correct.
17    **Q.** What about -- let's talk about the pre-2011
18    registrants for a second. So one of the changes that
19    was made in March of 2021 was that the pre-2011
20    registrants don't have to report internet identifiers,
21    is that correct?
22    **A.** Correct.
23    **Q.** So if a person were required to report that under
24    federal law, how could they report that?
25    **A.** I don't know.

**Page 140**

1    **Q.** Let's talk about out-of-state offenses, which is kind
2    of confusing, at least to me. I'm hoping you can help
3    me understand it. Can you explain how you determine
4    the registration requirements for people with
5    out-of-state offenses?
6    **A.** If it's an out-of-state offense that we've encountered
7    before, legal has already provided guidance on what
8    the tier should be, they're already in our system. If
9    it's something we haven't encountered before, we pass
10    that through legal for a case by case review.
11    **Q.** Okay.
12            MS. AUKERMAN: So let's take a look at an
13    exhibit here. This is Bates 723, Exhibit 9.
14            MARKED FOR IDENTIFICATION:
15            DEPOSITION EXHIBIT 9
16            1:23 p.m.
17    BY MS. AUKERMAN:
18    **Q.** Can you tell me what this is?
19    **A.** Out-of-state adult conviction flowchart.
20    **Q.** So can you walk me through how this works.
21    **A.** It's like following the prompts. You answer the
22    questions to know where you go next for an
23    out-of-state conviction -- an out-of-state offense.
24            Now these are our offenses that have
25    already been identified. However, there was a change

35 (Pages 137 to 140)

Morris, Narcisa
1/25/2023

| | Page 141 | | Page 142 |
|---|---|---|---|
| 1 | in policy applicability of when we use our duration | 1 | the -- if -- it doesn't matter if it's comparable to a |
| 2 | versus the state's duration because the language in | 2 | Michigan offense; if the convicting jurisdiction |
| 3 | statute.  And so, this helped us determine that. | 3 | requires registration, you have to register, correct? |
| 4 | Q.  Can you explain that.  I'm sorry, go ahead. | 4 | A.  Say that again. |
| 5 | A.  So there are -- | 5 | Q.  If the convicting jurisdiction requires registration, |
| 6 | Q.  Go ahead. | 6 | the person has to register in Michigan even if it's |
| 7 | A.  So there is -- it -- this essentially helps us | 7 | not comparable to a Michigan conviction? |
| 8 | determine whether we're using our state duration based | 8 | A.  So one way or the other, yeah, if their jurisdiction |
| 9 | on that conviction or if -- that similar conviction or | 9 | requires them to register, they would have to |
| 10 | if it would have been their state duration.  And | 10 | register. |
| 11 | again, these are for convictions that have already | 11 | Q.  So, for example, if you had indecent exposure, that's |
| 12 | been identified in the system. | 12 | not a registrable offense in Michigan.  If it's a |
| 13 | Q.  Okay.  So let me make sure, because it's a -- to me | 13 | registrable offense in, I don't know, Georgia, the |
| 14 | it's a confusing flowchart -- make sure I'm | 14 | person would still have to register in Michigan? |
| 15 | understanding you correctly. | 15 | A.  Correct. |
| 16 | So if someone has an offense that's not | 16 | Q.  Okay.  Okay.  So let's say the convicting -- the |
| 17 | comparable to Michigan registration statute, so we're | 17 | offense -- excuse me. |
| 18 | here on this first box, go no, okay.  They still have | 18 | Let's say -- well, let's say the convicting |
| 19 | to register if the state requires -- if their state of | 19 | state doesn't require registration -- a comparable -- |
| 20 | conviction requires registration, correct? | 20 | I found this chart very confusing. |
| 21 | A.  If their state of conviction requires registration, | 21 | If it's comparable to a Michigan adult |
| 22 | yes. | 22 | conviction, but the state -- convicting state doesn't |
| 23 | Q.  So you could have -- if the -- if the state of | 23 | require registration, would the person have to |
| 24 | registration -- it doesn't matter if comparable to a | 24 | register? |
| 25 | Michigan offense if the state of registration -- if | 25 | A.  Say that again, I'm sorry. |

