UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOES A, B, C, D, E, F, G, H,
MARY DOE and MARY ROE, on behalf of
themselves and all others similarly situated,

                Plaintiffs,

v.

GRETCHEN WHITMER, Governor of the
State of Michigan, and COL. JOSEPH
GASPER, Director of the Michigan State
Police, in their official capacities,

                Defendants.

No. 2:22-cv-10209

Hon. Mark A. Goldsmith

Mag. Curtis Ivy, Jr.

**PLAINTIFFS' MOTION FOR
CERTIFICATION OF "NON-MICHIGAN OFFENSE" SUBCLASS**

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs request that the Court certify a "non-Michigan offense" subclass, defined as members of the primary class who, according to Defendants, are or will be subject to sex offender registration under SORA 2021 for a conviction or adjudication from a jurisdiction other than Michigan; and name Plaintiffs Mary Doe and John Doe G as representatives of this subclass. In support of this motion, Plaintiffs refer the Court to their accompanying brief.

1

Pursuant to the local rules, on March 28, 2023, Plaintiffs sought concurrence from counsel for Defendants. Defendants did not concur.

Respectfully submitted,

s/ Miriam J. Aukerman (P63165)
Miriam J. Aukerman
Dayja S. Tillman (P86526)
American Civil Liberties Union
  Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org
dtillman@aclumich.org

s/ Daniel S. Korobkin (P72842)
Danial S. Korobkin
Syeda Davidson (P72801)
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6824
dkorobkin@aclumich.org
sdavidson@aclumich.org

s/ Paul D. Reingold (P27594)
Cooperating Counsel, American Civil
  Liberties Union Fund of Michigan
Univ. of Michigan Law School
802 Legal Research Building
801 Monroe Street
Ann Arbor, MI 48109-1215
(734) 355-0319 - pdr@umich.edu

s/ Roshna Bala Keen (Ill. 6284469)
Loevy & Loevy
Cooperating Counsel, American Civil
Liberties Union Fund of Michigan
311 North Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 - roshna@loevy.com

Dated: March 29, 2023

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOES A, B, C, D, E, F, G, H,
MARY DOE and MARY ROE, on behalf of
themselves and all others similarly situated,

Plaintiffs,

v.

GRETCHEN WHITMER, Governor of the
State of Michigan, and COL. JOSEPH
GASPER, Director of the Michigan State
Police, in their official capacities,

Defendants.

No. 2:22-cv-10209

Hon. Mark A. Goldsmith

Mag. Curtis Ivy, Jr.

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR
CERTIFICATION OF "NON-MICHIGAN OFFENSE" SUBCLASS**

**INTRODUCTION**

Upon the stipulation of the parties, this Court has already certified a class of over 50,000 people who are subject to registration under the latest iteration of Michigan's Sex Offenders Registration Act (SORA 2021). *See* Stipulated Order Granting Class Certification, ECF 35, PageID 1116; *see also* Compl., ECF 1, ¶ 322. The Court also certified several subclasses of registrants who allege distinct harms as a result of being subject to SORA 2021. *Id.*

1

Class counsel, concurrently with this motion, are filing a motion for leave to supplement the complaint in order to add one additional count on behalf of the proposed subclass, which is defined as:

> members of the primary class who, according to Defendants, are or will be subject to sex offender registration under SORA 2021 for a conviction or adjudication from a jurisdiction other than Michigan.

Plaintiffs now ask that the Court certify that subclass.

## BACKGROUND

In May 2022, the Court certified a primary class, defined as all people who are or will be subject to registration under Michigan's SORA 2021, appointed the named Plaintiffs as class representatives, and appointed class counsel. ECF 35, Stip. Class Cert. Order, PageID 1116. The Court also certified six subclasses, including: the pre-2011 ex post facto subclass, the retroactive extension of registration subclass, the barred from petitioning subclass, the non-sex-offense subclass, the plea bargain subclass, and the post-2011 subclass. *Id.* at 1117-19.

