UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

JOHN DOES A, B, C, D, E, F, G, H,
MARY DOE and MARY ROE, on behalf of
themselves and all others similarly situated,

      Plaintiffs,

v.

GRETCHEN WHITMER, Governor of the
State of Michigan, and COL. JOSEPH
GASPER, Director of the Michigan State
Police, in their official capacities,

      Defendants.

File No. 2:22-cv-10209

Hon. Mark A. Goldsmith

Mag. Judge Curtis Ivy, Jr.

---

## DEFENDANTS' ANSWER TO
## FIRST AMENDED VERIFIED CLASS ACTION COMPLAINT
## AND AFFIRMATIVE DEFENSES

Defendants Gretchen Whitmer and Col. Joseph Gasper, by and

through their attorney, Assistant Attorney General Eric M. Jamison,

answer Plaintiffs' first amended complaint as follows:

## RESPONSE TO INTRODUCTION

1.  For almost a decade, courts have repeatedly held Michigan's Sex Offenders Registration Act (SORA), M.C.L. § 28.721 *et seq.*, to be unconstitutional. *See Does #1-5 v. Snyder*, No. 12-cv-11194 (E.D. Mich.) (*Does I*); *Roe v. Snyder,* No. 16-cv-13353 (E.D. Mich.); *Does #1-6 v. Snyder*, No. 16-cv-13137 (E.D. Mich.) (*Does II*); *People v. Betts*, __ N.W.2d __, 2021 WL 3161828 (Mich. July 27, 2021).

ANSWER: Defendants admit that some courts have found portions of Michigan's Sex Offender Registration Act (SORA), Mich. Comp. Law § 28.721 *et. seq.* unconstitutional.  Defendants deny that courts have repeatedly found it unconstitutional, or that SORA was found unconstitutional in its entirety.

2.  Despite these rulings, the State of Michigan continued to enforce a statute Defendants knew to be unconstitutional. Finally, faced with the imminent entry of a class-wide permanent injunction in *Does II* barring enforcement of major portions of SORA, the 2020 lame duck legislature made minor amendments to the law. But the legislature left intact the core constitutional defects of the law—which continues to impose extensive burdens, in most cases for life, without any

individualized assessment of whether such burdens are justified—
forcing Plaintiffs here to return to the courts to vindicate their rights.

ANSWER: Defendants deny that they, or "the State of Michigan",
has enforced a statute they "knew to be unconstitutional", that the 2021
amendments to SORA are unconstitutional, that any "burdens" imposed
by SORA are excessive, that SORA does not allow for individualized
assessment for any registrants, or that the legislature "forced" Plaintiffs
to file any claims. Defendants admit that SORA does not require
individualized assessment prior to requiring registration.

3.  In 2012, six plaintiffs—four of whom are also plaintiffs here
first challenged SORA in *Does I*. After years of litigation, and based on
an extensive record, Judge Robert Cleland in 2015 held portions of the
statute unconstitutional on due process and First Amendment grounds.
*Does #1-5 v. Snyder*, 101 F. Supp. 3d 672 (E.D. Mich. 2015); *Does #1-5 v.
Snyder*, 101 F. Supp. 3d 722 (E.D. Mich. 2015). On appeal, the Sixth
Circuit Court of Appeals held that SORA imposes punishment and that
the retroactive application of SORA's 2006 and 2011 amendments
violates the U.S. Constitution's Ex Post Facto Clause. *See Does #1-5 v.
Snyder*, 834 F.3d 696 (6th Cir. 2016), *cert denied,* 138 S. Ct. 55 (2017).

2

ANSWER: Defendants admit that Judge Cleland in 2015 held portions of the SORA unconstitutional, and that the Sixth Circuit, which vacated Judge Cleland's opinion, found SORA unconstitutional as applied to the named Plaintiffs in *Does #1-5 v. Snyder*, 834 F.3d 696 (Sixth Cir. 2016). Defendants deny that the opinion in *Does #1-5*, which the Sixth Circuit specifically limited to the named plaintiffs in that case, applied to any other registrants.

4. Defendants ignored the Sixth Circuit's and the district court's decisions, and simply continued to subject tens of thousands of other Michigan registrants to SORA.

ANSWER: Defendants deny that they ignored the Sixth Circuit ruling, as it was limited to the named Plaintiffs in *Does #1-5*. Defendants also deny they ignored the decision by Judge Cleland, as his decision was vacated by the Sixth Circuit.

5. Further litigation ensued. In *Roe v. Snyder*, 240 F. Supp. 697 (E.D. Mich. 2017) (Goldsmith, J.), plaintiff Mary Roe—who is also Plaintiff Mary Roe in this case—had to go to court to protect herself from prosecution under SORA in order to keep her job, even though the Sixth Circuit had already held that the provision barring her

3

employment was unconstitutional. But even after Ms. Roe secured an injunction protecting her from prosecution, the state simply continued enforcing SORA against everyone else.

ANSWER: Defendants neither admit nor deny that Plaintiff Roe had to go to court to protect her job because Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. Defendants admit that Plaintiff Mary Roe sought and was granted an injunction and that they continued to enforce SORA as required by Michigan law. Defendants deny that they were the only agencies or persons enforcing SORA.

6. Six new plaintiffs—five of whom are also Plaintiffs in this case then challenged the state's continued application of the unconstitutional statute in a class action lawsuit which sought to enforce the *Does I* decisions on behalf of all Michigan registrants. *Does #1-6 v. Snyder*, No. 16-cv-13137 (E.D. Mich. 2016) (Cleland, J.) (*Does II*). The Court repeatedly deferred its decision to allow the legislature time to revise the law. When the legislature failed to do so, the Court granted summary judgment to plaintiffs on all counts in February 2020, but deferred

4

entry of judgment to give the legislature one last chance to act. *Does #1-6 v. Snyder*, 449 F. Supp. 3d 719, 737–39 (E.D. Mich. 2020).

ANSWER: Admitted.

7. Faced with entry of a permanent injunction against much of the old SORA, the legislature finally responded. Although a work group of stakeholders (including representatives from law enforcement, prosecutors, corrections, survivors' groups, the governor's offices, legislative staff, and the American Civil Liberties Union of Michigan (ACLU)) had been working for more than a year to craft a law that would be both constitutional and evidence-based, the legislature ignored those efforts. Instead, it pushed through Public Act 295 of 2020, which the governor signed, and which took effect on March 24, 2021.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

8. SORA 2021 makes only minor changes to Michigan's registry which fundamentally constrains the lives of some 45,000 Michiganders, as well as almost 10,000 people now living out of state. Like its predecessor, SORA 2021 imposes a vast regime of restrictions, including

5

continuous reporting and public shaming, that affect virtually every facet of registrants' lives, in most cases for life.

ANSWER: Defendants deny that the 2021 legislative changes to SORA are minor, that SORA imposes a "vast regime of restrictions", and that SORA, and not Plaintiff's underlying conviction, causes public shaming or impacts "virtually every facet of registrants' lives." Defendants admit that some registrants must comply with SORA for life.

9.   SORA 2021 continues to impose life-altering burdens without any individualized assessment or review. SORA 2021 continues to treat all registrants—regardless of the circumstances of their offense, the passage of time, their age, their rehabilitation, their health, or their cognitive and physical abilities—as if they pose a high and irremediable risk to public safety. And SORA 2021 brands everyone on the public registry as a current threat to the community without any evidence that they are.

ANSWER: Defendants deny that SORA imposes "life altering burdens" on registrants, treats all registrants the same, or brands everyone on the public registry as a "current threat to the community".

Defendants also deny that SORA does not provide for individualized review of registrants' registration requirements.  Defendants admit that registrants' duties under SORA are based on their conviction offense(s) and that SORA does not require an individualized assessment prior to registration.

10.     SORA 2021 continues to categorize registrants into three tiers, which determine the frequency of reporting and periods of registration (15 years, 25 years, or life). Tier classifications are based solely on the offense of conviction, without any assessment of risk. For the vast majority of registrants, there is no path off the registry: the only way to come off the registry is to die.

ANSWER: Defendants admit that classifications are based on conviction offense.  Defendants deny that the "vast majority" of registrants must register for life.

11.     SORA 2021 keeps intact nearly all of the 2011 amendments—which the Sixth Circuit held violated the Ex Post Facto Clause—including the 2011 amendments that retroactively extended registration terms for approximately 17,000 people from 25 years to life. SORA 2021 continues to apply those provisions retroactively to all pre-

7

2011 registrants.

ANSWER: Defendants deny that the 2021 amendments to SORA "keeps mainly intact" any of the 2011 amendments that the Sixth Circuit held violated the Ex Post Facto clause; in fact, the 2021 amendments to SORA removed the 2011 amendments that the Sixth Circuit found unconstitutional.  Defendants admit that the 2011 amendments adopted the federal SORNA tier system and applied them retroactively to registrants, which increased the length of registration for registrants convicted of seven crimes, namely Mich. Comp. Law § 750.338, 750.338a, 750.338b, 750.520g(2), and if the victim was under 13 years of age, Mich. Comp. Law § 750.520d unless the victim was between the age of 13 and 16 years of age, "consented" to the conduct, and the offender is no more than four years older than the victim, Mich. Comp. Law § 750.520e if committed by an adult against an individual under 13 years of age, and 750.520g(1).

12.    SORA's extensive supervision requirements, which include reporting of vast amounts of information often within three business days, remain almost unchanged. Indeed, in some respects the new law adds even more onerous reporting requirements (e.g., requiring more

8

information about internet identifiers, phones, and vehicles). Although some changes can now be reported by mail, others still must be reported in person, leading to great confusion among registrants and law enforcement alike about how to report different types of information.

ANSWER: Defendants deny that SORA has "extensive" supervision requirements, that the 2021 amendments require more information from registrants, and that the 2021 amendments impose "more onerous" reporting requirements on registrants.  Defendants neither admit or deny that registrants of law enforcement agencies are "confused" by SORAs reporting requirements because Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

13.    SORA 2021 continues to brand registrants as dangerous, without any determination of risk or consideration of individual circumstances, by placing nearly all of them on the public registry, with the predictable result that they lose housing and employment opportunities and are shunned in their communities.

ANSWER: Defendants deny that SORA "brands registrants as dangerous", that SORA does not take into consideration individual

circumstances in that it is based upon a registrants conduct by relying on a registrant's underlying conviction, and deny that the loss of any employment or housing is due to SORA and not the nature of registrants' underlying conviction.

14. SORA 2021, like its predecessors, also ignores the scientific consensus that registries do not work. Broad conviction-based registries like Michigan's are completely ineffective at reducing recidivism, and indeed may *increase* offending by sabotaging the ability of people to obtain housing, employment, and family support that are critically important for them to lead productive lives.

ANSWER: Denied.

15. The research also shows that the vast majority of those convicted of a sex offense will never commit another sex offense. There is wide variation in risk levels among people with past sex offenses, and the nature of a past conviction—which determines registration requirements in Michigan—does not correlate with re-offense risk, unlike empirically validated risk instruments.

ANSWER: Defendants admit that Plaintiffs have attached research supporting their claims. Defendants lack knowledge and

10

information sufficient to form a belief as to the truth of the remaining allegations and leave Plaintiffs to their proofs.

16.    Actuarial research using empirically validated instruments shows that some registrants already have a *lower* risk of reoffending—upon their return to the community—than the risk of males in the general population who are not subject to registration. After ten years offense-free in the community, most registrants will have a lower risk of reoffending than other unregistered males will have of committing a first-time sex offense. After 20 years, even registrants who were initially at highest risk no longer pose any more risk of committing a sex offense than do other unregistered males.

ANSWER: Defendants admit that Plaintiffs have attached research supporting their claims. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations and leave Plaintiffs to their proofs.

17.    Because SORA 2021 carries over the 15, 25-year, and lifetime registration periods of the prior law, and fails to provide individualized review of registrants' *actual current risk*, the law subjects thousands, and possibly tens of thousands, of people to sex

11

offender registration requirements even though they have lived in the community successfully for years and pose no more risk of committing a new sex offense than males who are not required to register.

ANSWER: Defendants admit that the 2021 amendments to SORA retain the federal SORNA tier system and admit that SORA does not provide for individualized risk assessment for all registrants. Defendants deny that SORA does not provides for individualized risk assessment for any registrants or that registrants pose no more risk of reoffending than other males not required to register.

18.    In sum, SORA 2021 suffers from the same constitutional problems as the previous law because the basic structure of SORA 2021 remains unchanged. The legislature's tinkering with the statute does little to address the heart of the Sixth Circuit's objections to the law, namely that it treats people as dangerous "without any individual assessment" and subjects everyone to the same onerous reporting requirements—most for decades or for life—despite "scant evidence" that such restrictions make communities safer. *Does I*, 834 F.3d at 705.

ANSWER: Defendants deny that the 2021 amendments retain any provisions found to be unconstitutional by the Sixth Circuit in *Does*

*#1-5.* Defendants also deny that the Sixth Circuit required any individualized risk assessment of registrants, that the current registration requirements are "onerous," and deny that there is "scant evidence" that SORA makes communities safer. Defendants admit that some registrants must register for life.

19. Plaintiffs, on behalf of themselves and all others similarly situated, seek declaratory and injunctive relief for violations of their constitutional rights.

ANSWER: Defendants admit that Plaintiffs seek declaratory and injunctive relief.

## RESPONSE TO JURISDICTION AND VENUE

20. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343 because Plaintiffs seek redress under 42 U.S.C. § 1983 for the deprivation of rights secured by the U.S. Constitution.

ANSWER: Defendants admit that jurisdiction is proper in this Court and that Plaintiffs have brought an action under 42 U.S.C. § 1983.

21. Plaintiffs' requests for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201–2202, by Fed. R. Civ. P. 57 and 65, and

by the legal and equitable powers of this Court.

  ANSWER: Defendants admit this Court has jurisdiction to

issue declaratory and injunctive relief.

 22. Venue is proper pursuant to 28 U.S.C. § 1391.

  ANSWER: Defendants admit that venue is proper in this

court.

**RESPONSE TO PARTIES**

**Plaintiffs**

**John Doe A**

 23. Plaintiff John Doe A resides in Wayne County in the

Eastern District of Michigan. He was plaintiff John Doe #1 in the *Does I*

case.

  ANSWER: Defendants lack knowledge sufficient to form a

belief about the truth of this allegation and leave Plaintiffs to their

proofs.

 24. In 1990, when Mr. Doe A was 20 years old, he was fired

from his job as a maintenance worker at McDonald's. He believed he

was fired unjustly. Out of anger and revenge, he decided to rob his

former employer.

14

ANSWER: Defendants lack knowledge sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

25. During the attempted robbery, Mr. Doe A forced the manager and her teenaged son back into the building to open the safe. The manager and her son escaped, and Mr. Doe A was apprehended.

ANSWER: Defendants lack knowledge sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

26. Mr. Doe A pled guilty to armed robbery and weapons charges. He also pled no contest to kidnapping for forcibly moving the boy. *See* M.C.L. § 750.349.

ANSWER: Defendants lack knowledge sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

27. Mr. Doe A never engaged in any sexual misconduct during the attempted robbery, nor has any such conduct ever been alleged against him.

ANSWER: Defendants lack knowledge sufficient to form a

belief about the truth of this allegation and leave Plaintiffs to their
proofs.

28.     Mr. Doe A was sentenced to 20 to 40 years in prison.

ANSWER: Defendants lack knowledge sufficient to form a
belief about the truth of this allegation and leave Plaintiffs to their
proofs.

29.     While incarcerated, Mr. Doe A became a model prisoner. He
helped run Chance for Life, a program that trains prisoners how to
handle conflict. He was a member of the Warden's Forum (representing
prisoners in bringing issues to the attention of staff), held leadership
positions in various prisoner organizations, and earned the support of
his warden, who reinstated good time and disciplinary credits, enabling
Mr. Doe A to obtain an earlier parole.

ANSWER: Defendants lack knowledge sufficient to form a belief
about the truth of this allegation and leave Plaintiffs to their proofs.

30.     In 2009, Mr. Doe A was paroled. He successfully completed
his two-year parole a decade ago, in 2011. He also completed sex
offender group counseling in prison (which was required of him after
SORA became law, making child kidnapping a registrable offense.)

16

ANSWER: Defendants lack knowledge sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

31.     Mr. Doe A is now 51 years old and has led a productive and law-abiding life since his release. Mr. Doe A has not been charged with or convicted of any crime since his convictions stemming from the 1990 restaurant robbery, more than 30 years ago.

ANSWER: Defendants lack knowledge sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

32.     Mr. Doe A worked as a vocational coach for special-needs adults for five to six years, helping them to find work. He has run his own asbestos abatement, lead paint removal, and home preservation business. He has a long-time partner; she works at a hospital. He has two adult children and a son who is a fourth grader.

ANSWER: Defendants lack knowledge sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

33.     In 1990, at the time Mr. Doe A's offense, Michigan did not

17

have a sex offender registry. He therefore did not receive, and could not

have received, any notice that his conviction for a non-sex offense would

subject him to registration as a sex offender.

ANSWER: Defendants lack knowledge sufficient to form a

belief about the truth of this allegation and leave Plaintiffs to their

proofs.

34.    Had Mr. Doe A known that a child kidnapping conviction

would result in registration, he would have gone to trial or tried to

bargain for an alternate disposition that would not have resulted in

registration.

ANSWER: Defendants lack knowledge sufficient to form a

belief about the truth of this allegation and leave Plaintiffs to their

proofs.

35.    When Mr. Doe A was released from prison in 2009, he was

retroactively required to register. 2005 Mich. Pub. Act 132, § 5(6).

ANSWER: Defendants deny that Plaintiff Doe A only had to

register for a ten-year period after his release in 2009; as he was

convicted of kidnapping in which the victim was under the age of 18, he

was required to register for life in 2009.  See 1999 PA 85 § 5(6),(7)(c);

2005 P.A. 123 § 5(6),(7)(c); M.C.L. § 28.725(6),(7)(c).

36.     As a result of the 2011 SORA amendments, Mr. Doe A was classified as a Tier III registrant who has to register and comply with SORA 2021 for life. 2011 Mich. Pub. Act 17, § 5(12).

ANSWER: Defendants deny that the 2011 amendments increased the length of time that Plaintiff Doe A had to register; the registration period for a conviction of M.C.L. § 750.349 if the victim was under 18 was increased by the 1999 amendments to SORA. 1999 PA 85 § 5(6),(7)(c). Defendants admit that offenders who were convicted of M.C.L. § 750.349 where the victim was under 18 years of age were placed in tier III when the state adopted the federal SORNA tier structure in 2011.

37.     Pursuant to the final judgment in the *Does I* case, Mr. Doe A's registration term was reduced from life to 25 years. He was removed from the public internet registry and needed to report only basic information. *Does I*, No. 12-cv-11194, Stipulated Final Judgment on Remand, R. 153 (Jan. 26, 2018).

ANSWER: Defendants admit that Mr. Doe A is not on the public registry. Defendants neither admit nor deny the remaining

allegation because the *Doe I* judgment speaks for itself.

38.     Under SORA 2021, just like under the old SORA,
individuals convicted of kidnapping a minor are required to register as
sex offenders for life, even if the offense lacks any sexual component.
M.C.L. §§ 28.722(v)(ii), 750.349. Mr. Doe A is required to register and
comply with all of SORA 2021's extensive requirements for life, even
though he has never been accused of or convicted of any sexual offense.

ANSWER: Defendants deny that a person convicted of Mich.
Comp. Law § 750.349 where the victim is a minor has to register under
SORA if the offense contains no sexual component. *People v. Lymon*,
Case No. 327355, 2022 WL 2182165, *17 (Mich. Ct. App., June 16,
2022).

39.     SORA 2021 brands Mr. Doe A as a dangerous sex offender
by placing him on Michigan's online registry, which holds him out to the
public as a convicted sex offender.

ANSWER: Defendants deny that placement of Plaintiff Doe A
on the public registry "branded" him as a "dangerous sex offender" or
"held him out" as a "convicted sex offender"; the registry clearly
enumerated his conviction offense.

40.     There is no mechanism in the statute by which Mr. Doe A can ever come off the registry other than to die.

ANSWER: Defendants admit that if Plaintiff Doe A's conviction for Mich. Comp. Law § 750.349 where the minor was a victim had a sexual element, there is no procedure under SORA in which he would be removed from the registry.

### John Doe B

41.     Plaintiff John Doe B resides in the Eastern District of Michigan. He was plaintiff John Doe #3 in the *Does I* case.

ANSWER: Defendants lack knowledge sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

42.     In 1998, when Mr. Doe B was 19 years old, he had a sexual relationship with a 14-year-old girl. Mr. Doe B first met the girl at a hair salon where she had washed and cut his hair. Because she was working, and based on her appearance, and because she told him that he was not her first sexual partner, he believed that she was an adult.

ANSWER: Defendants deny that the fact that Plaintiff Doe B was uncertain about the victim's age, even if true, is relevant; the

defense of a reasonable mistake of age is not available to a charge of third-degree criminal sexual conduct with a 13- to 16-year-old victim. *People v. Cash*, 419 Mich. 230 (1984). Defendants lack knowledge sufficient to form a belief about the truth of the other allegations and leave Plaintiffs to their proofs.

43. When the girl's parents became aware of the relationship, they demanded that Mr. Doe B marry the girl, or the parents would go to the police. Mr. Doe B's family and the girl's family met, but Mr. Doe B initially refused to marry her.

ANSWER: Defendants lack knowledge sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

44. The girl's father then pressed charges. Thereafter, the families met again, and Mr. Doe B agreed to the marriage. After this happened, the girl's family tried to drop the charges. The girl admitted to the police, as is documented in the police reports, that at her father's request she had falsely accused Mr. Doe B of sexual assault, when in fact the sex was consensual. Mr. Doe B did not ultimately marry the girl.

ANSWER: Defendants deny that a person under the age of 16 can consent to sexual penetration; consent is not a defense to a charge of third-degree criminal sexual conduct with a 13- to 16-year-old victim. *People v. Starks*, 473 Mich. 227 (2005). Defendants lack knowledge sufficient to form a belief about the truth of the other allegations and leave Plaintiffs to their proofs.

45.    Mr. Doe B admitted to the police that the couple had a sexual relationship. He pled guilty to attempted criminal sexual conduct in the third degree, M.C.L. § 750.520d(1)(a), for having sex with a minor. He was sentenced to four years of probation under the Holmes Youthful Trainee Act (HYTA), a record-sealing statute that allows young offenders to have their cases dismissed and their records sealed. *See* M.C.L. § 762.11 *et seq.*

ANSWER: Defendants lack knowledge sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

46.    At the time of Mr. Doe B's offense, Michigan did not yet have a public, internet-based registry. Mr. Doe B was required to register for 25 years, meaning he would come off the registry in 2023, at around age

23

45. The requirements for quarterly in-person reporting were introduced after his plea was accepted, but they were nevertheless applied to him retroactively.

ANSWER: Defendants admit that quarterly in-person reporting requirements for registrants began on September 1, 1999, and if Plaintiff Doe B pled guilty prior to that date, those reporting requirements would have applied to him. 1999 P.A. 85 § 5a(4)(b). Defendants lack knowledge sufficient to form a belief about the truth of the other allegations and leave Plaintiffs to their proofs.

47. During his last year of probation, Mr. Doe B missed the 15-day registration window. He came back from vacation not realizing that it was a three-day holiday weekend. He tried to report, but the SORA office was closed. He reported one day late, and immediately notified his probation officer of the mistake. Based on his failure to report timely, however, his status under HYTA was revoked and his underlying conviction became permanent.

ANSWER: Defendants lack knowledge sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

48. Under the 2011 SORA amendments, Mr. Doe B was

24

retroactively reclassified as a Tier III offender, and his registration period was extended from 25 years to life. SORA 2021 incorporates the 2011 amendments that retroactively extended Mr. Doe B's registration period to life.

ANSWER: Defendants admit that the 2011 amendments adopted the federal SORNA tier system, which was applied retroactively to Plaintiff Doe B, increasing the length of his registration period to life.

49.     Mr. Doe B was four years and ten months older than the girl with whom he had sex. Had the age difference been less than four years, Mr. Doe B would not be subject to registration. M.C.L. § 28.722(v)(iv).

ANSWER: Defendant admits that under current SORA, Plaintiff would not have to register if he was less than four years older than the victim of his conviction for Mich. Comp. Law § 750.520d, if the facts alleged in the complaint are true.

50.     Mr. Doe B is 43 years old. He has lived productively in the community, and he has not been convicted of another crime since his registrable offense. Mr. Doe B worked at the family business, an auto repair shop and gas station, and later in real estate. He has three

children (17, 14, and 8) from his first marriage, and is a single father with shared custody.

ANSWER: Defendants lack knowledge sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

51.    Pursuant to the judgment in the *Does I* case, Mr. Doe B was removed from the public internet registry. He had to report only basic information, and his registration term was reduced from life to 25 years, which meant he would have come off the registry in 2023.

ANSWER: Defendants neither admit nor deny the allegation because the judgment in *Doe I* speaks for itself.

52.    Under SORA 2021, Mr. Doe B is again required to register and comply with all of SORA 2021's extensive requirements for life.

ANSWER: Defendants admit that Doe B must currently comply with SORA for life as a result of the adoption of the federal SORNA tier system.  Defendants deny that current SORA requirements are "extensive" or that Plaintiff Doe B must comply with all of SORA's reporting requirements.

53.    There is no mechanism in the statute by which Mr. Doe B can ever come off the registry other than to die.

ANSWER: Admitted.

## John Doe C

54.     Plaintiff John Doe C resides in the Western District of Michigan. He was plaintiff John Doe #4 in the *Does I* case.

ANSWER: Defendants lack knowledge sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

55.     In the summer of 2005, when Mr. Doe C was 23 years old, he had a sexual and romantic relationship with I.G., a girl he met at a nightclub. The club was restricted to those aged 18 and older.

ANSWER: Defendants lack knowledge sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

56.     Mr. Doe C did not know that I.G. had used a fake ID to get into the nightclub, and that she was actually 15. When she became pregnant, Mr. Doe C was arrested. Only after Mr. Doe C was arrested did he learn his partner's actual age.

ANSWER: Defendants deny that the fact that Plaintiff Doe B was uncertain about the victim's age, even if true, is relevant; the defense of a reasonable mistake of age is not available to a charge of third-degree criminal sexual conduct with a 13- to 16-year-old victim. *People v.*

27

*Cash*, 419 Mich. 230 (1984). Defendants lack knowledge sufficient to form a belief about the truth of the other allegations and leave Plaintiffs to their proofs.

57. In 2006, Mr. Doe C pled guilty to attempted criminal sexual conduct in the third degree, which prohibits sex with a person under 16. M.C.L. § 750.520d (1)(a).

ANSWER: Defendants lack knowledge sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

58. Mr. Doe C was sentenced to five years of probation, which he successfully completed. He also completed sex offender counseling.

ANSWER: Defendants lack knowledge sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

59. At the time of his conviction, Mr. Doe C was required to register for 25 years, meaning he would come off the registry in 2031 at around age 49.

ANSWER: Defendants admit that Plaintiff Doe C would have had to register for 25 years if he was convicted of Mich. Comp. Law § 750.520d(1)(a) in 2006. Defendants lack knowledge sufficient to form a

belief about the truth of the other allegations and leave Plaintiffs to their proofs.

60. As a result of the 2011 SORA amendments, Mr. Doe C was retroactively reclassified as a Tier III offender, and his registration period was extended from 25 years to life. SORA 2021 incorporates the 2011 amendments that retroactively extended Mr. Doe C's registration period to life.

ANSWER: Defendants admit that the 2011 amendments adopted the federal SORNA tier system, which was applied retroactively to Plaintiff Doe C, increasing the length of his registration period to life.

61. Some years after his conviction, I.G. (who was then over 18) and Mr. Doe C renewed their romantic relationship. They eventually married and now have three children together, ages 15, 7, and 3.

ANSWER: Defendants deny that the fact that Plaintiff Doe C subsequently married his previously underaged victim is relevant, as it is not a defense to the crime for which he was convicted, Mich. Comp. Law § 750.520d.  Defendants lack knowledge sufficient to form a belief about the truth of the other allegations and leave Plaintiffs to their proofs.

62.     I.G. has said that while SORA may have been intended to protect people like her, "the overall effect of it was completely opposite" as "I don't feel like there was an actual crime." Rather than feeling like a victim of a crime, she feels like a "victim of the criminal justice system" because of the impact the registry has had on her ability to have a normal life with Mr. Doe C and their three children.

ANSWER: Defendants lack knowledge sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

63.     Mr. Doe C's only other criminal convictions are for driving on a suspended license.

ANSWER: Defendants lack knowledge sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

64.     Pursuant to the judgment in the *Does I* case, Mr. Doe C was removed from the public internet registry. His registration term was reduced from life to 25 years. He needed to report only basic information.

ANSWER: Defendants admit that Ms. Roe is not on the public registry. Defendants neither admit nor deny the remaining allegation because the *Does I* judgment speaks for itself.

30

65.    Under SORA 2021, Mr. Doe C is again required to register and comply with all SORA 2021's extensive requirements for life.

ANSWER: Defendants admit that Doe C must currently comply with SORA for life as a result of the adoption of the federal SORNA tier system.  Defendants deny that current SORA requirements are "extensive" or that Plaintiff Doe C must comply with all of SORA's reporting requirements.

66.    There is no mechanism in the statute by which Mr. Doe C can ever come off the registry other than to die.

ANSWER: Admitted.

## Mary Doe

67.    Plaintiff Mary Doe resides in the Eastern District of Michigan. She was plaintiff Mary Doe in the *Does I* case.

ANSWER:  Defendants lack knowledge sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proof.

68.    In 2003, while living in Ohio, she pled no contest to unlawful sexual conduct with a minor for having a sexual relationship with a 15-year-old male.

ANSWER:  Defendants lack knowledge sufficient to form a belief

31

about the truth of this allegation and leave Plaintiffs to their proof.

69.    She was sentenced to three years in prison.

ANSWER:  Defendants lack knowledge sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proof.

70.    At the time, Ohio's SORA was risk-based rather than offense-based. A person's registration requirements, including the length of time on the registry and the frequency of reporting obligations, were determined through an individualized adjudication of risk.

ANSWER:  Defendants lack knowledge sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proof.

71.    Based on a psychological evaluation, the court concluded that Ms. Doe was neither a "sexual predator" nor a "habitual offender." She was assigned to the lowest risk level of the registry, which required address verification once a year for ten years.

ANSWER:  Defendants lack knowledge sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proof.

72.    Although Ohio later moved to an offense-based registration scheme similar to Michigan's, the Ohio Supreme Court has held that people like Ms. Doe who got individualized risk-based hearings cannot be

retroactively reclassified under an offense-based scheme. *See State v. Bodyke*, 933 N.E.2d 753 (Ohio 2010).

ANSWER: Defendants admit that the Supreme Court of Ohio ruled against retroactively applying an offense-based system to registrants who were previously judicially determined by a court to not require registration. Defendants deny this is relevant, however, because the ruling was based on separation of powers and limitations against legislative or executive review of judicial decisions. *State v. Bodyke*, 933 N.E.2d. 753, 765-766 (Ohio 2010).

73.    The Ohio Supreme Court also held that Ohio's amended SORA—which requires extensive reporting and lengthens registration periods similar to Michigan's SORA 2021—cannot be applied retro-actively without violating the Ex Post Facto Clause. *See State v. Williams*, 952 N.E.2d 1108 (Ohio 2011).

ANSWER: Defendants admit the Ohio Supreme Court determined that retroactive application of Ohio's SORA violated the Ohio constitution. *State v. Williams*, 952 N.E.2d, 1108 (Ohio 2011).

74.    Thus, in Ohio, Ms. Doe could not be required to register for more than ten years, nor could she be subjected to registry requirements

33

that were stricter than those in effect under the terms of her initial registration order.

ANSWERS: Defendants lack knowledge sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

75.     In 2004, after serving fewer than eight months, Ms. Doe was granted judicial release. Her sentence was modified to four years of probation and 200 hours of community service. She successfully completed her probation, public service, and sex offender therapy, and was discharged from probation in 2008.

ANSWER: Defendants lack knowledge sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

76.     When Ms. Doe received judicial release in 2004, the terms of her probation required her to move to Michigan, to live with her parents. Under Michigan law at the time, she was required to register quarterly for 25 years.

ANSWER: Defendants admit that if Plaintiff Doe's conviction were analogous to Mich. Comp. Law § 750.520d, she would be required to register for 25 years under SORA requirements in place in 2004.

Defendants lack knowledge sufficient to form a belief about the truth of the other allegations and leave Plaintiffs to their proofs.

77. Ms. Doe and her ex-husband shared parenting of their teenage daughter. The daughter attended school in Michigan. Ms. Doe got remarried in 2010 to a man who lives and works in Michigan. Because their extended family also live in Michigan, Ms. Doe and her husband have remained here.

ANSWER: Defendants lack knowledge sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

78. Under the 2011 SORA amendments, Ms. Doe was retroactively reclassified as a Tier III offender, and her registration period was extended from 25 years to life. SORA 2021 incorporates the 2011 amendments that retroactively extended Ms. Doe's registration period to life.

ANSWER: Defendants admit that the 2011 amendments adopted the federal SORNA tier system, which was applied retroactively to Plaintiff Doe, increasing the length of her registration period to life.

79. Ms. Doe has no other criminal convictions.

ANSWER: Defendants lack knowledge sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

80.    In 2013, when Ms. Doe's ex-husband moved from Ohio to Kentucky, she petitioned in Ohio to be granted sole custody of her teenage daughter. As part of the custody process, Ms. Doe was interviewed by a court counselor. The court counselor was aware of Ms. Doe's status on the registry, and was also aware that her teenage daughter knew of Ms. Doe's status, loved her, accepted her, and wanted to stay in Michigan. The counselor recommended that Ms. Doe be granted sole custody, and the court entered an order granting her sole custody in late 2013.

ANSWER: Defendants lack knowledge sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

81.    The judgment in *Does I* reduced Ms. Doe's registration term from life to 25 years. She came off the public internet registry and was required to report only basic information.

ANSWER: Defendants admit the allegation that Ms. Doe is not on the public registry. Defendants neither admit nor deny the remaining allegations because the judgment in *Does I* speaks for itself.

82.     Under SORA 2021, Ms. Doe is again required to register and comply with all SORA 2021's extensive requirements for life.

ANSWER: Defendants admit that Plaintiff Doe must currently comply with SORA for life as a result of the adoption of the federal SORNA tier system.  Defendants deny that current SORA requirements are "extensive" or that Plaintiff Doe must comply with all of SORA's reporting requirements.

83.     There is no mechanism in the statute by which Ms. Doe can ever come off the registry other than to die.

ANSWER: Admitted.

## Mary Roe

84.     Plaintiff Mary Roe resides within the Eastern District of Michigan. She was plaintiff Mary Roe in the *Roe v. Snyder* case.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

85.     In her late teens, Ms. Roe became addicted to drugs and ended up living on the street, hanging out with other addicted runaway or homeless teens. In 2002, at the age of 19, Ms. Roe had consensual sex

with a 14-year-old boy who was associated with her group.

ANSWER: Defendants deny that a person under the age of 16 can consent to sexual penetration; consent in not a defense to a charge of to a charge of third-degree criminal sexual conduct with a 13- to 16-year-old victim. *People v. Starks*, 473 Mich. 227 (2005). Defendants lack knowledge and information sufficient to form a belief about the truth of the other allegations and leave Plaintiffs to their proofs.

86.   Ms. Roe pled guilty to criminal sexual conduct in the third degree, M.C.L. § 750.520d(1)(a), in 2003. She was on probation for two bad-check offenses at the time and ended up serving a little more than two-and-a-half years in prison. She also had to register under SORA. Had she been less than four years older than the boy, SORA would not have applied to her. M.C.L. § 28.722(v)(iv).

ANSWER: Defendants admit that under current SORA requirements Plaintiff Roe would not have to register if she were less than four years older than the victim in her case. Defendants lack knowledge and information sufficient to form a belief about the truth of the other allegations and leave Plaintiffs to their proofs.

87.   Ms. Roe straightened herself out in prison and was released

shortly after her earliest release date. Ms. Roe completed sex offender therapy in prison and also outpatient therapy after her release. She also successfully completed her two-year parole.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

88.     Ms. Roe has led a productive life since her release. She has been in school or employed (or both) steadily since leaving prison. Ms. Roe earned a Bachelor's Degree in Addiction Studies *summa cum laude*, and then went on to earn a Master's Degree in Counseling. She is married, and her husband works in real estate.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

89.     Ms. Roe worked at a residential drug treatment facility for homeless people. She started as a therapist, was promoted repeatedly, and ultimately served as the clinical director supervising a staff of 20 therapists and counselors. The facility provided services to more than 500 clients each year. Ms. Roe was responsible for tripling the residential

treatment program revenue, to $2.7 million a year. Since 2017, she has been in private practice.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

90.     Ms. Roe has not been charged with or convicted of any crime since her 2003 conviction.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

91.     At the time of her conviction, Ms. Roe was required to register for 25 years, meaning she would come off the registry in 2028 at around age 45.

ANSWER: Admitted.

92.     Under the 2011 amendments to SORA, Ms. Roe was retroactively classified as a Tier III offender, putting her on the registry for life. SORA 2021 includes the 2011 amendments that retroactively extended Ms. Roe's registration period to life.

ANSWER: Defendants admit that the 2011 amendments adopted the federal SORNA tier system, which was applied retroactively to Plaintiff Roe, increasing the length of her registration period to life.

93.    In 2016, Ms. Roe was threatened with prosecution if she continued to work at her job as clinical director because her job site was within 1000 feet of a school. This threat occurred despite the Sixth Circuit's 2016 decision in *Does I* holding that the 2006 and 2011 SORA amendments could not be applied retroactively. Ms. Roe filed suit challenging SORA's constitutionality, *see Roe*, No. 16-cv-13353 (E.D. Mich.), which is discussed in more detail below.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

94.    Pursuant to the settlement in that case, Ms. Roe's registration term was reduced from life to 25 years. She was removed from the public internet registry and was required to report only basic information. *See id.*, Stipulated Order, R. 87 (Mar. 15, 2018).

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

95. After being removed from the public registry, Ms. Roe was able to start her own therapy business which focuses on treatment of trauma, including survivors of sexual assault and abusive relationships. She serves only adult clients because of her registry status.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

96. Under SORA 2021, Ms. Roe is again required to register and comply with all SORA 2021's extensive requirements for life. She is terrified that being back on the public registry will destroy her business, and the life she has built.

ANSWER: Defendants admit that Plaintiff Roe must currently comply with SORA for life as a result of the adoption of the federal SORNA tier system. Defendants deny that current SORA requirements are "extensive" or that Plaintiff Roe must comply with all of SORA's reporting requirements. Defendants lack knowledge and information

42

sufficient to form a belief about the truth of the other allegations and leave Plaintiffs to their proofs.

97.    There is no mechanism in the statute by which Ms. Roe can ever come off the registry other than to die.

ANSWER: Admitted.

## John Doe D

98.    Plaintiff John Doe D resides in the Eastern District of Michigan. He was plaintiff John Doe #1 in the *Does II* case.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

99.    In early 2000, when Mr. Doe D was a 19-year-old senior in high school, he had a sexual relationship with a 14-year-old freshman girl.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

100.    One day after school, the two went to Mr. Doe D's house and had sex. The police arrested Mr. Doe D about a week later, and he

admitted that he had sex with the girl.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

101.    The girl gave various statements to the police, initially saying that the sex was not consensual, but later stating that while she felt pressured to have sex, Mr. Doe D did not force her or threaten her to perform any sexual acts.

ANSWER: Defendants deny that a person under the age of 16 can consent to sexual penetration; consent is not a defense to a charge of third-degree criminal sexual conduct with a 13- to 16-year-old victim. *People v. Starks*, 473 Mich. 227 (2005). Defendants lack knowledge and information sufficient to form a belief about the truth of the other allegations and leave Plaintiffs to their proofs.

102.    After Mr. Doe D's attorney explained to him that the girl could not legally give consent because she was underage, Mr. Doe D pled guilty to attempted criminal sexual conduct in the third degree, M.C.L. § 750.520d(1)(a), in 2000, under the HYTA youthful diversion statute.

ANSWER: Defendants admit that a 14-year-old victim cannot consent to sexual penetration. Defendants lack knowledge and information sufficient to form a belief about the truth of the other allegations and leave Plaintiffs to their proofs.

103.    Mr. Doe D was sentenced to 60 days in jail, of which he served a little over a month, and three years of probation.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

104.    In the summer of 2001, Mr. Doe D attended a volleyball game at his former high school with a friend, to cheer for the friend's sister. At the game, Mr. Doe D saw the victim from his case and immediately left the premises. He reported the incident to his probation officer.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

105.    Mr. Doe D knew that he was not allowed any contact with the girl but was unaware that he was prohibited from going to the school. Mr. Doe D's HYTA status was revoked in 2001 as a result of having attended

the volleyball game, and his probation was extended for two more years. Mr. Doe D completed probation in 2005.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

106. Mr. Doe D was approximately four years six months older than the girl. Had the age difference been less than four years, Mr. Doe D would not be subject to sex offender registration. M.C.L. § 28.722(v)(iv).

ANSWER: Defendants admit that under current SORA requirements Plaintiff Doe D would not have to register if he were less than four years older than the victim in his case. Defendants lack knowledge and information sufficient to form a belief about the truth of the other allegations and leave Plaintiffs to their proofs.

107. Mr. Doe D has no other criminal convictions and has led a productive life since his release. He is married, has a ten-year-old son, and works as an assembly line worker and forklift driver.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

46

108. At the time of his conviction, Mr. Doe D was required to register for 25 years, meaning he would come off the registry in 2025 at around age 45.

ANSWER: Defendants admit that if Plaintiff Doe D were convicted prior to 2011 the SORA requirements in place at the time required he register for 25 years. Defendants lack knowledge and information sufficient to form a belief about the truth of the other allegations and leave Plaintiffs to their proofs.

109. The 2011 SORA amendments were applied retroactively to Mr. Doe D. He was reclassified as a Tier III offender, and his registration term was extended from 25 years to life. SORA 2021 incorporates the 2011 amendments that retroactively extended Mr. Doe D's registration period to life.

ANSWER: Defendants admit that the 2011 amendments adopted the federal SORNA tier system, which was applied retroactively to Plaintiff Doe D, increasing the length of his registration period to life.

110. Even after the *Does I* decision in 2016, Defendants required Mr. Doe D to comply with all the provisions of SORA including the 2006 and 2011 amendments, continued to classify him as a Tier III offender,

47

and subjected him to lifetime registration. The court in *Does II* held that to be unconstitutional.

ANSWER: Defendants admit that they applied the federal SORNA tier reporting requirements to Plaintiff Doe D. Defendants deny that the Sixth Circuit held application of the lifetime registration requirement unconstitutional in *Does #1-5*, especially as applied to Plaintiff Does D.

111. Under SORA's 2021 amendments, Mr. Doe D will be required to register and comply with all of SORA 2021's extensive requirements for life.

ANSWER: Defendants admit that Plaintiff Doe must currently comply with SORA for life as a result of the adoption of the federal SORNA tier system. Defendants deny that current SORA requirements are "extensive" or that Plaintiff Doe E must comply with all of SORA's reporting requirements.

112. There is no mechanism in the statute by which Mr. Doe D can ever come off the registry other than to die.

ANSWER: Admitted.

## John Doe E

113.  Plaintiff John Doe E resides in the Western District of Michigan. He was plaintiff John Doe #3 in the *Does II* case.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

114.  Mr. Doe E, raised by adoptive parents, was born with Fetal Alcohol Syndrome, an incurable birth defect resulting from in-utero alcohol exposure.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

115.  Mr. Doe E's in-utero alcohol exposure left him with various neurological deficits. He has a developmental age of nine or ten, and an IQ of approximately 84.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

116.  Mr. Doe E's developmental delays make him vulnerable, and

in the early 1990s, he was sexually assaulted by a co-worker.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

117.  In 1994, Mr. Doe E was accused of engaging in inappropriate sexual touching of his six-year-old nephew. At the time, Mr. Doe E had a chronological age of 21. His nephew, who is now an adult, opposes Mr. Doe E's inclusion on the registry.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

118.  Several psychologists provided detailed testimony that Mr. Doe E's actions were similar to that of a child, and that given his level of developmental and intellectual functioning, his actions should be viewed as those of a child engaged in sexual experimentation, which is common. Mr. Doe E had no history of related behavior.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

50

119. Mr. Doe E pled no contest in 1994 to three counts of criminal sexual conduct in the second degree. M.C.L. § 750.520c(1)(a). At that time, Michigan did not have a sex offender registry. He was sentenced to 90 days in custody, as well as five years' probation, which he successfully completed without incident. He also successfully participated in counseling services with a therapist.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

120. When Michigan's first SORA came into effect in 1995, Mr. Doe E was placed on a non-public law enforcement registry, and was required to update his address with law enforcement if he moved. He was subject to registration for 25 years. Based on that registration period, Mr. Doe E should have come off the registry in 2019.

ANSWER: Admitted.

121. He did not, however, because SORA's various amendments were retroactively applied to him, including amendments extending his registration period to life and retroactively classifying him as a Tier III offender. SORA 2021 incorporates those amendments.

51

ANSWER: Defendants admit that a result of the 1999 amendments to SORA, that Plaintiff Doe E's registration required was increased from 25 years to life; this requirement remained the same at the time of the 2011 amendments to SORA adopting the federal SORNA tier system.

122.  Mr. Doe E has no other criminal history. Mr. Doe E has held a variety of jobs, mostly as a custodian or food service worker.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

123.  He is married, and his wife also has Fetal Alcohol Syndrome. Mr. Doe E and his wife live with Mr. Doe E's 84-year-old mother.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

124.  Mr. Doe E's mother helps him to comply with SORA's complex registration requirements. She is fearful that he will be unable to remain SORA-compliant if she gets sick or passes away and she cannot help him manage his affairs.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

125.  Even after the *Does I* decision in 2016, Defendants required Mr. Doe E to comply with all of the provisions of SORA including the 2006 and 2011 amendments, labeled him as a Tier III offender, and subjected him to lifetime registration. The court in *Does II* held that to be unconstitutional.

ANSWER: Defendants admit that they applied the federal SORNA tier reporting requirements to Plaintiff Doe D.  Defendants deny that the Sixth Circuit held application of the lifetime registration requirement unconstitutional in *Does #1-5*, especially as applied to Plaintiff Does E.

126.  Under SORA 2021, Mr. Doe E will be required to register and comply with all of SORA 2021's extensive requirements for life.

ANSWER: Defendants admit that Plaintiff Doe E must currently comply with SORA for life as a result of 1999 amendments to SORA and the adoption of the federal SORNA tier system.  Defendants deny that

current SORA requirements are "extensive", or that Plaintiff Doe E must comply with all of SORA's reporting requirements.

127.  There is no mechanism in the statute by which Mr. Doe E can ever come off the registry other than to die.

ANSWER: Admitted.

## John Doe F

128.  Plaintiff John Doe F resides in the Western District of Michigan. He was plaintiff John Doe #4 in the *Does II* case.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

129.  Starting around 2009, when Mr. Doe F was in his early twenties, he began texting with an underage girl he had met through soccer. The two eventually started dating, and they dated for about three years. Because Mr. Doe F was in college, they did not see each other often.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

130.  When the girl's parents learned of the relationship, they

disapproved of it, and eventually filed a police report. In 2012, when the girl was 17, Mr. Doe F was interviewed by the police about whether he had sexual contact with his girlfriend before she turned 16.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

131.  Mr. Doe F admitted to the police that he and his girlfriend had had oral sex, but maintained that this did not occur until after the girl was 16 years old. He said they did not have sexual intercourse. Nevertheless, the prosecution charged Mr. Doe F with a 2010 offense that assigned the offense date as the day before the girl's sixteenth birthday.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

132.  In 2013, Mr. Doe F pled guilty to a two-year misdemeanor of sexual misconduct in the fourth degree. M.C.L. § 750.520e. He took this plea agreement after the prosecutor threatened to bring child pornography charges because Mr. Doe F and his girlfriend had shared nude photos via text messages. Mr. Doe F admitted that they had sent the

photos.

ANSWER: Defendants admit that taking photos of a minor engaged in a listed sex act, including erotic nudity, is punishable for up to 20 years in prison. Mich. Comp. Law § 750.145c(2). Defendants lack knowledge and information sufficient to form a belief about the truth of the other allegations and leave Plaintiffs to their proofs.

133. Mr. Doe F served 10 days in jail and was placed on probation for five years. He successfully completed both sex offender therapy and his five-year probation.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

134. Under SORA 2021, Mr. Doe F must register for 25 years until 2038, and he is classified as a Tier II offender. Mr. Doe F has no other criminal convictions.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of the allegation regarding Doe F's criminal convictions and leave Plaintiffs to their proofs. Defendants admit that under the requirements of SORA in place in 2006, Plaintiff

56

was required to register for 25 years; he must still register for 25 years under current SORA requirements.

135. Mr. Doe F had a six-year relationship with an adult woman. In 2018, she became ill with a leukemia-like disorder, and Mr. Doe F spent all of his time and money caring for her. She died in 2019 at age 25.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

136. After COVID took hold, Mr. Doe F's work in building trades dried up, so he agreed to help care for his deceased girlfriend's 85-year-old grandfather, who needed constant in-home assistance due to dementia and heart issues. In August 2021 the grandfather died. At present Mr. Doe F is looking for work and taking an online MBA course.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

137. Even after the *Does I* decision, Defendants continued to require Mr. Doe F to comply with all of the provisions of SORA including

the 2011 amendments, even though his offense preceded those amendments. The state also continued to classify him as a Tier II offender. The court in *Does II* held that to be unconstitutional.

ANSWER: Defendants admit Plaintiff Doe F was required to register for 25 years based on the requirements of SORA in place when he committed the offense, and that the length of Plaintiff's reporting requirements were not changed with the adoption of the federal SORNA tier system in 2011. Defendants deny that the length of Plaintiff's reporting requirements were changed by the 2011 amendments to SORA or that the Sixth Circuit held in *Does #1-5* that application of SORA was unconstitutional as applied to Plaintiff Does F.

138. Under SORA 2021, Mr. Doe F will remain a 25-year registrant, subject to all of the requirements and restrictions imposed by SORA 2021.

ANSWER: Admitted.

### John Doe G

139. Plaintiff John Doe G resides in the Eastern District of Michigan. He was plaintiff John Doe #5 in the *Does II* case.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

140.  In November 2006, when Mr. Doe G was living in Omaha, Nebraska, he developed a relationship with a boy who was 14 at the time. The two engaged in sexual touching. Mr. Doe G was convicted of third-degree sexual assault of a child, Nebraska Rev. Statute 28-320.01(3).

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

141.  Mr. Doe G spent 18 months in prison. There he voluntarily and successfully completed a sex offender treatment program. He was informed that under Nebraska law, he would be required to register as a sex offender for ten years.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

142.  In 2010, Mr. Doe G moved to Michigan to be closer to his family. Under Michigan's SORA, he was subject to registration for 25

years, meaning he would come off the registry around 2031.

ANSWER: Defendants admit that if Plaintiff Doe G's Nebraska conviction was analogous to Mich. Comp. Law § 750.520c(1)(b) or Mich. Comp. Law § 750.520d, under the requirements of SORA in place in 2006, Plaintiff would be required to register for 25 years. Defendants lack knowledge and information sufficient to form a belief about the truth of the other allegations and leave Plaintiffs to their proofs.

143. In 2011, Mr. Doe G was retroactively classified as a Tier III offender and his registration term was extended to life. SORA 2021 incorporates the 2011 SORA amendments that retroactively extended Mr. Doe G's registration period to life.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

144. Mr. Doe G has no other criminal convictions and has been a productive member of society since his release. He is a certified cable test technician, and currently works in product development and technical support for a cable company.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

145. Even after the *Does I* decision, the defendants continued to require Mr. Doe G to comply with all of the provisions of SORA, including the 2011 amendments which classified him as a Tier III offender and subjected him to lifetime registration. The court in *Does II* held that to be unconstitutional.

146. Under SORA 2021, Mr. Doe G will remain on the public registry, and will continue to be classified as a Tier III offender and required to register and comply with all of SORA 2021's extensive requirements for life.

ANSWER: Defendants admit that Plaintiff Doe must currently comply with SORA for life as a result of the adoption of the federal SORNA tier system. Defendants deny that current SORA requirements are "extensive" or that Plaintiff Doe E must comply with all of SORA's reporting requirements.

147. There is no mechanism in the statute by which Mr. Doe G can ever come off the registry other than to die.

61

ANSWER: Admitted.

## John Doe H

148. Plaintiff John Doe H resides in the Eastern District of Michigan. He was plaintiff John Doe #6 in the *Does II* case.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

149. In December 2015, Mr. Doe H pled no contest to criminal sexual conduct in the fourth degree for engaging in sexual touching with a woman who worked in a restaurant he owns. M.C.L. § 750.520e. The woman was a couple of years older than he, and Mr. Doe H believed the sexual touching was mutual and consensual.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

150. Mr. Doe H received no jail time, but was sentenced to five years of probation. He successfully completed his probation as well as sex offender classes.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

151. Mr. Doe H has had no other criminal convictions, and is a productive and respected member of the community.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

152. Under the old SORA, Mr. Doe H was classified as a Tier I offender, subject to SORA for 15 years. Under SORA 2021, he will continue to be a Tier I registrant.

ANSWER: Admitted.

153. As to all Plaintiffs listed above, the State of Michigan has required them to register as sex offenders under SORA 2021 without any individualized assessment that they pose a present danger to the public, and without any evidence that the registry makes communities safer.

ANSWER: Admitted.

**Defendants**

**Governor Gretchen Whitmer**

154.  Defendant Gretchen Whitmer is the Governor of Michigan. She is sued in her official capacity.

ANSWER: Defendants admit that Gretchen Whitmer is the Governor of Michigan and that Plaintiffs have brought an action against her in her official capacity.

155.  Pursuant to Article 5, § 1 of the Michigan Constitution, the executive power of the state is vested in the governor. The Michigan Constitution further provides that the governor shall take care that applicable federal and state laws are faithfully executed. Mich. Const. art. 5, § 8.

ANSWER: Defendants admit that Plaintiffs have correctly cited provisions of the Michigan Constitution.

156.  Defendant Whitmer is ultimately responsible for the enforcement of the laws of this state, and for supervision of all state departments, including the Michigan State Police (MSP).

ANSWER: Defendants admit that Defendant Whitmer has executive power in Michigan and supervises its departments.

64

157. The Governor is an appropriate defendant in a case challenging the constitutionality of a state statute.

ANSWER: Defendants state that the allegation represents a legal conclusion by which law does not require an answer.

## Colonel Joseph Gasper

158. Defendant Colonel Joseph Gasper is the director of the MSP. He is sued in his official capacity.

ANSWER: Defendants admit that Colonel Joseph Gasper is the director of the Michigan State Police and that Plaintiffs have brought an action against him in his official capacity.

159. The MSP maintains Michigan's sex offender registry. M.C.L. § 28.721 *et seq.*

ANSWER: Defendants admit that the Michigan State Police maintains Michigan's sex offender registry as required by statute.

160. The MSP's responsibilities include enforcing SORA, maintaining the state's database of sex offenders, maintaining an online public sex offender registry, registering offenders (along with other law enforcement agencies), developing registration forms, providing statutorily required notices to registrants, collecting registration fees,

65

and coordinating with national law enforcement and the national sex offender registry. *See, e.g.*, M.C.L. §§ 28.724, 28.724a, 28.725, 28.727, 27.728.

ANSWER: Defendants admit that the Michigan State Police maintains Michigan's sex offender registry, but Defendants deny that the Michigan State Police is responsible for "enforcing SORA."

161. The director of the MSP is an appropriate defendant in a case challenging the constitutionality of Michigan's SORA.

ANSWER: Defendants state that the allegation represents a legal conclusion by which law does not require an answer.

## RESPONSE TO FACTUAL ALLEGATIONS

### I. RESPONSE TO HISTORY AND BACKGROUND

#### History of the Michigan Sex Offenders Registration Act

162. SORA 2021 imposes obligations, disabilities, and restraints, which are too extensive to be set out in full here. They are listed in the Summary of SORA 2021's Obligations, Disabilities, and Restraints, Ex. 2, incorporated by reference as if fully set out herein.

ANSWER: Admitted.

163. It was not always so. Michigan passed its first sex offender registration law in 1994. 1994 Mich. Pub. Act 295 (effective Oct. 1, 1995).

66

Before that time, Michigan did not require anyone to register as a sex offender for any purpose.

ANSWER: Admitted.

164. The 1994 statute established a *non-public law enforcement* database containing basic information about people convicted of certain sex offenses. Registration information was exempt from all public disclosure. A person who divulged registry information to the public was guilty of a misdemeanor, and a registrant whose information was revealed had a civil cause of action for treble damages. 1994 Mich. Pub. Act 295, § 10.

ANSWER: Admitted.

165. The statute did not require regular verification or reporting. After the initial registration was completed, the only additional obligation was to notify local law enforcement within 10 days of a change of address. The registrant did not need to notify law enforcement in person. 1994 Mich. Pub. Act 295, § 5(1).

ANSWER: Defendants admit that there were no annual reporting requirements for registrants in 1995 and that registrants were required to report a change in address within 10 days. Defendants deny that

registrants had no other obligation, as they were also required to notify

law enforcement within 10 days of being paroled or within 10 days of

final release from the jurisdiction of the Michigan Department of

Corrections (MDOC).  1994 P.A. 295 § 5(1); M.C.L. § 28.725(5)(1).

166.  Registry information was maintained for 25 years for

individuals convicted of one offense and for life for individuals convicted

of multiple offenses. 1994 Mich. Pub. Act 295, § 5(3)–(4).

ANSWER: Admitted.

167.  The statute applied retroactively to people whose convictions

occurred before October 1, 1995, but only if they were still incarcerated,

on probation or parole, or under the jurisdiction of the juvenile division

of the probate court or department of social services on that date. 1994

Mich. Pub. Act 295, § 3(1)(b)–(c).

ANSWER: Admitted.

168.  Since that time, the legislature has repeatedly amended the

statute, again and again imposing new burdens covering more people and

more conduct.

ANSWER: Defendants admit that SORA has been amended by the

legislature but denies that the amendments have imposed "new

68

burdens covering more people and more conduct"; amendments have reduced reporting requirements, reduced the number of persons required to register, and made changes that do not place additional burdens on registrants.

169. Effective April 1, 1997, the statute's confidentiality protections were weakened. Law enforcement agencies were required to make registry information available to the public (for zip codes within the agency's jurisdiction) during regular business hours. 1996 Mich. Pub. Act 494, § 10(2). The public could view a paper copy of the registry by visiting their local law enforcement agency.

ANSWER: Defendants admit that the law enforcement agencies were required to make registry information available to the public during regular business hours, and that a member of the general public could view a paper copy by visiting their local law enforcement agency. Defendants deny that the version of SORA in place in 1997 did not allow the Michigan State Police (MSP) to make the information available to the public through electronic, computerized, or other accessible means; in fact, the statute specifically authorized it.  1996 P.A. 494 §10(3); Mich. Comp. Law § 28.730(3).

69

170. In 1999, registry information became available to the public on the internet through the public sex offender registry. 1999 Mich. Pub. Act 85, § 8(2), 10(2)(3).

ANSWER: Admitted.

171. New in-person reporting requirements were imposed, with registrants being required to report quarterly or yearly, depending on their offense. 1999 Mich. Pub. Act 85, § 5a(4).

ANSWER: Admitted.

172. Moreover, the 1999 amendments expanded the list of offenses for which registration was required and the categories of individuals required to register for life; lengthened the penalties for registration-related offenses; required registrants to maintain a driver's license or personal identification card; made registry information on certain juveniles public; required fingerprinting and digitized photographs for registrants; and mandated registration for out-of-state students, people working in the state, and anyone convicted of a listed offense or required to register in another state or country. *See generally* 1999 Mich. Pub. Act 85.

ANSWER: Admitted.

173. In 2002, registrants were required to report in person when they (whether or not living in Michigan) enrolled, disenrolled, worked, or volunteered at Michigan institutions of higher learning. 2002 Mich. Pub. Act 542, § 4a.

ANSWER: Admitted.

174. Amendments in 2004 required the internet-based public sex offender registry to include photographs. Mich. Pub. Act 238 (2004). In addition, a fee was imposed on registrants. Failure to pay the fee was made a crime. Mich. Pub. Act 237 (2004). The 2004 amendments also modified the registration requirement for individuals in certain diversion programs. 2004 Mich. Pub. Acts 239, 240.

ANSWER: Admitted.

175. Further amendments effective in 2006 retroactively barred registrants (with limited exceptions) from working, residing, or loitering within 1,000 feet of school property, and imposed criminal penalties for noncompliance. 2005 Mich. Pub. Acts 121, 127. Moreover, the penalties for registration-related offenses were increased. 2005 Mich. Pub. Act 132. Another amendment, which was also applied retroactively, allowed subscribing members of the public to receive electronic notification when

71

a person registers or moves into a particular zip code. 2006 Mich. Pub.
Act. 46.

ANSWER: Admitted.

176. In 2011, SORA underwent major revisions which
fundamentally altered Michigan's sex offender registry. 2011 Mich. Pub.
Acts 17, 18.

ANSWER: Defendants admit that SORA was amended in 2011 to
comply with federal SORNA requirements. Defendants deny that the
2011 amendments "fundamentally altered" Michigan's sex offender
registry.

177. First, the 2011 SORA amendments retroactively imposed
extensive reporting requirements, adding in-person and in some cases
immediate reporting of vast amounts of personal information.

ANSWER: Defendants admit that the 2011 amendments to SORA
adopted several federal SORNA reporting requirements, including in-
person reporting of personal information. Defendants also admit that
the 2011 amendments to SORA did require some changes of
information to be reported "immediately", which exceeded the federal
SORNA reporting requirements. See Pub. L. 109-248, §113; 34 U.S.C. §

20193(c); 2011 P.A. 17, §5(1); Mich. Comp. Law 28.725(1). Defendants

deny the personal information required to be reported was "vast".

178. Second, the 2011 amendments retroactively categorized

registrants into tiers. The tier classifications determine the length of time

a person must register and the frequency of reporting. Tier classifications

are based solely on the offense of conviction. Tier classifications are not

based on, and do not correspond to, a registrant's actual risk of

reoffending.

ANSWER: Defendants admit that the 2011 amendments to SORA

adopted the federal SORNA tier system, including basing tier

classification solely on conviction offense, and applied them

retroactively to registrants, which increased the length of registration

for registrants convicted of seven crimes, namely Mich. Comp. Law §

750.338, 750.338a, 750.338b, 750. 520g(2), and if the victim was under

13 years of age, Mich. Comp. Law § 750.520d unless the victim was

between the age of 13 and 16 years of age, "consented" to the conduct,

and the offender is no more than four years older than the victim, Mich.

Comp. Law § 750.520e if committed by an adult against an individual

under 13 years of age, and 750.520g(1). Defendants deny that the tier

classifications do not correspond to the registrant's risk of reoffending or danger to the public.

179. Before 2011, almost three-quarters of those on the registry were 25-year registrants, whereas after the retroactive tier classifications almost three-quarters were lifetime registrants.

ANSWER: Admitted.

180. There were no individualized assessments or determinations before an estimated 17,000 people had their registration extended to life.

ANSWER: Admitted.

## The *Does I* Litigation

181. In 2012, six Michigan registrants (including Mr. Does A, B, C and Mary Doe in this case) challenged the constitutionality of SORA on numerous grounds. *See Does I*, No. 12-cv-11194. The district court dismissed plaintiffs' ex post facto claim and several other claims. *See Does I*, 932 F. Supp. 2d 803 (E.D. Mich. 2013). After discovery, the parties summarized the extensive record (which included 128 exhibits comprising over 1,650 pages) in a 261-page Joint Statement of Facts. *Does I*, No. 12-cv-11194, R. 90 (June 27, 2014).

ANSWER: Admitted.

182.  The district court issued two opinions under Rule 52, *Does I*, 101 F. Supp. 3d 672 (E.D. Mich. 2015), and *Does I*, 101 F. Supp. 3d 722 (E.D. Mich. 2015), holding, *inter alia*, that:

a. SORA's prohibitions on working, residing, or "loitering" in geographic exclusion zones were unconstitutionally vague;

b. certain of SORA's reporting requirements were unconstitutionally vague;

c. certain of SORA's internet reporting requirements violated the First Amendment; and

d. imposing strict liability for SORA violations violated due process, and therefore SORA therefore must be read to incorporate a knowledge requirement.

ANSWER: Admitted.

183.  Both sides appealed. The Sixth Circuit, in a unanimous opinion authored by Judge Alice Batchelder, held that SORA is punishment and that retroactive application of the 2006 and 2011 amendments violates the Ex Post Facto Clause.  *See Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016).

ANSWER: Defendants admit that *Does #1-5* found that the SORA imposes punishment, but Defendants deny that any provisions of the 2011 amendments to SORA were found unconstitutional except as applied to the named Plaintiffs in *Does #1-5*.

184. With respect to plaintiffs' other challenges to SORA, the Sixth Circuit found that "this case involves far more than an Ex Post Facto challenge. And as the district court's detailed opinions make evident, Plaintiffs' arguments on these other issues are far from frivolous and involve matters of great public importance." *Id.* at 706. The Sixth Circuit held, however, that those questions "will have to wait for another day because none of the contested provisions may now be applied to the plaintiffs [in light of the ex post facto violation]." *Id.*

ANSWER: Defendants admit that the Sixth Circuit in *Does #1-5,* effectively vacated the lower court decision in *Does* I. Defendants deny that the Sixth Circuit held that any provisions of the SORA were unconstitutional except as applied to the named Plaintiffs in *Does #1-5.*

185. SORA 2021 now applies many of those very same contested provisions to the very same plaintiffs, as well as to tens of thousands of other registrants.

ANSWER: Defendants deny that any of the requirements under the current version of SORA are unconstitutional. Defendants admit that the current version of SORA applies to a number of registrants.

186. The state defendants petitioned for certiorari. That petition

76

was denied in 2017, after the United States Solicitor General advised that the petition did not warrant review. *See Snyder v. John Does #1-5*, 138 S. Ct. 55 (2017).

ANSWER: The Defendants admit that the United States Supreme Court denied a request for a Writ of Certiorari and requesting an appeal of the *Does #1-5* opinion.

187. In January 2018, the district court (on remand) entered a stipulated final judgment, *Does I*, No. 12-cv-11194, R. 153 (Ex. 13), that:

a. declared that retroactive application of SORA's 2006 and 2011 amendments violates the Ex Post Facto Clause of the U.S. Constitution;

b. enjoined defendants from retroactively applying the 2006 and 2011 SORA amendments against plaintiffs;

c. enjoined defendants from enforcing *any* SORA provision against one registrant and entirely removed him from the registry because his registration resulted from the "recapture" provisions of the 2011 amendments to SORA, which retroactively imposed SORA on registrants with pre-SORA offenses;

d. removed the other John Does and Mary Doe (who include John Doe A, B, C and Mary Doe in this litigation) from the public internet registry, reduced plaintiffs' reporting requirements to quarterly verification of basic information, and set the length of their registration periods to be that required under the pre-2011 SORA (25 years rather than life).

ANSWER: Admitted.

188. The judgment provided that "if the Michigan legislature amends or replaces SORA to implement the Sixth Circuit's holding in *Does #1-5 v. Snyder*, this injunction shall terminate on the effective date of any such amendments or new statute." *Id.*

ANSWER: Admitted.

189. The passage of new legislation does not affect the declaratory judgment in *Does I* that retroactive application of SORA's 2006 and 2011 amendments violates the Ex Post Facto Clause.

ANSWER: Defendants deny that the 2021 amendments do not terminate the declaratory judgment that retroactive application of the 2006 and 2011 amendments violates the Ex Post Facto Clause.

## The *Roe* Litigation

190. Not long after the Sixth Circuit's 2016 decision, a police officer told registrant Mary Roe that if she did not quit her job as the clinical director at a residential drug treatment center for the homeless (where she had worked for the preceding eight years), she would face prosecution because her workplace was within 1,000 feet of a school. The SORA provision at issue, Mich. Comp. Law § 28.734(1)(a), was part of the 2006

78

amendments, which the Sixth Circuit had held could not be applied retro-

actively. Ms. Roe also remained subject to prosecution for any other

violation of SORA that might be alleged against her, despite the Sixth

Circuit's and the district court's decisions to the contrary in *Does I*.

ANSWER: Defendants deny that the Sixth Circuit found that the

2006 amendments could not be applied retroactively to Plaintiff Roe,

who was not a named Plaintiff in *Does # 1-5*. Defendants also deny that

the Sixth Circuit opinion in *Does # 1-5*, which reversed, superseded, and

effectively vacated the District Court opinion, limited the application of

SORA to Plaintiff Roe in any way. Defendants agree that Plaintiff Roe

was subject to the requirements of SORA. Defendants lack knowledge

and information sufficient to form a belief about the truth of the other

allegations and leave Plaintiffs to their proofs.

191. Ms. Roe filed an action seeking declaratory and injunctive

relief barring enforcement of SORA against her in order to ensure that

she would be protected by the Sixth Circuit's and district court's *Does I*

decisions. *See Roe*, No. 16-cv-13353, Verified Complaint, R. 1 (Sept. 15,

2016).

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

192. The district court granted her motion for a preliminary injunction. *See Roe v. Snyder*, 240 F. Supp. 3d 697 (E.D. Mich. 2017). Ms. Roe then settled the case with the state defendants.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

193. The settlement order with the state included a permanent injunction consistent with *Does I*. Ms. Roe came off the public registry, her registration period was reduced to 25 years, and her reporting duties under SORA were limited. *See Roe*, No. 16-cv-13353, Stipulated Order, R. 87 (Mar. 15, 2018). As in *Does I,* the settlement order was to terminate if the Michigan legislature amended or replaced SORA—which has now occurred.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

## The *Does II* Litigation

194.  Undeterred, Michigan continued to enforce SORA as written, requiring all registrants other than the *Does I* and *Roe* plaintiffs to comply with provisions of SORA that the district court and the Sixth Circuit had held to be unconstitutional.

ANSWER: Defendants deny that any provisions of SORA were found to be unconstitutional in *Does # 1-5*, except as applied to the named Plaintiff's in that case.  Defendants deny that the District Court's opinion applied to SORA, as it was reversed, superseded and effectively vacated by the Sixth Circuit.  See *Doe v. Snyder*, 449 F.Supp.3d 719, 724 (Sixth Cir. 2020) (*Does II*).  Defendants admit that they enforced SORA as required by Michigan law.

ANSWER: Defendants deny that any provisions of SORA were found to be unconstitutional in *Does # 1-5*, except as applied to the named Plaintiff's in that case.  Defendants deny that the District Court's opinion applied to SORA, as it was reversed, superseded and effectively vacated by the Sixth Circuit.  See *Doe v. Snyder*, 449 F.Supp.3d 719, 724 (Sixth Cir. 2020) (*Does II*).  Defendants admit that they enforced SORA as required by Michigan law.

195. Six new plaintiffs—five of whom are also Plaintiffs here—then brought a class action suit seeking to enforce the *Does I* decisions on behalf of all Michigan registrants. *See Does II*, No. 16-cv-13137. The claims brought were those decided in plaintiffs' favor in *Does I* by the Sixth Circuit and the district court.

ANSWER: Defendants admit that a class action was filed in *Does II*. Defendants deny that all the claims made by Plaintiffs in *Does II* were decided in Plaintiff's favor in *Does #1-5*. Defendants neither admit nor deny Plaintiff's other allegations, leaving them to their proofs.

196. At the time, dozens of cases seeking enforcement of the *Does I* decision had already been filed in both federal and state court. *Does II*, No. 16-cv-13137, Partial List of Post-*Does I* Challenges, R. 35–2, PageID.480–82.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

197. After the state stipulated to class certification, the court in 2018 certified a primary class of all people who are or will be subject to registration under SORA, and two ex post facto subclasses (one for pre-

2006 registrants and one for pre-2011 registrants). *Id.*, Order Granting Class Certification, R. 46 (Sept. 11, 2018).

ANSWER: Defendants neither admit nor deny the allegation because the Order Granting Class Certification speaks for itself.

198. Plaintiffs moved for partial summary judgment as to the ex post facto subclasses in July 2018. *Id.*, Mot. For Partial Summ. J., R. 40. Over the next year and a half, the court postponed briefing repeatedly to permit ongoing negotiations with state stakeholders about the contours of a new law. *Id.*, Scheduling Orders, R. 41, 44, 45, 47, 51, 54.

ANSWER: Defendants neither admit nor deny the allegation because the motion for partial summary disposition and the scheduling order speak for themselves.

199. In May 2019—almost a year after plaintiffs moved for partial summary judgment—the parties, hoping to spur legislative action, proposed and the court then entered a stipulated order granting a declaratory judgment. *Id.*, Stipulated Order for Declaratory J., R. 55 (May 23, 2019). The judgment declared the 2006 and 2011 amendments to be unconstitutional as to the ex post facto subclasses. *Id.*, Pg.ID.783. The court deferred ruling on injunctive relief "to avoid interfering with

the Michigan legislature's efforts to address the *Does I* decisions and their

findings of constitutional deficiencies with SORA." *Id.*, Pg.ID.784. But

when the state shut down the legislative work group, plaintiffs moved for

summary judgment.

ANSWER: Defendants neither admit nor deny the allegation

because the stipulated order and motion for summary judgment speak

for themselves.

200. In February 2020, the court granted plaintiffs' motions for

summary judgment on all counts. The order effectively incorporated the

holdings of the Sixth Circuit and the district court in *Does I*, as applied

to the appropriate subclasses. *See Does II*, 449 F. Supp. 3d 719 (E.D.

Mich. 2020).

ANSWER: Defendants admit that the court in *Does II* found the

SORA provisions related to school safety zones, requirement to report

all telephone numbers routinely used by registrants, and the

requirement to provide vehicle information for any vehicle the

registrant routinely operated, void for vagueness in violation of due

process, found that any crime for violating SORA must be interpreted

as incorporating a knowledge element, and found that the 2006 and

84

2011 amendments could not be retroactively applied to registrants.

Defendants also agree that the court found that the following provisions

violated the First Amendment:

> (1) the requirement "to report in person and notify the
> registering authority ... immediately after ... [t]he individual
> ... establishes any electronic mail or instant message
> address, or any other designations used in internet
> communications or postings," M.C.L. § 28.725(1)(f);
> (2) the requirement to report "[a]ll telephone numbers ...
> routinely used by the individual," M.C.L. § 28.727(1)(h);
> (3) the requirement to report "[a]ll electronic mail addresses
> and instant message addresses ... routinely used by the
> individual," M.C.L. § 28.727(1)(l);
> (4) the retroactive incorporation of the lifetime registration's
> requirement to report "[a]ll electronic mail addresses and
> instant message addresses assigned to the individual ... and
> all login names or other identifiers used by the individual
> when using any electronic mail address or instant messaging
> system," M.C.L. § 28.727(1)(i).

Defendants deny that the court effectively incorporated the prior

holdings of the Sixth Circuit Court.

201.  Broadly, the court found that the provisions which violated

the Due Process Clause and First Amendment, and the provisions

imposing strict liability, were void and could not be enforced against *any*

registrant, prospectively or retroactively. *Id.* at 737–38. As to the ex post

facto claim, the court held that the unconstitutional 2011 amendments

were not severable from the constitutional parts of SORA, and therefore,

absent legislative action, the entirety of SORA could not be enforced against the ex post facto subclasses (those whose registrable offense occurred before the effective date of the 2011 amendments). *Id.* at 731–33.

ANSWER: Defendants deny that all the 2011 amendments were found to be unconstitutional. Defendants admit that the court denied retroactive application of the 2006 and 2011 amendments, found some provisions in the 2011 amendments unconstitutional, ordered that those provision not be enforced as to anyone, and that the unconstitutional portions of SORA could not be severed from the constitutional parts of the SORA.

202. The injunctions were to become effective 60 days after entry of judgment, to give the legislature one last chance to pass a new SORA. *Id.* at 739.

ANSWER: Admitted.

203. Before final judgment could enter, however, the pandemic hit, making it impossible for (1) the state to provide notice of the judgment to registrants, (2) the legislature to meet to work on a new bill, and (3) registrants to obey many of SORA's registration requirements due to

86

state and federal stay-at-home orders.

ANSWER: Defendants admit that the COVID-19 pandemic made it difficult to complete the steps necessary to implement a final judgment, difficult for registrants to comply with in person reporting requirements, and difficult for the legislature to enact legislation.

204.  Accordingly, in April 2020, the court entered an interim order delaying the entry of final judgment and notice to the class, and suspending enforcement of most SORA requirements (registration, verification, school zone, and fee violations). *Does II*, No. 16-cv-13137, Interim Order Delaying Entry of Final J., Preliminarily Enjoining Reporting Requirements, and Directing Publication, R. 91 (Apr. 6, 2020).

ANSWER: Admitted.

205.  The *Does II* court entered a final judgment on August 4, 2021, and an amended final judgment on August 26, 2021, that:

a. declared the old SORA to be punishment; the ex post facto application of the 2006 and 2011 amendments to be unconstitutional; the 2011 amendments to be not severable from the rest of the old SORA; and the old SORA to be null and void as applied to people who committed their offense or offenses requiring registration prior to July 1, 2011;

b. permanently enjoined defendants and their agents from enforcing any provision in the old SORA against people who are or will be subject to registration under SORA and who committed

their offense or offenses requiring registration prior to July 1, 2011;

c.  declared unconstitutional and permanently enjoined provisions of the old SORA that prohibited registrants from working, residing or "loitering" in geographic exclusion zones;

d.  declared unconstitutional and permanently enjoined certain reporting requirements; and

e.  Provided that under the Due Process Clause of the U.S. Constitution, the old SORA must be interpreted as incorporating a knowledge requirement when prosecuting compliance violations.

*Id.*, Am. Final J., R. 126.

ANSWER: Defendants neither admit nor deny the allegations because the amended final judgment speaks for itself. To the extent a response is required, Defendants admit that the aggregate effect of application of the 2011 amendments to SORA, constituted an ex post facto punishment that cannot be separated from the statute, and that SORA cannot be applied to anyone who committed their crime prior to the effective dates of the 2011 amendments.

206.  Because the *Does II* case only concerned the constitutionality of the old SORA, the judgment did not enjoin enforcement of SORA 2021.

ANSWER: Defendants admit that the judgment in *Does II* does not enjoin enforcement of current SORA.

88

## The *Betts* Litigation

207.  While the *Does I* and *II* cases were working their way through the federal courts, a parallel criminal case was proceeding through the state courts. *See People v. Betts*, __ N.W.2d __, 2021 WL 3161828 (Mich. July 27, 2021). In *Betts*, a registrant with a 1993 offense challenged his post-2011 SORA-compliance conviction on ex post facto grounds,

ANSWER: Admitted.

208.  On July 27, 2021, the Michigan Supreme Court held that applying the 2011 version of SORA retroactively violated the federal and state constitutional prohibition on ex post facto laws. *Id.* at *15. The Court found the statute's "demanding and intrusive requirements, imposed uniformly on all registrants regardless of an individual's risk of recidivism, were excessive in comparison to SORA's asserted public safety purpose." *Id.* The Court also found that the 2011 amendments were not severable from the rest of the law. *Id.* at *20.

ANSWER: Defendants admit that the Michigan Supreme Court found that the aggregate effect of SORA's 2011 amendments increased registrants' punishment for their offenses in violation of Ex Post Facto, found that the unconstitutional 2011 amendments to SORA were not

89

severable from the rest of SORA, and found that some of the 2011 amendments to SORA's provisions, such as school safety zones, were excessive in relation to SORA's public safety purpose. Defendants deny that a single *Mendoza* factor considered by the Michigan Supreme Court is determinative on whether SORA is considered punishment, or that the current SORA requirements are excessive in relation to SORA's public safety purpose.

### The Legislature Adopts SORA 2021, Which Makes Only Minor Changes to the Statute

209. In March 2020, legislators introduced a new SORA bill. The legislators ignored the work of the legislative work group that had been developing a comprehensive overhaul of SORA that aimed to be consistent with both the constitutional constraints and the social science.

ANSWER: Defendants lack knowledge and information sufficient to form a belief about the truth of this allegation and leave Plaintiffs to their proofs.

210. Instead, the newly introduced bill simply repeated many of the features of SORA that had already been held unconstitutional in *Does I* and *II. See* H.B. 5679, 100th Leg., Reg. Sess. (Mich. 2020).

ANSWER: Defendants deny that the original version of 2020 H.B. 5679 "simply repeated many of the features of SORA that had already been held unconstitutional", as the bill attempted to address issues related to vagueness.  Defendants also deny that the original version of 2020 H.B. 5679, introduced on March 20, 2020, was the version ultimately passed by the legislature and signed into law on December 29, 2020.

211.  Both the Michigan Attorney General and the MSP submitted comments noting the constitutional deficiencies, with Attorney General Dana Nessel stating that "[t]he bill needs considerably more work if the State is going to avoid future litigation over the constitutionality of its registry." *Does II*, No. 16-cv-13137, Att'y Gen. Comments on HB 5679, R. 99-3.

ANSWER: Admitted.

212. In the lame duck legislative session (November through December 2020), both houses of the Michigan legislature passed H.B. 5679, and the governor signed it on December 31, 2020. The amended Act (SORA 2021) took effect March 24, 2021. 2020 Mich. Pub. Act 295.

ANSWER: Defendants admit that 2020 P.A. 295 took effect March 24, 2021. Defendants deny that the Governor signed it on December 31, 2020; it was approved by the Governor on December 29, 2020. 2020 P.A. 295.

213. SORA 2021 makes minimal changes to the structure, substance, and overall requirements of SORA, and is, if anything, more complex, vaguer, and harder to understand than the version that preceded it. The minimal nature of the changes can be seen in the attached exhibit. *See* SORA 2021 with Highlighted Changes Showing 2011 and 2021 Amendments, Ex. 14.

ANSWER: Defendants deny that the 2021 amendments to SORA made "minimal" changes, or made SORA more complex, "vaguer", or "harder to understand".

214. SORA 2021 retains the identical tier system, the identical lengthy/lifetime registration periods, and the virtually identical onerous reporting requirements and online public registry, all without any individual assessment of risk to determine if SORA 2021's severe burdens are warranted.

92

ANSWER: Defendants admit that the 2021 amendments left intact the federal SORNA tier system and reporting requirements, the existence of a public registry, and does not require an individualized assessment of risk for all registrants. Defendants deny that SORA currently does not provide an individualized assessment of risk for any registrants, that the current reporting requirements are "onerous", or that SORA currently creates "severe burdens" on registrants.

215. SORA 2021 remains a conviction-based law. Regardless of the circumstances of the offense, the passage of time, and the proven rehabilitation or incapacity of a registrant, there is, in almost all cases, no path off the registry.

ANSWER: Defendants admit that the 2021 amendments left intact a conviction-based tier system nearly identical to the federal SORNA system, and that some registrants must register for life. Defendants deny that in almost all cases there is no path of the registry; SORA allows certain registrants to petition for removal from the registry and every single registrant can petition for a pardon for their registrable offense(s). Mich. Comp. Law § 28.722(2)(a)(i); Mich. Comp. Law § 28.728c.

93

216. SORA 2021 makes no changes to the offenses which require registration. SORA 2021 continues to require people who had consensual sex with younger teens or committed other less serious offenses to register—retaining lifetime registration in most cases. *See generally* M.C.L. § 28.722(r), (t), (v). SORA 2021 continues to require sex offender registration for people who were never convicted of a sex offense. *See* M.C.L. § 28.722(r)(iii), (r)(x), (v)(ii), v(iii), (v)(viii). SORA 2021 continues to require lifetime registration of children as young as 14. M.C.L. § 28.722(a)(iii)–(iv). SORA 2021 continues to require registration of developmentally and physically disabled persons who may lack the ability to comply with the Act's complex requirements, or who may have limitations that make it effectively impossible for them to reoffend. Indeed, the only substantive change to who must register under SORA 2021 is that the law no longer applies to a very small number of people whose offenses were later expunged or set aside, or who successfully completed a diversion program under HYTA. M.C.L. § 28.722(a)(i)–(ii).

ANSWER: Defendants admit that the 2021 amendments to SORA leave intact the federal SORNA tier system requiring registration and assignment into tiers based on the underlying elements of the

94

conviction offense, that current SORA requires registration of developmentally and physically disabled persons, that offenders convicted of Mich. Comp. Law § 750.349 and Mich. Comp. Law § 750.349b may have to register if their victim was a minor under current SORA, that offenders convicted of Mich. Comp. Law § 750.350 may have to register under current SORA, and that current SORA may require a person as young as 14 years of age to register. Defendants deny that a person under the age of 16 can consent to sexual penetration; consent is not a defense to a charge of third-degree criminal sexual conduct with a 13- to 16-year-old victim. *People v. Starks*, 473 Mich. 227 (2005). Defendants also deny that developmentally or physically disabled people lack the ability to comply with SORA's reporting requirements, that it is "impossible" for persons with physical or mental limitations to reoffend, that current SORA as applied requires a person convicted of Mich. Comp. Law § 750.349, 750.349b, or 750.350 to register if their offense does not have a sexual component, or that the only substantive change on who has to register under current SORA are offenders whose convictions are suppressed under the Holmes Youthful Trainee Act (Mich. Comp. Law § 750.11-750.14 *et. seq.*)

95

217. SORA 2021 continues to classify registrants into three tiers. Tier assignments are determined solely by the offense of conviction and govern both the number of years a person must register and the frequency of reporting. People are assigned to 15-year, 25-year, and lifetime registration without any individualized review ever. *See generally* M.C.L. §§ 28.722(q)–(v), 28.725(11)–(14), 28.725a.

ANSWER: Defendants admit that the 2021 amendments to SORA leave intact the federal SORNA tier system requiring registration and assignment into tiers based on the underlying elements of the conviction offense, that the tiers determine both the length or registration requirements and the frequency of in person reporting requirements, and that there is no individualized review prior to assignment into tiers. Defendants deny that there is never an individualized review; certain registrants may petition the court for review of their registration requirements. Mich. Comp. Law. § 28.728c.

218. SORA 2021 retains virtually all of the 2011 SORA amendments and continues to apply them retroactively to pre-2011 registrants, despite the Sixth Circuit's clear holding that those amendments cannot be retroactively applied.

96

ANSWER: Defendants deny that the 2021 amendments to SORA retain "virtually all" of the 2011 amendments to SORA, that the 2021 amendments to SORA apply retroactively to pre-2011 registrants any provisions found to be unconstitutional as applied to pre-2011 registrants by the Sixth Circuit in *Does #1-5,* or that the Sixth Circuit in *Does #1-5* found that each individual provision of the 2011 could not be applied retroactively to pre-2011 registrants. Defendants admit that some of the 2011 amendments, such as the federal SORNA tier requirements, have been retained by the passage of the 2021 amendments to SORA and have been retroactively applied to pre-2011 registrants.

219. SORA 2021 continues the retroactive extension of pre-2011 registrants' registration terms (e.g., lengthening the 25-year registration period to life) that was imposed under the 2011 SORA amendments. SORA 2021 also maintains the 2011 amendments' "recapture" provision, which imposes all of SORA's burdens on people with pre-SORA sex offenses (i.e., offenses from 1995 or earlier) if they are convicted of any non-sexual felony, even though they have not been convicted of another sex offense in a quarter century. M.C.L. § 28.723(1)(e).

97

ANSWER: Defendants admit that the 2021 amendments leave intact the 2011 amendments to SORA adopting the federal SORNA tier system, including basing tier classification solely on conviction offense, and applied them retroactively to registrants, which increased the length of registration for registrants convicted of seven crimes. Defendants also admit that the 2021 amendments leave intact the recapture provision of SORA. Defendants deny that this is retroactively applied to any offenders, as it only applies to offenders who commit a new felony conviction after the effective date of the recapture provision. Mich. Comp. Law § 28.723(1)(e).

220. SORA 2021 also continues the extensive reporting requirements that were retroactively imposed under the 2011 SORA amendments. Those include the duty to report within three business days any changes to all sorts of information, such as changes to addresses, employment, schooling, vehicle information, email addresses, internet identifiers, and telephone numbers. M.C.L. §§ 28.724a, 28.725, 28.727. SORA 2021 continues to require registrants to report to law enforcement in advance if they travel anywhere for more than seven days, including 21 days advance notice for foreign travel. M.C.L. § 28.725(2)(b), (8). While

some changes to a registrant's information can now be reported by mail, many changes must still be reported in person. *See* M.C.L. §§ 28.724a, 28.725(1)–(2), 28.727; SORA 2021 Summary of Obligations, Disabilities, and Restraints, Ex. 2; MSP Letter, Ex. 15.

ANSWER: Defendants admit that the 2021 amendments adopted the federal SORNA reporting requirements including the duty to report certain information within three days, a registrant is required to report plans to travel for more than seven days, that several types of changes to a registrant's information must be reported in person, and that some of these requirements are applied retroactively to pre-2011 registrants. Defendants deny that all registrant information reporting requirements added in 2011 are applied retroactively, that the reporting requirements are "extensive", or that the current reporting requirements are identical to the requirements required by the 2011 amendments to SORA.

221.  Under SORA 2021, Tier II and III registrants continue to be publicly branded as sex offenders on the public registry, which publishes their pictures and extensive, personal information about them, including their weight, height, hair and eye color, tattoos/scars, birthdate, home

99

address, employer address, school address, and vehicle information. The public registry can now even include a person's email and internet information, increasing the likelihood of online harassment. *See* Senate Substitute for H.B. 5679, 100th Leg., Reg. Sess. (Mich. 2020) (striking § 8(3)(e)). Tier level information is no longer posted, which makes everyone on the public registry appear to be equally dangerous. M.C.L. § 28.728(3)(e).

ANSWER: Defendants admit that tier I and tier II registrants are placed on a public registry, that the public registry does not list their tier, that the public website contains their picture and personal identifiers, and that the public website includes their home address, business address, school address, and vehicle information.  Defendants deny that placement on the public registry, and not the nature of a registrant's underlying conviction, "brands a registrant as a sex offender", that the 2021 amendments to SORA allow a registrant's email and internet identifiers to be placed on the public website, or that removal of a registrant's tier designation makes everyone on the registry "appear to be equally dangerous" as the registrant's conviction offense is clearly listed.

222. Under SORA 2021, registrants must continue to pay an annual fee. M.C.L. § 28.725a(6).

ANSWER: Admitted.

223. Many of SORA 2021's requirements remain incredibly unclear. The legislature amended certain provisions that were held to be unconstitutionally vague in *Does I* and *Does II*, but the new language is as vague as—if not vaguer than—the old language, appearing to require reporting of events going back decades. *See* Section V, Vagueness, *infra*.

ANSWER: Defendants admit that the 2021 amendments addressed language that was previously held to be unconstitutionally vague.  Defendants deny that current SORA's reporting requirements are "incredibly unclear", "vaguer than the old language", or require reporting of events going back decades.

224. SORA 2021 continues to impose lengthy prison terms of up to ten years for non-compliance, as well as mandatory revocation of probation, parole, or youthful trainee status for even technical non-compliance or failure to pay the registration fee. M.C.L. § 28.729. The only change is that, in response to the *Does I* and *Does II* rulings, all SORA compliance violations must be shown to be willful (ending strict

101

liability). *Id.*

ANSWER: Defendants admit that 2021 amendments to SORA added a knowledge requirement to all crimes, probation violations, or parole revocations, for failing to comply with SORA.  Defendants also admit that SORA currently allows a person who has two prior convictions for willfully violating SORA, other than a person failing to comply with Mich. Comp. Law § 28.725a, to be charged with a 10-year felony, and that a registrant may be charged with a 90-day misdemeanor for failing to pay the SORA registration fee.  Defendants deny that SORA "imposes" any prison term.

225.  SORA 2021 bars virtually all registrants from petitioning for removal from the registry, meaning that for almost all registrants there is no path off the registry, regardless of demonstrated rehabilitation or current risk. The statute only allows certain Tier I registrants and juveniles who meet strict criteria to petition for removal after ten and twenty-five years, respectively. M.C.L. § 28.728c(1), (2), (12), (13). Other registrants who meet the same strict criteria are not allowed to petition for removal.

ANSWER: Defendants admit that only certain registrants can petition for removal from the registry under SORA. Defendants deny that registrants who meet the statutory criteria for removal may not petition for removal, that there is no path off the registry for all registrants (e.g., the registrant can petition for a pardon), or that all juveniles required to register must wait to petition the court for removal. Mich. Comp. Law § 28.728c(3),(14),(15).

226. SORA 2021 does eliminate the "geographic exclusion zones" that were adopted in 2006 and barred registrants from living, working or "loitering" within 1,000 feet of a school. But the practical impact of this change is limited because the state publicly brands people as sex offenders on the internet, posts their home and employment addresses, and even provides a mapping tool so that anyone using the internet can see where registrants live and work. The result is that registrants continue to have extreme difficulty finding and keeping housing and employment.

ANSWER: Defendants admit that the 2021 amendments to SORA removed school safety zones, that the public registry contains a registrant's home and work addresses, and that the public registry

provides a mapping tool allowing a person to see where registrants live

and work.  Defendants deny that public registry, and not the

registrants underlying conviction, "brands" registrants as "sex offenders

on the internet", or that placement on the public registry, and not the

registrant's underlying conviction(s), cause any difficulty in finding and

keeping housing and employment.

## II.  RESPONSE TO SORA 2021 DOES NOT PROMOTE PUBLIC SAFETY

227.  Plaintiffs incorporate by reference as if fully set out herein the

expert reports of Dr. Karl Hanson (Ex. 3); Dr. Elizabeth Letourneau (Ex.

4); Dr. J.J. Prescott (Ex. 5); Dr. Kelly Socia (Ex. 6); Dr. Kristen Zgoba (Ex.

7); Dr. John Ulrich (Ex. 8); Dr. Sarah Lageson (Ex. 9); Barbara Levine,

Esq. (Ex. 10); Anne Yantus, Esq. (Ex. 11); and Richard Stapleton, Esq.

(Ex. 12), all of which are attached.

ANSWER: Defendants admit that Plaintiffs have attached several

expert reports to their complaint.

### Response to SORA 2021 Is Counterproductive Because It Is Likely to Increase Rather than Decrease Sexual Offending

228.  The avowed purpose of Michigan's sex offender registry is set

out in the preamble as follows:

The legislature declares that the sex offenders registration

> act was enacted pursuant to the legislature's exercise of the police power of the state with the intent to better assist law enforcement officers and the people of this state in preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders. The legislature has determined that a person who has been convicted of committing an offense covered by this act poses a potential serious menace and danger to the health, safety, morals, and welfare of the people, and particularly the children, of this state. The registration requirements of this act are intended to provide law enforcement and the people of this state with an appropriate, comprehensive, and effective means to monitor those persons who pose such a potential danger.

M.C.L. § 28.721a.

ANSWER: Defendants admit that Plaintiff have correctly cited Mich. Comp. Law § 28.721a.

229. The idea that SORA 2021 will promote public safety is based on the assumption that sex offender registration will reduce recidivism by people with past convictions and thereby reduce the risk of sexual crime to the public.

ANSWER: Defendants admit that reducing recidivism helps increase public safety and that a reduction in overall recidivism might reduce the risk of sexual crimes. Defendants deny that the "idea" that SORA promotes public safety is "based on the assumption that sex offender registration will reduce recidivism by people with prior

105

convictions", that SORA is only concerned with offenses with a sexual element and not enumerated offenses, that the ability to monitor individuals previously convicted of a specified crime doesn't benefit public safety regardless of recidivism, and deny that there is no benefit to public welfare, public morals, or public heath not directly related to public safety by monitoring of  individuals convicted of enumerated offenses.

230.  That assumption is false. To the contrary, **there is a clear scientific and academic consensus that sex offender registration and notification laws like Michigan's do nothing to benefit public safety.**

ANSWER: Defendants deny that sex offender registration and notification laws do nothing to benefit public safety, or that there is a clear consensus on the issue.

231. As outlined in more detail in the declarations of Drs. Elizabeth Letourneau, J.J. Prescott, Kelly Socia, and Kristen Zgoba (Exs. 4, 5, 6, and 7), the research shows that public registries do not reduce the frequency of sexual offenses, may well *increase recidivism*, and at best have no impact on sexual recidivism—despite the immense cost to the

state and to registrants of maintaining a registry law.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, the declarations speaks for themselves.

232. Indeed, dozens of studies by different researchers on the impact of sex offender registration laws have failed to uncover any evidence that public registries reduce recidivism. Rather, virtually all relevant empirical research strongly undermines any argument that public registries combat recidivism. Such laws simply do not reduce sexual reoffending. Instead, the research overwhelming shows that, at best, public registration laws make no difference to recidivism rates, that they may well increase recidivism, and that they are counterproductive to their avowed purpose of public protection. Prescott Decl., Ex. 5, ¶¶1–37; Letourneau Decl., Ex. 4, ¶¶6–11; Socia Decl., Ex. 6, ¶¶5–8.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, the declarations speak for themselves.

233. Research on registration of juveniles similarly fails to find any

public safety benefits. Letourneau Decl., Ex. 4, ¶¶6, 10.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, the declaration speaks for itself.

234. Although it may seem counterintuitive that public registration *increases* rather than decreases recidivism, these results reflect the fact that sex offender registration and the attendant consequences exacerbate risk factors for recidivism such as lack of employment and housing, prevent healthy reintegration into the community, and have deleterious impacts on registrants' mental health. *See* Prescott Decl., Ex. 5, ¶¶1–37; Letourneau Decl., Ex. 4, ¶¶15–16. *See also* Section V, *infra*.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, the declaration speaks for itself.

235. In a nutshell, the evidence indicates that the recidivism-increasing effects of community notification laws at the very least offset and may overwhelm whatever public safety benefits such laws might offer (if any). Prescott Decl., Ex. 5, ¶1.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, the declaration speaks for itself.

236. Applied to Michigan, the research suggests that Michigan's registration statute contributes to sex offense rates in Michigan that are up to 5% higher than they would be without SORA 2021. Moreover, the continued growth in the size of the public registry will likely result in even more *additional* sex offenses as more and more people are added to the registry. Put simply, existing evidence suggests that, far from reducing recidivism, SORA 2021 is actively increasing the total number of sex offenses each year in Michigan. Prescott Decl., Ex. 5, ¶¶13, 15.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, the declaration speaks for itself.

### Response to SORA 2021 Misidentifies the Source of the Risk for Sexual Offending

237. The vast majority of new sex offenses—90 to 95%—are committed not by registered offenders, but by people without prior sex offenses who are thus not listed on a sex offender registry. Socia Decl., Ex. 6, ¶2.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, the declaration speaks for itself.

238.  In addition, SORA 2021, by focusing on identifying strangers who might pose a danger, misidentifies where offending occurs. The vast majority of sex crimes are committed by acquaintances, family members, or other people who know the victim, rather than by strangers. Only 13 to 15% of sex crimes reported to the police are committed by strangers. Child-victim sex crimes are even less likely to involve strangers, who account for only 5 to 10% of such crimes. Socia Decl., Ex. 6, ¶4; Prescott Decl., Ex. 5, ¶32.

ANSWER: Defendants deny that SORA "focuses on strangers who might pose a danger", as many registrants may have acquaintances, family members, or other people, including children, that they are close to, making them potential victims.  Defendants admit that a person on a public registry might be less able to create relationships that would allow access to victims, especially children.  Defendants lack knowledge and information sufficient to form a belief as to the truth of the

allegations in the cited research and leave Plaintiffs to their proofs. In further response, the declaration speaks for itself.

239.  The low proportion of sex crimes involving individuals on the registry—only 5 to 10%—combined with the low proportion of sex crimes involving strangers, helps explain why the research shows that sex offender registries are ineffective at reducing sexual offending or making communities safer. Socia Decl., Ex. 6, ¶5. *See also* Ira Ellman, *When Animus Matters and Sex Crime Underreporting Does Not: The Problematic Sex Offender Registry*, 7 U. Pa. J. L. & Pub. Affs. 1, 19 (2021) ("One can't have much impact on the overall incidence of sexual offenses by concentrating efforts on a group that accounts for less than 5% of them.").

ANSWER: Defendants deny that the low proportion of sex crimes involving individuals on the registry shows that SORA is ineffective at reducing sexual reoffending or making communities safer; to the contrary, the low recidivism rate for registrants tends to show the opposite.   Defendants also deny that research showing that people are more often sexually assaulted by people they know means that SORA is ineffective in reducing the incidence of sexual crimes; to the contrary,

by making potential victims aware of a registrant's prior conviction, the victim may be less likely to create the type of relationship allowing for victimization.

**Response to SORA 2021 Undermines Successful Reentry**

240. Not only do registration schemes fail to improve community safety, but they also undermine the ability of people with past sex offenses to successfully reintegrate into society. Letourneau Decl., Ex. 4, ¶¶6, 15–16; Prescott Decl., Ex. 5, ¶¶1, 34–51; Zgoba Decl., Ex. 7, ¶¶22–30; Socia Decl., Ex. 6, ¶¶8, 22–23.

ANSWER: Defendants deny that SORA fails to improve community safety of that SORA undermines the ability of registrants to integrate into the community.

241. There is a scientific and academic consensus that people subjected to registration and notification requirements (like those imposed by SORA 2021) have difficulty finding and maintaining stable housing, employment, and prosocial relationships. Letourneau Decl., Ex. 4, ¶¶6, 15–16; Socia Decl., Ex. 6, ¶¶22–23; Zgoba Decl., Ex. 7, ¶¶22–30.

ANSWER: Defendants deny that there is a consensus that registration requirements, and not the nature of the registrants

underlying conviction, have difficulty finding and maintaining stable housing, employment, and "prosocial relationships."

242.  Stable housing, employment, and prosocial relationships are the three most important factors contributing to successful reentry and maintenance of a law-abiding lifestyle. Letourneau Decl., Ex. 4, ¶¶6, 15.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, the declaration speaks for itself.

243.  SORA 2021 imperils public safety by increasing the likelihood of joblessness, homelessness, and disconnection from prosocial friends and family, which in turn increases the likelihood of sexual and non-sexual recidivism. SORA 2021 thus sabotages its own avowed public safety goals. Letourneau Decl., Ex. 4, ¶¶6, 15.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, the declaration speaks for itself.

244. The many burdens registrants face—the unstable housing and jobs, the public censure that creates a pariah class, and the difficulty of reintegrating into society as a result—help to explain why the research

shows that public registries do not decrease recidivism, and if anything may *increase* recidivism by exacerbating the core risk factors known to contribute to reoffending. Prescott Decl., Ex. 5, ¶1.

ANSWER: Defendants deny that the existence of a public registry, and not the registrant's underlying conviction, is responsible for the "creation of a pariah class", difficulty of reintegrating into society, or an increase in recidivism by exacerbating the "core risk factors known to contribute to reoffending."

245. The United States is one of the only countries in the world that publicizes sexual offender registry information. The great majority of other countries limit access or use of such information to law enforcement. Zgoba Decl., Ex. 7, ¶¶44–46.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, the declaration speaks for itself.

### Response to SORA 2021's Onerous Registration Requirements Serve No Legitimate Public Safety Purpose

246. SORA requires reporting of a vast array of information, often in person and within three business days, and in most cases for life. *See* SORA 2021 Summ. of Obligations, Disabilities, and Restraints, Ex. 2;

Section V, Compelled Speech, *infra*.

ANSWER: Defendants admit that SORA has adopted the federal SORNA reporting and tier requirements that registrants must report various kinds of information, that the information sometimes must be reported in person, that the information sometimes must be reported within three business days, and that some registrants must register for life. Defendants deny that SORA requires reporting a "vast" amount of information.

247. No empirical evidence supports the notion that more frequent registration check-ins lower recidivism, nor is there evidence that reporting additional information (*e.g.*, email addresses, employment information) reduces recidivism. Failure to register or comply with other registration requirements does not correlate with sexual recidivism. Letourneau Decl., Ex. 4, ¶¶19–21; Hanson Decl., Ex. 3, ¶77; Socia Decl., Ex. 6, ¶¶24–28; Zgoba Decl., Ex. 7, ¶¶12–19.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, the declaration speaks for itself.

248. Even though law enforcement officials do not use the

extensive information reported, and even though failures to report this information have no impact on sexual re-offense rates, SORA 2021's one-size-fits-all regime subjects all registrants to an intensive reporting regimen that requires them to update even trivial changes to information within three days.

ANSWER: Defendants deny that law enforcement officials do not use the information registrants report, that changes in information required to be reported in person are "trivial changes", that failure to report information by registrants has no impact on sexual re-offense rates, that the information required to be reported is "extensive", that the reporting requirements are "intensive", or that SORA is a "one-size-fits-all regime."

249. Data produced in *Does I* showed that there were 14,884 prosecutions for SORA violations over a 15-year period from 1998 to 2012, averaging just under 1,000 per year. Data from 2010 to 2019 show an average of about 880 prosecutions per year (though this data set appears to under-report misdemeanor cases). Levine Decl., Ex. 10, ¶¶ 11, 25-28.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, the declaration speaks for itself.

## III.   RESPONSE TO SORA 2021 SUBJECTS PEOPLE TO REGISTRATION WITH NO INDIVIDUALIZED REVIEW, EVEN THOUGH MANY HAVE A LOWER RISK OF SEXUAL OFFENDING THAN UNREGISTERED PEOPLE

### Response to the Average Recidivism Rate of People with Past Sex Offenses Is Low

250. As noted above, SORA 2021 retains most of the core provisions of the old SORA. It is a one-size-fits-all regime designed for the highest risk offenders, without any individualized assessment of current risk. It presumes that all those convicted of a sex offense pose the same high risk to public safety—that they are all "a potential serious menace and danger," M.C.L. § 28.721a—and that they will remain so for decades or for life.

ANSWER: Defendants admit that SORA currently retains the federal SORNA tier reporting and classification requirements adopted in 2011 and that the legislature has determined that registrants pose a potential serious menace and danger to the health, safety, morals, and welfare of the people, and particularly the children, of Michigan. Defendants deny it is a "one-size-fits-all regime designed for the highest

117

risk offenders" or that SORA "presumes" that all registrants pose the same risk to public safety.

251. Even if that assumption were true, it would not justify the harsh restrictions imposed by SORA 2021 because, as discussed above, those restrictions undermine the law's stated purpose and *reduce* public safety (or have no effect on it). *See* Section II, *supra*.

ANSWER: Defendants state that the allegation represents a legal conclusion by which law does not require an answer. To the extent an answer may be required, Defendants deny the allegations as untrue.

252. The underlying assumption, however—that all people convicted of sex offenses present a serious and long-term public safety risk—is *patently false.*

ANSWER: Defendants state that the allegation represents a legal conclusion by which law does not require an answer. To the extent an answer may be required, Defendants deny the allegations as untrue.

253. **Modern social science research confirms that most people convicted of a sex offense are never convicted of a second such offense.** Hanson Decl., Ex. 3, ¶¶3b, 13–14, 18; Letourneau Decl., Ex. 4, ¶¶6, 12; Socia Decl., Ex. 6, ¶¶9–12. In fact, nearly all

methodologically rigorous research studies find that 80 to 90% of adult males with a past sex offense conviction are never convicted of a new sexual crime. Letourneau Decl., Ex. 4, ¶12.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

254. The recidivism rate of individuals with past sex offense convictions is also much lower than the recidivism rate (to commit a new offense of the same type as the previous offense) of people convicted of virtually any other type of crime.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

## Response to Comparing the Likelihood that Registrants Versus Non-Registrants Will Reoffend

255. For context, it is important to compare registrants' sexual recidivism rates with the likelihood of spontaneous, "out-of-the blue" sexual offending by people who have no prior history of sexual offending. There are two logical comparison groups: (1) people who have committed non-sexual offenses; and (2) the general population of adult males.

Neither group is placed on sex offender registries. Hanson Decl., Ex. 3, ¶¶19, 73.

ANSWER: Defendants admit the general population of adult males are not placed on the sex offender registry. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations and leave Plaintiffs to their proofs.

256. The rate of first time out-of-the-blue sex offenses by individuals with criminal convictions for non-sex offenses (but no history of sexual offending) is equivalent to a 5-year sexual recidivism rate of 2%, and an estimated lifetime rate of 3.8%. Hanson Decl., Ex. 3, ¶20.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of allegation and leave Plaintiffs to their proofs.

257. The rate of first time out-of-the-blue sex offenses by males in the general population is equivalent to a 5-year sexual recidivism rate of 1% and a lifetime rate of 2%. Hanson Decl., Ex. 3, ¶22.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leaves Plaintiffs to their proofs.

258. Any claim that SORA 2021 is intended to serve a public protection function is undermined by the fact that it imposes registration on tens of thousands of people whose risk for sexual recidivism is not perceptibly higher than the baseline ambient risk presented by these two groups. Hanson Decl., Ex. 3, ¶¶3f–g, 19, 24–25, 75.

ANSWER: Defendants admit that SORA 2021 is intended to serve a public protection function. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations and leave Plaintiffs to their proofs.

### Response to the Likelihood of Reoffending Varies Greatly Among People with Past Sex Offenses

259. One of the reasons that sex offender registration laws are so ineffective is that they do not accurately delineate the few people at higher risk to reoffend sexually from the large majority of people at lower risk to reoffend sexually. Letourneau Decl., Ex. 4, ¶13.

ANSWER: Defendants deny the allegation that the sex offender registration law is ineffective. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations and leave Plaintiffs to their proofs.

260. Recidivism rates are not uniform across all individuals with a

past sex offense conviction, but vary based on well-known factors. Hanson Decl., Ex. 3, ¶¶3a, 15–17, 29, Table 1. Thus, while the average recidivism rates are low even for an undifferentiated group of people with past sex offenses, those rates still significantly overstate the risk for lower-risk registrants by lumping them together with people who are at a higher risk of reoffending.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

261. The risk for sexual offending is highly correlated with age. The highest rates of offending are observed during the late teens and early 20s, with progressive declines thereafter. There are very few individuals over the age of 60 who present any significant risk for sexual recidivism. Hanson Decl., Ex. 3, ¶¶3c, 26.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

262. The most widely used risk assessment instrument for sexual offending, the Static-99/Static-99R, groups individuals into five levels:

Level I – Very Low Risk; Level II – Below Average Risk; Level III –
Average Risk; Level IVa – Above Average Risk; and Level IVb – Well
Above Average Risk. Hanson Decl., Ex. 3, ¶¶31, 35–42.

ANSWER: Defendants lack knowledge and information sufficient
to form a belief as to the truth of the allegation and leave Plaintiffs to
their proofs.

263.  Level I identifies individuals with a history of sexual crime
whose risk for a subsequent sexual offense is no different than the rate
of spontaneous out-of-the-blue sexual offending for individuals with a
criminal history but no previous sexual offenses. Out of 100 individuals
at this risk level, 98 will never be convicted of another sexual offense,
even with follow-up periods extended to 20 years. The risk of recidivism
for Level I individuals is so low that it would be practically impossible to
lower it further. Hanson Decl., Ex. 3, ¶¶39, 45.

ANSWER: Defendants lack knowledge and information sufficient
to form a belief as to the truth of the allegation and leave Plaintiffs to
their proofs.

264.  Level II describes individuals whose risk for sexual recidivism
is slightly higher than the general population, but still very low (1.6% to

2.2% after five years). Most Level II individuals will move to Level I given short term (six to 12 months) community supervision and focused counseling. Hanson Decl., Ex. 3, ¶40.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

265. Level III identifies individuals in the middle of the risk distribution for sexual recidivism. Out of 100 individuals classified as Level III, between three and seven will be expected to be reconvicted of a sexual offense within five years; conversely between 93 and 97 will remain sexual offense free. Hanson Decl., Ex. 3, ¶41.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

266. Individuals in the top two levels, Level IVa and IVb, are expected to have sexual recidivism rates of between 9% and 60% after five years. Hanson Decl., Ex. 3, ¶42.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

267. At the time of release, most individuals with a sex offense history will be classified as Level III-average risk. Specifically, the distribution is as follows: Level I – 5.7%, Level II – 18.2%, Level III – 50.4%, Level IVa – 18.1% and Level IVb – 7.6%. Hanson Decl., Ex. 3, ¶43.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

268. As discussed below, this distribution changes over time. After 10 to 15 years, the vast majority of individuals will transition to Level I, and their risk will be at or below the baseline risk for non-sexual offenders, and is so low that any further interventions have no public protection benefits. Hanson Decl., Ex. 3, ¶45.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

125

## Response to the Likelihood of Reoffending Drops Dramatically Over Time

269. The risk that a person will reoffend drops significantly for each year that a person spends in the community offense-free, decreasing dramatically over time. The longer individuals remain offense-free in the community, the less likely they are to reoffend. Most recidivism occurs within three years of a previous arrest and almost always within five years. The decline in recidivism risk for individuals who remain offense-free in the community is one of the most well-established findings in criminology. Hanson Decl., Ex. 3, ¶¶47, 54.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

270. The recidivism risk of people with past sex offenses drops on average by approximately 50% for each five years that they remained offense-free in the community. In other words, if their risk was 10% at time of release, it would drop to 5% after five years, and to 2.5% after ten years. These reductions are particularly evident for the highest risk group, if they remain offense-free in the community over time. Hanson Decl., Ex. 3, ¶59.

126

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leaves Plaintiffs to their proofs.

271. Individuals with a past sex offense conviction who are not arrested for a new sex offense will eventually become less likely to reoffend sexually than a non-registrant with a non-sex offense history is to commit an "out of the blue" sex offense. Hanson Decl., Ex. 3, ¶60.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leaves Plaintiffs to their proofs.

272. For methodological reasons and to improve accuracy, researchers have pegged the baseline rate to the rate of people who have been arrested for a non-sex offense but have no sex offenses. The rates of sexual offending in that group are in the 1 to 3% range within a five-year period. Researchers call this the "desistance" rate, which essentially measures when a person with a past sex offense conviction presents no more risk than someone who is not subject to sex offender registration requirements. Hanson Decl., Ex. 3, ¶¶61, 64.

127

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leaves Plaintiffs to their proofs.

273. How quickly someone with a sexual offense history reaches the desistance level depends on their risk level at the time of sentencing/release. The lowest risk individuals are below the baseline from the outset. Individuals from all risk levels eventually cross the desistance threshold, meaning that their risk is below the baseline, as show in the chart below. Hanson Decl., Ex. 3, ¶¶3.f, 66–68.



ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leaves Plaintiffs to their proofs.

274. Most individuals, i.e., those in the middle of the risk distribution (Level III - average risk) crossed the desistance threshold after about ten years. Individuals classified at the highest risk levels (Level IVb – well above average risk) crossed the desistance threshold after about 20 years. Hanson Decl., Ex. 3, ¶66.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leaves Plaintiffs to their proofs.

275. In other words, the risk for a new sexual offense has, for practical purposes, been extinguished after people remain in the community for 20 years without reoffending sexually. This is true even for those individuals classified at the very highest risk level at the time of release. Hanson Decl., Ex. 3, ¶¶68–69.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leaves Plaintiffs to their proofs.

276.  Research on recidivism also includes time-survival analysis. For example, a person's life expectancy at birth might be 82, but if the person lives to 82, the person may then have a life expectancy of 91. Similarly, the risk for future sexual offending decreases when individuals remain offense-free during previous periods of relatively higher risk. Hanson Decl., Ex. 3, ¶70.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leaves Plaintiffs to their proofs.

277.  The table below presents residual risk based on the initial risk classification and the number of years offense free in the community. The bolded values indicate when individuals with different initial risk levels present a risk for sexual recidivism that is not distinguishable from the rate of spontaneous out-of-the-blue sexual offending by males in the general community. Hanson Decl., Ex. 3, ¶72.

*Projected Residual Risk (Sexual Recidivism Rates [%]) From Time of Release Up to 20 Years Offense Free in the Community for Routine/Complete Samples* (adapted from Table S4 from Lee & Hanson, 2021)

| Follow-up year | Initial risk (based on Static-99R scores) | | | | | | | | | | | | | |
| | Level I | | Level II | | Level III | | | Level IVa | | Level IVb | | | | |
| | -3 | -2 | -1 | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| At release | **1.4** | 2.1 | 3.0 | 4.3 | 6.1 | 8.7 | 12.3 | 17.1 | 23.4 | 31.4 | 41.0 | 51.8 | 62.8 | 73.2 |
| 1 | **1.2** | **1.8** | 2.6 | 3.7 | 5.3 | 7.6 | 10.8 | 15.0 | 20.7 | 28.0 | 36.8 | 47.0 | 57.7 | 68.4 |
| 2 | **1.1** | **1.6** | 2.2 | 3.2 | 4.6 | 6.6 | 9.4 | 13.2 | 18.2 | 24.8 | 32.9 | 42.4 | 52.7 | 63.3 |
| 3 | **0.9** | **1.3** | **1.9** | 2.8 | 4.0 | 5.8 | 8.2 | 11.5 | 16.0 | 21.9 | 29.2 | 38.1 | 47.8 | 58.1 |
| 4 | **0.8** | **1.2** | **1.7** | 2.4 | 3.5 | 5.0 | 7.1 | 10.0 | 14.0 | 19.2 | 25.8 | 33.9 | 43.0 | 53.0 |
| 5 | **0.7** | **1.0** | **1.4** | 2.1 | 3.0 | 4.3 | 6.2 | 8.7 | 12.1 | 16.8 | 22.7 | 30.0 | 38.5 | 47.9 |
| 6 | **0.6** | **0.9** | **1.2** | **1.8** | 2.6 | 3.7 | 5.3 | 7.5 | 10.5 | 14.6 | 19.8 | 26.4 | 34.1 | 42.9 |
| 7 | **0.5** | **0.7** | **1.1** | **1.5** | 2.2 | 3.2 | 4.6 | 6.5 | 9.1 | 12.6 | 17.2 | 23.1 | 30.1 | 38.1 |
| 8 | **0.4** | **0.6** | **0.9** | **1.3** | **1.9** | 2.7 | 3.9 | 5.5 | 7.8 | 10.8 | 14.9 | 20.0 | 26.3 | 33.6 |
| 9 | **0.4** | **0.5** | **0.8** | **1.1** | **1.6** | 2.3 | 3.3 | 4.7 | 6.6 | 9.3 | 12.7 | 17.3 | 22.7 | 29.3 |
| 10 | **0.3** | **0.4** | **0.6** | **0.9** | **1.3** | **1.9** | 2.8 | 4.0 | 5.6 | 7.8 | 10.8 | 14.7 | 19.5 | 25.3 |
| 11 | **0.3** | **0.4** | **0.5** | **0.8** | **1.1** | **1.6** | 2.3 | 3.3 | 4.7 | 6.6 | 9.1 | 12.4 | 16.5 | 21.6 |
| 12 | **0.2** | **0.3** | **0.4** | **0.6** | **0.9** | **1.3** | **1.9** | 2.7 | 3.9 | 5.4 | 7.6 | 10.4 | 13.8 | 18.2 |
| 13 | **0.2** | **0.2** | **0.4** | **0.5** | **0.8** | **1.1** | **1.6** | 2.2 | 3.1 | 4.4 | 6.2 | 8.5 | 11.4 | 15.0 |
| 14 | **0.1** | **0.2** | **0.3** | **0.4** | **0.6** | **0.9** | **1.2** | **1.8** | 2.5 | 3.6 | 5.0 | 6.8 | 9.2 | 12.2 |
| 15 | **0.1** | **0.2** | **0.2** | **0.3** | **0.5** | **0.7** | **1.0** | **1.4** | 2.0 | 2.8 | 3.9 | 5.3 | 7.2 | 9.6 |
| 16 | **0.1** | **0.1** | **0.2** | **0.2** | **0.3** | **0.5** | **0.7** | **1.0** | **1.5** | 2.1 | 2.9 | 4.0 | 5.4 | 7.2 |
| 17 | **0.1** | **0.1** | **0.1** | **0.2** | **0.2** | **0.3** | **0.5** | **0.7** | **1.0** | **1.4** | 2.0 | 2.8 | 3.8 | 5.1 |

| 18 | **0.0** | **0.0** | **0.1** | **0.1** | **0.2** | **0.2** | **0.3** | **0.4** | **0.6** | **0.9** | **1.3** | **1.8** | 2.4 | 3.2 |
| 19 | **0.0** | **0.0** | **0.0** | **0.0** | **0.1** | **0.1** | **0.1** | **0.2** | **0.3** | **0.4** | **0.6** | **0.8** | 1.1 | 1.5 |
| 20 | **0.0** | **0.0** | **0.0** | **0.0** | **0.0** | **0.0** | **0.0** | **0.0** | **0.0** | **0.0** | **0.0** | **0.0** | 0.0 | 0.0 |

*Note.* Recidivism rate projections based on 5-year logistic regression estimates. Bolded values are below the baseline, ambient risk of out-of-the-blue sexual offending among adult males (lifetime risk < 2.0).

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations and leaves Plaintiffs to their proofs.

278.   The proportion of individuals that should be classified as low risk grows steadily over time. The table below show the proportion of individuals with a sexual offending history whose current risk is below the baseline offending rates of (a) individuals with a nonsexual conviction and no history of sexual crime (2% after five years; 3.8% lifetime), and (b) adult males in the general population (1% after five years; 2% lifetime). Hanson Decl., Ex. 3, ¶¶3.f, 74. Neither group is subject to sex offender registration.

*Proportion of Routine/Complete Samples of Individuals with a History of Sexual Offending Whose Current Risk Is Very Low Based on the Numbers of Years Sexual Offense Free in the Community.*

| Number of years sexual offence free | Threshold Used to Define Very Low Risk | |
|---|---|---|
| | Community Males (2% lifetime) | Individuals with a nonsexual criminal conviction (3.8% lifetime) |
| 0 – at time of release | 2.7 | 13.6 |
| 5 years | 13.6 | 39.6 |
| 10 years | 57.1 | 74.3 |
| 15 years | 85.0 | 96.0 |
| 20 years | 100.0 | 100.0 |

Initial risk estimates from Lee & Hanson (2021). Distribution of risk levels based on Static-99R scores (Hanson, Lloyd et al., 2012). Twenty-year (lifetime) sexual recidivism estimate based on methods described by Thornton et al. (2021).

ANSWER: Defendants admit the general population of adult males are not placed on the sex offender registry. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations and leave Plaintiffs to their proofs.

279.  After ten years, most (57.1%) individuals with a sexual offense

history will present no more risk than the general male population (2% lifetime). After 20 years offense-free, all will be classified as presenting no more risk than the general male population. Hanson Decl., Ex. 3, ¶¶3.f, 73–74.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

280.  Using the less stringent criteria of the sexual offending rate of individuals with a nonsexual criminal conviction (3.8% lifetime), 13.6% would be very low risk at time of release. After five years almost 40% will be low risk, and this proportion increases to almost three-quarters (74.3%) after ten years. After 15 years, only a small proportion (four out of 100) of individuals released from a sexual offense would present more risk of sexual offending than any of the other individuals with past criminal justice system involvement—people who are not subject to registration. Again, after 20 years, all will be classified as presenting no more risk than non-registrants who have a non-sex conviction. Hanson Decl., Ex. 3, ¶74.

135

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

281. Because recidivism risk declines so significantly with time spent offense-free in the community, as well as with advancing age, requiring registration for extended periods, much less for life, serves no public safety purpose.

ANSWER: Defendants state that the allegations represent a legal conclusion which by law does not require an answer. To the extent that an answer may be required, Defendants deny the allegation as untrue.

### Response to Empirically Validated Individualized Risk Assessment Tools Are Much More Effective Than the Offense of Conviction in Assessing the Likelihood of Reoffending

282. States use a wide variety of methods to decide who will be on the registry, for how long, what their reporting requirements will be, and whether or not their information will be available to the public online. Some states, unlike Michigan, use risk assessments, rather than the offense of conviction, to determine a person's registry classification. Zgoba Decl., Ex. 7, ¶¶39–43, 46.

136

ANSWER: Defendants admit Michigan does not use risk assessments to determine a person's registry classification. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations and leave Plaintiffs to their proofs.

283. Actuarial risk assessment instruments—which are used to determine the statistical likelihood that an individual will reoffend based on known diagnostic indicators—are far better at predicting recidivism risk than the fact of a conviction. Hanson Decl., Ex. 3, ¶¶27–32; Zgoba Decl., Ex. 7, ¶¶36–37.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

284. The risk for sexual recidivism at the time of release can be reliably predicted by widely-used risk assessment tools, such as the Static-99R, which are used to assess the recidivism risk level of males who have committed sex offenses. Hanson Decl., Ex. 3, ¶¶3e, 29–32.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

285. The Static-99R, and its predecessor, the Static-99, are the most widely used and well-researched sex offense risk assessment instruments in the world. It is the risk prediction tool of choice for the Michigan Department of Corrections and is also used by other correctional entities in assessing parole suitability. Hanson Decl., Ex. 3, ¶¶31–32; Ulrich Decl., Ex. 8, ¶11.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

286. Factors considered in a Static-99R assessment include the nature of the sex-related offense or offenses that led to the most recent arrest (the "index offense"), demographics (age at release, relationship history), sexual criminal history (prior sexual offenses, any male victims, any unrelated victims, any stranger victims, any non-contact sexual offenses), and general criminal history (prior sentencing dates, non-sexual violence committed along with the index offense, prior non-sexual violence). *See* Hanson Decl., Ex. 3, ¶30.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

287.  The Static 99-R is designed to measure re-offense risk at the time of sentencing or release. Risk levels are not static, however, and drop dramatically over time, so when assessing *present* risk levels, the results of a Static-99/99R assessment must be analyzed in conjunction with the amount of time offense-free in the community. Therefore, a "Time Free in the Community Calculator" is used to adjust the initial Static 99/99R score to the present risk level. *See* Hanson Decl., Ex. 3, ¶¶3f, 55–72; Ulrich Decl., Ex. 8, ¶16.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

288.  Using empirically validated risk tools like the Static-99R, decision-makers can identify registrants who pose no more risk of recidivism than do people who have never been arrested for a sex-related offense but have been arrested for some other crime, or whose risk has fallen below that of males in the general population. Hanson Decl., Ex. 3,

139

¶¶29–75.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

### Response to SORA 2021's Conviction-Based Registration Requirements and Conviction-Based Tier Assignments Do Not Correspond to Risk

289. SORA 2021 mandates that people convicted of listed offenses register as sex offenders. The requirement to register is based solely on the offense of conviction, without any determination of risk. M.C.L. § 28.723.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer. To the extent that an answer may be required, Defendants admit the Michigan Legislature does not mandate individual risk assessments as a precondition to registration.

290. The law imposes registration regardless of whether the registrant presents any risk to anyone and without any attempt to use risk assessment instruments that are both cost effective and much more accurate than the offense of conviction at predicting risk. Prescott Decl.,

140

Ex. 5, at 2.

ANSWER: Defendants admit the Michigan Legislature does not

mandate individual risk assessments as a precondition to registration.

Defendants deny the allegation that the law disregards registrants' risk

to the general public as untrue. The severity of the underlying crime is

an indicator of risk. Defendants lack knowledge and information

sufficient to form a belief as to the truth of the remaining allegations

and leave Plaintiffs to their proofs.

291.  With the exception of a small number of Tier I and juvenile

registrants, SORA 2021 contains no mechanism that would allow people

to be removed from the registry based on a showing that they do not

present a risk to the community.

ANSWER: Defendants state that the allegation represents a legal

conclusion by which law does not require an answer. To the extent that

an answer may be required, Defendants admit that the Michigan

Legislature does not permit removal from the registry based on

individual risk assessments for every registrant.

292.  SORA 2021's extensive obligations, including in-person

reporting, remain in force regardless of how long the person has lived

successfully in the community. The level of supervision and reporting, and the restrictions the law imposes, do not decrease over time, but remain permanent—mostly for 25 years or for life.

ANSWER: Defendants admit that registrants must report in-person even if the registrant has lived successfully in the community. Defendants also admit that the Michigan Legislature requires some registrants to register for 25 years and others are required to register for life. Defendants deny that the registrants' reporting obligation are extensive. The reporting obligations are reasonable because they correspond with the potential risk posed by the registrants to the public.

293.  A person's tier assignment is also determined by the conviction (and in some cases the age of the victim or age difference between the registrant and the victim). M.C.L. §§ 28.722, 28.723.

ANSWER: Defendants admit that Plaintiffs have correctly cited provisions of the law, but the law speaks for itself, and no other response is required.

294.  Tier classifications are not based on, and do not correspond to, a registrant's actual risk of reoffending or the danger any registrant

poses to the public.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

295. A registrant's tier classification determines the length of time that a person must register and the frequency of reporting. Tier I registrants must register and comply with all obligations imposed by SORA 2021 for 15 years; Tier II registrants must register and comply for 25 years; and Tier III registrants must register and comply for life. M.C.L. §§ 28.722(q)–(u); 28.725(10)–(13) amended.

ANSWER: Defendants admit that Plaintiffs have correctly cited provisions of the law, but the law speaks for itself, and no other response is required.

296. Tier I registrants are, in most case, on the non-public registry, while Tier II and Tier III registrants are (with the exception of juveniles) on the public registry. M.C.L. § 28.728(2), (4).

ANSWER: Defendants admit that Plaintiffs have correctly cited provisions of the law, but the law speaks for itself, and no other response is required.

143

297.  Thus, whether an individual is listed on the public registry, how long an individual must register, and how often an individual must report, are all also based solely on the offense of conviction, without any assessment or consideration of actual risk.

ANSWER: Defendants admit that the Michigan Legislature does not mandate individual risk assessments. Defendants deny that the Michigan Legislature's tier classifications and the reporting obligations associated with those tiers do not correspond to the registrants' potential risk of reoffending or danger to the public.

298.  The nature of the sexual offense conviction (the name of the offense or criminal code section), however, is unrelated to the risk of recidivism. Hanson Decl., Ex. 3, ¶¶3d, 27–28.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

299.  Although there are differences in the moral seriousness of sexual crimes and the level of punishments that society deems appropriate, the seriousness of the offense is largely unrelated to the likelihood of recidivism. In fact, people who have committed more

144

intrusive sexual offenses are, if anything, less likely to reoffend than people who have committed non-contact sexual offenses. Hanson Decl., Ex. 3, ¶27.

ANSWER: Defendants deny the allegation that the severity of the offense is unrelated to the likelihood of recidivism, to the extent that recidivism means committing another sex based offense. Defendants lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegation and leaves Plaintiffs to their proofs.

300.  There are also no reliable differences in recidivism rates based on whether the victim was a child (12 or under), youth (13 to 17), or adult (18+). Hanson Decl., Ex. 3, ¶27.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leaves Plaintiffs to their proofs.

301.  Although SORA 2021 largely uses perceived offense seriousness and the age of the victim as the basis for determining tier levels (which in turn determine how long a person will be required to report and the frequency of reporting), such offense-based levels have little relationship to the likelihood that a registrant will reoffend.

145

Hanson Decl., Ex. 3, ¶28; Zgoba Decl., Ex. 7, ¶¶36–37.

ANSWER: Defendants admit that the Michigan Legislature's tier classifications are based on the seriousness of the registrants' crime and the victims' age. As to the reminder of the allegation, Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leaves Plaintiffs to their proofs..

302. Indeed, large scale empirical research has shown that the federal tier levels—which SORA 2021 adopts from the federal Sex Offender Registration and Notification Act (SORNA)—either do not correlate or *correlate inversely* with sexual reoffending. In other words, not only does research show that tier levels do not correspond to the likelihood that a person will reoffend, but research shows that **the tier levels are actually backwards**: if anything, people in a higher tier reoffend at lower rates than people in a lower tier. This is not surprising given that SORNA-derived tiering—as in Michigan—is based on the offense of conviction, which has **no bearing on recidivism risk.** Letourneau Decl., Ex. 4, ¶13; Hanson Decl., Ex. 3, ¶28; Zgoba Decl., Ex. 7, ¶¶36–38.

146

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

303.  In sum, Michigan's "one-size-fits-all" conviction-based registration requirements and conviction-based tier structure bear no rational relationship to the actual risk that individual registrants might pose to the community.

ANSWER: Defendants deny the allegation as untrue.

**Response to the Named Plaintiffs Are Very Unlikely to Reoffend**

304.  All named Plaintiffs have a track record of living successfully in the community and all present a very low risk of committing another sexual offense.

ANSWER: Defendants deny Plaintiffs have a track record of living successfully in society because each have felony convictions. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations and leave Plaintiffs to their proofs.

305.  Dr. John Ulrich, a licensed psychologist who provides risk assessments for the federal and Michigan state courts, the Michigan Department of Corrections, and other entities, conducted actuarial risk

assessments for seven of the named male Plaintiffs using the Static-99R and the Time Free in the Community Calculator. Ulrich Decl., Ex. 8, ¶¶2–3, 5–7.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

306.  Dr. Ulrich found that all seven of the assessed Plaintiffs are very unlikely to reoffend. At the time of their release into the community, all were classified in the Level III/Average risk classification (Static-99R scores of 1, 2 or 3). Based on time offense-free in the community since, none of them remains in that classification. Six of the seven are in the Level I/Very Low Risk category and have attained a risk level that is deemed to be "desistance" in the research literature. Ulrich Decl., Ex. 8, ¶¶3, 17; *see also* Hanson Decl., Ex. 3. Indeed, four of the seven (Mr. Does B, C, D, and E) have a lower statistical probability for committing a new sexual offense than the average adult male in the general population has to commit a sexual offense "out of the blue." Ulrich Decl., Ex. 8, ¶3. The seventh will drop to Level I in May 2023, absent a new offense. Ulrich Decl., Ex. 8, ¶3.

148

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

307.  John Doe A could not be scored as he did not commit a sex offense. As an individual with no sex offense history but a criminal history, his risk for committing a sexual offense at the time of release would be comparable to that of males released from prison who committed a non-sexual offense but have no sex offense history, which is around 2% after five years. That number declines further with the passage of time offense free in the community. Mr. Doe A has now lived offense free in the community since 2009. Ulrich Decl., Ex. 8, ¶24.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

308.  Dr. Ulrich found that John Doe B reached the Level I/Very Low Risk category—indicating desistance from sexual offending—in 2008 (13 years ago). His current risk would be even lower and is no greater than a male in the general public who has not committed a sex offense. Ulrich Decl., Ex. 8, ¶26.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

309.   Dr. Ulrich found that John Doe C reached the Level I/Very Low Risk category—indicating desistance from sexual offending—in 2014. His current recidivism risk is 0.9%, and his risk of committing a new sexual offense is no greater than that of a male in the general public who has not committed a sex offense. *Id.*, ¶28.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

310.   Dr. Ulrich found that John Doe D crossed the threshold for a Very Low Risk classification in 2011. His current risk is less than 1%, and is no greater than that of a male in the public who has not previously committed a sex offense. Ulrich Decl., Ex. 8, ¶30.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

311.   Dr. Ulrich found that John Doe E reached the Level I/Very

Low Risk category—indicating desistance from sexual offending—in 2005 (16 years ago). In 2011 (ten years ago), his estimated risk was less than 1%, which is no greater than that of a male in the public who has not previously committed a sex offense. His current risk would be even lower. Ulrich Decl., Ex. 8, ¶32.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

312.  Dr. Ulrich found that John Doe F currently has a residual lifetime risk of 4.0%, placing him in the Level II/Below Average Risk category. In May 2023, absent a new sexual offense, Mr. Doe F will cross the threshold into Level I/Very Low Risk classification with the residual lifetime risk of 2.8%—which the research literature signifies as desistance from sexual offending. Ulrich Decl., Ex. 8, ¶34.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

313.  Dr. Ulrich found that John Doe G has a 2.4% risk of committing a new sexual offense, placing him in Level I/Very Low Risk

classification, which is also considered sexual offending desistance.

Ulrich Decl., Ex. 8, ¶36.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

314.  Dr. Ulrich found that John Doe H has a 2.7% risk of committing a new sex offense, placing him in the Level I/Very Low Risk classification.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leaves Plaintiffs to their proofs. In further response, John Doe H is not on the public registry.

315.   The Static-99R could not be scored for Mary Doe and Mary Roe as it has not been validated for women. The base rate of sexual recidivism among women, however, is very low and is about 1% - 3% at the time of release. The base rate is the best available metric for assessing risk and informing legal policies. Ulrich Decl., Ex. 8, ¶¶40–41, 44.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leaves Plaintiffs to their proofs. In further response, Ms. Roe and Ms. Doe are not on the public registry.

316.  For women who have been living offense free in the community, the risk of reoffending declines even faster than for men. Women who are not chronic offenders and have been living offense-free in the community for more than a few years have a very low risk of reoffending. Ulrich Decl., Ex. 8, ¶44.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leaves Plaintiffs to their proofs.

317.  Given the low baseline risk for women offenders and the fact that Mary Doe and Mary Roe were released in 2004 and late 2005 (17 and 15 years ago, respectively), their risk for sexual offending is extremely low and equals desistance. Ulrich Decl., Ex. 8, ¶45.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leaves Plaintiffs to

their proofs. In further response, Ms. Doe and Ms. Roe are not on the public registry.

### Response to the Vast Majority of Class Members Will Never Reoffend, and Thousands of People Who Are Subject to SORA 2021 Are Less Likely to Commit a Sex Offense Than People Who Are Not Subject to Registration

318. The vast majority of Michigan's registrants will not recidivate. This is true for several reasons.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leaves Plaintiffs to their proofs.

319. First, as discussed above, most people convicted of sexual offenses do not recidivate.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leaves Plaintiffs to their proofs.

320. Second, as also discussed above, people convicted of sexual offenses are a heterogeneous group whose risk level varies.

ANSWER: Defendants admit that sexual offenders are a diverse group whose risk of reoffending and potential danger to the public vary.

321. Third, there are thousands of people, and possibly tens of

thousands of people, subject to SORA 2021 who have lived offense free in the community for ten years, or for decades.

ANSWER: Defendants admit that the Michigan Legislature requires sexual offenders to register even if the offenders remain offense free after their initial conviction. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations and leaves Plaintiffs to their proofs.

322.   Data introduced in the *Does I* litigation showed that there were almost 26,000 registrants in January 2001 (20 years ago), over 38,000 registrants in January 2006 (15 years ago), and about 47,000 registrants in January 2011 (10 years ago). *See Does I*, No. 12-cv-11194, Total Number on SOR By Year, R. 92-3. Today that total number is closer to 55,000 people. Levine Decl., Ex. 10, ¶15.

ANSWER: Defendants admit that the exhibit Plaintiffs cite that was submitted in *Does I* litigation identifies the number of registrants in January 2001, January 2006, and January 2011. Defendant also admits that as of January 2023, there were approximately 43,995 registrants on the public and non-public registry. Defendants lack

155

knowledge and information sufficient to form a belief as to the truth of the remaining allegation and leave Plaintiffs to their proofs.

323.   Recent data show that there are approximately 42,000 registrants (over 78% of the total) who have either a conviction or offense date prior to July 1, 2011, more than ten years ago. Levine Decl., Ex. 10, ¶16.d.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation because it is unclear what "recent data" refers to and leaves Plaintiffs to their proofs.

324.   In other words, a large proportion of registrants have been on the registry for at least ten years. If they were released and have not reoffended for ten years, most such registrants' risk drops below the risk of other *unregistered* males in the general population. For registrants who were released and have not reoffended for 20 years or more, all will have a risk lower than other unregistered males. Hanson Decl., Ex. 3, ¶75.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leaves Plaintiffs to their proofs.

325.  While some of these registrants will have been incarcerated for part or even all of that time, and some may have reoffended, the data suggests that there are likely thousands, and possibly tens of thousands, of registrants who have reached desistance—where it makes no sense to keep them on a registry once they pose the same or less risk of committing a sexual offense than unregistered males in the population.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leaves Plaintiffs to their proofs.

326.  There are also a significant number of registrants who are 60 years or older, a point after which the risk for reoffending is minimal. Hanson Decl., Ex. 3, ¶¶3.c, 26.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leaves Plaintiffs to their proofs.

327.  The longer Michigan's registry continues in its current form, the greater the percentage will be of individuals subjected to registration even though their risk level is at or below that of

comparable unregistered groups. This is because SORA 2021, like its predecessors, imposes extremely long registration terms.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations and leaves Plaintiffs to their proofs.

328. About 73% of registrants (more than 39,000 people) are classified as Tier III registrants and subject to lifetime registration; 20% (more than 10,000 people) are on the registry for 25 years as Tier II; and only 6.5% (almost 3,500 people) are on the registry for 15 years as Tier I. Levine Decl., Ex. 10, ¶¶ 8, 16.b.

ANSWER: Defendants admit that the Michigan Legislature requires Tier I offenders register for 15 years, Tier II offenders register for 25 years, and Tier III offenders register for life. Defendants deny the remainder of the allegations as untrue.

329. There are surely thousands, and possibly tens of thousands, of people subjected to sex offender registration in Michigan who—given their initial risk classification and time offense free in the community— are no more likely to commit a sexual offense than the general population of adult males in Michigan. Hanson Decl., Ex. 3, ¶75.

158

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations and leave Plaintiffs to their proofs.

330.  Keeping thousands of very low risk individuals on the registry serves no public safety purpose. Hanson Decl., Ex. 3, ¶75.

ANSWER: Defendants deny the allegation as untrue.

## IV.  RESPONSE TO THE DIGITAL AGE HAS FUNDAMENT- ALLY CHANGED THE CONSEQUENCES OF BEING SUBJECTED TO SEX OFFENDER REGISTRATION

### Michigan's Public Sex Offender Registry Is Unlike a Criminal Records Archive

331.  Two decades ago, the U.S. Supreme Court described an early version of an internet sex offender registry as "analogous to a visit to an official archive of criminal records," *Smith v. Doe*, 538 U.S. 84, 99 (2003). In the nearly two decades since, technology has dramatically changed the form, function, and reach of registry information. Lageson Decl., Ex. 9, ¶11.

ANSWER: Defendants admit that Plaintiff have correctly cited a portion of *Smith v Doe*, 538 U.S. 84 (2003), but state that the Supreme Court's decision speaks for itself.  Defendants also admit that technology has changed since 2003. Defendants lack knowledge and

159

information sufficient to form a belief as to the truth of the remaining allegations and leave Plaintiffs to their proofs.

332.  The architecture and user functions available on the Michigan registry encourage browsing, mapping, and tracking registrants, rather than accessing targeted archival information. The design, language, and functionality of Michigan's registry website represent each person listed as a current danger to society, regardless of whether the person presents such a risk and even though the registry lacks individualized review. Lageson Decl., Ex. 9, ¶¶12–13.

ANSWER: Defendants deny that the Michigan Legislature's tier classifications do not correspond to the registrants' potential risk of reoffending or potential danger to the public. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations and leave Plaintiffs to their proofs.

333.  The search page signals that registrants are dangerous, stating: "This registry is made available through the Internet with the intent to better assist the public in preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders."

160

ANSWER: Defendants admit that Plaintiffs have correctly cited the registries search page. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations and leave Plaintiffs to their proofs.

334.  The registry is designed to allow users to browse a list of registrants, rather than requiring a targeted name or address search. Internet users need not search for information about specific individuals or locations to have information provided to them that a neighbor or colleague is on the registry, as shown in the image below. Lageson Decl., Ex. 9, ¶¶29–32.



ANSWER: Defendants admit that the online registry allows users to browse a list of registrants or search for registrants by name or address.

335.  An internet user who searches a specific address, city, county, or zip code will pull up an interactive map of the location of all registrants within a specified radius, and need only click on the small black registrant icons to pull up the photo and all the registry details on each person in the area, as shown in the image below. Lageson Decl., Ex. 9, ¶30.



ANSWER: Defendants admit the allegations, with the exception of the allegation regarding "all registry details" and deny that allegation as untrue for the reason that all registry details are not available to the public.

336.   The public can also search by zip code, city, or county. Such a search will pull up a list of registrants, showing their photos, compliance status, name, address, and age, with a clickable link to take

the user directly to the registrant's individual page.

ANSWER: Defendants admit the allegation.

337.  Each registrant's "home page" contains a photo, along with extensive, stigmatizing information about them, and has clickable links to numerous other pages with further information, as shown in the image below.



ANSWER: Defendants admit that the online registry includes registrants photograph and other information. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations and leave Plaintiffs to their proofs.

338.  One of the first pieces of information presented about a

registrant is whether the registrant is "compliant," suggesting that

registrants are being continually supervised because they are currently

dangerous to the public. Lageson Decl., Ex. 9, ¶40. A registrant might

be shown as "non-compliant" for a variety of reasons, including not

having paid the required fee, as shown in the image below.



Last Verification Date:   **07/01/2021**
Compliance Status:        **Non-Compliant**
                          • **Fee Violation**

ate: 10/16/2017

ANSWER: Defendants admit that the online registry shows

whether the registrant is in compliance with their reporting and fee

requirements. Defendants deny as untrue the allegation that noting

registrants' noncompliance with fee and reporting requirements

suggests that a registrant is a danger to the public.

339.  Prominent colored buttons at the top of each registrant's

home page allow the user to "track offender," "map offender," and

"submit a tip," all of which suggest that the individual is dangerous.

ANSWER: Defendants admit that the online registry includes

buttons that allow a user to "track offender," "map offender," and

165

"submit a tip". Defendants deny as untrue that those features suggest that a registrant is dangerous.

340. The "track offender" button allows the user, with a simple click, to sign up for continuous updates about a particular registrant, as shown in the image below. Lageson Decl., Ex. 9, ¶39.



ANSWER: Defendants admit the allegation.

341. With a click on the "map offender" button, the user can see a map pinpointing the person's address, with a balloon showing details including the person's name, compliance status, address, and age.

ANSWER: Defendants admit the allegation.

342. A user who clicks on the "submit a tip" button will be asked to "[p]lease provide information regarding this offender." Tips can be

provided anonymously. More information about tips is shown in the image below.



ANSWER: Defendants admit the allegation.

343.  Much of the information on registrants' "home page"—such as compliance status, registration status, last verification date, registration number, and Michigan Department of Corrections (MDOC) number—likewise suggests that they are being monitored because they are a current danger. Other personal information—like the person's weight, height, and race—is also listed.

ANSWER: Defendants admit that the online registry provides registrants' weight, height, and race. But Defendants deny as untrue

167

that information about registrants' compliance status, registration

status, last verification date, registration number, and MDOC number

suggests that the registrant is dangerous.

344.   The "home page" lists a person's home address, work

addresses, and school addresses.

ANSWER: Defendants admit the allegation.

345.   Another click on "offenses" shows the user the person's

registrable convictions. Contextual information that would likely be

apparent in a court file—such as that the offense occurred when the

registrant was a teenager or involved consensual sex with an under-age

partner—is not provided.

ANSWER: Defendants admit that the online registry lists the

registrants' registerable offenses. Defendants lack knowledge and

information sufficient to form a belief as to the truth of the remaining

allegations and leaves Plaintiffs to their proofs.

346.   Presenting offense information alongside a current photo

and address creates the perception that the person is currently

dangerous. It can also create harmful misperceptions about the offense

itself. For example, an internet user viewing a photograph of a 55-year-

old registrant who is listed for "criminal sexual conduct III (person 13-15)" will likely assume that there was a 40-year age gap, when in fact, given the age of the offense, the registrant may be listed for having had a teenage relationship. Lageson Decl., Ex. 9, ¶44.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations and leaves Plaintiffs to their proofs.

347. Additional clicks pull up information about a person's "aliases" (which could simply be a person's maiden name), offenses, scars/tattoos, and vehicles, including the make, year, color, and license plate number. The message sent is that the viewer should be "on the lookout" for all of these things because the registrant presents a current and outsized danger to the public.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations and leaves Plaintiffs to their proofs.

348. Internet users can also register to receive email alerts about any registrants who move within a selected radius of a specified address, as shown below.

**Sign up for Alerts by Location**

By registering an address, you agree to receive email alerts about any registered offender(s) moving within the selected radius of the address provided.

You will receive a confirmation email within 24 hours confirming your registration. If you do not receive an email confirming your registration in your Inbox, please check your Junk or Bulk Email folders.

Search within .25 mile(s) of

| Address | City | State | Zip |
|---|---|---|---|
| 123 Rawles Avenue | Lansing | MI | 48917 |

Do not enter P.O. Box
This is a required field.

| Email | Confirm Email |
|---|---|
| johndoe@example.com | johndoe@example.com |

By submitting your information you are agreeing to our Terms Of Use. Please view our Privacy Policy.

Submit   Reset

ANSWER: Defendants admit the allegation.

349. The registry is unlike other forms of state public criminal records, which require a targeted search of a specific person; do not allow for browsing of lists of convicted persons; do not include mapping, tracking, or alert capabilities; and do not present up-to-date personal information. The interface, interactivity, format, and text of the registry website are unlike a criminal records archive: the registry does not simply provide historical conviction information, but displays registrants as presently dangerous. Lageson Decl., Ex. 9, ¶¶33–45.

ANSWER: Defendants admit that registrants' personal information is published on the registry. Defendants deny as untrue that posting registrants' personal information on the registry suggests

that the registrants are dangerous. Defendants lack knowledge and
information sufficient to form a belief as to the truth of the remaining
allegations and leaves Plaintiffs to their proofs.

### Response to the Impact of Sex Offender Registration Today Is Entirely Different From What It Was Two Decades Ago

350.   When *Smith* was decided in 2003, the internet was a vastly
different tool than it is today. Only 15% of Americans had broadband
internet in their homes; only 3% got most of their information about the
September 11th attacks from the internet; and only 6% said they would
have a hard time given up their wireless devices. Lageson Decl., Ex. 9,
¶¶46–47.

ANSWER: Defendants admit that present day internet is different
than 2003 internet. Defendants lack knowledge and information
sufficient to form a belief as to the truth of the remaining allegations
and leaves Plaintiffs to their proofs.

351.   Today, the internet is the new public square, and the
primary location for economic, social, political, and commercial
exchanges. *See Packingham v. North Carolina*, 137 S. Ct. 1730, 1735
(2017) ("While in the past there may have been difficulty in identifying
the most important places (in a spatial sense) for the exchange of views,

today the answer is clear. It is cyberspace—the vast democratic forums of the Internet in general, and social media in particular." (internal quotation marks and citations omitted)).

ANSWER: Defendants admit that Plaintiffs accurately quotes *Packingham v North Carolina,* 137 S. Ct. 1730 (2017), but the opinion speaks for itself, and no other response is required.

352. People's registry status has become digitally linked to their names and is retrievable via basic internet searches—indeed it is often the first thing that will show up on a search of a person's name on Google. Search engine optimization has increased public access to registrants' personal information because internet search engine algorithms prioritize that information. Lageson Decl., Ex. 9, ¶¶22, 64–69.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

353. Michigan's disclosures of data that allow for the monitoring of registrants are re-disseminated across the internet, as they are cataloged, indexed, sold, and shared by third parties. Today, registry

information is routinely scraped, copied, aggregated, and re-posted to private websites. Unlike the earlier schemes that required users to conduct a targeted search for specific registrants on a government-run website, registrants' personal information is now "harvested" to drive web traffic to specific websites and to increase "clicks" through posting registrant information on, for example, real estate and other public records websites. Lageson Decl., Ex. 9, ¶¶15–16, 22.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

354.   Changes in internet infrastructure and database technology over the nearly two decades since *Smith v. Doe* have transformed registry information from a government-run source that a user had to intentionally access, into a large scale, private-sector data commodity that is duplicated, aggregated, and pushed to innumerable internet users who passively receive registrant information without even intending to access it. Lageson Decl., Ex. 9, ¶¶50–62.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

**Response to the Ubiquity of Registry Information on the Internet Causes Registrants to Live in Fear and to Avoid the Internet, with Damaging Consequences to Reentry**

355. When a person's registry status "pops up" on the internet, the consequences can be devastating, impacting employment, housing, education, and involvement in civic, religious, social, and family life. Easy access to registry information also results in registrants becoming the targets of on- and off-line vigilantism. Lageson Decl., Ex. 9, ¶¶74–95.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

356. The ubiquity of registry information on the internet leads registrants to purposefully avoid digital and institutional spaces that rely on the internet, which in today's world, is central to public and private life. Registrants' opting out of institutional and social life through "digital avoidance" has consequences for recidivism and public

safety, because it makes it more difficult for registrants to access the basic necessities shown to prevent crime, such as safe and stable housing, employment, and community relationships. Lageson Decl., Ex. 9, ¶¶17–18.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

357.   The consequences of digital labeling through the format of the Michigan registry and the attendant dissemination of registry information on private websites ultimately undermines public safety by making pariahs of registrants, effectively cutting them out of social, institutional, and technological life. Lageson Decl., Ex. 9, ¶19.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

358.   Plaintiffs live in fear that anyone who Googles their names will discover that they are on the registry, and that they will lose their jobs, housing, educational opportunities, or relationships as a result. This fear leads Plaintiffs to curtail their online presence, often

restricting their use to a close circle of friends and family who already know about their criminal history.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

359.  For example, Mr. Doe B, who was removed from the public registry as a result of the *Does I* litigation, now has his own website for his real estate business and has strong reviews. He is extremely concerned that going back on the public registry as a result of SORA 2021 will mean that anyone looking for his services as a realtor will find out he is on the registry, or that one review mentioning his status will ruin his livelihood and ability to provide for his family.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

360.  Ms. Doe has had panic attacks about being outed publicly, or at work, where her co-workers do not know she is on the registry. In building relationships, she never knows whether to reveal her status, which often leads to the person cutting her off, or not to reveal her

176

status, only to have the person find out and feel betrayed. Coming off the public registry as a result of the *Does I* litigation allowed her to begin developing relationships in a more normal way. SORA 2021 again brands her publicly as a sex offender, and she will again be living in fear that a random Google search by a colleague or neighbor could upset the life she has built.

ANSWER: Defendants deny as untrue the allegation that the registry labels registrants as sex offenders. In further response, Ms. Doe is not on the public registry. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations and leave Plaintiffs to their proofs.

361.  Similarly, Ms. Roe, who built a successful business as a therapist after coming off the public registry as a result of the *Roe* litigation, now lives in constant fear that she will be outed to clients and potential clients as a sex offender and will lose everything she has worked so hard for. She uses almost no public social media and avoids any online attention. The prospect of being back on the registry pushed her into therapy for depression and post-traumatic stress disorder (PTSD).

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, Ms. Roe is not on the public registry.

362. After his girlfriend's death, Mr. Doe F began going online to support other people who were dealing with leukemia. He worries that others in these support groups will find out that he is a registered as a sex offender and reject his help.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

## V. RESPONSE TO SORA 2021 IMPOSES DEVASTATING BURDENS ON THE NAMED PLAINTIFFS AND THE CLASS

363. SORA 2021 imposes a vast array of obligations, disabilities, and restraints that govern every aspect of Plaintiffs' lives. *See* Summ. of SORA 2021's Obligations, Disabilities, and Restraints, Ex. 2. SORA 2021 compels Plaintiffs to continually provide a great deal of information about themselves to law enforcement, much of which must reported in person and/or within three days—a burden that for most registrants lasts for life. SORA 2021 subjects Plaintiffs to continuous

178

surveillance and supervision, and stigmatizes them as dangerous without any individualized assessment. In addition, SORA 2021 severely limits their ability to find housing and employment; to get an education; to travel; to engage in free speech, including use of the internet; to be free from harassment and stigma; and to understand what is required of them under the statute.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer. To the extent that an answer may be required, Defendants deny the allegations as untrue.

364.   Finally, registration under SORA 2021 triggers a vast array of additional obligations, disabilities, and restraints under federal, state, and local laws (as well as private policies barring or limiting registrants from access to goods or services available to the public), all without any individualized assessment or showing either that registrants pose a danger or that the restrictions make communities safer.

ANSWER: Defendants state that the allegations represent a legal conclusion which by law does not require an answer. To the extent that an answer may be required, Defendant denies the allegations as untrue.

179

## Response to Compelled Speech

365.   Registrants are compelled under threat of criminal

prosecution to provide extensive information to the state, including:

- Legal name and any aliases, nicknames, ethnic or tribal names, or other names by which the individual is or has been known. M.C.L. § 28.727(1)(a).

- Social Security number and any Social Security numbers or alleged Social Security numbers previously used. M.C.L. § 28.727(1)(b).

- Date of birth and any alleged dates of birth previously used. M.C.L. § 28.727(1)(c).

- The address where the individual resides or will reside. M.C.L. § 28.727(1)(d).

- The name and address of any place of temporary lodging used or to be used during any period in which the individual is away, or is expected to be away, from his or her residence for more than 7 days, including the dates when the temporary lodging is used or to be used. M.C.L. § 28.727(1)(e).

- The name and address of each employer, including any individual who has agreed to hire or contract for the individual's services. M.C.L. § 28.727(1)(f). It is unclear whether these requirements apply to volunteer work. *Compare* M.C.L. § 28.727(1)(f) (requiring reporting on "employers" and defining "employer" to include individuals who "hire or contract" with the registrant), *with* M.C.L. § 28.722(d) (defining "employee" to mean "an individual who is self-employed or works for any other entity as a full-time or part-time employee, contractual provider, or volunteer, regardless of whether he or she is financially compensated").

- The general areas where the individual works and the normal travel routes taken by the individual in the course of his or her

180

employment if the individual lacks a fixed employment location. M.C.L. § 28.727(1)(f).

- The name and address of any school being attended, or any school that has accepted the individual as a student that he or she plans to attend. M.C.L. § 28.727(1)(g).

- All telephone numbers, including but not limited to residential, work and mobile phone numbers, registered to or used by the individual. M.C.L. § 28.727(1)(h).

- All electronic email addresses registered to or used by the individual, if the individual was required to be registered after July 1, 2011. M.C.L. § 28.727(1)(i).

- All internet identifiers, meaning all designations used for self-identification or routing in internet communications or posting, registered to or used by the individual, if the individual was required to be registered after July 1, 2011. M.C.L. §§ 28.722(g); 28.727(1)(i).

- The license plate number and description of any vehicle owned or operated by the individual. M.C.L. § 28.727(1)(j).

- Driver's license number or state personal identification card number. M.C.L. § 28.727(1)(k).

- A digital copy of the individual's passport and other immigration documents. M.C.L. § 28.727(1)(l).

- Occupational and professional licensing information, including any license that authorizes the individual to engage in any occupation, profession, trade, or business. M.C.L. § 28.727(1)(m).

- Written documentation of employment status, contractual relationship, volunteer status, or student status when individual enrolls or discontinues enrollment at an institution of higher education. M.C.L. §§ 28.724a(5), 28.727(1)(r).

- A complete physical description of the individual. M.C.L. § 28.727(1)(o).

ANSWER: Defendants state that the allegations represent a legal conclusion which by law does not require an answer. To the extents an answer may be required, Defendants deny that Plaintiffs internet ID's and email addresses are published on the public registry. In further response, the federal SORNA requires registrants report the same information.

366. Tier III registrants must report this information every three months; Tier II registrants must report it twice a year; and Tier I registrants must report it yearly. M.C.L. § 28.725a(3).

ANSWER: Defendants admit that Plaintiffs have correctly cited a provision of the law, but the law speaks for itself, and no other response is required.

367. SORA 2021 also requires registrants to provide a photograph, fingerprints, and palm prints. If registrants' appearance changes, they must update the photograph within seven days. M.C.L. §§ 28.725a(5), (8), 28.727(1)(q).

ANSWER: Defendants admit that Plaintiffs have correctly cited a provision of the law, but the law speaks for itself, and no other response is required.

368.  In addition to reporting in person at regular intervals, registrants living in Michigan must report within three business days in person, or in another manner prescribed by the MSP, whenever certain information changes. M.C.L. §§ 28.724a, 28.725(1)-(3).

ANSWER: Defendants admit that Plaintiffs have correctly cited a provision of the law, but the law speaks for itself, and no other response is required.

369.  Registrants must report **in person** within three days, either because the statute requires it or because the MSP has required in person reporting, whenever the registrant:

- Changes or vacates his or her residence or domicile. M.C.L. § 28.725 (1)(a).

- Changes his or her place of employment. M.C.L. § 28.725(1)(b), (3).

- Discontinues employment. M.C.L. § 28.725(1)(b). Again, it is unclear whether these requirements apply to volunteer work.

- Changes his or her name. M.C.L. § 28.725(1)(d).

- Enrolls as a student. M.C.L. § 28.724a(1)(a), (3)(b).

183

- Discontinues enrollment as a student. M.C.L. § 28.724a(1)(a), 28.724a (3)(b).

- If, as part of his or her course of studies, the individual is present at any other location in Michigan or throughout the United States. M.C.L. § 28.724a(1)(b), (3)(b).

- If the individual discontinues his or her studies at any other location in Michigan or throughout the United States. M.C.L. § 28.724a(1)(b), (3)(b).

- Before the individual changes his or her domicile or residence to another state. The new state and, if known, the new address must be reported at the time of reporting. M.C.L. § 28.725(7).

ANSWER: Defendants admit that Plaintiffs have correctly cited provisions of the law, but the law speaks for itself, and no other response is required. In further response, the explanation of duties attached to the complaint speaks for itself.

370.   In addition, registrants living in Michigan must report within three days:

- Any intention to travel for more than seven days. M.C.L. § 28.725(2)(b)

- Any change in vehicle information. M.C.L. § 28.725(2)(a).

- Any change in telephone numbers registered to or used by the individuals. M.C.L. § 28.725(2)(a).

ANSWER: Defendants admit that Plaintiffs have correctly cited provisions of the law, but the law speaks for itself, and no other response is required.

371. Registrants living in Michigan who are required to register after July 1, 2011, must also report any change in electronic mail addresses or internet identifiers within three days. M.C.L. § 28.725(2)(a). The term "internet identifiers" is broadly defined to mean all designations used for self-identification or routing in internet communications or posting. M.C.L. § 28.722(g).

ANSWER: Defendants admit that Plaintiffs have correctly cited provisions of the law, but the law speaks for itself, and no other response is required.

372. In an apparent attempt to make it easier for prosecutors to establish the willfulness requirement that the *Does I* and *Does II* courts said is constitutionally required to establish a SORA violation, the MSP amended the language of the Explanation of Duties form, Ex. 16. Registrants must now agree and sign that: "I have read the above requirements and/or had them read to me and I *understand* my registration duties." (Emphasis added.)

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer. To the extent that

185

an answer may be required, Defendants deny the allegation as untrue. In further response, the explanation of duties speaks for itself.

373.  Similarly, registrants who update information using the Michigan Sex Offender Registry Mail-in Update Form, Ex. 17, must sign that "I have read the 'Explanation of Duties to Register as a Sex Offender' listed on pages two and three of this form and/or had them read to me and I *understand* my registration duties." (Emphasis added.)

ANSWER: Defendants admit that registrants must sign the declaration. In further response, the declaration speaks for itself.

374.  It is a crime for registrants not to sign the Explanation of Duties, M.C.L. §§ 28.727(4), 28.729(3). Thus, Plaintiffs must either attest that they understand SORA 2021's complex requirements—even if they do not—or face prosecution.

ANSWER: Defendants admit that Plaintiffs have correctly cited provisions of the law, but the law speaks for itself, and no other response is required.

375.  Compelling registrants to attest that they understand SORA 2021 is unnecessary. Prior to 2021, registrants were simply required to acknowledge having read the Explanation of Duties form, but were not

186

forced to attest to their understanding of the law. Pre-2011 Explanation of Duties, Ex. 19.

ANSWER: Defendants state that the allegations represent a legal conclusion which by law does not require an answer. To the extent that an answer may be required, Defendants deny the allegations as untrue. In further response, the explanation of duties speaks for itself.

376. Because registrants must complete their verifications in person, and report many changes of information in person, SORA 2021 not only compels them to speak, but also requires them to do so in particular places—typically in busy police station lobbies where they can be heard by others—at particular times.

ANSWER: Defendants state that the allegations represent a legal conclusion which by law does not require an answer. To the extent that an answer may be required, Defendants deny the allegations as untrue.

377. Not every law enforcement agency in Michigan handles registration. Some agencies that do handle registration only allow reporting at specific times. Some registrants must travel long distances to report or must wait in long lines when they report. The process of registering even a simple change of information can sometimes take

187

hours, and registrants may need to take considerable time off work to report.

ANSWER: Defendants admit that not every law enforcement agency in Michigan handles registration. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations and leave Plaintiffs to their proofs.

378. For example, at times Mr. Doe B's police station was open for registration only three to four hours a day, with a different schedule depending on the day of the week. When updating registry information, he sometimes took off work and went to register, only to find that the office was closed. At present, the situation is worse—his current station is open for registration fewer days a week for fewer hours, and the hours are more erratic.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

379. Registering can also be humiliating. For example, at times Mr. Does B has reported when the police station was crowded with other people. Instead of asking if he had any changes to report and

188

having him sign the form, the officers taking his report raised their

voices and seemed to make a point of humiliating him by keeping him

at the window and letting everyone in the room know that he was on

the registry.

ANSWER: Defendants lack knowledge and information sufficient

to form a belief as to the truth of the allegation and leave Plaintiffs to

their proofs.

380.  Mr. Doe C, who knows a lot of people in his community, tries

to report as early in the morning as possible in the hopes that there will

be few people, and no one he knows, at the police station. He is embar-

rassed to have to stand in a public lobby and explain that he is there to

register. If he sees people he knows, he goes and waits outside until

they leave, so that they don't hear him say that he's a sex offender.

ANSWER: Defendants lack knowledge and information sufficient

to form a belief as to the truth of the allegation and leave Plaintiffs to

their proofs.

381.  When Mr. Doe D previously reported at his nearest MSP

post, it would often take him hours to complete the verification process.

He was embarrassed having to wait in a crowded lobby for the police to

publicly announce that he was there to register as a sex offender.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

382.  Mr. Doe E tries to report at the same law enforcement location to avoid being harassed by employees or members of the public at a new place. Still, every time he goes in, he is worried about how members of the public will react if they see that he is there to register as a sex offender.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

383.  Mr. Doe G has been repeatedly reported as non-compliant even when he was in fact compliant with his registration obligations. For example, a few years ago, he gave his palm prints to his local law enforcement agency but never received a receipt despite demanding one. After he discovered that he was listed as non-compliant for not giving his palm prints, he was told by law enforcement to give his palm prints again. He tried to report to his local law enforcement office about

190

five times only to find the office closed or the right personnel not there. He ended up having to travel to an MSP post about 30 minutes away in order to do so.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

384. When Mr. Doe G has reported to his local law enforcement office, deputies have commented in public that he was a really bad offender and wondered out loud why he was not still incarcerated. Local law enforcement once asked him for his work hours only to show up at his workplace and cause him to lose his job.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

385. Ms. Doe reports to a police station that is only open on weekdays, and must take time off work to register. This is not easy, given that she may be away from work for several hours. Because her employer does not know that she is on the registry, she has to come up with an excuse each time. The actual registration process is

191

embarrassing because she must speak loudly through bulletproof glass or a speaker, allowing other people to hear that she is a registered sex offender.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

386. Defendants compel Plaintiffs and class members to provide information and then use that information to stigmatize them and to broadcast a state-endorsed online message that they are dangerous sex offenders. Plaintiffs and class members vehemently disagree with the message that the government broadcasts about them.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer. To the extent than an answer may be required, Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

**Response to Ongoing Reporting, Surveillance and Supervision**

387. SORA 2021's reporting, surveillance, and supervision requirements not only compel Plaintiffs and class members to speak,

but are similar to and, in fact, in many ways more restrictive and onerous than, the reporting, surveillance, and supervision that many registrants experienced while on probation or parole.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer. To the extent than an answer may be required, Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

388.  Like probation or parole, SORA 2021 requires registrants to report to a criminal justice agency, namely their local law enforcement agency, the sheriff's office, or the MSP. M.C.L. § 28.722(m).

ANSWER: Defendants admit that Plaintiffs have correctly cited provisions of the law, but the law speaks for itself, and no other response is required.

389.  As a result of SORA 2021's three-day reporting requirements, coupled with the verification requirements, many registrants must report in person to law enforcement with a frequency that is similar to, and often greater than, their reporting obligations

when they were on probation or parole. Indeed, SORA 2021's require-

ment that many changes be reported within three business days, often

in person, is a level of reporting that far exceeds what most registrants

experienced while they were serving their sentences on probation or

parole. Moreover, Plaintiffs must report significantly more information

than what they were required to report when on probation or parole.

ANSWER: Defendants lack knowledge and information sufficient

to form a belief as to the truth of the allegation and leave Plaintiffs to

their proofs.

390.  Probation and parole conditions are often relaxed during the

course of supervision and can be challenged through the MDOC

grievance procedures. Probation and parole requirements typically last

two years. SORA requirements do not decrease over time, cannot be

contested, and last 15 years to life.

ANSWER: Defendants state that the allegation represents a legal

conclusion which by law does not require an answer. To the extent that

an answer may be required, the statute speaks for itself. In further

response, Defendants lack knowledge and information sufficient to form

a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

391. The public sex offender registry includes a "submit a tip" button on each registrant's page. Information provided by the public through that system is sent to the registrant's local law enforcement agency for follow-up.

ANSWER: Defendants admit that the online registry includes a "submit a tip" button that notifies users if a new tip is in the system.

392. Prior versions of the SORA database included investigative screens for each registrant, which are used to document citizen tips, track follow-up law enforcement actions, and track the progress of investigation into registrants. The MSP recently moved the SOR database to a new platform. Upon information and belief, the new platform likewise includes investigative screens for each registrant, which are used to document citizen tips, track follow-up law enforcement actions, and track the progress of investigation into registrants.

ANSWER: Defendants admit the allegation.

393. The MSP, county sheriff's offices, the U.S. Marshalls, and

local law enforcement agencies regularly engage in a variety of sweeps to determine SORA compliance. These operations include random residence checks to determine if a registrant is staying at the reported location.

ANSWER: Defendants deny that MSP enforcement members conduct regular sweeps to check for SORA compliance. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations and leave Plaintiffs to their proofs.

394. Law enforcement agencies also conduct sweeps targeted at registrants deemed non-compliant, a status that can simply reflect failing to pay a fee or turn in a form.

ANSWER: Defendants deny that MSP enforcement members conduct regular sweeps related to SORA compliance. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations and leave Plaintiffs to their proofs.

395. When police officers have come to Mr. Doe A's home to do random residence checks, they have sometimes spoken to his neighbors to ask if Mr. Doe A lives there, increasing the odds that his neighbors will learn that he is on the registry, even though he never committed a

sexual crime.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, Mr. Doe A is not on the public registry.

396.   The police have likewise come to Mr. Doe B's home for compliance checks, sometimes banging on the door in the early morning when his family was sleeping, shouting his name, and scaring his children. He has had to try to explain to his children and neighbors why the police are there asking for him.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

397.   In one instance, Mr. Doe B was pulled over by a police officer who claimed that he was noncompliant. Mr. Doe B was begging the officer in front of his children not to arrest him, and explaining that he had in fact registered. Eventually, the officer determined that while the state police records indicated Mr. Doe B had failed to register, a local police verification receipt, which Mr. Doe B fortunately had with him in the car, showed that he was in fact compliant.

197

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

398.  The police likewise have come to Mr. Doe C's house unannounced for compliance checks, similar to what his probation officer did when Mr. C was still on probation.  Mr. C does not want his kids to know why the police are showing up at the family's home, and it is embarrassing to have his neighbors see the police coming to his home.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

399.  Mr. C finds registration worse than probation in some ways. The public could not easily look up the fact that he was on probation, and other people at the probation office were either probation officers or other probationers. By contrast, when Mr. C goes to register, anyone who happens to be at the police station can see him. And sex offender information is available worldwide on the public internet registry. In addition, while on probation he knew that he would get off if he complied with the requirements. But there is no way for him to ever get

off the registry, no matter what he does.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

400.  Ms. Doe finds being on the registry much more intrusive than when she was on probation. While on probation, she only had to report information related to her employment or address changes; she never had to report her email addresses, the vehicles she was driving, or internet identifiers like she has to do with the registry. And if she needed to make her probation officer aware of any changes, she could call him or wait until their next meeting, rather than having to report the change within three days. Towards the end of her probation, Ms. Doe only had to report twice a year, but with the registry she has always had to report quarterly.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, Ms. Doe is not on the public registry.

401.  Mr. Doe D believes that being on the registry is worse than probation; not only does he have to report regularly like he did as a

probationer, but the police come to check up on him at his home, sit outside in their squad car, and make the neighbors wonder why the police are there.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

402.   During one six-month period, the police came to Mr. Doe E's home three times.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

403.   Mr. Doe G has lost jobs after the police showed up at his former workplaces to verify that he worked there. He has also had police officers show up at his residence early in the morning, banging on his door until he woke up and suggesting that they wanted to search his residence.

ANSWER:  Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

## Response to Limitations on Access to Housing

404.   SORA 2021 severely limits registrants' access to housing, increases the likelihood of homelessness, and can prevent registrants from living with their families.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

405.   The online registry sends a clear message to the public that all registrants are dangerous. Therefore, many landlords will not rent to anyone on the registry.

ANSWER: Defendants deny the allegation as untrue regarding a message to the public. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remainder of the allegations and leave Plaintiffs to their proofs.

406.  In addition, SORA 2021 requires posting of registrants' addresses on the public online registry. M.C.L. § 28.728(2)(c). As a result, landlords also refuse to rent to registrants because they do not want their properties to appear on the registry. This problem is exacerbated by the public registry interface, which allows users to

easily map all registrants living in a particular area.

ANSWER: Defendants admit that Plaintiff have correctly cited provisions of the law, but the law speaks for itself, and no other response is required. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegation and leave Plaintiffs to their proofs.

407.   Research demonstrates that being listed on a sex offender registry dramatically reduces housing options for registrants, with registrants losing or being denied housing based on their status, or being forced to move after landlords or neighbors learned they are on the registry. The ability of other tenants and neighbors to search the sex offender registry directly contributes to landlords' decisions to deny or evict registrants. Socia Decl., Ex. 6, ¶¶22–23.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

408.   When Mr. Doe A (who never committed a sex offense) was released from prison, he had great difficulty finding housing. Landlords again and again denied his applications because of his status as a

registered sex offender. He only got an apartment when he had a friend lease a unit for him.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

409.   Likewise, Mr. Doe C also had severe housing problems. He lost his home to foreclosure after he lost his job when his employer learned of his registry status.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

410.   When Mr. Doe C tried to find rental housing, landlords told him that they would not rent to anyone on the registry. When he tried to rent a room from friends, they refused because he was on the registry, and they did not want their addresses listed.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

411.   For a time, Mr. Doe C was registered at his mother's

address. But after an anonymous caller reported that he was on the registry, his mother was threatened with eviction unless he moved out, so he had to leave.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

412.   Mr. Doe C then lived with his sister, but he had to move out after the U.S. Marshals came to the home to do a registry sweep. His sister would have been evicted if Mr. Doe C continued to live with her.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

413.  Mr. Doe C was able to live with both his mother and his sister despite having a felony conviction, but was forced to leave immediately in both cases after the landlords learned he was a registrant.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

414.   Mr. Doe C then became homeless. Mr. Doe C's family members would have been happy to have him stay if he were not on the registry, but they feared that they would lose their housing if they allowed him to live with them.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

415.   When Mr. Doe C reunited with his girlfriend I.G., he was unable to live with her and their children because he was on the registry.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

416.   Finally, I.G.'s father offered to rent a home he owned to Mr. Doe C and his family. This was the only way that the family was able to find housing where they could live together.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

417.   Because he was on the registry, Mr. Doe D was barred from an apartment he had previously lived in. Other apartment complexes prohibited anyone on the registry from living there. He wound up living in a very small house because it was the only place he could find to live.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

418.   Mr. Doe E lives with his mother. Due to his disability, he would be eligible for subsidized housing and could get his own place. His status as a lifetime registrant, however, bars him from receiving the housing subsidy.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

419.   When Mr. Doe F was looking for an apartment, he checked building policies online and found that virtually every place he looked excluded registrants.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to

their proofs.

420.   Mr. Doe G has an undergraduate degree and several technical certificates, yet he was turned down for apartments after being released from prison. He discovered that no managed apartment complex would admit people on the registry.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

421.   Mr. Doe G was also unable to live with his sister because her landlord did not want the apartment listed on the registry. He briefly stayed with his father, but had to move out because his father worried that the home would be targeted by vigilantes. He was unable to find a single managed apartment complex that would rent to people on the registry.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

422.   Mr. Doe G has been living in a motel for about a decade. He helps out the landlord in exchange for a lower rent. The landlord does

not know that he is on the registry, and Mr. Doe G does not know what will happen if the landlord finds out.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

423. When Mary Roe was released from prison, she discovered—after filing many rental applications and paying costly application fees—that no professionally managed apartment complex in her area would rent to registrants. Even if the onsite rental agent was willing to lease the apartment after interviewing her, she was always denied after a corporate background check. She lived in several substandard, non-professionally managed buildings, which were all she could find.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

### Response to Limitations on Access to Employment

424. SORA 2021 severely limits registrants' access to employment.

ANSWER: Defendants lack knowledge and information sufficient

to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

425.  Under SORA 2021, registrants' employment information and work addresses are posted on the public online registry. M.C.L. § 28.728(2)(d). The posting of employer information creates a powerful disincentive for employers to hire registrants, which is exacerbated by the mapping function on the website that allows users to easily determine if an employer has hired registrants. For example, employees who search their work address will immediately find out whether any colleagues are on the registry.

ANSWER: Defendants admit the allegation that registrants' employment information and work addresses are posted online. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegation and leave Plaintiffs to their proofs.

426.  The last data available to Plaintiffs showed that in 2013 less than half of non-incarcerated registrants living in Michigan reported having any employment. Upon information and belief, registrants' unemployment rate remains very high.

209

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

427.  Research likewise demonstrates that being on a sex offender registry dramatically reduces employment options for registrants, and frequently results in job loss. Socia Decl., Ex. 6, ¶¶22–23; Zgoba Decl., Ex. 7, ¶¶25–30.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

428.  Mr. Doe A has repeatedly lost job opportunities because of his status as a registrant. When he was first released from prison, he participated in a reentry program designed to help him find a job.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

429.  Mr. Doe A actively sought work and flagged potential jobs off employment lists. His case manager told him time and again that those employers would not hire registered sex offenders. The occupations

where he was denied employment included garbage collection and fast-food restaurant work.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

430.  Mr. Doe A finally convinced the organization that ran his reentry program to hire him for its programs for special needs adults, and for several years he was successfully employed there.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

431.  Mr. Doe A realized that his registry status barred him from so many jobs that his best bet might be self-employment. He started doing part-time contract work for people who already knew him and trusted him, removing debris from homes and doing other repairs and renovations.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

432.  He was able to get a trade certificate for safety renovations (like asbestos and lead paint removal), mostly because the training catered to ex-offenders, and did not reject him out of hand on account of his registry status.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

433.  He has done that work off and on for years, sometimes employing two to four people, depending on how busy he is. He applied to become a vendor for the city, but was never approved, he suspects because of his registry status.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

434.  When he came off the registry (under the *Does I* judgment), an enormous burden was lifted. The risk of being exposed and of losing work was drastically reduced, because he was no longer publicly identified online (falsely) as a sex offender.

ANSWER: Defendants lack knowledge and information sufficient

212

to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, Mr. Doe A meets the statutory definition of sex offender under MCL 750.349; 750.349v(ii).

435.   Nevertheless, Mr. Doe A avoids or limits the use of online advertising or social media publicity about his business because he is always aware that one unhappy customer can blow up his business by outing him online, and he knew that he might go back on the registry if SORA were amended.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

436.   Mr. Doe A's worst fear has now come true: under SORA 2021, he will again be viewed as a pedophile and presented to the public as a dangerous sexual offender—without any assessment of his actual risk, and even though his felony was more than 30 years ago, and *he has never committed a sexual offense*. He fears that his business could be upended at any time.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to

their proofs.

437.   During COVID, Mr. Doe A's business lost revenue, so he
partnered with a friend who did home preservation work, in part to
take advantage of her online and social media advertising without risk
to him of being exposed as a registrant.

ANSWER: Defendants lack knowledge and information sufficient
to form a belief as to the truth of the allegation and leave Plaintiffs to
their proofs. In further response, Mr. Doe A is not listed on the public
registry.

438.   Mr. Doe B worked in a family gas station/auto repair
business for many years because he learned from experience that he
would be unable to find work elsewhere. For example, despite his
experience working on and around cars, when he applied for work at
Ford (twice) and Chrysler, he submitted all the required paperwork but
never got a response.

ANSWER: Defendants lack knowledge and information sufficient
to form a belief as to the truth of the allegation and leave Plaintiffs to
their proofs.

439.   When his 2016 divorce pushed him into personal

214

bankruptcy, he (like Mr. Doe A) realized that he might be better off trying to work for himself.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

440.  Mr. Doe B was able to get a real estate license, studying the materials at home (to avoid the risk of being exposed in a public class). He found work on his own and then with an agency, but always worrying that he could be summarily fired if the agency learned of his SORA status.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

441.  At any time, a buyer or seller could Google his name, causing a client to walk away or a purchase or sale to fall through—both of which have happened. No matter how good his reputation or how hard he works, if people see the words "sex offender" they usually cut ties with him. Being on the registry conveys to the public that he remains a *present* danger to the community, including to his clients.

ANSWER: Defendants deny as untrue the allegation that publishing registrants' information online suggests that the registrants are present dangers to the community. In further response, Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations and leave Plaintiffs to their proofs.

442.  After coming off the public registry pursuant to the *Does I* judgment, Mr. Doe B was able to switch to an agency where the person who hired him knew of his SORA status, but also knew that his integrity, diligence, knowledge, and hard work trumped a short-term (consensual) sexual relationship that occurred more than two decades ago.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

443.  When (after entry of the *Does I* judgment) Mr. Doe B came off the registry, he was able to advertise his services on Facebook, Twitter, Instagram, and Linked-In, without fear that he would be held out to the public as a dangerous Tier III sex offender. He even developed his own website.

216

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

444. Mr. Doe B is worried that going back on the registry under SORA 2021, all of his hard work will fall apart, threatening his livelihood, and putting his children in financial jeopardy. As a real estate agent, his face is his brand, and any revelation about his registry status could destroy his business.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

445. Mr. Doe C's status as a registered sex offender has prevented him, too, from finding or holding a job. He repeatedly was not hired or lost jobs because he was on the registry.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

446. At the time of his offense and for much of the time he was on probation, Mr. Doe C worked at an auto parts factory. He did well,

217

repeatedly earning raises over a three-year period, and hoped to become a supervisor.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

447.   Then an anonymous caller informed the factory's management that Mr. Doe C was listed on the registry. He was summarily fired and escorted off the premises by security.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

448.   The fact that Mr. Doe C was listed on the public sex offender registry made information about his offense readily available to the anonymous caller and directly contributed to Mr. Doe C's firing.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

449.   Mr. Doe C could not pay his bills after he was fired. As a result, he lost his home to foreclosure, and his car was repossessed.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

450.  Mr. Doe C had great difficulty finding work since then because so few employers will hire registrants.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

451.  Mr. Doe C found a job with a finishing company and worked there for about six months. Then the newspaper *Busted*, which republishes photos and information from the sex offender registry in a newsprint format, published the registry listing for Mr. Doe C. The newspaper appeared in the break room at his work. Mr. Doe C lost his job the next day.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

452.  Mr. Doe C currently works for a cell phone company, but fears that he could lose his job if the company learns he is on the

registry. He would like to find more rewarding and better-paying work, but sees no prospect for career advancement because he is on the registry. He regularly sees jobs posted for which he is qualified, but knows that applying is pointless.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

453. Mr. Doe D briefly moved to Arizona and took a nine-month course in heating and cooling in an effort to get into that trade; he graduated third in his class of over 100 students. He applied to more than 50 such jobs but was consistently turned down because every application required him to disclose his registry status, and no one would hire anyone on the registry.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

454. Mr. Doe D has since worked on the line at an auto assembly plant, a job he was only able to get through family connections. His employer knows of his SORA status, but to the best of his knowledge his

co-workers and his union do not. He would like to serve as a union representative or team leader—which provides a path for promotion—but fears that he will be outed as a registrant if he does, jeopardizing his work relationships.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

455. Mr. Doe E has, despite the limitations of his Fetal Alcohol Syndrome, tried to maintain gainful employment, but his status as a registrant has interfered with his employment. For a while he was doing custodial work in a factory, but he was transferred and then let go shortly after a new employee found his name on the registry. Recently, he applied for a job at a grocery store. The store management was prepared to hire him, but the corporate office told him that they could not hire a sex offender.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

456. Mr. Doe F was an Eagle Scout, graduated number one in his

high school class, received a degree in biology from a well-known university, and intended to become a physician. After he realized he would not be hired by a hospital, he tried to find other work, which was very difficult due to his status as a registrant. He eventually was able to find work in construction through his best friend's family business.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

457.  Mr. Doe F is certain that it is the registry, not his conviction, that keeps him from getting interviews and jobs. "I can explain a misdemeanor for which I served ten days in jail, for touching my girlfriend the day before she turned 16; what I cannot explain away is being listed as a registered sex offender—held out to the world as a *current* danger to society—more than a decade later."

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

458.  When Mr. Doe G was released from prison in Nebraska and returned to his family in Michigan, he sought restaurant work to try

222

and get back on his feet. The registry kept him from consideration at most jobs, but even when he acquired a job, he was let go each time his employer learned he was on the registry.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

459.   Police came to his workplace and questioned him in front of customers and his co-workers. Three different times, at three different restaurants, these routine "checks" on his work address resulted in him being let go.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

460.   He went to a series of staffing agencies to try to be placed for factory work. Again, if they learned he was on the registry, he was immediately fired or told he could not be placed.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

461.   Mr. Doe G finally found work as a machine operator after searching the registry to see where other registrants worked. Over time, he was able to use that job to secure a better job doing technical writing for a cable company. He nearly lost that job when the company discovered his background, but luckily his work record was strong, and he was able to explain what happened in Nebraska and that he has had no criminal history since. After ten years of trying, he finally has a safe, stable job—if one that he is overqualified for—because his employer liked his work and was willing to look beyond his SORA status.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

462.   Mr. Doe H owns his own restaurants, so he does not have to worry about getting or keeping a job due to the registry. But being on the registry is still a constant concern. His restaurants are community-based operations, and if his customers or employees learned of his registry status, he could lose both. In his case, the registry also creates a public harm. Before COVID, he wanted to add new restaurants—which would employ more people and increase the taxes he paid—but

224

he did not because the regulatory process (incorporating, leasing or buying property, getting permits, licenses, etc.) would increase the risk that his status would be discovered, possibly blocking his new businesses and/or jeopardizing his current ones.

ANSWER: Defendants deny the allegation as untrue because Mr. Doe H is not listed on the public registry. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegation and leave Plaintiffs to their proofs.

463. Ms. Doe's status as a registrant made it hard for her to find work. She received a certificate in medical billing near the top of her class. Through her career services office she was placed in an externship. Although the host organization was pleased with her work, the employer was unwilling to hire her because the employer's information would then be posted on the registry.

ANSWER: Defendants deny the allegation as untrue because Ms. Doe is not listed on the public registry. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegation and leave Plaintiffs to their proofs.

464. Ms. Doe submitted over 100 resumes for other jobs before

225

she was able to find employment in medical billing. Since then, she has worked doing accounts for a freight company and for plumbing/electrical contractors, but she was always at risk of being fired if they discovered her SORA status. Her current employer is unaware of her registry status. If the employer discovers her status, she expects to be fired.

ANSWER: Defendants deny the allegation as untrue because Ms. Doe is not listed on the public registry. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegation and leave Plaintiffs to their proofs.

465. When Ms. Roe wanted to start her own therapy practice, she needed to apply for her own insurance but was initially turned down because of her status as a registrant, which effectively meant she could not start her business. After well over a year of effort, she was finally approved for insurance by Blue Cross. She had similar difficulty with other insurers.

ANSWER: Defendants deny the allegation as untrue because Ms. Roe is not listed on the public registry. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining

allegation and leave Plaintiffs to their proofs.

466.  Ms. Roe also had trouble finding commercial office space. When looking at a promising space, she was told that the landlord would rent to people with criminal histories, but would not rent to anyone on the sex offender registry. She left and cried on the street.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, Ms. Roe is not only the public registry.

### Response to Limitations on Access to Education

467.  Being on the registry also makes it more difficult for registrants to get an education.

ANSWER: Defendants deny as untrue that the registry causes registrants to lose educational opportunities.

468.  For example, Mr. Doe B's status as a registered sex offender has limited his ability to get an education. Mr. Doe B planned to enroll in community college in 2005. When he learned that he had to report that he was attending college, he was concerned that his classmates would find out that he was a registered sex offender. Mr. Doe B gave up on college classes rather than risk facing their hostility. As noted above,

227

Mr. Doe B would have preferred to take his real estate licensing classes with other students, but took them online instead so that would not have to report his status as a sex offender. He would also like to get a broker's license but was told he cannot because he is on the registry.

ANSWER: Defendants lack knowledge and information sufficient to from a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

469.   Because of the registry, Mr. Doe C has likewise had difficulty getting an education. He was rejected by several GED programs because he is a registered sex offender. With the assistance of his probation officer, Mr. Doe C was eventually able to identify a GED program that accepted registrants and was able to get his GED. He would like to learn a skilled trade by enrolling in community college but knows that he would have report his status as a registrant. He fears being monitored, excluded, and socially ostracized if he attends college.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

470.  Mr. Doe D would like to pursue skilled trade courses if he

were able to get off the registry. His employer would pay for him to attend school and those classes would make him eligible for promotions at work. He sees no point in taking those courses while he is on the registry, because he is worried that people in his industry would search his name and find out he is on the registry. He is also worried that he would be turned down for any new job he might then qualify for because of his registrant status.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

471.  Mr. Doe E has wanted to take classes in cooking or crafting for several years at his local community college, but has not because he would have to register where he is going to school. He is worried that his classmates or even teachers would shun or harass him if they discovered that he was on the registry.

ANSWER: Defendants admit that SORA requires registrants to report where they attend school. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegation and leave Plaintiffs to their proofs.

472.  Mr. Doe F is getting an online MBA from a university. In the past, just to take *online* courses he had to notify the school of his registry status, which triggered a series of requests for information, and conversations with the school police staff. Mr. Doe F finally realized that the best way to remove all obstacles to his admission to the program would be to promise that he would never set foot on campus, and that is what he has done.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

473.  Mr. Doe G would like to take college-level computer networking courses to help him with his job. He has not because he does not want the college to know that he is on the registry. He is worried that the information may be disclosed to his classmates or that the police would show up at one of his classes.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

## Response to Limitations on Travel

474.   Being on the registry also severely restricts registrants' ability to travel.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

475.   Registrants must provide advance notice when they intend to travel anywhere for more than seven days. They must tell the police where they are going, where they will stay, how long they will be there, and when they will return. M.C.L. §§ 28.725(1)(e); 28.727(1)(e).

ANSWER: Defendants admit that Plaintiffs have correctly cited a provision of the law, but the law speaks for itself, and no other response is required.

476.   Registrants must report in person at least 21 days before they travel outside the U.S. for more than seven days. M.C.L. § 28.725(8).

ANSWER: Defendants admit that Plaintiffs have correctly cited a provision of the law, but the law speaks for itself, and no other response is required.

231

477. In addition, registrants must plan any travel so that they are able to register in person during their required verification periods. For example, a Tier III registrant with a January birthday is required to report quarterly in January, April, July, and October. The registrant could not travel for the entirety of one of those months, because he or she would need appear in person at the police station during that time.

ANSWER: Defendants deny the allegation as untrue because the SORA does not prohibit month long travel.

478. If registrants travel, they must comply with any applicable sex offender registration laws in other jurisdictions. Because sex offender laws are exceedingly complex and vary from state to state, it is extremely difficult to obtain accurate information about either affirmative reporting obligations (such as registering one's presence in a state) or prohibitions on ordinary behavior (such as visiting a library or park) in other jurisdictions. *See* Prescott Decl., Ex. 5, ¶¶47–50, and Consequences Triggered by Sex Offender Registration: A National Sample, Attach. 1.

ANSWER: Defendants admit that other states have their own SORA laws that may impact registrants. Defendants lack knowledge

and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

479. Named Plaintiffs virtually all limit travel to no more than six days at a time, because otherwise they would be required to notify law enforcement in person about their travel plans.

ANSWER: Defendants deny the allegation as untrue because Ms. Mary Roe, Ms. Mary Doe, Mr. Doe A, and Mr. Doe H are not listed on the public registry. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegation and leave Plaintiffs to their proofs.

480. Mr. Doe B's status as a registrant has impaired his ability to travel. In 2011, Mr. Doe B took his then-wife on a four-day getaway to a resort in Mexico to celebrate her graduation from a program at the University of Michigan. On their return, border agents separated him from his wife and interrogated him about his sex offender status, delaying his reentry into the United States by two hours. Even just coming back from a weekend at Niagara Falls, he was separated from his family and isolated for questioning, stalling his return by one-to-two hours. Because of these experiences, Mr. Doe B is reluctant to travel

outside the United States.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

481.   Mr. Doe C's status has limited his travel as well. He would like to travel with his family and take his kids places. He wants to show them the world, traveling to Mexico, Puerto Rico, and other countries. He does not do so because he would have to report his travel, because the laws for registrants in different places are very complicated and he worries about getting something wrong, and because he does not know whether other countries will deny him admittance because he is on the registry.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

482.   Mr. Doe D has wanted to travel but SORA makes it prohibitively risky. For example, he wanted to take his family to Disney World, but learned that Disney bars all registrants from the park, and Florida requires all out-of-state registrants to contact the local sheriff

234

within 48 hours. Recently, he wanted to spend a week in Tennessee with his family for a wedding. Because Tennessee requires all out-of-state registrants to register within 48 hours of entering the state, however, he went to Tennessee for the wedding and came back to Michigan the same day. He has also wanted to travel to Scotland, but is barred because he is on the registry.

ANSWER: Defendants admit that other states and countries have their own SORA laws that may impact registrants. Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

483.  Mr. Doe E used to travel internationally to conferences about Fetal Alcohol Syndrome. He no longer does so because it is too stressful and risky; when he came back to the United States he was put in separate line, where he was questioned at length and his belongings were searched. He has not visited friends and family in Arizona, Colorado, and Florida for more than seven days because he does not want to register his travel and because he would have people in those states notified of his registry status or whereabouts. It is also too complicated to be in compliance with all the sex offender registration

235

requirements for longer-term visitors to those states. Even in Michigan, he does not visit his mother-in-law for very long because he does not want to have to report her address.

ANSWER: Defendants admit that other states have their own SORA laws that may impact registrants. Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

484. When Mr. Doe F was working construction, he was assigned to a building project in Pennsylvania for two weeks. He left the worksite after a week, because otherwise he would have had to register this travel and he was unsure whether there were registration requirements that applied in Pennsylvania. He was also fearful that even if some day he got off Michigan registry, he might not come off the Pennsylvania registry.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

485. Mr. Doe G's opportunities for advancement at work are limited by the fact that SORA 2021, which requires him to report

international travel three weeks in advance, makes it extremely difficult for him to travel internationally. A couple of years ago, he was supposed to accompany his boss on an overseas trip only to learn that he would most likely be denied entry due to his status as a sex offender.

ANSWER: Defendants admit that other states and countries have their own SORA laws that may impact registrants. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegation and leave Plaintiffs to their proofs.

486.   Mr. Doe G also could not attend his niece's graduation, because it fell during a time that he was required to report. He has not had a real vacation in more than a decade because he cannot travel for more than seven days without reporting. Moreover, traveling to other states requires him to look up the other states' laws in order to plan his trip. Most of the laws are so complicated that he cannot be sure he has read them correctly, which puts him at risk of committing a new crime if he gets the law wrong.

ANSWER: Defendants admit that other states and countries have their own SORA laws that may impact registrants. Defendants lack knowledge and information sufficient to form a belief as to the truth of

237

the remaining allegation and leave Plaintiffs to their proofs.

487. Ms. Doe, on one occasion, took a wrong turn while driving her family in Detroit, and accidentally got into a traffic lane leading to the tunnel to Canada. Although Ms. Doe did not cross into Canada, when she turned around, she had to go back through the U.S. border checkpoint. Because of Ms. Doe's status as a registrant, border agents demanded that she and her family get out of the car. The agents searched it, interrogated Ms. Doe, her husband, and her daughter separately, and suggested that Ms. Doe was abducting her daughter. The family was eventually released.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

488. Ms. Doe did not travel outside of the United States while she was listed on the public registry, although she would have liked to do so. Since Ms. Doe was removed from the public registry as a result of the *Does I* litigation, she has felt more free to travel. She has been able to go to Windsor with her husband for dinner, which was a completely different experience than before. She is concerned about future travel,

238

however, because SORA 2021 requires her again to be listed on the public registry.

ANSWER: Defendants admit the allegation that Ms. Doe is not on the public registry. In further response, Defendants lack knowledge and information sufficient to form a belief as to the truth of the remainder of the allegations and leave Plaintiffs to their proofs.

489. When Mary Roe has traveled outside the United States, even on trips with professional groups, she has been subjected to extensive delays and questioning about her registrant status by border authorities when she has returned to the United States.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

**Response to Limitations on Speech and Use of the Internet**

490. SORA 2021 severely restricts registrants' ability to speak freely on the internet.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer. Defendants deny as untrue because SORA does not restrict registrants' ability to speak

239

freely on the internet.

491.   Any registrant whose registrable offense occurred after July 1, 2011, must provide law enforcement with "all electronic mail addresses and internet identifiers registered to or used by the individual." M.C.L. § 28.727(1)(i). Registrants must also report "any change in . . . electronic mail addresses [or] internet identifiers . . . registered to or used by the individual" within three business days. M.C.L. § 28.725(2)(a). This language appears to require registrants to report any email address or internet identifier they have ever had or used, regardless of how long ago that occurred. Even using an identifier once—say sending an email from one's spouse's account or creating an account to make a one-time purchase online—appears to trigger the three-day reporting requirement.

ANSWER: Defendants admit that Plaintiffs have correctly cited a provision of the law, but the law speaks for itself, and no other response is required.

492.   The term "internet identifier" is defined expansively to mean "all designations used for self-identification or routing in internet communications or posting." M.C.L. § 28.722(g). It is unclear whether

240

registrants must report within three days whenever they set up an online account to pay their taxes, register with Netflix, purchase or review products on Amazon, or use an online college bulletin board.

ANSWER: Defendants admit that Plaintiffs have correctly cited Mich. Comp. Law § 28.722(g), but the statute speaks for itself, and no other response is required. Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation regarding whether the language is confusing and leave Plaintiffs to their proofs.

493.   SORA 2021 also permits posting on the public registry of a person's email address and electronic identifiers—which the old SORA prohibited. *Compare* M.C.L. § 28.728(3)(e) (2020), *with* Substitute for H.B. 5679, 100th Leg., Reg. Sess., at 37 (Mich. 2020), https://bit.ly/3r9l232.

ANSWER: Defendants deny the allegation as untrue because the plain language of the statute does not authorize posting internet ID's and email addresses on the public registry.  Mich. Comp. Law § 28.725(2)(a) and 28.727(1)(i).  And federal regulations prohibit the public posting of such information.  28 U.S.C. § 20916(c) and 20920(b)(4); 76 F.R. § 1630, 1637; 86 F.R. § 69856, 69858.

494.  Although the internet is central to modern life, registrants fear using it for several reasons. First, any use of the internet could easily trigger a search of their name, with the result that they are outed as sex offenders. *See* Section IV, *supra*. Second, use of the internet triggers the reporting requirements—requirements that are very unclear. (While those requirements no longer apply to pre-2011 registrants, their experiences avoiding the internet are included here because they show just how much the reporting requirements chill use of the internet.)

ANSWER: Defendants admit that Plaintiffs have correctly cited a provision of the law, but the law speaks for itself, and no other response is required. Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation regarding whether the language is confusing and leave Plaintiffs to their proofs.

495.  John Doe A rarely uses the internet because he is always afraid that anyone who Googles him will find out that he is on the registry. The internet mirrors the way he feels about the rest of his life: as a parent, partner, family member, neighbor, and worker, he never feels like he can be "in" 100%, because in every social interaction he is

waiting for the axe to fall. With the internet and in life, the constant

risk is that someone will learn of his status and view him as a liar or a

con man (if he does not reveal his status up front), or as a monster (if he

does), even though he never committed a sex offense.

ANSWER: Defendants deny the allegation as untrue because Mr.

John Doe A is not on the public registry. Defendants lack knowledge

and information sufficient to form a belief as to the truth of the

remaining allegation and leave Plaintiffs to their proofs.

496.  In the past Mr. Doe B was very confused about whether he

needed to report internet identifiers, such as Study Island, which he

used to help his son with school work, or school sports sites that allowed

him to keep track of his children's soccer games. He avoided the

internet as much as possible so as not to have to report identifiers or

risk prison for misunderstanding his reporting obligations. Under the

terms of the *Does I* settlement, he was no longer required to report

internet identifiers and he was removed from the public registry. He

then began using the internet much more often, especially social media

to advertise his real estate services. Now that he is required to be back

on the registry, he is fearful that his business will suffer or that he will

have to stop advertising online.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

497.  Historically, Mr. Doe C limited his use of the internet because he was concerned about registering his email and internet identifiers, and needing to report constantly in order to use different websites with different user-names. It was safer and easier not to use the internet. He does not use social media. He is concerned about being harassed online because of being on the registry.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

498.  Mr. Doe D has restricted his internet use because he would have had to report in person within three days every time that he created a new internet account. Once he was automatically assigned a new account when signing up for a service; to be safe, he had to go to the registration office within three days to report it. Now, although he is no longer required to report electronic identifiers, he is still extremely

244

guarded in using the internet because he fears it will lead to others searching his name and finding out his registry status. In fact, he wants to be more involved with his son's education but has avoided joining any online school discussions.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

499.  John Doe E is reluctant to use the internet, and does not have a personal social media profile on Facebook, Twitter, or other social media sites. He has tried not to use any chat or instant messaging functions on the internet, because that requires creating a screen name, which then triggers a reporting requirement. His father died in December 2017, and he wanted to participate in online grief support, but would have had to register his screen name so he chose not to participate. Although under SORA 2021, Mr. Doe E is no longer required to report identifiers, he still avoids social media because he is afraid that people will look up his registry status and harass him for it.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to

their proofs.

500.  After being put on the registry, Mr. Doe F completely stopped using social media. He did not return to it until he started helping leukemia support groups, but he is worried about being outed and having other participants turn against him.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

501.  For Mr. Doe G, the registry has had a severe chilling effect on his internet use. He has wanted to make political statements online but chose not to because he knew he would have had to report every screen name in person.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

502.  Mr. Doe G has also worried about retaliation against him by the state. For instance, he wanted to post about the police coming into the restaurant where he was working and getting him fired, but he was worried that the police could look up his screen name, see those posts,

and make his life even more difficult.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

503.  Mr. Doe G has avoided all internet websites that require a username and has severely restricted his internet use because he was unsure about what information he had to report and did not want to report each time he created a new identifier. For example, he is interested in advocacy on LGBT issues and wanted to comment on websites related to those issues. But he did not do so because it would have required creating an account and then registering it with the police.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

504.  When SORA 2021 first passed, Mr. Doe G believed that, as for post-2011 registrants, his internet ID's and email addresses could now be posted on the public registry and he intended to shut them down rather than risk being outed on every website or bombarded with

247

harassment. He also feared losing his job because his work email address could be publicly posted. He was tremendously relieved to learn that, as a pre-2011 registrant, these provisions of SORA 2021 do not apply to him, but he worries that these provisions of the law will severely restrict the speech and economic opportunities of post-2011 registrants.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response Defendants state that the plain language of the statute does not authorize posting internet ID's and email addresses on the public registry.  Mich. Comp. Law § 28.725(2)(a) and 28.727(1)(i).  And federal regulations prohibit the public posting of such information.  28 U.S.C. § 20916(c) and 20920(b)(4); 76 F.R. § 1630, 1637; 86 F.R. § 69856, 69858.

505.  Mr. Doe G is reluctant to use the internet because of his presence on the online registry. He is worried people would search his name, realize he is on the registry, and then embarrass him with that information. He therefore avoids publicly posting anything on the internet.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

506.  Mr. Doe H gave up his Facebook account as soon as he was told that he would have to report it. He is never sure about what he must report and when, so it is safer to limit his internet use rather than risk making a mistake and putting himself at risk of being prosecuted for noncompliance. He avoids using personal email or online accounts, and instead uses the business email and online names (which he registers) that are less easily linked to him on the internet.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

507.  Ms. Doe's status as a registrant has similarly restricted her freedom to use the internet. She has been very confused about what she needs to report, and was unable to get clarity even after seeking legal advice and asking the police about whether, for example, she had to register identifiers associated with bank accounts or utility bill payments. She wanted to comment on online news articles (on websites

like the Detroit News, Click on Detroit or Fox), but did not do so because she was uncertain about whether she would then need to report the accounts within three days and because she feared that this would enable people to identify her as a sex offender.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, Ms. Doe is not listed on the public registry.

508.  Ms. Doe has twice established a Facebook account, only to have it deleted without notice. Although Facebook gave her no reason for shutting down her account, Facebook prohibits registrants from using its site. Ms. Doe had been using her Facebook account both to communicate with friends and family and to organize a high school reunion. She was then unable to do so.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

509.  When, as a result of the *Does I* litigation, Ms. Doe no longer had to report her email addresses and internet identifiers and came off

the public registry, she became more comfortable using the internet.
With SORA 2021, she is again apprehensive about using social media
accounts because people may find out she is on the registry and harass
her or her family.

ANSWER: Defendants admit the allegation that Ms. Doe is not on
the public registry.  In further response, Defendants lack knowledge
and information sufficient to form a belief as to the truth of the
remainder of the allegations and leave Plaintiffs to their proofs.

510.  When Ms. Roe was still the clinical director at the homeless
shelter, she did not use social media or do public speaking because she
was concerned that she would be outed, and she and her employer
harmed. Those limitations held her back from advancing professionally.

ANSWER: Defendants lack knowledge and information sufficient
to form a belief as to the truth of the allegation and leave Plaintiffs to
their proofs.

511.  Before coming off the registry, Ms. Roe maintained almost
no public presence on social media. She used it only with family and
friends who already knew of her registrant status. A tech-savvy friend
counseled her to create "dummy" positive online pages about herself, so

that her registrant status might be pushed further down the line of sites that would come up when she was Googled.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

512.  When Ms. Roe started in private practice as a therapist, she tried posting one online "professional page" in her own name, as opposed to using the name of her counseling LLC. Within about a week, she had to take it down because of postings calling her a "pervert" and other disparaging comments.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

513.  When Ms. Roe came off the public registry after the *Roe* case, being able to use social media and to participate in online life was liberating for her. The prospect of going back on the registry after three years of being off it has put her into therapy for depression and PTSD.

ANSWER: Defendants admit the allegation that Ms. Roe is not on the public registry.  In further response, Defendants lack knowledge

and information sufficient to form a belief as to the truth of the remainder of the allegations and leave Plaintiffs to their proofs.

### Response to Public Stigmatization, False Information, and Social Engagement

514.  Describing someone as a "sex offender" is intensely stigmatizing and leads the public to view the person with high levels of fear and disgust. Labeling someone as a "sex offender" also leads the public to assume that the person is a pedophile or sexual predator, and poses a current high risk of committing a new sex offense. Socia Decl., Ex. 6, ¶¶17–21.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, the declaration speaks for itself.

515.  Being publicly branded as a sex offender is far worse than simply having an old conviction because it conveys the message of *current* dangerousness. As a result, registrants suffer severe housing, employment, social, and other consequences that they would not experience based solely on the fact that they have a criminal record.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to

their proofs.

516.  As a result of the public online registry, registrants and their families are subjected to harassment, social ostracism, and even threats of violence. Indeed, in one study almost half of registrants reported harassment. Zgoba Decl., Ex. 7, ¶25.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, the declaration speaks for itself.

517.  The sex offender registry publicly and falsely labels Mr. Doe A as a "convicted sex offender," which he is not, as he was never convicted of a sex offense.

ANSWER: Defendants deny the allegation as untrue because Mr. Doe A is not listed on the public registry and he meets the statutory definition of sex offender under Mich. Comp. Law § 750.349; 750.349v(ii).

518.  In the fall of 2010, Mr. Doe C received an anonymous death threat by mail. Inside an envelope was a print-out of his page from the sex offender registry with his photo. His eyes were blacked out on the photo, and on the paper were the words "You will die." Mr. Doe C has

254

also been called a child molester on the street, and his wife is regularly asked why she is married to a sex offender.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

519. One of the most difficult experiences of Mr. Doe C's life was when his oldest daughter found his registry information on the internet.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

520. Mr. Doe D has been harassed in his neighborhood. After posting on his homeowners' association social media page for information about a neighborhood issue, a neighbor immediately responded by linking to Mr. Doe D's registry profile. Others in the neighborhood then stopped talking to Mr. Doe D. In addition, Mr. Doe D's house and vehicles have been egged three times, and once his work car was covered in cheese.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to

their proofs.

521.  Mr. Doe E says that the registry has caused a serious strain in his marriage. His wife recently discovered that he would be on the registry for life, as opposed to 25-years, and does not know if she wants to remain married to him. She feels stressed about all the limitations the registry has created for their lives.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

522.  Similarly, Mr. Doe F's neighbor stood on his lawn on Halloween telling children not to go to his house because he was a sex offender. The neighbor also threatened Mr. Doe F's girlfriend, saying that if they did not leave, they would "struggle to live here."

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

523.  Mr. Doe F found COVID to be a bizarre kind of relief, as everyone had to adapt to a vastly restricted life—which was his norm. They couldn't socialize; they were on edge with others; schools were

closed to them; they were fearful of being evicted or losing their jobs, etc. To him, that is what life is like all the time, being on the registry.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

524.   Mr. Doe G reports that a person who learned he was on the registry came up to him and told him that all sex offenders should be killed. Other people who learn he is on the registry stop talking to him. He has become a hermit, afraid to develop friendships or relationships because the registry makes him a lifelong pariah. He has developed an anxiety disorder and depression, conditions for which he takes medication.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

525.   All Plaintiffs report that they avoid social engagement because at any time they can be outed as registrants. When meeting people at work or at play registrants face an impossible choice: either tell each person early on that they are on the registry and risk having

the person shun them (and repeat the news to others), or wait until they have formed a relationship, and then risk having the person turn on them because they kept their past a secret.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

526.   All Plaintiffs report that they limit their social life to family, old friends, and others who know their history but accept them for who they are. When they are with people who don't know their status, all Plaintiffs are anxious and on guard, and cannot have normal relationships.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

527.   The further in the past their crimes are, the more bitter Plaintiffs feel that conduct from ten, 20, or 30 years ago continues to dominate (and ruin) their lives, no matter how stable, morally upright, or successful they have been since.

ANSWER: Defendants lack knowledge and information sufficient

258

to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

## Response to Criminal Enforcement of SORA

528. Data from 1998 to 2012 show that there were 14,884 prosecutions for SORA violations over that 15-year period, averaging just under 1,000 per year. Levine Decl., Ex. 10, ¶11.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, the declaration speaks for itself.

529. Data from 2010 to 2019 show an average of about 880 prosecutions per year (though this data set appears to under-report misdemeanor cases). Levine Decl., Ex. 10, ¶11.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, the declaration speaks for itself.

530. SORA 2021 imposes penalties of up to ten years imprisonment for violations of the Act. M.C.L. §§ 28.729(1).

ANSWER: Defendants admit that Plaintiffs have correctly cited a provision of the law, but the law speaks for itself, and no other response

is required.

## Response to Vagueness

531.  Like the old SORA, many of the requirements of SORA 2021,
including requirements for reporting personal information, are so
complex and vague that Plaintiffs and class members are unable to
know whether or not they are in violation of the law, and are therefore
unable to comply with it. SORA 2021's requirements are so extensive,
pervasive, and unclear, that not only Plaintiffs and class members, but
even attorneys who advise registrants, are unable to understand the
law.

ANSWER: Defendants lack knowledge and information sufficient
to form a belief as to the truth of the allegation and leave Plaintiffs to
their proofs.

532.  Law enforcement officers who enforce the act likewise do not
understand what information must be reported, or what changes in
information subject registrants to reporting requirements. Different law
enforcement agencies in different places apply SORA 2021's
requirements differently. SORA 2021's requirements for reporting
personal information are so vague that prosecutors and police agencies

cannot and do not enforce the law consistently.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

533. **Phones, Internet, and Cars:** In *Does I* and *Does II*, the district court held that SORA's provisions requiring reporting of telephone numbers, electronic mail, and instant message addresses, and vehicle information were unconstitutionally vague. *Does I*, 101 F. Supp. 3d at 686–690; *Does II*, 449 F. Supp. 3d at 736, 738. In passing SORA 2021, the legislature replaced those provisions with language that is, if anything, even vaguer.

ANSWER: Defendants admit that Plaintiffs have correctly cited a holding for *Does I*, but the opinion speaks for itself, and no other response is required.  Defendants deny the remainder of the allegation as untrue for the reason that the new SORA mirrors the federal SORNA.

534. SORA 2021 now requires registrants to report all telephone numbers "registered to . . . or used by the individual," all electronic mail addresses and internet identifiers "registered to or used by the

individual," and all vehicles "owned or operated by the individual" or "used by the individual." M.C.L. §§ 28.725(2)(a), 28.727(h)–(j). Any change in such information must be reported within three business days. M.C.L. § 28.725(2)(a).

ANSWER: Defendants admit that Plaintiffs have correctly cited a provision of the law, but the law speaks for itself, and no other response is required.

535. Plaintiffs are confused about whether they must report every single phone, email address, internet identifier, or vehicle that they have ever used. For example, Plaintiffs do not know whether, if they use a friend's cell phone to make a quick call because their own phone is dead, they must report it within three days. Plaintiffs do not know whether, if they borrow a car or get a loaner while their own car is in the shop, they must tell the police. Plaintiffs also do not know how far back in time these requirements apply: because there is no time limit in the law, arguably a phone or car or old internet identifier used once in the past must now be registered because it was "used by the individual."

ANSWER: Defendants lack knowledge and information sufficient

to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

536.  As noted above, the internet reporting requirements are expansively defined to mean "all designations used for self-identification or routing in internet communications or posting." M.C.L. § 28.722(g). Taken literally, the term "used for self-identification or routing in internet communications" would include IP addresses of Plaintiffs' computers, laptops, or tablets, and similar information for phones.

ANSWER: Defendants admit that Plaintiffs have correctly cited a provision of the law, but the law speaks for itself, and no other response is required.  In further response, Defendants deny the remainder of the allegations as untrue.

537.  The court in *Does I*—which considered a vagueness challenge to the old SORA's differently structured phrasing about reporting internet identifiers used for "posting"—distinguished between identifiers used "primarily" for posting or communicating, and identifiers that were not. *See Does I*, 101 F. Supp. 3d at 692–93. Given the different statutory language at issue in *Does II*, that distinction

263

cannot be made here. Moreover, in today's internet, "designations used for self-identification" are requested or required (or acquired) for a host of online transactions and interactions, not just on social media. Lageson Decl., Ex. 9, ¶¶83–86.

ANSWER: Defendants admit that Plaintiffs have correctly cited analysis in *Does I*, but the opinion speaks for itself, and no other response is required.  In further response, Defendants deny the allegation that the same distinction cannot be made here.  In further response, the declaration speaks for itself.

538.  Plaintiffs cannot and do not know what they must report, or when; as a result, their default is to self-limit their internet use to avoid the risk of prosecution. *See* Section V: Limitation on Speech and Use of the Internet, *supra* (describing other examples of how Plaintiffs limit their internet use, in part out of fear that they will make reporting mistakes).

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

539.  In *Does I* and *Does II*, the court held that retroactive

application of certain internet reporting was unconstitutional if imposed on people whose registrable crime occurred before the effective date of the 2011 SORA amendments. *Does I*, 101 F. Supp. 3d at 730; *Does II*, 449 F. Supp. 3d at 736, 738. In drafting SORA 2021, the legislature appears to have attempted to respond to these rulings, but the language chosen is confusing. Instead of saying that the provisions only apply to those whose registrable offense occurred after July 1, 2011, the new law says that the email and internet provisions only apply to those "required to be registered under this act after July 1, 2011." M.C.L. § 28.725(2)(a). But anyone subject to registration is required to be registered under SORA 2021 "after July 1, 2011."

ANSWER: Defendants admit that Plaintiffs have correctly cited a holding for *Does I*, but the opinion speaks for itself, and no other response is required. Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegations regarding the legislature intent and whether the language is confusing and leave Plaintiffs to their proofs. Defendants admit that Plaintiffs have correctly cited a provision of the new SORA, but the law speaks for itself, and no other response is required.

265

540.  The vagueness of the text, combined with the harshness of the penalty (return to prison or jail) if registrants get it wrong, means that people may continue to report email and internet identifiers even though they do not have to, or more likely, will continue *not to use the internet* because SORA 2021 requires them "to be registered . . . after July 1, 2011."

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

541.  To provide other examples, Mr. Doe C is unsure whether he needs to report his wife's car or his mother's telephone if he only uses them occasionally. Mr. Doe E tries to report everything he thinks he may need to report. He has his own vehicle, but also occasionally drives his mother's vehicle, so he is not sure whether he must report it or should do so just to be safe.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

542.  Mr. Doe F is fearful of using any vehicle that is not

266

registered to him. When his car breaks down, he does not borrow a vehicle from friends or family because he is uncertain whether he would have to register it. His brothers own ATVs; when the family goes camping, Mr. Doe F does not take out the ATVs because he is unclear about whether he would then have to register them. In the past, he had an employer who had about 30 vehicles; it is unclear to Mr. Doe F if SORA 2021 would require registration of all such vehicles if an employee might drive any of them. When working construction, he didn't know if he needed to register equipment he drove just occasionally, or even just once, nor does he know under SORA 2021.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

543.  Mr. Doe F is a good driver, but if the weather is bad and his friends or family ask him to drive due to the snow, he declines because he does not know whether driving their vehicles one time would have to be reported under SORA 2021. Similarly, when he goes out with friends and they ask him to drive their car because they have been drinking and he has not, he again does not drive because that could be a violation

267

of SORA if he failed to report their car. (And if he reported their car, it would then be listed on the registry).

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. Defendants admit that if Plaintiff reported a vehicle, it would be listed on the registry.

544. Mr. Doe H has registered all four vehicles that his family owns. As with everything having to do with SORA, he errs on the side of caution and restricts or limits his behavior to be certain that he is not violating the law.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, Doe H is not on listed on the public registry.

545. **<u>Employment</u>**: Plaintiffs are also confused about reporting employment, which requires in-person reporting within three business days. For example, M.C.L. § 28.725(1)(b) requires immediate reporting if "the individual changes his or her *place of employment*, or employment is discontinued." (Emphasis added.) This provision causes

confusion because it does not use the word "employer" or "employment" but instead targets the "place."

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, Defendants admit that Plaintiffs have correctly cited a provision of the law, but the law speaks for itself, and no other response is required. In further answer, the new SORA is consistent with federal SORNA that requires reporting the "place of employment" under 34 U.S.C. § 29014(a)(4) and is consistent with the same language examined by the U.S. Supreme Court in *Smith v. Doe*, 538 U.S. 84, 90 (2003).

546.  Plaintiffs cannot and do not know, for example, when they are assigned to a different work site or field office for just a day, or three days, or a week, if they must immediately report the "change" in their "place of employment" or risk a violation if they do not.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

547.  The same is true if there is a temporary closure, layoff, or

strike; they cannot and do not know if they must report that their "employment is discontinued," if only temporarily. The uncertainty creates a constant fear that if they are stopped by police for any reason, or when they go for their periodic registration update, that they will be accused of a violation.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

548.   Another example is M.C.L. § 28.727(1)(f), which requires registrants to report "the name and address of each of the individual's employers" and M.C.L. § 28.727(1)(b), which requires any change in place of "employment" or any discontinuation of "employment" to be reported within three days. Plaintiffs are unsure if this requirement applies to volunteer work.

ANSWER: Defendants admit that Plaintiffs have correctly cited a provision of the law, but the law speaks for itself, and no other response is required. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remainder of the allegations and leave Plaintiffs to their proofs.

270

549.  M.C.L. § 28.722(d) does not define "employer" or
"employment," but defines "employee" to mean "an individual who is
self-employed or works for any other entity as a full-time or part-time
employee, contractual provider, or volunteer, regardless of whether he
or she is financially compensated." But M.C.L. § 28.727(1)(f), in
contrast, defines "employer" to include "any individual who has agreed
to hire or contract with the individual for his or her services."

ANSWER: Defendants admit that Plaintiffs have correctly cited a
provision of the law, but the law speaks for itself, and no other response
is required.

550.  Plaintiffs cannot and do not know, when they shovel a
disabled neighbor's walk or mow the neighbor's lawn, if they have
subjected themselves to the immediate reporting requirements for
employment. Nor do they know, when the neighbor decides to pay them
to do the chore, if they must now report the neighbor's name and
address within three days as an "employer."

ANSWER: Defendants lack knowledge and information sufficient
to form a belief as to the truth of the allegation and leave Plaintiffs to
their proofs,

551.  If Plaintiffs are employed or self-employed in occupations with no fixed address—like real estate, building trades, and delivery services—then they "must include" not just "the general areas where [they] work" but also "the normal travel routes taken . . . in the course of [their] employment." *See* M.C.L. § 28.727 (1)(f). Plaintiffs cannot and do not know what it takes for a series of turns over a series of days to become a mandatory reportable "normal travel route."

ANSWER: Defendants admit that Plaintiffs have correctly cited a provision of the law, but the law speaks for itself, and no other response is required.  Defendants lack knowledge and information sufficient to form a belief as to the truth of the remainder of the allegations and leave Plaintiffs to their proofs.

552.  Mr. Doe C's employer sometimes sends him to different work sites, rather than the primary location where he normally works. Mr. Doe C does not know if he has to report (in person) every time he is sent to a different work site. Similarly, Mr. Doe E does not know, for instance, if he must report the location of his job site, the corporate office, or both. Moreover, because his company has multiple locations, he does not know if he must report any other location he may work at if

272

he is covering for a sick employee.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

553. **Nicknames, Addresses, and Physical Descriptions:** SORA 2021 requires Plaintiffs to report their "legal name and any aliases, nicknames, ethnic or tribal names, or other names by which the individual is *or has been* known." M.C.L. § 28.727(1)(a) (emphasis added). Read literally, this means that if fourth-grade classmates called you "Slick," or if 20 years ago Navy shipmates called you "Gunner," you are obligated to report that information to the police. To require this level of detail from the beginning of time to the present all but guarantees that all registrants are non-compliant all the time—which is how Plaintiffs feel.

ANSWER: Defendants admit that Plaintiffs have correctly cited a provision of the law, but the law speaks for itself, and no other response is required. In further response, SORNA requires the same information. 34 U.S.C. § 20914(a)(1). Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation

273

and leave Plaintiffs to their proofs.

554. Plaintiffs must report their primary residence, but SORA 2021 also requires them to report "The name and address of any place of temporary lodging used *or to be used* by the individual during any period in which the individual is away, *or is expected to be away*, from his or her residence for more than 7 days. Information under this subdivision must include the dates the lodging is used or *to be used*." M.C.L. § 28.727(1)(e) (emphasis added).

ANSWER: Defendants admit that Plaintiffs have correctly cited a provision of the law, but the law speaks for itself, and no other response is required. In further response, SORNA requires the same information. 28 C.F.R. § 72.6(c).

555. This section creates a nightmare of uncertainty for the prospective traveler. Plaintiffs cannot and do not know at what point tentative travel plans become a mandatory SORA reporting duty, because the phrases "to be used" or "expected to be away" are so vague. The predictable result is that Plaintiffs almost never leave home for more than seven days, due to the risk of compliance violations.

ANSWER: Defendants lack knowledge and information sufficient

to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

556.  The problem is compounded by M.C.L. § 28.725(2)(b), which requires three-day reporting if a registrant "intends to temporarily reside at any place other than his or her residence for more than seven days." Again, Plaintiffs cannot and do not know at what point their own vague plans ripen into an immediate reportable "intent." And if their plans change the day before (or after) departure, they cannot and do not know if they must now register their *new* plans within three business days.

ANSWER: Defendants admit that Plaintiffs have correctly cited a provision of the law, but the law speaks for itself, and no other response is required.  Defendants lack knowledge and information sufficient to form a belief as to the truth of the remainder of the allegations and leave Plaintiffs to their proofs.

557.  The text of the provision is also unclear. Plaintiffs cannot and do not know if the law means if they plan to stay in one place for more than seven days or intend not to stay in their primary residence for more than seven days—a big difference. (The issue is whether the

"more than seven days" modifies "place" or modifies "residence.")
Plaintiffs cannot and do not know if they must register under this
provision if they plan to hike part of the Appalachian Trail, or travel by
car with unknown nightly stays in different locations.

ANSWER: Defendants lack knowledge and information sufficient
to form a belief as to the truth of the allegation and leave Plaintiffs to
their proofs.

558.  For example, Mr. Doe D has had difficulty understanding
the reporting requirements for travel. A few years ago, he asked
whether he would have to report his temporary lodging information if
he came back to Michigan on the seventh night after he left. Law
enforcement told him that they did not know.

ANSWER: Defendants lack knowledge and information sufficient
to form a belief as to the truth of the allegation and leave Plaintiffs to
their proofs.

559.  The provisions affect more than travel. For example, Mr. Doe
F did not know what addresses he needed to report during the year that
he spent caring for his girlfriend before she died. He traveled frequently
to Detroit and Ann Arbor to support her through her grueling

treatments, staying where he could to be near her, but never sure what information he had to report. Not knowing if he could stay with her in a hospital when needed, or for how long he could stay with friends or family while she was being treated nearby, was an enormous stress on top of what he was going through during her terminal illness. (For other examples of travel issues, see Section V: Limitations on Travel, *supra*.)

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

560.  Plaintiffs must also report a "complete physical description of the individual." M.C.L. § 28.727(1)(o). Plaintiffs cannot and do not know what this entails, or what would constitute a violation if information were omitted. Plaintiffs cannot and do not know if they can be "violated" for failing to report tattoos, moles, mastectomies, scars, toupees, or similar physical descriptors.

ANSWER: Defendants admit that Plaintiffs have correctly cited a provision of the law, but the law speaks for itself, and no other response is required.  In further response, SORNA requires the same information. 34 U.S.C. § 20914(b)(1).

277

561.  **Institutions of Higher Education:** SORA 2021 defines "institution of higher education" to mean "1 or more of the following: (i) A public or private community college, college, or university. (ii) A public or private trade, vocational, or occupational school." M.C.L. § 28.722(h). The latter provision is unclear. Plaintiffs cannot and do not know if they can, without registering, take (for example) cooking classes offered by a restaurant or trade association, carpentry classes offered privately but using a community college's woodshop, or certificate classes, e.g., to get a real estate license. Plaintiffs cannot and do not know at what point a series of classes or a program of instruction becomes a "private trade . . . school."

ANSWER: Defendants admit that Plaintiffs have correctly cited a provision of the law, but the law speaks for itself, and no other response is required.  Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, SORNA requires the same information. 34 U.S.C. § 20913(c).

562. **Registration of People with Out-of-State Conviction:** SORA 2021 requires registration of people who were convicted in other

278

jurisdictions of offenses that are "substantially similar" to Michigan

offenses that trigger registration. M.C.L. § 28.722(r)(x), (t)(xiii), (v)(viii).

A person whose out-of-state conviction is not "substantially similar" to a

registrable Michigan offense is not required to register.

ANSWER: Defendants admit that Plaintiffs have correctly cited a

provision of the law, but the law speaks for itself, and no other response

is required. Defendants state that the remainder of the allegations

represent a legal conclusion which by law does not require an answer.

563. The length of time that a person must register and the

frequency of in-person verification depend on whether an out-of-state

conviction is deemed "substantially similar" to a Tier I offense, in which

case the person must verify yearly for 15 years; a Tier II offense, in

which case the person must verify twice a year for 25 years; or a Tier III

offense, in which case the person must verify quarterly for life.

ANSWER: Defendants admit the allegation.

564. For individuals with out-of-state convictions, the MSP has

used a student or legal intern to assign tier classifications based on the

student/intern's assessment of which Michigan offense most closely

resembles the out-of-state offense. *Does I*, No. 12-cv-11194, Joint

Statement of Facts, R. 90, ¶293. Upon information and belief, tier assignments for people with out-of-state convictions continue to be done by a student or legal intern.

ANSWER: Defendants deny as untrue the allegation that student interns complete tier assignments for people with out-of-state convictions. Defendants neither admit nor deny the remaining allegations because the Joint Statement of Facts entered in *Does I* speaks for itself.

565.  SORA 2021 provides no mechanism by which people with out-of-state convictions can challenge either the determination that their offense is "substantially similar" to a Michigan offense or the classification of their offense as "substantially similar" to a Michigan Tier I, Tier II, or Tier III offense.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.

566.  SORA 2021's provisions about "substantially similar" convictions from other jurisdictions are not written with sufficient specificity for persons with out-of-state convictions to know whether they must register in Michigan, and if so, how frequently and for how

long they must report.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.

567. **MSP and Law Enforcement Communications:** In March 2021, the MSP sent a letter to registrants regarding their obligations under SORA 2021. MSP Letter, Ex. 15. The letter does not provide a complete description of a registrant's duties under SORA 2021. The letter is incomprehensible to ordinary readers, and even lawyers cannot be sure based on the letter what registrants' obligations are under the statute.

ANSWER: Defendants admit the allegation regarding sending the letter and that the letter does not provide a complete description of a registrants duties under SORA 2021 because the duties are set forth in the statute itself. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remainder of the allegations and leave Plaintiffs to their proofs.

568. The MSP did not track whether registrants received the letters or whether a registrant's letter was returned. Many registrants did not get the letters.

ANSWER: Defendants deny as untrue the allegation that MSP does not track whether registrants receive letters. Letters returned to MSP are scanned. Returned letters with a forwarding address are scanned and send out to the provided address. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remainder of the allegations and leave Plaintiffs to their proofs.

569.  After passage of SORA 2021, the MSP also updated the Explanation of Duties form, Ex. 16, which is supposed to be provided to registrants when they report. The Explanation of Duties form fails to provide clear or complete information about a registrant's duties.

ANSWER: Defendants admit the allegation regarding updating the form and that it is supposed to be provided to registrants. Defendants deny the remainder of the allegation as untrue.

570.  Plaintiffs fear they will violate SORA 2021's requirements because they do not understand exactly what they must do, as well as what they cannot do.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

282

571.  Plaintiffs' experience has been that when they ask law enforcement about their reporting obligations, law enforcement officials often do not know the answer, or provide conflicting information.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

572.  When registrants are uncertain about what SORA means, they err on the side of caution. Rather than risk prosecution for a possible violation, they self-police by assuming the worst, to avoid any chance they will be accused of wrongdoing and sent to jail or prison. As a result, the statute's vagueness and complexity have an outsized *limiting* effect on Plaintiffs' behavior across the board.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

## Response to Additional Consequences Resulting from Registration Under SORA 2021

573.  Because Plaintiffs are required to register as sex offenders in Michigan under SORA 2021, they are also subject to a vast and labyrinthine array of laws and ordinances imposed on registered sex

283

offenders by the federal government, other state or tribal governments, and local municipalities.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer. To the extent that an answer may be required, Defendants admit that registration requirements under state law may have implications under other laws.

574. The number of such restrictions, constraints and disabilities place on registrants has exploded, especially after 2000. Dozens of laws have been passed in every state, creating a complicated, constantly changing picture for individuals subject to registration and notification. The volume and scope of these laws is staggering: they cover everything from whether one can go to a church, library, or park; whether one can access a hurricane shelter; or where one can vote. Compliance is made even more difficult by the fact that these laws are unpredictable, complicated, and often vague. Prescott Decl., Ex. 5, ¶¶40–41, 46, and Consequences Triggered by Sex Offender Registration: A National Sample, Attach. 1.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to

their proofs. In further response, the declaration speaks for itself.

575.  The structure undergirding this vast array of laws regulating "sex offenders" is the sex offender registration statute, designating who is required to register. Other laws "piggyback" on the registration law, imposing additional obligations and restrictions on people who are classified as "sex offenders," regardless of whether those obligations and restrictions are appropriate for the wide range of people who are subject to registration. Prescott Decl., Ex. 5, ¶¶43–46.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, the declaration speaks for itself.

576.  Because registration in one state generally triggers registration in another state, people who are subject to SORA 2021 in Michigan are also subject to the sex offender laws of other jurisdictions if they travel or move. Any travel out-of-state requires extensive research to determine what the registration and reporting obligations are in the state to which a registrant would like to travel. *See* Prescott Decl., Ex. 5, ¶¶47–50, and Consequences Triggered by Sex Offender Registration: A National Sample, Attach. 1.

285

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, Defendants admit that other states have their own SORA laws that may impact registrants.  In further response, SORNA contains the same requirement. 28 C.F.R. § 72.6(c).

577.  Because of the complexity of these laws, it is essentially impossible for a Michigan registrant to travel to another state without a significant risk of being found out of compliance. The practical impact is that being required to register significantly restricts a person's ability to associate with family or friends out-of-state, or indeed to travel for any purpose, whether to attend a political conference or go on vacation. *See* Prescott Decl., Ex. 5, ¶50.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, the declaration speaks for itself.

578.  In addition, as a result of the fact that they are required to register under SORA 2021, registrants are subject to policies by private entities that refuse to provide goods or services to registered sex offenders.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

579.  For example, social media platforms like Facebook and Instagram—where much of public and private life is now conducted—bar registrants. Some colleges and gyms have policies excluding them. Even hospitals sometimes refuse to allow registrants to visit friends or family who are ill. *See* Prescott Decl., Ex. 5, Consequences Triggered by Sex Offender Registration: A National Sample, at 8–9, Attach. 1.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, the declaration speaks for itself.

580.  The named Plaintiffs report that they have been barred from Facebook, Twitter, and other social media platforms; are not permitted to join their local gym; and have been denied employment or housing by entities that have blanket bans on hiring or renting to registrants. In one instance, Mr. Doe E was even told that on account of his registry status he could not participate in a conference for people with Fetal Alcohol Syndrome.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

581.  In sum, countless private entities use the state's "sex offender" designation as a proxy for current dangerousness, and exclude registrants from services or opportunities to which they would otherwise have access. But for the fact that the state identifies the Plaintiffs as sex offenders, the goods and services provided by those private entities would generally be available to them.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

## VI.   RESPONSE TO SORA 2021 IS VERY EXPENSIVE, HAS UNINTENDED CONSEQUENCES, AND DIVERTS RESOURCES FROM INTERVENTIONS THAT ACTUALLY WORK

**Response to SORA 2021 Costs Millions**

582.  SORA 2021 is expensive to implement and maintain, wasting government resources that could be used to actually make communities safer and reduce sexual offending. Letourneau Decl., Ex. 4, ¶¶6, 17–18.

288

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, the declaration speaks for itself.

583. Indeed, studies from different states have shown that expansive registries with no pathway off for most registrants cost millions of dollars each year in staffing, surveillance, equipment, and maintenance. Letourneau Decl., Ex. 4, ¶¶17–18.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, the declaration speaks for itself.

584. While there is no published study on the costs of Michigan's registry, there are reasons to believe it is very high—given the size of the registry, the length of registration terms, and the frequency of the required reporting. Zgoba Decl., Ex. 7, ¶10.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, the declaration speaks for itself.

585. A full accounting of the costs of SORA 2021 must await discovery. Estimates based on publicly available data, however, suggest

that the costs could significantly exceed $12 million annually.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

586.  The MSP's Sex Offender Registration Unit, which is responsible for maintaining the registry and registry website, has a gross annual budget of $1 million. Levine Decl., Ex. 10, ¶¶13, 18.

ANSWER: Defendants admit that the MSP Sex Offender Registration Unit maintains the registry and its total annual expenses are approximately $1.9 million. In further response, the declaration speaks for itself.

587.  This does not include the cost to local registering authorities, who collect and enter registrant information. Given that there are roughly 35,000 active non-incarcerated registrants who must report, and that most will be reporting at least four times a year, and given the expense of law enforcement sweeps to monitor compliance, the costs to local registering authorities across the state are likely significant.

Levine Decl., Ex. 10, ¶¶10, 17–20, 22–24.

ANSWER: Defendants admit that there are approximately 35,000 non-incarcerated registrants and many must report 4 times a year. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations and leave Plaintiffs to their proofs.  In further response, the declaration speaks for itself.

588.  This also does not include the costs to the MDOC and local jails for SORA-related reporting and administration, which are unknown. Levine Decl., Ex. 10, ¶21.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.  In further response, the declaration speaks for itself.

589.  Michigan spends about **$11,254,000** a year incarcerating people for SORA-related convictions, which includes an average of about **$5,377,000** annually to incarcerate people in MDOC prisons, and an average of about **$5,877,000** annually to incarcerate people in county jails. Levine Decl., Ex. 10, ¶¶12, 29–39.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to

their proofs.  In further response, the declaration speaks for itself.

590.  These figures do not include the costs for parole and probation supervision, or the cost of incarcerating people on automatic parole and probation revocations that are mandatory under SORA. Levine Decl., Ex. 10, ¶¶12, 34–37.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.  In further response, the declaration speaks for itself.

591.  It is reasonable to believe that in addition to the more than **$11 million** in incarceration costs, there are **several million** more in costs associated with administration, registration, investigation, enforcement (like registry sweeps), and prosecution of registry violations, including litigation, court, and probation costs. Levine Decl., Ex. 10, ¶¶13, 39.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.  In further response, the declaration speaks for itself.

592.  These calculations do not consider costs such as lost wages or lost taxes as a result of the difficulty registrants have in finding

employment. Zgoba Decl., Ex. 7, ¶8.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.  In further response, the declaration speaks for itself.

593.  Registration also has other unintended consequences that put the public at greater risk. Research shows that registries increase the number of sex offenses that are pled down to non-sex offenses to avoid the onerous consequences of the registry. Registry laws also lower conviction rates for those cases that are not pled out but go forward to trial. Letourneau Decl., Ex. 4, ¶¶6, 14.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.  In further response, the declaration speaks for itself.

594.  Instead of devoting massive resources to a law that fails to fulfill its stated purpose, Michigan could improve community safety by investing in programs that have been shown to reduce sexual offending, such as evidence-based treatment and reentry support. Letourneau Decl., Ex. 4, ¶22; Hanson Decl., Ex. 3, ¶78.

ANSWER: Defendants lack knowledge and information sufficient

293

to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.  In further response, the declaration speaks for itself.

### Response to SORA 2021's Costs Far Exceed SORNA-Related Grant Funding

595.  The federal government has sought to incentivize states to adopt registration schemes congruent with the federal SORNA by providing that states that do not "substantially implement" SORNA will lose ten percent of their Byrne Judicial Access Grant funding. 34 U.S.C. §§ 20901, 20927(a).

ANSWER: Defendants admit the allegation. In further response, Defendants admit that Plaintiffs have correctly cited a provision of the law, but the law speaks for itself, and no other response is required.

596.  Thirty-two states—a majority—have declined to adopt SORNA-congruent registries due to the logistical and financial challenges it poses. Letourneau Decl., Ex. 4, ¶18; Zgoba Decl., Ex. 7, ¶4. Michigan is not one of those states.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, the declaration speaks for itself. In further answer, Michigan has substantially implemented SORNA.

294

597.  A primary reason that so few states have adopted SORNA-congruent registries is that the cost of doing so dwarfs the loss of any Byrne Grant funds. Every state to study the issue has found this to be true. SORNA is viewed by many states as an unfunded federal mandate because it imposes extensive obligations without providing corresponding resources. Letourneau Decl., Ex. 4, ¶18; Zgoba Decl., Ex. 7, ¶¶4, 9.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.  In further response, the declaration speaks for itself.

598.  When states implement SORNA-congruent registries, they incur significant costs in various areas, including but not limited to additional personnel; new software installation and maintenance; additional jail and prison space; increased court and administrative needs; law enforcement, including the need to verify information at more frequent intervals; and legislative costs associated with crafting and adopting new state laws. In addition, there are numerous costs that are even harder to measure, like costs related to loss of employment or housing by people subject to registration, and the costs of prosecution

and sending people back to jails and prisons. Zgoba Decl., Ex. 7, ¶8.
There are also litigation costs.

ANSWER: Defendants lack knowledge and information sufficient
to form a belief as to the truth of the allegation and leave Plaintiffs to
their proofs. In further response, the declaration speaks for itself.

599. SORNA requires only substantial implementation, not
complete implementation. 34 U.S.C. § 20927(a). Virtually all
jurisdictions that have "substantially implemented" SORNA have
registries that diverge from the SORNA-congruent standards in
significant ways.

ANSWER: Defendants admit that Plaintiffs have correctly cited a
provision of the law, but the law speaks for itself, and no other response
is required. In further response, Defendants lack knowledge and
information sufficient to form a belief as to the truth of the allegation
and leave Plaintiffs to their proofs.

600. In determining whether a jurisdiction has "substantially
implemented" SORNA, the federal government must consider any
judicial rulings that prevent implementation because it would be
unconstitutional. Byrne grant funding will not be withheld if the federal

government determines that the jurisdiction has adopted reasonable alternative procedures consistent with the purposes of SORNA. 34 U.S.C. § 20927(b).

ANSWER: Defendants admit that Plaintiffs have correctly cited a provision of the law, but the law speaks for itself, and no other response is required.

601.  It is accordingly very unlikely that Michigan will lose any Byrne grant funding if this Court determines that any of the SORNA-congruent provisions of SORA 2021 are unconstitutional. In any event, the cost of SORA 2021 far exceeds the loss of ten percent of its Byrne Grant funding. (Michigan's Byrne Grant was $5,165,727 in 2020; ten percent would be $516,500. *See* Department of Justice Office of Justice Programs, *Michigan's FY 2020 Byrne Justice Assistance Grant* (Sept. 18, 2020), https://bja.ojp.gov/funding/awards/2020-mu-bx-0011.)

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

## VII. RESPONSE TO SORA 2021 CONTINUES TO RETROACTIVELY APPLY THE 2011 AMENDMENTS

602.   In *Does I*, the Sixth Circuit held that "[t]he retroactive application of SORA's 2006 and 2011 amendments to Plaintiffs is unconstitutional, and it must therefore cease." *Does I*, 834 F.3d at 706. In *Does II*, the district court applied that holding to all registrants whose registrable offenses predated July 1, 2011 (the effective date of the 2011 amendments). *Does II*, No. 16-cv-13137, Am. Final J., R. 126.

ANSWER: Defendants admit that Plaintiffs have correctly cited a holding for *Does I AND Does II*, but the opinions speak for themselves, and no other response is required.

603.   Although SORA 2021 eliminated the geographic exclusion zones that were added to the statute in 2006, SORA 2021 keeps in place virtually all of the 2011 amendments to SORA and continues to apply the 2011 amendments retroactively to pre-2011 registrants, despite the Sixth Circuit's holding that retroactive application of the 2011 amendments violates the Ex Post Facto Clause and must cease. *See* SORA 2021 with Highlighted Changes Showing 2011 and 2021 Amendments, Ex. 14.

ANSWER: Defendants admit the allegation that the new SORA

298

eliminated exclusion zones.  Defendants state that the remainder of the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, the law speaks for itself.

604.  SORA 2021 retains the 2011 amendments' retroactive classification of registrants into tiers based solely on their offense of conviction without any individualized risk assessment, with the tiers determining the number of years that they must register and the frequency of reporting. M.C.L. §§ 28.722(s)–(v), 28.725(11)–(14).

ANSWER: Defendants admit the allegation.

605.  SORA 2021 maintains the retroactive extension of registration periods created by the 2011 amendments' tier classifications. Under the 2011 amendments, people who previously had been required to register for 25 years, and who were retroactively assigned to Tier III, had their registration periods extended to life. There was no individualized determination about their risk or whether lifetime registration was warranted.

ANSWER: Defendants admit the allegation.

606.  Data provided in *Does I* showed that before SORA's 2011

amendments, almost **three-quarters** of Michigan's registrants were required to register **for 25 years**. After the 2011 amendments retroactively classified registrants into tiers, almost **three-quarters** of registrants were required to register **for life**. There were 11,313 lifetime registrants before the 2011 amendments and 28,680—or 17,367 more—after those amendments were implemented. *Does I*, No. 12-cv-11194, Joint Statement of Facts, R. 90, ¶¶285–291.

ANSWER: Defendants admit the allegation.

607.  SORA 2021 retains the requirements (from the 2011 amendments) for reporting of vast amounts of personal information, including names, nicknames, Social Security number, date of birth, addresses, employer information (including temporary jobs and routes of travel for non-stationary employment), schools attended or schools the registrant plans to attend, telephone numbers, internet information, vehicle information, driver's license and personal ID card information, passport and immigration documents, and occupational and professional licensing information. M.C.L. § 28.727. SORA 2021 continues to require that registrants appear in person for verifications (quarterly, twice-yearly or annually, depending on tier). M.C.L.

§ 28.725a(3). SORA 2021 also retains the requirement in the 2011 amendments for advance notice for travel of more than seven days. M.C.L. §§ 28. 727(1)(e), 28.725(8). All of these requirements continue to be applied retroactively to pre-2011 registrants, with the exception of the reporting requirements for email and internet identifiers. M.C.L. §§ 28.725(2)(a), 28.727(1)(i).

ANSWER: Defendants admit that Plaintiffs have correctly cited a provision of the law, but the law speaks for itself, and no other response is required. In further response, the new SORA is consistent with federal SORNA.

608. Indeed, SORA 2021 appears to require reporting of even more information. The 2011 statute required reporting of "telephone numbers . . . routinely used by the individual" and vehicles "regularly operated by the individual." M.C.L. § 28.727(1)(h), (j) (2020). In SORA 2021, the legislature chose to address the vagueness concerns associated with the modifiers "routinely" and "regularly" not by limiting reporting to a person's own phone and vehicles, but by adopting a new blanket requirement to report every single use of a phone or vehicle ever. M.C.L. § 28.727 (1)(h), (j) (2021).

301

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, the law speaks for itself, and no other response is required.  In further response, the new SORA is consistent with federal SORNA.

609.  SORA 2021 also retains the 2011 amendments' requirement for extensive and frequent reporting of even minor changes to information. SORA 2021 replaces the requirement to "immediately" report with a requirement to report within three business days. But that is exactly how "immediately" was defined in SORA 2011, so the change is not substantive but cosmetic. *Compare* M.C.L. § 28.722(g) (2020), *with* M.C.L. § 28.725(1) (2021).

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further answer, the law speaks for itself, and no other response is required.

610.  SORA 2021 mandates in-person reporting for certain changes, and in other instances provides that updates can be made "in person, or in another manner as prescribed by the [MSP]." M.C.L. §

28.725(1). To Plaintiffs' knowledge, the MSP has not issued any formal guidelines or policies regarding which of these updates must be made in person and which in some other manner they have prescribed. However, based on a letter sent by the MSP to registrants in March 2021 and the Explanation of Duties that is supposed to be provided to registrants when they report, it appears that MSP still requires many of those updates to be made in person, but that a few can be made by submitting a form. MSP Letter to Registrants, Ex. 15; Explanation of Duties, Ex. 16; Michigan Sex Offender Registry Mail-in Update Form, Ex. 17.

ANSWER: Defendants admit that Plaintiffs have correctly cited a provision of the law, but the law speaks for itself, and no other response is required.  In further response, the letter speaks for itself and identifies which information does not need to be updated in person.

611.  Changes that must be reported in person within three business days—either because the statute requires it or because the MSP has prescribed it—include residential address changes, starting or discontinuing employment, and (it is unclear) potentially volunteer work, as well as name changes, enrolling or discontinuing enrollment as a student, being present as a student in other locations in Michigan or

303

the U.S., and moving to a new state. Updates that can be made by submitting a form include travel plans, and changes to vehicles and phones. Summary of SORA 2021's Obligations, Disabilities, and Restraints, Ex. 2, at 10–13.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, the law and forms speak for themselves.

## VIII. RESPONSE TO REGISTRATION IS INTERTWINED WITH THE CRIMINAL JUSTICE PROCESS AND IS CENTRAL TO PLEA NEGOTIATIONS

612.  SORA 2021 provides that a judge cannot sentence a defendant unless the defendant has been registered. *See* M.C.L. § 28.724(5).

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, the law speaks for itself.

613.  The judgment of sentence form approved by the State Court Administrative Office contains a checkbox to show that sex offender registration has been completed. Judgment of Sentence Form CC 219b, Ex. 18, Box 3.

ANSWER: Defendants admit the allegation.

614.   Depending on the court and the sentence, responsibility for initial registration can lie with the probation agent, parole agent, the MDOC, the sheriffs' department, the probate court, or other entities. M.C.L. § 28.724.

ANSWER: Defendants admit that Plaintiffs have correctly cited a provision of the law, but the law speaks for itself, and no other response is required.

615.   When criminal defendants plead guilty, they waive their constitutional right to trial and other constitutionally guaranteed protections based on their understanding of the consequences of a guilty plea.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

616.   Because of the severe burdens associated with sex offender registration, whether a conviction will result in registration is critical for criminal defendants in deciding whether or not to plead guilty. Yantus Decl., Ex. 11, ¶¶4–7.

305

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, the declaration speaks for itself.

617. For people charged with sex-related crimes, the choice whether to plead guilty often turns on whether the defendant will have to register, for how long, and whether the registration is public or private. Yantus Decl., Ex. 11, ¶¶8–11.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, the declaration speaks for itself.

618. SORA 2021 fundamentally, and retroactively, alters the consequences of the pleas of many registrants by imposing registration on individuals who were not previously required to register and by lengthening registration terms beyond what was required at the time of the plea.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

619. For example, when John Doe A pled guilty in 1991 and John

306

Doe E pled guilty in 1994, there was no registry. Yet as a result of retroactive amendments to SORA, they now must register for life.

ANSWER: Defendants admit the allegation.

620.   Similarly, when John Does B, C, D, E, and Mary Roe pled guilty, their decisions to enter pleas were premised on the belief that they would be subject to registration for no more than 25 years. As a result of retroactive amendments to SORA, however, they must now register for life.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

621.   These Plaintiffs, and other similarly situated, had no notice at the time they pled that a consequence of their plea would be lifetime sex offender registration.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

307

## IX.   RESPONSE TO SORA 2021 IMPOSES EXTRAORDINARY BURDENS OUT OF ANIMUS TOWARD PEOPLE WITH PAST SEX OFFENSES

622.   Experts who study sexual offending find it very hard to understand why states, including Michigan, use ineffective or counterproductive registration and public notification schemes, rather than effective, evidence-based approaches. Prescott Decl., Ex. 5, at 3.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, the declaration speaks for itself.

623.   "In a world of rational policy-making, the accumulation of empirical evidence that a costly criminal justice policy is ineffective in achieving its stated goal, might be expected to generate political pressure to abandon that program." Alissa Ackerman, Meghan Sacks & David Greenberg, *Legislation Targeting Sex Offenders: Are Recent Policies Effective in Reducing Rape?*, 29 Just. Q. 858, 878 (2012).

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, the quote speaks for itself.

624.   The fact that Michigan adopted SORA 2021 even though it

308

irrationally undermines the stated goal of reducing sexual offending and protecting public safety can only be explained by animus towards people convicted of sexual offenses, coupled with the huge barriers such people face in influencing the political process.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

625.  Few groups are as loathed and despised as people convicted of sex offenses. Ira Ellman, *When Animus Matters*, 7 U. Pa. J. L. & Pub. Affs., at 2–17.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

626.  Because SORA 2021, like its predecessors, is grounded in animus towards people who have committed sex offenses, legislative discussions about Michigan's registry statute take place against a backdrop of loathing—a sense that no restriction is too burdensome for someone who committed a sex offense. Legislators are unwilling to consider the research about registries and sexual offending because

their constituents hate registrants, and politicians cannot afford to look "soft" on crime.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

627. Michigan enacted and implemented SORA 2021 with no sustained or rigorous study of its likely consequences. *Cf.* Prescott Decl., Ex. 5, at 2 (describing this as the typical approach when states adopt registry laws).

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, the declaration speaks for itself.

628. Although the purported purpose of Michigan's SORA is to prevent recidivism, the MSP does not track the recidivism rates of registrants or the impact of registration on recidivism, nor does the state analyze SORA data to determine the effectiveness of the registry. Despite having the capacity to run reports assessing recidivism rates, the MSP has not done so. *See Does I*, No. 12-cv-11194, Joint Statement of Facts, R. 90, ¶¶210–12.

ANSWER: Defendants admit that purpose of SORA is to prevent recidivism. In further response, the statute speaks for itself with respect to its purposes and the statute does not require MSP to track the impact of registration on recidivism. Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation regarding analyzing SORA data to determine effectiveness of the registry because it is unclear what "SORA data" refers to, what effectiveness means, and Defendants do not know if other branches of government track this information and leave Plaintiffs to their proofs. In further response, the Joint Statement of Facts refers to Offender Watch, which is an old system no longer in use.

629. During three legislative hearings on SORA 2021, virtually all of the approximately 170 people who commented—many of whom were registrants—opposed the bill.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

630. Experts on registries testified at the hearings that registries do not prevent recidivism or make communities safer. There was no

testimony to the contrary.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

631.   Despite the uncontroverted testimony that registry laws do not work to prevent sexual offending, despite the nearly unanimous public testimony opposing the bill, and despite the court decisions holding that the old SORA was unconstitutional, the Michigan legislature clung to its failed punitive registration and notification scheme and adopted SORA 2021 in order to appease popular animus toward a demonized group.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

632.   As result of this animus, the basic structure of SORA remains unchanged. It continues to impose extensive burdens, publicly brands people as "sex offenders" and presents them to the public as *currently and equally* dangerous, without any individual review or path off the registry, in most cases for life. The scientific consensus is the

312

opposite: that most registrants will never commit another sex offense; that by ten years offense-free in the community most registrants pose no greater risk than do non-sexual offenders and males in general (neither of whom are required to register); and that by 20 years offense-free all registrants will reach that threshold of "desistance."

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation regarding animus and leave Plaintiffs to their proofs. In further response, Defendants deny the remainder of the allegations as untrue.

633.  In sum, SORA 2021, like its predecessor, is based on myths, fears, and misconceptions about a demonized group, was adopted out of animus, and is not rationally related to the public safety goal it purports to serve.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

## X.   RESPONSE TO REGISTRATION OF PEOPLE WITH OUT-OF-STATE OFFENSES

634.  Under Michigan's SORA, people with offenses from other jurisdictions are required to register as sex offenders in Michigan if (a)

313

the offense is "substantially similar" to a registrable Michigan offense, M.C.L. § 28.722(r)(x); (t)(xiii); (v)(viii); or (b) the "individual from another state [] is required to register or otherwise be identified as a sex or child offender or predator under a comparable statute of that state." M.C.L. § 28.723(1)(d).

ANSWER: Defendants admit the allegations to the extent that Plaintiff's correctly quote the statute.  In further response, the law speaks for itself.

### Response to the Complexity of Sex Offender Registration Decisions for People with Non-Michigan Convictions

635.  Determining whether a person with a non-Michigan conviction must register in Michigan, and if so, at what tier level and subject to what requirements, requires a multi-step legal analysis.

ANSWER: Defendants admit that there is more than one step required to determine someone's Michigan registration requirements arising from an out-of-state conviction.

636.  SORA does not delegate authority to the Michigan State Police (MSP) to make determinations about which individuals with non-Michigan convictions must register, or what tier level or requirements should apply.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.

637.  However, in practice the MSP makes unilateral decisions about whether someone with a non-Michigan conviction is subject to registration, and if so, what tier level and requirements apply.

ANSWER: Defendants admit that MSP makes decisions about out-of-state offenders' registration obligations under Michigan law.  In further response, Defendants state that the remainder of the allegations represent legal conclusions which by law do not require an answer.

638.  The MSP has promulgated no published rules or procedures for determining whether people with non-Michigan convictions must register, and if so, what tier level and requirements apply.

ANSWER: Defendants admit the allegation.

639.  In discovery, Plaintiffs obtained flowcharts that are used internally by the MSP SOR Unit staff to determine whether and at what tier level registrants with non-Michigan convictions must register. *See* Ex. 23, MSP Flowcharts.

315

ANSWER: Defendants admit that documents were produced to Plaintiffs through discovery, including Ex. 23, which are used by MSP SOR Unit staff to help determine registration obligations under Michigan law. To the extent that Plaintiff's imply that the flowcharts themselves make the decision, Defendants deny the allegation as untrue because registration obligation decisions are made by the MSP legal department staff.

640. The chart below shows how the MSP makes registration determinations for those with non-Michigan adult convictions.

ANSWER: Defendants admit that the flow chart assists the MSP SOR Unit staff in determining registration obligations under Michigan law. To the extent that Plaintiff's imply that the flowcharts themselves make the decision, Defendants deny the allegation as untrue because registration obligation decisions are made by MSP legal department staff.



**OUT OF STATE ADULT CONVICTIONS**
Version 1: 07/29/2022

*If the Crime Code is not listed or tiered in the PACC Code Table, consult with an analyst before moving to the next step.

641.  The next chart shows how the MSP makes registration determinations for those with out-of-state juvenile adjudications.

ANSWER: Defendants admit that the flow chart assists the MSP SOR Unit staff in determining registration obligations under Michigan law.  To the extent that Plaintiff's imply that the flowcharts themselves make the decision, Defendants deny the allegation as untrue because registration obligation decisions are made by MSP legal department staff.

317



**OUT OF STATE JUVENILE ADJUDICATIONS**

If the Crime Code is not listed or tiered in the PACC Code Table, consult with an analyst before moving to the next step.

642.  As shown in the flow charts above, determining a person's

registration requirements in Michigan first requires a determination of

whether the foreign offense is comparable ("substantially similar") to a

Michigan conviction, and if so, to which Michigan conviction.

ANSWER: Defendants state that the flow charts speak for

themselves, and a response is not required.

318

643.  Adjudications under Michigan's youthful diversion statute and convictions that have been set aside do not result in registration. M.C.L. § 28.722(a)(i)-(ii). Accordingly, a "substantial similarity" determination can also require determining whether a youthful diversion statute or expungement statute in another jurisdiction is comparable Michigan's youthful diversion and set aside statutes. *See* Ex. 24, MSP Emails Discussing Registration for Non-Michigan Convictions; Ex. 25, Morris Dep. at 148.

ANSWER: Defendants admit that a conviction could be set aside, and a court must issue an order for removal from the registry. If the conviction resulted from an out of state adjudication, MSP SOR staff would need to review on a case-by-case basis to decide.

644.  Registration decisions for people with non-Michigan convictions can also require a determination of whether the person must register in the convicting jurisdiction, and if so, what that jurisdiction requires with respect to the frequency of reporting, tier level, duration of registration requirements, and publication of registry information.

319

ANSWER: Defendants admit the allegation to the extent that it implies that MSP reviews information from other states when there is no substantially similar conviction.

645.  Front-line staff in the MSP Sex Offenders Registration (SOR) Unit decide if people with non-Michigan offenses must register in Michigan, and what their tier level and registration requirements will be, using the flow charts above.

ANSWER: Defendants admit that the flow charts assist the MSP SOR Unit staff in determining registration obligations under Michigan law, but deny the allegation to the extent that Plaintiffs imply that the SOR Unit staff themselves make the decisions.  The decisions are made by the MSP legal department staff.

646.  The MSP SOR Unit also relies on a spreadsheet of non-Michigan offenses (PACC Code Table) which lists the tier level assigned to various non-Michigan offenses. The spreadsheet has a column for the "comparable MI code," but that column is almost entirely blank. *See* Ex. 26, PACC Code Table.

ANSWER: Defendants admit that MSP SOR Unit staff rely on the spreadsheet as a reference tool, but note that the MSP legal department

staff make decisions about registration obligations of out-of-state registrants. Defendants admit that the spreadsheet has a column for "comparable MI code, and that column has many blank cells.

647. If the non-Michigan offense has not been listed or tiered in the spreadsheet, the frontline staff are instructed to consult an analyst.

ANSWER: Defendants admit that staff may first consult with an analyst, but to the extent that the allegation implies that analysts make the decisions, Defendants deny the allegation as untrue because registration obligation decisions are made by MSP legal department staff.

648. Upon information and belief, no staff member in the MSP SOR Unit, including the analysts, has a law degree.

ANSWER: Defendants admit the allegation.

649. MSP SOR Unit staff sometimes consult with the MSP Legal Department to try to determine whether people with non-Michigan offenses must register, and if so, at which tier and subject to what requirements. *See* Ex. 24, MSP Emails Discussing Registration for Non-Michigan Convictions.

ANSWER: Defendants admit the allegation, and to the extent that the allegation implies that MSP SOR Unit staff make independent registration obligation decisions, Defendants deny the allegation as untrue because registration obligation decisions are made by MSP legal department staff.

650.  Upon information and belief, the MSP, including its Legal Department, does not have attorneys with bar admissions in all 50 states, or with expertise in the sex offender registration laws of all 50 states.

ANSWER: Defendants admit the allegation to the extent that "MSP" is referring to the SOR Unit, the SOR Enforcement Unit and the legal department staff.  To the extent the allegation implies the entire Department, which includes thousands of members, Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

651.  Within the MSP, staff do not always agree about whether a person with an out-of-state offense must register in Michigan, or what a person's registration requirements should be.

ANSWER: Defendants admit the allegation to the extent that "MSP" is referring to the SOR Unit, the SOR Enforcement Unit and the legal department staff.  In further response, the MSP legal department staff makes the ultimate decision.  To the extent the allegation implies the entire Department, which includes thousands of members, Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

### Response to the Michigan State Police's Unreviewable Decisions on Registration Requirements for People with Non-Michigan Offenses

652.  SORA does not define what it means for an offense to be "substantially similar" to a registrable Michigan conviction.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  In further response, the law speaks for itself.

653.  Under SORA, whether a person's non-Michigan offense is "substantially similar" to a Michigan offense can determine whether a person must register, and—if they must register—their tier level, their frequency of reporting, the duration of their registration requirements, and whether their registry status is public or non-public.

ANSWER: Defendants admit the allegation.

654.  The question of whether a non-Michigan offense is "substantially similar" to a Michigan offense requires a comparison of the elements of the non-Michigan offense and the elements of the purportedly similar Michigan offense.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  In further response, the law speaks for itself.

655.  Determining the elements of an offense and comparing the elements of offenses across jurisdictions is complicated. *See*, *e.g. Doe v. Pryor*, 61 F. Supp.2d 1224, 1233 (M.D. Ala. 1999) (noting that simply identifying the elements of a crime "can vex even the most competent and experienced jurists," and that determining whether the elements of two crimes compare may "call for complicated judgments"); *Meredith v. Stein*, 355 F. Supp. 3d 355, 365 (E.D.N.C. 2018) ("The substantial similarity determination [between in-state and out-of-state sex offenses] is a complicated one.").

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.  In further answer, Defendants admit that Plaintiffs have

324

correctly cited to district court decisions from other judicial circuits, but the cases speak for themselves, and no other response is required.

656. A non-Michigan offense may be similar to several different Michigan offenses, some of which require registration and some of which do not.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

657. A non-Michigan offense may be similar to several different Michigan offenses, where the various Michigan offenses could result in different registration requirements and different tier assignments.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

658. Courts considering how out-of-jurisdiction offenses should be categorized for purposes of sex offender registration statutes have repeatedly held that such comparisons should be based on a "categorical approach." Under the "categorical approach," courts consider only the elements of the crime, rather than the particular facts of the case.

*Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). The Sixth Circuit applies the categorical approach when making determinations about whether an out-of-jurisdiction offense matches an in-jurisdiction offense for the purpose of sex offender registration. *United States v. Barcus*, 892 F.3d 228, 231-32 (6th Cir. 2018) (applying the categorical approach to determine whether a state sex conviction was substantially similar to a federal offense for the purpose of tier classification). *See also United States v. Morales*, 801 F.3d 1, 6 (1st Cir. 2015) (applying categorical approach); *Grijalva Martinez v. Att'y Gen. of United States*, 978 F.3d 860, 865 (3rd Cir. 2020) (same); *United States v. Berry*, 814  F.3d 192, 196 (4th Cir. 2016) (same); *United States v. Montgomery*, 966 F.3d 335, 338-39 (5th Cir. 2020) (same); *United States v. Walker*, 931 F.3d 576, 579 (7th Cir. 2019) (same); *United States v. White*, 782 F.3d 1118, 1130–35 (10th Cir. 2015) (same); *United States v. Vineyard*, 945 F.3d 1164, 1170 (11th Cir. 2019) (same).

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  In further answer, the cases speak for themselves.

326

659. The MSP, however, does not look only at the elements of out-of-jurisdiction offenses in making determinations of "substantial similarity." Rather, the MSP also considers unproven allegations about offense conduct, such as allegations in police reports or in charges not resulting in conviction. Ex. 24, MSP Emails Discussing Registration for Non-Michigan Convictions.

ANSWER: Defendants admit that MSP legal will consider information learned from police reports and/or court records to determine the most similar Michigan conviction type.

### Response to People with Non-Michigan Offenses Are Registered Under the Harsher of the Michigan or Non-Michigan Registration Scheme

660. As the flowcharts above show, if the foreign conviction results in a less severe registration status in the foreign jurisdiction than in Michigan, then Defendants say that Michigan's harsher rules govern. But if Michigan would apply a less severe registration status to the same offense, then Defendants say the foreign jurisdiction's harsher rules govern. In short, out-of-staters lose either way: they get whichever set of rules is harsher.

ANSWER: Defendants admit to the extent that it is implied that Michigan imposes longer registration period if there is a conflict between a foreign jurisdiction and Michigan's registration duration. In further answer, if a foreign conviction requires reporting twice a year, but Michigan requires reporting four times a year, the registrant would be required to report four times a year; and the inverse is also true.

661.  If a person's offense would not require registration in Michigan, but the offense requires registration in the convicting jurisdiction, the person is required to register in Michigan.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.

662.  For example, the MSP SOR Unit coordinator Narcissa Morris testified that a person with an indecent exposure conviction (which does not require registration in Michigan absent a minor victim) would be required to register in Michigan if required to register in the convicting jurisdiction. Ex. 25, Morris Dep., at 142.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  In further response, the deposition testimony speaks for itself.

328

663.  Similarly, children with non-Michigan offenses who would not be subject to registration due to their age or nature of their offense if they had a Michigan disposition, are nevertheless subject to registration in Michigan if required to register in the state of conviction.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.

664.  Ms. Morris testified that although Michigan does not require children under the age of 14 to register if adjudicated in Michigan, an eight-year-old with an out-of-state disposition would have to register in Michigan if registration is required in the adjudicating state. Ex. 25, Morris Dep. at 145.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  In further response, the deposition testimony speaks for itself.

665.  On the flip side, if the non-Michigan jurisdiction does **not** require registration, the MSP will still require the person to register if MSP the deems the foreign conviction to be "substantially similar" to a registrable offense in Michigan.

ANSWER: To the extent that the allegation in this paragraph

329

relies on allegations in the preceding paragraph, MSP denies the allegation is untrue because anyone under the age of 14 does not need to register in Michigan unless required by the non-Michigan jurisdiction.

666. Similarly, while a convicting state might only impose a short registration term for a particular offense, if the MSP decides that the offense is "substantially similar" to a Michigan offense that has a longer registration period, the MSP will impose the harsher Michigan requirements.

ANSWER: Defendants admit that it imposes the longer registration period.

667. In addition, the fact that MSP does not use the categorical approach when comparing Michigan and non-Michigan convictions results in unequal and harsher treatment of people with non-Michigan convictions. SORA spells out which Michigan convictions—each of which is defined by specific elements—result in registration, as well as the length, frequency, and public/private nature of registration. A person with a non-Michigan conviction could be convicted of an offense with the exact same elements as a Michigan offense, but be subject to

330

harsher treatment (e.g., registration rather than non-registration, a higher tier level, public rather than non-public registry) because the MSP looks at unproven allegations, not simply at the elements of the offense.

ANSWER: Defendants deny for the reasons that if an out-of-state offense has the same elements MSP wouldn't need to make a substantially similar determination.

668.   Discovery documents highlight this unequal treatment. For example, a Florida man convicted of violating Florida Code § 934.215 (unlawful use of a two-way communication device, an offense which **has no sexual element**), was required to register in Michigan based on the MSP's determination that the underlying alleged offense conduct was similar to M.C.L. § 750.145d(1)(a) (an offense that **has a sexual element**). *See* Ex. 24, MSP Emails Discussing Registration for Non-Michigan Convictions; *see also* Ex. 27, Chartier Expert Decl. (describing client who, based on a plea agreement designed to avoid sex offender registration, pled to a non-registrable federal offense, but whom the MSP then required to register for life based on the MSP's unilateral

conclusion that the offense was substantially similar to a registrable Michigan offense).

ANSWER: Defendants deny that there is unequal treatment, and in further answer state that the allegation represents a legal conclusion which by law does not require an answer.  In further response, the documents speak for themselves.

669.  In sum, as these examples show, a person with a non-Michigan conviction will always be subject to the harsher regime, whether it is the convicting jurisdiction's or Michigan's.

ANSWER: Defendants admit to the extent that it is implied that Michigan imposes longer registration period if there is a conflict between a foreign jurisdiction and Michigan's registration duration. In further answer, if a foreign conviction requires reporting twice a year, but Michigan requires reporting four times a year, the registrant would be required to report four times a year; and the inverse is also true.

### Response to Failure to Provide Pre-Deprivation Notice, Meaningful Notice, or Any Opportunity to Be Heard

670.  People with non-Michigan convictions do not get notice or any opportunity to be heard before the MSP decides whether the person

must register as a sex offender in Michigan, and if so, what tier level and registration requirements apply.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation because it is unclear what notice and opportunity to be heard means, and leave Plaintiffs to their proofs.

671. After the MSP decides that a person with a non-Michigan conviction must register, the MSP procedures provide that the person should be sent notice. *See* Ex. 28, SOR Op. Proc. 315, at 738-39.

ANSWER: Defendants admit the allegation.

672. The notice says that the person is required to register, what the assigned tier level is, how long the person must register (e.g., lifetime), and how frequently the person must register. The notice does not state if the person's registry status will be made public. See Ex. 29, Tier Notification Letters.

ANSWER: Defendants admit the allegation. In further response, the notice speaks for itself.

673. The notice says nothing about how the decision was made, or the legal or factual bases for the decision.

ANSWER: Defendants admit the allegation. In further response, the notice speaks for itself.

674.  The notice does not say whether the decision was based on the person's obligation to register elsewhere or because the offense is "substantially similar" to a Michigan offense.

ANSWER: Defendants admit the allegation. In further answer, Defendants state that there are two different letters sent out based on whether registration duration arise from a foreign jurisdiction. In further response, the notices speak for themselves.

675.  The notice does not include any information about which (if any) Michigan offense the MSP has decided is "substantially similar" to the non-Michigan offense.

ANSWER: Defendants admit the allegation. In further response, the notice speaks for itself.

676.  The notice provides no information about steps people can take if they dispute the MSP's determination that they are subject to registration in Michigan, or dispute the assigned tier level or registration requirements.

ANSWER: Defendants admit the allegation. In further response, the notice speaks for itself.

677. There is no appeal process or procedure by which people with non-Michigan offenses can contest the MSP's determinations about whether they are subject to registration in Michigan or what tier level and registration requirements apply.

ANSWER: Defendants deny the allegation as untrue. In further response, the allegation represents a legal conclusion which by law does not require an answer.

678. There is no procedure for judicial or appellate review of the MSP's registration determinations for people with out-of-state convictions.

ANSWER: Defendants deny the allegation as untrue. In further response, the allegation represents a legal conclusion which by law does not require an answer.

### Response to Mary Doe and John Doe G

679. The cases of Mary Doe and John Doe G illustrate the problem.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

680. **Mary Doe:** As set out in the initial complaint, ECF 1, ¶¶ 67-83, when Mary Doe was convicted in 2003 in Ohio, she was determined based on individual review to be in the lowest risk category, and was required to register for 10 years.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

681.  In Michigan, Ms. Doe is classified as a Tier III registrant who must comply with SORA for life.

ANSWER: Defendants admit the allegation.

682.  Ms. Doe would not be subject to sex offender registration in Ohio because she has completed her initial ten-year registration term. *See* Compl., ECF 1, ¶¶ 72-74 (explaining Ohio registry law).

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.

683. Because Ms. Doe is not subject to registration in Ohio, she is not subject to registration under M.C.L. § 28.723(1)(d) (requiring people to register in Michigan if they are required to register in another jurisdiction).

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.

684. Thus, unless Ms. Doe's offense is "substantially similar" to a registrable Michigan offense, she is not required to register in Michigan.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.

685. There is no Michigan offense that has the exact same elements as Ohio R.C. 2907.04(A) and (B)(3).

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.

686. Plaintiffs submit that there is no Michigan offense that is "substantially similar" to Ohio R.C. 2907.04(A) and (B)(3).

337

ANSWER: Defendants admit that Plaintiffs set forth their position, but in further answer Defendants state that the allegation represents a legal conclusion which by law does not require an answer.

687. The Michigan offense that looks most like Ohio R.C. 2907.04(A) and (B)(3)—though Plaintiffs contend it is still not substantially similar—is criminal sexual conduct in the fourth degree (CSC-IV), M.C.L. § 750.520e(a).

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.

688. CSC-IV is a Tier II offense resulting in 25-year registration. M.C.L. § 28.722(t)(x).

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer. In further answer, the law speaks for itself.

689. The MSP does not consider Ms. Doe's offense to be "substantially similar" to the Tier II offense of CSC-IV. Instead, the MSP classified Ms. Doe as a Tier III lifetime registrant because it deems her Ohio offense "substantially similar" to some undisclosed Michigan offense that requires lifetime registration.

ANSWER: Defendants admit that MCL 2907.04 is the Michigan offense substantially similar to Ms. Doe's Ohio Offense.

690.  The MSP never told Ms. Doe what Michigan offense it deems "substantially similar" to her out-of-state offense such that she is required to register for life as a Tier III offender.

ANSWER: Defendants admit the allegation.

691.  Plaintiffs do not know what Michigan offense or offenses Defendants consider "substantially similar" to Ms. Doe's Ohio conviction.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

692.  **John Doe G**: As set out in the initial complaint, ECF 1, ¶¶ 139-47, when John Doe G was convicted in Nebraska in 2008, he was informed that he would be subject to sex offender registration for ten years. More than ten years have elapsed since his conviction.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

339

693.  In Michigan, Mr. Doe G is classified as a Tier III registrant who must comply with SORA for life.

ANSWER: Defendants admit the allegation.

694.  Class counsel, even after consulting with a Nebraska criminal defense attorney, have been unable to determine with any certainty what Mr. Doe G's registration obligations would be under current Nebraska law.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

695.  The MSP never informed Mr. Doe G whether it classified him as a Tier III registrant because of registration obligations in Nebraska, or whether because it deemed his Nebraska conviction "substantially similar" to a registrable Michigan offense.

ANSWER: Defendants admit the allegation.

696.  There is no Michigan offense that has the exact same elements as Nebraska Rev. Statute 28-320.01(3), the offense for which Doe G was convicted.

340

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.

697.  Plaintiffs contend that there is no Michigan offense that is "substantially similar" to Nebraska Rev. Statute 28-320.01(3).

ANSWER: Defendants admit that Plaintiffs set forth their position, but in further answer Defendants state that the allegation represents a legal conclusion which by law does not require an answer.

698.  A person violates Nebraska Rev. Statute 28-320.01(3) by subjecting a person 14 years of age or younger to sexual contact where the actor is at least 19 years of age, and that actor does not cause serious personal injury to the victim.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.

699.  The Michigan offense that appears to be most similar to Nebraska Rev. Statute 28-320.01(3)—though Plaintiffs contend it is still not substantially similar—is criminal sexual conduct in the fourth degree, M.C.L. § 750.520e(a).

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer. In further

response, Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation regarding Plaintiffs contention and leave Plaintiffs to their proofs.

700.   CSC-IV is a Tier II offense. However, the MSP has classified Mr. Doe G as a Tier III lifetime registrant.

ANSWER: Defendant denies the allegation as untrue. CSC-IV has no specific tiering identifier. The tiering identifier is based on the victim's age.

701.   The MSP has not disclosed to Mr. Doe G what, if any, Michigan Tier III offense it deems "substantially similar" to his Nebraska offense, or whether instead his Tier III classification is based on the MSP's understanding of what Mr. Doe G's registration requirements would be under Nebraska law.

ANSWER: Defendants admit the allegation.

702.   Plaintiffs do not know what Michigan offenses, if any, the MSP considers "substantially similar" to Mr. Doe G's Nebraska conviction.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

## RESPONSE TO CLASS ALLEGATIONS

703. Plaintiffs bring this action on behalf of themselves and all similarly situated persons pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2).

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer. To the extent that an answer may be required, Defendants admit that the allegation speaks for itself.

704. Plaintiffs seek certification of a "primary class," defined as people who are or will be subject to registration under SORA.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer. To the extent that an answer may be required, Defendants admit that the allegation speaks for itself and that the class has already been certified.

705. Plaintiffs also seek certification of several subclasses:

    a. A "pre-2011 ex post facto subclass," defined as members of the primary class who committed the offense(s) requiring

343

registration before July 1, 2011;

b. A "retroactive extension of registration subclass," defined as members of the primary class who were retroactively required to register for life as a result of amendments to SORA;

c. A "barred from petitioning subclass," defined as members of the primary class who are ineligible to petition for removal from the registry and for whom ten or more years will have elapsed since the date of their conviction for the registrable offense(s) or from their release from any period of confinement for that offense(s), whichever occurred last, and who (a) have not been convicted of any felony or any registrable offense since; (b) have successfully completed their assigned periods of supervised release, probation, or parole without revocation at any time of that supervised release, probation, or parole; and (c) have successfully completed an appropriate sex offender treatment program, if successful completion of a sex offender treatment program was a condition of the registrant's confinement, release, probation, or parole;

d. A "non-sex-offense subclass" defined as members of the primary class who are or will be subject to registration for an offense without a sexual component including convictions for violating M.C.L. §§ 750.349, 750.349b, 750.350, or a substantially similar offense in another jurisdiction;

e. A "plea bargain subclass," defined as members of the primary class who gave up their right to trial and pled guilty to a registrable offense in Michigan and who, as a result of retroactive amendments to SORA, (i) were retroactively subjected to SORA even though there was no registration requirement at the time of their plea; or (ii) had their registration terms retroactively extended beyond that in effect at the time of their plea;

    f.  A "post-2011 subclass" defined as members of the primary class who committed the offense(s) requiring registration on or after July 1, 2011; and

    g.  A "non-Michigan offense subclass," defined as members of the primary class who, according to Defendants, are or will be subject to sex offender registration under SORA 2021 for a conviction or adjudication from a jurisdiction other than Michigan.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, Defendants admit that the allegation speaks for itself and that the class has already been certified.

706.  In *Does II*, the state defendants stipulated to class certification for both the primary class and two subclasses in that case. *Does II*, No. 16-cv-13137, Stipulated Order Granting Class Certification, R. 46.

ANSWER: Defendants admit the allegation.

707.  Class certification in *Does II* allowed the court to stay or dismiss the many individual cases that had been brought, pending a final decision in *Does II*, thus conserving judicial resources and allowing for efficient adjudication of the constitutionality of the former statute.

345

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

708.  Here, too, the proposed primary class and the proposed subclasses satisfy the requirements of Fed. R. Civ. P. 23(a).

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, Defendants admit that the class has already been certified.

709.  First, the primary class and the subclasses are each so numerous that joinder of all members of the class and subclasses is impracticable.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, Defendants admit that the class has already been certified.

710.  According to data filed by Defendants in *Does II*, there are approximately 55,000 registrants. *See Does II*, No. 16-cv-13137, R. 127, PageID.2589. Other data provided by the MSP in response to a public

346

records request puts the total number of registrants at around 53,000.

Levine Decl., Ex. 10, ¶¶15–16. In either event, the total number of

registrants who comprise the primary class are clearly so numerous as

to make joinder impracticable.

ANSWER: Defendants admit the allegations regarding the data

filed and further respond that the declaration speaks for itself.  In

further response, Defendants state that the allegations regarding

joinder represents a legal conclusion which by law does not require an

answer.  Defendants admit that the class has already been certified.

711.  There are approximately 42,000 registrants (78.5% of the

total) who committed the offense(s) which subject them to registration

before July 1, 2011, the effective date of the 2011 SORA amendments.

Levine Decl., Ex. 10, ¶16.c.  Those individuals are all members of the

2011 ex post facto subclass.

ANSWER: Defendants deny the allegation as untrue.  Defendants

admit that the class has already been certified.

712.  There are thousands of registrants who were retroactively

required to register for life as a result of amendments to SORA. Those

individuals are all members of the retroactive extension of registration

347

subclass.

ANSWER: Defendants admit the allegation that certain registrants were retroactively required to register for life. Defendant lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegation and leave Plaintiffs to their proofs.

713. Although not every one of the more than 42,000 people who have been subject to registration for more than ten years (*see* Levine Decl., Ex. 10, ¶16.c) will meet the criteria for membership in the barred from petitioning subclass, it is clear that there are likely thousands of registrants for whom ten or more years have elapsed since the date of their conviction for the registrable offense(s) or from their release from any period of confinement for that offense, whichever occurred last; who have not been convicted of any felony or registrable offense since; who have successfully completed their assigned periods of supervised release, probation, or parole; and who have successfully completed any required sex offender treatment program. Those individuals are all members of the barred from petitioning subclass.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to

their proofs. In further response, Defendants admit that the class has already been certified.

714.  There are thousands of registrants who gave up their right to trial and pled guilty to a registrable offense in Michigan and who, as a result of retroactive amendments to SORA, (i) were retroactively subjected to SORA 2021 even though there was no registration requirement at the time of their plea; or (ii) had their registration terms retroactively extended beyond that in effect at the time of their plea. Those individuals are all members of the plea bargain subclass.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, Defendants admit that the class has already been certified.

715.  Upon information and belief, there are hundreds of registrants who are subject to registration pursuant to M.C.L. §§ 28.722(i), (v)(ii), (iii), (vii) and 28.723, based on a non-sex offense conviction for violating M.C.L. §§ 750.349, 750.349b, 750.350, or a substantially similar offense in another jurisdiction. Those individuals are all members of the non-sex-offense subclass.

349

ANSWER: Defendants admit the allegation. In further response, Defendants admit that the class has already been certified. In further response, MSP states that it is in the process of removing those individuals from the registry in light of the *Lymon* decision.

716. There are thousands of registrants whose offense occurred on or after July 1, 2011. Levine Decl., Ex. 10, ¶16.c. Those individuals are all members of the post-2011 subclass.

ANSWER: Defendants admit the allegation. In further response, the declaration speaks for itself. In further response, Defendants admit that the class has already been certified.

717. Class data provided by Defendants shows that there are more than 5,700 class members—or about 11 percent of the class—who have a non-Michigan registrable offense. Those individuals are all members of the non-Michigan offense subclass.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

718. Due to the size of the primary class and subclasses, joinder is impracticable. Moreover, many registrants are indigent and would be

unable to retain counsel to secure their rights absent a class action.

ANSWER: Defendants state that the allegation regarding joinder represents a legal conclusion which by law does not require an answer. In further response, Defendants admit that the class has already been certified. Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation regarding registrants indigency status and leave Plaintiffs to their proofs.

719. Proceeding under Rule 23 will promote the fair and efficient adjudication of this action because it will permit a large group of similarly situated persons to prosecute their common claims simultaneously in a single forum, without duplicating evidence, and save the additional effort and expense that would otherwise be necessary if their claims were brought through a series of individual actions.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer. To the extent that an answer may be required, Defendants admit that the class has already been certified.

720. There were dozens of lawsuits challenging the old SORA,

351

which were stayed or dismissed pending resolution of *Does II*, allowing for efficient adjudication of the constitutionality of the statute in effect at the time. Absent class certification, there are again likely to be many lawsuits filed by registrants challenging the 2021 version of SORA. Judicial economy will be served by class-wide proceedings.

ANSWER: Defendants admit the allegation regarding litigation of the old SORA.  Defendants lack knowledge and information sufficient to form a belief as to the truth of the remainder of the allegations and leave Plaintiffs to their proofs.  In further answer, Defendants admit that the class has already been certified.

721.  Second, there are questions of law or fact common to the proposed primary class and the proposed subclasses. The common questions of law and fact include, but are not limited to:

    a.  Whether SORA 2021 violates the Due Process and Equal Protection Clauses by failing to provide for individualized review (**primary class**);

    b.  Whether compelling registrants' speech by requiring them to frequently report extensive information about themselves in support of the state's message that they are dangerous sex offenders violates the First Amendment (**primary class, non-sex-offense subclass**);

    c.  Whether certain provisions of SORA 2021 are unconstitutionally vague and therefore cannot be applied

(**primary class, post-2011 subclass**);

d.  Whether it violates the First Amendment to compel registrants, by threat of criminal penalty, to attest that they understand their duties under SORA 2021 even if they in fact do not understand those duties (**primary class**);

e.  Whether retroactively applying the 2011 SORA amendments to registrants whose offenses predate those amendments violates the Ex Post Facto Clause of the U.S. Constitution (**pre-2011 ex post facto subclass**);

f.  Whether it violates the Ex Post Facto and Due Process Clauses to retroactively require individuals to register for life who, at the time of their offenses, were either not required to register or required to register for a term less than life (**retroactive extension of registration subclass**);

g.  Whether SORA 2021 violates the Equal Protection Clause by allowing only some individuals who meet specified eligibility criteria to petition for removal from the registry while barring most registrants who meet the exact same criteria from petitioning (**barred from petitioning subclass**);

h.  Whether requiring sex offender registration for individuals convicted of non-sexual offenses violates the Due Process and Equal Protection Clauses (**non-sex-offense subclass**);

i.  Whether the state has violated the terms of plea agreements and the Due Process Clause by retroactively imposing lengthier registration terms on individuals who pled guilty without notice that they would be subject to such registration terms (**plea bargain subclass**);

j.  Whether it violates the First Amendment to require registrants whose offense occurred after July 1, 2011, to report all electronic mail and internet identifiers and allow

353

those identifiers to be made public (**post-2011 subclass**);

k.  Whether procedural due process bars Defendants from
subjecting people with non-Michigan convictions to SORA
2021 without meaningful pre-deprivation notice or any
opportunity to be heard (**non-Michigan offense subclass**);

l.  Whether imposing harsher registration requirements on
people with out-of-state convictions than on people with
Michigan convictions violates the Due Process, Equal
Protection, and Privileges and Immunities Clauses of the
Fourteenth Amendment, and Article IV, §2 of the
Constitution (**non-Michigan offense subclass**);

m. Whether and to what extent sex offender registries increase
or decrease public safety, and increase or decrease sexual
offending or reoffending;

n.  To what extent does the risk of reoffending vary among
people with past sex offenses and how does that risk change
over time;

o.  What is the risk distribution for sexual recidivism for
individuals required to register, and what percentage of
people subject to SORA 2021 present no greater risk to the
public than people who are not required to register;

p.  What is the relative predictive value for sexual recidivism of
a conviction-based registry versus one that uses actuarial
risk assessment;

q.  Do the tier assignments under SORA 2021 correspond to the
recidivism risk of registrants;

r.  What impact does sex offender registration have on housing,
employment, and other aspects of registrants' lives, and how
does registration affect registrants' reentry into the
community;

    s.  How has the internet changed the consequences of sex offender registration;

    t.  What processes and procedures do Defendants use to determine whether people with non-Michigan convictions must register, and to determine what tier levels and registration requirements apply (**non-Michigan offense subclass**).

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, Defendants admit that the class has already been certified.

722.  Third, the claims asserted by named Plaintiffs are typical of the claims of the class members and subclass members whom they seek to represent. The same common course of conduct by the defendants gave rise to Plaintiffs' and the class members' claims.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, Defendants admit that the class has already been certified.

723.  Fourth, Plaintiffs will fairly and adequately protect the interests of the respective class members. Plaintiffs' interests are

coincident with, and not antagonistic to, those of the respective class members.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, Defendants admit that the class has already been certified.

724.  Plaintiffs are represented by competent counsel who are experienced in prosecuting civil rights and class action litigation and include the counsel who litigated the *Does I*, *Roe*, and *Does II* cases.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, Defendants admit that the class has already been certified.

725.  The proposed class and subclasses also satisfy the requirements of Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the class, warranting appropriate declaratory and injunctive relief as to the class and subclasses.

ANSWER: Defendants state that the allegation represents a

legal conclusion which by law does not require an answer.  To the extent that an answer may be required, Defendants admit that the class has already been certified.

**Response to Incorporation of the Facts Set Forth Above**

726.  For all of the legal claims set forth below, Plaintiffs re-allege the facts described in the paragraphs above and incorporate those facts by reference.

ANSWER: No response is required.

## RESPONSE TO CLAIMS FOR RELIEF

### COUNT I: Retroactive Imposition of Punishment
### (Ex Post Facto) (Pre-2011 Ex Post Facto Subclass)

727.  SORA 2021 imposes punishment, and its retroactive application to people whose offense requiring registration was committed before July 1, 2011, violates the Ex Post Facto Clause of the U.S. Constitution, art. I, § 10, cl. 1, because it makes more burdensome the punishment imposed for offenses committed prior to that date.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, Defendants deny the allegation as untrue.

728.  The Sixth Circuit held in *Does I*, 834 F.3d 696, that the old SORA imposed punishment, and that its retroactive application violates the Ex Post Facto Clause. The Court specifically held that retroactive application of the 2006 and 2011 amendments "is unconstitutional, and it must therefore cease." *Id.* at 706.

ANSWER: Defendants admit that Plaintiffs have correctly cited a holding for *Does I*, but the opinion speaks for itself, and no other response is required.  In further response, the new SORA mirrors the federal SORNA, which has been upheld on Ex Post Facto grounds.

729.  The district court in *Does II*, 449 F. Supp. 3d at 726, 737–38, applied the Sixth Circuit's holding to a class of all Michigan registrants with pre-2011 offenses, holding that the retroactive application of the 2006 and 2011 amendments violates the Ex Post Facto Clause.

ANSWER: Defendants admit that Plaintiffs have correctly cited a holding for *Does II*, but the opinion speaks for itself, and no other response is required.  In further response, the new SORA mirrors the federal SORNA, which has been upheld on Ex Post Facto grounds.

730.  The Michigan Supreme Court in *Betts*, 2021 WL 3161828, likewise held that the retroactive application of the 2011 amendments

358

violates both the federal and Michigan constitutional prohibitions on ex post facto laws.

ANSWER: Defendants admit that Plaintiffs have correctly cited a holding for *Betts*, but the opinion speaks for itself, and no other response is required. In further response, the new SORA mirrors the federal SORNA, which has been upheld on Ex Post Facto grounds.

731. SORA 2021, while largely eliminating the 2006 amendments, retains virtually all of the SORA 2011 amendments. *See* SORA 2021 with Highlighted Changes Showing 2011 and 2021 Amendments, Ex. 14.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer. To the extent that an answer may be required, the law speaks for itself.

732. SORA 2021 continues to retroactively apply almost all of the 2011 amendments to pre-2011 registrants. *See* Section VII, *supra*.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer. To the extent that an answer may be required, the law speaks for itself.

733. Under the Sixth Circuit's decision in *Does I* and the district

359

court's decision in *Does II*, the 2011 SORA amendments cannot be retroactively applied to registrants whose offenses predate those amendments.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, the cases speak for themselves.

734.  The retroactive application of SORA 2021 to registrants whose offense requiring registration was committed before July 1, 2011, violates the Ex Post Facto Clause absent an individualized, periodic determination that the person presents such a high risk to public safety that SORA 2021's burdens are justified.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, the new SORA mirrors the federal SORNA, which has been upheld on Ex Post Facto grounds.

735.  As the Michigan Supreme Court found in *Betts* and the federal district court found in *Does II*, the 2011 SORA amendments cannot be severed because the unconstitutional portions are so entangled with the remainder of the statute that they cannot be

360

removed without adversely affecting the operation of the Act. *See Betts*, 2021 WL 3161828, at *20; *Does II*, No. 16-cv-13137, Am. Final J., R. 126, Pg.ID.1793–97; SORA 2021 with Highlighted Changes Showing 2011 and 2021 Amendments, Ex. 14.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, the cases speak for themselves.

736.  John Does A, B, C, D, E, F, G, Mary Doe, and Mary Roe bring this claim for themselves and on behalf of the pre-2011 ex post facto subclass.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

### COUNT II: Retroactive Extension of Registration Terms
### (Ex Post Facto and Due Process)
### (Retroactive Extension of Registration Subclass)

737.  At the time of their offenses, John Does A, B, C, D, E, G, Mary Doe, and Mary Roe, and the retroactive extension of registration subclass, were either not required to register at all or required to register for a term less than life.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.

738.  As a result of retroactively applied amendments to SORA, these Plaintiffs are required to register to life. SORA 2021 continues to impose these retroactive lifetime registration terms.

ANSWER: Defendants admit the allegation that some registrants are required to register for life. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remaining allegation and leave Plaintiffs to their proofs. In further response, SORA speaks for itself.

739.  Defendants did not make an individualized determination that retroactive to lifetime registration was warranted for these named Plaintiffs or for members of the retroactive extension of registration subclass.

ANSWER: Defendants admit the allegation.  In further response, the law does not require individualized determination.

740.  Lifetime registration terms serve no public protection function. Hanson Decl., Ex. 3, ¶¶3.f, 26, 55–75.

ANSWER: Defendants lack knowledge and information sufficient

to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, the declaration speaks for itself.

741. Retroactively requiring a person to be subject to SORA 2021's extensive burdens for life is punitive and violates the Ex Post Facto Clause of the U.S. Constitution, Art. I, § 10, cl. 1. *See Does I*, 834 F.3d at 706; *Does II*, 449 F. Supp. 3d at 728–29; *Betts*, 2021 WL 3161828.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer. To the extent that an answer may be required, the cases speak for themselves.

742. Retroactively requiring a person to be subject to SORA 2021's extensive burdens for life also violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.

743. The Due Process Clause limits retroactive civil legislation that is harsh or oppressive; that violates principles of notice, foreseeability and fair warning; that imposes severe retroactive consequences; or that reaches far back in time.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.

744.   Retroactive imposition of lifetime registration under SORA 2021 is harsh and oppressive, violates principles of notice, foreseeability and fair warning, imposes severe retroactive consequences, and reaches far back in time.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.

745.   John Does A, B, C, D, E, G, Mary Doe, and Mary Roe bring this claim for themselves and on behalf of the retroactive extension of registration subclass.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

## COUNT III:  Lack of Individualized Review
### (Due Process and Equal Protection) (Primary Class)

746.   The Supreme Court has not decided what standard of review should apply to sex offender registration. *See Conn. Dep't of Pub. Safety v. Doe,* 538 U.S. 1, 10 (2003) (Souter, J., concurring) ("Today's case is no

occasion to speak [to] . . . the standard of scrutiny that might be in order" when considering challenge to registration.).

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, the case speaks for itself.

747.  Even assuming that the standard is rational basis, a "more searching form" of rational basis review applies when a law exhibits "a desire to harm a politically unpopular group." *Lawrence v. Texas*, 539 U.S. 558, 580 (2003) (O'Connor, J., concurring); *see also U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973) (if "'equal protection of the laws' means anything, it must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot constitute a legitimate governmental interest."). "Rational basis with bite depends on the idea that governmental 'animus' alone is never enough to sustain legislation." Kenji Yoshino, *The New Equal Protection*, 124 Harv. L. Rev. 747, 763 (2011).

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, the case speaks for itself.

748.  The Sixth Circuit has described this more searching standard as an "exacting" rational relationship standard. *Bannum, Inc. v City of Louisville*, 958 F.2d 1354, 1360 (6th Cir. 1992). "Negative attitudes" and "unsubstantiated" fears about a group cannot provide a rational basis for legislation; rather "some data reflecting the extent of the danger must exist." *Id.* at 1360–61 (first and second quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 448 (1985)).

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, the case speaks for itself.

749.  SORA 2021, like its predecessors, is grounded in animus— based on myths and unsubstantiated fears—toward people who have committed sex offenses.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

750.  Michigan legislators, in adopting SORA 2021, ignored all the research and data, and instead adopted the law to appease or endorse the public demonization of people with sex offenses. *See* Section IX,

*supra.*

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

751.  Because SORA 2021 does not increase—but rather undermines—public safety, *see* Section II, *supra*, it is not rationally related to its purported public safety goals, and cannot survive any level of review.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.  In further answer, the new SORA mirrors the federal SORNA, which has been upheld as constitutional.

752.  Even if some aspects of SORA 2021 could be deemed rationally related to public safety concerns about some individuals who are a *present* danger to the community, SORA 2021's gross excessiveness in expending enormous resources to impose massive restrictions—in most cases for life—on the liberty of a large number of

367

people who present no danger to the public is irrational and rooted in animus. *See* Sections II–IX, *supra*.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.  In further answer, the new SORA mirrors the federal SORNA, which has been upheld as constitutional.

753.  The restrictions imposed by SORA 2021 are grossly disproportionate to any legitimate public safety concern. SORA 2021 criminalizes ordinary behavior (that is not criminal for non-registrants) and imposes wide-ranging burdens on a disfavored group without providing normal procedural protections.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.  In further answer, the new SORA mirrors the federal SORNA, which has been upheld as constitutional.

754.  Specifically, the failure to provide any mechanism for individualized review or opportunity for removal from the registry in the vast majority of cases, coupled with extremely long or lifetime registration periods, reflects animus, rather than a rational approach to supervising people who are a present danger to the public.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

755.  SORA 2021 cannot survive any level of review because imposing such extensive restrictions without any individualized review or opportunity for removal is not rationally related to the state's public safety objectives.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.  In further answer, the new SORA mirrors the federal SORNA, which has been upheld as constitutional.

756.  Named Plaintiffs bring this claim for themselves and on

369

behalf of the primary class.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

## COUNT IV: Unequal Opportunity to Petition for Removal (Equal Protection) (Barred From Petitioning Subclass)

757.   The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne*, 473 U.S. at 439. SORA 2021 fails to treat similarly situated registrants alike with respect to their ability to petition for removal from the registry.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, the case speaks for itself.

758.   Under SORA 2021, a subset of registrants is eligible to petition for removal, although they may do so only once in their lives.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer. To the extent an answer may be required, the statute speaks for itself.

759.  Tier I registrants may petition ten years after the later of

370

the date of conviction or release from any period of confinement if they have not been convicted of any felony or any other registrable offense; have successfully completed supervised release, probation, or parole; and have successfully completed any required sex offender treatment program. *See* M.C.L. § 28.728c(1), (12).

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, the statute speaks for itself.

760.  Juveniles may also petition if they have not been convicted of any felony or any other registrable offense; have successfully completed supervised release, probation or parole; and have successfully completed any required sex offender treatment program. However, unlike adult registrants in Tier I who can petition after ten years, juveniles must be on the registry for twenty-five years—fifteen years longer—before they can petition. M.C.L. § 28.728c(2), (13).

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, the statute speaks for itself.

761.  All other registrants are ineligible to petition for removal,

regardless of the circumstances of their offense, the passage of time, or demonstrated rehabilitation or incapacitation.

ANSWER: Defendants deny the allegation as untrue.

762. John Does A, C, E, F, G, Mary Doe, and Mary Roe and the barred from petitioning subclass are similarly situated in all material respects to petition-eligible registrants because more than ten years has elapsed since the later of the date of their conviction or release from any period of confinement; they have not been convicted of any felony or other registrable offense; they have successfully completed supervised release, probation, or parole; and they have successfully completed any required sex offender treatment programs.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

763. The distinction drawn in SORA 2021—which allows some registrants who meet an extensive set of criteria to petition for removal after ten years but bars other registrants who meet those exact same criteria from petitioning for removal—violates the Equal Protection Clause of the United States Constitution because it cannot survive any

level of review. This distinction is not rational.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.

764.  The purpose of SORA's petitioning process is to allow for removal from the registry of people who do not present a risk of reoffending, via discretionary judicial review.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

765.  Because tier classifications do not correspond to the risk of reoffending, and hence to the standard for removal from the registry, and because most individuals cross the desistance threshold after ten years offense-free in the community in any event (the same threshold set for the eligibility to petition), differences in tier classifications between petition-eligible registrants and the barred from petitioning subclass are not material and cannot justify the distinction drawn. *See* Section III, *supra*.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to

their proofs.

766.  Defendants also cannot justify the distinction drawn based on the cost of providing hearings, because the cost of a hearing for a petition-eligible registrant and a member of the barred from petitioning subclass would be comparable. Moreover, the cost to state and local government of continuing the registration of persons in the barred from petitioning subclass beyond ten years far exceeds the cost of providing a hearing.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

767.  Finally, the fact that SORNA encourages states to adopt provisions that limit removal-petitioning to Tier I and juvenile registrants does not justify the unequal treatment of petition-eligible registrants and the barred from petitioning subclass. States are not required to adopt SORNA-congruent registries, nor can the federal government compel Michigan to violate citizens' constitutional rights. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 587 (2012); *Printz v. United States*, 521 U.S. 898, 924 (1997); *South Dakota v. Dole*, 483 U.S.

374

203, 207–08 (1987). Nor is it clear that allowing petitioning by the
barred from petitioning subclass would even prevent a finding that
Michigan is in "substantial compliance" with SORNA. *See* U.S.
Department of Justice Office of Justice Programs, SORNA Substantial
Implementation Checklist, at 19, https://bit.ly/33YYjOo (allowing
jurisdictions to explain why petitioning removal provisions differ from
those suggested in SORNA).

ANSWER: Defendants state that the allegation represents a
legal conclusion which by law does not require an answer.  To the
extent that an answer may be required, the cases and references cited
speak for themselves.

768.  The Michigan state courts have a well-established procedure
for considering petitions for removal from the registry. M.C.L. §
28.728c.  That procedure could easily be used to consider petitions for
removal from the registry by individuals who are currently barred from
petitioning, but who meet the same strict criteria as those who are
currently eligible.

ANSWER: Defendants state that the allegation represents a
legal conclusion which by law does not require an answer.  To the

extent that an answer may be required, Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

769.  To grant a petition, the court must determine that the individual is not a continuing threat to the public. M.C.L. § 28.728c(11). The court must consider the individual's age and level of maturity at the time of the offense; the victim's age and level of maturity at the time of the offense; the nature of the offense; the severity of the offense; the individual's prior juvenile or criminal history; the individual's likelihood to commit further registrable offenses; any impact statement submitted by the victim; and other information considered relevant by the court. *Id.*

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, the statute speaks for itself.

770.  If John Does A, C, E, F, G, Mary Doe, and Mary Roe had the opportunity to petition for removal, there is a high likelihood that they would be able to establish that ongoing registration is not warranted in their cases.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer. To the extent that an answer may be required, Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

771. If members of the barred from petitioning subclass had the opportunity to petition for removal, there is a high likelihood that a significant number of them would be able to establish that ongoing registration is not warranted in their cases.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer. To the extent that an answer may be required, Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

772. John Does A, C, E, F, G, Mary Doe, and Mary Roe bring this claim for themselves and on behalf of the barred from petitioning subclass.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to

their proofs.

## COUNT V: Mandatory Reporting Requirements and Compelled Speech
## (First Amendment) (Primary Class & Non-Sex-Offense Subclass)

773.   SORA 2021 compels speech, requiring registrants to report extensive information, often in person and within three business days. *See* Section V: Compelled Speech, *supra*.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, the statute speaks for itself.

774.  These requirements are imposed without any individualized review, last for life in most cases, and have a chilling effect on registrants' constitutionally protected rights to free speech and association.

ANSWER: Defendants admit the allegation that requirements are imposed based on conviction rather than individualized review and they may require lifetime registration.  In further response, Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

775.  The information registrants are compelled to provide feeds

378

directly into the state's public registry, and is used by the state to craft a widely disseminated, highly-stigmatizing message that registrants are dangerous sex offenders whom the public should fear.

ANSWER: Defendants admit the allegation that certain information of some registrants is entered into the public registry. In further response, Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

776. SORA 2021 forces registrants to contribute to speech about themselves with which they vehemently disagree.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

777. Plaintiffs and the primary class vehemently disagree with the government's message that they are all dangerous sex offenders.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

778. Mr. Doe A and the non-sex-offense subclass vehemently

disagree both with the government's false portrayal of them as people who were convicted of sex offenses, and with the message that they are all dangerous sex offenders.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

779. By requiring frequent, time-consuming, and humiliating reporting to law enforcement, SORA 2021's compelled disclosure requirements also severely restrict registrants' autonomy.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

780. The public disclosure of information registrants are compelled to provide subjects them to harassment, threats, social ostracization, housing instability/ homelessness, loss of employment, and other harms. *See* Section V, *supra*.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

781.  The vast majority of information that registrants are compelled to provide about themselves is already available to law enforcement through other databases and investigative tools. The state has not considered less intrusive ways to obtain the information that registrants provide—e.g., through tax, employment, motor vehicle, and postal records.

ANSWER: Defendants admit the allegation that the information provided by registrants may be available through other sources. Defendants lack knowledge and information sufficient to form a belief as to the truth of the remainder of the allegations and leave Plaintiffs to their proofs.

782.  Upon information and belief, the vast majority of the information that registrants are compelled to provide about themselves is simply add to the registry and is never used by law enforcement for any investigative purpose.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

783.  SORA 2021's compelled disclosure requirements are subject

to strict scrutiny under the First Amendment to the U.S. Constitution (incorporated against the states through the Fourteenth Amendment).

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, the law speaks for itself.

784.  Under strict scrutiny, SORA 2021's compelled speech requirements must be narrowly tailored to a compelling government interest, and be the least restrictive means of achieving that end.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, the law speaks for itself.

785.  Although Michigan has a strong interest in preventing sexual offending, SORA 2021's ineffective or counterproductive registration scheme that compels disclosures from people who pose no appreciable risk is not narrowly tailored, let alone the least restrictive means, of advancing that interest.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.

786.  SORA 2021's compelled disclosure requirements violate the

First Amendment rights of named Plaintiffs and the primary class absent an individualized, periodic determination that (1) the person is presently dangerous, (2) the compelled disclosure is necessary to alleviate that danger, and (3) the information is not otherwise available to law enforcement.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.

787. SORA 2021's compelled disclosure requirements violate the First Amendment rights of Mr. Doe A and the non-sex-offense subclass absent an individualized, periodic determination that (1) the person has been convicted of an offense that was sexual in nature, (2) the person is presently dangerous, (3) the compelled disclosure is necessary to alleviate that danger, and (4) the information is not otherwise available to law enforcement.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer

788. Named Plaintiffs bring this claim for themselves and on behalf of the primary class. Mr. Doe A brings this claim on behalf of himself and the non-sex-offense subclass.

383

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

## COUNT VI: Violation of Plea Agreements
## (Due Process) (Plea Bargain Subclass)

789.   Defendants who plead guilty give up their constitutional right to a trial and enter into a *quid pro quo* with the government. Retroactive changes to the terms of plea agreements are analyzed under both due process and contractual principles.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.

790.   Sex offender registration is a severe penalty that is intimately related to the criminal process and imposed as a result of a criminal conviction. *See* Section VIII, *supra*.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  In further answer, Defendants admit that registration is a result of conviction for specified crimes.

791.   Due process requires fair notice of such consequences. "[W]hen addressing ex post facto-type due process concerns, questions of

notice, foreseeability, and fair warning are paramount." *United States v. Barton*, 455 F.3d 649, 654 (6th Cir. 2006).

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer. To the extent that an answer may be required, the case speaks for itself.

792. Defendants charged with sex offenses routinely consider whether they are required to register, how long the registration term is, and whether registration is public or private, in making decisions about whether to accept a plea agreement.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

793. "[C]onsiderations of fair notice, reasonable reliance, and settled expectations" limit the imposition of more severe conviction-based consequences than those considered at the time of the plea. *I.N.S. v. St. Cyr*, 533 U.S. 289, 321 (2001) (internal quotation marks and citations omitted).

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer. To the

extent that an answer may be required, the case speaks for itself.

794.  At the time John Does A and E pled guilty, Michigan did not have a sex offender registry. They had no notice that as result of their pleas, they would later retroactively become subject to lifetime registration as sex offenders, subject to all the burdens that SORA 2021 imposes.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

795.  At the time John Does B, C, D, and Mary Roe pled guilty, they were required to register for 25 years. They had no notice that, as a result of their pleas, they would later retroactively become subject to lifetime registration as sex offenders, subject to all the burdens that SORA 2021 imposes. Rather, these Plaintiffs made their decisions to plead, rather than take their cases to trial, based on the then-extant version of SORA, pursuant to which they were to come off the registry after 25 years.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to

their proofs.

796.  By retroactively imposing lifetime registration on individuals who pled guilty without notice that they would be subject to lifetime registration or whose pleas were predicated on an understanding that they would not be subject to registration or be subject for a term of years, the state has violated the Due Process Clause.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.

797.  John Does A, B, C, D, E, and Mary Roe bring this claim for themselves and on behalf of the plea bargain subclass.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

**COUNT VII: Sex Offender Registration of People Who Did
Not Commit Sex Offenses (Due Process and Equal Protection)
(Non-Sex-Offense Subclass)**

798.   Under SORA 2021, people convicted of certain non-sex offenses are required to register as sex offenders, are publicly branded as convicted sex offenders, and are required to comply with all of SORA 2021's requirements even though they never committed a crime involving sex.

ANSWER: Defendants admit the allegation that people of certain crimes must register as sex offenders and must comply with statutory requirements.  In further response, Defendants lack knowledge and information sufficient to form a belief as to the truth of the remainder of the allegations and leave Plaintiffs to their proofs. In further response, MSP states that it is in the process of removing all individuals convicted under MCL 750.349(b); 750.349(v)(ii); or 750.349v(iii) from the registry in light of the *Lymon* decision.

799.  There are two situations where SORA 2021 requires registration for people who were convicted of crime that did not include a sexual component as an element of the offense.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required MSP states that it is in the

process of removing all individuals convicted under M.C.L. §

750.349(b); 750.349(v)(ii); or 750.349v(iii) from the registry in light of

the *Lymon* decision.

800. First, the "catch-all" provision requires registration for an

offense "that by its nature constitutes a sexual offense against an

individual who is a minor." M.C.L. § 28.722(r)(vii). In such cases, the

statute provides procedural protections, including most importantly a

judicial determination of whether the defendant's actions were sexual in

nature. *See* M.C.L. § 769.1(13). Plaintiffs here do not challenge that

provision.

ANSWER: Defendants state that the allegation represents a

legal conclusion which by law does not require an answer. To the

extent that an answer may be required, Defendants lack knowledge and

information sufficient to form a belief as to the truth of the allegation

and leave Plaintiffs to their proofs.

801. Second, SORA 2021 automatically requires sex offender

registration—without any determination of whether the conduct

involved sex—for people convicted of certain offenses against minors:

kidnapping (M.C.L. § 750.349), unlawful imprisonment (M.C.L.

389

§ 750.349b), leading away of child under 14 (M.C.L. § 750.350), or a

comparable out-of-state offense. *See* M.C.L. § 28.722(r)(iii), (r)(x), (v)(ii),

v(iii), (v)(vii). Plaintiffs' challenge here is to this automatic

determination that people who were not convicted of sex offense are

"sex offenders."

ANSWER: Defendants state that the allegation represents a

legal conclusion which by law does not require an answer.  To the

extent that an answer may be required MSP states that it is in the

process of removing all individuals convicted under M.C.L. §

750.349(b); 750.349(v)(ii); or 750.349v(iii) from the registry in light of

the *Lymon* decision.

802.  Anyone viewing the Michigan Sex Offender Registry on the

internet, much less reading the site's prominent warnings about

protecting the public from "convicted sex offenders," would naturally

assume that those listed were convicted of a crime involving sex. *See*

Merriam-Webster Dictionary (2022) (defining "sex offender" as "a

person who has been convicted of a crime involving sex").

ANSWER: Defendants lack knowledge and information sufficient

to form a belief as to the truth of the allegation and leave Plaintiffs to

their proofs.

803.  Mr. Doe A and the non-sex-offense subclass were not convicted of sex offenses.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

804.  There has been no judicial or other procedurally protected determination for Mr. Doe A or for members of the non-sex-offense subclass, that they committed an offense that was sexual in nature.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, MSP states that it is in the process of removing all individuals convicted under M.C.L. § 750.349(b); 750.349(v)(ii); or 750.349v(iii) from the registry in light of the *Lymon* decision.

805.  SORA 2021 irrationally imposes sex offender registration and publicly labels people as sex offenders even though their offenses had no sexual component. Imposing sex offender registration and publicly labeling people as sex offenders when their offense had no

sexual component serves no public protection function.

ANSWER: Defendants state that the allegation represents a

legal conclusion which by law does not require an answer. To the

extent that an answer may be required, Defendants lack knowledge and

information sufficient to form a belief as to the truth of the allegation

and leave Plaintiffs to their proofs.

806. SORA 2021 draws an irrational distinction between most

people convicted of non-sex crimes, who get a judicial determination

that their offense was sexual in nature before they can be registered as

sex offenders under the "catch-all" provision, *see* M.C.L. §§

28.722(r)(vii), 769.1(13), and people in the non-sex-offense subclass, who

get no procedural protections because their registration is automatic.

ANSWER: Defendants state that the allegation represents a

legal conclusion which by law does not require an answer. To the

extent that an answer may be required, Defendants lack knowledge and

information sufficient to form a belief as to the truth of the allegation

and leave Plaintiffs to their proofs.

807. Imposing SORA 2021 on Mr. Doe A and the non-sex-offense

subclass absent an individualized, procedurally-protected judicial

determination that they committed a crime of a sexual nature violates

the Due Process and Equal Protection Clauses of the Fourteenth

Amendment to the U.S. Constitution.

ANSWER: Defendants state that the allegation represents a

legal conclusion which by law does not require an answer.  To the

extent that an answer may be required, MSP states that it is in the

process of removing all individuals convicted under M.C.L. §

750.349(b); 750.349(v)(ii); or 750.349v(iii) from the registry in light of

the *Lymon* decision.

808.  John Doe A brings this claim for himself and on behalf of the

non-sex-offense subclass.

ANSWER: Defendants lack knowledge and information sufficient

to form a belief as to the truth of the allegation and leave Plaintiffs to

their proofs.

## COUNT VIII: Vagueness
## (Due Process) (Primary Class and Post-2011 Subclass)

809.  The Due Process Clause of the Fourteenth Amendment

prohibits states from enforcing laws that are unconstitutionally vague.

As a matter of due process, statutory requirements must be written

with sufficient specificity that persons of ordinary intelligence need not

guess as to their meaning and will not differ as to their application.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer. To the extent that an answer may be required, the law speaks for itself.

810. SORA 2021 is unconstitutionally vague. *See* Section V: Vagueness, *supra*. SORA 2021's vague provisions cannot be enforced under the Due Process Clause.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer. To the extent that an answer may be required, Defendants deny the allegation as untrue.

811. Named Plaintiffs bring this claim for themselves and on behalf of the primary class.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

812. With respect to the vagueness of reporting requirements for electronic addresses and internet identifiers, John Doe H brings this claim on behalf of himself and the post-2011 subclass.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

## COUNT IX: Compelled Admission of "Understanding" SORA 2021
## (First Amendment) (Primary Class)

813.  SORA 2021 provides that registrants be provided a notification of duties. *See* M.C.L. §§ 28.726(1), 28.727(3); Explanation of Duties, Ex. 16.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  To the extent that an answer may be required, the law and document speak for themselves.

814.  It is a crime for registrants not to sign the Explanation of Duties. *See* M.C.L. § 28.727(4) ("The individual shall sign a registration and notice."); M.C.L. § 28.729(3) ("An individual who willfully fails to sign a registration and notice as provided in section 7(4) is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $1,000.00, or both.").

ANSWER: Defendants state that the allegation represents a

legal conclusion which by law does not require an answer. To the extent that an answer may be required, the statutes speak for themselves.

815. The Explanation of Duties, Ex. 16, that registrants are required to sign states: "I have read the above requirements and/or had them read to me and I understand my registration duties."

ANSWER: Defendants admit that Plaintiffs have correctly stated what is on the form, but it speaks for itself, and no other response is required.

816. Registrants who report updates by mail must use the Michigan Sex Offender Registry Mail-in Update Form, Ex. 17. The form requires registrant to sign a statement saying: "I have read the 'Explanation of Duties to Register as a Sex Offender' listed on pages two and three of this form and/or had them read to me and I understand my registration duties."

ANSWER: Defendants admit that Plaintiffs have correctly stated what is on the form, but it speaks for itself, and no other response is required.

817. Registrants are required to sign these forms regardless of

396

whether they in fact understand SORA 2021's complex registration requirements.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.

818. Many of SORA 2021's requirements are vague. Many registrants, including the named Plaintiffs, do not understand all of the requirements of the Act. *See* Section V: Vagueness, *supra*.

ANSWER: Defendants deny the allegation as untrue. In further answer, Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation regarding registrants understanding and leave Plaintiffs to their proofs.

819. Requiring registrants to sign the statement on the Explanation of Duties and the Registry Mail-in Update Form attesting to their understanding of SORA 2021 is compelled speech.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.

820. By making it a crime for registrants not to sign these forms, the state is not only compelling registrants to speak, but is compelling them to make a statement that, in the vast majority of cases, is false.

397

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

821. Defendants do not have a compelling state interest in forcing registrants to sign forms stating that they understand their registration requirements, and forcing registrants to sign such forms is not a narrowly tailored means of furthering any compelling interest that the state may have. Requiring registrants to attest that they understand SORA 2021 violates the First Amendment of the U.S. Constitution (incorporated against the states through the Fourteenth Amendment).

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.

822. Named Plaintiffs bring this claim for themselves and on behalf of the primary class.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

**COUNT X: Reporting Requirements Restricting Speech and Association**
**(First Amendment) (Post-2011 Subclass)**

823. SORA 2021 requires persons "required to be registered under this act after July 1, 2011" to report "all electronic mail addresses and internet identifiers registered to or used by the individual." M.C.L. § 28.727(1)(i).

ANSWER: Defendants admit that Plaintiffs have correctly cited a provision of the law, but the law speaks for itself, and no other response is required.

824. SORA 2021 further requires such persons to report "any change in . . . electronic mail addresses [and] internet identifiers . . . registered to or used by the individual" within three business days. M.C.L. § 28.725(2)(a).

ANSWER: Defendants admit that Plaintiffs have correctly cited a provision of the law, but the law speaks for itself, and no other response is required.

825. SORA 2021 defines the term "internet identifier" to broadly encompass "all designations used for self-identification or routing in internet communications or posting." M.C.L. § 28.722(g).

ANSWER: Defendants admit that Plaintiffs have correctly cited a provision of the law, but the law speaks for itself, and no other

response is required.

826. Under the prior version of SORA, registrants' email addresses and internet information could not be posted on the public registry. *See* M.C.L. § 28.728(3)(e) (2020). That provision was stricken in Public Act 295 of 2020. SORA 2021 thus now permits posting of registrants' email addresses and internet identifiers on the Sex Offender Registry website.

ANSWER: Defendants admit the allegation regarding the old SORA, but deny the allegation as untrue the allegation regarding the new SORA.

827. SORA 2021 chills registrants' speech. Registrants are hesitant to use the internet because doing so requires them to report their email addresses and internet identifiers. *See* Sections IV, V: Limitations on Speech and Use of the Internet, *supra*.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

828. Registrants are fearful of using the internet because they do not know what information they must report.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

829.  Registrants also fear that if they use the internet, their electronic mail addresses and internet identifiers will be posted on the public registry, subjecting them to harassment and intimidation.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs. In further response, posting such information is inconsistent with federal law.

830.  Registrants are unable to speak anonymously online.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

831.  SORA 2021's requirements for reporting and making public registrants' email addresses and internet identifiers violates Plaintiffs' freedom of speech and right of association which are protected under the First Amendment of the U.S. Constitution (incorporated against the state through the Fourteenth Amendment).

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer. To the extent that an answer may be required, Defendants deny that email addresses or internet identifiers are made public. Doing so would be a violation of federal law.

832. John Doe H brings this claim for himself and on behalf of the post-2011 subclass.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

### COUNT XI: Sex Offender Registration of People with Non-Michigan Convictions and Adjudications
### (Due Process, Equal Protection, Privilege & Immunities)
### (Non-Michigan Offense Subclass)

833. Ms. Doe, Mr. Doe G, and members of the non-Michigan offense subclass were given no notice before Defendants determined that they are subject to sex offender registration in Michigan, and unilaterally decided what tier level and registration requirements should apply.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

834.    The notices Defendants used after determining the registration requirements for people with non-Michigan offenses were not meaningful or constitutionally adequate.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.

835.    Ms. Doe, Mr. Doe G, and members of the non-Michigan offense subclass were given no pre-deprivation notice, no meaningful post-deprivation notice, and no opportunity to be heard on Defendants' decisions that they are subject to sex offender registration in Michigan, nor on Defendants' decisions regarding what tier level and registration requirements apply.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation regarding notice and leave Plaintiffs to their proofs.  In further response, Defendants deny that members of the subclass have no opportunity to be heard.

836.    Defendants' failure to provide pre-deprivation notice, meaningful post-deprivation notice, or any opportunity to be heard violates Ms. Doe's, Mr. Doe G's, and the non-Michigan offense subclass' right to procedural due process in violation of the Fourteenth Amendment to the United States Constitution. See, e.g., *Meredith*, 355 F. Supp. 3d at 365; *Pryor*, 61 F. Supp. 2d at 1233.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.  In further response, Defendants deny that Ms. Doe and Mr. Doe G have no opportunity to be heard.

837.    Defendants, by imposing the harsher of either Michigan's or a foreign jurisdiction's registration requirements, and by failing to use the categorical approach in making "substantial similarity" determinations, treat Ms. Doe, Mr. Doe G, and members of the non-Michigan offense subclass worse than people with Michigan convictions.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

404

838.    By imposing harsher registration requirements on people with non-Michigan convictions, Defendants are violating the Ms. Doe's, Mr. Doe G's and the non-Michigan offense subclass' right to equal treatment under the law in violation of the Equal Protection Clause of the Fourteenth Amendment. See, e.g., *Doe v. Pennsylvania Bd of Probation and Parole*, 513 F.3d 95 (3d Cir. 2008); *Hendricks v. Jones ex rel. State ex rel. Oklahoma Dep't of Corr.*, 349 P.3d 531 (Ok. 2013); *ACLU of NM v. City of Albuquerque*, 137 P.3d 1215 (N.M. Ct. App. 2006).

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.

839.    By imposing harsher registration requirements on people with non-Michigan convictions, Defendants are also violating Ms. Doe's, Mr. Doe G's, and the non-Michigan offense subclass' right to travel in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and their right to be treated like other citizens of Michigan, and to be accorded the same privileges and immunities under Article IV, §2 of the Constitution and the Privileges and Immunities Clause of the Fourteenth Amendment to the

Constitution. See *Saenz v. Roe*, 526 U.S. 489, 500-504 (1999); *State v. Dickerson*, 142 Idaho 514, 129 P.3d 1263 (Ct. App. 2006).

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.

840.    Mary Doe and John Doe G bring this claim for themselves and on behalf of the non-Michigan offense subclass.

ANSWER: Defendants lack knowledge and information sufficient to form a belief as to the truth of the allegation and leave Plaintiffs to their proofs.

## Response to Lack of a Legal Remedy

833.  Plaintiffs and the putative class members' harm is ongoing, and cannot be alleviated except by declaratory and injunctive relief.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.

834.  No other remedy is available at law.

ANSWER: Defendants state that the allegation represents a legal conclusion which by law does not require an answer.

## AFFIRMATIVE DEFENSES

Defendants give notice that they may rely upon the following affirmative defenses in this matter:

1. To the extent Plaintiffs may be seeking monetary damages against the Defendants in their official capacity, some or all of their claims may be barred by the Eleventh Amendment.

2. Plaintiff has failed to state a claim upon which relief may be granted because the new SORA does not violate the Ex Post Facto Clause.

3. Plaintiffs have failed to state a claim upon which relief may be granted because the new SORA does not violate Plaintiffs' due process rights.

4. Plaintiffs have failed to state a claim upon which relief may be granted because the new SORA does not violate the First Amendment.

5. Plaintiffs have failed to state a claim upon which relief may be granted because the new SORA is not unconstitutionally vague.

6. Plaintiffs have failed to state a claim upon which relief may be granted because the new SORA does not violate Plaintiffs' equal protection rights.

7.     Some or all of Plaintiffs' claims may be barred by the applicable statute of limitations.

8.     Some or all of Plaintiffs' claims may be barred because they are moot.

9.     Some or all of Plaintiff's losses and damages, if any, were caused by Plaintiff's own conduct or the conduct of third parties and not attributable to Defendants.

10.     Some or all of Plaintiff's claims may be barred by res judicata/claim preclusion.

11.     Some or all of Plaintiff's claims may be barred by collateral estoppel/issue preclusion.

12.     To the extent Plaintiffs' claims rely upon plea agreements they voluntarily accepted, such claims may be barred due to release, settlement, and/or accord and satisfaction.

13.     Some or all of Plaintiffs' claims may be barred by the doctrine of abstention because a state court ruling clarifying state law may make a federal court ruling on constitutionality unnecessary.

14.     Plaintiffs are not being restricted by SORA from engaging in any of the constitutionally protected conduct alleged in the Complaint.

408

15.   Defendants reserve the right to raise further defenses or assert other matters revealed by continuing investigation and discovery, including all defenses available under Federal Rules of Civil Procedure 12 and 56, upon the completion of discovery and as the Court permits.

/s/ Eric M. Jamison
Eric M. Jamison (P75721)
Scott L. Damich (P74126)
Assistant Attorneys General
Attorneys for Whitmer and Gasper
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
jamisone@michigan.gov
damichs@michigan.gov

Dated:  May 19, 2023

409

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2023, I electronically filed the above

document(s) with the Clerk of the Court using the ECF System, which

will provide electronic copies to counsel of record.

*/s/ Eric M. Jamison*
Assistant Attorney General
Attorney for Defendants
Whitmer and Gasper
Michigan Department of
Attorney General
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
damichs@michigan.gov
jamisone@michigan.gov
P75721

## LOCAL RULE CERTIFICATION

I, Eric M. Jamison, certify that this document complies with Local Rule 5.1(a), including double-spaced (except for quoted material and footnotes): at least one-inch margin on top, sides, and bottoms; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 points (for proportional fonts).  I also certify that it is the appropriate length.  Local Rule 7.1(d)(3).

*/s/ Eric M. Jamison*
Assistant Attorney General
Attorney for Whitmer and Gasper
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
jamisone@michigan.gov
P75721

411