UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOHN DOES A, B, C, D, E, F, G, H,
MARY DOE and MARY ROE,
on behalf of themselves and
all others similarly situated,

                                    File No. 2:22-cv-10209

            Plaintiffs,
v.                                Hon. Mark A. Goldsmith

GRETCHEN WHITMER, Governor of the    Mag. Curtis Ivy, Jr.
State of Michigan, and COL. JOSEPH
GASPER, Director of the Michigan State
Police, in their official capacities,

            Defendants.

_____

## PARTIES' JOINT STATUS REPORT
## REGARDING FURTHER PROCEEDINGS

### I.    BACKGROUND

After denying Plaintiffs' motion for a preliminary injunction and Defendants'

motion to dismiss, ECF 54, the Court set an expedited discovery schedule, ECF 66.

The parties have now concluded discovery, with the exception of Defendants'

response and Plaintiffs' reply on the class data expert report, which will be com-

pleted by July 14, 2023. They submit this joint statement in advance of the status

conference on July 13, 2023.

## II.     PROCEEDING UNDER RULE 52 OR RULE 56

The parties disagree about whether the case should proceed under Rule 52 or

Rule 56.

**<u>Plaintiffs' Statement:</u>**

This case is both consequential and complex. The lives and futures of some

53,000 people will be determined by the Court's rulings. There are seven subclasses,

eleven constitutional claims, and a huge record. At the outset of this case, the Court,

by denying Plaintiffs' motion for a preliminary injunction and Defendants' motion

to dismiss, made clear that it did not want to make decisions piecemeal; it wanted to

resolve the case globally on a complete record. Now that discovery has been com-

pleted, the question is how to move the case forward most efficiently. Proceeding

under Rule 52 is the best option, because it will allow the Court to make decisions

with a full understanding of the factual record and legal arguments, while conserving

judicial and party resources that could otherwise be unnecessarily expended.

Plaintiffs submit that in deciding how to proceed, the Court should consider

three factors. First, this is a bench not a jury case. The Court will make all decisions,

whether based on written submissions or after trial. Second, it will be more efficient

for the Court—where possible—to decide issues based on written submissions rather

than oral testimony. It could easily take a month or even several months for the

parties to present their case at trial if the Court determines, due to factual disputes,

that all eleven claims must proceed to a hearing. Third, appeals are likely regardless of how the Court rules, and the path chosen should—if possible—minimize the number of trips up and down the appellate ladder. On all three factors, Rule 52 is the better option.

First, the difference here between proceeding under Rule 56 or Rule 52 is not who decides. That will be the Court in either case. Rather, the difference lies in the standard the Court will use. Under Rule 56, the Court must deny summary judgment unless, viewing the facts in the light most favorable to the non-moving party, judgment can be granted as a matter of law. The Court cannot resolve factual disputes under a Rule 56 motion. Instead, after denying summary judgment, it must move on to the next phase of litigation: a trial over the facts. By contrast, "[w]hen reviewing Rule 52 motions, 'the court does not view the evidence in the light most favorable to the nonmoving party, as it would in passing on a Rule 56 motion for summary judgment or a Rule 50(a) motion for judgment as a matter of law; instead, it exercises its role as a factfinder.'" *Does v. Snyder* (*Does I*), 101 F.Supp.3d 672, 680 (E.D. Mich. 2015) (quoting *United States v. $242,484.00*, 389 F.3d 1149, 1172 (11th Cir. 2004)). Under Rule 52 the Court can resolve factual disputes now, rather than waiting until after summary judgment.

This is precisely why Judge Cleland, in *Does I*, called the parties to chambers after they had filed their Rule 56 briefs, and asked them to instead proceed under

Rule 52. Judge Cleland subsequently found that he was able to decide the case based on the papers, without the need for trial. Here too, because the Court will ultimately be the factfinder, a one-step process where the Court simply resolves factual issues presented in the written record/submissions is more efficient than a two-step process, where the Court first decides cross-motions for summary judgment by viewing the facts in the light most favorable to the non-moving party, and then moves on to resolving factual issues. Much ink and many hours in the courtroom could be saved.

