# Exhibit 13:

# Dr. John Ulrich Expert Report

# Expert Report of John Ulrich PhD

## OVERVIEW

1. This report presents the actuarial-based predicted risk of sexual recidivism of the male plaintiffs in *Does III* based on their Static-99R scores (1) at the time they were released into the community, and (2) adjusted for time offense-free in the community since. The Static-99R scores provide both a standard risk classification and a numeric value (percentage) of predicted risk as of the time of release.

2. All seven *Does III* male plaintiffs have been in the community (ranging from 8 years to over 20 years) without having committed new sexual or criminal offenses (other than traffic offenses). The Static-99R scores and corresponding numeric values for these plaintiffs were then entered into the "Time Free in the Community Calculator" (found at the Society for the Advancement of Actuarial Risk/Need Assessment (SAARNA) website) to determine what their predicted risk of recidivism is today, and when they will be, or have been, considered to have "desisted" from sexual offending, as defined in the research literature.

## SUMMARY OF FINDINGS

3. All seven assessed male plaintiffs in *Does III* were classified in the Level III/Average risk classification (Static-99R scores of 1, 2 or 3) at the time of their release into the community. Based on time offense-free in the community since, none of them remain in that classification. Six of the seven are in the Level I/Very Low Risk category, and the seventh will drop to Level I in May 2023, absent a new offense. Those six have attained a risk level that is deemed to be "desistance" in the research literature. Indeed, four of the seven (Mr. Does B, C, D, and E) have a lower statistical probability for committing a new sexual offense than released non-sexual offenders, or average adult males in the general public, have for committing a sexual offense "out of the blue" during their lifetime.

4. One male plaintiff could not be tested because he had never committed a sexual offense (though he remains on the registry for life). The two women plaintiffs could not be tested because there is no instrument comparable to the Static-99R that is "normed" for women who commit sexual offenses, in part because so few women commit such offenses, and very few of those re-offend. I have added a

1

short section at the end of this report describing the extremely low generalized risk of re-offending by such female offenders.

## <u>QUALIFICATIONS</u>

5.  I have been a licensed psychologist in Michigan since 1996. I have maintained a solo private practice since 2004. As a component of my private practice, I provided psychological services and risk assessment and treatment for the Michigan Department of Corrections (MDOC) for sexual offenders in the community on probation or parole for Leelanau, Grand Traverse, and Benzie Counties from 1996 to 2011. I continue to provide assessment and treatment for pretrial cases and supervised release individuals convicted of sexual offenses for the United States District Court, Western District of Michigan from 2004 to date. This includes all the counties in the norther lower peninsula of the Western District. Independently, I provide risk assessments to defense attorneys for individuals accused of sexual offenses in the pretrial phase as well as for the courts in the presentence phase of the criminal proceedings. These reports have been filed in the 13th, 19th, 33rd, 57th and 53rd Circuit Courts in Michigan. I also provide risk assessments of juveniles with sexual behavioral problems at both the pre- and post-adjudication phases, and in the Family Divisions of these circuit courts and others. I provide evaluations for individuals alleged of child sexual abuse or those with prior convictions for sexual offenses, for Child Protective Services of the Michigan Department of Health and Human Services, throughout the northern counties of the lower peninsula.

6.  I am a guest lecturer on sexual offending and paraphilias to the Human Sexuality and Abnormal Psychology classes at Northwestern Michigan College. I serve on the board of the Michigan Chapter of the Association for the Treatment of Sexual Abusers (ATSA) in the role of written communications chair.

7.  I have testified as an expert witness in many individual cases. My focus as a community-based psychologist has emphasized staying current with the developments in the field of assessment and treatment of sexual offending, as indicated by the extensive continuing education and training reported in the true copy of my CV. While I have submitted many reports to courts, I have not testified as an expert in the last ten years.

Declaration and Report of John Ulrich Ph.D.
2021
Page **4** of 17

## RATIONALE FOR REFERRAL

8.  For two decades, the Static-99R has enabled corrections professionals and treatment staff to assess and prioritize treatment services, level of supervision, and monitoring needs for people who have been convicted of sexual offenses. The instrument places an individual into a group classification (Level I is the lowest risk level and Level IV(b) is the highest risk level) providing statistical support to compare differences between groups and allocate resources accordingly. Static-99R scores were originally thought to be unchanging, meaning "once an individual has been assigned a risk level, that label applies in perpetuity." (Thornton, 2021, p. 4.) In light of the most up-to-date research, however, this is no longer the case. *Id.* In the past, each risk classification had an assigned "absolute recidivism" rate, but sample sizes were not large enough, and studies were not long enough, to provide statistical confidence beyond ten years.

9.  As sample sizes have grown and study times have lengthened, the Static-99R was re-normed to conform to the new actuarial data, putting more emphasis on desistance from sexual offending over time. Researchers have documented how initial risk classifications change over time when people live in the community with no further sexual offenses beyond five and 10 years (or later). Researchers have developed a Time Free Calculator to assign actuarial predicted risk to demonstrate changes within an *individual's* risk over time, rather than only the group comparisons based on the original standard classification of risk. (Thornton, 2021.)

10. This change has enormous implications for the development of risk-based community supervision and monitoring for people with sexual offense histories and draws on the most current research of the leading social scientists in the field. Older policies, based on the discredited notion that people who have committed a sex offense remain high risk forever, are outmoded because such policies result in inefficient use of community resources and extremely expensive ongoing monitoring, long after people no longer pose a risk to society. Updated Static-99R scores are the best predictor of *current* risk of people on the registry.

## THE STATIC-99R

11. The Static-99R is the most widely used actuarial-based risk prediction tool for sex offenses. (Kelley, 2020.) It is the risk prediction tool of choice for the MDOC and its contracted clinicians in the field. The Static-99R provides the

3

Declaration and Report of John Ulrich Ph.D.
2021
Page **5** of 17

standard language used by probation and parole officers, clinicians, and other community stakeholders throughout the state.

12. <u>Static-99R Samples, Norms, and Risk Language</u>: The Static-99R uses a separate set of predicted recidivism rates for people predetermined to be High Risk/High Need (HRHN) independent of their Static-99R score. Because none of the *Does III* male plaintiffs met the criteria for inclusion in the HRHN sample, I have scored all of them using the actuarial-based Routine/Correctional sample.

