# Exhibit 20:

## Giancarlo Guzman Declaration/
## Law Enforcement Survey

**REPORT & DECLARATION OF GIANCARLO GUZMAN
REGARDING THE RESULTS OF A SURVEY OF MICHIGAN LAW
ENFORCEMENT AGENCIES' UNDERSTANDING OF
<u>MICHIGAN'S SEX OFFENDERS REGISTRATION ACT</u>**

I, Giancarlo Guzman, state as follows:

I was born in Detroit, Michigan, in 1977 and received my Bachelor's Degree from the University of Michigan, Ann Arbor in 1999. I received my Master's Degree in Public Administration from University of Michigan, Dearborn in 2014. I have over 20 years of experience working in southeast Michigan in the non-profit sector.

I currently work as the in-house investigator for the legal department at the American Civil Liberties Union of Michigan. I work out of the Detroit office under the supervision of the Legal Department Deputy Director, Bonsitu Kitaba. I began working for the ACLU in April 2015 and have been an investigator with the organization for six years. As an investigator for the ACLU, I gather and verify evidence through interviews and observation of witnesses and potential plaintiffs by reviewing and analyzing records and logs. I also use investigative best practices to collect and maintain various types of records and evidence pertaining to legal cases. In my role as the ACLU investigator, I identify the scope, timing, and direction of investigations.

At the request of ACLU senior staff attorney Miriam Aukerman, I conducted a survey, outlined below, of Michigan law enforcement agencies on the reporting requirements associated with Michigan's current Sex Offenders Registration Act

1

(SORA). The survey updates similar surveys that were conducted in *Does v. Snyder*, E.D. Mich. File No. 2:12-cv-11194 (*Does I*). Those surveys were admitted by Judge Cleland as part of the Rule 52 trial on the documents, over the defendants' objection. *Id.,* Opinion and Order Denying Defendants' Motion in Limine, ECF 102, PgID 5869 (3/31/15).

## I.  Executive Summary

Over the course of three weeks, from late January to early February 2023, I made phone calls to local law enforcement agencies, including police departments, county sheriffs, township police, and county prosecutors. The purpose of the survey was to assess what information law enforcement agencies provide to people who have questions about SORA reporting requirements, and to determine whether law enforcement agencies interpret SORA's reporting requirement consistently across jurisdictions. The same set of questions was used across agencies, including questions about reporting requirements related to phones, cars, addresses, employment, travel, and internet usage. I contacted a total of 34 different agencies for this survey.

Overall, the questions I posed to Michigan's public safety agencies about the reporting requirements for registrants under SORA 2021 either (1) went unanswered, or (2) provoked a range of inconsistent responses. These two key findings from the survey are set forth in detail below.

DOES III - 00001211

**First, the majority of law enforcement agencies were unwilling or unable to answer the questions asked.** Of the 34 agencies I contacted, only eight were willing to respond to all of my questions. Four agencies answered approximately half of the survey questions, while 22 of the agencies answered zero to three of the survey questions posed, with many insisting I needed to look elsewhere for answers. Specifically, 15 different agencies responded with answers like: "We do not handle that here," or "I don't know the answer to that question." Fourteen agencies gave instructions to contact the Michigan State Police. All of the county prosecutors and all of the sheriff's offices that I contacted declined to answer any questions. While making my calls, I left four voicemails for different agencies, which went unreturned even though I called back multiple times.

The difficulty I had in getting answers to basic questions about the registry suggests that registrants who are trying to get clarification from law enforcement about their obligations will likewise have difficulty obtaining this information.

**Second, law enforcement agencies gave widely different answers to the questions asked.** Among those agencies that did answer questions, there was considerable inconsistency in the content of their answers. Whether agencies gave a full or partial response to a particular question, the answers differed significantly among agencies. There is not a single question in the survey that was answered the same way by all of the agencies that gave answers. Even when one looks only at the

3

agencies that completed the full survey, the answers provided by the different agencies were inconsistent.

Many questions in the survey were designed to have yes or no answers (e.g., whether particular changes in a registrant's circumstances needed to be reported). Nevertheless, I received many "unsure" and "other" responses that did not clearly provide an answer. Questions that required an answer other than yes or no similarly resulted in varying responses, with very few agencies landing on the same answer. Even on questions where most responding agencies seemed to agree on the answer, there were always some agencies that responded with different/conflicting answers.

