# Exhibit 22:

# Honorable William C. Buhl Declaration

## DECLARATION OF WILLIAM C. BUHL

1. I, William C. Buhl, am a former Prosecuting Attorney, having served as the Prosecutor for Van Buren County for six years. I served as a District Court Judge for fourteen years, and as a Circuit Court Judge for twenty-two years. For the last twelve years I have engaged in criminal defense work.

2. I am very familiar with the legislative process in Lansing.

3. I have worked for reform in the criminal justice system over the last two decades. On eight different occasions I furnished testimony to legislative committees in the House and Senate with half that testimony dealing with Michigan's Sex Offender Registry. I have had many Lansing visits with legislators urging their support or sponsorship of bills reforming our Registry. In 2006 the Coalition for a Useful Registry was formed with the specific purpose of working constructively and collaboratively with the legislature to make the Registry a more meaningful and useful tool to protect society. A Professional Advisory Board was formed, consisting of professionals from many different disciplines, including prosecutors, defense attorneys, therapists, Department of Corrections employees, former legislators, judges, court administrators, and registrants. As Chairman of the Professional Advisory Board to the Coalition I assisted in sponsoring educational seminars for legislators.

1

4. Many legislators recognize that Michigan's sex offender registry is a failed law, imposing very lengthy or lifetime registration terms on tens of thousands of people, without any individual review or path off the registry. They know that the law is expensive and is of dubious public utility.

5. Despite this, legislative reform to address the problems with the registry is unlikely or even impossible. This is true for several reasons.

6. First, there is no group that is more hated than "sex offenders." Almost all legislators, like the public they represent, have a hatred towards people who have committed sex offenses. Condemnation of the offense itself is unsurprising. But what distinguishes legislative attitudes towards sexual offending from attitudes towards other offenses is the assumption that people who commit such offenses are irredeemable and forever dangerous.

7. Precisely because people on the registry are so demonized, legislators are afraid to take any steps to reform the registry. But the registry itself then has the effect of even further demonizing this group – putting the state's imprimatur on the notion that all such offenders remain dangerous for decades or forever.

8. My experience with legislators and legislation demonstrates this fear of supporting or voting for reform, while agreeing about the need. "What will be the blowback," one legislator asked me. One function of the Professional Advisory Board has been to convince some bill sponsors to withdraw their bills by pointing

DOES III -00001082

out the lack of efficacy and the damage it would cause, like adding day cares and bus stops to the school safety zone. It seems like an annual event to have a legislator attempt to introduce legislation requiring rounding up all sex offenders on Halloween for the evening, until trick or treat is over. While I have occasionally seen legislators withdraw such ill-informed bills, once a law restricting people with sex offenses has passed, it is virtually impossible to get it repealed.

9. Second, the registry law is popular. Politicians care about getting (re)elected. "Getting tough on sex offenders" is politically popular. Legislators find it convenient to talk about how they are protecting children and communities. Indeed, legislators sometimes seem to be falling over one another to see who can come up with the harshest laws against people with past sex offenses.

10. Over the years I have seen bill after bill introduced or passed to increase the restrictions imposed on people on the registry, and to cover a wider array of sexual crimes. As a result, Michigan's Sex Offenders Registration Act (SORA) has gotten harsher and harsher.

11. Conversely, supporting any kind of legislation that could be seen as lessening the restrictions of people with sex offenses, or reducing their punishment, is considered by most legislators to be political suicide. Sadly, as more progressive, evidence-based practices find their way into the system, the changes in sex offender laws go the opposite direction. It is now recognized that probation is being overused and lasts

DOES III -00001083

for unnecessary long periods. That applies to parole as well. But at the same time sex offenders get denied parole solely based on the fact that they are sex offenders. Probation terms went from a five year limit to a five year minimum for most sex offenders convicted of felonies, in 2005. Lifetime parole was added for some in 2006. We recognized the draconian nature of severe mandatory sentences for drug crimes, including lifetime probation, and repealed those laws. But for some sex offenses the 2006 legislation added a twenty-five year minimum, and lifetime electronic monitoring. While liberalizing the set-aside laws allowing broader relief, the same bill maintained the restrictions on sex offenders and added more. During these years the legislature added more and more restrictions, creating the school safety zone, lengthening registration periods, shortening report times for reporting changes, adding reporting detail and adding a fee. All of this rests with the erroneous belief that all sex offenders "will do it again" and are untreatable.

