# Exhibit 24:

# Mariam Elbakr Declaration

## AMENDED DECLARATION OF MARIAM ELBAKR

1. I am a second-year law student at the University of California, Berkeley. During the summer of 2023, I am interning at the American Civil Liberties Union Fund of Michigan.

2. The litigation team in *Does III* asked me to review and summarize the data contained in two spreadsheets that were produced in discovery.

3. The first spreadsheet I reviewed was titled "FOLLOW UP for Prosecutors, Courts, and LEO x2." It has a creation date of November 20, 2022, with a modification date of April 4, 2023. The data attached to the sheet indicates it was authored and last modified by Sharon Jegla of the Michigan State Police.

4. So that I could understand the spreadsheet, I reviewed portions of the deposition testimony of Narcisa Morris, the former manager of the Michigan State Police Sex Offender Registration (SOR) Unit. Ms. Morris testified that this spreadsheet was used by the SOR Unit to track actions taken in relation to the Michigan Supreme Court in *People v. Lymon*, -- N.W.2d __; 2022 WL 2182165 (Mich. App. 2022); *leave granted* 938 N.W.2d 82 (2023), holding that requiring a person convicted of a non-sexual offense to register as a sex offender is cruel or unusual punishment. *See* Morris Deposition, at 90-92.

5. According to Ms. Morris' testimony, the SOR Unit first identified individuals with Michigan convictions for MCL 750.350 (Child Enticement), MCL

1

750.349 (Kidnapping), and MLC 750.349b (Unlawful Imprisonment). The SOR Unit did not identify individuals subject to registration in Michigan who were convicted in other jurisdictions of offenses that are substantially similar to the Michigan offenses of kidnapping, unlawful imprisonment, and child enticement. The SOR Unit then contacted prosecutors in the Michigan jurisdictions where the registrants had been convicted and asked them to determine whether the registrant should remain subject to registration. The Michigan State Police's letter to the prosecutors further informed them that if no response was received within 90 days, the individual would be removed from the registry. The spreadsheet was used to track responses. *See* Morris Deposition, at 161-168.

6.  The spreadsheet contains two tabs. The first tab is labeled "Prosecutor and Court." This tab shows eleven columns in the x-axis: name, sex offender registration number, crime code, county of conviction, case number, criminal tracking number, columns for notations labeled "canceled per PA," "do not remove per PA," and "no response from PA." Finally, there is a column for dates and another for notes. The y-axis identifies registrants identified by the SOR Unit as subject to SORA 2021 for one of the non-sex offenses addressed in *Lymon*.

7.  Under this first tab, there are a total of 170 registrants who were identified as subject to registration under SORA 2021 for Michigan convictions for MCL 750.350 (Child Enticement), MCL 750.349 (Kidnapping), and MLC 750.349b

2

(Unlawful Imprisonment). There are no registrants listed who have out-of-state offenses that are similar to these Michigan offenses.

8. This tab further indicates that, of those 170 registrants, 17 registrants had their records canceled as a result of the prosecuting attorneys' response, while 14 were marked as "do not remove" as a result of the prosecuting attorneys' response. For the remaining 136 registrants, there was no response received from the prosecuting attorneys. The dates listed in this tab indicate that information on the individuals was added between December 9, 2022, through March 29, 2023.

9. The second tab in this spreadsheet is labeled "Arresting Agencies.". There are ten columns in the x-axis of this tab: registrant full name, registration number, crime code, arresting agency, arrest number, county of conviction, court case number, criminal tracking number, and two additional columns labeled "confirmed" and "date/user initial." The y-axis of the chart identifies registrants identified by the SOR Unit as subject to SORA 2021 for Michigan convictions for MCL 750.350 (Child Enticement), MCL 750.349 (Kidnapping), and MCL 750.349b (Unlawful Imprisonment). Again, there are no registrants listed who have out-of-state offenses that are similar to these Michigan offenses.

10. This second tab groups the registrants by the arresting agency. For example, the Detroit Police Department is listed as the arresting agency for 47 registrants; the registrants are grouped together and listed underneath this section.

3

11. Under this second tab, the same registrants listed in the first tab are relisted, with a total of 170 registrants identified on this page. The tab then indicates who, of those 170 registrants, was removed from the registry and why.

