# Exhibit 26:

## B.W. Declaration

DOES III -00001268

## DECLARATION OF B.W.

1. I am the mother of John Doe E who is a current registrant on the Michigan Sex Offender Registry and a plaintiff in this case. I have supported and advocated for John Doe E since adopting him in 1973. I have continued to support John Doe E since his CSC conviction and subsequent inclusion on the sex offender registry. I am 86 years old and retired from the medical field where I worked as a nurse for over thirty years.

2. During the 1970s, my late-husband and I fostered many children. At the time, I was a pediatric and public health nurse, and my husband was a high school teacher and administrator. Because I was a nurse, the children placed in our care tended to be medically fragile infants and young children suffering from various disabilities. In the 1960s, we adopted two children, our daughter and older son. In 1973 we adopted John Doe E, who was 11 months old and had been diagnosed with Fetal Alcohol Syndrome at birth.

3. In the 1970s, very little was known about Fetal Alcohol Syndrome. At the time, we did not understand what the condition was or how it would play out as John Doe E grew up.  We were told he would have significant cognitive limitations and would, as an adult, still have the developmental functioning of a child. There were few resources available to better understand his disability. Within an hour of bringing him home, we learned how challenging his condition was.  John Doe E had

crawled under the coffee table and while he should have been able to easily get himself out, he was unable to. He could not figure out that he needed to lay flat on his stomach and scooch himself out from under the table. Instead, he sat on his knees and began banging his head on the underside of the table until we pulled him out.

4. We had to teach John Doe E everything, including basic day-to-day functions, because he could not learn from simple experience. His FAS makes it difficult for him to process cause and effect and control his impulses. This is exacerbated by his poor memory. Because John Doe E must be taught things multiple times to fully understand them, consistency has been vital to his survival. We have generally made it a point to not change the rules and routines that he operates by.

5. John Doe E's need for consistency remains true today. When the SORA laws requiring registrants to register within the first three days of the months changed, John Doe E still reported in-person within the first three days when possible. Even during COVID, John Doe E went down to our local police station every three months to verify, even though the staff would tell him that reporting was suspended at the time because of the pandemic.

6. Because he has been living with FAS his entire life, I have taken care of John Doe E his entire life. When John Doe E was added to the sex offender registry, it made it even more challenging for him to navigate life on his own and made him ever more dependent on family advocacy and supervision. We have had to provide

DOES III -00001270

support to ensure John Doe E is able to meet his SORA obligations so he can stay out of trouble, including going to the police station with him to make sure he successfully reports, helping him understand his reporting obligations (to the extent that we understand them ourselves), and providing financial support. We moved away from our home on the east side of the state to live in West Michigan to be closer to a family support system for John Doe E to lean on after my husband and I pass away.

7.  John Doe E's inclusion on the registry has been difficult for my family and me. The registry has made it hard for John Doe E to find and keep a good job, and he depends on me for financial support. The registry makes it hard to find his own housing so he has lived with me and will continue to. The registry has complicated our ability to travel. John Doe E has been a spokesperson for people living with FAS and has even been invited to speak in other countries on the topic. John Doe E is constantly flagged at U.S. customs because of the registry, causing disruption and stress. On one occasion John Doe E was pulled aside for questioning by TSA who refused to let us go with him. I thought my late husband was having a heart attack because the stress caused him to have significant chest pain and shortness of breath. Because of how complicated SORA makes traveling, John Doe E has stopped accepting invitations to speak and we no longer attend international FAS conferences.

DOES III -00001271

8. We have advocated for and supported John Doe E through the hardship that being on the registry imposes on him. John Doe E has now been on the registry for half of his life, and it is becoming increasingly difficult for me to help him keep up with his obligations. His father passed away five years ago, and at 86 years old, I am not able to provide him with the same level of support. I fear John Doe E will have trouble remaining in compliance with his SORA requirements after I am no longer able to support him.

9. John Doe E's offense was hard on our family and broke many relationships, including his relationship with his siblings. My relationship with my family was also strained as a result, including with my grandson, the victim in John Doe E's case wit whom I was always very close. Over time, however, we have all been able to heal, reconnect, and move forward positively. John Doe E is very close with his sister and brother-in-law and has made significant inroads with his brother (the father of the victim).

10. My grandson has also experienced a lot of healing. Once he was older, my grandson came over to my home to have a conversation with John Doe E about what had occurred and how they could move forward. During that conversation, my grandson told John Doe E that he forgave him. Since then, my grandson has been supportive of John Doe E and has expressed that he does not believe that John Doe E should be included on the sex offender registry.

DOES III -00001272

11. I am still very close with my grandson. He visits us from overseas (where he lives) twice a year as well as during Christmas time. We stay in constant communication, texting back and forth at least once a week. This past summer, I attended his wedding; John Doe E was invited, but was not able to attend because it was overseas, and the flight prices were very high.

12. John Doe E's offense dates back to 1994, nearly 30 years ago. He has no other criminal history and has understood for decades that what he did was wrong and caused harm to the child, to the child's family, to our extended family, and to himself. I am very proud of what he has accomplished since, but I worry that in the coming years as I am less able to assist him, and when I am gone, he will be unable to understand and comply with the ever-changing and extensive registry requirements. Although he is married, his wife also has Fetal Alcohol Syndrome and is not in a position to provide the level of support that my husband and I have provided to him over the years. One of my greatest fears is that John Doe E will still be on the registry when I pass, so that I will die not knowing whether he will be able to manage under SORA without me.

I certify under penalty of perjury that the above statement is true and correct pursuant to 28 U.S.C. § 1746.

B.W._____<br>
Mother of John Doe E<br>
(name on file with Plaintiff's counsel)

April 17, 2023