# Exhibit 27:

## A.C. Declaration

## **DECLARATION OF A.C.**

1. I am a current registrant of the Michigan Sex Offender Registry. I am 45 years old and was convicted in 2005 of CSC-2 and CSC-4 when I was 27 years old. I was incarcerated for almost 10 years until I was paroled in 2014. I successfully completed parole in 2016. I was added to the registry in 2005 and have been on for 18 years already. I am tier III registrant and am required to register for the rest of my life.

2. When I first started registering, I was only meant to be on the registry for 25 years. That was what I understood when I accepted my plea agreement. Based on the offenses to which I was pleading guilty and my attorney's explanation of the law at the time, I believed that once I had spent my time in prison and been released, I would only have to register for a period of years and simply needed to report my home address. I understood that I would eventually come off the registry. In deciding what to do, I considered things like my future job prospects, purchasing a future home, and how I would be affected under the registry scheme that was in effect in 2005. What would be required of me under the scheme was the biggest deciding factor regarding my plea deal. If I had known I would be subject to the current changes and requirements under SORA 2021, I would not have taken the plea deal.

3. When I was a 25-year registrant, I had a semblance of hope that one day I would be off the registry and could live a better life. Now as a lifetime registrant, I no longer have any hope at all of ever living a normal life.

DOES III -00001089

4. Because I have to report my work address, personal phone numbers, make and model and license plate of my vehicle, etc., —information that was not required in 2005—it is extremely easy for me to be found and targeted by coworkers and the registry has been used to target me.

5. Employment has been extremely hard to get and keep because of the registry. The first job I worked while on parole I stayed at for 3 years (from 2014-2017). I landed the job because I had previously worked there while I was in high school and the general manager, who also had a family member in prison and was empathetic, hired me. Only the general manager and owner knew about my criminal history at the time. After a year and a half with the company, I was promoted to manager.

6. Shortly after that, however, my coworkers discovered that I am on the sex offender registry. This resulted in harassment and threats; the other managers would make statements like, "If [A.C.] hurts you, I have a gun and I'll shoot him." Some of my coworkers would send me emails containing videos and pictures of pedophiles being killed. When I went to law enforcement, I was told there was nothing they could do. Because of the stress caused by the constant threats and harassment, I left this job.

7. Around 2018, I was eventually able to pick up a job at a local chain restaurant. I was there for 10 months before being fired after applying for a management position. Despite having notified the company that I was a convicted felon when I applied

for the job, I was terminated once the check of my background revealed I was on the sex offender registry. The manager told me that the legal team for the corporation did not want someone whose name was on the registry.

8. I am also dealing with harassment at my current employment (another restaurant). I have been harassed, threatened, and discriminated against. Once my coworkers found out about my registry status, they became uncomfortable and voiced this to management. I was told not to talk to any female servers outside of work, particularly the new female manager, or I would be fired. A coworker I was previously friendly with ended our friendship after my registry status was exposed. After three months of no contact, this coworker, convinced by others who used their discomfort with the registry to harass me, reported to management that I was sexually harassing her. Despite not contacting that co-worker since the exposure, I was suspended for a week. This is not the first instance of harassment at this job as a previous manager, who has now been fired, and a couple of servers found out about my registry status and started to harass me in and outside of work and actively trying to get me terminated. Despite the harassment, this job is the best paying job I have ever had, and I don't want to lose it. I've minded my own business and chose to not engage, but even when I do nothing, others harass and heckle me.

9. Altogether, I have had five jobs in the last eight years. My criminal history has not prevented me from getting these jobs. But every place I have worked, my

DOES III -00001091

coworkers inevitably find out about my registry status and every time, they harass and threaten me with physical violence. I have texts from people I have worked with and the threats I have received.

10. Finding housing has been hard because apartments are basically off-limits. In my experience, no one will approve a sex offender for renting. I had to lean on my father a lot after leaving prison. When I was initially paroled, I moved back home with him. While living with him, I worked on my credit and finances to get my own place but was constantly shot down because of my registry status. Eventually, my dad had to liquidate some of his retirement assets to purchase a condo for me to live in.

11. I was on parole for two years. My time on the registry feels just like my time on parole. If I violated a condition of parole, I risked going back to prison. This is the same if I violate a SORA requirement. Even the level of supervision is the same. Like on parole, I have to check-in with law enforcement, notify them about changes in my life, and report everything that I do. In both situations, my freedom is at stake if I fail to do something I'm supposed to do.

12. The reporting requirements are confusing. I have been detained by customs while traveling before because I was confused about the requirements. One time this happened while I was leaving the Virgin Islands because I failed to notify the country

4

before arriving. While I notified Michigan of my travel plans, I did not know, and could find no information telling me to register when I got to the island.

13. The Explanation of Duties form says that I "understand" my SORA duties. When I sign the form indicating that I "understand," I am nervous because I am being forced to sign it under threat of imprisonment. But I don't understand everything, I am sure of that.

14. Even registering every three months can be a burden. I've had to register with multiple counties over the years. Recently, I moved to an area where I cannot register with the local police department. Instead, I have to travel 20-miles one way to the state police to register.

15. When I was released from prison, I avoided both internet identifiers and the internet due to fear of SORA's reporting requirements. This made it extremely difficult to apply for jobs, apartments, mortgages, and credit cards. Being unable to use forms of electronic communication, like the internet and smartphones, which most of the world uses every day has put me at a disadvantage. However, because I was convicted before the 2011 amendments, the reporting requirements for electronic communications were thankfully removed from me recently. But everybody whose crime came after 2011 is still in the same position that I was in for years.

DOES III -00001093

I, A.C., certify under penalty of perjury that the above statement is true and correct pursuant to 28 U.S.C. § 1746.

                                                     _A.C._____
                                                     (name on file with Plaintiff's counsel)

Dated: March 10, 2023