# Exhibit 30:

## R.H. Declaration

## DECLARATION OF R.H.

1. I am a 72-year-old Michigan resident and a member of the *Does III* class. In October 2021, my longtime girlfriend and I made vacation reservations to travel out of state for more than seven days in February 2022. My 93-year-old father had recently moved from Grand Rapids to Florida. We booked a condo for February 1-28 at The Summit, 8743 Thomas Dr., Panama City Beach, FL 32408.

2. On January 27, 2022, I visited the Kentwood (MI) Police Department front desk to leave my itinerary/booked destination as required by Michigan's SORA 2021, *see* MCL 28.725(2)(b) and 28.727(1)(e), for a stay away from home longer than seven days.

3. We drove from Michigan to Florida at the end of January. Upon arriving in Florida I thought it prudent to complete my temporary Florida registration before checking in at The Summit (between 4:00 – 6:00 p.m.). I didn't want to be in Florida for any amount of time in case I was pulled over and accused of failing to register.

4. We drove directly to the Bay County Sheriff's Office, 3421 N. Highway 77, Panama City, FL 32405, which is where online sources had directed me to report. The front desk informed me, however, that registrations were now being done at the Bay County Jail, Warrants Division, 5700 Star Lane, Panama City, FL 32404.

5. We got back in the car and drove about 20 minutes away from the sheriff's office, and about 35 minutes and 19 miles further away from our destination, to get

1

to the jail. On arrival, I was directed to Deputy Hickman of the Sex Offender, Sexual Predator & Felon Registration Unit.

6. She gave me about a 10-page form to read and complete. While filling it out, I asked about having to list my Social Security number on the form. She stated, "It's required." I turned in the paperwork to her for review. She then asked me what crime I had committed and what had happened. I asked, "What does that have to do with my temporary registration?" She indicated that unless I answered her questions, my temporary address registration would not be completed. I told her about my crime and the deputy completed the form. I have no other criminal record but my registrable offense, which was 30+ years ago.

7. Another deputy then took my thumbprints, fingerprints, upper and lower palm prints, and side handprints. After that I was photographed for listing on the Florida Sex Offender Registry.

8. I then returned to Deputy Hickman. She gave me a copy of my registration paperwork. She also told me to visit a Florida Department of Motor Vehicles office and either obtain a Florida driver's license or a 30-day letter. She said I could Google a location. Lastly, she told me to leave a voice mail on her office telephone the day I was leaving Florida.

9. We then drove to the nearest Florida Department of Motor Vehicles Office, located at 850 W. 11th St., Panama City, FL 32401, which was about 10 miles and

DOES III - 00001184

20 minutes from the jail. Getting a Florida driver's license made no sense as I am a licensed Michigan driver, so I opted for whatever a 30-day letter was. The clerk assisted me with my request, and required a payment of $6.25. I also told her that I needed the letter to be sent over to Deputy Hickman at www.bayso.org, which she said she could do.

10. Finally, after about two hours at three different Florida offices, we were able to drive to our location in Panama City Beach. While standing at the main elevator with our luggage on a luggage carrier, I heard a voice behind me call my name. I turned to see an officer with the Panama City Beach Police Department carrying a clipboard. He told me that he wanted to make contact with me. He said that I was in compliance with Florida law, and to be sure to phone the voicemail number on my day of departure back to Michigan. This interaction occurred in front of the main elevators, with other guests/residents standing close by, and with no apparent effort on the officer's part to make the communication private.

11. While on vacation, my father passed away in Cape Coral, Florida. We decided to leave Florida two days early, on February 26, 2022. I made the required phone call, leaving a voicemail with Deputy Hickman that I was departing Florida for my residence in Michigan.

12. I arrived home in the late afternoon of February 27. The next morning I visited the Kentwood Police Station, located at 4742 Walma Dr. S.E., Kentwood, MI 49512,

DOES III - 00001185

which is about 10 minutes away by car, to report my return to my residence. The front desk cadet stated he could not process my return registration, and suggested I call an Officer Bylsma for further assistance. I left Officer Bylsma a voicemail on February 28. I also phoned Deputy Hickman in Florida on the 28th and left her a voicemail to call me back because I was having difficulty re-registering in Michigan.

13. On March 1, I went online to the Florida Sex Offender Registry and saw that my Florida registration was listed as *permanent*, which I thought might explain why the Kentwood police were having trouble registering me in Michigan.

14. In the afternoon, I telephoned the complaint officer at the Bay County Sheriff's Office in Florida. I left a voicemail with a Lt. Jencks, who called me back later that day. I explained my situation, and told him I was calling because my voicemail to Deputy Hickman on February 28 did not result in her calling me back. I told him I was afraid I could have arrest warrants issued in both Florida and Michigan if I'm not allowed to re-register my residence in Michigan. He said the problem would be taken care of and that I would get a call back from their office.

15. On March 2, I received a call from Deputy Hickman, who told me that no arrest warrant would come from Florida, and that I should go to the Michigan registry office. I drove back out to the Kentwood police station where my re-registration was finally completed.

16. In sum, both at the front end and at the back end of my out-of-state trip I had

DOES III - 00001186

a series of burdensome and time-consuming hoops to jump through – most of which had to be done in person, and which involved driving repeatedly to registry offices only to learn that I had to visit other offices or that the office I was at could not complete what needed to be done.

17. At every phase I was anxious that something would go wrong or that I would not have what was needed or would not be able to do what was necessary. The fear is constant that if you screw up you may not get permission to travel, or you will lose your booking deposit and you will have to turn around and go home, or that you will face charges for failing to register properly or for being noncompliant in the new state or in your home state.

18. This was for a four-week trip; I can't imagine anyone taking a short trip given the hassle and anxiety I went through on this month-long trip. In addition, I checked again (on March 12, 2022) and learned that I was still listed as a permanent registrant on the Florida registry.

Pursuant to 28 U.S.C. § 1746, I state under penalty of perjury that the above statements are true and correct to the best of my knowledge, information, and belief.

R.H._____<br>(name on file with Pls' counsel)

Dated: March 8, 2023

5