# Exhibit 31:
## R.H. 2 Declaration

## **DECLARATION OF R.H.2**

1. I am a current registrant on the Michigan Sex Offender Registry. I am 58 years old, and I was convicted of kidnapping in 2003 when I was 38 years old. There was nothing sexual about the crime. I spent seven years and eight months in prison for this conviction and was released in 2010. Following that, I successfully completed two years of parole.

2. I did not know that I would be required to register as a sex offender until I was released from prison in 2010. I went to the parole office where I planned to make arrangements to be paroled to Georgia to live with my sister—where a stable home and job was waiting for me—but was told that I could not because I was on the registry and so "Georgia didn't want [me]." That was the day I found out I was not only a tier III registrant, the highest level, but also that I would be required to register as a sex offender for the rest of my life despite never having committed a sex crime. Instead of going home after my release, I was sent to sex offender housing. The day of my release, which should have been a somewhat happy day, was darkened by this ghastly revelation, and has darkened every day since.

3. In February 2023, I received a letter from the MSP regarding my registry status. The letter indicated that, because my offense was not sexual, I would likely be removed from the Michigan Sex Offender Registry. While I was excited about the prospect of finally being removed, I did not understand what it meant about the

1

2

letter not being a "determination." The letter stated I would still need to check with an attorney or prosecutor to see if I would ultimately stay on the registry.

4. When I received the letter, I reached out to attorneys to get a better understanding of whether I was still supposed to report or not. I also sent a letter to the prosecutor's office to get an answer about whether I was still required to report. Because I did not want to risk violating SORA, I decided to continue with my reporting requirements in case my reporting obligation were not actually complete. When I last went to register (in March), there was confusion and I was ultimately sent home without registering. I was told they would follow up regarding my SORA status. I have since been told by the local sheriff that my reporting obligation are complete. However, I have also been told that, even if I am removed from the registry because my conviction was for a non-sexual offense, depending on that the Michigan Supreme Court does, I could be put right back on the public registry.

5. Even though I was not convicted of a sex crime, because I am on the sex offender registry, I have been treated accordingly. Even worse, when I attempt to explain my situation—that my crime was not sexual—I am treated like a liar *and* a sex offender. I have had difficulties with both employment and housing because of the registry.

6. Because of the registry, I have been turned away from jobs, embarrassed at job interviews, and even threatened for asking for a job.

2

7. Around 2010 when I first left prison, I had an experience that resulted in me being threatened by multiple agents of an employment agency. The agency specifically contracted to staff another company I knew to be hiring. A friend of mine who worked for the company told me about the position and told me he would vouch for me if I came down to the site. Prior to going, I stopped by the employment agency, assuming they played a role in the hiring process and wanting to be transparent with them and told them that I had felonies and that I was on parole. They told me it was okay. They followed up, however, by asking if I was on the sex offender registry. When I told them I was, they responded that we were "done here." They left no room for me to explain.

8. Despite the response from the agency, my friend encouraged me to apply for the open position regardless, emphasizing the fact that he would vouch for me with the company itself. On his advice, I went to the company to apply for an open position. When I arrived, there were two people from the employment agency there looking for me. In front of everyone present, they yelled at me that I wasn't supposed to be there and that they "were not backing any sex offenders to work at this company!" My friend ushered me into his office where he helped me fill out the application. Before I could even leave, another man came over and told me, "Don't come around our offices or you will regret it."

DOES III - 00001190

9. While I was in prison, I became certified by MDOC as a legal writer in the law library, allowing me to earn a small monthly salary It was a position that allowed me to grow skills that help me understand my own situation better, but also allowed me to help others who were incarcerated at the time. When the SORA law changed, I was not informed by anyone—the courts, the prison or the State—about what was changed and how it would affect me. If I had been made aware at any point during my almost eight years of incarceration of the changes to SORA that would put me on the registry, I could have used the skills and resources I gained as a legal writer to better prepare for and understand my situation. Since being out of prison, instead of being able to lean on the skills and resources I gained, I've instead had trouble as detailed above keeping or getting a decent job due to the registry; I now work as a gig worker.

10. When trying to rent a place to live, I have attempted to explain to potential landlords that my offense was not sexual. However, as I've said before, this only causes them to see me as a liar. I've had people tell me to my face, that I wouldn't be on the registry if I wasn't a sex offender so I must be a liar. If you are on the registry, you are a sex offender.

11. I now rent a basement in a tiny house just off a riverbank from a friend who was patient enough to hear my situation and give me a chance. It helped that I was able to do some work for him before renting the basement. I have been living here

for ten years, but at his discretion—there is no contract or lease that protects me from immediate eviction. In fact, he has attempted to sell the place about six times since I've lived here; a few months ago he forgot to pay the mortgage and the house ended up on the auction block. My housing situation remains very unstable.

12. Since being on the registry, I have lost both of my parents. I missed both of their funerals because the "out of state travel" restrictions are confusing and easily violated. Each state has different codes and enforces them in different ways. The states where my parents died have particularly harsh restrictions on registrants, and I was too worried about accidentally violating those restrictions that I did not attend my own parents' funerals.

13. The registry has subjected me to harassment, on the scale of systemic digital torment. Starting in 2017, I became the target of a years-long campaign involving several individuals flooding my inboxes with messages and videos of horrific mutilations and tortures of alleged child molesters. These videos were sent with assurances that one day this would happen to me. When I have attempted to block contact, these groups of people create new profiles and accounts to send these videos from. I've gone to the sheriff for help but have been told there is not much that they can do until there is a physical crime committed against me. This harassment even reached the point where a man came to my door, snatched it open, and demanded that I come outside to "take my medicine." As I had reached a breaking point on the

harassment, I decided to confront the man, but he took off running once I came outside. I live in fear that these types of confrontations will continue to happen.

14. I have no family other than my pets who are my children. People who have found me on the registry have threatened to kill my cats. They have sent me videos of cats being tortured and made comments about pictures I've posted of my cats on Facebook about how they will kill them. This has been absolutely devasting and one of the hardest parts to deal with in terms of being on the registry.

15. I have also had to deal with harassment from law enforcement. Periodically, they come without warning to do a "check-up." I have had SWAT-style crews of sheriff's departments in full body armor with automatic weapons in at least five different vehicles pull up to my front yard and storm around to my back door in full view of my neighbors.

16. The registry has had an enormous toll on my mental health. I deal with constant paranoia, knowing that I am never safe. My address is posted for the world to see and people have communicated time and again their desire to hurt me and my animals. I am constantly haunted with thoughts of being harmed or killed by the very people who make promises to deliver on just that. I live with a crippling loneliness and the thought that I will be in danger for the rest of my natural life.

I certify under penalty of perjury that the above statement is true and correct pursuant to 28 U.S.C. § 1746.

DOES III - 00001193

R.H.2_____
(name on file with Plaintiff's counsel)

Date: March 20, 2023

7

**DOES III - 00001194**