# Exhibit 33:
## D.K. Declaration

## **DECLARATION OF D.K.**

1.  I am a current registrant on the Michigan Sex Offender Registry. I have been on the registry since 1997. I am a tier III registrant and am currently required to register for life. I pled guilty to one count of CSC-3 in 1991 and was sentenced to prison in 1992. That was before there was a registry in Michigan. I was released from prison in 1995 and completed two years of parole following that. I have had no criminal record in the three decades since.

2.  When I initially registered, I was only required to register for 25 years. At the time, I was only on the private registry. With changes in the law, all of which were applied to me retroactively, I am now required to register on the public registry for life. Had anyone known at the time I pled guilty that I would be required to register publicly and for life, I think (a) that the prosecutor would likely have offered a better deal (without those requirements), and (b) I would likely have rejected the plea if those terms were required.

3.  I have been married to my wife since 1999. I live with my wife in a home that we've owned since 1998. I have six adult children, three from a previous marriage, and three stepchildren. My wife is from Canada. Due to my registration status, we are effectively unable to travel together to visit our families back in Canada, including my sister and niece.

4. I took medical retirement in 2007 due to retinitis pigmentosa and macular degeneration; I am now blind. Until my retirement I mostly worked for people I knew before my conviction. I returned to construction machinery (sales), where I had worked before I went to prison, . My employer was aware that I was on parole; at the time I was also on the private registry. I worked with this employer until I retired in 2007. I don't know if this construction machinery company would have taken me back or kept me on, if (as is true today) my work address would have been posted on a public registry, but I doubt it.

5. Most significantly, my registry status resulted in my rejection from Rochester's Leader Dogs for the Blind in 2019. Due to the extent of my vision loss, my wife and I thought it would be beneficial to get a guide dog. I applied to Leader Dogs as it is the only guide dog school in Michigan. The application asked about felony convictions and indicated the possibility of background checks. Two weeks later, I received a rejection letter from Leader Dogs, stating "Based in whole or in part on information contained in that consumer report, we have denied your application to become a Client." This rejection was despite Leader Dog's use of incarcerated individuals to train some of the dogs.

6. I called Leader Dogs to inquire about the nature of the rejection. I spoke with the head of client services and admissions. She made it clear that my rejection was due to my registry status and not my conviction, stating, "Obviously you're

DOES III -00001107

dangerous because you're on the registry for life." She insisted the school does not "deal with people like [me]." She cited the safety of the staff and other clients as reason for the denial. Even when I asked if I could have a male trainer come to my house as opposed to me coming into the site, she reiterated that Leader Dogs does not do business with lifetime registrants like me. She stated she was worried that one of their clients would look me up on the internet and complain about my participation in the program, and insisted she wanted to totally avoid that situation.

7.  After being rejected by Leader Dogs, I sought other options to no avail. I also called and inquired to out-of-state guide dog schools, but learned that these schools only served their in-state communities, so I was not able to apply. One school told me, "If Leader Dogs does not want you, why would we?" At this point, I still do not have a guide dog. I reached out to the Michigan Department of Civil Rights, who agreed that my situation was appalling but nevertheless were unable to provide much assistance.

8.  My experience going to register has been inconsistent or confusing. At one point I was told by officers that I was required to report certain internet IDs, but this was later confirmed to be untrue. Even though I use a white cane, I often must remind officers that I cannot see when they give me the Explanation of Duties form to sign – they are reluctant to take the time to read it to me, and I don't know if they read all

3

of it, or if they are reading me accurate information. I do NOT know what I am signing.

9. In addition, the police station does not take cash for the $50 registry fee, so when I make a payment, anyone who is part of that process will have notice of my registry status.

10. Due to my public registration status, I avoid many activities, including volunteering, taking a CPR class, and commenting in Facebook groups. A few years ago, I was part of a community-based Facebook group. At some point, another member of the group shared a map with thumbtacks showing the addresses of registrants, including clickable links to photos. Another member commented on the map stating that someone in the group who comments frequently is on the registry. I limited my activity in the group – basically went silent – at that point to avoid future problems.

I, D.K., certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. § 1746.

D.K._____
(name on file with Plaintiffs' counsel)

Dated: March 19, 2023