# Exhibit 35:
## H.M. Declaration

## **DECLARATION OF H.M.**

1. I am a current registrant of the Michigan Sex Offender Registry. I am 68 years old and was convicted of CSC-1 in 1993 for which I was sentenced to 12-30 years. I was released in 2003 after serving ten years and subsequently serving two years on parole (2005). I am a tier III registrant required to register for the rest of my life. I am also a licensed attorney in the state of Michigan with my own practice.

2. The registry has been absolutely devastating for me. The circumstances of my offense were very public—I was convicted of raping a woman with whom I was having a 3.5 year extra-marital affair, a crime for which I have always maintained my innocence.

3. When I was convicted, the sex offender registry did not exist. I was in prison at the time I was added to the registry. I was told that if I did not sign the papers that would put me on the registry, I would be subject to additional prosecution. What a lot of people don't realize is that this—being forced on the registry while in prison—created additional burdens because it becomes a negative aspect of your file. When it comes time for parole hearings, your file is used in assessing your danger to the community. Being on the Michigan Sex Offender registry is a stamp from the State of Michigan that you are patently dangerous and can be used by the parole board to extend your time in prison.

DOES III -00001128

4. During my time in prison, there was the option to earn credits that would shave time off the minimum sentence. Because I had enough credits, I was able to see the parole board after serving 10 years (in 2003) as opposed to after 12 years. Despite having earned the credits and having proven good behavior, my chances at parole were threatened by the registry. At the time, one of the requirements for people subject to the sex offender registry was mandatory therapy within the MDOC. One of the requirements for treatment, however, is an admission of guilt. Because I have always maintained my innocence, and because my integrity is not for sale, I refused; I could not tell people that I was guilty. Because of this, I was never accepted into therapy, and staff told me that I would never be paroled. In 2003, during my parole hearing, I explained all of this to the parole board, who fortunately granted my release.

5. After leaving prison in August 2003, as part of my parole conditions, I was told I would need to attend sex offender therapy. Like my experience in prison, when I attempted to attend therapy, I was told I would need to sign a paper accepting full responsibility for my offense. Because I refused, I was arrested and sent back to prison for the parole violation of failing to complete sex offender therapy. At my revocation hearing, my PO and the therapist claimed my registry status was proof not only of my guilt but of my parole violation—that by virtue of being on the registry, I was guilty and thus required to sign the papers accepting guilt. Despite

this, the judge ordered my release and restored my parole, noting I could not be guilty of a parole violation for simply maintaining my innocence.

6. While imprisoned, when I was first placed on the registry, I was only required to register for 25 years; however, due to retroactive changes to SORA, I now must register and be labeled as a sex offender for the rest of my life despite having led a stellar and productive life since my conviction/placement on the registry! Further, the registry was originally limited to law enforcement, not open to the public. It was bad enough being on the registry for 25 years; when a person is convicted, they are supposed to be punished on the law as it existed at the time of the crime, so being retroactively added to the registry was astronomically harmful. To then be bumped up to life despite having an otherwise stellar record and getting my life back on track, was absolutely devastating.

7. I earned my Bachelor's degree in 1976 from the University of Michigan, and my Law degree in 1979 from the University of Toledo. I earned a Th.D. in Theology from Midwest Theological University in 2016. When I attempted to apply for a Master's degree at Eastern Michigan University, I was told I could not be on school property. While I was not explicitly denied admission, I was told I could only attend on a limited basis and needed to go through the public safety department. I would need to take classes under specific conditions because of the registry. Instead of doing this, I thought it would be more fruitful to reengage with my legal career.

8. I passed the Michigan Bar Examination in 1979. I was a public defender for 13 years prior to my conviction, due to my conviction, I was disbarred and placement on the registry, more than the CSC conviction itself, was the main objection to my reinstatement!

9. Despite having advanced degrees prior to my conviction, upon release, I have been denied jobs well below my qualifications because of being on the registry. I have been denied jobs at Meijer's stacking cans and at U-Haul loading trucks. It was very hard to find employment outside of short temp positions. I applied for a flower delivery job where I was able to explain the circumstances of my situation to the employer. After I told the employer about my conviction, his very next question was, "Are you on the registry?" In the past that was always the kiss of death, but luckily this time he gave me the job, and I stayed there for eleven years.

10. Because of the difficulties pursuing higher education and finding a job, I focused my attention on getting my law license back. The Michigan Supreme Court has created ways for disbarred attorneys to potentially regain their licenses. Everyone told me I was wasting my time because my being on the registry would be an obstacle. Regardless, I started the process in 2008, the process involved convincing the Attorney Discipline Board, with clear and convincing evidence, that I was not a threat to the public and worthy of public trust. During this process, the registry was heavily weaponized against me.

