# Exhibit 36:
## D.M. Declaration

## **Declaration of DM**

1. I am a current registrant on the Michigan Sex Offender Registry. I pled no contest to 3 counts of MCL 750.349 (kidnapping) in 1993 before Michigan had a registry. I was sentenced to 12-40 years in prison of which I served 15. I am a tier III registrant and am currently required to register for life. Serious as my case was, I was never convicted nor charged with any type of sex offense.

2. In 1999, while incarcerated for the charges above, I was required to register as a sex offender. It is my understanding that the Sex Offenders Registration Act was amended to require people with kidnapping offenses to register. Had I known at the time of my plea that I would later be required to register on the public sex offender registry for life, I likely would not have taken the plea deal.

3. I returned to prison for two technical parole violations in 2009. I was released on parole again in March 2018, but was not fully discharged until March 2020, two days before the COVID-19 pandemic was declared by the Centers for Disease Control and Prevention.

4. Being labeled a sex offender, even though I did not commit a sex offense, has made my life much harder. No matter how hard I try to explain my situation, people assume that I did something I did not do and treat me worse for it. This occurs in many different aspects of my life from finding housing and employment to working with parole agents and law enforcement. Because I am on the public registry, I am

subject to more scrutiny that I would have been with just a conviction and it can be dehumanizing.

5. Being on the registry made it difficult to find stable housing. In April 2018, I was approved by the Social Security Administration for spousal retirement benefits. Soon after my benefits began, I applied for Section 8 subsidized housing with my local Housing Commission. But I was denied based on the U.S. Department of Housing and Urban Development's policy barring Section 8 benefits to lifetime registrants. Because I was on a fixed income, at that point my only choice was to move into a men's shelter, where I lived until June 2021. While I am lucky enough to have found stable housing with the help of a local nonprofit group, my rent currently takes up more than half of my fixed income.

6. I would like to find a job to supplement that income. However, being on the sex offender registry has also cost me employment opportunities. I am currently unemployed. When I fill out job applications, I always disclose my conviction and make a note that I will discuss it further in interviews. In 2021, I had a great interview with the food services department at a hospital. Despite how well it had gone, I did not get the job. I believe that was because they learned I was on the registry for life, since they knew before the interview that I had an almost three-decade old kidnapping conviction.

DOES III -00001111

7. I have become estranged from my family due to my registration. Family members have told me their estrangement is in large part due to the public nature of the registry and how easy it was for other people to learn that I am "sex offender". Once, a stranger printed out a magazine-style publication of local people on the registry, including me. The publication labeled us "predators" and even included our pictures. It is humiliating for me, and for my family, for me to be publicly labeled a predator even though I am not one. Harassment like this embarrasses my family and they do not want to associate with me because of it.

8. I have three grown sons and am divorced. Two of my sons are married with children. Due to my registry status, I have not been able to get to know my daughters-in-law, and they do not want me connected with my grandchildren. The one son who did support me after I got out of prison suddenly stopped talking to me in 2021. This son lived closer to me than the others, so when he stopped talking to me it really hurt; one of my best support systems was gone.

9. I have belonged to a local church community since my release in 2018. The registry has kept me from connecting to other church members, as many of them know that I am on the registry. Though I never committed a sex offense, I cannot convince people that children are safe around me.

10. Despite these obstacles, I am proud of how I have been able to put my life together after losing so many years to time in prison. I am a valued tenant of my

current home. I love the history of my house and do projects to maintain it, like repairing plaster and restoring antique hardware. Property management told me how they are happy with the way I take care of the property. Because of this, they have not increased my rent and extended my lease by two years. I also sing in my church choir and am a songwriter. I went to therapy regularly from 2018-2020, stopping only because my therapist took a new job. Prior to her transition, my therapist and I discussed whether I should find a new therapist. We decided that I had made so much progress, that I did not need to. Friends have noted how much I have grown since my release.

11. Around January 26, 2023, I received a letter from the Michigan State Police informing me that due to *People v. Lymon*, my name will no longer appear on the public registry. Although I was overjoyed to be removed from the registry, I am still extremely confused. It is very unclear to me if I am still required to register and, if I am, what my registration requirements are.

I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. § 1746.

Dated: March 16, 2023

D.M.
(name on file with Plaintiffs' counsel)

4