# Exhibit 50:
## K.W. Declaration

## **DECLARATION OF K.W.**

1. I am the legal guardian of my nephew, AF, who is on the Michigan Sex Offender Registry. As his legal guardian, I make all of his medical, legal, contractual, and major financial decisions.

2. In 2004, when AF was 19-years old, he pled guilty to attempted criminal sexual misconduct with two boys of a similar age, with similar disabilities. Prior to the allegations, AF and the other two boys had been engaging in consensual sexual contact. At some point, consent was withdrawn, which AF did not understand due to his disability. He has been on the registry since 2004. He is now 38 and is a Tier III registrant who is required to register for life.

3. AF has an Intellectual Disability. He was diagnosed with Microcephaly at birth and functions at the middle school level today. According to a court-ordered psychological evaluation taken in 2019, his Full-Scale IQ was 60 and he possesses "extremely low deficits in his Cognitive Functioning and is Moderately Low in his adaptive functioning." Over the years, I have learned through my own research that it is common for intellectually disabled individuals to be placed on the registry with no special considerations of their intellectual limitations or ability to appeal for future removal. Consequently, both the individuals and their families are punished and suffer greatly.

DOES III - 00001158

4. When AF initially registered, he was only required to register for 25 years. With the changes in the law that were retroactively applied to him, he is now required to be on the public registry for the rest of his life. This new retroactive extension of his registration term was applied without any inquiry, evidence, or explanation into his background and current behavior. There was no individualized determination about his risk level or whether lifetime registration was warranted. AF is not dangerous, yet there is no mechanism that would allow him to have his registration obligation eliminated or reduced.

5. Due to his cognitive limitations, AF does not fully comprehend, nor fully understand, SORA's many requirements and restrictions. Nonetheless, he is required to sign the new Explanation of Duties form that requires him to say he "understands" SORA. My nephew cannot legally enter contracts without my knowledge and consent, yet he is required to show up in person and sign documents acknowledging complicated legal requirements on his own.

6. Had I known at the time of his plea that AF would later be required to register on the public sex offender registry for life, I might not have authorized that plea deal for him. Prior to accepting the plea deal, my husband and I figured that we would be in our seventies when our nephew was taken off the registry. Now, we worry about what will happen to AF when we have passed away and he is still subject to the

registry's rules and restrictions. He does not have the capacity to comply with these rules and restrictions on his own.

7. One of my chief concerns about AF's lifetime status is housing. My nephew has lived with us since he was two. When my husband and I drafted our wills, we asked our probate attorney if they knew of any group home settings available to AF after we passed. AF is not able to live fully independently, so a group setting is one of his only options. We were told that because he is on the registry, group homes would not allow him. I called other agencies to confirm this and was told the same thing.

8. AF has also struggled mightily to locate gainful employment due to his intellectual disability and his placement on the registry. It has been a tremendous burden to ensure that any job we have secured for him he could both perform satisfactorily, and he would not be barred because of his registry status.

9. Additionally, employers take advantage of individuals such as AF, who not only have an intellectual disability but are also on the registry, knowing there are few employment options or consequences for abusing these employees. In one of his previous jobs, we believed AF was being underpaid, and that the employers were not taking account of his disability. Nevertheless, as his guardian, I was fearful to intervene because I did not want him to lose his job, given that I feared it would be almost impossible for him to find another.

10. AF also struggles with developing and maintaining social relationships. He had few opportunities to develop quality relationships before placement on SORA, but since then it has been excruciatingly painful for him and our family as well.

11. One particularly disturbing event happened to our family last spring. A neighborhood association board member called us extremely concerned that his credit card company alerted him of a possible "sexual predator" living on our cul-de-sac. The board member did not know about AF's background, but he felt it was his duty to alert us. We later explained to him AF's situation and how his record has been pristine since 2004. Yet, we could sense that the board member was alarmed, and our relationship has been damaged.

12. All of us have suffered with mental health issues associated with AF being on the SOR. He already had difficulties finding healthy, meaningful social opportunities and relationships, but being on the registry has been a death sentence in many ways for him. He has been depressed, lonely, isolated, and even suicidal at times. He is on medication and currently working with a therapist.

13. My husband and I have also grappled with mental health issues associated with AF being on the registry. If a neighbor is unfriendly or aloof, we wonder if it due to AF's situation. At various times over the past 18 years, we have sought professional help to deal with these issues through medication and counseling.

DOES III - 00001161

14. Despite the difficulties he has faced due to the registry, my nephew has maintained a pristine record for the past 18 years. He has faithfully complied, registered (with our help), and paid all SORA registration fees. He has also maintained a landscaping job where he is valued for his work ethic and reliability.

15. We are hopeful that AF and others like him who have proven to be trustworthy, compliant, and responsible will be removed from the registry. When people suffer from intellectual disabilities and are relegated to the SOR, not only do the individuals suffer but the parents and guardians as well.

I, K.W., certify under penalty of perjury that the above statement is true and correct pursuant to 28 U.S.C. § 1746.

Dated: March 15, 2023         _K.W._____
                                                (guardian for AF)
                                                (names on file with Plaintiffs' counsel)