# Exhibit 69H:

Dr. Anna Salter Deposition Exhibit 11

# Trends & issues
## in crime and criminal justice

**Australian Government**
**Australian Institute of Criminology**

No. 429  September 2011

EXHIBIT
11
A. Salter, PhD | 05-30-2023
S. Apley, CSR #8838

# Misperceptions about child sex offenders

## Kelly Richards

**Foreword** | Sexual offending against children is a highly emotive issue. It is nonetheless important that public policy initiatives to prevent and/or respond to child sexual abuse are based on the available evidence about child sex offenders.

This paper addresses five common misperceptions about the perpetrators of sexual offences against children. Specifically, the issues addressed include whether all child sex offenders are 'paedophiles', who sexually abuse children, whether most child sex offenders were victims of sexual abuse themselves, rates of recidivism among child sex offenders and the number of children sex offenders typically abuse before they are detected by police.

The evidence outlined in this paper highlights that there are few black and white answers to these questions. Perpetrators of sexual crimes against children are not, contrary to widespread opinion, a homogenous group. Rather, there are a number of varied offending profiles that characterise child sex offenders. Gaining an understanding of the nuances of this offender population is critical if children are to be protected from sexual abuse.

*Adam Tomison*
*Director*

The sexual abuse of children is a serious social concern in Australia. According to the Australian Bureau of Statistics' (ABS 2005) *Personal Safety Survey*, 12 percent of women and 4.5 percent of men in Australia report having been sexually abused before the age of 15 years. The survey defined child sexual abuse as 'any act, by an adult, involving a child under the age of 15 years in sexual activity' (ABS 2005: 12). In total, the ABS (2005: 42) estimated that in 2005, 1,294,000 people living in Australia (337,400 males and 956,600 females) had experienced sexual abuse before the age of 15. The Australian Institute of Health and Welfare's (AIHW 2010) data on child protection indicate that during the 2008–09 financial year, there were 5,591 substantiations of child abuse notifications for sexual abuse of children aged 17 years or less. This figure does not reflect the total number of incidents of child sexual abuse, as much child sexual abuse goes unreported.

The prevalence of child sexual abuse is difficult to determine for a variety of reasons and estimates vary considerably. Finkelhor (1994) found that internationally, estimates vary from between seven percent and 36 percent for women, and three and 29 percent for men. A random sample of 2,869 18 to 24 year olds in the United Kingdom found that 11 percent reported having been sexually abused before the age of 13 years (Cawson et al. 2000). Price-Robertson, Bromfield and Vassallo's (2010) summary of Australian prevalence studies estimates that four to eight percent of males and seven to 12 percent of females experience penetrative child sexual abuse and 12 to 16 percent of males and 23 to 36 percent of females experience non-penetrative child sexual abuse.

As Price-Robertson, Bromfield and Vassallo (2010) suggest, the term 'child sexual abuse' refers to a wide variety of behaviours, including both contact offences (eg fondling genitals, masturbation, oral sex, vaginal or anal penetration by a penis, finger or another object, fondling of breasts) and non-contact offences (eg voyeurism, exhibitionism and exposing the child to pornography). Definitions of child sexual abuse adopted by researchers can influence the prevalence of abuse reported (Price-Robertson, Bromfield & Vassallo 2010).

It has been well-documented that the sexual abuse of children has a range of very serious consequences for victims. Zwi et al. (2007) list depression, post-traumatic stress disorder, antisocial behaviours, suicidality, eating disorders, alcohol and drug misuse, post-partum depression, parenting difficulties, sexual re-victimisation and sexual dysfunction as some of the manifestations of child sexual abuse among victims (see also Abel & Harlow 2001; Kendall-Tackett, Williams & Finkelhor 2001). Misperceptions about those who sexually abuse children abound. In this paper, five common misperceptions about child sex offenders are discussed and the evidence in support of them assessed.

## Misperception 1: All child sex offenders are paedophiles

The terms 'paedophile' and 'child sex offender' are often used interchangeably (Nellis 2009). It is important to understand, however, that the two terms have different meanings; not all child sex offenders are paedophiles and conversely, not all paedophiles are child sex offenders.

The *Diagnostic and Statistical Manual IV* (APA 1994: 572) uses the following criteria to diagnose paedophilia:

A. Over a period of at least 6 months, [the person has had] recurrent, intense sexually arousing fantasies, sexual urges, or behaviours involving sexual activity with a prepubescent child or children (generally aged 13 years or younger);

B. The person has acted on these sexual urges, or the sexual urges or fantasies cause marked distress or interpersonal difficulty; and

C. The person is at least 16 years and at least 5 years older than the child or children in Criterion A.

Revisions to the *Diagnostic and Statistical Manual IV* now recognise that experiencing distress about sexual urges, fantasies or behaviours should no longer be a required element of the diagnosis of a paedophile (Moulden et al. 2009). As Moulden et al. (2009: 681) argue, 'given the egosyntonic nature of Pedophilia, [this criterion] is simply nonsensical'. That is, it is somewhat tautological to suggest that paedophilia can only be diagnosed if sexual interest in children causes the individual to become distressed, as a lack of distress about being sexually interested in children can characterise paedophilia.

