# Exhibit 82:

# Plaintiffs' First Request to Admit and Defendants' Responses

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOHN DOES A, B, C, D, E, F, G, H,
MARY DOE and MARY ROE,
on behalf of themselves and
all others similarly situated,

                    File No. 2:22-cv-10209

        Plaintiffs,

v.                            Hon. Mark A. Goldsmith

GRETCHEN WHITMER, Governor of the    Mag. Curtis Ivy, Jr.
State of Michigan, and COL. JOSEPH
GASPER, Director of the Michigan State
Police, in their official capacities,

        Defendants.

_____

## PLAINTIFFS' FIRST
## REQUESTS FOR ADMISSION

These requests for admission are made pursuant to Fed. R. Civ. P. 36. Your responses must be served on Plaintiffs' attorneys pursuant to the Court's scheduling order (ECF 66). The answers should include information known to Defendants and/or their agents which includes, for the governor, information known to her agents within both the Michigan State Police (MSP) and the Michigan Department of Corrections (MDOC). A set of group answers on behalf of all respondents is acceptable, so long as the answers identify who provided the information, and the answers are signed or adopted by each Defendant.

1

Fed. R. Civ. P. 36(a)(1) allows requests for admission relating to facts, the application of law to fact, or opinions about either. Pursuant to Fed. R. Civ. P. 36(a)(4), if a request is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only part of the request, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made a reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

### Definitions

The word "document" means information recorded in any form.

The word "identify", as used with respect to a person, means to state the person's full name, last-known employer, position/job title, business address, and last-known contact information (phone and email or other internet identifiers).

"Sex Offenders Registration Act" or "SORA" means M.C.L. § 28.721 *et. seq.*, both in its historical and current form.

"Sex Offenders Registration Act 2021" or "SORA 2021" means M.C.L. § 28.721 *et. seq.*, as amended effective March 24, 2021.

"Sex Offenders Registration Act 2011" or "SORA 2011" means all versions

of the SORA statute, M.C.L. § 28.721 *et. seq*., in effect between July 1, 2011, and March 24, 2021.

"Michigan sex offender registry" or "sex offender registry" means the registry created under Michigan's Sex Offenders Registration Act, M.C.L. § 28.721 *et. seq.* The terms "Michigan sex offender registry" or "sex offender registry" refer to both the public sex offender registry and the private sex offender registry, as defined below.

"Public sex offender registry" means the publicly available version of Michigan's sex offender registry that is maintained and made public pursuant to M.C.L. § 28.728(2).

"Private sex offender registry" means the version of Michigan's sex offender registry that is available to law enforcement pursuant to M.C.L. § 28.728(1).

"Sex offender registration database" of "MSOR database" means the database and computer programs in which information about the sex offender registry is maintained.

"Registrant" means an individual required to register as a sex offender under SORA.

"Sex Offender Registration Unit" or "SOR Unit" means the unit within the Michigan State Police responsible for maintaining the sex offender registry database.

"Law enforcement" means prosecutorial entities, police entities, and correctional entities, including federal, state, local, and tribal entities.

"*Does I*" mans the *Does v. Snyder*, 12-cv-11194 (E.D. Mich.) litigation.

"*Does II*" means the *Does v. Snyder*, 16-cv-13137 (E.D. Mich.) litigation.

"Legislative workgroup" means the group that met periodically in Lansing during the litigation of *Does v. Snyder*, 16-cv-13137 (E.D. Mich.) (*Does II*), in an effort to craft a new SOR statute that would resolve that litigation and address the constitutional issues identified in *Does v. Snyder*, 12-cv-11194 (E.D. Mich.) (*Does I*) by the district court and Sixth Circuit.

"Member of the legislative workgroup" means anyone who participated in one or more of the meetings of the legislative workgroup.

"Currently" or "Current" means at the present time or, if information is not available for the present time, the most recent date available.

"Adjudication" means a disposition in a juvenile proceeding or in a deferral program that does not result in a criminal conviction.

"Public email alert account" means an account created when an individual or entity signs up with the Michigan Sex Offender Registry to receive notices about registrants.

"Officer alert" means a notification directed to law enforcement on a registrant's record in the private sex offender registry.

4

"Non-compliant with SORA" means that a registrant has been identified by law enforcement as not in compliance with SORA requirements. It does not mean that the individual necessarily has been or will be charged with a SORA violation.

"Individualized assessment" means an individualized review of the likelihood that a person will commit a sex offense (not simply based on the registrable conviction).

"Risk assessment" means use of a statistically-validated instrument to assess the likelihood that a person will commit a sex offense (not simply based on the registrable conviction).

Explanation of Duties" means the notice provided to registrants regarding their obligations under SORA, currently form Michigan State Police form RI-004.

The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun, and vice versa; and the past tense shall include the present tense where the clear meaning is not distorted.

## PLAINTIFFS' FIRST REQUESTS TO ADMIT

1. Plaintiffs' Exhibit 2 (ECF 1-3), describing SORA 2021's obligations and restraints, accurately sets out registrants' duties/requirements for each obligation or restraint described. If you deny this RFA, please state with specificity each part of Exh. 2 that you maintain is inaccurate, and what is inaccurate about that part.

