# Exhibit 84:

# Plaintiffs' Responses to Defendants' Second Interrogatories
# (John Doe E and John Doe H)
# (April 17, 2023)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | |
|---|---|
| JOHN DOES A, B, C, D, E, F, G, H, MARY DOE and MARY ROE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GRETCHEN WHITMER, Governor of the State of Michigan, and COL. JOSEPH GASPER, Director of the Michigan State Police, in their official capacities,<br><br>Defendants. | No. 2:22-cv-10209<br><br>Hon. Mark A. Goldsmith<br><br>Mag. Curtis Ivy, Jr. |

**PLAINTIFFS' RESPONSES TO DEFENDANT'S SECOND SET OF INTERROGATORIES AND REQUEST TO PRODUCE DOCUMENTS DIRECTED TO PLAINTIFFS**

Plaintiffs John Doe E and John Doe H, by and through their attorneys, submit responses to Defendant's Second Set of Interrogatories and Request to Produce as follows:

1

## Plaintiffs' Responses to Defendant's Interrogatories

1.   Please explain the factual basis to support the allegation in paragraph 117, that the victim opposes John Doe E's inclusion on the registry.

**ANSWER: The victim explicitly opposes John Doe E's inclusion on the public registry. Since the offense took place, the victim, John Doe E's nephew, has expressed that he has forgiven John Doe E, believes John Doe E is no longer a risk to himself or the public, and does not believe that John Doe E should be included on Michigan's Sex Offender Registry. The victim has made these statements both to John Doe E and John Doe E's mother as well as to Plaintiff's counsel. The victim has provided a written statement expressing his opposition to John Doe E's inclusion on the sex offender registry, and John Doe E's mother has provided a written statement that also describes the victim's opposition to John Doe E's inclusion on the registry.**

**See attachments A and B.**

2.   Please explain whether John Doe E has "sexually experimented," as referred to in paragraph 118 in the complaint, with any other persons aged 17 or under since his criminal sexual conduct conviction in 1994.

**OBJECTIONS: Plaintiffs object to this request on the basis that it seeks to elicit testimony that could be self-incriminating. John Doe Es may not be compelled to give testimony in any proceeding where his answers could incriminate him in future proceedings. See U.S. Const. Amend V.**

**Plaintiffs also object to the question because the age of consent in Michigan is 16 years old, not 18 as the question implies. See M.C.L. §§ 750.520b(1)(b), c(1)(b), d(1)(a), and e(1)(a).**

**ANSWER: Notwithstanding the objections, John Doe E has not engaged in any "sexual experimentation," as referred to in paragraph 118 of the complaint, with persons aged 17 or under since his criminal sex conduct conviction in 1994.**

2

3. Please explain whether John Doe E has been accused, to the extent he knows, of any unwanted sexual conduct or behavior since 1994.

**OBJECTIONS: Plaintiffs object to this request on the basis that it seeks to elicit testimony that could be self-incriminating. John Doe E may not be compelled to give testimony in any proceeding where his answers could incriminate him in future proceedings. See U.S. Const. Amend V.**

**ANSWER: Notwithstanding the objection, John Doe E has not, to his knowledge, been accused of any unwanted sexual conduct or behavior since 1994.**

4. Please explain whether John Doe E has been involved in any other criminal or civil legal proceedings since his 1994 criminal sexual conduct conviction. If so, please identify the case number, or the nature of the proceeding.

**ANSWER: John Doe E has received two tickets for traffic infractions, one of which was a speeding ticket over 10 years ago and the other for an illegal turn over five years ago. John Doe E has been unable to locate the case numbers for those infractions. John Doe E is aware of no other legal proceedings involving him. To the best of his recollection, John Doe E has not been involved in any other criminal or civil legal proceedings since his 1994 criminal sexual conduct conviction other than the two traffic infractions mentioned above.**

5. Please explain how John Doe E supports himself financially (e.g., employment, disability, family support, etc.).

**ANSWER: John Doe E relies on disability payments, amounting to approximately $900 each month, in order to support himself financially. To the best of his recollection, John Doe E has received disability payments since he was 21 years old. While John Doe E has not worked a full-time job, he currently works part-time providing cleaning services to help financially support himself. He works roughly twenty-four hours a week at a rate of $14 an hour. In**

addition, John Doe E lives with his mother whom he has been living with his entire life. John Doe's mother covers most of his living expenses. However, John Doe E helps to cover shared expenses amounting to a contribution of about $260 per month.

