# Exhibit 122:

# Michigan Attorney General Comments on H.B.5679

STATE OF MICHIGAN
DEPARTMENT OF ATTORNEY GENERAL



P.O. Box 30212
Lansing, Michigan 48909

**DANA NESSEL**
ATTORNEY GENERAL

May 11, 2020

The Honorable Graham Filler, Chair
House Judiciary Committee
124 North Capitol Avenue
Lansing, MI 48933

    Re:    House Bill 5679

Dear Chairman Filler and members of the Judiciary Committee:

    I appreciate the opportunity to weigh in on House Bill 5679 and the important issue of amending Michigan's current Sex Offender Registry Act (SORA). The scope and contours of SORA are issues I care about deeply, for reasons I set forth in <u>my amicus brief</u> to the Michigan Supreme Court in the SORA cases pending in that court.

    For reasons that include community stability and public safety, I have particular concerns with SORA's overall lack of individualized assessment of risk, its geographic exclusion zones, the tiers, and its onerous in-person reporting requirements. And given that the Sixth Circuit addressed these same points when it held that imposition of SORA on individuals who had committed offenses prior to July 1, 2011, was an Ex Post Facto Clause violation, *Does #1-5 v Snyder*, 834 F3d 696 (CA 6, 2016), it is vital that amendments to SORA fully address these concerns.

    I believe that HB 5679 has made some headway in doing so, and I appreciate the work that has gone into its drafting. But it is my opinion that the bill does not sufficiently address either my concerns or those of the federal court in these key areas and others. The bill needs considerably more work if the State is going to avoid future litigation over the constitutionality of its registry. And because courts tend to analyze the registry as a whole, any major area that remains insufficiently addressed could cause the entire Act to fall.

    For ease, I have organized my comments based on the specific provision, as follows:

The Honorable Graham Filler, Chair
Page 2
May 11, 2020

**Overall view**

The bill has further complicated, rather than simplified, SORA. One key way it has done so is by bifurcating the registry—essentially creating separate registries for pre-2011 and post-2011 registrants. And within those separate registries there are actually five different sets of rules, depending on the length of registration. This makes an already "byzantine code," *Does #1-5 v Snyder*, 834 F3d 696, 697 (CA 6, 2016), even more difficult for registrants to understand and for law enforcement officials to enforce. This is likely to lead to increase rather than avoid litigation.

**Lack of individualized risk assessment**

The length of registration should be based on risk and should be supported by evidence and research on recidivism. (Nessel amicus at pp 29–40.) The current SORA uses the offense of conviction as the only factor in determining whether an individual has to register and, if so, the length of the registration. HB 5679 continues this shortsighted offense-based assessment, and for post-2011 registrants who are still subject to tier designations, their assigned tier is tied to the offense(s) rather than to degree of risk. The Sixth Circuit criticized our SORA on this very point, noting that it "ascribes and publishes tier classifications corresponding to the state's *estimation* of present dangerousness *without providing for any individualized assessment*." *Does #1-5*, 834 F3d at 703 (emphasis added).

And problematically, HB 5679 suffers from the same weakness as the current SORA in that it affords a registrant no path to get off the registry. There is no ability to petition for removal based on an individualized assessment of risk or the passage of a specified number of years with no new sex offense.

HB 5679's offense-only approach does not adequately address public safety or federal court concerns. Unless this approach is re-evaluated, I believe the State will continue to be vulnerable to litigation. Other states have utilized various models, and some existing tools—such as Static-99 and Parole Board evaluation—could potentially be utilized in this endeavor.

**Geographic exclusion zones**

The bill retains school geographic exclusion zones (Sec 33(e); Sec 34(1)(a),(b)). This will be problematic given that the existence of geographic exclusion zones was a key focus of the Sixth Circuit in holding that SORA was unconstitutional Ex Post Facto punishment. The Sixth Circuit said that these zones pose "a great difficulty in finding a place where [registrants] may live or work" and "put significant restraints on how registrants may live their lives." *Does #1-5*, 834 F3d at 702, 703. And the Court noted that there was "scant" evidence that these zones actually keep

The Honorable Graham Filler, Chair
Page 3
May 11, 2020

the public safe. *Id.* at 704–705. I argued those same points to the Michigan Supreme Court. (Nessel amicus at pp 7.)

Therefore, the mere inclusion of these zones—even if clarity is added—could cause the entire Act to fall. Student safety zones are not required under the Sex Offender Registration and Notification Act (SORNA). It is one of the many ways Michigan's SORA goes beyond the requirements of SORNA.

The bill does attempt to clarify what constitutes an exclusion zone, which is a help. But it falls short in its definition of a school safety zone. It defines the zone as 1,000 feet or less from school property line (Sec 33(3)). It is unlikely that individuals will know where those property lines are, particularly since school property often extends a considerable distance from the school building itself and can include play yards and fields whose boundaries are not clearly delineated. Thus, the vagueness problems that Judge Cleland identified in 2015, see *Doe v Snyder*, 101 F Supp 3d 672 (ED Mich, 2015); *Doe v Snyder*, 101 F Supp 3d 722 (ED Mich, 2015), remain.

The bill also takes a positive step in fixing a vagueness problem by removing references to, and the definition of, "loitering" in school safety zones, Sec 33(b), and by adding some exceptions such as transport to and from school, attendance at school events, meetings with school employees, and intermittent passing through for work (Sec 34(4)(a)–(d)). These exceptions help registrants to stay connected to children and family members—which promotes stability. The bill should also indicate whether the restrictions are imposed 24/7 or just during school hours and whether there are exceptions for non-school activities that are held on school property (for example, a private dance studio recital where the studio has rented space in a high school theatre or auditorium).

**Tiers**

HB 5679 took a significant step forward in removing the tiers for pre-2011 registrants (Sec 2a(2)). The tiers were part of what drove the Sixth Circuit to conclude that SORA is an unconstitutional Ex Post Facto violation. The Sixth Circuit said that "SORA ascribes and publishes tier classifications corresponding to the state's estimation of present dangerousness without providing for any individualized assessment." *Does #1-5*, 875 F3d at 703. And the Court noted that the tiers "are unappealable." *Id.*

But for post-2011 registrants, the tiers remain. Again, the tiers are tied to offenses rather than to degree of risk, which burdens the registrant without adequately addressing public safety concerns. Thus, the problems with the tiers as outlined by the Sixth Circuit may remain unconstitutional for registrants moving forward.

The Honorable Graham Filler, Chair
Page 4
May 11, 2020

**In-person reporting requirements**

      The bill reduces the burden of reporting requirements by slightly extending the reporting periods. But it still requires in-person reporting on a wide variety of information unless the Michigan State Police comes up with a different system. The in-person reporting is burdensome especially for registrants who must do so for life. *Id*. For those whose offenses were after 2011, the lengths of registration, including lifetime registration, remain. For all others, the period is 25 years or 10 years after release from incarceration, whichever is longer, or lifetime registration if the registrant has committed certain offenses.

      These requirements, especially the voluntary nature of an MSP alternative to in-person reporting, are still problematic based on the fact that the Sixth Circuit focused on SORA's "cumbersome in-person" reporting. *Does #1-5*, 875 F3d at 703. The Court specifically noted that the requirement that registrants make frequent in-person visits to law enforcement "appears to have no relationship to public safety at all." *Id*. at 705.

      In sum, I appreciate your careful consideration of these comments and concerns. And once again, I thank you for the opportunity to be a part of this important, ongoing discussion.

                                           Sincerely,

                                           Dana Nessel
                                           Attorney General

DN/AMS