# Exhibit 140:

## Dr. Rachel Lovell Declaration

<u>In reference to the challenge to Michigan's Sex Offenders Registration Act</u>

I, Rachel E. Lovell, declare as follows:

1.      I am an applied criminologist and methodologist in the Department of Criminology and Sociology and the Director of the Criminology Research Center at Cleveland State University. I received my PhD from The Ohio State University in Sociology in 2007. I am an established scholar with over $6 million in external funding in the last nine years and several dozen peer-reviewed publications and book chapters and an edited monograph. My research focuses on gender-based violence and victimization, particularly sexual assault, human trafficking, and intimate partner violence. Starting in 2015, I have been the Principal Investigator on several large action research projects on previously untested sexual assault kits in collaboration with the Cuyahoga County Prosecutor's Office and the Akron Police Department, with funding provided by the Department of Justice's Sexual Assault Kit (SAK) Initiative. As a result of the funded research under the Sexual Assault Kit Initiative, my research team and I have collected the largest known database of sexual assaults that captures such extensive, historical data about sexual assaults, forensic testing, offenders and their criminal histories, victims, investigations, and prosecutions in the United States (N = 2,246). As the lead editor, I recently published *Sexual Assault Kits and Reforming the Response to Rape* with Routledge Press, the first monograph to address the most critical topics related to untested sexual assault kits and the Department of Justice's Sexual Assault Kit Initiative. In my work with the Sexual Assault Kit Initiative, I have examined and published extensively on offending patterns of sexual assault offenders—including sexual reoffending, general offending and reoffending, and the cost of sexual assault to victims. In this declaration, I discuss key findings and conclusions of researchers, including myself, regarding the victimization patterns of sexual assault and offending patterns of sexual assault offenders, including patterns of sexual reoffending, general reoffending, sexual recidivism, general recidivism, and the cost of sexual assault to victims. If called upon to testify, I could and would competently testify thereto.

2.      The information in this declaration is based upon my personal knowledge

1

and my research and scholarship, which is listed in my CV, as well as on research and scholarship in the field, including sources of the type which researchers in my field would rely upon in their work.

3.      I am being compensated at a rate of $250 p/hour for writing this expert report.

## **Summary of Declaration**

4.      Research on recidivism and repeat offending (also referred to as serial offending) emphasizes the importance of operationalizing these terms.[1]

  a.   *Criminal recidivism* most often implies repeated adjudication in the criminal justice system,[2] meaning that the offender is connected to two or more crimes separated by arrest, prosecution, and/or conviction,[3] i.e., being "caught" by the criminal justice system once and then being "caught" by the criminal justice system at least one more time. "Caught" is also referred to in the literature as "detected" or adjudicated.

  b.   *Sexual recidivism* (for a sexually based crime) is different from general recidivism (for a non-sexually based crime)[4].

  c.   *Repeat sexual offending* is engaging in a sexually based crime and then engaging in a subsequent sexually based crime(s) in a separate incident, regardless of being caught for either, both, or all offenses[5].

  d.   *Risk of sexual recidivism* is the probability, odds, or frequency of being caught by the criminal justice system for a subsequent sexually based offense.

  e.   *Risk of sexually reoffending* is the probability, odds, or frequency of engaging in a subsequent sexually based offense.

[1] Patrick Lussier et al., *Sex Offender Recidivism: Some Lessons Learned from Over 70 Years of Research*, CRIMINAL JUSTICE REVIEW 07340168231157385 (2023).
[2] *Id.*
[3] Rachel Lovell et al., *Offending Patterns for Serial Sex Offenders Identified via the DNA Testing of Previously Unsubmitted Sexual Assault Kits*, 52 JOURNAL OF CRIMINAL JUSTICE 68 (2017).
[4] Lussier et al., *supra* note 1.
[5] Rachell Lovell et al., *Advancing Our Understanding of Sexual Assault Offenders*, *in* SEXUAL ASSAULT KITS AND REFORMING THE RESPONSE TO RAPE 107 (Rachel Lovell & Jennifer Langhinrichsen-Rohling eds., 1 ed. 2022).

f.  *The dark figure of crime* is a well-known criminology principle that most crime is not reported. The actual crime rate is the "dark figure."

g.  The term sexual recidivism cannot be used interchangeably with repeat sexual offending. The former is smaller, easier to measure, and has less measurement error. Comparatively, the latter is much larger (how much larger is a matter of much debate, the *dark figure of sexual recidivism*[6]), difficult to measure, and has larger measurement error.[7]

5.  National prevalence estimates of sexual victimization, based on representative samples of the United States (U.S.) population, including both reported and unreported crimes, indicate that one in five women and one in 38 men have experienced a completed or attempted forced penetration in their lifetime[8].

a.  Simplistically, these high estimates imply: (i) a sizable portion of the population, mostly male population[9], are sexual offenders or (ii) repeat sexual offending is common.

i.  Research suggests that scenario 5a(ii)—repeat sexual offending—is more likely to be the key driver of high prevalence rates,[10] as detailed below.

ii.  Self-reported sexual reoffending rates are much higher than sexual recidivism rates. Seminal studies of male commuter college students and military recruits found that between 62% and 71% of men who self-reported ever sexually assaulting, attempting to sexually assault, or using coercion to sexually assault, did so more than once.[11]

iii.  Self-reported offending estimates also have significant limitations in that offenders must be able to recall, admit, and self-define these offenses as non-

---

[6] Nicholas Scurich & Richard S. John, *The Dark Figure of Sexual Recidivism*, (2019), https://papers.ssrn.com/abstract=3328831 (last visited Feb 27, 2023).

[7] Lussier et al., *supra* note 1; Scurich and John, *supra* note 6.

[8] S. G. SMITH ET AL., *The National Intimate Partner and Sexual Violence Survey (NISVS): 2010-2012 State Report*, (2017), https://www.cdc.gov/violenceprevention/pdf/NISVS-StateReportBook.pdf.

[9] Lussier et al., *supra* note 1.

[10] Patrick Lussier, Martin Bouchard & Eric Beauregard, *Patterns of criminal achievement in sexual offending: Unravelling the "successful" sex offender*, 39 JOURNAL OF CRIMINAL JUSTICE 433 (2011).

[11] David Lisak & Paul Miller, *Repeat Rape and Multiple Offending Among Undetected Rapists*, 17 VIOLENCE AND VICTIMS 73 (2002). S. K. McWhorter et al., *Reports of rape repergetration by newly enlisted male Navy personnel*, 24 SEXUAL ABUSE: A JOURNAL OF RESEARCH AND TREATMENT 204 (2009).al ABUSE: A JOURNAL OF RESEARCH AND TREATMENT 204 (2009).

consensual.[12]

    iv.    Estimates of repeat sexual offending based on data from initiatives to test previously untested SAKs support scenario 5a(ii) and are discussed in greater detail below.

6.    Sexual recidivism research based on official, court/administrative records from criminal justice agencies provides biased and unrepresentative estimates of repeat sexual offending.

    a.    Most sexual assaults in the US are unreported to law enforcement.[13] Sexual assault is the most underreported violent crime in the US.[14]

    b.    Even when sexual assaults are reported to law enforcement, convictions are the exception rather than the rule—a process referred to as case attrition.

        i.    Out of every 100 sexual assaults, approximately a third are reported to law enforcement[15], and five or fewer lead to a conviction (plea or guilty verdict).[16]

        ii.    Therefore, what we know about sexual assault offenders is primarily based on those *convicted* of a sexual assault offense (the ~5%). Unfortunately, studies based solely on convicted offenders vastly underrepresent sexual assault offending.[17]

7.    Sexual recidivism rates based on official, administrative/court records have been studied extensively.

    a.    Sexual recidivism rates are highly dependent upon how much time has passed after first being convicted and released (i.e., observation period), the type of sexual offense that initially led to the person being identified as a sexual offender (e.g.,

---

[12] Lussier et al., *supra* note 1.

[13] RACHEL E. MORGAN & ALEXANDRA THOMPSON, *Criminal Victimization, 2020*, (2020), https://bjs.ojp.gov/sites/g/files/xyckuh236/files/media/document/cv20.pdf.

[14] C. M. RENNISON, *Criminal Victimization 2000, Changes 1993-2000 with Trends 1993-2000*, 1 (2001), https://www.bjs.gov/content/pub/pdf/cv00.pdf.

