# Exhibit 143:

## Dr. Darryl Turner Declaration

## Psychological Consultant Report by Darrel B. Turner, PhD

<u>In reference to challenge to Michigan's Sex Offenders Registration Act</u>

**Section 1:**

The Static-99R is an actuarial risk assessment tool designed to predict a sexual offender's risk of sexual "recidivism," as compared to other sexual offenders. Extremely important to the instant legal arguments is that, in the context of the Static-99R, recidivism is strictly defined by either, a) new charges for sexual offenses, b) new arrests for sexual offenses, c), (and primarily in the analytic structure of the meta-analysis that led to the formulation of the Static-99R) new convictions for sexual offenses, or d) a rule violation.[1] Additionally, the Static-99R has not been normed on CSAM (child sexual abuse material) offenders, and does not, therefore, account for said offenses. While the Static-99R does have evidence of good predictive validity for reconvictions of sexual offenders for new crimes, it cannot be generalized to sexual *reoffenses* that are not reported or prosecuted. Additionally, as outlined below, the instrument does not account for sexual reoffenses that are in fact reported by the victim but not reported to law enforcement, offenses reported to law enforcement but not resulting in charges or arrests, arrests not resulting in action by said jurisdiction's District Attorney or prosecuting agency, cases accepted by these agencies but pled down to non-sexual offenses by title, nor those cases accepted and prosecuted that do not end in a rearrest or a conviction. Plaintiffs' experts' reports use the terms "recidivism," "reoffense," and "reconviction" interchangeably throughout their declarations. (ECF No. 1-4, PageID. 234-238, 248-249, 255-257). For example, in paragraph 13 of his report, Dr. Hanson refers to rates of "reoffending," but cites a study that only measured arrests. (ECF No. 1-4, PageID, 236.) Thus, statements such as, "After 10 years in the community without committing a sex offence, most individuals with a history of sexual offending pose no more risk of sexual *offending* than do males in the general population," are misleading. (ECF No. 1-4, PageID 230.)(Emphasis added.) Rather, triers of fact should understand that this finding refers to rearrests and reconvictions rather than reoffenses. To be clear, the purpose of this report is not to attack or denigrate the Static-99R

instrument or its authors. However, generalization of Static findings regarding likelihood of reconviction to reoffending in general is problematic in nature at best and potentially misleading.

Furthermore, sexual offenses are unique because roughly 30% of sexual assaults are actually reported to police. Even if reported, only 5% will lead to an arrest, and less than 3% will result in a felony conviction.[2]. Accounting for only crimes that result in a conviction completely disregards up to 97% of sexual assaults. Clearly, sexual reoffending is a different construct completely as compared to, for example, bank robbery or murder, in which the vast majority to all reoffenses are reported.

[1] Lennings, C., Seidler, K., Heard, R., Collins, E., & Nasr, R. (2011). Age and the Static 99R. *Sexual Abuse in Australia and New Zealand, 3*(1), 34-41. http://proxygw.wrlc.org/login?url=https://www.proquest.com/scholarly-journals/age-static-99r/docview/883396130/se-2

[2] "Criminal Justice System: Statistics," RAINN, accessed March 7, 2023, https://www.rainn.org/statistics/criminal-justice-system

**Section 2:**

Plaintiffs' experts claim that "[t]he risk for sexual recidivism can be reliably predicted by widely-used risk assessment tools, such as the Static-99R, which are used to classify individuals into various risk levels." (ECF No. 1-4, PageID 230.)   Yet, in the Static-99R coding rules, it explicitly states the Static-99R is "not recommended for females, young offenders… offenders who have only been convicted of prostitution related offenses, pimping, sex in public locations with consenting adults, or possession/distribution of pornographic/indecent materials including child pornography.[3]"  There a r e a large variety of sexual offenses, differing in nature, motivation, context, and other salient factors, that distinguish them from one another.[4]   Because sexual offenders are far from monolithic, no one psychological test or measure can truly capture the likelihood of reoffending for all sex offenders.[5]   The claim that findings based on the Static-99R indicate "low" overall sexual recidivism (especially so when the term "reoffending," is used interchangeably) when applied to arguments made to support legislative changes is, unfortunately, quite misleading to the triers of fact for these reasons.

Additionally, the Static-99R manual states, "Static-99R does not address all relevant risk factors for sex offenders.  Consequently, a prudent evaluator will always consider other external factors, such as dynamic or changeable risk factors. In other words, Static-99R is intended as one component of a risk assessment report.  Additional information should be considered external to the scale."[6]   One specific and germane factor to sexual offenses the Static-99R fails to consider is

---

[3]Phenix, Amy, et al. *Static-99R Coding Rules Revised.* 2016
[4]Schwartz, B. K. (2011). Characteristics and typologies of sex offenders. In B. K. Schwartz (Ed.), Handbook of sex offender treatment (pp. 1–33). Civic Research Institute.
[5]Robertiello, G., & Terry, K. J. (2007). Can we profile sex offenders? A review of sex offender typologies. *Aggression and Violent Behavior*, *12*(5), 508–518. https://doi.org/10.1016/j.avb.2007.02.010
[6]Phenix, Amy, et al. *Static-99R Coding Rules Revised.* 2016

antisocial behavior.[7] The Static-99R coding manual acknowledges its failure to consider such, and even comments that antisocial behavior is an important risk factor with the highest risk category of offenders.[8] Dr. Hanson's meta-analytic data clearly demonstrates that sexual deviance and antisociality are the two most important risk factors when considering sexual recidivism. Ignoring the relationship between antisocial behavior, sexual deviancy, and the likelihood of reoffending certainly does not void the utility of the Static-99R. But it does create concern over the assessment's structural integrity when it is presented to triers of fact as an accurate measure of an individual offender's risk of *reoffending* sexually as opposed to reoffending in a manner that leads to rearrest or reconviction.[9] Lastly, there are concerns about the Static-99R's reliability across different ethnic groups.[10] These concerns are pointed out to illustrate that Plaintiffs' use of Static-99R to support their claim that sex offender registries provide no benefit across all offenders may in fact be inappropriate.

