UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOES A, B, C, D, E, F, G, H,
MARY DOE and MARY ROE, on behalf
of themselves and all others similarly
situated,

No. 2:22-cv-10209

       Plaintiffs,

HON. MARK GOLDSMITH

v

MAG. CURTIS IVY, JR.

GRETCHEN WHITMER, Governor of
the State of Michigan, and COL. JOSEPH
GASPER, Director of the Michigan State
Police, in their individual capacities,

**MOTION FOR SUMMARY
JUDGMENT**

       Defendants.

---

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Gretchen Whitmer and Joseph Gasper move this Court to dismiss

Plaintiffs' complaint pursuant to Fed. R. Civ. P. 56 for the reasons set forth in the

accompanying brief in support.

Pursuant to Local Rule 7.1(a) and the Order Regarding Filings, the undersigned

counsel certifies that he personally communicated with opposing counsel, explaining

the nature of the relief sought by way of this motion and seeking concurrence in the

relief; opposing counsel first denied concurrence, then requested additional detail,

which was provided, and then requested even more detail, which had already been set

forth in earlier filings and referenced in the communications.

For the reasons stated in the attached brief in support, Defendants request that the Court grant this motion, dismiss the amended complaint with prejudice and award any additional appropriate relief.

Respectfully submitted,

/s/ Eric M. Jamison
Assistant Attorney General
Attorney for Whitmer and Gasper
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
jamisone@michigan.gov
P75721

Dated:  November 21, 2023

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOES A, B, C, D, E, F, G, H,
MARY DOE and MARY ROE, on behalf
of themselves and all others similarly
situated,                                          No. 2:22-cv-10209

        Plaintiffs,                                HON. MARK GOLDSMITH

v                                                  MAG. CURTIS IVY, JR.

GRETCHEN WHITMER, Governor of
the State of Michigan, and COL. JOSEPH
GASPER, Director of the Michigan State
Police, in their individual capacities,

        Defendants.

---

**BRIEF IN SUPPORT OF DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

                                        /s/ *Eric M. Jamison*
                                        Assistant Attorney General
                                        Attorney for Whitmer and Gasper
                                        State Operations Division
                                        P.O. Box 30754
                                        Lansing, MI 48909
                                        (517) 335-7573
                                        jamisone@michigan.gov
                                        P75721

Dated:  November 21, 2023

# TABLE OF CONTENTS

Page

Table of Contents................................................................................. i

Index of Authorities......................................................................... iv

Concise Statement of Issues Presented ........................................ xi

Controlling or Most Appropriate Authority ................................ xii

Standard of Review ........................................................................ xiii

Introduction ..................................................................................... 1

Argument............................................................................................ 3

I.      The new SORA does not violate the Ex Post Facto Clause. ............... 3

        A.      The Legislature did not intend to impose punishment. ............ 3

        B.      The new SORA is not punitive.......................................... 6

                1.      Does the new SORA resemble banishment, shaming, or probation or parole? ........................................ 6

                2.      Does the new SORA impose an affirmative disability or restraint?................................................ 12

                3.      Does the new SORA promote the traditional aims of punishment?....................................................... 14

                4.      Does the new SORA have a rational connection to a non-punitive purpose?................................................... 15

                5.      Is the new SORA excessive? .......................................... 17

II.     Plaintiffs' non-sex offense claims are moot.......................... 22

        A.      The MSP has removed from the registry nearly all the non-sex-offense subclass. ....................................... 24

        B.      Class wide relief is not appropriate for the individuals that were not removed as a result of *Lymon*. ....................... 27

i

III.   The new SORA does not violate substantive Due Process rights...................... 28

IV.   Plaintiffs' Equal Protection claims fail. ................................................. 33

V.   The new SORA is not unconstitutionally vague. ................................... 34

    A.   The new SORA gives ordinary people fair notice.................................... 37

        1.   Email and Internet Identifiers. .......................................... 37

        2.   Vehicle Information ...................................................... 38

        3.   Employers, nicknames, temporary lodging, physical descriptions, trade schools and substantially similar offenses. ................................................................ 40

        4.   Plaintiffs' self-serving survey of "law enforcement" is not persuasive. ................................................................ 41

        5.   Plaintiffs generally understand what needs to be reported.......... 42

    B.   Plaintiffs fail to make any argument that the new SORA is so standardless that it invites arbitrary enforcement..................................... 44

VI.   The new SORA does not violate the First Amendment....................................... 45

    A.   The new SORA's requirements do not infringe on speech and are narrowly tailored........................................................................ 47

        1.   SORA's reporting requirement serves a significant government interest.......................................................... 48

        2.   SORA's reporting requirements are narrowly tailored to significant government interests. ........................................ 49

        3.   Signing a form attesting to understanding SORA does not compel speech. ................................................................ 50

        4.   Reporting usernames survives intermediate scrutiny. .................. 51

        5.   The new SORA does not hinder the ability to associate. ............. 54

    B.   The new SORA does not violate the First Amendment. ........................ 56

VII.  Registration requirements for out-of-state offenses do not violate the
      Constitution. .......................................................................................... 57

      A.    The registration requirements do not violate procedural due
            process. ......................................................................................... 57

            1.    Plaintiffs cannot show that a liberty or property interest has
                  been interfered with by the state. ...................................... 59

            2.    Even if this Court concludes that the new SORA interferes
                  with a registrant's liberty or property interest, Plaintiffs
                  cannot demonstrate that the procedure used to deprive
                  registrants of such interest was constitutionally insufficient. ....... 62

      B.    SORA does not differentiate between residents of Michigan based
            on the timing of their migration. ................................................. 64

VIII. If this Court concludes that any part of the new SORA is
      unconstitutional, the proper remedy is severance. ................................. 70

IX.   The statute of limitations and mootness due to SORNA. .................................. 73

Conclusion and Relief Requested ......................................................................... 75

Certificate of Service ........................................................................................ 76

Local Rule Certification ..................................................................................... 77

# INDEX OF AUTHORITIES

<u>Page</u>

## Cases

*ACLU of N.M. v. City of Albuquerque*,
  137 P.3d 1215 (N.M. Ct. App. 2006) ........................................................... 69

*ACLU v. Nat'l Sec. Agency*,
  493 F.3d 644 (6th Cir. 2007) ..................................................................... 53

*American Civil Liberties Union v. National Sec. Agency*,
  493 F.3d 644 (6th Cir. 2007) ..................................................................... xiii

*Att'y Gen. of N.Y. v. Soto-Lopez*,
  476 U.S. 898 (1986) ................................................................................... 64

*Bailey v. Wainwright*,
  951 F.3d 343 (6th Cir. 2020) ..................................................................... 54

*Barsky v. Bd. of Regents*,
  347 U.S. 442 (1954) ................................................................................... 36

*Blank v Dep't of Corrections*,
  462 Mich. 103 (2000) ................................................................................ 70

*Catanzaro v. Harry*,
  848 F. Supp. 2d 780 (W.D. Mich. 2012) .................................................... 62

*Colautti v. Franklin*,
  439 U.S. 379 (1979) ................................................................................... 35

*Coleman v. Dretke*,
  395 F.3d 216 (5th Cir. 2004) ..................................................................... 63

*Conn. Dep't of Pub. Safety v. Doe*,
  538 U.S. 1 (2003) ..........................................................................xiii, 32, 62

*Descamps v. United States*,
  570 U.S. 254 (2013) ................................................................................... 67

*Doe v. Cuomo,*
  755 F.3d 105 (2nd Cir. 2014) ................................................................. 13

*Doe v. Lee,*
  No. 3:210CV-00028, 2021 U.S. Dist. LEXIS 90631 (M.D. Tenn. May 12,
  2021) ......................................................................................................... 55

*Doe v. Mich. Dep't of State Police,*
  490 F.3d 491 (6th Cir. 2007) ................................................................. 29

*Doe v. Pa. Bd. of Prob. & Parole,*
  513 F.3d 95 (3d Cir. 2008) ..................................................................... 68

*Doe v. Shurtleff,*
  628 F.3d 1217 (10th Cir. 2010) ............................................................. 52

*Doe v. Snyder,*
  101 F. Supp. 3d 672 (E.D. Mich. 2015) ........................................... 30, 48

*Does v. Munoz,*
  507 F.3d 961 (6th Cir. 2007) ................................................................. 30

*Eastwood Park Amusement Co. v. East Detroit Mayor,*
  325 Mich. 60 (1949) ............................................................................... 71

*EMW Women's Surgical Ctr., P.S.C. v. Beshear,*
  920 F.3d 421 (6th Cir. 2019) ................................................................. xiv

*Grayned v. City of Rockford,*
  408 U.S. 104 (1972) ............................................................................... 36

*Hatton v. Bonner,*
  356 F.3d 955 (9th Cir. 2003) ................................................................. 14

*Hendricks v. Jones ex rel. State,*
  349 P.3d 531 (Okla. 2013) ..................................................................... 69

*Hope v. Comm'r of Ind. Dep't of Corr.,*
  9 F. 4th 513 (7th Cir. 2021) ................................................................... 65

*In re Request for Advisory Opinion Re Constitutionality of 2011 PA 38,*
  490 Mich. 295 (2011) ............................................................................. 71

*In re Wentworth*,
    651 N.W.2d 773 (Mich. Ct. App. 2002) ........................................................................ 30

*Jackson v. United States*,
    No. 18-15028, 2019 WL 6114434 (11th Cir. Nov. 18, 2019) .................................... 32

*Johnson v. United States*,
    576 U.S. 591 (2015) ........................................................................................................ 35

*Kent v. Dulles*,
    357 U.S. 116 (1958) ........................................................................................................ 70

*Kolender v. Lawson*,
    461 U.S. 352 (1983) ........................................................................................................ 35

*League of United Latin Am. Citizens v. Bredesen*,
    500 F.3d 523 (6th Cir. 2007) ........................................................................................ 69

*Leslie v. Randle*,
    296 F.3d 518 (6th Cir. 2002) ........................................................................................ 54

*Littlefield v. Slatery*,
    No. 3:19-CV-00490, 2020 WL 263585 (M.D. Tenn. Jan. 17, 2020) ........................ 54

*Maki v. East Tawas*,
    385 Mich. 151 (1971) ...................................................................................................... 71

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ........................................................................................................ 58

*Memphis Planned Parenthood, Inc. v. Sundquist*,
    175 F.3d 456 (6th Cir. 1999) ........................................................................................ 70

*Meza v. Livingston*,
    607 F.3d 392 (5th Cir. 2010) ........................................................................................ 62

*Nijhawan v. Holder*,
    557 U.S. 29 (2009) .......................................................................................................... 68

*Palko v. Conn.*,
    302 U.S. 319 (1937) ........................................................................................................ 28

*People v. Betts*,
    968 N.W.2d 497 (Mich. 2021) ...................................................................................... 48

*People v. Lockridge,*
    498 Mich. 358 (2015) ................................................................................ 71

*People v. Posey,*
    ____ Mich. ___ (2023) (Docket No. 162373) ........................................... 71

*Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.,*
    894 F.3d 235 (6th Cir. 2018) ................................................................... 36

*Pletz v Sec'y of State,*
    125 Mich. App 335 (1983) ....................................................................... 71

*Reno v. Flores,*
    507 U.S. 292 (1993) .................................................................................. 29

*Rose v. Bauman,*
    No. 2:17-cv-10836, 2018 WL 534490  (E.D. Mich. Jan. 24, 2018) ............ 32

*Saenz v. Roe,*
    526 U.S. 489 (1999) .................................................................................. 64

*Safety Specialty Ins. Co. v. Genesee Cnty. Bd. of Comm'rs,*
    53 F.4th 1014 (6th Cir. 2022) .................................................................. 27

*Schickel v. Dilger,*
    925 F.3d 858 (6th Cir. 2019) ................................................................... 36

*Shaw v. Patton,*
    823 F.3d 556 (10th Cir.  2016) ................................................................ 14

*Shepard v. United States,*
    544 U.S. 13 (2005) .................................................................................... 68

*Smith v. Doe,*
    538 U.S. 84 (2003) ..................................................................... xiii, 7, 15, 16

*Sorrell v. IMS Health Inc.,*
    564 U.S. 552 (2011) .................................................................................. 52

*Speet v. Schuette,*
    762 F. 3d 867 (6th Cir. 2013) ............................................................ xiii, 56

*State v. Dickerson,*
    129 P.3d 1263 (Idaho Ct. App. 2006) ...................................................... 69

*Stephenson v. Cent. Mich. Univ.*,
 897 F. Supp. 2d 556 (E.D. Mich. 2012) ................................................................. 58, 61

*Taylor v. City of Saginaw*,
 620 F. Supp. 3d 655 (E.D. Mich. 2022) ....................................................................... xiv

*Taylor v. United States*,
 495 U.S. 575 (1990) ......................................................................................................... 67

*United States v. Barcus*,
 892 F.3d 228 (6th Cir. 2018) ......................................................................................... 67

*United States v. Berry*,
 814 F.3d 192 (4th Cir. 2016) ......................................................................................... 67

*United States v. Doby*,
 No. 18-CR-40057-HLT, 2019 WL 5825064 (D. Kan. Nov. 7, 2019) ....................... 46

*United States v. Evans*,
 333 U.S. 483 (1948) ......................................................................................................... 35

*United States v. Fox*,
 286 F. Supp. 3d 1219 (D. Kan. 2018) .......................................................................... 47

*United States v. Guest*,
 383 U.S. 745 (1966) ......................................................................................................... 64

*United States v. Lanier*,
 520 U.S. 259 (1997) ......................................................................................................... 36

*United States v. May*,
 535 F.3d 912 (8th Cir. 2008) ......................................................................................... 14

*United States v. Nat'l Dairy Prods. Corp.*,
 372 U.S. 29 (1963) ........................................................................................................... 36

*United States v. Parks*,
 698 F.3d 1 (1st Cir. 2012) .............................................................................................. 13

*United States v. Under Seal*,
 709 F.3d 257 (4th Cir. 2013) ......................................................................................... 14

*United States v. W.B.H.*,
 664 F.3d 848 (11th Cir. 2011) ....................................................................................... 14

*United States v. W.B.H.*, 664 F.3d 848 (11th Cir. 2011) ....................................................... 14

*United States v. White*,
     782 F.3d 1118 (10th Cir. 2015) ......................................................................... 67

*United States v. White*,
     920 F.3d 1109 (6th Cir. 2019) ............................................................................. 3

*United States v. Williams*,
     553 U.S. 285 (2008) ............................................................................................. 35

*United States v. Young*,
     585 F.3d 199 (5th Cir. 2009) .............................................................................. 14

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
     455 U.S. 489 (1982) ............................................................................................. 36

*Washington v. Glucksberg*,
     521 U.S. 702 (1997) ............................................................................................. 29

