UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

JOHN DOES, et al.,
                Plaintiffs,

v.

GRETCHEN WHITMER, et al.,
                Defendants.

No. 2:22-cv-10209

Hon. Mark A. Goldsmith

Mag. J. Curtis Ivy, Jr.

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR
SUMMARY JUDGMENT AND RESPONSE BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

I.      Defendants Fail to Rebut Plaintiffs' Facts.................................1

II.     SORA 2021 Violates the Ex Post Facto Clause. ...........................5

        A.      *Does I*, Not *Willman*, Is Controlling. ....................................5

        B.      Defendants' Cases Are Unpersuasive. ...................................8

        C.      Applying the *Mendoza-Martinez* Factors to the Record Here
                Shows that SORA 2021 Is Punishment...............................10

III.    Retroactively Imposing Lifetime Registration Violates the
        Constitution's Ex Post Facto and Due Process Clauses...............12

IV.     SORA 2021 Violates Equal Protection and Due Process By Imposing
        Lengthy and Lifetime Registration with No Consideration of Risk. ...........14

V.      Denying Similarly Situated Registrants the Opportunity to Petition for
        Removal from the Registry Violates the Equal Protection Clause. .............16

VI.     SORA 2021's Compelled Disclosures Violate the First Amendment. .........16

VII.    Retroactively Altering Plea Agreements Violates Due Process...................18

VIII.   The Non-Sex Offense Claim Is Not Moot......................................19

IX.     SORA 2021 Is Unconstitutionally Vague. ...................................22

X.      SORA 2021 Violates the First Amendment By Compelling
        Registrants to Say They Understand the Law. .............................24

XI.     The Internet Reporting Requirements Violate the First Amendment. .........25

XII.    The Classification Process for Out-of-Staters Is Unconstitutional. .............26

        A.      Procedural Protections Apply to Substantial Similarity
                Determinations. ....................................................................26

        B.      Out-of-State Convictions Are, In Practice, a Proxy for Non-
                Residents. ............................................................................26

XIII.   The Statute-of-Limitations and Mootness Defenses Are Meritless. .............27

XIV.   The Court Should Exclude or Disregard Some of Defendants'
  Evidence...................................................................................................28

  A. Defendants' Expert Evidence Does Not Meet Rule 702
    Standards. ...................................................................................28

  B. Defendants' Lay Witnesses Improperly Offer Opinion
    Testimony....................................................................................33

  C. The Affidavits of Sharon Jegla Are Inadmissible..............................35

CONCLUSION ........................................................................................................35

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Kellogg USA, Inc.*, 674 F. App'x 496 (6th Cir. 2017)........................35

*Arlington Cnty Republican Comm. v. Arlington Co., Va.*, 983 F.2d 587 (4th Cir. 1993)................................................................................................25

*Baker v. Chevron U.S.A. Inc.*, 533 F. App'x 509 (6th Cir. 2013) ................... 31, 32

*Bannum, Inc. v. City of Louisville*, 958 F.2d 1354 (6th Cir. 1992) ........................15

*Barry v. Lyon*, 834 F.3d 706 (6th Cir. 2016) ..............................................22

*Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994)..............................28

*Brown v. Montoya*, 662 F. 3d 1152 (10th Cir. 2011)..............................26

*Citizens United v. FEC*, 558 U.S. 310 (2010)..........................................17

*Commonwealth v. Muniz*, 164 A.3d 1189, 1212 (Pa. 2017), *abrogated on other grounds by Commonwealth v. Santana*, 266 A.3d 528 (Pa. 2021) ....................................................................................................10

*Commonwealth v. Torsilieri*, 232 A.3d 567 (Pa. 2020)..........................3, 4

*Commonwealth v. Torsilieri*, No. 15-CR-1570 (Ct. Com. Pl., Aug. 22, 2022) .................................................................................................4

*Connection Distrib. Co. v. Holder*, 557 F.3d 321 (6th Cir. 2009)..........................16

*Cornelio v. Connecticut*, 32 F.4th 160 (2d Cir. 2022)..................................... 17, 25

*Crocker v. Comm'r of Soc. Sec.*, No. 08-cv-1091, 2010 WL 882831 (W.D. Mich. Mar. 9, 2010) ................................................................27

*Cummings v. Missouri*, 71 U.S. (4 Wall) 277 (1867) ..............................27

*Doe v. Dep't of Pub. Safety and Corr. Servs.*, 62 A.3d 123 (Md. 2013)............8, 10

*Doe v. Harris*, 772 F.3d 563 (9th Cir. 2014) ........................................23

*Doe v. Pa. Bd. of Prob. & Parole*, 513 F.3d 95 (3d Cir. 2008)..............................27

*Doe v. State*, 111 A.3d 1077 (N.H. 2015)..........................................8, 10

*Doe v. State*, 189 P.3d 999 (Alaska 2008) ........................................10

*Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016), cert. denied, 138 S. Ct. 55 (2017) ................................................................................... passim

*Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998) ...................................13

*Edenfeld v. Fane*, 507 U.S. 761 (1993) ...................................................16

*Frontiero v. Richardson*, 411 U.S. 677 (1973)........................................17

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) .......................................31

*Gundy v. United States*, 139 S. Ct. 2116 (2019).....................................15

*Gwinn v. Awmiller,* 354 F.3d 1211 (10th Cir. 2004) ................................26

*Harris v. J.B. Robinson Jewelers*, 627 F.3d 235 (6th Cir. 2010) ............33

*Hendricks v. Jones x rel. State ex rel. Oklahoma Dep't of Corr.*, 349 P.3d 531, 535 (Okla. 2013)..................................................................27

*Hoffman v. Vill. of Pleasant Prairie*, 249 F. Supp. 3d 951 (E.D. Wis. 2017) .....................................................................................................10

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008) ............28

*Kirby v. Siegelman*, 195 F.3d 1285 (11th Cir. 1999)...............................26

*Los Angeles County v. Davis*, 440 U.S. 625 (1979) .................................20

*McPherson v. Kelsey*, 125 F.3d 989 (6th Cir. 1997) ...............................27

*Miller v. Caudill*, 936 F.3d 442 (6th Cir. 2019).......................................6

*Nova Recs., Inc. v. Sendak*, 706 F.2d 782 (7th Cir. 1983).......................23

*Padilla v. Kentucky*, 559 U.S. 356 (2010) ..............................................19

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1,* 551 U.S. 701 (2007) ..........................................................................................21

*Paul v. Davis,* 424 U.S. 693 (1976) ........................................................26

*People v. Betts*, 968 N.W.2d 497 (Mich. 2021).................................. 7, 8, 10, 11, 35

*People v. Blackmun*, No. 310280, 2013 WL 514365 (Mich. Ct. App. Feb. 12, 2013) ......................................................................................24

*People v. Chesebro*, No. 301807, 2012 WL 2814106 (Mich. Ct. App. July 10, 2012) .....................................................................................23

*People v. Collins*, No. 328853, 2016 WL 7427153 (Mich. Ct. App. Dec. 20, 2016) .................................................................................23

*People v. Lockett*, 659 N.W.2d 681 (Mich. Ct. App. 2002) ...................................23

*People v. Lymon*, 993 N.W.2d 24 (Mich. Ct. App. 2022) ......................................19

*People v. Quinn*, No. 323731, 2015 WL 7288036 (Mich. Ct. App. Nov. 17, 2015) ......................................................................... 24, 25

*People v. Ward*, No. 343797, 2019 WL 3312538 (Mich. Ct. App. July 23, 2019) ......................................................................... 24, 25

*Pride v. BIC Corp.*, 218 F.3d 566 (6th Cir. 2000) ...................................................28

*R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262 (6th Cir. 2010)..............32

*Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781 (1988).................................................................................17

*Rose v. Bauman*, No. 2:17-cv-10836, 2018 WL 534490 (E.D. Mich. Jan. 24, 2018) ...............................................................................19

*Shaw v. Patton*, 823 F.3d 556 (10th Cir. 2016) .......................................................9

*Smith v. Doe*, 538 U.S. 84 (2003) ............................................................................9

*Speech First, Inc. v. Schlissel*, 939 F.3d 756 (6th Cir. 2019) ................................21

