UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOHN DOES, et al.,

        Plaintiffs,

v.

GRETCHEN WHITMER, et al.,

        Defendants.

File No. 2:22-cv-10209

Hon. Mark A. Goldsmith

Mag. Curtis Ivy, Jr.

_____

## JOINT STATEMENT

**I.   BACKGROUND**

Since the Court's decision on September 27, 2024, ECF No. 158, the parties have engaged in extensive negotiations to narrow the issues remaining which the Court must decide. As set out below, the parties have made substantial progress. There are still some issues where the parties are continuing to negotiate, which reflects the complicated claims, the need to work through the practical implications of various forms of relief, and the need to consult with clients.

**II.   FURTHER PROCEEEDINGS PRIOR TO JUDGMENT**

Further proceedings will be necessary on Count VIII (vagueness). The parties discussed potential narrowing constructions proposed by Plaintiffs but have been unable to agree on them. Defendants are unclear how they can step into the shoes of

1

the Legislature and narrow the statutory definitions through agreement in civil litigation. Accordingly, the Court should set a briefing schedule. A proposed schedule for this and other briefing is set forth below. If the parties can agree on narrowing constructions during briefing, they will notify the Court. The parties will also attach their respective proposed judgment language for Count VIII.

The parties ask that while briefing is underway on Count VIII, the Court allow them to continue to negotiate on the judgment language for Count I. The parties would also like the opportunity to continue to work on the precise language of the judgment for the other counts. The parties would file a joint status report after 14 days, attach an updated draft judgment, and identify any further issues needing judicial resolution.

The draft judgment has a space to set out the effective date for relief ordered, which varies by count since the work to implement each count will vary. The parties request that once the Court determines what relief it will order, it hold a status conference to address the implementation schedule.

The parties propose the following schedule:

| | |
|---|---|
| Joint status report with updated proposed judgment, including proposed judgment language on Count I | 14 days |
| Briefing on Count VIII:<br><br>Cross opening motions and briefs by Plaintiffs and Defendants (25 pages)<br><br>Response briefs by Plaintiffs and Defendants (15 pages)<br><br>The parties will attach proposed judgment language for Count VIII to their briefing. | 21 days<br><br>14 days |

### III. TERMS OF THE PROPOSED JUDGMENT UPON WHICH THE PARTIES AGREE AND DISAGREE

#### A. Overview

Attached as Exhibit A is a working document that sets out draft language for a proposed judgment. Due to the complexity of the remedial issues and the array of decision-makers involved, the parties view it is a work in progress, and both sides anticipate making further edits as they refine the draft and as the state makes final decisions about what it wants to do.

While the parties are continuing to review some of the judgment text, they have reached agreement on tentative language for much of the judgment. At the same time, they have identified some areas of disagreement that will require judicial resolution. Where the parties' proposed language differs, Plaintiffs' proposed language is in green highlight and Defendants' proposed language is in blue.

3

On Count I, the parties are continuing to negotiate over the terms of the judgment. The parties propose that within 14 days, they provide the Court with a joint statement that includes either their agreed-upon judgment language for Count I, or their respective proposed judgment language and their explanations for the areas of disagreement.

## B. Plaintiffs' Statement Re Areas of Disagreement

While most of the reasons for the areas of disagreement are clear from the attached judgment, Plaintiffs provide some additional context on a few points.

### 1. Count II – Retroactive Extension

In Count II, Plaintiffs alleged that retroactively requiring a person to register for life violates both the Due Process and Ex Post Facto Clauses of the U.S. Constitution and sought to bar Defendants from enforcing SORA for a term longer than that in effect at the time of the registrant's offense. Am. Compl., ECF No. 108, PageID.2982. The subclass was defined as "members of the primary class who were retroactively required to register for life as a result of amendments to SORA." ECF No. 35, PageID.1117. Plaintiffs intentionally defined the subclass to include anyone whose term was retroactively extended. This is because SORA was also amended in 1999 to retroactively extend registration terms for pre-1999 registrants. *Compare* P.A. 295, sec. 5(3)-(4) (1995), *with* P.A. 85, sec. 5(6)-(7) (1999). Similarly on Count VI, Plaintiffs sought to enjoin Defendants from requiring registration for a term

4

longer than that in effect at the time of a registrant's plea. Am. Compl., ECF No. 108, PageID.2983. Plaintiffs did not limit either of the counts or the subclass definition to retroactive extension of registration terms that occurred only in 2011.

