UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOES A, B, C, D, E, F, G, H,
MARY DOE and MARY ROE, on behalf
of themselves and all others similarly
situated,

        No. 2:22-cv-10209

      Plaintiffs,

        HON. MARK GOLDSMITH

v

        MAG. CURTIS IVY, JR.

GRETCHEN WHITMER, Governor of the
State of Michigan, and COL. JAMES
GRADY, Director of the Michigan State
Police, in their official capacities,

      Defendants.

**DEFENDANT'S SUPPLEMENTAL BRIEFING RELATED TO
VAGUENESS CHALLENGES**

      Defendants, through counsel, submit this supplemental brief explaining why

the new SORA is not unconstitutionally vague.  (ECF No. 161, PageID.8819.)

## I.    **The new SORA is not unconstitutionally vague.**

      Plaintiffs claim that the new SORA is unconstitutionally vague and as such is a

Due Process violation.  (ECF No. 108, PageID.2903–2913, 2974; ECF No. 123,

PageID.3680.)  Specifically, they allege that the following provisions are vague: (1)

telephone numbers; (2) vehicles; (3) employment; (4) travel; (5) education; (6) aliases

and nicknames; and (7) physical description.  (ECF No. 123, PageID.3680.)[1]  Despite

Plaintiffs' efforts, they cannot show that the new SORA is unconstitutionally vague.

The vagueness doctrine is rooted in the Due Process Clause of the Fifth

Amendment.  *United States v. Williams*, 553 U.S. 285, 304 (2008).  Due Process

challenges rooted in vagueness require a "criminal law (1) so vague that it fails to give

ordinary people fair notice of the conduct it punishes, or (2) so standardless that it

invites arbitrary enforcement."  *Johnson v. United States*, 576 U.S. 591, 595 (2015) (citing

*Kolender v. Lawson*, 461 U.S. 352, 357–58 (1983)).

Fair notice requires a statute to give notice to "a person of ordinary

intelligence . . . that his [or her] contemplated conduct is forbidden by the statute."

*Colautti v. Franklin*, 439 U.S. 379, 390 (1979) (internal quotation marks omitted).  A

statute violates the "arbitrary enforcement" requirement if it is "so indefinite that it

encourages arbitrary and erratic arrests and convictions."  *Id.* (internal quotation

marks omitted).  As a result, "ordinary notions of fair play and the settled rules of

law," *Johnson*, 576 U.S. at 595, are violated if the various actors in the criminal justice

system are "defining crimes and fixing penalties" within the gaps of the statute "so

large that doing so becomes essentially legislative," *United States v. Evans*, 333 U.S. 483,

486–87 (1948).  "It is an intrinsic aspect of language that every word contains some

---

[1] Plaintiffs also alleged that internet identifiers and email addresses are vague, but that
claim is moot based on other portions of the Court's opinion.  (ECF No. 158,
PageID.8760-8768.)  Defendants are not appealing that portion of the opinion.

degree of ambiguity. *Cf. Johnson v. United States,* 559 U.S. 133, 139 (2010) (Scalia, J.)

("[C]ontext determines meaning."). *Doe v. Snyder*, 101 F. Supp. 3d 672, 690–91 (E.D.

Mich. 2015).

Evaluating a law for vagueness is not an overly rigid analysis—laws do not run

afoul of the Due Process Cause "simply because difficulty is found in determining

whether certain marginal offenses fall within their language." *United States v. Nat'l*

*Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963).  And laws are not vague because they "may

be stringent and harsh." *Barsky v. Bd. of Regents*, 347 U.S. 442, 448 (1954).

### A.      The new SORA gives ordinary people fair notice.

Plaintiffs allege in the amended complaint that they do not know what to

report.  (ECF No. 108, PageID.2906.)  Plaintiffs allege that the law is confusing

because they are not sure if "they must report every single phone . . . or vehicle that

they have ever used. . . . Plaintiffs also do not know how far back in time these

requirements apply."  (ECF No. 108, PageID.2905.)

