UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

JOHN DOES, et al.,

              Plaintiffs,

v.

GRETCHEN WHITMER, et al.,

             Defendants.

No. 2:22-cv-10209

**Hon. Mark A. Goldsmith**

**Mag. J. Curtis Ivy, Jr.**

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT ON COUNT VIII (VAGUENESS)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... iii

INTRODUCTION .................................................................................1

I.    THE LEGAL FRAMEWORK FOR VAGUENESS CHALLENGES .....2

      A.    SORA Must Meet a High Standard of Definiteness. .......................2

      B.    The Court Can Interpret the Statute and Can Sometimes
            Limit It, But Cannot Rewrite It. ......................................................4

      C.    While Harsh Statutes Are Not Vague, Interpretations of
            SORA that Require Constant Reporting Make the Statute
            Even More Punitive ..........................................................................5

II.   SORA IS UNCONSTITUTIONALLY VAGUE ......................................6

      Phones ............................................................................................7

      Vehicles ..........................................................................................9

      Employment: ................................................................................11

      Travel ............................................................................................15

      Education .......................................................................................18

      Names and Nicknames ................................................................20

      Physical Descriptions ..................................................................21

      Substantially Similar Offenses ...................................................21

III.  DEFENDANTS' GLOBAL DEFENSES ARE UNAVAILING ............22

CONCLUSION .....................................................................................25

# TABLE OF AUTHORITIES

## Cases

*American-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600 (6th Cir. 2005) ...................................................................4

*Barsky v. Bd. of Regents*, 347 U.S. 442 (1954)...................................................5

*Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553 (6th Cir. 1999) ...............................................................................................3, 6

*City of Chicago v. Morales*, 527 U.S. 41 (1999) ....................................................24

*Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101 (6th Cir. 1995)............................2

*Commonwealth v. Harding*, 158 N.E.3d 1 (Mass. 2020) ........................................14

*Connally v. Gen. Constr. Co.*, 269 U.S. 385 (1926)................................................2

*Cramp v. Bd. of Pub. Instruction*, 368 U.S. 278 (1961) ...........................................2

*Doe v. Harris*, 772 F.3d 563 (9th Cir. 2014) .......................................................22

*Doe v. Nebraska*, 734 F. Supp. 2d 882 (D. Neb. 2010)..........................................11

*Does v. Snyder*, 101 F. Supp. 3d 672 (E.D. Mich. 2015) ........................................25

*Does v. Snyder*, 834 F.3d 696 (6th Cir. 2016) ........................................................1

*Eubanks v. Wilkinson*, 937 F.2d 1118 (6th Cir. 1991)............................................4

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ..................................................3

*Johnson v. United States*, 576 U.S. 591 (2015) .......................................................3

*Kolender v. Lawson*, 461 U.S. 352 (1983).............................................................2, 6

*Lambert v. California*, 355 U.S. 225 (1957)..............................................................3

*Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323 (6th Cir. 2007) ....4, 5

*Nova Recs., Inc. v. Sendak*, 706 F.2d 782 (7th Cir. 1983).......................................22

*People v. Blackmun*, No. 310280, 2013 WL 514365 (Mich. Ct. App. Feb. 12, 2013).................................................................................................23

*People v. Chesebro*, No. 301807, 2012 WL 2814106 (Mich. Ct. App. July 10, 2012).................................................................................................23

*People v. Collins*, No. 328853, 2016 WL 7427153 (Mich. Ct. App. Dec. 20, 2016).................................................................................................23

*People v. Lockett*, 659 N.W.2d 681 (Mich. Ct. App. 2002) ....................................23

*People v. Quinn*, No. 323731, 2015 WL 7288036 (Mich. Ct. App. Nov. 17, 2015).................................................................................................23

iii

*People v. Ward*, No. 343797, 2019 WL 3312538 (Mich. Ct. App. July 23, 2019) ................................................................................................... 23

*Planned Parenthood of Cent. N.J. v. Farmer*, 220 F.3d 127 (3d Cir. 2000) ........... 22

*Smith v. Goguen*, 415 U.S. 566 (1974) ................................................................... 25

*Stenberg v. Carhard*, 530 U.S. 914 (2000) .............................................................. 4

*Taylor v. United States*, 495 U.S. 575 (1990) ........................................................ 22

*United States v. Barcus*, 892 F.3d 228 (6th Cir. 2018) ........................................... 22

*United States v. Caseer*, 399 F.3d 828 (6th Cir. 2005) ............................................ 1

*United States v. Holena*, 906 F.3d 288 (3d Cir. 2018) ............................................. 9

*United States v. Salisbury*, 983 F.2d 1369 (6th Cir. 1993) ...................................... 2

*United States v. Santos*, 553 U.S. 507 (2008) ....................................................... 24

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982) ............................................................................................................. 3, 6

## Statutes

M.C.L. § 28.722 ........................................................................................ passim

M.C.L. § 28.724a ............................................................................... 18, 19, 20

M.C.L. § 28.725 ........................................................................................ passim

M.C.L. § 28.727. ....................................................................................... passim

M.C.L. § 28.728 ............................................................................................... 7

M.C.L. § 28.729 .......................................................................................... 1, 22

Mass. Gen. Laws ch. 6, § 178C ...................................................................... 14

