UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JOHN DOES, et al.,<br>          Plaintiffs,<br><br>v.<br><br>GRETCHEN WHITMER, et al.,<br>          Defendants. | No. 2:22-cv-10209<br><br>Hon. Mark A. Goldsmith<br><br>Mag. J. Curtis Ivy, Jr. |

## PLAINTIFFS' MOTION FOR ENTRY OF JUDGMENT

For the reasons set forth in the accompanying brief, Plaintiffs ask that the

Court enter the judgment attached as Exhibit A to their brief using the language

proposed by Plaintiffs.

Respectfully submitted,

s/ Miriam Aukerman (P63165)
Attorneys for Plaintiffs
American Civil Liberties Union
  Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org

s/ Daniel S. Korobkin (P72842)
s/ Syeda Davidson (P72801)
American Civil Liberties Union
  Fund of Michigan
Attorney for Plaintiffs
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6824
dkorobkin@aclumich.org

s/ Paul D. Reingold (P27594)
  Cooperating Counsel, American Civil
    Liberties Union Fund of Michigan
  Attorney for Plaintiffs
  Univ. of Michigan Law School
  802 Legal Research Building
  801 Monroe Street
  Ann Arbor, MI 48109-1215
  (734) 355-0319 - pdr@umich.edu

s/ Roshna Bala Keen (Ill. 6284469)
s/ Lauren Carbajal (Cal. 336485)
Loevy & Loevy
Attorney for Plaintiffs
Cooperating Counsel, American Civil
  Liberties Union Fund of Michigan
311 North Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 - roshna@loevy.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JOHN DOES, et al.,<br><br>                Plaintiffs,<br><br>v.<br><br><br>GRETCHEN WHITMER, et al.,<br><br>                Defendants. | No. 2:22-cv-10209<br><br><br>Hon. Mark A. Goldsmith<br><br><br>Mag. J. Curtis Ivy, Jr. |

**PLAINTIFFS' BRIEF IN SUPPORT OF
MOTION FOR ENTRY OF JUDGMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................... iv

INTRODUCTION ......................................................................... 1

I.     Count I: Ex Post Facto – Pre-2011 Ex Post Facto Subclass.................. 1

    A.    Background: The Remedies in Does I, Does II, and Betts................ 2

    B.    The Remedy Must Reflect that the Ex Post Facto Clause
         Requires a Holistic Analysis of SORA. ........................... 5

    C.    The Court Should Give Defendants Two Options for
         Remedying the Ex Post Facto Violation. ......................... 7

    D.    Defendants' Proposed Judgment Language Is Inaccurate. .............. 11

    E.    The Period Necessary for Implementation Will Depend on
         the Relief Granted by the Court. ................................ 12

II.    Count II: Ex Post Facto and Due Process – Retroactive
     Extension of Registration Subclass ................................ 13

III.   Count III: Individualized Review – Due Process and Equal
     Protection – Primary Class ........................................ 16

IV.   Count IV: Equal Protection – Barred From Petitioning
     Subclass ......................................................... 16

V.    Count V: First Amendment – Reporting Requirements –
     Primary Class and Non-Sex-Offense Subclass...................... 16

VI.   Count VI: Due Process – Plea Bargain Subclass ................... 17

VII.  Count VII: Due Process and Equal Protection – Non-Sex-
     Offense Subclass................................................. 17

VIII. Count VIII: Due Process/Vagueness – Primary Class and Post-
     2011 Subclass ................................................... 20

IX.   Count IX: First Amendment/Admission of Understanding –
     Primary Subclass ................................................ 20

X.    Count X: First Amendment/Internet Reporting Requirements –
     Post-2011 Subclass .............................................. 20

XI.   Count XI: Due Process, Equal Protection, Privileges &
     Immunities – Non-Michigan Offense Subclass..................... 20

A.    The Judgment Should Accurately Reflect the Court's
      Decision. ........................................................................... 20

B.    The Categorical Approach Allows for Efficient
      Adjudication. ..................................................................... 22

C.    Counsel Is Required for Substantial Similarity
      Determinations Because They Involve Complex Legal
      Analysis. ............................................................................ 24

D.    Plaintiffs' Proposed Judgment Allows Either for Judicial
      Hearings or a Consolidated Process with Representation on
      Both Sides. ......................................................................... 28

XII.  Other Issues Requiring Resolution ........................................... 32

A.    Issues Recurring Throughout the Proposed Judgment ..................... 32

B.    Preservation of Claims Not Decided ................................ 33

C.    Implementation Deadlines and Defendants' Anticipated Stay
      Motions ............................................................................. 33

D.    Notice and Post-Judgment Monitoring .............................. 34

E.    Attorney's Fees and Costs ................................................ 35

CONCLUSION ................................................................................. 35

# TABLE OF AUTHORITIES

## Cases

*Collins v. Youngblood*, 497 U.S. 37 (1990) ...............................................................15

*Dep't of Pub. Safety v. Doe*, 425 P.3d 115 (Alaska 2018) ......................................27

*Doe v. Lee¸* 102 F.4th 330 (6th Cir. 2024)...............................................................4

*Doe v. Miami University*, 882 F.3d 579(6th Cir. 2018)...........................................26

*Doe v. Pryor*, 61 F. Supp. 2d 1224 (M.D. Ala. 1999) ...................................... 26, 27

*Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016)........................................ passim

*Does v. Snyder*, 449 F. Supp. 3d 719 (E.D. Mich. 2020) ........................... 1, 2, 3, 13

*Goldberg v. Kelly*, 397 U.S. 254 (1970) ........................................................... 25, 26

*Gonzalez v. State*, 980 N.E.2d 312 (Ind. 2013) ....................................................15

*Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402 (6th Cir. 2012) ...........34

*Grabarczyk v. Stein*, No. 5:19-CV-48-BO, 2020 WL 2441418 (E.D.N.C. May 12, 2020)...................................................................................................28

*Hicks v. Comm'r of Social Security*, 909 F.3d 786 (6th Cir. 2018).........................28

*Johnson v Zerbst*, 304 U.S. 458 (1938) ................................................................31

*Kansas v. Hendricks*, 521 U.S. 346 (1997)....................................................... 7, 8, 9

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ..................................................... 26, 27

*Meredith v. Stein*, 355 F. Supp. 3d 355 (E.D.N.C. 2018)......................................25

*Miller v. Caudill*, 936 F.3d 442 (6th Cir. 2019).........................................................5

*People v. Betts*, 968 N.W.2d 497 (Mich. 2021)............................................. 1, 3, 4, 5

*People v. Lymon*, No. 164685, 2024 WL 3573528, __N.W.__ 3d (Mich. Jul. 29, 2024) ...................................................................................................18

*Quispe Del Pino v. Md. Dep't of Pub. Safety & Corr. Servs.*, 112 A.3d 522
    (Md. Ct. Spec. App. 2015)........................................................................15

*Smith v. Doe*, 538 U.S. 84 (2003) ..............................................................5, 9

*State v. Letalien*, 985 A.2d 4 (Me. 2009)..................................................15

*Taylor v. United States*, 495 U.S. 575 (1990).....................................23, 24

*Texas Dep't of Pub. Safety v. Anonymous Adult Texas Resident*, 382 S.W.3d
    531 (Tex. Ct. App. 2012)........................................................................27

*United States v. Barcus*, 892 F.3d 228 (6th Cir. 2018).......................23, 27

*United States v. Berry*, 814 F.3d 192 (4th Cir. 2016).............................27

*United States v. Cabrera-Gutierrez*, 756 F.3d 1125 (9th Cir. 2014)......27

*United States v. Coulson*, 86 F.4th 1189 (8th Cir. 2023).........................27

*United States v. Morales*, 801 F.3d 1 (1st Cir. 2015) .............................27

