UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOES A, B, C, D, E, F, G, H,
MARY DOE and MARY ROE, on behalf
of themselves and all others similarly
situated,

                                                    No. 2:22-cv-10209

        Plaintiffs,

                                                    HON. MARK GOLDSMITH

v

                                                    MAG. CURTIS IVY, JR.

GRETCHEN WHITMER, Governor of
the State of Michigan, and COL. JAMES
GRADY, Director of the Michigan State
Police,

        Defendants.

---

**DEFENDANT'S RESPONSE TO MOTION FOR ENTRY OF JUDGMENT**

/s/ *Eric M. Jamison*
Assistant Attorney General
Attorney for Whitmer and Grady
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
jamisone@michigan.gov
P75721

Dated:  January 23, 2025

# TABLE OF CONTENTS

Page

Table of Contents.................................................................................................. i

Index of Authorities ........................................................................................... iii

I.    Defendants' response to Plaintiffs' motion for entry of judgment regarding the eleven counts in the complaint.......................................... 1

      A.    Count I and II - Ex Post Facto – Pre-2011 Ex Post Facto Subclass........................................................................................... 1

          1.Plaintiffs' arguments related to severance are untimely.......................... 1

          2.  Even if the severance arguments are timely, they are unavailing. ........ 5

          3. *Betts* is not controlling, as this case is more like *Lymon* on the question of severance.................................................................. 6

          4.U.S. Supreme Court precedent also supports severance in addition to Michigan law .................................................. 11

      E.    Count III: Individualized Review – Due Process and Equal Protection – Primary Class.................................................. 14

      F.    Count IV: Equal Protection – Barred from Petitioning Subclass .......... 14

      G.    Count V: First Amendment – Reporting Requirements – Primary Class and Non-Sex-Offense Subclass ........................................ 14

      H.    Count VI: Due Process – Plea Bargain Subclass....................................... 14

      I.    Count VII: Due Process and Equal Protection – Non-Sex Offense Subclass........................................................................... 15

      J.    Count VIII. Due Process/Vagueness – Primary Class and Post-2011 Subclass ............................................................................... 19

      K.    Count IX. First Amendment/Admission of Understanding – Primary Subclass.......................................................................... 19

i

L.     Count X. First Amendment/Internet Reporting Requirements – Post 2011 Subclass ........................................................................... 19

M.    Count XI. Non-Michigan Sex Offense Subclass................................... 20

II.   Defendants' response to Plaintiffs' motion for entry of judgment regarding other issues requiring resolution...................................................... 23

A.     Persons bound by the proposed judgment .................................. 23

B.     Relief for the class representatives ............................................. 25

C.     Notice and post judgement monitoring ...................................... 25

1. The notice should be narrowly tailored.................................... 25

2. Post judgment monitoring should be limited ........................... 29

Conclusion and Relief Requested........................................................................ 32

Certificate of Service (e-file).............................................................................. 33

Local Rule Certification ...................................................................................... 34

# INDEX OF AUTHORITIES

Page

**Cases**

*Alaska Airlines, Inc. v. Brock,*
    480 U.S. 678 (1987) ........................................................................................... 12

*Allen v. Louisiana,*
    103 U.S. 80 (1881) ............................................................................................. 13

*Barr v. American Association of Political Consultants, Inc.,*
    591 U.S. 610 (2020) ....................................................................................... 2, 12

*Champlin Refining Co. v. Corporation Comm'n of Okla.,* 286 U.S. 210 (1932) ..................... 13

*Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n,*
    59 F.3d 284 (1st Cir.1995) ................................................................................. 1

*Coleman v. Gen. Motors Acceptance Corp.,*
    296 F.3d 443 (6th Cir. 2002) ............................................................................ 25

*Doe v Lee,*
    No. 23-5248, 2024 WL 2179378 (6th Cir. May 15, 2024) ................................ 2, 3, 6, 10

*Doe v. Snyder,*
    449 F.Supp.3d 719 (E.D. Mich., 2020) ............................................................ 9

*Doe v. Snyder,*
    606 F.Supp.3d 608 (E.D. Mich., 2021) ............................................................ 8

*Does #1-5 v. Snyder,*
    834 F.3d 696 (6th Cir. 2016) ......................................................................... 4, 7, 8

*Does v. Whitmer,*
    2024 WL 4340707, at *20 (E.D. Mich., 2024) .............................................. 3, 6, 7

*Does v. Whitmer,*
    69 F.4th 300 (6th Cir. 2023) .............................................................................. 8

*Dorchy v. Kansas,*
    264 U.S. 286 (1924) ........................................................................................... 5

*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*,
  561 U.S. 477 (2010) ................................................................................... 5

*Goldberg v. Kelly*,
  397 U.S. 254 (1970) ................................................................................. 20

*Harrison, Severability, Remedies, and Constitutional Adjudication*,
  83 Geo. Wash. L. Rev. 56 (2014) ............................................................... 2

*Leavitt v. Jane L.*,
  518 U.S. 137 (1996) ................................................................................... 5

*Lindenbaum v. Realgy, LLC*,
  13 F.4th 524 (6th Cir. 2021) ................................................................... 12

*Loeb v. Columbia Township Trustees*,
  179 U.S. 472 (1900) ................................................................................... 5

*Marbury v. Madison*,
  5 U.S. 137 (1803) .............................................................................. 11, 12

*Massachusetts v. Mellon*,
  262 U.S. 447 (1923) ................................................................................. 11

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) ................................................................................. 21

*McPherson v. Kelsey*,
  125 F.3d 989 (6th Cir. 1997) ................................................................. 1, 2

*Minnesota v. Mille Lacs Band of Chippewa Indians*,
  526 U.S. 172 (1999) ................................................................................. 12

*People v. Betts*,
  507 Mich. 527 (2021) ........................................................................ 7, 9, 11

*People v. Lymon* .................................................................................... 10

*People v. Lymon*,
  2024 WL 3573528 (Mich., 2024.) ................................................. 10, 13, 18

