UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOES et al.,

      Plaintiffs,

v.                                      Case No. 22-cv-10209
                                            HON. MARK A. GOLDSMITH
GRETCHEN WHITMER et al.,

      Defendants.

_____/

**OPINION & ORDER
GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR
JUDGMENT (Dkt. 167)**

## I.     INTRODUCTION

Plaintiffs filed this class action challenging the constitutionality of Michigan's Sex Offender Registration Act, Mich. Comp. Laws. § 28.723, et seq, as it was amended in 2021 (SORA 2021). Plaintiffs brought eleven claims, alleging that SORA 2021 violates constitutional protections regarding ex post facto, due process, equal protection, privileges and immunities, and the First Amendment. In September 2024, the Court issued a ruling granting summary judgment to both parties as to certain claims and requiring further briefing on Plaintiffs' vagueness claim.[1] Does v. Whitmer (Does III), No. 22-cv-10209, 2024 WL 4340707 (E.D. Mich. Sept. 27, 2024).

---

[1] The Court granted summary judgment to Plaintiffs as to their (i) ex post facto claims, (ii) non-sex offense claim, (iii) non-Michigan offense claim, and (iv) First Amendment claims alleging forced admission of understanding and chilled speech rights stemming from SORA 2021's internet-identifier reporting requirements. The Court granted summary judgment to Defendants as to Plaintiffs' claims regarding (i) lack of individualized review, (ii) unequal opportunity to petition, and (iii) compelled speech. The Court held that Plaintiffs' claim regarding plea agreements is moot. The Court ordered further briefing on Plaintiffs' claim that various terms are unconstitutionally vague.

Because the Court described its rulings in detail in that opinion and order, it does not do so again here.

Following the ruling, the parties reported on their efforts to reach consensus on the appropriate remedy and explained their positions where they disagreed.[2]  Ultimately, Plaintiffs filed a motion for entry of judgment, which attached a draft proposed judgment highlighting areas of dispute between the parties.  See Mot. for Judgment (Dkt. 167); Draft Proposed Judgment (Dkt. 167-1).[3]  For the reasons that follow, the Court grants Plaintiffs' motion in part and denies it in part.

## II.    ANALYSIS

### A.  Counts I and II – Ex Post Facto Challenges

#### 1.  Background

SORA has been amended numerous times since it was first passed in 1994.[4]  Most relevant here, SORA was amended in 2006, 2011, and 2021.

The 2006 amendments introduced exclusion zones (sometimes called "school zones" or "student-safety zones"), which barred registrants from living, working, or loitering within 1,000 feet of a school, with few exceptions.  Mich. Pub. Acts 121, 127, 132 (2005).

The 2011 amendments introduced a three-tier system that classifies registrants based on their offense.  Mich. Pub. Acts 17, 18 (2011).  The three-tier system introduced in 2011 remains

---

[2] See Defs. Vagueness Br. (Dkt. 162); Pls. Vagueness Br. (Dkt. 163); 11/1/24 Joint Statement (Dkt. 159); 12/11/24 Joint Statement (Dkt. 164).

[3] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing.  See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).  The briefing also includes Defendants' response (Dkt. 168).

[4] For a detailed summary of the various amendments to SORA, see Does III, 2024 WL 4340707, at *2–5.

2

largely unchanged in SORA 2021. A tier determines the registrant's term of registration, reporting requirements, inclusion in the public registry, and ability to petition for removal from the registry. As part of the introduction of the three-tier system, almost 17,000 people who were previously required to register for 25 years had their registration terms retroactively extended to life. SORA 2011 also imposed more stringent reporting requirements. In addition to requiring registrants to report in person at specified intervals, SORA 2011 required registrants to report in person within three business days whenever they changed their name, address, employment, schooling, travel plans, vehicle information, or internet identifiers. These reporting requirements applied retroactively to registrants whose offenses were committed before July 1, 2011.

Following rulings in an earlier federal case, the legislature passed SORA 2021. Mich. Pub. Act 295 (2020). SORA 2021 removed the exclusion zones, which had been introduced in 2006, so that there are no longer any restrictions on where a registrant can live or work. But SORA 2021 left intact many of the amendments introduced in SORA 2011, including the three-tier system, which retroactively increased the registration length for many individuals. The only significant change with respect to the tier system in SORA 2021 is that a registrant's tier is no longer published on the public website. SORA 2021 also maintains the bulk of the reporting requirements introduced in SORA 2011, which continue to apply retroactively to registrants whose offenses were committed before July 1, 2011.

Plaintiffs brought two counts regarding the retroactive application of SORA 2021 to registrants. In Count I, Plaintiffs asserted that retroactively applying SORA 2021 to John Does A, B, C, D, E, F, G, Mary Doe, Mary Roe, and the "pre-2011 ex post facto subclass" violates the Ex

3

Post Facto Clause of the Constitution.[5]  Does III, 2024 WL 4340707, at *10.  In Count II, Plaintiffs

asserted that retroactively requiring lifetime registration for John Does A, B, C, D, E, G, Mary

Doe, Mary Roe, and the "retroactive extension of registration subclass" violates the Ex Post Facto

Clause.[6]  Id.  The Court granted summary judgment to Plaintiffs as to both counts.  Id.  Specifically,

the Court found that certain provisions of SORA 2021—those that retroactively increase reporting

requirements and retroactively extend registration terms—violate the Ex Post Facto Clause.  Id.

