UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOES A, B, C, D, E, F, G, H,
MARY DOE and MARY ROE, on behalf
of themselves and all others similarly
situated,

No. 2:22-cv-10209

HON. MARK GOLDSMITH

Plaintiffs,

MAG. CURTIS IVY, JR.

v

GRETCHEN WHITMER, Governor of
the State of Michigan, and COL. JAMES
GRADY, Director of the Michigan State
Police,

Defendants.

_____/

## DEFENDANTS' MOTION TO STAY JUDGMENT ON COUNTS I, II, AND XI PENDING APPEAL – EXPEDITED CONSIDERATION REQUESTED

In its September 2024 opinion, this Court found that *Willman* was not controlling precedent, the new SORA is punishment and as such is an Ex Post Facto violation. *Does v. Whitmer,* No. 22-CV-10209, 2024 WL 4340707, at *10-11 (E.D. Mich. Sept. 27, 2024). The Court also found that the new SORA violated Due Process and Equal Protection with respect to registrants with out-of-state convictions. (*Id.* at *77-83.) On March 26, 2025, this Court entered a judgment, which will result in approximately 30,000 registrants from the Ex Post Facto subclass falling off the registry, and more than 3,000 registrants with out-of-state convictions falling off the

registry.  (ECF No. 172, PageID.9184-9185, 9193.)  Defendants move this Court for a stay of this Court's final judgment with respect to Counts I, II, and XI to allow Defendants to file an appeal.  (*Id.*)  Specifically, Defendants are seeking a stay of paragraphs B and K of the judgment, and any related requirements flowing from those paragraphs.  (ECF No. 172, PageID.9184-9185, 9193.)

For the reasons stated in the accompanying brief, the Defendants will likely prevail on appeal, will be irreparably harmed absent a stay and the public has an interest in continuing to be able to obtain accurate, factual information about individuals convicted of sex offenses.

Granting the stay will eliminate the chaos that would ensue if the final judgment were effectuated while the appeal was considered by the Sixth Circuit.  Tens of thousands of registrants would be notified that they no longer need to register, law enforcement and prosecutors would likewise be notified of the changes, and then if the Sixth Circuit reverses the judgment, tens of thousands of registrants would need to be notified again that they must register.  As Plaintiffs have emphasized throughout this litigation, failure to register can lead to a prison sentence.  Clarity over confusion is highly favored.

To be sure, the registrants in the Ex Post Facto subclass and the non-Michigan offense subclass don't want to register at all; however, the confusion that would result, if the stay is not granted, warrants issuance of the stay.  Defendants intend to

submit their briefing on appeal as expeditiously as possible, and Plaintiffs can do likewise to minimize the delay in a final resolution.

Defendants respectfully request that the Court quickly decide this motion so that they may seek a stay in the Sixth Circuit, if relief is not granted, and so that the parties don't spend significant resources working toward implementing the judgment if it will be stayed.

Defendants counsel sought concurrence before filing the instant motion. There was a conference amongst the attorneys where Defendants' counsel explained the nature of the motion and the legal basis for the motion, but concurrence was not granted.  L.R. 7.1(a)(2).

WHEREFORE, Defendants respectfully request that this Court grant a stay of the final judgment related to Counts I, II, and XI while Defendant's file an appeal on those counts.

Respectfully submitted,

/s/ Eric M. Jamison
Eric M. Jamison
Assistant Attorney General
Attorney for Defendants Whitmer and Grady
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
jamisone@michigan.gov
P75721

Dated:  April 11, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2025, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

*/s/ Eric M. Jamison*
Eric M. Jamison
Assistant Attorney General
Attorney for Defendants Whitmer and Grady
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
jamisone@michigan.gov
P75721

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOES A, B, C, D, E, F, G, H,
MARY DOE and MARY ROE, on behalf
of themselves and all others similarly
situated,

No. 2:22-cv-10209

HON. MARK GOLDSMITH

Plaintiffs,

MAG. CURTIS IVY, JR.

v

GRETCHEN WHITMER, Governor of
the State of Michigan, and COL. JAMES
GRADY, Director of the Michigan State
Police,

Defendants.

