UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOES A, B, C, D, E, F, G, H,
MARY DOE and MARY ROE, on behalf
of themselves and all others similarly
situated,

No. 2:22-cv-10209

Plaintiffs,

HON. MARK GOLDSMITH

v

MAG. CURTIS IVY, JR.

GRETCHEN WHITMER, Governor of
the State of Michigan, and COL. JAMES
GRADY, Director of the Michigan State
Police,

Defendants.

_____/

**EXHIBIT B**

No. 19-2405
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
_____

M.S. WILLMAN,
Plaintiff-Appellant,

v.

U.S. ATTORNEY GENERAL,
Defendant-Appellee.
_____

On Appeal from the U.S. District Court for the Eastern District of Michigan
_____

**AMICUS CURIAE BRIEF**
**OF THE AMERICAN CIVIL LIBERTIES UNION OF MICHIGAN**
**IN SUPPORT OF PLAINTIFF-APPELLANT AND FOR AFFIRMANCE OF**
**DISMISSAL ON ALTERNATIVE GROUNDS**
_____

Miriam J. Aukerman
American Civil Liberties Union
  Fund of Michigan
1514 Wealthy St. SE, Ste. 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org

Daniel S. Korobkin
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6824
dkorobkin@aclumich.org

Paul D. Reingold
Cooperating Attorney, American Civil
  Liberties Union Fund of Michigan
363 Legal Research Building
801 Monroe Street
Ann Arbor, MI 48109
(734) 763-4319
pdr@umich.edu

*Counsel for Amicus*

March 3, 2020

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 19-2405 _____     Case Name: M. Willman v. U.S. Attorney General ____

Name of counsel: Miriam J. Aukerman _____

Pursuant to 6th Cir. R. 26.1, American Civil Liberties Union of Michigan _____
*Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

> No

---

## CERTIFICATE OF SERVICE

I certify that on_____ March 3, 2020 _____the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Miriam J. Aukerman _____<br>
1514 Wealthy Street SE, Suite 260<br>
Grand Rapids, MI 49506 _____

---

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................. iii

STATEMENT OF INTEREST OF AMICUS CURIAE....................................1

INTRODUCTION ..............................................................................2

I.   MICHIGAN MUST MAKE POLICY CHOICES ABOUT WHAT
     REGISTRATION SCHEME IT WANTS, CONSISTENT WITH
     FEDERAL AND STATE CONSTITUTIONAL LIMITS. .....................4

     A.   The *Does I* and *Does II* Litigation ...............................................4

     B.   The Michigan Supreme Court Litigation.....................................6

     C.   The Future of Michigan's Registry ...........................................7

II.  BECAUSE WILLMAN DOES NOT HAVE A FEDERAL
     CONVICTION AND HAS NOT TRAVELED IN INTERSTATE
     COMMERCE, SORNA IS INAPPLICABLE. .......................................10

III. UNDER SORNA, A PERSON'S REGISTRATION
     OBLIGATIONS ARE DETERMINED BY THE LAW OF THE
     JURISDICTION IN WHICH THE PERSON LIVES, WORKS,
     OR STUDIES. .........................................................................14

     A.   Most States Do Not Have SORNA-Complaint Statutes and
          Even "SORNA-Compliant" States Do Not Require
          Registration of Everyone Whose Registration Is
          Contemplated Under SORNA. .................................................15

     B.   Because There Is No Mechanism to Register Solely for
          Federal Purposes, SORNA Requires Compliance With
          State Registration Schemes.....................................................19

CONCLUSION ...............................................................................27

CERTIFICATE OF COMPLIANCE .............................................................29

CERTIFICATE OF SERVICE.....................................................................30

# TABLE OF AUTHORITIES

**Cases**

*Carr v. United States*, 560 U.S. 438 (2010) ........................................................ passim

*Dept. of Pub. Safety & Corr. Servs. v. Doe*, 94 A.3d 791 (Md. 2014) ..................... 20

*Doe v. Curran*, No. 18-11935, 2020 WL 127951 (E.D. Mich. Jan. 10, 2020) ............ 5

*Does #1-5 v. Snyder* (*Does I*), 834 F.3d 696 (6th Cir. 2016), *reh. denied* (2016), *cert. denied*, 138 S. Ct. 55 (2017) ....................................................................... 1, 2, 5, 8

*Does #1-5 v. Snyder*, 101 F. Supp. 3d 672 (E.D. Mich. 2015) .................................... 5

*Does #1-5 v. Snyder*, 101 F. Supp. 3d 722 (E.D. Mich. 2015) ................................... 5

*Does #1-6 v. Snyder* (*Does II*), No. 2:16-cv-13137 (E.D. Mich.) ........................... 1, 6

*Does v. Snyder*, 932 F. Supp. 2d 803 (E.D. Mich. 2013) ............................................ 5

*Kennedy v. Allera*, 612 F.3d 261 (4th Cir. 2010) ...................................................... 14

*Nichols v. United States*, 136 S. Ct. 113 (2016) ................................................. 23, 24

*People v. Betts*, 928 N.W.2d 699 (Mich. 2019) .......................................................... 6

*Printz v. United States*, 521 U.S. 898 (1997) ........................................................... 25

*Reynolds v. United States*, 565 U.S. 432 (2012) ................................................ 13, 19

*Roe v. Snyder*, 240 F. Supp. 3d 697 (E.D. Mich. 2017) ............................................. 5

*Smith v. Doe*, 538 U.S. 84 (2003) ....................................................................... 2, 21

*Snyder v. Does #1-5*, 138 S. Ct. 55 (2017) ................................................................. 5

*State v. Williams*, 952 N.E.2d 1108 (Ohio 2011) ...................................................... 16

*United States v. Billiot*, 785 F.3d 1266 (8th Cir. 2015) ............................................ 14

*United States v. Brown*, 586 F.3d 1342 (11th Cir. 2009) .......................................... 24

*United States v. Coleman*, 675 F.3d 615 (6th Cir. 2012) .......................................... 13

*United States v. Felts*, 674 F.3d 599 (6th Cir. 2012) ............................................. 9, 24

*United States v. Kebodeaux*, 570 U.S. 387 (2013) ........................................ 11, 15, 23

*United States v. Paul*, 718 F. App'x 360 (6th Cir. 2017) ............................... 4, 13, 25

