# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JOHN DOES et al.,

                Plaintiffs,

v.

GRETCHEN WHITMER et al.,

                Defendants.

Case No. 22-cv-10209
HON. MARK A. GOLDSMITH

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR STAY

# TABLE OF CONTENTS

I.   INTRODUCTION......................................................................1

II.  BACKGROUND .....................................................................1

    A.   Registrants Have Waited More Than a Decade for Relief. ...........................1

    B.   This Court's Judgment Already Includes a Stay. ..........................................3

III. LEGAL STANDARD................................................................4

IV.  ARGUMENT ..........................................................................5

    A.   Defendants Have Not Established a Strong Likelihood of Success on the Merits. ..............................................................................5

        1.   Defendants Cannot Establish a Strong Likelihood of Reversal on the Ex Post Facto Claims...................................................6

        2.   Defendants Cannot Establish a Strong Likelihood of Reversal on the Non-Michigan Offense Claim. .......................................7

    B.   Defendants Have Not Shown Irreparable Injury. ..........................................9

        1.   The Actual Effects of the Judgment Are Quite Different from Defendants' Sensationalized Account. ........................................9

        2.   Defendants Have Failed to Prove They Face Certain and Immediate Irreparable Harm. ....................................................12

    C.   Enforcing an Unconstitutional Law Substantially Harms Plaintiffs. ..........19

    D.   Upholding Constitutional Rights Advances the Public Interest..................22

V.   CONCLUSION.......................................................................23

# TABLE OF AUTHORITIES

## Cases

*Abbott v. Perez*, 585 U.S. 579 (2018)........................................................................19

*Ackerman v. Washington*, No. 13-cv-14137, 2020 WL 3248897 (E.D. Mich. June 16, 2020)........................................................................................16

*Ala. Ass'n of Realtors v. Dep't of Health and Hum. Servs.*, 594 U.S. 758 (2021)........................................................................................................6

*Arizona v. Biden*, 31 F.4th 469 (6th Cir. 2022) ................................................5, 15

*Baker v. Adams Cnty./Ohio Valley Sch. Bd.*, 310 F.3d 927 (6th Cir. 2002) .........9, 20

*Bays v. City of Fairborn*, 668 F.3d 814 (6th Cir. 2012) ...........................................19

*Connection Distrib. Co. v. Reno*, 154 F.3d 281 (6th Cir. 1998)...............................19

*Dahl v. Bd. of Trs. of W. Mich. Univ.*, 15 F.4th 728 (6th Cir. 2021)........................23

*Doe v. Whitmer*, 449 F. Supp. 3d 719 (E.D. Mich. 2020)...........................................2

*Does 1-5 v. Cooper*, No. 1:13-cv-711, 2016 WL 10587195 (M.D.N.C. Mar. 2, 2016) ..............................................................................................7, 20

*Does v. Snyder*, 101 F. Supp. 3d 672 (E.D. Mich. 2015).........................................1

*Does v. Snyder*, 101 F. Supp. 3d 722 (E.D. Mich. 2015).........................................1

*Does v. Snyder*, 606 F. Supp. 3d 608 (E.D. Mich. 2021).........................................2

*Does v. Snyder*, 834 F.3d 696 (6th Cir. 2016) ........................................................1, 7

*Kentucky v. Biden*, 23 F.4th 585 (6th Cir. 2022) .................................... 5, 10, 14, 24

*Long v. Robinson*, 432 F.2d 977 (4th Cir. 1970) .............................................. 16, 19

*Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150 (6th Cir. 1991)........................................................................ passim

*Miller v. Stovall*, 641 F. Supp. 2d 657 (E.D. Mich. 2009) ......................................21

*Nken v. Holder*, 556 U.S. 418 (2009)............................................................... passim

*Obama for Am. v. Husted*, No. 2:12-cv-636, 2012 WL 12929587 (S.D. Ohio Sept. 12, 2012)................................................................................... 17, 19

*OPAWL – Building AAPI Feminist Leadership v. Yost*, 118 F.4th 770 (6th Cir. 2024) ........................................................................................................23

*People v. Betts*, 968 N.W.2d 497 (Mich. 2021) ....................................................2, 7

*People v. Lymon*, No. 164685, 2024 WL 3573528 (Mich. July 29, 2024) ...........2, 7

*Sampson v. Murray*, 415 U.S. 61 (1974)................................................................16

*Scripps-Howard Radio v. FCC*, 316 U.S. 4 (1942) .................................................5

*State of Ohio ex rel. Celebrezze v. Nuclear Regulatory Com'n*, 812 F.2d 288
    (6th Cir. 1987)...............................................................................................19

*Wis. Educ. Ass'n Council v. Walker*, No. 11-cv-428, 2012 WL 13069917
    (W.D. Wis. Apr. 27, 2012) ...........................................................................17

**Statutes**

M.C.L. § 28.723(1)(d)...........................................................................................7, 8

M.C.L. § 28.725 .....................................................................................................20

M.C.L. § 28.727 .....................................................................................................20

M.C.L. § 28.729(1) .................................................................................................20

M.C.L. § 750.520b(2)(d).........................................................................................15

