UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOES et al.,

Plaintiffs,

v.

GRETCHEN WHITMER et al.,

Defendants.

Case No. 22-cv-10209
HON. MARK A. GOLDSMITH

## PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR STAY

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... iii

I.  INTERMEDIATE STATE COURT DECISIONS CITED BY DEFENDANTS DO NOT
INCREASE DEFENDANTS' LIKELIHOOD OF SUCCESS ON APPEAL. ..........................1

    A.  *Kiczenski* Does Not Change the Fact that Defendants Cannot Establish a
Strong Likelihood of Success on the Merits. .................................................1

    B.  *In re Harder* Undercuts Defendants' Argument that this Court Erred on the
Non-Michigan Offense Claim........................................................................5

II. DEFENDANTS HAVE FAILED TO ESTABLISH IRREPARABLE HARM..........................6

    A.  Limiting the Online Registry to People with Michigan Convictions in the
Last 14 Years Does Not Constitute Irreparable Harm. .................................6

    1. The Registrants Affected Are Low Risk. .....................................................6

    2. Defendants' Public-Access-To-Registry-Information Rationale Cannot
Justify SORA's Expansive Requirements. ....................................................9

    B.  The Public Does Not Need SORA to Obtain Criminal History
Information...................................................................................................10

    C.  The Possibility of Confusion Is Not Irreparable Harm. ..............................13

CONCLUSION ........................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Cady v. Arenac Co.*, 574 F.3d 334 (6th Cir. 2009)....................................................17

*Does v. Snyder,* 449 F. Supp. 3d 719 (E.D. Mich. 2020) .........................................13

*Does v. Snyder*, 834 F.3d 696 (6th Cir. 2016) ...........................................................1

*Ex Parte Young*, 209 U.S. 123 (1908) ......................................................................14

*In re Harder*, No. 368645, 2025 WL 825907 (Mich. Ct. App., Mar. 14, 2025) ...............................................................................................................5, 6

*Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963)................................................1

*McClellan v. Cnty of Chippewa*, 634 F. Supp. 3d 404 (W.D. Mich. 2022) ............16

*Nken v. Holder*, 556 U.S. 418 (2009) ......................................................................13

*People v. Betts*, 507 Mich. 527 (2021)....................................................................1, 3

*People v. Kiczenski*, No. 364957, 2024 WL 4595174 (Mich. Ct. App. Oct. 28, 2024) ........................................................................................... 1, 2, 3

*People v. Lymon*, No. 164685, 2024 WL 3573528 (Mich. July 29, 2024)................1

*People v. Pennington*, 240 Mich. App. 188 (2000) .................................................16

*People v. Temelkoski*, 307 Mich. App. 241 (2014)..................................................16

*People v. Tucker*, 312 Mich. App. 645 (2015) .........................................................16

*Platinum Sports Ltd v. Snyder*, 715 F.3d 615, 619 (6th Cir. 2013) ........................16

*Pusey v. City of Youngstown*, 11 F.3d 652 (6th Cir. 1993)......................................17

*Willman v. Att'y Gen. of United States*, 972 F.3d 819 (6th Cir. 2020)......................1

**Statutes**

M.C.L. § 28.722 ..........................................................................................................6

M.C.L. § 28.723 ..........................................................................................................6

M.C.L. § 28.728 ........................................................................................................10

**Rules**

Fed. R. Civ. P. 65 ......................................................................................................17

**Other Authorities**

Michigan Department of Corrections, *Parole & Probation; MDOC Policy*
   *Directive: Parole Process,* PD 06.05.104 (August 14, 2023) ...........................11

I.     **INTERMEDIATE STATE COURT DECISIONS CITED BY DEFENDANTS DO NOT INCREASE DEFENDANTS' LIKELIHOOD OF SUCCESS ON APPEAL.**

   A. *Kiczenski* **Does Not Change the Fact that Defendants Cannot Establish a Strong Likelihood of Success on the Merits.**

Defendants point to *People v. Kiczenski*, No. 364957, 2024 WL 4595174 (Mich. Ct. App. Oct. 28, 2024), application for leave pending, filed Dec. 19, 2024, No. 167908 (Mich.), as a reason this Court should grant a stay.[1] *Kiczenski* does not increase Defendants' likelihood of success on appeal of the ex post facto claims.

