UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOES, et al.,

        Plaintiffs,

v.

                                    Case No. 22-cv-10209
                                    HON. MARK A. GOLDSMITH

GRETCHEN WHITMER, et al.,

        Defendants.
_____/

## OPINION & ORDER
## DENYING DEFENDANTS' MOTION TO STAY JUDGMENT (Dkt. 173)

Before the Court is Defendants' motion to stay judgment (Dkt. 173).[1]  For the reasons set forth below, the Court denies the motion.

## I.      INTRODUCTION

Plaintiffs filed this class action challenging the constitutionality of Michigan's Sex Offender Registration Act, Mich. Comp. Laws. § 28.721, et seq, as it was amended in 2021 (SORA 2021).  Plaintiffs brought eleven claims, alleging that SORA 2021 violates numerous constitutional protections.  In September 2024, the Court issued a ruling granting summary judgment to both parties as to certain claims.[2]  Does v. Whitmer (Does III), 751 F. Supp. 3d 761 (E.D. Mich. 2024).

---

[1] In addition to the motion, the briefing includes the Plaintiffs' response (Dkt. 175) and Defendants' reply (Dkt. 179).  The Court held a hearing on the motion on April 30, 2025.  The parties submitted supplemental briefs after the hearing.  Defs. Suppl. Br. (Dkt. 188); Pls. Suppl. Br. (Dkt. 189).

[2] The Court granted summary judgment to Plaintiffs on their (i) ex post facto claims, (ii) non-sex offense claim, (iii) non-Michigan offense claim, and (iv) First Amendment claims alleging forced admission of understanding and chilled speech rights stemming from SORA 2021's internet-identifier reporting requirements.  The Court granted summary judgment to Defendants as to Plaintiffs' claims regarding (i) lack of individualized review, (ii) unequal opportunity to petition, and (iii) compelled speech.  The Court held that Plaintiffs' claim regarding plea agreements was

As is relevant here, the Court held that retroactively increasing reporting requirements and extending registration terms violates the Ex Post Facto Clause of the Constitution. Id. at 784. The Court also held that SORA 2021 violates procedural due process and equal protection in its treatment of persons convicted of sex offenses outside of Michigan. Id. at 818.

Following the Court's ruling, the parties reported on their efforts to reach consensus on the appropriate remedy and explained their positions where they disagreed.[3] Ultimately, Plaintiffs filed a motion for entry of judgment, which the Court granted in part and denied in part. Does III, No. 22-cv-10209, 2025 WL 914129 (E.D. Mich. Mar. 26, 2025). The Court entered a judgment on March 26, 2025, see J. (Dkt. 172), which was later amended to correct technical errors on April 22, 2025, see Am. J. (Dkt. 177).[4] Defendants filed a motion to stay the Judgment with respect to Plaintiffs' ex post facto and non-Michigan offense challenges during the pendency of the appeal. Mot. at 1. For the following reasons, the Court denies the motion.

## II.    ANALYSIS

Courts consider four factors to determine if a stay pending appeal is warranted: "(1) whether the stay applicant has made a strong showing that [they are] likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the

---

moot.    The Court ordered further briefing on Plaintiffs' claim that various terms are unconstitutionally vague.  After the issue was fully briefed, the Court agreed with Plaintiffs as to some, but not all, contested terms.  Does III, No. 22-cv-10209, 2025 WL 914129, at *7–12 (E.D. Mich. Mar. 26, 2025).

[3] See 11/1/24 Joint Statement (Dkt. 159); 12/11/24 Joint Statement (Dkt. 164); Defs. Vagueness Br. (Dkt. 162); Pls. Vagueness Br. (Dkt. 163).

[4] Throughout this opinion, "the Judgment" refers to the Amended Judgment entered on April 22, 2025.

public interest lies." <u>Memphis A. Philip Randolph Inst. v. Hargett</u>, 977 F.3d 566, 568 (6th Cir. 2020) (citing <u>Nken v. Holder</u>, 556 U.S. 418 (2009)). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." <u>Id.</u> (punctuation modified). The Court considers each factor in turn, finding that all factors disfavor a stay.

