No. 25-1413/1414

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| JOHN DOE A, et al., | ) |
|    Plaintiffs-Appellants Cross-Appellees, | ) |
| v. | )    O R D E R |
| GRETCHEN WHITMER, Governor of the State of Michigan, et al., | ) |
|    Defendants-Appellees Cross-Appellants. | ) |

Before: NORRIS, MOORE, and BLOOMEKATZ, Circuit Judges.

Plaintiffs appeal, and Defendants cross-appeal, the district court's judgment in this action challenging the constitutionality of Michigan's Sex Offender Registration Act ("SORA"), Mich. Comp. Laws § 28.721, *et seq.*, as amended in 2021. Defendants—Michigan Governor Gretchen Whitmer and Colonel James Grady, II, Director of the Michigan State Police—move to stay the district court's judgment pending appeal. Plaintiffs oppose a stay.

We consider four factors when determining whether to grant a stay pending appeal: (1) whether the movant has demonstrated a strong likelihood of success on the merits; (2) whether the movant will be irreparably injured absent a stay; (3) whether a stay will substantially injure other interested parties; and (4) the public interest. *Kentucky v. Biden*, 23 F.4th 585, 593 (6th Cir. 2022). "'These factors are not prerequisites that must be met'; they are instead 'interrelated considerations that must be balanced together.'" *Id.* (quoting *SawariMedia, LLC v. Whitmer*, 963

F.3d 595, 596 (6th Cir. 2020)). We consider the motion to stay de novo, because we are not reviewing any lower court's order. *Id.*

Defendants raise two arguments on appeal. First, they argue that 2021 SORA does not violate the Ex Post Facto Clause with respect to registrants convicted of qualifying crimes before 2011, and second, that 2021 SORA does not violate the Due Process and Equal Protection Clauses with respect to its requirements for registrants with out-of-state convictions.

States are prohibited from imposing ex post facto laws—which "change[] the legal consequences of acts committed before [the laws'] effective date[s]." *Doe v. Lee*, 102 F.4th 330, 336 (6th Cir. 2024) (quoting *Doe v. Bredesen*, 507 F.3d 998, 1003 (6th Cir. 2007)). Courts evaluate a law by conducting "a statutory analysis of whether the law's requirements are civil or punitive—in other words whether 'the intent of the legislature was to impose punishment' or 'to enact a regulatory scheme that is civil and nonpunitive.'" *Id.* (quoting *Bredesen*, 507 F.3d at 1003). "Because [courts] ordinarily defer to the legislature's stated intent, only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Smith v. Doe*, 538 U.S. 84, 92 (2003) (cleaned up).

Courts apply a two-part test to determine whether the law is civil or punitive, asking (1) whether "the legislature intend[ed] to impose punishment" and, if not, (2) whether "the statutory scheme [is] so punitive either in purpose or effect as to negate the State's intention to deem it civil." *Does #1–5 v. Snyder*, 834 F.3d 696, 700 (6th Cir. 2016) (cleaned up). Here, the district court cited the Michigan legislature's statement of purpose in concluding that it did not intend SORA 2021 to constitute a criminal punishment. *See* Mich. Comp. Laws § 28.721a. It noted that the statement of purpose for 2021 SORA was identical to the statement of purpose for 2011 SORA, which this court held in *Snyder* "evince[d] no punitive intent." 834 F.3d at 700. Finding no flaw

in that conclusion, we would generally look to five non-dispositive factors to determine whether the statute's actual effects are punitive: (1) whether "the law inflict[s] what has been regarded in our history and traditions as punishment"; (2) whether "it impose[s] an affirmative disability or restraint"; (3) whether "it promote[s] the traditional aims of punishment"; (4) whether "it h[as] a rational connection to a non-punitive purpose"; and (5) whether "it [is] excessive with respect to this purpose." *Id.* at 701 (citing *Smith*, 538 U.S. at 97).

Under this rubric, the Supreme Court has previously upheld a state sex-offender registry law that required individuals to register with law enforcement and created an online database of their nonconfidential information. *Smith*, 538 U.S. at 97–105. We, too, have determined that certain sex-offender laws, which require "registration, reporting, and surveillance," are not Ex Post Facto punishments. *Bredesen*, 507 F.3d at 1004–07; *see also Cutshall v. Sundquist*, 193 F.3d 466, 474–77 (6th Cir. 1999) (upholding a law that required registration and allowed law enforcement to release registry information when necessary for public safety). But we have also held that a prior version of Michigan's SORA was a retroactive punishment, because it restricted where registrants could live, work, and "loiter," divided registrants into tiers ostensibly correlated with dangerousness without proper individualized assessment, and required registrants to appear in person to update personal information with law enforcement. *Snyder*, 834 F.3d at 705; *see Lee*, 102 F.4th at 338–39.