| | Page 143 | | Page 144 |
|---|---|---|---|
| 1 | Q.  So let's take an offense that the convicting state | 1 | A.  Correct. |
| 2 | doesn't require registration.  But if comparable to a | 2 | Q.  While you were manager? |
| 3 | Michigan offense, as I read this looking at this top | 3 | A.  Correct. |
| 4 | line along the flowchart, it looks like they would -- | 4 | Q.  Was there a memo or directive or written guidance of |
| 5 | they could still have to register in Michigan? | 5 | any kind about that durational change? |
| 6 | A.  They could, yes. | 6 | A.  Received communication, I believe, I don't know if it |
| 7 | Q.  Okay.  And so, let's take someone who is -- who has -- | 7 | was formal or it was just a change in process of what |
| 8 | that's an offense that's comparable to a Michigan | 8 | we've been doing.  And so, then we were told we were |
| 9 | conviction, but it's not a tier III offense.  It's | 9 | supposed to do it this way.  But it was new to us so |
| 10 | tier I or tier II offense.  As I read this chart, the | 10 | we needed to somehow write it down to keep track of |
| 11 | registration duration would be whichever is longer, | 11 | it. |
| 12 | the convicting state or Michigan, is that correct? | 12 | Q.  Who made that decision to change the durational |
| 13 | A.  Yes. | 13 | requirements? |
| 14 | Q.  Let's go on to the next page for out-of-state juvenile | 14 | A.  MSP legal. |
| 15 | adjudications.  Can you sort of summarize how juvenile | 15 | Q.  Okay. |
| 16 | adjudications are handled for out of state? | 16 | MS. AUKERMAN:  We're going to want whatever |
| 17 | A.  Let me think about this for a minute.  So again, this | 17 | communications or directive was provided to the staff. |
| 18 | is trying to figure out -- because we had that change | 18 | BY MS. AUKERMAN: |
| 19 | where we could go on either duration.  This was | 19 | Q.  If I'm understanding this chart -- this flowchart |
| 20 | helping us identify the duration, when to use our | 20 | correctly, if it's not comparable to a Michigan |
| 21 | duration requirements or the other state's. | 21 | juvenile adjudication, the person still has to |
| 22 | Q.  When you mentioned we had that change about duration, | 22 | register if the adjudicating state requires |
| 23 | when was that? | 23 | registration, correct? |
| 24 | A.  I don't know off the top of my head. | 24 | A.  Correct. |
| 25 | Q.  Was it while you were in the unit? | 25 | Q.  If the adjudicating state requires registration of, I |

36 (Pages 141 to 144)

Morris, Narcisa
1/25/2023

Page 145

1  don't know, some offense that we don't consider an
2  offense here, a juvenile would still -- if the
3  juvenile has to register in the other state, they'd
4  still have to register in Michigan?
5  A.  Correct.
6  Q.  Okay.  If it is comparable to a Michigan juvenile
7  adjudication and in Michigan -- a Michigan juvenile
8  only registers if they're over fourteen, correct?
9  A.  Correct.
10  Q.  But if the adjudicating state requires registration
11  and the person is under thirteen, the person would
12  still be required to register in Michigan, correct?
13  A.  Correct.
14  Q.  So if you had an eight-year-old that was required to
15  register in Georgia for juvenile adjudication, they
16  would have to register in Michigan?
17  A.  Correct.  That's how I understand it.
18  Q.  And in Michigan only tier III offenses require
19  registration for juveniles, correct?
20  A.  Correct.
21  Q.  Okay.  But if the -- if the offense is not a tier III,
22  if it's a tier I or tier II, but the adjudicating
23  state requires registration, the person would still
24  have to register in Michigan?
25  A.  Correct.  They may still have to register in Michigan,

Page 146

1  correct.
2  Q.  So at the bottom of these charts it says consult with
3  an -- if the code is not listed, consult with an
4  analyst.  Who gets consulted?
5  A.  I'm sorry?
6  Q.  It says consult with an analyst.  Who's the analyst
7  that's being consulted here?
8  A.  Our analysts, one of our four analysts.
9  Q.  Okay.  We received a bunch of documents that were
10  communications with MSP legal about trying to figure
11  out whether certain offenses were comparable to
12  Michigan offenses.  When is legal brought in to those
13  decisions?
14  A.  If it's an offense we've never encountered before, so
15  it's not already captured, then we would move that on
16  up the chain of -- to MSP legal.  Or if for some
17  reason it just isn't making sense to us or we just
18  don't feel comfortable or we feel there's something
19  questionable about the situation, then we would pass
20  that to legal.
21  Q.  For offenses you haven't encountered before, do
22  different analysts have -- sometimes have different
23  perspectives on what the comparable Michigan offense
24  is?
25        MR. JAMISON:  Objection, lack of