The parties began discovery in the fall of 2022, with the Court entering an initial case management and scheduling order, ECF 66, on November 9, 2022. As discussed in more detail in Plaintiffs' motion for leave to supplement the complaint, during discovery Plaintiffs uncovered information showing that a substantial portion of the class—more than 5,700 class members, or 11% of the class—have out-of-state convictions, and have been required to register as sex offenders in Michigan

under a process that lacks rudimentary fairness. People with out-of-state convictions are also treated worse than people with equivalent Michigan convictions because they are required to register under whichever registration regime is harsher (Michigan's or the convicting state's).

Upon discovering this information, class counsel, who have a duty under Rule 23(g)(4) to fairly and adequately represent the interests of the class, investigated the viability of a claim for this subgroup of class members. Class counsel concluded not only that this group has strong common claims for relief, but that if the Court grants relief, it could result in the removal, reclassification, or review of a substantial number of registrants with out-of-state convictions.

The Court, in certifying the six other subclasses, recognized the importance of allowing them to present and litigate their distinct claims. The new proposed subclass, likewise, has claims that are distinct from those of the primary class, and seeks relief on grounds not yet covered by the previously certified subclasses.

## THE PROPOSED SUBCLASS DEFINITION AND PROPOSED SUBCLASS REPRESENTATIVES

As noted, Plaintiffs seek certification of a subclass defined as members of the primary class who, according to Defendants, are or will be subject to sex offender registration under SORA 2021 for a conviction or adjudication from a jurisdiction other than Michigan. This subclass seeks relief on Count XI of the proposed supplemental complaint, which alleges that Defendants' treatment of people with non-

3

Michigan convictions violates the Due Process Clause, Equal Protection Clause, and Privileges and Immunities Clause of the Fourteenth Amendment, and Article IV, §2 of the U.S. Constitution. Plaintiffs ask that current named Plaintiffs Mary Roe and John Doe G be named representatives of this subclass.

## ARGUMENT

I. **The Court Should Certify the Proposed Subclass to Allow for the Most Efficient Adjudication of Count XI.**

Rule 23(d)—"which grants a court significant leeway in managing a class suit"—allows for the creation of subclasses as a case management device. 3 William B. Rubenstein, *Newberg on Class Actions* § 7:29 (6th ed. 2022). Courts often use subclasses as a case management tool to help focus discovery and promote judicial efficiency. *See, e.g.*, *Marisol A. v. Giuliani*, 126 F.3d 372, 379, 38 Fed. R. Serv. 3d 1454 (2d Cir. 1997) (noting subclassing may foster a "more orderly" trial); *Aldapa v. Fowler Packing Co., Inc.*, 323 F.R.D. 316, 326 (E.D. Cal. 2018), *order clarified*, No. 115CV00420DADSAB, 2018 WL 10322910 (E.D. Cal. Feb. 16, 2018) ("Subclasses may be used to more efficiently resolve common issues during the proceeding and at trial."). Utilizing subclasses allows courts to "'expedite resolution of the case by segregating [certain factual and legal questions] which [are] common to some members of the larger class." *Moore v. Ulta Salon, Cosms. & Fragrance, Inc.*, 311 F.R.D. 590, 609–10 (C.D. Cal. 2015) (alterations in original) (quoting *Am.*

4

*Timber & Trading Co. v. First Nat. Bank of Oregon*, 690 F.2d 781, 787 (9th Cir. 1982)).

Unless there is a conflict between subclasses, "there is no necessity that [the] subclass . . . independently comply with all of the requirements of Rule 23(a) [and] (b)," *Newberg on Class Actions*, *supra*, § 7:29. Here, there is no conflict between the claims of the proposed subclass and the claims of other class members. Accordingly, the Court, instead of going through the Rule 23(a) and (b) requirements, can simply certify the proposed subclass because it is the most efficient way to address the claims of this group. *Gomez v. J. Jacobo Farm Lab. Contractor, Inc.*, 334 F.R.D. 234 (E.D. Cal. 2019), *modified on reconsideration,* No. 1:15-cv-01489 AWI-BAM, 2020 WL 1911544 (E.D. Cal. Apr. 20, 2020) ("[T]he Court views the proposed subclasses as 'case management' subclasses under Rule 23(d) that are treated informally and need not independently satisfy the certification requirements of Rules 23(a) and 23(b) ..."); *J.P. v. Sessions*, No. LA-cv-18-06081 JAK-SKx, 2019 WL 6723686 (C.D. Cal. Nov. 5, 2019) (noting that when case-management subclasses are created, "there is no necessity that each subclass . . . independently comply with all of the requirements of [Rule 23]") (alteration in original).