Second, Rule 52 allows for a summary bench trial, meaning that some or all claims can be decided on the written record. *See Acuff–Rose Music, Inc. v. Jostens, Inc.,* 155 F.3d 140, 142–43 (2d Cir. 1998) ("A court may determine that a full trial would add nothing to the paper record and, after proper notice, decide a case on that record, making a decision on a 'trial without witnesses' rather than on summary judgment." (citation omitted)); *Garcia-Ayala v. Lederle Parenterals*, 212 F.3d 638, 644 (1st Cir. 2000) ("Instead of expending time and money on a trial, the parties may decide that the pre-trial record establishes all the necessary grounds upon which a judge may enter a final ruling on one or all of the issues in dispute."). Here the record is rich, and the Court will likely be able to decide many issues without a trial, provided that the Court has the leeway to resolve factual disputes.

An example may be helpful. Plaintiffs' evidence includes an expert analysis

of the class data that provides information on class size and demographics, and analyzes the recidivism rates and risk levels of the class. Defendants' evidence includes an affidavit from a Michigan State Police analyst that provides data on some of those same issues, but has quite different numbers. Under Rule 52, if the Court finds one set of numbers more reliable, the Court could simply resolve that factual dispute. By contrast, under Rule 56 (absent a ruling that one party's evidence is inadmissible, *see* Section IV below), the Court might need to credit the MSP analyst's numbers when deciding the Plaintiffs' motion for summary judgment, but credit the Plaintiffs' expert report when deciding Defendants' motion for summary judgment. And then, if the Court found this factual dispute to be material, it would go to trial.

To be clear, nothing in Rule 52 would prevent the Court from holding an evidentiary hearing to resolve any factual disputes that the Court cannot decide based on the written record. In the example above, if the Court wanted to hear from both sides before deciding which set of numbers to use, it could do so. The Court could also decide to hear testimony from key witnesses or on key issues before making credibility determinations or other findings. *Cf. Wyatt ex rel. Rawlins v. Sawyer*, 67 F. Supp. 1331, 1337 (Md. Ala. 1999) (describing how court's decision in complex civil rights case was based on a written record "comparable to that of a trial lasting a half year to a year," supplemented by "live testimony [] to highlight the most pertinent and relevant parts of the already–filed record").

In short, Rule 52 does not limit the Court's ability to hold a hearing, but it enables the Court to limit the hearing it holds. In other words, Rule 52 allows the Court to determine, after reviewing the record, whether an evidentiary hearing is needed, and if so on what issues. The parties do not have to present evidence on every material disputed fact. Rather, the Court can determine whether there are material factual disputes that cannot be resolved based on the written record. Only those issues (if any) would need to go to trial.

The third consideration is whether proceeding under Rule 56 or Rule 52 will reduce the number of trips up and down the appellate ladder. Imagine that the Court grants summary judgment for Plaintiffs on five claims and summary judgment to Defendants on the other six. The appellate courts then reverse in favor of Defendants on two claims and in favor of Plaintiffs on three others, which means five claims come back on remand for trial. By contrast, if the Court issues a final decision under Rule 52 (with or without an evidentiary hearing), the appellate posture is one of post-trial appellate review. The appellate courts might disagree with this Court's legal analysis or its finding of facts. But proceedings on remand are likely to be much simpler than they would be on remand after appeal of a decision under Rule 56.

For the reasons set out above, Plaintiffs believe Rule 52 is the most efficient approach. However, in order for the Court to hold a summary bench trial (i.e., resolve factual issues based on the written record), the parties must waive their right to a full

trial. *See Acuff–Rose Music,* 155 F.3d at 142.