13. The Static-99R score classifies individuals into one of five risk categories corresponding with the bell-shaped curve of distribution. This provides a framework for understanding what the score means. The five levels range from Level I/Very Low Risk to Level IVb/Well Above Average Risk. (Hanson, 2017.) Level III/Average Risk is the middle classification and, consistent with the bell curve distribution, most individuals convicted of a sexual offense fall into this group. All seven of the Does III plaintiffs were in Level III/Average Risk at the time of their release. Prior to the development of the time offense-free calculations, individuals would always remain in their initial classification unless they committed another sexual offense, which would increase their risk classification. But an individual's risk classification could never go down. Now we have the research to support lowering individuals' risk classification based on their post release behavior over time.

14. A predicted recidivism rate (a percentage) is assigned to each Static-99R score based on actuarial science. This is also called the "numeric value" or "absolute recidivism rate." This is "arguably the most useful and easiest understood metric for reporting risk of reoffense. It is the percent likelihood of reoffending for people with the same risk score." (Hanson, 2017, p. 4.) The predicted recidivism rates are derived from a broad range of sample groups studying thousands of offenders from eight western nations from 2003 to 2018 and include confidence interval at the 95th percentile for each of the Does' Static-99R scores.

15. The recidivism tables used for estimating 20-year rates are reported in the Static-99R & Static-2002R Evaluators' Workbook. (Helmus, 2021, supplementing Lee and Hanson, 2021.) In estimating 20-year rates, "given known initial hazard rates, the 20-year projections would be expected to have error rates of between ±1

percentage points and ±5 percentage points, with the larger error rates associated with larger estimated recidivism rates." (Thornton, 2021, p. 20.) Not surprisingly, because the *Does III* plaintiffs all had very low predicted recidivism rates, using this method produces a 95th percentile confidence interval ±1% for each of them.

16. <u>Predicted 20-year Estimate (Extrapolating to Lifetime)</u>: In a series of three papers (Hanson, 2014; Hanson, 2017; and Thornton, 2021), the world's leading sex offense researchers found that the 20-year predicted recidivism rate (even for high-er risk offenders) was virtually the same as the predicted lifetime rate. In other words, if researchers were able to follow all individuals until their death, they would observe rates similar to the predicted 20-year estimates, because those who make it to 20 years offense-free in the community almost never commit another sex offense thereafter. Accordingly, the authors have used the 20-year rate as an acceptable estimate of the lifetime rate because the hazard of reoffending after 20 years offense-free in the community is negligible. (Thornton, 2021, p. 10.) The researchers developed an actuarial-based "Time Free in the Community Calcu-lator," using the statistical method of discrete survival analysis. For each given year a "hazard rate" is calculated that represents the probability of reoffending for a person with that original Static-99R score, for each year in the community offense-free after release. (Thornton, 2019.)

17. <u>Threshold for Determining Desistance</u>: The researchers also found that at some point all male registrants who remain offense-free in the community will reach a point where their risk of reoffending sexually is the equivalent of other males released from prison (with non-sexual offenses) who are not subject to registration and monitoring. For this report, I used an even more conservative threshold of a predicted recidivism rate – less than 1.5% at five years or less than 3% at the estimated 20-year level – to define "desistance." This corresponds with entering the Level I/Very Low Risk classification. This also approximates the 1% - 2% baseline rate for adult males in the United States (with no prior criminal history) being charged or convicted of a sexual offense "out of the blue." (Hanson, 2017.) Of course, that population, too, is not subject to registration and monitoring.

18. Five of the plaintiffs attained this desistance threshold some years ago, a sixth reached that threshold more recently, and the final plaintiff will—absent a new offense—reach it in 2023. (By chance, while I was scoring the plaintiffs, I

attended a virtual presentation by the researchers Thornton, Kelley, & Hanson, called "Looking Forward and Looking Back: Estimating Recidivism and Time to Desistance," 40th Annual ATSA Research and Treatment Conference, September 30, 2021. The presenters confirmed my own understanding of how to score and update the risk calculation of people like the plaintiffs, and answered my questions and gave me great confidence in the work I did for this case.)

**Michigan Statutory Tier System for Community Notification and Monitoring**:

19. Michigan has a three-tiered classification system that is based on the conviction and not on assessed risk. Tier 1 results in 15 years of reporting but (for most people) no public notification. Tier 2 is 25 years of reporting and inclusion on the online public registry, and Tier 3 is lifetime for both reporting and the public registry. *See* Michigan Sex Offenders Registration Act, M.C.L. § 28.721 *et. seq.* In *Does III*, one plaintiff has a Tier 1 classification, one plaintiff is a Tier 2, while all the others are Tier 3 (resulting in lifetime reporting and monitoring regardless of whether they have attained desistance).

**EVALUATION PROCEDURES**:

20. The plaintiffs' attorneys referred seven individuals for this examiner to review and obtain their scores on the Static-99R as of the time of their release into the community. The attorneys also provided criminal history records confirming the plaintiffs' underlying sexual offense convictions and any subsequent criminal history or lack thereof. The most recent underlying sex offense was from 2015; the others ranged from that date to over 20 years ago. This examiner conducted video conference interviews with five of the seven individuals. Two plaintiffs were not able to secure a private location for videoconferencing and completed an interview by phone. The referring attorneys provided the plaintiffs' results of an Internet Criminal History Access Tool (ICHAT) search conducted on August 5, 2021. That information was used to confirm reported criminal histories. One plaintiff had no legal records from the time of the out-of-state offense but the ICHAT search confirmed his reported conviction and the absence of any other convictions. Other plaintiffs had more complete records, such as police reports and presentence investigation reports.

21. All the plaintiffs completed a video conference or telephone interview with me. I also had access to various legal records to confirm self-reported information

Declaration and Report of John Ulrich Ph.D.
2021
Page **8** of 17

about the original offense and the person's time offense-free in the community. No plaintiffs have been removed from the community for extended periods (for events such as lengthy hospitalization) after their release into the community, so I counted all of their time since release. The Static-99R score for everyone was assigned a numeric value for the predicted recidivism rates at the estimated 20-year (lifetime) metric. This numeric value was then entered into the Time Free in the Community Calculator downloaded from the SAARNA website.