The widely varying responses to the questions in my survey suggest both that different law enforcement agencies interpret SORA in different ways, and that a significant number of agencies simply do not know what the law requires.

## II. Methodology

Before conducting the survey, I did an inventory of Michigan law enforcement agencies. The inventory included all police departments, county sheriffs' offices, township police departments, and state prosecutors' offices in the state. I did not include in the inventory public safety or enforcement agencies serving colleges and universities, parks and schools, or airports and railroads. From that inventory, I chose a final list of agencies to survey based first on selecting the largest public safety departments in the state (because larger numbers of registrants are likely to

4

report there and these departments are likely to have more officers), and then doing a random selection among the rest. The following chart contains the final list of agencies that I contacted for the survey.

| Michigan Law Enforcement Agencies Surveyed | | |
|---|---|---|
| Battle Creek PD | Leelanau Co. Prosecutor | Roseville PD |
| Dearborn PD | Livingston Co. Sheriff | Saginaw Co. Prosecutor |
| Detroit PD | Marquette Co. Prosecutor | Schoolcraft PD |
| Forsyth Township PD | Mason County Sheriff | Shiawassee Co. Prosecutor |
| Grand Rapids PD | Monroe Co. Prosecutor | Utica PD |
| Holly PD | Muskegon PD | Van Buren Co. Prosecutor |
| Iron River PD | Northville Township PD | Vicksburg PD |
| Jackson Co. Prosecutor | Oakland Co. Prosecutor | Wayne Co. Prosecutor |
| Kalamazoo Co. Prosecutor | Orchard Lake PD | Wayne County Sheriff |
| Kalamazoo PD | Portland PD | Warren PD |
| Kent County Sheriff | Richmond PD | |
| Lansing PD | Romeo PD | |

I made calls using an OnSip[1] number which uses a locally generated phone number and allows for callbacks and voicemail receipt. Upon making the calls, I followed a set script. The script contained an introduction of my purpose for calling—to gather information about certain SORA reporting requirements—and then sets forth the list of survey questions.

The list of questions I used to conduct the survey was the same for each agency contacted. There were 24 questions spanning seven categories, including

---

[1] OnSip uses Voice over Internet Protocol calling, allowing one to make voice calls over the internet rather than over a phone line.

DOES III - 00001214

questions about phones, cars, addresses, employment, travel, internet/email, plus some questions related to general reporting requirements. The complete script is attached to the end of this report. *See* Exh. A, Survey Script Questions.

During and after the calls, I took handwritten notes on paper versions of the survey, reporting the answers and reactions I received in response to the survey questions. After each call I catalogued the responses from the paper surveys into an Excel spreadsheet, which I then used to make this report.

The results detailed in this report are an accurate summary of the responses I received to the survey questions I posed to law enforcement agencies and prosecutors' offices regarding their knowledge about and enforcement of the current version of SORA.

## III. Unwillingness or Inability of Law Enforcement Agencies to Answer Questions

Of the 34 agencies I contacted, four never returned my calls; 22 of the agencies answered only zero to three questions before ending the conversation; four of the departments answered approximately half of the questions; and only eight of the departments answered all the questions. The chart below provides a breakdown for where each agency falls:

[SPACE INTENTIONALLY LEFT BLANK.]

DOES III - 00001215

| Answered No Questions or Up to Three Questions | Answered About Half | Answered All Questions |
|---|---|---|
| Dearborn PD | Holly PD | Battle Creek PD |
| Iron River PD | Portland PD | Detroit PD |
| Jackson Co. Prosecutor | Romeo PD | Forsyth Township PD |
| Kalamazoo Co. Prosecutor | Utica PD | Grand Rapids PD |
| Kent County Sheriff | | Kalamazoo PD |
| Lansing PD | | Northville Township PD |
| Leelanau Co. Prosecutor | | Richmond PD |
| Livingston Co. Sheriff | | Warren PD |
| Marquette Co. Prosecutor | | |
| Mason County Sheriff | | |
| Monroe Co. Prosecutor | | |
| Muskegon PD | | |
| Oakland Co. Prosecutor | | |
| Orchard Lake PD | | |
| Roseville PD | | |
| Saginaw Co. Prosecutor | | |
| Schoolcraft PD | | |
| Shiawassee Co. Prosecutor | | |
| Van Buren Co. Prosecutor | | |
| Vicksburg PD | | |
| Wayne Co. Prosecutor | | |
| Wayne County Sheriff | | |