12. Even legislators who believe that SORA reform is necessary do not want to take any action or vote for reform legislation because they fear the attack ads against them in the next election. I watched this happen in Kalamazoo County when the senatorial candidate was defeated primarily over his negative vote on making the Sex Offender Registry public, because he correctly believed it was "badly flawed." I watched a Court of Appeals Judge, running for the Supreme Court, get battered

4

DOES III -00001084

repeatedly in statewide ads accusing him of "taking the side" of a convicted sex offender because he voted against affirming his conviction.

13. In fact, a common sentiment among legislators is that they hope the courts will fix the problems with the registry for them. They recognize that the current system is ineffective, but don't want to take the political flak for doing anything about it.

14. Third, when it comes to the registry, in my experience legislators don't care about the facts or the science. Despite the emphasis in Lansing (as well as nationally) on evidence-based criminal justice reform, when it comes to people with past sex offenses, evidence and research are simply ignored. SORA legislation is driven not by the facts, but by myths about such offenders, which politicians use to get elected or re-elected. Nothing is a safer bet than demonizing "sex offenders."

15. Fourth, "sex offender exceptionalism" is widespread in Lansing. Virtually any criminal justice reform bill has carve-outs for people with sex offenses. It is common knowledge that if you want to pass criminal justice reform legislation, you must exclude people with sex offenses from any ameliorative provisions.

16. Finally, because people with sex offenses are such a demonized group, and because they are dispersed and lack any political clout, legislators simply do not care about them. Over the last decade, registrants and their family members have come

DOES III -00001085

to Lansing to try to educate legislators about SORA and to plead for reform. But legislators can't afford to listen about reform, let alone to act on it.

17. The most recent legislative changes to SORA illustrate the point. Even after the Sixth Circuit decided in 2016 (in the *Does I* case) that SORA was unconstitutional, the legislature did not pass new law for almost five years. It is hard to think of any other example where an appellate federal court gave a definite ruling, the U.S. Supreme Court denied review, and the legislature failed to act.

18. Only after the *Does II* class action was filed and the state was faced with a potential class-wide injunction against SORA enforcement, was there a serious effort to try to come up with evidenced based legislation. A work group was formed that included legislative staff, and stakeholders from the Michigan State Police, the Prosecuting Attorneys Association of Michigan, the Michigan Department of Corrections, the Attorney General's Office, the Governor's Office, the American Civil Liberties Union of Michigan, and victims' rights groups.

19. The work group made substantial progress on developing a bill that would have allowed for individualized review, shorter registration terms, and paths off the registry for those who do not pose a risk. But even the work group's progress was viewed as a political threat – the mere possibility of reform triggered political opposition to anything that could be seen as being soft on sex offenders. The state

DOES III -00001086

agencies in the work group were instructed stop participating, and all reform efforts stalled.

20. Instead, legislators introduced a bill that left old SORA almost entirely intact. The bill did remove the school geographic exclusion zones that the courts had held to be unconstitutional, but made only a few other minor changes.

21. Dozens of registrants testified against the bill, and experts presented the undisputed modern social science evidence that sexual offenders recidivate at far *lower* rates than other offenders, that 90-95 percent of new reported sexual offenses are committed by people with no criminal sexual record, and that modern SORA laws either have no effect or actually make the public less safe. The legislature nevertheless pushed the law through at the very end of the 2020 lame duck session, and the Governor signed it into law.

22. The failure of the work group exemplifies that even when stakeholders can agree on commonsense reforms around the registry, it is not possible to get those reforms through the legislative process.

23. In sum, based on my experience working in the legislature, I do not believe that the legislative process is effective when it comes to the sex offender registry. The toxicity of the issue combined with legislative indifference to the experiences of people on the sex offender registry, and the total disregard for decades of consistent social science research on sexual offenders and the effects of SOR laws, makes

DOES III -00001087

legislative reform to address the problems with the registry almost impossible. As a sentencing judge it was painful to be forced to impose a sentence mandated for a number of years that I would never have imposed had I had discretion to determine what sentence was appropriate. And it always saddened me to know that with a conviction my defendant would have his life destroyed by automatically being assigned to a registry that was unnecessary, and protects nobody.

    I, William C. Buhl, certify under penalty of perjury that the above statement is true and correct pursuant to 28 U.S.C. § 1746.

William C. Buhl P11366

Dated: March 19, 2023

8