12. Per the information provided on this tab, sixteen registrants were removed following the prosecuting attorneys' response. 14 registrants had their records republished following the prosecuting attorneys' response. There was one registrant removed per a judge's order. 135, or a majority, of the registrants, were removed from the registry after the prosecuting attorneys failed to respond. A vast majority of the removals are dated between March 5-6, 2023, with the earliest removal date listed as January 5, 2023.

13. After signing the protective orders, I was provided with the true name of Mr. Doe A. I reviewed the spreadsheet, but he is not listed. Based on the fact that he was not included in the spreadsheet, it appears that the MSP failed to identify him as being part of the Non-Sex Offense subclass and did not contact the prosecutor in the convicting jurisdiction about whether he should be removed.

14. The second spreadsheet is titled "PACC Code Table 06292022." According to the meta-data attached to the sheet, it has a creation date of March 5, 2015, and a modification date of October 31, 2022. The meta-data indicates it was authored by Sharon Jegla.

15. Again, I reviewed the deposition testimony of Narcisa Morris in order to

understand this chart. According to the testimony, this chart is used to track out-of-state offenses that have been determined to be substantially similar to a registrable Michigan offense; the information from this chart is then used to populate the tier table in the Michigan Sex Offender Registry database. *See* Morris Deposition, at 149-151.

16. According to Ms. Morris' testimony, information is added to this spreadsheet once a determination has been made by the legal department that an out-of-state conviction is similar to a Michigan one. From there, the information is added to the PACC Code table, which is then sent to the vendor to be programmed into the MSOR database to populate the risk tiers. *See* Morris Deposition, at 149.

17. The PACC Code Table has four tabs. The first tab, containing the most information, is the "PACC Code Table" tab. In this tab, there are twenty columns: state, PACC code, description, CRR, MIA, MIJ, MIH, OSA, OSJ, FD, ML, TB, non-listed, tier level, publish single offense, victim age begin, victim age end, approved by MSP legal, comparable MI code, and notes. There are 2207 rows (not including the header) listing various out-of-state offenses.

18. In this tab, there are many blank fields. Only 42 of the 2,207 offenses listed in the tab have a listed "comparable MI code" indicated. Only 18 of the 2207 offenses indicate they were "approved by MSP legal." 787 of the rows are missing

5

an entry for tier level.[1] 800 rows have no entry in the "publish single offense" column which relates to whether the person is included on the online registry. *See* Morris Deposition, at 151. There is victim age information missing for most rows as well, with only 503 rows accounting for this information.

19. The second tab of the PACC Code Table is labeled "Added after 07162021." It includes the same twenty columns listed in the first tab. There are 52 listed out-of-state offenses in this tab. Similar to tab 1, this tab has many blank fields. 15 of the offenses listed are missing tier-level information; none indicate they were approved by MSP legal, and only one has a listed "comparable MI code" in the chart. 14 rows have no entry in the "publish single offense" column.

20. The third tab in the chart is labeled "Sheet 2." This tab lists 15 offenses out of the state of Wisconsin. Unlike the first two tabs, this tab only contains twelve column headers: state code, PACC code, description, MIA, MIJ, MIH, OSA, OSJ, FD, ML, TB, non-listed, tier level, publish single offense, victim age begin, and victim age end. Notably missing from this tab are the "approved by MSP legal" and "comparable MI code" columns. This tab, unlike the others, has almost complete information, with victim age information missing for three offenses.

21. The fourth tab, "sheet 3" is blank and appears unused.

---

[1] Seven rows indicate a tier level is determined by the subsection of the statute that was violated. Eleven more are listed simply as "varies."

22. In sum, across the different tabs, there are 2,274 out-of-state offenses. Of those, only 43 have a listed "comparable MI code" indicated. Only 18 indicate they were "approved by MSP legal." 803 rows are missing an entry for tier level.[2] 814 rows have no entry in the "publish single offense" column, which relates to whether the person is included on the online registry.

I, Mariam Elbakr, certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. § 1746.

*Mariam Elbakr*
Mariam Elbakr

Dated: July 7, 2023

---

[2] Seven rows indicate a tier level is determined by the subsection of the statute that was violated. Eleven more are listed simply as "varies."