11. The Attorney Grievance Commission objected to my reinstatement, they claimed I was an "unrepentant sex offender" who never admitted guilt and emphasized that I am on the public registry. They, and a member of the Attorney Discipline Board, argued that the people of Michigan "deserve to be free from having to see if their lawyer is on the registry." My recertification was initially denied, but on appeal, I was able to provide proof I was not a danger to the public through the evaluations conducted by a retained psychologist; I was granted recertification and officially regained my law license in 2010. I was the first in Michigan to do so under these circumstances. I was fortunate to have the resources, knowledge and the financial and spiritual help/support to get part of my life back – but I know there are thousands of others who don't, for whom the registry is a permanent social stigma and bar to stable and decent work.

12. Michigan's Sex Offenders Registration Act provides:

> **28.721a Legislative declarations; determination; intent.**
> The legislature declares that the sex offender registration act was enacted pursuant to the legislature's exercise of the police power of the state with the intent to better assist law enforcement officers and the people of this state in preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders.

However, the registry does not 'prevent' sex related crimes as most such crimes are committed by members/friends of a victim's household with no prior record.

13. SORA continues:

DOES III -00001132

> The legislature has determined that a person who has been convicted of committing an offense covered by this act poses a potential serious menace and danger to the health, safety, morals, and welfare of the people, and particularly the children, of this state. The registration requirements of this act are intended to provide law enforcement and the people of this state with an appropriate, comprehensive, and effective means to monitor those persons who pose such a potential danger. [M.C.L. 28.721a.]

In other words, the legislature, without any means of individualized 'menace and danger …' assessment, has **permanently** branded me, by force of law, a perpetual danger to the 10,000,000 people of this state that our Supreme Court has certified me to represent as a member of the state bar with outstanding moral and legal acumen!

14. Since getting my law license back, I have opened my own practice, but the registry still has had a tremendous impact. Anyone can, and people often do, look me up online, and one of the first things they see is that I am on the registry. People have emailed my clients with my registry status attached. People feel that they cannot trust me with a case because I am on the registry. Every day I am on the registry is a day that I am subject to professional loss of some kind. The registry is more than a public record – it is effectively a state-sponsored seal that I am (and will always be) a chronic danger to society.

15. The economic disadvantage for me is far worse compared to other lawyers who may also have convictions – but whose convictions are much harder to find because they do not appear on a public tax-supported website.

DOES III -00001133

16. In 2020, I ran for Prosecuting Attorney of my county. During this campaign, the registry was heavily used against me. While the backgrounds of my opponents were only accessible via FOIA, the courts, or background searches, my information was easily accessible because of the registry. During the campaign, my registry information was posted on the internet. While I had anticipated this, the backlash to my campaign was much more vicious than I expected. At one point, I attended a rally at a park in support of a safe house group where my opponent was also speaking. When the rally's organizers realized who I was, they tried to have me forcibly removed from the park; they even called the police. Fortunately, the police recognized that I had a right to be at the park.

17. After leaving prison, I also had trouble with housing, I couldn't qualify for public housing due to being on the registry. I could not live in places I could afford because when landlords discovered I was on the registry, they would refuse to rent to me.

18. The registry makes it hard to leave the state because of the draconian travel restrictions. When I left the state for my brother's funeral in 2005, I had to notify authorities in both states about my registry status. The problem is that – even for a lawyer – the laws are so long and convoluted, and so vague, and so different from state to state, that you feel like you're entering a minefield. And you know that if you make one mistake – and then have any interaction with police

(like getting pulled over for a traffic violation, or when reporting in the state you are visiting, or reporting upon your return) – you risk being charged with a SORA violation that can send you back to prison or to jail.

19. Beyond the issues I experienced finding housing and stable employment, the harassment and isolation I have experienced has been constant. My family, including my children, nieces, and nephews, have also experienced harassment due to my being on the registry, being confronted and mocked by kids who ask, "Your father [or uncle] is the lawyer on the registry, right?" I have been removed from fraternal organizations and volunteer boards (Boy Scouts of America) because of the registry. Because I am on the registry. I have people stop and stare at me when I go to the station to register.

20. Even though I was – with great difficulty – able to regain my law license and am able to support myself and contribute to society, I will never be fully a part of society. I will always be a second-class citizen, publicly demonized as a threat and subject to ongoing opprobrium and ridicule by those whose only knowledge of me is via the registry. I will always live in fear of returning to prison simply because I, despite my legal education, make some mistake about what SORA requires. The registry is a constant reminder that Michigan does not want people convicted of sex offenses to reintegrate into society, it wants to exclude them (us) forever.

DOES III -00001135

    I, H.M., certify under penalty of perjury that the above statement is true and correct pursuant to 28 U.S.C. § 1746.

H.M._____
(name on file with Plaintiff's counsel)

March 16, 2023

DOES III -00001136