Although the *Diagnostic and Statistical Manual IV* has been criticised on a number of grounds (Moulden et al. 2009), the diagnostic criteria for paedophilia provide a helpful framework for understanding that not all child sex offenders are paedophiles and not all paedophiles are child sex offenders. As this suggests, paedophiles are those individuals who are sexually attracted to young children; these individuals may or may not act on this attraction. Conversely, while some child sex offenders are attracted to children, others may have sexual interest in and/or offend against both children and adults, and/or may act out of opportunity rather than an exclusive sexual interest in children.

It should also be noted that the term 'paedophile' refers specifically to those attracted to prepubescent children. Those attracted to pubescent children are described in the literature as 'hebephiles' (see eg Blanchard & Barbaree 2005). As Bahroo (2003: 498) argues, however, it may be more accurate to consider these classifications 'in terms of body type and build rather than in terms of age'. That is, child sex offenders who have a preference for a particular 'age group' are likely to be attracted to the typical body type of that age group rather than the age of the children per se.

### The role of opportunity in sexual offending against children

It is also important to recognise that not all child sex offenders feel driven or compelled to sexually abuse children. In fact, opportunity can play a key role in the commission of sexual offences against children. As Wortley and Smallbone (2006) argue, research has indicated that situational and environmental factors can play a key role in sexual offending against children. Smallbone and Wortley's (2001) own research on child sex offenders found, for example:

- a late onset of offending behaviour (37% were aged 31 to 40 years);
- a low incidence of chronic sexual offending (less than one-quarter had previous convictions for sexual offences);
- a high incidence of previous non-sexual offending (approximately 60% had convictions for non-sexual offences);
- a low incidence of stranger abuse (94% abused their own child or a child they already knew);
- a low incidence of networking among offenders (only about 8% had talked to other offenders);
- a low incidence of child pornography use (approximately 10% had used child pornography); and
- a low incidence of paraphilic interests (very small proportions could have been diagnosed with other sexually deviant interests such as voyeurism or sexual sadism; Wortley & Smallbone 2006).

These factors, the authors argue, challenge the view that 'most sexual offenders are dedicated, serial offenders driven by irresistible sexual urges' (Wortley & Smallbone 2006: 11) and suggest instead that the role of opportunity in child sexual abuse should be given more attention.

The role of opportunity has also been highlighted in research that considers specific types of sexual offending against children, including offending that occurs within church settings (Parkinson 2000), online child exploitation (Choo 2009) and child sex 'tourism' (McLachlan 2000).

The relationship between opportunity and offending sexually against children is, however, a complex one and needs to be researched in greater detail. For example, it is clear that although women have far more opportunities than men to abuse children (eg as primary carers of children in the home and in child-centred occupations such as childcare and teaching), these opportunities are rarely acted on. As discussed in more detail below, men sexually abuse children far more frequently than do women (Abel & Harlow 2001) and some child sex offenders go to great lengths to have access to large numbers of children to abuse and in some cases, even choose their employment based on this (Sullivan & Beech 2004).

Nonetheless, while child sex offenders are often depicted as predatory 'paedophiles' who have a persistent sexual interest in children, it is important to acknowledge that both predation and opportunity can lead to the sexual victimisation of children.

## Misperception 2: Child sex offenders target strangers

Although parents often fear that strangers will abuse their children, it has been well-documented that most child sex offenders are known to their victims.

### Who sexually abuses children in Australia?

According to the Australian Bureau of Statistics' (2005) *Personal Safety Survey*, of all those who reported having been victimised sexually before the age of 15 years, 11.1 percent were victimised by a stranger. More commonly, child sexual abuse was perpetrated by a male relative (other than the victim's father or stepfather; 30.2%), a family friend (16.3%), an acquaintance or neighbour (15.6%), another known person (15.3%), or the father or stepfather (13.5%; see Figure 1). It should be noted that these totals add to more than 100 percent (103.7%); this indicates that a small proportion of child sexual abuse victims (3.7%) were abused by perpetrators belonging to more than one category.

Small proportions of victims were sexually abused by a female relative (other than the mother or stepmother; 0.9%) or by their mother or stepmother (0.8%; although both of these figures have a high standard error and should be interpreted with caution; ABS 2005). It should be noted that the perpetrator categories 'family friend', 'acquaintance/neighbour', 'stranger' and 'other known person' have not been disaggregated by gender. It is not possible to determine, therefore, what proportion of each of these categories is male/female. International research, such as Cawson et al. (2000), has similarly found that children are most frequently abused by someone known but not necessarily related to them.

The relationship of victims of child sexual abuse to the perpetrator varied by the sex of the victim. Female victims were most likely to have been abused by another male relative (35.1%), followed by their father or stepfather (16.5%), a family friend (also 16.5%), an acquaintance or neighbour (15.4%), another known person (11%) or a stranger (8.6%). Very small proportions were sexually abused by another female relative (1%) or their mother or stepmother (0.6%; although both these figures have a high standard error and should be interpreted with caution). A small proportion of female victims (4.7%) reported perpetrators from more than one of these categories.