2. Michigan's registry has about 55,000 total registrants, of whom about 45,000 are Michigan residents.

3.  There are about 35,000 active registrants and about 10,000 incarcerated registrants.

4.  After the Sixth Circuit held that it was unconstitutional to apply SORA 2011 retroactively to the *Does I* plaintiffs, the defendants continued to apply SORA 2011 retroactively to other registrants whose registrable offenses pre-dated July 1, 2011.

5.  As a result of amendments to SORA, thousands of people have had their registration terms retroactively extended to life without any individualized assessment or risk assessment (as defined above).

6.  No formal process exists for registrants to challenge their tier classification.

7.  Under SORA 2011, tier classifications were based solely on the offense of conviction, without any individualized assessment or risk assessment (as defined above).

8.  Under SORA 2021, tier classifications are based solely on the offense of conviction, without any individualized assessment or risk assessment (as defined above).

9.  Under SORA 2011, registrants were simply required to acknowledge that they had read the Explanation of Duties form (or had it read to them) and to sign it. (Pre-2021 Explanation of Duties Form, Exh. 19, ECF 1-20.)

10. Under SORA 2021, registrants must now attest that they have read the form (or had it read to them) *and* that they *understand* their registration/reporting duties. (Post-2021 Explanation of Duties Form, Exh. 16, ECF 1-17.)

11. Under SORA 2021, it is a crime for registrants not to sign the Explanation of Duties form (acknowledging that they *understand* their registration/reporting duties).

12. Under SORA 2021, the signed forms can be used by prosecutors to argue that registrants' failure to register or other compliance violations are "willful" because the registrants acknowledged they understood their registration/reporting duties.

13. Under SORA 2011, registrants had to report all telephone numbers registered to or <u>routinely</u> used by them.

14. Under SORA 2021, registrants must report all telephone numbers registered to or <u>used</u> by them (without stated limitation as to when the use occurred or number of uses of a given phone), including but not limited to residential, work, and mobile phone numbers.

15. Under SORA 2011, registrants did not have to report changes to their telephone numbers immediately (which was defined as within 3 business days), but only at their next verification date.

16. Under SORA 2021, registrants must report any change in telephone numbers registered to or <u>used</u> by them (without stated limitation as to when the use occurred or the number of uses of a given phone) within three business days.

17. Under SORA 2011, registrants had to report the license plate number, registration number, and description, of motor vehicles owned or <u>regularly operated</u> by them.

18. Under SORA 2021, registrants must report the license plate and description of any vehicle owned <u>or operated</u> by them (without stated limitation as to when they operated the vehicle, or the number of times they operated a vehicle).

19. Under SORA 2011, registrants had to report within three business days when they purchased or began to regularly operate the vehicle, and when they discontinued ownership or operation of the vehicle.

20. Under SORA 2021, registrants must report <u>any change in the vehicle owned or operated by them</u> (with no stated limitation as to when they operated the vehicle, or the number of times they operated the vehicle) within three business days.

21. Under SORA 2011, registrants had to register all email addresses, and instant message (IM) addresses assigned to them or <u>routinely</u> used by them, and all login names or other identifiers used by them when using any email or IM system.

22. Under SORA 2021, registrants who are required to register after July 1, 2011, must report all email addresses and internet identifiers registered to or used

by them (without stated limitation as to when they were registered/used or number of uses).

23. Under SORA 2011, registrants had to report email addresses or instant message addresses, or any other designations used in internet communications or posting, within three business day of when they established the address.

24. In *Does I*, the district court adopting a reading of SORA that limited what internet information needed to be reported.

25. Under SORA 2021, the term "internet identifier" is defined to mean all designations used for self-identification or routing in internet communications or postings.

26. Routing is the process of selecting a path for traffic on the internet between or across multiple networks.

27. A device's IP address is a designation used for routing in internet communications.

28. SORA 2021 does not contain language limiting internet reporting to the types of information that were required under SORA 2011 based on the district court's narrowing construction in *Does I*.

29. SORA 2021 does not contain language limiting internet reporting to only email and instant messages addresses that a registrant routinely uses.

30. Under SORA 2021, registrants who are required to register after July 1, 2011, must report every email address and internet identifier registered to or used by the individual (without stated limitation as to when the use occurred or the number of uses).

31. Under SORA 2021, registrants who are required to register after July 1, 2011, must report any changes in electronic mail addresses and internet identifiers registered to or used by the individual (without stated limitation as to when the use occurred or the number of uses) within three business days.

32. Under SORA 2011, the public sex offender registry could not include registrants' email and IM addresses assigned to them or routinely used by them,

and any login names or other identifiers used by them when using those systems.

33. SORA 2021 deleted SORA 2011's prohibition on posting information about registrants' email and instant message accounts on the public sex offender registry.

34. Under SORA 2021 there is no longer any prohibition in SORA on including registrants' email and instant message accounts on the public sex offender registry.

35. Although registrants' email addresses, IM addresses, and other internet identifiers on the public sex offender registry are not currently posted on the public sex offender registry, nothing in Michigan law prevents the Michigan State Police from posting such information at any time.

36. Some people on probation or parole can report some information to probation or parole authorities by phone, email, or online.

37. Under SORA 2021, registrants cannot report changes to their information by phone, email, or online.

38. SORA 2011 placed registrants on the *public* registry, based only on their offense of conviction, and without any individualized assessment or risk assessment (as defined above) as to the likelihood of their reoffending sexually.

39. SORA 2021 places registrants on the *public* registry, based only on their offense of conviction, and without any individualized assessment or risk assessment (as defined above) as to the likelihood of their reoffending sexually.