6. Please identify John Doe E's average annual income since March 2021.

**ANSWER:** Due to the difficulty of getting—and keeping—a job due to his registration status, John Doe E's income changes frequently and is inconsistent from year to year. When John Doe E cannot find a job or finds a job that offers few hours, his income tends to be significantly lower.

In 2022, John Doe E's income came to about $10,700 for the year. John Doe E has been unable to locate his tax returns and cannot recall what his income was for 2021. He does recall that he lost employment and believes his income was lower in 2021 than in 2022. With the exception of his disability and family support, John Doe E does not receive income from any other sources.

7. Since March 2021, please explain approximately how long it has taken each time John Doe E verified his information with law enforcement.

**OBJECTION:** Plaintiffs object to this request as vague in that the question does not define "verify." John Doe E must report both quarterly and whenever reportable information changes. It is unclear if the request here refers to quarterly verification or updating of information or both.

**ANSWER:** Notwithstanding these objections, John Doe E always reports, whether for quarterly verification or updates to information, in-person at his local police department. John Doe E's disability generally requires that John Doe E have consistency and routine in order for him to understand and complete his responsibilities. When he initially started reporting, John Doe E made every update in person at his local police department with the assistance of his father who accompanied him to ensure he was able to successfully report. Following his father's passing, John Doe E has continued to both report updates and complete quarterly verifications in-person, including during COVID.

**How long it takes John Doe E to report each time varies depending on factors out of his control, e.g., whether or not the station's software is actively working or if the registering officer is not available. John Doe E usually registers with the same staff member, who appears to be the primary person responsible for registration in what is a small police department. On more than one occasion, John Doe E has gone to register only to be told that the individual who typically handles his registration is out at lunch or out of the office. When this happens, John Doe E has been told to come back and try another time, resulting in John Doe E making a second trip at a later time to register his information. On at least one occasion after being turned away in-person, he has been sent forms to fill out and return.**

**When John Doe E reports, he first has to drive or walk to the police station. He happens to live close to the police station, so that takes approximately five minutes in each direction. Once at the police station, the amount of time it takes varies from around 20-30 minutes. When the registering officer is not present, which has happened at least a handful of times when John Doe E has attempted to register, registering takes slightly more time as, after being informed that the registering officer is not present and he will have to come back another time, the officers usually take down information to note John Doe E came in to register that day.**

**If the registering officer is not there, not only does this require a second trip (and increase or double the time needed), but it creates stress. Due to his disability, it is important for John Doe E to do things on a set schedule. So, when he cannot report on the schedule he's set for himself, he becomes anxious and worried that he might somehow fail to comply with SORA. John Doe E tries to register during the first couple days of the month. This helps to ensure that if the registering officer is not present, he has enough time to go back to the office.**

8. Since March 2021, please explain whether John Doe E has made any changes to his reportable information either by mail or in person. See Ex A for list of reportable information that may need to be updated with law enforcement. If any updates were made, please identify what types of updates were made, and how the update was made (either in person or by mail).

5

**OBJECTION: Plaintiffs object to the request as vague. It is not clear what Defendants mean by "any changes to reportable information." John Doe E has gone to report since March 2021, but it is not clear if the question is specifically asking about this or if it is instead asking about whether any of John Doe E's information has changed since March 2021.**

**Plaintiffs further object because this interrogatory seeks information that is already in Defendants' possession through the Michigan Sex Offender Registry database.**

**RESPONSE: Notwithstanding these objections, to the best of John Doe E's recollection, since March 2021 he has had to report changes in employment information, including reporting when previous employment ended and when he obtained new employment. These reporting updates were made by John Doe E in-person at his local police station. John Doe E insists on making his reporting updates in-person because it is consistent with the practice he has used since he started reporting in 2000, and it alleviates his fears of mail arriving late or getting lost.**