[15] MORGAN AND THOMPSON, *supra* note 13.

[16] CASSIA SPOHN & KATHARINE TELLIS, POLICING AND PROSECUTING SEXUAL ASSAULT: INSIDE THE CRIMINAL JUSTICE SYSTEM (2014).Kimberly A. Lonsway & Joanne Archambault, *The "Justice Gap" for Sexual Assault Cases: Future Directions for Research and Reform*, 18 VIOLENCE AGAINST WOMEN 145 (2012).

[17] Lussier et al., *supra* note 1; Scurich and John, *supra* note 6.

    child molester, rapist, "peeping Tom," "John," etc.), and how the subsequent offense is operationalized (e.g., conviction, arrest, self-report, etc.).[18]

b. Most recidivism data have a finite period of observation for re-arrest or re-conviction (typically less than a decade) and are based on subsequent sexually based arrests or convictions.[19]

c. Meta-analyses (analyses that examine a specific topic based on a large number of independently published studies to determine overall trends), some of which were conducted by expert witness Dr. Hanson, found from the 1940s through the end of the 1990s and early 2000s that over an observation period of approximately five-years, the sexual recidivism rate was, on average, 13%.[20]

d. A recently released meta-analysis on sexual recidivism argues that a single rate of sexual recidivism that can be applied to all convicted sexual offenders (e.g., a "true" base rate for sexual recidivism) does not exist. Of the 808 empirical studies in their meta-analysis, the reported sexual recidivism rate varied from 0 to 68%.[21]

e. The most recent, generalizable *sexual recidivism* rates of sexual assault offenders in the U.S. come from a large representative sample of prisoners released from 30 states in 2005 and followed for nine years post-release.

    i. Approximately 8% of the released prisoners convicted of a sexual offense were arrested for a subsequent sexually based offense within those nine years.[22]

    ii. This 8% sexual recidivism relies solely on official criminal justice system records—a *completed* prison sentence for a sexual offense followed by a *subsequent arrest* for another sexual offense within a limited time frame (nine years)—which, as discussed above, is a substantial undercount of sexual reoffending.

---

[18] Scurich and John, *supra* note 6.
[19] Lussier et al., *supra* note 1.
[20] *Id.*
[21] *Id.*
[22] MARIEL ALPER & MATTHEW R. DUROSE, *Recidivism of Sex Offenders Released from State Prison: A 9-Year Follow-Up (2005-2014)*, (2019), http://www.bjs.gov/index.cfm?ty=pbdetail&iid=6566 (last visited Jun 3, 2019).

8.  Data from SAKs provide a more accurate discernment of the extent and nature of repeat sexual assault offending than data using only official administrative records of sexual recidivism.

    a.  Research conducted by me and others from the SAK initiative provides a more representative understanding of repeated sexual assault offending because the DNA evidence collected from these SAKs can connect previously unlinked sexual assaults by more objective means without relying on an arrest or conviction for that offense to appear in an individual's criminal history.

    b.  Data that connect suspects to a SAK is more representative of sexually based crimes because the linkage occurs earlier in the criminal justice system—at the time when the victims reported and had a SAK collected, not at arrest or conviction of the suspects, with the latter being much less representative because of attrition in the criminal justice system.

9.  Reliable estimates of repeat sexual offending cannot be based solely on official sexual recidivism data.

    a.  Sexual recidivism estimates cannot be reliably used to determine if sexual offenders live offense-free in the community because they fail to capture undetected sexual offenses—those that were not reported or where the individual was not arrested or convicted of the offense.

    b.  My research from Cuyahoga County (Cleveland, Ohio) and others' research conducted in Wayne County (Detroit, Michigan)—two early adopter SAK initiative jurisdictions addressing thousands of untested SAKs have documented a large number of identified serial sexual offenders as part of the initiatives.

        i.  Wayne County found that over a third (35.7%) of the 1,270 sampled suspected sexual offenders identified as part of their SAK initiative had two or more sexual assaults linked by DNA (called a kit-to-kit match).[23]

        ii. Cuyahoga County found that over a third (39%) of a large sample of 801 suspected sexual offenders with criminal histories identified as part of their

---

[23] Rebecca Campbell et al., *Connecting the dots: Identifying suspected serial sexual offenders through forensic DNA evidence.*, 10 PSYCHOLOGY OF VIOLENCE 255 (2020).

SAK initiative had either: two or more sexual assaults linked by DNA from SAKs or a link by DNA to a SAK plus a rape arrest or other registrable sexual offense.[24]

- Of these 801 sampled offenders, 30% were identified as being connected to a subsequent (to the first coded SAK in the sample) rape offense (excluding other types of sexually based offenses) either by being arrested and/or convicted for rape or linked to another untested SAK as part of the initiative.[25]

- One of these offenders is a former probation officer. He has now been connected by DNA to 22 rapes in Cleveland and Akron, OH, and several other sexual offenses for which there exists no DNA. He is serving a life sentence without the possibility of parole in Ohio. His known rapes span nearly a decade (1995 to 2004), often clustered in time. For example, two rapes he committed occurred within 90 minutes of each other. The victims in those two rapes were having their SAKs collected in the same hospital at the same time. While he only raped women who were strangers, his offending patterns and locations varied greatly. Had it not been for now-tested SAKs, the full extent of his sexual assault offending would never have been known.[26]

- Another convicted rapist identified through the SAK Initiative served 15 years in prison (1991 to 2006) after pleading guilty to attempted rape. In 2006, he was associated with two rapes—the rape of an 18-year-old female stranger whom he followed after she exited a city bus, and three weeks later, a female intimate partner. In both 2006 rapes, the victims had SAKs collected, but those SAKs were not submitted for testing until 2014. Meanwhile, he had several contacts with the criminal justice

---

[24] Rachel E. Lovell et al., *Rethinking estimates of sexual recidivism: How the National Sexual Assault Kit Initiative (SAKI) is changing our understanding of repeat sexual offending*, *in* ACADEMY OF CRIMINAL JUSTICE SCIENCES 59TH ANNUAL MEETING (2022).

[25] *Id.*

[26] Rachell Lovell, Danielle Sabo & Rachel Dissell, *Understanding the Geography of Rape through the integration of Data: Case Study of a Prolific, Mobile Serial Stranger Rapist Identified through Rape Kits*, 19 INTERNATIONAL JOURNAL OF ENVIRONMENTAL RESEARCH AND PUBLIC HEALTH 6810 (2022).

system, including a 2009 incident for which he was convicted of gross sexual imposition and served a year in prison. In 2014, he was caught in the act of raping a nude 19-year-old woman in a church parking lot on the snow-covered ground. The officer had to physically pull him off the victim. He was later convicted of the 2014 rape. Had these rape kits been tested contemporaneously to their collection and followed up on, it is possible that the 2014 rape could have been prevented. Additionally, while he would have identified as a sexual offender who recidivated (in connection with the 2009 gross sexual imposition conviction), the full extent of his repeat sexual offending would have been unknown without the kits linking him to the rapes.[27]

c. While these repeat sexual offending estimates from Wayne County and Cuyahoga County are much higher than the general sexual recidivism estimates of 8%, they are likely still undercounting the rate of serial sexual assault offending for several reasons.

    i. First, they only pertain to sexual assaults committed in the respective SAK initiative jurisdictions, not necessarily those in surrounding counties or other states.

    ii. Second, they are based on data from the Cleveland Police Department, where approximately half of all reported sexual assaults have an associated SAK.[28]

    iii. Third, using DNA from previously untested SAKs to establish repeat sexual assault offending is predicated on circumstances where a victim reported the sexual assault, a kit was collected, law enforcement retained the kit, and law enforcement personnel submitted the kit for testing. Furthermore, the suspects had to be connected to these now-tested SAKs in at least one of two ways—as a named suspect and/or through DNA. If connected by DNA, two

---

[27] Cory Shaffer, *Man caught raping woman in Cleveland church parking lot gets life in prison*, CLEVELAND.COM, May 29, 2019, https://www.cleveland.com/court-justice/2019/05/man-caught-raping-woman-in-cleveland-church-parking-lot-gets-life-in-prison.html (last visited Mar 1, 2023).