**Section 3:**

Plaintiff experts discuss variations in risk levels of sexual offenders in terms of "high risk" and "low risk." (ECF No. 1-4, PageID 250.)  The authors use these categories to propose a multi-tier system of offender risk with specific factors that qualify an individual for placement in each level.  (ECF No. 1-4, PageID 253.)  The terms "high risk," "low risk," and "lifelong risk," are arbitrary in nature and subject to the subjective view of the persons creating these labels.  However, it is important that the trier of fact in this case understand that jurors who have used the multi-tier system have reported vastly varying degrees of risk (anywhere from 1% risk of recidivism to 100%), indicating an offender is "likely" to reoffend[11].  These terms in colloquial use have vastly different meanings, and it should be noted that "low" or "high" are nominal terms created by the authors of these instruments, and the general public may have very different views regarding what constitutes a "low" risk or "high" risk of reoffending.  Additionally, Plaintiffs' expert reports include a table that only refers to a single sample of sexual offenders who have not been reconvicted of a sexual offense to show that those offenders as being "0%" likely to reoffend. (ECF No. 1-4, PageID 265.)  While this is accurate for that specific sample, it is misrepresentative to persons not educated in statistical analysis to extrapolate those findings to indicate that any sexual offender with an identical score poses "no" or "zero percent" chance of reoffending.

---

[7] Greenall, P. (2007). Sexual offending and antisocial personality: Exploring the link. *The British Journal of Forensic Practice*, *9*(3), 24–30. https://doi.org/10.1108/14636646200700017

[8] Phenix, Amy, et al. *Static-99R Coding Rules Revised.* 2016

[9] Mills, J. F., Anderson, D., & Kroner, D. G. (2004). The antisocial attitudes and associates of sex offenders. *Criminal Behaviour and Mental Health*, *14*(2), 134–145. https://doi.org/10.1002/cbm.578

[10] Varela, J. G., Boccaccini, M. T., Murrie, D. C., Caperton, J. D., & Gonzalez, E. (2013). Do the static-99 and static-99r perform similarly for white, black, and Latino sexual offenders? *International Journal of Forensic Mental Health*, *12*(4), 231–243. https://doi.org/10.1080/14999013.2013.846950

[11] Turner, D.B., Boccaccini, M.T., Murrie, D.C., & Harris, P.B. (2015). Jurors report that risk measure scores matter in sexually violent predator trials, but that other factors matter more, *Behavioral Sciences and the Law, 33*(1), 56–73. https://doi.org/10.1002/bsl.2154

**Section 4:**

While Plaintiffs' experts acknowledge that all crimes have some amount of undetected offenses, they fail to recognize the distinction between sexual offenses and other crimes.  A claim is made that criminologist experts agree that undetected general criminal offenses should not impact the rates of recidivism in general.  (ECF No.1-4 PageID 258-259.)  But, certainly, the unique aspects of underreporting and prosecution of sexual offenses counter this claim.  There are specific aspects of sexual victimization that act as barriers to disclosure, especially to law enforcement.[12]  Some of these aspects are feelings of shame, guilt, or embarrassment; concerns about friends, family, and members of the victim's community knowing about the offense; and a fear of not being believed.[13]  There are even more barriers specific to certain populations such as male victims[14], children[15], and victims in the LGBT+ community.[16]  Plaintiffs' experts address the issue of undetected offenses by claiming that there is no reason to suspect that individuals with a prior sexual offense conviction would have more undetected crimes than an individual with no prior convictions for sexual crimes.  (ECF No. 1-4, PageID 275.)  However, one study on offenders convicted of child sexual abuse material charges found that 85% disclosed undetected contact offenses against a child.[17]  The majority of disclosures did come from offenders with no known prior contact offenses, but the forty participants who did have known offenses revealed an average of 19.4 victims as opposed to the participants with no known histories, who had an average of 8.7 victims.  Dr. Hanson makes the claim that after 20 years "offense-free" (meaning "conviction-free"), an individual who has a prior sexual offense conviction is no more likely to offend than a non-offending adult male from the general public.  (ECF No. 1-4, PageID 278.)  However, as indicated by the results from tactical polygraph studies, many – even a majority of offenses – go undetected.  Thus, the reliance on arrest and conviction rates alone is inaccurate when these results are purported to represent "reoffending" in general.  Furthermore, this claim is supported by predictions of recidivism rates, rather than actual observed rates which are compared against general population prevalence rates that come from non-peer reviewed studies.  Similarly, Plaintiff

expert Dr. Hanson cites a Bureau of Justice Statistics study which found that 2% of nonsexual offenders were later convicted of a sexual offense within a nine-year period.  (ECF No. 1-4, PageID 242.)  Plaintiffs' experts acknowledge that this finding is an underestimation of the actual prevalence of sexual offenses as the study only measured specific sexual crimes and did not include non-contact sexual offenses or offenses against children, yet this "2%" statistic is used throughout declarations to compare against rates of individuals with sexual conviction histories and the general population. (*Id.*)

---

[12] Biaggio, M.K., Brownell, A., & Watts, D. L. (1991). Reporting and seeking support by victims of sexual offenses, *Journal of Offender Rehabilitation, 17*(1-2), 33-42. https://doi.org/10.1300/J076v17n01_03

[13] Sable, M.R., Danis, F., Mauzy, D.L., & Gallagher, S.K. (2006). Barriers to reporting sexual assault for women and men: Perspectives of college students, *Journal of American College Health, 55*(3), 157-162. https://doi.org/10.3200/JACH.55.3.157-162

[14] Easton, S. D. (2013). Disclosure of child sexual abuse among adult male survivors, *Clinical Social Work Journal, 41*(4), 344-355. https://doi.org/10.1007/s10615-012-0420-3

[15] Somer, E. & Szwarcberg, S. (2001). Variables in delayed disclosure of childhood sexual abuse, *American Journal of Orthopsychiatry, 71*(3), 332-341. https://psycnet.apa.org/doi/10.1037/0002-9432.71.3.332