*Willman v. Attorney General of United States*,
     972 F.3d 819 (6th Cir. 2020) ........................................................... 3, 13, 56, 69

*Willman v. Garland*,
     141 S. Ct. 1731 (2021) ........................................................................................... 3

*Willman v. U.S. Off. of Att'y Gen.*,
     No. 19-10360, 2019 WL 4809592 (E.D. Mich. Oct. 1, 2019) ................................. 53

*Willman v. Wilkinson*,
     141 S. Ct. 1269 (2021) ........................................................................................... 3

**Statutes**

28 U.S.C. §§ 20916(c) .......................................................................................... 52

28 U.S.C. §§ 20916(c) and 20920(b)(4) ............................................................. 9

42 U.S.C. § 16925(a) ............................................................................................. 31

Mich. Comp. Laws § 28.721 ....................................................................... xiii, 50, 59

Mich. Comp. Laws § 28.721a ................................................................. 4, 31, 47, 48, 49

Mich. Comp. Laws § 8.5 ....................................................................................... 71

Mich. Comp. Laws § 28.727(4) ............................................................................. 51

Mich. Comp. Laws § 28.728 (1)-(4) ........................................................................ 9

Mich. Comp. Laws § 28.729 ................................................................................. 36

Mich. Comp. Laws § 28.729(3) .............................................................................. 51

Mich. Comp. Laws Ann. § 28.728(3)(e) .................................................................... 7

Mich. Comp. Laws Ann. §§ 28.733-736 .................................................................... 7

Mich. Comp. Laws Ann. §§ 28.733-736; § 28.725(2)(a); and § 28.728(3)(e) ................. 4

## Rules

Fed. R. Civ. P. 10(c) ........................................................................................... 40

Fed. R. Civ. P. 23(a)(2) ....................................................................................... 28

## Regulations

76 F.R. § 1630, 1637 ............................................................................................ 9

86 F.R. §§ 69856, 69858 ....................................................................................... 9

## Constitutional Provisions

Mich. Const. of 1963, art. VI, § 28 ........................................................................ 63

## CONCISE STATEMENT OF ISSUES PRESENTED

1.   Is there an Ex Post Facto violation when the new SORA does not impose punishment and where the Sixth Circuit has already held that the parallel federal law does not violate the Ex Post Facto clause?

2.   Are the Due Process rights of registrants violated by the new SORA, which reduced the impact of the regulatory scheme for tracking and monitoring registrants?

3.   Does the new SORA violate the First Amendment by requiring registrants to provide information to law enforcement, or by requiring registrants to affirm that they understand their obligations?

4.   Can an ordinary person understand what is required by the new SORA?

5.   Should registrants that committed different offenses be treated the same under the guise of Equal Protection?

6.   Has the statute of limitations lapsed on claims that arose more than a decade ago?

7.   Are Plaintiffs' claims moot in light of SORNA's reporting requirements?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

<u>*Authority*</u>:      Mich. Comp. Laws § 28.721 *et. seq.*

34 U.S.C. § 20911 *et. seq.*

*Willman v. Attorney General of United States*, 972 F.3d 819 (6th Cir. 2020)

*Smith v. Doe*, 538 U.S. 84 (2003)

*Kennedy v. Mendoza-Martinez,* 372 U.S. 144 (1963)

*Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1 (2003)

*Speet v. Schuette,* 762 F. 3d 867 (6th Cir. 2013)

*American Civil Liberties Union v. Nat'l Sec. Agency*, 493 F.3d 644 (6th Cir. 2007)

*Cutshall v. Sundquist,* 193 F.3d 466 (6th Cir. 1999)

## STANDARD OF REVIEW

A motion for summary judgment should only be granted "if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " *Taylor v. City of Saginaw*, 620 F. Supp. 3d 655, 661 (E.D. Mich. 2022) (quoting Fed. R. Civ. P. 56(a)). This Court must view the evidence and draw all reasonable inferences in favor of Defendants—the non-movant. *Id.*

When reviewing cross-motions for summary judgment, courts "must apply the proper standard of review for each motion and may not 'treat the case as if it was submitted for final resolution on a stipulated record.'" *Id.* Additionally, each party's motion must be evaluated on its own merits. *See EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 425 (6th Cir. 2019).

## INTRODUCTION

While the amended complaint and the motion for summary judgment raises eleven claims, the gravamen of the amended complaint and motion can be distilled down to five: (1) the Ex Post Facto challenge (2) the Due Process challenge; (3) the First Amendment arguments; (4) the vagueness challenges; and (5) the Equal Protection challenges.

The short answer is that all of these claims fail because Michigan's Sex Offender Registration Act, as amended effective March 24, 2021 (the "new SORA"), is virtually identical in all significant substantive respects to the federal Sex Offender Registration and Notification Act ("SORNA"). And federal courts – including the Sixth Circuit – have specifically rejected Ex Post Facto claims, and they have rejected other claims on similar grounds based on parallel language within the SORNA. This Court should deny Plaintiffs' motion for summary judgment. The only way any of these claims survive motion practice is if the federal SORNA is also unconstitutional, which it is not, as almost every court has ruled.

For the Ex Post Facto claims, the analysis resolving these counts is straight-forward. Because the new SORA is now on all fours with federal SORNA, this Court must apply the Sixth Circuit's decision to reject an Ex Post Facto argument against the federal SORNA to this complaint. *See Willman v. Attorney General of United States*, 972 F.3d 819 (6th Cir. 2020). The Plaintiffs' arguments that the continuing application of the unamended parts from the 2011 law overlooks the fact that this

1

Court can only afford relief if the new SORA, as a whole, constitutes punishment. The new SORA does not.  An individual review of the substantive provisions of Michigan's law confirms this fact.

For the Due Process arguments, Michigan's new SORA uses the conviction offense as the sole basis for registration, including for out-of-state offenders, barring a procedural Due Process claim.  The new SORA does not violate any substantive Due Process rights as it does not impinge upon a fundamental right of the Plaintiffs and is not punishment.

For the First Amendment challenges, the same reasoning applies regarding federal SORNA.  The further point is that Michigan's new SORA does not impinge on any cognizable First Amendment interests of the Plaintiffs.

Michigan's new SORA is not unconstitutionally vague.  It provides sufficient notice to the registrants of their obligations under Michigan law.  The federal courts in reviewing the corresponding federal language of SORNA have so ruled.

Michigan's new SORA makes rational distinctions between its classes of registrants so there is no Equal Protection violation.  The same categorizations present in the federal SORNA have been upheld across the country.

Finally, if the Court does not deny Plaintiffs' motion for summary judgment in full, the proper remedy is severance of any provision found to be unconstitutional.

# ARGUMENT

## I.    The new SORA does not violate the Ex Post Facto Clause.

Plaintiffs argue that the new SORA violates the Ex Post Facto Clause.  (ECF
No. 123, PageID.3624–3648; ECF No. 108, PageID.2956–2959.)  In response, and
consistent with Fed. R. Civ. P. 10(c), Defendants adopt by reference the arguments
related to the Ex Post Facto issue set forth in their motion to dismiss (ECF No. 41,
PageID.1333–1337) and response to Plaintiffs' motion for preliminary injunction
(ECF No. 39, PageID.1181–1206).

The Court is duty bound to follow precedent that already held that federal
SORNA, which is the same as the new SORA in all material respects, is not a
violation of the Ex Post Facto Clause. *United States v. White*, 920 F.3d 1109, 1115 (6th
Cir. 2019) ("the [lower courts] should follow the case which directly controls")
(citations omitted).  *See Willman v. Attorney General of United States*, 972 F.3d 819, 824–
25 (6th Cir. 2020), cert. denied sub nom. *Willman v. Wilkinson*, 141 S. Ct. 1269 (2021),
reh'g denied sub nom. *Willman v. Garland*, 141 S. Ct. 1731 (2021).  Because Michigan's
new SORA is almost identical to federal SORNA in all material respects, the *Willman*
decision binds this Court and requires it to dismiss the Ex Post Facto challenge.

Defendants briefly expand on their earlier Ex Post Facto arguments below.

### A.    The Legislature did not intend to impose punishment.

The Michigan Legislature set forth its purpose when it passed the SORA into
law.  It declared that the SORA "was enacted pursuant to the legislature's exercise of

3

the police power of the state with the intent to better assist law enforcement officers and the people of this state in preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders…" Mich. Comp. Laws § 28.721a. The Michigan Legislature's stated purpose in enacting the SORA has remained unchanged for decades. 2002 Mich. Pub. Act 542.

Further, several courts have found that the Michigan Legislature did not intend to impose punishment when it passed the SORA. "[W]e see no warrant for concluding that SORA's intent is punitive." Does I, 834 F.3d 696, 700–01. "[W]e conclude that the [Michigan] Legislature likely intended [the] SORA as a civil regulation rather than a criminal punishment." People v. Betts, 507 Mich. 527, 548-549 (2021).

The new SORA amended and repealed the provisions of the old SORA that were found to be unconstitutional. It repealed the student safety zone provisions in their entirety; removed the retrospective in-person reporting requirements for vehicle information, email addresses, internet identifiers, and telephone numbers; removed the registration requirement for the vast majority of juvenile offenders; removed the requirement for the remaining juvenile offenders to be listed on the public registry; and eliminated the tier information on the publicly accessible SORA website. 2020 Mich. Pub. Act 295; Mich. Comp. Laws § 28.733-736; § 28.725(2)(a); and § 28.728(3)(e).

Plaintiffs suggest that the legislature's intent must have been punitive since the new law contains some of the same provisions as the old law and the legislature was presented with "uncontroverted" evidence from Plaintiffs and their experts that registries do not work. (ECF No. 123, PageID.3629.)  Not so.

First, in the most recent round of litigation over the SORA, Plaintiffs agreed that the unconstitutional provisions were removed or modified in the new SORA—"all parties acknowledge that the new SORA removes or modifies all provisions that this court found to be unconstitutional in its February 14, 202[0] opinion in Does II.") (ECF No. 7, PageID.880.)

Second, "uncontroverted" evidence that was presented by the registrants themselves and their supporters does not make it true.   It is part of the political process to disagree over how to address contentious issues.  There are evidence-based solutions to various challenges, such as climate change and gun control, but many of those solutions are not enacted either.  Not amending laws to match one side's viewpoint does not mean there is animus behind passing the law.  Especially when the law was amended to match federal law, which was found to be Constitutional.   Nor, if only one side shows up at a legislative hearing to discuss their views on the issue, does it mean that their view is the correct one.

Here, the other side consists of victims of sexual assault, who generally do not talk about their experience publicly.  It is not surprising that there was not a robust public debate between perpetrators and victims.  Furthermore, public notification

5

laws are intended to prevent potential future crimes, which is difficult to measure since sexual assaults are vastly underreported.  (e.g., Susan has a teenage daughter. Susan opts to not go on a date with 50-year-old Bob because he is on the sex offender registry for sexually assaulting a teenage girl when he was in his 40's.  Since Susan decided not to date Bob, he cannot groom her teenage daughter or otherwise establish a trusting relationship with her.  The registry limited Bob's access to potential victims.)

It is clear that the Michigan Legislature did not intend to impose punishment, and the new SORA is a civil regulatory scheme.

## B.    The new SORA is not punitive.

To determine whether the new SORA is punitive, the Court looks to the *Mendoza* factors.  *Smith*, 538 U.S. at 97 (citing *Kennedy v. Mendoza–Martinez*, 372 U.S.144, 168–169, (1963)).  A review of the factors leads to the conclusion that the new SORA is not punitive.

### 1.    Does the new SORA resemble banishment, shaming, or probation or parole?

The short answer is that it does not.

*First*, the law does not resemble banishment because it no longer contains exclusionary zones that statutorily limit where registrants can live, work, or remain. Mich. Comp. Laws §§ 28.733-736.  Registrants are legally entitled to live, work, and remain as they choose.  Limitations on where registrants may live or work stem from

the underlying conviction, and/or entity's policies regarding hiring or renting housing to registered sex offenders.

*Second*, while registrants may feel shame for being a sex offender, publicly shaming the sex offender is not an integral part of the regulatory scheme. The information being provided to the public is "accurate information about a criminal record, most of which is already public." *Smith v. Doe*, 538 U.S. 84, 98 (2003). "[O]ur criminal law tradition insists on public indictment, public trial, and public imposition of sentence." *Id.* at 99 ("The publicity may cause adverse consequences for the convicted defendant, running from mild personal embarrassment to social ostracism. The purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender. Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation."). *Id.*

The old SORA made a registrant's tier classification publicly available, along with conviction information that was non-public. *Does #1-5*, 834 F.3d at 702–03. The Legislature removed the public reporting of a registrant's tier classification in the new SORA. Mich. Comp. Laws § 28.728(3)(e).

Providing factual information about convicted sex offenders, including photos and related addresses, provides an "appropriate, comprehensive, and effective means to monitor those persons who pose . . . a potential danger" to the people of the state. Mich. Comp. Laws § 28.721a. Those that are most often in danger are children.

Registrants most often victimized children.  Where the victim age is known: 16,793 are under the age of thirteen, 14,745 are between the ages of thirteen and seventeen; and 4,657 are adult victims. (Ex. K. Jegla Affidavit.)

 While it may be helpful for the public to know some of the facts underlying the convictions, that information is not made public.  If the facts were made part of the public facing website, then it may be more akin to shaming, but those facts are not public. (e.g., 17-year-old Defendant engaged in sexual penetrations with five to eight year old victim over three year period; victim was unwillingly video recorded having nonconsensual sex while she was coming in and out of consciousness; victim was forced to have sex with her boyfriend and another male while she was being hit and choked; defendant sexually assaulted twelve to fourteen year old victim multiple times; six year old was abused multiple times by babysitter where defendant "put his private in mine" and threatened to hurt victims family if she told anyone)  (Ex. G, Summary of Offenses, pp 1-2.)

 Notably, registrants' email addresses and internet identifiers are not on the public facing website so there is not a direct way for internet trolls or keyboard warriors to directly criticize or harass registrants.[1]  Nor can email addresses or internet identifiers be posted, because it would violate federal law.  28 U.S.C. §§ 20916(c) and

---

[1] Home - Michigan Sex Offender Registry (mspsor.com) (last accessed November 13, 2023).

20920(b)(4); 76 F.R. §§ 1630, 1637; 86 F.R. §§ 69856, 69858.  Similarly, there is no place on the public website for the public to post comments about the registrants or participate in an online forum to shame the registrants.

*Third*, the new SORA is not like probation or parole.  The new SORA is *notification* based and probation and parole are *permission* based.