*Starkey v. Okla. Dep't of Corr.*, 305 P.3d 1004 (Okla. 2013) ................................10

*State v. Hinman*, 530 P.3d 1271 (Mont. 2023) ........................................................8

*State v. Letalien*, 985 A.2d 4 (Me. 2009).................................................................8

*Tashjian v. Republican Party of Connecticut*, 479 U.S. 208 (1986) ......................17

*United States v. Darji*, 609 F. App'x 320 (6th Cir. 2015) .......................................33

*United States v. Felts*, 674 F.3d 599 (6th Cir. 2012) ...................................... 8, 9, 11

*United States v. Freeman*, 730 F.3d 590 (6th Cir. 2013)........................... 33, 34, 35

*United States v. Juv. Male*, 590 F.3d 924 (9th Cir. 2010), *judgment vacated as moot*, 564 U.S. 932 (2011) ................................................7

*United States v. Parks*, 698 F.3d 1 (1st Cir. 2012) ................................................9

*United States v. Randolph*, 230 F.3d 243 (6th Cir. 2000) ......................................18

*United States v. Skidmore*, 998 F.2d 372 (6th Cir. 1993)........................................18

*United States v. Under Seal*, 709 F.3d 257 (4th Cir. 2013) ......................................9

*United States v. W. T. Grant Co.*, 345 U.S. 629 (1953)..............................................20

*United States v. W.B.H.*, 664 F.3d 848 (11th Cir. 2011) ...........................................9

*United States v. White*, 920 F.3d 1109 (6th Cir. 2019)..............................................6

*United States v. Young*, 585 F.3d 199 (5th Cir. 2009)................................................9

*Wallace v. State*, 905 N.E.2d 371 (Ind. 2009) ...........................................................8

*Willman v. Attorney General of United States*, 972 F.3d 819 (6th Cir.
    2020) ....................................................................................................................5, 6

**Statutes**

34 U.S.C. § 20927 ......................................................................................................14

M.C.L. § 28.724a .......................................................................................................17

M.C.L. § 28.725 .........................................................................................................17

M.C.L. § 28.727 ................................................................................................... 17, 24

M.C.L. § 28.729 .........................................................................................................24

M.C.L. § 769.1 ...........................................................................................................21

**Rules**

Fed. R. Civ. P. 56 ....................................................................................................1, 36

Fed. R. Evid. 701 .......................................................................................................33

Fed. R. Evid. 702 ........................................................................................... 28, 30, 34

**Other Authorities**

13C Charles Alan Wright & Arthur R. Miller, *Federal Practice and
    Procedure Jurisdiction* § 3533.7 (3d ed. 2023)..................................................21

Ira Mark Ellman & Tara Ellman, *Frightening and High: The Supreme
    Court's Crucial Mistake About Sex Crime Statistics*, 30 Const.
    Comment. 495 (2015) .........................................................................................10

Petition for Certiorari, *Snyder v. Does #1-5*, 583 U.S. 814 (2017) (No.
    16-768)...................................................................................................................6

## INTRODUCTION

Defendants fail to identify material factual disputes that preclude summary judgment for Plaintiffs. Defendants also lump together different claims that turn on different facts and different law.[1] A claim-by-claim analysis shows Plaintiffs prevail.

## I.  Defendants Fail to Rebut Plaintiffs' Facts.

Unwilling to admit Plaintiffs' facts, but unable to rebut them, Defendants protest repeatedly that Plaintiffs' facts are not material, ignoring both Fed. R. Civ. P. 56(c) and this Court's order to either admit facts or cite counter-evidence. ECF No. 121, PageID.3600. Under Rule 56(e), this Court should deem Plaintiffs' facts undisputed, except where Defendants cite relevant, admissible evidence sufficient to create a factual dispute. If the Court denies summary judgment on any count, it should set out the facts not in dispute and treat those as established under Rule 56(g).

Most of the parties' disagreements are not about the facts themselves, but about their interpretation or legal significance. For example, the parties disagree:

- About what message the website conveys, though not what it displays;
- About what the legal relationship is between SORA and SORNA; and
- About whether SORA resembles probation or parole.

The Court can make its own assessment on such questions.

Defendants spill much ink on facts that are undisputed. There is no dispute

---

[1] Defendants adopt their prior filings by reference. Plaintiffs' prior filings address those arguments. Prelim. Inj. Mot., ECF No. 7; Resp. to Mot. to Dismiss, ECF No. 44; Prelim. Inj. Reply, ECF No. 43.

that sexual offending can cause severe harm. And there is no dispute that sexual offenses, while varying greatly in severity, can involve abhorrent conduct.

Defendants fail to rebut, or agree with, almost all the core facts set out in Plaintiffs' opening brief. ECF No. 123, PageID.3622-23. On the extensive harm SORA inflicts, Defendants' principal response is that these facts are not material. But of course they are. The analysis for many of the claims require weighing whether SORA's extensive burdens are excessive in relation to SORA's ostensible purpose.

Defendants introduce *zero* evidence to rebut Plaintiffs' showing that SORA does not reduce recidivism. Defendants' own purported expert agreed that "the research has been pretty consistent that [registries are] not effective." Defs' Resp., ECF No. 129-2, PageID.7302. And SORA is not needed by law enforcement. *Id.*, PageID.7312-7314. Defendants introduced *zero* counter-evidence on that as well.

Defendants' experts agree with, or do not rebut, the core scientific facts about sexual recidivism, including:

- Recidivism rates vary considerably across all people with a history of sexual crime. Risk varies based on well-known factors.
- The average sexual recidivism rate of people with a history of sexual crime is low. Once convicted, most are never reconvicted of a sex offense.
- The nature of the sexual offense conviction (the name of the offense or the criminal code section) is unrelated to the risk of recidivism.
- The risk for sexual recidivism can be reliably predicted by widely used actuarial risk assessment tools, which classify people into relative risk levels.
- The longer people remain in the community without a new sex offense conviction, and the older people get, the less likely they are to recidivate.

- The recidivism risk of many registrants has declined to baseline levels comparable to the general male population.

Hanson Rebuttal, ECF No. 123-8, PageID.4182-4185 (listing areas of agreement).

Unable to rebut the science, Defendants try to muddy the waters by focusing on the undisputed fact that sexual offending is underreported, which is true both for offenses by non-registrants and by registrants. The parties' experts agree that the rate at which offenses by non-registrants and registrants are reported is equivalent (or if anything is higher for registrants). Pls' Facts, ECF No. 123-1, PageID. 3892. This means research based on reported offenses (crime statistics) provides valid comparisons between non-registrants and registrants, even though true offense rates (including unreported offenses) are higher for both groups. *Id.*, PageID. 3893-3895. Underreporting of sexual crime is a serious problem. But it does not affect the science comparing non-registrants and registrants because unreported offending occurs in both groups. For the same reason, underreporting has no bearing on the research establishing that registries don't work. *Id.*, PageID.3739-3741, 3893-3895.

The Pennsylvania Supreme Court addressed exactly this issue: "the relevant question should not be whether convicted sexual offenders are committing unreported sexual crimes, but rather whether sexual offenders commit more sexual crimes than other groups not subject to similar registration laws." *Commonwealth v. Torsilieri*, 232 A.3d 567, 594 n.22 (Pa. 2020). Because the justification for registration—high recidivism rates—had "been debunked," the state was trying to "shift[]

the goalposts" to focus on "the questionable proposition that the unknown could justify onerous registration laws." *Id.* at 606 (Donohue, J., dissenting). On remand, the trial court concluded that "based on the evidence of scientific and academic consensus presented, we find that SORN laws do not have the effect on recidivism and public safety anticipated by the Legislature, and that they are not rationally related to the purposes for which they were enacted." *Commonwealth v. Torsilieri*, No. 15-CR-1570, at 26 (Ct. Com. Pl., Aug. 22, 2022) (Ex. 155).

Defendants also attack the Static-99R, arguing that because it was developed based on official data, it only predicts recidivism, not unreported reoffending. What the Static-99R and similar instruments measure is relative risk. These tools identify which registrants are higher and lower risk, and which are just as safe as the average male in the general population.[2] Comparisons between non-registrants and registrants are not affected by unreported offenses, because statistics for both groups do not include them. Hanson Rebuttal, ECF No. 123-8, PageID.4189-4195.