Plaintiffs believe that the Count II relief should enjoin registration for longer than the term in effect at the time of the offense.[1] Defendants believe the Court should reinstate the registration terms in effect in 2010, before the 2011 amendments.

Defendants' interpretation runs counter to this Court's opinion and would require much more litigation before a final judgment could enter. The Court decided it did not need to reach the plea claim because it "has now determined that SORA 2021 violates the Ex Post Facto Clause, which ruling will prohibit retroactive enforcement of amendments to SORA," meaning that "no plea agreements will be retroactively modified." Op., ECF No. 158, PageID.8731-8732. The Court also found it unnecessary to decide Plaintiffs' due process arguments on Count II. *Id.*, PageID.8679, n.16. If Defendants' proposed relief were correct, both issues would need to be litigated because some registrants whose terms were extended before 2011, or who pled guilty, would be excluded from relief. For example, a person who

---

[1] For registrants whose offense predated the creation of SORA, Plaintiffs can agree to look to the term in effect on October 1, 1995, when SORA was initially adopted. As a practical matter, it has been more than 25 years since their offenses were committed and 25 years was the standard registration term when SORA was first adopted (except for those who reoffended). P.A. 295, sec. 5(3)-(4) (1995).

5

pled in 1998 to an offense with 25-year registration and who was retroactively extended to life in 1999, would not get Count II ex post facto relief under Defendants' proposal, but *would* still have a Count II due process claim and a Count VI plea claim.

Moreover, the appropriate relief under the Ex Post Facto Clause is to restore the original registration terms. The ex post facto doctrine is grounded in the understanding that law may not "inflict[] a greater punishment, than the law annexed to the crime, **when committed**." *Collins v. Youngblood*, 497 U.S. 37, 42 (1990) (emphasis altered). *See also Weaver v. Graham*, 450 U.S. 24, 30 (1981) (legislature may not increase punishment "beyond what was prescribed when the crime was consummated"). Therefore, the proper remedy is "to apply, if possible, the law in place when [the] crime occurred." *Id.* at 36, n.22. Other courts, after finding that retroactive extension of registration terms violates the Ex Post Facto Clause, have restored the registrant's original registration term.[2]

Defendants' contrary argument is not grounded in caselaw, but solely in footnote 31 of the Court's opinion. Plaintiffs' reading of that footnote is that the Court was simply unaware that some registrants' terms were extended in 1999. The more telling statement in the Court's opinion is that the plea claim is moot, which it will

---

[2] *See, e.g., Gonzalez v. State*, 980 N.E.2d 312, 321 (Ind. 2013); *Quispe Del Pino v. Md. Dep't of Pub. Safety & Corr. Servs.*, 112 A.3d 522, 523, 533 (Md. Ct. Spec. App. 2015); *State v. Letalien*, 985 A.2d 4, 26 (Me. 2009).

not be if registrants' terms do not go back to the original registration term.

Finally, while Defendants will need some time to remove all members of the retroactive extension of registration subclass who have completed their registration terms, there is no reason Defendants cannot immediately remove the three named Plaintiffs who have completed their original registration terms. They are daily experiencing harm. Doe E, for example, has been unemployed for months because of the registry.

### 2. Count VII – Non-Sex Offenses

The Court held that a "judicial determination [] must be afforded to people convicted of offenses without a sex element." Op. 158, PageID.8738. Plaintiffs' language requires such a judicial determination. Defendants' language does not.