However, many of the lead plaintiffs were deposed and asked whether they

understood what needs to be reported – the record demonstrates that they generally

do understand their reporting obligations.

John Doe B indicated that he understood what telephone numbers are and he

had no confusion about what he needs to report to law enforcement related to

telephone numbers.  (ECF No. 125-5, PageID.5112, p. 30:1-18.)  Similarly, he had no

confusion about what needs to be reported with respect to: "vehicles" owned or

operated; nicknames; addresses; or institutions of higher learning.  *(Id.* at

PageID.5111, p. 32:17–33:9; 26:4–24;27:22–28:16; 39:14–40:2.)

John Doe C understands what an address is, but he is unsure what temporary

lodging is; yet he knows what it means to be away from his residence for more than

seven days.  (ECF No. 125-6, PageID.5133, p. 35:19–37:4.)  John Doe C knows what

he is required to report for vehicles that he owns or operates.  *(Id.* at PageID.5134, p.

39:8–40:12.)  He knows what a nickname is.  *(Id.* at PageID.5132, p. 33:15–16.)  And

he knows what he is required to report about schools that he attends.  *(Id.* at

PageID.5133, p. 37:13–38:14.)

John Doe F was unsure about his reporting obligations and thought that

perhaps he had to report bulldozers, ditch witches, backhoes, forklifts, or other

construction equipment as vehicles that he owned or operated.  (ECF No. 125-8,

PageID.5171, p. 47:25–49:22.)  However, he never looked at the law.  *(Id.* at

PageID.5133, p. 49:1–8; 52:24–53:20.)

Mary Roe stated that she understands what an address is under the statute and

believes she knows what temporary lodging means.  (ECF No. 125-11, PageID.5238,

p. 35:13–22.)  She also understands which telephone numbers she is required to

report.  Notably, she understands that the reporting requirements do not require her

to report phone numbers from 2003, which is when she committed her offense.  *(Id.*

at PageID.5238, p. 36:15–37:3.)  When asked a hypothetical in her deposition about

whether a neighbor paying her $300 for shoveling their walk over the winter is

4

reportable on her income taxes or how to figure out the fair market value of a car donation for tax purposes, she said that she was unsure and would consult a tax professional for advice and do some research.  (*Id.* at PageID.5239, p. 39:1–40:14.) Just because someone does not know the answer to such questions does not mean that the law is vague.

A person of ordinary intelligence could look at the language of the statute for guidance.  Some provisions of the statute clarify that the reporting requirement goes back in time such as names, social security numbers and dates of birth ". . . and any other name by which I have been known" or ". . . any alleged social security numbers that I have previously used" or ". . . any alleged dates of birth that I have previously used."  Mich. Comp. Laws 28.727(1)(a)-(c).  Other provisions, such as for phones or vehicles, *do not* include the same backward-looking modifiers "have been known" or "previously used."

A counter-hypothetical illustrates the point.  If a 45-year-old was convicted in 2015 of criminal sexual conduct, and they served five years in prison, they would be registered at some point after conviction and prior to release from prison.  When they register, they are required to report all "telephone numbers registered to . . . or used by the individual" and "the license plate number and description of any vehicle that I own or operate."  Does a fair reading of the law mean that the individual must report every phone number that they ever used during the preceding decades and every

5

vehicle that they owned or operated from the time they started driving at age 16 or 17?  A person of ordinary intelligence would not think so.

Such a reading would mean that the 45-year-old would be required to report home phone numbers from every home that they lived in over thirty-five years, each relative's phone number that they might have used for three and a half decades (e.g., when they were five and had a sleep over at an uncle's house and used the phone to call home at night because they could not sleep), every employer's phone number, every school's phone number because they might have used the school phone to call home because they were ill or forgot their permission slip in the third grade, every friend's phone number, etc.  An ordinary person would not believe that they must report it.