# INTRODUCTION

A law is vague if it is "written in a language foreign to persons of ordinary intelligence" that is so "technical or obscure that it threatens to ensnare individuals engaged in apparently innocent conduct." *United States v. Caseer*, 399 F.3d 828, 836–37 (6th Cir. 2005). SORA does just that. The Sixth Circuit described the statute as a "byzantine code governing in minute detail the lives" of Michigan registrants. *Does v. Snyder*, 834 F.3d 696, 697 (6th Cir. 2016). This Court noted that SORA can be "difficult to follow" even for judges. Op., ECF No. 158, PageID.8667 n. 2. The record shows that both registrants and law enforcement are totally confused about what registrants must do. Yet registrants who do not follow each of SORA's requirements face severe punishment (up to ten years in prison) as well as automatic revocation of probation or parole. M.C.L. § 28.729. Such vagueness is unconstitutional.

As instructed by the Court, the parties have been negotiating over terms that Plaintiffs have challenged as vague. The parties have reached agreement on a reasonable interpretation of certain terms, but have not reached agreement on others. The proposed judgment (attached as Exhibit A) sets out agreed-upon language in normal text, Plaintiffs' proposed language in green highlight, and Defendants' language in blue highlight. To aid the Court in resolving the remaining disputes, Plaintiffs first set out the legal framework and then apply that framework to each of the challenged provisions. Finally, Plaintiffs address Defendants' general arguments on vagueness.

1

# I.  THE LEGAL FRAMEWORK FOR VAGUENESS CHALLENGES

## A. SORA Must Meet a High Standard of Definiteness.

SORA is unconstitutionally vague because it does not (1) provide persons of ordinary intelligence notice of what conduct is prohibited, and (2) does not provide clear guidance to those who enforce its prohibitions. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). The void-for-vagueness doctrine is intended to "ensure fair notice to the citizenry" and to "provide standards for enforcement by the police, judges, and juries." *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1104 (6th Cir. 1995).

With respect to public notice, "a statute which either forbids or requires the doing of an act in terms so vague that [people] of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926). "No one may be required at peril of life, liberty, or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." *Cramp v. Bd. of Pub. Instruction*, 368 U.S. 278, 287 (1961) (cleaned up).

With respect to guidance for law enforcement, unclear laws give "law enforcement officers, courts, and jurors unfettered freedom to act on nothing but their own preferences and beliefs." *United States v. Salisbury*, 983 F.2d 1369, 1378 (6th Cir. 1993). Absent "explicit standards," those who enforce the law may make decisions on a subjective basis "with the attendant dangers of arbitrary and discriminatory

2

application." *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972).

"The degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). A law "imposing criminal sanctions or reaching a substantial amount of constitutionally protected conduct may withstand facial constitutional scrutiny only if it incorporates a high level of definiteness." *Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 557 (6th Cir. 1999); *see also Hoffman Estates*, 455 U.S. at 499 ("because the consequences of imprecision are qualitatively less severe" for civil statutes, criminal laws require heightened review). Vague criminal laws are facially invalid. *See Johnson v. United States*, 576 U.S. 591, 602–03 (2015) (rejecting argument that "a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp").

A high level of definiteness is required here because SORA imposes criminal sanctions and reaches a substantial amount of constitutionally protected conduct. A failure to report everyday *legal* activities (like using a phone or driving a car) can result in criminal liability. *See Lambert v. California*, 355 U.S. 225, 229 (1957) (invalidating registry law that "punished conduct which would not be blameworthy in the average member of the community" (cleaned up)). SORA's vagueness also implicates constitutional rights because when registrants face uncertainty, they err on the side of caution—e.g., by limiting travel and family connections—so as not to

3

risk arrest. Pls.' Facts, ECF No. 123-1, PageID.3784-3832, 3851-3864.

**B. The Court Can Interpret the Statute and Can Sometimes Limit It, But Cannot Rewrite It.**

The Sixth Circuit has provided somewhat inconsistent guidance on a federal court's ability to adopt narrowing constructions of state statutes. In *Eubanks v. Wilkinson*, 937 F.2d 1118 (6th Cir. 1991), the court held:

> Courts construe statutes to avoid constitutional difficulty when fairly possible. When a statute is readily susceptible to a narrowing construction that would make it constitutional, it will be upheld. Nevertheless, the general federal rule is that courts do not rewrite statutes to create constitutionality . . . .
>
> When a federal court deals not with a federal statute but with a state statute, its task is further complicated . . . . Federal courts lack authority and power to give a limiting, narrowing construction to a state statute… [A] federal court must take the state statute . . . as written and cannot find the statute . . . constitutional on the basis of a limiting construction supplied by it rather than a state court . . . . We conclude that while a federal court may enjoin the operation of some provisions of a state statute and leave others to operate, it cannot itself draft a new limiting condition, thus reframing the statute.

*Id.* at 1122, 1125-1128 (citations and quotation marks omitted).

In a subsequent challenge to a municipal ordinance, however, the Sixth Circuit said that a "federal court may choose to adopt a narrowing construction if that construction is both 'reasonable' and 'readily apparent.'" *American-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 613 (6th Cir. 2005) (quoting *Stenberg v. Carhard*, 530 U.S. 914, 944 (2000)). Then, in *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 333 (6th Cir. 2007), the Sixth Circuit discussed

4

how, in crafting remedies, courts must seek not to invalidate more of the legislature's work than necessary, but also cannot rewrite state laws to conform to constitutional requirements even in an effort to salvage the legislation. The bottom line, the court said, "is that the limited remedy under either constitutional avoidance [through a narrowing construction] or partial invalidation must be consistent with the text of the statute, lest the courts usurp the legislative function." *Id.* at 335.