*United States v. Walker*, 931 F.3d 576 (7th Cir. 2019) ..........................27

*Weaver v. Graham*, 450 U.S. 24 (1981) ...................................................15

**Statutes**

1994 Mich. Pub. Act 295 .......................................................................13, 14

1999 Mich. Pub. Act 85 ...............................................................................13

2005 Mich. Pub. Act 132 .............................................................................12

2011 Mich. Pub. Act 17 ...........................................................................11, 12

2020 Mich. Pub. Act 295 .............................................................................11

Mich. Comp. Laws § 28.723........................................................................22

Mich. Comp. Laws § 28.725........................................................................12

N.C. Gen. Stat. § 14-208.12B ......................................................................28

**Rules**

Fed. R. Civ. P. 53 ..................................................................................31

Fed. R. Civ. P. 65 ..................................................................................32

**Other Authorities**

Michigan Dep't of Labor and Econ. Opportunity, *Unemployed Worker Advocacy Program* ............................................................29

United States District for the Eastern District of Michigan, *Criminal Justice Act Plan* (May 25, 2023) ..............................................30

United States District for the Western District of Michigan, *Criminal Justice Act Plan* (October 18, 2017)........................................30

## INTRODUCTION

The parties have reached agreement on much of the language in the attached draft proposed judgment. (Exhibit A.) This brief focuses on the areas of disagreement that will require judicial resolution.

### I. Count I: Ex Post Facto – Pre-2011 Ex Post Facto Subclass

The remedy issues on the Count I are complex.[1] Plaintiffs recognize that the Court's opinion could be read to suggest that the Court envisioned severing a number of SORA's reporting provisions. That option, however, is not available. Severability is a question of state law, and in *People v. Betts*, 968 N.W.2d 497, 516 (Mich. 2021), the Michigan Supreme Court made clear that a court cannot sever reporting requirements to make SORA non-punitive. Similarly, Judge Cleland, in *Does v. Snyder*, 449 F. Supp. 3d 719, 738 (E.D. Mich. 2020) (*Does II*), held that to remedy the ex post facto violation, SORA's retroactive application had to be enjoined entirely.

Accordingly, Plaintiffs seek relief on Count I that is consistent with *Betts*. As in *Does II*, the Court should enjoin retroactive enforcement of SORA. In addition, because the Court should endeavor to salvage the statute where possible, the Court should give the state an additional option: that Defendants can continue enforcing

---

[1] Plaintiffs structured their summary judgment motion to focus on liability, asking that remedy be briefed afterward. ECF No. 123, PageID.3605, ¶ 12. When Defendants raised severability—without even mentioning that *People v. Betts*, 968 N.W.2d 497 (Mich. 2021), held that the unconstitutional provisions of SORA 2011 were not severable, ECF No. 129, PageID.7197-7200—Plaintiffs flagged the *Betts* issue in their reply, and requested briefing on severability. ECF No. 131, PageID. 7974.

SORA retroactively provided there are opportunities for periodic individual review.

A.      **Background: The Remedies in *Does I*, *Does II*, and *Betts*.**

After the Sixth Circuit held in *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016) (*Does I*), that SORA 2011 was punishment, the parties briefed remedy on remand. The plaintiffs—wrongly assuming that the legislature would quickly amend SORA to redress its constitutional deficiencies—then stipulated to a judgment that took the plaintiffs off the public registry, restored their original registration terms, eliminated immediate reporting, and limited the information they had to report at verification. *Does I*, No. 2:12-cv-11194, ECF Nos. 146, 147, 153.

When the state continued to apply the unconstitutional law to all other registrants, plaintiffs filed *Does II* seeking class-wide relief on every claim for which liability had been granted in *Does I*. The court enjoined enforcement of *any* provision of SORA against the ex post facto subclasses. *Does II*, 449 F. Supp. 3d at 738. Judge Cleland rejected the defendants' argument that the Sixth Circuit had only invalidated certain provisions of SORA, explaining that the Court of Appeals:

> addressed the aggregate impact of the 2006 and 2011 amendments, making no distinction between particular provisions. In fact, the court specifically declined to address the plaintiffs' remaining constitutional challenges to SORA because "none of the contested provisions may now be applied to the plaintiffs in this lawsuit, and anything [the court] would say on those other matters would be dicta" . . . . This court cannot now impose additional limits to the Sixth Circuit's decision and must read *Does I* as broadly—and quite clearly—invalidating all portions of the 2006 and 2011 amendments as applied to the members of the ex post facto subclasses.

2

*Id.* at 729 (quoting *Does I*, 834 F.3d at 706). Judge Cleland further concluded that the 2011 amendments were not severable because they "permeate[d] nearly every section of the statute" and "almost entirely rewrote" SORA. *Id.* at 732. Accordingly, the court enjoined retroactive application of the statute *in toto*. *Id.* at 735.

Finally, and most importantly, in *Betts*, the Michigan Supreme Court, after concluding that SORA 2011 was punishment, held that the statute *as a whole* could not be retroactively applied:

> [E]ven assuming that the retroactive application of the 2011 SORA without the specific provisions added by the 2006 and 2011 amendments would not violate constitutional ex post facto protections, the 2006 and 2011 amendments, in whole, cannot be excised from retroactive application because doing so renders the statute unworkable.

*Betts*, 968 N.W.2d at 516. The Michigan Supreme Court further explained that

> certain discrete provisions of the . . . 2011 amendments—including . . . the *in-person reporting requirements of M.C.L. § 28.725(1)* []—could be excised without affecting the statute's workability. However, even if the retroactive application of SORA without these discrete provisions were constitutional, that application would require this Court to engage in essentially legislative choices. Should this Court remove all in-person reporting requirements or only those beyond residence and employment changes? Should this Court retain the in-person reporting requirements but remove the "immediate" timeliness requirement? Or retain the reporting requirements and their timeliness requirement but remove the "in-person" requirement? . . . We decline to encroach on the Legislature's plenary authority to create law or on its role in shaping and articulating policy by choosing among the plethora of possibilities.

*Id.* (emphasis added).

The Court also rejected revival as a remedy both because "it is unclear

whether revival of earlier SORA formulations is consistent with the Legislature's intent," and because "the sheer volume of past versions of SORA poses significant administrative difficulties for the Michigan State Police in attempting to define and enforce multiple different registry schemes and for registrants in attempting to adhere to the requirements of an out-of-date registry scheme." *Id.* at 520-21.

In sum, *Betts* directly answers controlling questions of state law and forecloses Defendants' argument that the Court should simply enjoin some subsections of M.C.L. § 28.725—the very provision discussed in *Betts*. Even if SORA remained workable without those provisions, the Michigan Supreme Court has made unequivocally clear that courts may not encroach on the legislative role in this way.

Defendants may point to *Doe v. Lee*¸ 102 F.4th 330 (6th Cir. 2024), as allowing for provision-by-provision analysis. But *Lee* recognized that state law governs severability and revival. *Id.* at 340. *Betts*, not *Lee*, controls on those issues here.

Moreover, *Lee* misread *Does I.* The *Does I* court held that the plaintiffs' other legal challenges "will have to wait for another day because *none* of the contested provisions may now be applied to the plaintiffs." 834 F.3d at 706 (emphasis added). The other "contested provisions" included vague reporting provisions, retroactive lifetime registration, strict liability, reporting of internet identifiers, breaching plea agreements, and restricting parenting, travel, and employment. *Does v. Snyder*, No. 15-1536, ECF No. 24-1; No. 15-2346, ECF No. 32-1 (6th Cir.). Had the *Does I*

4

decision concerned only exclusion zones and in-person reporting, the plaintiffs' challenge to other "contested provisions" would not have been moot. For example, the *Does I* plaintiffs would still have had a challenge to the reporting of internet identifiers, even if they were no longer subject to exclusion zones and in-person reporting. This Court must follow *Does I*, because the panel in *Lee* could not over-turn the earlier *Does I* decision. *Miller v. Caudill*, 936 F.3d 442, 447 (6th Cir. 2019).