*Plaut v. Spendthrift Farm, Inc.*,
  514 U.S. 211 (1995) ................................................................................. 11

*Regal Knitwear Co. v. NLRB,*
    324 U.S. 9 (1945) ............................................................................. 24

*Regan v. Time, Inc.,*
    468 U.S. 641 (1984) ......................................................................... 12

*Rivers v. Roadway Express, Inc.,* 511 U.S. 298 (1994) .......................... 11

*Sessions v. Morales-Santana,*
    —— U.S. ——, 137 S. Ct. 1678 (2017) ........................................... 2

*Smith v. Doe,*
    538 U.S. 84 (2003) ............................................................................. 4

*Taylor v. Sturgell,*
    553 U.S. 880 (2008) ......................................................................... 23

*The Employers' Liability Cases,*
    207 U.S. 463 (1908) ......................................................................... 13

*Tilton v. Richardson,*
    403 U.S. 672 (1971) ......................................................................... 11

*Trade–Mark Cases,*
    100 U.S. 82 (1879) ........................................................................... 13

*Treasurer of Fayette Cty. v. People's & Drovers' Bank,*
    47 Ohio St. 503 (1890) ...................................................................... 5

*United States v. Booker,*
    543 U.S. 220 (2005) ......................................................................... 12

*United States v. Elsass,*
    769 F.3d 390 (6th Cir. 2014) .......................................................... 24

**Statutes**

Mich. Comp. Laws § 28.723(1)(d) ............................................... 22, 23

Mich. Comp. Laws § 28.728(8) .......................................................... 5

Mich. Comp. Laws § 8.5 ..................................................................... 5

Mich. Comp. Laws § 28.727(1)(i) ...................................................... 27

Mich. Comp. Laws § 600.631 ............................................................................ 18

**Rule**

Fed. R. Civ. P. 23(b)(2) ................................................................................... 25

I.    **Defendants' response to Plaintiffs' motion for entry of judgment regarding the eleven counts in the complaint**

    A.    **Count I and II - Ex Post Facto – Pre-2011 Ex Post Facto Subclass**

        1.    **Plaintiffs' arguments related to severance are untimely.**

Quizzically, Plaintiffs seem to focus much of their motion on severance, when that ship has already sailed.

Defendants argued in favor of severance more than a year ago, in their motion for summary judgment. (ECF No. 129, PageID.7197-7200.) Defendants reasoned that if the Court found parts of the new SORA unconstitutional, those parts should be severed. (*Id.*) Rather than respond to the arguments, Plaintiffs only mention severance in their conclusion and suggest that further briefing may be required. (ECF No. 131, PageID.7974.)

"[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) citing *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n,* 59 F.3d 284, 293–94 (1st Cir.1995) (citation omitted).

The Court entered a text only order on May 17, 2024, directing the parties to submit supplemental briefing on the applicability of *Doe v Lee*, No. 23-5248, 2024 WL

2179378 (6th Cir. May 15, 2024).  One of the primary holdings in *Lee* was related to whether severance was proper.  After finding that it was, the Sixth Circuit remanded the case to district court to engage in a provision-by-provision analysis of Tennessee's regulatory scheme to determine which portions violated the Ex Post Facto Clause and which did not.  *Doe v. Lee*, 102 F.4th 330, 340 (6th Cir. 2024.)

Again, Plaintiffs suggested that severance should be addressed at the remedy stage and in less than a page previewed two points related to severance, which can fairly be characterized as *issues adverted to in a perfunctory manner.*  (ECF No. 146, PageID.8599.)  *McPherson*, 125 F.3d at 995–96.  Plaintiffs stated that (1) *Betts* controls and (2) relief is available because MSP is more involved in enforcing the SORA than the Tennessee Bureau of Investigation is involved in enforcing Tennessee's law. (ECF No. 146, PageID.8599.)

As an aside, severance is not considered a remedy.  Remedies consist of "an injunction, declaration, or damages."  See *Barr v. American Association of Political Consultants, Inc.*, 591 U.S. 610, 627, n.8 (2020); *see also Sessions v. Morales-Santana*, ——— U.S. ———, 137 S. Ct. 1678, 1701 n.29 (2017) ("That Morales-Santana did not seek this outcome does not restrain the Court's judgment.  The issue turns on what the legislature would have willed.")  Invalidating a statute is not a "remedy," like an injunction, a declaration, or damages.  See *Harrison, Severability, Remedies, and Constitutional Adjudication*, 83 Geo. Wash. L. Rev. 56, 82–88 (2014) (Harrison).

Remedies "operate with respect to specific parties," not "on legal rules in the abstract." *Id.,* at 85.

In response to this Court's May 2024 order, the Defendants argued that severance was proper in its supplemental brief to address the applicability of *Doe v. Lee.* (ECF No. 145, PageID.8587.)

In its September 2024 opinion, this Court held that the 2006 and 2011 amendments to SORA violate the Ex Post Facto Clause. *Does v. Whitmer,* 2024 WL 4340707, at \*20 (E.D. Mich., 2024.) The Court answered the question of whether the law can be severed by stating "[t]o be clear, this holding means that the in-person reporting requirements and retroactive extension of registration terms originally introduced in SORA 2011 cannot be applied to a registrant who committed an offense before SORA 2011 was enacted." (*Id.* at fn 31.) In other words, the Court severed the in-person reporting requirements and the extension of registration terms for the pre-2011 subclass. Such a finding is consistent with *Lee, Smith* and *Snyder (Does I).*

In *Snyder (Does I),* the court cited to *Smith* and noted that "states are free to pass retroactive sex-offender registry laws" and annual/quarterly registration, updating personal characteristics, notifying authorities when a registrant moves or buys a new car, maintaining a public website with names, addresses, photos, license numbers, places of employment, dates of birth, crimes of conviction, length of sentences and

compliance information do not offend the Ex Post Facto Clause. *Does #1-5 v. Snyder*, 834 F.3d 696, 700, 705 (6th Cir. 2016), citing *Smith v. Doe*, 538 U.S. 84, 92 (2003). Ultimately, in *Snyder* the court found that the 2006 and 2011 amendments were unconstitutional on Ex Post Facto grounds and their application "must cease." *Does*, 834 F.3d at 706. The court did not elaborate on what that meant and did not address severance. Coincidently, Plaintiffs point out that in response to the *Snyder (Does I)* decision from the Sixth Circuit, the district court entered a judgment that seemingly severed certain provisions of the SORA, as applied to the Plaintiffs. (e.g., restored original registration terms, and eliminated immediate reporting.) (ECF No. 167, PageID.8994.)