Now, the Court must decide whether those provisions that violate the Ex Post Facto Clause can be

severed from SORA 2021—leaving in place the rest of the statute—or whether no portion of the

statute can be applied to registrants who committed their offenses requiring registration before

July 1, 2011.

### 2. Severability

With respect to Count I, Plaintiffs argue that the Court cannot sever the retroactive

application of reporting requirements from SORA 2021.[7]  Mot. at 1.  Plaintiffs argue that the Court

---

[5] The Court granted Plaintiffs' motion for class certification in a stipulated order.  See Mot. to Certify Class (Dkt. 5); 5/18/22 Order (Dkt. 35); 5/19/23 Order (Dkt. 109).  The "pre-2011 ex post facto subclass" is defined as "members of the primary class who committed the offense(s) requiring registration before July 1, 2011."  See 5/18/22 Order.  Plaintiffs John Does A, B, C, D, E, F, G, Mary Doe, and Mary Roe are class representatives.  Id.

The "primary class" is defined as "people who are or will be subject to registration under Michigan's Sex Offenders Registration Act (SORA)."  Id.  Plaintiffs John Does A, B, C, D, E, F, G, H, Mary Doe, and Mary Roe are named as class representatives.  Id.

[6] The "retroactive extension or registration subclass" is defined as "members of the primary class who were retroactively required to register for life as a result of amendments to SORA."  Plaintiffs John Does A, B, C, D, E, G, Mary Doe, and Mary Roe are class representatives.  See 5/18/22 Order.  The Court notes that the "retroactive extension of registration subclass" is a subset of the "pre-2011 ex post facto subclass"—that is, all members of the "retroactive extension of registration subclass" are members of the "pre-2011 ex post facto subclass" as well.

[7] As a threshold matter, Defendants contend that Plaintiffs' arguments related to severance are untimely because Defendants raised the issue of severance in their motion for summary judgment and Plaintiffs did not adequately respond.  Resp. at 1–5.  The Court disagrees.  While Plaintiffs'

must "enjoin retroactive enforcement of SORA"—that is, enjoin enforcement of the entire statute as to anyone who committed their registrable offense before July 1, 2011.[8] Id. This would mean that anyone whose offenses were committed before July 1, 2011 would no longer be required to register under SORA 2021.[9]

With respect to Count II, on the other hand, Plaintiffs ask the Court to "enjoin registration for longer than the term in effect at the time of the offense." Id. at 14. Essentially, Plaintiffs ask

---

discussion of severance was not particularly robust in its summary judgment briefing, Plaintiffs did not ignore the issue completely. In their motion for summary judgment, Plaintiffs argued that "the question of what injunctive relief should issue" would be better addressed after a ruling on liability and upon further briefing. Pls. Mot. Summ. J. at 3 (Dkt. 123). After Defendants raised the issue of severability in their motion for summary judgment, Plaintiffs again requested additional briefing on the topic at a later date. Pls. Resp. & Reply at 35 (Dkt. 131). Defendants argue this was not sufficient, in part because "severance is not considered a remedy." Resp. at 2. But Defendants are incorrect. However, in Betts, the Michigan Supreme Court has made clear that severance is properly part of a remedy analysis. People v. Betts, 968 N.W.2d 497 at 515–521 (Mich. 2021). Therefore, the Court finds that Plaintiffs' briefing on severance at the remedy stage is timely.

[8] Alternatively, Plaintiffs argue that the Court should allow Defendants to continue enforcing SORA retroactively "provided there are opportunities for periodic individual review." Mot. at 1– 2. In their motion for summary judgment, Plaintiffs argued that SORA 2021 violates equal protection and due process by imposing lengthy and lifetime registration without individualized assessment of risk. Does III, 2024 WL 4340707 at *20. After a lengthy analysis, the Court rejected this argument. Id. at *20–34. The Court held that the offense-based approach taken by SORA 2021 is constitutional and that registrants are not entitled to individualized hearings. Id. The Michigan Legislature is free to adopt individualized review and other revisions to SORA. The Court will not prematurely address what revision to its ex post facto analysis might be appropriate if a new legislative landscape is created.

[9] The Court notes that Plaintiffs' request that the Court "enjoin retroactive enforcement of SORA" is somewhat unclear because Plaintiffs do not explain what "retroactive enforcement" means. But the full quote surrounding Plaintiffs' request reads: "As in Does II, the Court should enjoin retroactive enforcement of SORA." Mot. at 1. As discussed later in this opinion and order, in Does II, another judge in this district held that the 2011 amendments to SORA were not severable, and enjoined enforcement of SORA 2011 as to "any persons whose crime subjecting them to registration occurred before the enactment of the 2011 amendments." Doe v. Snyder (Does II), 449 F. Supp. 3d 719, 733 n.9 (E.D. Mich. 2020), judgment entered, 606 F. Supp. 3d 608 (E.D. Mich. 2021). The Court, therefore, interprets Plaintiffs' request with respect to Count I as a request to enjoin enforcement of SORA as to any member of the pre-2011 ex post facto subclass.

the Court to sever the retroactive application of registration terms from SORA 2021.  This would mean that the Court would restore registrants' original registration terms that were in effect at the time they committed their offense.  The rest of SORA 2021 would still apply as to the pre-2011 ex post facto subclass.

But Plaintiffs do not explain why, in their view, severability is possible for registration lengths but not reporting requirements.  In fact, Plaintiffs' arguments against severability apply equally to both provisions, and as explained below, the Court finds that severability is not possible in either case.