_____/

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO STAY COUNTS I,
II, and XI OF JUDGMENT**

Eric M. Jamison
Assistant Attorney General
Attorney for Defendants Whitmer and
Grady
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
jamisone@michigan.gov
P75721

Dated: April 11, 2025

# TABLE OF CONTENTS

Page

Table of Contents ................................................................................................ i

Index of Authorities ......................................................................................... ii

Introduction ....................................................................................................... 1

Argument ............................................................................................................. 2

I.     The Court should issue a stay ............................................................... 2

     A.    Defendants are likely to prevail on the merits .......................... 2

     B.    Irreparable injury ............................................................................ 6

          1.    KS ........................................................................................ 7

          2.    SB ........................................................................................ 9

          3.    GW ...................................................................................... 10

          4.    EC ....................................................................................... 12

          5.    WL ...................................................................................... 13

          6.    JL ........................................................................................ 13

          7.    JM ....................................................................................... 14

          8.    JE ........................................................................................ 15

     C.    There is no substantial injury .................................................... 16

     D.    The public interest ........................................................................ 18

Conclusion and Relief Requested ................................................................. 21

Certificate of Service ....................................................................................... 22

Local Rule Certification ................................................................................... 23

# INDEX OF AUTHORITIES

Page

## Cases

*Baker v Gen. Motors Corp.,*
 522 U.S. 222 (1998) ........................................................................................................ 5

*Curtis v. Lafler,*
 No. 03-72301, 2008 WL 4058597, at *1 (E.D. Mich. Aug. 28, 2008) ....................... 11

*Doe v. Snyder,*
 606 F.Supp.3d 608 (E.D. Mich., 2021) ...................................................................... 6

*Does v. Whitmer,*
 69 F.4th 300 (6th Cir. 2023) ......................................................................................... 6

*Hilton v. Braunskill,*
 481 U.S. 770 (1987) ....................................................................................................... 2

*In re Eastman,*
 No. 361789, 2022 WL 16858616, at *1 (Mich. Ct. App. Nov. 10, 2022) ................. 15

*Maryland v. King,*
 133 S. Ct. 1 (2012) ........................................................................................................ 5

*Overstreet v Lexington-Fayette Urban County Gov't,*
 305 F.3d 566 (6th Cir. 2002) ........................................................................................ 2

*People v. Baker,*
 No. 283632, 2010 WL 1507651, at *1 (Mich. Ct. App. Apr. 15, 2010) ..................... 9

*People v. Barker,*
 411 Mich. 291 (1981) .................................................................................................. 13

*People v. Love,*
 156 Mich. App. 568 (1986) ........................................................................................ 13

*People v. Lynn,*
 91 Mich. App. 117 (1979) .......................................................................................... 13

*People v. Markovich,*
 No. 320982, 2015 WL 4255076, at *1 (Mich. Ct. App. July 14, 2015) ................... 14

*People v. West*,
  No. 195005, 1998 WL 1991774, at *1 (Mich. Ct. App. May 15, 1998)...................... 10

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*,
  734 F.3d 406 (5th Cir. 2013) ........................................................................ 6

*United States v. Wass*,
  954 F.3d 184 (4th Cir. 2020) ........................................................................ 3

*United States v. White*,
  920 F.3d 1109 (6th Cir. 2019) ...................................................................... 2

*United States v. Young*,
  585 F.3d 199 (5th Cir. 2009) ........................................................................ 3

## Statutes

Mich. Comp. Laws § 28.721a............................................................................ 6

Mich. Comp. Laws § 28.722 (r)(xi), (t)(xii), (v)(x) ............................................ 5

Mich. Comp. Laws § 28.723(1)(d) ................................................................... 5

Mich. Comp. Laws § 28.725(3) ..................................................................... 18

## Constitutional Provision

U.S. Const., art. 4, § 1 .................................................................................. 5

## INTRODUCTION

In its September 2024 opinion, this Court found that *Willman* was not controlling precedent, the new SORA is punishment and as such is an Ex Post Facto violation.  *Does v. Whitmer,* No. 22-CV-10209, 2024 WL 4340707, at *10-11 (E.D. Mich. Sept. 27, 2024).  The Court also found that the new SORA violated the Due Process and Equal Protection clauses with respect to registrants with out-of-state convictions.  *Id.* at *77-83.)