*United States v. Pendleton*, 636 F.3d 78 (3d Cir. 2011) ........................................... 14

*United States v. Whaley*, 577 F.3d 254 (5th Cir. 2009) ............................................ 13

## Statutes

18 U.S.C. § 2250 ..................................................................................... passim

34 U.S.C. § 20901 ........................................................................................... 3

34 U.S.C. § 20911 ..................................................................................... 21, 22

34 U.S.C. § 20912(a) ..................................................................................... 20

34 U.S.C. § 20913 .................................................................................... passim

34 U.S.C. § 20914 ......................................................................................... 20

34 U.S.C. § 20915 ......................................................................................... 20

34 U.S.C. § 20916(a) ..................................................................................... 22

34 U.S.C. § 20918 ..................................................................................... 20, 22

34 U.S.C. § 20919(a) ..................................................................................... 20

34 U.S.C. § 20922 ......................................................................................... 20

34 U.S.C. § 20926 ......................................................................................... 20

34 U.S.C. § 20927 .................................................................................. 8, 15, 20

42 U.S.C. §16901 ............................................................................................ 3

Ariz. Rev. Stat. Ann. § 13-3825 (2016) ...................................................... 17

Ark. Code Ann. § 12-12-917 (2016) ............................................................ 17

Cal. Penal Code § 290.04 (West 2017) ....................................................... 17

Ga. Code Ann. § 42-1-14 (2016) ................................................................. 17

M.C.L. § 28.722 ........................................................................................... 22

Mass. Gen. Laws ch. 6, §§ 178C-178Q (2015) .......................................... 18

Minn. Stat. Ann. § 244.052 (2017) .............................................................. 18

Mont. Code Ann. § 46-23-509 (2015) ......................................................... 18

N.D. Cent. Code § 12.1-32-15 (2015) ......................................................... 18

N.J. Stat. Ann. § 2C:7-8 (West 2016) ......................................................... 18

N.Y. Correct. Law § 168-l (McKinney 2017) .............................................. 18

Or. Rev. Stat. §§ 163A.100, 163A.105 (2015) ........................................... 18

R.I. Gen. Laws § 11-37.1-6 (2016) .............................................................. 18

Tex. Code Crim. Proc. Ann. art. 62.007 (West 2016) ................................ 18

Vt. Stat. Ann. tit. 13, § 5411b (2016) .......................................................... 18

Wash. Rev. Code §§ 72.09.345, 4.24.550 (2017) .................................................... 18

**Other Authorities**

Andrew J. Harris, Christopher Lobanov-Rostovsky & Jill S. Levenson, *Widening the Net: The Effects of Transitioning to Adam Walsh Act's Federally Mandated Sex Offender Classification Scheme*, 37 CRIMINAL JUSTICE AND BEHAVIOR 503, 504 (2010).............................................................................. 18

Department of Justice, National Guidelines for Sex Offender Registration and Notification, 11 (July 2008) ................................................................................ 8

Department of Justice, SORNA Substantial Implementation Review State of Tennessee (Sept. 2011) ........................................................................................ 16

Freeman, N. J., & Sandler, J. C. (2009), *The Adam Walsh Act: A False Sense of Security or an Effective Public Policy Initiative?*, 21 CRIM. J. POL. REV. 31 (2009)................................................................................................................... 18

Model Penal Code: Sexual Assault and Related Offenses, § 213 (Am. Law Inst. Tentative Draft No. 10, 2019) ............................................................ 7, 17

National Guidelines for Sex Offender Registration and Notification (2008)........ 8, 25

Prescott & Rockoff, *Do Sex Offender Registration and Notification Laws Affect Criminal Behavior?*, 54 J.L. & Econ. 161 (2011).............................................. 7

Scott, States Find SORNA Non-Compliance Cheaper, Nov. 7, 2011 ....................... 17

Senate Criminal Justice Committee [Texas], Interim Report 14 (Dec. 15, 2010) ..... 17

Zgoba *et al.*, *A Multi-State Recidivism Study Using Static-99R and Static-2002 Risk Scores and Tier Guidelines from the Adam Walsh Act*, (research report submitted to the National Institute of Justice, 2012).......................................... 18

## STATEMENT OF INTEREST OF AMICUS CURIAE

The American Civil Liberties Union of Michigan (ACLU) is the Michigan affiliate of a nationwide, nonpartisan organization with over 1.5 million members dedicated to protecting fundamental liberties guaranteed by the U.S. Constitution. The ACLU is committed to protecting the constitutional rights of all people, including people convicted of sex offenses.[1]

Attorneys from the ACLU Fund of Michigan and the University of Michigan Clinical Law Program litigated *Does #1-5 v. Snyder* (*Does I*), 834 F.3d 696 (6th Cir. 2016), *cert. denied*, 138 S. Ct. 55 (2017). *Does I* held that the 2006 and 2011 amendments to Michigan's Sex Offenders Registration Act (SORA) are unconstitutional as applied retroactively. When the Michigan legislature failed to amend SORA to bring it into compliance with *Does I*, the same lawyers (who are also counsel here) brought a class action seeking relief as to the issues on which the *Does I* plaintiffs had prevailed either before the district court or this Court. *See Does #1-6 v. Snyder* (*Does II*), No. 2:16-cv-13137 (E.D. Mich.). Amicus believes that this brief will help the Court understand the broader context of SORA reform in Michigan, as it relates to this case.

---

[1] Amicus states that no party's counsel authored this brief in whole or part, no party or party's counsel contributed money to fund preparing or submitting this brief, and no person other than amicus, its members, or its counsel made monetary contributions to its preparation or submission.

**INTRODUCTION**

In August 2016, this Court held that Michigan's SORA imposes punishment:

> A regulatory regime that severely restricts where people can live, work, and "loiter," that categorizes them into tiers ostensibly corresponding to present dangerousness without an individualized assessment thereof, and that requires time-consuming and cumbersome in-person reporting, all supported by—at best—scant evidence that such restrictions serve the professed purpose of keeping Michigan communities safe, is something altogether different from and more troubling than Alaska's first-generation registry law [upheld by the Supreme Court in *Smith v. Doe*, 538 U.S. 84 (2003)]. SORA brands registrants as moral lepers solely on the basis of a prior conviction. It consigns them to years, if not a lifetime, of existence on the margins, not only of society, but often...from their own families.