M.C.L. § 750.520c(2)(b).........................................................................................15

M.C.L. § 791.236 ...................................................................................................14

M.C.L. § 791.242 .............................................................................................. 14, 15

**Other Authorities**

Mich. Dep't of Corr., *2023 Statistical Report* (June 17, 2024) ...............................15

Mich. Dep't of Corr., *Interstate Compact Agreement Information* .........................15

Mich. Dep't of Corr., Policy Directive 06.04.100, *Lifetime Electronic
    Monitoring of Sex Offenders* (Aug. 14, 2023)...............................................15

## I.    INTRODUCTION

For more than a decade, courts have again and again held that Michigan's Sex Offenders Registration Act (SORA) is unconstitutional. For more than a decade, the State of Michigan has continued to enforce SORA, hoping that courts will not actually require Michigan to remedy the constitutional deficiencies. And for more than a decade, registrants' constitutional rights have continued to be violated, even while they win one courtroom victory after another. This Court has now entered a final judgment after exhaustive litigation on a comprehensive record and has thoughtfully addressed the remedy questions by building in three months for the state to act. The state's response is: relief should be delayed for another year or two or three while the case is on appeal. Like any litigant who prevails, Plaintiffs are entitled to relief unless Defendants can satisfy the demanding requirements for a stay. They cannot.

## II.    BACKGROUND

### A. Registrants Have Waited More Than a Decade for Relief.

The *Does I* litigation began in 2012. The district court decided in 2015 that significant portions of SORA were unconstitutional, and the Sixth Circuit held in 2016 that the statute's retroactive application violated the Ex Post Facto Clause. *Does v. Snyder* (*Does I*), 101 F. Supp. 3d 672 (E.D. Mich. 2015), 101 F. Supp. 3d 722 (E.D. Mich. 2015), 834 F.3d 696 (6th Cir. 2016). When Michigan kept enforcing the unconstitutional law, Plaintiffs filed *Does II*, a class action. The court granted summary judgment to Plaintiffs on all counts in February 2020 and enjoined SORA's

1

retroactive enforcement against pre-2011 registrants, as well as other unconstitutional provisions, while giving the legislature 90 days to remedy the constitutional defects. *Does v. Whitmer* (*Does II*), 449 F. Supp. 3d 719 (E.D. Mich. 2020). The state did not appeal or seek a stay. After the COVID-19 pandemic hit, the court gave the legislature additional time, but also enjoined SORA enforcement because registrants could not simultaneously comply with SORA and with stay-at-home orders. *Does II*, No. 16-cv-13137, Interim Order, ECF No. 91 (E.D. Mich. Apr. 6, 2020). That injunction remained in effect from February 2020 to March 2021. *See* No. 16-cv-13137, ECF No. 126 ¶ 6 (E.D. Mich. Aug. 26, 2021).

When the legislature finally passed a new law (effective in March 2021), it made minimal changes: SORA 2021 retained the identical tier system, the identical lengthy/lifetime registration periods, and the virtually identical onerous reporting requirements and online public registry.[1] Plaintiffs then filed *Does III*. Meanwhile, parallel state cases reached the Michigan Supreme Court, which likewise held SORA to be unconstitutional. *See People v. Betts*, 968 N.W.2d 497 (Mich. 2021); *People v. Lymon*, No. 164685, 2024 WL 3573528 (Mich. July 29, 2024).

---

[1] Contrary to Defendants' mischaracterization, *see* Mot., ECF No. 173, PageID.9211–12, Plaintiffs have not—and do not—agree that SORA 2021 remedies the registry's constitutional deficiencies. *See Does v. Snyder*, 606 F. Supp. 3d 608, 613 (E.D. Mich. 2021) ("Plaintiffs comment that the new SORA also contains unconstitutional provisions and that in some respects the change makes the law even more punitive and unclear" but "concede that challenges to the new version will need to be addressed in a subsequent and separate lawsuit.") (cleaned up).

And yet—with the sole exception of the year-long 2020 injunction—through all these years of successful litigation, Michigan has continued enforcing SORA. The case of Doe C—who was also a plaintiff in the *Does I* litigation—gives a sense of the delay. Courts in *Does I*, *Does II*, and now *Does III* have all held that SORA's retroactive application to Doe C violates the Ex Post Facto Clause. Yet almost a decade later, he remains subject to SORA. Doe C is on the registry for having sex with a 15-year-old girl he met at an over-18 club. Statement of Material Facts (SOMF), ECF No. 123-1, PageID.3703. They married and their oldest child—who was in elementary school at the start of *Does I*—is now in college. Defendants insist that Doe C should still not get relief.

In short, for more than a decade the state has violated the constitutional rights of tens of thousands of people, subjecting them to ongoing supervision, publicly stigmatizing them as dangerous, and undermining their ability to obtain housing and employment. Thousands have been incarcerated for violating an unconstitutional law. Defendants' argument that Plaintiffs should wait several more years for relief is based on unsupported speculation and mischaracterizes what the judgment does.