First, *Kiczenski* applied the factors of *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963)—just like this Court; the Sixth Circuit in *Does v. Snyder* (*Does I*), 834 F.3d 696 (6th Cir. 2016); and the Michigan Supreme Court in *People v. Betts*, 507 Mich. 527 (2021), and *People v. Lymon*, No. 164685, 2024 WL 3573528 (Mich. July 29, 2024). *Kiczenski* thus undercuts Defendants' argument that the Sixth Circuit will dispense with the *Mendoza-Martinez* analysis and simply rubberstamp Michigan's Sex Offenders Registration Act (SORA) based on *Willman v. Att'y Gen. of United States*, 972 F.3d 819 (6th Cir. 2020).

Second, a non-binding intermediate state court decision in an individual criminal appeal is unlikely to be persuasive to the Sixth Circuit. To the extent that

---

[1] Defendants also cite *In re Harder*, No. 368645, 2025 WL 825907 (Mich. Ct. App., Mar. 14, 2025), and the unpublished decision in *People v. Cole*, No. 367504, 2025 WL 814685, at *1 (Mich. Ct. App. Mar. 13, 2025). Both just apply *Kiczenski*.

the Circuit might consider non-binding state cases in applying the *Mendoza-Martinez* factors, it is much more likely to look—as this Court did—to the Michigan Supreme Court's decisions in *Betts* and *Lymon*.[2]

*Betts* addressed SORA 2011 but is still highly relevant because most of the SORA features that the Michigan Supreme Court criticized in *Betts* were continued in SORA 2021, as this Court recognized. Op., ECF No. 158, PageID.8688-8698 (citing *Betts* in applying the *Mendoza-Martinez* factors). *Lymon* concerned the application of SORA 2021 to people with non-sex offenses. The *Lymon* Court's analysis of the first three *Mendoza-Martinez* factors—whether SORA 2021 resembles the traditional punishments of parole and shaming, whether it imposes significant affirmative disabilities and restraints, and whether it serves the traditional aims of punishment—remains the same whether a registrant did or did not commit a sex offense. *See* Op., ECF No. 158, PageID.8688-8692 (citing *Lymon* in applying *Mendoza-Martinez* factors); *Kiczenski*, 2024 WL 4595174, at *6 ("recognizing that portions of the *Lymon* analysis also apply to sexual offenders," and holding therefore that the first three factors point to a finding that SORA 2021 is punitive for people convicted of sex offenses).

---

[2] The Michigan Supreme Court will also likely decide *People v. Kardasz*, No. 165008 (Mich.), which raises the question of whether SORA 2021 is punishment as applied to people convicted of sex offenses, before any Sixth Circuit decision.

The key question unresolved by the Michigan Supreme Court is whether SORA 2021 is "excessive" for people convicted of sex offenses.[3] This is the one and only factor where *Kiczenski* diverged from *Betts*, *Lymon*, *Does I*, and this Court. *Compare Kiczenski*, 2024 WL 4595174, at *9-10 (holding SORA 2021 is not excessive as applied to people convicted of criminal sexual conduct in the first degree),[4] *with Does I*, 834 F.3d at 705 (SORA is excessive because "while the statute's efficacy is at best unclear, its negative effects are plain"); *Betts*, 507 Mich. at 562 (SORA's "demanding and intrusive requirements, imposed uniformly on all registrants regardless of an individual's risk of recidivism, were excessive").

This brings us to the third reason why *Kiczenski* is unlikely to affect the Sixth Circuit's analysis: *Kiczenski* had a thin record on which to assess excessiveness. *Kiczenski* was an appeal on a motion for relief from judgment in an individual criminal case that was litigated pro se in the trial court, with counsel being appointed only on appeal. *People v. Kiczenski*, No. 364957, Docket Nos. 9, 12 (Mich. Ct. App.).[5] The Michigan Court of Appeals did not have the benefit of expert witnesses,

---

[3] On the fourth factor—whether SORA is rationally connected to a non-punitive purpose—*Betts* and *Lymon* found a rational connection, as did *Kiczenski* and this Court.

[4] By limiting its holding to registrants convicted of CSC 1, *Kiczenski* itself recognizes that SORA may be punitive for people with less serious offenses. In fact, 84% of registrants in the community have convictions for offenses other than CSC 1. Statement of Material Facts (SOMF), ECF No. 123-1, PageID.3716.

[5] Available at: https://www.courts.michigan.gov/c/courts/coa/case/364957.