### A. Likelihood of Success

The factors listed above are the same as those considered when evaluating a motion for a preliminary injunction, but the burden is higher to establish a likelihood of success on the merits for a party seeking a stay pending appeal. <u>See</u> <u>Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog</u>, 945 F.2d 150, 153 (6th Cir. 1991). Unlike a motion for a preliminary injunction, a motion for stay pending appeal is "generally made after the district court has considered fully the merits of the underlying action and issued judgment, usually following completion of discovery." <u>Id.</u> As a result, the movant will have "greater difficulty in demonstrating a likelihood of success on the merits" because "there is a reduced probability of error, at least with respect to a court's findings of fact, because the district court had the benefit of a complete record." <u>Id.</u> That is certainly the case here, where the record before the Court at the summary judgment stage consisted of more than 150 exhibits totaling thousands of pages, including many declarations and affidavits from both fact and expert witnesses.

Nonetheless, Defendants argue that they are likely to succeed on appeal for multiple reasons. With respect to Plaintiffs' ex post facto claim, Defendants reiterate their argument that <u>Willman v. Att'y Gen. of United States</u>, 972 F.3d 819 (6th Cir. 2020) is controlling law. Mot. at 2–5. According to Defendants, the terse pronouncement in <u>Willman</u> that the federal Sex Offender Registration and Notification Act (SORNA) does not violate the Ex Post Facto Clause applies equally to SORA 2021. <u>Id.</u>

But the Court considered and rejected this argument in its summary judgment ruling.  <u>Does III</u>, 751 F. Supp. 3d at 785–786.  As the Court explained, <u>Willman</u> is not controlling because the factual and legal issues presented there differ from the present case.  <u>Id.</u>  In short, "the principal issue" in <u>Willman</u> was whether an individual convicted under state law, but not subject to state sex offender registration requirements was nonetheless subject to federal law registration requirements under SORNA.  <u>Willman</u>, 972 F.3d at 821.  The court also tersely rejected an ex post facto challenge to SORNA, without consideration or analysis of any of the issues painstakingly presented, considered, and decided in the instant case regarding specific infirmities of SORA 2021.  <u>Id.</u> at 824.  Defendants raise no new points or arguments regarding <u>Willman</u> in their motion for stay.  And their contention that <u>Willman</u> "<u>did consider</u> the question of whether SORNA as a whole presented an Ex Post Facto violation," Mot. at 4–5 (emphasis in original), is simply not accurate.

In their reply brief, Defendants point to recent Michigan court decisions holding that SORA 2021 does not violate the Ex Post Facto Clause.  Reply at 2–3.  While these opinions were issued after the Court's summary judgment ruling, they do not convince the Court that Defendants are likely to succeed on appeal.

Defendants point to a recent Michigan Court of Appeals decision holding that SORA 2021 does not constitute punishment as applied to first-degree criminal sexual conduct offenders and is not an ex post facto violation.  <u>People v. Kiczenski</u>, No. 364957, 2024 WL 4595174, at *10 (Mich. Ct. App. Oct. 28, 2024).  That court considered the same five <u>Mendoza-Martinez</u> factors as this Court did in its ex post facto analysis: (i) whether the statute has historically been regarded as punishment; (ii) whether the statute imposes an affirmative disability or restraint; (iii) whether the statute promotes the traditional aims of punishment; (iv) whether the statute has a rational connection to a nonpunitive purpose; and (v) whether the statute is excessive with respect to its

nonpunitive purpose. Id. at *5–10; Does III, 751 F. Supp. at 789–798. That court reached the same conclusion as this Court with respect to factors one through four; the only factor where Kiczenski differed from this Court was factor five—whether the statute is excessive with respect to its nonpunitive purpose. Compare Kiczenski at *6–10 with Does III, 751 F. Supp. at 789–796.