Application of the intent-effects test to this case presents serious questions on the merits. Since *Snyder*, Michigan has removed the geographic restrictions on where registrants can live, work, and loiter. Mich. Comp. Laws § 28.733–36 (repealed Mar. 24, 2021). The system of classifying registrants into tiers has been retained, although that information is no longer publicly disclosed on the state website. *Id.* § 28.728(3)(e). Michigan has also largely kept the statute's in-

person reporting requirements. Registrants must report to law enforcement at regular intervals, at a frequency depending on their tier. *Id.* § 28.725a. Registrants must also report certain updates to their personal information in-person at any time, although they now have three business days to do so. *Id.* § 28.725. In short, the law has unquestionably changed. Most notably, Michigan registrants are no longer confined to restricted regions, which we previously found troubling. *See Snyder*, 834 F.3d at 701–02. But whether the law, and particularly the retention of in-person reporting, has become sufficiently less punitive to remedy the constitutional concerns we expressed in *Snyder*, *see id.* at 703, is a nuanced question on which we hesitate to opine on an emergency basis. Resolution will require a careful comparison with our precedent, as well as the factual record concerning the efficacy of Michigan's sex-offender registry. *See Lee*, 102 F.4th at 338–39; *Snyder*, 834 F.3d at 704–05. Additionally, serious questions remain as to challenges affecting the class of individuals with out-of-state convictions. Whether and to what extent Plaintiffs have a liberty interest that implicates procedural due process may turn on whether the law is punitive. *Cf. Cutshall*, 193 F.3d at 478 (concluding that registrant lacked a protected liberty interest where the registry law "involves no physical restraint, and we have concluded that it imposes no punishment").

Additionally, Defendants have shown a substantial likelihood of irreparable harm. "The 'inability to enforce its duly enacted [law] clearly inflicts irreparable harm on the State.'" *OPAWL – Bldg. AAPI Feminist Leadership v. Yost*, 118 F.4th 770, 785 (6th Cir. 2024) (alteration in original) (quoting *Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018)). "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (alteration in original) (citation omitted). The Michigan legislature's efforts to amend the sex-

Case 2:22-cv-10209-MAG-CI ECF No. 137, PageID.9558 Filed 06/20/25 Page 5 of 7   (5 of 7)

No. 25-1413
-5-

offender registry law after *Snyder* reflect the legislature's judgment that the people of Michigan are served by having access to a sex-offender registry. Plaintiffs argue that, having shown that the "the challenged law is unconstitutional, no substantial harm to others can be said to inhere its enjoinment." *Bays v. City of Fairborn*, 668 F.3d 814, 825 (6th Cir. 2012) (citation omitted). However, because we are less certain that Plaintiffs will ultimately prevail on the merits, this consideration is less weighty.

The remaining two factors in this case require a balancing of the harm to the public and the harm to Plaintiffs. The balance of harms favors the Defendants at this stage. Allowing the judgment to take effect while we consider this appeal is likely to cause serious confusion among registrants. That is because, if the judgment goes into effect, more than 30,000 offenders will no longer be required to register under Michigan law. But the continued federal requirement that they register would likely cause grave uncertainty about what is required of them. *See United States v. Felts*, 674 F.3d 599, 604–05 (6th Cir. 2012). And if this court ultimately concludes that SORA is constitutional and vacates the district court's judgment, it will deepen the uncertainty about applicable law. Further, declining to impose a stay would deprive the public of information that they presently have and rely upon concerning registrants in their communities.

The Plaintiffs may suffer harm as well because they will continue to be subject to in-person reporting and other SORA requirements. However, we do not believe that these harms outweigh the harms to Defendants and the public. Beyond the reasons noted above, as we have already alluded to, Plaintiffs would likely remain under an obligation to register under federal law. In other contexts, they may also be required to truthfully disclose their sex-offender status for housing, employment, education, and other purposes, regardless of the registry. Plaintiffs argue that registrants risk prosecution and imprisonment under SORA. But, regardless of a stay,

Plaintiffs could be liable under federal law, and a later, favorable decision by this court might be used to contest a criminal prosecution.

On balance, we conclude that that a stay is warranted. By staying this case, we simply preserve the status quo while these cross appeals are heard on the merits. We note that the district court denied a preliminary injunction in this case, and that Plaintiffs have been subject to the law for the duration of the litigation. *See* R. 54 (Order Denying Prelim. Inj.) (Page ID #1847–52). And although the district court denied a stay pending appeal, it crafted its judgment so as not to take effect for 90 days. We do, however, believe that this case warrants speedy resolution. This case has already been set for briefing, and oral argument should be expedited.

Accordingly, the motion to stay the district court's judgment pending appeal is **GRANTED**. The Clerk of Court shall set this case for oral argument on an expedited basis.

ENTERED BY ORDER OF THE COURT

*Kelly L. Stephens*
Kelly L. Stephens, Clerk

# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Kelly L. Stephens<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: June 20, 2025

Ms. Miriam J. Aukerman
American Civil Liberties Union Fund of Michigan
1514 Wealthy Street, S.E.
Suite 242
Grand Rapids, MI 49506

Mr. Eric M. Jamison
Office of the Attorney General
of Michigan
P.O. Box 30754
Lansing, MI 48909

        Re: Case No. 25-1413/25-1414, *John Doe A, et al v. Gretchen Whitmer, et al*
            Originating Case No. 2:22-cv-10209

Dear Counsel,

  The Court issued the enclosed Order today in this case.

                      Sincerely yours,

                      s/Jill E. Colyer, Case Management Specialist
                      for Ryan E. Orme, Case Manager
                      Direct Dial No. 513-564-7079

cc: Ms. Ewurama Appiagyei-Dankah
    Ms. Kinikia D. Essix
    Ms. Allison Beth Frankel
    Ms. Bonsitu Asia Kitaba
    Mr. Paul D. Reingold

Enclosure