Page 147

1  foundation.
2  BY MS. AUKERMAN:
3  Q.  You can answer.
4  A.  Are you -- will you ask the question again.
5  Q.  So -- yeah.  So when you encounter an offense that you
6  haven't come across before and you're trying to figure
7  out what -- whether it's comparable to a Michigan
8  offense, do different analysts sometimes come to
9  different conclusions about whether it's comparable to
10  a Michigan offense?
11  A.  No.  Because they don't do that.  They're just looking
12  to see if there isn't something that already -- if
13  it's a new one, they go through legal.  We don't make
14  those decisions at this level.  These are ones that we
15  already had in the system that now we had to apply the
16  new process to.
17  Q.  Let me make sure I understand this.  This chart is --
18  this isn't for -- this only relates to ones that are
19  already in the flowchart?
20  A.  Correct.
21  Q.  Okay.  So then you would say look, it's --
22  A.  It's already been identified.
23  Q.  Uh-huh.  And then you would go through the flowchart.
24  Okay.  Correct?  That's when you'd go through the
25  flowchart, correct?

Page 148

1  A.  Correct.
2  Q.  Who makes the decision about whether an out-of-state
3  process is equivalent to a juvenile adjudication?
4  A.  I'm sorry, can you ask the question again.
5  Q.  So different states have different ways of treating
6  juveniles of -- different deferral programs, things
7  like that.
8        Who makes the decision that say, you know,
9  a Georgia program is comparable to the Holmes Youthful
10  Trainee Act?
11  A.  If it -- it's not clearly communicated from that other
12  state, we don't -- we would send it to legal to
13  review.  We don't determine that.
14  Q.  So what kind of documents do you get in order for
15  legal to make those decisions?
16  A.  We try to ascertain any conviction documentation,
17  police reports.
18  Q.  Why do you get the police reports?
19  A.  Just sometimes there's age -- age is captured for
20  victim; that is -- doesn't always come across in some
21  of the convicting documentation.
22  Q.  Is the comparison based on -- the comparison for the
23  out-of-state offense, is that based on the -- what the
24  person was convicted of?  Or what the -- what the
25  allegations in the documents are?

37 (Pages 145 to 148)