**II.    New Evidence Justifies Adding a New Subclass**

The Court's discretion to manage class actions includes the authority to "alter[] or amend[]" the class certification order before final judgment. Fed. R. Civ.

P. 23(c)(1)(C); *Basic v. Levinson*, 485 U.S. 224, 249, n. 29, 108 S. Ct. 978 (1998) ("Throughout [trial], the District Court retains the authority to amend the certification order as may be appropriate."). In fact, the Sixth Circuit has held that multiple amendments to a class certification order can be appropriate because they "merely show[] that the court took seriously its obligation to make appropriate adjustments … as the litigation progressed." *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007).

As a result, courts commonly modify and amend initial class certification orders throughout the litigation, including by adding subclasses. *See Brookler v. RadioShack Corp.*, No. 2:13-CV-06034-CAS, 2013 WL 5741918, *3-4 (C.D. Cal. Oct. 21, 2013) (affirming lower court's ruling granting plaintiff's motion for leave to amend their complaint and add subclasses); *Schorsch v. Hewlett–Packard Co.,* 417 F.3d 748, 750 (7th Cir. 2005); *In re Monumental Life Ins. Co.,* 365 F.3d 408, 414 (5th Cir. 2004). Amendment of class certification orders is particularly common where discovery leads to new evidence that affects how the class should be defined or reveals that a subset of the class has unique claims. *See Fonder v. Sheriff of Kankakee Cnty.*, 823 F. 3d 1144, 1147 (7th Cir. 2016) ("If the evidence calls into question the propriety of defining a class in a particular way, then the definition must be modified or **subclasses certified**.") (emphasis added). Not only do courts routinely find that the discovery of new evidence is sufficient justification to amend a prior

certification order, but it is common for new subclasses to be added as a case progresses and the facts come to light. Indeed,

> the district court is charged with the duty of monitoring its class decisions in light of the evidentiary development of the case. The district judge must define, redefine, **subclass**, and decertify as appropriate in response to the progression of the case from assertion to fact.

*Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983) (emphasis added). *See also Bownes v. Washington*, No. 14-CV-11691, 2021 WL 3700867, *10-11 (E.D. Mich. Aug. 20, 2021) (granting plaintiffs' motion to redefine and certify additional subclasses based on new evidence despite original certification order being over two years old and plaintiffs having failed to promptly raise the issue); *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, No. 1-01-cv-900, 2002 WL 553732 (n.D. Ohio Mar. 14, 2002), *opinion clarified,* No. 1401, 2002 WL 32138299 (N.D. Ohio Apr. 5, 2002) (granting plaintiffs' motion to file a fifth amended complaint reflecting a modified class definition and a new subclass of over 5,000 class members); *In re Nissan N. Am., Inc. Litig.*, No. 3:19-cv-00843, 2020 WL 13617558 (M.D. Tenn. Sept. 22, 2020) (granting plaintiffs' motion for leave to file an amended complaint that would add seven new subclasses after discovery had already started).

Here, during discovery on an expedited schedule, Plaintiffs have obtained documents and data showing that a significant subset of class members, comprising approximately 11% of the class, have non-Michigan offenses. Plaintiffs also learned that Defendants' process for registering such individuals does not comport with

7

basic due process requirements and results in worse outcomes for out-of-staters than in-staters. In other words, Plaintiffs uncovered new facts showing additional harms specific to this subset of class members—harms that are not addressed by the claims of the primary class or the other subclasses. The discovery of this new evidence requires the certification of an additional subclass to address the unique claims of this proposed subclass.

## III. The Subclass Meets the Requirements of Rule 23

In the event that the Court prefers to conduct the Rule 23 analysis rather than addressing the subclass issue as one of case management, Plaintiffs explain why the subclasses satisfy those requirements as well. Under Rule 23, Plaintiffs must show that: (1) "the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(1)-(4); *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Rule 23 also requires the proposed class to fall within one of the predefined class action types enumerated in Fed. R. Civ. P. 23(b).