Here, Defendants do not necessarily object to proceeding under Rule 52. They write in their statement below that: "After deciding motions under Rule 56 the parties will know what the remaining material facts to be decided at trial are and then the parties, and the Court, can discuss whether the trial should be on the papers under Rule 52, or whether the trial should proceed in person." In other words, Defendants propose that the Court first decide cross-motions for summary judgment (which would have to be denied if there are material factual disputes), and only then would the Court move on to a final decision, which could be under Rule 52 cross-motions or through a trial. But Defendants offer no explanation for why one set of cross-motions is insufficient. Under Rule 52, if there are no material facts in dispute, the Court can decide the law just as it does under Rule 56. The difference is that under Rule 52 the Court can *also* decide factual disputes at that time and write just one opinion, rather than first writing an opinion under Rule 56 and then writing another one after a new set of Rule 52 briefs or after a trial.

Plaintiffs' understanding is that Defendants have two concerns about Rule 52. First, while summary judgment is familiar, Rule 52 proceedings are not. Plaintiffs' counsel too had never done a Rule 52 proceeding before Judge Cleland suggested it. But the experience in *Does I* demonstrated the advantages of that approach for both sides. Second, Defendants are apparently worried that proceeding

under Rule 52 would require the parties to develop a joint statement of facts, as was done in *Does I*. Plaintiffs agree with Defendants that writing a joint statement of facts in this case would impose an enormous burden on the parties and is not workable here. But how the parties present the factual record to the Court is an entirely separate question from whether the Court will review those facts under Rule 52 or Rule 56.

Plaintiffs therefore respectfully suggest that the Court explore Defendants' concerns about Rule 52 at the status conference. For example, perhaps if each side submits separate fact statements, Defendants will be comfortable moving forward under Rule 52 at the outset. Or if Defendants are worried about not being able to present evidence at trial on some issue, perhaps the Court could notify the parties after reviewing the briefing that it intends to resolve all factual disputes other than X, Y, and Z based on the written record, and allow the parties to object if they believe there are other factual disputes that should be tried. Plaintiffs believe that judicial economy and conservation of party resources will be served if the Court and parties can find a way to proceed under Rule 52.

**Defendants' Statement:**

Plaintiffs have expressed that they prefer to proceed under Rule 52 because if both parties file motions under Rule 56, it will be difficult for the Court to determine in whose favor the facts must be construed in.

8

Defendants suggest that filing motions under Rule 56 will significantly narrow any material factual issues for trial. A trial, whether in person, or on the papers under Rule 52, are to resolve material factual disputes. After deciding motions under Rule 56 the parties will know what the remaining material facts to be decided at trial are and then the parties, and the Court, can discuss whether the trial should be on the papers under Rule 52, or whether the trial should proceed in person.

In preliminary discussions regarding how to proceed (under Rule 52 or 56), Defendants suggested that the parties walk through the eleven claims and determine if there are any claims that are purely legal and no factual development is needed, or if there is agreement on all material facts so that the parties can stipulate to a limited set of facts.

One of the challenges here is that the parties fundamentally disagree over what is a material fact.  One example will help illustrate the differences between the parties. Count XI – Sex Offender Registration of People with Non-Michigan Convictions and Adjudications - The gravamen of the count is that it is a Due Process, Equal Protection and Privileges and Immunities violation for MSP to decide what the reporting requirements are for someone with an out-of-state conviction when they move to Michigan without a "pre-deprivation notice, no meaningful post-deprivation notice, and no opportunity to be heard on Defendants' decisions that

they are subject to sex offender registration in Michigan." (ECF. No. 108, PageID.2978-2990.)

However, the general facts are not in dispute. When individuals with out-of-state offenses move to Michigan (or otherwise have Michigan reporting requirements), MSP decides what tier level applies to that individual without a hearing. Plaintiffs even included the decision tree that MSP uses to make their determination in the Amended Complaint. (ECF. No. 108, PageID.2934.) MSP then sends a letter to the registrant informing them of their Michigan registration obligations. See Tier Notification Letters at ECF. No. 108-9, PageID.3120-3123.) There is no specific mechanism under the statute that authorizes the registrant to challenge that determination. Thus, the parties agree on the basic process. However, where the parties diverge is what additional facts are needed for the Court to resolve this claim. According to Plaintiffs, one material fact that needs to be developed related to this count is what HR classification applies to the person at MSP that makes the determination. (i.e., a technician, an analyst, or an attorney in MSP legal affairs.) See Amended Complaint ECF No. 108, PageID.2936. Several long depositions were taken that included this topic.