## FINDINGS

22. **Group Overview:** All seven plaintiffs in *Does III* who committed a sex offense were classified in the Level III/Average risk classification (Static-99R scores of 1, 2 or 3) at the time of their release into the community. Based on time offense-free in the community, none of them remain in that classification. Six of the seven are in the Level I/Very Low Risk category, and the seventh will drop to Level I in May 2023, absent a new offense. Four of the seven (Mr. Does B, C, D, and E) have an even lower statistical probability for committing a new sexual offense than the average adult male in the general public has of committing a sexual offense "out of the blue."

23. In six of the seven cases, judges handed down sentences to local conditions such as short jail sentences and probation. Yet, five of the seven plaintiffs are still subject to Tier 3 classification and lifetime sex offender registration. The Tier 2 classified plaintiff was sentenced to 60 days in jail. Yet he remains on the sex offender registry until 2038. The Tier 1 plaintiff will remain on the registry until 2031. Since the single convictions for sexual offenses, all seven plaintiffs' have had no criminal convictions.

24. **The Eighth Plaintiff:** One plaintiff (John Doe A) could not be scored on the Static-99R risk assessment because he was not convicted of any sex offense. I therefore did not score him or interview him. Nonetheless he is on Michigan's sex offender registry, for a non-sexual child kidnapping offense committed in 1990. As an individual with no sex offense history but a criminal history, his risk for committing a sexual offense at the time of release would be comparable to that of males released from prison who committed a non-sexual offense but have no sex offense history, which is

around 2% after five years. (Kahn, et al. 2017; Hanson, et al. 2018.) With the passage of time offense-free in the community, that number would decline. Plaintiffs' counsel have provided me with documents showing that Mr. Doe A has lived in the community offense-free for 12 years, since his parole in 2009.

25. Because the underlying research on desistance from sexual offending is based on the much broader literature on desistance from crime in general (Laws, 2011), and because Mr. Doe A never committed a sex offense, I do not understand the utility of putting him on the registry, let alone putting him on it for life as a Tier 3 registrant.

**Scored Plaintiffs' Individual Results:** Does B, C, D, E, F, G, and H.

26. **Mr. Doe B** was sentenced to probation on April 21, 1998. He was 19 years old at the time and had never lived with a lover for more than 2 years. He was not related to the victim. These variables contributed to a score of 3 and a 12.5% projected recidivism rate at 20 years at the time of release. This means that 13 out of 100 individuals would be expected to sexually reoffend and 87 would not. This score placed him in the Level III/Average Risk classification. He was reevaluated on September 11, 2021. Mr. Doe B has been offense free for over 23 years. Thirteen years ago (2008) his predicted risk would have declined to Level I/Very Low Risk, indicating desistance from sexual offending. In 2017, his estimated residual risk would be less than 0.1%, indicating that more than 99 out of 100 individuals like Mr. Doe B would remain sexual offense free for the rest of their lives. His current risk would be even lower, and is no greater than a male in the public who has not committed a sexual offense.

27. **Mr. Doe B** is in Tier 3 in the Michigan system and has lifetime monitor-ing and reporting.

28. **Mr. Doe C** was released in December 2006 at the age of 25. He had been in a committed relationship for 4 or 5 years prior to the offense. He was not related to the victim. His Static-99R score at the time of release was 2 and the 20-year projected recidivism rate was 8.9. This means 9 of 100

individuals would be predicted to reoffend and 91 would not. The score is in the Average Risk (Level III). Mr. Doe C entered the Level I/Very Low Risk classification in 2014. He was reassessed on October 4, 2021, which produced predicted recidivism risk of 0.9%. This is well below the Level l /Very Low Risk classification. This risk of less than 1% reaches the threshold of the general adult male population who have no criminal history. In other words, his risk of committing a new sexual offense is no greater than a male in the public who has not committed a sexual offense.

29. **Mr. Doe C** is classified as Tier 3 in the Michigan system and is subject to lifetime monitoring and reporting.

30. **Mr. Doe D** served 34 days in jail and was released in 2000. While on probation, he attended a sporting event at the high school campus with a friend, which was a violation of the terms of probation. While the judge understood this to be based on a lack of understanding of the rules, the judge determined this was a violation and sentenced him in June, 2001. The judge ordered three additional years of probation. Mr. Doe D was never on a GPS tether for monitoring. He was 19 years old at the time of the violation sentence. He had been living at his family home and had not lived with a lover for 2 or more years. He was not related to the victim. This results in a Static-99R score of 3 with a 20-year estimated risk of 12.5%, which meant he was a Level III/Average Risk classification at the time of release. This means 13 out of 100 individuals in his category would have been predicted to sexually reoffend and 87 would not. At the time of the reassessment on October 10, 2021, Mr. Doe D had been offense free in the community for 20 years and 4 months and his predicted risk is less than 1%. Mr. Doe D crossed the threshold for a Very Low Risk classification ten years ago in 2011. His risk is no greater than a male in the public who has not committed a sexual offense.

31. **Mr. Doe D** is in Tier 3 in the Michigan system and has lifetime monitoring and reporting.

32. **Mr. Doe E** was released from jail in April 1995. He was 22 years old and had been living with his parents up until that time. He was convicted of an

offense involving a male relative. He had not lived with a partner for more than two years. This results in a Static-99R score of 3. His predicted recidivism rate for 20 years was 12.5% at the time of release. Out of 100 individuals, 13 would be expected to sexually reoffend and 87 would not. He would have been classified as Level III/ Average Risk. Mr. Doe E has been offense free in the community for 26-1/2 years. Sixteen years ago (2005), Mr. Doe E would have been classified as Level l/Very Low Risk with a lifetime residual risk less than 3%. Ten years ago (2011) his estimated residual risk would have been less than 1% where 99 out of 100 individuals would remain sexual offense free for the rest of their lives. That is no greater than a male in the public who has not committed a sexual offense. His risk would be even lower now.

33. **Mr. Does E** is in Tier 3 in the Michigan system and has lifetime monitoring and reporting.