## A. **Answered No Questions or Up to Three Questions**

Every county sheriff's office contacted over the course of this survey failed to answer any survey questions. A call to the Wayne County Sheriff's office resulted in no answer and, instead, I was provided computer options to leave a voicemail. Despite doing so, I never received a call back. The Kent County Sheriff's office, when asked about SORA reporting requirements, informed me that they do not

DOES III - 00001216

"handle that here" and instead referred me to the Michigan State Police. The Livingston County Sherriff's department stated that, by law, I could neither ask these questions nor could they answer them. Finally, the Mason County Sheriff's office refused to answer questions, and instead referred me to the Explanation of Duties form "as it has all the rules." They eventually told me to contact the MSP or "Lansing."

Similarly, every prosecuting attorney's office I contacted either declined to answer the questions or did not know the answers. I was transferred to someone else in the same agency by six of the county prosecutors' offices; two of the transfers occurred only after first having the calls disconnected, and needing to call back.[2] Five of the offices told me they do not handle the registry or registry questions, and four reported that there was no one on site that could help me with the questions. At least three of the offices indicated they did not know the answers to the questions on the call.[3] Four of the offices referred me to the MSP but two could not provide the number for that office. Out of the ten prosecuting attorneys' offices, I was referred to five different entities: the sheriff's department, the local department of public safety, a registrant's own attorney, wherever registrants go to register, and free legal aid. I was only able to ask one substantive question among all ten prosecuting attorney's offices, and the answer to that question was "I don't know."

---

[2] Wayne Co., Oakland Co., Jackson Co., and Saginaw Co. Prosecutors' Offices
[3] Leelanau Co., Marquette Co., and Shiawassee Co. Prosecutors' Offices.

DOES III - 00001217

Eight of the police departments fell into this same category. Three of the departments failed to return my voicemails. One department specifically requested I call back twice; when I did, my calls went unanswered, and my voicemails were never returned. Four of the eight police departments transferred me either to someone else in their office or the court when I informed them that I had SORA questions. The Lansing and Schoolcraft PDs transferred me twice, and the Dearborn PD transferred me to a court before the line was disconnected. The Lansing PD said, "We are nothing but glorified secretaries for MSP," after saying they did not know the answers to my questions. Three agencies referred me to the State or to the MSP. All of the police departments in this category stated either they "do not handle that" at their station or they "do not know" the answers to the questions I asked.

### B. <u>Approximately Half the Survey Questions Answered</u>

Only four of the agencies surveyed fell into this category, including the Romeo, Portland, Utica, and Holly Police Departments. The Romeo PD fully answered four questions I posed but responded "I don't know" or referred me to the courts for nine of the questions before ending the call. Of the ten questions the Portland PD allowed me to ask, they answered five and did not know the answers to five. The Utica PD answered three of the five questions they allowed me to ask. The Holly PD let me ask seven questions, answered two, refused to answer two, and did not know the answer to three more.

DOES III - 00001218

Beyond the questions they were willing to answer, these four police departments refused to provide answers to the rest of the survey questions. I was instead told that they could not answer the questions without having more specific information about a registrant. Other times I was referred to another agency, including the courts and the MSP, and told to reach out to an attorney. For all but one of the departments (Utica), I was transferred to someone else to answer to the questions. The Holly PD told me it was noble that I wanted to get these questions answered but I would have to come in for any responses and they could not assist me further due to concerns of potential identity theft.

For many of the survey questions, I was explicitly referred to the courts. Many of the officers I spoke with told me they "don't do that"—answer questions about SORA requirements—at their department; others told me they lacked expertise on the subject and could not answer the survey questions. Several times I was told to just look at the SOR registration paper (the Explanation of Duties form) for answers to my questions.