Male victims were most likely to be sexually abused by another known person (27.3%), followed by a stranger (18.3%), another male relative (16.4%), an acquaintance or neighbour (16.2%), or a family friend (15.6%). Small proportions were sexually abused by their father or stepfather (5%; this figure has a high standard error and should therefore be interpreted with caution). Proportions of male victims who were sexually abused by their mother or stepmother or another female relative are either not available for publication or considered too unreliable for general use (ABS 2005).

Despite an enduring fear of strangers abusing children, therefore, the evidence demonstrates that in the vast majority of cases, children's abusers are known to them. Importantly, however, male children are abused by strangers at a much higher rate than female children, with nearly one in five male victims of child sexual abuse identifying a stranger as the offender (ABS 2005).

### Misperception 3: All child sex offenders were victims of sexual abuse themselves

It is often argued that perpetrators of child sexual abuse have been the victims of child sexual abuse themselves (Salter 2003). That all, or most, perpetrators of child sexual abuse were themselves abused as children has become 'a pearl of conventional wisdom' (Hindman & Peters 2001: 9). As Salter (2003: 74) argues, this belief is 'strangely comforting':

> If offenders are just victims, then no one has to face the reality...that there are people out there who prey on others for reasons we simply don't understand (see also Hindman & Peters 2001).

Undoubtedly, a proportion of child sex offenders were abused themselves as children. It is very difficult, however, to accurately determine this proportion and results from studies vary substantially (Salter 2003; Simons 2007).

### Methodological issues in determining prevalence rates

There are a number of potential explanations for these inconsistencies in prevalence rates. A higher proportion of child sex offenders from treatment populations (rather than prison populations) may report having been abused as children because participation in treatment encourages disclosure of this kind.

> Offenders who receive treatment may disclose abuse more readily as a result of a strong therapeutic relationship (e.g., trust), an enhanced understanding of sexual abuse, or as an acceptable justification of their offending behaviors (Simons 2007: 62).

The use of emotionally-laden terminology may also influence the proportion of child sex offenders that discloses experiences of childhood victimisation. A study by Simons et al. (cited in Simons 2007) found that 30 percent of child sex offenders responded in the affirmative to the question 'have you been sexually abused?' Descriptions of the act of sexual abuse, however, produced prevalence rates of 58 percent (Simons 2007). As Simons (2007) argues, this finding may be due to male child sex offenders being reluctant to disclose histories of sexual abuse due to shame, or perceiving the abuse as consensual. This may be particularly the case if the abuser was female (Simons 2007). It should be noted, however, that the reverse may also sometimes be the case; that is, child sex offenders may exaggerate claims of childhood victimisation 'to justify their offending or to elicit sympathy from therapists, courts, and parole board members' (Simons 2007: 61).

Studies that aim to ascertain prevalence rates of childhood sexual abuse among offending populations usually rely on self-report measures, which require offenders both to tell the truth about, and accurately recall, their experiences as children. To overcome the limitations of these studies, a number of researchers have compared self-reports by child sex offenders with self-reports of child sex offenders subjected to polygraph testing. For example, Hindman and Peters (2001) reviewed a number of studies in which child sex offenders were required to self-report whether they had been sexually abused as children and compared the results with studies in which child sex offenders were also asked to self-report whether they had been sexually abused as children, but had their responses verified by polygraph testing. Hindman and Peters (2001: 10) found that

more than two-thirds of the non-polygraphed group claimed to have been sexually abused as children; in the polygraphed group, however, that number dropped to 29 percent—far more in keeping with studies of the prevalence of sexual abuse in the community generally.

Although the validity of polygraph testing has been questioned (Ansley 1997), as Salter (2003) argues, polygraph tests are likely to reveal accurate self-reports of child sexual abuse if the offenders undertaking the tests believe in their validity.

These studies have, however, been criticised on a number of grounds, including that the two groups of child sex offenders were not properly matched on the extent and nature of the abuse and demographic characteristics (Lee et al. 2002). Differences between the two groups may therefore reflect genuine differences in the prevalence of childhood sexual abuse rather than differences resulting from the use of polygraph testing. Lee et al. (2002: 75) argue, therefore, that 'while there is a possibility that sex offenders may fake their histories of childhood sexual abuse, the evidence is equivocal'.

### The complex relationship between being abused and becoming an abuser

It is, therefore, difficult to determine with accuracy the proportion of child sex offenders that has experienced child sexual abuse. Three key related points should be recognised about the 'victimiser-as-victim' hypothesis. First, child sexual abuse does not *cause* individuals to become perpetrators later in life. Rather, experiencing sexual abuse (and other forms of maltreatment) in childhood has been found to be *correlated with* the perpetration of child sexual abuse later in life (Simons 2007). That is, although these two phenomena frequently co-occur, victimisation does not cause later offending. As Simons (2007: 71) states, 'not all victims of sexual or physical abuse become perpetrators, and not all sexual offenders have experienced abuse as children'. Indeed, research shows that the majority of victims of child sexual abuse do not become perpetrators of child sexual abuse later in life (Salter et al. 2003).