40. Thousands of Michigan registrants have been convicted of failure to register or other SORA compliance violations.

41. Thousands of Michigan registrants who were convicted of failure to register or other SORA compliance violations have been sentenced to jail or to prison for such crimes.

42. Thousands of Michigan registrants have had their probation revoked following a conviction for failure to register or other SORA compliance violations, or for a violation of SORA even without a conviction.

43. Thousands of Michigan registrants have had their parole revoked following

a conviction for failure to register or other SORA compliance violations, or for a violation of SORA even without a conviction.

44. The risk of reoffending sexually varies among registrants.

45. The risk of reoffending sexually goes down the longer a person has lived offense free in the community.

46. Over 90 percent of people who are arrested for or convicted of a sexual offense are people who have never been arrested for or convicted of a sexual offense in the past.

47. Most people who are convicted of a sexual offense are never arrested for or convicted of another sexual offense.

48. Males convicted of sex offenses in Michigan and sentenced to prison are currently given a risk assessment using a standardized instrument like the Static-99R.

49. The majority of males convicted of a sex offense in Michigan and sentenced to prison in the past have since been given a risk assessment using a standardized instrument like the Static-99R.

50. The Michigan Department of Corrections has staff or contractors qualified to perform risk assessments like the Static-99R.

51. There are thousands of people subject to SORA 2021 who have lived in the community for ten years or more and have not been arrested for or convicted of new sexual offense.

52. In 2019, after the *Does I* Sixth Circuit decision and after the *Does II* class action was filed, stakeholders who had an interest in what a new SORA might look like began meeting in Lansing.

53. Participants in the legislative workgroup included legislative liaisons from both parties in both houses of the legislature, representatives from the Governor's office, the Michigan State Police, the Department of Corrections, the Prosecuting Attorneys Association of Michigan, the ACLU of Michigan's political department, victims' rights advocates, the Michigan Attorney General's Office, and counsel for

both sides in *Does II*.

54. The legislative workgroup met roughly every 2-4 weeks in person over several months.

55. Over the course of its meetings, the legislative workgroup narrowed the areas of disagreement about what a new (and constitutional) SORA might look like.

56. The legislative workgroup stopped meeting after the Governor instructed the executive branch units to cease participating.

57. During 2020 the Michigan legislature held hearings on House Bill 5679, the bill that became SORA 2021.

58. The legislative committee holding hearings on House Bill 5679 received about 170 submissions, in the form of written comments, letters, in-person testimony, or online (Zoom) testimony.

59. All but two of the submissions on House Bill 5679 opposed – or expressed reservations about – the bill.

60. Social scientists submitted testimony on House Bill 5679 stating that the bill contradicted modern social science research.

61. Social scientists submitted testimony on House Bill 5679 reporting findings that laws like that proposed in House Bill 5679 can increase sexual recidivism.

62. Organizations whose representatives testified or submitted written testimony in opposition to House Bill 5679 included the Association for the Treatment of Sexual Abusers, the State Appellate Defender Office, the Criminal Defense Attorneys of Michigan, Michigan Citizens for Justice, Safe and Just Michigan, the University of Michigan Law School, the American Friends Service Committee's Michigan Criminal Justice Program, Legal Reform for Intellectually and Developmentally Disabled, Freedman & Herskovic, PLC, Coalition for a Useful Registry, Michigan Collaborative to End Mass Incarceration, Washtenaw Citizens for Restorative Justice, MI-CURE, and the American Civil Liberties Union of Michigan.

63. The only favorable oral testimony on House Bill 5679 came from a victim's rights advocate, who told the legislative committee that registrants should be punished for life because victims are punished for life.

64. Class members who pled guilty before SORA came into effect did not receive notice at the time of the plea that they would be subject to SORA.

65. Class members who pled guilty after SORA came into effect did not receive notice at the time of the plea about future amendments to SORA that were later retroactively applied to them.

66. Sex offender registration can impact plea negotiations where defendants face sexual offense charges.

67. The MSP SOR Unit has a gross annual budget of $1.9 million.

68. Registrants can verify and report updated information to either the Michigan State Police or local law enforcement.

69. Reporting by approximately 35,000 active registrants imposes costs on the Michigan State Police and local law enforcement.

70. Reporting by approximately 35,000 active registrants requires MSP staff and local law enforcement to spend time handling verification and reporting by registrants.

71. The State of Michigan has the ability to obtain registrants' residential address information from the United States Postal Service and private vendors.

72. The State of Michigan has the ability to obtain registrants' employment information from state and federal employment and tax records, and from private vendors.

73. The State of Michigan has the ability to obtain registrants' vehicle information from the Secretary of State, federal databases, and private vendors.

74. The State of Michigan has the ability to obtain information about registrants' involvement in higher education from information reported to the State of Michigan and federal government by education institutional, or from private

vendors.

75. The Michigan State Police does not track complaints regarding the registry by registrants, law enforcements, school/higher education institutions, employers, or landlords.

76. The Michigan State Police does not have information regarding how many times the sex offender registry has been used by the public.

77. The Michigan State Police has not summarized or prepared reports regarding the demographics of registrants.

78. The Michigan State Police does not track vigilantism towards or harassment of registrants.

79. The Michigan State Police has not summarized or prepared reports regarding vigilantism towards or harassment of registrants.