**John Doe E was confused about other information that he may or may not have needed to report. For instance, on one occasion John Doe E was suspended from work for a few days over a badge error (an issue that was quickly resolved, resulting in John Doe E's return to work days later). John Doe E was unsure if he was meant to report this suspension per his SORA requirements. John Doe E has similar confusion regarding whether he is meant to report his mother's car when he drives it or whether he should be reporting the different work sites he is sent to by his employer. John Doe E has tended to overreport information—volunteering additional information to the police if he thinks it could be required but isn't sure—due to confusion about what to report.**

9. With respect to paragraph 125 of the Complaint, please explain how Colonel Gasper or Governor Whitmer have required John Doe E to comply with any provision of the SORA.

**OBJECTION: Plaintiffs object to this question as it calls for a legal conclusion. John Doe E does not have personal knowledge of how official capacity suits against the government are brought. Other than knowing that the Michigan State Police maintain the registry and enforce SORA, John Doe E also does not have personal knowledge of what role Colonel Gasper and Governor Whitmer have in the enforcement of SORA.**

10. Please explain whether John Doe E has ever been visited by anyone from the Michigan State Police at his home, at his work, or in public, related to his registration obligations under the SORA. If so, please share the details of when this occurred, who was there and what happened.

**ANSWER: John Doe E has been visited multiple times at his home by officers from the local police department. On one occasion, officers came by John Doe E's home twice in under three months for verification purposes. John Doe E has not, to the best of his knowledge, been visited at his home, work, or in public by Michigan State Police.**

11. Please explain whether John Doe E has ever been visited by anyone from the Michigan Executive Branch of Government at his home, at his work, or in public, related to his registration obligations under the SORA. If so, please share the details of when this occurred, who was there and what happened.

**ANSWER: To the best of his knowledge, John Doe E has never been visited by anyone from the Michigan Executive Branch of government at his home, work, or in public related to his registration obligations under SORA 2021.**

12. Please explain how many criminal sexual conduct charges were brought against John Doe H that led to his plea deal in paragraph 149 of the

7

complaint.

**ANSWER: To the best of his recollection, John Doe H was only charged with one count of M.C.L. 750.520e(1)(a) – misdemeanor criminal sexual conduct in the fourth degree.**

13. Please explain how the State of Michigan has determined that John Doe H is a "present danger to the public," as is alleged in paragraph 153 on the complaint.

**OBJECTION: Plaintiffs object to this question as vague and confusing because it misstates the allegations in paragraph 153 of the complaint. Paragraph 153 of the complaint reads:**

> **"As to all Plaintiffs listed above, the State of Michigan has required them to register as sex offenders under SORA 2021 without any individualized assessment that they pose a present danger to the public, and without any evidence that the registry makes communities safer."**

**Paragraph 153 does not allege that "the State of Michigan has determined that John Doe H is a present danger to the public," as the interrogatory suggests. Rather, paragraph 153 of the complaint alleges that John Doe H is required to register as a sex offender without any individualized assessment of present dangerousness.**

**ANSWER: Notwithstanding these objections, John Doe H states that the State of Michigan has not made an individual determination that he is a present danger to the public. Instead, John Doe H was placed on the registry simply because of his conviction.**

14. Please identify John Doe H's average annual income since March 2021.

**ANSWER: According to the financial records within his possession and to the best of his knowledge, John Doe H's income was about $38,000 in 2021. John Doe H does not yet have financial records reflecting his income for 2022, but believes it should be about the same.**

15. Since March 2021, please explain approximately how long it has taken each time John Doe H verified his information with law enforcement.

**OBJECTION: Plaintiffs object to this request as vague in that the question does not define "verify." Tier I registrants must report annually, in addition to every time reportable information changes. It is unclear if the request here refers to annual verification or updating of information or both.**

**ANSWER: Notwithstanding the objections, when he goes in to report information or verify, it takes John Doe H anywhere between 10-30 minutes.**

16. Since March 2021, please explain whether John Doe H has made any changes to his reportable information either by mail or in person. See Ex A for list of reportable information that may need to be updated with law enforcement. If any updates were made, please identify what types of updates were made, and how the update was made (either in person or by mail)