[28] Rebecca Campbell et al., *Preventing the "Second Rape": Rape Survivors' Experiences with Community Service Providers*, 16 JOURNAL OF INTERPERSONAL VIOLENCE 1239 (2001); Rachel Lovell & Rachel Dissell, *Dissemination and impact amplified: How a researcher–reporter collaboration helped improve the criminal justice response to victims with untested sexual assault kits*, 37 J CONTEMP CRIM JUSTICE 257 (2021).

additional criteria were necessary for the kits to be linked to each other: (a) the kit included enough DNA from the suspect to meet eligibility for testing, and (b) the kit had enough DNA information to meet federal DNA database eligibility. A breakdown with any of these criteria means the DNA did not make it into the system, and the sexual offenses would not be linked.

d. As an example of the more representative but still the undercounting of repeat sexual offending based on official, administrative data on sexual recidivism and data from untested SAKs: My research based upon the Cuyahoga County SAK Task Force, which led efforts to test and follow up on over thousands of untested SAKs in Cuyahoga County, mostly from the Cleveland Police Department, found that the testing produced CODIS-eligible profiles (the Combined DNA Index System, the federal DNA database)—meaning DNA profiles that were sufficiently robust enough to be eligible to be entered into CODIS—in 60% of the never-tested SAKs. Thus, 40% did not have a CODIS-eligible profile. Only 60% of these never-tested SAKs had an *opportunity* to hit/match to another SAK or to a suspected sexual offender.[29]

e. These estimates—35.7% (Wayne County) to 39% (Cuyahoga County)—should be considered the lowest reasonable estimates of repeat sexual assault. The "actual" sexual assault reoffending estimates are likely higher. However, how much higher is unknown.

10. Women are more frequently raped by someone known to them versus unknown to them.

a. According to the most recent CDC's National Intimate Partner and Sexual Violence Survey, a large-nationally representative sample of intimate partner and sexual violence victimization in the U.S. (including reported and unreported to law enforcement victimizations), of the women who said they had been raped in their lifetime, 56.1% stated the perpetrator was an acquaintance, 39.3% was an intimate partner, 16.0% was a family member, 4.0% was a person of authority,

---

[29] Rachel Lovell et al., *The case for "investigate all": Assessing the cost-effectiveness of investigating no CODIS hit cases in a sexual assault kit initiative*, 66 J FORENSIC SCI 1316 (2021).

9.6% was a brief encounter, and 12.1% was a stranger[30]. Note that the percentages add up to more than 100 because some victims had multiple perpetrators.

b. In my data from the Sexual Assault Kit Initiatives in Cuyahoga County and Akron, of the female victims with an associated SAK, 39.8% stated that the perpetrator was a stranger, 14.4% was an intimate partner, and the remaining 45.8% stated that the perpetrator was a family member, a person of authority, a brief encounter, or an acquaintance.

c. Thus, female victims in our SAK Initiative data were also more frequently raped by someone known to them versus unknown to them. Comparatively, they were more frequently raped by strangers and less frequently raped by an intimate partner versus nationally representative samples of female rape victims (reported and unreported victimizations). These differences are a function of the types of rapes more frequently reported to law enforcement and more often associated with victims who get SAKs collected.

11. Sexual assault offenders frequently commit other types of crimes (general offending) in addition to sexual assault offenses (sexual assault offending).

a. In a study of prisoners released in 1994 in 15 US states, three years after their release, 5% of sexual offenders were arrested for another sexually based crime and 43% for any crime.[31]

b. In an analysis of defendants from the 75 largest counties in the US referred to prosecutors on rape charges, 37% had at least one prior felony conviction, and 10% had five or more felony convictions.[32]

c. General recidivism rates for those convicted of sexually related crimes are lower than those convicted of non-sexually related crimes.[33]

---

[30] KATHLEEN C. BASILE ET AL., *The National Intimate Partner and Sexual Violence Survey: 2016/2017 Report on Sexual Violence*, (2022), https://www.cdc.gov/violenceprevention/pdf/nisvs/nisvsreportonsexualviolence.pdf.
[31] P. A. LANGAN, E. SCHMITT & M. DUROSE, *Recidivism of sex offenders released from prison in 1994*, (Bureau of Justice Statistics US Department of Justice, 2003), https://www.bjs.gov/content/pub/pdf/rsorp94.pdf.
[32] BRIAN REAVES, *Felony defendants in large urban counties, 2009-statistical tables*, (2013), https://www.bjs.gov/content/pub/pdf/fdluc09.pdf.
[33] ALPER AND DUROSE, *supra* note 22.

12.    Using data from the SAK Initiative, my research team and I conducted a study examining the offending behaviors of a large number of undetected sexual assault offenders (those not previously arrested and/or convicted of the sexual offenses associated with the kits), which allowed us to overcome the limitations of relying solely on official general recidivism to examine the offending behaviors of sexual assault offenders.[34]

   a.  Many of these undetected sexual assault offenders in our large sample had high rates of general recidivism—defined as being arrested for multiple serious (often violent) felonies—not just rape. These offenses included the eight felony index crimes: arson, burglary, robbery, rape, murder, motor vehicle theft, theft, and felonious assault. We also examined three additional crimes—kidnapping (often charged in connection with rape in Ohio), felony drug, and domestic violence.

   b.  In our study, these undetected sexual assault offenders had an average of almost seven and a half arrests for serious crimes, with the top decile having almost 19 arrests.

   c.  However, because of underreporting and significant attrition for rape within the criminal justice system, two-thirds did not have an arrest for rape in their criminal history despite being connected to a sexual assault via a previously untested SAK.

      i.  One perpetrator is a now-convicted rapist identified through the DNA testing of thousands of SAKs in Cuyahoga County. Just in Cuyahoga County, he has now been linked to the rapes of six women—killing one of them—during a 15-year span and is serving a 25-years-to-life sentence in Ohio. Between rapes, he was in and out of prison for stealing cars, felonious assault, arson, burglary, theft, and robbery. He is also a suspect in another murder. But until thousands of previously untested rape SAKs in Cuyahoga County were tested, including those connected to him, he had never been arrested or convicted of rape.[35]

---

[34] Rachel Lovell et al., *Offending Histories and Typologies of Suspected Sexual Offenders Identified Via Untested Sexual Assault Kits*, 47 CRIMINAL JUSTICE AND BEHAVIOR 470 (2020).
[35] Rachel Dissell, *Larry McGown admits to 6 serial rapes and a murder*, THE PLAIN DEALER, Apr. 28, 2017, https://www.cleveland.com/rape-

d.  The findings from this study suggest that sexual offenders might have general recidivism that more closely matches the rates for those convicted of non-sexually related crimes—they have yet to be identified as sexual offenders due to underreporting and attrition in the criminal justice system.

13.  Rape produces an extremely high societal cost of rape—the second most expensive violent crime after homicide.[36]

a.  The total cost of crime to victims is often categorized as the sum of the tangible and intangible costs.

b.  Tangible costs to victims include the direct cost of the crime, such as medical expenditures, cash losses, property theft or damage, lost earnings due to injury, and other victimization-related costs.

c.  Intangible costs to victims include the indirect cost of the crime, such as indirect losses suffered by victims—pain and suffering, decreased quality of life, and psychological distress.

d.  The total cost to victims of rape is estimated to be between $100,000 and $300,000 per rape[37].

14.  A cost-effectiveness study my team and I conducted on the SAK Initiative in Cuyahoga County estimated the total cost of rape to victims whose SAKs were included in the SAK Initiative to be $241,960 per rape (adjusted for 2019 dollars),[38] based on commonly cited estimates of the cost of rape to victims.[39]

a.  The tangible cost of rape to victims in our study was $6,597 (adjusted in 2019 dollars) per rape. These estimates included the direct cost of rape—medical expenditures, cash losses, property theft or damage, lost earnings due to injury, and other victimization-related costs. These costs were based on survey-based research and did not factor in long-term reduced income from interrupted education and

---

kits/2017/04/serial_rapist_larry_mcgowan_admits_to_attacks_on_6_women_killing_and_raping_a_7th.html (last visited Mar 1, 2023).

[36] K. E. McCollister, M. T. French & H. Fang, *The Cost of Crime to Society: New Crime-Specific Estimates for Policy and Program Evaluation*, 108 DRUG AND ALCOHOL DEPENDENCE 98 (2010).

[37] Can Wang & Lawrence M. Wein, *Analyzing Approaches to the Backlog of Untested Sexual Assault Kits in the U.S.A*, JOURNAL OF FORENSIC SCIENCES (2018), https://doi.org/10.1111/1556-4029.13739.