[16] Miles-Johnson, T. (2013). LGBTI variations in crime reporting: How sexual identity influences decisions to call the cops, *SAGE Open, 3*(2), 1-15. https://doi.org/10.1177/2158244013490707

[17] Bourke, M. L., & Hernandez, A. E. (2009). The 'Butner Study' redux: A report of the incidence of hands-on child victimization by child pornography offenders. *Journal of Family Violence, 24*(3), 183–191. https://doi.org/10.1007/s10896-008-9219-y

**Section 5:**

Plaintiffs' expert, Dr. Hanson, claims, "I conclude that individuals who have committed a sexual offence are not continuous, lifelong threats.  The recidivism risk of many registrants was already very low, or has declined to, base- line levels."  (ECF No. 1-4, PageID 231.)  It is vital to understand that the use of the term "lifelong" is completely arbitrary, as are the nominal risk "levels" of "low," or "average," as discussed above.  "Lifelong" risk is classified as 20 years, but the misleading nature of the term becomes more clear when we consider an offender convicted at age 20 verses age 55.  Dr. Hanson postulates that general recidivism rates for non-sexual offenses are roughly 30%, and follows by stating that the reoffending rates (which should, again, read "rearrest and reconviction rates") of sex offenses are 5-15% after five years, and 10-20% after ten years.  (ECF No. 1-4, PageID 237.)  Dr. Hanson uses these figures to show how much lower the risk of sexual reoffending is as compared to non-sexual offending.  Given how established it is that sex offenses are notoriously undetected, unreported, and unaccounted for, a 20% rate of reconviction, meaning only those offenses caught and successfully prosecuted (which again, is a significant underrepresentation), nearly approaches the 30% recidivism rate for other offenses.  Additionally, the Static-99R has received criticism regarding ethical concerns over its employment of base rates,[18] as well as its application to older populations.[19]  When considering the "aging" out of risk for reoffending, it simply cannot be claimed that these older individuals (or any) will eventually pose "no" threat.  Statistically, there is no instance of an individual with "no" risk to reoffend.  The claims Plaintiffs' experts put forth around these offenders that "risk… [has] been extinguished," are misleading to triers of fact and would benefit from rewording that is more in line with scientific consensus regarding risk in general.  (EFC No. 1-4, PageID 266.)

Dr. Hanson claims that after 15 years of living in the community, 73% of offenders had no new charge or conviction.  (ECF No. 1-4, PageID 260.)  Inversely, that implies 27% of offenders did in fact have a new charge or conviction.  Given that it is well known that the percentage of sex offenders who reoffend but go undetected is quite higher than 27%, it appears misleading to

describe this statistic, especially when considering the unique nature of this type of crime, as representing "low risk." Lastly, the Plaintiffs' experts' arguments fail to account for the full population of sex offenders as it pertains to "aging" out of risk for reoffending. For example, a 22-year-old male offender, who offends against a 17-year-old female, may very well pose a lower risk after no new offenses within ten years. However, a 22-year-old male offender, who is truly clinically pedophilic and possesses distinct sexually deviant predilections, will always be attracted to prepubescent girls, even after twenty years.

---

[18] Cauley, D. R. (2010). The death of the static-99. *SSRN Electronic Journal*. https://doi.org/10.2139/ssrn.2239089

[19] Lennings, C., Seidler, K., Heard, R., Collins, E., & Nasr, R. (2011). Age and the static 99R. Sexual Abuse in Australia and New Zealand, 3(1), 34–41. https://search.informit.org/doi/10.3316/informit.668112059639029

**Section 6:**

Static-99R normative data findings indicate that offenders with incest victims are the least likely to "reoffend." As discussed earlier, sex offenses are a unique crime and require a different approach to statistical analysis given the severity of their underreporting.  It is inappropriate to employ the same assumptions when interpreting data of offending and reoffending of sexual crimes as one does with other crimes.[20]  Feelings of shame and guilt (often secondary to the grooming process in addition to the actual abuse), as well as lack of support or access to resources, are two major factors in the underreporting of sex offenses.  These are especially salient in the underreporting of sexual offenses against children.[21]  Children who are victims of incest are among the lowest to receive support following disclosure of the offense,[22] and disclosure is clinically rare.[23]  The Static-99R elevates risk for those offenders who have male victims, but men are less likely to report sexual offenses in general, [24] and male incest victims represent the absolute lowest reporting rates.[25]   Often times, the report of sexual abuse, specifically with incest offenses, occurs several years later,[26] and results are generally similar across different family roles.[27]  While the Static-99R may be sound in its diagnostic design and construction, these findings suggest that it likely artificially lowers the represented risk of incest offenders as being the least likely to "reoffend."  Rather, as noted above, the Static-99R has shown that incestual offenders are indeed less likely to be *reconvicted* given these extreme disparities in reporting.  Essentially, the Static-99R scores incest offenders as lower risk than acquaintance or stranger offenders.  The lower risk is most likely due to the fact that incest victims are less likely to report the crimes and not because incest offenders are less likely to actually reoffend.  Again, incest offenders appear less likely to be reconvicted than other offenders.  This distinction is vital to any trier of fact's understanding of the construct of sexual reoffending in general as opposed to reconviction.

In sum, the purpose of this report is not to attack the validity of the Static 99R or its authors. The instrument has been a landmark in the field of prediction of sexual recidivism for decades when

no other tools existed. Simply stated, when the instrument is described in a manner commensurate with its actual function - indicating which types of sexual offenses are more likely to result in a rearrest or reconviction - it is unrivaled. However, when the leap is made from that specific function to generally represent sexual "reoffending," there exists a problem in the intellectual interpretation of the research findings to triers of fact.