At initial sex offender registration, a registrant provides factual personal information, which is then be entered into the SOR database.  (ECF No. 126-17, PageID.6204-6208.)  Some of the information will be posted publicly, and some of the information is for law enforcement only.  Mich. Comp. Laws § 28.728 (1)-(4).  See FN2.  Much of the information is static and will not change, or only changes very infrequently—last name, first name, middle name, suffix, date of birth, race, sex, hair, eye color, height, weight, registration number, social security number, driver's license number, FBI number, MI/SID Number, Michigan Department of Correction number, Immigration number, fingerprints on file (yes or no), palm prints on file (yes or no), DNA on file (yes or no), passport number, professional license number, professional license type, aliases, scars/marks/tattoos, and offense information (date, crime code, counts, victim age, conviction state, conviction date, case number, offense details. (ECF No. 126-17, PageID.6204-6205.)

After initial registration, if certain information changes, the registrant must notify law enforcement of changes to: address, employment, schools, name changes, travel plans if traveling for more than seven days, email addresses if offense was after

9

July 1, 2011, license plate number, and telephone numbers.  (ECF No. 126-17,

PageID.6207.)  The only updates that need to be made in person are name changes,

permanent address changes, employment information and school information, which

likely does not change frequently for most registrants.  Information that is more likely

to change frequently, can be updated my mail. (ECF No. 126-18, PageID.6210-6212.)

Significantly, registrants do not need to obtain permission before changing

where they live, what they drive, where they go to school, what email address they use,

or what phone number they use.   Nor are they limited by exclusionary zones as to

where they may live, work, or be, like they were under the old SORA.

There is a radical difference between SORA registration and reporting

requirements and the onerous restraints imposed by probation or parole.  A

comparison is outlined below, and numerous other examples are included as exhibits

to illustrate that parole conditions are of a very different character than SORA.

Probation or parole dictates whom someone can date, requires that they must

work, mandates disclosure of internet passwords, requires installation and payment

for monitoring systems, dictates where a person can be or cannot be, mandates

agreement to warrantless searches, prohibits possession of children's toys, and

prohibits association with anyone under the age of 18.  See FN 3.  Those types of

conditions pale in comparison to notifying police of changes to personal information

and periodic reporting.  Accordingly, the new SORA registration requirements do not

meaningfully resemble probation or parole.

| SORA Requirements | Probation requirements (5 years)[2] | |
|---|---|---|
| Regular reporting (1x, 2x or 4x a year) | Monthly reporting with PO and submission of monthly written reports | Required to support dependents |
| Update changes (some can be updated by mail) | Could not leave judicial district without permission | Regular drug testing |
| | Required to work regularly | Refrain from excessive use of alcohol |
| | Had to notify probation officer (PO) at least ten days prior to change in employment or residence | Had to notify third parties of risk occasioned by his criminal record and/or personal characteristics, as directed by PO |
| | Could not possess a firearm | Could not view pornography |
| | Could not associate with anyone under the age of 18 without presence of responsible adult who is aware of conviction and who has been approved by PO | Had to affirmatively disclose his conviction to any school where he may speak in his professional capacity, and to the parents of the children he may interact with |
| | Had to permit PO to visit him at any time at home or elsewhere | Could not frequent places where children congregate regularly |
| | Had to be subject to, and pay for, sex offender diagnostic evaluations and polygraph examinations, as directed by PO | Had to consent to unannounced examinations of all computer systems, including paying for computer monitoring systems |
| | Had to provide his computer passwords to PO | Could only access computer approved by PO |

---

[2] Ex. M, NWD Probation Conditions; and see Ex. H, M.R. Plea Agreement ¶ 2 and Ex. N, Probation and Parole Conditions (which shows numerous recent examples).

|  | Had to agree to searches of his person, residence and vehicle | Had to agree to searches of his person, residence and vehicle |
|---|---|---|
|  | Had to agree to searches of his person, residence and vehicle by PO | Had to provide PO with access to his financial information, including billing records |
|  | Employment must be preapproved by PO | Only access the internet through one device |
|  | Cannot be employed where there would be contact with minors, or adults with disabilities, without approval of PO | Had to affirmatively notify, anyone he dates or marries with a minor child, of his conviction |
|  | Prohibited from accessing any online computer service without approval by PO |  |

### 2. Does the new SORA impose an affirmative disability or restraint?

The old SORA imposed an affirmative disability or restraint by severely limiting where registrants lived, worked, and loitered in large portions of the state, which severely restricted access to public transportation, employment opportunities, educational opportunities, counseling and mental health treatment, and medical care. The old SORA also potentially limited parenting activities such as attending parent teacher conferences, attending sporting events, or transporting kids to school. The exclusionary zones are not part of the new SORA, and even if there is any sort of disability or restraint in the new SORA, it is not punitive.

Under the old SORA, numerous changes to regular life events had to be reported in person, such as changes to vehicle information, email addresses, phone

numbers, and temporary residence information.  Under the new SORA, this information can be updated by mail.  (ECF No. 126-18, PageID.6210-6211.)

Under the old SORA, reporting violations did not have to be willful.  In other words, a registrant could have been imprisoned for failing to comply with a provision that s/he was unaware of or did not understand.  Under the new SORA, there is a willingness requirement, which requires a registrant to understand what is required by the law, and willingly violate it, before they can be prosecuted, and the prosecution must prove beyond a reasonable doubt that there was a willing violation of the law. Mich. Comp. Laws § 28.729.

The new SORA imposes an affirmative duty or obligation to regularly report and to update law enforcement if specific personal information changes, but it is not a restraint.  Even if there is some sort of minimal "disability or restraint" in the new SORA, it is the same that is in federal SORNA.  (ECF No. 39-3, PageID.1240-1299.)

Courts have consistently found that either the minimal restraint of in person reporting is not punitive, or it is not a restraint at all.  *Willman v. United States Off. of Att'y Gen.*, 972 F.3d 819, 824 (6th Cir. 2020); *United States v. Parks,* 698 F.3d 1, 6 (1st Cir. 2012) (concluding that in-person reporting is inconvenient but not enough to constitute punishment); *Doe v. Cuomo,* 755 F.3d 105, 112 (2nd Cir. 2014) (holding that a requirement of quarterly in-person reporting is not punitive); *United States v. Under Seal,* 709 F.3d 257, 265 (4th Cir. 2013) ("Although [a sex offender] is required under [the Sex Offender Registration and Notification Act] to appear periodically

13

in person to verify his information and submit to a photograph, this is not an affirmative disability or restraint."); *Hatton v. Bonner,* 356 F.3d 955, 964 (9th Cir. 2003) (stating that a California statute's requirement of in-person reporting "is simply not enough to turn [the California statute] into an affirmative disability or restraint"); *United States v. W.B.H.,* 664 F.3d 848, 855, 857–58 (11th Cir. 2011) (concluding that a requirement of frequent, in-person reporting is "not enough" to change a statutory regime from civil and regulatory to criminal and punitive); *Shaw v. Patton*, 823 F.3d 556, 568–69 (10th Cir. 2016) (holding that in person reporting is not punitive); *United States v. Felts*, 674 F.3d 599, 605–06 (6th Cir. 2012) ("To appear in person to update a registration is doubtless more inconvenient than doing so by telephone, mail or web entry; but it serves the remedial purpose of establishing that the individual is in the vicinity and not in some other jurisdiction where he may not have registered, confirms identity by fingerprints and records the individual's current appearance"); *United States v. Young*, 585 F.3d 199, 206 (5th Cir. 2009); *United States v. May*, 535 F.3d 912, 919–20 (8th Cir. 2008), abrogated on other grounds by *Reynolds v. United States*, 565 U.S. 432 (2012); *United States v. W.B.H.*, 664 F.3d 848, 860 (11th Cir. 2011).

### 3. Does the new SORA promote the traditional aims of punishment?

The new SORA promotes deterrence, but deterrence alone does not make it punitive. *Smith*, 538 U.S. at 102.

14

The new SORA encourages victims to come forward, which helps protect the public from the commission of potential future crimes.  (Ex. A, Dare Affidavit, ¶11.) The registry is important for victims.  "Victims prioritize not just the safety for themselves, for safety of others, and notifying a perpetrator of sexual assault to others in the community is part of that safety to others.  Many victims state that they never want to see someone else victimized by their offender, and they view the registry as a proponent to potentially saving others.  Many victims state that they have come forward to report their assault to law enforcement solely to prevent future assaults to others.  In this vein, the registry protects the public."  (Ex. B, Bennetts Declaration, ¶19.)

Registration obligations stem from the underlying offense, which could be construed as retribution for the past offense.  However, as discussed above, federal SORNA has survived Ex Post Facto scrutiny around the country, and it has been repeatedly and consistently upheld, so as a whole it cannot be that sex offender registration is punishment.

### 4.    Does the new SORA have a rational connection to a non-punitive purpose?

This is the most important factor.  See, e.g., *Smith v. Doe*, 538 U.S. 84, 102 (2003) ("The Act's rational connection to a nonpunitive purpose is a '[m]ost significant' factor in our determination that the statute's effects are not punitive.") Rational connection is a low bar and the non-punitive purpose is public safety.

The costs of rape have a high societal cost of $100,000-$300,000 per victim. (ECF No. 128-19, PageID.6994.)  The majority of victims of sexual assault are children.  Where the victim age is known: 16,793 are under the age of thirteen, 14,745 are between the ages of thirteen and seventeen; and 4,657 are adult victims. (Ex. K, Jegla Affidavit.)

The conduct of sex offenders is extremely damaging and, in most instances, does not appear to be a momentary lapse is judgment, or a one-time event.  For a random summary of offenses that lead to inclusion on the registry see Exhibit G, Summary of various offenses.

John Doe B had sex with a minor whom he says he was not aware of her age, but once he did learn of the victim's age, he had sex with the child again.  (ECF No. 125-5, PageID.5109, p 18:16-19:4.)

John Doe C admitted that he had sex with a 15-year-old child more than ten times over a period of time (so even if he was unaware of her age when they met at an 18+ club, in the intervening time, he should have easily discovered that she was a minor child who wasn't even old enough to drive and was still in high school). (ECF No. 125-6, PageID.5131, p. 26:12-20.)

Ms. Roe had sex with a minor child between five and twenty times while the child was staying in her marital home during the minor child's process to become an Orthodox Jew.  (ECF No. 125-10, PageID.5216-5217, p. 45:8-46:11.)

John Doe E repeatedly molested his five-year old nephew while he was

16

babysitting, and there was evidence that he told the victim that he would go to jail if the victim told anyone about the abuse.[3]

John Doe F met his victim when she was 13 or 14 when he was her soccer coach, and they started "dating" when he was 22 and she was 15. (ECF No. 125-8, PageID.5164-5165.)  John Doe F kept the years long "dating" relationship with the child a secret from her family.  (*Id.*)  John Doe F admitted that he had sex with the victim three or four times, and they exchanged nude photographs probably a dozen times, but he was not charged with child pornography crimes as part of his plea. (ECF No. 125-8, PageID.5165-5166.)

The new SORA easily clears the low bar of having a public purpose of protecting the public.  A statute is not deemed punitive simply because it lacks a close or perfect fit with the nonpunitive aims it seeks to advance.  *Smith*, 538 U.S. at 103.

### 5.    Is the new SORA excessive?

The short answer is that it is not.  Research shows that: (1) one in five women and one in thirty three men experience attempted or completed rape in their lives; (2) the vast majority of sexual assaults are not reported to police (between 75-85%); (3) few reported sexual assaults end in a conviction (between 6.5-14%); and (4) these patterns of underreporting and case attrition limit the conclusions that can be drawn

---

[3] Due to the protective order, a citation to the court record is not provided here, but can be produced under seal, if the Court would like to review it.

about serial sexual offending from criminal history records alone. More specifically, estimates of serial sexual perpetration that rely solely on criminal history records are likely to substantially underestimate sexual offending. (ECF No. 128-20, PageID.7016.) Requiring those that have been convicted of criminal sexual conduct to report and periodically update their information is not excessive.

Plaintiffs suggest that the legislature has not made the best choice with regulating sex offenders. They opine that the state should be using an actuarial tool (Static 99-R), which is great at predicting whether someone will be caught for a subsequent sex offense, to determine whether someone still has to register—i.e., do they continue to pose a risk to society?

The great body of research relied on by Plaintiffs is limited to recidivism data, which only includes data about whether someone was arrested or convicted of another crime, but that data only tells a very small part of the story. The real question is whether a registrant is likely to commit another sex offense.

Dr. Hanson, who is Plaintiffs' expert and the inventor of Static 99-R, made conclusions about risk levels (low to high) based on arbitrary determinations /definitions of risk levels based on Static 99-R scores. (ECF No. 123-7, PageID.4307.) However, Static 99-R scores do not account for sex offenses that were never reported by the victim; offenses that were reported by the victim, but not reported to law enforcement; offenses reported to law enforcement but not resulting in charges or arrests; arrests not resulting in convictions; cases of criminal sexual

conduct, but pled down to non-sexual offenses; nor cases that do not end in a conviction for criminal sexual conduct.  (ECF No. 128-22, PageID.7080.)  Static 99-R excludes up to 97% of sexual assaults.  (*Id.* at PageID.7081.)  Static 99-R predicts recidivism and not re-offenses. (i.e., the chances of someone getting caught and convicted for a subsequent offense, and not whether someone will commit another offense.)  It is important to note that the control group that Dr. Hanson uses to compare sex offenders against for risk levels of low to high are other people that have been incarcerated and not just an average member of the public.  (ECF No. 125-3, PageID.5034-5035.)

It is difficult to measure the actual rate of sexual reoffending, which is a concept often referred to as the dark figure of crime.  (ECF No. 128-19, PageID.6984-6985.)  However, there is data that supports the conclusion that if an individual commits one sex offense, they commit subsequent offenses, even if they are not caught for it.  (ECF No. 128-19, PageID.6985-6986; ECF No. 128-20, PageID.7015-7043.)  Research suggests that there cannot be one rate for sexual recidivism, and based on 808 empirical studies the reoffending rate ranged from 0-68%.  (ECF No. 128-19, PageID.6987.)  "Sexual recidivism estimates cannot be reliably used to determine if sexual offenders live offense free in the community because they fail to capture undetected sexual offenses."  (ECF No. 128-19, PageID.6988.)

"If there are issues with the method that is being used to determine who

belongs on the Michigan registry, they will not be solved by substituting Static-99R as a stand-alone instrument." (ECF No. 128-21, PageID.7067.) "Recidivism studies based solely on criminal history data are therefore not measuring sexual offenders' behaviors so much as they are measuring the behavior of the criminal legal system." (ECF No. 128-20, PageID.7042.) Criminal history data (which tracks recidivism) is an incredibly inaccurate way to gauge the frequency of sexual offending. (ECF No. 128-20, PageID.7023.)