Defendants also say that the Static-99R is not 100% accurate and cannot be used for all populations. But there is no dispute that other risk assessment tools for other populations are available, or that the Static-99R and similar empirically-based

---

[2] Contrary to Defendants' statements, Hanson's research compares registrants' offense rates both to unregistered people with non-sexual convictions and to average males. Hanson Rept., ECF No 123-7, PageID.4017-4021. The Data Report uses the more conservative comparison to average men. ECF No. 123-6, PageID.3970, 3973.

risk assessment tools are more accurate than the offense of conviction, which bears little or no relationship to risk. Pls' Facts, ECF No. 123-1, PageID.3769-3774.

Finally, Defendants suggest that the relief Plaintiffs seek would require thousands of costly comprehensive assessments. Not so. Actuarial tools are cheap and easy to use, MDOC routinely does risk assessments, and thousands of registrants have already been assessed.[3] Pls' Resp. to Defs' Facts, ¶ 83. While remedy issues will require further briefing, the Court can craft remedies that do not require many (or possibly any) additional new assessments.[4] *See* Prelim. Inj. Reply, ECF No. 43, PageID1458-1464 (discussing potential remedies).

## II. SORA 2021 Violates the Ex Post Facto Clause.

### A. *Does I*, Not *Willman*, Is Controlling.

Defendants ask this Court to ignore both the record and *Does I* (which they tellingly do not list as controlling authority) and instead hold that SORA is automatically constitutional because it resembles SORNA.[5] Apparently recognizing that SORA 2021 cannot survive under *Does I*, Defendants point to *Willman v. Attorney General of United States*, 972 F.3d 819 (6th Cir. 2020). But "the earliest opinion

---

[3] Data Rept., ECF No. 123-6, PageID.3973-3974; *Torsilieri*, at 12-13 (Ex. 155) (risk assessment "is not only possible, but is also actually available to the criminal justice system, and constitutes a reasonable, more effective alternative").

[4] For example, the Court could bar enforcement of SORA against pre-2011 registrants but allow the state to seek continued registration on an individual basis.

[5] Defendants' misunderstanding of SORNA and its relationship to SORA is addressed in Pls' Resp. to Defs' Facts, ¶ 35.

normally controls because one panel can't overturn another's decision." *Miller v. Caudill*, 936 F.3d 442, 447 (6th Cir. 2019). As Defendants note, courts "should follow the case which directly controls." Defs' Br., ECF No. 129, PageID.7130 (quoting *United States v. White*, 920 F.3d 1109, 1115 (6th Cir. 2019)). That is *Does I*.[6]

    *Does I* was about SORA. The thorough opinion analyzed Michigan's law applying the *Mendoza-Martinez* factors based on an extensive record (as here). *Willman*, by contrast, cursorily rejected an ex post facto challenge to SORNA, raised in the plaintiff's kitchen-sink complaint. No record was developed, much less considered, nor did the court address the *Mendoza-Martinez* factors or distinguish *Does I*.

    Defendants argue the Court should nevertheless follow *Willman* rather than *Does I* because SORA 2021 is similar to SORNA. But SORA 2011 was also similar to SORNA.[7] The features of the old law that the Sixth Circuit criticized—the byzantine code of endless requirements, tiering without individual review, in-person and

---

    [6] Defendants' statement that Plaintiffs agreed that SORA 2021 removed the unconstitutional provisions is false and misleading. Pls' Resp. to Defs' Facts, ¶ 36.

    [7] Defendants contradict what they said in their petition for certiorari in *Does I*. There they argued that the case merited review *because* the Sixth Circuit had found SORNA-based parts of SORA to be punitive (i.e., retroactive tier classifications without individual assessment, lifetime registration, and frequent and in-person reporting). Petition for Certiorari at 16-24, 26-29, *Snyder v. Does #1-5*, 583 U.S. 814 (2017) (No. 16-768). Defendants now say *Does I* doesn't apply. But SORA 2021 retains those provisions virtually unchanged. Defendants' argument—that SORA 2021 resembles SORNA—is the same argument they made in their cert petition, though back then it was SORA 2011 that they said resembled SORNA. *Id.* at 16.

6

3-day reporting, lengthy/lifetime registration—were all similar to SORNA. Those features remain in SORA 2021. In short, all three laws have both similarities and differences. SORA 2021 closely resembles SORA 2011, which the Sixth Circuit held to be unconstitutional in a detailed opinion. SORA 2021 also has similarities to SORNA, which that court upheld without discussion. Neither law is an exact match.[8]

The Court's task here is to apply the intents-effects test to the new law based on *the record* and the *world that exists today*. As the Ninth Circuit said in distinguishing *Smith v. Doe*, 538 U.S. 84 (2003), and holding juvenile registration under SORNA to be punitive, "the case before us presents substantially different facts and issues that significantly affect our analysis." *United States v. Juv. Male*, 590 F.3d 924 (9th Cir. 2010), *judgment vacated as moot*, 564 U.S. 932 (2011).

In *Does I* the Sixth Circuit weighed the *Mendoza-Martinez* factors in light of the *record*, which cast "significant doubt" on the factual conclusions underpinning earlier SORNA cases by showing that "offense-based public registration has, at best, no impact on recidivism." 834 F.3d at 704. The *Does I* record also made "painfully evident" that SORA imposed devastating burdens. *Id.* at 705. That evidence of harm,

---

[8] Defendants focus on similarities with SORNA, ignoring differences that make SORA 2021 more onerous. *People v. Betts*, 968 N.W.2d 497, 519 n.27 (Mich. 2021); Pls' Resp. to Defs' Facts, ¶ 35; Pls' Resp. to MTD, ECF No. 44, PageID.1549-1551. And Defendants ignore similarities between the new and old SORA, as well as the fact that SORA 2021 retains the 2011 amendments almost entirely intact. Pls' Facts, ECF No. 123-1, PageID.3734-3739; SORA 2021 Highlighted, ECF No. 123-4.

coupled with the "scant evidence that such restrictions serve the professed purpose of keeping Michigan communities safe," led the Sixth Circuit to conclude that SORA was punishment. *Id.* at 704–05. So too here.

### B. Defendants' Cases Are Unpersuasive.

Defendants do not address *Does I* or *People v. Betts*, 968 N.W.2d 497 (Mich. 2021), the two seminal cases about SORA. And they ignore the many cases Plaintiffs cite holding statutes remarkably similar to SORA 2021 to be punitive.[9] Instead they rely on cases—mostly criminal appeals of specific SORNA provisions, as opposed to global civil challenges of a law's *cumulative* requirements—which are outdated or address an entirely different legal question: whether SORNA is *retroactive*, not whether it is punitive. For example, *United States v. Felts*, 674 F.3d 599, 606 (6th Cir. 2012), held that a two-year sentence was not an ex post facto violation because it did not punish the original sex offense, but punished the new failure to register. (*Willman* relied on *Felts*, without analysis, to say that SORNA is not punishment.

---

[9] *See*, *e.g.*, *State v. Hinman*, 530 P.3d 1271, 1274-77 (Mont. 2023) (punishment where registry was online, registrants reported to law enforcement, and only limited removal options); *State v. Letalien*, 985 A.2d 4, 18-26 (Me. 2009) (punishment where law required in-person reporting, registration retroactively extended to life, and online dissemination without consideration of rehabilitation); *Wallace v. State*, 905 N.E.2d 371, 380 (Ind. 2009) (law punitive where registry was online, updating of changes, annual reporting, long registration terms, and no individual review); *Doe v. State*, 111 A.3d 1077, 1100 (N.H. 2015) (law punitive where tiered online registry, regular verifications, and no individual assessment); *Doe v. Dep't of Pub. Safety and Corr. Servs.*, 62 A.3d 123, 139-42 (Md. 2013) (ex post facto violated by online registry with searchable map and in-person verification).

But *Felts* did not decide whether SORNA was punishment, only that the custodial sentence imposed did not retroactively punish the original offense.) Criminal appeals often do not give courts reason to consider whether the burdens imposed by the statutory scheme as a whole, rather than a simple registration requirement, are punitive.