Moreover, Plaintiffs didn't bring just a due process challenge. They also alleged that it violates equal protection to deny the non-sex offense subclass the same judicial determination that other people convicted of non-sexual offenses receive under SORA's "catch-all" provision. Am. Compl., ECF No. 108, PageID.2972. The judgment language proposed by both Plaintiffs and Defendants states that it is not necessary for the Court to reach the equal protection issue because the relief ordered for the due process violation is coextensive with the relief that Plaintiffs sought for the equal protection violation. That would not be true, however, if the Court adopted Defendants' language on this count. Defendants' proposed text does not resolve the

equal protection claim because members of the non-sex offense subclass would not receive judicial determinations that are comparable to those of the similarly-situated registrants in the "catch-all" category. Plaintiffs' language, by contrast, tracks that in the catch-all provision, M.C.L. § 28.722(r)(vii), and provides that if there are judicial determinations under the standards and procedures used for catch-all cases, *see* M.C.L. § 769.1(12), that would by definition satisfy the requirement for a judicial hearing. The language is carefully crafted so that it does not mandate a particular type of hearing, but rather simply states that hearings under M.C.L. § 769.1(12) are satisfactory. If Defendants or the legislature wish to develop some other procedure, they can do so, but must give Plaintiffs notice so that the adequacy of any alternative procedure could be assessed.

Plaintiffs' paragraph 14 addresses situations where members of the non-sex offense subclass also have another registrable offense. Defendants state baldly that many such registrants are not entitled to relief, but have not provided language spelling out exactly when hearings would be unnecessary.[3] Defendants' language also entirely fails to account for people with non-Michigan, non-sex offenses.

---

[3] Plaintiffs offered to dispense with hearings where a subclass member also has (A) another registrable Michigan conviction for a sexual offense resulting in Tier III lifetime registration, (B) another registrable Michigan conviction for a sexual offense results in a registration term that is no longer than the term for the "non-sex conviction," or (C) another registrable Michigan conviction that has a sexual element and involved the same offense conduct on the same date against the same victim as the "non-sex conviction." Defendants rejected such language.

Defendants have still not identified that group or included them in their tallies.

### 3. Count XI – Non-Michigan Offenses

For people with non-Michigan convictions, the Court held that (1) a judicial hearing is required, and (2) they may not be treated more harshly than people with similar Michigan convictions. Plaintiffs' language captures those holdings, while Defendants' does not. Plaintiff's language is also technically precise, which is important to avoid future disputes. (For example, an injunction against harsher treatment needs to be clear about the comparison: a generic reference to Michigan convictions, as Defendants suggest, could lead to confusion.)

Plaintiffs' proposed relief here is simple: (1) a bar on registration or enforcement of SORA absent a judicial hearing, and (2) an injunction against worse treatment for out-of-state offenders. There are myriad ways in which Defendants or the legislature could respond to the Court's decision. For example, after a federal court held North Carolina's procedures for registering people with out-of-state convictions violated due process, *Grabarczyk v. Stein*, 2020 WL 2441418 (E.D.N.C. 2020), the legislature passed a new statute setting our procedures for judicial hearings, including appointment of counsel for indigent people. N.C. Gen. Stat. § 14-208.12B.

Plaintiffs do not believe it is wise use of judicial resources to adjudicate exactly what process is due, and instead propose that the Court simply enjoin enforcement of SORA against the non-Michigan offense subclass absent a judicial

9

hearing that complies with due process requirements. The parties have been negotiating fruitfully about procedures that could be used, and Plaintiffs are hopeful that agreement can be reached.

### 4. Disputed Language that Recurs Throughout the Judgment

<u>Persons Bound</u>: Fed. Rule Civ. Proc. 65(d) covers the content and scope of injunctions. Subsection (2) sets out the persons who, if they receive notice, can be bound: the parties, their "officers, agents, servants, employees, and attorneys," and "other persons who are in active concert or participation" with them. Although Plaintiffs' proposed language tracks Rule 65, Defendants object, preferring that the Court only enjoin the named Defendants (Governor Whitmer and Colonel Grady), and their agents. Given that SORA is enforced by hundreds of law enforcement agencies throughout the state, it is important to follow the language of Rule 65.