> **B.      Plaintiffs fail to make any argument that the new SORA is so standardless that it invites arbitrary enforcement.**

Notably, missing from the record, is anyone who testified that they have been prosecuted for failing to report an old phone number, failing to report a vehicle that they drove one time, or failing to report enrollment in a pottery class through a university extension program.  To be sure, the Legislature could have been more specific in drafting the statute, but that is always true.  There are countless ways to interpret a statute that might suggest it is vague, but that does not equate with being unconstitutionally vague.  Indeed, mathematical precision is not required.  *See Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972).

Plaintiffs will likely point to a "law enforcement survey" that Plaintiffs' counsels' investigator conducted to demonstrate that the law invites arbitrary enforcement. (ECF No. 123-23, PageID.4739-4759.) However, the so called "survey" is unavailing.

*First*, there was little detail about who provided the answers to the surveys. While it is unknown, it is unlikely that a police officer who may have responsibility over enforcing the law, responded to the survey. It is more likely that someone from dispatch, or another administrative staff member who answers the phones, provided the answers.

*Second*, upon information and belief, police agencies do not typically provide detailed answers over the phone (or in person) to 24 hypothetical questions about legal reporting requirements under the new SORA, or any other law for that matter. (*Id.* at PageID.4758-4759.) While police agencies have an obvious role in enforcing the law, the detailed questions that they were asked in this lengthy "survey" should not be considered the official position of the police departments—it should basically be considered water cooler opinions. It is likely that if someone called various police agencies about many laws asked detailed hypothetical questions, they would get various answers.

For example, on June 30, 2023, a new distracted driving law took effect in Michigan, which prohibits drivers from using their hands to operate their cell phones beyond a single touch. The law could be interpreted many ways. Does single touch

7

mean a single touch for the entire time you are in the car so that you can only answer one phone call using a single touch?  What if it is a five-hundred-mile trip, can you only use the single touch once to answer one call?  What about a life-or-death emergency, can only a single touch be used?  Surely, if someone spent the time to call 34 police agencies across the state to ask 24 hypothetical questions about the new law, they would get various answers, and various levels of responses.  So, too, here.  For that reason, the self-serving survey is not evidence of a standardless law that invites arbitrary enforcement.

In challenges to earlier versions of the statute, the term "regularly" was found to be vague, in part, because it provided law enforcement with latitude about what regularly meant.  In the new statute, there is not the same lack if standards.  (i.e., if a telephone number is used by a registrant, or a vehicle is operated by a registrant, they must report it.)  While the requirements might be onerous, they are not standardless.

## C. Any violations must be willful.

Laws do not run afoul of the Due Process Clause simply because they are "susceptible to clever hypotheticals."  *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*, 894 F.3d 235, 251 (6th Cir. 2018) (stating that "[h]ypotheticals are a favorite tool of those bringing vagueness challenges, but . . . almost any criminal or civil prohibition is susceptible to clever hypotheticals testing its reach"); *see Schickel v. Dilger*, 925 F.3d 858, 879 (6th Cir. 2019).  By their nature, laws are "[c]ondemned to

8

the use of words, we can never expect mathematical certainty from our language."
*Grayned*, 408 U.S. at 110.

Rather, "[t]he degree of vagueness that the Constitution tolerates—as well as
the relative importance of fair notice and fair enforcement—depends in part on the
nature of the enactment." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455
U.S. 489, 489 (1982).  The Supreme Court has "recognized that a scienter requirement
may mitigate a law's vagueness, especially with respect to the adequacy of notice to
the complainant that his conduct is proscribed." *Id.* at 499.  Indeed, the new SORA
includes a scienter requirement—any violations must be willful.  Mich. Comp. Laws §
28.729.  "[A]s a sort of 'junior version of the vagueness doctrine,' the canon of strict
construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving
ambiguity in a criminal statute as to apply it only to conduct clearly covered." *United
States v. Lanier,* 520 U.S. 259, 266 (1997).