Plaintiffs' proposed judgment language sets out limiting interpretations both where the parties have agreed on those interpretations, and where Plaintiffs believe that the statutory text is readily susceptible to a limiting judicial interpretation. The proposed judgment also seeks to preserve portions of the challenged statutory provisions that are not vague by only enjoining enforcement of specific clauses that are vague. Where vague language cannot be cured without rewriting the statute, however, an injunction against enforcement of the vague provisions *in toto* is required.

### C. While Harsh Statutes Are Not Vague, Interpretations of SORA that Require Constant Reporting Make the Statute Even More Punitive.

Defendants argue that laws are not vague just because they "'may be stringent and harsh.'" ECF No. 162, PageID.8822 (quoting *Barsky v. Bd. of Regents*, 347 U.S. 442, 448 (1954)). While that is true, harsh interpretations of SORA's reporting requirements cannot be squared with Defendants' claim that SORA imposes only minimal burdens and is not punitive. If, for example, registrants have to report within three days every car they ever drive, no matter how briefly, ECF No. 162, PageID.

5

8831, then the burden on registrants is orders of magnitude beyond what it was in SORA 2011. Defendants seem to think a registrant, when borrowing a phone, must say: "Thanks, and by the way, I have to report your number to the registry." That would make SORA 2021 even more burdensome and excessive in relation to any non-punitive purpose than SORA 2011. Such reporting is totally unnecessary; indeed, law enforcement does not need the information registrants report, as MSP staff themselves testified. Pls.' Facts, ECF No. 123-1, PageID.3746-3748. In sum, Defendants' vagueness arguments undercut their arguments on punishment.

## II.   SORA IS UNCONSTITUTIONALLY VAGUE

SORA provides neither clear guidance to registrants about what they must do/not do, nor clear guidance to those who enforce the law. *Kolender*, 461 U.S. at 357. Moreover, SORA utterly fails to meet the high standard of clarity required of criminal laws that impact constitutionally protected conduct. *Hoffman Estates*, 455 U.S. at 499; *Belle Maer Harbor*, 170 F.3d at 557. The record contains extensive testimony about how confused registrants are, how they over-police their conduct and avoid innocent and constitutionally protected activities lest a misstep land them back in prison, and how they have been unable to get clarification when they ask. Pls.' Facts, ECF No. 123-1, PageID.3851-3864. The record likewise shows that law enforcement officials have widely varying understandings of SORA and lack clear guidance on enforcement. A survey of police and prosecutors showed they do not

6

know what the law demands. Law Enforcement Survey ("Survey"), ECF No. 123-23. Similarly, the Michigan State Police's (MSP) Legal Advisor, SOR Unit manager, and SOR enforcement coordinator offered divergent accounts of what SORA requires. MSP Chart, ECF No. 123-5. And when Plaintiffs served requests to admit to clarify what Defendants think must be reported, Defendants declined to answer. Defs.' Resp. to RTAs, ECF No. 126-12, ¶¶ 13–31, 92–93. The fact that so many SORA provisions could have multiple meanings and are confusing even to the law enforcement encourages arbitrary enforcement. *See* note 6, *infra* (collecting cases).

Plaintiffs set out each challenged provision below.[1] A status conference or short oral argument may be helpful to work through the proposed judgment.

**Phones:** Registrants must report "all telephone numbers registered to the individual or used by the individual, including, but not limited to, residential, work, and mobile telephone numbers," M.C.L. § 28.727(h), and must report within three days "any change in . . . telephone numbers registered to or used by the individual." M.C.L. § 28.725(2)(a). The parties agree that SORA can reasonably be interpreted to mean only numbers registered to the individual at the time of reporting, verifying, or updating their information. The parties also agree that a "residential" number

---

[1] Because the Court has granted Plaintiffs summary judgment on Count X, and the proposed judgment permanently enjoins enforcement of M.C.L. §§ 28.722(g), 28.725(2)(a), 28.727(1)(i), and 28.728(1)(i) as violative of the First Amendment and states that the vagueness challenge to the reporting of electronic mail addresses and internet identifiers is moot, Plaintiffs do not brief that issue, though they preserve it.

means a phone—whether a landline or one connected in some other way—that is affixed to or can be used solely at the registrant's registered address. Defendants argue that in addition *other* residential numbers should be included. For example, if a registrant visits his mother for a few days and gives his boss her home number, that would be reportable within three days. However, such lines are not "registered to the individual," so this is a problem of defining "use" (not defining "residential"). For "work" numbers, the parties agree that means a workplace number assigned to the registrant or the best number at the workplace to reach the registrant, or if no such numbers exist, then the main number for the workplace.[2] Ex. A, ¶¶ 2-3.