## B.   The Remedy Must Reflect that the Ex Post Facto Clause Requires a Holistic Analysis of SORA.

The analytical framework for ex post facto violations is also important when considering remedies. *Smith v. Doe*, 538 U.S. 84 (2003), requires courts to determine whether a "statutory scheme" is punitive, not whether individual provisions, stand-ing alone, are punishment. *Id*. at 92. In *Smith*, the Supreme Court considered the Alaska statute as a whole, asking whether "the statutory scheme," the "regulatory scheme," or "the Act" imposed punishment. *Id.* at 92, 94, 96-97, 99, 104-05. To determine legislative intent, the Court looked at "the statute's text and its structure." *Id.* at 92. The Court also applied the *Mendoza-Martinez* factors to the "regulatory scheme," *id.* at 97, considering the entirety of the statute and "how the effects of the *Act* are felt by those subject to it." *Id.* at 99-100 (emphasis added). The Court did not ask whether any one provision was punitive, but whether the statute writ large imposed punishment. *See also Betts*, 968 N.W.2d at 516 (analyzing "the aggregate effects of the 2011 SORA rather than the effects of each individual amendment").

5

Thus, even if a single obligation standing alone might not be punishment, the combined effect of many obligations may render a statute punitive. Whether a law's cumulative burdens constitute punishment depends on how many restrictions it imposes; the duration, magnitude, and interplay of those restraints; the penalties for violations; and the connection between those restrictions and the state's public safety goals. For example, a statute that provides registrants with the opportunity for removal is less punitive than one where a conviction alone triggers unreviewable lifetime registration. *See*, *e.g.*, *Does I*, 834 F.3d at 705 (finding SORA punitive in part *because* "the statute makes no provision for individualized assessments of proclivities or dangerousness" and "categorizes [people] into tiers ostensibly corresponding to present dangerousness without any individualized assessment thereof"). Similarly, the punitiveness of reporting requirements depends on whether registrants must verify only basic information for a brief period or must comply with highly technical and expansive reporting duties for life; whether, how quickly, and in what manner they must report changes; and whether people face lengthy prison sentences for noncompliance. *Does I*, 834 F.3d at 697, 703 (emphasizing both that SORA "has grown into a byzantine code governing in minute detail the lives of the state's sex offenders" and that failure to comply can result in "serious punishment, including imprisonment"). Under a holistic analysis, a court cannot pick and choose which parts of SORA to excise in order to make it constitutional.

### C.   The Court Should Give Defendants Two Options for Remedying the Ex Post Facto Violation.

This Court having found SORA to be punitive, there are two ways in which the state could impose registration retroactively on people with pre-2011 offenses.

First, the Michigan legislature could amend SORA to make it non-punitive. A math analogy illustrates the problem. Imagine SORA tipping the scales from permissible regulation to impermissible punishment when it hits 100 points, with each harsh feature adding to the point total (e.g., 50 points for public shaming, 30 points for in-person reporting, 20 points for reporting of extensive information, 40 points for no option for removal, 30 points for serious criminal penalties, etc.). To get back under 100 points, the legislature can choose which provisions or combination of provisions to eliminate. For example, it could create a non-public registry but leave in place in-person reporting. It could create options for removal and limit reporting to phone or email notification of address changes. The point here is not that these particular combinations would necessarily be constitutional, but that there are many options for what to subtract to make SORA non-punitive. This Court cannot tell the legislature how to solve the math problem.

The second path to constitutionality is for the state to convert the current punitive regime into a regulatory one by limiting its application to people who present a danger. In *Kansas v. Hendricks*, 521 U.S. 346, 368-71 (1997), the Supreme Court held that civil commitment of certain people who committed sex offenses did

7

not violate the Ex Post Facto Clause because commitment was based on *individualized determinations of current dangerousness*. The challenged statute was not punitive because it "unambiguously requires a finding of dangerousness," not just a past conviction. *Id.* at 357. Civil commitment was deemed regulatory because it was imposed through a regularly-reviewed, procedurally-safeguarded finding that the *individual* was likely to reoffend, and because the state "permitted immediate release upon a showing that the individual [was] no longer dangerous." *Id.* at 368-69. The regulatory, non-punitive nature of the scheme was demonstrated by the fact that the state had "taken great care to confine only a narrow class of particularly dangerous individuals, and then only after meeting the strictest procedural standards." *Id.* at 364. Imposing such restraints *based on past convictions* would have been punishment and would have violated the Ex Post Facto Clause. But because the law applied only to people individually determined to be dangerous, the law was non-punitive. Even severe restraints can be non-punitive if based on individualized risk.

Here, as in *Hendricks*, individual review can ensure that SORA serves a regulatory public protection goal rather than being punitive. Imposing restrictions on people who in fact pose a danger is a legitimate form of civil regulation. Convictions alone would no longer result in unreviewable, automatic, long-term or permanent (lifetime) registration. In short, individual review cures the ex post facto problem and allows SORA's otherwise punitive restrictions to be imposed retroactively.

If Defendants want to continue applying the *current* SORA retroactively, basing registration on individual risk determinations rather than convictions provides a sure path to do so because it makes the statute non-punitive despite the severe restraints it imposes.[2] By contrast, if the state eliminates a few SORA requirements, it will be unclear if that solves the math problem.[3] If the state once again makes only minimal changes, as it did in 2021, the parties are likely to disagree on whether the amended SORA remains punitive. After 13 years of ex post facto litigation, the state may prefer to resolve the issue by using individual review to make SORA a regulatory statute. This option will also permit the state to have one set of registration rules that can be applied both prospectively and retroactively.

Plaintiffs recognize that the Court rejected their argument in Count III that all registrants have a constitutional right to individual review. But the question on Count I is different. Here the question is: should the Court, in setting out the *remedy* for an ex post facto violation, simply enjoin retroactive application of SORA, or should the Court *also* give the state the *option* of continuing to apply SORA 2021 retroactively

---

[2] The state would still need to comply with other constitutional limits on SORA.

[3] Whether the absence of individualized review violates the Ex Post Facto Clause depends on "[t]he magnitude of the restraint." *Smith*, 538 U.S. at 104. Whereas laws with "minor" consequences can be applied based merely on a prior conviction, *id.*, laws that impose serious consequences—like the current version of SORA—require individual proof of dangerousness. *Hendricks*, 521 U.S at 357. As an alternative to individual review, the legislature could also reduce the "magnitude of the restraint."

if the state provides individual review?

The Court could, like Judge Cleland, simply enjoin retroactive application of SORA. But Plaintiffs' requested relief—enjoining retroactive application of SORA absent an individualized, periodic determination that the person presents a danger—gives the state *more* options. Prop. J., ¶¶ 2-4. To be clear, Plaintiffs' proposed judgment in no way mandates individual review nor infringes on legislative choices. Rather, it allows the state to either (1) amend SORA to remedy the cumulative constitutional problems so that it is no longer punitive, or (2) keep the existing law but limit its retroactive application to those individually determined to be a danger.

Nor would the state necessarily need to review all members of the pre-2011 ex post facto subclass. For example, given that SORA is one of the country's largest registries and captures a huge range of offenses, the state might decide to limit who is subject to retroactive registration and therefore requires review. Or, given that recidivism rates drop off dramatically over time, the state might decide not to impose SORA retroactively on those who have lived successfully in the community for years. Then, only those recently released would need to be individually reviewed. The fact that many registrants have already been risk-assessed by the MDOC—both upon their arrival at prison and upon their release—would facilitate such a process. Pls' Facts, ECF No. 123-1, PageID.3770-3774. There are many options if the state wants to use individual review and keep SORA's onerous restrictions.