If there was any uncertainty about the holding in *Snyder* (*Does I*) that the application SORA must cease, the Sixth Circuit cleared that up in *Lee*. *Lee*, 102 F.4th at 338. The Sixth Circuit did not find all the 2006 and 2011 amendments unconstitutional in *Snyder* (*Does I*) – the "final judgment simply rendered two challenged amendments unenforceable . . . amendments prohibiting offenders from living, working, or loitering within 1,000 feet of a school and requiring immediate, in person appearance to update critical information." *Id.* The court went on the explain that finding the entire law unconstitutional would be in conflict with Supreme Court precedent and other Sixth Circuit decisions. *Id.* Relying on *Smith*, the court succinctly held "a registry kept by the state and disclosed publicly is constitutionally sound." *Id.* at 339, citing *Smith*, 538 U.S. at 90-91.

This Court's September 2024 opinion followed binding law and properly addressed the severance argument.  There is no need to revisit the question of severance at this late stage.

### 2.    Even if the severance arguments are timely, they are unavailing.

It is black letter law that "one section of a statute may be repugnant to the Constitution without rendering the whole act void."  *Loeb v. Columbia Township Trustees*, 179 U.S. 472, 490 (1900) (quoting *Treasurer of Fayette Cty. v. People's & Drovers' Bank*, 47 Ohio St. 503, 523 (1890)).  Because a "statute bad in part is not necessarily void in its entirety," "[p]rovisions within the legislative power may stand if separable from the bad." *Dorchy v. Kansas*, 264 U.S. 286, 289–290 (1924).  "Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem, severing any problematic portions while leaving the remainder intact."  *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 508 (2010).

State law governs the question of severability.  *Leavitt v. Jane L.,* 518 U.S. 137, 139 (1996).  The Michigan Legislature adopted a general severability clause.[1]  Mich. Comp. Laws § 8.5.

> If any portion of an act or the application thereof to any person or circumstances shall be found to be invalid by a court, such invalidity

---

[1] The SORA itself also contains a limited severability provision.  See Mich. Comp. Laws § 28.728(8).

shall not affect the remaining portions or applications of the act which can be given effect without the invalid portion or application, provided such remaining portions are not determined by the court to be inoperable, and to this end acts are declared to be severable.

Tennessee, like Michigan, has a severability provision. *Lee*, 102 F.4th at 340. The Sixth Circuit found that the operative question was: would the legislature have enacted the law even absent the unconstitutional provisions? *Id.* at 340-341. In reaching the conclusion that the Tennessee legislature would have enacted the law even without the unconstitutional provisions, it cited to the numerous statutory amendments over a period of years and case law finding major parts of the statutory scheme constitutional. *Id.* at 341.

Like in Tennessee, there is a long history of statutory amendments to the Michigan SORA and case law finding major components of the law constitutional. In issuing its September 2024 opinion, this Court followed Michigan law and the guidance from *Lee* and severed the unconstitutional provisions from the SORA. *Does v. Whitmer*, 2024 WL 4340707, at *20 (E.D. Mich., 2024.)

### 3. *Betts* is not controlling, as this case is more like *Lymon* on the question of severance

Plaintiffs rely heavily on the Michigan Supreme Court decision in *Betts* for their late argument that severance is proper, but *Betts* does not bring the ship back to port for several reasons.

First, *Betts* was grounded in a different analysis, like *Snyder* (*Does I*), it questioned the lack of individualized review.  *People v. Betts*, 507 Mich. 527, 561 (2021) ("registrants were subject to the 2011 SORA's requirements without any individualized assessment of their risk of recidivism" and "[t]hese demanding and intrusive requirements, imposed uniformly on all registrants regardless of an individual's risk of recidivism, were excessive in comparison to SORA's asserted public-safety purpose"); *Does #1-5 v. Snyder*, 834 F.3d 696, 702 (6th Cir. 2016) ("Unlike the law in *Smith*, which republished information that was already publically available, SORA ascribes and publishes tier classifications corresponding to the state's estimation of present dangerousness without providing for any individualized assessment.")

Unlike some of the analysis in *Betts* and *Snyder (Does I),* this Court already clearly rejected Plaintiffs' argument that individualized review is required before imposing ongoing registration requirements – using a conviction-based scheme is constitutional. *Does v. Whitmer*, 2024 WL 4340707, at *22 (E.D. Mich., 2024.)

Second, *Betts* was also analyzing the old law, 2011 SORA, and made clear that it was not reviewing the constitutional validity of the 2021 SORA.  *Betts,* 507 Mich. at 533.  ("The Legislature again amended SORA in 2020. See 2020 PA 295, effective March 24, 2021. Because defendant's legal challenges concern SORA as it existed in 2012, our discussion of the current SORA provisions will be limited.")

The *Betts* opinion has no import here as it is inapposite. The Michigan Supreme Court issued its opinion when the new law had already taken effect, and Plaintiffs had already conceded that the new law removed the offending provisions from the old law. "The new SORA became effective March 24, 2021, and *all parties acknowledge that the new SORA removes or modifies all provisions that this court found to be unconstitutional* in its February 14, 202[0] opinion in *Does II*. *Doe v. Snyder*, 606 F.Supp.3d 608, 613 (E.D. Mich., 2021) (emphasis added). The Sixth Circuit has also recently acknowledged that the new SORA "removed or modified the provisions that *Does II* had declared unconstitutional." *Does v. Whitmer*, 69 F.4th 300, 303 (6th Cir. 2023). Thus, the purpose of 2021 SORA was to bring it into constitutional compliance and retain those provisions the Constitution permitted. It unambiguously was designed to give effect to Michigan's SORA law as far as possible.