Both parties agree that state law governs the question of severability.  See, e.g., Memphis Planned Parenthood, Inc. v. Sundquist, 175 F.3d 456, 466 (6th Cir. 1999).  The parties disagree, however, about how state law should be applied to the case at hand.

The Michigan Legislature has adopted a general severability clause, which reads as follows:

> If any portion of an act or the application thereof to any person or circumstances shall be found to be invalid by a court, such invalidity shall not affect the remaining portions or applications of the act which can be given effect without the invalid portion or application, provided such remaining portions are not determined by the court to be inoperable, and to this end acts are declared to be severable.

Mich. Comp. Laws § 8.5.

Defendants contend that this clause, in conjunction with the Sixth Circuit's recent decision in Doe v. Lee, 102 F.4th 330, 332 (6th Cir. 2024), support the conclusion that severance is required.[10]  Resp. at 5–11.  Plaintiffs contend—albeit only with respect to Count I—that the

---

[10] Defendants incorrectly interpret footnote 31 of the Court's prior opinion and order as a decision regarding severability.  Resp. at 3 (citing Does III, 2024 WL 4340707, at *20 n.31).  The Court did not intend the footnote to reflect a decision on, or analysis of, severability.  This opinion and order contains the Court's first analysis of the severability issue.

Michigan Supreme Court's decision in <u>People v. Betts</u>, 968 N.W.2d 497 (Mich. 2021), is controlling and precludes severability.  Mot. at 1–5.  Defendants counter that <u>Betts</u> is not controlling because it is distinguishable.  Resp. at 6–11.  The Court agrees with Plaintiffs.

In <u>Betts</u>, the defendant pled guilty to second-degree criminal sexual conduct in 1993, two years before the initial SORA took effect.  <u>Betts</u>, 968 N.W.2d at 501.  In 2012, after he had successfully completed parole, Betts failed to report his change of residence, e-mail address, and purchase of a new vehicle within three business days, as required by SORA 2011.  <u>Id.</u>  Charged with violating SORA 2011's registration requirements, he sought dismissal of the criminal proceeding, arguing that retroactive application of SORA 2011 violated ex post facto protections. <u>Id.</u> at 501–502.  The Michigan Supreme Court agreed with Betts and held that SORA 2011, "when applied to registrants whose criminal acts predated the enactment of the 2011 SORA amendments, violates the constitutional prohibition on ex post facto laws."  <u>Id.</u> at 521.

"Because [the] court [] found that the retroactive application of the 2011 SORA is unconstitutional," the court next considered "whether 'the remaining portions or applications of the act . . . can be given effect without the invalid . . . application.'"  <u>Id.</u> at 515 (citing Mich. Comp. Laws § 8.5).  The court noted that § 8.5 "provides two important guiding factors: (1) the remaining application must be consistent with the manifest intent of the Legislature; and (2) the remaining application must be operable, i.e., otherwise complete in itself and capable of being carried out without reference to the unconstitutional sentence or provision."  <u>Id.</u> at 515 (punctuation modified). Considering these principles, the court held that "the 2006 and 2011 amendments, in whole, cannot be excised from retroactive application because doing so renders the statute unworkable."  <u>Id.</u> at 516.

Defendants argue that <u>Betts</u> is distinguishable from the present case for two reasons, neither of which is persuasive.  First, Defendants contend that "<u>Betts</u> was grounded in a different analysis" because it questioned SORA 2011's lack of individualized review.  Resp. at 7.  But the focus of <u>Betts</u>, and its ultimate holding, had nothing to do with individualized review.  The opinion only discussed SORA 2011's lack of individualized review as part of its ex post facto analysis—not its remedy analysis concerning severability.  <u>Betts</u>, 968 N.W.2d at 515–521.

Second, Defendants argue that <u>Betts</u> is distinguishable because it analyzed SORA 2011, not SORA 2021.  Resp. at 7–8.  Defendants assert that the legislature's intent in passing SORA 2021 was to "bring [SORA] into constitutional compliance" and "give effect to Michigan's SORA law as far as possible."  <u>Id.</u> at 8.  But SORA 2021 maintained the same provisions that <u>Betts</u> held could not be severed from the entirety of the statute being considered, i.e. SORA 2011.  In reaching its conclusion that severability would make the statute "inoperable," the court emphasized the three-tier system introduced in SORA 2011, which remains unchanged in SORA 2021:

> The 2011 amendments completely restructured SORA through the imposition of a tiered classification system, and the duties and requirements of each registrant were based on that registrant's tier classification.  Removing the 2011 amendments from SORA would render unclear who was required to comply with the act . . . how long each registrant must comply . . . how many times annually each registrant must report to law enforcement . . . and what a registrant must show to petition for removal from registration.

<u>Betts</u>, 968 N.W.2d at 516.  This same reasoning applies equally to SORA 2021.

Instead of <u>Betts</u>, Defendants argue that this Court should rely on <u>Doe v. Lee</u>, 102 F.4th 330 (6th Cir. 2024) and <u>People v. Lymon</u>, ___ N.W. 3d ___, No. 164685, 2024 WL 3573528 (Mich. July 29, 2024).  Resp. at 6–10.