On March 26, 2025, this Court entered a judgment, which will result in approximately 30,000 registrants from the Ex Post Facto subclass falling off the registry, and more than 3,000 registrants with out-of-state convictions falling off the registry.  (ECF No. 172, PageID.9184-9185, 9193.)  Defendants move this Court for a stay of this Courts final judgment while Defendants file an appeal of Counts I, II, and XI.  (*Id.*)  Specifically, Defendants are seeking a stay of paragraphs B and K of the judgment, and any related requirements flowing from those paragraphs.  (ECF No. 172, PageID.9184-9185, 9193.)

 Granting the stay will prevent chaos, will provide the public with accurate and factual information about sex offenders so that they may try to protect themselves and their families, and will allow for the orderly resolution of the legal issues remaining in the case.

## ARGUMENT

### I. The Court should issue a stay

In evaluating motions for stay, courts consider four familiar factors:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The factors are balanced against each other and are not independent prerequisites that must be met before a stay is granted. *Overstreet v Lexington-Fayette Urban County Gov't,* 305 F.3d 566, 573 (6th Cir. 2002).

### A. Defendants are likely to prevail on the merits

The first factor weighs in favor of Defendants. Respectfully, *Willman* is controlling law. *United States v. White*, 920 F.3d 1109, 1115 (6th Cir. 2019) ("the [lower courts] should follow the case which directly controls") (citations omitted). The new SORA is on all fours with SORNA and even though *Willman* did not provide a lengthy legal analysis in concluding that SORNA was not an Ex Post Facto violation, it reached that conclusion. *Willman v. Att'y Gen. of United States*, 972 F.3d 819, 824 (6th Cir. 2020).

SORNA has all the same hallmarks as the Michigan SORA. (e.g., registrants must provide nearly identical personal information under SORNA and SORA; under

2

both schemes registrants must report in-person periodically and must appear in-person to report changes to certain personal information; and under both SORNA and SORA the registration terms are identical.) (ECF No. 41-2, PageID.1385-1389.)[1] Accordingly, a finding that SORA violates the Ex Post Facto Clause means that the federal SORNA violates the Ex Post Facto Clause, which finding is inconsistent with *Willman.*

In *Willman*, aside from citing to *Felts* to support its conclusion that SORNA doesn't violate the Ex Post Facto clause, the Sixth Circuit also noted ten other circuits that have similarly found that SORNA does not violate the Ex Post Facto clause. *Willman*, 972 F.3d 819, 824 (2020).

The Sixth Circuit cited approvingly to a Fourth Circuit opinion with a lengthy analysis of whether SORNA violated the Ex Post Facto Clause, including a discussion of the *Mendoza* factors. *United States v. Wass*, 954 F.3d 184, 192 (4th Cir. 2020). The challenge in *Wass* was twofold, first a challenge to criminal sanctions for failing to register as applied to pre-SORNA offenders, and second, a challenge to being subject to SORNA for all pre-SORNA offenders. The Fourth Circuit rejected both

---

[1] Defendants attached charts comparing SORA and SORNA in their earlier filings to show the substantive identity of these legal frameworks (ECF No. 39-3, PageID.1239; ECF No. 41-2, PageID.1388), an updated version of the same chart is attached. See Ex. A.

challenges and ultimately held that SORNA's registration requirements are not an Ex Post Facto violation. (*Id.* at 193.)

Likewise, the Fifth Circuit discussed the *Mendoza* factors when answering the question of whether SORNA, as a whole, was an Ex Post Facto violation for a 2001 conviction. It concluded that SORNA was not punitive and thus was not an Ex Post Facto violation. *United States v. Young*, 585 F.3d 199, 204 (5th Cir. 2009).

To be sure, some of the cases cited, including *Felts*, addressed the Ex Post Facto question in the context of prosecution for failing to register after the SORNA was passed. (e.g., someone convicted for a 2004 sex crime, SORNA was passed in 2006 and subjected person to registration, which means since 2006 they were on notice of their registration obligations, registrant traveled to other states was convicted for failing to register under SORNA in 2012.) However, that does not undo one of the primary holdings in *Willman* that SORNA was not an Ex Post Facto violation.