*Does I*, 834 F.3d at 705. The Court held that SORA's 2006 and 2011 amendments cannot be applied retroactively. *Id.* at 706.

After *Does I*, Michigan ignored this Court's decision and continued to subject tens of thousands of people to retroactive punishment. As a result, new plaintiffs filed a class action to ensure that *Does I* would apply to all Michigan registrants, and in February 2020 won a ruling enjoining retroactive application of SORA to pre-2011 registrants. *See Doe v. Snyder*, No. 16-13137, 2020 WL 758232, *13-14 (E.D. Mich. Feb. 14, 2020) (Ex. A). Before the decision in *Does II*, numerous registrants (including Willman) filed individual lawsuits. In Willman's case, the state conceded that the 2006 and 2011 SORA amendments could not be applied retroactively to him. Stipulated Order, R.16, Pg.ID #407. Because Willman's 25-year registration

period under the prior SORA had expired, Michigan determined that Willman is "no longer…subject to any registration or verification requirements" under Michigan law. *Id.*

This appeal arose because, in addition to suing the state defendants, Willman sued the United States Government, challenging the constitutionality of the federal Sex Offender Registration and Notification Act (SORNA), 34 U.S.C. § 20901 *et seq.*[2] Nothing in the complaint suggests Willman was ever convicted of a federal crime, had ever moved between states, or had ever previously been told by federal authorities that he had any obligations under SORNA, much less been threatened with prosecution. Nevertheless, Willman, apparently seeking reassurance that he has no such obligations, preemptively sued the federal government seeking declaratory and injunctive relief, including an order that he be removed from any federal registry.

The government responded not by suggesting Willman lacked standing or that his claims were not ripe, but by arguing that even though Willman need not register under SORA, he has an *independent* obligation to register under SORNA regardless of whether there is a federal nexus. Reply, R.22, Pg.ID#554-60. Thus, Willman, having decided to raise his fears of a SORNA prosecution, suddenly found his fears confirmed. The district court, relying on *United States v. Paul*, 718 F. App'x 360

---

[2] SORNA was previously codified at 42 U.S.C. §16901.

(6th Cir. 2017), held that SORNA requires Willman to register, and on that basis granted the government's motion to dismiss Willman's lawsuit. Opinion, R.23, Pg.ID#567.

There are two main questions on appeal: (1) whether Willman, who has no federal conviction and no interstate travel, is subject to SORNA in the absence of any predicate for federal jurisdiction; and (2) whether Willman must register under SORNA when he has no state-law obligation to register and there is no SORNA-only registration mechanism. Because the answer to the first question is clearly no, the Court need not reach the second question, nor address any of Willman's assorted constitutional challenges. While amicus supports Willman's position that SORNA liability requires both a federal nexus and an underlying violation of a state registration law, amicus believes that the cleanest way for this Court to resolve the appeal is to affirm the dismissal on alternative grounds: unless or until Willman moves in interstate commerce, his claims are not ripe.

## ARGUMENT

### I.  MICHIGAN MUST MAKE POLICY CHOICES ABOUT WHAT REGISTRATION SCHEME IT WANTS, CONSISTENT WITH FEDERAL AND STATE CONSTITUTIONAL LIMITS.

#### A. The *Does I* and *Does II* Litigation

The context in Michigan is important. In 2011, Michigan rewrote its SORA to implement SORNA, which conditions a state's receipt of certain federal funds on

the state's willingness to adopt SORNA-based standards in its state registration scheme. Mich. Pub. Acts 17, 18 (2011). The following year, five Michigan registrants challenged SORA. The district court dismissed plaintiffs' ex post facto claim, *Does v. Snyder*, 932 F. Supp. 2d 803 (E.D. Mich. 2013), but held that parts of SORA are unconstitutionally vague or violate the First Amendment, and that registrants cannot be held strictly liable for unintentional violations. *Does #1-5 v. Snyder*, 101 F. Supp. 3d 672, 713-14; 101 F. Supp. 3d 722, 730 (E.D. Mich. 2015).

On appeal, this Court held that successive amendments have made SORA punitive and that "[t]he retroactive application of SORA's 2006 and 2011 amendments to Plaintiffs is unconstitutional, and it must therefore cease." *Does I*, 834 F.3d at 705-06. The Court declined to reach the district court's rulings that other aspects of SORA are unconstitutional, but noted that "Plaintiffs' arguments on these other issues are far from frivolous and involve matters of great public importance." *Id.* The Supreme Court denied the state's petition for certiorari. *Snyder v. Does #1-5*, 138 S. Ct. 55 (2017).

Michigan did not amend SORA to correct the constitutional deficiencies and law enforcement continued to enforce the unconstitutional provisions. *See, e.g., Roe v. Snyder*, 240 F. Supp. 3d 697 (E.D. Mich. 2017) (granting injunction to plaintiff threatened with prosecution under a provision held unconstitutional in *Does I*); *Doe v. Curran*, No. 18-11935, 2020 WL 127951, at *8 (E.D. Mich. Jan. 10, 2020) (same).

New plaintiffs then filed a class action. *Does #1-6 v. Snyder* (*Does II*), No. 2:16-cv-13137 (E.D. Mich.). The court certified a primary class comprising all registrants, and two subclasses comprising pre-2006 and pre-2011 registrants. The court repeatedly deferred decision to allow the legislature time to act, but it failed to do so. In May 2019, the court entered a declaratory judgment, holding that retroactive application of SORA's 2006 and 2011 amendments violates the Ex Post Facto Clause, but delayed injunctive relief to allow for legislative action. On February 14, 2020, after it became clear that the legislature would not act, the district court enjoined enforcement of SORA against pre-2011 registrants, and enjoined enforcement of SORA's geographic exclusion zones, strict liability provisions, and certain reporting requirements against all registrants. *Does II*, 2020 WL 758232, *13-14. The court delayed the judgment's effective date until mid-May to give the legislature one last chance to revise SORA. *Id.* at *13.