## B. This Court's Judgment Already Includes a Stay.

The Court did not enter immediate injunctive relief. Rather, it carefully crafted the judgment to provide an opportunity for the state to remedy SORA's unconstitutional provisions before any relief takes effect. The Court gave the legislature 90

3

days to act, and even provided for extensions. Judgment, ECF No. 172, PageID.9196.

Defendants wholly fail to acknowledge this built-in stay. Instead, they act as if this Court had ordered that people be immediately removed from the registry. Defendants' brief presupposes that the legislature is powerless, when in fact the state controls what happens next. If the state wants to continue registration of pre-2011 and non-Michigan registrants, it can pass legislation addressing the constitutional deficiencies. And if the state still wants to appeal, it could sunset any changes to coincide with the conclusion of the case.

Finally, even if the legislature fails to act, all registrants who committed sex offenses in Michigan within the last 14 years would remain subject to SORA. Registration would be enjoined only as to (a) people whose offenses are more than 14 years old and who, the record shows, are highly unlikely to recidivate, and (b) people with non-Michigan convictions, most of whom likewise have quite old convictions and have lived in the community for years. *See infra* Section IV.B.1.

## III.   LEGAL STANDARD

"[A] stay is an intrusion into the ordinary processes of administration and judicial review and accordingly is not a matter of right [.]" *Nken v. Holder*, 556 U.S. 418, 427 (2009) (citations omitted). Indeed, "[t]he parties and the public, while entitled to both careful review and a meaningful decision, are also generally entitled

to prompt execution of [final] orders[.]" *Id. See also Scripps-Howard Radio v. FCC*, 316 U.S. 4, 10-11 (1942); *Kentucky v. Biden*, 23 F.4th 585, 593 (6th Cir. 2022). Accordingly, "the heavy burden for making out a case for such extraordinary relief rests on 'the moving party[.]" *Kentucky*, 23 F.4th at 593 (cleaned up).

Courts assess four "interrelated questions" to determine if a stay is warranted: "(1) Has the applicant made 'a strong showing that he is likely to succeed on the merits'? (2) Would the applicant be 'irreparably injured absent a stay'? (3) Would a stay 'substantially injure the other parties' in the case? and (4) What does 'the public interest' favor?" *Arizona v. Biden*, 31 F.4th 469, 474 (6th Cir. 2022) (quoting *Nken*, 556 U.S. at 434). As the movants, Defendants must "address each factor, regardless of its relative strength, providing specific facts and affidavits supporting assertions that these factors exist." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991). Here, a stay is not warranted because Defendants have not met their burden as to any factor.

## IV.   ARGUMENT

### A. Defendants Have Not Established a Strong Likelihood of Success on the Merits.

A movant "seeking a stay must ordinarily demonstrate to a reviewing court that there is a likelihood of reversal." *Griepentrog*, 945 F.2d at 153. A "mere 'possibility' of success on the merits" is insufficient. *Id.* Rather, the movant must make a "strong showing" that they are likely to prevail on appeal. *Ala. Ass'n of*

*Realtors v. Dep't of Health and Hum. Servs.*, 594 U.S. 758, 762 (2021) (quoting *Nken*, 556 U.S. at 434). The movant's burden is especially high where, as here, Defendants are not seeking to stay a preliminary injunction—which rests on "incomplete factual findings and legal research"—but rather a final order "made after the district court has considered fully the merits of the underlying action and issued judgment[.]" *Griepentrog*, 945 F.2d at 153. Under such circumstances, the movant "will have greater difficulty in demonstrating a likelihood of success on the merits." *Id.*

Defendants seek to stay implementation of a final judgment issued after three years of intensive litigation. This Court "had the benefit of a complete record," *id.*, developed over months of "extensive discovery," Op., ECF No. 158, PageID.8665. Indeed, the summary judgment record totaled over 4,500 pages, including a raft of expert reports, depositions, and declarations from both sides. The Court has issued two lengthy opinions, totaling nearly 140 pages. While Defendants disagree with the Court's decision, they have not established a strong likelihood of reversible error.

### 1. Defendants Cannot Establish a Strong Likelihood of Reversal on the Ex Post Facto Claims.

Defendants cannot demonstrate a likelihood of reversal on the ex post facto claims. Had this Court thought its decision was incorrect, it would have decided the case differently. The Court carefully considered—and properly rejected—Defendants' arguments. Op., ECF No. 158, PageID.8680–8681. Moreover, this

Court's decision comports with directly applicable Sixth Circuit and Michigan Supreme Court precedent. *See Does I*, 834 F.3d at 706; *Betts*, 968 N.W.2d at 562; *Lymon*, 2024 WL 3573528, at *14. Defendants "have offered no additional facts, cited no intervening case law, made no argument not previously considered by the Court, or identified any specific flaw in the Court's decision." *Does 1-5 v. Cooper*, No. 1:13-cv-711, 2016 WL 10587195, at *2 (M.D.N.C. Mar. 2, 2016) (declining to stay ruling enjoining SORA). Thus, Defendants are unlikely to obtain a reversal on appeal.