3

data analysis, declarations, or other evidence regarding SORA's impact. In contrast, this Court—and the Sixth Circuit on appeal—have the benefit of a comprehensive record. In *Does I*, the Sixth Circuit repeatedly emphasized the importance of the record as it weighed the *Mendoza-Martinez* factors. 834 F.3d at 704-705 (record casts "significant doubt" on SORA's effectiveness and makes SORA's devastating burdens "painfully evident"). The record will likely play a major role again in the appeal of *Does III*.

The robust record here makes clear that the fifth factor indisputably favors Plaintiffs. Op., ECF No. 158, PageID.8695, 8698 (noting significant expert evidence that SORA is ineffective, and holding that "requiring frequent in-person reporting, publishing personal information online, and often requiring registration for life" exacts a "heavy toll" that cannot be justified by SORA's asserted public safety purpose). Moreover, the record shows that many of the burdens imposed on registrants—like three-day, in-person reporting of information that is neither used by law enforcement nor included on the public registry—serve no purpose. SOMF, ECF No. 123-1, PageID.3743, 3746-3748, 3785-3792.

Most importantly, where both sides' experts agree that recidivism risk drops dramatically with time in the community, Defendants cannot establish any justification for imposing lengthy registration terms, much less for retroactively extending the terms of almost 17,000 people to life. *Id.*, PageID.3716. Indeed, *Kiczenski*

does not address the retroactive extensions at issue in Count II. (Nor, for that matter, does *Willman*, 972 F.3d 819.) Defendants have not even attempted to argue that this Court erred in holding that retroactively extending registration terms to life violates the Ex Post Facto Clause. Thus, *Kiczenski* does not bolster Defendants' likelihood of success on appeal.

### B. *In re Harder* Undercuts Defendants' Argument that this Court Erred on the Non-Michigan Offense Claim.

Defendants must establish that the Sixth Circuit is likely to reverse this Court's rulings that (1) Michigan's procedures for registering people with non-Michigan convictions violate due process, and (2) the imposition of longer or harsher requirements on people with non-Michigan convictions violates equal protection. Defendants' allegations of error on this claim are unclear. Defendants appear to be saying that because Michigan must give full faith and credit to non-Michigan *convictions*, it must follow non-Michigan *registration laws* when determining a person's registration obligations in this state. By citing *In re Harder*, No. 368645, 2025 WL 825907 (Mich. Ct. App., Mar. 14, 2025), Defendants undercut their own argument.

In *Harder*, a Michigan registrant who obtained a court order for removal from Iowa's registry argued that he should likewise be removed from Michigan's registry because Michigan had to give full faith and credit to Iowa's determination that he need not register. The court rejected that argument, reasoning that while Michigan

had to recognize the validity of the Iowa conviction, Iowa could no more determine whether the person should register in Michigan based on that conviction than Michigan could determine whether he should register in Iowa. *Id.* at *7. Although Mr. Harder no longer needed to register in Iowa, the court held that he nevertheless must register under Michigan law because his offense was "substantially similar"[6] to a registrable Michigan offense.[7] *Id.* at *12. Thus, *Harder* actually *undercuts* Defendants' assertion that Michigan must defer to other states' registration decisions.

## II. DEFENDANTS HAVE FAILED TO ESTABLISH IRREPARABLE HARM.

### A. Limiting the Online Registry to People with Michigan Convictions in the Last 14 Years Does Not Constitute Irreparable Harm.

#### 1. The Registrants Affected Are Low Risk.

Defendants argue that the registry allows the public to identify people who may pose a risk. As a threshold matter, it is important to recognize, as Defendants' own experts admit, that 90 to 95 percent of sex crimes are committed by people *without* prior sexual convictions—and who therefore are not listed on the registry. SOMF, ECF No. 123-1, PageID.3741. Additionally, as Defendants' experts also

---

[6] While *Harder* does not employ the "categorical test" for making substantial similarity determinations, Defendants here stipulated to use of the "categorical test," Am. Judg., ECF No. 177, PageID.9386, and have not appealed on that issue.

[7] SORA requires registration for non-Michigan offenses if: (1) a person must register in another state, M.C.L. § 28.723(1)(d); *or* (2) the non-Michigan offense is "substantially similar" to a registrable Michigan offense. M.C.L. §§ 28.722(r)(xi); (t)(xiii); (v)(ix); 28.723(1)(a).

concede, the vast majority of sex crimes generally, and against children in particular, are committed by family members or others well known to the victim. *Id.* In such situations, the online registry is not helpful in identifying potential perpetrators—as their identity is already known.