The Kiczenski court found that the restrictions in SORA 2021 "are not excessive when applied to the public safety concerns the statute addresses with respect to sex offenders." Kiczenski at *9. This Court, on the other hand, found that "SORA 2021 exacts a heavy toll on registrants." Does III, 751 F. Supp. at 795. This Court emphasized specific defects: the frequent in-person reporting, publishing of personal information online, and potential lifetime registration requirements of SORA 2021. Id. It also emphasized the fact that "this weighing of factors takes place in the 'ex post facto' context, where the state has changed the rules of the game after registrants have committed their offenses—a context in which the Constitution has provided express protection." Id.

Acknowledging that its finding differed from that of this Court, Kiczenski explained that "in [its] view . . . a finding of a rational connection to a non-punitive purpose goes a long way under towards finding a regulation not being punishment, nor excessive." Id. at *10. But this explanation renders the fifth factor mere surplusage. Rationality and excessiveness are meant to be distinct inquiries, as shown by the fact that courts applying the Mendoza-Martinez factors have previously found sex offender statutes to be rational, but nevertheless excessive. See, e.g., People v. Lymon, No. 164685, 2024 WL 3573528, at *11–13 (Mich. July 29, 2024); People v. Betts, 968 N.W.2d 513–515 (2021).

Also in its excessiveness analysis, the Kiczenski court noted that SORA 2021 removed "the most restrictive measures from the 2011 SORA." Id. at *10. But it is not clear from the

5

opinion what provisions of SORA 2021 the defendant in <u>Kiczenski</u> was challenging.  The court did not discuss the retroactive extension of registration lengths whatsoever, which is undoubtedly one of the most restrictive aspects of SORA 2021, especially in the ex post facto context.  It is also worth noting that <u>Kiczenski</u> was a single-defendant criminal case, in which no factual record was referenced by the court regarding the profound impact of SORA 2021.  By contrast, the present case is a civil class action with an extensive summary judgment record before the Court and a laser focus on the precise issues demonstrating excessiveness.  For these reasons, <u>Kiczenski</u> does not convince this Court that Defendants are likely to succeed on appeal as to the ex post facto claim.[5]

With respect to Plaintiffs' non-Michigan offense claim, Defendants contend that the Court reached the wrong conclusion, Mot. at 5, but they offer no cogent reason.  Regarding out-of-state convictions, the Court found two types of constitutional violations.  One concerns the provisions requiring registration in Michigan for an out-of-state conviction for an offense that is "substantially similar" to a Michigan registrable offense, Mich. Comp. Laws §§ 28.722(r)(xi), (t)(xiii), (v)(ix).  The constitutional infirmity is that the Michigan State Police make the decision of "substantial similarity"—not a neutral decisionmaker, such as a judge—thereby violating procedural due process.  <u>Does III</u>, 751 F. Supp. 3d at 818–820.  The second type of constitutional infirmity is an equal protection violation, based on treating people with out-of-state convictions more harshly than people with Michigan convictions.  <u>Id.</u> at 820–821.  This harsher treatment occurs in two ways.  First, SORA 2021 requires a person with a non-Michigan conviction to register for the duration period established under the law of the convicting state or the duration period under

---

[5] Defendants also cite <u>People v. Cole</u>, No. 367504, 2025 WL 814685 (Mich. Ct. App. Mar. 13, 2025) and <u>In re Harder</u>, No. 368645, 2025 WL 825907 (Mich. Ct. App. Mar. 14, 2025), both of which held that SORA 2021 is not an ex post facto violation.  Reply at 2–3.  But neither opinion conducted an ex post facto analysis of its own; both simply followed <u>Kiczenski</u>.  <u>Cole</u>, 2025 WL 814685, at *4–5; <u>Harder</u>, 2025 WL 825907, at *8–9.

Michigan law for a "substantially similar" offense—whichever period is longer.  Id. at 820.
Second, if an offense would not require registration in Michigan, but the offense requires
registration in the convicting state, the person must register in Michigan.  Id.  This harsher
treatment for individuals with non-Michigan convictions serves no rational purpose, and
Defendants did not propose one and do not propose one now.