Morris, Narcisa
1/25/2023

| | |
|---|---|
| 1    **A.** I don't -- I can't answer that. I don't know. | 1    table in MSOR. |
| 2       MS. AUKERMAN: Let's look at another | 2    **Q.** So if someone comes in with Arkansas eleven forty-one |
| 3    document here. This is going to be the PACC code | 3    four twenty offense, if that's in MSOR, that would |
| 4    table. This is Exhibit 10. | 4    automatically populate? |
| 5       MARKED FOR IDENTIFICATION: | 5    **A.** If it's in here, it's in MSOR. These are ones we've |
| 6       DEPOSITION EXHIBIT 10 | 6    already encountered. We've already determined whether |
| 7       1:38 p.m. | 7    it's published, their tier, you know, based on |
| 8    BY MS. AUKERMAN: | 8    whatever the criteria might be. |
| 9    **Q.** Do you recognize this document? | 9    **Q.** What does CRR mean? |
| 10   **A.** I don't see anything yet. | 10   **A.** That is a national -- the NCIC, that is a designation |
| 11   **Q.** I apologize. Can you see that now. Do you recognize | 11   within NCIC regarding the -- it being the type of sex |
| 12   this document? | 12   offense. |
| 13   **A.** Yes. | 13   **Q.** Okay. And then the next column here is tier level, |
| 14   **Q.** Okay. And can you explain how -- what this is -- is | 14   correct? |
| 15   -- let me stop. | 15   **A.** Correct. |
| 16      Can you tell us what this is? | 16   **Q.** How -- I see a bunch of these are blank. What does |
| 17   **A.** This is what populates our tier table in MSOR. | 17   that mean that they are blank? |
| 18   **Q.** When you say populates your tier table, what do you | 18   **A.** Is there anything to the right of it? |
| 19   mean by that? | 19   **Q.** No. |
| 20   **A.** The crime codes that are in MSOR, this is how we -- we | 20   **A.** I'm not sure. |
| 21   communicate them. We get information. Like if there | 21   **Q.** Okay. |
| 22   was a similar -- similar offense, then if we got | 22   **A.** I'm guessing because it needs to be evaluated |
| 23   information from legal saying that it was, we would | 23   dependent -- I'm guessing it would be something -- if |
| 24   fill this out. We would send it to our vendor. And | 24   we got one of those, we would have to give it to legal |
| 25   then the vendor would use this to add it to the tier | 25   to review. Because each time it could be |
| <div align="center">Page 149</div> | <div align="center">Page 150</div> |
| 1    circumstantial -- not circumstantial -- but it could | 1    **A.** Can you click the arrow, please, the filter. |
| 2    be circumstances that need to be reviewed by them. | 2    **Q.** I don't know that I can because I don't have the |
| 3    **Q.** So like for all these we have here starting on line | 3    passwords to go in. But you can kind of see that it's |
| 4    fifty-seven a whole bunch of Alabama offenses that | 4    blank. |
| 5    there's no tier level for. So those would not yet | 5    **A.** They're not all blank. |
| 6    have been reviewed by legal? | 6    **Q.** They're almost all blank. |
| 7    **A.** I'm saying they probably have been reviewed by legal, | 7    **A.** So right there, they should say yes. And then if it |
| 8    but because of the way the statute is written, it may | 8    was comparable to the code, I guess, I don't know. |
| 9    need to be something reviewed each time. It's not | 9    **Q.** Okay. |
| 10   something we can just say it's always going to be this | 10   **A.** It looks like it's been over the years used for |
| 11   or that. | 11   different reasons. |
| 12   **Q.** So what you're saying is there's some offenses where | 12   **Q.** Okay. And then I see that -- so but -- but most of |
| 13   you can't tell from the language of the statute | 13   these are blank whether or not they've been approved. |
| 14   whether or not a person is tier I, tier II, tier III, | 14   If we scroll down here, we can see on column R that |
| 15   and so they're going to have to be individually | 15   almost all of them are blank, correct? |
| 16   reviewed? | 16   **A.** I see that. |
| 17   **A.** That is my best guess. | 17   **Q.** Okay. And the comparable Michigan code, what is that |
| 18   **Q.** Okay. So then there's column O, it says publish | 18   column supposed to be for? |
| 19   single offense. What does that mean? | 19   **A.** I don't know that we've updated it from before to now. |
| 20   **A.** That they only have to have one offense and they're | 20   So I don't know what it means. |
| 21   published. | 21   **Q.** Okay. But you agree that most of these -- there's not |
| 22   **Q.** And if that's blank, what does that mean? | 22   a comparable Michigan code listed for most of these |
| 23   **A.** Again, it hasn't been determined. | 23   offenses? |
| 24   **Q.** Okay. And then there's a column here for approved by | 24   **A.** Correct. |
| 25   MSP legal. What does that mean? | 25   **Q.** Do you know if that's because there isn't a -- when we |
| <div align="center">Page 151</div> | <div align="center">Page 152</div> |

<div align="right">38 (Pages 149 to 152)</div>

Morris, Narcisa
1/25/2023

| | |
|---|---|
| 1 go back to the flowchart, right, whether or not | 1 Q. Okay. So but at some point there was a determination |
| 2 something is a comparable Michigan offense is the | 2 made that this D.C. twenty-two three oh nine |
| 3 first thing you have to figure out. | 3 offense is comparable to some Michigan offense that |
| 4     So the fact that these are blank, does that | 4 requires tier III registration, correct? |
| 5 mean that there's not a comparable Michigan offense? | 5 A. I know that it was designated as a tier III if the |
| 6 A. I don't know that. | 6 victim was one through twelve. |
| 7 Q. How would the analyst know whether there's a | 7 Q. I guess what I'm trying to get at is it seems like |
| 8 comparable Michigan offense if it's not marked in this | 8 whether or not something is comparable to a Michigan |
| 9 chart? | 9 offense is pretty foundational to how that person is |
| 10 A. They don't use this chart to do that. They use what's | 10 classified, correct? |
| 11 in MSOR. | 11     MR. JAMISON: Objection, vague. |
| 12 Q. Does MSOR have a field for comparable offense? | 12 BY MS. AUKERMAN: |
| 13 A. No. But whatever the tier is, is how we kind of | 13 Q. You can answer. |
| 14 figure it out. Obviously, if it's another state and | 14 A. I'm not sure of your question. |
| 15 they're not using tiers or something, we don't look at | 15 Q. Okay. Let's go back to the prior document. |
| 16 that. | 16     MR. JAMISON: Can we take five minutes. |
| 17 Q. So how do I -- how would I figure out what -- let's | 17 She's saying she needs a break. Is that okay? |
| 18 take -- I don't know. Here, let's just take -- D.C., | 18     MS. AUKERMAN: Yeah, that's fine. I'm |
| 19 second degree child abuse, tier III; how do I know | 19 trying to confirm that we're not communicating with |
| 20 what the comparable Michigan offense is? Where is | 20 the witness. |
| 21 that -- where's that kept? | 21     MR. JAMISON: Mariam, I'm not telling my |
| 22 A. We don't keep that. I don't know. We don't keep | 22 witness how to answer questions. |
| 23 that. | 23     MS. AUKERMAN: Okay. |
| 24 Q. Does anybody keep that? | 24     MR. JAMISON: I said that at the beginning |
| 25 A. Not that I'm aware of. | 25 of the deposition. If her and I want to communicate |
| Page 153 | Page 154 |