### A. The Subclass Meets the Rule 23(a) Requirements.

#### 1. The Subclass Is So Numerous that Joinder Is Impractical.

To satisfy Rule 23(a), Plaintiffs must first demonstrate that the proposed class

8

"is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23 (a)(1). While the rules do not define or quantify "numerous," the Sixth Circuit has found that "substantial" numbers alone will often satisfy the numerosity requirement. *See Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (citation omitted). An exact number has not generally been required so long as Plaintiffs can demonstrate the potential class is large. *In re Consumers Power Co. Sec. Litig.*, 105 F.R.D. 583, 601 (E.D. Mich. 1985). When the primary class sufficiently satisfies the numerosity requirement, the requirement is generally relaxed for the subclasses. *Newberg on Class Actions*, *supra*, § 3:16.

Based on class data obtained in discovery, it appears that there are at least 5,700 subclass members. The size of the proposed subclass alone demonstrates the impracticability of joinder under these circumstances. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012). The numerosity element is thus satisfied for the proposed non-Michigan offense subclass.

### 2. The Subclass Members Share Common Questions of Law and Fact.

The second element to class certification requires there be "questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), defined as those which have the capacity to "generate common answers apt to drive the resolution of litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted). The Sixth Circuit notes that there "need be only one common question to certify a class"

9

making the element an easy burden to satisfy. *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013). Courts will find common questions of law or fact where plaintiffs challenge laws as unconstitutionally discriminatory to out-of-state residents. *See Siesta Vill. Mkt., LLC v. Perry*, No. 3:06-CV-0585-D, 2006 WL 1880524 (N.D. Tex. July 7, 2006). This Court has already found that the previously certified primary class, as well as the subclasses, share common questions of law and fact.

Here, common questions of law and fact include, but are not limited to:

a. What processes and procedures do Defendants use to determine whether people with non-Michigan convictions must register, and to determine what tier levels and registration requirements apply?

b. Whether procedural due process bars Defendants from subjecting people with non-Michigan convictions to SORA 2021 without meaningful pre-deprivation notice or any opportunity to be heard?

c. Whether imposing harsher registration requirements on people with out-of-state convictions than on people with Michigan convictions violates the Due Process, Equal Protection, and Privileges and Immunities Clauses of the Fourteenth Amendment, and Article IV, §2 of the Constitution?

These common legal and factual questions bear directly on the constitutionality of SORA 2021 for the out-of-state subclass, as well as the relief required. Thus, the commonality requirement is also satisfied.

### 3. The Proposed Representatives' Claims Are Typical of the Subclass.

The third element of class certification requires "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ.

10

P. 23(a)(3). The requirement is met if the class members' claims are "fairly encompassed by the named plaintiffs' claims." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (en banc). The Sixth Circuit has further defined the typicality requirement as satisfied where a claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and [where the] claims are based on the same legal theory." *Beattie v. Century Tel. Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (citation omitted); *see also Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012). Where the named plaintiffs and proposed class challenge the same conduct, they typicality requirement can be met irrespective of differing circumstances and impacts among class members. *See Daffin*, 458 F.3d at 553 (typicality is satisfied by similar legal theories even if "different factual circumstances" underlie the individual claims); *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) ("[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims.").

Here, Mary Doe and John Doe G, the proposed representatives for the subclass, have claims that arise from the same course of conduct that gives rise to all the claims relevant to this class—the process of determining the registration requirements for people subject to registration for convictions in jurisdictions other than

11

Michigan. The facts about how Defendants handled Mary Doe's and John Doe G's out-of-state convictions are set forth in the supplemental complaint, and are representative of the experiences of the subclass. Moreover, the proposed representatives' and proposed subclass' legal claims are identical, namely that Defendants' failure to provide meaningful, pre-deprivation notice or an opportunity to be heard, and Defendants' harsher treatment of people with non-Michigan convictions, violates their constitutional rights. And the proposed representatives seek identical relief as the proposed subclass, namely declaratory and injunctive relief providing for constitutionally sufficient procedural protections and equal treatment of people with non-Michigan convictions. *See Baby Neal*, 43 F.3d at 58 (holding that actions requesting declaratory and injunctive relief to remedy conduct directed at the class clearly satisfy the typicality requirement). Thus, the subclass members' claims are fairly encompassed by the proposed representatives' claim, satisfying the typicality requirements of class certification. *See In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013).