Proceeding under Rule 56 would seem to allow the Court to decide if the HR classification of the person at MSP making the determination is a material fact that needs to be resolved at trial.

The specific counts in the amended complaint that Plaintiffs ask the Court to decide are whether the new SORA is (1) an Ex Post Facto violation; (2) a Due Process violation by retroactively extending registration terms; (3) violative of the Due Process and Equal Protective by not providing individualized review for each registrant; (4) a Equal Protection violation by not allowing all registrants petition for removal; (5) a First Amendment violation by requiring registrants to report and update certain information, and whether it is compelled speech; (6) is a Due Process violation for those that plead to their offenses, and the registration terms were subsequently changed; (7) is a Due Process or Equal Protection violation for registrants that allegedly did not commit a sex offense; (8) is vague; (9) is a First Amendment violation by requiring registrants to attest that they understand their reporting requirements; (10) is First Amendment violation that restricts speech and association; and (11) is a Due Process, Equal Protection and/or a Privileges and Immunities violations by the MSP determining the tier level and registration requirements for registrants with out-of-state convictions.

But, for the most part there are no disputes of material fact.  There is no dispute that the amendments to SORA, which remain in the new SORA, extended the registration periods for offenders.  There is no dispute that the new SORA is a conviction-based registry and does not provide for individualized review for each of the 40,000+ registrants.  There is no dispute that under the statute there is a

mechanism for certain offenders to petition for removal from the registry – i.e., not every registrant has the statutory right to petition for removal.  There is no dispute that increases to the registration terms may impact plea deals.  There is no dispute that prior to the *Lymon* decision there was an automatic determination that individuals convicted of specific crimes – kidnapping, child enticement, or unlawful imprisonment – were subject to sex offender registration laws.  There is no dispute that the initial registration form includes a signature line for the registrant that indicates that they have read and understand their registration obligations.

Another example may be worthwhile.  Count VII – Offenders who did not commit a sex offense - The crux of this claim is that it is a violation of Due Process and Equal Protection to automatically determine that individuals with convictions for certain offenses (e.g., kidnapping) are sex offenders.   (ECF. No. 108, PageID.2971-2974.)   The Michigan Court of Appeals, in a published binding opinion in *Lymon,* essentially agreed with Plaintiffs' and held that there must be a sexual component to the crime – i.e., there is no longer an automatic determination that someone convicted of certain offenses must register as a sex offender. Following the *Lymon* decision, MSP removed all the registrants that were solely on the registry for one of the offenses, except for 14 offenders where the prosecutor determined that there was a sexual component to the crime.

The parties disagree as to whether there is still a live controversy, which is

entirely a legal issue.  Defendants believe that the claim is moot, since there is no longer an automatic determination that someone convicted of kidnapping must register as a sex offender.  Defendants also believe that this claim is no longer suitable for a class action.  It appears that Plaintiffs believe that it is not moot and have explained that since an appeal was filed in the Michigan Supreme Court, it is still a live controversy.  There should not be any material disputes about the underlying facts, and deciding whether the claim is moot is entirely a legal issue.

While the lengthy amended complaint, the voluminous exhibits that were attached to the complaint, and the wide-ranging discovery engaged in by Plaintiffs make it seem like there are numerous material facts in dispute, reviewing the actual counts in the amended complaint suggest otherwise.  Narrowing the factual issues via the normal process of filing motions under Rule 56 seems to be the most efficient path forward.

## III.   DISTILLATION AND PRESENTATION OF FACTS TO THE COURT

The record is large: there are approximately 23 expert reports/rebuttal reports, 26 deposition transcripts, dozens of declarations, and thousands of pages of documents. Regardless of whether the case proceeds under Rule 52 or Rule 56, it will be necessary for the parties to distill the record into a manageable format for the Court.