34. **Mr. Doe F** was 25 years old at the time of his sentencing on May 30, 2013. He received a sentence of probation and time served, making his sentencing date the same as his release date for scoring of the Static-99R. His relatively young age and not having lived with a romantic partner or lover for more than 2 years prior to his arrest each added a point on the Static-99R. He was not related to the underage female, but they knew each other. His Static-99R score is 3. His predicted recidivism rate for 20 years was 12.5% at the time of release. Out of 100 individuals in this classification, 13 individuals (12.5%) would be charged or convicted with a new offense and 87 would not. In the standardized risk language, this score is classified as Level III/Average Risk. On his reassessment date, August 8, 2021, the plaintiff had been 8 years and 2 months in the community with no further criminal sanctions and no removal from the community for any time. Using the time offense-free in the community calculator, Mr. Doe F's current residual lifetime risk for 2021 is now 4.0%. This means that four out of 100 men with the same score will be charged or convicted of a new sexual offense and 96 men will not be charged or convicted. This score places him in the Level II/Below Average Risk category. In one year and seven months (May 2023), absent a new sexual offense, Mr. Doe F will cross the threshold into Level I/Very Low Risk classification with the

residual lifetime risk of 2.8% – signifying desistance from sexual offending.

35. **Mr. Doe F** has a Tier 2 classification in the Michigan state system, making him subject to registration, community notification, and monitoring until 2038.

36. **Mr. Doe G** was released on approximately May 17, 2010, seven days before his 40th birthday. He had never lived with a lover for at least 2 years prior to his arrest in 2007. He was not related to the male victim. This gives him a Static-99R score of 3. His estimated 20-year risk at the time of release was 12.5%. This means, out of 100 individuals in this classification, 13 (12.5) would have been charged and convicted of a new offense. He would have been classified Level III/ Average Risk. When he was reevaluated on August 29, 2021, he had been in the community 11 years and 3 months. The calculator score resulted in a 2.4% risk of committing a new sexual offense. In other words, 3 out of 100 individuals would be convicted for a new sexual offense and 97 individuals would not. This score places him in Level I/Very Low Risk classification and is considered sexual offending desistance.

37. **Mr. Doe G** is in Tier 3 in the Michigan system and has lifetime monitoring and reporting.

38. **Mr. Doe H** was investigated in September 2014 but not arrested until April 30, 2015. He bonded out the next morning but was not sentenced until February 3, 2016. He did not receive any time in jail as a part of his sentence. Given these factors, the release date is considered May 1, 2015. He was married and 43 years old contributing to a score of 1 on the Static-99R. He was unrelated to the victim. His predicted recidivism rate for 20 years was 6.3% when he was released. Out of 100 individuals in this classification, seven (6.3) would be charged or convicted of a new sexual offense and 93 would not. His classification was Level III/Average Risk. On the reassessment date, November 8, 2021, the plaintiff had been in the community with no other criminal sanctions or removal for 6 years and 6 months. Using the Time Free Offense Calculator his current residual

lifetime risk is 2.7%. This means 3 out of 100 individuals would be convicted for a new sexual offense and 97 would not. This score places him in Level I/Very Low Risk classification and should be considered desistance from sexual offending.

39. **Mr. Doe H** is a Tier 1 in the Michigan system and has 15 years of monitoring and reporting. He will not be released from the registry until 2031.

## SEXUAL RECIDIVISM AMONG FEMALES

40. Among the Does III plaintiffs are two women convicted of sexual offenses. "No instruments have been validated to assess risk of sexual recidivism among women." (F. Cortoni, personal communication, gender-informed assessment and treatment approaches with women who sexually offend; online presentation to Michigan chapter of ATSA, August 20, 2021.) The Static-99R is not validated for women. (Marshall, Miller, Cortoni, & Helmus, 2020.) Therefore, these women were not interviewed, and the following information represents what can be reported about females who have committed sexual offenses in general.

41. The base rate of sexual recidivism among women is very low, and given the absence of a recidivism prediction tool, the base rate is the best available metric for assessing risk and informing social and legal policies. There have been at least three primary studies to establish the base rate for sexual recidivism among women. The largest was a meta-analysis of 2,490 women. The authors found a base rate of sexual recidivism of 1.5% at 6.5 years. (Cortoni, Hanson, & Coache, 2010.) There have been two confirmatory studies. Wijkman & Bijleveld (2013) detected a 1.1% sexual recidivism rate among 261 females over a mean follow-up of 13.2 years. The second study (Marshall, et al., 2020) involved 739 women with a mean of 7 years follow-up and a 3.5% sexual recidivism rate. There were 26 recidivists in the second study. (There should be at least 100 recidivists for a finding to be considered statistically stable. The second study was also limited to the state of Texas and the 3.5% recidivism rate is an outlier compared to the larger meta-analytic study and the other confirmatory study.)

42. "Female sexual offenders are different from male sexual offenders [and] a blanket application of male-based knowledge to them is not a viable option."

(Cortoni, personal communication, 2021.) Nonetheless, the base rate for women and the actuarial predicted rates for men provide some comparison. The meta-analytic study (Cortoni, et al., 2010) base rate of 1.5% at 6.5 years for women compares to accepted base rate of 10% and 15% at the five-year interval for men. Freeman and Sandler (2008) compared 390 matched pairs of males and females convicted of sexual offense and found a 1% recidivism rate for women and a 5% rate for men. (Marshall et al., 2020.) In the absence of a predictive tool, for a woman to be considered high risk "the risk factors must be blatant (e.g., she tells you she will do it again)" (Cortoni, personal communication, 2021.)

43. Another perspective is to compare the women's base rates from the three studies to the Static-99R data for male recidivism. The meta-analytic study result (Cortoni, et al. 2010) of 1.5% recidivism at 6.5 years by comparison, would be lower than a Static-99R score of -1 (Level II/ Below Average Risk) for men who have a predicted recidivism rate of 1.6% at 5 years. The Wijkman & Bijleveld (2013) finding of 1.1% at the mean time of 13.2 years would be lower than the lowest classification for men on the Static-99R (score of -3, Level I/Very Low Risk, 1.2% at 10 years). The Marshall, et al. (2020) study base rate of 3.5% at 7 years would fall between a Static-99R score of 1 and 2 (Level III/Average) whereby desistance for men occurs after 8 years offense-free in the community.