## C. <u>All of the Survey Questions Answered</u>

Of the 34 agencies surveyed, only eight completed the survey and engaged with every question. This includes six police departments[4] and both of the township police departments surveyed (Forsyth and Northville). With the exception of the

---

[4] Grand Rapids, Kalamazoo, Warren, Detroit, Richmond, and Battle Creek PDs.

DOES III - 00001219

Grand Rapids and Battle Creek PDs, I was transferred several times within each agency before I was connected with the person who engaged with the questions. I was transferred to the Special Victims Unit by the Warren PD. The Detroit PD insisted I come into the precinct to get answers to my questions before transferring me to their records unit. Forsyth Township PD transferred me to the jail after telling me they did not have access to the registry. Half of the departments in this category referred me the MSP, the "Michigan sex offender line" or the "Michigan sex offender hotline."

As the data demonstrates, most of the 32 law enforcement agencies that I surveyed for this report refused to answer the questions, could not answer the questions, or referred me to an entirely different entity. These results suggest that registrants who are looking to law enforcement for guidance about what specifically the SOR law requires are unlikely to get this information from law enforcement agencies responsible for enforcing the statute.

## IV.  Variations in Responses to Questions

While many of the agencies did not answer questions, among the agencies that did respond, there was great variation. In conducting the survey, I asked the same questions to each agency (assuming that they allowed me to ask questions). In response to those questions—whether about reporting temporary phones, cars, travel plans, etc.—some agencies answered that such information was reportable, others

said it was not, many could not answer, and many suggested I contact another entity. The chart below contains a composite of the survey responses that could be sufficiently answered with a yes or no, and summarizes the different answers received to these types of survey questions.

[SPACE INTENTIONALLY LEFT BLANK]

DOES III - 00001221

## COMPOSITE OF LAW ENFORCEMENT RESPONSES TO SURVEY
## QUESTIONS REQUIRING ONLY YES OR NO ANSWER

| QUESTION | Y | N | NOT SURE | NO ANSWER | OTHER |
|---|---|---|---|---|---|
| 1. If the phone is dead and he has to use a friend's cell to make a call, does he have to report this? | 4 | 5 | 1 | 19 | • Only if use for over two days.<br>• Only if more than one call.<br>• Call MI sex offender hotline for answers.<br>• Yes, if long term but did not explain what this meant after inquiring.<br>• Depends on parole conditions; told to ask probation officer. |
| 2. If he starts using a texting app like Google voice does he have to report every time it gives a new number? | 3 | 1 | 3 | 21 | • Must update when report in person if this is contact information.<br>• Must report regularly used numbers; no answer for what "regularly" means.<br>• Yes, but depends on 2011 internet reporting act and date added to registry.<br>• Ask the court he went through.<br>• Yes, but unsure for how long.<br>• Look at paperwork. |
| 3. If he makes a business call one time from a land line at work that isn't assigned to him, does he have to report that? | 2 | 6 | 2 | 22 | • Need to know a registrant's tier number.<br>• If he has a job, he has to report whatever number he is regularly at or uses. |
| 4. Does he have to report if he uses a short-term rental | 2 | 2 | 1 | 25 | • No unless it violates their paperwork.<br>• If regular, yes; if one time airport use, then no; if a couple of days, probably. |

13

| QUESTION | Y | N | NOT SURE | NO ANSWER | OTHER |
|---|---|---|---|---|---|
| car, like Zip car rented for a 15-minute errand? | | | | | • If used regularly but could not define what that meant.<br>• Everything should be outlined in paperwork. |
| 5. What if he borrows a friend's car? | 3 | 2 | 1 | 21 | • Court would have to clarify.<br>• If long term yes; told to ask the MSOR on what long term meant.<br>• If just a few days or a week, no. If for six months, yes.<br>• Depends on how long registrant has it; person on registry would need to call themselves.<br>• Yes, if used regularly.<br>• Only if driving regularly (regularly defined as more than 3 days in a row).<br>• No, if only 1-2 days and registrant stays local. |
| 6. If he uses a fleet car from work does he have to report that? | 4 | 4 | 1 | 23 | • Only if registrant leaves the state.<br>• No, unless it is a take-home vehicle for more than a week. |
| 7. If he couch surfs for a while and stays with different people, say four days at a time before moving on, does he report each address? | 1 | 2 | 0 | 25 | • Registrant likely needs to register as homeless (response of 2 agencies).<br>• Yes, if sleeping there regularly.<br>• Yes, if sleeping there more than half the time.<br>• Call the MI sex offender registry. |
| 8. If his worksite changes from day-to-day, does he have to report every new site? | 0 | 5 | 1 | 24 | • If more than a week at each site, then report.<br>• If temporary number, then no.<br>• Ask the court.<br>• Not necessarily as reporting is for long-term work; still should document every change in case asked. |