Second, it has been argued that particular characteristics of child sexual abuse have been found to be more closely associated with later perpetration of sexual abuse against children. There are, however, conflicting research findings about this issue.

For example, while having a male perpetrator has been shown in some studies to increase the likelihood of a victim of child sexual abuse becoming a perpetrator later in life (Simons 2007), a number of studies have found conversely that for male victims, having a female perpetrator increases this likelihood (Glasser et al. 2001; Salter et al. 2003). Further, while it has been found in some studies that more invasive abuse (eg penetration) and a longer duration of abuse are correlated with increased likelihood of perpetrating sexual offences against children later in life, Salter et al. (2003) found that more invasive abuse did not have this impact and Lambie et al. (2002) found that a longer duration of abuse did not necessarily correlate with an increased likelihood of becoming a perpetrator. These conflicting findings suggest that further consideration of this important issue is needed in future research.

Third, a range of factors has been found to interact with childhood experiences of sexual victimisation and to differentially impact a child's likelihood of later becoming a perpetrator. Factors that increase this likelihood include:

- experiencing emotional and physical abuse or neglect as a child (Salter et al. 2003);
- being exposed to family violence (Salter et al. 2003); and
- early exposure to pornography (Simons 2007).

It appears, therefore, that the relationship between childhood experiences of sexual abuse and later perpetration of child sexual abuse is a complex one that requires a great deal of further research. Two key considerations in this regard are the role of gender in determining whether victims of child sexual abuse become perpetrators and the role of protective factors in preventing those who experience child sexual abuse from becoming perpetrators later in life. Key questions to address therefore include:

- what prevents victims of child sexual abuse from becoming perpetrators themselves?
- what are the protective factors that prevent victims later becoming offenders?
- as most victims of child sexual abuse are female, but most perpetrators are male, what is the role of gender as a risk or protective factor?
- what does the evidence suggest is effective for intervening early with young people who begin in inappropriate ways sexually, or begin offending against younger children?

### Misperception 4: Child sex offenders have high rates of recidivism

Two contrasting arguments have been made about child sex offenders' proclivity to reoffend. In public and media discourse, child sex offenders are often constructed as compulsive recidivists who are virtually certain to reoffend. For example, in a second reading speech to the Legislative Council of South Australia about the Criminal Law (Sentencing) (Mandatory Imprisonment of Child Sex Offenders) Amendment Bill, one Parliamentarian described child sex offenders as 'beings of a subhuman category...[they are]...the least rehabilitatable people' (Bressington 2010).

Conversely, in the criminological literature, the opposite is often posited—that child sex offenders have low rates of recidivism compared with other types of offenders (see eg McSherry & Keyzer 2009; Minnesota Department of Corrections 2007).

It is certainly the case that many studies of child sex offenders have found low levels of recidivism (Doren 1998). Measuring sexual recidivism is, however, a challenging task (see Falshaw, Friendship & Bates 2003 for a discussion) and it is important to be aware of the limitations of these studies. There are a number of key decisions that researchers make when measuring the recidivism of child sex offenders that can impact the findings of studies. Two key decisions are the definition of recidivism and the period of time over which recidivism is measured.

In most studies of general reoffending, recidivism is defined as a reconviction for

a new offence. As sexual offences are often not reported (Abel et al. 1987; Bates, Saunders & Wilson 2007) and sexual offending against children has one of the highest rates of attrition of any offence (ie a relatively small proportion of cases progresses successfully through the criminal justice system; Eastwood, Kift & Grace 2006), studies of child sex offender recidivism that rely on reconvictions as a measure of recidivism provide only 'a diluted measure of true reoffense rates' (Doren 1998: 99).

As a result, some studies of child sex offender recidivism have defined recidivism as an arrest or charge (rather than a conviction) for a new sexual offence. This approach is also limited, but is likely to provide a more accurate measure of recidivism than reconvictions. As Doren (1998: 101) argues

> although some portion of the people charged with a new sexual crime may [have] been both innocent of that charge and of any other recidivating sexually predatory acts, this portion would likely be far smaller than the number of re-offenders who are never caught and charged.

For a variety of reasons, recidivism studies usually follow up offenders over a short period, such as two or three years. While this is often necessary due to time and budget constraints, the longer a period over which recidivism in measured, the higher the rate of recidivism is likely to be (Tresidder, Homel & Payne 2009). While child sex offender studies often show low levels of recidivism, Salter (2003) argues that these studies obscure the reality that in the long term, rates of recidivism can be much higher (see also Bates, Saunders & Wilson 2007).