80. The State of Michigan has not analyzed whether Michigan's sex offender registry is effective in preventing sexual recidivism.

81. Individuals convicted of M.C.L. § 750.349 (other than convictions for violating M.C.L. § 750.349(1)(c) or M.C.L. § 750.349(1)(f)), § 750.349b, or § 750.350, continue to be registered in Michigan's sex offender registry.

82. Individuals convicted in another jurisdiction of an offense substantially similar to M.C.L. § 750.349 (other than convictions for violating M.C.L. § 750.349(1)(c) or M.C.L. § 750.349(1)(f)), § 750.349b, or § 750.350 continue to be registered in Michigan's sex offender registry.

83. In light of the Michigan Court of Appeals' decision in *People v. Lymon*, No. 327355, 2022 WL 2182165 (Mich. Ct. App. June 16, 2022), the Michigan State Police intends to remove individuals convicted of M.C.L. § 750.349 (other than convictions for violating M.C.L. § 750.349(1)(c) or M.C.L. § 750.349(1)(f)), § 750.349b, or § 750.350 from the registry, pending a decision by the Supreme Court in *Lymon*.

84. In light of the Michigan Court of Appeals' decision in *People v. Lymon*, No. 327355, 2022 WL 2182165 (Mich. Ct. App. June 16, 2022), the Michigan

State Police intends to leave decisions about whether individuals convicted of M.C.L. § 750.349 (other than convictions for violating M.C.L. § 750.349(1)(c) or M.C.L. § 750.349(1)(f)), § 750.349b, or § 750.350 must register up to local prosecutors.

85.  If a local prosecutor decides that a person convicted of M.C.L. § 750.349 (other than convictions for violating M.C.L. § 750.349(1)(c) or M.C.L. § 750.349(1)(f)), § 750.349b, or § 750.350, should be required to register, the Michigan State Police will place the person back on the public registry without requiring a judicial determination that person committed an offense that by its nature constitutes a sexual offense.

86.  The Michigan State Police does not intend to remove individuals from the registry who were convicted in another jurisdiction of an offense substantially similar to M.C.L. § 750.349 (other than convictions for violating M.C.L. § 750.349(1)(c) or M.C.L. § 750.349(1)(f)), § 750.349b, or § 750.350.

87.  In the event that the Michigan Supreme Court the reverses the Court of Appeals decision in *People v. Lymon*, No. 327355, 2022 WL 2182165 (Mich. Ct. App. June 16, 2022), the Michigan State Police plans to again require individuals convicted of M.C.L. § 750.349 (other than convictions for violating M.C.L. § 750.349(1)(c) or M.C.L. § 750.349(1)(f)), § 750.349b, or § 750.350, to be placed on the registry.

88.  The only ways in which the State of Michigan has provided information to registrants to explain what their obligations are under SORA are by making the text of SORA available on-line, by providing registrants with the Explanation of Duties and the Mail-in Update Form, and by sending a letter in March 2021 regarding SORA 2021.

89.  The Explanation of Duties does not spell out every duty under SORA 2021.

90.  The Michigan State Police does not provide legal advice to registrants about their obligations under SORA 2021.

91.  The State of Michigan does not have a help line where registrants who have questions about their obligations under SORA 2021 can get answers to questions they have.

14

92.  Registrants must report the following changes in person within three business days:  residential address changes, starting or discontinuing employment, name changes, enrolling or discontinuing enrollment as a student, being present as a student in other locations in Michigan or the U.S., and moving to a new state.

93.  If a registrant begins or ends a volunteer position, the registrant must report that information in person within three days.

Respectfully submitted,

s/ Miriam J. Aukerman (P63165)
American Civil Liberties Union
  Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org

s/ Daniel S. Korobkin (P72842)
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6824
dkorobkin@aclumich.org

s/ Paul D. Reingold (P27594)
Cooperating  Counsel,  American  Civil
  Liberties Union Fund of Michigan
Univ. of Michigan Law School
802 Legal Research Building
801 Monroe Street
Ann Arbor, MI 48109-1215
(734) 355-0319 - pdr@umich.edu

s/ Roshna Bala Keen (Ill. 6284469)
Loevy & Loevy
Cooperating  Counsel,  American  Civil
  Liberties Union Fund of Michigan
311 North Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
roshna@loevy.com

Dated: December 2, 2022

16

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOES A, B, C, D, E, F, G, H,
MARY DOE and MARY ROE, on behalf of
themselves and all others similarly situated,

                Plaintiffs,

v.

GRETCHEN WHITMER, Governor of the
State of Michigan, and COL. JOSEPH
GASPER, Director of the Michigan
State Police, in their official
capacities,

No. 2:22-cv-10209

Hon. Mark A. Goldsmith

Mag. Curtis Ivy, Jr.

**DEFENDANT GRETCHEN WHITMER AND DEFENDANT
COLONEL JOSEPH GASPER'S RESPONSE TO PLAINTIFFS'
FIRST REQUEST TO ADMIT**

Defendants Gretchen Whitmer and Colonel Joseph Gasper, by and

through their attorney, Assistant Attorney General Eric M. Jamison,

respond to Plaintiffs' First Request to Admit as follows:

**GENERAL OBJECTIONS**

Defendants object because the requests seek information from the

Michigan Department of Corrections, but the Michigan Department of

Corrections is not a party to the lawsuit. However, in the spirit of

cooperation, Defendants will meet and confer with Plaintiffs' counsel to discuss how information from MDOC may be obtained expeditiously.