**OBJECTION: Plaintiffs object to the request as vague. It is not clear what Defendants mean by "any changes to his reportable information." John Doe H has gone to report since March 2021, but it is not clear if the question is specifically asking about this or if it is instead asking whether any of John Doe H's information has changed since March 2021.**

**Plaintiffs further object because this interrogatory seeks information that is already in Defendants' possession through the Michigan Sex Offender Registry database.**

**ANSWER: Notwithstanding these objections, John Doe H states that to the best of his recollection, he has reported both in person and by mail since May 2021. John Doe H cannot recall exactly how many times he has reported changes to his information but believes he has reported changes to his work and home addresses as well as to his email address since May 2021.**

9

17. Please identify any schooling or training that John Doe H has sought since December 2015 that he was unsure whether it needed to be reported to law enforcement under the SORA. See MCL 28.727(1)(g); MCL 28.725(1)(c).

**ANSWER: John Doe H has not sought any school or training since December 2015, to the best of his recollection.**

18. Please identify any email address or internet identifier that John Doe H has that he is unsure of whether it needs to be reported to law enforcement under the SORA. See MCL 28.722(g); MCL 28.725(2)(a).

**ANSWER: John Doe H only uses two email addresses both of which have been registered. John Doe H does not use social media as it is easier for him to avoid the hassle of using and reporting various social media accounts.**

**John Doe E does use other types of internet-based applications but is unclear if they require registration. John Doe H has a computer he uses both at home and at work but does not know whether the IP address needs to be reported. He uses an iPhone for business but is unsure which of the applications he frequently uses are meant to be reported. He doesn't know whether his userid on his mobile banking app is registrable or whether his WhatsApp account he uses to talk to family must be separately reported. He similarly is not sure if he's meant to report each moniker he creates when he downloads a new gaming app on his phone.**

### REQUEST TO PRODUCE

1. Please produce documents to support your allegation in paragraph 117, that the victim opposes John Doe's inclusion on the registry.

**RESPONSE: See attachment A and B.**

10

Respectfully submitted,



John Doe B

Dated: April 17, 2023

As to Objections:

s/ Miriam J. Aukerman (P63165)
Miriam J. Aukerman
Dayja S. Tillman (P86526)
American Civil Liberties Union
 Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org
dtillman@aclumich.org

s/ Daniel S. Korobkin (P72842)
Danial S. Korobkin
Syeda Davidson (P72801)
American Civil Liberties Union
 Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6824
dkorobkin@aclumich.org
sdavidson@aclumich.org

s/ Paul D. Reingold (P27594)
Cooperating Counsel, American Civil
 Liberties Union Fund of Michigan
Univ. of Michigan Law School
802 Legal Research Building
801 Monroe Street
Ann Arbor, MI 48109-1215
(734) 355-0319 - pdr@umich.edu

s/ Roshna Bala Keen (Ill. 6284469)
Loevy & Loevy
Cooperating Counsel, American Civil
 Liberties Union Fund of Michigan
311 North Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 - roshna@loevy.com

Dated: April 17, 2023

Respectfully submitted,

*John Doe E.*
John Doe E

_____

Dated: April 17 2023

As to Objections:

s/ Miriam J. Aukerman (P63165)
Miriam J. Aukerman
Dayja S. Tillman (P86526)
American Civil Liberties Union
   Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org
dtillman@aclumich.org

s/ Paul D. Reingold (P27594)
Cooperating Counsel, American Civil
   Liberties Union Fund of Michigan
Univ. of Michigan Law School
802 Legal Research Building
801 Monroe Street
Ann Arbor, MI 48109-1215
(734) 355-0319 - pdr@umich.edu

s/ Daniel S. Korobkin (P72842)
Danial S. Korobkin
Syeda Davidson (P72801)
American Civil Liberties Union
   Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6824
dkorobkin@aclumich.org
sdavidson@aclumich.org

s/ Roshna Bala Keen (Ill. 6284469)
Loevy & Loevy
Cooperating Counsel, American Civil
   Liberties Union Fund of Michigan
311 North Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 - roshna@loevy.com

Dated: April 17, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2023, I served the above document(s) on counsel of record via email.

s/ Miriam J. Aukerman (P63165)
American Civil Liberties Union
  Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org