[38] Lovell et al., *supra* note 30.

[39] McCollister, French, and Fang, *supra* note 36.

long-term mental health issues such as Post-Traumatic Stress Disorder or increased substance abuse or suicide.[40]

b.  The intangible cost of rape to victims in our study was $235,363 (adjusted in 2019 dollars) per rape. These estimates included: pain and suffering, decreased quality of life, and psychological distress based on jury awards. Our models did not include premature mortality cost.[41]

c.  The SAK Initiative in Cuyahoga County produced a cost savings to the community of $26.48 million ($5,127 per SAK) after the inclusion of the tangible and intangible costs of future sexual assaults averted through convictions. Thus, the societal cost savings derived from the following up (via investigations and prosecutions) of the now-tested SAK.[42]

d.  Thus, preventing subsequent sexual offending results in significant societal cost savings for victims.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*/s/ Rachel Lovell*
Rachel Lovell, PhD

Dated: March 20, 2023

---

[40] Lovell et al., *supra* note 30.
[41] *Id.*
[42] *Id.*

Rev. 9/22

# Rachel E. Lovell

Department of Criminology and Sociology
Levin College of Public Affairs and Education
Cleveland State University
2121 Euclid Ave, RT 1721
Cleveland, OH 44115
(w) 216.687.4526
(c) 773.307.7763
she | her | hers
r.e.lovell@csuohio.edu

---

**Education**

2007   Ph.D., Sociology, The Ohio State University, Columbus, OH
2001   M.A., Sociology, Baylor University, Waco, TX
2000   B.A., *Cum Laude,* Sociology, Baylor University, Waco, TX

**Research and Academic Positions**

*Assistant Professor of Criminology*, Department of Criminology and Sociology, Cleveland State University, 2021-present

*Director,* Criminology Research Center*,* Department of Criminology and Sociology, Cleveland State University, 2022-present.

*Faculty Affiliate,* Women's and Gender Studies
*Faculty Affiliate,* CSU T.E.C.H. Hub

*Research Assistant Professor*, Begun Center for Violence Prevention Research and Education at Jack, Joseph and Morton Mandel School of Applied Social Sciences, Case Western Reserve University, 2019-2021

*Senior Research Associate*, Begun Center for Violence Prevention Research and Education at Jack, Joseph and Morton Mandel School of Applied Social Sciences, Case Western Reserve University, 2012-2019

*Senior Research Methodologist,* Social Science Research Center, DePaul University, 2009-2012

*Faculty Affiliate*, Master of Public Health

*Research Associate*, Midwest Regional Educational Lab, Learning Point Associates, 2008-2009

## Publications

### *Monographs*

**Lovell, R.E.** & Langhinrichsen-Rohling, J. (2023). *Sexual assault kits and reforming the response to rape*. (Eds.) Routledge Press. https://www.routledge.com/Sexual-Assault-Kits-and-Reforming-the-Response-to-Rape/Lovell-Langhinrichsen-Rohling/p/book/9781032033396

### *Peer-Reviewed Journal Articles*

**Lovell, R.E.** (2022). Detailing the process of identifying and the outcomes of efforts to address lawfully "owed" DNA. *Journal of Forensic Sciences.* 10.1111.1556-4029.15142

**Lovell, R.E.,** McGuire, M., Lorincz-Comi, N., Overman, L., Dover, T., Sabo, D. & Flannery, D.J. (2022). Examining walking-waiting sexual assaults from previously untested sexual assault kits: The intersection of stranger and outdoor sexual assaults. *Victims & Offenders.* 10.1080/15564886.2022.2100544

Widanaralalage, K.B., Reed, S.M., Antunes, M.J.L., DeJong, C., Pinchevsky, G., **Lovell, R.E.,** & Cummings, C.E. (2022). Distorted reality: A commentary on DiMarco et al., (2022) and the question of male sexual victimization. *Sexuality & Culture.* 10.1007/s12119-022-09988-0

**Lovell, R.E.,** Sabo, D. & Dissell, R. (2022). Understanding the geography of rape through the integration of data: Case study of a prolific, mobile serial stranger rapist identified through rape kits. *International Journal of Environmental Research and Public Health*, 19, 6810, https://doi.org/10.3390/ ijerph19116810

Lorincz-Comi, N., Ajayakumar, J., Curtis, J., Zhang, J., Curtis, A., & **Lovell, R.** (2021). Addressing uncertainty in census estimates. *Spatial Statistics*, 45. DOI: 10.1016/j.spasta.2021.100523

**Lovell, R.E.,** Singer, M., Flannery, D.J. & McGuire, M.J. (2021). The case for "investigate all": Assessing the cost-effectiveness of investigating no CODIS hit cases in a sexual assault kit initiative. *Journal of Forensic Science.* DOI:10.1111/1556-4029.14686

**Lovell, R.** & Dissell, R. (2021). Dissemination and impact amplified: How a researcher-reporter collaboration helped improve the criminal justice response to victims with untested sexual assault kits. *Journal of Contemporary Criminal Justice.* DOI: 10.1177/1043986221999880

**Lovell, R.,** Overman, L., Huang, D., & Flannery, D.J. (2020). The bureaucratic burden of identifying your rapist and remaining "cooperative": What the sexual assault kit initiative tells us about sexual assault case attrition and outcomes. *American Journal of Criminal Justice*. https://doi.org/10.1007/s12103-020-09573-xv

**Lovell, R.,** Huang, W., Overman, L., Flannery, D.J., & Klingenstein, J. (2020). Offending histories and typologies of suspected sexual offenders identified via untested sexual assault kits. *Criminal Justice and Behavior,* 47(4):470-486. DOI: 10.1177/0093854819896385

Luminais, M. & **Lovell, R.E.** (2019). A safe harbor is temporary shelter, not a pathway forward: How court mandated sex trafficking intervention fails to help girls quit the sex trade. *Victims & Offenders,* 14(5): 540-560. DOI: 10.1080/15564886.2019.1628145

**Lovell, R.E.,** Collins, C.C., McGuire, M.J., Overman, L.T., Luminais, M.N. & Flannery, D.J. (2019). Understanding intimate partner sexual assaults: Findings from sexual assault kits. *Journal of Aggression, Maltreatment & Trauma*, 28(1):2-7. DOI: 10.1080/10926771.2018.1494234.

**Lovell, R.,** Luminais, M. Flannery, D.J., Bell, R.B., & Kyker, B. (2018). Describing the process and quantifying the outcomes of the Cuyahoga County sexual assault kit initiative. *Journal of Criminal Justice*, 57:106-115. DOI: 10.1016/j.jcrimjus.2018.05.012.

**Lovell, R.**, Luminais, M. & Flynn, K. (2018). Structural misgendering of transgender sex workers in Chicago via mug shots?: A case study of practicing in the social sciences. *Practicing Anthropology,* 40(1):48-52. DOI: 10.17730/0888-4552.40.1.48

**Lovell, R.**, Luminais, M., Flannery, D.J., Overman, L., Huang, D., Walker, T., & Clark, D.R. (2017). Offending patterns for serial sex offenders identified via the DNA testing of previously unsubmitted sexual assault kits. *Journal of Criminal Justice*, 52:68-78. DOI: 10.1016/j.jcrimjus.2017.08.002

Scott, G., & **Lovell, R**. (2015). Rural pastor initiative: Addressing isolation and burnout in rural Ministry. *Pastoral Psychology* 64:71-97. DOI: 10.1007/s11089-013-0591-z

Falcone, T., Janigro, D., **Lovell, R.,** Simon, B., Brown, C.A., Herrera, M., Mynt, A.M. & Anand, A. (2014). S100B blood levels and childhood trauma in adolescent inpatients. *Journal of Psychiatric Research*. DOI: 10.1016/j.jpsychires.2014.12.002.

**Lovell, R.E.** (2007). Gender differences in the determinants and consequences of long-term illness in Sweden and Poland. *International Journal of Sociology* 37(2):94-112. DOI: 10.2753/IJS0020-7659370205

**Lovell**, R.E. (2007). Career and occupational-career interruptions. Guest editor's introduction. *International Journal of Sociology* 37(2):3-8. DOI: <u>10.2753/IJS0020-7659370200</u>

**Lovell, R.E.** (2006). Long-term illness as an occupational-career interruption: Gender differences in the determinants and outcomes in Sweden. *Scandinavian Journal of Disability Research* 8(2-3):132-149. DOI: <u>10.1080/15017410600796668</u>

### *Editor-Reviewed Book Chapters*

**Lovell, R.E.,** Williamson, A., Keel, T., Dover, T., & Weston, M.C**.** (2023). Advancing our understanding of sexual assault offenders. In R.E. Lovell,  & Langhinrichsen-Rohling (Eds). *Sexual assault kits and reforming the response to rape*. Routledge Press.