[20] "Criminal Justice System: Statistics," RAINN, accessed March 7, 2023, https://www.rainn.org/statistics/criminal-justice-system

[21] Arata, C. M. (1998). To tell or not to tell: Current functioning of child sexual abuse survivors who disclosed their victimization. *Child Maltreatment*, *3*(1), 63–71. https://doi.org/10.1177/1077559598003001006

[22] Everson, M. D., Hunter, W. M., Runyon, D. K., Edelsohn, G. A., & Coulter, M. L. (1989). Maternal support following disclosure of incest. *American Journal of Orthopsychiatry*, *59*(2), 197–207. https://doi.org/10.1111/j.1939-0025.1989.tb01651.x

[23] Carlson, B. E., Maciol, K., & Schneider, J. (2006). Sibling incest: Reports from Forty-one survivors. *Journal of Child Sexual Abuse*, *15*(4), 19–34. https://doi.org/10.1300/j070v15n04_02

[24]"Criminal Justice System: Statistics," RAINN, accessed March 7, 2023, https://www.rainn.org/statistics/criminal-justice-system

[25] NASJLETI, MARIA. "Suffering in Silence: The Male Incest Victim." *Child Welfare*, vol. 59, no. 5, 1980, pp. 269–75. *JSTOR*, http://www.jstor.org/stable/45393680. Accessed 8 Mar. 2023.

[26] ROESLER, THOMAS A., & WIND, TIFFANY. WEISMANN (1994). Telling the secret. *Journal of Interpersonal Violence*, *9*(3), 327–338. https://doi.org/10.1177/088626094009003003

[27]Cyr, M., Wright, J., McDuff, P., & Perron, A. (2002). Intrafamilial sexual abuse: Brother–sister incest does not differ from father–daughter and stepfather–stepdaughter incest. *Child Abuse & Neglect*, *26*(9), 957–973. https://doi.org/10.1016/s0145-2134(02)00365-4

**Section 7:**

The current section addresses the typical cost and time requirements for an individualized risk assessment of a sexual offender by a qualified mental health professional.  In my practice, I regularly evaluate sexual offenders of both a contact and non-contact nature for defense and prosecution as well as directly for various Courts.  A large portion of these evaluations are of repeat sexually violent offenders in consideration for civil commitment.  Typically, these evaluations have a fee schedule of $450/hour for all clinical work which includes record review, evaluation, report writing, test scoring, and occasional testimony.  The number of records reviewed can vary from approximately 100 pages, which is a limited number of records related to the offenses or alleged offenses.  But oftentimes, the discovery is considerably more voluminous and can include thousands of pages of records to be reviewed before the evaluation is even undertaken. The evaluation itself generally constitutes anywhere from two to eight hours of individualized psychological assessments and test scoring.  Preparation of the report, when required, generally consists of four to ten hours of writing.  Travel is billed at $250/hr, portal to portal, and varies depending on the distance of the jurisdiction to my home office as well as the potential for the use of Zoom or other teleconferencing technologies.  Testimony may last anywhere from two hours to a full day in court, or more.  Plaintiffs' experts opine that it is less important how the risk factors are evaluated than it is that all the major risk factors and protective factors are in fact addressed. (ECF No. 1-4, Page ID 238-239.)  Overall, the cost of an individualized risk assessment report may be anywhere from approximately $8,000 to upwards of $20,000.  It is vital to explore all important risk factors and protective factors, and this can only be achieved through a thorough and exhaustive individualized psychological assessment.  Although the following data is anecdotal in nature, it is compelling that Ted Bundy and John Wayne Gacy, at the time of their first arrest for sexual offenses, and prior to their subsequent sexual murders, would have both scored in the average range of risk for "reoffending" per the Static-99R.  As the authors of the instrument note, it is imperative to not solely rely on the Static as an all-inclusive measure of risk of sexual reoffending.

(ECF No. 1-4, Page ID; Phenix, Amy, et al. Static-99R Coding Rules Revised. 2016.) It is an excellent tool that provides solid information regarding one aspect (static factors) of risk of an offender being reconvicted for any subsequent sexual offenses. It cannot, as no instrument can currently, account for idiosyncratic factors such as an offender's own admission regarding his concern or intent to reoffend.

It is my sincere hope that this report can provide information that can allow triers of fact to make intelligent and informed decisions related to any administrative and/or legislative practices regarding sexual offenders that is fair to both the public, potential victims, previous victims, and the offenders themselves.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____

Dr. Darrel B. Turner.

Dated: 3/20/2023

**2022 CURRICULUM
VITAE**

Darrel B. Turner, PhD

PERSONAL:

|  |  |
|---|---|
| Telephone: | (337) 842-6339 |
| Fax: | (337) 419-0490 |
| E-mail: | dbt@turnerforensicpsychology.com |
| Mailing address: | P.O. Box 3245 |
|  | Lake Charles, LA 70602 |
| Primary Office: | 748 Bayou Pines East, Suite D |
|  | Lake Charles, LA 70601 |
| Website: | www.turnerforensicpsychology.com |

EDUCATION:

McNeese State University, Lake Charles, LA
    B.S. in Psychology, May 2002
    M.A. in Counseling Psychology, May 2006

Sam Houston State University, Huntsville, TX
    Ph.D. in Clinical Psychology, September 2011

Louisiana Licensed Clinical Psychologist – License #1219

Texas Licensed Clinical Psychologist – License #36453

PROFESSIONAL EXPERIENCE:

Clinical:

Private Clinical Practice and Forensic Practice (Competency and Sanity for Adults and
    Juveniles, Risk Assessment of Sex Offenders both Adult and Juvenile, Child
    Custody Evaluations, Fitness for Duty Evaluations, General Diagnostic
    Evaluations, etc.). Testimony as an expert witness in clinical psychology and
    forensic psychology in district, state, and federal court for prosecution and
    defense on the above matters.

Psychological Consultant to Oceans Behavioral Health Inpatient Psychiatric Center in
    Lake Charles, LA, November, 2021 to Present

Member of Advisory Council for Shannon Cox Family and Youth Community
    Counseling Center, January 2020, to present

Invited Peer Reviewer for Publications in the Journal of Child Abuse and Neglect

Federally Contracted Sex Offender Risk Assessment and Treatment Provider for Federal Inmates on Probation or Parole – Western District of Louisiana, Lake Charles Division. 2021-present

Member of the Louisiana Registry of Sex Offender Treatment Providers (2013 to present).