There have been efforts to improve the criminal justice system experience for victims of sexual assault, but victims are often blamed and not believed when they report their assaults to police. "The treatment many sexual assault victims experience when reporting their assaults is recognized as so harmful that it has come to be known as 'secondary victimization' or 'the second rape.'" (ECF No. 128-20, PageID.7017-7018.) One study from 2019 showed that of 2,887 reports of sexual assaults made to police across six US jurisdictions, only 189 resulted in a conviction, meaning 2,698 reported assaults did not lead to a conviction. (ECF No. 128-20, PageID.7022.)

According to Dr. Turner, an individual risk assessment (which could be used to predict whether someone will reoffend) costs between $8,000 to $20,000 each. (ECF No. 128-22, PageID.7091.) It takes from eight to 26 hours to conduct an individual risk assessment depending on various factors. (*Id.*) Since there are approximately 44,000 registrants, by using Dr. Turner's rates, it would cost between $352,000,000

and $880,000,000 to conduct risk assessments of all current registrants.  Even if risk assessments were conducted on 25% of the registrants, and the cost per assessment could be reduced by 75%, the costs would still be staggering.  (11,000 registrants * $2,000 per assessment = $22,000,000) or (11,000 registrants * $5,000 per assessment = $55,000,000.)   Based on Dr. Turner's estimates, it would also take between 352,000 and 1,144,000 hours to conduct evaluations for all registrants.

According to Dr. Salter, it takes at least 15 hours to conduct a comprehensive evaluation.  (ECF No. 128-21, PageID.7067.)  Based on Dr. Salter's estimates, it would take at least 660,000 hours to conduct evaluations for all registrants.

According to MDOC, for just conducting a Static-99 evaluation, it takes anywhere from 15 minutes to an hour each.  Based on 44,000 registrants, it would take 11,000 to 44,000 hours to complete a Static-99 evaluation on all current registrants.

Dr. Hanson explained that the correctional system in Canada does not use solely the Static-99 to evaluate risk.  They also use STABLE and may use a structured professional judgment tool such as the SCR 20.  There is generally an interview done as well.  (ECF No. 125-3, PageID.5022.)  He stated that for a low-risk case, it would take a day or a day and a half, and for a higher risk case, it would take several days to complete the evaluation. (ECF No. 125-3, PageID.5022.)  If we use Dr. Hanson's time estimates, and we arbitrarily say that 30,000 registrants are "low-risk" and 14,000 registrants are "high-risk", it would take approximately 217 years to complete the

21

evaluations if someone worked seven days a week, 52 weeks a year. ((30,000 registrants * 1.25 days per evaluation = 37,500 days, or 102 years) + (14,000 registrants + 3 days per evaluation = 42,000 days, or 115 years)).

Dr. Hanson said he was unaware of any state that uses Static-99 as a basis for determining how long someone needs to register as a sex offender.  (ECF No. 125-3, PageID.5034.)  When asked about whether static risk assessments need to be redone periodically as an offender's life circumstances or age changes, Dr. Hanson, said "[i]f you want to get a precise estimate, reassessments help."  (ECF No. 125-3. PageID.5042.)  Dr. Hanson stated that he usually recommends that evaluators utilize multiple risk tools [when evaluating an offender] and he acknowledged that the comprehensive evaluations suggested by Drs Turner and Salter would be more accurate in assessing risk that just one static tool, if their method is sound.  (ECF No. 125-3, PageID.5061.)

In sum, the new SORA is not excessive.  It is a regulatory scheme designed to protect the public.  It is not punitive and is not a violation of the Ex Post Facto Clause.

## II.    Plaintiffs' non-sex offense claims are moot.

Plaintiffs claim Due Process and Equal Protection violations by "SORA 2021 *automatically* requir[ing] sex offender registration—without any determination of whether the conduct involved sex—for people convicted of certain offenses against minors.  (ECF No. 108, PageID.2983–2984.)  Plaintiffs' challenge is to this *automatic*

*determination* that people who were convicted of sex offenses are 'sex offenders.' "
(ECF No. 108, PageID.2972.) (Emphasis added.)

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969).  A case, or issue, can also become moot *when governmental defendants change their conduct for external reasons. Davis v. Colerain Twp.*, 51 F.4th 164, 175 (6th Cir. 2022). For instance, when the government "makes a change to comply with binding precedent (even if it has done so in an ad hoc manner)," it is given solicitude by the courts because "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Doe v. Univ. of Michigan*, 78 F.4th 929, 947–48 (6th Cir. 2023) (quotation marks and citation omitted).  "[T]he government need only represent that it does not intend to return to the previous policy." *Id.* at 948.

Here, the claim is moot due to intervening published case law—*People v. Lymon*, 993 N.W.2d 24 (Mich. App. 2022)—because there is no longer an "automatic determination" that individuals convicted of certain offenses against are sex offenders.[4]

---

[4] Notably, *Lymon* was issued on June 16, 2022, and Plaintiffs filed their amended complaint more than ten months later on April 21, 2023.

A.   **The MSP has removed from the registry nearly all the non-sex-offense subclass.**

In a published opinion, the Michigan Court of Appeals held that under the Michigan Constitution it is cruel or unusual punishment to require sex offender registration for a "crime that lacks a sexual component and is not sexual in nature." *Lymon*, 993 N.W.2d at 44, 47.[5]

In the wake of the *Lymon* opinion, the MSP gathered information regarding how many individuals were on the registry solely for unlawful imprisonment, kidnapping, or child enticement under Michigan law.  Mich. Comp. Laws §§ 750.349b; 750.349; 750.350.  It identified 295 registrants with Michigan convictions.  (Ex. O, Seldon Declaration, ¶ 9.)  The MSP then notified the convicting courts, law enforcement agencies, the prosecutors, the Prosecuting Attorneys Association of Michigan (PAAM), and the registrants, that the 295 individuals would be removed from the public registry, unless information was provided by the prosecutor to establish that there was a sexual component to the crime.  (ECF No. 128-7, PageID.6656; ECF No. 128-8, PageID.6658; ECF No. 128-9, PageID.6660; ECF No. 128-10, PageID.6662.)[6]

---

[5] *Lymon* is on appeal to the Michigan Supreme Court and the MSP filed an amicus brief. *People v. Lymon*, 983 N.W.2d 82 (Mich. 2023).

[6] Plaintiffs have speculated that there are an additional 34 registrants with "substantially similar" out-of-state offenses that remain on the registry, but have provided no data to support this speculation, aside from explaining the mathematical extrapolation they used for their speculation. (ECF No. 123-6, PageID.3988.)

As a result of the *Lymon* opinion, only 14 registrants remain on the registry solely for unlawful imprisonment, kidnapping, or child enticement under Michigan law. (Ex. O, Seldon Declaration, ¶ 9.)  Some other offenders remain on the registry with convictions for one of the enumerated offenses plus another criminal sexual conduct offense.  (*Id.*)  The decision as to whether the registrant should remain on the registry (i.e., whether there was a sexual component to the crime) was a decision made by the prosecuting attorney, and the MSP relied on the prosecuting attorney's representations to keep 14 offenders on the public registry.[7]  (Ex. P, Correspondence from Prosecutors.)

The Prosecuting Attorneys Coordinating Council (PACC) also updated their warrant manual to reflect that "automatic registration" should no longer occur because of *Lymon*.  (Ex. Q, PACC Warrant Manual Excerpts.)

Because the MSP has changed their conduct for external reasons—due to an intervening change in law that prohibits inclusion on the registry without a determination by the prosecutor that there was a sexual component to the crime—the claim is moot.  *See Davis*, 51 F.4th at 175.  It is not reasonable to assume that the MSP or Governor Whitmer will fail to follow published and binding case law in the future.

---

[7] Four of the fourteen registrants are currently incarcerated, and one is living out-of-state and is not on the Michigan registry and has no reporting obligations in Michigan. Due to the protective order, this information is not shared here, but can be produced under seal, if requested by the Court.

What is more, there is no evidence, let alone objective evidence, that the MSP removed the registrants to avoid judicial review. The MSP removed the individuals to comply with the law. *See Doe*, 78 F.4th at 947–48.

Plaintiffs will likely argue that the Michigan Supreme Court may reverse the *Lymon* decision, so there is a live controversy. Not so. Because there may be some future act that could turn this back into a live controversy, does not mean there *is currently* a live controversy for this Court to decide. If that were sufficient, almost no claim would be moot because the Legislature could change the law at any time. Here too, the Legislature may decide that the *Lymon* court got it wrong, and they want the individuals convicted of unlawful imprisonment, kidnapping, or child enticement to remain on the public registry. (There is no indication that the Legislature intends to take any action as a result of *Lymon*.) But because there is a possibility of something like that occurring does not make it a live controversy.

Asking this Court to decide a moot issue is asking for an advisory opinion about some speculative eventuality that may never occur, which it cannot do. *See Safety Specialty Ins. Co. v. Genesee Cnty. Bd. of Comm'rs*, 53 F.4th 1014, 1020 (6th Cir. 2022) (stating that federal courts cannot pass judgment on disputes that may or may not materialize).

### B.  Class wide relief is not appropriate for the individuals that were not removed as a result of *Lymon*.

The prosecutors made independent decisions about which convictions for unlawful imprisonment, kidnapping, or child enticement included a sexual component that would require certain individuals to continue to register.  There was nothing "automatic" about the determination.  While the facts underlying some of these convictions are difficult and frightening to read, and it is worth reading them in their entirety, a few excerpts are provided below.  (Ex. P, Correspondence from Prosecutors.)

One of the victims was dragged into the woods while she was bound and naked.  She was told she was being sold to some men, who physically and sexually assaulted her.  (Ex. P, Correspondence from Prosecutors, p 84, MSP-0001930.)  A seven-year-old victim, who was murdered, had semen in her underpants from the registrant.  (*Id.* at p. 17, MSP-0001863.)  Another victim was sexually assaulted in her own home, threatened at knifepoint, robbed, kidnapped, and had her car stolen.  The perpetrator pled guilty in 2004 to armed robbery and kidnapping in exchange for dismissal of the remaining counts—"primarily because the victim was so traumatized that she did not want to participate in trial."  (*Id.* at p. 36, MSP-0001882.)

While it is beyond the scope of the current lawsuit, on first blush, it seems that the few remaining registrants, could file an independent action seeking relief under *Lymon*.  And since the outcome will be factually dependent, it is not suitable for a class

action because there are no longer questions of fact common to the class.  Fed. R.

Civ. P. 23(a)(2).[8]

## III.    The new SORA does not violate substantive Due Process rights.

Plaintiffs argue that the new SORA violates the Due Process Clause by

requiring retroactive lifetime registration of certain individuals (ECF No. 123,

PageID.3642–3648), by imposing registration requirements without considering an

individual's risk of reoffending (ECF No. 123, PageID.3648–3655), and by allegedly

violating plea agreements.[9] (ECF No. 123, PageID.3668–3673).  It appears that

Plaintiffs assert only a substantive Due Process claim as to these arguments.

However, any liberty interest regarding after-the-fact registration obligations should

be analyzed as a potential Ex Post Facto violation and not a substantive Due Process

claim.  Nonetheless, Defendants address Plaintiffs' substantive Due Process claims

below.

The substantive component of the Due Process Clause protects "fundamental

rights" that are so "implicit in the concept of ordered liberty" that "neither liberty nor

justice would exist if they were sacrificed."  *Palko v. Conn.*, 302 U.S. 319, 325 (1937).

Thus, courts reviewing a substantive Due Process claim must first determine a

---

[8] It is also worth noting that as a result of *Lymon*, John Doe A no longer has
registration obligations, therefore, he should not be a class representative for a class
that no longer exists.

[9] Plea agreements go both ways.  In many instances more serious charges are not
pursued by the prosecutor in exchange for a plea to a lessor offense.

"careful description of the asserted right," *Reno v. Flores*, 507 U.S. 292, 302 (1993), and then determine if that right is "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty," such that it can be considered a "fundamental right." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997).

Fundamental rights include "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." *Id.* at 720. "The Supreme Court has cautioned, however, that it has 'always been reluctant to expand the concept of substantive Due Process because guideposts for responsible decision making in this unchartered area are scarce and open-ended.'" *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 500 (6th Cir. 2007) (quoting *Glucksburg*, 521 U.S. at 720).

If a statute does not implicate a plaintiff's fundamental rights, rational-basis review applies. *Does*, 490 F.3d at 501. Under rational basis review, the question is "whether the statute at issue is 'rationally related to legitimate government interests.'" *Id.* "This standard is highly deferential; courts hold statutes unconstitutional under this standard of review only in rare or exceptional circumstances." *Id.*

Here, Plaintiffs do not have a fundamental right to be free from SORA registration and notification requirements. *See e.g.*, *id.* at 500 (concluding that the plaintiffs' asserted right of having their "HYTA records . . . sealed and exempted from public disclosure because, at the conclusion of their youthful trainee status, the criminal charges against them were or will be dismissed" did not constitute a

"fundamental right deeply rooted in our Nation's history"); *Does v. Munoz*, 507 F.3d 961, 964–65 (6th Cir. 2007) (rejecting the plaintiffs' argument that their inclusion on the registry burdened their right to privacy and created difficulties in retaining housing, keeping and finding employment, and pursuing educational opportunities and family relationships); *In re Wentworth*, 651 N.W.2d 773, 777–78 (Mich. Ct. App. 2002). Additionally, although Plaintiffs claim that the new SORA impacts their fundamental rights of speech, work, and travel (ECF No. 123, PageID.3648–3649), the new SORA infringes on none of these asserted rights. *See infra* §§ VI, VII.A.1.b, and VII.B.

"Because Plaintiffs provide no basis for reviewing the retroactive application of SORA's lifetime registration requirement using a heightened level of scrutiny," this Court should uphold the new SORA if it is justified by a "*rational legislative purpose.*" *Doe v. Snyder*, 101 F. Supp. 3d 672, 708 (E.D. Mich. 2015) (quotation marks and citation omitted; emphasis added). Indeed, even Plaintiffs' claim that retroactively applying the lifetime registration violates plea agreements (ECF No. 123, PageID.3668–3673), does not support a higher degree of scrutiny because they "have not raised breach of contract or Fifth Amendment Takings claims, nor do they cite to any case law supporting a higher degree of scrutiny when reviewing the retroactive application of a law that may affect the government's contractual obligations (including those established by plea agreements)." *Id.* at 707.