Most importantly, Defendants' cases lack the factual record here. *See United States v. Young*, 585 F.3d 199, 206 (5th Cir. 2009)  (registrant "ma[de] no effort to prove that the effect of SORNA" was punitive); *Shaw v. Patton*, 823 F.3d 556, 564, 573 (10th Cir. 2016) (plaintiff did "not furnish evidence" of punitive effects and did "not present any arguments to rebut the relationship between the reporting requirements and public safety"). The SORNA cases were also almost all decided long ago in a different technological environment and without the benefit of modern scientific evidence. Those cases stem from a time when much less was known about registrants *and* registries. Absent contrary facts, those decisions rested on the same false assumptions as *Smith* (e.g., that recidivism rates were high, registries reduced recidivism, and the internet functions like a paper archive).[10] Although courts cannot be faulted for failing to consider facts never presented, here the record (as in *Does I*) establishes both that the assumptions undergirding the old cases are untrue, and that the evolution of the internet has transformed the consequences of registration.  Pls'

---

[10] *See, e.g.*, *United States v. Parks*, 698 F.3d 1, 5–6 (1st Cir. 2012); *United States v. W.B.H.*, 664 F.3d 848, 855–60 (11th Cir. 2011); *Young*, 585 F.3d at 206; *United States v. Under Seal*, 709 F.3d 257, 265–66 (4th Cir. 2013).

Facts, ECF No. 123-1, PageID.3739-3768, 3774-3785; Socia Rept., ECF No. 123-11, PageID.4335- 4338 (Supreme Court in *Smith* was misled by junk science).[11]

In sum, Defendants' cases rest on inaccurate assumptions that are conclusively disproven by the record here. The more persuasive cases recognize that facts matter, and that the world has changed.[12]

### C. Applying the *Mendoza-Martinez* Factors to the Record Here Shows that SORA 2021 Is Punishment.

<u>**Resemblance to Traditional Forms of Punishment**</u>: *Does I*, 834 F.3d at 703, held that SORA's in-person reporting requirements resemble probation and parole. *See also Betts*, 968 N.W.2d at 509-10. Defendants argue that the Sixth Circuit got it wrong because probation/parole can have more severe restrictions. But probation/parole restrictions are *individualized*, which means that restrictions are sometimes severe and sometimes they are not. Defendants' argument that probation and parole

---

[11] As Defendants admit, their cited SORNA cases also predate recent regulations that impose more extensive reporting. Defs' Br., ECF No. 129, PageID.7199-7200.

[12] Courts, especially on developed records, have increasingly held that modern "super registration" laws are punitive. *See Does I*, 834 F.3d at 705 (collecting cases); *Doe v. State*, 111 A.3d 1077, 1095 (N.H. 2015) (evidence of substantial housing disadvantages); *Hoffman v. Vill. of Pleasant Prairie*, 249 F. Supp. 3d 951, 960 (E.D. Wis. 2017) (balance of the *Mendoza-Martinez* factors depends on "objective evidence," and "conjecture about the dangers posed" by registrants is insufficient); *Starkey v. Okla. Dep't of Corr.*, 305 P.3d 1004, 1030 (Okla. 2013) (substantial evidence of excessiveness); *Doe v. Dep't of Pub. Safety and Corr. Servs.*, 62 A.3d 123, 142 (Md. 2013) (evidence of cumulative harms); *Doe v. State*, 189 P.3d 999, 1010 (Alaska 2008) (same); *Commonwealth v. Muniz*, 164 A.3d 1189, 1212 (Pa. 2017) (different consequences than in "an earlier technological environment"), *abrogated on other grounds by Commonwealth v. Santana*, 266 A.3d 528 (Pa. 2021).

are permission-based is wrong for the same reason. Some probationers/parolees will have permission-based restrictions. Others will not. Sample Probation Order, ECF No. 128-18 (requiring notice, not permission, for address and employment changes; initial report in person and zoom reporting thereafter). As Exhibit 152 shows, SORA imposes similar restrictions to probation/parole, but is worse because registration lasts for decades/life, restrictions are not individualized, there is no opportunity for early termination or to modify requirements, and sanctions include mandatory (not discretionary) revocation of probation/parole, plus a *new* conviction and prison time.

*Does I* and *Betts* both held that SORA resembles shaming. *Does I*, 834 F.3d at 702–03; *Betts*, 968 N.W.2d at 509-10. Defendants argue that SORA 2021 is different because tier designations are no longer public. But branding *all* registrants as equally dangerous makes the stigma worse.

**Affirmative Disability or Restraint**: Defendants argue that requiring people to report in person, often within three days, and in most cases for the rest of their lives, is not an affirmative restraint. The Sixth Circuit held the opposite: SORA's in-person reporting requirements "are direct restraints on personal conduct" which exceed those in *Smith* "by an order of magnitude."[13] *Does I*, 834 F.3d at 703.

**Traditional Aims of Punishment**: *Does I* held that SORA "advances all the traditional aims of punishment: incapacitation, retribution, and [] deterrence." *Id.* at

---

[13] *Felts* does not contain the language Defendants quote on in-person reporting.

704. Indeed, Defendants' main argument for SORA is retributive: some people commit terrible crimes. Defendants argue (based on inadmissible evidence, *see infra* § XIV) that SORA encourages victims to report. Even if that were true—and it is not, Pls' Resp. to Defs' Facts, ¶¶ 70-71—that is not a traditional aim of punishment.

**Rational Connection to Non-Punitive Purpose**: The record here, like the record in *Does I*, "provides scant support for the proposition that SORA in fact accomplishes its professed goals." *Does I*, 834 F.3d at 704. Defendants do not try to argue that it does. Instead, they say it is rational to require Doe C—who met his now-wife at an over-18 club—to register for life because he slept with her before she was 16. They point to nothing, however, to show that he is a *current* danger to anyone.

**Excessiveness**: Just as in *Does I*, "while the statute's efficacy is at best unclear, its negative effects are plain on the law's face.... [Its] punitive effects ... far exceed even a generous assessment of [its] salutary effects." *Id.* at 705.

## III. Retroactively Imposing Lifetime Registration Violates the Constitution's Ex Post Facto and Due Process Clauses.

In Count II, Plaintiffs challenge retroactive lifetime registration of an estimated 16,700 people on both ex post facto and due process grounds. Data Rept., ECF No. 123-6, PageID.3987. Perhaps recognizing that retroactively extending registration to life is among the most damaging, irrational, and excessive aspects of SORA, Defendants subsume their response on the ex post facto part of the claim into their discussion of Count I. But the *Mendoza-Martinez* factors weigh even more

12

heavily here towards a finding of punishment. SORA's obligations and restraints are more severe when they last not just decades, but until death. And SORA causes acute harm to the elderly. Pls' Facts, ECF No. 123-1, PageID.3829-3830. Retroactive *lifetime* registration is even more irrational because recidivism risk declines over time and with age. Most registrants reach desistance—meaning they are just as safe as the average male—after ten years in the community without a new conviction, and all do by 20 years. *Id.*, PageID.3748-3760. Lifetime registration therefore serves no purpose. Inflicting such severe harm for no public benefit is excessive.

On due process, Defendants fail to address the cases establishing that retroactive legislation is subject to more stringent review than prospective legislation; that a law is suspect if "it imposes severe retroactive liability on a limited class of parties that could not have anticipated the liability," *Eastern Enterprises v. Apfel*, 524 U.S. 498, 528–29 (1998) (plurality); and that due process forbids unduly harsh and oppressive retroactive laws. Pls' Br., ECF No. 123, PageID.3643-48. Instead Defendants point to a district court opinion in *Does I* (which they call a Sixth Circuit decision) rejecting a version of this claim. Defs' Br., ECF No. 129, PageID.7158. The Sixth Circuit decided the old SORA *was* punishment (which indicates it was unconstitutionally harsh and oppressive), and thus did not reach the due process claim. But it stressed that "Plaintiffs' arguments on these other issues are far from frivolous and involve matters of great public importance." *Does I*, 834 F.3d at 706.

13

Defendants offer two reasons for retroactive lifetime registration. First, they suggest a public safety rationale despite having failed to rebut the evidence showing that registries do not promote, and may in fact undermine, public safety. Pls' Facts, ECF No. 123-1, PageID.3739-3748. And even if registries did work, Defendants cannot explain why—given that registrants who get to year 20 without recidivating pose no more risk than average males, *id*., PageID.3748-67—registration needed to be increased beyond 25 years, which was the term for most people before 2011.