<u>Named Plaintiffs</u>: The named plaintiffs brought this case both in their individual capacities and on behalf of all those similarly situated. Defendants believe that because the named plaintiffs are members of the class, it is unnecessary to specify that they are also entitled to individual relief. But that would leave their individual claims unaddressed. Moreover, it is possible (though concededly unlikely) that an appellate court might find class-wide relief improper, where individual relief is not.

### 5. Preservation of Claims Not Decided

Plaintiffs do not anticipate appealing the Court's sensible decision not to

decide some claims or reach some legal theories because they overlap with other claims or theories that provide equivalent relief. The proposed language is intended to forestall any future argument on remand – for example, if the Court's decision were to be reversed in part, or the relief granted were to be limited – that Plaintiffs failed to preserve such undecided claims or legal theories.

## C. Defendants' Statement Re Areas of Disagreement

The areas of disagreement are specifically set forth in the attached Exhibit A. Defendants make a few additional points below.

### 1. Retroactive extension subclass

The Defendants believe that the Court's opinion is quite clear on what relief was granted to the retroactive extension subclass. "[T]his holding means that the in-person reporting requirements and retroactive extension of registration terms originally introduced in SORA 2011 cannot be applied to registrant who committed an offense before SORA 2011 was enacted." (ECF No. 158, PageID.8699, fn 31.) In other words, the registration terms that were in effect prior to the enactment of SORA 2011 are applied to those registrants with convictions prior to September 1, 2011. Public Act 85, sec. 5(6) (1999).

### 2. Non-sex offense subclass

As an initial matter, there are very few registrants that will actually obtain any relief from this claim. There are approximately 15 registrants that are currently on

the registry with solely a conviction under Mich. Comp. Laws 750.349, .349B, or .350. While it is up to a neutral decision maker whether the crimes included a sexual component, based on the information provided by the prosecutors during discovery, there should be no serious debate that the overwhelming majority of these crimes included a sexual element. Six of the 15 registrants are currently incarcerated and will be for years.

There are approximately 168 registrants who have a conviction under Mich. Comp. Laws 750.349, .349B, or .350, and another registerable conviction that was committed on the same date as the kidnapping, unlawful imprisonment or leading away a child. These registrants are not entitled to relief. 137 of these registrants are currently incarcerated.

There are 20 registrants with a conviction under Mich. Comp. Laws 750.349, .349B, or .350, and another registerable conviction, but the convictions are on different dates. These registrants may be entitled to some relief. (i.e., their registration terms may be shortened if it is determined that the conviction for kidnapping, unlawful imprisonment or leading away a child did not include a sexual component.) 11 of these registrants are currently incarcerated.

The limited relief aside, Defendants understanding of the opinion is that a neutral decision maker must make a determination whether the crime included a sexual component. Plaintiff's position seems to be trying to expand SORA's

catchall provision, Mich. Comp. Laws 769.1(12), to include convictions under Mich. Comp. Laws 750.349, .349B, or .350.  In response to this Court's opinion, the Legislature may decide to do just that, but that is a Legislative decision not a judicial one.  This Court should not specify the exact mechanism required to comply with the opinion.  As an aside, Defendants suggest that perhaps the Court could appoint a magistrate to assist with making the determinations.

It is also worth noting, that Defendants believe that since the *Lymon* opinion was issued, the prosecutors have changed their practices and new convictions under Mich. Comp. Laws 750.349, .349B, or .350 include a determination as to whether there was a sexual component.  As a result, the class of individuals entitled to relief, should not increase.

### 3.  Non-Michigan offense subclass.

There are approximately 3,600 members in this class.  There are seemingly two buckets of relief – backward looking for existing registrants, and forward looking for new registrants with out-of-state convictions.