To the extent that there is any vagueness, the new SORA's scienter
requirements mitigate any ambiguity and due to the rule of lenity in criminal statutes,
the law only applies to conduct clearly covered.  As explained by the ACLU and the
State Appellate Defender's Office in September 2021, "[i]f you fail to comply with the
new SORA, you *can* be prosecuted under the new law, **but only for knowing**

**(willful) violations**."[2]  Registrants cannot be prosecuted for unintentional or mistaken violations of SORA.[3]  In other words, if a prosecutor wanted to charge a hypothetical registrant for failing to report his first vehicle from 1988, the prosecutor will have to prove beyond a reasonable doubt that: (1) the vehicle is required to be reported by statute (which based on a plain reading of the text it is not); (2) the registrant understood that the registrant had to report it; and (3) the registrant willingly failed to report it.   In other words, before a registrant can be criminally liable, it must be shown that they understood the requirement to report certain information, and they willfully failed to report the information.

### D.   The Court must adopt any reasonable construction of the statute.

When examining a state statute for vagueness, federal courts must construe the statute wherever possible "to avoid constitutional difficulty."  *Green Party of Tenn. v. Hargett*, 700 F.3d 816, 825 (6th Cir. 2012).  That framework compels the Court to adopt any reasonable construction of the statutory terms.  *Id.* (citing *Chapman v. United States*, 500 U.S. 453, 464 (1991).  A statute can only be found facially vague if a "plaintiff [ ] demonstrate[s] that the law is impermissibly vague in *all* of its applications." *Id.*  That is a high bar, which Plaintiff's cannot clear.

---

[2] See What You Need to Know About the Sex Offender Registry Act (SORA) | ACLU of Michigan (aclumich.org) Sept 13, 2021 Updates on the Law and Legal Challenges, pg. 7 (last accessed November 27, 2024).

[3] *Id.* at pg. 3.

### E.     The SORA and SORNA terms are nearly identical.

The statutory provisions that Plaintiffs complain about being vague, are nearly identical to the provisions under SORNA.  (ECF No. 39-3, PageID.1240-1299; ECF No. 41-2, PageID.1386-1389.)  A finding that certain terms in the SORA are unconstitutionally vague would be a finding that the same terms in SORNA are unconstitutionally vague, for which a notice to the U.S. Attorney General may be necessary.  *See* Fed. R. Civ P. 5.1.  No such finding is warranted because ordinary people have fair notice of what is required.

## II.     The terms are not vague.

### A.     Telephone numbers

The SORA requires registrants to report "[a]ll telephone numbers registered to the individual or used by the individual, including, but not limited to, residential, work and mobile telephone numbers."  Mich. Comp. Laws § 28.727(h).

The parties seemed to reach agreement on a narrowing construction of several of the terms related to phone numbers that Plaintiff's originally alleged were vague.  (See Ex A, draft proposed judgment.)  The remaining term at issue related to phone numbers is "used by."  Plaintiffs seem to suggest that an ordinary person would not understand what it means to use a telephone.  At the heart of their position, it's not that "used by" is vague, but that it would be onerous to comply.

A district court explained while addressing a vagueness challenge related to internet identifiers, that because there is a myriad of ways to use the internet, there may be some confusion about what to report. *Doe #1 v. Marshall*, 2018 WL 1321034, at *11 (M.D. Ala., 2018).  However, the court noted, the confusion really stems from the disbelief that the law can reach so far. (*Id.*)  The court found that the language was not vague because the ordinary meaning, or plain language, commands. (*Id.*)  The reasoning applies here.  Telephones, whether residential, work, or mobile that are utilized by a registrant must be reported.

In another case, the Supreme Court of West Virginia recently looked at a vagueness challenge to its statute, which requires the reporting of "any telephone or electronic paging device numbers that the registrant *has or uses*, including, but not limited to, residential, work, and mobile telephone numbers." *State v. Hoyle*, 242 W.Va. 599, 607 (W.Va., 2019) (emphasis added).  The court found that "has or uses" it's not vague and "[t]he Act plainly requires registrants to list *any* numbers related to *any* telephone device to which they have access or which they use.  This is a broad requirement, but it is not ambiguous. (*Id.* at 608.)