The most significant vagueness problem comes in the requirement to report phone numbers "*used by* the individual" or "*any change* in . . . telephone numbers . . . *used by* the individual."[3] Doe F's testimony sets out registrants' confusion:

> Used by me when? . . . You know, when [my fiancé was dying and] I was living in the hospital and the doctors would call our hospital room or I'd have to call down and order her lunch food, because I used the hospital phone do I have to register the hospital? If I was staying at a hotel for the night and I used their phone to call my loved one or her mom to make sure that she was still alive do I have to register the hotel number? If she was unconscious or sleeping and friends texted her phone and I'd respond using her phone do I have to register her

---

[2] Where the parties have agreed on definitions, the draft judgment enjoins enforcement that is inconsistent with those interpretations. Defendants would add the phrase "solely related to the terms above," but that is both redundant and confusing.

[3] SORA 2011 required reporting of phones and vehicles used "regularly" or "routinely"—terms which were found to be unconstitutionally vague. *Does v. Snyder*, 101 F. Supp. 3d 672, 686-690 (E.D. Mich. 2015). Instead of specifying how many uses are reportable, the legislature removed the terms "regularly" and "routinely."

number? If I'm coming home from work and my phone dies and I have to borrow my coworker's phone to let my loved one know that I'm going to be home late do I have to then register his number? Do I have to tell him that if I use his phone I have to register his number?

Pls.' Facts, ECF No. 123-1, PageID.3856. Law enforcement likewise has no idea which "uses" are reportable. Survey, ECF No. 123-23, PageID.4751; MSP Response Chart ("MSP Chart"), ECF No. 123-5, PageID.3947.

The three-day reporting requirement for "any change" in a phone "used by the individual" is even more unclear: if one borrows a phone to make a call, must one first report using the phone and then that one stopped using the phone? Moreover, phones today are mini-computers, making it even more difficult to know what "use" means. Is a registrant "using" a friend's phone if he looks at it to help navigate, google for information, watch a YouTube video, order take out, or see his friend's photos? *Cf. United States v. Holena*, 906 F.3d 288, 294 (3d Cir. 2018) (supervised release restriction on internet "use" was overbroad because it barred the defendant from "doing everyday tasks that have migrated to the internet"). Because no one knows which "uses" of which phones and which "changes" to such "uses" are reportable, and because there is no limiting interpretation that is apparent from the text, the Court should enjoin enforcement of the "used by" provisions. Ex. A, ¶¶ 4-5.

**Vehicles:** Registrants must report "[t]he license plate number and description of any vehicle owned or operated by the individual," M.C.L. § 28.727(j), and must within three days report "any change in vehicle information . . . registered to or used

by the individual." M.C.L. § 28.725(2)(a). The parties agree that "owned . . . by" and "registered to" can be interpreted to mean owned by or registered to the individual at the time of reporting, verifying, or updating their information. Ex. A, ¶¶ 6-7.

The primary vagueness problem arises in the requirement to report "any vehicle . . . *operated* by the individual" and "*any change* in vehicle information" for vehicles "*used by* the individual." If a registrant moves an absent roommate's car out of the driveway to let a back-unit tenant out, must the car be reported? If the registrant later learns that the roommate has moved out of state, must the registrant track down the new plate and report it? If an employer assigns different cars daily from a large company fleet, must all those cars be reported and listed on the registry under the registrant's name? Pls.' Facts, ECF No. 123-1, PageID.3855-3858. Must "changes" to every company car also be reported? Law enforcement officials surveyed on such questions provided widely divergent answers. Survey, ECF No. 123-23, PageID.4751-4752; MSP Chart, ECF No. 123-5, PageID.3947.

Defendants have cited *People v. Yamat*, 475 Mich 49, 52-53 (2006), which construed the term "operate" as used in a felonious driving statute. But if one assumes that the legislature intended the term "operate" in SORA to similarly mean any exercise of physical control over a vehicle, then that would also evince a legislative intent to make SORA punitive: requiring 3-day reporting of *any* vehicle use—no matter how brief the use, or how disconnected it is from any possible

10

criminal activity—is wildly excessive in relation to any non-punitive purpose.[4]

Plaintiffs' proposed judgment allows for continued enforcement of the duty to report vehicles currently registered to or owned by the individual, but enjoins unlimited enforcement of reporting on vehicles *operated* or *used*. Ex. A, ¶¶ 8-9.

**Employment:** Registrants must report:

> The name and address of each of the individual's employers. For purposes of this subdivision, "employer" includes a contractor and any individual who has agreed to hire or contract with the individual for his or her services. Information under this subsection must include the address or location of employment if different from the address of the employer. If the individual lacks a fixed employment location, the information obtained under this subdivision must include the general areas where the individual works and the normal travel routes taken by the individual in the course of his or her employment.

M.C.L. § 28.727(1)(f). A registrant must also report in-person within three days if the "individual changes his or her place of employment, or employment is discontinued." M.C.L. § 28.725(1)(b). The definitions section of SORA does not define "employer" or "employment," but does define "employee" to mean "an individual who is self-employed or works for any other entity as a full-time or part-time employee, contractual provider, or volunteer, regardless of whether he or she is financially compensated." M.C.L. § 28.722(d).

While there is no dispute that a registrant holding a 40-hour a week job must

---

[4] Defendants also cite *Doe v. Nebraska*, 734 F. Supp. 2d 882, 924 (D. Neb. 2010), but the focus there was on the definition of "vehicle," not of "operate."

report it, registrants are criminally liable any time they fail to report an "employer" or "change" in "employment." Defendants admit that "[t]here may be hundreds of nuanced situations" about what is reportable. ECF No. 41, PageID.1363. The most significant problems are around determining (1) whether volunteering or unpaid work is reportable, (2) which employer addresses are reportable, (3) what constitutes discontinuation of employment, and (4) when de minimis paid labor is reportable.