10

### D.    Defendants' Proposed Judgment Language Is Inaccurate.

Plaintiffs submit that the Court cannot remedy SORA's deficiencies by, as Defendants propose, enjoining the very same reporting requirements that *Betts* held cannot be severed. If the Court were nevertheless to adopt that approach, then the judgment should accurately set out the nature of Plaintiffs' claim and state that the Court is denying Plaintiffs' requested relief so that Plaintiffs can appeal.[4] Defendants' language fails do to do so. Prop. J., ¶ 5.

Defendants propose to enjoin only immediate *in-person* reporting required under Mich. Comp. Laws § 28.725(1), (2), (3), (7)-(8).[5] In their vagueness briefing, Defendants argue that registrants must report within three days every time they borrow a friend's phone, drive any car, or shovel a neighbor's driveway (as a favor or for money). Defs' Brf., ECF No. 162. Yet now Defendants see no ex post facto problem with piling on such expansive reporting requirements so long as reporting

---

[4] For example, the Court might order that "Plaintiffs are granted summary judgment on Count I, which challenged the retroactive application of SORA, as amended effective March 24, 2021, to people whose offense requiring registration was committed before July 1, 2011. The Court grants relief as set out below, but denies the relief sought by Plaintiffs, namely enjoining Defendants from retroactively applying SORA to Does A, B, C, D, E, G, Mary Doe, and Mary Roe and the pre-2011 ex post facto subclass absent an individualized periodic determination that the person is currently a danger to public safety." Prop. J., ¶ 5, n. 2.

[5] In 2011, the provisions that are now Mich. Comp. Laws § 28.725(1), (2), (3), (7), and (8) were added, but were differently numbered. *See* 2011 Mich. Pub. Act 17, sec. 5(1), (2), (6), (7). In 2021, then-subsection (1) was split into two subsections, and the subsequent subsections renumbered. *See* 2020 Mich. Pub. Act 295, sec. 5.

is not in person. The Sixth Circuit, by contrast, was concerned not just with in-person reporting, but also with the minutiae that SORA imposes on registrants. *Does I*, 834 F.3d at 697. Three-day reporting of the vast amount of information required by the 2011 amendments—data which the record shows is not even used, ECF No. 123-1, PageID.3746-3748—is punitive, whether it is in person or not. If, despite *Betts*, the Court concludes that it can sever, it should enjoin the retroactive application of all such minute reporting that was added in 2011, allowing only the core information (home addresses, work, and school), provided those are not in-person reporting.[6]

### E. The Period Necessary for Implementation Will Depend on the Relief Granted by the Court.

If the Court grants Plaintiffs' requested relief, the Court may wish to give the state time to amend the law or to implement individual review. The parties agree on a 90-day implementation period, Prop. J., ¶ 72(a), which is one month longer than

---

[6] Before 2011, registrants had to report address, employment, and educational changes, but did not need to do so in person. They also had ten days (not three) to update their information. *See* 2005 Mich. Pub. Act 132, sec. 5(1)(a). Defendants' proposed injunction should therefore properly read: "IT IS FURTHER ORDERED that Defendants, their officers, agents, servants, employees, and attorneys, and other persons in active concert or participation with them, are permanently enjoined from requiring Does A, B, C, D, E, G, Mary Doe, Mary Roe, and the pre-2011 ex post facto subclass to comply with the following provisions of SORA or enforcing those provisions against them: Mich. Comp. Laws § 28.725(1), (2), (3), (7), and (8). *See* 2011 Mich. Pub. Act 17, sec. 5. This injunction does not bar Defendants from requiring non-in-person reporting of changes to residential addresses, employment, and education consistent with the relief ordered on Count VIII and provided that registrants receive written notice of any such requirements." Prop. J., ¶ 7, n. 4.

what Judge Cleland gave the legislature in *Does II*. *See id*., 449 F. Supp. 3d at 737.

If, however, the Court grants Defendants' request to enjoin only a few reporting

requirements, then relief should be effective immediately as to enforcement, with 90

days for Defendants to update forms and database fields (like Counts VIII and X).

## II.    Count II:  Ex Post Facto and Due Process – Retroactive Extension of Registration Subclass

In Count II, Plaintiffs alleged that retroactively requiring a person to register

for life violates both the Constitution's Due Process and Ex Post Facto Clauses and

sought to bar enforcement of SORA for a term longer than that in effect at the time

of the registrant's offense. Am. Compl., ECF No. 108, PageID.2982. The subclass

was defined as "members of the primary class who were retroactively required to

register for life as a result of amendments to SORA." Ord. Grant. Class Cert., ECF

No. 35, PageID.1117. Plaintiffs intentionally defined the subclass to include anyone

whose term was retroactively extended. This is because SORA was not amended just

in 2011 to extend registration terms for pre-2011 registrants, but also in 1999 to

retroactively extend registration terms for pre-1999 registrants. *Compare* 1994

Mich. Pub. Act 295, sec. 5(3)-(4), *with* 1999 Mich. Pub. Act 85, sec. 5(6)-(7).

Similarly, on Count VI (plea claim), Plaintiffs sought to enjoin Defendants from

requiring registration for a term longer than that in effect at the time of a registrant's

plea. Am. Compl., ECF No. 108, PageID.2983. Plaintiffs did not limit either Count

II or VI to retroactive extension of registration terms that occurred only in 2011.

13

Having prevailed on Count II, Plaintiffs ask this Court to enter the relief they requested: to enjoin registration for longer than the term in effect at the time of the offense.[7] *See* Prop. J., ¶ 11 (green). Defendants, by contrast, want the Court to order that the registration terms revert only to what was in effect in 2010, before the 2011 amendments. *Id.*, ¶¶ 10-11 (blue).

Defendants' proposed text contradicts this Court's opinion and would require more litigation before a judgment could enter. The Court decided that it did not need to reach the plea claim because it "has now determined that SORA 2021 violates the Ex Post Facto Clause, which ruling will prohibit retroactive enforcement of amendments to SORA," meaning that "no plea agreements will be retroactively modified." ECF No. 158, PageID.8731-8732. The Court also found it unnecessary to decide Plaintiffs' due process arguments on Count II. *Id.*, PageID.8679, n.16. If Defendants' proposed relief were adopted, both issues would still need to be litigated because some registrants, such as those who pled guilty and whose terms were extended before 2011, would be excluded from relief. For example, a person who pled in 1998 to an offense with 25-year registration which was retroactively extended to life in 1999 would not get Count II ex post facto relief under Defendants' proposal, but

---

[7] For registrants whose offense predated the creation of SORA, Plaintiffs can agree to look to the term on October 1, 1995, when SORA first went into effect. As a practical matter, it has been more than 25 years since their offenses were committed, and 25 years was the standard registration term when SORA was first adopted (except for those who reoffended). 1994 Mich. Pub. Act 295, sec. 5(3)-(4) (1995).

*would* still have a Count II due process claim and a Count VI plea claim. Judicial economy counsels against Defendants' proposed relief, since that would require extensive additional litigation to resolve those claims. Plaintiffs' experts report that there are only a few people for whom the result differs under the two approaches.