Understanding the wavy path to the *Betts* opinion illustrates why it is of no moment when analyzing the new SORA. In *Snyder* (*Does I*), the Sixth Circuit stated that "[t]he retroactive application of SORA's 2006 and 2011 amendments to Plaintiffs is unconstitutional, and it must therefore cease." *Does #1-5 v. Snyder*, 834 F.3d 696, 706 (6th Cir. 2016.) This statement has been misconstrued by numerous subsequent courts as meaning the 2011 amendments are not severable and the entire law must fall.

8

Following that decision, and presumably relying on that statement, the district court in *Snyder (Does II)* explained that the 2011 amendments "permeate nearly every section of the statute" which implies that it understood the Sixth Circuit opinion to mean that every 2011 amendment was unconstitutional.  *Doe v. Snyder*, 449 F.Supp.3d 719, 732 (E.D. Mich., 2020.)  The court ultimately held that the 2011 amendments cannot be severed and they "cannot be applied to any members of the ex post facto subclasses."  *Id.* at 733.  It went on to explain "[t]he court's determination that the 2011 amendments are not severable means that the entirety of SORA cannot apply to any persons whose crime subjecting them to registration occurred before the enactment of the 2011 amendments."[2]  *Id.* at fn 9.

*Betts* carried the same analysis into its opinion.  It concluded that "the retroactive imposition of the 2011 SORA increases registrants' punishment for their committed offenses in violation of federal and state constitutional prohibitions on ex post facto laws."  *Betts*, 507 Mich. at 562.  It did not sever the statute and held that the 2011 SORA cannot be applied to registrants who committed their offenses prior to the enactment of the 2011 amendments, based on its analysis and based on the prior version of the law.  *Id.* at 573-574.

---

[2] Apparently, Plaintiffs conceded that the 2006 amendments were severable.  *Doe v. Snyder*, 449 F.Supp.3d 719, 732 fn 9 (E.D. Mich., 2020.)

The district court in *Lee* originally applied the same type of analysis by relying on *Snyder* (*Does I*), but the Sixth Circuit explained in *Lee* that its 2016 holding in *Snyder* (*Does I*) was limited to the exclusionary zones and the immediate in-person reporting requirements. *Lee*, 102 F.4th at 338. The Sixth Circuit remanded to the district court to do what this Court has already done in its September 2024 opinion – a provision-by-provision analysis to determine which provisions are unconstitutional. *Id.* at 340. As a result, the reasoning that is the basis of severability conclusion in *Betts* is unfounded. *Betts* is not controlling law.

Third, the Michigan Supreme Court decision in *Lymon* provides the proper guidance regarding severance, which is analogous to this Court's ruling here. In 2024 the Michigan Supreme Court examined SORA 2021 in *People v. Lymon* and concluded that certain provisions of the new law were unconstitutional (the imposition of sexual offender registration requirements on individuals with non-sexual offenses was cruel or unusual punishment). Much like this Court did when it narrowly held that in-person reporting requirements and retroactive extension of registration terms cannot be applied to registrants who committed offenses prior to the 2011 amendments, the Michigan Supreme Court also narrowly held that "offenders whose crimes lacked a sexual component are entitled to removal from the sex-offender registry." *People v. Lymon*, 2024 WL 3573528, at *17 (Mich., 2024.) In other words, the Michigan

Supreme Court severed the unconstitutional provisions of the new law, and the rest of the new law remains in place.

Finally, the current case is brought only under the U.S. Constitution. The *Betts* case was brought under the U.S. and Michigan Constitutions. *Betts*, 507 Mich. at 541. The *Lee* case was brought as an Ex Post Facto violation under federal law. It provides the proper framework and reached the right conclusion that the law is severable.

### 4. U.S. Supreme Court precedent also supports severance in addition to Michigan law

U.S. Supreme Court case law makes clear that severance is appropriate here. Courts have the "power ... to decide" matters through "dispositive judgments." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218–19 (1995) (cleaned up). Through those judgments the courts "say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803). To reach those judgments, courts must exercise "the negative power to disregard an unconstitutional enactment." *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923). Courts then determine what (if anything) the statute means in their absence— what is now called "severability" analysis. *See Tilton v. Richardson*, 403 U.S. 672, 684 (1971).

Severability is not rewriting the statute but is instead interpreting what it means "since the date when it became law" and applying that meaning to the parties before the court. *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 313 n.12 (1994). It is the

Constitution itself that displaces the unconstitutional provisions, not a judge drawing lines with her opinion. *Marbury*, 5 U.S. at 177.   "Because unconstitutional enactments are not law at all, it follows that a court conducting severability analysis is interpreting what, if anything, the statute has meant from the start in the absence of the always-impermissible provision." *Lindenbaum v. Realgy, LLC*, 13 F.4th 524, 528–30 (6th Cir. 2021.)

Courts must determine whether after an unconstitutional provision is severed, the rest of the law is "capable of functioning independently" and would be "fully operative" as a law, which is "fairly unusual for the remainder of a law not to be operative." *Barr v. American Association of Political Consultants, Inc.,* 591 U.S. 610, 627–28 (2020.)  See *United States v. Booker,* 543 U.S. 220, 227–229 (2005) (holding that preference is given to sever the problematic portions of the statute while leaving the remainder intact.)

When severing unconstitutional statutory provisions, courts are mindful to not nullify more than necessary, recognizing that "[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people." *Regan v. Time, Inc.,* 468 U.S. 641, 652 (1984) (plurality opinion).  In doing so, courts must inquire: Would the legislature have preferred what is left of its statute to no statute at all?  See generally *Booker, supra,* at 227; *Minnesota v. Mille Lacs Band of Chippewa Indians,* 526 U.S. 172, 191 (1999); *Alaska Airlines, Inc. v. Brock,* 480 U.S. 678, 684 (1987); *Champlin*

*Refining Co. v. Corporation Comm'n of Okla.,* 286 U.S. 210, 234 (1932); *The Employers'*
*Liability Cases,* 207 U.S. 463, 501 (1908); *Allen v. Louisiana,* 103 U.S. 80, 83–84 (1881);
*Trade–Mark Cases,* 100 U.S. 82, 97–98 (1879).  Consistent with *Lymon*, Michigan law
also strongly supports severance.  *See, e.g.,* Mich. Comp. Laws § 8.5; *In re Request for*
*Advisory Opinion Regarding Constitutionality of 2011 PA 38*, 490 Mich. 295 (2011.)