In <u>Lee</u>, the Sixth Circuit reversed a district court decision enjoining the entirety of the Tennessee Sexual Offender Registration and Monitoring Act (SORMA) because it violated the Ex

Post Facto Clause.  Lee, 102 F. 4th at 332.  The Sixth Circuit, applying Tennessee law, held that the district court should have severed specific provisions of Tennessee SORMA rather than enjoining the entire law.  Id. at 340–341.  Defendants argue that this Court should follow the same guidance here and sever specific unconstitutional provisions from SORA.  Resp. at 6.  But the Sixth Circuit's application of Tennessee severability law to Tennessee SORMA is inapplicable here, given that the Michigan Supreme Court has already applied Michigan severability law to the same statutory language found in the current and preceding versions of SORA.

Finally, Defendants argue that People v. Lymon, ___ N.W. 3d ___, No. 164685, 2024 WL 3573528 (Mich. July 29, 2024), provides the "proper guidance regarding severance."  Resp. at 10.  In Lymon, the Michigan Supreme Court held that the application of SORA to non-sexual offenders is cruel or unusual punishment in violation of the Michigan Constitution.  Lymon, 2024 WL 3573528, at *1.  The Court ordered that the "defendant and other offenders whose crimes lacked a sexual component" be removed from the sex-offender registry.  Id. at *17.  Defendants argue that this holding amounts to severing the unconstitutional provision of the law only, Resp. at 10–11, which they believe is also appropriate here.

Defendant's reliance on Lymon is misguided.  While the court's holding did sever one provision from SORA, the court did not discuss the issue of severability in its opinion or backtrack from what it had said in Betts.  This was likely because the provision at issue in Lymon—the requirement that non-sexual offenders register under SORA—was self-contained and its elimination would not have impacted any other provisions of the statute.  There could not have been a cogent argument that striking down the solitary provision at issue in Lymon would have rendered the balance of the statute inoperable.  In contrast, the Michigan Supreme Court has already held that the provisions at issue in this case permeate the entirety of the SORA system;

disturbing those provisions impacts the statute more broadly.   For this reason, <u>Lymon</u> is distinguishable from <u>Betts</u> and the present case.

In summary, this Court finds that the Michigan Supreme Court's holding in <u>Betts</u> is controlling and that severing specific provisions of SORA 2021 cannot be reconciled with what that court said Michigan law requires.  Accordingly, the Court has no option other than to enjoin enforcement of SORA 2021 entirely as to registrants who committed their offenses before July 1, 2011.[11]

The Court recognizes that this ruling will have significant consequences, but it is not unprecedented.   In an earlier federal case, another judge in this district found that the 2011 amendments to SORA—which were found to violate the Ex Post Facto Clause—could not be severed from the statute.  <u>Doe v. Snyder (Does II)</u>, 449 F. Supp. 3d 719, 733 (E.D. Mich. 2020), <u>judgment entered,</u> 606 F. Supp. 3d 608 (E.D. Mich. 2021).  As a result, the court held that "SORA <u>in toto</u> cannot be applied to any members of the ex post facto subclasses."   <u>Id.</u>   The court

---

[11] SORA was also amended in 1999.  <u>See</u> Mich. Pub. Act 85 (1999).  The 1999 amendments made the registry public on the internet for the first time and required registrants to report in person quarterly or yearly, depending on their offense.  <u>Id.</u>  The amendments also expanded the category of individuals required to register for life.  This applied retroactively to registrants who committed their offense before 1999.  Plaintiffs argue that because Count II was brought on behalf of any "members of the primary class who were retroactively required to register for life as a result of amendments to SORA," Defendants should also be enjoined from enforcing any registration lengths that were retroactively increased in 1999.  Mot. at 13–14.  The Court's holding, which enjoins enforcement entirely as to all registrants who committed their offenses before July 1, 2011, affords relief to those individuals whose registration lengths were retroactively extended by the 1999 amendments.  No further relief is required.

The same is true with respect to Plaintiffs' claim that SORA 2021 violates due process by retroactively changing the terms of plea agreements.  In its prior opinion and order, the Court noted that Plaintiffs' plea bargain claim was moot in light of the Court's ex post facto holding.  <u>Does III</u>, 2024 WL 4340707, at *37.  Because the Court's holding in this opinion confirms that no registrant will be subject to a registration length that was retroactively extended, Plaintiffs' plea bargain challenge remains moot.

specifically stated that its "determination that the 2011 amendments are not severable means that the entirety of SORA cannot apply to any persons whose crime subjecting them to registration occurred before the enactment of the 2011 amendments." Id. at 733 n.9.  Recognizing the gravity of its decision, the court opined that its ruling might "reignite efforts to finalize a new, unified registration statute that can survive constitutional review," but that "until such time as the legislature acts, SORA will be unenforceable against a large portion of registrants." Id. at 737.

## B.  Count VII – Non-Sex Offenses

There are two instances in which SORA 2021 requires registration for offenses without a sex element.  Plaintiffs challenge only one of the two provisions.  The first provision is the "catch-all" provision, which requires registration for any offense "that by its nature constitutes a sexual offense against an individual who is a minor."  Mich. Comp. Laws § 28.722(r)(viii).  SORA 2021 requires a judicial determination of whether an offense falls under the catch-all provision.[12] Plaintiffs did not dispute this provision in their motion for summary judgment.

The second non-sex offense provision requires that individuals convicted of certain offenses against minors register.[13]  Plaintiffs argued that procedural due process requires a judicial

---

[12] Mich. Comp. Laws § 769.1(12) provides that the sentencing court determine whether the offense "by its nature constitutes a sexual offense" against a minor and, if so, include the basis for that determination on the record and include the determination in the judgment of sentence.