This Court reached the wrong conclusion when it determined that *Willman* provides no guidance, in part, because it relied on *Felts* which addressed the question of whether his later failure-to-register conviction was an Ex Post Facto violation. As Plaintiffs' counsel aptly pointed out in their amicus brief in *Willman*, "there is no federal jurisdictional element: he does not have a federal conviction and has not traveled in interstate commerce." (Ex. B, ACLU Amicus Curiae Brief, *Willman v U.S. Attorney General*, [Case 19-2405, Doc 25 Page 11.]) In other words, *Willman did consider*

4

the question of whether SORNA as a whole presented an Ex Post Facto violation, and *did not include* the related question of whether it was an Ex Post Facto violation to charge for a failure to register after SORNA was enacted. While the *Willman* analysis was limited, the holding still stands and providing a short analysis does not change the precedential nature of the decision.

With respect to the holding relating to the out-of-state convictions, respectfully, this Court arrived at the wrong conclusion. Individuals with out-of-state convictions must register in Michigan under either Mich. Comp. Laws § 28.723(1)(d), or if the out-of-state conviction is substantially similar to a Michigan offense. Mich. Comp. Laws § 28.722(r)(xi), (t)(xii), (v)(x).

These are separate provisions of law. Even if there is not a substantially similar Michigan offense, someone with an out-of-state offense with registration obligations in another state arising from a judgment in another state must register in Michigan under Mich. Comp. Laws § 28.723(1)(d). The individual was provided Due Process in the state of conviction and Michigan must honor that conviction under the Full Faith and Credit Clause. U.S. Const., art. 4, § 1; *Baker v Gen. Motors Corp.*, 522 U.S. 222, 235 (1998).

The Defendants are likely to succeed on the merits, and this Court should issue a stay.

## B.     Irreparable injury

The second factor also weighs heavily in favor of the Defendants.  Defendants

have an interest in upholding the policy choice the Legislature made with respect to

the regulatory scheme for sex offenders.  "'[A]ny time a State is enjoined by a court

from effectuating statutes enacted by representatives of its people, it suffers a form of

irreparable injury.'"  *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in

chambers) (quoting *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351

(1977) (Rehnquist, J., in chambers)); *see also Planned Parenthood of Greater Tex. Surgical*

*Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013) ("When a statute is enjoined,

the State necessarily suffers the irreparable harm of denying the public interest in the

enforcement of its laws.")

The Legislature declared that the purpose of the law is to protect the people

against future criminal sexual acts by convicted sex offenders, which is accomplished

by providing the public with a means to monitor sex offenders.  Mich. Comp. Laws §

28.721a.  Here, the Michigan Legislature amended the SORA to remove the

provisions of the old law that were found to be unconstitutional, which is a point

recognized by Plaintiffs and the courts.  "The new SORA became effective March 24,

2021, and *all parties acknowledge that the new SORA removes or modifies all provisions that this*

*court found to be unconstitutional* in its February 14, 202[0] opinion in *Does II.  Doe v.*

*Snyder*, 606 F.Supp.3d 608, 613 (E.D. Mich., 2021) (emphasis added).  The Sixth

Circuit also noted that the new SORA "removed or modified the provisions that *Does II* had declared unconstitutional." *Does v. Whitmer*, 69 F.4th 300, 303 (6th Cir. 2023).

If the judgment takes effect in June 2025, more than 30,000 offenders will no longer have to register, and the public will not be apprised of recently released sex offenders' presence in their neighborhoods or within their circle of people that they associate with.  Several examples explain the gravity of the situation.

### 1.    KS

KS was convicted in 1985 of first degree criminal sexual conduct arising from defendant's sexual penetration of his three biological children, his son who was five, his daughter who was three and a half and his other daughter who was two.  *In re Siders*, No. 360415, 2022 WL 4281502, at *1 (Mich. Ct. App. Sept. 15, 2022), opinion vacated and superseded on reconsideration, No. 360415, 2022 WL 15527648 (Mich. Ct. App. Oct. 27, 2022), vacated and remanded, 513 Mich. 851, 995 N.W.2d 332 (2023).  According to testimony from the trial court, KS penetrated the children's anuses and mouths, and transmitted herpes and gonorrhea to them.  In his 2019 parole board hearing, KS testified that he experienced sexual gratification when he assaulted his own children but could offer no explanation why he did it.  He further testified that he continued to sexually abuse his children "to see if he would enjoy it." (*Id.* at *2.)  KS also admitted that he denied committing his crimes for years.  (*Id.*)  The court noted that KS sought parole in 1994, 1999, 2004, 2009 and 2013.  (*Id.* at