### B. The Michigan Supreme Court Litigation

In *People v. Betts*, 928 N.W.2d 699 (Mich. 2019), a criminal appeal, the Michigan Supreme Court has ordered briefing on whether SORA violates the Ex Post Facto Clauses of the Michigan or U.S. Constitutions, and on related questions of remedy. Because the defendant challenged retroactive application not only of the 2006 and 2011 amendments but also of earlier amendments, the Court could invalidate additional SORA provisions. Oral argument is scheduled for early April.

## C.     The Future of Michigan's Registry

Michigan is facing major registry changes, regardless of whether it amends SORA or simply allows the *Does II* injunctions (and any future Michigan Supreme Court orders) to take effect. Going forward, Michigan might prefer to invest scarce tax dollars into more effective programs focused on prevention, given that modern research shows registries are ineffective or even counterproductive.[3] Michigan might adopt a risk-based system, shorten registration terms, choose to de-register children, or make a host of other changes—all policy choices that are Michigan's to make.

Of course, any new law remains subject to constitutional constraints, and must comply with this Court's prohibition on retroactive application of punitive provisions, as well as the district court's decision that other provisions violate due process and the First Amendment, and any limits set by the Michigan Supreme Court. For pre-2011 registrants, Michigan's new law will necessarily diverge from SORNA because, in finding the 2011 amendments punitive, this Court focused on aspects of

---

[3] *See* Prescott & Rockoff, *Do Sex Offender Registration and Notification Laws Affect Criminal Behavior?*, 54 J.L. & Econ. 161 (2011). This peer-reviewed study, which analyzed data from 15 states (including Michigan) over approximately ten years, concludes that rather than reducing recidivism, notification laws may well have increased the frequency of sex crimes. *See also* Model Penal Code: Sexual Assault and Related Offenses, § 213 at 225-28 (Am. Law Inst. Tentative Draft No. 10, 2019), available at http://www.thealiadviser.org/sexual-assault/registration-and-notification/ (surveying research) (Ex. B).

SORA that mirror SORNA. Those include the law's lifetime reach; the lack of individualized assessments; the creation of tier classifications that are both unappealable and offense-based rather than risk-based; the requirement that registrants frequently and immediately report a vast array of trivial information; application to registrants without convictions for sex offenses; the serious sanctions for even inadvertent violations; and the lack of any relationship to public safety.[4] *Does I*, 834 F.3d at 698, 702-05.

To be clear, Michigan can still, if it chooses, have a SORNA-compliant registry; it just cannot impose certain SORNA features *retroactively*. Nor will Michigan lose funds. (Of the eighteen states that receive SORNA-contingent funding, at least thirteen deviate from SORNA's retroactivity guidelines.[5] SORNA also specifically provides for continued funding if noncompliance is based on judicial decisions. 34 U.S.C. § 20927(b)(1).[6]) Nor will Michigan's inability to apply certain SORNA

---

[4] *See* National Guidelines for Sex Offender Registration and Notification (2008) https://www.smart.gov/pdfs/final_sornaguidelines.pdf.

[5] DOJ has determined that the following states "substantially implemented SORNA" despite deviating from retroactivity requirements: Alabama, Colorado, Delaware, Florida, Kansas, Louisiana, Nevada, Ohio, Pennsylvania, South Carolina, South Dakota, Tennessee and Wyoming. *See* Department of Justice Substantial Implementation Reviews, SMART, https://www.smart.gov/sorna-map.htm.

[6] Under the DOJ's National Guidelines for Sex Offender Registration and Notification, 11 (July 2008), the federal government "will consider on a case-by-case basis whether jurisdictions' rules or procedures that do not exactly follow the provisions of SORNA or these Guidelines 'substantially' implement SORNA." *See* SMART, www.smart.gov/guidelines.htm.

features retroactively prevent federal authorities from enforcing SORNA against registrants over whom there is federal jurisdiction. As discussed below, such registrants can be prosecuted federally regardless of whether the jurisdiction has implemented SORNA, if they fail to register as required by their jurisdiction.

This Court's decision in *United States v. Felts*, 674 F.3d 599 (6th Cir. 2012), upholding a SORNA conviction against an ex post facto challenge, does not alter the fact that under *Does I*, SORA's 2011 amendments implementing SORNA are punitive and cannot be retroactively applied. The questions in *Felts* and *Does I* were different. Felts was convicted for not registering after moving between states. The issue was whether his two-year sentence retroactively punished his *original* sex offense. This Court rejected the argument that Felts was being sent to prison twice for the same offense, viewing his failure to register as "entirely separate" from the earlier crime: "SORNA provides for a conviction for failing to register; it does not increase the punishment for the past conviction." *Id.* at 606. Thus, *Felts* addressed the question of whether imprisonment for failure to comply with a basic registration requirement punishes a new or old offense. Imprisonment is indisputably punishment, so *Felts* did not address whether the registration standards that SORNA encourages states to adopt are punitive. In *Does I*, this Court *did* find that certain SORNA-based Michigan provisions are punitive.

The upshot is that Michigan's SORA will diverge from SORNA, as to who

must register, for how long, what information they must provide, and when and how they must provide it. The district court's opinion in *Willman*, however, suggested that it may be a federal crime if Michiganders, who have lesser obligations under state law, do not register or provide information contemplated under SORNA, even if there is no federal nexus and no mechanism by which a person can register solely for "federal" purposes, or provide information that the state does not collect. That aspect of the district court's opinion was mistaken.

## II. BECAUSE WILLMAN DOES NOT HAVE A FEDERAL CONVIC-TION AND HAS NOT TRAVELED IN INTERSTATE COMMERCE, SORNA IS INAPPLICABLE.

Federal registration law is focused on encouraging states to adopt specific registry standards, and on ensuring that people with federal convictions and registrants who travel in interstate commerce register in their local jurisdictions. When Congress initially set national standards for state registries in 1994, it "did not include any federal criminal liability," but "instead conditioned certain federal funds on States' adoption of 'criminal penalties'" for non-compliance with state registration requirements. *Carr v. United States*, 560 U.S. 438, 452 (2010). "In enacting SORNA, Congress preserved this basic allocation of enforcement responsibilities," *id.* at 453, but also established a new federal offense making it a crime for a person "required to register under [SORNA]" who has a federal conviction or travels in interstate commerce to "knowingly fail[] to register or update a registration as

10

required by [SORNA]." 18 U.S.C. § 2250.