### 2. Defendants Cannot Establish a Strong Likelihood of Reversal on the Non-Michigan Offense Claim.

Defendants' five sparse sentences about this claim fail to demonstrate a strong likelihood of reversal on this Court's rulings that (1) SORA's procedures for registering people with non-Michigan convictions violate due process and (2) the imposition of longer or harsher requirements on people with non-Michigan convictions violates equal protection. Op., ECF No. 158, PageID.8738-8744.

Defendants provide no argument at all for why the Court's ruling requiring procedural protections was wrong. Nor do Defendants try to defend the current system, where front-line staff make unchallengeable tier determinations with no notice or opportunity to be heard. Rather, Defendants seem to suggest that procedural protections are unnecessary because people with non-Michigan convictions will have to register anyway under M.C.L. § 28.723(1)(d). However, this Court also

correctly ruled that harsher registration requirements imposed under M.C.L. § 28.723(1)(d) independently violate the Equal Protection Clause.[2]

Defendants also fail to explain why they should be allowed to treat people with non-Michigan offenses more harshly than people with Michigan offenses. They allude to the same "Full Faith and Credit Clause" argument that this Court already found is waived, Op., ECF No. 158, PageID.8743 n.60, and that—in any event— makes no sense. The fact that another state may require registration for consensual sex with a 17-year-old does not require Michigan to impose registration when that conduct is legal here. On Defendants' theory, whenever other states have different laws—say, for granting driving permits or occupational licenses to people with convictions—Michigan would have to apply the law of the convicting state. That is nonsense.

In sum, Defendants have made no showing, much less a strong showing, that the Sixth Circuit is likely to reverse on the non-Michigan offense claim.

---

[2] Moreover, even absent the Court's equal protection ruling on M.C.L. § 28.723(1)(d), "substantial similarity" determinations—and the constitutionally-required procedural protections—would still be needed. For example, if a person has a 30-year registration term in the convicting state, Michigan must still determine if the offense is substantially similar to a Michigan 25-year offense or a lifetime offense in order to determine how long the person must register.

## B. Defendants Have Not Shown Irreparable Injury.

To justify a stay, the movant must show "irreparable harm that decidedly outweighs the harm that will be inflicted on others if a stay is granted." *Baker v. Adams Cnty./Ohio Valley Sch. Bd.*, 310 F.3d 927, 928 (6th Cir. 2002). When evaluating irreparable harm, courts generally consider "(1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided." *Griepentrog*, 945 F.2d at 154. Further, "the harm alleged must be both certain and immediate, rather than speculative or theoretical." *Id.*

Here, Defendants cannot meet their burden. As an initial matter Defendants misrepresent the effect of this Court's judgment. And in any event, Defendants have supplied *no* proof of substantial harm—much less certain and immediate irreparable harm. Defendants' professed public safety concerns rest on speculation and false assumptions about SORA's efficacy. Moreover, the requirement to expend resources to implement a judgment cannot constitute irreparable harm. Finally, enjoining an unconstitutional law is, by definition, not irreparable harm.

### 1. The Actual Effects of the Judgment Are Quite Different from Defendants' Sensationalized Account.

First, as a threshold matter, Defendants face *no* "certain and immediate" harm because the Court already embedded into its judgment a three-month stay. *See Griepentrog*, 945 F.2d at 154. This Court's judgment does not immediately remove *anyone* from the registry. Rather, this Court gave the state 90 days, with the

possibility of extensions, to allow the legislature to remedy SORA's constitutional defects or the state to take administrative action. Judgment, ECF No. 172, PageID. 9196.

Thus, whether the injunctive portions of the judgment go into effect is entirely contingent on what the state does during the built-in stay period. Defendants do not explain why a stay is necessary if the legislature passes new SORA legislation (which could be sunset if the state wants to appeal). And if the state fails to respond to this Court's judgment, then such an abdication of responsibility cannot justify the "extraordinary relief" of a stay. *Kentucky*, 23 F.4th at 593. Moreover, SORA will be enjoined only during the appeal; if the Sixth Circuit reverses this Court, SORA's requirements would apply again. Of course, if the Sixth Circuit affirms the judgment, it confirms that this unconstitutional law is properly enjoined.

Second, if the injunctions do go into effect due to legislative inaction, **all registrants who committed sex offenses in Michigan within the last 14 years will still have to register.** As Defendants' own experts recognize, recidivism rates are highly dependent on the amount of time since conviction and release. SOMF, ECF No. 123-1, PageID.3749. Expert analysis of Michigan's registry data shows that after 5 years in the community, registrants' recidivism rates are around 3-4%; after 10 years, around 2%; and after 15 years, around 1.4%. *Id.*, PageID.3763-3764. By comparison, the rate for first-time sex offense convictions for men who do not have

a past sex offense conviction is between 2 and 4%. *Id.*, PageID.3753. In other words, registrants who have been in the community for five years are no more likely to be convicted of a sex offense than people who are not on the registry. The fact that the pre-2011 ex post facto subclass, by definition, has offenses that are at least 14 years old means this group is especially unlikely to recidivate.[3]