Moreover, very few people who would be removed from the registry under the judgment pose a significant risk. Recidivism rates for sex crimes are lower than almost all other categories of crime. SOMF, ECF No. 123-1, PageID.3761-3762. Of Michigan registrants living in the community—the population which SORA seeks to manage—93% have never been convicted of a subsequent registrable offense.[8] Data Rept., ECF No. 123-6, PageID.3952-3953. Yet, the 7% cumulative recidivism rate still overstates the risk for many registrants because, as Defendants' experts acknowledge, risk decreases over time when people remain in the community conviction-free. SOMF, ECF No. 123-1, PageID.3749.

Expert analysis of the class data shows that risk drops off dramatically the longer people spend in the community without recidivating, as shown in the table below:

---

[8] Defendants cite recidivism numbers that are not based on expert analysis, but rather on the report of an MSP staffer who has no training in statistics and whose affidavits were not based on personal knowledge. Pls' Resp. to Defs' SOMF, ECF No. 131-1, PageID.7982-7983. *See also* Data Rept., ECF No. 123-6, PageID.3977 (explaining why victim age distribution could not be accurately calculated).

Rates of New Recidivism of People by 5-year Cohorts,
Based on Release Date[2]

| Cohort | Pop. | 5-year | 10-year | 15-year | 20-year |
|---|---|---|---|---|---|
| 1995–1999 | 10,672 | 5.0% | 2.1% | 1.5% | 1.1% |
| 2000–2004 | 9,796 | 4.5% | 1.9% | 1.6% | N/A |
| 2005–2009 | 8,065 | 3.6% | 1.6% | N/A | N/A |
| 2010–2014 | 6,176 | 2.7% | N/A | N/A | N/A |

Data Rept., ECF No. 123-6, PageID.3967.

Under the Court's judgment, all registrants with Michigan convictions in the last 14 years must continue to register. Defendants, recognizing that time in the community matters, focus their argument on people who have spent decades in prison and have only recently been released. But very few registrants in the affected subclasses are in this group. As of 2023, 94 percent of the pre-2011 ex post facto subclass, and 87 percent of the non-Michigan offense subclass, have lived in the community without a sex-offense conviction for at least five years—and more than half have done so for at least 15 years. Alcala Decl., ECF No. 175-1, PageID.9371-9373, ¶¶ 7-8, 13.[10] Defendants offer no argument why the Court should stay the

---

[9] The table shows recidivism rates for registrants released in 5-year cohorts (e.g., released between 1995-1999). The rates describe the percentage of individuals in each cohort who have been convicted of a subsequent registrable offense for the first time at each follow-up interval. For example, the 20-year rate captures the proportion of cohort members who recidivated for the first time between the 15-year and the 20-year follow-up intervals.

[10] After Plaintiffs sought clarification about the data Defendants provided at oral argument, Defendants reported that they had double-counted registrants with more than one conviction. They now report that 1,980 members of the pre-2011 ex post

judgment for those who have been living successfully in the community for years. Meanwhile, people being released after decades in prison are likely to be quite old. *Id.*, PageID.9372, 9374, ¶¶ 10, 15 (describing age distribution of affected subclasses). Both sides' experts agree that recidivism risk is highly correlated with age. SOMF, ECF No. 123-1, PageID.3765. Few people over the age of 60 present any significant risk. *Id.*[11]

In short, Defendants simply cannot establish that the public will suffer irreparable harm because criminal history information—which is readily available through other sources, *see infra* § II.B—is not posted on the registry for members of the pre-2011 ex post facto subclass and non-Michigan offense subclass.

### 2. Defendants' Public-Access-To-Registry-Information Rationale Cannot Justify SORA's Expansive Requirements.

Because Defendants cannot prove that SORA reduces recidivism, they focus on the public's alleged need for registry information. But that argument relates only to the online registry. That reasoning cannot justify continued enforcement of SORA's requirements that registrants report massive amounts of information, often

---

facto subclass were released since January 1, 2020. This is roughly consistent with the expert analysis of class data which found that 1,748 subclass members had been living in the community less than five years as of January 24, 2023. Alcala Decl., ECF No. 175-1, PageID.9371, ¶ 7. In the non-Michigan offense subclass, 362 people had been in the community less than five years. *Id.*, PageID.9373 ¶ 13.