Defendants do invoke the Full Faith and Credit Clause the Full Faith and Credit Clause,
U.S. Const., art. 4, § 1.  Mot. at 5.  But this Court has already held that Defendants waived this
argument by failing to develop it in their motion for summary judgment briefing.  Does III, 751 F.
Supp. 3d. at 820, n.60.

In any case, the recent decision by the Michigan Court of Appeals in In re Harder disposes
of Defendants' argument.  In that case, the petitioner was released by an Iowa court from sex
offender registry requirements in Iowa, where he was convicted.  In re Harder, 2025 WL 825907.
The petitioner argued that he should be removed from registry requirements in Michigan, where
he resided, because Michigan had to give full faith and credit to Iowa's determination that he no
longer had to register as a sex offender.  Id. at *6–8.  The Court of Appeals of Michigan rejected
this argument and held that the petitioner's release from registration requirements in Iowa did not
require that he be relieved from his registration requirements in Michigan.  Id.  The court explained
that "[t]he Iowa judgment against petitioner and his registry obligation in that state followed him
into Michigan."  Id. at *7.  "However . . . Iowa may not force Michigan to conform to that state's
laws regarding the enforcement of that judgment."  Id.

That instruction is applicable here.  The Full Faith and Credit Clause does not require
Michigan to register (or not register) an individual based on the registration decision of another
state.

For these reasons, Defendants have not shown that they are likely to succeed on the merits.

**B. Irreparable Injury to Applicant**

The second factor—whether the applicant will be irreparably injured absent a stay—also disfavors a stay. Rather than detail any specific irreparable injury they might endure, Defendants simply argue that "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." Mot. at 6.

To support this proposition, Defendants cite Maryland v. King, 567 U.S. 1301 (2012) (Roberts, C.J., in chambers). The Chief Justice relied solely on an earlier in chambers decision, New Motor Vehicle Bd. v. Orrin W. Fox Co., 434 U.S. 1345 (1977), in which Justice Rehnquist stated that it "seems . . . that any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." Id. at 1351. Justice Rehnquist cited no authority and gave no explanation for that proposition. And Defendants have presented no full Supreme Court decision that has adopted that principle in the context of a final judgment.[6]

The Supreme Court has recognized that enjoining a state statute, by way of a preliminary injunction, can constitute irreparable harm unless the statute is unconstitutional. See Abbott v. Perez, 585 U.S. 579, 602 (2018) (issuing stay of preliminary injunction and explaining that "unless [a] statute is unconstitutional," an injunction barring the State from acting pursuant to that statute "would seriously and irreparably harm the state") (emphasis added). And here, the Court has

---

[6] The Sixth Circuit has recently recognized that principle in the context of a preliminary injunction. Doe v. Lee, No. 24-6020, 2025 WL 1367828, at *4 (6th Cir. May 12, 2025) ("A district court's preliminary injunction has irreparable consequences anytime a court enjoins duly enacted statutes.").

found—in the context of a final judgment, rather than a preliminary injunction—that the statute is unconstitutional in several serious ways.

Aside from contending that any injunction of a state statute would be irreparable harm, Defendants do not discuss any immediate or specific harm they would face absent a stay, nor do they explain why any such harm would be irreparable.  Nor do Defendants address the 90-day stay that the Court built into its Judgment, under which the Michigan Legislature has three months to correct the unconstitutional provisions in SORA 2021.  The Court's opinion did not abruptly disrupt the policy choices of the legislature, as Defendants seem to argue.  The legislature may still choose to enact its preferred sex offender registration regime, provided such regime is constitutional.

For these reasons, Defendants have not shown that they would be irreparably injured absent a stay.

### C.  Injury to Other Parties

Much of the parties' briefing regarding this factor involves potential confusion that may arise without a stay.  These considerations are entirely speculative, and the Court finds that on balance, the risk of confusion is not clear cut enough to factor heavily into its analysis.