| | |
|---|---|
| 1 about whether or not she needs a break, that's totally | 1 Q. So you would -- the MDOC, if they want to know whether |
| 2 permissible. We'd like to take ten minute and we'll | 2 someone is a past registrant, you would make -- based |
| 3 reconvene at 2:00. | 3 on out-of-state conviction, you would make that |
| 4     MS. AUKERMAN: That's fine. | 4 predetermination, correct? |
| 5     MR. JAMISON: Do you have any idea how much | 5 A. Yeah. ICOTS is part of the MDOC. So that's what I'm |
| 6 longer you're going to need? | 6 referring to, yes. |
| 7     MS. AUKERMAN: I think we're going to need | 7 Q. Okay. |
| 8 the rest of the day. | 8 A. Because when they're having people transferring from |
| 9     MR. JAMISON: You're going to take the full | 9 other states. |
| 10 seven hours? | 10     MS. AUKERMAN: Let me share one more |
| 11     MS. AUKERMAN: Yes, I am, likely. We'll | 11 document here. This is one of the policy manuals. I |
| 12 see how it's -- let's off the record. | 12 believe we're on Exhibit 11. This is Bates 775. |
| 13     (Off the record 1:48 p.m.) | 13     MARKED FOR IDENTIFICATION: |
| 14     (Back on the record at 2:02 p.m.) | 14     DEPOSITION EXHIBIT 11 |
| 15 BY MS. AUKERMAN: | 15     2:03 p.m. |
| 16 Q. Just a couple more questions on the sort of | 16 BY MS. AUKERMAN: |
| 17 out-of-state offenses, really just one more. I read | 17 Q. Do you recognize this document? |
| 18 in the documents that you don't do predeterminations, | 18 A. Can you go to the top, please. |
| 19 is that correct? | 19 Q. Sure. |
| 20 A. Correct. | 20 A. Okay. |
| 21 Q. The unit does predeterminations for law enforcement, | 21 Q. Do you recognize this document? |
| 22 correct? Like for an out-of-state registry? | 22 A. Yes. |
| 23 A. That was a new process change. So the only ones we do | 23 Q. Okay. And I just note here it says that in the -- |
| 24 that for are like ICOTS and MDOC, which is the | 24 this we're now on page Bates 776. It says that |
| 25 transfer. | 25 there's no predeterminations made, correct, for |
| Page 155 | Page 156 |

39 (Pages 153 to 156)

Morris, Narcisa
1/25/2023

| | |
|---|---|
| 1 | registrants? |
| 2 | **A.** Uh-huh. |
| 3 | **Q.** And that there are predeterminations made for the MDOC |
| 4 | or for a court, correct? |
| 5 | **A.** Correct. |
| 6 | **Q.** Okay.  And then the highlighted language here says the |
| 7 | offender shall be provided with the resources needed |
| 8 | to make the determination.  What resources are |
| 9 | provided to registrants moving in out of state to make |
| 10 | that determination? |
| 11 | **A.** Referencing the state statute, the registrable |
| 12 | offenses. |
| 13 | **Q.** So the registrant will be told you can look at your |
| 14 | out-of-state conviction and you can look at the |
| 15 | Michigan conviction and -- |
| 16 | **A.** And consult an attorney. |
| 17 | **Q.** And consult an attorney.  But they're not provided |
| 18 | with the chart -- |
| 19 | **A.** No. |
| 20 | **Q.** -- or anything like that? |
| 21 | So they would have to try to figure out |
| 22 | themselves whether something is substantially similar |
| 23 | to a Michigan offense, correct? |
| 24 | **A.** I guess correct, yes. |
| 25 | **Q.** All right.  Let's talk about -- one last question on |