### 4. The Subclass Representatives Will Fairly and Adequately Represent the Interests of the Class.

The final element in satisfying class certification requires that "the representative parties [] fairly and adequately protect their interests of the class." Fed. R. Civ. P. 23(a)(4). The Sixth Circuit has set out a two-pronged test: (1) the named representative must have "common interest" with the unnamed class members, and (2) the

12

representative must appear to "vigorously prosecute the interests" of the class through "qualified counsel." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013) (citation omitted).

The first criterion is met for the reasons set forth in the commonality and typicality discussions. The proposed representatives and proposed subclass have claims that arise out of the same course of conduct, are based on same legal theories, and seek the same relief. The relief would benefit all subclass members and would not benefit the subclass representatives at the expense of anyone else. Thus, there are no conflicts of interest. Because the interests of the representatives are aligned with all subclass members, the first prong of the test is satisfied. *See Stanich v. Travelers Indem. Co.*, 259 F.R.D. 294, 305 (N.D. Ohio 2009).

The second prong is similarly satisfied as the proposed representatives have every incentive to fully litigate their claims. *See Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976). The class counsel appointed by the Court have demonstrated that they will vigorously prosecute the interests of the class, and the same is true for class counsels' prosecution of the interests of the proposed subclass.

**B. The Subclass Satisfies the Requirements of Rule 23(b)(2).**

The proposed subclass, like the six before it, falls under the definition of Rule 23(b)(2), which defines a class action as maintainable if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final

13

injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Subsection (b)(2) makes clear that a class action suit may be brought where a civil rights suit seeks declaratory or injunctive relief. In fact, courts often find Rule 23(b) requirements "automatically satisfied" where parties are primarily seeking injunctive relief. *See Baby Neal*, 43 F.3d at 58; *Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997). On similar lines, the Sixth Circuit has held that not every member of a proposed class needs to be harmed by the challenged conduct for other members to seek relief under Rule 23(b)(2). *See Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 428 (6th Cir. 2012) ("What is necessary is that the challenged conduct or lack of conduct be premised on a ground that is applicable to the entire class.") (quoting 7A Wright, Miller, & Kane, supra, § 1775 (2d ed. 1996))).

Here, the proposed subclass challenges the constitutionality of the process used to determine registration requirements for people with non-Michigan convictions, as well as the unequal treatment of such individuals, and seeks declaratory and injunctive relief on this claim. Just as with the class and other six subclasses, the proposed non-Michigan offense subclass presents a common claim for declaratory and injunctive relief that can be resolved on a class-wide basis. For these reasons, the proposed subclass satisfies Rule 23(b)(2).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask the Court to grant their motion to certify the subclass and name Mary Doe and John Doe G as representative plaintiffs for that subclass.

Respectfully submitted,

s/ Miriam J. Aukerman (P63165)
Miriam J. Aukerman
Dayja S. Tillman (P86526)
American Civil Liberties Union
 Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org
dtillman@aclumich.org

s/ Daniel S. Korobkin (P72842)
Danial S. Korobkin
Syeda Davidson (P72801)
American Civil Liberties Union
 Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6824
dkorobkin@aclumich.org
sdavidson@aclumich.org

s/ Paul D. Reingold (P27594)
Cooperating Counsel, American Civil
 Liberties Union Fund of Michigan
Univ. of Michigan Law School
802 Legal Research Building
801 Monroe Street
Ann Arbor, MI 48109-1215
(734) 355-0319 - pdr@umich.edu

s/ Roshna Bala Keen (Ill. 6284469)
Loevy & Loevy
Cooperating Counsel, American Civil
 Liberties Union Fund of Michigan
311 North Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 - roshna@loevy.com

Dated: March 29, 2023

## LOCAL RULE CERTIFICATION

I, Miriam J. Aukerman, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted material and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 points (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

s/ Miriam J. Aukerman (P63165)
American Civil Liberties Union
  Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org