The parties are working on a joint set of exhibits, the numbering of which would be used by both sides in their fact statements. Plaintiffs are reviewing the

deposition transcripts and other documents for redactions necessary under the protective orders, ECF 87, 88, and will provide Defendants with redacted copies.

**Plaintiffs' Additional Statement**

The parties have very different understandings of the legal claims, and accordingly have completely different views of what facts are material. This disagreement complicates the determination of what material facts are in dispute. For example, the parties agree that some sexual offending is undetected, but disagree on the rate of undetected offending. Plaintiffs believe this factual dispute is not material: because there is undetected offending both by people who are on registries and by people who are not,[1] analyses based on detected (known) offending provide a solid basis for assessing the comparative risk of registrants and that of the general population; speculation about undetected (unknown) offending rates is unnecessary. Therefore, Plaintiffs believe there is no need for the Court to resolve factual disputes about undetected offending. But Defendants think undetected offending is relevant and intend to present the disputed evidence about it.

How the Court views the legal claims will also impact which factual disputes need to be resolved. For example, it is undisputed that the MSP decides whether

---

[1] As Defendants' experts concede, there is no reason to believe that people on registries engage in undetected offending at a higher rate than people not on registries. If anything, people on registries are *more* likely to be detected, because a suspect with a past sexual offense conviction will draw more police attention.

people with out-of-state convictions must register and if so, at what tier level. But Defendants have refused to admit that there is no appeal process or procedure to contest these determinations. Answer, ECF 111, ¶¶ 677-78. There are also factual disputes about the extent to which those decisions are made by MSP lawyers versus interns or untrained SOR unit staff. The risk of error is, of course, a factor in determining what process is due, *see Matthews v. Eldridge*, 424 U.S. 319 (1976), and so the Court may find the factual dispute about the decision-making process to be material. With respect to the risk of error, the Court might also find it relevant that no MSP deponent has been able to explain why the MSP categorized Ms. Doe and Mr. Doe G as life-time Tier III registrants, when the Michigan offenses most similar to their out-of-state convictions results in 25-year Tier II registration. Alternately, the Court might conclude that regardless of who is making these decisions, the complete absence of procedural protections is unconstitutional. Or the Court might adopt some argument by Defendants that no process is due. Under the latter two scenarios, there is no need for the Court to resolve the factual dispute about who is making out-of-state classification decisions. (Note that under Rule 52, the Court could decide this count under all three scenarios; under Rule 56, the Court could only decide this count if it concluded that the disputed facts are not material.)

Plaintiffs have the burden of proving their case, and at this stage cannot know

15

how the Court will view the legal claims or what facts the Court will consider material. Plaintiffs must therefore err on the side of presenting as complete a record as possible, while flagging factual disputes that might not need to be resolved, depending on how the Court views the various claims.

Plaintiffs also believe it is critical that each side be able to file fact statements separate from the briefs. Such statements, by distilling the enormous record and pulling out the facts each side sees as material, will make it easier for the Court, eliminating the need to scour hundreds of exhibits, and will allow each side to present their strongest case. In *Does I*, it was the record, distilled into a 262-page fact statement, that persuaded both the district court and the Sixth Circuit. For example, Judge Cleland, in holding that SORA's reporting requirements were unconstitutionally vague, cited example after example of Plaintiffs' and law enforcement's confusion about the statute. *Does #1-5 v. Snyder*, 101 F. Supp. 3d 672, 686-690 (E.D. Mich. 2015). Similarly, the Sixth Circuit, in analyzing the factors of the ex post facto test, relied heavily on the fact statement. *Does #1-5 v. Snyder*, 834 F.3d 696, 704-05 (6th Cir. 2016) ("[T]he record before us provides scant support for the proposition that SORA in fact accomplishes its professed goals"; "Even more troubling is evidence in the record supporting a finding that offense-based public registration has, at best, no impact on recidivism." "[T]he parties point to no evidence in the record that the difficulties the statute imposes on registrants are counterbalanced by

any positive effects." "[SORA] consigns [registrants] to years, if not a lifetime, of existence on the margins, not only of society, but often, as the record in this case makes painfully evident, from their own families.").