44. There are no clear time-free calculations to compare women to men for sexual recidivism. Among women with nonsexual crimes, "decline in offending occurs considerably faster in women compared to men, except for chronic offenders who follow the same pattern as chronic male offenders." (Marshall et al., 2020, p. 17.) Thus, for women who have been living offense-free in the community, the risk of reoffending declines even faster than for men. So, women who are not chronic offenders and have been living offense-free in the community for more than a few years have a very low risk of reoffending.

45. Mary Doe and Mary Roe were released to their communities in 2004 and 2006 (17 and 15 years ago), respectively. Both women had criminal background checks (ICHAT) run on August 5, 2021. There were no new criminal charges or convictions since release from the sexual offenses. This is not consistent with chronic offending. Since the base rate for female sexual recidivism is between 1% and 3% at the time of release, the 15- and 17-years of offense-free time strongly

supports the conclusion that criminal desistance has occurred and the risk for
sexual offense would be extremely low.

## COMPENSATION

I am providing the services of writing this report pro bono less direct expenses that
may be incurred.

Pursuant to 28 U.S.C. § 1746, I state under penalty of perjury that the above
statements are true and correct to the best of my knowledge, information, and
belief.

_____

John Ulrich, Ph.D.
Dated:  December 10, 2021

## REFERENCES:

Cortoni, F., Hanson, R. K., & Coache, M.-È. (2010). The recidivism rates of
    female sexual offenders are low: A meta-analysis. *Sexual Abuse*, *22*(4), 387–
    401. https://doi.org/10.1177/1079063210372142

Freeman, N.J.,& Sandler, J.C. (2008). Female and male sexual offenders: A
    comparison of recidivism patters and risk factors. Journal of Interpersonal
    Violence, 23(10) 1394-1413. https://doi.org/10.1177/0886260508314304

Hanson, R. K., Bourgon, G., McGrath, R., Kroner, D., D'Amora, D. A., Thomas,
    S. S., & Tavarez, L. P. (2017). *A five-level risk and needs system: Maximizing
    assessment results in corrections through the development of a common
    language.* New York: The Council of State Governments Justice Center.

Hanson, R. K., Harris, A. J. R., Helmus, L., & Thornton, D. (2014). High risk sex offenders may not be high risk forever. *Journal of Interpersonal Violence, 29*(15), 2792-2813. doi:10.1177/0886260514526062

Hanson, R. K., Harris, A. J. R., Letourneau, E., Helmus, L. M., & Thornton, D. (2018). Reductions in risk based on time offense-free in the community: Once a sexual offender, not always a sexual offender. *Psychology, Public Policy, and Law, 24(*1), 48–63. doi:10.1037/law0000135

Helmus, M. L., Lee, S.C., Phenix, A., Hanson, R. K., & Thornton, D. (2021). *Static-99R & Static-2002R evaluators' workbook*. Available from www.saarna.org

Kahn RE, Ambroziak, G, Hanson, RK, & Thornton, D. (2017). Release from the sex offender label. *Archives of Sexual Behavior, 46*(4). ), 861-864. doi:10.1007/x10508-017-0972-y

Kelley, S.M., Ambroziak, G., Thornton, D., & Barahal, R. M. (2020), How do professionals assess sexual recidivism risk? An updated survey of practice. *Sexual Abuse: Journal of Research and Treatment, 32*(1), 3-29. https://doi.org10.1177/107906320401600202

Laws, D.R., & Ward, T. (2011). *Desistance from sexual offending: Alternatives to throwing away the keys*. New York: The Guilford Press.

Lee, S. C., & Hanson, R. K. (2021). Updated 5-year and new 10-year sexual recidivism rate norms for Static-99R with routine/complete samples. *Law and Human Behavior, 45*(1), 24-38. doi:10.1037/lhb0000436

Miller, H. A., Cortoni, F., Marshall, E., & Helmus, L. M. (2021). The Static-99R is not valid for women: Predictive validity in 739 females who have sexually offended. *Sexual Abuse*, *33*(6), 631–653. https://doi.org/10.1177%2F1079063220940303

Phenix, A., Fernandez, Y., Harris, A. J. R., Helmus, M., Hanson, R. K., & Thornton, D. (2016). *Static-99R coding rules: Revised – 2016*. Available from http://www.sarna.org

Thornton, D., Hanson, R. K., Kelley, S. M., & Mundt, J. C. (2021). Estimating lifetime and residual risk for individuals who remain sexual offense free in

Declaration and Report of John Ulrich Ph.D.
2021
Page **17** of 17

the community: Practical applications. *Sexual Abuse, 33*(1), 3-33. doi:10.1177/1079063219871573

Thornton, D., Kelley, S.M., & Hanson, R.K. (September 30, 2021) *Looking forward and looking back: Estimating lifetime recidivism and time to desistance*. Presentation at 40th Annual ATSA Research and Treatment Conference (virtual).

Wijkman, M., & Bijleveld, C. (2013, October). Criminal career features of female sex offenders: Preliminary results. Paper presented at the *32th Annual Research and Treatment Conference of the Association for the Treatment of Sexual Abusers*, Chicago, IL, US.

# Attachment 1:

## C.V. of John Ulrich, Ph.D.

**C.V. OF JOHN ULRICH, Ph.D.**
7883 E. Lakeview Hills Rd.
Traverse City, MI 49684-7547
231.947.5646 | julrichphd@att.net

EDUCATION

| | |
|---|---|
| ANDREWS UNIVERSITY, Berrien Springs, MI | |
| **Counseling Psychology, Ph.D.** | **1996** |
| | |
| GOSHEN BIBLICAL SEMINARY, Elkhart, IN | |
| **Master of Divinity** | **1986** |
| | |
| GOSHEN COLLEGE, Goshen, IN | |
| **Bachelor of Arts in Interdisciplinary Studies** | **1981** |

AWARDS

LEOPOLD SCHEPP FOUNDATION SCHOLAR
PHI KAPPA PHI

WORK EXPERIENCE

JOHN ULRICH, Ph.D. Licensed Psychologist, Traverse City, MI
**Owner of independent practice**                                  **October 2004 – Present**
Provide individual, couple, group, and family therapy, psychological
evaluations, and risk assessments and treatment for sexual offending
(adult and juveniles).  and the US Probation and Parole, Western
District of Michigan. Provide forensic reports and testimony in courts
throughout northern Michigan; District Courts 13th, 19th, 33rd, 53rd,
and 57th.