DOES III - 00001223

| QUESTION | Y | N | NOT SURE | NO ANSWER | OTHER |
|---|---|---|---|---|---|
| 9. If he is temporarily laid off for a few weeks, does he have to report the layoff? | 5 | 2 | 2 | 25 | • N/A |
| 10. If he does odd jobs, like walking dogs or shoveling snow, does have to report that? | 2 | 2 | 0 | 26 | • No, but depends on restriction such as if site is close to a school.<br>• Yes, if pay taxes on earnings.<br>• Only if registered as an LLC.<br>• Yes, if more than $600. |
| 11. What about volunteer work, like helping at a homeless shelter on the weekends, does he have to report that? | 6 | 2 | 0 | 26 | • N/A |
| 12. If he travels out of state for a week without firm plans, does he have to report every hotel where he winds up staying? | 2 | 2 | 0 | 26 | • Yes but only if staying for more than three nights (response of 2 agencies).<br>• Yes, if more than seven days, no if not.<br>• Must report first hotel and anywhere you stay for more than seven days. |
| 13. If he wants to spend the week in Canada, does he have to report differently because he is going out of the country? | 2 | 1 | 2 | 25 | • He has two days to report.<br>• Only if less than seven days.<br>• Anything more than seven days must be reported.<br>• Only difference is for pick up and drop off. |
| 14. Does he have to report if he sets up an online bank | 1 | 7 | 2 | 24 | • N/A |

15

DOES III - 00001224

| QUESTION | Y | N | NOT SURE | NO ANSWER | OTHER |
|---|---|---|---|---|---|
| account? A news service account like the Detroit Free Press? An Amazon account? | | | | | |
| 15. Does he have to report temporary identifiers, like if he joins a Zoom meeting? | 1 | 4 | 3 | 25 | • Reiterated registrant must report email logins, snapchat and Facebook. |
| 16. If he is in charge of operating a shared social media page at work, like an employer's Instagram account, does he have to report the identifier? | 4 | 1 | 2 | 26 | • Told I was asking questions they never had to deal with before. Answered if registrant has sole access, then maybe; if multiple users then no. |
| 17. If he takes a class at a local community center, like a taekwondo class, does he have to report it? | 4 | 3 | 1 | 25 | • Take it up with the court; do not deal with that here. |
| 18. If he enrolls in an online academic class, do he have to report this? | 2 | 3 | 1 | 27 | • No, as long as not in-person. |
| 19. Does is matter if [the online class] is in-state or out-of-state? | 2 | 1 | 1 | 29 | • Ask MSP. |
| 20. Can he mail, call, email, or does he have to come in-person to report changes to information? | 6 | 3 | 0 | 25 | • N/A |

16

DOES III - 00001225

What the data shows is that among those agencies that responded to the questions posed (and the majority of the agencies did not respond, *see* Section III), there was significant variation on whether a registrant is meant to report specific information. For the agencies that could not provide a simple yes or no response, there was variation in their reasoning. Many agencies said that the answers to my questions would depend on time frames—e.g., how long a registrant is away from home. When I asked about what the specific time frames were, I was almost never given an answer; when I was, the time frames provided were almost always different, as reflected in the above chart. Other offices said that their responses depended on a person's registry status or parole conditions.

Questions that required an answer other than yes or no also resulted in very different responses. While there was no expectation that the agencies respond in the same way verbatim, the answers I received to these survey questions differed both substantively as well as significantly across the various agencies. The chart below summarizes the responses received to such survey questions.