Studies that narrowly define recidivism and use short follow-up periods may therefore underestimate the rate of recidivism of child sex offenders (Moulden et al. 2009). Prentky et al.'s (cited in Doren 1998) study of recidivism rates among extrafamilial child sex offenders over a 25 year period used a new charge for a sex offence as the measure of recidivism. This study found that 52 percent of child sex offenders reoffended during the 25 year at-risk period. As Doren (1998: 101) argues, however, due to the limitations of recidivism studies on child sex offenders described above

the 52% recidivist figure should be considered as a conservative approximation of the true base rate for sex offense recidivism in previously convicted child molesters...[it]... represents the lowest approximation for extrafamilial child molester sexual recidivism.

As described above, the category of 'child sex offender' includes diverse offenders with diverse motivations, including those who meet the diagnostic criteria for paedophilia. It is important to recognise that within the broad offender category of child sex offenders, some subcategories of offenders are likely to be at greater risk of reoffending than others. As Petrunik and Deutschmann (2008: 500) argue:

> some sex offenders—notably, extrafamilial offenders with male victims who meet clinical criteria for paraphilias, such as paedophilia or exhibitionism—do offend with high frequency over long periods.

Research by Prentky et al. (cited in Doren 1998) described above, measured the recidivism of extrafamilial child sex offenders. As discussed in more detail below, research shows that extrafamilial child sex offenders perpetrate offences against many more victims than intrafamilial offenders and should therefore not be considered representative of all child sex offenders.

The empirical literature therefore suggests that both the media's insistence that child sex offenders are compulsive recidivists and criminologists' counterargument that child sex offenders are unlikely to reoffend may be somewhat skewed. While better quality evidence is required on the question of child sex offender recidivism, the existing research literature indicates that some subgroups of child sex offenders have higher rates of recidivism than others. For example, those who offend against children in their own families have access to only a small number of children, thereby limiting opportunities for recidivism to occur. The competing claims outlined at the opening of this section—ie that all child sex offenders will reoffend/that there is a low recidivism rate among child sex offenders—may not be as mutually exclusive as they appear. The research literature indicates that among

a subset of child sex offenders—those who target male victims outside of their family— reoffending in the long term is likely and far more likely than for child sex offenders who target female and/or family member victims.

### Misperception 5: By the time an offender is detected, he has victimised hundreds of children

In public discourse, including internet sites designed to combat child sex offending, it is frequently claimed that by the time a child sex offender is detected, he will have amassed a very large number of victims or committed a very large number of child sex offences. Bressington (2010: 533), for example, drew on the claim that 'a child sex offender has probably committed 300 to 400 crimes against children before being caught' in her second reading speech to the Legislative Council of South Australia.

This misperception has even permeated the academic literature on child sex offenders. Salter (2003: 13–14), a psychologist and expert on sexual offending, claims that

> in all the interviews I have done, I cannot remember one offender who did not admit privately to more victims than those for whom he had been caught. On the contrary, most offenders had been charged with and/or convicted of [offences against] from one to three victims. In the interviews I have done, they have admitted to roughly 10 to 1,250 victims.

Salter (2003: 11) goes on to cite research by Abel et al. (1987), which she claims found that

> men who molest out-of-home female children averaged twenty victims.... [and]....men who molested out-of-home male children were even more active... averaging 150 victims each.

Strictly speaking, this is correct; a self-report study by Abel et al. (1987) of non-incarcerated paraphiliacs (ie those with a range of sexually deviant fantasies and/or behaviours, including paedophiles) did find that paedophiles who committed non-incest offences against female victims averaged 20 victims each and that paedophiles who commit non-incest offences against male victims averaged 150 victims each. The

*median* number (ie the middle value) of victims of perpetrators of paedophilia (non-incest) against female children and paedophilia (non-incest) against male children were, however, 1.3 and 4.4 respectively. Abel et al. (1987: 15) state that

> most paraphilic diagnoses have means that are much higher than the corresponding medians, indicating that some individuals in each diagnostic category completed very large numbers of paraphilic acts. The median values better approximate the frequency of the usual paraphilic behavior (see also Abel & Osborn 1992).

Abel et al.'s (1987) median figures of 1.3 female and 4.4 male non-incest victims therefore provide a more accurate insight into the true number of victims of child sex offenders who target children outside of their family. The modal value—that is, the most frequently reported number of victims—would provide further insight. Abel et al. (1987) do not, however, report this.

Further, it should be recognised that these figures relate to extrafamilial child sex offenders—those known to offend at the highest rates. As discussed above, while the differences between child sex offenders and other types of offenders and/or the wider community have often been focused on, differences among child sex offenders have been less frequently explored. As a consequence, child sex offenders are sometimes considered a homogenous cohort of offenders—a view that is not empirically supported.

In fact, child sex offenders are a heterogeneous group, with varying offending profiles. Abel et al.'s (1987) study found key differences between incest perpetrators and other child sex offenders. Abel et al. (1987) found that perpetrators of paedophilia (incest) had a median of 1.3 victims (for those who targeted female children) and 1.2 victims (for those who targeted male children; n=159 and 44 respectively; mean=1.8 and 1.7 respectively). Paedophilia (incest) perpetrators reported a very high number of acts per victim by comparison with paedophilia (non-incest) perpetrators. Paedophilia (incest) perpetrators with female targets had an average of 45.2 acts per victim; those with male targets had an average of 36.5 acts per victim (n=159 and 44 respectively; medians not reported).