Defendants object to the instructions that request the identity of who provided the information and that the answers are signed or adopted by each Defendants. Such requirements go beyond what is required under the Rules.

Defendants also object to the requests that do not specify a timeframe as overly broad. Information about past version of the SORA is largely not relevant to resolving the question of whether the new SORA is constitutional.

Defendants object to the requests as unduly burdensome and bordering on frivolous. Most of the requests to admit seek admissions related to what the old SORA and the new SORA requires, which is publicly available information dictated by statute and not by Whitmer or Gasper. Many of the requests to admit are duplicative of other discovery requests and providing the same information unnecessary increases the costs of litigation.

# RESPONSES

1.      Defendants object to the request because the statute speaks for itself.  Asking the defendants to review Plaintiffs 16-page exhibit to verify that they have correctly cited the law is beyond the scope of discovery and only needlessly increases the costs of litigation and the information has no importance to resolving the issues in this lawsuit.

2.      Defendants object to the request as vague.  Plaintiffs do not define "registry."  It is unclear whether the registry is one of the terms in the definition section or is something else.  It is unclear whether Plaintiffs refer to all persons who have ever been on the SOR registry, including those that have been canceled or removed, or if Plaintiffs are referring to those that are currently in the SOR database including the public and non-public registrants.  Defendants further object because this request to admit needlessly increases the costs of litigation since it includes the same information sought in another discovery requests.  To the extent that the request is seeking the number of people who are currently required to register under the SORA, Defendants deny the request because there are currently approximately 44,000 Registrants of which there are approximately 34,000 Michigan Registrants.

3.      Defendants object to the request as vague because it is unclear what "active registrants" means.  Plaintiffs do not define "active registrants." Defendants deny that there are about 10,000 incarcerated Registrants for the reason that there are approximately 8,800 Registrants that are currently incarcerated.

4.      Defendants object to the request as vague.  It is unclear what "apply" means.  Defendants further object because Governor Whitmer was not Governor and Colonel Gasper was not the director of the State Police in 2016 when the Sixth Circuit issued its opinion in *Does I*.  Defendants admit that SORA 2011 as passed by the legislature required registrants whose registrable offenses predated July 1, 2011 to register.

5.     Defendants object because Plaintiffs do not define or identify which amendments to SORA they refer to.  Defendants object because the statute speaks for itself, and Defendants admit that due to changes in law enacted by the legislature, registration periods have been changed and the registration period is largely based on the conviction. Defendants further admit that the legislature did not provide for individualized review or risk assessments when it passed SORA 2021.

6.     Defendants object to the request as vague because it is unclear what "formal process" refers to.  To the extent that "formal process" means a judicial process to be reclassified, Defendants admit that Registrants have the option to petition a court for removal from the registry as set forth under SORA 2021 and admit that there is not judicial process solely related to challenging tier classifications.

7.     Defendants object because the request seeks information regarding the old law which is not relevant.  Seeking discovery about the old law only needlessly increases the costs of litigation regarding SORA 2021.  In further response, Defendants admit that tier classifications under the old law were conviction based and no individualized assessment or risk assessment was included in the old SORA by the legislature.  The statute speaks for itself.

8.     Defendants state that statute speaks for itself, and a response is not required. In further response, Defendants admit that no individualized assessment or risk assessment was included in SORA 2021 by the legislature.

9.     Defendants object to the request as vague, it's unclear what "simply" means.  Defendants object because the request seeks information regarding the old law which is not relevant.  Seeking discovery about the old law only needlessly increases the costs of litigation regarding SORA 2021. Defendants admit that registrants had to comply with the old SORA, and the form speaks for itself.

10.    Defendants object in part because the language used in the request is slightly different that the language used on the form, and admit that the statute and the forms speak for themselves.

11.    Defendants admit the request, and state that the statute speaks for itself.

12.    Defendants object to the request as vague because it does not identify which "forms" it is referring to.  To the extent the request is referring to the Explanation of Duties Form, Defendants admit that the Explanation of Duties Form speaks for itself and may be used in future legal proceedings, but Colonel Gasper and Governor Whitmer lack knowledge as to whether prosecutors will attempt to use the forms, or whether the judge presiding over the matter will allow the form to be utilized to show willfulness.

13.    Defendants object because the request seeks information regarding the old law which is not relevant.  Seeking discovery about the old law only needlessly increases the costs of litigation regarding SORA 2021.  Defendants object because the statute speaks for itself, and a response is not required. In further response, and upon information and belief, the term "routinely used" was added to the statute at the request of the ACLU in lieu of reporting "all numbers."

14.    Defendants object because that statute speaks for itself, and a response is not required.

15.    Defendants object because the request seeks information regarding the old law which is not relevant.  Seeking discovery about the old law only needlessly increases the costs of litigation regarding SORA 2021. Defendants object because the statute speaks for itself, and a response is not required.

16.    Defendants object because the statute speaks for itself, and a response is not required.

17.    Defendants object because the request seeks information regarding the old law which is not relevant.  Seeking discovery about the old law only needlessly increases the costs of litigation regarding

SORA 2021. Defendants object because the statute speaks for itself, and a response is not required.