**Lovell, R.E.,** Crawford Fletcher, A.M., Sabo, D., Overman, L. & Flannery, D.J. (2022). What an examination of previously untested sexual assault kits tells us about the patterns of victimization and case outcomes for Black women and girls. In E.M. Ahlin, O. Mitchell., & C.A. Atkin-Plunk. (Eds). *Handbook on Inequalities in Sentencing and Corrections among marginalized populations*. (1st ed.). Routledge Press.

Luminais, M., Collins, C. & **Lovell, R.E.** (2021). Speaking the previously unspeakable: How the codification of spousal rape into law affects how intimate partner sexual assaults are reported. In M.G. Torres & K. Yllö (Eds), *Sexual violence in intimacy: Implications for research and policy in global health* (1st ed., pp. 101-118). Routledge Press. *ISBN:* 9780429322037

**Lovell, R.**, Flannery, D.J. & Luminais, M. (2018). Serial sexual offenders identified from backlogged sexual assault kits (SAKs). In A.T Vazsonyi, D.J. Flannery, & M. DeLisi (Eds.), *The Cambridge handbook of violent behavior and aggression* (2nd ed., pp. 399-417)*.* Cambridge University Press.

Scott, G., Garner, R., Korhonen, S. & **Lovell, R**. (2012). Software for qualitative analysis. In G. Scott & R. Garner (Eds.), *Doing qualitative research: Designs, methods, and techniques* (1st ed., pp. 348-374). Prentice-Hall.

**Lovell, R**. (2008). Przerwy w karierach zawodowych: zroznicowanie wedlug plci, wieku i wyksztalcenia (Interruptions in occupational careers: Differentiation according to gender, age, and education). In K.M. Slomczynski. (Ed.), *Kariera i sukces: Analizy socjologiczne* (*Career and success: Sociological analyses*) (1st ed.). Zielona Gora University Press.

**Lovell, R**. (2007). Occupational-career interruptions: Differences in patterns and impacts on occupational status in a transitional economy: An analysis of the Polish case. In Slomczynski, K.M. and  S. Marquart-Pyatt (Eds.), *Continuity and change in social life: Structural and psychological adjustment in Poland* (1st ed.). IFiS Publishers.

Lovell, R. (2007). Long term illness as an occupational-career interruption: Gender differences in the consequences for illness in Poland. In Slomczynski, K.M. & S. Marquart-Pyatt (Eds.), *Continuity and change in social life: Structural and psychological adjustment in Poland* (1st ed.). IFiS Publishers.

### *Peer-or Editor-Reviewed Magazine Articles – Researcher-Practitioner Outlets*

Lovell, R.E., Williamson, A., Dover, T., Keel, T., & Flannery, D.J. (2020). Identifying serial sexual offenders through cold cases. *Law enforcement bulletin* (official publication of the U.S. Federal Bureau of Investigation), May. https://leb.fbi.gov/articles/featured-articles/identifying-serial-sexual-offenders-through-cold-cases

Lovell, R., Yang, L & Klingenstein, J. (2019). Testing sexual assault kits saves money and prevents sexual assaults. *Translational criminology (*special issue, Translating research to policy: Improving justice for women and girls), Winter. https://cebcp.org/wp-content/TCmagazine/TC16x-Winter2019

Clark, D.R. & Lovell, R. (2018). Collaborative partnerships and the DNA testing of unsubmitted sexual assault kits. *The police chief* (official publication of the international association of chiefs of police), March. http://www.policechiefmagazine.org/collaborative-partnerships-and-the-dna-testing/

### *Non-Peer Reviewed Articles – Researcher-Practitioner Outlets*

Lovell, R. & Flannery, D.J. (2016). Testing of backlogged rape evidence leads to hundreds of convictions. *The Conversation,* Nov. 13, 2016. http://theconversation.com/testing-of-backlogged-rape-evidence-leads-to-hundreds-of-convictions-65707

### *Non-Peer Reviewed Research Briefs/Reports*

Lovell, R.E., Klingenstein, J., Du, J., Overman, L.T., Sabo, D.N., Flannery, D.J., and Ye, X. Using sentiment analysis and topic modeling in assessing the impact of police "signaling" on investigative and prosecutorial outcomes in sexual assault reports. Final research report, *National Institute of Justice* (2018-VA-CX-0002).

Lovell, R.E., et al. (2016—present). Series of research briefs from the Cuyahoga County Sexual Assault Kit Research Project. https://digital.case.edu/islandora/object/ksl%3A2006061275?sort=fgs_label_ss%20asc&islandora_solr_search_navigation=0&f%5B0%5D=mods_subject_topic_ms%3A%22Sexual%5C%20assault%5C%20kits%22

Lovell, R. & Jordan, A. (2012). Do john schools really decrease recidivism? A methodological critique of an evaluation of the San Francisco first offender prostitution program. DePaul University, Social Science Research Center, Chicago, IL.

Scott, G. & **Lovell, R**. (2010). A critique of HB 6462, the Illinois safe children act." DePaul University, Social Science Research Center, Chicago, IL.

**Lovell, R.**, Kochanek, J., Mathers, C. & Burke, M. (2009). Snapshots of Indiana's full-day kindergarten programs before and after the state's funding increase for the program. (REL Technical Brief, REL 2009-No. 013). Washington, DC: U.S. Department of Education, Institute for Education Sciences, National Center for Education Evaluation and Regional Assistance, Regional Educational Laboratory, Midwest. http://ies.ed.gov/ncee/edlabs.

### *Manuscripts Under Review or in Progress*

Falcone, T. **& Lovell, R.** Inflammatory biomarkers as predictors of suicide risk - an adolescent study. Under review.

**Lovell, R.E.** & Lorincz-Comi, N., Spatial predictors of rape. In progress.

**Lovell, R.E.,** McGuire, M., Sabo, D. Barriers and facilitators of having a sexual assault kit collected. In progress.

**Lovell, R.E.,** Widanaralalage, K.B., Reed, S.M., Antunes, M.J.L., & DeJong, C., Patterns of male sexual assault victimization from untested sexual assault kits. In progress.

**Lovell, R.E.,** Du, J., & Ye, X. Sentiment Analysis of Rape Reports. In progress.

**Lovell, R.E.** Versatility of offending and behavioral crime linkages. Invited chapter, *The Practice of Behavioural Crime Linkages* In Davies, K., Tonkin, Matthew, Weeks, M., and Winter, J. Eds). Routledge. In progress.

---

### **Current Funding: Grants, Proposals, & Contracts**

*U.S. Department of Justice. Bureau of Justice Assistance's National Sexual Assault Kit Initiative FY 2022, Purpose Area 1*— (federal flow through with the Cuyahoga County Prosecutor's Office), **PI, Research Partner** (2022-2025). Total Award: $2.0 million, Research Award: $330,562

*U.S. Department of Justice. Bureau of Justice Assistance's National Sexual Assault Kit Initiative FY 2021, Purpose Area 1*— Review, Investigation, and Prosecution of Cold Case Sexual Assaults Using DNA Technologies (federal flow through with the Cuyahoga County Prosecutor's Office), **PI, Research Partner** (2021-2024). Total Award: $1.5 million, Research Award: $200,000 (15PBJA-21-GG-04308-SAKI)

*U.S. Department of Justice. Bureau of Justice Assistance's National Sexual Assault Kit Initiative FY 2021, Purpose Area 1* (federal flow through with the Cleveland Division of Police), **PI, Research Partner** (2021-2024). Total Award: <u>$2.5 million</u>, Research Award: <u>$298,643</u>

*Ohio Department of Mental Health and Additional Services, FY22 OhioMHAS Covid-19 Block Grant Funding Opportunity for Partnership in Eliminating Youth Human Trafficking* (state flow through with the Cleveland Rape Crisis Center), **PI, Research Partner** (2022-2023). Total Award: <u>$1.3 million</u>, Research Award: <u>$100,000</u>