Substance Abuse Program (SAP) certified evaluator (2016 to present).

Appointed to U.S. Department of Justice National Strategy SME Child Exploitation & Human Trafficking Council to U.S. Congress as an Expert in Offender Psychology (1 of 15 Worldwide), March 2020.

Expert and Consulting Expert in Criminal and Civil Litigation Regarding Impact of Sexual Abuse (to include production of child pornography) on Victims (both as Children and Adults). Cases have included individual (offender) liability as well Institutional Liability (State Institutions, Mental Health Care Inpatient Facilities, Foster Care Networks, etc.).

Invited to Speak Nationally and Internationally on Various Topics Related to Forensic Psychology at a Variety of Mental Health, Legal, and Law Enforcement Trainings and Conferences

Designated as an Expert Witness in Clinical Psychology with a Specialty in Forensic Psychology and Sex Offending in United States Federal Court, Multiple Districts, Multiple State Jurisdictions, and Multiple Local Courts.

Consultant to the FBI, NCIS, Department of Homeland Security, and Various State, Local, and Federal Attorneys and Law Enforcement Agencies re: Risk Assessment of Sexual Offenders and Behaviors of both Offenders and Victims of Childhood Sexual Assault

Consultant to Various Media Sources related to True Crime Coverage for Newspapers, Television, and Documentary Films

(August 2011 to February 2013) Staff Psychologist at Federal Correctional Complex, Pollock, LA.

(August 2010 to August 2011) Pre-doctoral Internship with the United States Federal Bureau of Prisons at the Federal Correctional Institution in Fort Worth, Texas. Rotations include Forensic Psychology, General Psychology and Correctional Psychology.

(August 2009 to May 2010) Practicum placement at Ben Taub General Hospital Neuropsychiatric Clinic at the Houston Medical Center in Houston, Texas.

(June 2008 to August 2008) Practicum placement at Harris County Juvenile Detention Center in Houston, TX, through MHMRA.

(November 2007 to December 2009) Conducted forensic evaluations and trial
consultation for adults and juveniles under the supervision of Dr. Mary Alice
Conroy across several counties in Texas. Evaluations included: Competency to
Stand Trial, Sanity at the Time of the Offense, and Competency for Execution.

(August 2008 to August 2009) One of two doctoral students assigned to a new 20hr/week
Assessment Practicum placement at the Psychological Services Center in
Huntsville, TX. Duties include adult and child psychological assessments for a
variety of learning, personality, and forensic issues.

(August 2007 to May 2008) Practicum placement at MCDCSC in Willis, Texas.

(Summer 2005 to Summer 2006) Head Counselor and Assistant to Coordinator at the
Kay Dore Counseling Clinic.  Children as Primary Client Population.

PUBLICATIONS:

ODAG (2021) (Office of Deputy Attorney General) Invited Collaborator and Expert
Consultant on Antonational Strategy on Child Exploitation: Offender Psychology;
Section Prepared by United States Military Service Behavioral Analysis Unit
(BAU) and the FBI BAU from the National Coordinator for Child
Exploitation & Human Trafficking, the U.S. Department of Justice.

*McCallum, K., E., Boccaccini, M. T., Varela, J. G., & Turner, D. B (2021).
Psychopathy profiles and Personality Assessment inventory Scores in a sex
offender risk assessment field setting. *Assessment*.
https://doi.org/10.1177/10731911211015312

*Trupp, G., Preszler, J., Boccaccini, M. T., Marcus, D. M., Varela, J. G., & Turner,
D. B. (2021). Generalizability of psychopathy network findings to scores
assigned to individuals convicted of a sex offense. *Criminal Justice and
Behavior, 48*(5), 671-689. doi: 10.1177/0093854821989375

Turner, D. B., Blanch, J., Sparks, C., & Hanks, M. (2015). The Sentencing
Battleground: Understanding the current psychology research and refuting
defense psychology and risk assessment reports at sentencing. United States
Attorneys' Bulletin. U.S. Department of Justice, July, 2015.

Turner, D. B., Boccaccini, M. T., Murrie, D. C., & Harris, P. B. (2015). Jurors report
that risk scores matter in SVP trials, but that other factors matter more.
*Behavioral Sciences and the Law*. doi: 10.1002/bsl.2154

Boccaccini, M. T., Murrie, D. C., & Turner, D. B. (2014). Jurors' views on the value and
objectivity of mental health expert witnesses. *Behavioral Sciences and the Law,
32*, 483- 495. doi: 10.1002/bsl.2129

Knighton, J. C., Murrie, D. C., Boccaccini, M. T., & *Turner, D. B. (2014). How likely
is "likely to reoffend" in sex offender civil commitment trials? *Law and Human
Behavior, 38*, 294- 304. doi: 10.1037/lhb0000079

Boccaccini, M.T., Turner, D. B., Murrie, D.C., Henderson, C.E., & Chevalier, C., (2013). Do scores from risk measures matter to jurors? *Psychology, Public Policy, and Law, 19*, 259-269. doi: 10.1037/a0031354

Boccaccini, M.T., Turner, D., Murrie, D. C., & Rufino, K. A. (2012). Do PCL-R scores from state or defense experts best predict future misconduct among civilly committed sex offenders? *Law and Human Behavior, 36*, 159-169. doi: 10.1037/h0093949

Clark, J., Boccaccini, M.T., & Turner, D. (2010). Attitudes toward coerced confessions: Psychometric properties of new and existing measures. Southwest Journal of Criminal Justice, 6,  185-203.

Murrie, D.C., Boccaccini, M.T., & Turner, D.T. (2010). Ethical challenges in sex-offender civil commitment evaluations: Applying imperfect science in adversarial settings. In A. Schlank (Ed.). *The Sexual Predator (Vol 4).* Kingston, NJ: Civic Research Institute.

Turner, D. (2011). *Juror perceptions of the influence of expert witness testimony in Texas sexually violent predator civil commitment hearings.* Ph.D. Dissertation, Sam Houston State University, Huntsville, Texas.