The Legislature enacted the new SORA "with the intent to better assist law enforcement officers and the people of this state in preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders."  Mich. Comp. Laws § 28.721a.  The Legislature "determined that a person who has been convicted of committing an offense covered by this act poses a potential serious menace and danger to the health, safety, morals, and welfare of the people, and particularly the children, of this state."  *Id.*  Furthermore, "[t]he registration requirements of this act are intended to provide law enforcement and the people of this state with an appropriate, comprehensive, and effective means to monitor those persons who pose such a potential danger."  *Id.*

SORNA has the same goals of the new SORA of protecting the public and uses its purse strings to encourage compliance with federal standards.  42 U.S.C. § 16911(10).  Michigan substantially implements federal SORNA, which entitles the state to federal funding that is used to try to protect the public.  42 U.S.C. § 16925(a). Retroactivity is one factor in determining substantial implementation of federal SORNA.  29 C.F.R. § 72.3.  Achieving compliance with SORNA and aiding that goal with financial incentives is a rational justification for pursuing substantial implementation. *Felts*, 674 F.3d at 602.

The Sixth Circuit has previously concluded that states have a compelling interest in protecting public safety.  *See Doe v. Mich. Dep't of State Police*, 490 F.3d at 505; *Snyder*, 101 F. Supp. 3d 672, 708.  Furthermore, the Sixth Circuit has concluded that

31

"providing the public and law enforcement with the means to monitor sex offenders who were convicted twenty years ago is rationally related to protecting public safety." *Snyder*, 101 F. Supp. 3d 672, 708. See supra.  Thus, the retroactive lifetime registration requirement is rationally related to the Legislature's public safety concerns.  *See id.*

It is well settled that SORA registration obligations are collateral to a guilty plea and are not the basis for a Due Process claims.  *Rose v. Bauman*, No. 2:17-cv-10836, 2018 WL 534490, *5 (E.D. Mich. Jan. 24, 2018) (observing that the "Sixth Circuit has concluded on several occasions that the requirement to register as a sex offender is a collateral one that need not be disclosed to the defendant in order for a plea to be valid").  S*ee Jackson v. United States*, No. 18-15028, 2019 WL 6114434, *1 (11th Cir. Nov. 18, 2019) (Mem. Opn) (affirming holding that counsel could not have advised defendant of SORNA, which had not been enacted at time defendant pled guilty.)

As an aside, there is no procedural Due Process violation either.  The Supreme Court already addressed the question of whether there is a procedural Due Process claim without a sperate hearing about current dangerousness, and the Court determined that there was no Due Process violation.  *Connecticut Dep't of Public Safety v. Doe*, 538 U.S. 1 (2003).  The offender's current dangerousness—or lack thereof—was not relevant to the classification and "due process does not require the opportunity to prove a fact that is not material to the State's statutory scheme." *Id.* at 4, 8.

Accordingly, Plaintiffs are not entitled to summary judgment on their Due Process claims.

IV.    **Plaintiffs' Equal Protection claims fail.**

Plaintiffs argue that the new SORA violates the Equal Protection Clause by imposing lengthy lifetime registration with no consideration of an individual's risk of reoffending (ECF No. 123, PageID.3648–3655) and by denying similarly situated registrants the opportunity to petition for removal from the registry (ECF No. 123, PageID.3660–3665).

The legal framework for evaluating Equal Protection claims and the argument explaining why the claim must fail was already addressed in Defendant's response to the motion for preliminary injunction and its motion to dismiss and is incorporated here by reference.  Fed. R. Civ. P. 10(c).  (ECF No. 39, PageID.1212-1216; ECF No. 41, PageID.1367-1373.)

In summary, Plaintiffs argue that registrants' Equal Protection rights are violated because "certain registrants who meet strict eligibility criteria can petition for removal from the registry after ten years," whereas "[o]ther registrants who meet the same eligibility criteria are denied that opportunity."  Such arguments overlook the fact that it "is the province of the legislature" to engage in this "kind of line-drawing." *Doe v. Mich. Dep't of State Police*, 490 F.3d at 504.  Indeed, "[s]tatutes create many classifications which do not deny equal protection; it is only invidious discrimination which offends the Constitution." *Id.* at 505 (quotation marks and citation omitted).

As of January 2023, there were 3,191 Tier I registrants that were eligible to petition for relief.  (Ex. C, Second Affidavit of Sharon Jegla, ¶4; ECF No. 123-6,

33

PageID.3961.)  According to Plaintiffs' data report, there were over 2,037 people on the registry for a juvenile offense.  (ECF No. 123-6, PageID.3954.)  In total, there were 5,228 registrants that are eligible to petition for removal from the registry, which translates to nearly 12% of the registrants.  ((3,191 + 2,037 = 5,228) / 44,000) = 12%.

Although the Legislature could have gone farther than it did with respect to who is eligible to petition, it does not make the statute invalid.  *See Doe*, 490 F.3d at 505; *see also Smith v. Doe*, 538 U.S. 84, 103 (2003).  "Indeed, rational-basis review in equal protection analysis is not a license for courts to judge the wisdom, fairness, or logic of legislative choices."  *Id.* (quotation marks and citation omitted).  Plaintiffs are inviting the Court to do just that.  The Court should reject Plaintiffs invitation and deny their motion for summary judgment on this claim.

## V.     The new SORA is not unconstitutionally vague.

Plaintiffs claim that the new SORA is unconstitutionally vague and as such is a Due Process violation.  (ECF No. 108, PageID.2903–2913, 2974; ECF No. 123, PageID.3680.)  Specifically, they allege that the provisions requiring the reporting of: (1) all telephone numbers "registered to . . . or used by the individual," (2) all email addresses and internet identifiers "registered to or used by the individual," and (3) all vehicles "owned or operated by the individual" or "used by the individual;" are unconstitutionally vague.  (ECF No. 108, PageID.2904–2905.)  Likewise, "nicknames," "addresses," and "physical descriptions" are allegedly unconstitutionally vague, along with "institutions of higher education," "places of employment" and

"substantially similar." (*Id.* at PageID.2908, 2910, 2913.) Despite Plaintiffs' efforts, they cannot show that the new SORA is unconstitutionally vague.

The vagueness doctrine is rooted in the Due Process Clause of the Fifth Amendment. *United States v. Williams*, 553 U.S. 285, 304 (2008). Due Process challenges rooted in vagueness require a "criminal law (1) so vague that it fails to give ordinary people fair notice of the conduct it punishes, or (2) so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015) (citing *Kolender v. Lawson*, 461 U.S. 352, 357–58 (1983)).

Fair notice requires a statute to give notice to "a person of ordinary intelligence . . . that his [or her] contemplated conduct is forbidden by the statute." *Colautti v. Franklin*, 439 U.S. 379, 390 (1979) (internal quotation marks omitted). A statute violates the "arbitrary enforcement" requirement if it is "so indefinite that it encourages arbitrary and erratic arrests and convictions." *Id.* (internal quotation marks omitted). As a result, "ordinary notions of fair play and the settled rules of law," *Johnson*, 576 U.S. at 595, are violated if the various actors in the criminal justice system are "defining crimes and fixing penalties" within the gaps of the statute "so large that doing so becomes essentially legislative," *United States v. Evans*, 333 U.S. 483, 486–87 (1948).

Evaluating a law for vagueness is not an overly rigid analysis—laws do not run afoul of the Due Process Cause "simply because difficulty is found in determining whether certain marginal offenses fall within their language." *United States v. Nat'l*

*Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963).  And laws are not vague because they "may be stringent and harsh."  *Barsky v. Bd. of Regents*, 347 U.S. 442, 448 (1954).

Moreover, laws do not run afoul of the Due Process Clause simply because they are "susceptible to clever hypotheticals."  *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*, 894 F.3d 235, 251 (6th Cir. 2018) (stating that "[h]ypotheticals are a favorite tool of those bringing vagueness challenges, but . . . almost any criminal or civil prohibition is susceptible to clever hypotheticals testing its reach"); *see Schickel v. Dilger*, 925 F.3d 858, 879 (6th Cir. 2019).  By their nature, laws are "[c]ondemned to the use of words, we can never expect mathematical certainty from our language."  *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972).

Rather, "[t]he degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment."  *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 489 (1982).  The Supreme Court has "recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed."  *Id.* at 499.  Indeed, the new SORA includes a scienter requirement—any violations must be willful.  Mich. Comp. Laws § 28.729.  "[A]s a sort of 'junior version of the vagueness doctrine,' the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered."  *United States v. Lanier,* 520 U.S. 259, 266 (1997).

36

## A.     The new SORA gives ordinary people fair notice.

The statutory provisions that Plaintiffs complain about being vague, are nearly identical to the provisions under SORNA.  (ECF No. 39-3, PageID.1240-1299; ECF No. 41-2, PageID.1386-1389.)   A finding that the new SORA is unconstitutionally vague would be a finding that the SORNA is unconstitutionally vague.  No such finding is warranted because ordinary people have fair notice of what is required.

### 1.     Email and Internet Identifiers.

Cases examining email and internet identifiers were already addressed in Defendant's initial motion to dismiss and are incorporated here by reference. Fed. R. Civ. P. 10(c). (ECF No. 41, PageID.1358-1360.)

Some of the named Plaintiffs, who have been represented by class counsel for over a decade, are not even aware that the law changed over two years ago and they no longer need to report their email addresses.  (ECF No. 125-9, PageID.5197, p. 56:16-57:4; PageID.5185, p. 8:12-19; ECF No. 125-11, PageID.5238.)  Plaintiffs allege that the language around the email reporting provision "is confusing.  Instead of saying that the provisions only apply to those whose registrable offenses occurred after July 1, 2011, the new law says that the email and internet provisions only apply to those 'required to be registered under this act after July 1, 2011.' "  (ECF No. 108, PageID.2906–2907.)  However, despite this claimed confusion, by September 2021 the ACLU had already determined what the provision meant and apparently advised

registrants: "This requirement does not apply if your offense was committed before July 1, 2011."[10]

### 2.    Vehicle Information

The issue of vehicle information was already addressed in Defendant's initial motion to dismiss and are incorporated here by reference. Fed. R. Civ. P. 10(c). (ECF No. 41, PageID.1360-1362.)

Plaintiffs allege that the law is confusing because they are not sure if "they must report every single phone, email address, internet identifier or vehicle that they have ever used. . . .   Plaintiffs also do not know how far back in time these requirements apply." (ECF No. 108, PageID.2905.)

Looking at the language of the statute is instructive.  Some provisions of the statute clarify that the requirement goes back in time.  ". . . and any other name by which I have been known" or ". . . any alleged social security numbers that I have previously used" or ". . . any alleged dates of birth that I have previously used."  Mich. Comp. Laws 28.727(1)(a)-(c).  Notably missing from the plain statutory language regarding phone, email and vehicle provisions is the backward-looking modifiers of "have been known" or "previously used."

---

[10] *See* [What You Need to Know About the Sex Offender Registry Act (SORA) | ACLU of Michigan (aclumich.org)](aclumich.org) Sept 13, 2021 legal challenge update, pg. 4-5 (last accessed November 9, 2023.)

On its face, the allegation is absurd.  A counter-hypothetical illustrates the point.  If a 43-year-old was convicted in 2015 of criminal sexual conduct, and they served five years in prison, their initial registration would be in 2020 upon release from prison. When they register in 2020, they were required to report all "telephone numbers registered to . . . or used by the individual" and "the license plate number and description of any vehicle that I own or operate."  Does a fair reading of the law mean that the individual has to report every phone number that they ever used during the preceding 35 years and every vehicle that they owned or operated from the time they started driving in 1988 until the time they were released from prison in 2020 ? Hardly.

Such a reading would mean that the registrant would have to try to remember every vehicle they drove—rental cars, drivers ed vehicles, a neighbor's car that was loaned to them—from a period prior to their offense.  An ordinary person would not believe that they must report the first car that they owned in 1988.

Such a reading would mean that the 43-year-old would be required to report home phone numbers from every home that they lived in over thirty-five years, each relative's phone number that they might have used for three and a half decades (e.g., when they were five that had a sleep over at an uncle's house and used the phone to call home at night because they could not sleep), every employer's phone number, every school's phone number because they might have used the school phone to call home because they were ill or forgot their permission slip in the third grade, every

friend's phone number, etc. An ordinary person would not believe that they must report it.

As explained above, to the extent that there is any vagueness, the new SORA's scienter requirements mitigate any ambiguity and due to the rule of lenity in criminal statutes, the law only applies to conduct clearly covered. As explained by the ACLU and the State Appellate Defender's Office in September 2021, "[i]f you fail to comply with the new SORA, you *can* be prosecuted under the new law, **but only for knowing (willful) violations**."[11] Registrants cannot be prosecuted for unintentional or mistaken violations of SORA.[12] In other words, if a prosecutor wanted to charge the hypothetical registrant above for failing to report his first vehicle from 1988, the prosecutor will have to prove beyond a reasonable doubt that (1) it is required to be reported by statute; (2) the registrant understood that s/he had to report it; and (3) s/he willingly failed to report it.

### 3. Employers, nicknames, temporary lodging, physical descriptions, trade schools and substantially similar offenses.

These issues were addressed in Defendant's initial motion to dismiss and are incorporated here by reference. Fed. R. Civ. P. 10(c). (ECF No. 41, PageID.1362-1366.)

---

[11] See What You Need to Know About the Sex Offender Registry Act (SORA) | ACLU of Michigan (aclumich.org) Sept 13, 2021 legal challenge update, pg. 7.

[12] *Id.* at pg. 3.

### 4.   Plaintiffs' self-serving survey of "law enforcement" is not persuasive.

Plaintiff will likely point to a "law enforcement survey" that Plaintiffs' counsels' investigator conducted to insinuate that the law is vague. (ECF No. 123-23, PageID.4739-4759.) However, the so called "survey" is unavailing.

First, there was little detail about who provided the answers to the surveys. While it is unknown, it is unlikely that a police officer who may have responsibility over enforcing the law, responded to the survey. It is more likely that someone from dispatch, or another administrative staff member who answers the phones, provided the answers.

Second, upon information and belief, police agencies do not typically provide detailed answers over the phone (or in person) to 24 hypothetical questions about legal reporting requirements under the new SORA, or any other law for that matter. (*Id.* at PageID.4758-4759.) While police agencies have an obvious role in enforcing the law, the detailed questions that they were asked in this lengthy "survey" should not be considered the official position of the police departments—it should basically be considered water cooler opinions. It is likely that if someone called various police agencies about many laws asked detailed hypothetical questions, they would get various answers.

For example, on June 30, 2023, a new distracted driving law took effect in Michigan, which prohibits drivers from using their hands to operate their cell phones

41

beyond a single touch.  The law could be interpreted many ways.  Does single touch

mean a single touch for the entire time you are in the car so that you can only answer

one phone call using a single touch?  What if it is a five-hundred-mile trip, can you

only use the single touch once to answer one call?  What about a life or death

emergency, can only a single touch be used?  Surely, if someone spent the time to call

34 police agencies across the state to ask 24 hypothetical questions about the new law,

they would get various answers, and various levels of responses.  So, too, here.  For

that reason, the self-serving survey should be disregarded and is not a material fact

needed to resolve the legal issues before the Court.