Defendants' second rationale is that Michigan must substantially implement SORNA to receive Byrne grant funds.[14] The large majority of states reject SORNA, in part because the implementation costs dwarf any lost federal funds. Pls' Resp. to Defs' Facts, ¶ 35. And of the 18 "substantially compliant" states that receive federal funding, at least 14 deviate from SORNA's retroactivity guidelines. *Id*. ¶ 75. More-over, SORNA specifically provides that the federal government, in determining whether a jurisdiction has substantially complied, must consider judicial rulings holding a state registry statute unconstitutional. 34 U.S.C. § 20927(b).

## IV. SORA 2021 Violates Equal Protection and Due Process By Imposing Lengthy and Lifetime Registration with No Consideration of Risk.

Defendants' argument here boils down to a claim that the legislature can do whatever it wants under rational basis review. Not only do some aspects of SORA

---

[14] They cite *Felts*, but it just describes SORNA; it does not endorse the rationale.

implicate the fundamental right to speak, work, and travel, demanding heightened scrutiny, but because the entire law reflects animus, it is subject to exacting review. *Bannum*, *Inc. v. City of Louisville*, 958 F.2d 1354, 1361 (6th Cir. 1992). "After all, sex offenders are one of the most disfavored groups in our society." *Gundy v. United States*, 139 S. Ct. 2116, 2144 (2019) (Gorsuch, J., dissenting).

SORA does not restrict potentially dangerous *activity* (like barring embezzlers from working in banks). It restricts *people* on the assumption they are dangerous. Medical quarantines are perhaps the closest analogy. It may be rational to quarantine a person with an infectious disease. It may even be rational to impose the quarantine for a buffer period after the person is not infectious. But one cannot treat people as dangerous in perpetuity when they are not. And evolving scientific understanding matters. (Some restrictions upheld early in the pandemic would not be upheld today.)

The record establishes both that SORA fails to promote public safety, and that thousands of registrants are just as safe as the average male. Pls' Facts, ECF No. 123-1, PageID.3739-3767. Defendants argue that the Court should nonetheless rubberstamp the legislature's decision to pass an ineffective law that imposes enormous, unnecessary burdens for zero benefit because there need not be a perfect fit. That is an argument for **a** registry. It's not a justification for **this** registry, which can be explained only by animus. SORA is the equivalent of saying that because someone once had Covid, that person should be subject to a stay-at-home order forever.

## V.   Denying Similarly Situated Registrants the Opportunity to Petition for Removal from the Registry Violates the Equal Protection Clause.

Defendants do not engage with, much less rebut, the cases establishing that disparate treatment based on criminal history can violate equal protection. Their only argument is once again that rational basis review is a rubber stamp.[15] But Defendants cannot explain how it is rational to require children to wait 15 years longer than adults to petition. Or to deny Tier II and III registrants the opportunity to petition when they are lower risk than Tier I registrants. The purpose of the petitioning process is *to allow discretionary judicial removal of rehabilitated people. Children, and people in any tier, can be rehabilitated.*

## VI.   SORA 2021's Compelled Disclosures Violate the First Amendment.

Strict scrutiny applies to compelled speech in support of a government message. Pls' Br., ECF No. 123, PageID.3663. But because the compelled speech under SORA cannot survive any level of scrutiny, the Court need not decide which applies.

"[T]he party seeking to uphold a restriction on … speech carries the burden of justifying it."[16] *Edenfeld v. Fane*, 507 U.S. 761, 770 (1993). To show that a law

---

[15] The claim that 12% of registrants can petition is wrong because it ignores eligibility requirements and waiting periods. Pls' Resp. to Defs' Facts, ¶¶ 90-92.

[16] Hoping the Court will shift the burden, Defendants focus on overbreadth. ECF No. 129, PageID.7183. Overbreadth is the wrong doctrinal framework. This is not a case where someone whose own speech may validly be restricted/compelled is challenging a law based on its unconstitutional effects on others. *See Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335 (6th Cir. 2009) (purpose of overbreadth challenge is "to permit the claimant to strike the law in its entirety based on its application to

advances important interests, "the government must do more than simply posit the existence of the disease sought to be cured," but must "adduce either empirical support or at least sound reasoning" establishing that its measures will alleviate the harm at issue. *Cornelio v. Connecticut*, 32 F.4th 160, 171 (2d Cir. 2022). The state has a strong interest in preventing sex crimes. But it has no evidence that compelling disclosure of vast amounts of information for decades or life advances that interest.[17]

SORA compels disclosures from all registrants, not just from those found to be a danger. As Defendants concede, (ECF No. 39, PageID.1192; ECF No. 129, PageID.7176), registrants are forced to provide information that the government already has or can get in other ways. Pls' Facts, ECF No. 123-1, PageID.3846. SORA requires all periodic verifications to be in person; many three-day updates must also be done in person. M.C.L. §§ 28.724a, 28.725, 28.727. Although the data management system allows for it, Pls' Facts, ECF No. 123-1, PageID.3787-3788, the state

---

other individuals not before the court"). Rather, the class's claim is that SORA unconstitutionally burdens *their* speech. Further, "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." *Citizens United v. FEC*, 558 U.S. 310, 331 (2010).

[17] Defendants also argue that SORA's compelled speech requirements enable Michigan to get SORNA-related grants and efficiently collect registrant information. The costs of SORNA implementation far exceed those grants. Pls' Resp. to Def. Facts, ¶ 35. Moreover, financial considerations and government efficiency cannot justify abridging constitutional rights. *See Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 218 (1986); *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 795 (1988); *Frontiero v. Richardson*, 411 U.S. 677, 690 (1973).

did not create an online reporting option, instead forcing registrants to "interrupt [their] lives with great frequency" to report. *Does I*, 834 F.3d at 705. The fact that police don't bother inputting mail-in updates in a timely manner undercuts any argument that three-day reporting is needed. Pls' Facts, ECF No. 123-1, PageID.3791.

## VII.   Retroactively Altering Plea Agreements Violates Due Process.

Defendants admit that "registration can be a key part of convictions and plea deals." Defs' Resp. to Pls' Facts, ECF No. 129-2, PageID.7463, ¶ 20. But they do not engage with the case law establishing that in enforcing plea agreements courts look at what the parties "reasonably understood to be the terms of the agreement." *United States v. Skidmore*, 998 F.2d 372, 375 (6th Cir. 1993). Instead, Defendants ask the Court to analyze this claim under a completely different framework—rational basis review. But that is not the standard for plea-based claims. Because criminal defendants give up a panoply of constitutional rights and enter into a contract-like agreement with the state, "due process of law necessitates that [the defendant's] reasonable expectation of benefit from the plea agreement be respected." *United States v. Randolph*, 230 F.3d 243, 250 (6th Cir. 2000). Defendants' argument—that the Court should ignore the cases in Plaintiffs' brief because Plaintiffs did not include them in a different brief almost a decade ago[18]—is not persuasive.

---

[18] While Judge Cleland thought the claim should have been brought under the Takings Clause, plea claims are more typically analyzed under the Due Process Clause. *See* Pls' Br., ECF No. 123, PageID.3668-3673. Plaintiffs appealed that issue

Defendants also cite *Rose v. Bauman*, No. 2:17-cv-10836, 2018 WL 534490, *5 (E.D. Mich. Jan. 24, 2018), an unpublished *pro se* habeas case holding that Michigan state courts had not violated clearly established law by denying plea withdrawal. The petitioner had not been advised that his non-sex offense would result in registration. The state court set aside the counts requiring registration but found the plea valid for the other counts. *Id.*, at *3. In effect, the state court did exactly what Plaintiffs seek here. It "eliminated the requirement … to register as a sex offender, leaving Petitioner to face only the consequences of the guilty plea disclosed at the plea hearing." *Id.* at *5. While *Rose* cites unpublished Sixth Circuit cases saying that registration is a collateral consequence that need not be disclosed, that reasoning predates *Padilla v. Kentucky*, 559 U.S. 356, 365 (2010), which held that notice is required if the consequences are significant and "intimately related to the criminal process."