Defendants understand the opinion to mean the registrants with out-of-state convictions must be given notice and the decision regarding their registration obligations must be made by a neutral decision maker.  For the backyard looking relief, perhaps a magistrate could be utilized to determine what category of registrants may be entitled to relief.  For the forward-looking relief, the Defendants

13

will need time to create a process, which may be a collaborative process with Plaintiffs counsel.

### 4. Immediate removal of Plaintiffs

In Plaintiffs proposed judgment they are seeking the immediate removal of the named plaintiffs for the claims where they are entitled to relief. Defendants do not see the need to further complicate the relief process by ordering the removal of the named plaintiffs first. The relief granted will be tremendously complicated and time consuming for MSP to effectuate. In any event, most of the named plaintiffs are not even on the public registry so there will be no practical effect by ordering them to be "removed" first.

## IV. FURTHER PROCEEEDINGS AFTER JUDGMENT

The parties anticipate that, after judgment, the following proceedings will or may be needed:

### A. Court Approval of a Notice Process and Notices

The Court will need to decide on the contents, timing of notices and the logistics. The draft judgment includes provisions, modeled on the judgment in *Does II v. Snyder*, No. 16-cv-13138, ECF No. 126 (E.D. Mich.), requiring the parties to submit for the Court's approval post-judgment a joint proposed process for notice and proposed notices for registrants, prosecutors, and law enforcement, and if the parties cannot agree, their respective proposed notice process and proposed notices.

### B. Reporting to Enable Post-Judgment Monitoring

The Court will need to decide what information Defendants should provide to Plaintiffs, if any, to enable post-judgment monitoring to ensure that the Court-ordered relief is implemented. The draft judgment includes proposed language from Plaintiffs providing that after judgment, the parties will submit a joint proposed process for post-judgment monitoring. Defendants' position is set forth in the draft judgment.

### C. Stay Motions

Defendants anticipate that they may seek a stay of the injunctive relief granted on Counts I and II, although a final decision has not been made yet. Defendants do not anticipate seeking a stay on Counts VII, IX, X, XI, which they most likely will not appeal. However, if a reasonable process cannot be agreed upon for the out-of-state subclass Defendants may seek a stay and appeal. The parties anticipate being able to agree on a briefing schedule for any stay motions.

### D. Attorney's Fees and Costs

In the interest of conserving the Court's and the parties' resources, the parties propose deferring briefing on attorney's fees and costs until the conclusion of all appeals. The draft judgment includes provisions that the parties have agreed to and courts have approved in other cases, including *Does I* and *II*.

## V. PROPRIETY OF THE GOVERNOR AS A DEFENDANT

No additional briefing will be required to address the issue of the propriety of the Governor of Michigan being a defendant in this action, as the Defendants have elected not to pursue that defense in this case.

Respectfully submitted,

s/ Miriam Aukerman (P63165)

Miriam J. Aukerman
Attorneys for Plaintiffs
American Civil Liberties Union
  Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org

s/ Daniel S. Korobkin (P72842)
s/ Syeda Davidson (P72801)
American Civil Liberties Union
  Fund of Michigan
Attorney for Plaintiffs
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6824
dkorobkin@aclumich.org

s/ Paul D. Reingold (P27594)
Cooperating Counsel, American Civil
  Liberties Union Fund of Michigan
Attorney for Plaintiffs
Univ. of Michigan Law School
802 Legal Research Building
801 Monroe Street
Ann Arbor, MI 48109-1215
(734) 355-0319 - pdr@umich.edu

s/ Roshna Bala Keen (Ill. 6284469)
Loevy & Loevy
Attorney for Plaintiffs
Cooperating Counsel, American Civil
  Liberties Union Fund of Michigan
311 North Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 - roshna@loevy.com

/s/ Eric M. Jamison (P75721)
Assistant Attorney General
Attorney for Defendants
Michigan Dep't of Attorney General
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
jamisone@michigan.gov