A person of ordinary intelligence understands what it means to use a telephone.

## B.     Vehicle Information

The SORA requires registrants to report "[t]he license plate number and description of any vehicle owned or operated by the individual."  Mich. Comp. Laws

§ 28.727(j).  "'Vehicle' means that term as defined in section 79 of the Michigan vehicle code, 1949 PA 300, MCL 257.79." Mich. Comp. Laws § 28.722(w). Registrants are required to update "any change in vehicle information . . . registered to or used by the individual."  Mich. Comp. Laws § 28.725(2)(a).[4]

The terms "operated" and "used" are undefined in the statute, and in such instances, courts give the terms their ordinary meaning. *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 566 (2012).

As an initial matter, the plain language does not require the reporting of every vehicle ever owned, operated, or used.  If the Legislature intended that, they would have included language in the statute like they did with other provisions in the statute. (e.g., names by which the individual is *or has been known*." Mich. Comp. Laws § 28.727(1)(a).  *See Stand Up v. Secretary of State*, 492 Mich. 588, 601 (2012) (language in other parts of the law demonstrate that the Legislature knows how to use the language if intended.)

In earlier litigation, Plaintiffs alleged that the language "any motor vehicle . . . owned or *regularly* operated by the individual" was vague. *Doe v. Snyder*, 101 F. Supp. 3d 672, 686 (E.D. Mich. 2015) (emphasis added).  Plaintiffs took issue with the language "regularly."  Now, in the style of whack-a-mole litigation, and after the

---

[4] It appears that the parties reached agreement with related to "registered to" and there is no agreement regarding "operated" by and "used" by.

13

statute was amended to remove the "regularly" operated provision, Plaintiffs take aim at the other words of the statute that remain unchanged – used or operated.

The plain language is clear that any "use" or "operation" of a vehicle requires reporting. There is nothing unclear about it. Plaintiffs are not really arguing that the language is vague, but that if the plain language is applied as written, it is onerous or overly broad. That does not fall under a vagueness challenge. Plaintiffs try to paint a picture of vagueness by asking whether borrowing a car from a friend or getting a loaner while their other car is being repaired means they must report it. (ECF No. 108, PageID.2905, 2907-2908.) But there is really no question that such a scenario involves using or operating a vehicle.

According to the plain language of the statute, the answer is simple – yes, they must report it. Mich. Comp. Law § 28.727(1)(j). If there is any doubt, the definition of "vehicle" found in Mich. Comp. Law 28.722(w) of the new SORA incorporates the Michigan Vehicle Code (MVC) definition found in Mich. Comp. Law § 257.79, which implicitly incorporates the concepts of "operating" as those terms are defined in the MVC (Mich. Comp. Law § 257.36) and have been applied by the courts. What is more, the Michigan Supreme Court has already offered guidance on what "operate" means. *See People v. Yamat*, 475 Mich. 49, 52-53 (2006) (holding that the term "operate" is not ambiguous and means the exercise of actual physical control over a motor vehicle.)

14

In the absence of statutory definitions, the courts can look to dictionaries and the term "used" means – having been used before.[5]  *Taniguchi*, 566 U.S. at 566. Registrants are required to update changes to vehicle information to report vehicles "used" by them since the last reporting period.  Mich. Comp. Laws § 28.725(2)(a).

A district court in Nebraska examined a violation for vagueness challenge related to the specific language at issue here.  Under Nebraska law, registrants had to report a description and regular storage location of any vehicle owned *or operated* by the person.  *Doe v. Nebraska*, 734 F. Supp. 2d 882, 924 (D. Neb. 2010).  The Court simply found that the "language is unambiguous."  *Id.* at 925.

In sum, while its application may be broad, the plain language is clear and there is case law that provides guidance on what registrants must report.  It is not vague.