***Volunteering and Unpaid Work***: M.C.L. § 28.727(1)(f)—a reporting provision—defines "employer" as including "a contractor and any individual who has agreed to hire or contract with the individual for his or her services." By contrast, in SORA's definitional section, "employee"—a term that is not actually used in the reporting provisions themselves—refers to volunteers and work without financial compensation. M.C.L. § 28.722(d). Despite the more limited language in the actual reporting provision, the MSP has concluded that volunteering is reportable. EOD Form, ECF No. 126-17, §6.b. This is questionable, given that SORA requires reporting of "employers," M.C.L. § 28.727(1)(f), and changes in "employment," M.C.L. § 28.725(1)(b), but says nothing about "employees," the only term defined in a way that could include volunteer or uncompensated work. M.C.L. § 28.722(d). Thus, at best SORA is unclear about whether volunteering is reportable. That is reason enough to enjoin reporting of volunteer or uncompensated work.

Moreover, no one knows *what* volunteer work must be reported. For example,

JS runs a religious fellowship group for prisoners but does not know if he must report it, and if so, who his "employer" is since he is his own supervisor. Pls.' Facts, ECF No. 123-1, PageID.3855. Registrants don't know, if they shovel a neighbor's walk or mow the lawn, whether they must immediately report it, such that the neighbor's address will then be listed on the registry as their workplace. What about singing in a church choir? Or canvassing for a few hours for a political campaign? People do all sorts of unpaid "work." If instead of hiring a caregiver, one cares for an elderly parent, does that turn one's parent into an "employer"? If one does uncompensated activities to support a family—like growing vegetables—is one then self-employed? Registrants don't know, and law enforcement has no idea either. Survey, ECF No. 123-23, PageID.4753; MSP Chart, ECF No. 123-5, PageID.3948.

*Which Employer Addresses Are Reportable.* Registrants have no idea if they must report when their employer assigns them a different job site for a day, a week, or a month. Is that a "change" in the "place of employment?" M.C.L. § 28.725(1)(b). Similarly, contractors and self-employed people do not know whether they must report contact information for each person or entity that hires them, or just report their own address as their work address. Pls.' Facts, ECF No. 123-1, PageID.3853-3855. On the one hand, SORA suggests that where registrants lack a fixed employment location, they must report the "general areas where the individual works and the normal travel routes taken"—whatever that means—suggesting reporting of

13

geographic areas. M.C.L. § 28.727(1)(f). On the other hand, SORA defines employer to include "a contractor and any individual who has agreed to hire or contract with the individual for his or her services," *id.*, suggesting registrants must report contact information for any person or entity who hires them. Law enforcement doesn't know the answer: the MSP's legal advisor said registrants must report each job site, but the SOR Unit manager disagreed. MSP Chart, ECF No. 123-5, PageID.3947.

This problem arose in *Commonwealth v. Harding*, 158 N.E.3d 1 (Mass. 2020), where a home-improvement contractor who registered as self-employed and reported his home address as his work address was charged with a probation violation for not reporting his clients' addresses. The court, after chronicling how difficult it would be for a registrant to know what to report, construed the Massachusetts statute as not requiring independent contractors to report temporary worksites. *Id.* at 5-6.

***Discontinuation of Employment.*** Registrants have no idea if they must report within three days when their work is briefly discontinued due to a short-term reduction in hours, layoff, strike, or even a snowstorm. Pls.' Facts, ECF No. 3852-3855. Law enforcement does not know either. MSP Chart, ECF No. 123-5, PageID.3947; Survey, ECF No. 123-23, PageID.4752-53.

***De Minimis Compensated Labor***: Some states require registrants to report employment once it reaches a certain threshold. *See, e.g.* Mass. Gen. Laws ch. 6, § 178C (work for a period of over 14 days or exceeding 30 days in a calendar year).

SORA contains no such language, leaving registrants and law enforcement unsure whether any paid labor must be reported within three days. If a registrant shovels the neighbor's driveway for $20, must he then go report in person? Law enforcement gave widely varying answers: such work is not reportable, or it is reportable but only if the registrant earns more than $600, pays taxes on those earnings, or has an LLC. Survey, ECF No. 123-23, PageID.4753. Defendants think that if one can pay taxes, one can understand SORA. But there is no SORA equivalent to TurboTax software that one can use to figure out what one has to report. And no SORA accountants.

*Remedy*: SORA's employment reporting provisions are hopelessly vague—especially the definitions, which could be construed to cover far more than what one normally thinks of as employment. Unfortunately, here there is no easy remedy. Unlike with phones and vehicles, where the Court can leave most of the provisions intact and enjoin enforcement of the vague portions, the Court would need to rewrite the employment provisions to eliminate vagueness. For example, while it is possible to clarify that work over a certain threshold is reportable, it is up to the legislature to decide whether to limit reporting to, say, 7 days' labor, 30 days' labor, or a dollar ceiling like $2,500 a year. Plaintiffs' proposed judgment thus enjoins all of SORA's reporting of employment. Ex. A, ¶¶ 10-11.