Moreover, the appropriate relief under the Ex Post Facto Clause is to restore the original registration terms. Ex post facto doctrine is grounded in the understanding that the law may not "inflict[] a greater punishment[] than the law annexed to the crime[] **when committed**." *Collins v. Youngblood*, 497 U.S. 37, 42 (1990) (emphasis altered). *See also Weaver v. Graham*, 450 U.S. 24, 30 (1981) (legislature may not increase punishment "beyond what was prescribed when the crime was consummated"). Therefore, the proper remedy is "to apply, if possible, the law in place when [the] crime occurred." *Id.* at 36, n.22. Other courts, after finding that retroactive extension of registration terms violates the Ex Post Facto Clause, have restored the registrant's original registration term.[8]

Defendants' contrary argument is not grounded in caselaw, but solely in footnote 31 of the Court's opinion. Plaintiffs' reading of that footnote is that the Court was simply unaware that some registrants' terms were extended in 1999. The more telling statement in the Court's opinion is that the plea claim is moot, which it will

---

[8] *See, e.g.*, *Gonzalez v. State*, 980 N.E.2d 312, 321 (Ind. 2013); *Quispe Del Pino v. Md. Dep't of Pub. Safety & Corr. Servs.*, 112 A.3d 522, 523, 533 (Md. Ct. Spec. App. 2015); *State v. Letalien*, 985 A.2d 4, 26 (Me. 2009).

not be if registrants' terms are not restored to the original registration term.

A 45-day period for removal of people who have completed their original registration terms (with immediate removal of the three such named Plaintiffs) is reasonable. Prop. J., ¶¶ 12, 72(b). Plaintiffs have offered to provide a list of the roughly 5,400 subclass members identified by Plaintiffs' experts as meeting the removal criteria. There are only a small number of cases for which further review is needed, generally due to missing data (e.g., missing offense commission date).

Going forward, the MSP would remove people when their registration terms expire, something it already does as a matter of course. Prop. J., ¶¶ 13, 72(b). If helpful to Defendants, Plaintiffs' experts can provide recalculated registration end-dates for subclass members who have not yet completed their original registration terms. Defendants would have 60 days to notify subclass members either that (a) they are being removed; or (b) they are now subject to SORA for the length of their original registration term and when they will complete that term. *Id.*, ¶¶ 14, 72(b).

### III. Count III: Individualized Review – Due Process and Equal Protection – Primary Class

The judgment sets out that Defendants were granted summary judgment.

### IV. Count IV: Equal Protection – Barred From Petitioning Subclass

The judgment sets out that Defendants were granted summary judgment.

### V. Count V: First Amendment – Reporting Requirements – Primary Class and Non-Sex-Offense Subclass

The judgment sets out that Defendants were granted summary judgment.

## VI.  Count VI:  Due Process – Plea Bargain Subclass

The proposed judgment includes agreed-upon language denying this claim as moot because the Court is granting relief on Count II that bars retroactive extension of registration terms. But as noted, this claim will be moot only if the Court grants Plaintiffs' requested relief on Count II. If the Court uses Defendants' proposed language on Count II, the Court will still need to decide the merits of the plea claim.

## VII.  Count VII: Due Process and Equal Protection – Non-Sex-Offense Subclass

The Court held that as a matter of due process, a "judicial determination []
must be afforded to people convicted of offenses without a sex element." Op., ECF No. 158, PageID.8738. Plaintiffs' language requires a judicial determination. Defendants' does not. Prop. J., ¶¶ 19-25. Moreover, Plaintiffs did not bring just a due process challenge. They also alleged that it violates equal protection to deny the non-sex offense subclass the procedural protections that other people convicted of non-sexual offenses receive under SORA's "catch-all" provision (Mich. Comp. Laws §§ 28.722(r)(viii), 769.1(12)). Am. Compl., ECF No. 108, PageID.2972. The judgment language proposed by both Plaintiffs and Defendants states that it is not necessary for the Court to reach the equal protection issue because the relief ordered for the due process violation is coextensive with the relief for an equal protection violation. Prop. J., ¶ 19. But that will be true only if the relief includes procedural protections equivalent to those of a catch-all hearing: the right to notice, an

17

opportunity to be heard, counsel, a judicial decision-maker, and appeal. The simplest way to ensure *equivalent* process is to provide the *same* process. Holding "catch-all" hearings is also a familiar process for judges, prosecutors, and defense counsel.

Plaintiffs' text tracks the language of the catch-all provision, and provides that, if there are determinations under the catch-all procedures, *that* satisfies the judicial hearing requirement. Prop. J., ¶ 23(a)-(c) (green). Defendants, by contrast, not only propose a *non-judicial* decision-maker, but fail to specify who would fill that role, what the process would be, or how decisions would be made in future cases[9] or for people with non-sex convictions from other jurisdictions.

It is likely that only a handful of catch-all hearings will be needed. Many sub-class members have been removed from the registry pursuant to *People v. Lymon*, No. 164685, 2024 WL 3573528, __N.W.__ 3d (Mich. Jul. 29, 2024). Plaintiffs have worked to reduce the number of hearings further by agreeing that the state need not provide hearings where a registrant has another registrable offense with a sexual element that (1) results in a registration term as long or longer than that for the non-sex offense, or (2) involved the same offense conduct on the same date against the same victim. In the few cases needing hearings, MSP can either intervene in the

---

[9] Defendants say that the subclass will not increase. Jt. Stmt., ECF No. 164, PageID.8926. But there will be people convicted in the future of these offenses. It should be easy to use the "catch-all" provision during sentencing to ensure that a judicial determination is made as to whether the offense was sexual in nature.

criminal case or to ask local prosecutors to conduct catch-all hearings. *Id.*, ¶ 23(f). Hearings should be "opt out," not "opt in." *Id.*, ¶ 23(g). If the state wants to register a "sex offender," *it* must establish that the person committed a sex offense. It is improper to put the burden on the person to ask for a hearing.

Plaintiffs' language is carefully crafted so that it does not mandate catch-all hearings, but rather simply states that hearings under Mich. Comp. Laws § 769.1(12) are satisfactory. If Defendants or the legislature wish to develop some other procedure, they can do so, but they must give Plaintiffs notice so that the adequacy of any alternative procedure can be assessed. Prop. J., ¶ 25. For example, if a consolidated hearing system is established to implement relief on Count XI for the non-Michigan subclass, Plaintiffs might be open to utilizing some version of that procedure for the non-sex offense subclass, provided there are equivalent due process protections to catch-all hearings, including appointed counsel.

Finally, while Plaintiffs can agree that hearings are likely unnecessary for some subclass members who have additional registrable convictions or are incarcerated, *id.*, ¶ 23(d)-(e), and can also agree that the MSP may decide in the first instance whether a registrant is eligible for a hearing, Plaintiffs disagree with Defendants' position that subclass members whom the MSP deems ineligible for a hearing get no process whatsoever. Subclass members should be notified about why they are not getting a hearing and should be able to challenge that decision, e.g., by

alerting MSP as to why they qualify for a hearing, or, if still denied, going to court to seek a hearing. Prop. J., ¶ 24. Plaintiffs' counsel found errors in Defendants' spreadsheets setting out hearing eligibility for this subclass. Subclass members must be able to challenge the denial of a hearing in a case in which the MSP gets it wrong.

## VIII.   Count VIII:  Due Process/Vagueness – Primary Class and Post-2011 Subclass

ECF No. 163 sets out Plaintiffs' position. The parties now agree on the meaning of "substantially similar" in Mich. Comp. Laws § 28.722(r)(xi), (t)(xiii), (v)(ix). The updated proposed judgment shows issues that still require a judicial decision.

## IX.   Count IX: First Amendment/Admission of Understanding – Primary Subclass

The proposed judgment sets out agreed-upon language on Count IX, where the Court granted summary judgment to the Plaintiffs. *See* Prop. J., ¶¶ 57-59.

## X.   Count X: First Amendment/Internet Reporting Requirements – Post-2011 Subclass

The proposed judgment sets out agreed-upon language on Count X, where the Court granted summary judgment to the Plaintiffs. *See* Prop. J., ¶¶ 60-62.