  This Court found that two provisions of the 2011 amendments violated the Ex
Post Facto clause.  In other words, the Court found that from its inception, the new
SORA means that registrants must comply with all the other provisions of SORA.
The remainder of the law is still capable of functioning and is fully operative.  It is
clear who it applies to, what needs to be reported, and how it should be reported.

  There is no indication that the Michigan legislature would rather have no
statute at all for more than 30,000 registrants – more than two-thirds of all registrants
– who committed their crimes prior to July 1, 2011.  Instead, as indicated by the
continual amendments to SORA, the legislature has expressed that it is an important
law and one that is continually being fine-tuned.

  Severance is proper, as this Court has already directed.

**B.    Count III:  Individualized Review – Due Process and Equal Protection – Primary Class**

The Court granted summary judgment to Defendants on this count.  The parties are in complete agreement on the language in the proposed judgment.  (ECF No.167-1, PageID.9040-9041.)

**C.    Count IV: Equal Protection – Barred from Petitioning Subclass**

The Court granted summary judgment to Defendants on this count.  The parties *largely* agree on the language in the proposed judgment.  (ECF No. 167-1, PageID.9041.)

**D.    Count V: First Amendment – Reporting Requirements – Primary Class and Non-Sex-Offense Subclass**

The Court granted summary judgment to Defendants on this count.  The parties *largely* agree on the language in the proposed judgment.  (ECF No. 167-1, PageID.9041.)

**E.    Count VI: Due Process – Plea Bargain Subclass**

The Court did not reach this issue because of its ruling on the Ex Post Facto issue.   The parties *largely* agree on the language in the proposed judgment.  (ECF No. 167-1, PageID.9041-9042.)  However, Plaintiffs posit that unless the Court enters their language on Count II, the Court will still need to decide the merits of the plea

claim. (ECF No. 167, PageID.9009.) Defendants disagree. The Court has made its ruling and the ruling speaks for itself.

### F. Count VII: Due Process and Equal Protection – Non-Sex Offense Subclass

The Court granted summary judgment to Plaintiffs on this count. The parties have reached agreement on some language and have some disagreements on other language in the proposed judgment. The disagreements relate to the level of specificity in the relief.

The Court explained that registrants must be provided with notice and an opportunity to be heard. (ECF No. 158, PageID.8737.) The Court went on to explain that registrants *also* have the right to be heard by a neutral decision maker. (*Id.*) The Defendants language in the proposed judgment tracks the Court's opinion nearly verbatim and *does* include the opportunity to be heard by a judge (neutral decision maker) and to be represented by counsel. (ECF No. 167-1, PageID.9042-9049.)

The Plaintiff's language attempts to step into the shoes of the legislature and mandate that a specific process be followed to rectify the constitutional violations. That is outside the language of the Court's opinion and is not a proper resolution.

While discussing the potential burden for judicial hearings, the Court mentions, in passing, that since the Code of Criminal Procedure, provides for a judicial hearing

under the "catch-all" provision, it may not be unduly burdensome.  (ECF No. 158, PageID.8738.)  However, the Court deferred for a later date the specific process required to comply with the opinion.

It is worth mentioning two points.  *First*, based on information provided by MSP, and consistent with agreed upon language in the proposed judgment, it appears that only around 20-30 individuals may be eligible for relief.  However, those that actually *obtain* relief will be a very small number.

For instance, JG is solely on the registry for his kidnapping offense.  However, according to an MSP lab report in the prosecutors file, the registrant's "semen was found on murdered 7-year old's underpants."  (ECF No. 130, PageID.7773.)  In another instance, the case file indicates that JA bound the victim dragged her into the woods naked and the defendant had other men show-up to examine her, which included fondling her and penetrating her.  (*Id.* at PageID.7840.)  Another registrant "entered the victim's home after her husband left for work, sexually assaulted her, threatened her at knifepoint, robbed her, kidnapped her, and stole her car."  The registrant "entered a guilty plea to armed robbery and kidnapping in exchange for the dismissal of the remaining counts-primarily because the victim was so traumatized that she did not want to participate in a trial."  (*Id.* at PageID.7792.)  While these registrants will be provided notice and have an opportunity to be heard.  It seems very unlikely that they will obtain relief.

16

The scope of the hearings is another important consideration.  The cases above are decades old and involve egregious sets of facts.  It sounds like what Plaintiffs envision is the type of hearing that a criminal defendant would be entitled to with appointment of counsel, and presumably the right to cross examine witnesses. Essentially it would be a new trial on their old conviction.  If that is the approach, would victims have to testify to avoid hearsay objections?  Victims should not be retraumatized by having to testify.  Because the age of the cases, victims or investigators may be unavailable to testify – they could have moved out-of-state or passed away.  It is unclear what the burden of proof would be, what evidentiary rules would apply, and whether by virtue of the passage of time or reluctance of victims to testify, an individual that committed a kidnapping with a sexual component would not have to register.

Consistent with this Court's guidance, those that are eligible for relief should be provided (1) notice regarding the decision to require registration, which includes the factual basis for concluding that their conviction included a sexual component; and (2) an opportunity to be heard by a neutral decision maker, which would include appeal rights.

While it is subject to further guidance from the Court and modification to conform with principles of due process, MSP or a prosecutor could make an initial determination as to whether there are facts to suggest that there was a sexual

component to the crime; the registrant would be provided notice in writing of the determination, including the facts used to support the determination; if the registrant disagreed with the determination, they could seek review in the circuit court under Mich. Comp. Laws 600.631, which includes appeal rights in state court, or seek review through another process under the law.