[13] These offenses include: (i) kidnapping a minor (Mich. Comp. Laws § 750.349); (ii) unlawful imprisonment of a minor (id. § 750.349b); (iii) leading away of child under 14 (id. § 750.350); or (iv) a comparable out-of-state offense. Mich. Comp. Laws § 28.722(r)(iii), (r)(x), (v)(ii), v(iii), (v)(vii).

Defendants do not contest that, under Lymon, the state cannot label someone as a sex offender unless that person's underlying offense conduct involved sex.  See Does III, 2024 WL 4340707 at *38–40.  The only disputed issue resolved by the Court's prior opinion and order was whether the Michigan State Police's (MSP) procedure for determining whether an individual convicted of a non-sex offense must register—which involved a determination made by a prosecutor regarding whether the offense involved a sexual circumstance of some kind—violated procedural due

determination that a person committed a sex offense before that individual can be required to register as a sex offender for these offenses. The Court agreed and held that a "judicial determination [] must be afforded to people convicted of offenses without a sex element." <u>Does III,</u> 2024 WL 4340707, at *40.

Plaintiffs propose that the Court find that the judicial determination already afforded for the catch-all provision should apply to the second non-sex offense provision as well. Mot. at 17–20. Defendants disagree. They argue that the legislature should decide whether the second non-sex offense provision should rely on the same judicial determination as the "catch-all" provision. Resp. at 15. Defendants urge the Court to issue a judgment with more flexible language that affords registrants a process providing notice and the right to be heard by a neutral decisionmaker, but ask that the Court not go so far as to mandate a specific process to be followed. <u>Id.</u>

The Court believes that adopting the approach used by SORA 2021's "catch-all" provision is the most appropriate choice. The legislature has already prescribed a process for determining whether registration should be required for certain individuals not convicted of a sex-offense. It presumably did so because it found the process to be workable in the specific context of non-sex offenses. Extending this process to all individuals convicted of non-sex offenses would not be usurping the legislative function. This is especially true where, as Defendants admit, implementing this approach will not be burdensome. Indeed, at this time, fewer than 30 individuals already convicted of non-sex offenses may be eligible for a judicial determination under this provision. Resp. at 15–16.

---

process. <u>Id.</u> The Court held that the MSP's procedure was not constitutional, and that individuals convicted of a non-sex offense have the right to a judicial determination of whether their offense conduct was sexual in nature. <u>Id.</u>

For these reasons, the Court holds that the process used by SORA 2021's "catch-all" provision be afforded to all registrants convicted of non-sex offenses.

## C. Count XI – Non-Michigan Offenses

In contrast, the Court is not persuaded that it should prescribe a specific judicial process for determining whether and how SORA should apply to people with out-of-state convictions. Determining whether an individual with an out-of-state conviction must register under SORA requires a determination as to whether the out-of-state offense is "substantially similar" to a registrable Michigan offense.

In its earlier ruling, the Court held that (i) people with out-of-state convictions must be afforded a judicial determination before being required to register under SORA, and (ii) people with out-of-state convictions cannot be subjected to harsher treatment than people with Michigan convictions. Does III, 2024 WL 4340707, at *40–43. At that time, the Court deferred discussion of the specific form of judicial determination that must be afforded until a later phase in the case. Id. at 43.

The parties agree regarding some aspects of a possible judicial determination, but not all. The legislature is in the best position to determine the appropriate judicial process for out-of-state offenders. Unlike in the non-sex offense context, no process currently exists for any individuals convicted of out-of-state offenses, as such individuals do not have an existing Michigan case with a judge in place to rule on the issue. The legislature has never opined on what process it believes is most appropriate in this context. Further, far more hearings will be needed for individuals convicted of out-of-state offenses as compared with individuals convicted of non-sex offenses (800 versus 30). Resp. at 22. As Defendants point out, it is possible that the final form of judicial

determination afforded to individuals with out-of-state convictions could be quite costly. Id. at 21–22. The legislature should make the final choice.

Accordingly, the Court enjoins the required registration of individuals convicted of out-of-state offenses. To require such individuals to register under SORA 2021, the legislature must adopt a constitutional process that affords registrants with a judicial determination of their registration requirements.

## D. Count VIII – Vagueness

Plaintiffs argue that certain reporting requirements of SORA 2021 are unconstitutionally vague. Under the void-for-vagueness doctrine, courts assess whether (i) "ordinary people, exercising ordinary common sense, can understand [the statute] and avoid conduct which is prohibited" and (ii) the statute "establishes minimal guidelines to govern enforcement." United States v. Salisbury, 983 F.2d 1369, 1378 (6th Cir. 1993). The doctrine is intended to "ensure fair notice to the citizenry" and "provide standards for enforcement by the police, judges, and juries." Columbia Nat. Res., Inc. v. Tatum, 58 F.3d 1101, 1104 (6th Cir. 1995). "The second prong—providing minimal guidelines to govern the conduct of law enforcement—constitutes the more important aspect of the vagueness doctrine." Belle Maer Harbor v. Charter Twp. of Harrison, 170 F.3d 553, 556–557 (6th Cir. 1999). "[A] failure to define a term within a statute or ordinance does not render the statute unconstitutionally vague, where the common meaning of the word provides both adequate notice of the conduct prohibited and the standards for enforcement." Id. at 558.