*1.)  Parole was denied because KS minimized his conduct.  He first denied committing the crimes, and with each successive attempt at parole, he admitted a little more of the sexual abuse during each time he sought parole until he finally acknowledged that he abused each of his own children.  (*Id.* at *6.)

As to his children that were victimized, one "had both psychological and physical problems from the abuse he suffered.  He had problems with his intestines because of the sexual abuse.  He experienced anxiety, depression, and suicidal thoughts that led to psychiatric placements.  [The victim's adoptive mother] stated that the neglect and abuse [he] suffered made him disabled and, despite his intelligence, his psychological issues interfered with his ability to maintain employment and engage in normal life activities."  (*Id.* at *3.)

KS was released from prison on February 20, 2024.[2]  His address reported on the public sex offender registry shows that he appears to live at a campground that is within a mile from two schools, a public beach, and a local park.[3]

Under the Court's judgment, KS will seemingly no longer have to register as a sex offender (although it's not entirely clear since one of his conditions of parole is

---

[2] Michigan Department of Corrections, Offender Tracking Information System (last accessed April 9, 2025).  (The link to the actual OTIS posting where the information related to KS, and the other examples listed below, is not provided due to the protective order, but can be provided to Plaintiffs or the Court upon request.)

[3] Michigan Sex Offender Registry (last accessed April 10, 2025).

"Sex Offender Registration.")[4]  After being under the constant supervision of the Michigan Department of Corrections for nearly 40 years without access to children, KS could be living next door to small children.  His new neighbors would have no idea that the grandfatherly looking gentleman living next door, or sitting at the beach, committed these crimes and they may want to limit their interactions with KS.

### 2.    SB

In 2009 SB was sentenced to prison after being convicted by a jury of two counts of third-degree criminal sexual conduct (sexual penetration of a person at least 13 but less than 16 years old), four counts of fourth-degree criminal sexual conduct (sexual contact with a person at least 13 but less than 16 years old, by a person at least five years older than the victim), and contributing to the delinquency of a minor. *People v. Baker*, No. 283632, 2010 WL 1507651, at *1 (Mich. Ct. App. Apr. 15, 2010). He was in his mid-fifties at the time of his offense committed in the back seat of his car against a child between the ages of 13-16 on April 6, 2007.  (*Id.*)  This was his second criminal sexual conduct conviction.[5]

---

[4] See n 3.

[5] Michigan Department of Corrections, Offender Tracking Information System (last accessed April 10, 2025).

On February 16, 1985, SB committed a second-degree criminal sexual conduct offense, which he spent nearly 20 years in prison for.  He was released on April 1, 2005.

SB was also convicted of kidnapping in 1974, and was incarcerated until December 21, 1984, for that offense.[6]

In sum, SB kidnapped someone in 1974 and was imprisoned until December 21, 1984.  Approximately two months later (on February 16, 1985) he committed a criminal sexual conduct offense and was imprisoned until April 1, 2005.  Six days later, when he was in his mid-fifties, he sexually assaulted a child.  He was sentenced to prison in mid-2009.  He was discharged from prison on June 13, 2022.

Due to the judgment entered in this case, SB's neighbors will likely not know that their new neighbor has essentially been incarcerated since the mid-seventies and has committed scores of serious crimes every time he's been released, and in one instance within six days of release.

### 3.    GW

GW was convicted on two counts of first-degree criminal sexual conduct in the mid-nineties, which was committed against his stepdaughter when she was less than

---

[6] See n 5.

13 years old and he was nearly 40.[7]  *People v. West*, No. 195005, 1998 WL 1991774, at *1 (Mich. Ct. App. May 15, 1998).