The goal of the federal penalty provision was not to supplant states' primary role, but to ensure registrants would not "fall through the cracks of a state registration system." *United States v. Kebodeaux*, 570 U.S. 387, 405 (2013) (Alito, J. concurring). SORNA thus provides for federal enforcement against "persons required to register under SORNA over whom the Federal Government has a direct supervisory interest or who threaten the efficacy of the statutory scheme by traveling in interstate commerce." *Carr*, 560 U.S. at 453. SORNA's penalty provision applies only where there is a federal nexus because "[p]ersons convicted...under state law who fail to register in their State of conviction would otherwise be subject to federal prosecution under § 2250 even if they had not left the State after being convicted—an illogical result given the absence of any obvious federal interest in punishing such state offenders." *Id.* at 446. Thus, Congress "chose to handle federal and state sex offenders differently," and subjected registrants "to federal criminal liability only when, after SORNA's enactment, they use the channels of interstate commerce in evading a State's reach." *Id.* at 452.

In Willman's case there is no federal jurisdictional element: he does not have a federal conviction and has not traveled in interstate commerce. 18 U.S.C. § 2250 is inapplicable.

The government argued below that a different provision of SORNA—34

U.S.C. § 20913—imposes an independent federal duty to register where there is no federal nexus. Such a reading is divorced from the plain language of Section 20913 and from SORNA's statutory structure. Congress's concern was to track the movement of registrants through different jurisdictions, which is clear from the text of Section 20913. *See* 34 U.S.C. § 20913(a) (requiring registrant to "register, and keep the registration current, in *each jurisdiction*" where he lives, works, or attends school) (emphasis added); § 20913(c) (focusing on movement of registrants by requiring updating of registration "in at least 1 jurisdiction"); *id.* (requiring *that* jurisdiction to then notify "all other jurisdictions" where the person must register).

Indeed, Section 20913 cannot be read as creating an independent mandate to register since it lacks a federal penalty. Rather, it envisions that *states* would adopt a "State penalty for failure to comply." 34 U.S.C. § 20913(e). If Section 20913(a) imposes a federal obligation to register on *all* people with past sex convictions, how would the federal government enforce this obligation absent a federal penalty provision? The government insists that Willman must register, but if he fails to do so, the federal government has no way to prosecute him since the federal penalty provision does not apply. It is illogical to read Section 20913(a) as creating a requirement that cannot be enforced.

The Supreme Court itself views Section 20913(a) as simply defining the underlying registration obligation that triggers federal criminal liability under 18

U.S.C. § 2250 when a person for whom there is a federal nexus fails to register. *See Reynolds v. United States*, 565 U.S. 432, 435–36 (2012) ("relevant registration requirements" for 18 U.S.C. § 2250 are found in 34 U.S.C. § 20913). Thus, § 20913 is not a "stand alone statute," but "must instead be analyzed in connection with § 2250."

> [W]ithout § 2250, [§ 20913] lacks federal criminal enforcement, and without [§ 20913], § 2250 has no substance….[because] neither [§ 20913] nor any other provision of SORNA creates any federal penalty for failing to register while remaining within a state: a sex offender who does not travel in interstate commerce may ignore SORNA's registration requirements without fear of federal criminal consequences.

*United States v. Whaley*, 577 F.3d 254, 259–60 (5th Cir. 2009).

The district court, in suggesting otherwise, conflated two questions: (1) whether SORNA is applicable absent a federal nexus; and (2) whether SORNA applies where there is a federal nexus, but the individual is not obligated to register under state law. This Court already answered the first question in *United States v. Coleman*, 675 F.3d 615, 620 (6th Cir. 2012), where it held that "the presence of such a jurisdictional element [is] the touchstone of valid congressional use of its Commerce Clause powers to regulate non-commercial activity." The district court thus erred in relying instead on the unpublished decision in *United States v. Paul*, 718 F. App'x 360 (6th Cir. 2017), and out-of-circuit decisions, which in any event all arose as prosecutions under 18 U.S.C. § 2250 in cases involving interstate/international

13

travel or federal convictions. *See Paul*, 718 Fed. App'x at 362 (registrant moved internationally); *United States v. Billiot*, 785 F.3d 1266, 1268 (8th Cir. 2015) (registrant moved interstate); *United States v. Pendleton*, 636 F.3d 78, 86 (3d Cir. 2011) (registrant moved interstate and internationally); *Kennedy v. Allera*, 612 F.3d 261, 262 (4th Cir. 2010) (federal conviction).

To decide the present case, this Court need only answer the first question: because Willman has no federal conviction and has lived continuously in Michigan, SORNA does not apply. Even if SORNA might become applicable to him at some point in the future (were Willman to relocate to another state, thereby supplying the federal nexus), it does not apply now.

## III. UNDER SORNA, A PERSON'S REGISTRATION OBLIGATIONS ARE DETERMINED BY THE LAW OF THE JURISDICTION IN WHICH THE PERSON LIVES, WORKS, OR STUDIES.

The absence of a federal nexus is all that is necessary to resolve Willman's case. Amicus believes, however, that the Court would still benefit from a broader understanding of the intersection between state registries and federal SORNA. This is particularly important if the Court were to reach the second question above—whether SORNA applies where there is a federal nexus, but no state-law registration requirement—even though that is unnecessary here.

Two basic features define the relationship between state registration laws and federal SORNA. First, while all states have registries, they vary greatly in terms of

who must register, for how long, what registration requirements apply, and whether registration is based on individualized assessments. *See* Am. Law Inst., *Model Penal Code: Sexual Assault and Related Offense*, Article 213, at 221 (Ex. B). Most registrants live in states where state-law registration requirements differ from those Congress sought to promote via SORNA.

Second, "federal sex-offender registration laws have, from their inception, expressly relied on state-level enforcement." *Carr*, 560 U.S. at 452. Because there is no federal registration mechanism, registrants must report to state authorities pursuant to state registration schemes. Where state registration schemes diverge from SORNA, there is no way for registrants to comply with SORNA-style registration requirements that do not exist in their state.

We discuss each feature in turn.