The class data shows that, as of January 24, 2023, 94 percent of pre-2011 ex post facto subclass members living in the community—more than 25,000 people— had lived in the community without a sex offense conviction for at least five years; and 60 percent (more than 16,000 people) had done so for at least 15 years. Ex. A, Alcala Decl., ¶¶ 7–8. Figures for the non-Michigan offense subclass are similar: 87 percent of the nearly 3,000 registrants in the community with non-Michigan offenses have lived in the community without a sex offense conviction for at least 5 years; and over half have done so for at least 15 years. *Id.* at ¶ 13. **The vast majority of people who would be denied relief under Defendants' requested stay are thus no more likely to be convicted of a sex offense than people who are not on the registry.**

---

[3] The state's argument that many sex crimes go unreported is a red herring. Mot., ECF No. 173, PageID.9224. The relevant question is whether people with sex offense convictions commit more sex offenses than people without such convictions. There are undetected offenses for both groups. Thus, the existence of undetected sex crimes does not affect the comparison between the offense rates of people who are and are not on the registry. SOMF, ECF No. 123-1, PageID.3890-3895.

In sum, the judgment's impact is dependent on the state's own actions within the built-in stay period and, in any event, largely limited to people who have older convictions and who present no more risk than non-registrants.

### 2.  Defendants Have Failed to Prove They Face Certain and Immediate Irreparable Harm.

Even assuming that the legislature will fail to remedy SORA within the Court's built-in stay period—a matter of speculation—Defendants have failed to meet their burden of establishing, through adequate proof, that substantial, irreparable injury is both certain and imminent. *Griepentrog*, 945 F.2d at 154. Defendants offer *no* "specific facts" or "affidavits" in support of their blanket allegations of danger. *Id*. Rather, Defendants have cherry-picked a few crimes with particularly disturbing facts to recount in graphic detail. Defendants do not recount the offenses of the named Plaintiffs in this case, nor acknowledge that registrable offenses vary greatly in severity. *See* SOMF, ECF No. 123-1, PageID.3716 (84% of registrants living in the community have offenses other than criminal conduct in the first degree). Tellingly, all of Defendants' selected cases involve registrants who were recently released from prison, an implicit acknowledgement that time in the community is hugely important in determining recidivism risk. *See id*., PageID.3749-3760. In short, Defendants' strategy is to ask for a stay grounded in fear. The law requires their request to be grounded in facts.

Defendants speculate that if the judgment takes effect there will be three types

of harm: (1) harm to public safety; (2) the costs and potential confusion of providing notice; and (3) the state's inability to enforce its laws. We review each in turn.

### a.   *Defendants Have Failed to Establish Certain, Immediate Irreparable Harm to Public Safety.*

Defendants' allegation of harm to public safety itself rests on three false premises: (1) SORA prevents sex crimes; (2) SORA is necessary to provide the public with information about people with sex-offense convictions; and (3) without SORA, there is no supervision of people with such convictions. Each premise fails.

First, SORA does not prevent sex crimes. Dozens of studies have failed to uncover any evidence that online registries reduce recidivism. SOMF, ECF No. 123-1, PageID.3739. Moreover, people with no history of sexual crime—and who thus are not on the registry—account for 90–95% of sex crime arrests. *Id*., PageID.3741. As this Court noted, "there are strong, science-based opinions challenging the impact of registration systems like SORA 2021 on recidivism[.]" Op., ECF No. 158, PageID.8693. "[A] body of scholarship" shows that SORA "do[es] not significantly reduce recidivism and may increase it" because, among other factors, registration pushes people into homelessness, unemployment, and social isolation. *Id*., PageID.8695. True, the Court—in finding that Plaintiffs had not met their burden of proving SORA to be irrational—ultimately concluded that the evidence around SORA's failure to reduce recidivism is "mixed." *Id.*, PageID.8721. But here it is *Defendants* who have the "heavy burden" of showing that denying a stay will

13

certainly and irreparably harm public safety. *Kentucky*, 23 F. 4th at 593. They clearly have not established that SORA prevents sexual crimes.

Moreover, past experience shows that enjoining SORA does not impact public safety. In *Does II*, Judge Cleland enjoined SORA enforcement for more than a year during the COVID-19 pandemic. *See* No. 16-cv-13137, ECF No. 126, ¶ 6. The sky did not fall. Indeed, there is no evidence of any harm from that injunction whatsoever.

Second, the public does not need SORA to obtain information about a person's conviction history. As the state itself notes, such information is *already* easily accessible through Michigan's Offender Tracking and Information System (OTIS) and Michigan's Internet Criminal History Access Tool (ICHAT), as well as countless private vendors. *See* Mot., ECF No. 173, PageID.9221. People looking to hire a babysitter or considering a dating partner can utilize these tools to determine if the person has a sex-offense conviction—or, for that matter, another conviction that is not subject to registration such as murder, robbery, or assault.