[11] Further, registrants who were only recently released are typically under parole supervision. Pls' Brf, ECF No. 175, PageID.9356-9357.

in person and within three days, much of which is never used for any purpose. SOMF, ECF No. 123-1, PageID.3746-3478; 3785-3791; M.C.L. § 28.728(1).

## B. The Public Does Not Need SORA to Obtain Criminal History Information.

Defendants argue that allowing the judgment to take effect would cause irreparable harm because the public needs the registry to learn about a person's criminal history. Defendants, represented by the same counsel, have taken exactly the opposite position before the Michigan Supreme Court, where they stated: "A Michigan resident does not need the registry to know that" a person is a "sex offender. A simple Google search will suffice." Br. of Amicus Curiae Michigan State Police at 65, *People v. Kardasz*, No. 165008 (Mich. filed Feb. 21, 2025), Ex. 2. In that filing, MSP repeatedly emphasized that "[a]ll of the information about" the appellant's "crimes are available for the world to see apart from the registry." *Id.* at 4.[12]

Indeed, criminal-history information is easily accessible not just through Google searches, but also through Michigan's Offender Tracking and Information System (OTIS), Michigan's Internet Criminal History Access Tool (ICHAT), and countless private vendors. OTIS is a free site that provides extensive information

---

[12] *See also id.* at 37-38 ("The unstated premise underlying his assertion is that in the absence of the Michigan registry there would be no information about his heinous crime. But this is demonstrably untrue. Rather, a simple Google search of 'Robert Kardasz Michigan' brings a significant number of entries that relate to" his offense.).

on people who are currently incarcerated in the Michigan Department of Corrections (MDOC), as well as people who are on parole or probation, and people who have been discharged by MDOC within the last three years (typically after first completing several years on probation or parole[13]). Guzman Decl., Ex. 1, ¶¶ 9-11. OTIS lists not only convictions for sex offenses, but also other types of convictions, and includes photos, physical descriptors, supervision conditions, and contact information for the supervising parole/probation office. *Id*., ¶¶ 12-14. Further, ICHAT provides information on the scope of a person's criminal history in Michigan, including arrests (that did and did not result in charges); charges (including those not resulting in a conviction); and the disposition of cases. *Id.*, ¶¶ 16-17. ICHAT currently costs $10 per search, but the State of Michigan makes ICHAT searches available for free to nonprofit and governmental organizations. Members of the public who cannot afford the fee and want to conduct a search for free can also contact the Record Resource Section/Freedom of Information Unit at the Michigan State Police (MSP).[14] *Id.* ¶ 15. In addition to these state background check

---

[13] *See* Michigan Department of Corrections, *Parole & Probation; MDOC Policy Directive: Parole Process,* PD 06.05.104, ¶ HH (August 14, 2023) (setting minimum parole terms of two to four years for many sex offenses), www.michigan.gov/corrections/-/media/Project/Websites/corrections/Files/Policy-Directives/PDs-06-Field-Operations/PD-06-05-Parole-Evaluation-Eligibility/06-05-104-Parole-Process-effective-10-04-21.pdf.

[14] Because ICHAT is a state-run website, if the state wants to expand free access to the site it can do so either permanently or just while this case is on appeal.

sources and free search engines like Google, there are many private companies that provide a wide variety of search tools at a minimal cost.[15] *Id.* ¶¶ 19-20. There are both free and paid search tools that allow the public to look up address and employment information. *Id.* ¶¶ 19-20, & Ex. E.

Thus, people who want more information about a potential babysitter, dating partner, or customer can utilize tools other than the registry to check if the person has a sex-offense conviction. Indeed, the public *must* use tools other than the registry to obtain comprehensive criminal history information that shows convictions other than sexual offenses (e.g. a past child abuse conviction).[16]

In sum, Defendants have not satisfied their high burden to show that the state will suffer irreparable harm if, during the pendency of the appeal, the public uses sources other than the SORA website to find criminal history information of impacted class members.[17] At best, Defendants can show that allowing the

---

[15] While OTIS and ICHAT only cover Michigan offenses, Google searches (which can include court filings, news articles, and other records), and private vendors provide information about out-of-state offenses. *See* Guzman Decl., Ex. 1, ¶¶ 19-20.