Defendants contend that "not issuing the stay may cause a substantial injury by creating confusion among the registrants about what their obligations are."  Mot. at 17.  Defendants worry that if no stay is issued, "tens of thousands of registrants will be informed over the coming months that they no longer need to register."  Id.  "Then, if the Sixth Circuit reverses the district court opinion in the next year, they will be notified again that they need to register."  Id.  The Court recognizes that it is possible that the ultimate legal outcome of this case may change.  But even if

that did occur, the Court disagrees with Defendants that such a situation would "create chaos" for registrants, law enforcement, and prosecutors.

Registrants may have already heard about the Court's opinion finding various provisions of SORA 2021 to be unconstitutional. They may also be aware of the Court's judgment. Letting more time pass without providing registrants with formal notice could <u>increase</u> confusion, not minimize it. And even if this Court's holding is eventually modified or reversed, Defendants offer no reason to think providing registrants with notice twice could cause "chaos." As Plaintiffs note, "there is <u>always</u> a chance that an appellate court will modify or reverse a district court's ruling," and "district courts regularly implement orders to protect constitutional rights despite the possibility of reversal." Resp. at 17 (emphasis in original). Defendants point to nothing unique about this particular legal dispute. To the contrary, SORA has been amended numerous times since its enactment in 1994, such that registrants already know that their registration obligations are not static. Providing notice twice—which may or may not be necessary—would hardly constitute "chaos."

There is also little risk of confusion for law enforcement officers and prosecutors, who are trained professionals. Defendants contend that the conflict between the Michigan Court of Appeals cases described above and this Court's decision creates a posture that "invites chaos." Defs. Suppl. Br. at 2–3. According to Defendants, the Court's injunction is only against Governor Whitmer and Colonel Grady, so local law enforcement is not subject to the injunction. <u>Id.</u> But this reflects a misunderstanding of Federal Rule of Civil Procedure 65(d)(2), which states that every order granting an injunction binds the parties; the parties' officers, agents, servants, employees, and attorneys; and other persons who are in active concert or participation with these

individuals.[7]   This would include law enforcement officers and prosecutors.  In any case, any claimed uncertainty regarding the meaning and application of the Court's judgment can be judicially clarified.

Defendants also contend that local law enforcement is bound to follow state court opinions. Defs. Suppl. Br. at 2–3.  But as Plaintiffs correctly note, a state court decision in an individual criminal case such as Kiceznski is not an injunction and does not require local law enforcement to do or not do anything.  Pls. Suppl. Br. at 17.  Regardless, an orderly process exists to determine who is bound by the Court's injunction.  To the extent one party believes someone might have violated the injunction, that would be the subject of a separate enforcement proceeding.  And any claimed uncertainty regarding the meaning and application of the Court's judgment can be judicially clarified.  Defendants' fears of "confusion" are not well founded.

Lastly, in their motion, Defendants argue that providing registrants with notice will require a "herculean effort."  Mot. at 17.  But at the April 30 motion hearing, both parties indicated that they are close to finalizing the proposed notice plan and proposed class notice.  Moreover, as Plaintiffs note, Resp. at 16, the expenditure of resources does not constitute an irreparable injury. "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough."  Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150, 154 (6th Cir. 1991) (quoting Sampson v. Murray, 415 U.S. 61, 90 (1974)).

Defendants have not shown that any other party will be injured absent a stay.

---

[7] The Judgment specifically referenced Rule 65(d)(2).  See Judgment at 1.

### D.  Public Interest

The last factor—where the public interest lies—is multifaceted.  On one hand, Defendants argue that "[i]f the judgment takes effect . . . more than 30,000 offenders will no longer have to register, and the public will not be apprised of recently released sex offenders[]. . . ."  Mot. at 7.  According to Defendants, "[t]he public has an interest in knowing whether a recently released sex offender lives next door, volunteers to work with youth, or asks someone out on a date."  Id. at 18.  Plaintiffs, on the other hand, emphasize that the public has an interest in being free from constitutional violations.  Resp. at 22–23.  The Court acknowledges that both interests are valid, but finds that Plaintiffs have the stronger argument.