Page 157

| | |
|---|---|
| 1 | that, is there a role for the registrant's attorney in |
| 2 | determining what is substantially similar? |
| 3 | Like is there an appeals process or |
| 4 | anything that -- the registrant or attorney can do to |
| 5 | say, you know, I don't think it's substantially |
| 6 | similar to this.  I think it's substantially not |
| 7 | similar.  Is there -- what's the process, if any? |
| 8 | **A.** So I have actually had that happen, and I've referred |
| 9 | to legal, MSP legal. |
| 10 | **Q.** So the registrant or their attorney would need to |
| 11 | contact MSP legal? |
| 12 | **A.** No.  They don't contact them, they contact us.  The |
| 13 | attorney, if they have issue with it, they contact us. |
| 14 | And we can tell them that we can refer to our legal |
| 15 | for a review.  But typically that's after they have |
| 16 | already been determined a certain tier. |
| 17 | **Q.** But if the registrant's attorney says I disagree, I |
| 18 | think this is tier II and not tier III, what happens? |
| 19 | **A.** For someone who's already registered? |
| 20 | **Q.** Yeah.  The person has been registered and told you're |
| 21 | tier III and the attorney says no, I think this is |
| 22 | more comparable to a tier II offense, what happens? |
| 23 | **A.** They usually send something to our group email and we |
| 24 | advise them that we are forwarding to legal for |
| 25 | review. |

Page 158

| | |
|---|---|
| 1 | **Q.** Right.  And then if legal says nope, we think this |
| 2 | person is a tier III, what happens? |
| 3 | **A.** I don't know.  That -- usually we respond.  I haven't |
| 4 | had anything come back.  I've only had that experience |
| 5 | once. |
| 6 | **Q.** Okay.  Let's talk about the non-sex offense cases. |
| 7 | Are you familiar with registration requirements for |
| 8 | people who are not convicted of a sex offense? |
| 9 | **A.** Somewhat. |
| 10 | **Q.** Can you describe what you know. |
| 11 | MR. JAMISON:  Objection, vague. |
| 12 | BY MS. AUKERMAN: |
| 13 | **Q.** Can you describe who has to register for a non-sex |
| 14 | offense? |
| 15 | **A.** What I've learned thus far is the Lymon, in three |
| 16 | instances of Lymon; child enticement, kidnapping, and |
| 17 | unlawful imprisonment. |
| 18 | **Q.** What about out-of-state offenses? |
| 19 | **A.** What about? |
| 20 | **Q.** Are there out of state -- are there people with |
| 21 | out-of-state non-sex offenses that are required to |
| 22 | register in Michigan? |
| 23 | **A.** I don't know.  I don't -- I've not been instructed or |
| 24 | had to look at that thus far. |
| 25 | **Q.** So if someone had a kidnapping offense in Ohio, would |

Page 159

| | |
|---|---|
| 1 | that be considered substantially similar to kidnapping |
| 2 | in Michigan? |
| 3 | **A.** If it -- I would follow the typical rule.  If for some |
| 4 | reason that's something that we are directed to start |
| 5 | addressing, we would address it. |
| 6 | **Q.** Okay.  So you're familiar with the Michigan Court of |
| 7 | Appeals called People v. Lymon, correct? |
| 8 | **A.** Correct. |
| 9 | **Q.** What's happening in response to Lymon within the SOR |
| 10 | unit? |
| 11 | **A.** As we've been directed, we are providing communication |
| 12 | to prosecutors, law enforcement, and courts advising |
| 13 | of specific individuals with those offenses -- those |
| 14 | offenses only -- and asking them to review and |
| 15 | determine if a sexual component existed -- existed. |
| 16 | And that if we don't get any response or determined |
| 17 | that there was none, they are being removed from the |
| 18 | registry.  That we need to hear from them. |
| 19 | **Q.** So when you say you've been providing communication, |
| 20 | when -- when did that occur? |
| 21 | **A.** So the first one, I believe, went out in November, I |
| 22 | think.  And then we just sent another here in January, |
| 23 | a reminder. |
| 24 | **Q.** When you say the first one, what do you mean? |
| 25 | **A.** The notice to PAAM, the courts, law enforcement, |

Page 160

40 (Pages 157 to 160)