Defendants argue that there are few material facts in dispute, suggesting that the Court need not spend much time on the facts. But the facts matter. Take the Ex Post Facto claim. While there is no dispute that SORA had been retroactively applied, the parties disagree on what the facts mean for every factor of the analysis under *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963). In arguing that SORA is excessive in relation to a non-punitive purpose, for example, Plaintiffs plan to draw on the extensive record evidence showing both that SORA has a devastating impact on registrants, and that it does not reduce (and if anything increases) sexual offending. Even if Defendants do not dispute that evidence (and they might well), Plaintiffs need to set out those facts so the Court can consider them in ruling on the Ex Post Facto claim.

In sum, the most efficient approach to presenting the facts is for each side to prepare its own statement of the facts it believes to be material. That is true under both Rule 52 and 56. (In *Does I*, summary judgment briefs were initially filed under Rule 56, with Plaintiffs filing a supporting Statement of Material Facts. *Does I*, No. 12-cv-11194, ECF 58-1.) The fact statements would consist of numbered paragraphs and would include specific references and citations to record evidence. Given the

17

size of the record and number of claims (some with multi-factor tests), these statements will likely be lengthy. Plaintiffs believe, however, that the Court will ultimately find it much easier to work off such distilled statements of facts than to search through hundreds of exhibits to find particular record evidence.

If the Court proceeds under Rule 52, Plaintiffs suggest that the parties' fact statements be submitted as Proposed Findings of Fact. This is comparable to what courts routinely require at the close of trial, and it would aid the Court in satisfying Rule 52(a)(1)'s requirement to make factual findings.

Finally, if the Court wishes the parties to respond to the other side's fact statements, the parties suggest the Court order a free-form response. A paragraph-by-paragraph response is likely to simply result in a litany of objections from both sides as to the relevance of the other side's facts.

**Defendants' Additional Statement**

The presentation of facts to the Court will depend largely on how the matter proceeds, either under Rule 56 or Rule 52.

## IV. EVIDENTIARY ISSUES

Both sides have evidentiary concerns about certain aspects of the other side's evidence, and seek guidance about when and how those concerns should be raised with the Court.

**Plaintiffs' Statement:**

Plaintiffs anticipate bringing Rule 702 challenges to some of Defendants' experts, as well as challenges to the admissibility and relevance of some of Defendants' evidence. Defendants may well do the same. Requiring the parties to identify the evidentiary issues, presumably through motions in limine or a comparable pleading, would allow the Court to decide whether there is evidence that should be excluded, which could narrow the number of factual disputes that need to be resolved.

Again, an example may be helpful. As noted above, Defendants' evidence includes an affidavit from an MSP SOR Unit staff member regarding registry data. As revealed at her deposition, the staff member lacked personal knowledge for many of her conclusions, based her affidavit on unreliable data, and lacked the skills to analyze the data. Plaintiffs will seek to exclude that affidavit from the record. If the Court proceeds under Rule 52, Plaintiffs would file a motion in limine. If the Court grants the motion in limine, the Court would not need to resolve the factual dispute about registry numbers, since Defendants' numbers would have been stricken. Alternately, the Court could decide that it need not rule on the motion in limine, but instead could conclude, based on the evidentiary issues raised in the motion, that as finder-of-fact the Court will simply disregard the problematic affidavit.

If the case proceeds under Rule 56, it is less clear how or when the Court might decide such evidentiary issues. If the Court simply views the evidence in the

light most favorable to the non-moving party, the Court might need (in this example) to credit an affidavit that might ultimately be found inadmissible or not credible. That is quite inefficient; denying summary judgment to either side based on evidence that the Court later excludes from the record creates unnecessary work for the Court and the parties. Alternately, the Court could find a way for the parties to raise evidentiary issues concurrently with the summary judgment briefing. Whatever path the Court chooses, evidentiary issues should be resolved in an efficient manner that does not slow the overall progress of the case towards final resolution.