CAL MARITIME, California State University, Training Ship Golden Bear
**Counselor**                                                    **April to May – 2017**
Provide individual and group counseling to students, faculty, and crew while   **May to June – 2015**
at sea.  Guest lecturer on Mental Health and Seafarers                 **June to July – 2014**

WEDGWOOD CHRISTIAN SERVICES, Traverse City, MI
**Clinical psychologist**                               **October 1996 – September 2004**
Individual, couple, group and family therapy, and psychological
evaluations and risk assessments and treatment for sexual offending
(adult and juveniles).  Service contract with Michigan Department of
Corrections.

PRE-DOCTORAL INTERN, Federal Medical Center, Rochester, MN      **October 1995 –**
                                                               **September 1996**

**Rotations**: Diagnosis and Assessment, Mental Health Inpatient
Hospital Residential Drug Treatment Program, Forensic Evaluation,
one day Zumbro Valley Psychological Services, Olmstead County

Community Mental Health Center, weekly Mayo Clinic Psychology
and Psychiatry, Grand Rounds

FAMILY THERAPIST, Family Learning Center, South Bend and Elkhart, IN
**Family Therapist**                                                          **July 1989 – July 1995**
Provided individual, couple, group, and family therapy, provide court
testimony in child abuse and neglect cases, Develop and lead Adult
Male Sex Offender Group, Family assessments for the Juvenile Court
determining services for neglected and abused children in their  Brief-
Solution Focused Employee Assistance Program, Evaluation special-
ist for "Learning to Learn" after-school program, Respond to Critical
Instant Stress Debriefing (CISD)

PRESENTATIONS
*Problematic Sexual Behavior*, Panelist, Northwestern Michigan
College, Human Sexuality.  Each semester class is offered since
2012                                                                                          **April 2021**

MI-ATSA Panelist: *Bridging the Gap: Myths, Facts, and the Shared
Goal of Reducing Sexual Violence*, Lansing MI                      **November 2018**

*Understanding Sexual Offending*, Guest Lecture, Northwestern
Michigan, College, Abnormal Psychology                              **October 2018**

*Child Sexual Behavior: What's Natural and What's Not?*
Sponsored by Child Family Services of Northwest Michigan      **March 2008**

*Childhood Sexual Abuse (CSA): The Who, What, When Where and
How of CSA* Sponsored by Child Family Services of Northwest
Michigan                                                                                  **January 2008**

PUBLICATIONS AND PAPERS
"*A Case Study Comparison of Brief Group Treatment and Brief Individual
Treatment in the Modification of Denial among Child Sexual Abusers*"
*[Doctoral dissertation]*                                                          **August 1996**

MEMBERSHIPS
American Psychological Association *(APA)*
Michigan Psychological Association *(MPA)*
Association for the Treatment of Sexual Abusers (ATSA)
Michigan Chapter of the Association for the Treatment of Sexual Abusers *(MI-ATSA)*
    Board Member, Written Communication Chair

CONTINUING EDUCATION
ATSA – 40th Annual Research and Treatment Conference - *Our New Reality:
    Resilience and Reconnection.*
*Research and Practice Developments in the Assessment and Enhancement*

of Protective Factors: Toward Reducing Risk and Strengthening Community
Safety and Wellbeing, Michiel de Vries Robbe and Mark Olver
Ethical Practice in a Virtual World: Ethics of Telehealth Services Delivery
Jill Stinson, Ph.D. September 29, 2021
Looking Forward and Looking back: Estimating Lifetime Recidivism and Time
To Desistance, David Thornton, Ph.D. Sharon Kelley, Psy.D., and
R. Karl Hanson Ph.D., C.Psych. September 30, 2021
Neurodevelopmentally-Based Practical Assessment and Treatment Methods
for Juveniles Who Sexually Offended, Norbert Ralph, Ph.D. MPH
Using Research to Guide Application of Static-99R, David Thornton Ph.D.
and Maaike Helmus                                                            **Sept - Oct 2021**

MPA and MI-ATSA - Assessment and Treatment of Women Who Sexually
Offend, Franca Cortoni, Ph.D.                                              **August 20, 2021**

APA – Pearson Clinician Assessments; Use of the MMPI-3 in Forensic Settings
Martin Sellborn, Ph.D. Webinar                                             **April 2021**

APA – Pearson Clinician Assessments; MMPI-3 Overview
Martin Sellborn, Ph.D. Webinar                                             **April 2021**

MPA and MI-ATSA – Child Pornography Offender Risk Tool Seminar
Michael Seto Ph.D. Webinar                                                 **February 2021**

MPA and MI-ATSA – Risk of Sexual Offending Against Children (ROSAC)
Robert McGrath Virtual Conference                                         **May 2020**

APA - Yes, We Do That Too: The Many Roles for Pain Psychologists
Beth Darnell Webinar                                                       **February 2020**

The Evolution of Practice in the Treatment of Youth Who Engage in Sexually
Harmful Behavior, Phil Rich, Ed.D., LICSW Webinar                          **February 2020**

ATSA – 38th Annual Research and Treatment Conference – Shaping the Future
Optimizing Management of Hypersexuality and Sexual Preoccupation by the
Combined Use of Medications and Behavioral Techniques
Angeline Stanislaus, MD & Elizabeth Griffin, MA
Sibling Sexual Abuse:  Joining Together for Hope & Healing
Jacqueline Page, Psy.D & Kim Byars, LCSW
Helping Parents Shape Their Family's Future When a Youth Has Offended
Janice Church, Ph.D. & Karen Worley, Ph.D.
They Need Somebody and Not Just Anybody:  Help-Seeking Behavior in Minor-
Attracted Persons and Their Informal Network, Wineke Smid, Ph.D.,
Kasia Uzieblo, Ph.D., & Minne DeBoeck, M.Crim
Assessment-Based Treatment Using the MIDSA
Raymond Knight, Ph.D., Laurie Guidry, Psy.D., & Judith Sims-Knight, Ph.D.