17

DOES III - 00001226

## COMPOSITE OF LAW ENFORCEMENT REPONSES TO SURVEY
## QUESTIONS REQUIRING ANSWER OTHER THAN YES OR NO

| QUESTION | NOT SURE | NO ANSWER | RESPONSES |
|---|---|---|---|
| 1. What address should he report if he spends some nights at his partner's house? | 1 | 24 | • Partner's address.<br>• Regular address.<br>• Partner's address if more than three nights.<br>• Partner's address if over seven days (response of 2 agencies).<br>• Partner's address if getting mail there.<br>• Check court paperwork (don't deal with this).<br>• Tell him to come to the office.<br>• He needs to reach out to the court. |
| 2. How many nights can he spend there before he has to report it? | 0 | 27 | • Seven days (response of 2 agencies).<br>• Two days.<br>• 2-3 nights.<br>• Three days.<br>• More than seven days.<br>• If majority of the week (4 out of 7 days). |
| 3. When and how must he report [travel related things]? | 0 | 26 | • In person (response of 4 agencies).<br>• Address change must be done in person.<br>• Call in.<br>• Mail in a form.<br>• Ask MSP. |
| 4. How much time does he have to report information? | 0 | 27 | • Two days.<br>• Three business days (response of 5 agencies)<br>• Ideally as soon as possible but at least at register check-in. |

DOES III - 00001227

This data reflects that even when law enforcement agencies are responsive to questions about SORA and reporting requirements, they interpret SORA's requirements differently from one another and provide widely varying responses about what an individual's responsibilities are. The variation in responses suggests that SORA requirements are either inconsistently enforced or that law enforcement agencies are—much like registrants—not very clear on what SORA 2021 requires.

## Conclusion

Overall, the survey shows that it is difficult to get answers from law enforcement about what registrants' obligations are under SORA. Most agencies did not answer my questions, or I was referred to other agencies with minimal assistance on how to connect with them. When my questions were answered, I received a wide variety of responses. The survey shows considerable inconsistency in how Michigan law enforcement agencies interpret the reporting requirements under SORA 2021.

Pursuant to 28 U.S.C. § 1746, I state under penalty of perjury under the laws of the United States that the above statements are true and correct to the best of my knowledge, information and belief.

Giancarlo Guzman

Dated: March 20, 2023

DOES III - 00001228

## EXHIBIT A

## <u>SCRIPT & LIST OF QUESTIONS FOR LAW ENFORCEMENT SURVEY</u>

Hi, I'm helping out someone on the sex offender registry. They are unsure about what they need to report under the law. I told them I would help find out what rules people are supposed to follow. Can you or someone there help me get some information?

**Phone**:

- If someone's phone is dead and he uses a friend's cell to make a call, does he have to report this?
- If he starts using a texting app, like Google Voice, does he have to report every time it gives him a new number?
- If he makes a business call one time from a land line at work that isn't assigned to him, does he have to report that?

**Cars**:

- Does he have to report if he uses a short-term rental car, like a Zip car rented for a 15-minute errand?
- What about if he borrows a friend's car?
- If he uses a fleet car from work, does he have to report that?

**Address**:

- What address should he report if he spends some nights at his partner's house?
- How many nights can he spend there before he has to report it?
- If he ends up having to couch surf for a while and stays with different people, say four days at time before moving on, does he have to register each of those addresses?

20

DOES III - 00001229

**Employment**:

- If his worksite changes from day-to-day, does he have to report every new site?
- If he is temporarily laid off for a few weeks, does he have to report the layoff?
- If he does odd jobs, like walking dogs or shoveling snow, does have to report that?
- What about volunteer work, like helping at a homeless shelter on the weekends; does he have to report that?

**Travel**:

- If he travels out-of-state for a week without firm plans, does he have to report every hotel where he winds up staying?
- If he wants to spend the week in Canada, does he have to report differently because he is going out of the country?
- When and how must he report these things?

**Internet & Email**:

- Does he have to report if he sets up an online bank account? A news service account like the Detroit Free Press? An Amazon account?
- Does he have to report temporary identifiers, like if he joins a Zoom meeting?
- If he is in charge of operating a shared social media page at work, like an employer's Instagram account, does he have to report the identifier?

**Other**:

- If he takes a class at a local community center, like a taekwondo class, does he have to report it?
- If he enrolls in an online academic class, do he have to report that?
- Does it matter if it's in-state or out-of-state?
- How much time does he have to report information?
- Can he mail, call, email, or does he have to come in-person to report changes to information?

DOES III - 00001230