The profile of paedophilia (non-incest) perpetrators differed substantially from this. As described above, paedophilia (non-incest) perpetrators had a median of 1.3 victims (for those who targeted female children) and 4.4 victims (for those who targeted male children; n=224 and 153 respectively; mean=19.8 and 150.2 respectively). The number of completed acts per victim was comparatively low, at an average of 1.2 for female victims and 1.9 for male victims (Abel et al. 1987).

Self-report studies such as Abel et al.'s (1987) should, of course, be cautiously considered, as self-report can be a weak research design (Salter 2003). Hindman and Peters (2001) reviewed a number of studies in which the self-reported offending behaviour of child sex offenders was able to be compared with self-reported offending behaviour of child sex offenders who were required to undertake a polygraph test. Hindman and Peters (2001) found that without the threat of having to undergo a polygraph test, child sex offenders understated by a factor of five to six times the number of sexual offences they had committed. In one study, the average number of victims reported increased from 1.5 to nine once the polygraph test was introduced (a sixfold increase). In the other two studies of this nature discussed, the average number of reported victims increased from 2.5 to 13.6 (a fivefold increase) and from 2.9 to 11.6 (a fourfold increase; Hindman & Peters 2001).

Determining the average number of victims offended against by child sex offenders is a challenging task and estimates vary considerably. A number of factors contribute towards obscuring true figures and should be taken into consideration:

- whether 'victim counts' or 'incident counts' have been used. As Abel et al.'s (1987) research demonstrates, for some subsets of child sex offenders (ie intrafamilial child sex offenders), the number of *incidents* of abuse is often far higher than the number of *victims*. It is critical that these two measures are not confused;

- whether the mean or median is presented. Abel et al.'s (1987) research shows that, due to a small number of child sex offenders victimising a large number of children, the median number of victims is a more accurate measure than the mean. This is not to suggest that the behaviour of this small cohort of offenders should not be considered, but that it should not be considered representative of all child sex offenders;

- whether perpetrators of sexual offences against adults and perpetrators of sexual offences against children have been grouped together. It appears that offenders who target adults and offenders who target children may reoffend at different rates (see Doren 1998). Where these cohorts of offenders have been grouped together, the number of victims offended against by those who target children specifically may be obscured; and

- whether all child sex offenders have been grouped together. As discussed earlier in this paper, subsets of child sex offenders have varied offending profiles, with those who target male victims and extrafamilial victims likely to create a higher number of victims than perpetrators of intrafamilial sexual abuse against children (Smallbone & Wortley 2001).

Undoubtedly, there are some child sex offenders who victimise very large numbers of children. For example, in a recent case in the Netherlands, a man confessed to sexually abusing 83 children during his employment at two crèches and as a babysitter ('Dutch creche worker abused 83 children' *9 News* 12 January 2011. http://news.ninemsn.com.au/world/8195429/dutch-creche-worker-admits-abusing-83-children). In another case documented by Salter (2003), a school athletics director abused children over a period of nearly 20 years. This man estimated he had abused 1,250 children.

As these examples suggest, this type of perpetrator usually has access to large numbers of children over an extended period of time. Many are 'professional perpetrators'; that is, those who use 'the institutions or organizations within which they work to target and abuse children'

(Sullivan & Beech 2004: 39). Sullivan and Beech's (2004) study of professional perpetrators (n=41) found that 15 percent chose their occupation (eg clergy, teaching, child care) exclusively so they could sexually abuse children and a further 41.5 percent admitted that this was part of their motivation. In addition, Sullivan and Beech (2004: 49) found that

> most perpetrators interviewed listed several different areas of contact with children, [and] some have spoken of switching to the voluntary or charity sector to continue abusing as a result of being discovered sexually abusing children in their professional capacity.

Due to the small sample size of Sullivan and Beech's (2004) study, these results should be interpreted cautiously. It must be recognised, in addition, that 'professional perpetrators' by no means comprise the majority of child sexual offenders. As outlined above, around three-quarters of children are victimised by a relative, family friend, acquaintance or neighbour (see Figure 1). Furthermore, as Abel et al.'s (1987) research demonstrates, many child sex offenders are incest perpetrators who usually perpetrate a large number of offences against a very small number of victims (ie their own children).

Given also the heterogeneity of child sex offenders, it is unlikely that *on average* child sex offenders have victimised hundreds of children before coming to the attention of authorities. This is, however, undoubtedly the case for a subset of child sex offenders.