18.     Defendants object because the statute speaks for itself, and a response is not required.

19.     Defendants object because the request seeks information regarding the old law which is not relevant.  Seeking discovery about the old law only needlessly increases the costs of litigation regarding SORA 2021. Defendants object because the statute speaks for itself, and a response is not required.

20.     Defendants object because the statute speaks for itself, and a response is not required.

21.     Defendants object because the request seeks information regarding the old law which is not relevant.  Seeking discovery about the old law only needlessly increases the costs of litigation regarding SORA 2021. Defendants object because the statute speaks for itself, and a response is not required.

22.     Defendants object because the statute speaks for itself, and a response is not required.

23.     Defendants object because the request seeks information regarding the old law which is not relevant.  Seeking discovery about the old law only needlessly increases the costs of litigation regarding SORA 2021. Defendants object because the statute speaks for itself, and a response is not required.

24.     Defendants object to the request because it calls for a legal conclusion, which does not require a response.  In further response, the *Does I* opinions speak for themselves.

25.     Defendants object because the statute speaks for itself, and a response is not required.

26.    Defendants object to the request as vague, not relevant and the information is equally accessible to Plaintiffs.

27.    Defendants object to the request as vague, not relevant and the information is equally accessible to Plaintiffs.

28.    Defendants object to the request because it calls for a legal conclusion, which does not require a response.  In further response, the *Does I* opinions and SORA 2021 speak for themselves.

29.    Defendants object because the statute speaks for itself, and a response is not required.

30.    Defendants object because the statute speaks for itself, and a response is not required.

31.    Defendants object because the statute speaks for itself, and a response is not required.

32.    Defendants object because the statute speaks for itself, and a response is not required.

33.    Defendants object because the request seeks information regarding the old law which is not relevant.  Seeking discovery about the old law only needlessly increases the costs of litigation regarding SORA 2021. Defendants object because the statute speaks for itself, and a response is not required.  Defendants further state that SORA 2021 specifies what information must be posted publicly and email addresses or instant message accounts are not identified as information that must be publicly posted.

34.    Defendants object because the statute speaks for itself, and a response is not required. Defendants incorporate by reference the response to request 33.

35.    Defendants state that statute speaks for itself, and a response is not required. Defendants incorporate by reference the response to request 33 and further state that email addresses, IM

addresses and other internet identifiers are not posted on the public sex offender website.

36.   Defendants object to the request because it is unclear what "some information" plaintiffs are referring to, and what "some people" means.  In further response, Defendants object because, upon information and belief, this type of information is in the possession of the Michigan Department of Corrections who is not a party to the lawsuit.  In its current form, the request cannot be answered.

37.   Defendants object because the statute speaks for itself, and a response is not required.

38.   Defendants object because the request seeks information regarding the old law which is not relevant.  Seeking discovery about the old law only needlessly increases the costs of litigation regarding SORA 2021. Defendants object because the statute speaks for itself, and a response is not required.

39.   Defendants object because the statute speaks for itself, and a response is not required.

40.   Defendants object to the request because after a diligent search, they were unable to locate the information needed to respond within the time afforded under the Court's scheduling order. Defendants further object because there is no time limitation in the request.  Defendants object based on undue burden because a special query would need to be created, tested and run from Criminal History and its unclear at this point whether the search would yield information sufficient to allow Defendants to respond to the request. Defendants object because the information has no importance to resolving the issues in this lawsuit.

41.   Defendants incorporate by reference the response to request 40.

42.    Defendants object because this information may be in the custody or control of MDOC, who is a non-party.  Defendants further object because there is no time limitation in the request.  Defendants object because the information has no importance to resolving the issues in this lawsuit.

43.    Defendants incorporate by reference the response to request 42.

44.    Defendants object to the request as vague because it is unclear what "reoffending sexually" means.  Defendants further object to the term "varies" because it is unclear what "varies" means.  Defendants admit that the likelihood of someone committing another crime in the future is different for everyone.

45.    Defendants object to the request as vague because it is unclear what "reoffending sexually" means.  Defendants further object to the term "offense free" because it is unclear what "offense free" means, whether it means committing another sex offense or getting caught committing another sex offense.

46.    Defendants object to the request because after a diligent search, they were unable to locate the information needed to respond within the time afforded under the Court's scheduling order.  Defendants further object because there is no time limitation in the request and MSP does not track information related to arrests in an easily searchable way. Defendants object based on undue burden because a special query would need to be created, tested and run from Criminal History and it's unclear at this point whether the search would yield information sufficient to allow Defendants to respond to the request. Defendants object because the information has no importance to resolving the issues in this lawsuit.

47.    Defendants object to the request because there is no time limitation, geographic limitations or definition for "sexual offense."  In its current form, Defendants lack knowledge or information to be able to respond to the request.

48.     Defendants object because this information may be in the custody or control of MDOC, who is a non-party.  Defendants object because the information has no importance to resolving the issues in this lawsuit.

49.     Defendants object because this information may be in the custody or control of MDOC, who is a non-party.  Defendants object because there is no timeframe included.   Based upon information and belief, Static 99 was created in 1999 and Static 99-R was updated in 2012.   Information is not readily obtainable to determine if the majority of males convicted of a sex offense in Michigan and sentenced to prison from 1837 to present have been given a risk assessment using a standardized instrument like Static 99-R. Defendants object because the information has no importance to resolving the issues in this lawsuit.