*U.S. Department of Justice. Bureau of Justice Assistance's Innovative Prosecution Solutions FY 2020* (federal flow through with the Cuyahoga County Prosecutor's Office), **PI, Research Partner** (2020-2022). Total Award: <u>$360,000</u>, Research Award: <u>100,000</u> (2020-YX-BX-0008)

*U.S. Department of Justice. Bureau of Justice Assistance's Innovative Prosecution Solutions FY 2019* (federal flow through with the Cuyahoga County Prosecutor's Office), **PI, Research Partner** (2019-2021). Total Award: <u>$360,000</u>, Research Award: <u>$89,589</u> (2019-YX-BX-0018)

*U.S. Department of Justice. Office of Victims of Crime's* FY 2019 Direct Services to Support Victims of Human Trafficking (federal flow through with the Cleveland Rape Crisis Center), **PI, Research Partner** (2020-2022). Total Award: <u>$547,235</u>, Research Award: <u>68,999</u> (2019-VT-BX-0077)

*U.S. Department of Justice. Bureau of Justice Assistance's Innovative Prosecution Solutions FY 2019* (federal flow through with the Cuyahoga County Prosecutor's Office), **PI, Research Partner** (2019-2021). Total Award: <u>$360,000</u>, Research Award: <u>$89,589</u> (2019-YX-BX-0018)

*U.S. Department of Justice. Bureau of Justice Assistance's National Sexual Assault Kit Initiative FY 2019, Purpose Area 1—Comprehensive Approach to Addressing Unsubmitted Sexual Assault Kits* (federal flow through with the Cuyahoga County Prosecutor's Office), **PI, Research Partner** (2019-2022). Total Award: <u>$2 million</u>, Research Award: <u>$328,100</u> (2019-AK-BX-0005)

*U.S. Department of Justice. Bureau of Justice Assistance's National Sexual Assault Kit Initiative FY 2019, Purpose Area 3—Owed DNA* (federal flow through with the Cuyahoga County Prosecutor's Office), **PI, Research Partner** (2019-2022). Total Award: <u>$1 million</u>, Research Award: <u>$200,000</u> (2019-AK-BX-0029)

*U.S. Department of Justice. Bureau of Justice Assistance's National Sexual Assault Kit Initiative FY 2019, Purpose Area 1—Comprehensive Approach to Addressing Unsubmitted Sexual*

*Assault Kits* Akron Sexual Assault Kit Initiative (ASAKI) Team Enhancement (federal flow through with the City of Akron), **PI, Research Partner** (2019-2022). Total Award: $2 million, Research Award: $425,000 (2018-AK-BX-0004)

**Previous Funding: Grants, Proposals, & Contracts (as PI or Co-PI)**

*National Institute of Justice, Research and Evaluation on Violence Against Women.* Using Sentiment Analysis and Topic Modeling in Assessing the Impact of Police Signaling on Investigative and Prosecutorial Outcomes in Sexual Assault Reports. **PI,** (2019-2021). $770,151 (2018-VA-CX-0002)

*U.S. Department of Justice. Bureau of Justice Assistance's National Sexual Assault Kit Initiative FY 2018.* Advancing Cuyahoga County's Approach to Unsubmitted SAKs (federal flow through with the Cuyahoga County Prosecutor's Office), **PI, Research Partner** (2018-2021). Total Award: $2 million, Research Award: $315,714 (2018-AK-BX-0001)

*Jewish Family Service Association.* Evaluation of Forward Focus. **PI,** (2019-2020). Total Award: $10,000

*Cleveland Foundation.* Feasibility Study for a Multi-Disciplinary Sex Crimes Task Force in Cuyahoga County **PI,** (2019-2020). Total Award: $99,898

*Jewish Family Service Association.* Evaluation of Forward Focus. **PI,** (2018-2019). Total Award: $10,000

*Cleveland Rape Crisis Center.* Evaluation of Victim Advocacy at the Cleveland Rape Crisis Center. **Co-PI** (with Gunnar Karakurt), (2017-2018). Total Award: $100,000

*U.S. Department of Justice. Bureau of Justice Assistance's National Sexual Assault Kit Initiative FY 2016, Purpose Area 2 ("Owed" DNA).* Cuyahoga County Sexual Kit Task Force Owed DNA Initiative, Purpose Area 2 (federal flow through with the Cuyahoga County Prosecutor's Office). **PI**, **Research Partner**. Total Award: $1 million, Research Award: $401,102 (2016-2019) (2016-AK-BX-K011)

*U.S. Department of Justice. Bureau of Justice Assistance's National Sexual Assault Kit Initiative FY 2016, Purpose Area 1.* Cuyahoga County Sexual Assault Kit Task Force Capacity Building Initiative, federal flow through with the Cuyahoga County Prosecutor's Office. **PI**, **Research Partner**. Total Award: $1 million, Research Award: $457,222 (2016-2019) (2016-AK-BX-K016)

*Cuyahoga County Board of Commissioners.* Evaluation of the Tapestry System of Care ***PI, (2016-2019).*** Total Award: $450,000

*NIH-National Institute of Mental Health*. Peripheral Neuroinflammatory Predictors of Suicidal Risk at Time of Inpatient Discharge in Adolescents (federal flow through with the Cleveland Clinic). **Co-Investigator**. Research Award: $18,870 (2016-2019) (R21-MH108857)

*Research, Training, Development Grant*. Process and Impact Evaluation of the Cuyahoga County Juvenile Court Safe Harbor Project. Jack, Joseph and Morton Mandel School of Applied Social Sciences. *Case Western Reserve University*. **Co-PI** (with Daniel J. Flannery), (2016-2017). Total Award: $9,000

*U.S. Department of Justice. Bureau of Justice Assistance's National Sexual Assault Kit Initiative FY 2015*. Cuyahoga County Sexual Assault Kit Initiative (federal flow through with the Cuyahoga County Prosecutor's Office). **Co-PI** (with Daniel J. Flannery), **Research Partner,** (2015-2018), Total Award: $1.99 million, Research Award: $484,868 (2015-AK-BX-K009)

*National Institutes of Health, CWRU Clinical and Translational Science Award Partners in Education, Evaluation and Research (PEER)* (federal flow through from Prevention Research Center at Case Western Reserve University), **Statistical Consultant,** (2015-2017). Research Award: $15,000.

*Cuyahoga County Prosecutor's Office*. Sexual Assault Kit Research Project. **Co-PI (**with Daniel J. Flannery), (2014-2015). Total Award: $110,000.

*Begun Foundation*. Evaluation of Family PASS and Forward Focus. **Co-PI** (with Daniel J. Flannery), (2014-2015) Total Award: $50,000.

*Cuyahoga County Board of Commissioners.* Evaluation of the Tapestry System of Care. **Co-PI** (with Daniel J. Flannery), (2013-2015). Total Award: $297,144.

*Domestic Violence & Child Advocacy Center*. Evaluation of the Breaking the Cycle Project. **Co-PI** (with Daniel J. Flannery), (2012-2013). Total Award: $10,000.

---

**Fellowships, Honors, and Awards**

*Best Overall Paper*. College of Education at Public Affairs' Founding Faculty Research Showcase, Cleveland State University, 2022. Lovell, R.E., McGuire, M., Lorincz-Comi, N., Overman, L., Dover, T., Sabo, D. & Flannery, D.J. (2022). Examining walking-waiting sexual assaults from previously untested sexual assault kits: The intersection of stranger and outdoor sexual assaults. Victims & Offenders. 10.1080/155564866.2022

*Most Impactful Paper for Policy, Practice, Community Change.* College of Education at Public Affairs' Founding Faculty Research Showcase, Cleveland State University, 2022. Lovell, R.E., McGuire, M., Lorincz-Comi, N., Overman, L., Dover, T., Sabo, D. & Flannery, D.J. (2022). Examining walking-waiting sexual assaults from previously untested sexual assault kits: The intersection of stranger and outdoor sexual assaults. Victims & Offenders. 10.1080/155564866.2022

*Women of Achievement Award,* Flora Stone Mather Center for Women*,* Case Western Reserve University, 2019.

*Freedman Fellowship, Co-Fellow* (with Misty Luminais). Data in the Service of Community Engagement: Risk Terrain Modeling of Sexual Assault Kit Initiative Geospatial Data. The Freedman Center for Digital Scholarship, Kelvin Smith Library, *Case Western Reserve University*. (2018-2019). $7,450.