Murrie, D.C., Boccaccini, M.T., Turner, D., Meeks, M., Woods, C. & Tussey, C. (2009). Rater (dis)agreement on risk assessment measures in sexually violent predator proceedings: Evidence of adversarial allegiance in forensic evaluation? Psychology, Public Policy, and Law, 15, 19-53.

Boccaccini, M.T., Turner., & Murrie, D.C. (2008). Do some evaluators report consistently higher or lower scores on the PCL-R?: Findings from a statewide sample of sexually violent predator evaluations. *Psychology, Public Policy, and Law, 14*, 262-283. Turner, D. B., & Marceaux, J. C. (2005, July). Cell assignment among violent and non-violent offenders and its effect on recidivism. American Journal of Psychological Research, http://www.mcneese.edu/colleges/ed/deptpsy/ajpr/ajpr12.pdf

State of Louisiana Department of Social Services Office of Family Support. (2005). *Best Practices of the access and visitation program for the 14th judicial District family and juvenile court.* Baton Rouge, LA: Disney, J.M., & Turner, D.B.

INVITED PROFESSIONAL PRESENTATIONS/CONSULTATIONS:

Hamilton, P., Thorne, S., Turner, D., Latham, J.  (2022).  Civil Commitment and Behavioral Abnormality Assessment and Placement.  *Council on Sex Offender Treatment.*  Denton, Texas.

Keynote Speaker at the British Psychological Society's Student Member Group – "Beyond The Lecture" Theatre, September 30, 2021 – Webinar

Presented for the Texas Psychological Association with Dr. Paul Hamilton on Conducting Behavioral Abnormality Evaluations at the Multidisciplinary Team Level for Purposes of the Civil Commitment Process of Sexually Violent Predators in the State of Texas, November, 2021.

One of three Clinical Psychologists Invited to Present in a Live "Ask the Expert" Session at the 2021 Dallas Crimes Against Children Conference.  "Ask the Expert: Grooming, Featuring Expert Dr. Darrel B. Turner," August, 2021

Keynote Speaker at the Southwestern Indiana Child Advocacy Center Coalition, Crisis Connection Conference, September, 2019

Keynote Speaker and Presenter at the 2019 Utah Children's Justice Symposium, Salt Lake City, Utah, May 14, 2019 – "Grooming Behaviors of Child Molesters and Impact on Behavior and Disclosure of Victims."

Invited Presenter at the annual TAASA Conference on "Online Solicitation of Minors for Sexual Purposes," South Padre Island, Texas, April 30, 2018.

Invited Workshop Presenter at the International Child Protection Congress in Coventry, England on "Grooming Behaviors of Child Molesters and the Impact on Behavior of Child Victims." March 9, 2018.

Keynote Speaker and Presenter at the Connections Count Conference in Lake Charles, LA, on February 21, 2018

Invited Presenter at the 9th annual Champions of Children Conference in Chicago, IL

Invited Guest Speaker at the 3rd annual Louisiana Defense Attorney's Conference in Natchitoches, LA

Invited Guest Speaker at the Quarterly Region D Texas TAASA Conference and Webinar, The Woodlands, TX, on July 25, 2016

Invited Presenter at the National Association Against Sexual Abuse Annual Conference in Corpus Christi, TX, on March 8, 2016

Invited Instructor at the San Antonio, TX, Police Department Sex Crimes Unit on Effective Interview Techniques of Suspects of Child Sexual Abusers with various Personality Constructs and Disorders, San Antonio, TX, in March, 2016

Invited Speaker at the Connections Count Conference in Lake Charles, LA on the areas Ethical Considerations in Child Custody Evaluations, February 12, 2016

Invited Instructor for Project Safe Childhood Webinar Series – Topic: "Risk Assessment of Child Pornography Offenders" at the United States Attorney's Office in Lafayette, LA, on December 16, 2015

Invited Presenter at the Lake Charles Area Family Law Organization Monthly Meeting On Best Practices in Child Custody Evaluations

Instructor Trainer in Interviewing and Interrogating of Child Molesters at the Advanced Child Abuse Investigation Instructor Training at the Texas Municipal Policeman's Association Training Facility in Austin, TX, December 9-11, 2015

Invited speaker at the International Child Protection Congress in Edinburgh, Scotland, 2015, Topic: "Grooming Behaviors of Child Molesters and the Effect on Behavior of Child Victims."

Invited Instructor at the Annual Project Safe Childhood Online Exploitation Seminar for the Office of Legal Education, U.S. Department of Justice in Columbia, South Carolina, August 3-7, 2015

Invited speaker at the Austin Center for Child Protective Services October, 2015 Meeting Of the Travis County Child Protection Team

Invited speaker at the 2013, 2015, 2016, 2019, 2021 Protect Our Children Conference in Omaha, Nebraska. Topic: "Understanding Counter-Intuitive Behaviors of Victims of Childhood Sexual Assault and Grooming Behaviors of Offenders."

Invited speaker to the Calcasieu Parish District Attorney's Office in May, 2015. Topic: "Grooming Behaviors of Child Molesters and the Effect on Behavior of Child Victims."

Invited Speaker to the Special Prosecution Unit in Huntsville, Texas in March, 2015. Topic: "Understanding the Statistics Behind Risk Assessment of Sexually Violent Predators."

Invited speaker at the 2012, 2014, 2015, 2016, 2017, 2018, 2019, 2020, 2021, 2022 International Crimes Against Children Conference in Dallas, TX. Topics: "Risk Assessment of Sexually Violent Predators", "Risk Assessment of Child Pornography Offenders," "Civil Commitment of Sexually Violent Predators in Texas," "Grooming Behaviors of Child Molesters and the Impact on Victims," "Denial Patterns and Deception of Detection among Sex Offenders," "Collaboration Between Attorneys and Mental Health Experts in the Communication of Expert Testimony in Court," "Paraphilias among Sex Offenders," and "Maintaining Mental Health in the Field of Sexual Offenses."

Invited speaker at quarterly meeting of Project Safe Childhood at the Assistant United States Attorneys' Office in Dallas Texas on several occasions.