## 5.    Plaintiffs generally understand what needs to be reported.

Plaintiffs allege that they do not know what to report.  (ECF No. 108,

PageID.2906.)  However, many of the lead plaintiffs were deposed and asked whether

they understood what needs to be reported.

John Doe B indicated that he understood what telephone numbers are and he

had no confusion about what he needs to report to law enforcement related to

telephone numbers.  (ECF No. 125-5, PageID.5112, p. 30:1-18.)  Similarly, he had no

confusion about what needs to be reported with respect to: "vehicles" owned or

operated; nicknames; addresses; or institutions of higher learning.  *(Id.* at

PageID.5111, p. 32:17–33:9; 26:4–24;27:22–28:16; 39:14–40:2.)  He also indicated that

he understands what electronic mail addresses are, but he is not sure what internet

identifiers are.  Yet, John Doe B has not read the definition in the law.[13]  (*Id.* at PageID.5114, p. 30:19–31:17.)

John Doe C understands what an address is, but he is unsure what temporary lodging is; yet he knows what it means to be away from his residence for more than seven days.  (ECF No. 125-6, PageID.5133, p. 35:19–37:4.)  John Doe C knows what he is required to report for vehicles that he owns or operates.  (*Id.* at PageID.5134, p. 39:8–40:12.)  He knows what a nickname is.  (*Id.* at PageID.5132, p. 33:15–16.)  And he knows what he is required to report about schools that he attends.  (*Id.* at PageID.5133, p. 37:13–38:14.)

John Doe F was unsure about his reporting obligations and thought that perhaps he had to report a bulldozer, a ditch witch, backhoes, forklifts, or other construction equipment as vehicles that he owned or operated.  (ECF No. 125-8, PageID.5171, p. 47:25–49:22.)  However, he never looked at the law.  (*Id.* at PageID.5133, p. 49:1–8; 52:24–53:20.)

Mary Roe stated that she understands what an address is under the statute and believes she knows what temporary lodging means.  (ECF No. 125-11, PageID.5238, p. 35:13–22.)  She also understands which telephone numbers she is required to report. Notably, she understands that the reporting requirements do not require her to

---

[13] It is worth noting that John Doe B's conviction was from before July 1, 2011, so he does not need to report his email addresses or internet identifiers.  (*Id.* at 30:19-31:6.)

43

report phone numbers from 2003, which is when she committed her offense. (*Id.* at PageID.5238, p. 36:15–37:3.)

When asked a hypothetical about whether a neighbor paying her $300 for shoveling their walk over the winter is reportable on her income taxes or how to figure out the fair market value of a car donation for tax purposes, she said that she was unsure and would consult a tax professional for advice and do some research. (*Id.* at PageID.5239, p. 39:1–40:14.)  The same is true for SORA, research can be done.

Mary Doe said the old law was confusing—she was confused about what she needed to report for her email identifier—but she did not seek any guidance on what needed to be reported, and after she was presented with a copy of the current Explanation of Duties form, she acknowledged that she does not even have to report her email address.  (*Id.* at PageID.5243-5244, p. 57:15–58:9; 60:9–20.)

## B.    Plaintiffs fail to make any argument that the new SORA is so standardless that it invites arbitrary enforcement.

Notably, missing from the record, is anyone who testified that they have been prosecuted for failing to report an old phone number, failing to report a vehicle that they drove one time, or failing to report enrollment in a pottery class through a university extension program.  To be sure, the Legislature could have been more specific in drafting the statute, but that is always true.  There are countless ways to interpret a statute that might suggest it is vague, but that does not equate with being

unconstitutionally vague.  Indeed, mathematical precision is not required.  *See Grayned*,
408 U.S. at 110.

## VI.    The new SORA does not violate the First Amendment.

Plaintiffs allege that the new SORA violates the First Amendment.  Specifically,
they allege that: (1) requiring registrants to report information about themselves
compels speech in support of Michigan's message that registrants are dangerous (EFC
No. 123, PageID.3660); (2) requiring registrants to sign the Explanation of Duties and
the Registry Update Form is compelled speech (*Id.*, PageID.3681–3682); and (3)
reporting email addresses and internet identifiers chills speech and violates right of
association (*Id.*, PageID.3682–3688).  Plaintiffs do not clearly state whether their First
Amendment claims are a facial attack on SORA's reporting requirements or an as-
applied challenge.  Because their brief includes allegations contemplating both,
Defendants will explain why neither prevail.

As an initial matter, this Court should be aware that Plaintiffs apply the wrong
scrutiny to SORA's reporting requirements.  They believe strict scrutiny applies
because Defendants said so in their Motion to Dismiss.  (ECF No. 123,
PageID.3686.)  While Defendants' motion applied strict scrutiny and explained how
the most demanding standard was met, the proper standard is intermediate scrutiny
because the provisions are content neutral.

The new SORA's reporting requirements are content neutral for several
reasons.  On their face, both the statute and the MSP forms make no reference to the

content of speech.  Instead, they require registrants to provide factual information about themselves including their name, where they live, their contact information, names they use to converse with others on the internet, and vehicles they own or operate.  The new SORA does not prevent registrants from expressing their thoughts, ideas, opinions, or beliefs.  Registrants are not required to express their political beliefs or affiliations.  The provisions were enacted without regard to specific content or viewpoint, and they apply equally to all convicted sex offenders.  Thus, the new SORA's reporting requirements are content-neutral.  Therefore, intermediate scrutiny applies.  *See Doe v. Lee,* 518 F. Supp. 3d 1157, 1211 (M.D. Tenn. 2021) (applying intermediate scrutiny to Tennessee's sex offender registration reporting requirements.)

Moreover, other circuits have rejected claims that requiring convicted sex offenders to register and keep current their registration violate the First Amendment right against compelled speech.  *See United States v. Arnold*, 740 F.3d 1032, 1035 (5th Cir. 2014) (Federal SORNA reporting requirements do not require registrants to "affirm a religious, political, or ideological belief [that registrants] disagree with or to be a moving billboard for a governmental ideological message.")  Numerous courts have examined the question of whether reporting information contained within the SORNA is compelled speech and have held that it is not.  *United States v. Doby*, No. 18-CR-40057-HLT, 2019 WL 5825064, at *4 (D. Kan. Nov. 7, 2019) (SORNA's registration requirement satisfied strict scrutiny, meaning it was narrowly tailored to serve a compelling governmental interest); *United States v. Fox*, 286 F. Supp. 3d 1219,

46

1224 (D. Kan. 2018) (SORNA requires convicted sex offenders to disclose information to states who, in turn, publish that information in a database. It does not require sex offenders to declare their status to every person they meet. It does not offend the First Amendment.)

Defendants address Plaintiffs' claims under intermediate scrutiny.

### A.   The new SORA's requirements do not infringe on speech and are narrowly tailored.

Plaintiffs are mistaken when they claim that requiring registrants to report information about themselves compels speech in support of Michigan's message that registrants are dangerous. Indeed, contrary to Plaintiffs' assertions, the Legislature did not pass the new SORA's reporting requirement to force registrants to support a State message that they are dangerous. Rather, the Legislature enacted the new SORA to protect the public from sex offenders who *could be considered* serious menaces or dangerous offenders. Mich. Comp. Laws § 28.721a. The registration requirements are "intended to provide law enforcement and the people of this state with an appropriate, comprehensive, and effective means to monitor those persons who pose such a potential danger." *Id.*

The new SORA's reporting requirements survive intermediate scrutiny. Under the intermediate scrutiny analysis, a content-neutral regulation will be upheld under the First Amendment if it (1) "serve[s] significant government interest;" (2) "[is] narrowly tailored;" and (3) "leave[s] open ample alternative channels for

communication of the information." *Doe v. Lee*, 518 F. Supp. 3d at 1211 (citing *Phelps-Roper v. Strickland*, 539 F.3d 356, 362 (6th Cir. 2008)).

### 1. SORA's reporting requirement serves a significant government interest.

The SORA itself provides proof of the significant government interest, declaring that its intent is to "assist law enforcement officers and the people of this state in preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders." Mich. Comp. Laws § 28.721a. This Court has already found that "Michigan has a compelling interest in protecting minors from violence and sexual abuse," "a robust interest in protecting the individuals, especially children, from online predators," and "a significant interest in investigating and deterring criminal activity." *Doe v. Snyder,* 101 F. Supp. 3d 722, 726 (E.D. Mich. 2015). Michigan's Supreme Court has also determined that SORA serves a compelling state interest by protecting citizens through the identification of persons convicted of specified offenses. *See e.g., People v. Betts,* 968 N.W.2d 497, 512–513 (Mich. 2021). Moreover, federal law "conditions certain federal law enforcement funding on the States' adoption of sex offender registration laws and sets minimum standards for state programs." *Smith*, 538 U.S. at 89. In short, SORA serves a significant public interest.

### 2. SORA's reporting requirements are narrowly tailored to significant government interests.

SORA's reporting requirements are narrowly tailored to significant government interests. Plaintiffs disagree, arguing that SORA's reporting requirements "are mismatched to the state's goals." (ECF No. 123, PageID.3667.) Plaintiffs are mistaken.

Again, SORA itself provides proof of the significant government interest. Michigan's Legislature has declared that requiring registrants to provide factual matters about themselves including their name, where they live, their contact information, names they use to converse with others on the internet, and vehicles they own or operate "better assist[s] law enforcement officers and the people of this state in preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders." Mich. Comp. Laws § 28.721a.

SORA's reporting requirements are narrowly tailored to SORA's goals. Requiring registrants to keep their basic information current and publicly available, helps ensure that law enforcement and private citizens have access to current information about convicted sex offenders. Plaintiffs may be correct that the same information is already available from other sources. Requiring registrants to provide accurate and up-to-date information, which the MSP publishes, is narrowly tailored to SORA's goal because it efficiently and effectively provides all the relevant information

that the people of Michigan need to know to prevent and protect against the potential commission of future criminal sexual acts.

### 3. Signing a form attesting to understanding SORA does not compel speech.

Plaintiffs argue that requiring registrants to sign a form acknowledging an understanding of SORA's requirements is unlawful compelled speech. (ECF No. 123, PageID.3681–3682.)  Plaintiffs are not entitled to relief under that argument because the requirement to sign a form stating that registrants understand the reporting requirements is narrowly tailored to serve a significant state purpose.

SORA protects the public by allowing the general public and state law enforcement officers to monitor offenders convicted of specified offenses.  Mich. Comp. Laws § 28.721.  It does this, in part, by requiring offenders to notify law enforcement when they move.  For the statutory scheme to be effective and the Legislature's intent honored, it is important that registrants understand their responsibilities under the law.

The requirement that the offender sign a form stating that they have been given and understand the requirements emphasizes their importance, both to the offender and to the official explaining them to the offender.  (ECF No. 126-17, PageID.6208.) If the offender does not understand the requirements, they can seek guidance from the notifying official who also signs the form. (*Id.*)  Attesting to understanding registration obligations is also a requirement of federal SORNA. 34 U.S.C.A. §

20919(a)(2).  (The sex offender shall read and sign a form stating that they understand the registration requirement.)

It is worth noting that penalties associated with signing the SORA form are limited to the original registration form.  "The individual shall sign a *registration and notice*."  Mich. Comp. Laws § 28.727(4) (emphasis added).  The statute goes on to explain what is required for registration.  *Id.* at (1)-(2).  "An individual who willfully fails to sign a *registration and notice* as provided in section 7(4) is guilty of a misdemeanor . . ."  Mich. Comp. Laws § 28.729(3) (emphasis added).  While the form is for initial registration, verification, and in-person updates, there is no statutory authority to penalize someone who does not sign a "verification" or "in-person update."

Requiring registrants to verify that they understand what they are reporting does not compel speech in violation of the First Amendment.  The requirement is narrowly tailored to ensure that registrants make efforts to understand and take seriously their ongoing requirements under the law.  This serves a significant state interest in monitoring offenders by ensuring compliance.  Therefore, it survives intermediate scrutiny and does not unlawfully compel speech.

## 4. Reporting usernames survives intermediate scrutiny.

Plaintiffs also allege that SORA's requirement that some registrants report information relating to their internet accounts and activity is invalid under the First Amendment because the requirements substantially interfere with Plaintiffs' access to

51

the internet as a forum for speech and eliminates Plaintiffs' opportunities for anonymous internet speech. (ECF No. 123, PageID.3683–3687.)

A law is unconstitutional under the First Amendment if it operates as an outright ban or impermissibly burdens anonymous online speech. *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 566 (2011). However, "a state may permissibly infringe upon this right when its interest is important enough and the law is appropriately tailored to meet the stated interest." *Doe v. Shurtleff*, 628 F.3d 1217, 1222 (10th Cir. 2010). Courts look at the chilling effect that the law's requirement of identification has on those individuals deciding whether to speak. *Id.* at 1225.

The new SORA does not require registrants to register their information as a pre-condition to speech. Registrants must report their information once, twice, or four times a year depending on their tier classification. Mich. Comp. Laws § 28.725a(3)(a)–(c). During their registration periods, registrants must report new addresses, employers, school enrollment, and name changes to local law enforcement, the sheriff's office, or the MSP no more than three business days after the event occurs. *See* Mich. Comp. Laws §§ 28.725(1)(a)–(d), 28.727(1)(d).

The new SORA does not in any way limit Plaintiffs' online speech or unmask registrants' anonymity to the public. *See Snyder,* 101 F. Supp. 3d 672, 703. The internet identifier requirements do not infringe upon Plaintiffs' anonymity. As Plaintiffs recognize, the MSP does not disclose internet identifiers to the public. (ECF No. 123, PageID.3683–3687.) This is consistent with federal regulations, which

prohibit the public posting of such information.  *See* 28 U.S.C. §§ 20916(c) and

20920(b)(4); 76 F.R. § 1630, 1637; 86 F.R. §§ 69856, 69858.

Moreover, the Constitution does not provide registrants the right to keep their

registry information private.  *Cutshall v. Sundquist,* 193 F.3d 466, 481 (6th Cir. 1999).

"The privacy interest of sex offenders in keeping their personal information

confidential is not a privacy interest of constitutional dimension."  *Willman v. U.S. Off.*

*of Att'y Gen.,* No. 19-10360, 2019 WL 4809592, at *5 (E.D. Mich. Oct. 1, 2019), *aff'd by*

*Willman v U.S. Off. Of Att'y Gen.,* 972 F.3d 819 (6th Cir. 2020) (noting that the

Constitution does not encompass a general right to nondisclosure of private

information and holding that the plaintiff's right to privacy claim with respect to

SORNA was "not plausible on its face").  While the new SORA does require some

registrants to disclose internet identifiers to law enforcement, this does not

unconstitutionally infringe their right to anonymous speech.  *Shurtleff*, 628 F.3d 1217;

*Doe v. Harris*, 772 F.3d 563 (9th Cir. 2014).