## VIII. The Non-Sex Offense Claim Is Not Moot.

Defendants offer no merits argument on registering non-sex offenders as sex offenders, admitting it is unconstitutional absent procedural protections. Defs' Br., ECF No. 129, PageID.7189. They argue only that MSP's removal of some people with non-sex offenses while awaiting a Michigan Supreme Court decision in *People v. Lymon*, 993 N.W.2d 24 (Mich. Ct. App. 2022), makes the claim moot. It does not.

Defendants bear the burden of demonstrating that discontinuation of a chal-

---

in *Does I*, but the Sixth Circuit decided it was moot. *Does I*, 834 F.3d at 706.

lenged action moots the claim. *United States v. W. T. Grant Co.*, 345 U.S. 629, 632-33 (1953). Voluntary cessation does not moot a claim except where there is "no reasonable expectation that the alleged violation will recur," *id.*, or where "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation," *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979).

Here the MSP temporarily removed some—but not all—non-sex offenders from the registry after the Michigan Court of Appeals held in *Lymon* that their registration is cruel or unusual punishment. It is undisputed that (1) MSP is asking the Michigan Supreme Court to reverse in *Lymon* and will resume registration of those removed if the court does so; (2) everyone with *out-of-state* non-sex-offense convictions remains on the registry; (3) MSP—without providing any notice, opportunity to be heard, or judicial review—kept on the registry some 14 people with Michigan non-sex-offense convictions, based solely on a prosecutor's (not a judge's) unilateral decision that the person should register; (4) MSP temporarily removed about 150 registrants, but told them that **"[t]his is not a determination that you no longer need to register"**; and (5) MSP will put those people *back* on the registry if a prosecutor decides they should register. Pls' Resp. to Defs' Facts, ¶¶ 122-125; Defs' Resp. to Pls' Facts, ECF 129-2, Page ID.7478-7484.

In short, Defendants have not permanently (or even temporarily) discontinued the challenged practice, namely registration of the non-sex offense subclass without

procedural protections, including a judicial determination like that under SORA's "catch-all" provision, M.C.L. § 769.1(13). Dozens of people—including those with out-of-state convictions and those whom prosecutors have blocked from removal—remain on the registry with no notice, no opportunity to be heard, and no judicial decision that their offense was sexual in nature. Those whom MSP *did* remove cannot know whether they must register, because MSP has declined to tell them.

In any event, where the government is defending the legality of its actions and "nowhere suggests that if [the] litigation is resolved in its favor it will not resume" the challenged conduct, it cannot show that "subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1,* 551 U.S. 701, 719 (2007). "Temporary compliance with a decree pending appeal [] clearly should not moot a case." 13C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure Jurisdiction* § 3533.7 (3d ed. 2023). "[T]he degree of solicitude the voluntary cessation enjoys is based on whether the regulatory processes leading to the change involved legislative-like procedures or were ad hoc, discretionary, and easily reversible actions." *Speech First*, *Inc. v. Schlissel*, 939 F.3d 756, 768 (6th Cir. 2019). Here an ad hoc group made the decision to temporarily remove some subclass members, and MSP has made clear that it will put those people back on the registry if it can. Defs' Resp. to Pls' Facts, ECF No.129-2, PageID.7480-7481.

Finally, Defendants argue that class-wide relief is not proper because registration decisions turn on the facts of each case. But that misses the point. The subclass is seeking common relief: a bar on registration absent a judicial determination that their offense was sexual in nature. Subclass members thus share a claim for procedural relief, even if the requested judicial determinations will result in varied outcomes. *See Barry v. Lyon*, 834 F.3d 706, 722 (6th Cir. 2016).

## IX. SORA 2021 Is Unconstitutionally Vague.

Defendants say that if registrants understand the most basic requirements—like reporting their address or phone—the law is clear. But registrants must comply with *all* of SORA. Their confusion about the law means they drastically curtail their lives. When Doe F's fiancé was dying, he would leave her bedside at 1:00 a.m. to race home to the other side of the state because he feared he might be violating the 7-day travel reporting requirements. Doe H stopped using social media because he was unsure what to report. RH 2 missed his parents' funerals because the travel requirements were so confusing. Pls' Facts, ECF No. 123-1, PageID.3820, 3822, 3871. The list goes on. *Id.*, PageID.3851-3874. Defendants try to recast this confusion as about hypotheticals. But it is not hypothetical if you go to prison for three years because you did not understand that you had to report your school email address. *Id.*, PageID.3873 (describing KM).

Defendants ask the Court to ignore the law enforcement survey (even though

Judge Cleland relied on a similar one in *Does I*), arguing that the responding officers might not be familiar with SORA. But the MSP's SOR unit manager, enforcement coordinator, and legal advisor were just as confused, even on common issues like if one must report renting a car. MSP Response Chart, ECF No. 123-5, PageID.3946.

Defendants protest that violations must be "willful." That is unconvincing when the state is trying to get around the willfulness requirement by forcing registrants to attest they understand the law. Even if the state did not compel such admissions, the "willfulness" provision provides little protection. A "scienter requirement cannot eliminate vagueness ... if it is satisfied by an 'intent' to do something that is in itself ambiguous." *Nova Recs., Inc. v. Sendak*, 706 F.2d 782, 789 (7th Cir. 1983). *See Doe v. Harris*, 772 F.3d 563, 579 (9th Cir. 2014) (rejecting argument that scienter requirement sufficed: "we cannot assume that, in subsequent enforcement, ambiguities will be resolved in favor of adequate protection of First Amendment rights").

SORA's "willful" requirement is "extremely murky." *People v. Lockett*, 659 N.W.2d 681, 682 (Mich. Ct. App. 2002). Specific intent is not required, *id.* at 683, and "minimal circumstantial evidence will suffice to establish the defendant's state of mind," *People v. Collins*, No. 328853, 2016 WL 7427153, at *1 (Mich. Ct. App. Dec. 20, 2016). For example, in *People v. Chesebro*, No. 301807, 2012 WL 2814106 (Mich. Ct. App. July 10, 2012), a registrant was convicted of willfully violating SORA even though he relied on police advice about which of multiple homes to

register. The trial court found the defendant guilty despite his "legitimate misunder-standing" of SORA. *Id.* at *2. While Chesebro's conviction was ultimate vacated on appeal, registrants are routinely convicted of willful crimes when their defense was confusion about SORA.[19] The "willfulness" requirement does not protect them.

## X.   SORA 2021 Violates the First Amendment By Compelling Registrants to Say They Understand the Law.

Defendants argue that because the state has an interest in ensuring people understand SORA, the state can compel them to say they understand SORA. If the state wants to increase understanding of the law, it can provide information. (The state could—but doesn't—provide FAQs or written guidance. MSP only provides the Explanation of Duties. Pls' Facts, ECF No. 123-1, PageID.3863-3865.) But the state's interest in informing registrants about SORA does not support forcing people to say—under threat of prosecution—that they understand the information provided.

Defendants interpret M.C.L. §§ 28.727(4) and 28.729(3) as only criminalizing a failure to sign the initial registration form. But registrants must sign the same form and attest to understanding every time they verify or update information. Pls' Facts, ECF No. 123-1, PageID.3865. The form itself says that failure to sign may result in prosecution. Registration Form, ECF No. 126-17, PageID.6206. And prosecutors

---

[19] *See*, *e.g.*, *Lockett*, 659 N.W.2d 681 at 683; *People v. Quinn*, No. 323731, 2015 WL 7288036, at *2 (Mich. Ct. App. Nov. 17, 2015); *People v. Blackmun*, No. 310280, 2013 WL 514365 (Mich. Ct. App. Feb. 12, 2013); *People v. Ward*, No. 343797, 2019 WL 3312538 (Mich. Ct. App. July 23, 2019).

routinely use it—regardless of when signed—to prove SORA violations. Pls' Facts, ECF No. 123-1, PageID.3865; *Quinn*, 2015 WL 7288036, at *2; *Ward*, 2019 WL 3312538, at *2. Regardless, an unconstitutional compulsion to speak does not become constitutional if you only have to do it once.