### C.    Nicknames and Aliases

The SORA requires registrants to report "[t]he individuals legal names and any aliases, nicknames, ethnic or tribal names, or other names by which the individual is or has been known."  Mich. Comp. Laws § 28.727(1)(a).

A nickname is defined as – *a familiar form of a proper name, or a usually descriptive name given instead of or in addition to the one belonging to a person, place or thing.*[6]

---

[5] Merriam-Webster, Used Definition & Meaning - Merriam-Webster (last accessed Nov 26, 2024).

[6] Merriam-Webster, Nickname Definition & Meaning - Merriam-Webster (last accessed November 27, 2024).

An alias is defined as – *an assumed or additional name that a person sometimes uses.*[7]  A person of ordinary intelligence can understand what a nickname or alias is.  To the extent there is any confusion, when an offender appears for their periodic verification, the registering authority is required to make a determination about whether a nickname or alias, amongst the other reportable information, is required to the reported.  "When all of the verification information has been provided, the officer or authorized employee shall review that information with the individual and *make any corrections, additions, or deletions the officer or authorized employee determines are necessary* based on the review."  Mich. Comp. Laws § 28.725a (emphasis added).  Again, any violations must be willful.  As a result, an offender cannot be violating for failing to report a nickname or alias that they did not know they needed to report.

### D.    Travel

*First*, at the time of registration, registrants are required to report "[t]he name and address of any place of temporary lodging . . . to be used by the individual during any period in which the individual . . . is expected to be away, from his or her residence for more than 7 days . . . [including] the dates the lodging is . . . to be used."  Mich. Comp. Laws § 28.727(1)(e).  In other words, at the time of registration if an individual expects to be away from that person's residence for more than seven days,

---

[7] Merriam-Webster, Alias Definition & Meaning - Merriam-Webster (last accessed November 27, 2024).

16

the person must report it the official who is completing the registration. (e.g., if at time of registration, individuals who know they are going deer hunting from November 15th – 30th at their family cottage in northern Michigan, they must report it.)

*Second*, the SORA requires registrants to update law enforcement within three days after a decision has been made to temporarily reside at someplace other than their residence for more than seven days. Specifically, the statute reads: "An individual required to be registered . . . shall report . . . not more than 3 business days after any of the following occur: [t]he individual intends to temporarily reside at any place other than his or her residence for more than 7 days." Mich. Comp. Laws § 28.725(2)(b). Again, this provision is straightforward. If between the reporting periods a registrant decides to spend two weeks in Detroit visiting family, they must notify law enforcement of their intention to do so.

Plaintiffs seem to take issue with the terms "intends," "to be used" and "is expected to be away." A person of ordinary intelligence understands what "intends," "to be used" or is "expected to be away" means. As explained above, a dictionary can be consulted. *Taniguchi*, 566 U.S. at 566.

Intend means – *to have in mind as a purpose or goal.*[8]

---

[8] Merriam-Webster, Intend Definition & Meaning - Merriam-Webster, (last accessed Nov. 26, 2024.)

Expected means – *to consider probable, or to anticipate or look forward to the coming or occurrence of.*[9]

Used means - *having been used before.*[10]  Taken together with the rest of the phrase, "to be used" means the place where the registrant plans to stay while away.

None of these terms are hard to understand.  The plain reading of the statute requires reporting of intended, or expected, plans to stay at a location, other than their residence, for more than seven days.  What about if a registrant only planned to be away for five days, but the registrant got snowed in for three additional days, is it reportable?  No, the registrant did not have an intent to be away for more than seven days.  What about if the registrant only planned to go visit a relative for three days, but the relative fell ill and the registrant decided to extend their stay for three weeks to care for the relative, is it reportable?  Yes, because while the registrant did not originally "intend" to stay for more than seven days, after being away the registrant changed plans and intended to stay for more than seven days.  Accordingly, the registrant would need to update law enforcement.