**Travel:** Registrants must report within three days if the "individual intends to temporarily reside at any place other than his or her residence for more than 7 days."

M.C.L. § 28.725(2)(b). Registrants also must report "any place of temporary lodging used or to be used by the individual during any period in which the individual is away, or expected to be away, from his or her residence for more than 7 days," including the "dates the lodging is used or to be used." M.C.L. § 28.727(1)(e).

An initial problem with M.C.L. § 28.725(2)(b) is that it isn't clear whether the individual must report if he intends to be away for more than seven days or intends to reside temporarily at (one) other place for more than seven days, and in both sections it is not clear if the days must be consecutive. Plaintiffs submit that the text of both provisions can reasonably be interpreted to mean seven consecutive days away from home. Ex. A, ¶¶ 14-15. Defendants apparently disagree.

Even more problematic is that an intention or expectation is an impossibly vague touchstone for reporting, with prison as a consequence. Registrants cannot and do not know under M.C.L. § 28.725(2)(b) at what point their potential travel plans ripen into an immediate reportable "intent" to temporarily reside elsewhere. Nor can they know at what point tentative travel plans become reportable because "to be used" and "expected to be away" in M.C.L. § 28.727(1)(e) are vague. And if their plans change the day before (or after) departure, they cannot and do not know if they must now register their *new* (or abandoned) plans within three days.

Registrants testified that because they cannot figure out requirements around travel, they restrict or simply do not travel for work, for family visits, or for

vacations. For example, class member RH2 missed both of his parents' funerals because he was so confused about travel requirements. Doe F spent a year staying at different hotels, and in the homes of various friends and family members, while caring for his fiancée who was dying of cancer. During that time, he would travel overnight round trip back across the state to his home every seven days rather than risk violating SORA's travel reporting requirements. Pls.' Facts, ECF No. 123-1, PageID.3817-3823, 3858-3859. RH, a 72-year-old class member who traveled to Florida to care for his dying 93-year-old father, describes the run-around in trying to make sure he was compliant, and how the "fear is constant" that if you get something wrong, you will face charges. RH Declaration, ECF No. 124-4, PageID.4841.

As with the other provisions, law enforcement officials are unable to provide clarity. Law enforcement officers could not provide consistent answers about when intended travel is reportable, and differed about how long a registrant could stay at another person's home before reporting it. Survey, ECF No. 123-23, PageID.4753, 4756; MSP Chart, ECF No. 123-5, PageID.3948.

Plaintiffs propose a tailored fix to the problem. Registrants would no longer have to report "intended" or "expected" travel, nor guess in advance about where they might go, nor immediately update information if travel plans change. Where and when they stayed would be reported after they return. Ex. A, ¶¶ 12-13. As a practical matter, requiring registrants to report travel after it occurs will scarcely

change what information is available to law enforcement. Travel is reported by mail. ECF No. 126-16, PageID.6196. The record shows that once that mail arrives, law enforcement may not enter updates for weeks, or at all. Pls' Facts, ECF No. 123-1, PageID.3791. Reporting on actual travel after it occurs is also more accurate.

**Education:** For education, SORA has reporting requirements not just in M.C.L. § 28.727(1)(g) (at verification) and M.C.L. § 28.725(1)(c), (e) (3-day reporting), but also a separate (and totally incomprehensible) section in M.C.L. § 28.724a (in-person reporting). The different sections use different terminology with different definitions and limitations, leaving even lawyers befuddled about what is reportable.

***What Educational Programs Are Reportable***: SORA's education reporting provisions are triggered by attending a "school," M.C.L. § 28.727(g); enrolling/discontinuing enrollment in an "institution of higher education," M.C.L. §§ 28.724a (1)(b), 28.725(1)(c); and enrolling/discontinuing enrollment or being accepted as a "student." M.C.L. §§ 28.725(1)(c), 28.724a(1)(b). Each of these three terms is defined differently,[5] and the overlapping definitions only add to the confusion.

---

[5] "Student" means a person "enrolled on a full- or part-time basis in a public or private educational institution, including but not limited to, a secondary school, trade school, professional institution, or institution of higher education." M.C.L. § 28.722 (p). "[I]nstitution of higher education" means "1 or more of the following: (i) A public or private community college, college, or university. (ii) A public or private trade, vocational, or occupational school." M.C.L. § 28.722(h). A "school" means "a public or private postsecondary school or school of higher education, including a trade school." M.C.L. § 28.727(g).

The parties agree that the education reporting requirements can reasonably be interpreted to mean enrollment or discontinuation of enrollment in (a) a public or private community college, college, or university for academic credit, or (b) a public or private postsecondary trade, vocational, or occupational school for training toward [state-recognized] certification or licensure. One-off classes and instructional courses not for academic credit or not for purposes of [state-recognized] certification or licensure would be excluded. Ex. A, ¶¶ 16-17. The parties disagree only about including the words "state-recognized." Without that qualifier, it would remain unclear whether the countless one-off classes and instructional courses that grant any form of certificate are reportable. A karate course that awards a "black belt" certificate could require reporting, as could a Y swimming class where one attains the rank of "flying fish." The very terms "trade, vocational, or occupational" school suggest studies toward *officially recognized* certification or licensure, not a piece of paper that "certifies" completion of, for example, a private pottery class.