## XI.   Count XI: Due Process, Equal Protection, Privileges & Immunities – Non-Michigan Offense Subclass

### A.   The Judgment Should Accurately Reflect the Court's Decision.

For people with non-Michigan convictions, the Court held that (1) a judicial hearing is required, and (2) they may not be treated more harshly than people with Michigan convictions. Op., ECF No. 158, PageID.8738-8744. Plaintiffs' language

20

captures those holdings. Defendants' language does not. Prop. J., ¶¶ 64-65.

First, the Court required a *judicial* hearing, not just a neutral decision-maker. *See* Op., ECF No. 158, PageID.8741 ("allowing judges to make the final decision regarding an individual's registration requirements is the best way to protect the constitutional interests of that individual").

Second, Plaintiffs' proposed language accurately reflects the Court's decision that people with non-Michigan convictions cannot be treated more harshly than people with Michigan convictions. *See id.*, PageID.8742-43 (holding that imposing longer registration terms for non-Michigan offenses or requiring registration for offenses not registrable in Michigan violates equal protection). Plaintiffs' language bars registration terms that are longer or harsher than for substantially similar Michigan convictions, that are based on non-Michigan offenses for which there is no substantially similar Michigan offense, or where due to a person's age, type of adjudication or similar factors, the offense is not registrable in Michigan. Prop. J., ¶¶ 66-67. These provisions ensure—consistent with this Court's opinion, Op., ECF No. 158, PageID.8742, nn. 58, 59—that a child under the age of 14 or a person convicted of sex with a 17-year-old need not register under Mich. Comp. Laws § 28.723(1)(d), even if subject to registration in the convicting state, because such persons are not subject to registration in Michigan. Plaintiffs' language also ensures that a person whose substantially similar Michigan offense results in 25-year

21

registration will not be subject to lifetime registration based on another state's laws.

By contrast, Defendants' proposed judgment *totally ignores* the Court's equal protection ruling and would allow MSP to continue doing exactly what the Court said it could not do: impose harsher requirements on people with non-Michigan convictions based on the registration requirements of other states. Contrary to the Court's opinion, under Defendants' proposed judgment language, registration would be required in Michigan whenever it is required in another state—whether that is for a 13-year-old child adjudicated of a sex offense or a person convicted of sex with a 17-year-old. Not only do Defendants entirely omit ¶¶ 66-67 (which captures the equal protection ruling), but Defendants' reference in ¶ 65 to Mich. Comp. Laws § 28.723(1)(d) (providing for registration based on other states' laws) appears to be an attempt to allow harsher registration requirements where other states have harsher laws—even though the Court held that to be unconstitutional. Finally, Defendants would treat people with non-Michigan convictions who are also members of the retroactive extension of registration terms subclass worse than members of that sub-class with Michigan convictions. *See* Prop. J. ¶ 68 (blue). Equal treatment requires that registration terms for people with non-Michigan convictions be the same as those for people with substantially similar Michigan convictions. *Id.* (green).

## B.   The Categorical Approach Allows for Efficient Adjudication.

The parties agree that "substantial similarity" determinations should be made

under the "categorical approach," which the Sixth Circuit uses when comparing state sex offenses to federal offenses to determine tier classification in federal SORNA prosecutions. The "categorical approach" uses only the elements of the offense; one compares "what the state law offense requires—not what an individual defendant did." *United States v. Barcus*, 892 F.3d 228, 232 (6th Cir. 2018). Thus, in *Barcus*, the district court erred in assigning the defendant to Tier III because his state crime did not require specific intent, while the federal crime used to classify him as a Tier III registrant did. *Id* at 234.

Under the categorical approach, the substantial similarity determinations here will be purely legal ones: one must compare the elements of the out-of-state crime to the elements of Michigan offenses to determine if there is a substantially similar offense, and if there is, to then assign the tier/registration term. This considerably simplifies the relief on Count XI. The MSP will not have to retrieve documents from out-of-state courts—documents which may be difficult or impossible to obtain for decades-old convictions. Nor will it be necessary to conduct mini-trials about registrants' long-ago conduct or to resolve thorny evidentiary problems (like which documents are admissible and whether registrants can present witnesses). *See Taylor v. United States*, 495 U.S. 575, 601 (1990) ("[The] practical difficulties and potential unfairness of a factual approach are daunting. In all cases where the Government alleges that the defendant's actual conduct would fit the generic definition of [a

Michigan crime], the trial court would have to determine what that conduct was.").

The categorical approach also simplifies the process because, while there are over 3,000 registrants with non-Michigan convictions, there are only about 785 different out-of-state offenses. If the elements of a specific Ohio offense match a certain Michigan offense, that will usually be true not just for the first registrant, but for other registrants convicted of the same Ohio offense at the same time. The fact that almost all decisions about a given non-Michigan offense should come out the same way (e.g., Ohio offense X is substantially similar to Michigan offense Y) creates an opportunity for consolidation and efficiency in adjudication, as discussed below.

### C.  Counsel Is Required for Substantial Similarity Determinations Because They Involve Complex Legal Analysis.

This Court has not yet decided the "specific form of judicial determination that must be afforded to people with out-of-state convictions." Op., ECF No. 158, PageID.8744. The Court should require a judicial hearing where there is (1) notice setting out the basis for the state's substantial similarity determination; (2) an opportunity to be heard; (3) the right to counsel, including appointed counsel if indigent, and the (4) the right to appeal. Prop. J., ¶¶ 64-65. The first two requirements are self-explanatory. The counsel and appeal provisions reflect the weight of the interest affected and the complexity of cross-jurisdictional comparisons.

"The substantial similarity determination [between in-state and out-of-state sex offenses] is a complicated one." *Meredith v. Stein*, 355 F. Supp. 3d 355, 365

(E.D.N.C. 2018). As this Court found different people may reach different conclusions about whether a given non-Michigan offense is substantially similar to a given Michigan offense; moreover, a non-Michigan offense may be similar to multiple Michigan offenses. Op., ECF No. 158, PageID.8740. For example, while Plaintiffs believe that Mary Doe's and Doe G's offenses are comparable to a Michigan Tier II offense, Defendants classified them as Tier III (though no one at MSP was ever able to explain why). Pls' Facts, ECF No. 123-1, PageID.3885-3888, ¶¶ 564-570.

Accurate substantial similarity determinations require that the decision-maker be presented with legal argument on both sides. As this Court knows, one party's brief may seem quite persuasive until the Court reads the other party's response. Defendants, however, want the MSP's views to be presented to the decision-maker with no provision for an opposing view. *See* Jt. Stmt., ECF No. 164, PageID. 8933-8934. If only the state's legal arguments are presented, that will lead to error.

"The opportunity to be heard must be tailored to the capacities and circumstances of those who are to be heard." *Goldberg v. Kelly*, 397 U.S. 254, 268-69 (1970). Here, *in pro per* registrants will be unable to contest the state's "substantial similarity" arguments. Registrants won't have a clue which statutes do and do not align. They may not know what the elements of an offense are, much less how to compare elements of the non-Michigan offense against various Michigan offenses under the categorical approach. (Even MSP staff tasked with making substantial

25

similarity determinations did not know what an offense element was. Jegla Dep., ECF No. 126-4, PageID.5890-5891, pp. 120-23.) Nor will registrants know if a different comparator offense could result in a lower tier level. Given the legal complexity of the decision here, "[t]he right to be heard would be [] of little avail if it did not comprehend the right to be heard by counsel." *Goldberg*, 397 U.S. at 270.