*Second*, the since the *Lymon* opinion, prosecutors have changed their practices. As part of the criminal case, prosecutors must establish that there was a sexual component to the crime. (i.e., it is one of the elements of the offense that must be proven beyond a reasonable doubt) (ECF No. 130-1, PageID.7917-7922.)  As a result, any future registrants will presumably receive the protections that Plaintiffs are seeking, prior to being required to register as a sex offender.

Plaintiffs suggest that members of the subclass who are not entitled to relief, (i.e., those who have a conviction for another registerable offense that results in the same or a longer registration period) should be provided notice of the decision so that they can challenge the decision.[3]  (ECF No. 167, PageID.9010-9012.)  The specifics regarding notice to class members, should be addressed after the judgment is entered

---

[3] In part, Plaintiffs' counsel suggest that this is necessary because they found "errors" is Defendants spreadsheets which set out hearing eligibility for the subclass.  (ECF No. 167, PageID.9012.)  The spreadsheets were preliminary summaries used as a point a reference for discussions with Plaintiffs' counsel regarding potential resolution.  The spreadsheets were not final lists and were not vetted by MSP.

and consistent with the timing in the proposed judgment.  (ECF No. 167-1,

PageID.9077.)  However, a brief response regarding notice is included further below.

### G.    Count VIII. Due Process/Vagueness – Primary Class and Post-2011 Subclass

The Court did not decide this count in its September 2024 opinion and the

parties submitted supplemental briefing, which remains pending.  In the proposed

judgment, the parties included terms where agreement has been reached.  The Court

will need to decide whether other terms are vague, which are set forth in the proposed

judgment.  (ECF No. 167-1, PageID.9049-9062.)

### H.    Count IX.  First Amendment/Admission of Understanding – Primary Subclass

The Court granted summary judgment to Plaintiffs on this count.  The parties

*largely* agree on the language in the proposed judgment.  (ECF No.167-1,

PageID.9064.)

### I.    Count X. First Amendment/Internet Reporting Requirements – Post 2011 Subclass

The Court granted summary judgment to Plaintiffs on this count.  The parties

*largely* agree on the language in the proposed judgment.  (ECF No.167-1,

PageID.9065.)

### J.     Count XI. Non-Michigan Sex Offense Subclass

Plaintiffs seem to suggest that U.S. Supreme Court precedent supports the idea that counsel must be provided because registrants will be unable to contest the substantial similarity determinations and "[t]he right to be heard would be [ ] of little avail if it did not comprehend the right to be heard by counsel.  *Goldberg*, 397 U.S. at 270."  (ECF No. 167, PageID.9017-9018.)  However, there is nothing to support the contention that registrants cannot obtain counsel to represent them in front of the neutral decision maker.  Moreover, the very next sentence in the *Goldberg* opinion belies Plaintiffs position - "We do not say that counsel must be provided . . . , but only that the recipient must be allowed to retain an attorney if he so desires."  *Goldberg v. Kelly*, 397 U.S. 254, 270 (1970).  There is no dispute that registrants can be represented by counsel.

Plaintiffs also point to *Matthews* as support for the proposition that counsel must be appointed, otherwise there is no meaningful opportunity to be heard.  (ECF No. 167, PageID.9018.)  Aside from the *Matthews* dealing with a very robust statutory scheme which lays out the administrative process to challenge disability determinations, (i.e., worker must show that they are entitled to benefits; state agency makes initial determination for eligibility based on medical records, communications with the worker, and may involve an independent medical examination of the worker; state agency provides notice to the worker that benefits may be terminated, provides a

summary of the evidence, affords an opportunity to review the records and other evidence in the case file and allows the worker to submit additional evidence; the agency then makes a final determination, which is reviewed by an examiner in the Social Security Administration; the SSA examiner provides notice to the worker regarding the decision and informs them of the right to de novo review by the state agency; the worker can seek reconsideration by the state agency; the worker, if still not satisfied with the result, can seek an administrative evidentiary hearing before an administrative law judge; the ALJ decision can be appealed to the SSA Appeals counsel; and ultimately is subject to judicial review), it does not hold that appointment of counsel is required to protect due process rights. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The Court noted that the worker had the right to be "represented by counsel or other spokesmen" throughout the entire administrative process (it did not say that the worker had the right to be *appointed* counsel) and ultimately held that the process was sufficient. (*Id.* at 349.)  Indeed, the Court found that due process was protected by notice, the right to a hearing and subsequent judicial review.  (*Id.*)

On the one hand, Plaintiffs posit that the substantial similar determinations are complex and often lead to appellate reversals but suggest that the cost of counsel will reasonable.  (ECF No. 167, PageID.9018-9019.)  However, Plaintiffs provide no evidence to support its suggestion.  Nor do they opine on what amount is reasonable.

Is $25M "reasonable"?  Is $500,000 reasonable?  Surely, the Legislature, who oversees the states purse strings would disagree about what amount is reasonable.

If there are a minimum of 785 hearings, plus related appellate proceedings, is it reasonable to believe that it won't involve a substantial amount of state resources to appoint counsel to the registrants, retain counsel to represent the state, provide for a hearing, and provide for appellate rights?  (ECF No. 167, PageID.9016.)  The Defendants believe it will require a substantial amount of resources to conduct the hearings, but it is difficult to quantify without more specifics about what will be required at the hearings.