In its prior opinion and order, the Court declined to rule on Plaintiffs' vagueness claim, instead ordering both parties to file supplemental briefing on the issue. Does III, 2024 WL 4340707, at *56–57. The issue is now fully briefed.

As an initial matter, Defendants argue that Plaintiffs' vagueness challenges fail because SORA 2021 includes a scienter requirement that any violations must be willful.  See Mich. Comp. Laws § 28.729(1) (". . . an individual required to be registered under this act who willfully violates this act is guilty of a felony punishable as follows . . . .").  According to Defendants, "[t]o the extent that there is any vagueness, the new SORA's scienter requirements mitigate any ambiguity and due to the rule of lenity in criminal statutes, the law only applies to conduct clearly covered." Defs. Vagueness Br. at 9.

The Court finds this argument unavailing.  The fact that an offense contains a willfulness element provides no general insulation from a vagueness challenge.  See, e.g., Planned Parenthood of Cent. New Jersey v. Farmer, 220 F.3d 127, 139–140 (3d Cir. 2000) (holding that scienter requirement did not save vague law); Doe v. Harris, 772 F.3d 563, 579 (9th Cir. 2014) (same).  SORA does not define "willfully," but the Michigan Court of Appeals has held that "willfully," as it appears in SORA, "mean[s] some intent, not a specific intent but some knowing exercise of choice."  People v. Lockett (On Rehearing), 659 N.W.2d 681, 682 (Mich. App. 2002).  The court has also opined that, at least in certain circumstances, determining whether something is "willful" can be "an extremely murky area."  Id. (punctuation modified).  The Court agrees with Plaintiffs that § 28.729(1) does not obviate Plaintiffs' vagueness concerns.

Following the Court's prior opinion and order, the parties reached agreement as to the meaning of some, but not all, of the disputed terms.  The Court addresses each disputed term, finding that some of the terms are unconstitutionally vague and others are not.

### 1.  Phone Numbers

Registrants must report: (i) "all telephone numbers registered to the individual or used by the individual, including, but not limited to, residential, work, and mobile telephone numbers" and

(ii) "<u>any change in</u> . . . telephone numbers registered to or <u>used by</u> the individual."  Mich. Comp. Laws §§ 28.727(h), 28.725(2)(a) (emphasis added).

Plaintiffs argue that what constitutes "use" of a telephone number is unclear.   Pls. Vagueness Br. at 7–9.  Plaintiffs contend that "phones today are mini-computers" that can be "used" in several different ways.  <u>Id.</u> at 9.  For example, one can use a phone to navigate while driving, take and view photos, set an alarm, or search something on Google, among many other things.  Plaintiffs say it is unclear whether these uses, particularly when a registrant is looking at another individual's phone, are reportable.  <u>Id.</u>  In response, Defendants argue that "a person of ordinary intelligence understands what it means to use a telephone."  Defs. Vagueness Br. at 12. According to Defendants, "[a]t the heart of [Plaintiffs'] position, it's not that 'used by' is vague, but that it would be onerous to comply."  <u>Id.</u> at 11.

The Court notes that the disputed language has to do with the use of a telephone <u>number</u>— not a telephone.  The phrase "use of a number" is not part of ordinary parlance and does not equate with the use of a "phone."  The term is vague; and the same is true for any "change" in the "use of a number."  The Court enjoins enforcement of the requirements to report "all telephone numbers . . . used by the individual," Mich. Comp. Laws § 28.727(h), and "any change in . . . telephone numbers . . . used by the individual," <u>id.</u> § 28.725(2)(a).  By contrast, the term "telephone number registered to an individual" is not vague.  So the Court does not enjoin enforcement of the requirement to report telephone numbers "registered" to a registrant or changes with respect to the telephone numbers registered to an individual.

### 2.  Vehicles

Registrants must report "[t]he license plate number and description of any vehicle owned or <u>operated by</u> the individual" and "<u>any change</u> in vehicle information" for vehicles "<u>used by</u> the

individual." Mich. Comp. Laws §§ 28.727(j), 28.725(2)(a) (emphasis added). Plaintiffs argue that the terms "operated by" and "used by" are unclear. Pls. Vagueness Br. at 9–11. According to Plaintiffs, registrants are unsure if they need to report events such as backing a roommate's car out of the driveway. Id. at 10. Defendants counter that "the plain language is clear that any 'use' or 'operation' of a vehicle requires reporting." Defs. Vagueness Br. at 14. As with the telephone reporting requirement, Defendants contend that "Plaintiffs are not really arguing that the language is vague, but that if the plain language is applied as written, it is onerous or overly broad." Id. In response to Plaintiffs' hypothetical regarding backing a roommate's car out of the driveway, Defendants argue that this would need to be reported. Id.

The Court agrees with Defendants that the term "operated by" is not vague. Even though the term "operated" is not defined by SORA 2021, it is a commonly used term with respect to motor vehicles. In addition, it is defined by the Michigan Motor Vehicle Code (MVC), Mich. Comp. Laws §§ 257.1 et seq. It is reasonable to assume that the legislature, in passing SORA 2021, would choose to defer to the prevailing state statute regarding motor vehicles for common definitions.