This was GW's second conviction for criminal sexual conduct.  He was also convicted for first degree criminal sexual conduct against his own seven-year-old daughter in 1978, when he was in his mid-twenties. (*Id.* at *4.)  These convictions are aside from his conviction for extortion, which is somehow related to this crime against his 13-year-old stepdaughter, and assault with intent to do great bodily harm in the early seventies.[8]  GW was discharged from prison in 2022.[9]

GW is a repeat offender against young children.  He has been under the constant supervision of the Department of Corrections for the last two and half decades without access to young children.  According to the address he reported to law enforcement, he lives less than a mile from an elementary school and the public library.[10]  Parents that live in GW's neighborhood who may allow their children to walk to school or the library, should have easy access to the information about GW's criminal convictions so that they may comport themselves accordingly.

---

[7] Michigan Department of Corrections, Offender Tracking Information System (last accessed April 10, 2025).

[8] See n 7.

[9] See n 7.

[10] Michigan Sex Offender Registry (last accessed April 10, 2025).

### 4.    EC

EC was convicted in 1997 on two counts of first degree criminal sexual

conduct, and one count of aiding and abetting criminal sexual conduct.  *Curtis v. Lafler*,

No. 03-72301, 2008 WL 4058597, at *1 (E.D. Mich. Aug. 28, 2008).  At the time of

the offense, EC was in in his mid-forties and the victim was a teenager.[11]  *(Id.)*

After two teenage boys forced the victim into the car as she was walking along

the roadside, EC and the two teenage boys took turns raping the victim in a car in the

woods, threatened to kill her if she ran, tied a rope around her neck to chock her and

said they were going to kill her after they had fun with her.  (*Id.*)  After the initial

rounds of sexual assaults, the group went to town and returned to the woods to rape

the victim again.  (*Id.*)  EC's convictions are in addition to convictions for breaking

and entering, larceny and escaping prison in the 1970's.[12]

EC was released from prison in September of 2023.  In other words, he's spent

the last two and half decades under constant supervision by the Department of

Corrections.[13]  If the judgment is not stayed pending appeal, EC's neighbors will likely

have no idea of the history of the person living next door.  They won't be able to take

---

[11] Michigan Department of Corrections, Offender Tracking Information System (last accessed April 10, 2025).

[12] See n 11.

[13] See n 11.

an action to protect themselves from potential harm because they are unaware of the risk.

### 5.     WL

When he was in his thirties, after a string of other convictions for violent crimes, WL was convicted of first-degree criminal sexual conduct, which he committed after breaking into a home.[14]  *People v. Love*, 156 Mich. App. 568, 569 (1986).  The crime was committed in 1983, and the victim was 65 years old.[15]  (*Id.*) WL was released from prison in January 2024.

### 6.     JL

JL was convicted in 1977 on one count of criminal sexual conduct and one count of kidnapping; however, the kidnapping conviction was reversed by the Court of Appeals.  *People v. Lynn*, 91 Mich. App. 117, 119 (1979), aff'd sub nom. *People v. Barker*, 411 Mich. 291 (1981).  His CSC conviction was preceded by convictions for robbery, two separate convictions for larceny in a building and breaking and entering, which crimes spanned nearly a decade.

JL gained access to a neighbor's home by asking to use the phone.  (*Id.*)  After entering the home, he pulled a knife on the occupants, took some money and a ring,

---

[14] Michigan Department of Corrections, Offender Tracking Information System (last accessed April 10, 2025).

[15] See n 14.

and carried a 10-year-old girl back to his apartment where he sexually assaulted her. (*Id.*)  JL was released from prison in 2021.  Under the court's judgment, he will no longer have to register as a sex offender.[16]  One of his conditions of parole is to register as a sex offender, but his parole conditions are set to expire in the coming months.[17]

### 7.    JM

JM was convicted of five counts of second-degree criminal sexual conduct (victim under 13); two counts of accosting a child for immoral purposes; and one count of indecent exposure.  *People v. Markovich*, No. 320982, 2015 WL 4255076, at *1 (Mich. Ct. App. July 14, 2015).  The crimes were committed in 2007 when JM was approximately 57 years old.[18]  The convictions arose from a series of assaults committed against two young girls who attended JM's wife's daycare facility.  (*Id.*) The victims testified that JM touched or rubbed their vaginas once a day, or almost every day, throughout the time they attended the day care.  (*Id.*)  He also made them touch his penis.  (*Id.*)  The sexual abuse spanned a multi-year period.  (*Id.* at *2).