A. **Most States Do Not Have SORNA-Complaint Statutes and Even "SORNA-Compliant" States Do Not Require Registration of Everyone Whose Registration Is Contemplated Under SORNA.**

As noted, SORNA "used Spending Clause grants to encourage States to adopt…uniform definitions and requirements" for state registries. *Kebodeaux*, 570 U.S. at 398. But Congress "did not"—and indeed in our federal system could not— "insist that the States do so." *Id.* Congress' effort to incentivize states to adopt SORNA-based laws largely failed. Thirty-two states have rejected SORNA, even though they lose ten percent of their Byrne Grant funds. 34 U.S.C. § 20927(a). As

of March 2020 (fourteen years after SORNA was passed), the Department of Justice considered only eighteen states to be "substantially compliant"—the level necessary to receive Byrne Grant funding.[7] Even among the "substantially compliant" states, at least thirteen deviate from SORNA's retroactivity guidelines.[8]

In this circuit, Kentucky is not SORNA-compliant.[9] The Department of Justice considers Tennessee's registry to be SORNA-compliant although it differs from SORNA in multiple ways, including in its treatment of child registrants, a two- rather than three-tier structure, reporting frequency, and registration periods.[10] Ohio is also considered SORNA-compliant,[11] but many Ohioans are either not subject to registration or are subject to less extensive requirements than SORNA because the Ohio Supreme Court has ruled multiple aspects of the registry, including retroactive application, to be unconstitutional. *See, e.g.*, *State v. Williams*, 952 N.E.2d 1108 (Ohio 2011).

As the draft of the American Law Institute's model registration law explains,

---

[7] *See* Department of Justice Substantial Implementation Reviews, SMART, https://www.smart.gov/sorna-map.htm.

[8] *See* supra note 8.

[9] *See* SORNA Implementation Status, SMART, https://www.smart.gov/sorna-map.htm.

[10] *See* Department of Justice, SORNA Substantial Implementation Review State of Tennessee (Sept. 2011), https://www.smart.gov/pdfs/sorna/Tennessee.pdf.

[11] *See* SORNA Implementation Status, https://www.smart.gov/sorna-map.htm.

states have rejected SORNA for two reasons. Am. Law Inst., *Model Penal Code*, §

213, at 234–35. First, many states elected not to implement SORNA because the cost

of compliance dwarfs the ten-percent reduction in Byrne Grant funds.[12] For example,

California estimated that complying with SORNA would cost the state at least $38

million, against a loss of just $2.1 million in federal funds.[13] For Texas, comparable

figures were assessed at a cost of $39 million for SORNA compliance, against a loss

of just $1.4 million in federal funds.[14]

Other states expressed concerns over "the potential public safety impacts of

supplanting established risk-based classification systems with a less discriminating

system linked exclusively to conviction offense."[15] Harris et al., *Widening the Net:*

---

[12] *See* Dylan Scott, States Find SORNA Non-Compliance Cheaper, Nov. 7, 2011, http://www.governing.com/blogs/fedwatch/States-Find-SORNA-Non-Compliance-Cheaper.html. In Michigan, the 2019 state Byrne Grant allocation was around $5.6 million, making the 10% penalty about $560,000. *See* Bureau of Justice Assistance Michigan's FY 2019 Byrne Justice Assistance Grant: https://bja.ojp.gov/funding/awards/2019-mu-bx-0061.

[13] California Sex Offender Management Board, Adam Walsh Act Statement of Position 3–4, http://www.opd.ohio.gov/AWA_Information/AWA_CA_SOMB_SORNA_Position_Paper.pdf.

[14] Senate Criminal Justice Committee [Texas], Interim Report 14 (Dec. 15, 2010), http://www.senate.state.tx.us/75r/Senate/commit/c590/c590.Interim Report 81.pdf.

[15] States using risk-based assessments include Arizona, Arkansas, California, Georgia, Massachusetts, Minnesota, Montana, New Jersey, New York, North Dakota, Oregon, Rhode Island, Texas, Vermont, and Washington. *See, e.g.*, Ariz. Rev. Stat. Ann. § 13-3825 (2016); Ark. Code Ann. § 12-12-917 (2016); Cal. Penal Code § 290.04 (West 2017); Ga. Code Ann. § 42-1-14 (2016); Mass. Gen. Laws ch.

*The Effects of Transitioning to Adam Walsh Act's Federally Mandated Sex Offender Classification Scheme*, 37 Crim. Just. & Beh. 503, 504 (2010). Research shows that using risk assessment instruments is far better at predicting recidivism than using only the offense of conviction (as SORNA does).[16] Moreover, while some "law enforcement only" registries may slightly reduce recidivism, public offense-based registries do not—and instead may actually *increase* recidivism.[17] Indeed, in developing a model registration statute, the American Law Institute has rejected the "broad, inflexible sweep of collateral-consequence sanctions under federal SORNA" as "unjust and counterproductive" based on an exhaustive analysis of the research. Am. Law Inst., *Model Penal Code*, § 213, at 235 (Ex. B).

Finally, registrants, as in Michigan and Ohio, have successfully challenged SORNA-compliant registration schemes in court, limiting states' abilities to apply SORNA's onerous requirements retroactively, and raising questions about why they

---

6, §§ 178C-178Q (2015); Minn. Stat. Ann. § 244.052 (2017); Mont. Code Ann. § 46-23-509 (2015); N.J. Stat. Ann. § 2C:7-8 (West 2016); N.Y. Correct. Law § 168-l (McKinney 2017); N.D. Cent. Code § 12.1-32-15 (2015); Or. Rev. Stat. §§ 163A.100, 163A.105 (2015); R.I. Gen. Laws § 11-37.1-6 (2016); Tex. Code Crim. Proc. Ann. art. 62.007 (West 2016); Vt. Stat. Ann. tit. 13, § 5411b (2016); Wash. Rev. Code §§ 72.09.345, 4.24.550 (2017).

[16] *See* Zgoba *et al.*, *A Multi-State Recidivism Study Using Static-99R and Static-2002 Risk Scores and Tier Guidelines from the Adam Walsh Act*, (research report submitted to the National Institute of Justice, 2012); Freeman, N. J., & Sandler, J. C. (2009), *The Adam Walsh Act: A False Sense of Security or an Effective Public Policy Initiative?*, 21 Crim. J. Pol. Rev. 31 (2009).

[17] *See* supra note 3.

should be used at all.