Third, SORA is not the only way in which the state monitors people with sex offense convictions. Generally, people convicted of sex crimes are subject to parole supervision following prison. *See*, *e.g.*, M.C.L. § 791.242, M.C.L. § 791.236. People convicted of the most serious sexual offenses—including several cases cited by

Defendants[4]—are subjected to *lifetime* 24/7 electronic monitoring, *see* M.C.L. § 750.520b(2)(d); M.C.L. § 750.520c(2)(b),[5] and to *lifetime* parole, *see* M.C.L. § 791.242(3). People with non-Michigan convictions are likewise typically on parole upon release and usually cannot even move to Michigan without a transfer of supervision.[6]

Nor does law enforcement rely on SORA. The MSP's own staff testified that they "don't even need [SORA] for a law enforcement purpose . . . because all this information is already available to us." SOMF, ECF No. 123-1, PageID.3746-3747.

Ultimately, "the extent of" the harm to public safety that Defendants allege is "filled with ifs and maybes" that cannot constitute irreparable injury. *Arizona*, 31 F.4th at 482. Defendants' speculations and faulty assumptions about SORA's efficacy are woefully insufficient to delay enforcement of this Court's final judgment.

---

[4] Michigan's lifetime electronic monitoring requirement applies to people whose offenses were committed on or after August 28, 2006. Mich. Dep't of Corr., Policy Directive 06.04.100, *Lifetime Electronic Monitoring of Sex Offenders* (Aug. 14, 2023), https://perma.cc/Y5EL-S8UD. This includes at least two of the cases Defendants highlight. *See* Mot., ECF No. 173, PageID.9219 (JM convicted of second-degree criminal sexual conduct against a minor in 2015); PageID.9220 (JE convicted of first-degree criminal sexual conduct in 2015).

[5] As of 2023, nearly 900 people were subject to lifetime electronic monitoring in Michigan. Mich. Dep't of Corr., *2023 Statistical Report*, Table H6a (June 17, 2024) https://perma.cc/286H-M3TC.

[6] *See* Mich. Dep't of Corr., *Interstate Compact Agreement Information*, https://perma.cc/DA57-SF9V.

### b.    *Providing Notice Does Not Constitute Irreparable Harm.*

Defendants contend that providing notice of the judgment would cause irreparable harm because the Sixth Circuit might reverse. But neither the expenditure of resources nor the possibility of reversal constitutes irreparable injury. "The key word" in this inquiry is "*irreparable.* Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Griepentrog*, 945 F.2d at 154 (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). Thus, as a matter of law, the expenditure of resources to implement this Court's ruling is not irreparable harm.[7]

As a factual matter, Defendants' allegation that it will take "a herculean effort" to send out notice is unpersuasive. The parties are close to finalizing the proposed notice plan and proposed class notice, the contents of which are largely undisputed. As agreed by the parties, the proposed notice plan envisions notices going out after both the built-in stay and litigation over Defendants' stay motion are completed. The parties are fully capable of crafting the notice to avoid confusion. The soon-to-be-submitted proposed notice clearly explains that some rulings are being appealed and

---

[7] *See, e.g.*, *Ackerman v. Washington*, No. 13-cv-14137, 2020 WL 3248897, at *3 (E.D. Mich. June 16, 2020) (fact that prison would "have to roll out new guidelines" to implement district court's ruling "simply describe[d] injuries in terms of money, time, and energy" that were not irreparable); *Long v. Robinson*, 432 F.2d 977, 980 (4th Cir. 1970) ("the cost, the inconvenience or the burdens" of moving young people from adult to juvenile criminal legal system was not irreparable harm).

thus registrants' requirements might change. *See Wisconsin Educ. Ass'n Council v. Walker*, No. 11-cv-428, 2012 WL 13069917, at *4 (W.D. Wis. Apr. 27, 2012) (parties can avoid confusion by inserting language that "account[s] for the possibility that this court's injunction may be vacated"). Moreover, since Defendants are appealing and seeking a stay only on Counts I, II and XI, notice about the court-ordered relief on the other counts is necessary regardless of this Court's order on Defendants' stay motion.

The possibility of confusion if the Sixth Circuit reverses likewise is not irreparable injury. There is *always* a chance that an appellate court will modify or reverse a district court's ruling. By Defendants' logic, stays pending appeal would be awarded as a matter of course—in stark contravention of the U.S. Supreme Court's admonition that a stay is "not a matter of right[.]" *Nken*, 556 U.S. at 427. Indeed, district courts regularly implement orders to protect constitutional rights despite the possibility of reversal. *See, e.g., Wisconsin Educ. Ass'n Council*, 2012 WL 13069917, at *4 (denying stay and stating that "defendants' general and unsubstantiated complaint of 'confusion' [if appellate court reverses] seems the very type of speculative injury found insufficient to satisfy a stay"); *Obama for America v. Husted*, No. 2:12-cv-636, 2012 WL 12929587, at *3 (S.D. Ohio Sept. 12, 2012) (court "is unconvinced that [defendant] will not be able to communicate any further

changes with sufficient clarity" if ruling is overturned on appeal). Here, just as in other cases, if relief is modified on appeal the state can adjust.