[16] Additionally, the public already must use tools other than the registry to find information about people with sex offense convictions who are not on the online registry (e.g., juveniles, many Tier I registrants, people who have completed their registration terms or successfully petitioned for removal).

[17] This Court's judgment enjoining SORA 2021 entirely for two subclasses parallels Judge Cleland's decision to enjoin SORA 2011 entirely for the *Does II* ex post facto subclasses. *See Does v. Snyder,* 449 F. Supp. 3d 719, 738 (E.D. Mich.

judgment to go into effect will make it slightly less convenient for the public to access criminal sexual history information about some people. Inconvenience or minor cost is not irreparable harm.

### C. The Possibility of Confusion Is Not Irreparable Harm.

Defendants also try to find irreparable harm in the possibility of confusion if the judgment goes into effect. Essentially, Defendants are asking this Court for a stay as a matter of course based on two routine litigation dynamics: the possibility of reversal and the existence of contrary state court decisions. *Cf. Nken v. Holder*, 556 U.S. 418, 427 (2009) (stay is "not a matter of right"). Neither can support a stay.

First, Defendants argue that registrants' obligations could change again if the Sixth Circuit reverses. Registrants' obligations have changed repeatedly over the last three decades due to legislative amendments and court decisions, and both

---

2020). Both courts entered final judgments with permanent injunctions. Defendants try to distinguish Judge Cleland's *interim pandemic-related* injunction (*Does II*, No. 16-cv-13137, ECF No. 91), which gave the legislature more time to amend SORA while recognizing that registrants could not comply with SORA during the pandemic. While the *final* judgment fully enjoined SORA, the pandemic-related injunction enjoined reporting but still allowed MSP to maintain the online registry. Because reporting was enjoined, the information on the registry became increasingly dated. Defendants' inability to show that an out-of-date registry caused any harm undermines their argument that they will suffer irreparable harm if some registrants are removed from the online registry and do not have to report during the pendency of the appeal. Notably, Judge Cleland's pandemic-related injunction applied to **all** registrants. Here, under the Court's judgment, both online registration and reporting continue for registrants with Michigan convictions in the last 14 years.

registrants and law enforcement have had to adjust. Laws change. All the time. The possibility that they will change again does not constitute irreparable harm.

Currently, the biggest source of registrants' confusion—and the question registrants have asked class counsel countless times since *Does I*—is why SORA continues to be enforced against them when courts have again and again found it to be unconstitutional. Far from causing "confusion," effectuating the judgment will provide clarity by enjoining enforcement of SORA against the pre-2011 ex post facto and non-Michigan offense subclasses consistent with this Court's opinions.

By contrast, granting a stay would leave significant questions about whether the government can continue to send people to prison for violating a law that this Court has held to be unconstitutional. A stay does not alter this Court's decision, and any competent defense attorney will respond to the prosecution of a registrant with a pre-2011 or non-Michigan offense by raising *Does III*. That is true regardless of how this Court decides the stay motion. But if the judgment and injunctions are in effect, it will be much clearer how the case should be handled.

Second, Defendants' belated suggestion that the judgment would be unenforceable because *Kiceznski* differs from this Court's decision on the ex post facto claims misunderstands the basic structure of our twin federal/state judicial system. Under *Ex Parte Young*, 209 U.S. 123 (1908), federal courts can, and routinely do, enjoin enforcement of unconstitutional state laws. Indeed, "[t]he very purpose of

14

[section] 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights" given Congress's "concern[] that state instrumentalities [including state courts] could not protect those rights." *Mitchum v. Foster*, 407 U.S. 225, 242 (1972). The Supreme Court thus "long ago recognized that federal injunctive relief against" state court officials "can in some circumstances be essential to prevent great, immediate, and irreparable loss of a person's constitutional rights." *Id. (*citing *Ex parte Young*, 209 U.S. 123).

*Abela v. Gen. Motors Corp*., 469 Mich. 603, 606 (2004), on which Defendants rely, is about something else entirely: whether state courts are bound to interpret federal law in lockstep with federal courts. *Abela* held that Michigan courts are not bound by decisions of federal district courts, or even the Sixth Circuit. (Notably, by Defendants' logic, a stay would not even resolve the purported confusion, as the Sixth Circuit's decision would also be unenforceable in light of *Kiceznski*.) Absent a decision by the U.S. Supreme Court on the very point at issue, federal and Michigan state courts are free to disagree. *Abela* has no bearing on the enforceability of federal court injunctions against unconstitutional state actions.