As an initial matter, at least 27,000 of the 30,000 registrants who would no longer be required to register committed their registrable offenses more than 14 years ago,[8] and studies show that the risk of recidivism declines dramatically the longer a person lives in the community without recidivating.  One expert estimates that the decrease in recidivism risk can be as high as 50% every five years a registrant remains conviction free.  Hanson Report ¶ 59 (Dkt. 123-7).  This means that the individuals who might fall off the registry are among the least likely to commit another sex offense.  In fact, studies show that for most registrants, the risk of being convicted of a new sex offense is no higher than the risk for non-registrants after a registrant has lived in the community without a conviction for 10 years.  Pls. SOMF ¶¶ 190–194 (Dkt. 123-1).  And even for the highest-risk offenders, the recidivism risk matches that of non-registrants after 20 years.  Id.

While Defendants point to the details of truly horrific crimes, whether sex offender registration systems, like SORA 2021, actually protect the public from sex offense recidivism

---

[8] Fewer than 3,100 registrants with convictions from outside of Michigan for offenses that occurred within the last 14 years would no longer required to register.  Class Data Report (Dkt. 123-6).

is very unclear.  Although concluding that SORA 2021 is rational, this Court found "that there are strong, science-based opinions challenging the impact of registration systems like SORA 2021 on recidivism . . . ."  Does III, 751 F. Supp. 3d at 792.  The Sixth Circuit has gone even further— finding "scant evidence" that SORA 2021's predecessor deterred sex offense recidivism.  Does #1-5 v. Snyder (Does I), 834 F.3d 696, 704 (6th Cir. 2016) ("[T]he record before us provides scant support for the proposition that SORA in fact accomplishes its professed goals.").  Defendants point to no scientific evidence that removing registrants who committed crimes long ago will create any significant risk that they will re-offend.

In addition, while it may be harder for the public to become aware of certain sex offenders if the Judgment takes effect, it would not be impossible.  As Plaintiffs and Defendants have both noted, criminal-history information is available through numerous online sources.  Pls. Suppl. Br. 10–13 (citing Br. of Amicus Curiae Michigan State Police at 65, People v. Kardasz, No. 165008 (Mich. filed Feb. 21, 2025), Ex. 2).  Some of these sources are free, such as Google and Michigan's Offender Tracking and Information System (OTIS), while others cost a small fee, such as Michigan's Internet Criminal History Access Tool (ICHAT) and various private vendors.[9]  Id. at 10–11.

It is true that none of these sources fully replaces the functionality of a sex offender registry.  But the harm to the public of certain individuals falling off the registry is not as severe as Defendants portray: an individual would still be able to confirm the registry status of a potential babysitter, next-door-neighbor, or dating partner.  In certain cases, doing so might require a small

---

[9] According to Plaintiffs, ICHAT currently costs $10 per search, but is available for free to nonprofit and governmental organizations.  Pls. Suppl. Br. at 10–11.  Plaintiffs also note that members of the public who cannot afford the fee can contact the Record Resource Section/Freedom of Information Unit at the MSP.  Id.

fee.  But this is not as drastic an impact on the public interest as continuing to enforce an unconstitutional statute.

Plaintiffs correctly argue that continuing to enforce an unconstitutional law creates substantial harm.  Resp. at 19.  As the Sixth Circuit has explained, "it is always in the public interest to prevent the violation of a party's constitutional rights."  Dahl v. Bd. of Trs. of W. Michigan Univ., 15 F.4th 728, 736 (6th Cir. 2021) (punctuation modified).

### III.    CONCLUSION

All four factors weigh decidedly against a stay.  The Court denies Defendants' motion to stay (Dkt. 173).

**SO ORDERED.**

Dated:  May 19, 2025                         s/Mark A. Goldsmith
          Detroit, Michigan               MARK A. GOLDSMITH
                                          United States District Judge

14