**<u>Defendants' Statement</u>:**

The evidentiary issues will depend in part upon how the case proceeds. If it proceeds in the normal course under Rule 56, any evidentiary issues are a long way off and do not need to be addressed now. If the matter proceeds under Rule 52, the evidentiary issues will need to be addressed sooner.

## V. WHETHER AN EVIDENTIARY HEARING IS NECESSARY AND ON WHAT ISSUES

The parties would appreciate guidance from the Court about whether it thinks an evidentiary hearing will be necessary, and if so, on what issues. Of course, until the Court delves into the briefing and record, it will likely be difficult for the Court to know whether it can decide some or all claims on the written submissions and record, or whether it also wants to hear evidence. The Court may conclude that certain claims involve purely legal questions. Or the Court may conclude that factual

disputes are not relevant, so it need not decide them. Or the Court may conclude that testimony would be helpful. The scope and timing of an evidentiary hearing could also be affected by whether the case proceeds under Rule 52 or Rule 56.

The parties suggest that the Court hold dates on its calendar for a potential evidentiary hearing, but also hold a status conference well in advance to inform the parties whether an evidentiary hearing will be needed. In the event that the Court wishes to hold an evidentiary hearing, the parties will need direction about what facts the Court considers material, so that they can focus the hearing on those facts. At the status conference, the Court would inform the parties if the trial needs to proceed, and if so, what its length and scope should be.

Without knowing whether the case will proceed under Rule 52 or Rule 56, how the Court views the legal issues, what facts the Court considers relevant, or what issues the Court will resolve based on the papers, it is difficult to predict how much time will be needed for trial.

## VI.    PROPOSED SCHEDULE

**Plaintiffs' Statement:**

The Plaintiffs propose the following schedule, which could be used for cross-motions under either Rule 52 or Rule 56:

| | |
|---|---|
| Filing of Joint Exhibits | 8/16/23 |
| Statements of Facts | 8/18/23 |
| Opening Briefs | 8/18/23 |
| Response Briefs | 9/15/23 |
| Responses on Facts | 9/15/23 |
| Reply Briefs | 10/6/23 |
| Motions in Limine or equivalent (if under Rule 52) | Opening briefs 8/25/23; responses 9/12/23; replies 9/19/23 |
| Status Conference (for guidance on whether there will be an evidentiary hearing, and if so, on what issues) | Second week of October |
| Evidentiary Hearing if needed | Late October or early November |

**Defendants' Statement:**

The Defendants propose that the schedule be agreed upon after the Court decides whether the case will proceed under Rule 52 or 56, and note that given the number of claims at issue, the voluminous record, and that it is anticipated that cross motions will be filed, that generous amounts of time should be granted for the briefing so that the issues are clearly and concisely addressed.

Respectfully submitted,

22

s/ Miriam Aukerman (P63165)
s/ Dayja Tillman (P86526)
Attorneys for Plaintiffs
American Civil Liberties Union
  Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org
dtillman@aclumich.org


s/ Daniel S. Korobkin (P72842)
s/ Syeda Davidson (P72801)
American Civil Liberties Union
  Fund of Michigan
Attorney for Plaintiffs
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6824
dkorobkin@aclumich.org


s/ Paul D. Reingold (P27594)
Cooperating Counsel, American Civil
  Liberties Union Fund of Michigan
Attorney for Plaintiffs
Univ. of Michigan Law School
802 Legal Research Building
801 Monroe Street
Ann Arbor, MI 48109-1215
(734) 355-0319 - pdr@umich.edu

s/ Roshna Bala Keen (Ill. 6284469)
s/ Lauren Carbajal (Cal. 336485)
Loevy & Loevy
Attorney for Plaintiffs
Cooperating Counsel, American Civil
  Liberties Union Fund of Michigan
311 North Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 - roshna@loevy.com


/s/ Eric M. Jamison (P75721)
Assistant Attorney General
Attorney for Defendants
Michigan Dep't of Attorney General
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
jamisone@michigan.gov

July 6, 2023