*Pre-Adjudicatory Assessment:  Do or Do Not...*
    Mandi Fowler, Ph.D., LICSW, PIP & Jill Beck, JD
*Assessment & Family Skills Training:  How to Keep Families Together in the*
    *Wake of Sexual Abuse,* April Roche, LICSW, Ashley Kellogg, LICSW, &
    Christopher Smith, MBA
*Going Upstream:  The Fundamentals, Evolution, Context, and Practice of*
    *Primary Prevention*, Linda Dahlberg, Ph.D.
Atlanta, Georgia                                                                  **November 2019**


MiATSA – *Sexual Development Birth Through Puberty: What is Normative?*
    *Sexualized Behavior Problems in Prepubescent Children – When is Clinical*
    *Intervention Necessary*? Geraldine Crisci, MSW.  DeWitt, MI              **October 2019**


*MPA – Ethics: Working with Couples and Families, Risk Management with*
    *the Suicidal Patient, and Legal and Ethical Issues presented by Retirement*
    Christopher Sterling, Psy.D. & Amanda Zelechoski, Ph.D., Livonia, MI    **February 2019**


ATSA – 37th Annual Research and Treatment Conference – *Better Together*
    *Being Evidence Based,* Ruth E. Mann, PhD
    *How Much Intervention is Enough*? R. Karl Hansen, PhD, CPsych, Robert J.
        McGrath, MA
    *A Myriad of Forces: The Impact of Sexual Arousal and Other Emotions on*
        *Sexual Behavior and Decision-Making,* Erick Janssen, PhD
    *Assessing Treatment Needs and Progress When Youth Have Sexually Abused*
        Sue Righthand, PhD
    *The Young and The Restless: Assessment and Intervention Strategies for Persistent,*
        *Sexually Violent Youth and Young Adults,* Daniel Rothman, PhD,
        Lawrence Ellerby, PhD, CPsych
    *Estimating Real Lifetime Rates of Sexual Recidivism: Reaching Beyond the Known;*
        *Evaluators' Struggles with Extrapolation*, David Thornton, PhD
    *Using Survival Analysis to Estimate Lifetime and Residual Risk,*
        R. Karl Hanson, PhD, CPsych
    *The Undetected*, Sharon Kelley, PsyD
    *Pathways to Youth Sexual Violence:  Abuse, Attachment, and Dysregulation:*
        *Relationship Matters: Attachment and Learning in Theory, Research, and*
        *Practice*, Ariel Berman, MA
    *Childhood Maltreatment Experiences, Attachment, Sexual Offending: Testing*
        *a Model*, Melissa D. Grady, PhD, LICSW, Jamie R. Yoder, PhD, MSW,
        Adam Brown, PhD, LCSW
    *Attachment Styles, Dysregulation, Criminogenic Needs, and Successive Sexual*
        *Offending,* Jamie R. Yoder, PhD, MSW
    *Deepening Our Understanding of Dynamic Risk:  Theory and Practice. "Towards*
        *an Integrated Theory of Dynamic Risk, Protective Factors, and Agency*,
        Roxanne Hefferman, MSc FPSY, PhD Cand., Tony Ward, PhD, Dip Clin Psych
    *Incorporating Dynamic Risk Factors into Case Formulations: The Risk-Casualty*
        *Method,*Tony Ward, PhD, Dip Clin Psych

*Processes and Practices: Understanding the Client*, Gwenda M. Willis, PhD, PG Dip Clin Psych,
   David S. Prescott, LICSW
*How Should We Communicate Offender Risk to Laypeople? "Same Score, Different*
   *Message? A Replication/Extension of Varela et al. (2014)*, L. Maaike Helmus, PhD,
   N. Zoe Hilton, PhD, CPsych, Daniel Murrie, PhD
*How Do Adversarial Allegiance, Race, and Treatment Influence Risk Communication?*
   Daniel Murrie, PhD, L. Maaike Helmus, PhD, N. Zoe Hilton, PhD, CPsych
*Does Using Graphs Help in Certain Types of Risk Communication?* N. Zoe Hilton, PhD,
   L. Maaike Helmus, PhD, Daniel Murrie, PhD
*Teaching Good Sex:  A Method for Violence Prevention,* Megan Foster, BA, JPR, PPPM
*Typologies of Adolescents: Updating Typology Research of Adolescents Who*
   *Have Engaged in Sexually Abusive Behavior*, Tom Leversee, MSW, LCSW
*An Empirically Derived Typology of Adolescents Accused of Sexual Misconduct*,
   Michael F. Caldwell, PsyD, KiDeuk Kim, PhD, Emily Tiry, MA
Vancouver, British Columbia, Canada                                    **October 2018**

*2016 Static-99R Booster Training*, L. Maaike Helmus,
   Independent Study Program Online                                     **March 2017**

APA – *Understanding People with Substance Use Disorders and Addictions*,
   Greg Neimeyer, PhD Online Training
*Evidence-Based Clinical Practice Guidelines for the Management of Substance*
      *Use Disorders*, Greg Neimeyer, PhD Online Training                **March 2017**

APA – *Overview of Substance Use Disorders and Addictions, Greg Neimeyer, PhD*
   *Screening, Brief Intervention, and Referral for Treatment (SBIRT) for Substance*
   *Use Disorders and Addictions*, Greg Neimeyer, PhD Online Training    **February 2017**

MiATSA – *Trauma-Informed Practice in Correctional and Forensic Setting*
   *Dr. Jill Levenson* DeWitt, MI                                        **November 2016**

Center for Sex Offender Management (CSOM)- *Collaboration Between*
   *Sexual Assault Victim Advocates and Sex Offender Management Practitioners:*
   *Promising Examples from the Field*                                   **July 2016**

ATSA – 34th Annual Research and Treatment Conference
   *Healthy Sexuality and Sex Offender Treatment*, Michael H. Miner, PhD
   *Internet-based Child Sexual Exploitation: Case Formulation and Intervention Planning*,
      Hannah L. Merdian, PhD & Derek Perkins, PhD
   *Plenary: From Sweeping Controversies Towards a Differentiated View on the Effects of*
   *Sexual Offender Treatment*, Friedrich Lösel, Dr. Phil., Dr. SC. H.C.
   *How to Use the Sex Offender Treatment Intervention and Progress Scale (SOTIPS),*
      Robert J. McGrath, MA, Georgia F. Cummings, BS, Michael P. Lasher, MA
   *Neurocognitive Factors and Sexual Offending*, Kerensa Hocken, PhD,
      Christine Norman, PhD, Rebecca Lievesley, MSc, Carrie C. LeMay, MS,
      Jill D. Stinson, PhD