## Conclusion

An understanding of child sex offenders, based on the available evidence, is critical if child sexual abuse is to be prevented and responded to in effective ways. A wide range of criminal justice and related professionals (eg police, therapists, corrections) and processes (eg investigative, court, sentencing) deal with child sex offenders and could benefit from an accurate understanding of this population of offenders. This paper contributes to the literature on perpetrators of child sexual abuse by outlining the evidence around a number of common misperceptions. Specifically, it highlights that:

- not all child sex offenders are 'paedophiles'. That is, child sex offenders are a heterogeneous group with varying offender profiles;
- children are usually abused by someone they know, although data suggest that strangers comprise nearly one in five perpetrators of child sexual abuse against males;
- not all child sex offenders have been victims of sexual abuse themselves and there are complex relationships between being a victim of child sexual abuse and becoming a perpetrator, which require further research. It is important to recognise that while many offenders report a history of being sexually abused, most victims of child sexual abuse do not become perpetrators later in life;
- while not all child sex offenders have high rates of recidivism, a specific subset— those who target extrafamilial male children—do frequently reoffend; and
- although it is difficult to accurately determine how many children a child sex offender has already offended against by the time he is detected for an offence, this number varies according to offending profiles and is unlikely to be as high as is commonly assumed. There is, however, a subset of extrafamilial male offenders who abuse high numbers of victims.

Although sexual offending against children is a highly emotive issue, it is important that the empirical literature on this topic underpins any public policy response to child sex offenders (eg risk assessment, treatment, investigative and court processes, sentencing, child protection policies) in order to ensure the implementation of approaches that are best placed to enhance public safety and protect children from sexual abuse. A future paper will explore some of the current policy issues in prosecuting and managing sex offenders, once they have been identified.



**Figure 1** Relationship of victims of child sexual abuse to perpetrator (n=1,294,000)[a]

- 0.8% Mother or stepmother[b]
- 0.9% Female relative (other than the mother or stepmother)[b]
- 30.2% Male relative (other than the father or stepfather)
- 11.1% Stranger
- 13.5% Father or stepfather
- 15.3% Other known person
- 15.6% Acquaintance or neighbour
- 16.3% Family friend

a: Total adds to more than 100 percent (103.7%). This indicates that a small proportion of child sexual abuse victims (3.7%) were abused by perpetrators belonging to more than one category

b: These figures have a high standard error and should be interpreted with caution (ABS 2005)

Source: ABS (2005)

## References

All URLs were correct at July 2011

Abel G et al. 1987. Self-reported sex crimes of nonincarcerated paraphiliacs. *Journal of Interpersonal Violence* 2(1): 3–25

Abel G & Harlow N 2001. *The stop child molestation book: What ordinary people can do in their everyday lives to save three million children*. Bloomington: Xlibris

Abel G & Osborn C 1992. The paraphilias: The extent and nature of sexually deviant and criminal behavior. *Psychiatric Clinics of North America* 15(3): 675–687

American Psychiatric Association (APA) 1994. *Diagnostic and statistical manual of mental disorders: DSM IV*. Arlington: American Psychiatric Association

Ansley N 1997. The validity and reliability of polygraph testing. *Polygraph* 26(4): 215–239

Kelly Richards is a Senior Research Analyst at the Australian Institute of Criminology

General editor, *Trends & issues in crime and criminal justice* series:
Dr Adam M Tomison, Director,
Australian Institute of Criminology

Note: *Trends & issues in crime and criminal justice* papers are peer reviewed

For a complete list and the full text of the papers in the *Trends & issues in crime and criminal justice* series, visit the AIC website at: http://www.aic.gov.au

ISSN 0817-8542 (Print)
1836-2206 (Online)

© Australian Institute of Criminology 2011

GPO Box 2944
Canberra ACT 2601, Australia
Tel: 02 6260 9200
Fax: 02 6260 9299

Disclaimer: This research paper does not necessarily reflect the policy position of the Australian Government

Australian Bureau of Statistics (ABS) 2005. *Personal safety survey Australia*. cat. no. 4906.0. Canberra: ABS. http://www.abs.gov.au/ausstats/abs@.nsf/mf/4906.0/

Australian Institute of Health and Welfare (AIHW) 2010. *Child protection Australia 2008–09*. Canberra: AIHW. http://www.aihw.gov.au/publications/index.cfm/title/10859

Bahroo B 2003. Pedophilia: Psychiatric insights. *Family Court Review* 41(4): 497–507

Bates A, Saunders R & Wilson C 2007. Doing something about it: A follow-up study of sex offenders participating in Thames Valley circles of support and accountability. *British Journal of Community Justice* 5(1): 19–42

Blanchard R & Barbaree H 2005. The strength of sexual arousal as a function of the age of the sex offender: Comparisons among pedophiles, hebephiles, and teleiophiles. *Sexual Abuse: A Journal of Research and Treatment* 17(4): 441–456

Bressington A 2010. *Hansard: Criminal Law (Sentencing) (Mandatory Imprisonment of Child Sex Offenders) Amendment Bill*. Adelaide: Legislative Council of South Australia

Cawson P, Wattam C, Brooker S & Kelly G 2000. *Child maltreatment in the United Kingdom: A study of the prevalence of abuse and neglect*. London: NSPCC