50.     Defendants object because this information may be in the custody or control of MDOC, who is a non-party.  Defendants object because the information has no importance to resolving the issues in this lawsuit.

51.     Defendants object to the request as vague. Most residents of the state of Michigan are subject to SORA 2021, to the extent that Plaintiffs imply that of out of most of the residents of Michigan, there are thousands who have lived in Michigan for ten years or more and have not been arrested for or convicted of new sexual offense, Defendants admit the request. Defendants object because the information has no importance to resolving the issues in this lawsuit.

52.     Defendants object to the request as not relevant and is information in the possession of Plaintiffs since their counsel participated in the meetings. Defendants further object because the information has no importance to resolving the issues in this lawsuit.

53.     Defendants object to the request as not relevant and is information in the possession of Plaintiffs since their counsel

participated in the meetings. Defendants further object because the information has no importance to resolving the issues in this lawsuit.

54.     Defendants object to the request as not relevant and is information in the possession of Plaintiffs since their counsel participated in the meetings. Defendants further object because the information has no importance to resolving the issues in this lawsuit.

55.     Defendants object to the request as not relevant and is information in the possession of Plaintiffs since their counsel participated in the meetings. Defendants further object because the information has no importance to resolving the issues in this lawsuit.

56.     Defendants object to the request as not relevant and because the information has no importance to resolving the issues in this lawsuit.

57.     Defendants object to the request as not relevant and object because the information is publicly available making it equally accessible to Plaintiffs. Defendants further object because the information has no importance to resolving the issues in this lawsuit.

58.     Defendants object to the request as not relevant and object because the information is publicly available making it equally accessible to Plaintiffs. Defendants further object because the information has no importance to resolving the issues in this lawsuit.

59.     Defendants object to the request as not relevant and object because the information is publicly available making it equally accessible to Plaintiffs. Defendants further object because the information has no importance to resolving the issues in this lawsuit. Defendants further state that the majority of the submissions came from registrants subject to SORA.

60.     Defendants object to the request as not relevant and object because the information is publicly available making it equally accessible to Plaintiffs. Defendants further object because the information has no importance to resolving the issues in this lawsuit.

61.     Defendants object to the request as not relevant and object because the information is publicly available making it equally accessible to Plaintiffs. Defendants further object because the information has no importance to resolving the issues in this lawsuit. Defendants further object to the request because sexual recidivism is undefined.  It is not clear whether sexual recidivism means committing another sexual assault or crime, being arrested for another sexual assault or crime, or being convicted of another sexual assault or crime.

62.     Defendants object to the request as not relevant and object because the information is publicly available making it equally accessible to Plaintiffs. Defendants further object because the information has no importance to resolving the issues in this lawsuit.

63.     Defendants object to the request as not relevant and object because the information is publicly available making it equally accessible to Plaintiffs. Defendants further object because the information has no importance to resolving the issues in this lawsuit.

64.     Defendants object to the request as vague because it is unclear what crimes class members "pled guilty" to.  To the extent that class members pled guilty to retail fraud in 1998 and pled guilty to criminal sexual conduct in 2012, the SORA was in effect in 2012 so class members had the opportunity to know that they would be subject to SORA.  In further response, Defendants object because the statute speaks for itself, and a response is not required.

65.     Defendants object to the request as vague because it is unclear which class members the request refers to and which amendments the request refers to.  Defendants admit that class members are part of the political process, and some class members may have been aware of proposed amendments to SORA that would impact their registration requirements. In further response, Defendants object because the statute speaks for itself, and a response is not required

66.     Defendants object to the request as vague because it is unclear what "impact" means.  Defendants further object because they

do not participate in plea negotiations as part of criminal proceedings. Defendants admit that the legal consequences of plea deals are part of the decision-making process between prosecutors and criminal defendants.

67.    Defendants object to the request because it is duplicative of other discovery requests seeking the same information.  Duplicating discovery requests only needlessly increases the costs of litigation. See response to Request to Produce 12.  Defendants further object because the information has no importance to resolving the issues in this lawsuit.

68.    Defendants admit the request to the extent that "Michigan State Police" means a Michigan State Police post and not the Michigan State Police Sex Offender Registration Unit.

69.    Defendants admit the request and further state that most costs associated with reporting to Michigan State Police posts does not increase costs since Troopers are available at posts to provide services to the public whether they are there to update SORA registration information, are there to file a complaint, or are there to obtain information from the post.

70.    Defendants incorporate by reference the response to request 69.

71.    Defendants object to the request as vague. It is unclear whether the request is asking whether "State of Michigan" means every political branch and/or agency, or whether it means something else. Defendants object to the request as not relevant and object because the information is publicly available making it equally accessible to Plaintiffs. Defendants further object because the information has no importance to resolving the issues in this lawsuit.  Defendants admit that the United Postal Service has Michigan residents mailing addresses.

72.    Defendants object to the request as vague. It is unclear whether the request is asking whether "State of Michigan" means every

political branch and/or agency, or whether it means something else. Defendants further object and deny to the extent that it implies that Colonel Gasper or Governor Whitmer can simply request the Michigan Department of Treasury or the US Treasury to provide employment information because such information is protected by state and federal law. Defendants object to the request as not relevant and object because the information regarding "private vendors" whatever that means, is publicly available, making it equally accessible to Plaintiffs.