*Freedman Fellowship, Fellow* (with Misty Luminais). Visualizing the Spatial and Temporal Dimensions of Cuyahoga County's Sexual Assault Kit Backlog. The Freedman Center for Digital Scholarship, Kelvin Smith Library, *Case Western Reserve University.* (2017-2018). $9,000.

---

**Teaching Experience**

*Assistant Professor,* Cleveland State University, Department of Criminology and Sociology. 2021-present.
Courses:
- SOC 530: Evaluation Research (Graduate)
- CRM 362: Victimology (Undergraduate)
- SOC  354: Quantitative Social Research (Undergraduate)

*Adjunct Instructor,* Case Western Reserve University, Mandel School of Applied Social Sciences. 2021.
Course:
- SASS 612: Evaluation Research (Doctoral)

*Co-Instructor,* Case Western Reserve University, Mandel School of Applied Social Sciences. 2020.
Course:
- SASS 500: Violence: Social Work and Public Health Perspective (Master's)

*Adjunct Instructor,* Case Western Reserve University, Department of Sociology. 2017.
Course:
- SOC 204: Criminology (Undergraduate)

*Adjunct Instructor,* DePaul University, Department of Sociology. 2009-2012.
   Courses:
   - Research Methods (Master's)
   - Quantitative Research Methods (Undergraduate)

*Adjunct Instructor,* DePaul University, School of Public Service. 2012.
   Courses:
   - Research Methods and Statistics I and II (Master's)

*Graduate Teaching Associate,* The Ohio State University, Department of Sociology. 2002-2007.
   Courses:
   - Quantitative Research Methods (Undergraduate)
   - Sociology of Women (Undergraduate)
   - Social Stratification (Undergraduate)
   - Methods of Social Inquiry (Undergraduate, recitation leader)

*Adjunct Instructor,* Columbus State Community College, Department of Sociology. 2005.
   Courses:
   - Introduction to Sociology (Undergraduate)

*Graduate Teaching Assistant,* Baylor University, Department of Sociology. 2000-2002.
   Courses:
   - Social Statistics (Lab instructor)
   - Introduction to Sociology (Teaching assistant)
   - Women in Society (Teaching assistant)
   - Introduction of Women's Studies (Teaching assistant)

**Teaching and Research Interests and Experience**

*Teaching and Research Interests:* Criminology, Victimology, Evaluation Research, Social Statistics, Violence and Victimization, Interpersonal Violence, Women and Criminal Justice, Gender-Based Violence, Social Research Methods, Gender Studies/Sociology of Women, Social Stratification/Inequality.

*Previous Classes Taught:* Victimology (undergraduate), Criminology (undergraduate), Social Statistics (graduate and undergraduate), Evaluation Research (doctoral), Violence and Public Health (co-taught, master's), Research Methods (graduate and undergraduate), Social Stratification (undergraduate), Sociology of Women (undergraduate), Introduction to Sociology (undergraduate).

## Presentations

### *Invited Presentations*

Bedi, N., Lovell, R.E, & Ordway, D.M. (alphabetically). (2022). Academic research as an investigative journalism tool: Tips to get you started (webinar). The Journalist's Resource at Harvard Kennedy School. December 15 https://www.youtube.com/watch?v=hWk2jPNMg6Q

Lovell, R.E. (2022). "What does it matter if I was drinking?": How to effectively use data from reports and data from people to counteract victim blaming of survivors of sexual violence. *Trauma-informed interviewing & reporting on sexual violence: A training for journalists, Ohio Alliance to End Sexual Violence*. Virtual. October 22.

Lovell, R.E. (2022). How the National Sexual Assault Kit is changing our understanding of sexual offenders. *Federal Bureau of Investigation, Critical Incident Response Group, BAU-4*. April 14.

Lovell, R.E. (2022). Advancing our understanding of rapists: 5 recommendations for law enforcement from untested rape kits. *Federal Bureau of Investigation, National Academy, Round Robin. Session* #281 January 26 and #282 April 13.

Lovell, R.E. (2020). SAKI, Serial Offenders, and Top 5 Recommendations for Law Enforcement. *Bureau of Justice Assistance's Sexual Assault Kit Initiative Grantee Meeting*. Virtual. September 17.

Lovell, R.E. (2020). How DNA testing and machine learning technology is informing and improving policy practices. *2020 American Association for the Advancement of Science Annual Conference*, Seattle, WA. February 14. Funded by the National Institute of Justice AAAS Fellow's program.

Lovell, R.E. (2019). Offending Histories and Typologies of Sexual Offenders Identified via Untested Sexual Assault Kits. *Centre for Crime, Justice, and Policing Annual Conference,* University of Birmingham. Birmingham, UK. June 14.

Lovell, R.E. (2019). Lawfully Owed DNA: Outcomes from Swabbing Individuals Who Lawfully "Owe" DNA in Cuyahoga County. *Bureau of Justice Assistance's Sexual Assault Kit Initiative Grantee Meeting*. Washington, DC. June 7.

Lovell, R.E. (2018). Translating research to policy: Improving justice for women & girls." *Division on Women & Crime of the American Society of Criminology Congressional Briefing*, Capitol Hill. October 2018. https://www.youtube.com/watch?v=lg_ILwm-cBs

Lovell, R.E. (2018). Emerging Research from a Researcher-Practitioner Partnership in Cuyahoga County, OH: Criminal History and Victim Vulnerabilities. *Assembly of the Cities, Sexual Assault Kit Initiative, 2018.* Duluth, MN, September 11.

Lovell, R.E. & Flannery, D.J. (2018). Do Serial Sex Offenders Maintain a Consistent *Modus Operandi*?: Findings from Previously Unsubmitted Sexual Assault Kits. *Innovations (formerly SMART) Suite Researcher-Practitioner Fellows Academy*. Chicago, IL, February 27.

Lovell, R.E. (2017). Changing What We Know about Rape by Examining Backlogged Rape Kits. *TEDxAkron*. http://www.tedxakron.com/tedxakron-2017/. Akron, OH. May 20.

Lovell, R.E.  (2017). Mapping the SAKI Process: Describing and Quantifying the Advancement of Unsubmitted Sexual Assault Kits from Testing to Disposition in Cuyahoga County. *Bureau of Justice Assistance's Sexual Assault Kit Initiative Grantee Meeting.* Washington, DC. May 19.

Lovell, R.E., Luminais, M, & Flannery, D.J. (2017). Improving Sexual Assault Victims' Rights and Engagement: An Examination of Backlogged Sexual Assault Kits. *Public Policy Forum. 'Victims Matter: Rights, Engagement, Response and Action.* Sponsored by Ohio Alliance to End Sexual Violence. Cleveland, OH. February 10.

Lovell, R.E., Flannery, D.J., & Luminais, M. (2017). Sexual Assault Kits—Changing What We Know about Rape. *Mandel School of Applied Social Sciences Research Colloquium*. Case Western Reserve University. Cleveland, OH. October 28, 2016.

Kyker, B. & Lovell, R.E. (2016). Lessons Learned from Unsubmitted Sexual Assault Kits. *Cuyahoga County Sexual Assault Response Team (SART) Annual Conference*. Cleveland, OH. October 7.

Bell, R. & Lovell, R.E. (2016). Working with an Embedded Researcher. *2016 Detroit Sexual Assault Kit Summit, Sexual Assault Kit Initiative*. Detroit, MI. September 27.

Lovell, R.E. (2015). Combatting Sexual Assault in Ohio: The Cuyahoga County Sexual Assault Kit Initiative. *The Ohio State University Marion*, Marion, OH. November 10.

Lovell, R.E. (2014). Modalities of Labor Exploitation. *Human Trafficking? Symposium in Recognition of U.N. World Social Justice Day. The Social Justice Institute*, Case Western Reserve University. Cleveland, OH. February 22.

Lovell, R.E. (2014). Which Is the Most Appropriate Statistical Test to Use. *Spring 2014 Research Colloquium.* Jack, Joseph and Morton Mandel School of Applied Social Sciences, Office of Research and Training and Doctoral Program, Case Western Reserve University. Cleveland, OH. February 20.

Lovell, R.E. 2013. When to Use Which Statistical Test. *Center for Reducing Health Disparities at MetroHealth Medical Center.* Case Western Reserve University. Cleveland, OH. September 5.