Invited to present on numerous occasions to discuss research findings on expert testimony impact on jurors and field reliability of psychological tests used in risk assessments. Also discussed were implications findings may have on practice. Special Prosecution Unit/Civil Division in Huntsville, Texas

Invited to present research findings on expert testimony impact on jurors and field reliability of psychological tests used in risk assessments and to discuss implications on practice in Sexually Violent Predator Civil Commitment hearings with State Counsel for Offenders Office in Conroe, Texas.

Invited to present research findings on current status of outpatient civil commitment program in Texas, field reliability of psychological tests used in risk assessments in Sexually Violent Predator Civil Commitment hearings with Counsel on Sex Offender Treatment (governing body of Texas SVP Civil Commitment Program) in Austin, Texas. Also discussed were effectiveness of PCL-R, Static-99, MnSost-R, and PAI in predicting compliance of offenders with parameters of Texas Civil Commitment Program.

Invited to present research findings on field reliability of psychological tests used in risk assessments and an overview of functioning of Texas SVP Civil Commitment Program to Texas Department of Criminal Justice (TDCJ) in Huntsville, Texas.

Invited speaker at the 2010 annual Texas Criminal Defense Lawyers' Association Conference in Dallas, Texas. Topics included risk assessment of sexually violent predators and preliminary findings of my Dissertation, "Juror Perceptions of Expert Witness Testimony in Texas Sexually Violent Predator Civil Commitment Hearings."

Member of a focus group consisting of federal and local law enforcement, prosecutors, mental health professionals, and community service providers on Investigation Human Trafficking.

Consultant to Lake Charles, Louisiana Police Department Cold Case Homicide Unit.

Undercover Operative in Sting Operation of Illegal Sex Activity and Illegal Drug Activity in Lake Charles, Louisiana

MANUSCRIPTS UNDER REVIEW:

Turner, D.T., Harris, P., Strauss, J., Zachary, S., Robinson, L.(2021) Introducing the APOD: Analysis of Patterns of Denial among Sex Offenders, In Press

RESEARCH EXPERIENCE:

(November 2015 to Present) Invited to Collaborate with the FBI's Behavioral Analysis Unit on Risk Factors of Child Pornography Offenders to Reoffend as Compared To Risk Factors of Contact Offenders.

(November 2008 to August 2010) Assistant Researcher examining recidivism rates of the entire population of capital murderers in the Texas Department of Criminal Justice from 1994 to present. The study also examines the recidivism rates of those offenders convicted of Solicitation (or "Murder-for-Hire") crimes. Results examine rates of recidivism, types of reoffenses, and demographic characteristics of the population: Sam Houston State University.
Supervisor: Mary Alice Conroy, Ph.D.

(Spring 2007) Research Assistant, 10 hours per week, Witness Preparation Testimony Study, Department of Psychology, Sam Houston State University. Supervisor: Marc Boccaccini, Ph.D.

(Fall 2006 to February 2015) Establishing and leading a research program in conjunction With Texas State Sexually Violent Predator Civil Commitment Court examining Details of expert witness testimony and effects of expert witness testimony on jurors in Texas Sexually Violent Predator Civil Commitment Hearings. Sam Houston State University. Supervisor: Marc Boccaccini, Ph.D.

(Summer 2005 to Spring 2006) Psychology Department, McNeese State University. Completed a thesis examining the relationship between early "big wins" and pathological gambling behaviors among social and problematic gamblers. Department of Psychology, McNeese State University. Supervisor: Cameron L. Melville, Ph.D.

(Summer 2005 to Spring 2006) Independent research examining the effect of incarceration on the mentally ill as well as arresting officer judgment concerning mental health of inmates and its correlation to inmate performance on several tests measuring mental health. Department of Psychology, McNeese State University. Supervisor: Lawrence S. Dilks, Ph.D.

(Summer 2005 to Spring 2006) Independent research examining the relationship between inmate performance on the Millon Clinical Multiaxal Inventory and severity of Criminal Behavior. Department of Psychology, McNeese State University. Supervisor: Lawrence S. Dilks, Ph.D.

(Fall 2004 to Spring 2005) Hired under Janelle M. Disney, Ph.D. to assist in the writing of the Best Practices Manual of the Access and Visitation Program for the Louisiana State Department.

(Spring 2004 to Summer 2005) Lead researcher studying inmates at Calcasieu Correctional Center and the effect of cell assignment on recidivism among violent and non-violent inmates. Department of Psychology, McNeese State University. Supervisor: Diana Odom Gunn, Ph.D.

PRESENTATIONS AT PROFESSIONAL MEETINGS:

Concannon, A. B., Ruchensky, J. R., Varela, J. G., Holdren, S. M., Kurus, S. J., Harris, P. B., & Turner, D. B. (2022, March). *Estimating scores for the alternative model for personality disorders in sexually violent predator evaluations: Associations with the Psychopathy-Checklist—Revised*. Paper presented as part of the symposium "*Using the Personality Assessment Inventory to Assess the Alternative Model for Personality Disorders*" at the 2022 Annual Conference of the Society for Personality Assessment, Chicago, IL.

Kurus, S., K., Holdren, S., Rubenstein, L., Varela, J. G., Boccaccini, M. T., Harris, P. B., Turner, D. T., & Hamilton, P. M. (2020, March). *Evaluator differences in PCL-R scoring and risk level determination in sexually violent predator civil commitment evaluations.* Poster presented at the annual convention of the American Psychology-Law Society, New Orleans, LA.

Trupp, G.F., Preszler, J., Boccaccini, M.T., Marcus, D.J., Varela, J.G., & Turner, D.B. (2019, March). *Network Analysis of Psychopathy as Defined by the PCL-R Within the Field.* Poster presented to the Annual Meeting of the American Psychology-Law Society, Portland, OR.

Turner, D., Chevalier, C., Boccaccini, M. T., & Murrie, D. C. (2012, March). Do SVP jurors believe that offenders with higher risk measure scores are more likely to reoffend? Poster presentation at the meeting of the American Psychology-Law Society, San Juan, PR.