Furthermore, the new SORA does not prevent sex offenders from accessing

the internet in any way.  The new SORA anticipates registered offenders will have

unfettered access to the internet.  Mich. Comp. Laws § 28.725(2)(a).  While some

Plaintiffs may have been under the mistaken impression that they could not use the

internet and others fear they might be subject to harassment or intimidation,

subjective fears are not enough to establish a First Amendment violation.  "[T]o allege

a sufficient injury under the First Amendment, a plaintiff must establish that he or she

53

is regulated, constrained, or compelled directly by the government's actions, instead of by his or her own subjective chill." *ACLU v. Nat'l Sec. Agency*, 493 F.3d 644, 661 (6th Cir. 2007) (citing *Laird v. Tatum*, 408 U.S. 1, 11 (2007)). While SORA requires registrants to report their email addresses and internet identifiers, compliance with SORA is not contingent upon how, when, or why registered offenders use the internet. Registrants can access the internet, they can engage in online speech, and they can participate in online forums just like anyone else, unless they are prohibited from doing so due to probation or parole conditions. Plaintiffs fail to establish that they are regulated, constrained, or compelled directly by the government's actions; thus, Plaintiffs are not entitled to summary judgment.

### 5. The new SORA does not hinder the ability to associate.

Plaintiffs also allege that the new SORA's reporting requirements violate registrants' ability to associate. (ECF No. 123, PageID.3667.) Plaintiffs are wrong as a matter of fact and law.

Registration requirements are a collateral consequence to a criminal conviction. *Leslie v. Randle*, 296 F.3d 518, 521–22 (6th Cir. 2002); *Bailey v. Wainwright*, 951 F.3d 343, 346 (6th Cir. 2020). "Although the public availability of the information may have a lasting and painful impact on the convicted sex offender, these consequences flow not from the Act's registration and dissemination provisions, but from the fact of conviction, already a matter of public record." *Littlefield v. Slatery*, No. 3:19-CV-00490, 2020 WL 263585, at *3 (M.D. Tenn. Jan. 17, 2020). (ECF No. 30-4,

PageID.1300–1304.)  While "stigmas may be difficult to live with", "they have not been held to pose constitutional problems."  *See Doe v. Lee*, No. 3:210CV-00028, 2021 U.S. Dist. LEXIS 90631 (M.D. Tenn. May 12, 2021) ("[E]ven if Doe had never been made subject to the Act, he would likely face social stigma based on his rape convictions and his lengthy period of incarceration.").  "[T]here is simply no ground for concluding, under current caselaw, that an accurate government record that reflects poorly on a person, in and of itself, gives rise to a plausible association-based claim."  *Doe v. Lee,* 2021 U.S. Dist. LEXIS 90631, *54.

Protecting the public from sexual offenders is important in Michigan.  A legislative scheme that requires convicted sex offenders to provide complete and accurate information furthers that goal by making sure both law enforcement and private citizens have access to information about sex offenders.  Access to this information could prevent parents from entrusting a sex offender with their child. The registry could prevent an individual from going on a date with a repeat offender. The registry also provides comfort to victims of sexual assault, knowing their assailants will struggle to make the same connections they did with other potential victims.  Because the new SORA's registration requirements as applied to Plaintiffs satisfy intermediate scrutiny, Plaintiffs are not entitled to summary judgment on their free-speech claims.

**B.      The new SORA does not violate the First Amendment.**

Plaintiffs hint at a facial challenge to the new SORA's reporting requirements,

contending that the new SORA's reporting requirements violate the First Amendment

because the reporting requirements are overbroad and vague, and as a result, chills

Plaintiffs' exercise of their First Amendment rights.  (ECF No. 123, PageID.3685.)  If

Plaintiffs intend to make a First Amendment facial challenge, they have the burden to

establish that the new SORA's reporting requirements are substantially overbroad.

The Sixth Circuit has explained that "if a challenged law does not reach a substantial

amount of constitutionally protected conduct, then the overbreadth challenge must

fail. *Willman v U.S. Off. Of Att'y Gen* 972 F.3d at 826 (quoting Speet v. Schuette, 726

F.3d 867, 872–73 (6th Cir. 2013).

Plaintiffs fall short on their burden because they have not shown that the

statutory text requiring sex offenders to report their information, and the associated

punishment for their failure to report, is protected by the First Amendment.  *See Doe*

*v. Lee*, 518 F. Supp. 3d at 1210 (recognizing that in the case of a facial challenge, the

burden falls on Plaintiff not on the state officials).  In short, Plaintiffs' First

Amendment overbreadth challenge is defective and should be denied.

The new SORA's reporting requirements are constitutional on their face.  They

are not overbroad nor vague.  Instead, the requirements are narrowly tailored to serve

a legitimate government interest.  Because the new SORA's registration requirements

satisfy intermediate scrutiny, Plaintiffs are not entitled to summary judgment on

Plaintiffs' First Amendment free-speech claims.

## VII. Registration requirements for out-of-state offenses do not violate the Constitution.

Plaintiffs argue that the new SORA violates Ms. Doe's, Mr. Doe G's, and

members of the non-Michigan offense sub-class's right to procedural Due Process in

violation of the Fourteenth Amendment to the United States Constitution.  (ECF No.

108, PageID.2978–2979; ECF No. 123, PageID.3688–3689.)  Plaintiffs argue that Ms.

Doe, Mr. Doe, and members of the non-Michigan offense sub-class were given no

pre-deprivation notice, no meaningful post-deprivation notice, and no opportunity to

be heard after it was determined that they were subject to sex offender registration in

Michigan.  (ECF No. 108, PageID.2978; ECF No. 123, PageID.3687.)

Plaintiffs also argue that the classification process for out-of-state individuals

violates the right to travel under the Due Process Clause and Equal Protection Clause

of the Fourteenth Amendment, under Article IV, § 2 of the Constitution, and under

the Privileges and Immunities Clause of the Fourteenth Amendment.  (ECF No. 108,

PageID.2979 ¶¶ 837, 839; ECF No. 123, PageID.3690–92.)  Defendants will address

each argument in turn.

### A. The registration requirements do not violate procedural due process.

Plaintiffs allege a procedural due process claim under Count XI of their first

amended complaint.  (ECF No. 108, PageID.2978.)  Plaintiffs alleged in their

complaint that "Defendants' failure to provide pre-deprivation notice, meaningful post-deprivation notice, or any opportunity to be heard violates Ms. Doe's, Mr. Doe G's, and the non-Michigan offense subclass' right to procedural due process." (*Id.,* PageID.2943–2944.)  However, registrants—regardless of whether they have non-Michigan or Michigan convictions—are not entitled to pre-deprivation notice, meaningful post-deprivation notice, or an opportunity to be heard because the new SORA does not interfere with a registrant's liberty or property interest.  Therefore, Defendants are entitled to summary judgment.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319 (1976).  A two-step analysis is used when considering a claim for violation of due process rights: (1) determine "whether a liberty or property interest has been interfered with by the state" and (2) determine "whether the procedure used to deprive Plaintiff of such interest was constitutionally sufficient." *Stephenson v. Cent. Mich. Univ.*, 897 F. Supp. 2d 556, 568 (E.D. Mich. 2012).  Absent state interference with a protected property or liberty interest, Plaintiffs are "entitled to no pre-deprivation process whatsoever." *Cutshall*, 193 F.3d at 478.

### 1.   Plaintiffs cannot show that a liberty or property interest has been interfered with by the state.

Plaintiffs claim that the new SORA imposes the following burdens on registrants: (1) compels speech, (2) ongoing reporting, surveillance, and supervision, (3) limits access to housing, (4) limits access to employment, (5) limits access to education, (5) limits access to travel, (6) limits speech and use of the internet, (7) public stigmatization, (8) subjects individuals to criminal enforcement, and (9) the law is unconstitutionally vague.  (*See* ECF No. 108, PageID.2861–2918.)  Defendants address Plaintiffs' speech-related claims under section VI and their vagueness claim under section V of this brief.

As to Plaintiffs' claim that SORA interferes with their access to employment, the Sixth Circuit considered a similar argument in *Cutshall*, 193 F.3d at 470–80, and concluded that because the Tennessee Sex Offender Registration and Monitoring Act did not infringe on the plaintiff's "ability to seek, obtain, and maintain a job. . . . the Act does not implicate a constitutionally protected liberty or property interest in employment."  Similar to the Tennessee Act, SORA also "does not limit the ability of registrants to seek and obtain any type of employment."  *Id.* at 479.  Thus, SORA does not implicate a constitutionally protected liberty or property interest in employment.

Similarly, SORA does not limit the ability of registrants to travel, to pursue further education, or to obtain housing.  *See* Mich. Comp. Laws § 28.721 *et seq.*

Plaintiffs allege in their first amended complaint that "[r]egistrants must provide advance notice when they intend to travel anywhere for more than seven days." (ECF No. 108, PageID.2888.) But although registrants must provide notice does not mean that they are required to seek permission to travel. *Smith*, 538 U.S. at 101 ("Although registrants must inform the authorities after they change their facial features (such as growing a beard), borrow a car, or seek psychiatric treatment, they are not required to seek permission to do so."). And although Plaintiffs allege that being on the registry makes it more difficult for registrants to get an education and to obtain housing, SORA does not restrict access to either. (*See Id.*, PageID.2874, PageID.2886.) Therefore, SORA does not implicate a constitutionally protected liberty or property interest in travel, education, or housing.

Furthermore, as to Plaintiffs' claims that SORA subjects them to ongoing reporting, surveillance, supervision, and criminal enforcement, such requirements are necessary to make a valid regulatory program effective. *See Smith*, 538 U.S. at 102 ("It suffices to say the registration requirements make a valid regulatory program effective and do not impose punitive restraints in violation of the *Ex Post Facto* Clause."). Moreover, criminal enforcement of an alleged SORA violation is subject to the same procedural safeguards as any other criminal proceeding. And to the extent that Plaintiffs attempt to cast their claim as an interference with their right to privacy, the Sixth Circuit has already concluded that registrants have "no constitutional right to keep [their] registry information from being disclosed." *Cutshall*, 193 F.3d at 481; *see*

*also Smith*, 538 U.S. at 99 ("The purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender. Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation."). Thus, SORA does not implicate a constitutionally protected liberty or property interest in Plaintiffs' right to privacy or to be free from ongoing reporting, surveillance, supervision, and criminal enforcement.

Lastly, Plaintiffs allege that SORA subjects registrants to public stigmatization. However, the Court has clarified that reputation alone does not constitute a protected liberty interest. *See Paul v. Davis*, 424 U.S. 693, 701–02, 711–12; *see also Cutshall*, 193 F.3d at 479. Rather, "[o]nly where the stigma of damage to a reputation is coupled with another interest, such as employment, is procedural due process protection triggered." *Id.* Yet, as explained above, Plaintiffs' do not have a cognizable liberty or property interest to couple with their alleged damage to reputation. Moreover, damage to a registrant's reputation by being required to register under the new SORA is not a result of the registration requirements, but, instead, is a result of the registrant's conviction.

Because Plaintiffs cannot show that the new SORA interferes with a liberty or property interest by requiring individuals with out-of-state convictions to register, and there is no dispute as to any material fact, Defendants are entitled to summary judgment on Plaintiffs' due process claim under Count XI.

**2.     Even if this Court concludes that the new SORA interferes with a registrant's liberty or property interest, Plaintiffs cannot demonstrate that the procedure used to deprive registrants of such interest was constitutionally insufficient.**

Even if this Court concludes that SORA deprives Plaintiffs of a liberty interest under the Fourteenth Amendment, Plaintiffs still must succeed on the second step of the due process analysis—demonstrating that the procedure used to deprive Plaintiffs of such interest was constitutionally insufficient. *See Stephenson*, 897 F. Supp. 2d at 568. But as a matter of law, Plaintiffs cannot succeed on this issue.

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334 (quotation marks and citation omitted; alteration in original). "When an individual is convicted of a sex offense, no further process is due before imposing sex offender conditions." *Meza v. Livingston*, 607 F.3d 392, 401 (5th Cir. 2010); *see also Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7–8 (2003). Indeed, an "individual 'convicted of a sex crime in a prior adversarial setting, whether as the result of a bench trial, jury trial, or plea agreement, has received the minimum protections required by due process.'" *Meza*, 607 F.3d at 401 (quoting *Neal v. Shimoda*, 131 F.3d 818, 831 (9th Cir. 1997)). In contrast, an individual who has never been convicted of a sex crime, and who has neither stipulated nor judicially admitted to such facts of an offense is owed procedural due process before sex offender conditions may attach. *Meza*, 607 F.3d at 401–02.

Similar to the court's holding in *Meza*, other courts have also held that different levels of due process are required when imposing sex offender classifications or mandatory sex-offender treatment on individuals convicted of a sex crime versus individuals who are not convicted of a sex crime.  *See Catanzaro v. Harry*, 848 F. Supp. 2d 780, 796 (W.D. Mich. 2012) ("Defendants' decision to require Plaintiff to complete a sex-offender treatment program as a condition for parole did not violate the Due Process Clause because *Plaintiff is a convicted sex offender.*"); *Neal*, 131 F.3d at 831 (holding that an inmate required to participate in a treatment program as a condition for parole "has received the minimum protections required by due process" where he "has been convicted of a sex crime in a prior adversarial setting"); *Kirby*, 194 F.3d at 1292 ("An inmate who has never been convicted of a sex crime is entitled to due process before the state declares him to be a sex offender."); *Coleman v. Dretke*, 395 F.3d 216, 222 (5th Cir. 2004) ("[T]he Ninth and Eleventh Circuits have held that prisoners who have not been convicted of a sex offense have a liberty interest created by the Due Process Clause in freedom from sex offender classification and conditions.  We agree.").

Here, Plaintiffs present no facts that an individual with an out-of-state offense has been subjected to registration under SORA without having already been convicted of a sex offense in another state.  (*See* ECF No. 108, PageID.2978–2980.) Accordingly, Plaintiffs fail to present a situation that demands additional procedural protections before being subject to registration requirements under SORA.  *See*

*Mathews*, 424 U.S. at 334. Furthermore, registrants under SORA have processes by which they can challenge their registration requirement. *See* Mich. Const. of 1963, art. VI, § 28 ("All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law."); Mich. Comp. Laws § 600.4401 (providing for an action for mandamus against a state officer). Because there is no genuine dispute as to any material fact, Defendants are entitled to summary judgment.