## XI.   The Internet Reporting Requirements Violate the First Amendment.

Defendants argue that reporting identifiers (used to communicate on the internet) is not a precondition for speech because identifiers can be reported after rather than before one speaks. But that's true only for three days. And it doesn't change the fact that SORA functions like a permit to speak: if you do not register your identifiers with the state, you go to prison. The state can't identify any harm resulting from the fact that pre-2011 registrants need not report IDs, which fatally undercuts its justifications. *Arlington Cnty. Republican Comm. v. Arlington Co., Va.*, 983 F.2d 587, 594 (4th Cir. 1993) (considering lack of problems while preliminary injunction in effect).

Defendants also offer no explanation for why SORA 2021 permits what the old SORA prohibited: the online posting of registrants' identifiers. They instead argue that registrants' IDs cannot become public under federal law. But that assertion—which in any event goes only to anonymity and not to the burden of reporting—is incorrect. Pls' Resp. to Defs' Facts, ¶ 148. Moreover, a "disclosure requirement does not avoid First Amendment scrutiny because the identifiers are disclosed to the government rather than to the general public." *Cornelio*, 32 F.4th at 170.

## XII. The Classification Process for Out-of-Staters Is Unconstitutional.

### A. Procedural Protections Apply to Substantial Similarity Determinations.

Defendants do not attempt to distinguish the multiple cases holding that substantial similarity determinations require procedural due process. Instead, Defendants claim SORA does not even implicate a liberty or property interest, a surprising position given that the Sixth Circuit described the old SORA as punishment (not to mention that SORA imposes fees). Courts routinely recognize a substantial liberty interest in sex offender classification due to its reputational impact coupled with "a governmentally imposed burden that significantly alter[s] [one's] status as a matter of state law." *Gwinn v. Awmiller,* 354 F.3d 1211, 1216 (10th Cir. 2004) (citing *Paul v. Davis,* 424 U.S. 693, 701 (1976)); *Brown v. Montoya*, 662 F. 3d 1152, 1167-68 (10th Cir. 2011); *Kirby v. Siegelman*, 195 F.3d 1285, 1290-92 (11th Cir. 1999).

Defendants also argue that no process is due because out-of-staters got procedural protections when convicted. But the out-of-state criminal proceedings only determined that the person committed a crime, not that it is substantially similar to a Michigan sex offense. There are *zero* procedural protections for that later decision.

### B. Out-of-State Convictions Are, In Practice, a Proxy for Non-Residents.

Defendants argue that SORA differentiates based on conviction location, not residency. But the discriminatory *effect* is the same: most non-Michigan convictions will involve non-residents. "[W]hat cannot be done directly cannot be done indirectly. The Constitution deals with substance, not shadows." *Cummings v. Missouri*, 71

U.S. (4 Wall) 277, 288 (1867). The distinction drawn operates as a proxy for discrimination based on residency. Other courts have framed similar classifications as ones between in-staters and out-of-staters, which underscores that worse treatment of people with out-of-state convictions is effectively discrimination against non-residents. *See*, *e.g.*, *Doe v. Pa. Bd. of Prob. & Parole*, 513 F.3d 95, 109 (3d Cir. 2008). Regardless, the distinction drawn violates equal protection because "classifications based upon where a person was convicted fail even the rational-basis test." *Hendricks v. Jones x rel. State ex rel. Oklahoma Dep't of Corr.*, 349 P.3d 531, 535 (Okla. 2013). There is no justification for treating people with out-of-state convictions worse.

Finally, Defendants argue that the modified categorical approach can be used. Even assuming that is true, the MSP is not just looking at police reports to find victim age or compare "divisible" crimes. It is using them to decide whether an offense was a sexual crime in the first place. Pls' Facts, ECF No. 123-1, PageID.3883-3884.

## XIII. The Statute-of-Limitations and Mootness Defenses Are Meritless.

Because Defendants address their statute-of-limitations and mootness arguments "in a perfunctory manner, unaccompanied by some effort at developed argumentation," they should be deemed waived. *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997). *See also Crocker v. Comm'r of Soc. Sec.*, No. 08-cv-1091, 2010 WL 882831, at *6 (W.D. Mich. Mar. 9, 2010). To the extent the Court nevertheless believes these defenses preserved, they are meritless. *See* Pls' Resp. to Defs' Mot.

to Dismiss, ECF No. 44, PageID.1585-1595.

## XIV. The Court Should Exclude or Disregard Some of Defendants' Evidence.

### A. Defendants' Expert Evidence Does Not Meet Rule 702 Standards.

Fed. R. Evid. 702 was just amended to stress that parties must prove that "it is more likely than not" that expert testimony is admissible and does not go beyond the expert's area of expertise. *Id.*, Advis. Comm. Notes 2023. Expert testimony must not only be reliable and based on scientific, technical, or other specialized knowledge. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008). It must also "'fit' the facts of the case, that is, there must be a connection between the scientific research … and the disputed factual issues." *Pride v. BIC Corp.*, 218 F.3d 566, 577-78 (6th Cir. 2000). The "key question is not the expert's general qualifications in some field," but if those qualifications are "relevant to the task at hand." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994) (citations omitted).

The basic problem with all four of Defendants' experts is a lack of "fit." This case is about sex offender registration. None of Defendants' proposed experts are experts on registration. Pls' Resp. to Defs' Facts, ¶¶ C, H, I, M. Two are psychologists who primarily do clinical assessments in sexually violent predator (SVP) commitment proceedings and criminal cases. The people they see—many of whom have psychopathic personality disorders—are not representative of registrants. *Id.*, ¶¶ C, H. The other two proposed experts are social scientists who studied sexual assault

28

kits (SAKs). *Id.*, ¶¶ I, M. That research "isn't about people on registries." Lovell

Dep., ECF 125-16, PageID.5407.

The core *factual* questions in this case are:

- Do all people convicted of a registrable sex offense present a higher risk of committing a new sex offense than people who have not been convicted of a sex offense, and how long does any heightened risk last?
- Are sex offender registries effective in reducing sexual offending by people convicted of past sex offenses?

Defendants' experts address neither. Instead, they focus on undetected offending,

arguing that recidivism research—which is based on arrests and convictions—

cannot account for offenses that are not reported or do not result in arrests. But unde-

tected offending has no impact on the core questions above. Hanson Rebuttal, ECF

No. 123-8, PageID.4189-4195. Moreover, the defense experts' reports are not about

*registrants*—that is, people who have been convicted. The experts don't try to esti-

mate how often people offend again *after* conviction, punishment, and treatment, but

only how often people who have committed one undetected offense commit another.

Those are two different things. Pls' Facts, ECF No. 123-1, PageID.3895-3897; Salter

Dep., ECF No. 125-18, PageID.5492 (admitting surveys she cites "can't tell us

whether [] undetected crime is being committed by people with past convictions who

are on registries or previously undetected offenders").

Most registrants are never arrested, charged, or convicted of another sexual

crime. Over time their rates of detected offending will decline to the level of those

in the general population. At that point, while there is undetected offending among both registrants and non-registrants, Defendants' experts agree that the detection rates for the two groups are equivalent (or if anything higher for registrants). Pls' Facts, ECF No. 123-1, PageID.3892, ¶ 582. "When the observed rates [based on official records] are equivalent, and the detection rates are equivalent, <u>then the unobserved rates would also be equivalent</u>." Hanson Rebuttal, ECF No. 123-8, PageID.-4189. In short, the justification for the registry is that registrants are more likely than other people to commit sex offenses. The unknown rates of undetected offending do not alter the fact that most registrants remain on the registry for decades or for life, long after both their detected *and undetected* offending is at the same level as the general population. Reports about undetected offending do not "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

The experts also attempt to estimate "reoffense" rates based on samples that are not reflective of all registrants, relying on research about high-risk populations (e.g., sexual psychopaths), and then seeking to extrapolate the results to all registrants. Socia Rebuttal, ECF No. 123-13, PageID.4426, 4429-4431, 4455-4457, 4466-4472. But the experts admit that their cited studies (a) involved non-representative samples so that the results cannot be generalized to registrants; and (b) measured whether a person committed more than one offense, not reoffending after being convicted. Turner Dep., ECF No. 126, PageID.5675; Goodman-Williams Dep., ECF

No. 125-17, PageID.5441, 5443, 5450; Salter Dep., ECF No. 125-18, PageID.5494. Expert testimony based on studies of subjects who are differently situated should be excluded when there is "too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Baker v. Chevron U.S.A. Inc.*, 533 F. App'x 509, 520 (6th Cir. 2013) (testimony excluded where subjects studied were exposed to higher chemical levels than plaintiffs).