Of course, as with any vagueness challenge, there can be a myriad of hypotheticals around the edges where someone may not be sure what to report, but a

---

[9] Merriam-Webster, [Expected Definition & Meaning - Merriam-Webster](Expected Definition & Meaning - Merriam-Webster)
[10] See fn 5.

law cannot be written in such a way to cover every conceivable scenario.

Mathematical precision is not required. *Grayned,* 408 U.S. at 110.

Perhaps, Plaintiffs think it's vague because the statute doesn't indicate whether its consecutive days or whether it includes when someone plans to be away from their residence for more than seven days, but it is stretched out over a season. (e.g., be at their family cottage every weekend for the summer, which would total more than seven days during the reporting period.)  However, again the plain language and ordinary understanding of the language is instructive.

The statute clearly indicates that what is required to reported are stays at "anyplace" where the "period" of time is more than seven days, or stays "at someplace" that it intended to be more than seven days.  "Any place" and "someplace" are singular.  If the Legislature wanted registrants to report any time they were away from their residence for more than seven days, the Legislature could have said registrants must report *every place* that they stay when they are away from their residence for more than seven days.  They did not do so.

What is more, the statute has a willfulness requirement.  For any of the clever hypotheticals presented by Plaintiffs, a prosecutor must show that a registrant had expected, or intended, to be away from their residence for more than seven days, they understood that they had to report the specific temporary residence, and the registrant failed to report it, before the registrant could be charged with a violation.

## E.    Physical descriptions[11]

The SORA requires registrants to report "[a] complete physical description of the individual." Mich. Comp. Laws § 28.727(o).

The fields that MSP collects related to "physical description" are sex, race, hair, height, weight, eyes, scars/marks/tattoos.  A person of ordinary intelligence understands what those terms mean.  If there is any confusion, a dictionary can be consulted.  Any violations of reporting such information must be willful.  What is more, at the time of verification, "[w]hen all of the verification information has been provided, the officer or authorized employee shall review that information with the individual and *make any corrections, additions, or deletions the officer or authorized employee determines are necessary* based on the review."  Mich. Comp. Laws § 28.725a (emphasis added).  If a registrant is unsure whether their hair is considered black or gray, the officer can make any necessary corrections based on their own determination.

## F.    School or institution of higher education

The SORA requires registrants to report "[t]he name and address of any school being attended by the individual and any school that has accepted the individual as a student that he or she plans to attend.  For purposes of this subdivision, 'school' means a public or private postsecondary school or school of higher education,

---

[11] Counsel believe that they have reached an agreement with respect to what physical description means, which is subject to client approval, and anticipate updating the Court in their next filing.

including a trade school." Mich. Comp. Laws § 28.727(1)(g). And the SORA defines

an "institution of higher education" to "mean 1 or more of the following: (i) a public

or private community college, college, or university. (ii) A public or private trade,

vocational, or occupational school." Mich. Comp. Laws § 28.722(h).

SORNA and a host of other states have the same, or very similarly, phrased

reporting requirements. See 34 U.S.C. § 20914(a)(5) (A sex offender shall register . . .

where the offender is a student); 34 U.S.C. § 20911(11) (The term 'student' means an

individual who enrolls in or attends an educational institution, including (whether

public or private) a secondary school, trade or professional school, and institution of

higher education); Ohio Rev. Code § 2950.04 (C)(4) (the name and address of the

offender's or public registry-qualified juvenile offender registrant's school or

institution of higher education); IN Code § 11-8-8-7(a)(3) (A sex or violent offender

who is enrolled or intends to be enrolled on a full-time or part-time basis in any public

or private educational institution, including any secondary school, trade, or

professional institution, or postsecondary educational institution); 730 Ill. Comp. Stat.

Ann. 150/2 (H) ('school' means any public or private educational institution,

including, but not limited to, any elementary or secondary school, trade or

professional institution, or institution of higher education); Tenn. Code § 40-39-

202(23) ('Student' means a person who is enrolled on a full-time or part-time basis in

any public or private educational institution, including any secondary school, trade or

professional institution or institution of higher learning).