**Online Classes**: M.C.L. § 28.724a(6) says that registrants need not report where higher education is "solely through the mail or the internet from a remote location." Neither SORA's definitional sections, nor M.C.L. § 28.725(1)(c) or § 28.727(1)(g), specifically set out that same exemption. The parties agree that all these provisions can reasonably be interpreted to mean that education solely through the mail or the internet from a remote location is not reportable. Ex. A, ¶¶ 18-19.

19

***Planned Attendance***: M.C.L. § 28.727(1)(g) requires reporting of "any school that has accepted the individual as a student that he or she plans to attend." It is impossible to know when a tentative plan to attend a school ripens into a reportable event. What if one's student loan is denied, or the car one would use to commute dies? Reporting is already required within three days of enrolling, M.C.L. § 28.724a(3)(b), so nothing is lost by enjoining potential enrollment that may never occur, and that is too vague to be determined objectively. Ex. A, ¶¶ 20(a), 21(a).

***Off-Campus Activities***: Registrants must report in person within three days if "[a]s part of his or her course of studies at an institution of higher education in this state, the individual is present at any other location in this state, another state, a territory or possession of the United States . . . ." M.C.L. § 28.724a(1)(b). Registrants cannot know what this means. All kinds of short-term travel—attending a conference, research at another school's library, or a two-hour field trip—can involve being "present" at another location as "part of [one's] course of studies." And if the point is to ensure enrollment at another campus, that is already covered. This provision is not susceptible to narrowing, and should be enjoined. Ex. A, ¶¶ 20(b)-21(b).

**Names and Nicknames:** Registrants must report their "legal name and any aliases, nicknames, ethnic or tribal names, or other names by which the individual is or has been known." M.C.L. § 28.727(1)(a). The parties agree that this can be reasonably interpreted to include the individual's current legal name, any former legal

name, and a name that the individual has used to identify themselves to law enforcement. Defendants want to include every non-legal name that a person has ever used to introduce themselves to others outside immediate family. While a registrant may understand that he has to report a *currently* used non-legal name, requiring reporting of every non-legal name one has ever used is vague. How can one know that one has to report calling oneself "Spiderman" in kindergarten? Ex. A, ¶¶ 22-23.

Registrants must also report within three days after "[t]he individual changes his or her name." M.C.L. § 28.725(1)(d). Plaintiffs believe that requirement can reasonably be interpreted to mean a change of one's legal name. Ex. A, ¶¶ 24-25.

**Physical Descriptions:** SORA requires a "complete physical description of the individual." M.C.L. § 28.727(1)(o). The parties agree that the term can reasonably be interpreted to mean race, sex, height, weight, eye color, hair color, and tattoos, and can be enforced as so interpreted. *See* Ex. A, ¶¶ 26-27.

**Substantially Similar Offenses:** SORA requires registration for offenses "substantially similar" to registrable Michigan offenses, M.C.L.§ 28.722(r)(xi), (t)(xiii), (v)(ix), but does not define "substantially similar." How one defines that term determines what test is used to decide whether an out-of-state offense is comparable to a Michigan one. (The Court has already determined *who* decides, but there is also a vagueness issue around *what* that adjudicator is deciding.) Plaintiffs believe a "substantially similar" offense is one comparable to a Michigan offense under the

21

"categorical approach" as set out in *Taylor v. United States*, 495 U.S. 575 (1990), and *United States v. Barcus*, 892 F.3d 228 (6th Cir. 2018). Clarification of what "substantially similar" means is particularly important because it impacts the potential resolution of Count XI (which the parties are still negotiating). The parties expect to reach agreement on "substantial similarity." Accordingly, they ask the Court to allow them to present any agreed-upon language in the joint statement due December 11, 2024, or, if they cannot agree, to provide supplemental briefing.

## III. DEFENDANTS' GLOBAL DEFENSES ARE UNAVAILING

Defendants offer several general arguments about vagueness. None holds up.

First, Defendants protest that violations must be "willful," M.C.L. § 28.729. But the addition of a "willfulness" requirement to establish criminal violations does not eliminate the law's vagueness. Where a "scienter requirement modifies a vague term," it cannot cure vagueness. *Planned Parenthood of Cent. N.J. v. Farmer*, 220 F.3d 127, 138 (3d Cir. 2000) (citation omitted) (scienter requirement could not save law where definition of abortion could potentially encompass almost all forms of abortion); *see also Nova Recs., Inc. v. Sendak*, 706 F.2d 782, 789 (7th Cir. 1983) ("scienter requirement cannot eliminate vagueness . . . if it is satisfied by an 'intent' to do something that is in itself ambiguous"); *Doe v. Harris*, 772 F.3d 563, 579 (9th Cir. 2014) (rejecting argument that scienter requirement sufficed: "notwithstanding the State's assurances that it will not prosecute 'honest mistakes,' we cannot assume

that, in subsequent enforcement, ambiguities will be resolved in favor of adequate protection" of constitutional rights).