The familiar factors of *Mathews v. Eldridge*, 424 U.S. 319 (1976), confirm that absent counsel, including for indigents, there will be no meaningful opportunity to be heard.[10] The private interest affected here is great. SORA has life-altering consequences, subjecting people to public stigmatization and extensive supervision for decades or forever. *See Doe v. Pryor*, 61 F. Supp. 2d 1224, 1233 (M.D. Ala. 1999) (recognizing "weighty interest" in accurate substantial similarity determinations).[11]

The risk of an erroneous deprivation absent counsel is likewise great. Substantial similarity determinations "can vex even the most competent and experienced jurists," and the caselaw is replete with appellate reversals of lower

---

[10] *Mathews* requires consideration of (1) the private interest that will be affected; (2) the risk of an erroneous deprivation and the probable value of additional procedural safeguards; and (3) the government's interest, including the fiscal and administrative burdens of additional procedural requirements. 424 U.S. at 334-35.

[11] The weight of the interest affected also supports the right to an appeal. *See Doe v. Miami University*, 882 F.3d 579, 602 n.8 (6th Cir. 2018) (where "private interest is [] significant—a potential lifetime of stigma and preclusion from further educational and employment opportunities," due process can require appeal rights).

courts' cross-jurisdictional comparisons[12]—which is a reason why appellate review is also needed. *Id*. Thus "the risk of error is both substantial and apparent, and so is the likely value of additional . . . procedures." *Id*. Without counsel, registrants have no realistic shot at challenging the MSP's classifications. Defendants have suggested—without any evidence—that few decisions would change. But as the examples of Mary Doe and Doe G show, the MSP has likely misclassified many registrants into higher tiers, leading to lifetime rather than term-limited registration. Indeed, the record shows that MSP routinely chooses higher tier levels based on unproven allegations where a comparison of the offense elements would result in a lower tier level. Pls' Facts, ECF No. 123-1, PageID.3883-3884, ¶¶ 556-559.

Finally, the Court must weigh registrants' liberty interest, the risk of erroneous deprivation, and the value of providing counsel against the government's interest in denying counsel. *Mathews*, 424 U.S. at 335. The cost of counsel will be quite reasonable if the Court adopts a consolidated approach to adjudication. As detailed below, one attorney can represent the interests of hundreds of registrants because of

---

[12] *See*, *e.g.*, *Barcus*, 892 F.3d at 234  (district court erred in finding state offense comparable to Tier III SORNA offense); *United States v. Morales*, 801 F.3d 1, 6-10 (1st Cir. 2015) (same); *United States v. Berry*, 814 F.3d 192, 196 (4th Cir. 2016) (same); *United States v. Walker*, 931 F.3d 576, 582 (7th Cir. 2019) (same); *United States v. Coulson*, 86 F.4th 1189, 1195-96 (8th Cir. 2023) (same); *United States v. Cabrera-Gutierrez*, 756 F.3d 1125, 1133-38 (9th Cir. 2014) (same); *Dep't of Pub. Safety v. Doe*, 425 P.3d 115, 121-23 (Alaska 2018) (reversing substantial similarity determination); *Texas Dep't of Pub. Safety v. Anonymous Adult Texas Resident*, 382 S.W.3d 531, 534-35 (Tex. Ct. App. 2012) (same).

the efficiencies inherent in the categorical approach. "Where the liberty . . . interest is significant and the cost to the government of providing additional, valuable process is low, then greater procedures must be implemented." *Hicks v. Comm'r of Social Security*, 909 F.3d 786, 800 (6th Cir. 2018).

### D. Plaintiffs' Proposed Judgment Allows Either for Judicial Hearings or a Consolidated Process with Representation on Both Sides.

Plaintiffs' proposed judgment gives the state two choices. First, the state could provide judicial hearings that meet due process requirements, including notice; an opportunity to be heard; the right to counsel, including appointed counsel if indigent; and the right to appeal.[13] Prop. J., ¶ 69(a)(i). This was the approach used in North Carolina after a court held that the state's procedures for registering people with out-of-state convictions violated due process. *Grabarczyk v. Stein*, No. 5:19-CV-48-BO, 2020 WL 2441418 (E.D.N.C. May 12, 2020). The North Carolina process includes appointment of counsel for indigent people. N.C. Gen. Stat. § 14-208.12B(b).

Defendants would prefer not to conduct some 3,600 hearings across the state.

---

[13] If judicial hearings are used, Defendants want to encourage registrants to waive hearings. If any such procedure is used, it should be "opt out," not "opt in" because, if the state wants to register someone, *it* must establish that the person is subject to SORA. Moreover, if a person "opts out" of a hearing, that should be without prejudice to a person's ability to later seek a hearing or to contest the accuracy of the substantial similarity determination in a later criminal proceeding. Prop. J., ¶ 69(a)(ii). Given the complexity of the issues, registrants would need to consult with counsel to know whether to opt out. A waiver without counsel would be unknowing.

28

Plaintiffs have therefore been working with Defendants to develop an alternative approach that allows for centralized adjudication while protecting registrants' due process rights. Plaintiffs are willing to compromise on mandatory judicial hearings **IF** an alternative approach provides (1) a court-appointed decision-maker with experience in criminal law; (2) legal representation of registrants' interests; and (3) an opportunity for judicial review. This is the second option. Prop. J., ¶ 69(b).

Under this option, the Court would appoint a decision-maker with a criminal law background to determine SORA's applicability to the non-Michigan offense subclass. Registrants would be represented by counsel, which could potentially be through the Federal Public Defenders, Criminal Justice Act panel, State Appellate Defender Office, or other experienced criminal counsel. The MSP could be represented by a state lawyer (e.g., from the MSP counsel's office, or the Prosecuting Attorneys Association of Michigan). Defendants would pay for the decision-maker and the registrants' attorney—costs which would be a tiny fraction of what judicial hearings statewide would cost or what it costs for the state to provide advocates in other types of hearings.[14] If feasible, Criminal Justice Act funds could cover the costs of representing those with federal convictions.[15] Prop. J., ¶ 69(b)(iv).

---

[14] For example, Michigan provides advocates in unemployment hearings. *See* Michigan Dep't of Labor and Econ. Opportunity, *Unemployed Worker Advocacy Program*, https://www.michigan.gov/leo/bureaus-agencies/uia/uia-resources-for-claimants/advocacy/unemployed-worker-advocacy-program.

[15] *See* United States District for the Eastern District of Michigan, *Criminal Justice*

Such a process would be efficient. Under the categorical approach, one need only look at the statutes themselves, meaning that if registrants have the same out-of-state conviction, there is no reason why those cases cannot be heard in a consolidated way, with the one lawyer making the same or similar arguments for everyone with that conviction. For example, there are approximately 150 registrants with convictions under 18 U.S.C. § 2252A(a)(5)(B) (possession of child pornography). One attorney could represent all registrants on the substantial similarity determination. A few registrants, if they have resources, might choose to hire their own counsel.

There would still need to be some individual processing of cases to account for any relevant variations (e.g., conviction under an earlier version of the statute, adjudication under a diversion program).[16] But this streamlined process would be much more efficient and much less expensive than 3,600 hearings across the state. It is also likely to reach more accurate results and to ensure that like cases are treated alike. However, **counsel on both sides is critical to both the accuracy and fairness of consolidated proceedings.** Plaintiffs object to Defendants' proposal that a court-

---

*Act Plan*, § VI.A.3.a (May 25, 2023) (providing for representation in ancillary matters where reasonably necessary to protect a constitutional right); United States District for the Western District of Michigan, *Criminal Justice Act Plan*, § IV.A.2.h(1) (October 18, 2017) (same). Defendants report that there are about 675 registrants with federal convictions and about 50 different federal offenses at issue.