The parties disagree over what the Defendants view as two separate and distinct basis for registrants with out-of-state convictions to register.   First, if someone is convicted in another jurisdiction of a crime that is "substantially similar" to a Michigan offense, they must register in Michigan.  The parties have agreed to utilize the categorical approach to make those determinations and registrations will be given notice and an opportunity to be heard if they disagree with those determinations.  (although the parties disagree over what the opportunity to be heard looks like.)  Where the parties diverge, is with registrants with out-of-state convictions that are not substantially similar to a Michigan offense.  Defendants position is that even if there is not substantially similar Michigan offense, a person with an out-of-state conviction must still register in Michigan if they have registration obligations in

another state.  Mich. Comp. Laws § 28.723(1)(d).  Of course, since these registrants will be given notice and an opportunity to be heard by a neutral decision maker, the registrant will have the chance to challenge that determination.  Ultimately, it will be the neutral decision maker that determines whether someone with an out-of-state conviction has registration obligations in Michigan either for an out-of-state offense that is substantially similar to a Michigan offense or solely because they have registration obligations in another state.  Mich. Comp. Laws § 28.723(1)(d).  The neutral decision maker will ultimately determine the length of registration term in Michigan.  This is consistent with the Court's opinion.  (ECF No. 158, PageID.8738-8744.)

## II.     Defendants' response to Plaintiffs' motion for entry of judgment regarding other issues requiring resolution

### A.     Persons bound by the proposed judgment

The Court has jurisdiction over the named defendants - the Governor of the State of Michigan and the Director of the State Police.  Plaintiffs are asking the Court to include language that would bind non-parties – "hundreds of law enforcement agencies throughout the state."  (ECF No. 167, PageID.9024.)  "It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Taylor v. Sturgell*, 553 U.S. 880, 884 (2008).

Plaintiffs are overtly trying to use Rule 65 to bind non-parties – hundreds of law enforcement agencies across the state.  (ECF No. 167, PageID.9024.)  The Supreme Court has explained that Rule 65(d)(2)(C) "is derived from the commonlaw doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control."  *United States v. Elsass*, 769 F.3d 390, 398 (6th Cir. 2014) (quoting *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945).

However, fatal to Plaintiffs position is that neither the Governor, nor the director of the State Police has control over every police agency in the state.  Neither defendant has control over all the prosecutors in the state either.  Practically speaking, other law enforcement agencies and prosecutors will almost surely follow the judgment since it is a federal court opinion and because MSP creates the forms and maintains the database, they will be compelled to collect the fields of information on the registration forms.  (e.g., MSP amended the registration and verification forms to remove the attestation of understanding by the registrant; MSP will amend the forms to remove the options to report email addresses and internet identifiers.)

Language in the judgment should clearly reflect who is bound by it – the named defendants.

24

### B.      Relief for the class representatives

Plaintiffs assert that the named plaintiffs' claims would be unaddressed if the judgment does not specify that they are entitled to relief.  (ECF No. 167, PageID.9024-9025.)  Not so, if the class is granted relief, then everyone in the class gets relief, including the class representatives.  Plaintiffs failed to explain how their claims would be unaddressed.  (ECF No. 167, PageID.9024-9025.)  As an aside, several of the named Plaintiffs, Mary Roe and Doe, John Does A, B, and C, are not even on the public registry.  The class representatives will obtain the same relief as the classes they represent.  In what is already going to be a complex judgment to implement, there is no legal or practical reason to further complicate the relief by carving out this small handful of registrants that will get exactly the same relief as the members of the class they represent.

### C.      Notice and post judgement monitoring

#### 1. The notice should be narrowly tailored

The class was certified under Fed. R. Civ. P. 23(b)(2).  (ECF No. 35, PageID.1119.)  "For any class certified under Rule 23(b)(1) or (b)(2), the court *may* direct appropriate notice to the class."  FED. R. CIV. P. 23(c)(2)(A) (emphasis added).  Ordinarily, courts need not provide notice to a (b)(2) class given the "homogenous" interests of the class members.  *See Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 447 (6th Cir. 2002).

Notice should be tailored to those obtaining meaningful relief.  Defendants do not object to taking reasonable steps to provide notice to the Ex Post Facto subclass, the out-of-state subclass and the non-sex offense subclass that are eligible for relief consistent with the judgment, in a manner similar to the process used in *Doe v. Snyder*, No. 16-cv-13137.

However, Defendants object to providing notice to all members of the class, including those that will not obtain material relief (e.g. registrants no longer have to sign a form indicating they understand their reporting obligations; and registrants no longer need to report email addresses).  Over 8,000 registrants are still incarcerated and before they would ever have to report a vehicle, phone number or temporary residence, they would be informed of what their reporting obligations are as part of their probation or parole process.  In some instances, it will be years or decades before a registrant is released from prison, and the law may change again.

The registration and verification forms will reflect the terms of the judgment. (e.g., no attestation of understanding; no reporting of email addresses; no reporting of online college courses.)  As a result, when a registrant shows up to verify their information with law enforcement which will be anywhere to the next quarter to the next year, they will be apprised of the changes.  Over 32,500 registrants are lifetime registrants, which must verify quarterly with law enforcement.  (ECF No. 123-6, PageID.3952.)  Nearly 8,900 are 25-year registrants, which verify every six months.

(*Id.*) In other words, over 32,500 registrants should receive notice of the relief obtained when they show-up to verify in the next quarter and they review the Explanation of Duties form before signing it. And a total of more than 41,400 should receive notice within six months when they show-up to verify.

Even if a notice is mailed to each registrant, it does not mean that they will receive it or understand the changes in reporting obligations. Ironically, even some of the lead plaintiffs in this lawsuit who should be the most well-informed registrants, were unaware that they no longer had to report email addresses, which was a change that occurred years before. John Doe G stated at his deposition in April 2023 that he was confused by what was required to be reported for internet identifiers, however since his conviction was from October 2008, he didn't need to report that information. (ECF No. 125-9, PageID.5197, p. 56:16-57:4; PageID.5185, p. 8:12-19.) Mich. Comp. Laws § 28.727(1)(i).

Similarly, Mary Roe testified at her deposition in March 2023 that she only recently became aware that she no longer had to report her email address and internet identifiers, which was a change in law from December 2020 (and took effect in March 2021). (ECF No. 125-11, PageID.5238.)

Presumably, both registrants received the class notice sent out in the *Doe v Snyder* case. Presumably, both registrants reviewed the verification forms before they signed them over the two years since the law changed, which explicitly stated that if

27

their offenses were committed prior to July 1, 2011, they did not need to report email addresses or internet identifiers.  Presumably, both registrants were well informed and advised by their attorneys in this lawsuit.  However, even with all that, they were still unaware of the change in law.