Section 257.35a defines "operate" or "operating" as "[one] or more of the following: (a) Being in actual physical control of a vehicle . . . . (b) Causing an automated motor vehicle to move under its own power in automatic mode upon a highway or street regardless of whether the person is physically present in that automated motor vehicle at that time." Backing a roommate's car out of the driveway requires both being in actual physical control of the vehicle and causing the vehicle to move. SORA 2021 would unambiguously cover such an act. While the requirement to report any vehicle operated by a registrant is potentially burdensome, it is not vague.

The Court finds that the term "used by," on the other hand, is vague.  The term "use" is not confined to the operation of a vehicle.  A car could, arguably, be "used" for storage, or playing music, or for shade, or any number of functions.  But an ordinary person would not likely understand those functions to be reportable under the statute.  It is not reasonable to say that an ordinary person would understand the statutory language to be that open-ended.  The Court, therefore, enjoins enforcement of the requirement to report "any change in vehicle information" for vehicles "used by the individual."  Mich. Comp. Laws § 28.725(2)(a).

### 3.  Employment and Volunteer Work

A registrant must report (i) the name and address of each of their "employers," Mich. Comp. Laws § 28.727(1)(f), and (ii) if the individual "changes his or her place of employment, or employment is discontinued," id. § 28.725(1)(b).  Section 28.727(1)(f) defines employer "for purposes of [that] subdivision" as including "a contractor and any individual who has agreed to hire or contract with the individual for his or her services."  In its general definitional section, SORA 2021 does not define employer, but it defines an employee as "an individual who is self-employed or works for any other entity as a full-time or part-time employee, contractual provider, or volunteer, regardless of whether the individual is financially compensated."  Id. § 28.722(d).

Plaintiffs contend that the reporting requirements related to employment are vague for multiple reasons.  First, Plaintiffs argue that it is not clear whether volunteer work is reportable.  Plaintiffs point to the differing definitions of "employer" and "employee" in the statute, and the fact that only the definition of "employee" references volunteer work specifically.  Pls. Vagueness Br. at 12–13.  Defendants argue that the definition of "employee" makes clear that volunteer work should be included.  Defs. Vagueness Br. at 23–24.

The Court holds that volunteer work is reportable to the extent it is performed for an organization. While the definition of employer does not specifically reference volunteer work, the term employee does. The term employer carries some degree of formalism because there must be some agreement "to hire" or "to contract" for services. Helping a neighbor remove snow from his sidewalk, without pay, does not carry the formalistic sense of "hiring" or "contracting" that the statutory language conveys. But uncompensated services for an organization crosses the line into reportable work. It is far less casual than neighborly assistance and comes closer to regulating the proximity to others that the reporting regimen appears designed to monitor. Notably, SORA provisions discussing volunteer work are in the context of volunteers at schools. See, e.g., Mich. Comp. Laws § 28.722(b)(v). The term does not appear in any context of one-on-one encounters.

Plaintiffs also raise arguments related to which employer addresses are reportable, what constitutes discontinuation of employment, and whether de minimis compensated labor is reportable. Pls. Vagueness Br. at 13–15. These arguments fail. The requirement to report when one changes his or her place of employment is not vague. The ordinary meaning of this term encompasses the address of one's employer, not necessarily every job site to which an employee is assigned. Discontinuation of employment is also clear. Despite Plaintiffs' argument to the contrary, there is no plausible argument that a registrant would have to report short-term reductions in hours or lost work due to a snowstorm. And finally, de minimis compensated labor is clearly covered by the statute (as is unpaid volunteer work). Plaintiffs might find this requirement burdensome, but it is clear from the text of the statute.

### 4.  Travel

A registrant must report (i) if they "intend[] to temporarily reside at any place other than his or her residence for more than 7 days," Mich. Comp. Laws § 28.725(2)(b) (emphasis added),

and (ii) "any place of temporary lodging used or to be used by the individual during any period in which the individual is away, or <u>expected to be away</u>, from his or her residence for more than 7 days," <u>id.</u> § 28.727(1)(e) (emphasis added).  Plaintiffs argue that multiple parts of the provision are vague.

First, Plaintiffs assert that it is not clear whether an individual must report under § 28.725(2)(b) if he intends to be away for more than seven days or intends to reside temporarily at another place for more than seven days.  Pls. Vagueness Br. at 16.  Defendants respond that because "any place" is singular, registrants only need to report stays at a single location for more than seven days.  Defs. Vagueness Br. at 19.  Plaintiffs also assert that it is not clear under either provision whether the 7 days must be consecutive.  Pls. Vagueness Br. at 16.  Defendants respond that the statute clearly refers to consecutive days.  Defs. Vagueness Br. at 19.  The Court agrees with Defendants' reading of the statute and finds that neither provision is vague under the above theories offered by Plaintiffs.

Plaintiffs fare better with their argument that the terms "intend" and "expected to be away" are vague.  Pls. Vagueness Br. at 16.  Plaintiffs emphasize that "registrations cannot and do not know . . . at what point tentative travel plans become reportable . . . ."  <u>Id.</u>  The Court agrees. Planning travel can be a multi-step process.  It is not clear whether registrants must report travel plans as soon as they have the idea to travel, or once they have taken an affirmative step toward planning a trip, or at some other point in the planning process.  Because the terms "intend" and "expected to be away" are vague, the Court enjoins enforcement of the requirements to report travel plans under Mich. Comp. Laws §§ 28.725(2)(b) and 28.727(1)(e).[14]

---

[14] The Court notes that it does not enjoin enforcement of the requirement to report completed travel under § 28.727(1)(e).  The Court only enjoins enforcement of the requirement to report intended or expected travel.