---

[16] Michigan Department of Corrections, Offender Tracking Information System (last accessed April 10, 2025).

[17] See n 16.

[18] Michigan Department of Corrections, Offender Tracking Information System (last accessed April 10, 2025).

JM was released from prison in 2023 after spending more than a decade in prison under the constant supervision of the Michigan Department of Corrections. As a condition of parole, he must register as a sex offender, but his parole conditions expire in the coming months.[19]

JM reports to be living at an address that is approximately a mile from two schools, two different parks and near an athletic field.[20]  Residents of the community where he lives should be aware that he lives nearby so that they can make informed decisions about whether they let their children walk to school by themselves or play at the local park unsupervised.

### 8.    JE

In 2015, JE pled no contest to one count of first-degree criminal sexual conduct and one count of second-degree criminal sexual conduct.  *In re Eastman*, No. 361789, 2022 WL 16858616, at *1 (Mich. Ct. App. Nov. 10, 2022).

JE's conviction stemmed from the assault of his four-year-old grandson, which allegedly spanned several years and at least once instance of sexual abuse occurred in 2006.  According to JE, he never participated in the sexual abuse, but he walked in on his wife sexually abusing their grandson and he never reported it.  (*Id.*)

---

[19] See n 17.

[20] Michigan Sex Offender Registry (last accessed April 10, 2025).

According to the victim, the sexual abuse occurred on five or six occasions and both grandparents participated in the sexual abuse.  (*Id.*)  The victim testified that JE and his wife would rub the child's penis and buttocks, and they would put their mouths on the child's penis.  (*Id.*)  The victim testified that his grandparents would also try to force him to touch their private areas.  (*Id.*)  When JE and his wife were arrested, other family members made statements to law enforcement that they were also abused by the couple.  (*Id.*)  The other alleged victims included JE's stepdaughter, and three nieces.  (*Id.*)

JE was released from prison in February 2025 and is not under supervision by the Michigan Department of Corrections.[21]  Neighbors and acquaintances of JE should be able to find out whether JE lives or works nearby by looking at the registry.

### C.    There is no substantial injury

Issuing a stay will not cause substantial injury to Plaintiffs.  Even if the sex offenders in the Ex Post Facto subclass or non-Michigan offense subclass are not required to register, they will still have a conviction for criminal sexual conduct on their record, which will impact their ability to obtain housing, gain employment, etc. The burden to continue to register during the appeal period is relatively minor in comparison to the chaos that would occur if they were told they no longer have to

---

[21] Michigan Department of Corrections, Offender Tracking Information System (last accessed April 10, 2025).

register, and then they have to register again after a favorable opinion is issued by the Sixth Circuit. As many plaintiffs admitted in their depositions, it only takes a few hours a year to register.

What is more, it could be argued that not issuing the stay may cause a substantial injury by creating confusion amongst the registrants about what their obligations are. If no stay is issued, tens of thousands of registrants will be informed over the coming months that they no longer need to register. Then, if the Sixth Circuit reverses the district court opinion in the next year, they will be notified again that they need to register. Throughout this litigation, Plaintiffs have continuously argued that the registration obligations are confusing, onerous and are difficult to follow. Not granting the stay will create chaos for the registrants, law enforcement and prosecutors. A more measured and predictable approach is in both parties' best interest.

It will require a herculean effort to negotiate over the language of the notice, obtain approval from the Court for the language of the notice, send out the notices to tens of thousands of registrants, try to locate registrants that are homeless, and inform all law enforcement and prosecutors across the state about the new requirements. Then it seems likely that the Sixth Circuit will reverse, at least parts of this Court's opinion, and we'll go through the process again. It will be confusing for registrants, prosecutors and law enforcement.

A stay should be granted.