In sum, because states have declined to implement SORNA out of concerns for its cost and effectiveness, or because of legal challenges, most registrants are covered by state registration schemes that either are not modeled on SORNA, or that diverge from it. Congress may have hoped SORNA would result in interstate uniformity, but the reality is that registration remains a "patchwork" of local systems. *Reynolds*, 565 U.S. at 435.

**B.   Because There Is No Mechanism to Register Solely for Federal Purposes, SORNA Requires Compliance With State Registration Schemes.**

In passing SORNA, Congress gave "states primary responsibility for supervising and ensuring compliance among state sex offenders." *Carr*, 560 U.S. at 452. SORNA's federal enforcement provision, 18 U.S.C. § 2250, was not "a stand-alone response" to the goal of regulating people with sex offenses, but rather "is embedded in a broader statutory scheme" that seeks to support state registration systems. *Carr*, 560 U.S. at 455.

That scheme, now codified as 34 U.S.C. Subchapter I, incentivizes states to

adopt SORNA[18] and lays out the standards states must employ.[19] But Subchapter I does not include any federal penalty provision.[20] To the contrary, it envisions that SORNA-compliant states will adopt a "State penalty for failure to comply," 34 U.S.C. § 20913(e), demonstrating that Congress wanted state rather than federal enforcement for registration offenses. Thus, Subchapter I is best understood as describing registration standards states must adopt to receive SORNA-contingent funding, plus the mechanisms for coordination and information sharing.[21]

With no federal registration mechanism, registrants report under their state's registration scheme. Pre-SORNA law had required certain individuals to register with the FBI if the state was deemed not to have an adequate registration statute, but "SORNA does not include a similar FBI registration requirement, presumably

---

[18] *See* 34 U.S.C. § 20912(a) ("Each jurisdiction shall maintain a jurisdiction-wide sex offender registry conforming to this subchapter."); § 20926 (establishing time-lines for jurisdictions to comply); § 20927 (establishing financial penalties for jurisdiction's failure to implement SORNA).

[19] *See* 34 U.S.C. § 20914 (describing information to be collected); § 20915 (describing duration of registration terms to be imposed); § 20916(a) (describing Internet reporting standards); § 20918 (describing in-person verification standards); § 20919(a) (establishing that "appropriate official" shall notify registrants of their obligations).

[20] SORNA's federal penalty provision is separately codified as 18 U.S.C. § 2250.

[21] SORNA provides for state registry information to feed into a national registry, 34 U.S.C. § 20922, which "is not in fact a separate registration system, but rather is a compilation of all state registries." *Dept. of Pub. Safety & Corr. Servs. v. Doe*, 94 A.3d 791, 812 (Md. 2014). State authorities alone are "responsible for the accuracy, updating, and removal of this information." *Id.*

because, by the time of the statute's enactment, 'every State … had enacted some' type of registration system." *Carr*, 560 U.S. at 453 n.7 (quoting *Smith*, 538 U.S. at 90). The fact that Congress did not provide any mechanism by which registrants in non-SORNA-compliant states could register federally, demonstrates that Congress understood registrants' liability for SORNA violations to be predicated on a failure to register in accordance with state law.

The plain language of SORNA ties a registrant's obligations to the registrant's jurisdiction: "A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 34 U.S.C. § 20913(a). The term "jurisdiction" is defined to include states, territories, and Indian tribes, but **not** the federal government. *Id.* § 20911(10). Thus, SORNA envisions that registrants will register in accordance with their jurisdictions' laws. A registrant who is "register[ing], and keep[ing] the registration current, in each jurisdiction" where he lives, works or studies is not violating federal law simply because he is in a jurisdiction whose registration scheme differs from SORNA's. *Id.* § 20913(a).

An example may clarify the point. Imagine that a non-SORNA-compliant state requires twice-yearly reporting of address, work, and school information. The registrant duly complies with all state-law requirements, thereby "register[ing], and keep[ing] the registration current" in his jurisdiction. 34 U.S.C. § 20913(a). Under

the government's theory of an "independent" federal duty to register, the registrant could be federally prosecuted for failing to report quarterly if considered a "Tier III" offender under SORNA. 34 U.S.C. § 20918(3) But there is no way for a registrant in a non-SORNA-compliant state to know if he is a Tier III offender in the first place since that requires a categorization of state-law Tier III-equivalent offenses, which only occurs when a state implements SORNA. 34 U.S.C. § 20911 (2)–(4). The registrant would also have no notice of any SORNA obligations. And if the registrant did try to provide certain SORNA-required information, such as internet identifiers, 34 U.S.C. § 20916(a), the state registering authority would have no form on which to input such information because the state does not require it.

To be sure, registrants can be federally prosecuted (assuming a federal conviction or interstate travel) if they fail to "register, and keep the registration current, in each jurisdiction" where they work, live, or study—meaning if they violate their jurisdictions' registration requirements. But that *federal* offense is premised on non-compliance with the *state* registration regime.[22] As the Supreme Court has said, "as far as we can tell, while SORNA punishes violations of its requirements (instead of violations of state law), the Federal Government has prosecuted a sex offender for

---

[22] Like other states, Michigan provides that individuals with federal convictions must register. M.C.L. § 28.722(b)(i).

violating SORNA only when that offender also violated state-registration require-
ments." *Kebodeaux*, 570 U.S. at 398. Thus, if a registrant moves into the hypo-
thetical non-SORNA-compliant state described above, and fails to register at all,
federal authorities *can* prosecute. The registrant, by failing to abide by state law, has
also failed to "register, and keep the registration current" under SORNA. 34 U.S.C.
§ 20913(a). It is the registrant's failure to comply with the registration requirements
of the local jurisdiction (coupled with the federal nexus) that forms the basis for
federal criminal liability under 18 U.S.C. § 2250.

Applied here, that means that Willman, who is in compliance with Michigan's
scheme, has no current obligations under SORNA. Should he move to another state
where he *is* required to register, however, he would be subject to federal penalties
under SORNA should he fail to do so.