Defendants express concern that Plaintiffs will be confused if the Sixth Circuit reinstates registration requirements. Notably, Defendants' solicitude for registrants' wellbeing does not extend to ending their unconstitutional treatment. Plaintiffs—many of whom have been awaiting relief for more than a decade—would much rather obtain relief now, even at the risk that it could be taken away, than be subjected to unconstitutional harm. *See* Compl., ECF No. 1, PageID.25, 92, 131–132 (describing transformative impact of the injunction in *Roe v. Snyder*, No. 16-cv-13353, 2018 WL 4352687 (E.D. Mich. Sept. 12, 2018), even though that relief is no longer in effect).

Once again, *Does II* is instructive. After the legislature amended SORA and Judge Cleland ended the year-long injunction on SORA enforcement, the state notified registrants about their obligations under the new statute and began enforcing SORA anew. Likewise, once appeals in this case are concluded, Defendants can—if they prevail—resume enforcement against the ex post facto and non-Michigan offense subclasses. If, as is more likely, the appellate courts affirm, expand, or modify the relief granted on any of the counts being appealed, Defendants will need to act in accordance with such rulings.

### c. *Enjoining an Unconstitutional Law Is Not Irreparable Harm.*

Defendants contend that the inability to enforce a duly-enacted law inflicts irreparable harm on the state. But that argument holds water only if the enjoined law is constitutional. *See Abbott v. Perez*, 585 U.S. 579, 602 (2018). Where, as here, a "plaintiff shows a substantial likelihood that the challenged law is unconstitutional, no substantial harm to others can be said to inhere [the challenged law's] enjoinment." *Bays v. City of Fairborn*, 668 F.3d 814, 825 (6th Cir. 2012).

Further, the state has had more than a decade to remedy SORA. Thus, any "risks and costs are self-imposed." *State of Ohio ex rel. Celebrezze v. Nuclear Regulatory Com'n*, 812 F.2d 288, 292 (6th Cir. 1987); *see also Long*, 432 F.2d at 981 (stay inappropriate where "the principal irreparable injury" alleged by movants was "of their own making").

### C. Enforcing an Unconstitutional Law Substantially Harms Plaintiffs.

Plaintiffs will suffer significant harm if the judgment is stayed pending appeal—and have already suffered from having to comply with an unconstitutional law. Where "constitutional rights are threatened or impaired, irreparable injury is presumed." *Obama for America*, 697 F.3d at 436; *see also Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).

A stay pending appeal raises particular concern where, as here, the nonmoving party will be subjected to "continuing violations" of their constitutional rights.

*Baker*, 310 F.3d at 930. As detailed above, federal and state courts—including the Eastern District of Michigan—have repeatedly held Michigan's SORA to be unconstitutional in rulings that span more than a decade. *See supra* Section II.A. The state has been on notice for years that SORA has serious constitutional flaws, yet has continued to force registrants to comply with an unconstitutional law.

All the while, SORA "exacts a heavy toll on registrants," impacting every facet of their lives. Op., ECF No. 158, PageID.8698. *See also* SOMF, ECF No. 123-1, PageID.3785-3832 (detailing how registrants are subject to ongoing surveillance and supervision; suffer stigmatization and harassment; and face severe difficulty accessing housing, employment, and education). Registrants must comply with extensive and onerous reporting requirements. M.C.L. §§ 28.725, 28.727; Op., ECF No. 171, PageID.9175, 9180 (reading SORA to require, among other things, reporting of a vehicle one drives even once and in-person reporting within three days if one conducts research at a library other than at one's own university). Registrants who do not comply with these highly technical requirements face prosecution and up to a decade in prison. M.C.L. § 28.729(1). The fear of "being lugged off in cold irons bound … [is] always in the background." *Does I*, 834 F.3d at 703. So, in order not to risk prosecution, registrants curtail basic human activity, like going to their parents' funerals. SOMF, ECF No. 123-1, PageID.3822.

If the Court's ruling is stayed, hundreds of people may well be prosecuted and incarcerated under an unconstitutional *criminal* law while the appeal in this case is pending. Convictions for SORA violations average around 880-1,000 a year. SOMF, ECF No. 123-1, PageID.3800. Unlawful incarceration is undoubtedly irreparable harm. *See Miller v. Stovall*, 641 F. Supp. 2d 657, 669 (E.D. Mich. 2009) (collecting cases). Moreover, a stay could create mass confusion for registrants, prosecutors, and judges alike as they try to sort out whether members of the ex post facto and non-Michigan offenses subclasses can be prosecuted where SORA has been held unconstitutional as to them, but has not been enjoined. Defendants point to no cases where courts have stayed a final judgment to allow for continued enforcement of an unconstitutional criminal law.