While state *courts* need not adopt federal court reasoning, *state officials* must comply with federal court injunctions. The existence of a contradictory state court decision does not mean this Court's judgment is unenforceable, any more than it means that the state can ignore the Sixth Circuit's eventual decision. Indeed, at the

time the Sixth Circuit decided *Does I* in 2016, there were numerous Michigan Court of Appeals cases holding that SORA did *not* violate the Ex Post Facto Clause. *See, e.g.*, *People v. Tucker*, 312 Mich. App. 645 (2015); *People v. Temelkoski*, 307 Mich. App. 241 (2014); *People v. Pennington*, 240 Mich. App. 188 (2000); *see also McClellan v. Cnty of Chippewa*, 634 F. Supp. 3d 404 (W.D. Mich. 2022) (explaining that Michigan appellate courts rejected numerous ex-post-facto challenges to SORA and then the Sixth Circuit invalidated SORA under the ex post facto clause). Similarly, in *Does II*, Judge Cleland ordered class-wide injunctive relief barring enforcement of SORA against the ex post facto subclasses despite those state Court of Appeals' decisions.[18] In other words, the state court decisions— rightly—did not stop the federal courts from ordering relief to vindicate constitutional rights in *Does I* or *Does II*. Nor should state court decisions stop this Court from allowing the *Does III* decision to go into effect.

Defendants also suggest that the judgment binds only the governor and Michigan State Police. Once again, Defendants have elsewhere said the opposite. In *Does II*, Defendants' counsel notified prosecutors about the injunction, explaining: "consistent with Rule 65 of the federal rules of civil procedure and *Platinum Sports Ltd v. Snyder*, [715 F.3d 615, 619 (6th Cir. 2013)], the amended

---

[18] The Michigan Supreme Court did not decide *Betts* until July 2021, more than a year after Judge Cleland's February 2020 decision.

final judgment contemplated that its injunction applies to the Attorney General and all county prosecutors." *Does II*, No. 16-cv-13137, ECF 127-6, PageID.2627. The judgment here likewise "binds Defendants' officers, agents, servants, employee, and attorneys, and those in active concert or participation with them, as provided for in Federal Rule of Civil Procedure 65(d)(2)." Am. Judgment, ECF No. 177, PageID.9377. *See also Cady v. Arenac Co.*, 574 F.3d 334, 343 (6th Cir. 2009) (prosecutors act as agents of the state)*; Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993) ("a city official pursues her duties as a state agent when enforcing state law or policy")*.*

Even more oddly, Defendants assert that local law enforcement is bound to follow state court opinions. A state court *decision* in an individual criminal case is not an *injunction*, and does not require local law enforcement to do (or not do) anything. In any event, the Michigan State Police maintains the registry and thus will be responsible for implementing the judgment.

## CONCLUSION

Defendants have not met their burden on any stay factor, and have not established that the Court should grant the extraordinary relief of staying its final judgment and allowing continued enforcement of an unconstitutional criminal law. If the Court is nevertheless considering a stay, it should limit any stay to those members of the affected subclasses about whom Defendants profess concern,

namely those released in the last few years. *See* Opp. Stay Br., ECF No. 175, PageID.9365-9366; *supra* Section II(A) (table showing very low recidivism rates after first five years in the community).

Respectfully submitted,

s/ Miriam Aukerman (P63165)
American Civil Liberties Union
   Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org

s/ Syeda Davidson (P72801)
American Civil Liberties Union
   Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6824
sdavidson@aclumich.org

s/ Paul D. Reingold (P27594)
Cooperating Counsel, American Civil
   Liberties Union Fund of Michigan
Univ. of Michigan Law School
802 Legal Research Building
801 Monroe Street
Ann Arbor, MI 48109-1215
(734) 355-0319 - pdr@umich.edu

s/ Roshna Bala Keen (Ill. 6284469)
Loevy & Loevy
Cooperating Counsel, American Civil
   Liberties Union Fund of Michigan
311 North Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900 - roshna@loevy.com

Dated: May 5, 2025

18

## LOCAL RULE CERTIFICATION

I, Miriam Aukerman, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted material and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 points (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

s/ Miriam Aukerman (P63165)
American Civil Liberties Union
  Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org