*How Can Juvenile Sexual Risk Assessment be Best Used to Guide Treatment and*
   *Rehabilitation?* Phil Rich, EdD
*Plenary: Development and Prevention of Physical Aggression: The Long-Term Gene-*
   *Environment Perspective*, Richard E. Tremblay, PhD
*Emerging Practices in Assessing the Risk of Sexual Recidivism*, KiDeuk, PhD,
   Grant Duwe, PhD, Elizabeth J. Letourneau, PhD, Michael F. Caldwell, PsyD
*Through a Public Health Lens: Community Based Prevention for ID Offenders*,
   Jordan Hoath, BA, MA,
*Sexual Offenders with Intellectual Disabilities*, Michael Dixon, PhD, Jerry Rea, PhD,
   Luke Lynn, BSc, Katie Miller, DSW, Jordan Hoath, BA, MA, Candidate
*Plenary: What Turns Us On? Insights from Research on Gendered Sexual Response*,
   Meredith, Chivers, PhD
*Plenary: Sexual Assault Perpetrators: What Psychosocial Factors Increase Men's Likelihood*
   *of Being Sexually Aggressive?* Antonia Abbey, PhD
   Montreal, Quebec, Canada                                                    **October 2015**

MPA – The Role of Psychological Trauma in Physical and Mental Health Problems,
   Colin A. Ross, MD & Debra Smith, PsyD Northern Lakes CMH.  Traverse City MI **May 2015**

APA – Approaches to Ethics in Psychology Booster Learning Series,
   *Greg Neimeyer, PhD*      Independent Study Program Online                    **December
2014**

APA – *Approaches to Ethics in Psychology*
   *Emerging 'Neuroethics,' Ethical Institutions and Ethical Instincts: The Challenge*
      *and Promise of Ethical Reasoning in Professional Practices*,
      Robert Kinscherff, PhD Esq.
   *Assessing Against the Tide: Ethical and Forensic Challenges in Risk Assessment*
      *of Problematic Sexual Behaviors or Adjudicated Sex Offenses Among Youth.*
      Robert Kinscherff, PhD Esq.
   *A Primer on Distinguishing Clinical and Forensic Roles and Applying Ethical*
      *Principles in Forensic Psychology Practice,* Robert Kinscherff, PhD Esq. Online   **November
2014**

ATSA – 33rd Annual Research and Treatment Conference
   *Motivational and Therapeutic Engagement with Sexual Offenders, David S. Prescott, L.I.C.S.W.*
   *What If We Treated Violence Like a Disease?* Gary Slutkin, M.D.
   *A Billion Wicked Thoughts: What the Internet Reveals about Sexual Desire*, Ogi Ogas, Ph.D.,
      Sai Gaddam, Ph.D.
   *Paradigms, Paroxysms, and Progress: Professional Patience and Responsibility,*
      Robert Kinscherff, Ph.D., J.D.
   *Challenging the Status Quo: An Incentive Theory of Sexual Motivation as a Framework for*
      *the Description of Sexual Offending Behavior*, Wineke J. Smid, M.Sc.,
      Jan Willen Van den Berg, M.Sc.
   *A New Frontier in the Treatment of Sexual Offenders*, Tani Burton, M.S.W.
   *How Can We Explain Incest Offending? Comparing Intrafamilial and Extrafamilial*

  *Offenders on Sexual Deviance: A Meta-Analysis*, Ian V. McPhail, M.A.
 *Comparing Intrafamilial and Extrafamilial Offenders on Antisociality: A Meta-Analysis*,
  Lesleigh E. Pullman, Ph.D. Candidate
 *What Else Distinguishes Intrafamilial and Extrafamilial Offenders Against Children?*"
  Michael C. Seto, Ph.D.
 *An Empirically Informed Conceptual Model of Risk: Reconceptualizing Dynamic Risk Factors*,
  Deidre D'Orazio, Ph.D., David Thornton, Ph.D.
 *Long-term Vulnerabilities, Human Agency, and The Accumulation of Prosocial and Antisocial
 Capital*, David Thornton, Ph.D., Deidre D'Orazio, Ph.D.
 *Accounting for Change in Models of Risk*, Deidre D'Orazio, Ph.D., David Thornton, Ph.D.
 *The Psychological Constructs Assessed by Static Risk Factors*:
  *Incremental Validity of Risk Tools: How Construct Validity Can Help*,
   Robert Lehmann, Ph.D. Candidate
  *Are there Psychological Constructs in the Static-99R and Static-200R?*
   Sébastien Brouilette-Allaire, Ph.D. Candidate
  *The Construct Validity of the General Criminality Subscale of the Static-2002R*?
   Kelly M. Babchishin, M.A.
 Chicago, IL                **Oct – Nov 2013**

MPA: *Intellectual Disability: Diagnosis, Clinical Features and Treatment Approaches* **June 2013**

MiATSA: *Internet Child Pornography Offenders: Best Practices for Assessment
 and Testimony Based on the Empirical Literature, Eric Imhof, Psy.D.*   **May 2013**

Justice Institute of British Columbia (JIBC) – *STABLE-2007/ACUTE-2007: Sex
 Offender Needs Assessment*, (online course).     **Nov – Dec 2012**

MPA: *What a Practicing Psychologist Should Know About the Licensing Board*,
 Judith Kovach, Ph.D.  Okemos, MI        **June 2011**

*Assessments, Structured Sex Offender Treatment Review and Community
Education*, Chris Lobanov-Rostovsky, Greg Brown   Peshawbestown, MI   **April 2011**

MiATSA –
 *Static-99/R Training*, Karl Hanson, Ph.D.
 *How Do We Measure Treatment Progress and Client Reintegration?
 Contemporary Models for Persons Who Sexually Abuse*,
 Robin Wilson, Ph.D., ABPP   Lansing, MI      **April 2011**