Choo K-K 2009. Responding to online child sexual grooming: An industry perspective. *Trends & Issues in Crime and Criminal Justice* no. 379. Canberra: Australian Institute of Criminology. http://www.aic.gov.au/publications/current%20series/tandi/361-380/tandi379.aspx

Doren D 1998. Recidivism base rates, predictions of sex offender recidivism and the 'sexual predator' commitment laws. *Behavioural Sciences and the Law* 16: 97–114

Eastwood C, Kift S & Grace R 2006. Attrition in child sexual assault cases: Why Lord Chief Justice Hale got it wrong. *Journal of Judicial Administration* 16(2): 81–91

Falshaw L, Friendship C & Bates A 2003. *Sexual offenders: Measuring reconviction, reoffending and recidivism*. London: Home Office. http://rds.homeoffice.gov.uk/rds/pdfs2/r183.pdf

Finkelhor D 1994. The international epidemiology of child sexual abuse. *Child Abuse and Neglect* 18(5): 409–417

Glasser M et al. 2001. Cycle of child sexual abuse: Links between being a victim and becoming a perpetrator. *British Journal of Psychiatry* 179: 482–494

Hindman J & Peters J 2001. Polygraph testing leads to better understanding adult and juvenile sex offenders. *Federal Probation* 65(3): 8–15

Kendall-Tackett K, Williams L & Finkelhor D 2001. Impact of sexual abuse on children: A review and synthesis of recent empirical studies, in Bull R (ed), *Children and the law: The essential readings*. Oxford: Blackwell Publisher Ltd: 31–76

Lambie I, Seymour F, Lee A & Adams P 2002. Resiliency in the victim-offender cycle in male sexual abuse. *Sexual Abuse: A Journal of Research and Treatment* 14(1): 31–48

Lee J, Jackson H, Pattison P & Ward T 2002. Developmental risk factors for sexual offending. *Child Abuse & Neglect* 26: 73–92

McLachlan R 2000. Sex offenders against children at home and abroad. *International Criminal Police Review* 438: 32

McSherry B & Keyzer P 2009. *Sex offenders and preventative detention: Politics, policy and practice*. Leichhardt: Federation Press

Minnesota Department of Corrections 2007. *Sex offender recidivism in Minnesota*. St Paul: Minnesota Department of Corrections. http://www.corr.state.mn.us/publications/publications.htm

Moulden H, Firestone P, Kingston D & Bradford J 2009. Recidivism in pedophiles: An investigation using different diagnostic methods. *Journal of Forensic Psychiatry & Psychology* 20(5): 680–701

Nellis M 2009. Circles of support and accountability for sex offenders in England and Wales: Their origins and implementation between 1999–2005. *British Journal of Community Justice* 7: 23–44

Parkinson P 2000. The problem of child sexual abuse in church communities, in Queensland Crime Commission and Queensland Police Service (eds) *Project AXIS: Child sexual abuse in Queensland: Selected research papers*. Brisbane: Queensland Crime Commission. http://www.cmc.qld.gov.au/data/portal/00000005/content/95548001141363318459.pdf: 61–74

Petrunik M & Deutschmann L 2008. The exclusion-inclusion spectrum in state and community response to sex offenders in Anglo-American and European jurisdictions. *International Journal of Offender Therapy and Comparative Criminology* 52(5): 499–519

Price-Robertson R, Bromfield L & Vassallo S 2010. *The prevalence of child abuse and neglect*. Melbourne: Australian Institute of Family Studies. http://www.aifs.gov.au/nch/pubs/sheets/rs21/rs21.pdf

Salter A 2003. *Predators: Pedophiles, rapists & other sex offenders: Who they are, how they operate, and how we can protect ourselves and our children*. New York: Basic Books

Salter D et al. 2003. Development of sexually abusive behaviour in sexually victimised males: A longitudinal study. *The Lancet* 361(9356): 471–476

Simons D 2007. Understanding victimization among sexual abusers, in Prescott D (ed), *Knowledge & practice: Challenges in the treatment and supervision of sexual abusers*. Oklahoma City: Wood 'N' Barnes Publishing: 56–90

Smallbone S & Wortley R 2001. Child sexual abuse: Offender characteristics and modus operandi. *Trends & Issues in Crime and Criminal Justice* no. 193. Canberra: Australian Institute of Criminology. http://aic.gov.au/publications/current%20series/tandi/181-200/tandi193.aspx

Sullivan J & Beech A 2004. A comparative study of demographic data relating to intra- and extra-familial child sexual abusers and professional perpetrators. *Journal of Sexual Aggression* 10(1): 39–50

Tresidder J, Homel P & Payne J 2009. *Measuring youth justice outcomes*. Canberra: Australian Institute of Criminology

Wortley R & Smallbone S 2006. Applying situational principles to sexual offenses against children, in Wortley R & Smallbone S (eds), *Situational prevention of child sexual abuse*, Crime Prevention Series 19. Monsey: Criminal Justice Press: 7–35

Zwi et al. 2007. *School-based education programmes for the prevention of child sexual abuse*. Oslo: Campbell Collaboration