73.   Defendants object to the request as vague. It is unclear whether the request is asking whether "State of Michigan" means every political branch and/or agency, or whether it means something else.  It is also unclear what "federal databases" means.  Defendants object to the request as not relevant and object because the information regarding "private vendors" whatever that means, is publicly available, making it equally accessible to Plaintiffs.  Defendants further object because the information has no importance to resolving the issues in this lawsuit.  Defendants admit that the Michigan Secretary of State maintains vehicle information for Michigan residents.

74.   Defendants object to the request as vague. It is unclear whether the request is asking whether "State of Michigan" means every political branch and/or agency, or whether it means something else. And it is unclear what "involvement in higher education" means. Defendants further object to the extent that it implies that Colonel Gasper or Governor Whitmer can simply request the public and private entities to provide information about its students because such information is protected by state and federal law. Defendants object to the request as not relevant and object because the information regarding "private vendors" whatever that means, is publicly available, making it equally accessible to Plaintiffs.

75.   Defendants object to the request as vague.  It is unclear what "complaints" means.  It's unclear whether the request relates to complaints about compliance, complaints about the SOR database, complaints having to register, or something else.  Defendants admit that MSP does not track individual instances of when a registrant complains about having to register under the SORA. Defendants admit

that MSP does not track in a systemic way, any sort of complaints made by other law enforcement agencies, schools or higher education institutions, employers or landlords regarding registrants. Any such complaints would be taken in the normal course of business of a trooper or post and would be handled on a case-by-case basis.

76.    Defendants admit the request.

77.    Defendants admit the request.

78.    Defendants object to the request as vague because it is unclear what harass, and vigilantism means. Defendants admit the response to the extent that it implies "track" means tracking formal complaints made to MSP in a systematic way from Registrants about possible crimes committed against them. Any such complaints would be taken in the normal course of business of a trooper or post and would be handled on a case-by-case basis.

79.    Defendants incorporate by reference the response to request 78.

80.    Defendants object to the request as vague. It is unclear whether the request is asking whether "State of Michigan" means every political branch and/or agency, or whether it means something else. Defendants further object to the request because "sexual recidivism" is undefined. It is not clear whether sexual recidivism means committing another sexual assault or crime, being arrested for another sexual assault or crime, or being convicted of another sexual assault or crime. The term "effective" is also undefined. Defendants further object because there is no timeframe specified, to the extent that somewhere in the State of Michigan, someone may have analyzed any of the previous versions of the SORA, Defendants object to the request because the information has no importance to resolving the issues in this lawsuit.

81.    Defendants admit the request and in further response state that the individuals subject to registrations under those provisions of

the SORA are currently being reviewed for eligibility for removal in light of a ruling from the Michigan Court of Appeals.

82.    Defendants incorporate by reference the response to request 81.

83.    Defendants incorporate by reference the response to request 81. In further response, the Michigan State Police follows judicially binding opinions.

84.    Defendants object to the request to the extent that it is implies that the Michigan State Police play a role in determining who must register under the SORA.  Registration obligations under SORA arise from statute and case law.  The Michigan State Police maintains the SOR database as required by statute and registrants may report or update their information at Michigan State Police posts.  The Michigan State Police does not provide legal advice about the impacts of judicial opinions on registration obligations.  Defendants object because this request is duplicative of other discovery requests which sought information regarding how MSP is responding to the *Lymon* decision.

85.    Defendants admit the request. Defendants further state that MCL 28.728c speaks for itself.

86.    Defendants admit the request and further state that under the SORA if a person has registration obligations in other states, then they must register in Michigan.

87.    Defendants object to the request that it implies that the Michigan State Police requires anyone to register under the SORA. SORA registration obligations come from statute and case law. The Michigan State Police maintains the SOR database as required by statute.  In further response, Defendants admit that the Michigan State Police follows judicially binding opinions.

88.    Defendants object to the request as vague. It is unclear whether the request is asking whether "State of Michigan" means every

political branch and/or agency, or whether it means something else.  It is unclear whether the request is limited in time to the new SORA or goes back in time to the original SORA in 1994.  To the extent that "State of Michigan" implies every political branch, Defendants cannot truthfully admit nor deny because they lack information.  The Michigan State Police SOR Unit has a helpline, which answers questions and can direct registrants to relevant statutory provisions or to their attorneys at the ACLU to provide advice about what the provisions mean.

89.    Defendants admit the request, and further state that the statute speaks for itself and is publicly available.

90.    Defendants admit the request.

91.    Defendants object to the request as vague. It is unclear whether the request is asking whether "State of Michigan" means every political branch and/or agency, or whether it means something else.  To the extent that "State of Michigan" implies every political branch, Defendants cannot truthfully admit nor deny because they lack information.  The Michigan State Police SOR Unit has a helpline, while it is not intended as a resource for registrants they often call and the MSP SOR unit answers questions and can direct registrants to relevant statutory provisions, or to their attorneys at the ACLU to provide advice about what the provisions mean.

92.    Defendants object because the statute speaks for itself, and a response is not required. Defendants object to the request because seeking discovery about what a publicly available statute states, only needlessly increases the costs of litigation.

93.    Defendants incorporate by reference the response to request 92.

/s/ Eric M. Jamison (P75721)
Assistant Attorney General
Attorney for Defendants
Michigan Dep't of Attorney General
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
jamisone@michigan.gov

Dated: December 14, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2022, the above captioned document was served upon all parties to the above cause by email.

/s/ Eric M. Jamison (P75721)