### *Selected Conference Presentations (Presented)*

Lovell, R.E. (2022, November). Assessing sentiment in rape reports using natural language processing. *American Society of Criminology Annual Meeting,* Atlanta, GA.

Weston, M.C., & Lovell, R.E., (2022, April). Lawfully "owed" DNA: Mission possible – increasing our capacity to solve violent crimes. *American Society of Crime Lab Directors Annual Meeting*, Reno, NV.

Lovell, R.E. (2022, March). Rethinking estimates of sexual recidivism: How the national sexual assault kit initiative (SAKI) is changing our understanding of repeat sexual offending. *Academy of Criminal Justice Sciences Annual Meeting,* Las Vegas, NV.

Lovell, R.E. (2021, November). Exploring the characteristics of sexual assaults committed while victims were walking or waiting (in-transit) from untested sexual assault kits. *American Society of Criminology Annual Meeting,* Chicago, IL.

Lovell, R.E. (2021, November). The impact of reading thousands of rape reports. *American Society of Criminology Annual Meeting,* Chicago, IL.

Lovell, R.E., Williamson, A. & Dover. T. (2020, November). "Changing What We Know About Sexual Assault Investigations: Recommendations to Law Enforcement." *CrimCon.* Virtual.

Lovell, R.E., Klingenstein, J., & Huang, D. (2020, November). "Outcomes from Efforts to Swab Individuals Who Lawfully 'Owe' DNA in Cuyahoga County." *CrimCon.* Virtual.

Lovell, R.E. & McGuire, M. (2020, August). Impact of Victim Advocacy Integration on Cold Case Investigations: Lessons Learned from the Cuyahoga County Sexual Assault Kit Task Force. *Sexual Assault Kit Initiative Webinar, SAKI Research and Crime Analyst Working Group, RTI.* Virtual.

McGuire, M. and Lovell, R.E. (2020, August). When Survivors Self-identify Sexual Assault in Intimate Partner Violence: Implications for the Field from the Sexual Assault Kit Initiative. *Ohio Alliance to End Sexual Violence's Annual Conference.* Virtual.

Lovell, R.E., Luminais, M., & Flannery, D.J. (2019, November). More sinister than coincidence: How spatial, temporal, and criminal justice vulnerabilities affect victims for targeting by sexual perpetrators. *American Society of Criminology Annual Meeting,* San Francisco, CA.

Lovell, R.E. (2018, November). What I read can never be un-read: Secondary trauma from coding unsubmitted rape kit case files. *American Society of Criminology Annual Meeting,* Atlanta, GA.

Flannery, D.J. & Lovell, R.E. (2018, November). Examining differences in the criminal histories of serial vs. nonserial sex offenders linked to unsubmitted sexual assault kits. *American Society of Criminology Annual Meeting*, Atlanta, GA.

Luminais, M., Lovell, R.E. & Flannery, D.J. (2018, November). Bureaucratic burden on sexual assault victims: Assessing sexual assault case outcomes from previously unsubmitted sexual assault kits in Cuyahoga County. *American Society of Criminology Annual Meeting,* Atlanta, GA.

Lovell, R.E. & Flannery, D.J. (2018, July). Helping Mothers Helps Mothers and Children: Familial Power Dynamics in Abusive Households. *XIX ISA World Congress of Sociology.* Toronto, Canada.

Lovell, R.E., Luminais, M., & Dissell, R. (2018, April). Dispelling Myths and Improving Practice: An Examination of Untested Rape Kits in Cuyahoga County. *End Violence Against Women International Annual Conference*, Chicago, IL.

Lovell, R.E. and Flanner, D.J. (2016, November). Predicting Prosecutorial Outcomes in the Sexual Assault Kit Task Force in Cleveland, Ohio. *72nd Annual Meeting of the American Society of Criminology.* New Orleans, LA.

Lovell, R.E. & Flannery, D.J. (2016, November). Challenges and Workarounds in Testing, Investigating, and Prosecuting "Backlogged" Sexual Assault Kits (SAKs): Findings from the BJA's Sexual Assault Kit Initiative—the Cuyahoga County (Cleveland, OH) Sexual Assault Kit Task Force. Data Collection Challenges: Databases and the Unit of Analysis, Policy Panel. *72nd Annual Meeting of the American Society of Criminology.* New Orleans, LA.

Lovell, R.E. and Flannery, D.J. (2016, March). Lessons Learned from an Evaluation of Process the Cuyahoga County Sexual Assault Kit (SAK) Task Force Developed for Testing, Investigating, and Prosecuting a Backlog of Unsubmitted SAKs. *Annual Meeting Midwestern Sociological Society. Chicago*, IL.

Lovell, R.E., Timmons-Mitchell, J. & Overman, L. (2016, March). Measuring the Counterfactual via Case Notes in an Evaluation of Homeless Prevention Programs. *Annual Meeting Midwestern Sociological Society. Chicago, IL.*

Lovell, R.E., Butcher, F., & Flannery, D.J. (2015, November). Preliminary Findings on Serial Sexual Offenders from the Cuyahoga County Sexual Assault Kit Task Force. *71st Annual Meeting of the American Society of Criminology.* Washington, DC.

Lovell, R.E., Galanek, J. Speer, J., & Gulasingam, N. (2014, September). Transgender "Johns" in Chicago: Why Chicago Arrests So Many Transgender Women for "Buying" Sex. *11th Annual Human Trafficking, Prostitution, and Sex Work Conference.* Toledo, OH.

Baughman-Sladky, M., Lovell, R.E.,& Caporale, L. (2014, September). The Opiate & Heroin Epidemic: The Changing Face of Ohio's Criminal. *25th Annual UMADAOP State Conference.* Toledo, Ohio.

Scott, G. & Lovell, R.E. (2011, August). Saving Children and Harming Women: A Critique of Illinois HB 6462, the "Illinois Safe Children Act." *106th American Sociological Association Annual Meeting.* Las Vegas, Nevada.

Artis, J. & Lovell, R.E. (2010, August). Teaching Statistics. Teaching Workshop. *105th American Sociological Association Annual Meeting.* Atlanta, Georgia.

Lovell, R.E. (2006, August). Long Term Work-Related Consequences of Occupational Career Interruptions: Gender Differences in Poland. *101th American Sociological Association Annual Meeting.* Montreal, Quebec, Canada.

Lovell, R.E. (2005). Determinants of Illness Career-Interruptions:  An Event History Analysis. *Analyzing Dynamic Data: The Polish Panel Survey, 1988-2003 (POLPAN), Warsaw, Poland.* Institute of Philosophy and Sociology of the Polish Academy of Sciences. Warsaw, Poland.

Lovell, R.E. & Slomczynski, K.M. (2005, August). Effects of Occupational-Career Interruptions on Income for Women and Men: A Comparison of Sweden and Poland. *100th American Sociological Association Annual Meeting.* Philadelphia, Pennsylvania.

Lovell, R.E. and Slomczynski, K.M. (2005, August). How do Occupational-Career Interruptions Influence Meritocratic Allocation of People to Jobs? *37th World Congress for the International Institute of Sociology.* Stockholm, Sweden.

Lovell, R.E. (2005). "The Impact of Occupational-Career Interruptions on Income for Women and Men: A Comparison of the U.S., Sweden, and Poland." Paper presented for *Careers and Career Transitions: New Evidence for a New Economy.* Wharton's Center for Human Resources. University of Pennsylvania, Philadelphia, PA.

Lovell, R.E. (2004). Occupational Trajectories and Career Interruptions in a New Labor Market. *Radical Social Change in East Central Europe: A Dynamic Analysis of Panel Data.* Institute of Philosophy and Sociology of the Polish Academy of Sciences. Warsaw, Poland.

**Professional Membership and Activity**

***Recent Peer-Review Activity*** *(Reviewer)*

Canadian Journal of Criminology and Criminal Justice
Feminist Criminology
Journal of Forensic Sciences

Journal of Investigative Medicine
Perspective in Psychological Sciences
Victims and Offenders
Criminal Justice Review
Sage Open
Violence Against Women
Journal of Criminal Justice

### *Membership*

| | |
|---|---|
| Academy of Criminal Justice Sciences | 2022-present |
| Division of Victimology, American Society of Criminology | 2019-present |
| Division of Women in Crime, American Society of Criminology | 2015-present |
| American Society of Criminology | 2015-present |