Boccaccini, M.T., Rufino, K., Turner, D., & Murrie, D.C. (2011, March). Do some evaluators assign consistently higher PCL-R facet scores than others?: Yes and No. In D.C. Murrie (Chair), Field reliability and field validity of forensic Psychology-Law Society, Miami, FL.

Boccaccini, M.T., Turner, D., & Murrie, D.C. (2009, March). Do some evaluators report consistently higher or lower PCL-R scores than others? Paper presented at the meeting of the American Psychology-Law Society, San Antonio, Texas.

Turner, D.B., Wevodau, A., Boccaccini, M.T., & Murrie, D.C. (2011, March). SVP jurors' beliefs about the recidivism rate that indicates an offender is "likely" to reoffend. Poster presented at the meeting of the American Psychology-Law Society, Miami, FL.

Turner, D., Boccaccini, M.T., & Murrie, D. C. (2010, March). Are PCL-R scores from state or defense experts more predictive of future offending? In I. Packer (Chair), Issues in Psychopathy Assessment. Symposium presented at the meeting of the American Psychology-Law Society, Vancouver, Canada.

Turner, D., Boccaccini, M.T., Meeks, M., & Murrie, D.C. (2009, March). Real SVP jurors' beliefs about what influences their decisions. In D. Krauss (Chair), Expert witness testimony in sexually violent predator trials. Symposium presented at the meeting of the American Psychology-Law Society, San Antonio, Texas.

Meeks, M., Boccaccini, M.T., & Turner, D. (2009, March). Evidence or experts?: SVP jurors beliefs about influences in their trial decisions. In D. Krauss (Chair), Expert witness testimony in sexually violent predator trials. Symposium presented at the meeting of the American Psychology-Law Society, San Antonio, Texas.

Murrie, D.C., Boccaccini, M.T., & Turner, C. (2009, March). How research on SVP juries should-and should not-inform expert testimony in SVP trials. In D. Krauss (Chair), Expert witness testimony in sexually violent predator trials. Symposium presented at the meeting of the American Psychology-Law Society, San Antonio, Texas.

Meeks, M., Turner, D., Woods, C., Boccaccini, M.T., & Murrie, D.C. (2009, March). Which diagnoses do experts identify as "behavioral abnormalities" for SVP offenders? Poster presented at the meeting of the American Psychology-Law Society, San Antonio, Texas.

Clark, J., Boccaccini, M.T., & Turner, D. (2008, March). Attitudes toward confessions: Psychometric properties of new and existing measures. Poster presented at the meeting of the American Psychology Association, Jacksonville, FL.

Turner, D., Boccaccini, M.T., & Murrie, D.C. (2008, March). Jurors' perceptions of expert witness testimony in SVP hearings. Poster presented at the meeting of the American Psychology-Law Society, Jacksonville, Florida.

Murrie, D.C., Boccaccini, M.T., Turner, D., & Meeks, M. (2008, March). Interrater (dis)agreement on actuarial risk measure scores completed by opposing evaluators in sexually violent predator trials. Paper presented at the meeting of the American Psychology Association, Jacksonville, FL.

Whiteman, J.L., & Turner, D.B. (Spring 2006). Life Actualization Therapy. Presentation at Fall 2005 (postponed to Spring 2006) Louisiana Counselors Association Conference, Baton Rouge, LA.

Symposium: Whiteman, J.L., Dilks, L.S., Marceaux, J.C., Turner, D.B., White, R., Mayeaux, B.D. (Spring 2006). Hurricane Rita:  Personality Variables and Coping Mechanisms. Southwestern Psychological Association annual conference, Austin, TX.

Turner, D.B., Dilks, L.S., Boyd, S.L., Marceaux, J.C. (Spring 2006). The Relationship between Inmate Performance on the Millon Clinical Multiaxal Inventory and Severity of Criminal Behavior. Paper presentation at the Southwestern Psychological Association annual conference, Austin, TX.

Marceaux. J.C., Melville, C.L., Turner, D.B. (Spring 2006). Early Wins and Losses in Pathological Gambling. Paper presentation at the Southwestern Psychological Association annual conference, Austin, TX.

Boyd, S.L., Dilks, L.S., Marceaux, J.C., & Turner, D.B. (Spring 2006). Psychological and Behavioral Attributes of the Incarcerated Individual. Paper presentation at the Southwestern Psychological Association annual conference, Austin, TX.

TEACHING EXPERIENCE:

(Fall 2011 to Summer 2019) Online Faculty Member through the University of Phoenix (Summer 2013 to Summer 2015)

Online Faculty Member through Argosy University (Fall 2012 to Fall 2014)

Adjunct Professor at McNeese State University

(Spring 2006) Teaching Graduate Assistant: Introduction to Psychology 101, McNeese State University

(Fall 2005) Teaching Graduate Assistant: Introduction to Psychology 101 and a web-based course I designed in Educational Psychology 211, McNeese State University

(Spring 2005) Teaching Graduate Assistant: Introduction to Psychology 101 and Educational Psychology 211, McNeese State University

(Fall 2004) Teaching Graduate Assistant: Introduction to Psychology 101 and a Satellite Video course in Introduction to Psychology 101, McNeese State University

PROFESSIONAL ASSOCIATIONS:

American Psychological Association

American Psychology Law Society

Southwestern Psychological Association

Psi Chi, the National Honors Society in Psychology

Member of Louisiana Registry of Sex Offender Treatment Providers

Texas Psychological Association

Louisiana Psychological Association

HONORS:

2011 Honor Graduate at Federal Law Enforcement Training Center, Glynco, Georgia

2009 Outstanding Research by a Doctoral Student in Psychology Department at Sam Houston State University

2008 James P. Weber Outstanding Second Year Psychology Graduate Student Scholarship

McNeese State University Foundation 2005-2006 Dore Graduate School Fellowship (one of two recipients)

The Dore Fellowship for Graduate Assistants, Spring 2005

The Dore Fellowship for Graduate Assistants, Fall 2004