> **B.      SORA does not differentiate between residents of Michigan based on the timing of their migration.**

Plaintiffs appear to claim a violation of their right to travel under the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment, under Article IV, § 2 of the Constitution, and under the Privileges and Immunities Clause of the Fourteenth Amendment. (ECF No. 108, PageID.2979 ¶¶ 837, 839; ECF No. 123, PageID.3690–92.)

In *Saenz v. Roe*, 526 U.S. 489, 500 (1999), the Court focused "on the source of the constitutional right" to travel. The Court stated:

> The "right to travel" . . . embraces at least three different components.
> It protects the right of a citizen of one State to enter and to leave
> another State, the right to be treated as a welcome visitor rather than an
> unfriendly alien when temporarily present in the second State, and, for
> those travelers who elect to become permanent residents, the right to be
> treated like other citizens of that State. [*Id.*]

Only the third component of the right to travel—the right of travelers who elect to become permanent residents to be treated like other citizens of Michigan—is at issue in this case. (*See* ECF No. 108, PageID.2979, ¶ 839; ECF No. 123, PageID.3690–92.) The third component is protected by the Privileges and Immunities Clauses of the Fourteenth Amendment and Article IV, § 2 of the Constitution. *Saenz*, 526 U.S. at 502–03.

The right to travel is also a fundamental right protected by the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment. *See United States v. Guest*, 383 U.S. 745, 757 (1966) (recognizing the right to travel from one state to another as "fundamental to the concept of our Federal Union"). Equal Protection analysis requires rational basis review of a legislative classification that does not infringe an individual's right to travel. *Att'y Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898, 904 (1986). Alternatively, if a legislative classification infringes an individual's right to travel, "intensified equal protection scrutiny of that law" is triggered. *Id.* Thus, before this Court determines which standard to apply, it must first determine if SORA violates Plaintiffs' constitutional right to travel.

"A state law implicates the right to travel when it *actually* deters such travel, . . . when impeding travel is its primary objective, . . . or when it uses 'any classification which serves to penalize the exercise of that right.' " *Id.* at 903 (emphasis added). Regardless of the manner in which the state law burdens the right to travel, the analysis "is informed by the same guiding principle—the right to migrate

protects residents of a State from being disadvantaged, or from being treated differently, *simply because of the timing of their migration*, from other similarly situated residents." *Id.* at 904 (emphasis added). Indeed, the third component of the right to travel "deals only with discrimination based on *residency*." *Hope v. Comm'r of Ind. Dep't of Corr.*, 9 F. 4th 513, 526 (7th Cir. 2021) (emphasis added).

Here, SORA does not burden the right to travel because it does not differentiate between residents of the state of Michigan simply because of the timing of their migration. Rather, the only *differentiation* that exists is between individuals (Michiganders *and* non-Michiganders) who are convicted of a listed offense outside the state of Michigan and individuals (Michiganders *and* non-Michiganders) who are convicted of a listed offense in the State of Michigan. Indeed, the charts used by the MSP, and cited by Plaintiffs in their statement of facts (ECF No. 123-1, PageID.3876), demonstrate that the MSP differentiate based on whether the *offense* was committed outside of Michigan, not whether the individual is or is not a *resident* of Michigan.

Because SORA does not differentiate between Michigan residents based on the timing of their migration to Michigan, SORA does not violate Plaintiffs' constitutional right to travel. *See Soto-Lopez*, 476 U.S. at 903. Plaintiffs' arguments to the contrary are unconvincing. Plaintiffs argue that under SORA, non-Michiganders are treated more harshly than Michiganders because (1) non-Michiganders "are subject to longer registration terms than people with comparable Michigan offenses if the convicting

state would require longer registration"; (2) "[w]here a Michigan conviction would not result in registration, out-of-staters still must register if the convicting state would require registration"; and (3) "MSP staff use unproven allegations about offense conduct to make registration decisions for people with out-of-state convictions." (ECF No. 123, PageID.3691.)  But as mentioned above, Michiganders *and* non-Michiganders who are convicted of a registrable offense outside the state of Michigan are subject to the same requirements under SORA.

Furthermore, to the extent that Plaintiffs assert that the MSP staff use unproven allegations about offense conduct to determine whether an out-of-state offense is substantially similar to a listed offense, Plaintiffs misconstrue the record. (ECF No. 126-1, PageID.5755.)  However, should this Court disagree, Defendants' briefly address Plaintiffs' argument that "substantial similarity" determinations should only be based on a "categorical approach."  (*See* ECF No. 123, PageID.3691 n.43.)

Under the categorical approach, "courts may 'look only to the statutory definitions'—*i.e.,* the elements—of a defendant's prior offenses, and *not* 'to the particular facts underlying those convictions.' "  *Descamps v. United States*, 570 U.S. 254, 260–61 (2013) (quoting *Taylor v. United States*, 495 U.S. 575 (1990)).  Thus, under the categorical approach, if an out-of-state offender's convicted offense has the same elements as a listed offense under SORA, then the out-of-state offense would be deemed substantially similar to the listed offense under SORA.

While Defendants acknowledge that some courts, including the Sixth Circuit, have applied a "categorical approach" when determining jurisdictional offense comparisons for sex offender registrations under SORNA, that is not the only approach. Instead, some courts have applied a "circumstance specific comparison" or a "modified categorical approach" for the limited purpose of determining a victim's age. *See United States v. White*, 782 F.3d 1118, 1135 (10th Cir. 2015) (stating that "Congress intended courts to apply a categorical approach to sex offender tier classifications designated by reference to a specific federal criminal statute, but to employ a *circumstance-specific comparison* for the limited purpose of determining the victim's age"); *United States v. Berry*, 814 F.3d 192, 197 (4th Cir. 2016) (same); *see also United States v. Barcus*, 892 F.3d 228, 232 (6th Cir. 2018) (applying the categorical approach based on the factual circumstances of the case but not foreclosing the application of the *modified categorical approach* to future cases).

Similarly, the United States Supreme Court has held that the modified categorical approach applies when an individual was convicted of violating a "divisible statute"—a statute that "sets out one or more elements of the offense in the alternative." *Descamps*, 570 U.S. at 257 (stating that "the modified approach merely helps implement the categorical approach" by adding a mechanism to help compare elements of different offenses "when a statute lists multiple, alternative elements, and so effectively creates 'several different . . . crimes'"). Thus, when an out-of-state offender is convicted under a divisible statute of another state, the MSP, when making

68

a substantial similarity determination, may examine " 'the indictment or information and jury instructions,' or, if a guilty plea is at issue, by examining the plea agreement, plea colloquy or 'some comparable judicial record' of the factual basis for the plea." *Nijhawan v. Holder*, 557 U.S. 29, 35 (2009) (quoting *Taylor*, 495 U.S. at 602 and *Shepard v. United States*, 544 U.S. 13, 26 (2005)).  Therefore, the MSP's process of determining whether an out-of-state offense is substantially similar to a listed offense does not violate Plaintiffs' Due Process or Equal Protection rights so long as the MSP's determination is made under the categorical or modified categorical approach.

Lastly, as stated above, SORA does not differentiate between individuals based on the timing of their migration to Michigan.  The cases relied on by Plaintiffs to argue otherwise are factually and legally distinct.  (ECF No. 123, PageID.3690.) Unlike *Doe v. Pa. Bd. of Prob. & Parole*, 513 F.3d 95, 102, 108, 112 (3d Cir. 2008), there is no allegation that SORA's registration requirements for individuals with out-of-state convictions conflict with an Interstate Compact nor does new legislation exist in Michigan that contradicts the current process for reviewing out-of-state convictions. Additionally, unlike the statutory provision at issue in *State v. Dickerson*, 129 P.3d 1263, 1269 (Idaho Ct. App. 2006), SORA does not penalize migration or create fixed, permanent distinctions between sex offenders based solely upon the date when they established residency in Michigan.  And unlike the statutory provisions at issue in *Hendricks v. Jones ex rel. State*, 349 P.3d 531 (Okla. 2013), and *ACLU of N.M. v. City of*

*Albuquerque*, 137 P.3d 1215, 1227 (N.M. Ct. App. 2006), SORA does not treat

Michiganders different from non-Michiganders.

Because SORA does not violate Plaintiffs' constitutional right to travel, rational

basis review applies. *See Soto-Lopez*, 476 U.S. at 904. Plaintiffs bear the burden of

overcoming SORA's "strong presumption of validity" to succeed on their Equal

Protection claim. *See League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 536

(6th Cir. 2007) (recognizing that under rational basis review, "[t]he state has no

obligation to produce evidence sustaining the rationality of the classification"; rather

the "challenger has the burden of negating all possible rational justifications for the

classification"). Plaintiffs' brief fails to make any such argument or provide any

evidence negating all possible rational justifications.

Therefore, Plaintiffs' claim that SORA violates their constitutional right to

travel is not facially plausible; accordingly, they are not entitled to summary judgment

on their Equal Protection or Due Process claims. *See Willman*, 972 F.3d at 825–26

(holding that the plaintiff's right to travel claim was not facially plausible because

"SORNA would treat an incoming sex offender resident no different than an existing

sex offender resident"); *see also Kent v. Dulles*, 357 U.S. 116, 125 (1958).

## VIII. If this Court concludes that any part of the new SORA is unconstitutional, the proper remedy is severance.

"State law governs the question of severability." *Memphis Planned Parenthood, Inc.*

*v. Sundquist*, 175 F.3d 456, 466 (6th Cir. 1999). Under Michigan law, "the general rules

favor severability" because the alternative is "to strike down the entire act as unconstitutional." *Blank v Dep't of Corrections*, 462 Mich. 103, 122–123 (2000) (Kelly, Marilyn, J., lead opinion). The law governing severance is controlled by Michigan's severance statute, which seeks to sustain "the remaining portions or applications of the act which can be given effect without the invalid portions":

> In the construction of the statutes of this state the following rules shall be observed, *unless such construction would be inconsistent with the manifest intent of the legislature*, that is to say:
>
> If any portion of an act or the application thereof to any person or circumstances shall be found to be invalid by a court, *such invalidity shall not affect the remaining portions or applications of the act which can be given effect without the invalid portion or application*, provided such remaining portions are not determined by the court to be inoperable, and to this end acts are declared to be severable. [Mich. Comp. Laws § 8.5 (emphasis added).]

The language here requiring severing unconstitutional applications is in accord with the Legislature's "manifest intent."

This severance analysis comprises a two-step process. *Id.* at 123. First, the Court examines whether the statutory provision ruled unconstitutional is "independent of the remainder" of the Act. *Id.* (citing *Maki v. East Tawas*, 385 Mich. 151, 159 (1971)). Second, the remainder of the Act must be "otherwise complete in itself and capable of being carried out without reference" to the unconstitutional sections. *Id.* at 123 (citing *Maki*, 385 Mich at 159). The question is whether the operable provisions may be "[dis]entangled" from the unconstitutional ones.

71

At the heart of this analysis is whether the remaining applicable parts of the Act "enables the Legislature to realize its stated objectives." *In re Request for Advisory Opinion Re Constitutionality of 2011 PA 38*, 490 Mich. 295, 346 (2011). The issue is whether it is clear that "the Legislature would have passed the statute had it been aware that portions therein would be declared to be invalid and, consequently, excised from the act." *Id.* at 346 (citing *Pletz v Sec'y of State*, 125 Mich. App 335, 375 (1983)); *see also Eastwood Park Amusement Co. v. East Detroit Mayor*, 325 Mich. 60, 72 (1949) ("It is the law of this State that if invalid or unconstitutional language can be deleted from an ordinance and still leave it complete and operative then such remainder of the ordinance be permitted to stand."). The Michigan Supreme Court has recently relied on Mich. Comp. Law § 8.5 to give effect to Michigan law. *See, e.g., People v. Posey*, _____ Mich. ___ (2023) (Docket No. 162373); *People v. Lockridge*, 498 Mich. 358 (2015).

In 2021, the Legislature's purpose in revising Michigan's SORA was unambiguous, seeking to ensure that Michigan's law did not violate the Ex Post Facto, *see* Ex. R, Legislative Analysis of HB 5679, pp 7–8, confident that matching Michigan's SORA to SORNA would shield it from challenges such as this one. *See, e.g., Willman*, 972 F3d at 824–25 (rejecting Ex Post Facto and Eighth Amendment challenges to federal SORNA on facial grounds). In fact, the *Willman* decision was released in August 2020, giving a full blessing to the federal SORNA. And the proposed federal regulations were published on August 13, 2020, see 85 Fed Reg 49332 (2020), which, when adopted, created minor substantive differences between

72

the new Michigan SORA and the federal SORNA. Although there were expansions of SORNA in 2022, they were not considered by the Sixth Circuit in *Willman*.

In other words, the very design of the legislative revision from 2021 was to provide a constitutionally valid law, one that would not constitute punishment or violate registrants' constitutional rights. It is also clear that the state of the law when the Legislature enacted this version demonstrated the constitutional validity of federal SORNA. Thus, the question is whether the Legislature would prefer to limit any applications that differ from SORNA or that this Court finds unconstitutional or let the entire Act fall, leaving no registry at all. The answer is clear, severance is necessary should this Court find any part of the new SORA unconstitutional.

## IX.  The statute of limitations and mootness due to SORNA.

Consistent with Fed. R. Civ. P. 10(c), Defendants adopt by reference the arguments previously made regarding the statute of limitations and mootness. (ECF No. 41, PageID.1373–1379.)

In short, with respect to the statute of limitations, Plaintiffs are complaining about harms that stem from statutory changes that occurred well over a decade ago and have been repeatedly litigated over. The time for registrants to challenge the extension of their registration periods, or violations of plea agreements, has long since passed, and is not proper relief for class wide relief.

With respect to the mootness argument, even if the Michigan SORA is struck down, federal SORNA is still in effect and would require registration. As a result,

there is no live controversy.

**CONCLUSION AND RELIEF REQUESTED**

Defendants respectfully request that this Court deny Plaintiffs' motion for summary judgment for the reasons stated above.

Respectfully submitted,

*/s/ Eric M. Jamison*
Assistant Attorney General
Attorney for Whitmer and Gasper
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
jamisone@michigan.gov
P75721

Dated:  November 21, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on [Date] , I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

*/s/ Eric M. Jamison*
Assistant Attorney General
Attorney for Whitmer and Gasper
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
jamisone@michigan.gov
P75721

# LOCAL RULE CERTIFICATION

I, Eric M. Jamison, certify that this document complies with Local Rule 5.1(a), including double-spaced (except for quoted material and footnotes): at least one-inch margin on top, sides, and bottoms; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 points (for proportional fonts).  I also certify that it is the appropriate length.  Local Rule 7.1(d)(3).

*/s/ Eric M. Jamison*
Assistant Attorney General
Attorney for Whitmer and Gasper
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
jamisone@michigan.gov
P75721

2022-0341402-A