A brief discussion of each expert follows. Detailed critiques are in the Hanson Rebuttal, ECF No. 123-8, and Socia Rebuttal, ECF No. 123-13.

**Dr. Salter** challenges the predictive accuracy of the Static-99R, arguing that it fails to predict the rate of "reoffending," defined as committing a sexual offense whether detected or undetected, and whether before or after conviction. Salter Decl., ECF No. 128-21, PageID.7052. Not only does she fail to address the population at issue—people convicted of sex offenses—but she is a clinical provider, not an empirical analyst. *Id.*, PageID.7053-54. She does not do research; her books are written for lay audiences and discuss parenting and treatment. Pls' Resp. to Defs' Facts, ¶¶ C-F. Her opinion also reflects bias, with courts finding her not to be an objective witness, and scholars criticizing her for promoting misconceptions. *Id.*, ¶ G.

**Dr. Turner** is a psychologist whose primary practice is doing clinical evaluations and serving as a prosecution expert in "sexually violent predator" commitment hearings and in criminal cases. *Id.*, ¶ H. He is not an expert on sex offender registries:

31

"I'm not familiar with registries in general. I certainly don't feel comfortable speaking [about] them as an expert." Turner Dep., ECF No. 126, PageID.5701, at 154. He is familiar with the Static-99R and has used it in his evaluations. He opines about it in his report, but displays his lack of expertise by making a series of basic factual mistakes. Dr. Hanson, the developer of the Static-99R, catalogues each and every one of them. Hanson Rebuttal, ECF No. 123-8, PageID.4203-4209.

**Dr. Lovell** reports on her SAK study, but Defendants failed to provide the research underlying her report. Pls' Resp. to Defs' Facts, ¶ J. This makes testimony about that research inadmissible. *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 270-71 (6th Cir. 2010). Lovell admits that SAK research is not generalizable to all sex offending. *Id.*, ¶¶ K-L. Moreover, her testimony is about undetected offenders, not about people with convictions; they were excluded from her study.[20] Lovell Dep., ECF No. 125-16, PageID.5413. One can't "generalize research about the risk posed by 'uncaught' apples to the population of 'convicted' oranges." Socia Rebuttal, ECF No. 123-13, PageID.4438; *Baker*, 533 F. App'x at 520.

**Dr. Goodman-Williams'** discussion of her SAK research is inapplicable for the same reasons as Lovell's. Goodman-Williams also cites survey research, but admits that reoffense rates from unrepresentative samples of institutionalized sexual

---

[20] Indeed, it appears the vast majority of SAK-identified offenders have not previously been convicted. Socia Rebuttal, ECF No. 123-13, PageID.4443.

psychopaths "can't be generalized" to registrants. Pls' Resp. to Defs' Facts, ¶ O. She further concedes that this research can "shed zero light" on whether undetected offending declines after conviction. *Id.* Her report emphasizes underreporting and case attrition, but fails to link that to the registry, admitting that "none of the features [that cause underreporting or case attrition] has anything to do with the registry." *Id.*

### B. Defendants' Lay Witnesses Improperly Offer Opinion Testimony.

Lay witnesses may not invade the realm of experts. *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 240 (6th Cir. 2010). Fed. R. Evid. 701 limits opinion testimony from lay witnesses to those that meet three criteria. Lay opinions must be:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

*Id.* The burden lies with the proponent to provide an adequate foundation for such testimony. *United States v. Freeman*, 730 F.3d 590, 595-96 (6th Cir. 2013). Parties are not permitted to "'bootstrap' [ ] expert testimony in as lay witness testimony." *United States v. Darji*, 609 F. App'x 320, 338 (6th Cir. 2015).

Defendants filed declarations of three lay witnesses—Bennetts, Prout and Dare—containing testimony that does not meet Rule 701 standards or is otherwise inadmissible. Ex. 154 shows four categories of statements that should be excluded.

**Recidivism & Reoffending**: This Court held that recidivism is a topic that

"calls for the 'specialized knowledge' of an expert with adequate 'skill, training, or education.'" Order Re Depositions, ECF No. 99, PageID.2540. The lay witnesses opine about recidivism and reoffending without such expertise. For example, Dare opines that the likelihood of committing sex offenses "does not appear to change significantly with age." Dare Decl., ECF No. 129-4, PageID.7571, ¶ 9. Dare has done no research, and her statement contradicts "one of the most well-documented findings in criminology." Hanson Rebuttal, ECF No. 123-8, PageID.4210, ¶ 70.

**Statistics & Studies**: The lay witnesses' declarations are filled with opinions about statistics and studies. Defendants then cite the *declarants* (not the underlying studies) *as if* they were experts who have "scientific, technical, or other specialized knowledge" and *as if* their opinions were "the product of reliable principles and methods." Fed. R. Evid. 702. But this is lay testimony not based on the witnesses' own perceptions. They are simply reading something on the internet and telling the Court what they've read. *Freeman*, 730 F.3d at 597 (improper to have lay witness "interpret[] ordinary English"). Nor is the testimony helpful to the factfinder, because it is replete with errors and omissions reflective of the witnesses' lack of expertise. Hanson Rebuttal, ECF No. 123-8, PageID. 4209-4213; Socia Rebuttal, ECF No. 123-13, PageID.4472-4475.

**Utility of SORA for Victims**: The lay witnesses can draw on their personal experience to opine about harms to survivors. However, opinions that SORA encour-

ages victims to come forward or that SORA protects the public are inadmissible because they are without foundation, are not based on the witnesses' own perceptions, and require specialized knowledge. Moreover, lay opinions may not tell the fact finder "what result to reach" or offer conclusions that the Court is competent to reach—or reject—on its own. *Freeman*, 730 F.3d at 598.

**Statements Lacking Foundation**: The witness's generalized statements (e.g. about what most/all victims feel) are not grounded in personal experience.

### C. The Affidavits of Sharon Jegla Are Inadmissible.

An affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4). The party submitting the affidavit has the burden to show it is based on personal knowledge. *Alexander v. Kellogg USA, Inc.*, 674 F. App'x 496, 499 (6th Cir. 2017). Here, Ms. Jegla—who has no training in data analysis—swore that her affidavits were based on personal knowledge. But she later admitted that she ran only a fraction of the numbers herself and did not know which ones. Pls' Resp. to Defs' Facts, ¶ Q. The two Jegla affidavits should be stricken.

### CONCLUSION

The Court should grant Plaintiffs' motion under Rule 56 on all counts and order further briefing on remedy. Severability too may require further briefing. *See Betts*, 507 Mich. at 562-574 (unconstitutional parts of SORA not severable).

Respectfully submitted,

s/ Miriam Aukerman (P63165)
/s Dayja Tillman (P86526)
Attorneys for Plaintiffs
American Civil Liberties Union
    Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org

s/ Daniel S. Korobkin (P72842)
s/ Syeda Davidson (P72801)
American Civil Liberties Union
    Fund of Michigan
Attorney for Plaintiffs
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6824
dkorobkin@aclumich.org

Dated: December 28, 2023

s/ Paul D. Reingold (P27594)
Cooperating Counsel, American Civil
    Liberties Union Fund of Michigan
Attorney for Plaintiffs
Univ. of Michigan Law School
802 Legal Research Building
801 Monroe Street
Ann Arbor, MI 48109-1215
(734) 355-0319 - pdr@umich.edu

s/ Roshna Bala Keen (Ill. 6284469)
s/ Lauren Carbajal (Cal. 336485)
Loevy & Loevy
Attorney for Plaintiffs
Cooperating Counsel, American Civil
    Liberties Union Fund of Michigan
311 North Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 - roshna@loevy.com

## LOCAL RULE CERTIFICATION

I, Miriam Aukerman, certify that this document conforms to the page limits set forth in the Court's Order Setting Schedule for Summary Judgment Motions, ECF No. 121, and complies with terms set under the Local Rules.

s/ Miriam Aukerman (P63165)
Attorney for Plaintiffs
American Civil Liberties Union
  Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org