Plaintiffs seem to suggest that various terms related to institutions or higher education and trade schools are so vague that a person of ordinary intelligence is not on notice of what must be reported.  Not so.  Again, to the extent there is any confusion, dictionary definitions can be consulted.  Nebulous hypotheticals do not make the law vague – what if a registrant attends a community wide yoga class that just happens to be held at the local college, is it reportable?  The answer is clearly no, they are not a student at the college.  They are not *enrolled* at the institution. Registrants must provide updates to law enforcement when they enroll "as a student with an institution of higher education, or enrollment is discontinued."  Mich. Comp. Laws § 28.725(1)(c).  The Court should give the terms their ordinary meaning.

Any violations of reporting such information must be willful.  To the extent that a registrant is unsure whether they need to report their yoga class, at the time of verification, "[w]hen all of the verification information has been provided, the officer or authorized employee shall review that information with the individual and *make any corrections, additions, or deletions the officer or authorized employee determines are necessary* based on the review."  Mich. Comp. Laws § 28.725a (emphasis added). Again, if a registrant is unsure whether they are enrolled as a student at a community college, the officer can make any necessary corrections based on their own determination.

### G.   Places of employment

The SORA requires registrants to report "[t]he name and address of each of the individual's employers.  For purposes of this subdivision, 'employer' includes a contractor and any individual who has agreed to hire or contract with the individual for his or her services.  Information under this subsection must include the address or location of employment if different from the address of the employer.  If the individual lacks a fixed employment location, the information obtained under this subdivision must include the general areas where the individual works and the normal travel routes taken by the individual in the course of his or her employment. Mich. Comp. Laws § 28.727(1)(f).

The statute defines "employee" as "an individual who is self-employed or works for any other entity as a full-time or part-time employee, contractual provider, or volunteer, regardless of whether the individual is financially compensated.  Mich. Comp. Laws § 28.722(d).

The statutory language is clear.  There can be a myriad of hypotheticals around the edges about what constitutes employment or volunteering, but the language is not vague.  Every year over 100 million people file federal taxes, which are based on the U.S. Tax Code that spans more than 6,800 pages.  26 U.S.C. § 1 *et seq*.  The expansive law covers most citizens with an income and has severe criminal penalties for failing to properly file taxes, including prison time.  26 U.S.C. § 75.  Like SORA, many criminal sections of the Tax Code include a willfulness requirement. 26 U.S.C. § 7202.

23

If millions upon millions of people can file their taxes every year and make determinations about what income is taxable, then a person of ordinary intelligence should be able to determine what is employment and what is volunteering.

Taken to the extreme, many things could be considered volunteering (and are in the context of a verb rather than a noun) – opening the door for someone; assisting the rabbi to set-up tables for a function at the synagogue; or helping an elderly neighbor shovel their walk.  A person of ordinary intelligence would not believe that if they open the door for someone that they need to report it to law enforcement.

## CONCLUSION

As with any law, the new SORA could be more precise, but with more precision comes longer and sometimes more complicated statutory schemes. However, the new SORA is not vague and gives a person of ordinary intelligence fair notice of what needs to be reported.  Any violations of reporting requirements must be willful, and the registering authority has a statutory obligation to decide whether specific information is reportable.

Respectfully submitted,

/s/ Eric M. Jamison
Assistant Attorney General
Attorney for Whitmer and Grady
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
jamisone@michigan.gov
P75721

Dated:  November 27, 2024

## LOCAL RULE CERTIFICATION

I, Eric M. Jamison, certify that this document complies with Local Rule 5.1(a), including double-spaced (except for quoted material and footnotes): at least one-inch margin on top, sides, and bottoms; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 points (for proportional fonts).  I also certify that it is the appropriate length.  Local Rule 7.1(d)(3).

*/s/ Eric M. Jamison*
Assistant Attorney General
Attorney for Whitmer and Grady
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
jamisone@michigan.gov
P75721

AG#2022-0341402-A