SORA's "willful" requirement is "extremely murky." *People v. Lockett*, 659 N.W.2d 681, 682 (Mich. Ct. App. 2002). Specific intent is not required, *id.* at 683, and "minimal circumstantial evidence will suffice to establish the defendant's state of mind," *People v. Collins*, No. 328853, 2016 WL 7427153, at *1 (Mich. Ct. App. Dec. 20, 2016). For example, in *People v. Chesebro*, No. 301807, 2012 WL 2814106 (Mich. Ct. App. July 10, 2012), a registrant was convicted of willfully violating SORA even though he relied on police advice about which of multiple homes to register. The trial court found the defendant guilty despite his "legitimate misunderstanding" of SORA. *Id.* at *2. While Chesebro's conviction was ultimately vacated on appeal, registrants are routinely convicted of willful crimes when their defense is confusion about SORA.[6] The "willfulness" requirement does not protect them.

Defendants have similarly tried to turn the rule of lenity—which provides a shield from unjust prosecutions by requiring "ambiguous criminal laws to be interpreted in favor of the defendants," *United States v. Santos*, 553 U.S. 507, 514

---

[6] *See*, *e.g.*, *Lockett*, 659 N.W.2d 681 at 683 (reported address change to probation officer but not police); *People v. Quinn*, No. 323731, 2015 WL 7288036, at *2 (Mich. Ct. App. Nov. 17, 2015) (ignorance of law requiring reporting of employment is no defense); *People v. Blackmun*, No. 310280, 2013 WL 514365 (Mich. Ct. App. Feb. 12, 2013) (misunderstood education reporting requirements); *People v. Ward*, No. 343797, 2019 WL 3312538 (Mich. Ct. App. July 23, 2019) (did not understand that could register as homeless).

(2008)—into a sword. Implicitly admitting the law is vague, Defendants suggest that the remedy is to ignore vagueness questions until prosecutions occur. ECF No. 162, PageID.8828-8829. But "[t]he Constitution does not permit a legislature to set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large." *City of Chicago v. Morales*, 527 U.S. 41, 60 (1999) (cleaned up).

Second, Defendants say that if registrants understand basic requirements— like reporting their home address or personal phone number—the law is clear. But registrants must comply with *all* of SORA. Their confusion about the law causes them to drastically curtail their lives. Pls.' Facts, ECF No. 123-1, PageID.3820-3822, 3851-3867. Defendants try to recast this confusion as about hypotheticals. But it is not hypothetical if you go to prison for three years because you did not understand that you had to report your school email address. *Id.*, PageID.3873 (describing KM).

Defendants similarly argue that if registrants are confused, they should do some research. But research does not help if there are no answers available. The statutory terms themselves are difficult to parse even for lawyers. The parties' attorneys here—who have spent years on this case—cannot even agree what the challenged SORA provisions mean. And most registrants won't even know where in SORA to look. MSP has not created educational materials for registrants, and its own staff testified that the two documents that do exist—the Explanation of Duties

24

form and a notice sent to registrants in 2021—are "very convoluted" and do not explain every requirement. When registrants seek answers from law enforcement, law enforcement won't answer, provides conflicting responses, or simply does not know. Pls.' Facts, ECF No. 123-1, PageID.3862-3864; Survey, ECF No. 123-23.

Third, Defendants ask the Court to ignore the law enforcement survey. Yet Judge Cleland relied on such surveys to find that law enforcement's "disparate views . . . exemplify the lack of . . . standardized guidelines for the enforcement of SORA's reporting provisions." *Does v. Snyder*, 101 F. Supp. 3d 672, 689 (E.D. Mich. 2015); *id.* at 688 (record showed that both "Plaintiffs and law enforcement are unsure" what SORA requires). Moreover, the MSP's SOR Unit manager, enforcement coordinator, and legal advisor were just as confused, even on common issues like if one must report renting a car. MSP Chart, ECF No. 123-5, PageID.3947.

Fourth, Defendants have argued that SORA cannot be vague because SORNA uses similar language. ECF No. 41, PageID.1357. But the existence of other laws with similar features does not immunize a statute from constitutional scrutiny. *See Smith v. Goguen*, 415 U.S. 566, 582 & n.31 (1974) (flag desecration law held unconstitutionally vague despite "universal adoption" of similar laws in all 50 states).

## CONCLUSION

The Court should grant summary judgment to Plaintiffs on Count VIII, and include the language proposed by Plaintiffs in the proposed judgment (Ex. A).

Respectfully submitted,

s/ Miriam Aukerman (P63165)
/s Dayja Tillman (P86526)
Attorneys for Plaintiffs
American Civil Liberties Union
  Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org


s/ Daniel S. Korobkin (P72842)
s/ Syeda Davidson (P72801)
American Civil Liberties Union
  Fund of Michigan
Attorney for Plaintiffs
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6824
dkorobkin@aclumich.org


Dated: November 27, 2024

s/ Paul D. Reingold (P27594)
Cooperating Counsel, American Civil
  Liberties Union Fund of Michigan
Attorney for Plaintiffs
Univ. of Michigan Law School
802 Legal Research Building
801 Monroe Street
Ann Arbor, MI 48109-1215
(734) 355-0319 - pdr@umich.edu


s/ Roshna Bala Keen (Ill. 6284469)
s/ Lauren Carbajal (Cal. 336485)
Loevy & Loevy
Attorney for Plaintiffs
Cooperating Counsel, American Civil
  Liberties Union Fund of Michigan
311 North Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 - roshna@loevy.com

26

## LOCAL RULE CERTIFICATION

I, Miriam Aukerman, certify that this document conforms to the page limits set forth in the Court's Order, ECF No. 161, and complies with terms set under the Local Rules.

s/ Miriam Aukerman (P63165)