[16] For members of the non-Michigan offense subclass who are also members of the retroactive extension of registration subclass and/or the non-sex offense subclass, the court-appointed decision-maker would also review that the person's registration requirements conform to the relief on Counts II and VII. Prop. J., ¶ 69(b)(v).

appointed decision-maker determine the fate of hundreds of people in one fell swoop based on an analysis provided by MSP where there is no opposing view presented. *See Johnson v Zerbst*, 304 U.S. 458, 462-63 (1938) (average person "does not have the professional legal skill to protect himself [in proceedings], wherein the prosecution is presented by experienced and learned counsel").

While Plaintiffs are willing to accept consolidated adjudication before a court-appointed decision-maker as a compromise, registrants must still have the opportunity for judicial review of what are exceedingly complex legal questions. Under Defendants' proposal for a special master, registrants could file objections with this Court. *See* Fed. R. Civ. P. 53(f)(4). While Plaintiffs do not oppose appointment of a special master with review by this Court, Plaintiffs recognize that the Court itself may prefer a different approach. Thus, under Plaintiffs' proposal, if the state wants to use a consolidated approach instead of judicial hearings, the parties would agree to appointment of a decision-maker. Instead of filing objections with this Court, if either the state or the registrant disagreed with the decision-maker's determination, they could seek a judicial decision in state court. Prop. J., ¶ 69(b)(vi). This approach would allow for a body of state court decisions to develop about *which* out-of-state offenses are similar to which Michigan convictions, making it easier to decide later cases and to categorize registrants moving to Michigan.

Finally, Defendants have proposed various procedures for registrants who

move to Michigan in the future. Jt. Stmt., ECF No. 164, PageID.8933-8934. Defendants' proposal is both unnecessary and premature. If judicial hearings are used to classify current registrants, that process could just continue. And if a consolidated approach is used, then it makes sense to complete that process first. Prop. J., ¶ 69(b)(vii). Thereafter, there will be few new uncategorized offenses, and the parties will have experience to draw on for developing a workable approach for the future.

## XII.   Other Issues Requiring Resolution

### A.   Issues Recurring Throughout the Proposed Judgment

*Persons Bound:* Fed. R. Civ. P. 65(d)(2) sets out the persons who can be bound by an injunction: the parties, their "officers, agents, servants, employees, and attorneys," and "other persons who are in active concert or participation" with them. Although Plaintiffs' proposed language tracks Rule 65, Defendants object, preferring that the Court only enjoin the named Defendants and their agents. Given that SORA is enforced by hundreds of law enforcement agencies throughout the state, it is important to follow the language of Rule 65.

*Named Plaintiffs:* The named plaintiffs brought this case both in their individual capacities and on behalf of all those similarly situated. Defendants contend that because the named plaintiffs are members of the class, it is unnecessary to specify that they are also entitled to individual relief. But that would leave their individual claims unaddressed. Moreover, it is possible (though concededly unlikely) that an

appellate court might find class-wide relief improper, where individual relief is not.

## B.      Preservation of Claims Not Decided

Plaintiffs do not anticipate appealing the Court's sensible decision not to decide some claims or reach some legal theories because they overlap with other claims or theories that provide equivalent relief. The language proposed in ¶ 70 is intended to forestall any future argument on remand—for example, if the Court's decision were to be reversed in part, or the relief granted were to be limited—that Plaintiffs failed to preserve such undecided claims or legal theories.

## C.      Implementation Deadlines and Defendants' Anticipated Stay Motions

The time necessary to implement the judgment varies by count, and for some counts depends on precisely what relief the Court orders. Prop. J., ¶¶ 71-72. Implementation periods for Counts I and II are addressed above. *See also* Prop. J., ¶¶ 12-14, 72(a)-(b). On Count VII, 180 days should be sufficient to conduct the small number of hearings required for the non-sex offense subclass. The time needed for hearings for the non-Michigan offense subclass on Count XI will depend on whether the state holds judicial hearings or utilizes a consolidated approach (which will require appointment of the decision-maker and counsel). Plaintiffs propose 180 days, with the possibility of extension. Prop. J., ¶ 72(g).

Defendants have indicated that they will likely seek a stay on Counts I and II, pending appeal. Plaintiffs will respond on the merits after Defendants properly raise

the issue in a motion after judgment. Whether the state should be allowed to continue violating the constitutional rights of thousands of people during the many months of an appeal is a question that requires full briefing. Plaintiffs do not object to the Court entering an administrative stay to allow for an orderly briefing schedule.

### D.    Notice and Post-Judgment Monitoring

Plaintiffs propose the exact same process used in *Does II* to provide notice to both registrants and law enforcement, where the parties worked together after judgment to formulate the process for notice and draft the notices for registrants and law enforcement. *Compare* Prop. J., ¶ 73 (green), *with Does II*, No. 16-cv-13137, Am. Judg., ECF No. 126, ¶ 7; *see also Does II*, ECF Nos. 130 to 130-1 (notice process and notices used in *Does II*). Defendants had previously agreed to this language, ECF No. 164-1, ¶ 78, but now agree only that law enforcement get notice, plus four subclasses. Prop. J., ¶ 73 (blue). But class notice after judgment is standard because all class members who will be bound are entitled to know what the Court decided and what/when relief will take effect, which here includes the primary class. *See Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402, 422 (6th Cir. 2012) (due process requires notice to class members who are bound). Further, Defendants should not have unilateral control of notice content, which is what they propose.

Defendants also object to a FAQ about what must be reported, even though they previously argued how important it is for people to understand their obligations,

Defs' Brf, ECF No. 129, PageID.7178, and even though such guidance will be critical for both registrants and police once the Court decides the vagueness claim.

After judgment is entered, class counsel will need sufficient information for post-judgment monitoring. Class counsel will need to confirm that policies and procedures are being amended to conform to this Court's orders, that hearings are being provided to members of the non-sex offense subclass and the non-Michigan offense subclass, and that members of the retroactive extension of registration subclass are being removed when their original registration terms end. Moreover, class counsel are already inundated with questions from class members and their counsel—questions which are often impossible to answer without current information.

Accordingly, Plaintiffs ask for (a) an updated class list every four months; (b) updated policies, procedures, and guidance; (c) any spreadsheets used to assess registrants' eligibility for relief; and (d) reports on the implementation of relief for the retroactive extension of registration subclass, non-sex offense subclass, and non-Michigan offense subclass. Prop. J., ¶¶ 75-76.

### E. Attorney's Fees and Costs

To conserve resources, the parties propose deferring briefing on attorney's fees and costs until the conclusion of all appeals. Prop. J., ¶ 80.

## CONCLUSION

The Court should enter a final judgment using Plaintiffs' proposed language.

Respectfully submitted,

s/ Miriam Aukerman (P63165)
Attorneys for Plaintiffs
American Civil Liberties Union
  Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org


s/ Daniel S. Korobkin (P72842)
s/ Syeda Davidson (P72801)
American Civil Liberties Union
  Fund of Michigan
Attorney for Plaintiffs
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6824
dkorobkin@aclumich.org


Dated: January 10, 2025

s/ Paul D. Reingold (P27594)
Cooperating Counsel, American Civil
  Liberties Union Fund of Michigan
Attorney for Plaintiffs
Univ. of Michigan Law School
802 Legal Research Building
801 Monroe Street
Ann Arbor, MI 48109-1215
(734) 355-0319
pdr@umich.edu


s/ Roshna Bala Keen (Ill. 6284469)
s/ Lauren Carbajal (Cal. 336485)
Loevy & Loevy
Attorney for Plaintiffs
Cooperating Counsel, American Civil
  Liberties Union Fund of Michigan
311 North Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
roshna@loevy.com

36

## LOCAL RULE CERTIFICATION

I, Miriam Aukerman, certify that this document conforms to the page limits set forth in the Court's Order, ECF No. 166, and complies with terms set under the Local Rules.

<u>s/ Miriam Aukerman (P63165)</u>

37