Spending the parties' resources negotiating over language in the notice about no longer needing to report email addresses, and numerous other provisions which will be reflected in the registration forms, is not time well spent (and if attorney fees are awarded, will ultimately be a cost born my Michigan taxpayers.)  The Court will likely have to weigh in on competing versions of the draft notice to registrants, consuming more time and resources.  Finally, the notices will need to be mailed to tens of thousands of people.

Based on a quick internet search, it appears that the cost to mail a letter is approximately .70, not including the cost of paper, envelopes, labor to prepare the mailing, costs to collect the addresses and other related costs.[4]  Mailing a letter to approximately 44,000 registrants would cost the taxpayers of Michigan a minimum nearly $31,000.  Many letters will likely be returned as undeliverable, which will raise additional questions about how to handle those that are returned and what additional efforts will need to be made to inform the registrants.  Other registrants are homeless

---

[4] See Stamps.com, https://www.stamps.com/usps/current-postage-rates/ (last accessed January 23, 2025.)

and have no mailing address.

By the time all this work is completed, over 32,500 registrants should have made their quarterly verification visit to law enforcement.  When they report, they will be apprised of the reporting changes.  Indeed, the changes will be reflected in the *Explanation of Duties* section of the reporting form that registrants must sign the form which indicates that they have read the requirements and/or had them read to them.[5]

The final judgment and reporting changes can be posted on MSP's website, and surely will be posted on the ACLU's website and the negotiated over, and judicially authorized notice will already be provided to prosecutor's offices and law enforcement agencies.  There is no need to spend limited state resources on notifying tens of thousands of registrants of relatively minor changes, which they will be informed of at their next verification.

## 2. Post judgment monitoring should be limited

Plaintiffs are asking the Court to require Defendants to provide extensive information about the class members three times a year, and information about

---

[5] See MSP form RI-004, https://www.michigan.gov/msp/-/media/Project/Websites/msp/forms/RI-004-SOR-Registration-Verification-Update.docx?rev=3e12e9d6524c4c979a96291f432dc958&hash=8F7E5CE7F6DD51475EDF9D7A9ED290AB (last accessed January 23, 2025.)

implementing the final judgment on a monthly basis for a duration that could drag on for years.  Prop. J. ¶ 75.

Not only do they want updated class member information, but they want copies of any revisions of the Sex Offender Registry Operating Procedures; written procedures used to implement the judgment, which may include privileged communications; reporting about various classes of registrants which is duplicative, or retrievable from the class data list (Prop. J. ¶ 75); incarceration data monthly, which is something that is in the possession of the Michigan Department of Corrections and perhaps with local jails and not in the custody or control of the Defendants (Prop. J. ¶ 76.e.ix.); monthly information regarding dates of mailing for notices (Prop. J. ¶ 76.f.vii.); name of registrant's counsel (Prop. J. ¶ 76.f.viii.); the outcome of hearings (Prop. J. ¶ 76.f.xi.); for out-of-state convictions, the court file number for the conviction, along with a host of other information monthly (Prop. J. ¶ 76.g.iii.); for out-of-state convictions, the previous tier determination by MSP and the updated tier information along with identifying what is the substantially similar Michigan offense (Prop. J. ¶ 76.g.iv-v.); the date notices of hearing went out (Prop. J. ¶ 76.g.vi.); amongst other copious amount of information.  (ECF No. 167-1, PageID.9078-9084.)

Aside from the additional staff that MSP would likely need to hire to regularly compile, collect, verify and transmit this data on a monthly basis, it will surely lead to numerous follow-up questions and disputes from Plaintiffs counsel.  The questions

will require more resources from the Defendants to respond to and will likely lead to further involvement from this Court.  Surely, Plaintiffs counsel will request attorney fees for all this additional work, which will be a cost for Michigan taxpayers.

Defendants are fully capable of implementing the Courts final judgment and the taxpayers of Michigan should not have to shoulder the costs of paying MSP and their attorneys to implement the judgment, paying Plaintiffs counsel to double check MSP's work, and paying for the Court to referee any future disagreements.  Any post judgment monitoring should be limited.

## CONCLUSION AND RELIEF REQUESTED

The Court should enter a final judgment using Defendant's proposed

language.[6]

                              Respectfully submitted,

                              */s/ Eric M. Jamison*
                              Eric M. Jamison
                              Assistant Attorney General
                              Attorney for Whitmer and Grady
                              State Operations Division
                              P.O. Box 30754
                              Lansing, MI 48909
                              (517) 335-7573
                              jamisone@michigan.gov
                              P75721

Dated:  January 23, 2025

---

[6] For ease of reference, Defendants are including a proposed final judgment with the language agreed upon between Defendants and Plaintiffs in regular font, and the **Defendants proposed language in italics and bold.**  The parties submitted a proposed judgment that includes agreed upon language in regular font and competing language setting forth the respective parties proposed language in different colored highlighted text.  (ECF No. 167-1, PageID.9030-9086.)

## CERTIFICATE OF SERVICE (E-FILE)

I hereby certify that on January 23, 2025, I electronically filed the above document(s)

with the Clerk of the Court using the ECF System, which will provide electronic

copies to counsel of record.

*/s/ Eric M. Jamison*
Eric M. Jamison
Assistant Attorney General
Attorney for Whitmer and Grady
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
jamisone@michigan.gov
P75721

## LOCAL RULE CERTIFICATION

I, Eric M. Jamison, certify that this document complies with Local Rule 5.1(a), including double-spaced (except for quoted material and footnotes): at least one-inch margin on top, sides, and bottoms; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 points (for proportional fonts).  I also certify that it is the appropriate length.  Local Rule 7.1(d)(3).

*/s/ Eric M. Jamison*
Eric M. Jamison
Assistant Attorney General
Attorney for Whitmer and Grady
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
jamisone@michigan.gov
P75721

#2022-0341402-A