### 5. Education

Registrants must report (i) "the name and address of any school being attended by the individual and any school that has accepted the individual as a student that he or she plans to attend," Mich. Comp. Laws § 28.727(1)(g); (ii) enrolling or discontinuing enrollment at an "institution of higher education," id. § 28.725(1)(c); and (iii) enrolling or discontinuing enrollment or being accepted as a "student," id. § 28.724a(1)(a). Plaintiffs argue that the definitions of "student," "institution of higher learning," and "school" in SORA 2021 are overlapping and confusing.[15] Pls. Vagueness Br. at 18.[16] According to Plaintiffs, it is "unclear whether the countless one-off classes and instructional courses that grant any form of certificate are reportable." Id. As an example, Plaintiffs argue that it is not clear if a karate course that awards a black belt certificate would be reportable. Id.

The Court finds this argument unavailing. The Sixth Circuit has made clear that a "rule is not unconstitutionally vague because a plaintiff presents a tough hypothetical." Platt v. Bd. of Commissioners on Grievances & Discipline of Ohio Supreme Ct., 894 F.3d 235, 251 (6th Cir. 2018) (punctuation modified). "[A]lmost any criminal or civil prohibition is susceptible to clever hypotheticals testing its reach." Id. It is not the Court's job to rule on specific hypothetical

---

[15] "Student" means a person "enrolled on a full- or part-time basis in a public or private educational institution, including but not limited to, a secondary school, trade school, professional institution, or institution of higher education." Mich. Comp. Laws § 28.722(p). An "institution of higher education" means "[one] or more of the following: (i) a public or private community college, college, or university[,] [or] (ii) a public or private trade, vocational, or occupational school." Id. § 28.722(h). A "school" means "a public or private postsecondary school or school of higher education, including a trade school." Id. § 28.727(g).

[16] The parties have agreed, in part, to an interpretation of these requirements, but they disagree regarding the inclusion of a particular qualifier in the interpretation. Pls. Vagueness Br. at 18. The Court declines to rule on whether the qualifier is appropriate because it finds that the requirements in the statute are not unconstitutionally vague.

applications of a statute.   As written, the types of institutions for which enrollment and disenrollment must be reported are clear.   The definition of "student" includes the phrase "including but not limited to," followed by four examples.   Michigan courts consistently hold that the phrase "including but not limited to" should be interpreted as an illustrative listing.   See, e.g., Samona v. City of Eastpointe, No. 366648, 2024 WL 3996101, at *9 (Mich. Ct. App. Aug. 29, 2024).   Here, the examples of "schools" listed in the statute help to illustrate what types of institutions the legislature intended to cover.   This definition provides registrants with enough clarity regarding their reporting requirements.

Plaintiffs next argue that § 28.727(1)(g) is vague because it is "impossible to know when a tentative plan to attend a school ripens into a reportable event."   Pls. Vagueness Br. at 20.   The Court agrees.   As with the requirement to report planned travel, it not clear when tentative plans become reportable.   A student could apply to many different schools; as written, the statute provides no guidance for how firm a student's "plan to attend" a particular school must be for the plan to be reportable.   The Court, therefore, enjoins enforcement of the portion of § 28.727(1)(g) that requires reporting of the name and address of any school a registrant "plans to attend."   The Court does not enjoin enforcement of the requirement to report any school being attended by the individual.

Also related to higher education, registrants must report if "[a]s part of his or her course of studies at an institution of higher education in this state, the individual is present at any other location in this state, another state, a territory or possession of the United States . . . ."   Mich. Comp. Laws § 28.724a(1)(b).   Plaintiffs assert that "[r]egistrants cannot know what this means" because "[a]ll kinds of short-term travel—attending a conference, research at another school's library, or a two-hour field trip—can involve being 'present' at another location as 'part of [one's]

course of studies.'"  Pls. Vagueness Br. at 20.  The Court interprets this argument as one of overbreadth, not vagueness.  The language of the provision makes clear that the kinds of short-term travel Plaintiffs cite would be reportable as they require being present at another location as part of a registrant's course of studies.  There is nothing unclear about this requirement.

### 6.  Nicknames

Registrants must report their "legal name and any aliases, nicknames, ethnic or tribal names, or other names by which the individual is or has been known."  Mich. Comp. Laws § 28.727(1)(a).  Plaintiffs argue that "requiring reporting of every non-legal name one has ever used is vague" and offer as an example that that a registrant could never know that they "[have] to report calling oneself 'Spiderman' in kindergarten."  Pls. Vagueness Br. at 20–21.  Defendants contend that "a person of ordinary intelligence can understand what a nickname or alias is."  Defs. Vagueness Br. at 15–16.  The Court agrees.  The requirement is not that registrants report every non-legal name they have ever used.  The requirement is to report any name "by which the individual is or has been known."  Mich. Comp. Laws § 28.727(1)(a).  The Court finds that this requirement, in conjunction with the common meanings of the words "nicknames" and "aliases," is not vague.

### III.    CONCLUSION

For the reasons explained above, the Court grants Plaintiffs' motion for judgment (Dkt. 167) in part and denies it in part.  A judgment will be entered separately.

SO ORDERED.

Dated:  March 26, 2025                          s/Mark A. Goldsmith
        Detroit, Michigan                       MARK A. GOLDSMITH
                                                United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 26, 2025.

s/Carolyn Ciesla
Case Manager