### D.     The public interest

This factor weighs heavily in favor of Defendants.  The public has an interest in knowing whether a recently released sex offender lives next door, volunteers to work with youth, or asks someone out on a date.  If a stay is not granted, then someone convicted in 1994 of criminal sexual conduct in the first degree for raping a child that spent 30 years in prison for their crime (being released in 2024), would not be included on the registry.  Public Act 295 of 1994, Mich. Comp. Laws § 28.725(3).  In other words, after committing a most egregious crime against a child, and having spent the last three decades under the constant supervision of the Department of Corrections where he had no access to children, that offender will, for the first time in 30 years, be able to commit another similar crime.  Almost this exact scenario was cited to by Defendants earlier in the litigation.  (A registrant was convicted in 1991 for three counts of CSC against a child under 13 and was released from prison in December 2019.)  (ECF No. 47, PageID.1634-1635.)  The public should be able to access accurate, factual information about such offenders so they may make informed decisions about whether and how they interact with that individual.

The potential harm and the public interest in trying to protect themselves and their children against such harm cannot be understated.

The victim of criminal sexual assault, who was a 14-year-old child at the time of the assault, recently stated at the sentencing of the perpetrator, "**My childhood was stolen from me, which altered my adult life.  I sometimes wonder how my life**

**could have been had I not had such a traumatic thing happen to me.  I want nothing more than to go back in time and have a healthy childhood like everyone deserves but that's not what I was dealt in life.  I've had nightmares for years from the assault all the way into my adulthood."**[22]  She continued, **"I'm now 33 years old and the images of what happened to me as a child will never go away.  I've been to therapy and though it's a coping mechanism, it's not ever going to stop me from remembering the things this man has done to me when I was only a child."** (*Id.*)

In closing, the survivor added, **"I still need help dealing with this trauma that may never go away but I pray for my own deliverance from the pain and suffering that I've went through and still go through.  Even though the case is over, and trial is done, and all the lawyers and jury and everyone who watched during trial gets to move on with life, this incident is something I'll never forget."** (*Id.*)

There is good reason for the public to have concern.  Sex offenders in Michigan have more than a 10% reconviction rate, i.e., 5,268 – having been convicted of a subsequent sexual offense, which does not account for the radical underreporting of these crimes and the even smaller number of arrests.  (ECF No. 129-14,

---

[22] Attorney General Press Release, https://content.govdelivery.com/accounts/MIAG/bulletins/3d1880b (last accessed February 13, 2025.)

PageID.7692; ECF No. 129-18, PageID.7755.)  This fact is staggering.  Moreover, the

suggestion is not well taken that ordinary residents, with limited means, do not have

an interest in enhancing their, or their children's, safety by checking on babysitters, or

on determining where to live, or whether to befriend or date a newly made

acquaintance.  The SORA provides the ability to Michigan residents to make

informed decisions about who comes into that orbit.

What is more, the registry benefits the public by encouraging victims to come

forward to report criminal sexual conduct.  (ECF No. 129-4, PageID.7572; ECF No.

129-5, PageID.7579.)  One of the reasons victims report their crimes, is to try to

protect others from becoming victims.  (*Id.*)  If tens of thousands of registrants are no

longer on the registry, it may well discourage victims from coming forward.

## CONCLUSION AND RELIEF REQUESTED

This Court should grant a stay related to Counts I, II, and XI in the final

judgment.  The stay will prevent chaos amongst registrants and will protect the public

while the legal issues are being resolved.

Respectfully submitted,

*/s/ Eric M. Jamison*
Eric M. Jamison
Assistant Attorney General
Attorney for Whitmer and Grady
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
jamisone@michigan.gov
P75721

Dated:  April 11, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2025, I electronically filed the above document(s)

with the Clerk of the Court using the ECF System, which will provide electronic

copies to counsel of record.

*/s/ Eric M. Jamison*
Eric M. Jamison
Assistant Attorney General
Attorney for Defendants Whitmer and
Grady
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
jamisone@michigan.gov
P75721

## LOCAL RULE CERTIFICATION

I, Eric M. Jamison, certify that this document complies with Local Rule 5.1(a), including double-spaced (except for quoted material and footnotes): at least one-inch margin on top, sides, and bottoms; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 points (for proportional fonts).  I also certify that it is the appropriate length.  Local Rule 7.1(d)(3).

*/s/ Eric M. Jamison*
Eric M. Jamison
Assistant Attorney General
Attorney for Defendants Whitmer and
Grady
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
jamisone@michigan.gov
P75721

#2022-0341402-A