Understanding registrants' obligations under Section 20913 as reflecting the
registry law of their jurisdiction is consistent with *Nichols v. United States*, 136 S.
Ct. 113 (2016), which notably post-dates many of the cases on which the district
court relied. There, the Supreme Court held that a registrant who had moved from
Kansas to the Philippines did not have an obligation to register under Section 20913
because that obligation turns on what is required in the jurisdiction where the regis-
trant is located. Nichols had no obligation under Section 20913 to register in the
Philippines because it is not a "jurisdiction" within the meaning of SORNA, and had

23

no obligation to register in Kansas because he was no longer in that jurisdiction. *Id.* at 1117. Thus, under *Nichols*, whether the offender has an obligation under SORNA turns on what is required *in the jurisdiction where the registrant is located*.

This Court in *Felts*, 674 F.3d at 604, similarly recognized that because registrants can only register pursuant to their state's registration scheme, SORNA violations are predicated on non-compliance with that state scheme. Where a state had not implemented SORNA, "an individual may…comply with SORNA's registration requirements by registering through the state's sex offender registry." *Id.* (quoting *United States v. Brown*, 586 F.3d 1342, 1349 (11th Cir. 2009)). In holding that registrants in non-SORNA-compliant states can be prosecuted under SORNA for failing to meet state law registration requirements, this Court recognized that there could be situations "where the requirements under the non-compliant state registry are less onerous than the requirements under SORNA," noting that "precedents from other circuits largely fail to address circumstances where an inconsistency between federal and non-complying state regimes would render it impractical, or even impossible, for an offender to register under federal law." *Id.* at 605. As a result, registrants might "lack fair notice" of any federal law requirements, and states might be unable to process information, leaving the registrants with no way to fulfill any such federal requirements. *Id.* The Court also asked what would happen if a non-implementing state were to require registration for a period less than that mandated by SORNA.

*Id.* The Court ultimately concluded, however, that it need not resolve those questions because the defendant (who had traveled interstate) "clearly did not comply with the Tennessee law in effect at the time, which was consistent with SORNA insofar as it provided for and required registration with a registry." *Id.*

In its unpublished opinion in *Paul*, 718 Fed. App'x at 365, this Court suggested that even if Congress could not compel states to accept SORNA's standards,[23] registrants themselves should attempt to comply with those standards to create an affirmative defense against federal prosecution. This reflects a misunderstanding of SORNA as requiring only simple registration. The standards that SORNA recommends for state registries require not just regular verification, but impose frequent, often immediate, in-person reporting requirements whenever registrants experience even minor changes in their information—in many cases for life.[24] Indeed, the costs of collecting all this information on the enormous number of people that SORNA seeks to register (including children, the developmentally disabled, people with non-sex offenses, and youth who successfully complete diversion programs), was a primary reason that so few states adopted SORNA in the first place.

---

[23] Congress cannot, consistent with the Tenth Amendment, commandeer states' resources to force them to collect the vast array of information for the extensive (often lifetime) periods that SORNA contemplates. *See Printz v. United States*, 521 U.S. 898, 935 (1997).

[24] *See* National Guidelines for Sex Offender Registration and Notification, at 26–33, 49–56 (2008), https://www.smart.gov/pdfs/final_sornaguidelines.pdf.

Thus, the question is not just how people can register under SORNA if they are not required to register under state law, but also how people can report the extensive array of information SORNA asks states to collect if states choose to collect less information. In other words, there is no way for registrants to comply with SORNA standards around the frequency of reporting or the types of information to be reported where those requirements exceed state law. It makes no sense that the only way thousands of registrants in non-SORNA-compliant states can avoid federal prosecution is if they show up at local police stations every time they travel, create a new internet identifier, or take an on-line course, just so that they can be turned away because their jurisdiction lacks a mechanism for collecting that information.

In any event, in Michigan, pre-2011 registrants have been turned away by operation of law because Michigan has been enjoined in *Does II* from registering pre-2011 registrants. The Michigan State Police has instructed registering agencies not to accept verification from pre-2011 registrants. *See* MSP Feb. 21, 2020 Memo, Ex. C. There is no mechanism whereby those registrants can register federally.

In sum, SORNA should not be read as supplanting state decisions about who should register or what their obligations should be. States are entitled to make their own decisions. Registrants who do not comply with state registration law, and for whom there is a federal nexus, can be prosecuted under SORNA. But the question of whether they have to register and the details of their registration requirements—

26

for how many years they must register as well as what information they must report and with what frequency—are governed by state law. And under state law, Willman does not need to register.

**CONCLUSION**

The Court should hold that Willman is not presently subject to SORNA because he has not traveled in interstate commerce and does not have a federal conviction. The Court need not reach the second issue. But if it does, the Court should hold that the district court erred in holding that SORNA creates a separate federal duty to comply with SORNA-style registration obligations, rather than merely a duty to fulfill state registry obligations (which can be federally prosecuted if not fulfilled and if there is also a federal nexus).

Although Willman is correct that he cannot currently be prosecuted under SORNA for a failure to register, and the district court erred in suggesting otherwise, that does not require reversal. The Court could affirm on the alternative grounds that Willman's suit is not ripe, as he has neither traveled in interstate commerce nor expressed an intent to do so. If Willman at some point in the future moves to a new jurisdiction that requires him to register, he would then be subject to SORNA. Until then, his constitutional challenges to SORNA are premature.

In sum, the Court should clarify that the district court erred in holding that Willman is subject to SORNA in the absence of a federal nexus, and should affirm

the dismissal of the action on the alternative ground that Willman's claims are

therefore not ripe.


Respectfully submitted,


/s/ Miriam J. Aukerman
Miriam J. Aukerman
American Civil Liberties Union
 Fund of Michigan
1514 Wealthy St. SE, Ste. 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org

Daniel S. Korobkin
American Civil Liberties Union
 Fund of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6824
dkorobkin@aclumich.org

Paul D. Reingold
Cooperating Attorney, American
Civil Liberties Union Fund of
Michigan
362 Legal Research Building 801
Monroe Street
Ann Arbor, MI 48109
(734) 763-4319
pdr@umich.edu

*Counsel for Amicus*

March 3, 2020

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,494 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Sixth Circuit Rule 32(b).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 in Times New Roman 14-point font.

/s/ Miriam J. Aukerman
Miriam J. Aukerman

March 3, 2020                              Counsel for Amicus

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system on March 3, 2020. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Miriam J. Aukerman
Miriam J. Aukerman

March 3, 2020                                    Counsel for Amicus Curiae