SORA also undermines registrants' abilities to re-enter their communities. Registrants are publicly shamed on a state website that depicts them as dangerous. SOMF, ECF No. 123-1, PageID.3774-3784. As a result, they have received death threats, been attacked at gunpoint, had their homes and cars vandalized, and been threatened by strangers while in their own homes. *Id.*, PageID.3804-05. Moreover, because registrants' work and home addresses are posted to the online registry, employers and landlords are loath to hire or rent to people on the registry, regardless of their qualifications. *Id.*, PageID.3807-3816. An analysis of registry data showed that 45% of those living in the community were unemployed, *id.*, PageID.3811, and

12% of people who had been on the registry for at least ten years have experienced homelessness, *id.*, PageID.3807. In short, SORA stymies registrants' efforts to find stable employment or adequate housing, forces them to the fringes of society, and makes it nearly impossible to integrate meaningfully into their communities.

Defendants contend that because conviction information is already public, the registry's existence does not inflict any separate harm. But, as this Court has stressed, "not all public information is made equal[.]" Op., ECF No. 158, PageID.8689. In creating the online registry, the Court noted, the state "re-packag[ed] information and provid[ed] it to the public in a different form." *Id.*, PageID.8689-8690. The state's decisions about how to frame the online registry and disseminate information about registrants send a strong message to the public that people on the registry are dangerous, making it more likely that registrants will face social ostracization. *Id.* Moreover, the record establishes that SORA has devastating consequences far beyond those attributable to having a conviction; people find jobs and housing despite their criminal records, only to lose them because they are on the registry. SOMF, ECF 123-1, PageID.3807-3816.

In short, SORA 2021 exemplifies why irreparable harm is presumed when the state enforces an unconstitutional statute.

### D. Upholding Constitutional Rights Advances the Public Interest.

"The third and fourth *Nken* factors—whether issuing a stay will substantially

injure the other parties interested in the proceeding and where the public interest lies—'merge' when the government is a party." *OPAWL – Building AAPI Feminist Leadership v. Yost*, 118 F.4th 770, 785 (6th Cir. 2024) (citing *Nken*, 556 U.S. at 435). The Sixth Circuit has made clear that "it is always in the public interest to prevent the violation of a party's constitutional rights." *Dahl v. Bd. of Trs. of W. Mich. Univ.*, 15 F.4th 728, 736 (6th Cir. 2021) (citation omitted).

Moreover, while Defendants justify SORA in the name of public safety, SORA has no causal connection to protecting the public. *See supra* Section IV.B. Rather, SORA counterproductively blocks people from successfully reintegrating into their communities. *See supra* Section IV.C. SORA also discourages survivors from reporting abuse, makes it more difficult to obtain convictions for sex offenses, costs millions, and diverts resources from programs that demonstrably reduce sexual offending. SOMF, ECF No. 123-1, PageID.3743-3746; 3839-3841. Thus, the public interest supports enjoining enforcement of the unconstitutional SORA provisions.

## V.  CONCLUSION

The constitutionality of SORA has been litigated for over a decade, with courts time and again invalidating the law. Yet time and again, the state has continued to subject registrants to an unconstitutional law. Now, this Court has issued a carefully crafted final judgment following exhaustive litigation. Defendants have not met their high burden to delay implementation yet again. This Court's order should

go into full effect because Defendants have not established any of the four factors required for the "extraordinary relief" they seek. *Kentucky*, 23 F.4th at 593.

If the Court is nonetheless inclined to grant a stay, Plaintiffs request that the stay be limited. Defendants have provided no reason why, at a bare minimum, people who have lived successfully in their communities for years without reconviction should continue to be subjected to this unconstitutional regime. As explained in Section IV.B.1, *supra*, after five years in the community without reconviction, registrants are no more likely to be convicted of a sex offense than non-registrants. While Plaintiffs oppose any stay, if this Court does allow Michigan to continue enforcing an unconstitutional law while the case is on appeal, that unconstitutional law should certainly not apply to registrants who present no greater risk than non-registrants. Thus, the Court could impose a limited stay of Sections B and K of its judgment with respect to members of the ex post facto and non-Michigan offense subclasses who have spent less than five years in the community without reconviction for a registrable offense subsequent to their release from imprisonment or date of conviction, whichever is later.

Defendants' motion should be denied.

Respectfully submitted,

s/ Miriam Aukerman (P63165)
American Civil Liberties Union
  Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org

s/ Daniel S. Korobkin (P72842)
s/ Syeda Davidson (P72801)
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6824
dkorobkin@aclumich.org

s/ Lauren Carbajal (CA 336485)
Cooperating Counsel, American Civil
  Liberties Union Fund of Michigan
40 Rector Street
New York, NY 10006
646-916-9846
lcarbajal@naacpldf.org

s/ Paul D. Reingold (P27594)
Cooperating Counsel, American Civil
  Liberties Union Fund of Michigan
Univ. of Michigan Law School
802 Legal Research Building
801 Monroe Street
Ann Arbor, MI 48109-1215
(734) 355-0319 - pdr@umich.edu

s/ Roshna Bala Keen (Ill. 6284469)
Loevy & Loevy
Cooperating Counsel, American Civil
  Liberties Union Fund of Michigan
311 North Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 - roshna@loevy.com

Dated: April 21, 2025

## LOCAL RULE CERTIFICATION

I, Miriam Aukerman, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted material and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 points (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

s/ Miriam Aukerman (P63165)
American Civil Liberties Union
  Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org
